UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DONALD J. TRUMP and
WALTINE NAUTA,

        Defendants.

Case No. 23-80101-CR-CANNON/REINHART

## RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR CONTINUANCE AND PROPOSED REVISED SCHEDULING ORDER

The Defendants, President Donald J. Trump and Waltine Nauta, in the above captioned matter, respectfully request that this Court deny the Government's proposed scheduling order, withdraw the current Order (ECF No. 28), and postpone initial consideration of any rescheduled trial date until after substantive motions have been presented and adjudicated.

This extraordinary case presents a serious challenge to both the fact and perception of our American democracy. The Court now presides over a prosecution advanced by the administration of a sitting President against his chief political rival, himself a leading candidate for the Presidency of the United States. Therefore, a measured consideration and timeline that allows for a careful and complete review of the procedures that led to this indictment and the unprecedented legal issues presented herein best serves the interests of the Defendants and the public. Thus, pursuant to 18 U.S.C. § 3161(h)(7)(A), based on the extraordinary nature of this action, there is most assuredly no reason for any expedited trial, and the ends of justice are best served by a continuance.

Additionally, the legal questions are significant and present issues of first impression. The intersection between the Presidential Records Act and the various criminal statutes at issue has never been addressed by any court, and in the Defendants' view, will result in a dismissal of the indictment. The authority, *vel non*, of the Special Counsel to maintain this action likewise presents a potentially dispositive issue of first impression in this Court. Additional significant matters include the classification status of the documents and their purported impact on national security interests, the propriety of utilizing any "secret" evidence in a case of this nature, and the potential inability to select an impartial jury during a national Presidential election. Moreover, the extensive and voluminous discovery, coupled with the challenges presented by the purportedly classified material that has yet to be produced, will require significant time for review and assimilation. All these questions further warrant a continuance pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii). The Government's apparent view that these unprecedented issues should be adjudicated on an expedited basis is simply untenable and ignores the magnitude of this case.

Thus the Court should, respectfully, before establishing any trial date, allow time for development of further clarity as to the full nature and scope of the motions that will be filed, a better understanding of a realistic discovery and pre-trial timeline, and the completion of the security clearance process, such that the Defendants can be informed fully as to the involved evidence and thus be able to present more informed arguments as to the relevant legal issues. Moreover, Defendants expect that various key legal issues will be fully dispositive, thus negating the need for any trial. Given the broad discretion this Court has when evaluating application of Speedy Trial Act exclusions, and the demonstrative application herein of the factors enumerated in 18 U.S.C. § 3161(h)(7)(A) & (B), the Court should adopt and implement an approach which

postpones establishment of any trial date. *See United States v. Hatfield*, 466 F. App'x 775, 777 (11th Cir. 2012) (recognizing trial court's "broad discretion").

In further support of their position, the Defendants state as follows:

1. The Defendants were indicted on June 8, 2023, on a series of charges centering on Defendants' handling of documents bearing purported classification markings and alleged obstruction efforts. (ECF No. 3).

2. On June 13, 2023, the Defendants were presented before United States Magistrate Judge Jonathan Goodman. On the same day, President Trump was arraigned on the indictment and entered a plea of not guilty. (*See* ECF No. 16). However, Mr. Nauta had not yet retained counsel admitted to practice before this Court, and so his arraignment was continued to June 27, 2023. That arraignment was further continued to July 6, 2023, and Mr. Nauta then entered a plea of not guilty. (*See* ECF Nos. 44 and 50).

3. Following the June 13, 2023, proceedings, the Government initiated the security clearance process for counsel to both Defendants. Defense counsel has been working through the arduous process to obtain necessary security clearance (*see* ECF No. 21) and will update the Court pursuant to its July 6, 2023, Order. (ECF No. 57). Even after the applications are completed, there will be some meaningful delay during the pendency of the approval process.

4. The Government's investigation into the matters at issue in the indictment has been ongoing for over a year. During that time, the Government collected many hundreds of thousands of documents, interviewed dozens of witnesses, and presented many witnesses before two separate Grand Juries. The Defendants will require ample time to fully study that entire process and to evaluate not only what the Government will produce voluntarily, but also whatever additional *Brady*, etc., material must and should be requested and produced.

