UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA**,

 Plaintiff,

v.

**DONALD J. TRUMP and
WALTINE NAUTA**,

 Defendants.
_____/

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR CONTINUANCE
AND PROPOSED REVISED SCHEDULING ORDER**

 The United States files this reply in support of its Motion for Continuance and Proposed Revised Scheduling Order (ECF No. 34, "Mot."). In their response in opposition to the Motion (ECF No. 66, "Resp."), Defendants Trump and Nauta claim unequivocally that they cannot receive a fair trial prior to the conclusion of the next presidential election, urge the Court to withdraw the current scheduling Order (ECF No. 28), and request that the Court not even consider a new trial date until some unspecified later time. Resp. at 9, 10. There is no basis in law or fact for proceeding in such an indeterminate and open-ended fashion, and the Defendants provide none. For the reasons discussed below and in the Government's Motion, the Court should reset the trial date in this action for December 11, 2023.

**I. Applicable Legal Principles**

 Any discussion of setting a trial date must begin with the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174 (the "Act"). The very first sentence of the Act forecloses Defendants' proposal here:

1

> In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, ... so as to assure a speedy trial.

18 U.S.C. § 3161(a). The Defendants chide the Government for seeking an "expedited" trial (Resp. at 1, 2, 8), but in doing so they have it exactly backward. A speedy trial is a foundational requirement of the Constitution and the United States Code, not a Government preference that must be justified. See U.S. Const. amend. VI; 18 U.S.C. Ch. 208 (captioned "Speedy Trial"). "[T]he Act's manifest purpose [is] ensuring speedy trials," Bloate v. United States, 559 U.S. 196, 210 (2010), and any deviation from its 70-day benchmark must be justified. To be sure, the Act authorizes a court to exclude certain periods of delay from the speedy trial calculation, including "[a]ny period of delay resulting from a continuance granted" on the basis of an ends-of-justice finding, 18 U.S.C. § 3161(h)(7)(A). But because "the Act was designed with the public interest firmly in mind," in order to exclude such delay a "district court must find 'that the ends of justice served . . . outweigh the *best interest of the public* and the defendant *in a speedy trial*.'" *Zedner v. United States*, 547 U.S. 489, 501 (2006). "That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely," *id.*, which the Defendants effectively try to do here by requesting an indefinite adjournment of the trial, for a minimum of some fifteen months.[1] *See Barker v. Wingo*, 407 U.S. 514, 519 (1972) (noting the "societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.").

Defendants' bases for urging the Court to defer setting a trial date boil down to: (1) alleged "significant legal issues of first impression," (2) the volume of discovery, (3) the pendent CIPA

---

[1] *See, e.g.*, Resp. at 9 ("Here, there is simply no question any trial of this action during the pendency of a Presidential election will impact both the outcome of that election and, importantly, the ability of the Defendants to obtain a fair trial.").

2

process, (4) the possibility that their dispositive motions might succeed, (5) the alleged inability to select an impartial jury for trial, and (6) their own schedules and those of their lawyers. None of these warrants the wide-open schedule the Defendants urge the Court to adopt.

## II.     Defendants' Proffered Legal Issues Are Not Novel

Defendants cite two allegedly novel legal issues that they claim make this case complex under 18 U.S.C. § 3161(h)(7)(B)(ii): the authority of the Special Counsel to bring and maintain this action, and the alleged intersection of the Presidential Records Act ("PRA") with the criminal statutes charged in the Indictment. Resp. at 2, 7–8. The former is hardly an issue of first impression. In *United States v. Nixon,* 418 U.S. 683, 694 (1974), the Supreme Court ruled that Congress gave the Attorney General the power to appoint special counsels, and in *In re Grand Jury*, 916 F.3d 1047, 1052–54 (D.C. Cir. 2019), the D.C. Circuit held that a special counsel appointed by the Attorney General has the authority to investigate and prosecute federal crimes.

As for the impact of the Presidential Records Act on this prosecution, any argument that it mandates dismissal of the Indictment or forms a defense to the charges here borders on frivolous. The PRA is not a criminal statute, and in no way purports to address the retention of national security information. The Defendants are, of course, free to make whatever arguments they like for dismissal of the Indictment, and the Government will respond promptly. But they should not be permitted to gesture at a baseless legal argument, call it "novel," and then claim that the Court will require an indefinite continuance in order to resolve it.

