# SEALED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.

_____/

**FILED UNDER SEAL**

FILED BY _cos_ D.C.

AUG 1 1 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## REPORT IN RESPONSE TO THE COURT'S SEALED ORDER ON AUGUST 7, 2023

The Court has directed the Government to address "reported allegations raised by Stanley E. Woodward, counsel for Waltine Nauta, against Jay I. Bratt, Counselor to the Special Prosecutor, concerning statements made by Mr. Bratt to Mr. Woodward regarding a judicial application submitted by Mr. Woodward." ECF No. 101 at 1. Specifically, the Court has ordered the Government to file under seal "a complete and current report on the status of the referenced allegations, attaching any written materials on the subject in the possession or custody of the Special Counsel or the United States Department of Justice." *Id.* at 2. Those allegations were raised by then-counsel for former President Donald J. Trump in a motion seeking the disclosure of certain grand jury materials ("Disclosure Motion")[1] filed in the United States District Court for

---

[1] Amended Motion for Disclosure of Grand Jury Materials, No. 23-gj-10 (D.D.C.) (filed June 5, 2023). As described below, the Clerk's Office for the United States District Court for the District of Columbia directed that the parties refile the pleadings in a new grand jury matter, Case No. 23-gj-38. *See infra* note 5.

the District of Columbia on June 5, 2023; the Disclosure Motion was withdrawn in a joint status report filed by Trump and the Government on June 20, 2023, and denied as moot by the Chief Judge for the United States District Court for the District of Columbia on June 27, 2023. The Woodward allegations, advanced for the first time more than nine months after the alleged statements in question, are entirely without merit, and any suggestion of prosecutorial misconduct is false. Nonetheless, out of an abundance of caution and in no way implying that Bratt or any other government attorney acted improperly, *see* Justice Manual 1.4.200 ("Reporting an allegation raises no inference that the allegation is well-founded."), the Special Counsel's Office referred the allegations to the Department of Justice's Office of Professional Responsibility (OPR), which has placed the self-referral in abeyance. Following the denial of the Disclosure Motion on June 27, 2023, no litigant has renewed the allegations in any court.

Attached to this Report as Attachment A are (1) the written pleadings filed by Trump and the Government on the subject of the Woodward-related allegations[2] in the United States District Court for the District of Columbia; (2) two exhibits attached to a Government pleading, including (a) a letter that Woodward sent to the Chief Judge for the United States District Court for the District of Columbia addressing the allegations; and (b) a website referred to in the Government's opposition to the Disclosure Motion; (3) related rulings by the Chief Judge for the United States District Court for the District of Columbia, including (a) an order permitting the Government to share an excerpt of the Disclosure Motion with Woodward; (b) an order directing the parties to file a joint status report addressing whether the indictment unsealed in this District on June 9, 2023,

---

[2] As noted below, the Disclosure Motion asserted several claims of "prosecutorial misconduct and bias," Disclosure Motion at 2; *infra* at 5-6, and the Government's response in opposition explained in detail how those claims (including the Woodward-related allegations) were legally and factually flawed. *See infra* at 8.

changed either party's position on the Disclosure Motion then pending in the United States District Court for the District of Columbia; (c) an order denying the Disclosure Motion without prejudice as moot; and (d) an order permitting the Government to share relevant pleadings in grand jury Cases Nos. 23-gj-10 and 23-gj-38 with the court and the parties in *United States v. Trump*, No. 23-cr-80101 (S.D. Fla.); and (4) the Special Counsel's Office email referral to OPR.[3]

### Background on the Woodward-Related Allegations[4]

In April 2022, acting on a referral from the National Archives and Records Administration, the Government initiated a grand jury investigation in the District of Columbia into the potential mishandling of classified documents at the end of and following Trump's presidency. On May 26, 2022, the FBI interviewed Waltine Nauta, who served as a valet for Trump both during and after his presidency. *See* Superseding Indictment, ECF No. 85 at ¶ 9. Nauta testified before the grand jury in the District of Columbia on June 21, 2022. At his interview, he was represented by Derek Ross. During his grand jury appearance, Nauta was represented by Derek Ross and Cameron Seward.

After Nauta testified in the grand jury and attorneys from the Department of Justice had informed Ross and Seward that Nauta had become a subject of the grand jury investigation, Nauta obtained new counsel, Stanley Woodward. On August 15, 2022, attorneys for the National

---

[3] The Government does not read the Court's order to encompass the production of email correspondence between the Government and Woodward, but it stands ready to submit such correspondence at the Court's request. Likewise, although the Government does not read the Court's order to encompass the production of handwritten notes made by government attorneys in connection with meetings or phone calls with Woodward, it is prepared to submit copies of the notes to the Court for *in camera* review, if ordered by the Court.

