UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**CASE NO. 23-80101-CR-CANNON/REINHART**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
|  | ) |
| v. | ) |
|  | ) |
| **DONALD J. TRUMP, and** | ) |
| **WALTINE NAUTA,** | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## **SURREPLY RE MOTION FOR *GARCIA* HEARING**

This Court *should* hold a hearing pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), to conduct an *ex parte* inquiry[1] of Defendant Waltine Nauta as to whether he has been apprised of his rights, including the right to conflict-free counsel.[2]  The Court can then advise the Special Counsel's Office on the public record that it has conducted said inquiry and is satisfied that Mr. Nauta is voluntarily and knowingly proceeding with counsel who may not be conflict free.[3]

---

[1] The Special Counsel's Office cites no authority for the proposition that this colloquy should not proceed *ex parte*. Neither *Wheat v. United States*, 486 U.S. 153, 160-161 (1988), nor *Garcia*, 517 F.2d at 278, cited by the Special Counsel's Office, stands for the proposition that, "the need for the judicial inquiry into conflicts of interest derives from the interests of the Court *and the Government* in ensuring that the proceeding is conducted according to the applicable legal and professional standards." Reply at 9 (Aug. 22, 2023) (ECF No. 129).  To the contrary, the Special Counsel's Office recognizes that any inquiry into whether Mr. Nauta has been fully apprised of his rights *should proceed ex parte*, *id.*, given that what Mr. Nauta has been advised will necessarily have come from his counsel.

[2] To be sure, the Special Counsel's Office still does not allege that any actual conflict exists with respect to defense counsel's representation of Mr. Nauta.  It has not done so for the obvious fact that no conflict would arise unless and until Trump Employee 4 testified against Mr. Nauta.  Should that time come, the Court can then assess whether a conflict arises from defense counsel's cross-examination of Trump Employee 4 (or any other current and/or former client of defense counsel).

[3] Defense counsel remains unaware of any authority for the proposition that the Court must hail a *mere potential* witness into court for an inquiry as to whether that witness has been fully advised of their rights.  Of note, despite the opportunity to do so, the Special Counsel's Office cites no such authority in its Reply brief.

Defense counsel has long agreed that such an inquiry should occur. In the parties' August 1, 2023, conferral conference pursuant to Rule 88.9 of the Local Rules for the United States District Court of the Southern District of Florida, defense counsel advised that it would be prudent simply to remind the Court of defense counsel's prior representation and request a *Garcia* hearing at the parties' next appearance.[4] The Special Counsel's Office refused, instead choosing to publicly impugn defense counsel's representation of both Mr. Nauta and Trump Employee 4. *See* Email from Stanley E. Woodward, Jr. to the Special Counsel's Office (Aug. 1, 2023) (Attached hereto as Exhibit A).

Accordingly, the foregoing Surreply is necessary to correct the record with respect to the Special Counsel's Office's conduct in this matter. Specifically, defense counsel played no role in Trump Employee 4's voluntary testimony before the grand jury resulting in the Superseding Indictment in this action.[5] Superseding Indictment (July 27, 2023) (ECF No. 85). Moreover, when Trump Employee 4 testified, for the first time, before a Grand Jury in this District, Trump Employee 4 was unequivocal that, with respect to his prior testimony, he, "wasn't coached," and that nobody, "suggest[ed] to [him], influence[d] [him to say that th[e] conversation with Carlos

---

[4] As the Special Counsel's Office observed in its Reply, it immediately advised this Court of its filing with the United States District Court for the District of Columbia. *See* ECF Nos. 45, 46.

[5] As both the Chief Judge of the United States District Court for the District of Columbia and the First Assistant Federal Public Defender acknowledged:

> [First Assistant Federal Public Defender]: Your Honor, one other thing. I did want to say for the record, I should have started with this, have seen no reason to believe that either Mr. Woodward or Mr. Brand or anyone else associated with this has done anything improper. This just came up at this point in time, and based on the status of the record, I've given [Trump Employee 4] my best counsel, and he will be making a decision based on everything he knows now.
>
> THE COURT: Right. And thank you. And certainly my reading of the government's motion for his hearing did not suggest that Mr. Woodward or Mr. Brand had done anything improper either. The government's was a prophylactic measure to comply with the law as it exists regarding conflicts and to make sure that [Trump Employee 4] is aware of his rights.

Hr'g T. at 6 (June 30, 2023) (Attached hereto as Exhibit C).

