UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.

_____/

## SUPPLEMENTAL BRIEF REGARDING SECTION 3 OF CIPA

    Section 3 of the Classified Information Procedures Act (CIPA) governs protective orders that provide for disclosure of classified information to defense counsel but restrict access by the individual defendants. Statutory text, context, history, and purpose confirm this construction of Section 3. An interpretation of CIPA that would require the Government to proceed, instead, under Section 4 to permit disclosure of classified information to defense counsel while restricting access by individual defendants runs contrary to the statutory text and would result in an inefficient process requiring the Court to make wholesale determinations on the disclosure of large quantities of classified documents without narrowing by the parties. The Court should instead proceed under Section 3, retain the protective orders the Court entered for defendants Waltine Nauta and Carlos De Oliveira (ECF Nos. 151, 152), and add a provision that would permit defense counsel to seek approval from the Government or the Court to disclose specific classified documents to Nauta or De Oliveira on a case-by-case basis. There is ample good cause for a protective order with these features. A protective order that permits case-by-case requests would allow the Court to make

targeted determinations after defense counsel—who are in the best position to proffer an explanation for why access by Nauta or De Oliveira might be necessary—make specific requests. In some instances, there may be no need for the Court's involvement at all if the Government assents to a request for access. This approach would promote efficiency and permit the Court, if necessary, to make informed disclosure determinations based on the relevant information after narrowing of the issues by the parties.

## BACKGROUND

Section 3 and Section 4 of CIPA establish procedures to govern discovery of classified information from the Government to defendants in criminal cases. *See* 18 U.S.C. App. 3, §§ 3-4. Section 3 provides that "[u]pon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." *Id.* § 3. Section 4 provides that a "court, upon a sufficient showing, may authorize the United States" to (1) "delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure," (2) "substitute a summary of the information for such classified documents," or (3) "substitute a statement admitting relevant facts that the classified information would tend to prove." *Id.* § 4. In short, Section 3 governs protections for classified documents that the Government has disclosed or will disclose to the defense, whereas Section 4 allows the Government to avoid disclosure to the defense entirely by deleting classified information from discovery or providing a substitute. *See infra* pp. 9-11.

Pursuant to Section 3, the Government filed a motion for a protective order to govern classified information that it intended to disclose to defendants. *See* ECF Nos. 84, 127. As relevant here, the Government sought a protective order that would give defense counsel access to classified

information but would restrict defense counsel from providing classified information to Nauta or De Oliveira unless defense counsel either (1) "seeks and obtains permission from the government," or (2) "the Court orders the government to permit the information to be shared with Defendant Nauta or Defendant De Oliveira, and the government informs the defense that it does not intend to exercise any further rights under CIPA." ECF No. 127-1, ¶¶ 8, 26(j).[1] Nauta and De Oliveira objected to these provisions. Dkt. 105; *see* ECF No. 127, at 1-2.

After a hearing on September 12, 2023, the Court entered protective orders that preclude defense counsel from providing classified information disclosed by the Government in discovery to defendants Nauta and De Oliveira, stating that "[a]ny future disclosures of information to" Nauta or De Oliveira "shall be governed by subsequent order." ECF No. 151, ¶¶ 8, 26(j); ECF No. 152, ¶¶ 8, 26(j).[2] The Court ordered the Government, Nauta, and De Oliveira to "file supplemental briefs on the ordinary meaning and scope of Section 3 of CIPA." ECF No. 153, at 1-2. The Court specified:

> The briefs shall evaluate the text of the provision, the statutory context of CIPA as a whole (including the meaning of the words in Section 3 as applied throughout the statute), any decisional law interpreting Section 3, and any relevant historical, legislative, or secondary materials informing a proper understanding of Section 3. Included in this analysis should be a corresponding study of, and comparison to, Section 4 of CIPA, along with any pertinent analysis of Rule 16 of the Federal Rules of Criminal Procedure.

---

[1] The Government identified two limited exceptions, explaining that Nauta should be permitted to personally examine the classified discovery the Government has reason to believe Nauta has previously seen—the unredacted version of the picture included in paragraph 32 of the superseding indictment and the document charged in Count 8. *See* ECF No. 120, at 7.

