**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP, WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA**,

      Defendants.

_____/

**ORDER FOLLOWING CIPA SECTION 3 SUPPLEMENTAL BRIEFING**

**THIS MATTER** comes before the Court following the Sealed Hearing on the Motions for

Protective Order pursuant to Section 3 of the Classified Information Procedures Act (CIPA)[1] and

the supplemental briefs filed thereafter by the Office of the Special Counsel (OSC) and Defendants

Nauta and De Oliveira [ECF No. 162 (OSC brief); ECF No. 163 (Defendant Nauta brief); ECF No.

164 (Notice of Adoption by Defendant De Oliveira); *see* ECF Nos. 84, 124, 127, 149].   To avoid

delay in discovery review by defense counsel, the Court entered protective orders following the

Sealed Hearing; granted the OSC's motion as to Defendant Trump; and granted in part the OSC's

motions as to Defendants Nauta and De Oliveira [ECF Nos. 151–153].   The Court left open the

need to modify and/or supplement those protective orders, however, in light of language offered

by the OSC purporting to use Section 3 of CIPA (not Section 4) to restrict Defendants Nauta and

---

[1]  Pub. L. 96–456, 94 Stat. 2025, 18 U.S.C. App. III §§ 1–16 (1980) (hereinafter cited as "CIPA" with the associated section).

Oliveira almost entirely from reviewing classified discovery to be produced in the case, and then placing the burden to justify otherwise on defense counsel [ECF No. 84-1 ¶ 26(j); ECF No. 127-1 ¶ 26(j)].   The Court also ordered supplemental briefing on the meaning of Section 3 [ECF No. 153 pp. 1–2].

Upon a review of these materials and the full record, and pursuant to the statutory text and context of CIPA, the Court hereby reaffirms the protective orders previously entered in this case pursuant to CIPA Section 3 [ECF Nos. 150–152].[2]   Any request by the OSC to delete specified items of classified discovery from any Defendant, or to substitute classified discovery with a summary or statement of relevant facts from any Defendant, shall be made in the form of a pre-trial motion under Section 4 in accordance with deadlines to be set by separate order, and then later under Section 6, if applicable, for use of classified information at trial.[3]   This Order does not authorize the disclosure of any classified information to any Defendant beyond the terms of the existing protective orders.

## OVERVIEW[4]

The OSC moved for entry of a protective order as to all three Defendants "pursuant to Section 3 of the Classified Information Procedures Act" [ECF Nos. 84, 127].   The full text of

---

[2]   The protective order entered as to Defendant Trump and associated defense counsel was entered without objection except as to a conferral-location issue on which the Court overruled Defendant Trump's objection [ECF Nos. 104, 149].   This Order, therefore, concerns primarily the legal issues raised as to the OSC's proposed protective orders as to Defendants Nauta and De Oliveira.

[3]   Earlier in this case, the OSC submitted its Section 10 notice to defense counsel for Defendant Trump only, it appears [ECF No. 157].   Further Section 10 discussion may be warranted to the extent the Section 10 notice is based on information not produced to Defendant Trump.

[4]   This Order assumes an understanding of the procedural history and factual background of this case to date, providing relevant information as necessary to illuminate the discussion.

Section 3 states as follows: "Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States."   CIPA § 3.   The protective orders are not brought pursuant to any other section of CIPA.

As proposed by the OSC, and as later issued by the Court pending further briefing, the protective orders applicable to Defendants Nauta and De Oliveira give their "defense attorneys" the ability to review the classified discovery produced by the OSC under strict security procedures as delineated therein [ECF Nos. 84-1, 151–152].   But, the protective orders specifically prohibit those "defense attorneys" from sharing with their client "defendants" any of the classified discovery in any form, with the exception of one document marked as classified that Defendant Nauta is said to have already seen pre-indictment [ECF Nos. 84-1, 127-1; ECF Nos. 151–152].[5] The proposed protective orders then contemplate a procedure by which the respective defense attorneys can seek permission to share specific classified discovery with Defendants—specifically, by attempting to justify their request to the satisfaction of the OSC, or by obtaining a Court order authorizing disclosure of the specific information to "defendants," assuming no interlocutory appeal or other CIPA remedy pursued by the OSC [ECF No. 84-1 ¶ 26(j); ECF No. 127-1 ¶ 26(j)]. More broadly, and with the aim of preventing disclosure of classified information produced in discovery, the protective orders as proposed—and ultimately entered—contain specific restrictions on the manner of review of classified discovery and impose severe sanctions for violations of the protective orders, including contempt of Court and referral for criminal prosecution

---

[5]  Prior estimates of the volume of classified discovery have hovered around 3,500 pages but have been the subject of debate in numerous discovery filings, including pending motions for a continuance of pre-trial and trial deadlines [ECF No. 153 p. 2 n.2].   Such matters are beyond the scope of this Order but will be addressed separately following the November 1, 2023, hearing on scheduling [ECF No. 192].

