```
            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
                FORT PIERCE DIVISION
            CASE NO. 23-80101-CR-CANNON


UNITED STATES OF AMERICA,


            Plaintiff,              FORT PIERCE, FLORIDA

      vs.                           OCTOBER 20, 2023

DONALD J. TRUMP, WALTINE NAUTA
and CARLOS DE OLIVEIRA,              PAGES 1 - 44


_____Defendants._____/



            TRANSCRIPT OF GARCIA HEARING
       BEFORE THE HONORABLE AILEEN M. CANNON
            UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE GOVERNMENT:     JAY BRATT, ESQ.
                        DAVID HARBACH, II, ESQ.
                        JOHN PELLETTIERI, ESQ.
                        MICHAEL THAKUR, ESQ
                        Office of the Special Counsel
                        Washington, D.C. 20530

FOR DEFENDANT NAUTA:
                        STANLEY WOODWARD, JR., ESQ.
                        Washington, D.C. 20001

                        SHASHA DADAN, ESQ.
                        Fort Pierce, Florida  34950


FOR DEFENDANT DE OLIVEIRA:

                        DONNIE MURRELL, ESQ.
                        West Palm Beach, Florida  33401

FOR DEFENDANT TRUMP:
                        TODD BLANCHE, ESQ.
                        New York, NY  10005
```

1                    P-R-O-C-E-E-D-I-N-G-S

2           THE COURTROOM DEPUTY:  All rise.  Court is in

3  session, the Honorable Aileen M. Cannon presiding.

4           THE COURT:  Thank you.

5           Good afternoon.  You may all be seated.

6           This is criminal case number 23-80101, United States

7  of America versus Donald J. Trump, Waltine Nauta, and Carlos

8  De Oliveira.

9           Let's start with appearances of Counsel, starting

10  with the Special Counsel's Office.

11          MR. BRATT:  Good afternoon, Your Honor; Jay Bratt,

12  David Harbach, John Pellettieri, and Michael Thakur on behalf

13  of the United States.

14          THE COURT:  Thank you.

15          All right.  Let's start with Mr. -- go ahead.

16          MR. MURRELL:  Good afternoon, Your Honor; Donnie

17  Murrell on behalf of Carlos De Oliveira.

18          MR. BLANCHE:  Good afternoon, Your Honor; Todd

19  Blanche on behalf of President Trump.

20          THE COURT:  Good afternoon.

21          MS. DADAN:  Good afternoon, Your Honor; Sasha Dadan

22  and Stanley Woodward on behalf of Waltine Nauta, who is

23  present.

24          THE COURT:  All right.  Thank you.

25          Good afternoon, Mr. Nauta; and good afternoon,

1    Mr. Woodward.

2              As usual, I will advise everybody of the cell phone

3    prohibition.  There shall be no recording in this courtroom.

4    We have our press overflow room set up on the second floor,

5    should anybody care to go there, and the Zoom feed is live and

6    working I'm told.

7              This is a public hearing, I see no reason to deviate

8    from that posture; but of course, if a need arises to pivot to

9    a partially closed hearing, then I'll consider the matter, and

10   I understand there is an attorney on the part of the Press

11   Coalition present to make any arguments on that subject.

12             The purpose of today's hearing, as everybody is

13   aware, is to conduct a *Garcia* hearing as to Mr. Nauta.  This

14   hearing was originally scheduled for October 12th, but was

15   continued to give Mr. Nauta and his Counsel, along with the

16   Court, a chance to consider new authorities raised by the

17   Special Counsel's Office at that hearing.  The parties since

18   have submitted supplements on the subject, and I've reviewed

19   those prior to today's hearing.

20             I'm going to go over some brief overview.

21             Mr. Nauta, you may have heard all of this already,

22   but for the sake of comprehensiveness, the name *Garcia* comes

23   from a decision by the former Fifth Circuit Court of Appeals

24   issued in 1975.  That case and others like it essentially

25   instructs courts to conduct a fulsome colloquy with the

1  defendant when there is a basis to believe that the defendant's

2  chosen lawyer might be laboring under a conflict of interest

3  that would affect his or her ability to effectively represent a

4  defendant in a criminal case.

5       Of course this is because, while the Sixth Amendment

6  encompasses a defendant's right to be represented by an

7  attorney of his or her choosing, it also encompasses a right to

8  be represented by an attorney free from conflicts of interest.

9       So that is the basic genesis of *Garcia*, that courts

10 presented with these possible conflicts have a duty to make

11 sure that the moving party, in this case the Special Counsel's

12 Office, brings these conflicts to the court's attention, and

13 consequently that the defendant fully understands those

14 potential conflicts, the potential consequences of a decision

15 to proceed with his chosen lawyer and his right to proceed to

16 trial with a different attorney, if that is what you choose to

17 do.

18      So in summary, the purpose of today's proceeding is

19 to address those potential perils of representation by an

20 attorney with a possible conflict of interest; to advise the

21 Defendant of his right to effective representation; and to

22 ensure that the Defendant understands the possible conflicts of

23 interest and the potential perils of such a conflict.

24      Ultimately, of course, the inquiry is to determine

25 if, after all of that questioning, the Defendant does wish to

```
 1   waive his right to conflict free counsel; and if so, whether

 2   that waiver is made knowingly, voluntarily and intelligently.

 3            So Mr. Nauta, we were here on the 12th.  I know you

 4   have heard a lot of argument by Counsel, as well as

 5   observations by the Court, but this is our chance to have a

 6   dialogue, and I want you to feel fully open and comfortable

 7   asking me questions so that we can ensure that you understand

 8   fully what is transpiring here today.

 9            With that, I'm going to swear you in, Mr. Nauta.  I'm

10   also going to ask Counsel to stay at Counsel table for purposes

11   of this hearing to the extent I have questions as we go along.

12            So Mr. Nauta.

13                    WALTINE NAUTA, DEFENDANT, SWORN

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Thank you.

16            If you want to move the base of that microphone

17   closer to you, you may.

18                          EXAMINATION

19   BY THE COURT:

20   Q   Please tell me your full name and date of birth.

21   A   Waltine Nauta, January 30th, 1983.

22   Q   And how do you pronounce your first name?

23   A   Waltine.

24   Q   Waltine.

25            How far did you get in school, sir?
```

```
 1   A    I got my high school diploma and I did some college.

 2   Q    Do you read and write the English language?

 3   A    Yes, ma'am.

 4   Q    Have you understood everything I have said thus far?

 5   A    Yes.

 6   Q    Now, if at any point you don't understand what I'm saying

 7   or if you need further clarification, please don't hesitate to

 8   let me know; understood?

 9   A    Yes, ma'am.

10   Q    And if at any point, you wish to consult with your

11   attorney, also please let me know.

12   A    Yes, ma'am.

13   Q    Okay.  Are you currently under the influence of any

14   medication, drugs or alcohol?

15   A    I am not.

16   Q    Okay.  Do you feel completely alert and intelligent as we

17   are proceeding right now?

18   A    Yes.

19   Q    Do you believe you have any physical or mental condition

20   that would impair or affect your ability to understand what is

21   transpiring in the courtroom right now?

22   A    I do not.

23   Q    Okay.

24            THE COURT:  Mr. Woodward, are you aware of any

25   situation concerning your client's ability to fully understand
```

Friday, October 20, 2023

```
 1   what is happening today?
 2              MR. WOODWARD:  I'm not aware of any situation.
 3              THE COURT:  Is it your view, Counsel, that Mr. Nauta
 4   is competent to proceed with this hearing today?
 5              MR. WOODWARD:  Yes, Your Honor.
 6              THE COURT:  All right.  Ms. Dadan, I'm going to ask
 7   you the same questions:  Is it your view that Mr. Nauta is
 8   competent to proceed with this hearing today?
 9              MS. DADAN:  Yes.
10              THE COURT:  Now, just a small housekeeping matter,
11   and we addressed this at the last hearing.  Of course, we are
12   going to be referring to the subject witnesses by the
13   designations used in the motion filed by the Special Counsel's
14   Office, so specifically the designations Trump Employee 4 and
15   Witness 1, so please do not use their real names.
16              Understood, Mr. Nauta?
17              THE DEFENDANT:  Yes, ma'am.
18   BY THE COURT:
19   Q   Okay.  Do you have any questions so far for me?
20   A   I do not.
21   Q   Okay, all right.  Now, there will be a point during this
22   hearing where I'm going to ask you to, in your own words,
23   explain to me what these potential or actual conflicts consist
24   of, so please listen carefully as I go through this.
25              There might be some repetition as we go along, but
```

1    ultimately, I need you to be as candid and as complete in your

2    responses as you can; understood?

3    A    Yes, ma'am.

4    Q    Now, the Special Counsel's Office has brought to the

5    Court's attention potential conflicts of interest that your

6    current counsel, Mr. Woodward, may face in this case due to his

7    former or current representation of two witnesses the

8    Government intends to call at trial.

9         First, there is Trump Employee 4, whom Mr. Woodward

10   represented from approximately early 2023, the specific date of

11   engagement is not clear, through the end of June of 2023; and

12   then Witness 1, who Mr. Woodward still represents.

13        I'm going to pause now.

14        THE COURT:  Mr. Woodward, can you provide the Court

15   with an approximate date of engagement for Trump Employee 4?

16        MR. WOODWARD:  Yes, Your Honor, the Court's brief

17   indulgence.

18        Your Honor, we were retained by Trump Employee 4 on

19   February 9th, 2023.

20        THE COURT:  Okay, thank you.

21   BY THE COURT:

22   Q    All right.  So we are here today, Mr. Nauta, to make sure

23   that you understand those potential or actual conflicts of

24   interest and at the end of today's hearing, if you decide that

25   you would like to proceed with Mr. Woodward as your attorney;

1    or in other words, waive your Sixth Amendment right to conflict

2    free counsel, you may do so, but first I need to make sure that

3    you understand these potential conflicts that are raised by the

4    Office of the Special Counsel; that you understand the

5    potential consequences of a decision to continue to proceed

6    with Mr. Woodward as your lawyer; and finally, that you fully

7    understand your right to proceed to trial with a different

8    attorney should you choose to do so.