5. The Government anticipates producing discovery in stages due to the sheer volume of documents collected and because of procedural mechanisms necessary to protect against the unlawful production of classified information. The Government produced its "first production of unclassified discovery" on June 21, 2023.[1] That initial production was substantial and voluminous. Therein, the Government produced more than 428,300 records (in excess of 833,450 pages) consisting of approximately 122,650 emails (including attachments) and 305,670 documents gathered from over ninety (90) separate custodians. The initial production also included some 57 terabytes of compressed raw CCTV footage (so far there is approximately nine months of CCTV footage, but the final number is not yet certain).

6. In addition, "there will be additional productions of discovery" provided by the Government, as it continues to process "some devices and search warrant returns." Notably, the Government has not produced all interview-related materials, including certain witness statements and associated memorialization of those statements. The Government has not informed the Defendants when it anticipates producing additional discovery, what that discovery entails, or to even approximate when it will be in a position to fully comply with its discovery obligations under the law.

7. The Government's efforts are ongoing, and the Defendants have no insight into when this effort will be complete, nor do any of the parties know when the classified discovery will be made available to the Defendants. Thus, in addition to the extraordinary volume detailed above, there will be further discovery.

8. Once the Defendants have an opportunity to review just what has been provided in

---

[1] Government correspondence dated June 21, 2023, details the initial production. Pursuant to the Protective Order entered in this action (ECF No. 27), this correspondence can be provided to the Court either *in camera* or under seal.

the initial production, there will almost certainly be requests for supplemental information, including *Brady*. However, it is not possible with the exercise of reasonable diligence for the Defendants to begin to identify any supplemental documentation without first evaluating what has been produced. Since, unlike most cases, all the discovery materials are sensitive and high-profile, the Defendants are unable to utilize contract or other third-party reviewers to the extent such resources would normally be available. Thus, an adequate and diligent review of the existing discovery production will take some considerable time and effort. Indeed, given the volume of information in the Government's production and the time required to electronically process that information, counsel for the Defendants only accessed the initial discovery—*i.e.*, email and documents, but not CCTV footage which is still being processed for review—for the first time on June 28, 2023. Accordingly, until at least some initial review is completed, the Defendants cannot reasonably be expected to advance any meaningful position as to the schedule. These voluminous and layered discovery issues further support a continuance pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) & (iv) in that the Defendants must and should be provided the reasonable time necessary for effective preparation for pre-trial motions and trial.

9.   In addition, the Government will at some point produce purportedly classified material, and the Government acknowledges the discovery burdens on information subject to the Classified Information Procedures Act ("CIPA"). To that end, the Government, in its June 21, 2023, letter to defense counsel, conveyed to the Defendants that "[c]lassified material will be handled separately" in accordance with CIPA. According to that letter, the purportedly classified material includes documents and witness statements.

10.   CIPA procedures are, of course, demanding and critical (especially in a case of first impression before any court of the United States) because CIPA establishes processes for

determining before trial the use, relevance, and admissibility of classified information that the defense reasonably expects to disclose. *See United States v. Fernandez*, 913 F.2d 148, 151 (4th Cir. 1990). Indeed, other courts, including a court in this District, have recognized that it is reasonable to delay trial where "discovery would be both complicated and extensive, covering thousands of documents, many of which are sensitive or classified and therefore subject to elaborate security measures as well as the time-consuming procedures set forth in the Classified Information Procedures Act . . . ." *United States v. Noriega*, 746 F. Supp. 1548, 1559 (S.D. Fla. 1990) (opining that the prosecution of Panama's former dictator, Manuel Noriega, was "both unusual and complex and accordingly warranted a continuance"); *see also United States v. Flores*, 975 F. Supp. 731, 736 n.4 (E.D. Pa 1997) (recognizing the nature of a "complex criminal case involving national security interests and extensive and time-sensitive proceedings under the Classified Information Procedures Act"); *United States v. Poindexter*, 719 F. Supp. 6, 8 (D.D.C. 1989) (realizing the "procedurally complicated" events in a litigation that involves "issues of classified discovery and those which are likely to be presented under the Classified Information Procedures Act . . . ."). Defense counsel's meaningful review and considerations for use of purportedly classified records cannot begin until it first receives security clearances. Then, only after review and consideration of that material, can the Defendants engage in an informed dialogue with the Court regarding the applicable CIPA issues and procedures. In general, the Defendants believe there should simply be no "secret" evidence, nor any facts concealed from public view relative to the prosecution of a leading Presidential candidate by his political opponent. Our democracy demands no less than full transparency. But it is nonetheless premature to even engage in the evaluation of such issues and the Court should therefore postpone its consideration until the Defendants are able to participate in an informed debate.