Moreover, even if the Court were to conclude that these legal issues were novel, the Act requires more: the issues must be novel such that "it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii). Defendants make no showing whatsoever on this score. No extensive

3

review of discovery or classified information would be required to prepare briefs on these subjects. As with any pretrial dispositive motion, all that is necessary is the Indictment—which the Defendants have had for over a month. And in fact, Trump (including his current counsel) has already briefed in this Court a variation of this argument. *See, e.g.,* No. 22-CV-81294-CANNON, ECF No. 171 (filed Nov. 8, 2022). The legal issues Defendants raise do not justify deviation from a speedy trial date, much less open-ended deferral of considering one.

### III.     Discovery Does Not Warrant a Continuance

The Defendants' claims regarding the volume of discovery do not support continuing the trial date beyond December 2023. Rather, the thorough and organized discovery the Government has provided and will continue to provide in the near term is entirely consistent with that trial date.

In arguing otherwise, the Defendants have failed to include important information about the Government's discovery productions, including the steps the Government has taken to make the Defendants' review as efficient as possible. For example, the Government's production included a set of "key" documents referenced in the Indictment or otherwise determined by the Government to be pertinent to the case. *See* ECF No. 30 at 2. In addition, for the Defendants' convenience, the Government included with its first production a Discovery Log, which denoted by Bates range the source of the material. Although the Government's production included over 800,000 pages, the set of "key" documents was only about 4,500 pages.[2] The Government similarly identified to the Defendants a small subset of "key" CCTV footage referenced in the Indictment or otherwise pertinent to the case. *See id.* And although the CCTV footage the Government obtained and produced comes from various months, the Defendants' characterization

---

[2]     Nearly one-third of the over 800,000 pages consists of non-content email header and footer information obtained pursuant to 18 U.S.C. § 2703(d) for two account holders.

of the production as including "nine months of CCTV footage," *see* Resp. at 4, is misleading. The Government obtained footage only from selected cameras (many of which do not continuously record) from selected dates throughout the period for which it obtained footage.

Defendants' alleged inability to use contract personnel to assist in unclassified document review is puzzling. They claim the reason is that "all the discovery materials are sensitive and high-profile," (Resp. at 5) but discovery materials are sensitive in any criminal case, and courts routinely enter protective orders covering defense document reviewers. Magistrate Judge Reinhart entered such an Order here, with no opposition from the Defendants. ECF No. 27. The Order specifically authorizes disclosure to "persons employed to assist in the defense," *id.* at 2, and Defendants offer no explanation of why they could not engage such personnel here.

The Defendants also rely on the Government's statement in its discovery letter that "there will be additional productions of discovery" related to some devices and search warrant returns, and note that "the Government has not produced all interview-related materials, including certain witness statements and associated memorialization of those statements." Resp. at 4. Defendants omit representations in the Government's discovery letter about the timing of discovery that has been and will be provided. The Government has informed the defense that it intends to disclose promptly all witness statements and associated memorialization of those statements, even if they would not be discoverable under 18 U.S.C. § 3500. To that end, the Government has already produced all unclassified witness statements and the associated memorialization of those statements for interviews that occurred prior to May 12, 2023, and transcripts of all grand jury testimony from the District of Columbia and the Southern District of Florida through the present. *See* ECF No. 30 at 1. In the next week, the Government will produce unclassified witness statements and associated memorialization for interviews conducted between May 12, 2023, and

5

June 23, 2023. The Government has made these productions promptly following arraignment despite having no obligation to do so. *See* ECF No. 28 at 4, obligating the Government to turn over *Jencks Act* material no later than "the morning of the first day of trial."

With respect to the devices and search warrant returns, the Government has produced all applications for search warrants and the warrants themselves, in order to facilitate the Defendants' ability to file pretrial motions. The Government has also produced all relevant content from devices it obtained, except for (a) three devices that were produced voluntarily, the relevant content of which will be produced in the next week; and (b) two of Defendant Nauta's devices. For Defendant Nauta's devices, the Government has already produced much of the responsive filtered, scoped content based on the Government's earlier review of the devices' content in a different form. In short, the Government has promptly produced thorough discovery in an organized manner, to include early production of *Jencks Act* materials. It also bears emphasis that the Government has already sought a nearly four-month continuance of trial, in part because of the need for both sides to review and process discovery. Mot. at 3. There is no discovery-related reason to further delay the jury selection in this case beyond December 2023.