[4] The facts in this section are drawn from the Government's Opposition to Amended Motion for Disclosure of Grand Jury Materials, 23-gj-10, 23-gj-38 at 22-24 (D.D.C.) (filed June 8, 2023; refiled June 15, 2023), which was filed before the Chief Judge for the United States District Court for the District of Columbia.

Security Division who were handling the investigation at that time contacted Woodward by email to invite Woodward to meet with them to discuss Nauta. The email stated: "As you know from Mr. Nauta's previous counsel, Derek Ross, we and the FBI would like to further question Mr. Nauta about various records stored at Mar-a-Lago. We think it would be beneficial first to meet with you in person to discuss the way forward with Mr. Nauta. Please let us know your availability for later this week." In response to that invitation, Woodward agreed to meet with prosecutors assigned to the investigation at their office on August 24, 2022.

Woodward met with the prosecutors on that date at the Main Justice Building in Washington, D.C., to discuss Nauta. Three prosecutors were present in person and one prosecutor participated by video. The prosecutors present in person were Jay Bratt (Chief of the Counterintelligence and Export Control Section (CES)), Julie Edelstein (Deputy Chief of CES), and Brett Reynolds (Trial Attorney in CES). Michael Thakur (Assistant United States Attorney for the Southern District of Florida) participated by video. Bratt, who took the lead on the meeting on behalf of the Government, informed Woodward that Nauta had criminal exposure and that he was a subject of the grand jury investigation. Bratt also informed Woodward that the Government was interested in obtaining Nauta's potential cooperation and resolving his situation. Woodward asked about the topics on which Nauta's cooperation was being sought, and the prosecutors informed him that the focus was on Nauta's involvement in moving boxes. Woodward indicated that he had not yet met with Nauta to discuss the matter, but that he would speak with Nauta and might be interested in providing an attorney proffer after he spoke with his client. At the conclusion of the meeting, Woodward indicated that he would get back to the prosecutors after speaking with Nauta. At no point during the meeting did Woodward suggest that any of the prosecutors' comments were improper.

After the August 24 meeting, on September 30, 2022, three prosecutors assigned to the case, Edelstein, Thakur, and David Raskin, spoke with Woodward by telephone about Nauta, and the prosecutors reiterated their interest in meeting again with Nauta. In that call, Woodward did not raise any concerns or complaints about what had transpired in the meeting with prosecutors on August 24. Woodward later requested to review the transcript of Nauta's grand jury testimony, and, consistent with governing law in federal court in the District of Columbia, *see In re Grand Jury*, 490 F.3d 978, 990 (D.C. Cir. 2007), in October 2022 the prosecutors arranged for him to do so. Again, Woodward made no complaint about anything that had happened in his earlier meetings with the prosecutors. Indeed, for more than nine months following the August 2022 meeting, Woodward—who had dealt with several prosecutors from the Special Counsel's Office during that span—never raised any allegation, concern, or complaint about that meeting. The Government had never seen or heard of any complaints about the August 2022 meeting until Trump filed the Disclosure Motion in June 2023.

### Relevant Procedural History

The Government's investigation continued into 2023. On May 19, 2023, the Government alerted counsel for Trump and counsel for Nauta by letter that Trump and Nauta were targets of a grand jury investigation.

On June 5, 2023, Trump moved in the District of Columbia for disclosure of the "transcripts of Grand Jury testimony of Waltine Nauta, Carlos de Oliveira, Margo Martin, and Chamberlain Harris, as well as the 'minutes' component of the Grand Jury proceedings, for review and possible inclusion in motions for additional relief." *See* Disclosure Motion at 1.[5] Other than Chamberlain

---

[5] Trump originally filed the Disclosure Motion in Case No. 23-gj-10. The Disclosure Motion was later refiled, at the direction of the district court in the District of Columbia, in Case No. 23-gj-38.

Harris, each of the witnesses named in the Disclosure Motion had testified in the District of Columbia as part of the grand jury's investigation into the former President's retention of classified materials after his term in office ended. The Disclosure Motion grounded its request for transcripts on several allegations of purported prosecutorial misconduct, including the claim that Bratt had engaged in a conversation with Woodward on August 24, 2022, that, the Disclosure Motion contended, "suggested a *quid pro quo* or even a threat intended to cause Mr. Woodward to persuade his client to cooperate with Mr. Bratt." *Id.* at 4. In the more than nine months that elapsed between the August 2022 meeting and the Disclosure Motion, Woodward himself never approached the Government or filed a claim in court arguing that any government attorney had acted improperly.