De Oliveira didn't happen." G.J. Tr. at 50 (July 20, 2023). To that end, Trump Employee 4 did not retract false testimony and provide information that implicated Mr. Nauta, "*[i]mmediately after receiving new counsel.*" Reply at 4 (Aug. 22, 2023) (ECF No. 129) (emphasis added). Rather, after the Special Counsel's Office issued a target letter on June 20, 2023, threatening Trump Employee 4 with prosecution, *see* Reply at 3 (Aug. 22, 2023) (ECF No. 129) ("[O]n June 20, 2023, . . . [a] *target letter* . . . identified . . . criminal exposure . . . entirely due to [Trump Employee 4's allegedly] false sworn denial before the grand jury in the District of Columbia that he had information about obstructive acts that would implicate Nauta (and others)." (emphasis added));[6] the Special Counsel's Office promptly sought a "conflicts hearing" a week later, on June 27, 2023, *see* Reply at 3-4 (Aug. 22, 2023) (ECF No. 129) ("On June 27, 2023, . . . the Government filed a motion for a conflicts hearing with the Chief Judge of the United States District Court for District of Columbia [sic] . . . ."); at the hearing, Trump Employee 4 expressed a desire for counsel to advise him in navigating the threatened prosecution against him, *see* Hr'g T. at 3 (July 5, 2023) (Attached hereto as Exhibit B) ("The Court: Okay. [Trump Employee 4], is it your desire that I appoint [First Assistant Federal Public Defender] to represent you *in this matter?* [Trump Employee 4]: Yes, Your Honor." (emphasis added)).[7] The Special Counsel's

---

[6] Of note, as defense counsel advised the Court in its response to the Special Counsel's Office request for a "conflicts hearing," any threat of prosecution was spurious, at best: "The allegation that [Trump Employee 4] has lied under oath before a grand jury is unfounded . . . [and] [e]ven if [Trump Employee 4] did provide conflicting information to the grand jury such that could expose him to criminal charges, he has other recourses besides reaching a plea bargain with the government[:] [Trump Employee 4] can go to trial with the presumption of innocence and fight the charges as against him." Response at 1-2, *In re Grand Jury Subpoena*, No. 23-gj-46 (D.D.C. June 30, 2023), attached as Exhibit C to Notice (Aug. 25, 2023) (ECF No. 136).

[7] Thus, contrary to the assertion by the Special Counsel's Office, Trump Employee 4 did not advise the Chief Judge of the District Court for the District of Columbia that he no longer wished to be represented by defense counsel. Reply at 4 (Aug. 22, 2023) (ECF No. 129) ("On July 5, 2023, Trump Employee 4 informed Chief Judge Boasberg that he no longer wished to be represented by Mr. Woodward . . . ."). Indeed, defense counsel welcomed the participation of the First Assistant Federal Public Defender in resolving the prosecution threatened by the Special Counsel's Office:

> THE COURT: Okay. Mr. Woodward, any reason that you can think of that I shouldn't go ahead and do that?

Office then *immediately* offered Trump Employee 4 a Non-Prosecution Agreement. *See* G.J. Tr. (July 20, 2023). *See also* Mot. Authorizing Disclosure at 1, *In re Grand Jury Subpoena GJ 42-67*, No. 23-gj-46 (D.D.C. July 30, 2023), *attached as Ex. A to* Notice (Aug. 25, 2023) (ECF No. 136) ("Represented by [First Assistant Federal Public Defender], [Trump Employee 4] then entered into a cooperation agreement with the government and testified before the grand jury in the Southern District of Florida on July 20, 2023.").

The Special Counsel's Office's manipulation of the United States District Court for the District of Columbia achieved its penultimate goal[8] – it is telling that the Non-Prosecution Agreement it ultimately offered Trump Employee 4 was not offered before the District Court had agreed to appoint "conflict counsel."[9] Thus, when Mr. Nauta alleges that the actions of the Special Counsel's Office were intended to, "diminish the Court's authority over the proceedings

---

> MR. WOODWARD: No, sir. In our view, [Trump Employee 4] is marrying up, if you will.
>
> THE COURT: Well, I don't want to comment. I will say only that [First Assistant Federal Public Defender] is an excellent lawyer, but I will not cast any aspersions on you that you haven't cast upon yourself."

Hr'g T. at 3 (July 5, 2023) (Attached hereto as Exhibit B).