[2] The protective order entered by the Court for Nauta also reflected the Government's agreement to disclose to Nauta the picture included in paragraph 32 of the superseding indictment and the document charged in Count 8. ECF No. 151, ¶ 26(j).

*Id.* at 2. This supplemental brief responds to the Court's order. The Government intends to file a Section 4 motion on or before October 10, 2023, to delete and/or substitute certain classified discovery it has not disclosed.

## ARGUMENT

**I.     Section 3 of CIPA Governs Protective Orders That Provide Defense Counsel with Access to Classified Information but Restrict Access by Individual Defendants**

Section 3 provides the mechanism for the Government to seek, and the Court to issue, a protective order that permits defense counsel to access classified information that the Government discloses in discovery while restricting access by individual defendants. Section 3 provides that courts have the authority to issue protective orders to protect against additional disclosure of classified information "disclosed by the United States to any defendant" in a criminal case. 18 U.S.C. App. 3, § 3. The term "defendant" in Section 3 refers not only to the individual defendant but also defense counsel acting as the defendant's agent. This construction of the language of Section 3 is supported by the text of Section 3 and its neighboring provisions, the statutory context of those provisions and Rule 16 of the Federal Rules of Criminal Procedure, and the history and purpose of CIPA. Thus, for purposes of Section 3, the Government disclosed classified information to "defendant[s]" when it made the classified discovery available to counsel for Nauta and De Oliveira, and it is appropriate for the Court to enter a protective order under Section 3 that precludes the additional disclosure of that classified information, including by restricting disclosure to Nauta and De Oliveira individually.

**A.     The Term "Defendant" As Used in CIPA Includes Counsel**

Section 3 refers to the "defendant" and does not expressly refer to defense counsel. However, the "natural and ordinary usage" of the term "defendant" includes the individual defendant and "counsel alike." *Sealover v. Carey Canada Inc.*, 996 F.2d 42, 46-47 (3d Cir. 1993)

4

(discussing the plain meaning of the terms "plaintiff" and "defendant" as used in Pennsylvania Rule of Civil Procedure 238). When the term "defendant" is used to refer to a participant in a criminal case, "any reasonable interpretation" of the term "must include the defendant's lawyer as well." *United States v. Taylor*, 659 F.3d 339, 348 (4th Cir. 2011) (discussing reference to "the defendant" in a Supreme Court opinion). This plain meaning of the term "defendant" derives from the longstanding principle that "the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *New York v. Hill*, 528 U.S. 110, 115 (2000) (quotations omitted). The "exceptions to this rule are few." *Hemphill v. New York*, 595 U.S. 140, 157 (2022) (Alito, J., concurring). "[D]ecisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence," and "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Hill*, 528 U.S. at 115 (internal citations omitted). Accordingly, a defendant will be deemed to be "fully aware" of information that defense counsel knew about, even if defense counsel did not share that information with the individual defendant himself. *United States v. Mbanefo*, No. 21-13693, 2022 WL 2983856, at *2 (11th Cir. July 28, 2022) (per curiam) (unpublished) (concluding that the defendant "through his counsel was fully aware of" information that his counsel knew during trial but did not share until later and therefore the information was not newly discovered evidence).[3]

---

[3] Similarly, although Congress has authorized "[a] defendant" to "file a notice of appeal," 18 U.S.C. § 3742(a), a notice of appeal filed by a defendant himself typically has no legal effect if the defendant is represented by counsel, *see United States v. Tarabein*, 798 F. App'x 576, 579 (11th Cir. 2020) (unpublished) ("[B]ecause [the defendant] was represented at the time he filed his pro se notice of appeal, we are entitled to ignore that filing."); *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019) (district court abused its discretion in treating a pro se filing as a notice of appeal where the defendant was represented by counsel).

Consistent with these principles, the Government fulfills its discovery obligations to a defendant in any criminal case by "provid[ing] defense counsel with" discovery. *United States v. Agurs*, 427 U.S. 97, 98-99 (1976) (discussing *Brady* obligations); *see Nelson v. Robertson*, No. 19-CV-08057, 2020 WL 1245339, at *3 (N.D. Cal. Mar. 16, 2020) ("*Brady* and its progeny provide no basis for any claimed right of a criminal defendant to obtain directly from the government photocopies of the discovery that has been provided to the defense counsel."). The "production of materials to a party's attorney alone falls within the common meaning of 'discovery.'" *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 126-28 (2d Cir. 2008); *see also United States v. Campa*, 529 F.3d 980, 989 (11th Cir. 2008) (stating that Section 4 of CIPA permits the Government to keep discovery from "defense counsel"). A defendant represented by counsel is "not entitled to personally receive any discovery materials." *United States v. Parsons*, No. 13-CR-104, 2015 WL 857313, at *15 (E.D. Pa. Feb. 27, 2015).