[ECF Nos. 84-1, 127-1, 151–152].

In its filings and argument during the Sealed Hearing, the OSC takes the position that the term "defendant" in Section 3 means, essentially, defense counsel *to the exclusion of defendant*. In the OSC's view, even though Section 3 refers to "defendant"—and even though Congress elsewhere in CIPA specifically referred to "any attorney of the defendant" as distinct from "the defendant," *see* CIPA § 2—the Court nevertheless must read the term "the defendant" in Section 3 to mean "attorney for the defendant" and then simultaneously interpret Section 3 to exclude "the defendant" facing criminal indictment, at least in cases where the government proffers a basis to object to such disclosure pretrial.

For the reasons that follow, the Court cannot agree with this broad and atextual interpretation, which although presented as "supported by the statutory text" of CIPA [ECF No. 162 p. 4], really amounts to an expedient reading of Section 3 that is at odds with its plain meaning.   This is not to say that the OSC will be unable to make the required showing to authorize deletion or substitution of discoverable classified information, or parts thereof, from Defendants.   But the mechanism by which to make that showing for pre-trial discovery purposes is Section 4, not Section 3.

## RELEVANT PROVISIONS OF CIPA

The Court below summarizes the relevant provisions of CIPA, enacted in 1980 "to provide certain pretrial, trial, and appellate procedures for criminal cases involving classified information." 94 Stat. 2025.

Section 1 defines "classified information" to "mean[] any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security

and any restricted data . . . ."   CIPA § 1.

Section 2 permits any party, after indictment, to "move for a pretrial conference" to establish the timing and schedule for matters related to classified discovery.   CIPA § 2. Importantly here, Section 2 twice distinguishes between "the defendant" and an "any attorney for the defendant" by providing that "[n]o admission made *by the defendant or by any attorney for the defendant* at such a conference may be used against *the defendant* unless the admission is in writing and is signed *by the defendant and by the attorney for the defendant*."   *Id*. (emphases added).

Section 3 is one sentence in length and provides as follows: "Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States."   CIPA § 3.

Section 4, in pertinent part, permits the court, "upon a sufficient showing," to

authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

CIPA § 4.   Section 4 also allows the court to allow the United States "to make a request for such authorization in the form of a written statement to be inspected by the court alone."   *Id.*

And Section 6, at one point referred to as the "heart of the bill," S. Rep. 96-823, at p. 7 (1980), permits the United States to seek a hearing for the court to "make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding."   CIPA § 6.   Prior to any Section 6 hearing, "the United States shall provide the defendant with notice of the classified information that is at issue," including "the specific classified information at issue whenever that information previously has

been made available to the defendant by the United States." *Id.* "When the United States has not previously made the information available to the defendant in connection with the case, the information may be described by generic category." *Id.* Section 6 also permits the court to order the United States to "provide the defendant, prior to trial, such details as to the portion of the indictment . . . at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* And where the court authorizes disclosure of classified information under Section 6, Section 6 allows the court to use "alternative procedure[s] for disclosure of classified information," namely, substitution of such classified information with relevant facts or substitution by summaries so long as either the substitution or summary "provide[s] the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.* Finally, Section 6 provides that, whenever the United States objects to a court order authorizing disclosure of information to the defendant under Section 6, the court (following a possible appeal by the United States) shall order "the defendant" not to disclose the information and then "shall dismiss the indictment or information," or alternatively, elect to "dismiss[] specified counts of the indictment or information" or to "strik[e] or preclud[e] all or part of the testimony of a witness." *Id.*[6]

Aside from the particular provisions of CIPA, it is understood that Congress in CIPA did not intend to weaken or broaden a criminal defendant's rights or to alter preexisting standards related to the use or admissibility of information in such cases.[7] Instead, CIPA is a procedural

---

[6] CIPA contains ten additional sections, the basic import of which is to add procedures related to notice of classified information and to publish guidelines and reports related to prosecutions involving classified information. CIPA §§ 5, 7–15.