9           Are you with me so far?

10   A   Yes, Your Honor.

11   Q   Okay.  Now, this is also very important:  Please realize

12   that even if you decide to waive your right to conflict free

13   counsel, I'm not required to accept such a waiver.

14          Should I determine that a potential or actual

15   conflict of interest is so serious that it is likely to

16   seriously undermine the fairness, efficiency or public

17   confidence in these proceedings, I may elect to disqualify your

18   chosen counsel.  But of course, the Special Counsel's Office

19   has not moved at this time for any such disqualification, and

20   I, of course, have not made any decision on that issue or

21   considered whether to implement any other remedies short of

22   disqualification.

23          Do you understand me so far, sir?

24   A   Yes, ma'am.

25   Q   Do you have any questions at this point?

```
 1   A    No, ma'am.

 2   Q    Okay.  Now, as I mentioned, you are not required to

 3   continue with Mr. Woodward, you have a right to proceed with a

 4   different lawyer if you choose; and importantly, you are not

 5   required to make this decision today either.  If you decide,

 6   after our Q and A, that you simply need some more time to think

 7   about these important matters, that's perfectly acceptable, I

 8   will afford you more time.  And also, if you would like

 9   additional time to consult with outside, independent counsel

10   before deciding to proceed with Mr. Woodward, you also have

11   that right, as well.

12             Do you understand, sir?

13   A    Yes, ma'am.

14   Q    But whatever it is that you decide, it is still my duty to

15   ensure, as I have said, that you understand the potential

16   ramifications of a decision to continue with Mr. Woodward.  And

17   that if you do decide to waive your right to conflict free

18   counsel, that any such decision is made knowingly, voluntarily

19   and intelligently.

20             Does all of this make sense, sir?

21   A    Yes, ma'am.

22   Q    Okay.  Do you have any questions about the purpose of this

23   hearing or the format of this hearing?

24   A    No questions.

25   Q    Okay.  All right.  I'm now going to do my best to summarize
```

```
 1   the conflicts that have been presented based on the parties'
 2   filings.
 3            The Special Counsel has identified two individuals as
 4   I have said; Trump Employee 4, a former client of Mr. Woodward;
 5   and Witness Number 1, a current client of Mr. Woodward.  These
 6   individuals may be called as witnesses at trial and could
 7   provide testimony that inculpates you, sir.
 8            And in the case of Trump Employee 4, the Government
 9   is rather definitive that it will call Trump Employee 4 at
10   trial.
11            There is also no dispute that these two people, Trump
12   Employee 4 and Witness 1, were clients of Mr. Woodward when
13   questioned by the Government in connection with the underlying
14   criminal investigation, at least for a portion of time.
15            Do you understand, sir?
16   A    Yes, ma'am.
17   Q    Okay.  And then just to avoid confusion, I know we are
18   using the designation Witness 1, there was a Witness 1 that we
19   talked about last time vis-a-vis Mr. De Oliveira and it is not
20   the same person, so I want to make sure that there is no
21   confusion.
22            Are you with me?
23   A    Yes, I understand.
24   Q    Now, these two individuals that I have been talking about,
25   Trump Employee 4 and Witness 1, they have not been criminally
```

Friday, October 20, 2023

1    indicted in this case, although Trump Employee 4 has signed a

2    non-prosecution agreement and is serving as a cooperating

3    Government witness.

4              Do you understand that, sir?

5    A    Yes, ma'am.

6    Q    Okay.  Now, I'm going to go in a little bit more detail

7    about these two individuals and much of what I'm about to say

8    is in the form of allegations and of course, it will be the

9    Government's burden to prove those allegations beyond a

10   reasonable doubt at trial.

11             Starting with Trump Employee 4, it is alleged that he

12   or she worked as the director of information technology at

13   Mar-a-Lago.  As alleged, you and Mr. De Oliveira made efforts

14   to get Trump Employee 4 to allegedly delete security camera

15   footage showing the movement of boxes containing classified

16   material at the Mar-a-Lago club.

17             On March 23rd of 2023, while still represented by

18   Mr. Woodward, Trump Employee 4 testified before a grand jury in

19   the District of Columbia about this issue of allegedly deleted

20   security footage.

21             Then in late June of 2023, months after that March

22   testimony in DC, and after the initial indictment was returned

23   in this district against you and Former President Trump, the

24   Special Counsel's Office sent what is called a target letter to

25   Trump Employee 4 informing Trump Employee 4 that Trump Employee

4 was the subject of a perjury investigation based on his

previous testimony before the DC grand jury in March of 2023.

       At that point, based on the chronology in the

parties' papers, the Government moved on an expedited basis for

what is called a conflicts hearing in the District of Columbia

to investigate potential conflicts of interest as related to

Mr. Woodward's simultaneous representation of Trump Employee 4

and you in connection with this indictment.

       There was a hearing in DC on June 30th.  At that

hearing, at which point Trump Employee 4 had been appointed a

separate attorney as conflicts counsel, Trump Employee 4 and

his counsel said they needed additional time to consider the

matter, so the DC court continued the hearing for a few days

until July 5th.

       There was an intervening holiday and during that

intervening period of days, the Special Counsel's Office

offered Trump Employee 4 a non-prosecution agreement.

       On July 5th, at that continued hearing -- after

securing that non-prosecution agreement, there was another

hearing, as I mentioned, before that DC court, during which

Trump Employee 4 elected to proceed with his conflicts counsel

to represent him in the grand jury perjury case.

       Then Trump Employee 4 testified before the grand jury

in this district on July 20th of 2023 and during that testimony

in this district, it is alleged by the Government that Trump

1    Employee 4 materially changed his testimony from his prior

2    testimony given in March of 2023 in DC and ultimately, as it's

3    presented, allegedly inculpated you in the topic of alleged

4    footage deletion.

5              Are you with me so far, Mr. Nauta?

6    A    Yes, Your Honor.

7    Q    And then, of course, on July 27th of this year, a

8    superseding indictment was returned in this district charging

9    you, Former President Trump, and a third defendant, Carlos

10   De Oliveira, with various offenses including allegations

11   related to alleged attempts to delete security footage.

12             On a positive note, at that June 30th, 2023 conflicts

13   hearing that I mentioned in DC, there was no suggestion of any

14   impropriety at all on the part of Mr. Woodward, and likewise,

15   when Trump Employee 4 testified in late July in this district,

16   he testified that he was not coached in his prior testimony.

17   So that is the overall picture, summarized of course, related

18   to Trump Employee 4.

19             THE COURT:  Mr. Woodward, is there anything

20   substantive as a factual matter that needs to be supplemented

21   as pertains to Trump Employee 4?

22             MR. WOODWARD:  Your Honor, the only fact that I had

23   previously been unaware of was that Trump Employee 4 had been

24   offered the non-prosecution agreement between June 30th and

25   July 5th, and so I'll defer to the Special Counsel's Office on

1    exactly when that had come about, but I was not aware of that

2    fact.

3              THE COURT:  The timing specifically?

4              MR. WOODWARD:  Exactly right, Your Honor.  Otherwise,

5    that is consistent with my understanding of the facts.

6              THE COURT:  Okay, thank you.

7              All right.  Mr. Harbach or Mr. Bratt, can you provide

8    the date of the non-prosecution agreement?

9              MR. HARBACH:  Yes, Your Honor.  The date of the

10   non-prosecution agreement is July 19th.

11             THE COURT:  Okay.

12             All right.  So thank you for that clarification.

13             So the non-prosecution agreement would have happened

14   about eight days prior to the testimony in this district and

15   after the July 5th hearing in DC, is that correct, Mr. Harbach?

16             MR. HARBACH:  No, Your Honor.  Trump Employee 4

17   testified in this district on July the 20th, the day after the

18   non-prosecution agreement was signed.

19             THE COURT:  Okay.  All right, thank you.

20             Okay.  So non-prosecution agreement signed July 19th;

21   Florida testimony, July 20th?

22             MR. HARBACH:  Yes, Your Honor, that's right, and one

23   more thing.  Although Your Honor asked what the date of the

24   non-prosecution agreement was, we should clarify that it is

25   also not the case that any non-prosecution agreement was

Friday, October 20, 2023

1    offered to Trump Employee 4 between June 30th and July 5th,

2    that did not happen.

3              THE COURT:  So when was the offer made then?

4              MR. HARBACH:  The tender of the non-prosecution

5    agreement was the 19th, Your Honor.

6              THE COURT:  Were there any discussions about the

7    non-prosecution agreement prior to the 19th with Trump

8    Employee 4?

9              MR. HARBACH:  Give me a moment, please, Judge.

10        (Discussion off the record between Government Counsel.)

11             MR. HARBACH:  Thank you for those couple minutes,

12    Your Honor.  I think it will enable as fulsome an answer as

13    possible on this, so there are no misconceptions.

14             In speaking with my colleagues, we -- the state of

15    affairs is that on June the 30th, which was the day that -- of

16    the initial conflicts hearing in the District of Columbia,

17    Mr. -- excuse me, Trump Employee 4's current counsel was

18    present for that, although she had not yet been appointed at

19    that stage, but she met with him and was consulting with him.

20             During the course of that proceeding, not on the

21    record, this was a private conversation between the

22    Government's lawyers and that attorney for Trump Employee 4,

23    that attorney for Trump Employee 4 expressed an interest in

24    immunity.