11. Indeed, significant effort will be required to sort through the purportedly classified documents once received from the Government before any motions on behalf of the Defendants can even be filed. At present, based on the Government's requested schedule, the trial would begin December 11, 2023, with pre-trial motions due in the preceding months. From a practical matter, the volume of discovery and the CIPA logistics[2] alone make plain that the Government's requested schedule is unrealistic.

12. By way of further example, the Government's proposed timeline differs markedly from two relatively recent CIPA involved cases, *United States v. Reality Winner*, 464 F. Supp. 3d 1375 (S.D. Ga.), aff'd, 835 F. App'x 1002 (11th Cir. 2020), and *United States v. Chaoqun*, No. 18-CR-611, 2020 WL 1689826 (N.D. Ill. Apr. 7, 2020). In *Winner*, the defendant was indicted June 7, 2017, but trial was not set to commence until October 15, 2018 (a plea was ultimately entered prior to trial). In *Chaoqun*, the defendant was indicted January 24, 2019, but the case was not tried until September 12, 2022. The timelines in both these cases contrast starkly with the Government's proposed six-month timeline in this case.

13. Furthermore, contrary to the Government's assertion regarding the nature of the legal issues in this matter, (*see* ECF No. 34), this case presents novel, complex, and unique legal issues, most of which are matters of first impression. As noted above, this Court will need to evaluate the intersection between the Presidential Records Act, 44 U.S.C. §§ 2201-2209, and the various criminal statutes forming the basis of the indictment. These will be questions of first impression for any court in the United States, and their resolution will impact the necessity, scope, and timing of any trial. Moreover, also as noted above, the Defendants anticipate pursuing

---

[2] For example, the Defendants cannot possibly provide the requisite notice under CIPA section 5(a) before a full review of the purportedly classified information.

Constitutional and statutory challenges relative to the authority of the Special Counsel to maintain this action (additional issues of first impression for this Court). The Defendants may also challenge the purported classification status of certain documents at issue in this action. However, any such challenge cannot possibly be evaluated and presented prior to a review of the actual materials at issue. Thus, and again contrary to the Government's conclusory assertion, this case falls squarely within 18 U.S.C. § 3161(h)(7)(B)(ii). Therefore, ample time must and should be provided for the presentation, debate, and adjudication of these and other significant issues prior to the consideration of any trial date.

14. While the Government appears to favor an expedited (and therefore cursory) approach to this case, it cannot point to any exigency or urgency requiring a rapid adjudication. There is no ongoing threat to national security interests nor any concern regarding continued criminal activity.

15. By contrast, Defense counsel submits that the Court's paramount concern must be that Defendants receive a fair trial, which requires adequate time to prepare a defense. Requiring Defendants to adhere to the current Scheduling Order, (*see* ECF No. 28), and the schedule proposed by the Government, (*see* ECF No. 34-2), would be prejudicial. The Government's request to begin a trial of this magnitude within six months of indictment is unreasonable, telling, and would result in a miscarriage of justice. Indeed, proceeding to trial on December 11, 2023, would deny counsel for the Defendants the reasonable time necessary for effective preparation and "result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i). Accordingly, "the ends of justice served by" granting a continuance "outweigh the best interests of the public and the defendant[s] in a speedy trial." *Id*. at § 3161(h)(7)(A); (*see* ECF No. 34).

16. President Trump is running for President of the United States and is currently the likely Republican Party nominee. This undertaking requires a tremendous amount of time and energy, and that effort will continue until the election on November 5, 2024. Mr. Nauta's job requires him to accompany President Trump during most campaign trips around the country. This schedule makes trial preparation with both of the Defendants challenging. Such preparation requires significant planning and time, making the current schedule untenable and counseling in favor of a continuance.