**IV.    Classified Information Procedures Do Not Justify a Continuance**

Defendants further argue that an indefinite continuance is necessary because they lack classified discovery and because, they contend, the necessary procedures under CIPA are inherently complex. Resp. at 4–7. With respect to the first argument, the Government was prepared to make its first tranche of classified discovery available on July 10, contingent on defense counsel having obtained interim clearances. ECF No. 34, Exhibit B. However, in order to receive an interim clearance, counsel first needed to submit their Form SF-86 and supporting documentation to the Litigation Security Group. ECF No. 34, Exhibit A ¶ 4. As of this filing, only two counsel of record

have completed this task. The Court has set a deadline of today for them to do so. ECF No. 57.

In the course of its investigation, the Government obtained approximately 340 documents bearing classification markings that had been moved from the White House to Mar-a-Lago at the end of President Trump's term. *See generally* Indictment, ECF No. 3. The Government's first tranche of classified discovery will include all documents with classification markings recovered from Mar-a-Lago to which counsel's interim clearances will permit them access. This represents the large majority of the classified records from Mar-a-Lago. The Government also plans to produce a small number of witness statements and memorialization of those statements that contain classified information. The Government intends to transport these materials early next week to the sensitive compartmented information facility ("SCIF") maintained for cleared defense attorneys at the C. Clyde Atkins Courthouse in Miami. Once defense counsel have their final clearances, the Government will bring the remaining Mar-a-Lago documents to the SCIF in Miami as well as other materials—including *Jencks* material and classified records pertaining to the declassification of various materials during the Trump administration. In sum, neither the amount of classified discovery in this case nor the timetable for its production is a reason for an indefinite continuance of the trial date.

The need for CIPA proceedings is also not a justification for a period of uncertain delay. The Government's proposed CIPA schedule (Exhibit B to ECF No. 34) remains viable, even with the delay caused by counsel's late submissions of their SF-86 Forms. Counsel will have almost two months to review the initial production of classified discovery before having to file any notices under CIPA Section 5. The two cases Defendants reference as examples of cases involving CIPA that had trial dates further from arraignment do not support their position. *See* Resp. at 7. In *United States v. Winner*, No. 1:17-cr-34 (S.D. Ga.), following a planning conference during which

7

classified discovery issues were discussed, the court initially set a trial date for October 23, 2017—less than five months after the June 2017 arrest and arraignment. *See* S.D. Ga. ECF No. 33. Not until the Fifth Amended Scheduling Order was the trial date reset to October 15, 2018, *see* S.D. Ga. ECF No. 240, following case-specific circumstances requiring adjustments to the schedule.

In *United States v. Chaoqun*, No. 18 CR 611 (N.D. Ill.), some of the delay was due to Covid-19 postponements during the pandemic. *See* N.D. Ill. ECF Nos. 87, 88, 98, and 103. Moreover, CIPA was not central to the delay; in fact, there were no proceedings under CIPA Sections 5 or 6, and CIPA had little or no influence on how long it took the case to reach trial.

By contrast, in *United States v. Mallory*, No. 1:17-CR-154 (E.D. Va.), an espionage prosecution of a former CIA agent who spied for China that involved CIPA proceedings, including under CIPA Sections 4, 5, and 6, less than a year elapsed between arrest and verdict. And in *United States v. Hoffman,* 2:12-CR-184 (E.D. Va.), an espionage prosecution of a former sailor who sought to spy for Russia, the case went from arrest to verdict in less than nine months. There is no reason to believe that the CIPA proceedings in this Court would be any less efficient.[3]

## V.  Defendants' Remaining Arguments Are Meritless

Defendants' remaining arguments similarly provide no basis for deferring setting a trial date. First, the prospect that motions might be "fully dispositive" (Resp. at 2) is no such basis, and it is not a factor under the Speedy Trial Act for the Court to consider in deciding whether to grant a continuance. The Defendants cite no case for their proposition, which is unsurprising because again, they have it backward. The Speedy Trial Act requires the Court to set a trial date, and the

---

[3]  Defendants also twice raise the specter of "secret" evidence and state their opposition to "any facts being concealed from public view . . . ." Resp. at 2, 6. If Defendants intend to seek permission to disclose classified information to the public, that would be the very type of "graymail" CIPA was enacted to prevent. *See United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1363 (11th Cir. 1994); *United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983).

Federal Rules of Criminal Procedure key the filing of pretrial motions (including dispositive motions under Rule 12) relative to that trial date. *See* 18 U.S.C. § 3161(a); Fed. R. Crim. P. 12(b)(3) & (c). Defendants would have it the other way around, requiring courts to assess the likelihood of a pretrial motion's success before the motion is even filed, in order to determine whether to set a trial date. This argument provides no support for Defendants' request to postpone trial indefinitely.

Similarly, Defendants' claim that this Court could not select an impartial jury until after the presidential election does not justify further delay here. Resp. at 9. First and most importantly, there is no reason to credit the claim. Our jury system relies on the Court's authority to craft a thorough and effective jury selection process, and on prospective jurors' ability and willingness to decide cases based on the evidence presented to them, guided by legal instructions from the Court. To be sure, the Government readily acknowledges that jury selection here may merit additional protocols (such as a questionnaire) and may be more time-consuming than in other cases, but those are reasons to start the process sooner rather than later.

The only two cases Defendants cite on this subject do not help them. *See* Resp. at 9. Both stand for the familiar proposition that in the wake of a particularly heinous or vicious crime that inflames the sentiment of the community, courts can continue a trial or transfer it. The first case, *Coleman v. Kemp*, involved brutal murders, including of one victim who was raped multiple times prior to her murder. 778 F.2d 1487, 1488 (11th Cir. 1985). The Eleventh Circuit concluded that because of the "inflammatory and prejudicial pretrial publicity that so pervaded" the specific community where the case was tried, *id.* at 1540, the case required a change of venue. *See id.* at 1538. Similarly, *Sheppard v. Maxwell* involved the petitioner's pregnant wife being "bludgeoned to death in the upstairs bedroom of their lakeshore home." 384 U.S. 333, 335–36 (1966). To state the obvious, the concerns that justify continuing or transferring a trial involving vicious murder,

9

repeated rape, or a child victim do not justify an indefinite protracted continuance of this trial "during the pendency of a Presidential election cycle." Resp. at 9.

Moreover, the conditions that Defendants argue will make it a challenge to select a jury will not appreciably change after the completion of the election. The Government's position is that the best way to move this case forward consistent with the Defendants' rights and the public's interest is to set a trial date now, with interim deadlines for CIPA procedures and motion practice leading up to that date.

Finally, the demands of Defendants' professional schedules do not provide a basis to delay trial in this case. Many indicted defendants have demanding jobs that require a considerable amount of their time and energy, or a significant amount of travel. The Speedy Trial Act contemplates no such factor as a basis for a continuance, and the Court should not indulge it here.

The Defendants also contend that counsel's trial schedules "make it nearly impossible to prepare for this trial by December 2023." Resp. at 10. But nothing about defense counsel's trial schedules justifies the extraordinary continuance they seek. And in any event, "[it] takes more than counsel's claim of a crowded schedule to carry [the] burden" of justifying a continuance, since a court's schedule "should not be subordinated to the schedules of the lawyers that appear before it." *United States v. Hanhardt*, 156 F. Supp. 2d 988, 999 (N.D. Ill. 2001); *see United States v. De Castro-Font*, 583 F. Supp. 2d 243, 246 (D.P.R. 2008) ("[T]his Court deems defense counsel's preexisting trial schedule insufficient justification for granting a continuance in this case.").

For all of these reasons, the Court should reject Defendants' invitation to defer consideration of a trial date, and should set jury selection to begin on December 11, 2023.

        Respectfully submitted,

        JACK SMITH
        Special Counsel

By:    /s/ *David V. Harbach, II*
        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID # A5503068
        950 Pennsylvania Avenue, NW
        Washington, D.C. 20530

        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID # A5502946

        Julie A. Edelstein
        Senior Assistant Special Counsel
        Special Bar ID # A5502949

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

        /s/ *David V. Harbach, II*
        David V. Harbach, II