Because the Disclosure Motion, which was filed in a sealed grand jury matter that included only Trump and the Government, did not indicate whether Woodward endorsed its allegations, the Government, with leave from the Chief Judge for the United States District Court for the District of Columbia, provided Woodward with the relevant excerpts from the Disclosure Motion and sought his input. Following a phone call between attorneys from the Special Counsel's Office and Woodward on June 7, 2023, in which the Government informed Woodward that it was committed to providing the district court in the District of Columbia with an accurate account of what Woodward recalled from his meeting with the prosecutors in August 2022, Woodward agreed to provide his own written version of what took place so that the Government could provide that to the Court with its response to the motion.

In that written submission, Woodward gave the following account of the meeting on August 24, 2022:

---

The Government's response was likewise originally filed in Case No. 23-gj-10 and later refiled in Case No. 23-gj-38. Additionally, Trump first filed on June 4, 2023, but then filed an amended version, the Disclosure Motion, on June 5.

Despite the purported purpose of the meeting, it began with Department attorney Jay Bratt referencing a folder of materials in highlighting Mr. Woodward's professional background.  Specifically, Mr. Bratt remarked that he was aware of the fact that Mr. Woodward had been recommended for a Presidential nomination to the Superior Court of the District of Columbia.  Mr. Bratt also advised that the government's case as against Mr. Nauta was strong – referencing his belief that one way or the other Mr. Nauta would be giving up a lifestyle of private planes and private golf courses -- and that it would behoove Mr. Nauta to cooperate in the government's investigation.

It was inappropriate for Mr. Bratt to mention the fact that Mr. Woodward had been recommended for a Presidential nomination to the Superior Court of the District of Columbia.  The only rational inference to be drawn from this reference, combined with the assertion that the government's case as against Mr. Nauta was strong and that Mr. Woodward was not a so-called, "Trump attorney," who would do the right thing, is that somehow Mr. Woodward's potential nomination to the Superior Court would be implicated by Mr. Nauta's decision not to "cooperate" in the government's investigation.  Indeed, to the best of Mr. Woodward's recollection, Mr. Bratt concluded his observations with words to the effect of, "I wouldn't want you to do anything to mess that up" – referring to Mr. Woodward's potential nomination. It is, of course, noteworthy that the statements giving rise to this inference were coming from a senior official with the Department of Justice.

Woodward Letter, June 7, 2023 (footnotes omitted).  Woodward acknowledged that "our representation of Mr. Nauta was not adversely impacted by this discussion," and that "prior to now we have neither complained about the statements in the August 24 meeting nor referred the conduct of that meeting for further review by an appropriate oversight body." *Id.*  Nevertheless, Woodward "suggest[ed] that this matter be referred to the Department of Justice's Office of Professional Responsibility for a thorough investigation and that any indictment arising from this investigation not lie until such assessment is reached." [6] *Id.*

---

[6] At Bratt's request, the Special Counsel's Office reached out to OPR so that he could make a self-referral of this issue for OPR's review.  Such self-referrals are standard when allegations are made against Department of Justice prosecutors to ensure the integrity of the Department's work.  *See* Justice Manual 1-4.300.  The self-referral was in no way an indication that Bratt or the Special Counsel Office's believes that he did anything inappropriate.  *See* Justice Manual 1.4.200 ("Reporting an allegation raises no inference that the allegation is well-founded.").  The Government provided OPR with the relevant pleadings, including the Disclosure Motion and the

On June 8, 2023, the Government responded in opposition to the Disclosure Motion. *See* Opposition to Amended Motion for Disclosure of Grand Jury Materials, 23-gj-10, 23-gj-38 (D.D.C.) (filed June 8, 2023; refiled June 15, 2023) ("Disclosure Motion Opposition").[7] After explaining why the Disclosure Motion lacked merit even if its factual claims were taken at face value, *see id.* at 6-11, the Disclosure Motion Opposition catalogued the Disclosure Motion's numerous factual inaccuracies and mischaracterizations, *id.* at 11-37. As relevant here, the Disclosure Motion Opposition "flatly reject[ed] the claim that anyone threatened Woodward" at the August 2022 meeting or "insinuated" a link between what Woodward contended was his pending judicial nomination and Nauta's cooperation. *Id.* at 24. In sum, the Disclosure Motion Opposition explained, the allegations told an implausible, if not ludicrous, tale in which a career prosecutor who had served the Department with distinction for more than 30 years concocted a plan to threaten an attorney by insinuating that, unless his client agreed to cooperate, the prosecutor would contact the White House and attempt to scuttle the attorney's nomination to D.C. Superior Court, which contact alone would itself violate Department policy.[8] *Id.* at 24-30. The Disclosure Motion Opposition also emphasized the doubly suspect timing of the Woodward allegations: (1) although the underlying meeting had occurred on August 24, 2022, and Woodward had not identified a concern with or complaint about that meeting during multiple subsequent meetings

---

Disclosure Motion Opposition. OPR has confirmed receipt of the referral and, consistent with its policy, is monitoring this case while holding the referral in abeyance pending its completion.

[7] To comply with Federal Rule of Criminal Procedure 6(e), the government filed two versions of its sealed response in opposition, one of which contained *ex parte* material. The Disclosure Motion Opposition refers to the response that was filed *ex parte*.

[8] *See* Justice Manual 1-8.600.

and communications with government prosecutors,[9] no one asserted any related claim until nine months later, when counsel for *Trump* (not Woodward) did so; and (2) that claim came shortly after Trump and Nauta had learned they were targets of the grand jury investigation and shortly before Trump's attorneys were scheduled to meet with the Department of Justice and the Special Counsel's Office to urge the Government not to proceed with the case. *See id.* at 24-30; *supra* at 5 (noting that Trump and Nauta received target letters on May 19, 2023, and that the Disclosure Motion was filed on June 5, 2023). Indeed, when Woodward mentioned this allegation for the first time in a court filing, he specifically tied it to a request to delay his client's indictment.

The day after the Government filed the Disclosure Motion Opposition, a magistrate judge in this District unsealed an indictment, returned by the grand jury the previous day, charging Trump with the willful retention of documents containing national defense information, and charging Trump and Nauta with various offenses related to obstruction of justice. ECF No. 1 (unsealed June 9, 2023).

Following that indictment, the Chief Judge for United States District Court for the District of Columbia directed the Government and Trump to file a joint status report to address whether their respective positions on the Disclosure Motion had changed. On June 20, 2023, the parties' joint status report noted that: (1) the Government would "produce in discovery the grand jury transcripts that the former President requested in the Disclosure Motion, if such transcripts exist," thus "moot[ing] the Disclosure Motion's claim for the transcripts"[10]; (2) the former President was "withdraw[ing] his separate claim seeking grand jury minutes without prejudice to refile it at some

---

[9] As noted in the Disclosure Motion Opposition, either Woodward or his firm (or both) has represented or is representing approximately twelve subjects and witnesses in matters related to the Special Counsel's Office's investigations. *See* Disclosure Motion Opposition at 28.

[10] The Government has produced these transcripts in discovery.

later date"; and (3) the Government "maintain[ed] its position . . . that the Disclosure Motion lacks merit for legal and factual reasons but agree[d] that the Court should deny it as moot given that the former President is withdrawing the Disclosure Motion." *See* Joint Status Report, 23-gj-38 (D.D.C.) (filed June 20, 2023). On June 27, 2023, the Chief Judge issued a minute order denying the Disclosure Motion without prejudice on mootness grounds. *See* Minute Order, 23-gj-38 (D.D.C.) (docketed June 27, 2023).[11] No litigant has since raised the allegations. As noted by the Court's order, however, it appears that certain news reports have continued to allude to them.

## Conclusion

As described above and in the Government's pleadings in the United States District Court for the District of Columbia, any allegation that Bratt or any prosecutor engaged in misconduct during the August 2022 meeting with Woodward is wholly without merit. Following the denial of the Disclosure Motion in the District of Columbia, neither Trump nor Nauta has raised in any court the allegations related to the August 2022 meeting between prosecutors and Woodward. The self-referral made to OPR has been placed in abeyance pending the completion of this case.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

---

[11] After receiving this Court's order on August 7, 2023, the Government moved the same day in the United States District Court for the District of Columbia for permission to disclose all relevant pleadings in Case Nos. 23-gj-10 and 23-gj-38 to this Court and the parties in this case. The Chief Judge for the United States District Court for the District of Columbia issued an order granting such permission the following day.

By:    */s/ David V. Harbach, II*
David V. Harbach, II
Assistant Special Counsel
Special Bar ID # A5503068
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID # A5502946

Julie A. Edelstein
Senior Assistant Special Counsel
Special Bar ID #A5502949

Michael E. Thakur
Assistant Special Counsel
Florida Bar No. 1011456

August 11, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2023, I filed the foregoing document with the Clerk of the Court using hand delivery. I also certify that the foregoing document is being served this day on all counsel of record via email.

/s/ *Michael E. Thakur*
Michael E. Thakur