[8] What we now know is that defense counsel was prescient in its allegation that the application by the Special Counsel's Office's to the United States District Court for the District of Columbia for the appointment of "conflicts counsel" was calculated to induce the cooperation of a witness in a matter in *this* District. *See* Response at 2, *In re Grand Jury Subpoena*, No. 23-gj-46 (June 30, 2023) ("Ultimately, this is little more than a last-ditch effort to pressure [Trump Employee 4] with vague (and likely inconsistent) criminal conduct in the hopes that [Trump Employee 4] will agree to become a witness cooperating with the government in other matters."), *attached as Exhibit C to* Notice (Aug. 25, 2023) (ECF No. 136)). To wit, not only did the Special Counsel's Office cite no authority for the proposition that the United States District Court for the District of Columbia could appoint conflicts counsel at its request, defense counsel was denied the opportunity to fully brief the matter when it requested to do so. Email from Stanley E. Woodward, Jr. to the Chief Judge of the United States District Court for the District of Columbia (June 28, 2023) (attached hereto as Exhibit D) ("We do . . . have concerns with the government's proposed approach to this matter. . . . Accordingly, although [Trump Employee 4] would normally be entitled to fourteen (14) days to respond to the government's motion, we respectfully request (30) days to brief a response, including an *ex parte* submission for the benefit of the Court and potential conflicts counsel.").

[9] Relatedly, the assertion of the Special Counsel's Office that the witness's then-counsel failed to object on venue grounds does not affect the underlying question of the impropriety of the Special Counsel's Office's actions. Instead, by the Special Counsel's Office's own telling, Trump Employee 4's representation was never imbued with any conflict of interest; the witness was always advised on the right to provide information to the government; and the Special Counsel's Office's claim of conflict now arising from its actions before the D.C. grand jury is unsupported.

in this case and to undermine attorney-client relationships without any basis specific to the facts of such representation," Response at 8 (Aug. 17, 2023) (ECF No. 126), he does not do so lightly.

The argument of the Special Counsel's Office, that it did not use the D.C. grand jury for the purpose of adding to the store of witnesses in the instant case, is unpersuasive.[10] The theory the Special Counsel's Office offers, that having called a witness before a distant grand jury to answer questions about events in this District and having nominally created an additional venue in which to claim that the witness was untruthful, should not be condoned. The approach taken by the Special Counsel's Office – which unquestionably affected the presentation of evidence in the existing Southern District of Florida case – is a tactic inconsistent with precedent barring the use of a grand jury for trial purposes.[11] The Court should preclude Trump Employee 4 from testifying at a trial in this matter. Should the Court not be prepared to so hold, Mr. Nauta respectfully requests the opportunity to brief the question as additional details concerning the Special Counsel's Office utilization of a Grand Jury in a faraway District come to light.

In the meantime, the Court should hold a *Garcia* hearing and inquire *ex parte* of Mr. Nauta whether he has been fully advised of his rights as relates to this matter.

[SIGNATURE ON NEXT PAGE]

---

[10] The Special Counsel's Office implies that it will stop doing so, noting that the D.C. grand jury terminated two weeks ago. Regardless, the harm has been done, and not only should the Special Counsel's Office be prevented from intruding further into representational matters, but the Special Counsel's Office's actions also warrant exclusion as the only adequate remedy and protective measure.

[11] The Special Counsel's Office cites particularly inapt conflict cases which reveal the lack of a sound basis to request the hearing that the Office now seeks. *See United States v. Brau*n, No. 19-80030-CR, 2019 WL 1893113, at *1 (S.D. Fla. Apr. 29, 2019) (hearing as to, "two defense attorneys from [the same firm, jointly] representing two defendants in this case[.]"); United States v. Schneider, 322 F. Supp. 3d 1294, 1296-97 (S.D. Fla. 2018) (addressing representation of two co-defendants, where counsel represented first defendant in his role as a cooperating government witness, and then thereafter newly took on representation of the second defendant, the target of the cooperation, while still representing the first cooperating defendant). The case at bar – involving limited former representation, no ongoing joint representation, no indication of conflict resulting from the representation itself, no indication of attorney-client privileged information at issue, and no occasion for cross-examination by the counsel in question (as other counsel is available for same) - is entirely incompatible with these cases and demonstrates the insubstantiality of the Special Counsel's Office's present use of a conflict rationale.

Dated: September 5, 2023			Respectfully submitted,

			_____*/s/ Stanley E. Woodward, Jr.*_____
			Stanley E. Woodward, Jr. (*pro hac vice*)
			400 Fifth Street Northwest, Suite 350
			Washington, District of Columbia  20001
			202-996-7447 (telephone)
			202-996-0113 (facsimile)
			stanley@brandwoodwardlaw.com

			_____*/s/ Sasha Dadan*_____
			Sasha Dadan, Esq. (Fl. Bar No. 109069)
			Dadan Law Firm, PLLC
			201 S. 2nd Street, Suite 202
			Fort Pierce, Florida  34950
			772-579-2771 (telephone)
			772-264-5766 (facsimile)
			sasha@dadanlawfirm.com


			*Counsel for Defendant Waltine Nauta*

**Certificate of Electronic Service**

I hereby certify that on September 5, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

*/s/ Sasha Dadan*
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*