The term "defendant" in Section 3 accordingly means either the individual defendant or defense counsel acting as the defendant's agent, a construction that is confirmed by the presumption that Congress legislates against "traditional background principles." *Burrage v. United States*, 571 U.S. 204, 214 (2014). It has long been established that in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962). A client "is, in law, affected with notice of all facts, of which notice can be charged upon his attorney." *Smith v. Ayer*, 101 U.S. 320, 321 (1879). Congress accordingly did not need to expressly identify defense counsel in Section 3 to establish that classified information the United States has disclosed to a defendant's counsel in discovery is "classified information disclosed by the United States to any defendant." 18 U.S.C. App. 3, § 3.

Statutory context confirms that Congress knew how to differentiate between a defendant and his attorney when necessary and that the term "defendant" as used in Section 3 refers to either the individual defendant or defense counsel acting as the defendant's agent. Several neighboring provisions use the term "defendant" to refer to conduct that is almost invariably carried out by defense counsel, not an individual defendant. *See, e.g.*, 18 U.S.C. App. 3, § 5(a) (providing that "[i]f a defendant reasonably expects to disclose" classified information at trial, "the defendant shall . . . notify the attorney for the United States and the court in writing"); *id.* § 5(b) (providing that the court "may prohibit the examination by the defendant of any witness" as a sanction for failing to comply with notice requirements). In contrast, Section 2 provides that "[n]o admission made by the defendant or by any attorney for the defendant" at a CIPA pretrial conference "may be used against the defendant unless the admission is in writing and is signed by the defendant and by the attorney for the defendant." 18 U.S.C. App. 3, § 2.

The reason for Congress's distinction in Section 2 between client and counsel becomes clear in light of the ordinary background rule that a defense counsel's oral admissions may bind the defendant. *See, e.g.*, *United States v. Lopez-Guendulain*, 238 F. App'x 164, 166 (7th Cir. 2007) (unpublished) (explaining that "[d]efense counsel's admissions can bind the defendant," and citing cases); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (holding that defendant was bound by defense counsel's admission during closing arguments); *United States v. Blood*, 806 F.2d 1218, 1221 (4th Cir. 1986) ("[A] clear and unambiguous admission of fact made by a party's attorney in an opening statement in a civil or criminal case is binding upon the party."); *United States v. Adams*, 422 F.2d 515, 518 (10th Cir. 1970) (holding that defendants were bound by admissions made by counsel during trial). In short, Congress's language in Section 2 must be read as an intentional and express deviation from the rule that the defendant is deemed bound by the

7

acts of his lawyer-agent. That Congress chose to expressly differentiate between the client and counsel in Section 2 (in light of the operative background law) and *not* in Section 3 (in light of similarly well-established background law) underscores its intention that the term "defendant" as used in CIPA Section 3 (and elsewhere) refers to either the defendant individually or defense counsel. In sum, Section 3 follows the standard usage in which "defendant" means *either* the defendant or the defendant's counsel, while Section 2 deviates from standard usage by making express that *both* the individual defendant and counsel must sign in writing any admission at a Section 2 pretrial conference in order for it to be used against the defendant.

The use of the term "defendant" in Section 3 to refer to the defendant individually or defense counsel acting as the defendant's agent is also consistent with common legal usage. Courts regularly use the term "defendant" when referring to defendant's counsel. *See, e.g.*, *United States v. Mesa*, 247 F.3d 1165, 1170 (11th Cir. 2001) ("At oral argument Defendant argued that an objection was not made at the 1997 Re-sentencing because the judge had limited the scope of the re-sentencing."); *United States v. Steele*, 178 F.3d 1230, 1236 (11th Cir. 1999) (explaining that "the defendant cross-examined the witness" at trial); *United States v. Evans*, 754 F. App'x 898, 902 (11th Cir. 2018) (unpublished) ("Tuten, the victim, was present at the hearing and Defendant thoroughly cross-examined him."); *United States v. Penton*, 303 F. App'x 774, 781 (11th Cir. 2008) (unpublished) ("Finally, Defendant asserted at oral argument that the Government did not present sufficient evidence with respect to whether the use was likely 'to cause confusion.'"); *United States v. Joseph*, 156 F. App'x 180, 183 (11th Cir. 2005) (unpublished) ("Both defendants cross-examined witnesses present during the taped meetings.").

**B.     Section 4 Is Not a Proper Mechanism to Restrict Individual Defendants from Reviewing Classified Information Disclosed to Counsel**

A textual examination of Section 4 further establishes that Section 3 is the appropriate vehicle for permitting disclosure of classified information to the defendant via disclosure to defense counsel while restricting the individual defendant's access to the classified information. Section 4 specifies that the Government, upon a sufficient showing, may "delete" classified information from "documents to be made available to the defendant through discovery" or provide a "substitute." 18 U.S.C. App. 3, § 4. Because Section 4 applies to "documents *to be made available* to the defendant," *id.* (emphasis added), it applies only before the Government has disclosed classified information to the defendant. As in Section 3, the term "defendant" in Section 4 refers to the individual defendant and defense counsel as the individual defendant's lawyer-agent. Section 4 therefore permits the Government to avoid disclosure entirely—to the individual defendant or defense counsel—by deleting classified information from discovery or "provid[ing] substitutes in place of classified information that would otherwise be discoverable." *Campa*, 529 F.3d at 989. But once the Government discloses classified information to defense counsel, Section 4 no longer applies. Thus, Section 4 does not—and cannot—apply to classified information that the Government has disclosed or intends to disclose, and this reading is supported by the plain meaning of the operative terms in Section 4: "delete" and "substitute." There can be no deletion or substitution of classified information that the Government has already disclosed. This confirms that Section 3, rather than Section 4, provides the correct mechanism to limit additional disclosure once classified information has been provided to the defense team.[4]

---

[4] The Government intends to utilize Section 4 in this case. In a filing on or before October 10, 2023, the Government will be asking for deletion or substitution for certain documents that the Government has not disclosed to defense teams. But with respect to the classified documents that

The history of Section 3 and Section 4 and their relationship to Rule 16 further support this construction of Section 3. CIPA "clarifies the district court's existing power to restrict or deny discovery under the Federal Rules of Criminal Procedure." *United States v. El-Mezain*, 664 F.3d 467, 520 (5th Cir. 2011); *see* S. Rep. No. 96-823, at 6 (1980) (explaining that Section 3 "makes explicit the protective orders permitted under" Rule 16, and Section 4 "should be viewed as clarifying the court's powers under Federal Rule of Criminal Procedure 16(d)(1)"); H.R. Rep. No. 96-831, pt. 1, at 26-27 (1980) (explaining that Section 3 "is intended to codify the well established practice . . . to issue protective orders," and Section 4 "is a recognition that existing discovery provisions may be unclear when classified information is involved" and is "intended to back up existing procedures"). Rule 16 provides that "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," Fed. R. Crim. P. 16(d)(1), and courts have long entered Rule 16 protective orders that permit defense counsel to access discovery but restrict access by individual defendants, *see, e.g.*, *United States v. Lee*, 374 F.3d 637, 652 (8th Cir. 2004); *United States v. Herrero*, 893 F.2d 1512, 1524 (7th Cir. 1990); *United States v. Byrd*, No. 22-CR-497, 2023 WL 2822154, at *1 (S.D.N.Y. Apr. 6, 2023); *United States v. Cousin*, No. 20-CR-10071, 2022 WL 314853, at *36 (D. Mass. Feb. 2, 2022); *see also United States v. Ornelas*, 853 F. App'x 80, 87 (9th Cir. 2021) (unpublished) ("[I]n the current procedural posture, good cause exists . . . for an order provisionally limiting disclosure of the documents to only defense counsel and not to [defendant] himself."). "CIPA does not purport to limit" a court's authority to enter protective orders, *United States v. Amawi*, 695 F.3d 457, 472 (6th Cir. 2012); rather, "CIPA clarifies district courts' power under [Rule 16(d)] to issue protective orders denying or restricting

---

the Government has already disclosed, a protective order under Section 3 is the correct mechanism to protect against further disclosure.

10

discovery for good cause," *United States v. Muhtorov*, 20 F.4th 558, 628 (10th Cir. 2021) (quotations omitted).

In summary, as a leading treatise also concludes, "the plain language of the statute makes clear" that "Section 3 applies only to information that has already been disclosed by the government." David S. Kris & J. Douglas Wilson, *National Security Investigations & Prosecutions* § 26:4 (Apr. 2023). Section 4, in contrast, provides a mechanism to avoid disclosure altogether and instead delete classified information from discovery or provide a substitute. *See id.* ("To prevent any discovery of classified information . . . the government may rely on CIPA Section 4[.]"). For purposes of Section 3, as under Rule 16, information is disclosed to the defendant when it is disclosed to defense counsel acting as the defendant's agent, and a court possesses the authority under Section 3 to protect against additional disclosure by restricting access by the individual defendant. *See id.* ("[T]he government may ask that that a CIPA Section 3 protective order bar defense counsel who has obtained the requisite security clearance from sharing some or all of that information with his client.").

## II. A Protective Order Permitting Defense Counsel to Access Classified Information but Restricting Access by Nauta and De Oliveira Is Appropriate

A protective order that permits disclosure of classified information to defense counsel but restricts access by Nauta and De Oliveira is appropriate given the Government's interest in maintaining the secrecy of the classified information and Nauta's and De Oliveira's lack of need to access the information. Defense counsel will be in the best position to proffer an explanation for the needs of the defense to discuss classified information with Nauta or De Oliveira, and thus the Government submits that the Court should supplement the protective orders it has entered to add a provision that would permit defense counsel to seek the assent of the Government or the Court to disclose specified classified information to Nauta or De Oliveira on a case-by-case basis.

11

Section 3 provides that a court, upon motion of the Government, "shall issue" a protective order to protect against disclosure of classified information disclosed to a defendant. 18 U.S.C. App. 3, § 3. Under Federal Rule Criminal Procedure 16(d)(1), which provides that a court "may" restrict discovery for good cause, "the protection of information vital to the national security" is "[a]mong the considerations to be taken into account by the court." Fed. R. Crim. P. 16 advisory committee's notes to 1966 amendment. A protective order that permits disclosure of classified information to counsel but restricts access by individual defendants is appropriate when the Government's interest in protecting sensitive information outweighs any interest the defendant may have in personally inspecting the material. *See In re Terrorist Bombings*, 552 F.3d at 126-28; *United States v. Rezaq*, 156 F.R.D. 514, 524-25 (D.D.C. 1994).

Ample cause exists to restrict Nauta's and De Oliveira's access to classified information while permitting access by their counsel. The Government generally has a strong interest in protecting classified information. *See United States v. Asgari*, 940 F.3d 188, 191 (6th Cir. 2019) (Government may withhold classified information from defense counsel with a security clearance); *United States v. Daoud*, 755 F.3d 479, 484-85 (7th Cir. 2014) (same). And the classified discovery in this case contains highly sensitive information that the Government has an exceedingly strong interest in protecting. *See Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *11 (11th Cir. Sept. 21, 2022) (concluding that "allowing the special master and Plaintiff's counsel to examine the classified records would separately impose irreparable harm" because the agency responsible has broad discretion to protect classified information and "determine who may have access to it" and therefore "courts should order review of such materials in only the most extraordinary circumstances") (quotations omitted). Although the Government has agreed to allow Nauta access to classified documents that the Government has reason to believe he has previously

12

seen, with respect to the remaining documents, there is no basis to conclude that either Nauta or De Oliveira has a need to know the classified information. *See* Exec. Order 13526 § 4.1(a) (access to classified information limited to those who have a need to know); *id.* § 6.1(dd) (defining need to know); *see Daoud*, 755 F.3d at 484 ("[I]n addition to having the requisite clearance the seeker must convince the holder of the information of the seeker's need to know it.").

Nauta and De Oliveira are not charged with any offenses that warrant their personal access to highly sensitive classified information. Nauta and De Oliveira are charged with conspiring to hide records from a grand jury—documents with classification markings and Mar-a-Lago security footage—and making false statements about their conduct. *See* Superseding Indictment ¶¶ 95, 99, 101, 103, 105, 112, 114, 116, 120. None of the offenses charged against Nauta or De Oliveira requires proof that any of the documents in this case contained national defense information. Access to the documents by defense counsel is adequate to confirm that the documents are plainly and conspicuously marked classified. Whether the documents contained national defense information is simply not pertinent to whether Nauta and De Oliveira participated in a collective effort to help defendant Donald J. Trump "keep classified documents he had taken with him from the White House" and "hide and conceal them from a federal grand jury." *Id.* ¶ 96.[5]

---

[5] The Government provides clarification in light of the Court's statement that the Government has "acknowledged" that "the classified information in this case, described on September 12, 2023, as consisting of approximately 3,500 pages classified at various levels, is discoverable information pursuant to Rule 16(a)(1)(E)." ECF No. 153, at 2 n.2. The Government has provided classified discovery to Nauta's and De Oliveira's counsel that exceeds its obligations under Rule 16(a)(1)(E). The classified information that the Government intends to use in its case-in-chief at trial against any of the three defendants is discoverable under Rule 16(a)(1)(E)(ii) to all of them. *See, e.g.*, *United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239207, at *2 (D.D.C. Apr. 27, 2007). This will include at least documents corresponding to Counts 1-32 of the superseding indictment that the Government will present to the jury in its case-in-chief at trial. And the photograph in paragraph 32 of the superseding indictment, which the Government obtained from Nauta's phone, is discoverable to Nauta under Rule 16(a)(1)(e)(iii) because it "was

Although Nauta and De Oliveira do not have a need to review the classified discovery, the Court should nonetheless supplement the protective order to allow defense counsel to seek the assent of the Government or the Court to disclose specific classified documents to Nauta or De Oliveira on a case-by-case basis. A provision of the protective order that allows for these procedures would provide a safety-valve in case defense counsel—after reviewing the classified documents—believes that their clients have a need to know the information contained in specific documents. Defense counsel currently have access to the classified discovery and are in the best position to proffer an explanation for that need to know. If they believe that access by their clients would be necessary, the Government will meet and confer with counsel, consider any information defense counsel provides, and make a good-faith determination whether it can assent to any request. And "if there is classified information that defense counsel wish to share with their clients and the Government has not consented, counsel may ask the Court for relief at that time." *United States v. Chalmers*, No. 05-CR-59, 2007 WL 591948, at *2 (S.D.N.Y. Feb. 27, 2007) (rejecting defense objection to protective order). A tailored request for access to specific documents and conferral by the parties would focus any dispute to be decided by the Court. And although the restrictions on Nauta's and De Oliveira's access to pretrial discovery do not impinge on their constitutional rights, *see, e.g.*, *United States v. Cordova*, 806 F.3d 1085, 1089 (D.C. Cir. 2015) (rejecting claims that restrictions on pre-trial discovery violated defendants' Fifth or Sixth Amendment rights), these additional procedures would allow the Court to further protect Nauta's and De Oliveira's ability to assist in their defense.

---

obtained from or belongs to" him. Fed. R. Crim. P. 16(a)(1)(e)(iii). But none of the other classified discovery the Government provided to Nauta's and De Oliveira's counsel is discoverable to them under Rule 16(a)(1)(E). As discussed above, none of this discovery "is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(e)(ii). And given the extreme sensitivity of that discovery, a protective order precluding access to Nauta and De Oliveira themselves is appropriate.

As discussed above, the plain text of Section 4 forecloses its application here, but regardless, proceeding under Section 3—pursuant to a protective order that permits defense counsel to seek access for their clients on a case-by-case basis—is far more effective and efficient for the Court and the parties. Otherwise, once the Government concluded that Nauta and De Oliveira lack a need to know the classified information, it would have been forced to seek an order via Section 4 to restrict access by the individual defendants to all documents before providing any documents to defense counsel. *See Trump*, 2022 WL 4366684, at *8 ("[A] person may have access to classified information only if, among other requirements, he 'has a need-to-know the information.'") (quoting Exec. Order 13526 § 4.1(a)(3)). This would have substantially delayed production to defense counsel and would have required the Court to review and rule on all of the documents provided in discovery rather than simply the specific documents, if any, that defense counsel can articulate a need for their clients to see. As the Fifth Circuit has recognized, requiring a "wholesale determination" as to whether classified information should be disclosed under CIPA "without some narrowing by the parties" would be a "waste of precious judicial resources." *United States v. El-Mezain*, 664 F.3d 467, 524 (5th Cir. 2011) (emphasis omitted) (rejecting challenge to procedures that restricted access to defendants but gave access to defense counsel and permitted specific declassification requests to the Government and the Court). A case-by-case procedure under a Section 3 protective order allows the parties to narrow any issues to be decided by the Court by allowing defense counsel to proffer why access to specific classified documents by Nauta or De Oliveira is needed. And such a procedure also avoids the need for the Court's intervention if defense counsel, after reviewing the documents, determines that their clients have no need to

review the documents, or if the Government, after hearing from defense counsel regarding a specific request, consents to its production.[6]

Courts regularly enter protective orders under Section 3 of CIPA that permit disclosure to defense counsel but restrict access to defendants, including in cases that lack a link to terrorism or transmission of national defense information to foreign nationals. *See, e.g.*, *United States v. Martin*, No. 17-CR-69, ECF No. 55 (D. Md.) (prosecution under 18 U.S.C. § 793 for unlawful retention of classified documents containing national defense information by a former NSA employee, a U.S. citizen); *United States v. Serageldin*, No. 18-CR-10436, ECF No. 39-1 (D. Mass.) (prosecution under 18 U.S.C. § 793 of an engineer with a security clearance at a defense contractor for unlawful retention of documents marked as Secret containing information pertaining to missile systems); *United States v. Kingsbury*, No. 21-CR-101, ECF No. 18 (W.D. Mo.) (prosecution of a former FBI intelligence analyst under 18 U.S.C. § 793 for unlawful retention of classified documents containing national defense information); *see also* ECF No. 84, at 3 (citing additional protective orders). And courts have regularly approved protective orders with these features over defense objections. *See United States v. Hausa*, 232 F. Supp. 3d 257, 263 (E.D.N.Y. 2017); *United States v. Al Fawwaz*, No. 98-CR-1023, 2014 WL 6997604, at *1 (S.D.N.Y. Dec. 8, 2014); *El-Mezain*, 664 F.3d at 523; *United States v. Ahmed*, No. 10-CR-131, 2011 WL 4915005,

---

[6] The Government is not aware of a Court utilizing Section 4 rather than Section 3 to give defense counsel access to classified information while restricting access by individual defendants. Courts have instead entered protective orders under Section 3 containing these features, which allows prompt disclosure of classified materials to the defense. As discussed, requiring the Government to proceed under Section 4 if it believed individual defendants did not possess a need to know classified information would significantly slow down discovery and cause unnecessary delay. Rather than providing classified information to defense counsel expeditiously pursuant to a protective order as has been done in this case, the Government, to effectuate its duty to protect classified information, would be forced to withhold all discovery at the outset from both defense counsel and individual defendants and then seek court review, potentially of large amounts of documents. This procedure would disserve the parties and the courts.

16

at *2-*3 (S.D.N.Y. Sept. 23, 2011); *In re Terrorist Bombings*, 552 F.3d at 126-28; *Chalmers*, 2007 WL 591948, at *2; *United States v. Moussaoui*, No. 01-CR-455, 2002 WL 1987964, at *1 (E.D. Va. Aug. 23, 2002); *Rezaq*, 156 F.R.D. at 524. Such an order, with a provision that permits defense counsel to request that Nauta or De Oliveira be given access to specific documents on a case-by-case basis, is warranted here as well.

## CONCLUSION

The protective orders issued by the Court, which permit disclosure of classified information to defense counsel but restrict access by Nauta and De Oliveira, are appropriate under Section 3 of CIPA. The Court should make one modification and add a provision that permits defense counsel to seek assent from the Government or the Court to disclose specific classified information to Nauta and De Oliveira on a case-by-case basis.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:     /s/ *Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946

        John M. Pellettieri
        Assistant Special Counsel
        Special Bar ID #A5503076

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

        Julie A. Edelstein
        Senior Assistant Special Counsel
        Special Bar ID #A5502949
        950 Pennsylvania Avenue, NW
        Washington, D.C. 20530

September 25, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *David V. Harbach, II*
David V. Harbach, II