[7] *See* Section 2054 of the Department of Justice's Criminal Resource Manual, Part I (hereinafter "DOJ Criminal Resource Manual, Section 2054") ("CIPA is a procedural statute; it neither adds

mechanism designed to fully protect those rights while simultaneously creating procedures to anticipate and rule on matters related to classified discovery. *See United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("It is essentially a procedural tool that requires a court to rule on the relevance of classified information before it may be introduced."); *United States v. Wilson*, 901 F.2d 378, 379 (4th Cir. 1990) ("Under CIPA, prior to the introduction of evidence, a court rules on the relevance of classified documents to permit the government to decide whether it wants to proceed with prosecution despite the attendant revelations of classified information.").[8]

---

to nor detracts from the substantive rights of the defendant or the discovery obligations of the government.")   *See* https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa (last updated January 17, 2020).

[8] This characterization of CIPA, expressed in caselaw and Section 2054 of DOJ's Criminal Resource Manual, also appears throughout the legislative history.   *See* S. Rep. No. 96–823, at 8 (1980) ("This provision is intended to retain current practices. A defendant should not be denied the use of information that he would otherwise use simply because of the procedures in this bill.  Thus, on the question of a standard for admissibility of evidence at trial, the committee intends to retain current law regardless of the sensitivity of the information."); *id.* at 9 ("This provision rests on the presumption that the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act."); H.R. Rep. No. 96–831, pt. 1, at 10 (1980) ("H.R. 4736, as amended, establishes these procedures [for resolving classified information issues prior to trial].   It does so in a manner fully protective of the defendant's rights, utilizing techniques employed by courts on an *ad hoc* basis many times in the past."); *id.* at 14 ("It is the Committee's intent that the existing standards of use, relevance, and/or admissibility of information or materials in criminal trials not be affected by H.R. 4736.   The words 'make all determinations concerning the use, relevance, or admissibility of the classified information at issue that would otherwise be made during the trial or pre-trial hearing' which appear in section 102(a)(2)(A), were carefully chosen to reflect this intent.") (citing cases concerning the protection of a criminal defendant's rights to access information that may be material to his defense); *id.* at 27 ("Section 109(b) [current Section 4 in substance] is not intended to affect the discovery rights of a defendant.   Rather, it is a recognition that existing discovery provisions may be unclear when classified information is involved.   Therefore, it is intended to back up existing procedures, and take effect only after discovery of classified information has been ordered, pursuant to Rule 16."); H.R. Rep. No. 96–831, pt. 2, at 3 (1980) ("It is not intended to infringe on a defendant's right to a fair trial or to change the existing rules of evidence and criminal procedure.   Rather it is intended to provide uniformity, rationality and consistency to the present system."); *id.* at 6 ("It is the Committee's intent that there be no impairment of either the defendant's ability to present his case or his right to a fair trial as a result of the operation of this section."); *id.* at 7 ("Indeed, it is the Committee's intent that all hearings conducted under section

## DISCUSSION

Turning now to the section of CIPA directly at issue, Section 3 commands a court, in mandatory terms, to issue a protective order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case."   CIPA § 3. The plain meaning of this provision is that a protective order must issue governing all classified information that is disclosed by the government to a criminal defendant.   No more, no less. Unlike Section 2, *supra* p. 5, Section 3 does not refer to classified information disclosed to "any attorney for the defendant."   Nor does it use any language to qualify the reference to "any defendant" in a manner suggestive of restricting a defendant's right to discovery under basic Rule 16 and discovery principles.   And, even in the relevant DOJ Criminal Resource Manual charged with explaining the provisions of CIPA, Section 3 is not characterized as imposing upon the defendant an obligation to justify his right to receive discoverable information in the way the OSC proposes here [ECF No. 84-1 ¶ 26(j)].[9]

Section 4, by contrast, is the place in CIPA where the Court, following a "sufficient showing" by the United States (potentially on an *ex parte* basis), decides whether to withhold from a defendant discoverable information or, alternatively, to replace such discoverable information with substitutes or statements of relevant facts to be proven by that classified information. CIPA § 4.   In this fashion, Section 4 is the means by which to regulate discovery consistent with

---

102 and 103 [what would later become Section 106] of the bill will be fully adversary and will be concerned only with information to which the defendant has had complete access."); 126 Cong. Rec. 26428, 26503 (1980) ("It is to be emphasized that the bill does not alter the existing standards for determining relevance or admissibility."); *id.* at 26504 (referencing legislators' effort not to "imping[e] on the rights of criminal defendants") ("It is primarily a procedural bill.   It does not attempt to alter substantive rights or to change the rules of evidence or criminal procedure.").

[9]  DOJ Criminal Resource Manual, Part I.C.

Rule 16(d)(1).  *See* Section 2054, DOJ Criminal Resource Manual (equating Section 4 to Rule 16(d)(1)).[10]  Congress in CIPA thus understood how to refer to "any attorney for the defendant" when necessary, *see* CIPA § 2, yet opted for no such restriction in Section 3 or elsewhere in CIPA. And Congress placed in Section 4 the mechanism for deletion/substitution of discovery materials following a proper showing by the United States.

Against the backdrop of these provisions, the OSC attempts to maneuver its way around the plain meaning of Section 3 and the surrounding sections.   Its arguments lack merit.

The OSC makes the uncontroversial point, for example, that "the term 'defendant' *includes* the individual defendant and 'counsel alike'" [ECF No. 162 p. 4 (quoting *Sealover v. Carey Canada Inc.*, 996 F.2d 42, 46–47 (3d Cir. 1993) (emphasis added))]; that "'any reasonable interpretation of the term [defendant] *must include* the defendant's lawyer as well" [ECF No. 162 p. 5 (quoting *United States v. Taylor*, 659 F.3d 339, 348 (4th Cir. 2011) (emphasis added))]; that courts regularly use the term "defendant" when referring to a defendant's counsel [ECF No. 162 p. 8]; and that defendants usually are deemed "bound" by the acts of their agent-attorneys [ECF No. 162 p. 5 (quoting *New York v. Hill*, 528 U.S. 110, 115 (2000))].

All of this is generally unobjectionable—except that it does not reflect the starkly different posture presented here.   This is not a situation in which the United States, as it ordinarily does, makes discovery available to a defendant's attorney on the understanding that the attorney will, and should, review the discovery with defendant.   Quite the contrary, what the OSC advances here, in almost blithe terms, is that it can satisfy its discovery obligations by giving discovery to

---

[10]  H.R. Rep. 96-831, pt. 1, at 27 (1980) (indicating that Section 4 of CIPA—formerly Section 109(b), and materially unchanged from the original language—implements and "backs up" Fed. R. Crim. P. 16(d)(1)); *see also* S. Rep. 96-823, at 6 (1980) (explaining that Section 4 "should be viewed as clarifying the court's powers under Federal Rule of Criminal Procedure 16(d)(1)").

the *agent*-attorney and then banning that attorney (on penalty of criminal prosecution) from sharing

any of it with *his principal*, the defendant.   This broad theory is not consistent with agency

principles or with Rule 16, *Brady*, or the *Jencks* Act.[11]   Fed. R. Crim. P. 16(a)(1)(E) (requiring

government to permit defendant to review items "material to preparing the defense" that are in

government's possession, custody, or control).   Although the OSC offers a handful of non-binding

examples of situations where courts, in limited circumstances [ECF No. 162 p. 10[12]], appear to

restrict portions of discovery from defendants while permitting defense attorneys to review the

materials, those instances do not displace the foundational principal undergirding Rule 16 that

discovery is available to the *defendant*. *See United States v. Jordan*, 316 F.3d 1215, 1249–53

---

[11]  2 David Kris & J. Douglas Wilson, National Security Investigations and Prosecutions § 26:5 (3d ed. 2019, rev. 2023) ("Standing alone, the fact that information is classified does not excuse the government from producing it in discovery.   Instead, if classified information is subject to discovery under *Brady*, Rule 16, or the *Jencks* Act, the government has three options.   First, Intelligence Community personnel and Department of Justice prosecutors can make an effort to determine whether the information can be declassified.   Declassification obviates the need to rely on CIPA and greatly simplifies both the discovery process and trial.   Second, for information subject to Rule 16, the government may move for an order under Rule 16(d) limiting its obligation to produce classified information.   Third, the government may invoke CIPA Section 4, which governs discovery of classified information." (footnote omitted)).

[12]  *See United States v. Lee*, 374 F.3d 637, 642, 652 (8th Cir. 2004) (not permitting defendant to know identity of some witnesses until closer to trial because of witness intimidation concerns while permitting attorney to know their identities sooner); *United States v. Herrero*, 893 F.2d 1512, 1524–26 (7th Cir. 1990) (withholding information from defendant regarding a government informant's identity "who did not even testify and thus offered no evidence against the defendant," while allowing defense counsel to know the informant's identity); *United States v. Byrd*, No. 22-CR-497, 2023 WL 2822154, at *1–2 (S.D.N.Y. Apr. 6, 2023) (labeling some discovery material as "Attorneys' Eyes Only," while allowing the government, in writing, to disclose "Attorneys' Eyes Only" material to defendant at any time without further court order); *United States v. Cousin*, No. 20-CR-10071, 2022 WL 314853, at *36 (D. Mass. Feb. 2, 2022) (agreeing, for purposes of a pre-trial motion to compel, to withhold from defendants the identity of government confidential informant, where defense counsel represented to already know the identity); *United States v. Ornelas*, 853 F. App'x 80, 87 (9th Cir. 2021) (holding that district court "abused its discretion in failing to *at least* order that the materials" related to the identity of a law enforcement agent who died before trial be disclosed to defense counsel only, "as [defendant] himself suggest[ed] in his brief" (emphasis added)).

(11th Cir. 2003) (explaining in detail the government's discovery obligations to "the defendant" under Rule 16). And, even if the restriction of discovery to defendants is necessary and permissible under Rule 16 in certain circumstances, the place to evaluate those issues is not Section 3 but rather Section 4, which does provide a mechanism by which to seek Court restrictions on a defendant's access to discovery following a sufficient government showing. All of this reveals a more fundamental point: while the OSC stresses the simple notion that the term "defendant," in common parlance, "*includes*" a defendant's attorney [ECF No. 162 p. 4], its argument casually and quickly separates that conjunctive equation into something meaningfully different, *i.e.*, going from (a) "defendant" includes "defendant *and* attorney acting as agent of defendant [ECF No. 162 pp. 4–5], to (b) "defendant" means defendant *or* defense counsel *to the exclusion of defendant* [ECF No. 162 pp. 6–8, 11–17]. That exclusion-from-defendant distinction is important to OSC's position, yet nowhere is it contemplated in the text of CIPA or in CIPA's legislative history to the extent it bears on this analysis.[13] [14]   Indeed, as noted, CIPA effected no reduction or broadening

---

[13] H.R. Rep. No. 96-831, pt. 1, at 26 (noting that section 109(a) [now Section 3 unchanged] requires that a protective order issue, if requested, "whenever the government discloses classified information to a defendant in connection with a prosecution, e.g., *Brady* and *Jencks* material," with the details of such orders varying according to the needs of the particular case but generally requiring security and storage procedures to prohibit disclosure of information); H.R. Rep. No. 96-831, pt. 1, at 17 ("In most cases, the classified information the defense wants to use at trial will have been provided to the defendant by the government in the first place, through the discovery process."); S. Rep. 96-823, at 6 (1980) (noting that Section 3 authorizes entry of a protective order for information given to a defendant in the course of Fed. R. Crim. P. 16(d)(1) discovery).

[14] Nor is it at all evident from the cases cited in the OSC's brief on the concept of defense attorneys acting as agents [ECF No. 162 pp. 4–8]. Those authorities support the general notion that fundamental principles of agency law apply to attorney-client relationships [ECF No. 162 pp. 4–8]. *See, e.g.*, *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (holding that a defendant-principal is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney'") (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)); *New York v. Hill*, 528 U.S. 110, 115 (2000) (same). They do not, however, stand for the notion that—by virtue of the agency relationship—the presence of an attorney-agent justifies barring the defendant-principal from reviewing discovery in his case or reading the word

of a defendant's rights to discovery, except to impose an orderly process to permit more reasoned prosecutorial decision-making and to avoid unwarranted disclosure of classified information in a manner consistent with a defendant's right to a fair trial.

The OSC also tries to explain away the clear distinction in Section 2, which as noted, uses the term "any attorney of the defendant" in the same line alongside a reference to "defendant" [ECF No. 162 p. 7].   This argument creates the impression of plausibility but is unpersuasive. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).   The same holds true here; if Congress had intended the term "defendant" in CIPA to mean "attorney of the defendant" alone, it could have specified as such as it did in Section 2.   Yet it did not—choosing instead to use "defendant" uniformly throughout CIPA (and Rule 16) except in that singular reference to "attorney of the defendant" in Section 2.   The OSC's proffered explanation for the distinction in language is again to rely on the general rule that defendants are deemed bound by the acts of their lawyers, and then to justify Section 2 as a deviation from that rule [ECF No. 162 pp. 7–8].   But the common understanding of lawyers acting as agents does not support the OSC's ultimate position here, which, as noted, is that "defendant" in Section 3 does not just mean "defendant (lawyer included)" but rather "lawyer alone, to the exclusion of defendant."   That position also generates even more confusion when read in the context of CIPA as a whole.   The general presumption that a given term bears the same meaning throughout a statute absent congressional indication otherwise.   *See, e.g.*, *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)

---

"defendant" to exclude the defendant himself on matters of discovery.

("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) (applying the "whole-text canon"). Here, the term "the defendant" is used repeatedly throughout CIPA to set forth various obligations and rights of "the defendant." *See, e.g.*, CIPA §§ 5–6. Yet the OSC's complicated interpretation of this key word invariably generates additional convolution; when does "defendant" in CIPA include the lawyer, and when does it include the lawyer but exclude "the defendant" as suggested should be the case in Section 3 here? The answer is not discernable from the statutory text—which is yet another strong signal to decline the OSC's reading. *See In re Wild*, 994 F.3d 1244, 1273 (11th Cir. 2021) (Pryor, C.J., concurring) (challenging the notion that a statutory term can be treated as a "linguistic chameleon that changes its meaning in different circumstances to serve whatever [desired] purpose"). In the end, whatever the contours of the OSC's broad theory prohibiting a defendant's access to discoverable information, the answer is not to change the natural meaning of a statutory word in Section 3 but rather to use the mechanism provided in CIPA to handle matters related to restricting discovery, which in the case of CIPA is Section 4.

The OSC next tries to minimize the prescribed procedure codified in Section 4 for deletion/substitution of discovery by saying that, "once the Government discloses classified information to defense counsel, Section 4 no longer applies" [ECF No. 162 p. 9]. The text of CIPA does not support this position for the reasons stated above: Section 4 specifically refers to discoverable information made available to the defendant under the federal rules and then provides the United States a mechanism to seek to avoid disclosing it in full or in part. So again, we are left with the OSC's broad and unconvincing theory, which is that the Court must change the meaning of the word "defendant' to mean, essentially, "defense attorney *to the exclusion of*

*defendant*."   The Court declines to do so.   "Defendant" means what it says—defendant—and although providing discovery to a defendant reasonably contemplates the defendant's retained or appointed agent reviewing the information too, it does not support the very different proposition that "defendant" means "not defendant."   If the OSC wants to restrict a defendant's access to information provided in discovery—a matter still left for resolution—it must go through the proper mechanism for doing so in CIPA, and that procedure is rooted in Section 4, which specifically references deletion and/or substitution of discovery from "defendant."   CIPA § 4.[15]

As an additional salvo to overcome the plain language of Section 3, the OSC argues that proceeding under Section 4 will be more inefficient than going through Section 3 as interpreted [ECF No. 162 pp. 15–16].   The Court is not amenable to distorting the provisions of CIPA because the OSC considers its preferred process more efficient.   Nor does the Court deem it appropriate under the text of CIPA to take a burden of proof that Section 4 clearly places on the government and place it instead on defense lawyers forced to operate independently of their clients in the area of CIPA discovery.   Finally, the Court is not persuaded to deviate from the ordinary language of Section 3 based on the examples of other protective orders styled as pure Section 3 orders. Those district courts did not have occasion to grapple with the text of CIPA or its surrounding context, and no court of appeals has evaluated the particular scope of Section 3.

For these reasons, the previously entered protective orders under Section 3 remain in place. It may be that the OSC meets its burden to restrict from Defendants whatever quantity of classified information it seeks to restrict.   But Section 4 is the proper mechanism through which to do so,

---

[15]  The OSC agreed during the Sealed Hearing on September 12, 2023, that the classified information subject to its proposed protective order was discoverable pursuant to Rule 16(a)(1)(E) but has since walked back that position at least partially as reflected in the supplemental brief [ECF No. 162 pp. 13–14 n.5].

CASE NO. 23-80101-CR-CANNON

not Section 3.

A final point.   Nothing in this Order shall be construed to minimize the importance of protecting and avoiding disclosure of classified information in this case or in any case.   To the contrary, the protective orders already entered implement that purpose through a variety of security procedures [ECF Nos. 150–152].   All the Court determines in this Order is that Section 3 is not the means by which the OSC can seek to shield discoverable information from the criminal defendants in this case.   And again, nothing herein authorizes the disclosure of any classified information to any Defendant beyond the terms of the existing protective orders.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 1st day of November 2023.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**


cc:      counsel of record