25             At that stage, the Government lawyers said nothing

Friday, October 20, 2023

```
1    one way or the other about it, but we want it clear that that

2    interest was expressed as early as June 30th.

3              Fast forwarding to July the 10th, on that date, Trump

4    Employee 4 had a proffer session with the Government and the

5    notion of immunity was also discussed at that hearing, although

6    there was no formal offer, nor was there any discussion about

7    what form any immunity might take from the Government.

8              And so the first time that it assumed concrete form

9    was in the form of a non-prosecution agreement that was

10   tendered on the 19th.

11             THE COURT:  All right, thank you.

12             MR. HARBACH:  I hope that's clear.

13             THE COURT:  All right.  So I think we have fleshed

14   out a little bit of the timing there with the non-prosecution

15   agreement, but ultimately, in any case, that agreement was

16   memorialized.

17             Mr. Harbach, factually anything more to add with

18   respect to Trump Employee 4 and the Court's summary of his

19   role?

20             MR. HARBACH:  No, Your Honor.

21   BY THE COURT:

22   Q    Okay.  Turning next to Witness Number 1, there is less

23   information about this individual, but from what I can gather,

24   Witness Number 1 worked in the White House during former

25   President Trump's presidency and then later worked in former
```

Friday, October 20, 2023

1    President Trump's post presidential office.

2              Mr. Woodward represented Witness Number 1 in

3    connection with this case and I understand continues to do so,

4    and Witness Number 1 remains on the Government's witness list

5    for trial.

6              Do you understand everything I've said thus far,

7    Mr. Nauta?

8    A    I do, Your Honor.

9    Q    Okay.

10             THE COURT:  Mr. Woodward, anything substantive that

11   needs to be added as a factual matter regarding Witness

12   Number 1 as pertains to this hearing?

13             MR. WOODWARD:  No, Your Honor.

14             I will just, again, highlight what we indicated in

15   our briefing yesterday, which we also expressed to the Special

16   Counsel's Office, which is that should the Government make any

17   effort to actually have Witness Number 1 testify, it is our

18   intent to procure him either additional counsel or substitute

19   counsel to advise him for purposes of that testimony in any

20   trial that occurs here in this district.

21             THE COURT:  Okay.

22             All right.  Anything factual to add with respect to

23   Witness Number 1, Mr. Harbach?

24             MR. HARBACH:  I don't think so, Your Honor.  Thank

25   you.

1          THE COURT:  I'm sorry, did you say no?

2          MR. HARBACH:  I said I don't think so.

3          THE COURT:  Okay, thank you.

4    BY THE COURT:

5    Q    All right.  So as I have mentioned, Mr. Nauta, both of

6    these individuals were represented by your attorney,

7    Mr. Woodward, during the Government's investigation in this

8    case and Trump -- excuse me, Witness Number 1 continues to be

9    represented by Mr. Woodward.

10          Let me turn now to discuss with you the concepts of

11   the duty of confidentiality and the duty of loyalty.

12          An attorney has certain ethical obligations to

13   current and former clients and these include the duty of

14   confidentiality and the duty of loyalty.

15          Now, on the subject of the duty of confidentiality,

16   the attorney-client privilege -- and you might know this

17   already, so forgive me if I'm being repetitious -- but it

18   prevents an attorney from disclosing confidential

19   communications between a client and his attorney.  Even after

20   an attorney no longer represents a client, the client's

21   confidential communications with his lawyers remain subject to

22   the attorney-client privilege unless that privilege is waived,

23   which can include a formal waiver or a voluntary disclosure by

24   that person to a third party, in which case that voluntary

25   disclosure might destroy the confidentiality upon which the

```
 1   privilege is premised.
 2           So to summarize, absent a waiver, an attorney can not
 3   use certain information that current or former clients shared
 4   with that attorney in confidence and that remains privileged.
 5   Do you understand this concept that I've laid out?
 6   A    I do, Your Honor.
 7   Q    Now, in addition, an attorney owes a duty of loyalty to
 8   current and former clients, and that duty continues to run even
 9   after a representation ends.  And so specifically with respect
10   to former -- to Trump Employee 4, Mr. Woodward would not be
11   able to act in a way that is materially adverse to the
12   interests of Trump Employee 4 without Trump Employee 4's
13   informed consent, which I'm told Trump Employee 4 has not
14   given.
15           And similarly, Mr. Woodward would not be able to use
16   information relating to his former representation of Trump
17   Employee 4 to the disadvantage of Trump Employee 4 unless that
18   information has become generally known, and I'm drawing from
19   Rules of Professional Responsibility as I explain this to you.
20           So with respect to the current client, Witness 1,
21   Mr. Woodward similarly, under the same duty of loyalty that I'm
22   describing, would not be able to act in a way that is directly
23   adverse to the interests of Witness Number 1.
24           In short, net-net, Mr. Woodward must take care to
25   avoid harming the interests of his former and current clients.
```

1   Does this concept of loyalty make sense, Mr. Nauta?

2   A    Yes, ma'am.

3   Q    So putting all of this together, the Office of the Special

4   Counsel suggests that these ethical obligations could result in

5   Mr. Woodward experiencing so-called divided loyalties between

6   his current and former clients, those two people we have been

7   discussing, and you, Mr. Nauta.

8           In other words, Mr. Woodward, on the one hand, has a

9   duty to advocate zealous -- zeal -- I can't even speak

10  English -- zealously advocate on your behalf, but at the same

11  time, he is required to maintain his confidences as to his

12  current and former clients, as well as maintaining that duty of

13  loyalty that I have described and that sort of double-edged

14  sword, for lack of a better term, could limit Mr. Woodward's

15  ability to represent you in this case.  Do you understand that,

16  Mr. Nauta?

17  A    I do, Your Honor.

18  Q    Do you understand how that dynamic could potentially be

19  problematic to your defense?

20  A    I do.

21  Q    Now, in the papers that have been submitted, the parties

22  have informed the Court, and I want to confirm this with

23  Mr. Woodward, that he would not be conducting the

24  cross-examination of either Trump Employee 4 or Witness 1 if

25  either of them is called as a witness.

```
 1              THE COURT:  Is that correct, Mr. Woodward?
 2              MR. WOODWARD:  Yes, Your Honor.
 3   BY THE COURT:
 4   Q   And that instead, Ms. Dadan, your co-counsel, would be
 5   conducting the cross-examination of Trump Employee 4.  Are you
 6   familiar with that arrangement, Mr. Nauta?
 7   A   Yes, Your Honor.
 8   Q   Have you had a chance to discuss that with your attorneys?
 9   A   I have, Your Honor.
10   Q   Do you feel comfortable with that arrangement?  I'm
11   referring specifically to having Ms. Dadan conduct the
12   cross-examination of Trump Employee 4?
13   A   I do, Your Honor.
14   Q   Do you have any reservations or hesitation with that
15   arrangement whosoever?
16   A   I do not.
17   Q   Do you believe that Ms. Dadan will be able to effectively
18   represent you during the cross-examination of Trump Employee 4?
19   A   Yes, Your Honor.
20              THE COURT:  Now, with respect to Witness Number 1,
21   does this arrangement, Mr. Woodward, also apply to Witness
22   Number 1?
23              MR. WOODWARD:  Yes, Your Honor.
24   BY THE COURT:
25   Q   And same question, Mr. Nauta:  Do you feel fully
```

1   comfortable with Ms. Dadan conducting the cross-examination of

2   Witness 1?

3   A   Yes, Your Honor.

4           THE COURT:  Ms. Dadan, I just want to offer you an

5   opportunity, if you have anything to add on the subject of your

6   cross-examination of either of those two individuals.

7           MS. DADAN:  I do not.

8           THE COURT:  Okay.

9   BY THE COURT:

10  Q   Now, even if Mr. Woodward doesn't conduct these

11  cross-examinations, the Special Counsel contends that these

12  divided loyalties, as I have described them, can still limit

13  his representation in other ways.

14          And so just to put a finer point on it, just as

15  Mr. Woodward would not be allowed to use privileged

16  communications obtained from his current or former clients

17  during cross-examination, the Special Counsel argues that

18  similarly, he couldn't use that information during closing

19  arguments, even if using that information in closing would be

20  in your best interests.  Do you understand that, sir?

21  A   I do, Your Honor.

22  Q   So for example, suppose Mr. Woodward wanted to discredit or

23  undermine the credibility of either of those two individuals

24  during closing arguments, he would not be able to do so as

25  effectively as he otherwise would be because he can't use any

```
 1   privileged information that he might have received from those

 2   individuals.  Do you understand, sir?

 3   A    I do, Your Honor.

 4   Q    And it also might be the case that Mr. Woodward would

 5   decline to pursue certain arguments or he might water down his

 6   arguments out of a concern that doing so might disclose that

 7   confidential information in violation of his ethical duty.  Do

 8   you understand, Mr. Nauta?

 9   A    Yes, ma'am.

10   Q    Have you followed everything I have said thus far?

11   A    Yes.

12   Q    I know it's a lot, okay.

13        Now, let me pivot now to the duty of loyalty concept

14   that I mentioned earlier.  For example, if for some reason an

15   attempt to undermine Trump Employee 4 during closing could be

16   deemed materially adverse to some legal interest of Trump

17   Employee 4, and it is unclear exactly how that would shape up,

18   but assuming there was a material adversity caused by

19   Mr. Woodward's challenge of Trump Employee 4's credibility

20   during summation, that, too, could potentially limit

21   Mr. Woodward's ability to make closing argument to the jury.

22   Do you understand that concept, Mr. Nauta?

23   A    I do, Your Honor.

24   Q    And so if that were to be the case, if there were that

25   material adversity, Mr. Woodward would have to forego that
```

```
 1    argument during his closing remarks to the jury and you might
 2    be worse off because that argument wasn't made.  Do you
 3    understand, sir?
 4    A    I do.
 5    Q    Now, let me emphasize a few things at this point,
 6    Mr. Nauta.
 7              Whether Mr. Woodward has received confidential
 8    information from these individuals that hasn't already been
 9    disclosed to the Special Counsel's Office, I don't know that, I
10    don't know if that's the case.
11              I also don't know with one hundred percent certainty
12    whether those individuals will be called to testify, although
13    I'm told that they will be called, at least Trump Employee 4,
14    with more -- with more confidence, nor do I know whether
15    Mr. Woodward would even try to discredit the credibility of
16    those individuals, but I still need to advise you of these
17    possibilities, and so that's the purpose of all of these
18    questions.
19              Are you with me so far?
20    A    Yes, ma'am.
21    Q    Okay.  And again -- and I'm not sure, if any, how it could
22    be that Mr. Woodward's discrediting, for lack of a better term,
23    of either of those individuals could result in materially
24    adverse -- could create a material inconsistency vis-a-vis the
25    interest of either of those individuals.  But again, my job is
```

```
 1   to ensure that you're informed of these possibilities, even if

 2   they are hypothetical in nature, so that you can make a fully

 3   informed choice.

 4            I also need to make sure, sir, that you understand

 5   what the Special Counsel's Office is saying is possible and how

 6   it could impact your defense, should you decide to continue to

 7   proceed with Mr. Woodward.

 8            Do you have any questions so far?

 9   A   No, ma'am.

10   Q   All right.  Now, I also want to make a point, and this is

11   in the papers, that Mr. Woodward has welcomed this *Garcia*

12   hearing, and I'm not aware of any allegation by the Special

13   Counsel's Office of impropriety or unethical behavior on the

14   part of Mr. Woodward, that is the state of affairs as far as I

15   can tell.

16            Are you following with me?

17   A   Yes, ma'am.

18   Q   Okay.  Is there anything I can clarify?

19   A   No, ma'am.

20   Q   Okay.  Now, let's talk about the potential consequences of

21   a decision to proceed with Mr. Woodward.

22            If an actual conflict does materialize, a situation

23   could arise in which it would benefit you if Mr. Woodward

24   aggressively pursued certain lines of argument during his

25   closing remarks to the jury, for example, or used certain
```

```
 1   privileged information he obtained during his prior
 2   representation; but of course, he would be unable to do that
 3   because it could potentially cause him to breach his client
 4   confidences or his duty of loyalty to those individuals.  Do
 5   you understand, sir?
 6   A   Yes, ma'am.
 7   Q   And all of that could mean that Mr. Woodward is limited in
 8   his ability to represent you at trial; do you understand, sir?
 9   A   I do.
10   Q   Now, there is also the possibility of this manifesting on
11   appeal, and I want to advise you of that.
12         Suppose you decide today to waive your right to
13   conflict free counsel, and it turns out that Mr. Woodward does,
14   in fact, possess some confidential information that he obtained
15   during his representation of those two individuals, that
16   information being still privileged; then suppose, also, that
17   Trump Employee 4 provides information during the trial that is
18   damaging to your defense and that Mr. Woodward, because he
19   possesses that still privileged information, is unable to
20   effectively attack that individual's credibility during cross
21   or during closing argument.
22         If you're found guilty because you waived your right
23   to conflict free counsel, you then would be prohibited from
24   saying later on, I was denied my Sixth Amendment right to
25   effective assistance of counsel; therefore, my conviction
```

| | |
|---|---|
| 1 | should be invalidated because I had an attorney that labored |
| 2 | under this conflict of interest.  Do you understand, sir? |
| 3 | A   Yes, Your Honor. |
| 4 | Q   And so by choosing to proceed with Mr. Woodward, you are |
| 5 | forfeiting that argument on appeal; do you understand, sir? |
| 6 | A   I do, Your Honor. |
| 7 | Q   And ultimately, sir, do you understand that this decision |
| 8 | could negatively impact your defense at trial? |
| 9 | A   I do, Your Honor. |
| 10 | Q   Do you have any questions before we move forward at this |
| 11 | time? |
| 12 | A   I do not. |
| 13 | Q   Is there anything I can clarify for you? |
| 14 | A   No, ma'am. |
| 15 | Q   All right.  Now, you have heard me try to explain these |
| 16 | conflicts and go through this, I'm going to now ask you, in |
| 17 | your own words, to explain to me your understanding of the |
| 18 | situation.  Of course, the point here is to make sure you |
| 19 | understand it and that you make whatever decision you choose to |
| 20 | make in a knowing and informed way. |
| 21 | So starting first with the potential conflicts, can |
| 22 | you please explain to me in your own words the potential |
| 23 | conflicts as we have been discussing them. |
| 24 | MR. WOODWARD:  With the Court's brief indulgence. |
| 25 | (Discussion off the record between Defendant and Counsel) |

```
 1              MR. WOODWARD:  Thank you, Your Honor.

 2              THE COURT:  All right.

 3   BY THE COURT:

 4   Q   Mr. Nauta, so here's your opportunity, as best you can -- I

 5   know you are not a lawyer, I don't expect you to speak like

 6   one, but just in general, what is your understanding of the

 7   conflicts that we have been discussing here?

 8   A   Your Honor, I do understand the conflicts of interest with

 9   Employee Number 4 and Witness 1, how that can inhibit me, but I

10   still choose Mr. Woodward as my lawyer.

11   Q   Thank you, Mr. Nauta.

12              Let me go through this in a little more detail.  You

13   understand, as we have been discussing, that Mr. Woodward

14   represented Trump Employee 4 and continues to represent Witness

15   Number 1; you understand that, right, sir?

16   A   Yes, ma'am.

17   Q   Do you understand that Mr. Woodward could have obtained

18   confidential information from those two individuals that

19   remains privileged and that he would be precluded from using

20   it, even if using it would help you at trial?

21   A   I do understand.

22   Q   Do you understand, Mr. Nauta, that he owes that duty of

23   loyalty that I was describing earlier even to his former

24   clients and that that duty of loyalty might limit

25   Mr. Woodward's ability to take certain actions in trial,
```

1    including, for example, presenting argument to the jury if

2    doing so would cause material adversity vis-a-vis his former

3    client?

4             Do you understand that, sir?

5    A    Yes, ma'am.

6    Q    Now, in terms of consequences of proceeding and deciding to

7    continue to proceed with Mr. Woodward, do you understand what I

8    was saying earlier about potentially having an attorney that

9    can't be as effective on cross-examination as he or she

10   otherwise would be if they hadn't previously represented the

11   witness?

12   A    I do.

13   Q    And I know we discussed about your co-counsel, Ms. Dadan,

14   doing this cross-examination, but I also want to make sure you

15   understand, sir, what I mean when I say less vigorous

16   cross-examination.

17            In other words, Mr. Woodward would pull his punches

18   or be a weaker advocate and really not go as aggressive as he

19   could go had he not represented this individual; do you

20   understand that, sir?

21   A    I do, Your Honor.

22   Q    Do you also understand, Mr. Nauta, that you can't argue on

23   an appeal, Oh, my goodness, my conviction should be reversed

24   because I was represented by a client [*sic*] that labored under

25   a conflict?

```
 1              Do you understand that, sir?

 2   A    I do.

 3   Q    Now, it's also important that you know that you have a

 4   right to proceed with a different attorney, someone that

 5   doesn't have any of the issues we have been discussing.  Do you

 6   understand that, sir?

 7   A    Yes, ma'am.

 8   Q    So on that subject, do you understand that you can go to

 9   trial with a different lawyer and that you are not locked in

10   whatsoever to Mr. Woodward?

11              Do you understand that, sir?

12   A    Yes, Your Honor.

13   Q    Do you also know that you don't have to decide today -- I

14   know there is a lot of travel and logistics that go into these

15   visits, but I want to make sure you feel that you are not

16   pressured or coerced or influenced in any way to make that

17   decision today.

18              Do you understand that, sir?

19   A    Yes, Your Honor.

20   Q    In your own words, explain to me whether you are

21   comfortable proceeding with this decision today?

22   A    I do feel comfortable and am moving forward.

23   Q    Now, before you came in today, did you have a full

24   opportunity to discuss all of these issues with Mr. Woodward?

25   A    Yes, ma'am.
```

1  Q   Did you also have a chance to confer with Ms. Dadan?

2  A   Yes, ma'am.

3       THE COURT:  Now, Mr. Woodward, without divulging any

4  attorney-client privileged information, is it your view,

5  Mr. Woodward, that Mr. Nauta has sufficient information at this

6  point to knowingly and intelligently move forward in this case

7  with you as his trial counsel?

8       MR. WOODWARD:  Yes, your Honor.  I'm confident that

9  Mr. Nauta has been fully advised of his rights from this

10 colloquy and also preceding colloquy by myself and Ms. Dadan

11 and that he is knowingly, intelligently choosing to proceed

12 with my continued representation.

13      THE COURT:  Thank you.

14      All right.  Now, there has been a lot of briefing of

15 this subject, so I don't think we need to rehash everything,

16 but I do want to pause briefly in my conversation with

17 Mr. Nauta and give the Special Counsel's Office an opportunity

18 to fill in any gaps, and if you choose to do so, please remain

19 at counsel table.

20      MR. HARBACH:  Thank you, Your Honor.

21      No gaps to fill in terms of the advice and the

22 warning that you have given to Mr. Nauta.

23      There is one small factual correction we would like

24 to make, it is really just to make sure that the record is

25 clear.  Would you like me to do that now?  It's short.

Friday, October 20, 2023

1          THE COURT:  Yes, you may.

2          MR. HARBACH:  Okay, thank you.  Earlier when I said

3   to the Court that the Government's first concrete offer of a

4   non-prosecution agreement to Trump Employee 4 was on July 19th,

5   I was just sitting here thinking that it may have been a few

6   days before that and we have been able to confirm, while we are

7   sitting here, that the first e-mail to Trump Employee 4's

8   counsel offering the non-prosecution agreement was on

9   July 13th, so I just didn't want there to be any mistaking

10  about that, but that's all.

11         THE COURT:  Okay, thank you.

12         MR. HARBACH:  Thank you.

13         THE COURT:  All right, okay.

14  BY THE COURT:

15  Q   All right.  Now I'm going to return to you, Mr. Nauta.

16         Do you have any questions about what you have heard

17  at all during this hearing or any further clarification that

18  you might need?

19  A   I do not, Your Honor.

20  Q   And let me just confirm with you, Mr. Nauta, am I correct

21  to understand that you are committing to have Ms. Dadan conduct

22  the cross-examination of Trump Employee 4 and Witness 1?

23  A   Yes, Your Honor.

24  Q   All right.  So now I'm going to go and try to wrap up what

25  I have discussed with you, so please listen carefully.

Friday, October 20, 2023

1           Do you understand, Mr. Nauta, that you have a

2   constitutional right to the effective assistance of counsel?

3   A   Yes, Your Honor.

4   Q   Do you understand that this right includes the right to be

5   represented by somebody who is free from conflicts of interest?

6   A   I do.

7   Q   Do you understand the potential conflicts of interest as

8   alleged by the Special Counsel and how they could manifest at

9   trial?

10  A   I do.

11  Q   Do you understand the potential consequences of choosing to

12  proceed with Mr. Woodward?

13  A   Yes, ma'am.

14  Q   Do you understand that you have the right to proceed with a

15  different attorney, not Mr. Woodward, somebody who has not

16  represented any potential Government witness in this case?

17  A   I do.

18  Q   At the same time, do you understand, sir, that you have the

19  right to choose the attorney that you would like to represent

20  you and as such, you are free to waive your right to conflict

21  free counsel and choose to proceed with an attorney, even if

22  that attorney possesses potential or actual conflicts of

23  interest?

24          Do you understand that, sir?

25  A   Yes, ma'am.

```
 1  Q   And do you understand that you don't have to make this
 2  decision now and that if you wanted more time to think about
 3  this, to consult with another lawyer, I would give you that
 4  time?
 5  A   Yes, Your Honor.
 6  Q   Are you confident, Mr. Nauta, that Mr. Woodward will be
 7  able to adequately represent your interests, understanding that
 8  he has and continues to represent one witness, Witness
 9  Number 1, and previously represented Trump Employee 4?
10  A   I do, Your Honor.
11  Q   Do you have any reservations about Mr. Woodward's ability
12  to adequately represent you?
13  A   I do not.
14  Q   So at this time, I'm going to ask you, Mr. Nauta, and I
15  know you already indicated your sentiment on the subject, but
16  would you like to move forward with Mr. Woodward as your
17  lawyer?
18  A   Yes, ma'am.
19  Q   And this is true, despite everything we have talked about
20  at this hearing.
21  A   Yes, Your Honor.
22  Q   Are you fully comfortable with, Ms. Dadan --
23  A   Dadan.
24  Q   Dadan -- excuse me -- conducting the cross-examination of
25  those witnesses as we discussed?
```

Friday, October 20, 2023

```
 1   A   Yes, ma'am.

 2   Q   Now, I also want to make sure that this is your decision,

 3   Waltine Nauta's decision, not anybody else's decision.  Is this

 4   a choice that you are making, sir?

 5   A   Yes, ma'am.

 6   Q   Do you feel in any way pressured to make this decision?

 7   A   No, I do not.

 8          THE COURT:  Mr. Woodward, are there any additional

 9   questions you think should be asked of Mr. Nauta?

10          MR. WOODWARD:  No, Your Honor.

11          THE COURT:  Ms. Dadan?

12          MS. DADAN:  No, Your Honor.

13          THE COURT:  Same question for Mr. Harbach, any other

14   questions you think are necessary?

15          MR. HARBACH:  No, Your Honor.

16          THE COURT:  All right.  Well, having conducted this

17   colloquy, it is the Court's finding, based on the record

18   developed, that Mr. Nauta has made a knowing, intelligent and

19   voluntary waiver of any potential or actual conflicts of

20   interest arising from Mr. Woodward's current and former

21   representation of the two witnesses discussed today.

22          Anything further, Mr. Woodward?

23          MR. WOODWARD:  Not on this matter, Your Honor.

24          THE COURT:  Anything further, Mr. Harbach?

25          MR. HARBACH:  No, Your Honor, thank you.
```

 1          THE COURT:  All right.  So that concludes the *Garcia*

 2   portion of this hearing.

 3          I will make a note, the Court's scheduling notice

 4   entered last night for another hearing to discuss scheduling in

 5   this case and the pending scheduling motions, that hearing is

 6   set for November 1st.

 7          Anything further, Mr. Woodward?

 8          MR. WOODWARD:  Your Honor, just regarding that

 9   hearing, as the Court may be aware, I'm in trial in DC;

10   however, it is a bench trial and there is a lot of extra time

11   that is now built in, so if the Court would be willing to reach

12   out to Judge Cobb about my availability, it would be much

13   appreciated.

14          I will forward your order, of course, so that she's

15   aware.  I think that she can accommodate, I realize there are a

16   lot of parties here and moving pieces, so I think she would be

17   more than happy to accommodate the Court, just sometimes those

18   requests are received from other judges differently than from

19   the lawyers who are looking for a day off.

20          THE COURT:  I can understand that.  If there is no

21   way around this trial conflict, then I trust Ms. Dadan can

22   handle the scheduling hearing, but I will endeavor to at least

23   communicate the scheduling of that hearing.  It is important

24   that we continue with that date, given the pending motions and

25   the impending deadlines.

1          Anything further from Counsel for either of the other

2    Defendants?

3          MR. MURRELL:  No, ma'am.

4          MR. BLANCHE:  No, Your Honor.

5          THE COURT:  Anything final from the Special Counsel's

6    Office?

7          MR. HARBACH:  No, Your Honor.

8          THE COURT:  Well, this hearing is adjourned.  I wish

9    you all safe travels back to your destinations, and thank you,

10   Mr. Nauta.  Have a nice weekend.

11         THE COURTROOM DEPUTY:  All rise.

12      (PROCEEDINGS ADJOURNED AT 2:53 P.M.)

13                          *  *  *  *  *

14                   **C-E-R-T-I-F-I-C-A-T-E**

15         I hereby certify that the foregoing is

16      an accurate transcription and proceedings in the

17      above-entitled matter.

18

19   _**10/22/2023**_              _**/s/DIANE MILLER**_
     DATE                    DIANE MILLER, RMR, CRR, CRC
20                           Official Court Reporter
                             United States District Court
21                           101 South U.S. Highway 1
                             Fort Pierce, FL  34950
22                           772-467-2337

23

24

25

Friday, October 20, 2023

**BY THE COURT:**
**[9]** 5/19 7/18 8/21
17/21 19/4 22/3
22/24 29/3 33/14
**MR. BLANCHE:**
**[2]** 2/18 38/4
**MR. BRATT: [1]**
2/11
**MR. HARBACH:**
**[16]** 15/9 15/16
15/22 16/4 16/9
16/11 17/12 17/20
18/24 19/2 32/20
33/2 33/12 36/15
36/25 38/7
**MR. MURRELL:**
**[2]** 2/16 38/3
**MR.**
**WOODWARD:**
**[14]** 7/2 7/5 8/16
14/22 15/4 18/13
22/2 22/23 28/24
29/1 32/8 36/10
36/23 37/8
**MS. DADAN: [4]**
2/21 7/9 23/7
36/12
**THE COURT: [43]**

**THE**
**COURTROOM**
**DEPUTY: [2]** 2/2
38/11
**THE**
**DEFENDANT: [2]**
5/14 7/17

**/**

**/s/DIANE [1]**
38/18

**1**

**10/22/2023 [1]**
38/18
**10005 [1]** 1/24
**101 [1]** 38/20
**10th [1]** 17/3
**12th [2]** 3/14 5/3
**13th [1]** 33/9
**1975 [1]** 3/24
**1983 [1]** 5/21
**19th [6]** 15/10

15/20 16/5 16/7
17/10 33/4
**1st [1]** 37/6

**2**

**20 [1]** 1/6
**20001 [1]** 1/18
**2023 [11]** 1/6 8/10
8/11 8/19 12/17
12/21 13/2 13/24
14/2 14/12 38/18
**20530 [1]** 1/16
**20th [3]** 13/24
15/17 15/21
**23-80101 [1]** 2/6
**23-80101-CR-CAN
NON [1]** 1/2
**2337 [1]** 38/21
**23rd [1]** 12/17
**27th [1]** 14/7
**2:53 [1]** 38/12

**3**

**30th [7]** 5/21 13/9
14/12 14/24 16/1
16/15 17/2
**33401 [1]** 1/22
**34950 [2]** 1/19
38/21

**4**

**4's [4]** 16/17
20/12 24/19 33/7
**44 [1]** 1/7

**5**

**5th [5]** 13/14
13/18 14/25 15/15
16/1

**7**

**772-467-2337 [1]**
38/21

**8**

**80101 [1]** 2/6

**9**

**9th [1]** 8/19

**A**

**ability [8]** 4/3
6/20 6/25 21/15
24/21 27/8 29/25

35/11
**above [1]** 38/17
**above-entitled [1]**
38/17
**absent [1]** 20/2
**accept [1]** 9/13
**acceptable [1]**
10/7
**accommodate [2]**
37/15 37/17
**act [2]** 20/11
20/22
**actions [1]** 29/25
**add [3]** 17/17
18/22 23/5
**added [1]** 18/11
**addition [1]** 20/7
**address [1]** 4/19
**adequately [2]**
35/7 35/12
**adjourned [2]**
38/8 38/12
**adverse [4]** 20/11
20/23 24/16 25/24
**adversity [3]**
24/18 24/25 30/2
**advice [1]** 32/21
**advocate [3]** 21/9
21/10 30/18
**affairs [2]** 16/15
26/14
**afford [1]** 10/8
**afternoon [8]** 2/5
2/11 2/16 2/18
2/20 2/21 2/25
2/25
**aggressive [1]**
30/18
**aggressively [1]**
26/24
**agreement [18]**
12/2 13/17 13/19
14/24 15/8 15/10
15/13 15/18 15/20
15/24 15/25 16/5
16/7 17/9 17/15
17/15 33/4 33/8
**AILEEN [2]** 1/10
2/3
**alcohol [1]** 6/14
**alert [1]** 6/16
**allegation [1]**
26/12

**allegations [3]**
12/8 12/9 14/10
**alleged [6]** 12/11
12/13 13/25 14/3
14/11 34/8
**allegedly [3]**
12/14 12/19 14/3
**allowed [1]** 23/15
**although [5]** 12/1
15/23 16/18 17/5
25/12
**Amendment [3]**
4/5 9/1 27/24
**AMERICA [2]** 1/3
2/7
**answer [1]** 16/12
**appeal [3]** 27/11
28/5 30/23
**Appeals [1]** 3/23
**appearances [2]**
1/12 2/9
**apply [1]** 22/21
**appointed [2]**
13/10 16/18
**appreciated [1]**
37/13
**approximate [1]**
8/15
**argue [1]** 30/22
**argues [1]** 23/17
**argument [8]** 5/4
24/21 25/1 25/2
26/24 27/21 28/5
30/1
**arguments [5]**
3/11 23/19 23/24
24/5 24/6
**arise [1]** 26/23
**arises [1]** 3/8
**arising [1]** 36/20
**arrangement [4]**
22/6 22/10 22/15
22/21
**assistance [2]**
27/25 34/2
**assumed [1]** 17/8
**assuming [1]**
24/18
**attack [1]** 27/20
**attempt [1]** 24/15
**attempts [1]**
14/11
**attorney [29]** 3/10

4/7 4/8 4/16 4/20
6/11 8/25 9/8
13/11 16/22 16/23
19/6 19/12 19/16
19/18 19/19 19/20
19/22 20/2 20/4
20/7 28/1 30/8
31/4 32/4 34/15
34/19 34/21 34/22
**attorney-client [3]**
19/16 19/22 32/4
**attorneys [1]** 22/8
**authorities [1]**
3/16
**availability [1]**
37/12
**avoid [2]** 11/17
20/25

**B**

**base [1]** 5/16
**basic [1]** 4/9
**basis [2]** 4/1 13/4
**Beach [1]** 1/22
**behavior [1]**
26/13
**bench [1]** 37/10
**benefit [1]** 26/23
**beyond [1]** 12/9
**birth [1]** 5/20
**BLANCHE [2]**
1/24 2/19
**boxes [1]** 12/15
**BRATT [3]** 1/13
2/11 15/7
**breach [1]** 27/3
**brief [3]** 3/20 8/16
28/24
**briefing [2]** 18/15
32/14
**built [1]** 37/11
**burden [1]** 12/9

**C**

**C-E-R-T-I-F-I-C-A-
T-E [1]** 38/14
**camera [1]** 12/14
**candid [1]** 8/1
**CANNON [3]** 1/2
1/10 2/3
**carefully [2]** 7/24
33/25
**CARLOS [4]** 1/7

**C**

CARLOS... [3]  2/7 2/17 14/9
case the [1]  4/11
cell [1]  3/2
certainty [1] 25/11
certify [1]  38/15
challenge [1] 24/19
chance [4]  3/16 5/5 22/8 32/1
choice [2]  26/3 36/4
choose [8]  4/16 9/8 10/4 28/19 29/10 32/18 34/19 34/21
choosing [4]  4/7 28/4 32/11 34/19
chosen [3]  4/2 4/15 9/18
chronology [1] 13/3
Circuit [1]  3/23
clarification [3] 6/7 15/12 33/17
clarify [3]  15/24 26/18 28/13
classified [1] 12/15
clear [4]  8/11 17/1 17/12 32/25
client [11]  11/4 11/5 19/16 19/19 19/20 19/22 20/20 27/3 30/3 30/24 32/4
client's [2]  6/25 19/20
clients [9]  11/12 19/13 20/3 20/8 20/25 21/6 21/12 23/16 29/24
closed [1]  3/9
closer [1]  5/17
closing [8]  23/18 23/19 23/24 24/15 24/21 25/1 26/25 27/21
club [1]  12/16
co [2]  22/4 30/13

co-counsel [2] 22/4 30/13
coached [1] 14/16
Coalition [1]  3/11
Cobb [1]  37/12
coerced [1]  31/16
colleagues [1] 16/14
college [1]  6/1
colloquy [4]  3/25 32/10 32/10 36/17
Columbia [3] 12/19 13/5 16/16
comfortable [6] 5/6 22/10 23/1 31/21 31/22 35/22
committing [1] 33/21
communicate [1] 37/23
communications [3]  19/19 19/21 23/16
competent [2]  7/4 7/8
complete [1]  8/1
comprehensiveness [1]  3/22
concept [4]  20/5 21/1 24/13 24/22
concepts [1] 19/10
concern [1]  24/6
concludes [1] 37/1
concrete [2]  17/8 33/3
condition [1]  6/19
conduct [5]  3/13 3/25 22/11 23/10 33/21
conducted [1] 36/16
conducting [4] 21/23 22/5 23/1 35/24
confer [1]  32/1
confidence [3] 9/17 20/4 25/14
confidences [2] 21/11 27/4
confident [2]  32/8

35/6
confidential [6] 19/18 19/21 24/7 25/7 27/14 29/18
confidentiality [4] 19/11 19/14 19/15 19/25
confirm [3]  21/22 33/6 33/20
conflict [15]  4/2 4/20 4/23 5/1 9/1 9/12 9/15 10/17 26/22 27/13 27/23 28/2 30/25 34/20 37/21
conflicts [25]  4/8 4/10 4/12 4/14 4/22 7/23 8/5 8/23 9/3 11/1 13/5 13/6 13/11 13/21 14/12 16/16 28/16 28/21 28/23 29/7 29/8 34/5 34/7 34/22 36/19
confusion [2] 11/17 11/21
connection [3] 11/13 13/8 18/3
consent [1]  20/13
consequences [5] 4/14 9/5 26/20 30/6 34/11
consequently [1] 4/13
consist [1]  7/23
consistent [1] 15/5
constitutional [1] 34/2
consult [3]  6/10 10/9 35/3
consulting [1] 16/19
containing [1] 12/15
contends [1] 23/11
continued [4] 3/15 13/13 13/18 32/12
conviction [2] 27/25 30/23
cooperating [1]

12/2
correction [1] 32/23
Counsel's [15] 2/10 3/17 4/11 7/13 8/4 9/18 12/24 13/16 14/25 18/16 25/9 26/5 26/13 32/17 38/5
court [16]  1/1 2/2 3/16 3/23 5/5 8/14 13/13 13/20 21/22 23/9 33/3 37/9 37/11 37/17 38/19 38/20
court's [7]  4/12 8/5 8/16 17/18 28/24 36/17 37/3
courtroom [2]  3/3 6/21
courts [2]  3/25 4/9
CR [1]  1/2
CRC [1]  38/19
create [1]  25/24
credibility [4] 23/23 24/19 25/15 27/20
criminal [3]  2/6 4/4 11/14
criminally [1] 11/25
cross [14]  21/24 22/5 22/12 22/18 23/1 23/6 23/11 23/17 27/20 30/9 30/14 30/16 33/22 35/24
cross-examination [12]  21/24 22/5 22/12 22/18 23/1 23/6 23/17 30/9 30/14 30/16 33/22 35/24
cross-examinations [1]  23/11
CRR [1]  38/19

**D**

D.C [2]  1/16 1/18
DADAN [17]  1/19 2/21 7/6 22/4 22/11 22/17 23/1

23/4 30/13 32/1 32/10 33/21 35/22 35/23 35/24 36/11 37/21
DAVID [2]  1/14 2/12
DC [9]  12/22 13/2 13/9 13/13 13/20 14/2 14/13 15/15 37/9
DE [7]  1/7 1/21 2/8 2/17 11/19 12/13 14/10
De Oliveira [2] 2/8 14/10
deadlines [1] 37/25
decide [8]  8/24 9/12 10/5 10/14 10/17 26/6 27/12 31/13
decision [17] 3/23 4/14 9/5 9/20 10/5 10/16 10/18 26/21 28/7 28/19 31/17 31/21 35/2 36/2 36/3 36/3 36/6
decline [1]  24/5
deemed [1]  24/16
defendant [12] 1/17 1/21 1/23 4/1 4/4 4/13 4/21 4/22 4/25 5/13 14/9 28/25
defendant's [2] 4/1 4/6
Defendants [2] 1/8 38/2
defense [4]  21/19 26/6 27/18 28/8
defer [1]  14/25
definitive [1]  11/9
delete [2]  12/14 14/11
deleted [1]  12/19
deletion [1]  14/4
denied [1]  27/24
designation [1] 11/18
designations [2] 7/13 7/14
despite [1]  35/19

Page 41

Case 9:23-cr-80101-AMC   Document 211   Entered on FLSD Docket 11/08/2023   Page 41 of 44
United States vs. Waltine Nauta

**D**

destinations [1] 38/9
destroy [1] 19/25
detail [2] 12/6 29/12
developed [1] 36/18
deviate [1] 3/7
dialogue [1] 5/6
DIANE [2] 38/18 38/19
diploma [1] 6/1
director [1] 12/12
disadvantage [1] 20/17
disclose [1] 24/6
disclosed [1] 25/9
disclosing [1] 19/18
disclosure [2] 19/23 19/25
discredit [2] 23/22 25/15
discrediting [1] 25/22
discussion [3] 16/10 17/6 28/25
discussions [1] 16/6
dispute [1] 11/11
disqualification [2] 9/19 9/22
disqualify [1] 9/17
district [15] 1/1 1/1 1/11 12/19 12/23 13/5 13/24 13/25 14/8 14/15 15/14 15/17 16/16 18/20 38/20
divided [2] 21/5 23/12
DIVISION [1] 1/2
divulging [1] 32/3
DONALD [2] 1/6 2/7
DONNIE [2] 1/22 2/16
double [1] 21/13
double-edged [1]

21/13
doubt [1] 12/10
drawing [1] 20/18
duty [17] 4/10 10/14 19/11 19/11 19/13 19/14 19/15 20/7 20/8 20/21 21/9 21/12 24/7 24/13 27/4 29/22 29/24
dynamic [1] 21/18

**E**

e-mail [1] 33/7
early [2] 8/10 17/2
edged [1] 21/13
effective [4] 4/21 27/25 30/9 34/2
effectively [4] 4/3 22/17 23/25 27/20
efficiency [1] 9/16
effort [1] 18/17
efforts [1] 12/13
eight [1] 15/14
elect [1] 9/17
elected [1] 13/21
else's [1] 36/3
emphasize [1] 25/5
Employee [56]
enable [1] 16/12
encompasses [2] 4/6 4/7
endeavor [1] 37/22
engagement [2] 8/11 8/15
English [2] 6/2 21/10
ensure [4] 4/22 5/7 10/15 26/1
entitled [1] 38/17
ESQ [8] 1/13 1/14 1/14 1/15 1/17 1/19 1/22 1/24
essentially [1] 3/24
ethical [3] 19/12 21/4 24/7
everybody [2] 3/2 3/12

examination [13] 5/18 21/24 22/5 22/12 22/18 23/1 23/6 23/17 30/9 30/14 30/16 33/22 35/24
examinations [1] 23/11
excuse [3] 16/17 19/8 35/24
expedited [1] 13/4
expressed [3] 16/23 17/2 18/15
extent [1] 5/11
extra [1] 37/10

**F**

face [1] 8/6
fact [3] 14/22 15/2 27/14
facts [1] 15/5
factual [4] 14/20 18/11 18/22 32/23
factually [1] 17/17
fairness [1] 9/16
Fast [1] 17/3
February 9th [1] 8/19
feed [1] 3/5
Fifth [1] 3/23
filings [1] 11/2
fill [2] 32/18 32/21
final [1] 38/5
finally [1] 9/6
finer [1] 23/14
FL [1] 38/21
fleshed [1] 17/13
floor [1] 3/4
FLORIDA [5] 1/1 1/5 1/19 1/22 15/21
footage [4] 12/15 12/20 14/4 14/11
forego [1] 24/25
foregoing [1] 38/15
forfeiting [1] 28/5
forgive [1] 19/17
form [4] 12/8 17/7 17/8 17/9
formal [2] 17/6

19/23
format [1] 10/23
former [19] 3/23 8/7 11/4 12/23 14/9 17/24 17/25 19/13 20/3 20/8 20/10 20/16 20/25 21/6 21/12 23/16 29/23 30/2 36/20
FORT [4] 1/2 1/5 1/19 38/21
forwarding [1] 17/3
free [10] 4/8 5/1 9/2 9/12 10/17 27/13 27/23 34/5 34/20 34/21
fulsome [2] 3/25 16/12

**G**

gaps [2] 32/18 32/21
GARCIA [6] 1/10 3/13 3/22 4/9 26/11 37/1
gather [1] 17/23
general [1] 29/6
genesis [1] 4/9
goodness [1] 30/23
GOVERNMENT [13] 1/13 8/8 11/8 11/13 12/3 13/4 13/25 16/10 16/25 17/4 17/7 18/16 34/16
Government's [5] 12/9 16/22 18/4 19/7 33/3
grand [4] 12/18 13/2 13/22 13/23
guilty [1] 27/22

**H**

handle [1] 37/22
happy [1] 37/17
HARBACH [8] 1/14 2/12 15/7 15/15 17/17 18/23 36/13 36/24
harming [1] 20/25
hearing [37] 1/10

3/7 3/9 3/12 3/13 3/14 3/17 3/19 5/11 7/4 7/8 7/11 7/22 8/24 10/23 10/23 13/5 13/9 13/10 13/13 13/18 13/20 14/13 15/15 16/16 17/5 18/12 26/12 33/17 35/20 37/2 37/4 37/5 37/9 37/22 37/23 38/8
here's [1] 29/4
hereby [1] 38/15
hesitate [1] 6/7
hesitation [1] 22/14
highlight [1] 18/14
Highway [1] 38/20
holiday [1] 13/15
Honor [58]
HONORABLE [2] 1/10 2/3
hope [1] 17/12
House [1] 17/24
housekeeping [1] 7/10
hundred [1] 25/11
hypothetical [1] 26/2

**I**

II [1] 1/14
immunity [3] 16/24 17/5 17/7
impact [2] 26/6 28/8
impair [1] 6/20
impending [1] 37/25
implement [1] 9/21
impropriety [2] 14/14 26/13
inconsistency [1] 25/24
inculpated [1] 14/3
inculpates [1] 11/7

## I

independent [1] 10/9
indicted [1] 12/1
indictment [3] 12/22 13/8 14/8
individual [2] 17/23 30/19
individual's [1] 27/20
individuals [16] 11/3 11/6 11/24 12/7 19/6 23/6 23/23 24/2 25/8 25/12 25/16 25/23 25/25 27/4 27/15 29/18
indulgence [2] 8/17 28/24
influence [1] 6/13
influenced [1] 31/16
information [18] 12/12 17/23 20/3 20/16 20/18 23/18 23/19 24/1 24/7 25/8 27/1 27/14 27/16 27/17 27/19 29/18 32/4 32/5
informed [5] 20/13 21/22 26/1 26/3 28/20
inhibit [1] 29/9
initial [2] 12/22 16/16
inquiry [1] 4/24
instead [1] 22/4
instructs [1] 3/25
intelligent [2] 6/16 36/18
intelligently [4] 5/2 10/19 32/6 32/11
intends [1] 8/8
intent [1] 18/18
interest [18] 4/2 4/8 4/20 4/23 8/5 8/24 9/15 13/6 16/23 17/2 24/16 25/25 28/2 29/8 34/5 34/7 34/23 36/20

interests [5] 20/12 20/23 20/25 23/20 35/7
intervening [2] 13/15 13/16
invalidated [1] 28/1
investigation [3] 11/14 13/1 19/7
issue [2] 9/20 12/19
issued [1] 3/24
issues [2] 31/5 31/24

## J

January 30th [1] 5/21
JAY [2] 1/13 2/11
job [1] 25/25
JOHN [2] 1/14 2/12
JR [1] 1/17
JUDGE [3] 1/11 16/9 37/12
judges [1] 37/18
July 13th [1] 33/9
July 19th [3] 15/10 15/20 33/4
July 20th [2] 13/24 15/21
July 27th [1] 14/7
July 5th [5] 13/14 13/18 14/25 15/15 16/1
June 30th [5] 13/9 14/12 14/24 16/1 17/2
jury [8] 12/18 13/2 13/22 13/23 24/21 25/1 26/25 30/1

## K

knowing [2] 28/20 36/18
knowingly [4] 5/2 10/18 32/6 32/11

## L

labored [2] 28/1 30/24
laboring [1] 4/2

lack [2] 21/14 25/22
Lago [2] 12/13 12/16
laid [1] 20/5
language [1] 6/2
late [2] 12/21 14/15
legal [1] 24/16
letter [1] 12/24
limit [4] 21/14 23/12 24/20 29/24
limited [1] 27/7
lines [1] 26/24
list [1] 18/4
listen [2] 7/24 33/25
locked [1] 31/9
logistics [1] 31/14
loyalties [2] 21/5 23/12
loyalty [10] 19/11 19/14 20/7 20/21 21/1 21/13 24/13 27/4 29/23 29/24

## M

mail [1] 33/7
maintain [1] 21/11
maintaining [1] 21/12
manifest [1] 34/8
manifesting [1] 27/10
Mar [2] 12/13 12/16
March 23rd [1] 12/17
material [5] 12/16 24/18 24/25 25/24 30/2
materialize [1] 26/22
materially [4] 14/1 20/11 24/16 25/23
matter [7] 3/9 7/10 13/13 14/20 18/11 36/23 38/17
matters [1] 10/7
medication [1]

6/14
memorialized [1] 17/16
mental [1] 6/19
MICHAEL [2] 1/15 2/12
microphone [1] 5/16
MILLER [2] 38/18 38/19
misconceptions [1] 16/13
mistaking [1] 33/9
moment [1] 16/9
months [1] 12/21
motion [1] 7/13
motions [2] 37/5 37/24
movement [1] 12/15
Mr [3] 2/15 16/17 29/4
Mr. [116]
Mr. Bratt [1] 15/7
Mr. De [2] 11/19 12/13
Mr. Harbach [6] 15/7 15/15 17/17 18/23 36/13 36/24
Mr. Nauta [37] 2/25 3/13 3/15 3/21 5/3 5/9 5/12 7/3 7/7 7/16 8/22 14/5 18/7 19/5 21/1 21/7 21/16 22/6 22/25 24/8 24/22 25/6 29/11 29/22 30/22 32/5 32/9 32/17 32/22 33/15 33/20 34/1 35/6 35/14 36/9 36/18 38/10
Mr. Woodward [62]
Mr. Woodward's [8] 13/7 21/14 24/19 24/21 25/22 29/25 35/11 36/20
Ms [1] 32/10
Ms. [12] 7/6 22/4 22/11 22/17 23/1 23/4 30/13 32/1

33/21 35/22 36/11 37/21
Ms. Dadan [12] 7/6 22/4 22/11 22/17 23/1 23/4 30/13 32/1 33/21 35/22 36/11 37/21
MURRELL [2] 1/22 2/17

## N

nature [1] 26/2
NAUTA [44]
Nauta's [1] 36/3
necessary [1] 36/14
negatively [1] 28/8
net [2] 20/24 20/24
net-net [1] 20/24
nice [1] 38/10
non [17] 12/2 13/17 13/19 14/24 15/8 15/10 15/13 15/18 15/20 15/24 15/25 16/4 16/7 17/9 17/14 33/4 33/8
non-prosecution [17] 12/2 13/17 13/19 14/24 15/8 15/10 15/13 15/18 15/20 15/24 15/25 16/4 16/7 17/9 17/14 33/4 33/8
notice [1] 37/3
notion [1] 17/5
November 1st [1] 37/6
number [16] 2/6 11/5 17/22 17/24 18/2 18/4 18/12 18/17 18/23 19/8 20/23 22/20 22/22 29/9 29/15 35/9
Number 1 [3] 18/12 19/8 35/9
NY [1] 1/24

## O

obligations [2] 19/12 21/4

## O

observations [1] 5/5
obtained [4] 23/16 27/1 27/14 29/17
October 12th [1] 3/14
offenses [1] 14/10
offer [4] 16/3 17/6 23/4 33/3
offering [1] 33/8
office [19] 1/15 2/10 3/17 4/12 7/14 8/4 9/4 9/18 12/24 13/16 14/25 18/1 18/16 21/3 25/9 26/5 26/13 32/17 38/6
Official [1] 38/19
Oh [1] 30/23
OLIVEIRA [7] 1/7 1/21 2/8 2/17 11/19 12/13 14/10
open [1] 5/6
opportunity [4] 23/5 29/4 31/24 32/17
order [1] 37/14
originally [1] 3/14
overall [1] 14/17
overflow [1] 3/4
overview [1] 3/20
owes [2] 20/7 29/22

## P

P-R-O-C-E-E-D-I-N-G-S [1] 2/1
P.M [1] 38/12
PAGES [1] 1/7
Palm [1] 1/22
papers [3] 13/4 21/21 26/11
part [3] 3/10 14/14 26/14
partially [1] 3/9
parties [3] 3/17 21/21 37/16
parties' [2] 11/1 13/4
party [2] 4/11

19/24
pause [2] 8/13 32/16
PELLETTIERI [2] 1/14 2/12
pending [2] 37/5 37/24
people [2] 11/11 21/6
perfectly [1] 10/7
perils [2] 4/19 4/23
period [1] 13/16
perjury [2] 13/1 13/22
person [2] 11/20 19/24
pertains [2] 14/21 18/12
phone [1] 3/2
picture [1] 14/17
pieces [1] 37/16
PIERCE [4] 1/2 1/5 1/19 38/21
pivot [2] 3/8 24/13
Plaintiff [1] 1/5
point [11] 6/6 6/10 7/21 9/25 13/3 13/10 23/14 25/5 26/10 28/18 32/6
positive [1] 14/12
possess [1] 27/14
possesses [2] 27/19 34/22
possibilities [2] 25/17 26/1
possibility [1] 27/10
post [1] 18/1
posture [1] 3/8
potential [20] 4/14 4/14 4/19 4/23 7/23 8/5 8/23 9/3 9/5 9/14 10/15 13/6 26/20 28/21 28/22 34/7 34/11 34/16 34/22 36/19
potentially [4] 21/18 24/20 27/3 30/8

preceding [1] 32/10
precluded [1] 29/19
premised [1] 20/1
present [3] 2/23 3/11 16/18
presidency [1] 17/25
President [5] 2/19 12/23 14/9 17/25 18/1
presidential [1] 18/1
presiding [1] 2/3
press [2] 3/4 3/10
pressured [2] 31/16 36/6
prevents [1] 19/18
private [1] 16/21
privilege [4] 19/16 19/22 19/22 20/1
privileged [8] 20/4 23/15 24/1 27/1 27/16 27/19 29/19 32/4
problematic [1] 21/19
proceed [19] 4/15 4/15 7/4 7/8 8/25 9/5 9/7 10/3 10/10 13/21 26/7 26/21 28/4 30/7 31/4 32/11 34/12 34/14 34/21
proceeding [5] 4/18 6/17 16/20 30/6 31/21
proceedings [3] 9/17 38/12 38/16
procure [1] 18/18
Professional [1] 20/19
proffer [1] 17/4
prohibited [1] 27/23
prohibition [1] 3/3
pronounce [1] 5/22
prosecution [17]

12/2 13/17 13/19 14/24 15/8 15/10 15/13 15/18 15/20 15/24 15/25 16/4 16/7 17/9 17/14 33/4 33/8
prove [1] 12/9
public [2] 3/7 9/16
pull [1] 30/17
punches [1] 30/17
purposes [2] 5/10
pursue [1] 24/5
pursued [1] 26/24

## Q

question [2] 22/25 36/13
questioned [1] 11/13
questioning [1] 4/25
questions [13] 5/7 5/11 7/7 7/19 9/25 10/22 10/24 25/18 26/8 28/10 33/16 36/9 36/14

## R

raised [2] 3/16 9/3
ramifications [1] 10/16
reach [1] 37/11
realize [2] 9/11 37/15
record [5] 16/10 16/21 28/25 32/24 36/17
recording [1] 3/3
rehash [1] 32/15
remain [2] 19/21 32/18
remains [3] 18/4 20/4 29/19
remarks [2] 25/1 26/25
remedies [1] 9/21
repetition [1] 7/25
repetitious [1]

19/17
Reporter [1] 38/19
representation [11] 4/19 4/21 8/7 13/7 20/9 20/16 23/13 27/2 27/15 32/12 36/21
requests [1] 37/18
required [4] 9/13 10/2 10/5 21/11
reservations [2] 22/14 35/11
responses [1] 8/2
Responsibility [1] 20/19
result [2] 21/4 25/23
retained [1] 8/18
return [1] 33/15
reversed [1] 30/23
rights [1] 32/9
rise [2] 2/2 38/11
RMR [1] 38/19
role [1] 17/19
room [1] 3/4
Rules [1] 20/19

## S

safe [1] 38/9
sake [1] 3/22
Sasha [1] 2/21
scheduled [1] 3/14
scheduling [5] 37/3 37/4 37/5 37/22 37/23
school [2] 5/25 6/1
second [1] 3/4
security [3] 12/14 12/20 14/11
sense [2] 10/20 21/1
sentiment [1] 35/15
serious [1] 9/15
seriously [1] 9/16
serving [1] 12/2
session [2] 2/3 17/4

**S**

shall [1]  3/3
shape [1]  24/17
shared [1]  20/3
SHASHA [1]  1/19
short [3]  9/21
20/24 32/25
sic [1]  30/24
signed [3]  12/1
15/18 15/20
simultaneous [1]
13/7
situation [4]  6/25
7/2 26/22 28/18
Sixth [3]  4/5 9/1
27/24
small [2]  7/10
32/23
so-called [1]  21/5
South [1]  38/20
SOUTHERN [1]
1/1
Special [22]  1/15
2/10 3/17 4/11
7/13 8/4 9/4 9/18
11/3 12/24 13/16
14/25 18/15 21/3
23/11 23/17 25/9
26/5 26/12 32/17
34/8 38/5
specific [1]  8/10
stage [2]  16/19
16/25
STANLEY [2]
1/17 2/22
starting [3]  2/9
12/11 28/21
state [2]  16/14
26/14
STATES [6]  1/1
1/3 1/11 2/6 2/13
38/20
stay [1]  5/10
submitted [2]
3/18 21/21
substantive [2]
14/20 18/10
substitute [1]
18/18
sufficient [1]  32/5
suggestion [1]
14/13

suggests [1]  21/4
summarize [2]
10/25 20/2
summarized [1]
14/17
summary [2]  4/18
17/18
summation [1]
24/20
superseding [1]
14/8
supplemented [1]
14/20
supplements [1]
3/18
swear [1]  5/9
sword [1]  21/14
SWORN [1]  5/13

**T**

table [2]  5/10
32/19
target [1]  12/24
technology [1]
12/12
tender [1]  16/4
tendered [1]
17/10
term [2]  21/14
25/22
terms [2]  30/6
32/21
testimony [10]
11/7 12/22 13/2
13/24 14/1 14/2
14/16 15/14 15/21
18/19
THAKUR [2]  1/15
2/12
thank [21]  2/4
2/14 2/24 5/15
8/20 15/6 15/12
15/19 16/11 17/11
18/24 19/3 29/1
29/11 32/13 32/20
33/2 33/11 33/12
36/25 38/9
thinking [1]  33/5
thus [3]  6/4 18/6
24/10
time [15]  9/19
10/6 10/8 10/9
11/14 11/19 13/12

17/8 21/11 28/11
34/18 35/2 35/4
35/14 37/10
timing [1]  15/3
17/14
today's [4]  3/12
3/19 4/18 8/24
TODD [2]  1/24
2/18
topic [1]  14/3
TRANSCRIPT [1]
1/10
transcription [1]
38/16
transpiring [2]
5/8 6/21
travel [1]  31/14
travels [1]  38/9
trial [19]  4/16 8/8
9/7 11/6 11/10
12/10 18/5 18/20
27/8 27/17 28/8
29/20 29/25 31/9
32/7 34/9 37/9
37/10 37/21
TRUMP [62]
Trump's [2]  17/25
18/1
trust [1]  37/21
Turning [1]  17/22

**U**

U.S [1]  38/20
ultimately [5]
4/24 8/1 14/2
17/15 28/7
unable [2]  27/2
27/19
unaware [1]
14/23
unclear [1]  24/17
underlying [1]
11/13
undermine [3]
9/16 23/23 24/15
understanding [4]
15/5 28/17 29/6
35/7
unethical [1]
26/13
UNITED [6]  1/1
1/3 1/11 2/6 2/13
38/20

unless [2]  19/22
20/17
usual [1]  3/2

**V**

versus [1]  2/7
vigorous [1]
30/15
violation [1]  24/7
vis [1]  11/19
11/19 25/24 25/24
30/2 30/2
visits [1]  31/15
voluntarily [2]  5/2
10/18
voluntary [3]
19/23 19/24 36/19
vs [1]  1/5

**W**

waive [6]  5/1 9/1
9/12 10/17 27/12
34/20
waived [2]  19/22
27/22
waiver [5]  5/2
9/13 19/23 20/2
36/19
WALTINE [8]  1/6
2/7 2/22 5/13 5/21
5/23 5/24 36/3
warning [1]  32/22
Washington [2]
1/16 1/18
weaker [1]  30/18
weekend [1]
38/10
welcomed [1]
26/11
West [1]  1/22
whatsoever [1]
31/10
White [1]  17/24
willing [1]  37/11
wish [3]  4/25 6/10
38/8
witnesses [5]
7/12 8/7 11/6
35/25 36/21
WOODWARD [64]

Woodward's [8]
13/7 21/14 24/19

24/21 25/22 29/25
35/11 36/20
worse [1]  25/2
wrap [1]  33/24

**Y**

York [1]  1/24

**Z**

zeal [1]  21/9
zealous [1]  21/9
zealously [1]
21/10
Zoom [1]  3/5