17. Furthermore, careful consideration will need to be given to the ability to seat an impartial jury under the current circumstances. Proceeding to trial during the pendency of a Presidential election cycle wherein opposing candidates are effectively (if not literally) directly adverse to one another in this action will create extraordinary challenges in the jury selection process and limit the Defendants' ability to secure a fair and impartial adjudication. These considerations are relevant to any continuance determination under 18 U.S.C. § 3161(h)(7)(A) & (B)(ii) & (iv). *See e.g.*, *Coleman v. Kemp*, 778 F.2d 1487, 1489 (11th Cir. 1985) (where a court is "unable to seat an impartial jury because of pretrial publicity or an inflamed community atmosphere" then "due process requires the trial court to grant . . . a continuance." (*citing Sheppard v. Maxwell*. 384 U.S. 333, 362–63 ("where there is reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates")). Indeed, even Department of Justice policy cautions against taking prosecutorial action for the purpose of affecting an election or helping a candidate or party. *See* U.S. Dep't of Just., Just. Manual § 9-85.500 (2022). Here, there is simply no question any trial of this action during the pendency of a Presidential election will impact both the outcome of that election and, importantly, the ability of the Defendants to obtain a fair trial.

18. Finally, previously scheduled trials in other matters for both President Trump and defense counsel make it nearly impossible to prepare for this trial by December 2023. For example, President Trump and Mr. Blanche are preparing for a March 2024 criminal trial in New York Supreme Court; Mr. Kise and President Trump are preparing for a lengthy civil trial in New York Supreme Court commencing October 2, 2023; and Mr. Woodward has three trials scheduled in the coming months: *United States v. Navarro*, No. 20-cr-200 (D.D.C.) (one week trial commencing September 5, 2023; *United States v. Schulman*, No. 20-cr-434 (D.Md.) (multi-week trial commencing October 2, 2023; *United States v. Samsel*, No. 20-cr-537 (D.D.C.) (multi-week trial commencing October 23, 2023). The pendency of these other proceedings and their collective impact on the ability of defense counsel to prepare effectively for trial also support granting a continuance pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) & (iv).

19. For the reasons stated above, as well as the reasons offered in the Government's Motion for Continuance, (ECF No. 34), a continuance is warranted because this case is "unusual," "complex," and the "nature of the prosecution [involves] novel questions of fact or law." 18 U.S.C. § 3161(h)(7)(B)(i)-(ii). Proceeding to trial on December 11, 2023, would deny counsel for the Defendants the reasonable time necessary for effective preparation and "result in a miscarriage of justice *Id*. At § 3161(h)(7)(B)(i). An accelerated trial schedule would also be contrary to the interests of our Nation in maintaining the legitimacy of, and confidence in our system of justice. Accordingly, "the ends of justice served by" granting a continuance "outweigh the best interests of the public and the defendant[s] in a speedy trial." *Id*. at § 3161(h)(7)(A); (*see* ECF No. 34).

20. Respectfully, based on all of the foregoing, the Court should therefore withdraw the current Order setting trial and postpone any consideration of a new trial date. A continuance is certainly both necessary and appropriate pursuant to 18 U.S.C. § 3161(h)(7), and postponing

any further decision serves best the ends of justice in the adjudication of this unprecedented and extraordinary action.

Dated: July 10, 2023

Respectfully submitted,

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*/s/ Todd Blanche*
Admitted Pro Hac Vice
toddblanche@blanchelaw.com
Blanche Law
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

*/s/ Stanley Woodward*
Admitted Pro Hac Vice
Stanley@BrandWoodwardLaw.com
Brand Woodward Law
400 Fifth Street Northwest, Suite 300
Washington, District of Columbia 20001
(202) 996-7447

*/s/ Sasha Dadan*
Sasha Dadan
Florida Bar No. 109069
sasha@dadanbonnalaw.com
DADAN LAW FIRM, PLLC
201 S. 2nd St. Suite #202
Fort Pierce, FL 34950
(772) 579-2771

*Counsel for Waltine Nauta*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on July 10, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise