**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80-1010-CR-CANNON**

**UNITED STATES OF AMERICA,**

**v.**

**DONALD J. TRUMP,**
**WALTINE NAUTA, and**
**CARLOS DE OLIVIERA,**

**Defendants.**

_____ /

**DEFENDANTS' MOTION TO DISMISS THE INDICTMENT**

Defendants President Donald J. Trump, Waltine Nauta and Carlos De Oliviera, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, respectfully request this Court dismiss the Superseding Indictment (July 27, 2023) (ECF No. 85), for failure to state an offense and for related pleading deficiencies.[1]

I.   **Introduction**

Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a district court may dismiss an indictment that fails to comply with relevant pleading requirements in alleging an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B) (motions asserting the following indictment defects

---

[1] Pursuant to the Court's Paperless Order (Feb. 20, 2024) (ECF No. 320), on February 22, 2024, Mr. Nauta submitted to the Court and the Special Counsel's Office ("SCO") the foregoing Motion to Dismiss so that the SCO could ascertain whether sealing of the instant motion and/or redaction of the same was warranted.  Earlier today, the SCO filed their Motion for Sealing and Redaction of Defense Filings and Exhibits (Feb. 28, 2024) (ECF No. 348) indicating that it was not seeking the sealing or any redaction of Mr. Nauta's proposed Motion to Dismiss. Accordingly, Mr. Nauta submits this motion, which mirrors the version shared with the Court and the SCO except that the space between lines has been increased to 2 spaces and citations to the Superseding Indictment have been revised to conform to other filings in this action.

"must be raised by pretrial motion": "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense"). The interrelatedness of these requirements arises under Rule 7 of the Federal Rules of Criminal Procedure. "To be legally sufficient, an indictment must contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]'" *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011) (quoting Rule 7(c)(1)). *See also United States v. McQueen*, No. 11-20393-CR, 2011 WL 4375729, at *2 (S.D. Fla. Sept. 16, 2011) (same).

Here, the operative indictment fails to satisfy the requirements of Rule 7 in that it fails to comprehensibly set forth, in plain language, distinct violations of federal criminal law, instead presenting a personal and political attack against President Trump, offering a litany of uncharged grievances both for public and media consumption and presenting a narrative aura of impropriety, along the lines of a grand jury report or pronouncement not permitted by Rule 7 or the Fifth Amendment's grand jury clause. The SCO's impermissible abuse of the grand jury, effectively substituting a PowerPoint or picture book presentation for the requisite allegations of offenses under Rule 7, compels dismissal.

## II.    The Indictment Flouts the Concise Specificity Demands of Rule 7

Because Rule 7(c)(1) requires that an "indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1) (emphasis added), the Indictment's foregoing of those requirements is not merely a stylistic prosecutorial option, but a prohibited violation of the defendant's fundamental rights. The Indictment in this case presents a combination of prejudicial argument and "shotgun pleading," i.e., a long list of varying allegations about the Trump post-Presidency—with all such characterizations, from ¶¶ 1-91 of the Indictment, re-incorporated into each of the 42 counts of the

indictment, including those having nothing to do with defendant Nauta—combined with argumentative opinions about the factual allegations. *See* Superseding Indictment ¶¶ 92, 94, 98, 100, 102, 104, 106, 109, 113, 115 & 117. The Indictment's miasma of largely political complaints about how the President disposed of paperwork from his Administration during his term of office, together with the SCO's argumentative headings (essentially, prejudicial instructions given to the grand jury as to how to interpret the facts), do not meet Rule 7's requirements. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("'An indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.'") (quoting *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003)) (emphasis added).

The SCO's substitution of this disparagement presentation to a jury leaving jurors to accept argument rather than "essential facts" as the basis of their verdict and turning the Indictment into a form of portable closing argument used to constrain the jury deliberations, *see, e.g.*, Superseding Indictment at pages 4, 7, 9, 10, 14, 17, 21, 24 & 30, is improper under Fed. R. Crim. P. 7. *See also United States v. Pendas-Martinez*, 845 F.2d 938, 941–42 (11th Cir. 1988) (error to permit government case-summarizing argumentative evidence to be submitted to the jury).

The impermissible shotgun nature of the Indictment is particularly prejudicial as to defendant Nauta in that, after 32 counts charging only President Trump, each of which incorporates 91 paragraphs of general allegations, the same re-incorporation is employed against defendant Nauta in counts 33–37 and 39–41. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). This abuse wastes judicial resources and is an unacceptable form of pleading a claim. *Id.*; *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 & nn. 9, 10 (11th Cir. 2002). The

"shotgun pleading" in this case directly violates the "plain," "concise," "definite," "essential facts" demand of Rule 7. The repetition of the argumentative, inapt powerpoint-like presentation into each count is a classic shotgun pleading failure. *See, e.g.*, *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 & n. 9 (11th Cir. 2015) (condemning as impermissible shotgun pleading reallegation of long list of allegations in multiple separate counts so as to make pinning down the specific count-by-count allegations often like searching for a needle in a haystack); *Cobble v. G.D.C. Statewide All Personnel*, CV621-023, 2021 WL 2405607, at *3, 4 (S.D. Ga. Apr. 9, 2021) (shotgun pleadings "have been a point of admonishment and criticism in this Circuit for decades") (citing *Weiland* and cases cited therein).

Additional levels of concern are raised by shotgun pleadings in criminal cases. Three separate provisions of the Constitution must be considered in any inquiry into the sufficiency of an indictment. First, the Sixth Amendment's "apprisal" requirement mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be informed of the nature and cause of the accusation." *See* U.S. Const. amend. VI. Second, the Fifth Amendment's grand jury clause provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand jury." U.S. Const. amend. V. This second guarantee can be protected only if the indictment identifies a particular offense coming within the general statutory definition, thus eliminating the possibility that the prosecution might obtain a conviction at trial for an offense different from the one for which the grand jury indicted.

In light of these provisions, the Supreme Court has "identified two constitutional requirements for an indictment: 'first, [it must] contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second [it must] enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same

offense.'"  *United States v. Resendiz-Ponce*, 127 S. Ct. 782, 788 (2007); *accord United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998) (*en banc*).  From a practical standpoint, these two requirements are closely related in that any indictment failing to satisfy the first requirement would likely fail to satisfy the second.  Thus, inquiries into the sufficiency of an indictment almost inevitably focus on the first requirement, i.e., on whether the indictment a) sets forth the elements of the offense, and b) fairly informs the defendant of the charge against which he must defend. *Russell v. United States*, 369 U.S. 765–72 (1962).  *See, e.g.*, *United States v. Bobo*, 344 F.3d 1076, 1984 (11th Cir. 2003) (reversing healthcare fraud conviction where "the indictment ma[de] only a broad allegation of fraud in a health care benefit program without the required specificity," and noting that "[a]n indictment that requires speculation on a fundamental part of the charge is insufficient").

The shotgun pleading in this case exemplifies the Indictment's deviation from its constitutionally-based charging function, as illustrated by the following general allegation paragraphs of the Indictment:

| ¶ 1 | Vague introduction of concept of USIC (U.S. Intelligence Community), lacking any statutory reference, used more in the sense of bureaucratic jargon, improperly conveying to the jury the controlling decision of another body. |
|---|---|
| ¶ 5 | Improper introduction of purported uncharged crimes of illegal classified document storage, inviting juror confusion, compelling assertion of defenses to the uncharged accusations, and creating a charging duplicity defect that invalidates Indictment. |

| ¶ 6 | Continued reference to uncharged offense allegations, including allegations of discussions about classified documents with a writer and a PAC employee; these unwarrantedly inserted allegations are later prejudicially repeated (¶¶ 34-36). |
| --- | --- |
| ¶ 7 | Improper reference to statements obtained through attorney-client communication privilege violations; even if the privilege holders do not challenge such matters in this Court, Nauta is unfairly prejudiced by having no ability to breach the privilege to obtain full disclosure and test the communication allegations. |
| ¶ 8 | Improper reference to "court·authorized search warrant" creating imprimatur of validity to SCO actions; improper and prejudicial reference to "result" of search. |
| ¶¶ 11-12 | Prejudicial references to Mar-a-Lago guests to heighten jury fears of disclosure of classified documents neither factually claimed by SCO nor material to the charges. |
| ¶ 13 | Improperly introducing Secret Service issues, including of obligations of reporting to the Secret Service: "TRUMP did not inform the Secret Service ... ."  Conflating issues regarding Secret Service creates collateral factual disputes. |

| ¶¶ 18-19 | Misleading references to EO 13526 give false impression that the Order applies to a President's disposition of documents, including for a post-Presidential purpose (e.g., post-Presidential impeachment), rather than post-Presidential requests for expanded access not obtained while in office.  Indictment's adverse implication is false and leads to further duplicity prejudice as to purported uncharged conduct. |
|---|---|
| ¶ 22 | Vague, prejudicial reference to actions "implicating the equities of" agencies suggests harm where there was none, unfairly prejudices the defendants. |
| ¶¶ 23-24 | Improper inclusion of stories about press interviews and conferences appear designed to prejudice and not to allege any fact of relevance. |
| ¶¶ 26, 29, 31, 32 & 40 | Inclusion and highlighting of photographic images—essentially proposed trial exhibits—to serve as evidentiary proof of allegations is improper under Rule 7. Evidentiary rules for admission and highlighting of exhibits are trial matters, not to be obviated by inclusion in Indictment; improperly using to bolster trial evidence. |
| ¶ 27 | Irrelevant discussion of moving of boxes to business center. |
| ¶ 28 | Improper hearsay about Nauta. |
| ¶¶ 33-36 | Improper inclusion of stories about press interviews and conferences appear designed to prejudice and not to allege any fact of relevance. |

| ¶ 37 | Improper inclusion of non-contemporaneous Presidential press conferences. |
|------|--------------------------------------------------------------------------|
| ¶ 46 | Allegations about new box covers for materials sent to NARA or about writing placed on older covers merely adds confusion and diverts from any charge. |
| ¶¶ 39–48 | Improper allegations of conduct relating to NARA not part of any obstruction or other charge against Nauta and predate all Nauta charged offense dates; improper uncharged claim of obstruction of NARA; mistakenly refers to Count 38. |
| ¶ 48 | Vague concept of "the boxes" is left undefined and unlimited. |
| ¶ 49 | Improper inclusion of governmental "determinations" in the Indictment serves to lessen jury's independent responsibility to weigh evidence and judge the charges. |
| ¶ 50 | Improper reference to a prosecution referral by NARA is unduly prejudicial in the Indictment and wrongly serves as a governmental validation usurping jury's role. |
| ¶ 53 | Vague reference to "the grand jury" renders the allegation unclear. |
| ¶ 54 | In listing various facts from which SCO will seek to show chain of circumstantial proof, SCO exceeds limits of Fed. R. Crim. P. 7. |
| ¶¶ 55-57, 60, 66-67 | Improper inclusion of attorney-client privileged conversation that Nauta cannot defend against because the privilege still exists. |

| ¶ 71 | Ambiguous claim of declaration falsity: was it truthful as to the speaker's knowledge? |
|---|---|
| ¶¶ 74-87 | In listing suppositions from which SCO will seek to show chain of circumstantial proof, SCO exceeds limits of Fed. R. Crim. P. 7. Argumentative evidentiary opinion. |
| ¶ 88 | Improper reference to what "the ... grand jury" reviewed and improper reference to FBI investigation opinions: "In July 2022, the FBI and grand jury obtained and reviewed surveillance video from The Mar-a-Lago Club showing the movement of boxes set forth above." Permissible to allege elemental facts, but improper to argue the case. |
| ¶ 89 | Improper allegations about a "court-authorized" warrant (& Heading on page 30). |
| ¶ 91 | Improper allegations about hiring of counsel serve to undermine the role of defense counsel; improper allegations about asking if employees are disloyal. |

The vague, prejudicial shotgun-allegation format of the Indictment, which veers from one uncharged aspersion of bureaucratic complaint to another, in defiance of the mandatory pleading requirements of Fed. R. Crim. P. 7(c)(1), merits dismissal.

### III.   The Indictment Fails to Allege a Specific Conspiracy, and Instead Purports to Link Individuals in Distinct Conduct Involving Different Intents, Purposes, and Knowledge.

In Count 33 of the Indictment, defendant Nauta is charged with conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).  However, the accusations of Count 33 show that the

SCO has made no effort to limit the conspiratorial allegation to a jointly-shared objective and has instead merged various of the SCO's institutional complaints against President Trump with distinct individual allegations as to Nauta that, on their face, do not link up with the supposed conspiratorial objective and which otherwise violate Fed. R. Crim. P. 8's requirement of one charge per count of an indictment.  *See* Fed. R. Crim. P. 12(b)(3)(B)(i) (dismissal for improper charge joinder).

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "the indictment or information may charge a defendant in separate counts with 2 or more offenses."  Rule 8(a) has been interpreted to prohibit "duplicity," which is the joining of two or more distinct offenses within a single count.  *See, e.g.*, *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980).  Duplicity can prejudice a defendant by: i) failing to properly notify the defendant of the specific charges against him; ii) influencing the evidentiary rulings of the trial court; iii) improperly influencing the sentencing decisions of the trial court; iv) failing to prevent potential double jeopardy problems caused by an inadequate record; and v) risking a conviction based on a non-unanimous verdict as to each offense charged within the count. *See, e.g.*, 1 Charles A. Wright, 1 Federal Practice and Procedure: Criminal §142 (2d. ed. 1982).  Courts have struck convictions on duplicity grounds where prejudice results.  *See, e.g.*, *United States v. McDermott*, 245 F.3d 133, 135 (2d Cir. 2001) (reversing a conviction because "the variance between the single conspiracy charged in the indictment and the proof adduced at trial" resulted in prejudice such that the defendant was denied a fair trial).

A count is not necessarily duplicitous when it charges a defendant with conspiracy to commit more than one offense.  *See, e.g.*, *United States v. Frequency Electronics*, 862 F. Supp. 834, 842 (E.D.N.Y. 1994) (stating that "[i]t is axiomatic that a section 371 conspiracy may allege a conspiracy with an object that is violative of multiple statutes").  However, a count is duplicitous

if the prosecutors attempt to charge more than one conspiracy (with different sets of conspirators) within that count, and that is exactly what Count 33 purports to do as seen in the purpose, manner and means, and general allegations of that count.   The SCO has simply smashed together chronologically distinct events to prejudice defendant Nauta with allegations having no support in the essential facts alleged in the indictment. *See Kotteakos v. United States*, 328 U.S. 750, 755 (1946) ("trial judge was plainly wrong in supposing that upon the evidence there could be a single conspiracy; and in the view which he took of the law, he should have dismissed the indictment") (internal citations omitted). *See also United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (holding that the tipping of a remote tippee by another tippee in an insider trading conspiracy was not within the scope of the initial conspiratorial agreement); *United States v. Johansen*, 56 F.3d 347, 351 (2d Cir. 1995) (no "single overall conspiracy"); *United States v. Cambindo Valencia*, 609 F.2d 603, 626 (2d Cir. 1979) (finding that the government had not presented evidence of a single conspiracy, but rather "a series of drug transactions involving various people who were sometimes joined, sometimes in competition, but never fused into a single enterprise").

The prosecution may not "attempt[] to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions" by alleging that the defendants committed acts of concealment in furtherance of the conspiracy, which occurred after the main objectives of the conspiracy were completed.  *Grunewald v. United States*, 353 U.S. 391, 404 (1957).  In this context, the SCO improperly attempts to include as part of the alleged conspiracy acts of concealment that allegedly were committed after the primary goals of the conspiracy were completed.  *See, e.g.*, *United States v. Crozier*, 987 F.2d 893, 902 (2d Cir. 1993) (finding that the central aim in a bribery conspiracy was the giving of the bribe, and that the failure of appellant to record the bribe on his books for the years that followed "were merely acts to cover up the conspiracy and were not done in

furtherance of the conspiracy"); *United States v. Floyd*, 555 F.2d 45 (2d Cir. 1977) (finding that burning the getaway car the day after the robbery was not part of the initial conspiracy to commit robbery because, at the time the car was burned, the robbery was complete). *See United States v. Pavlenko*, 838 F.3d 1168, 1169–70 (11th Cir. 2016) (reversing wire-fraud conviction premised on email distinct from actual commission of fraud conduct).

The Indictment alleges in ¶ 95 multiple duplicitous offense allegations subsumed within the conspiracy charge of count 33, without expressly stating a multi-object conspiracy and without attempting to explain whether each defendant was part of the various different conspiracy objects alleged. Thus, in ¶ 96, the Indictment's allegation of intent "to keep classified documents he had taken with him from the White House and to hide and conceal them from a federal grand jury" (emphasis added) does not allege a mutual criminal purpose in Count 33. The problematically duplicitous nature of the Count 33 charge is heightened by ¶ 97's improper inclusion of attorney-client conversations about which Nauta cannot inquire and including vague references to moving boxes and falsity.

Count 34's improper joinder in ¶ 99 of one alleged crime as to defendant A with another alleged crime by defendants A & B helps to shine a light on the impropriety of the conspiracy allegation joinder in Count 33. Count 34's duplicity and misjoinder represents a core violation of Fed. R. Crim. P. 8, with maximum prejudice to the defendants through the blurring of defendants and charges in one count.

The Indictment in this case does not provide the necessary factual allegations to provide a basis for the misjoinder and duplicity of the conspiracy count. It fails under any reasonable construction to charge all of the elements of the offense. *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013) (The court "cannot combine the allegations from separate counts to allege

what the indictment itself does not") (citing *United States v. Huff*, 512 F.2d 66, 69 (5th Cir.1975) ("A grand jury indictment may be amended only by resubmission to a grand jury 'unless the change is merely a matter of form.'") (quoting *Russell v. United States*, 369 U.S. 749, 770–71 (1962)). *See United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) (indictment insufficient where it failed to allege "facts" from which the defendant's mens rea "can be inferred, with regard to the [unlawful] nature of her" statements, and may not rely on merely speculative possibilities; "Martinez's indictment does not meet the Fifth Amendment requirement that the grand jury find probable cause for each of the elements of a violation.") (emphasis added).

First, the Indictment in no way alleges that either De Oliveira or Nauta was aware of any national defense information present at Mar-a-Lago at any time, nor does anything in discovery suggest the SCO is capable of amending the Indictment to so allege. Thus, the inclusion of those defendants in a conspiracy the purpose of which was to retain such material is plainly not supported by the Indictment's allegations. What the SCO has done, therefore, is claim a nonexistent form of conspiracy under federal law, without two or more members. And this nonsensical form of conspiracy allegation is not cured by the SCO's adding of entirely separate conspiratorial objects. Rule 8 does not permit charging as a single conspiracy with multiple objects an association of defendants as to which the allegation is that there was a conspiracy only as to some of the objects. If the SCO wishes to properly set forth an NDI conspiracy allegation, in order to preserve the defendants' rights under the grand jury clause, that can only occur through a superseding indictment.

The conspiracy charge states that the purpose of the conspiracy was to keep classified documents and to hide and conceal them from the grand jury. Again, as to this object, there is no allegation that either Nauta or De Oliveira knew that there were classified documents on premises,

that any such documents were hidden, or anything of the sort.  The Indictment alleges in the manner and means section that false statements to the FBI were made and that they were intended to hide classified documents.  The Indictment also alleges that there was an attempt to delete security footage and that the purpose of such attempt was to keep and hide classified documents.  But again, the Indictment alleges nothing to the effect that Nauta or De Oliveira knew anything of continuing retention of classified documents.  Nor is such an attempt otherwise charged in the Indictment.  Moreover, the SCO's efforts to exclude Nauta and De Oliveira from the classified information components of discovery only heighten the showing that the Indictment blurs conspiratorial objects so as to avoid the restrictions of Fed. R. Crim. P. 8 and the constitutional defect of duplicity.

**IV.    <u>Obstruction of Justice Charges</u>**

In Counts 34 and 35, the SCO alleges that defendant Nauta committed obstruction offenses by moving boxes into a location where President Trump could review them at a time prior to compliance with a grand jury subpoena  Superseding Ind. at ¶ 99 (July 27, 2023) (ECF No. 85) (allegation of hiding material from an attorney);  *Id.* at ¶ 101 (claiming Nauta "hid and concealed boxes that contained documents with classification markings from Trump Attorney 1 so that Trump Attorney 1 would not find the documents and produce them to a federal grand jury").  These obstruction allegations are unduly vague and strain credulity: how could providing documents for President Trump to review prior to subpoena compliance be an act that obstructs justice?  And the essential facts relevant to these counts also contradict the theory that Nauta was aware of any unproduced classified documents at Mar-a-Lago.  The use of this charge against Nauta, in light of the factual allegations, is unsound and impermissible.  Nowhere in the Indictment is Nauta alleged to know of any hiding of classified documents; hence, the bare-bones conclusory allegation is improper.  Nor is there any allegation in the Indictment that Nauta ever saw or discussed with anyone the contents of the grand jury subpoena, knew to whom it was addressed, knew of any

discussions with the attorneys under client confidence, or was aware of the content of the attorney submission to the grand jury or the certification (or even that there was a certification).

Count 35 is premised on 18 U.S.C. § 1512(c)(1), which applies where a record, document or other object has been concealed with the intent to impair the object's integrity or availability for use in an official proceeding. But the conduct alleged does not match the statute. Even if the SCO had not laid out dozens of pages of factual claims in the 91 paragraphs of general allegations, the SCO cannot hide behind case law as to the ordinary requirements of pleading, because the pleaded allegations show the Count 35 allegation against Nauta to be a sham and an abusive filing.

Nor does the SC otherwise satisfy the requirements for pleading a § 1512(c)(1) offense in Count 35, where the "official proceeding" alleged was an illicit and ultra vires attempt to avoid the Presidential Records Act and its specified procedures. The obstruction and false-statements allegations in Counts 33 through 42 relating to that lawless investigation must also be dismissed, and we adopt the dismissal arguments by President Trump as to those counts. *See, e.g.*, *United States v. Beach*, 80 F.4th 1245, 1256–57 (11th Cir. 2023) (requiring "nexus" to an "official proceeding" under 18 U.S.C. § 1512); *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) (requiring "intent to impede or influence a federal investigation" under 18 U.S.C. § 1519); *United States v. Blankenship*, 382 F.3d 1110, 1136–40 (11th Cir. 2004) (holding that "jurisdiction" for purposes of 18 U.S.C. § 1001 is limited to situations where the agency "has power to exercise authority").

Count 34 alleges the same conduct as in Count 35, but invokes § 1512(b)(2)(A) under the theory of withholding (rather than concealing) classified documents from an attorney. First, this count is duplicitous in that it alleges one offense by President Trump and a separate offense by Nauta. This violates Fed. R. Crim. P. 8, as explained above in regard to Count 33. Nauta and

President Trump are charged with having "misled" an attorney so as to prevent the attorney from obtaining classified documents. Apart from the absence of any factual allegation linking Nauta to alleged attorney misleading, the allegation exceeds the scope of the statute, which bars corrupt actions to prevent a person from turning over materials, but does not bar actions that the government has otherwise charged as concealment to prevent a person from learning about or obtaining materials. The English language cannot be twisted in the manner the Indictment suggests to charge distinct statutory concepts as if they were equivalent in order to create a multiplicity of charges. Nor does precedent support such a distortion of the statutory language. *See generally Yates v. United States*, 574 U.S. 528, 546–48 (2015) (rejecting "aggressive interpretation" of statutory term that exceeds fair understanding of Congress's intent and violates rule of lenity applicable to criminal statutes, contrary to established canons of statutory construction); *Bond v. United States*, 572 U.S. 844, 860 (2014) (ruling that statutory term cannot be given "boundless reading"); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (discussing and narrowly construing 18 U.S.C. § 1512, recognizing that courts must "'exercise[] restraint in assessing the reach of a federal criminal statute'") (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995) (§ 1512 prosecution).

Reading the statute in the manner suggested by the SCO would also create significant double jeopardy concerns. *See, e.g.*, *Mize v. Pompeo*, 482 F.Supp.3d 1317, 1332 (N.D. Ga. 2020) (courts are obligated to construe statutes to avoid constitutional problems, including out of respect for Congress, which can be assumed to legislate in light of constitutional limitations) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001); *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998)). *See also United States v. Schlei*,

122 F.3d 944, 977 (11th Cir. 1997) (recognizing that a duplicitous count prejudices the defendant in a later double jeopardy defense).

Similarly in Count 36— *see* Superseding Ind. at ¶ 103 (July 27, 2023) (ECF No. 85)—the SCO has improperly joined a defective allegation of one purported crime as to defendant A with that of another purported crime by defendants A & B, confirming the SCO's practice in this case of using duplicity and improper joinder in a single count in violation of Fed. R. Crim. P. 8 to Nauta's prejudice and in disregard of his Fifth Amendment grand jury clause rights. *See United States v. Schlei*, 122 F.3d at 977 (faced with a duplicitous count, a court may have difficulty determining admissibility of evidence; the perils of duplicity also include conviction without jury unanimity on the same offense as well as prejudice to the defendant as to a later double jeopardy defense); *Stirone v. United States*, 361 U.S. 212, 216-17 (1959) (defendant has right to stand trial only on the charges made by a grand jury). Moreover, the factual allegations and theory of Count 36 fail to achieve a valid charge of a statutory violation, as no false record entry crime is actually alleged.

Count 37, mischarged as a scheme to conceal, alleges that Nauta "hid and concealed from the grand jury and the FBI TRUMP's continued possession of documents with classification markings" and thus violated the false statement statute, 18 U.S.C. § 1001. Superseding Ind. at ¶ 105 (July 27, 2023) (ECF No. 85). However, the Indictment fails to allege a § 1001 violation as there is no factual allegation sufficient to support it. As explained above, the grand jury did not issue a subpoena to President Trump. The contrary premise of Count 37 itself amounts to an erroneous allegation. Second, Count 37 mischarges the making of a "scheme," where the statute does not proscribe such conduct, and instead merely includes schemes as a component of the manner or means element of the offense. The count is otherwise ambiguous and triply

duplicitous—as to the time of the offense, the investigation at issue, and the false statement at issue.  Nauta simply is not informed of what he must defend against by Count 37's mischarged cloud of speculative inferences of generalized wrongdoing.

Finally, the allegations of Count 37 dovetail with those of Count 38, *see id.* at ¶¶ 107-08, which attribute a true certification—that to the best of Attorney 3's knowledge, the facts certified were true—to President Trump.  This distortion of 18 U.S.C. § 1001 shows again the strained effort to cabin within a criminal statute actions that simply do not fit that design.  Notably, as well, the Count 38 allegation of false statement is insufficient, where there was no claim of a search of "all of TRUMP's boxes that were removed from the White House," *id.* at ¶ 108, and there was no subpoena directed to President Trump individually.

The Supreme Court has long recognized that a district court must dismiss an indictment if it does not allege essential facts that constitute an offense.  *Russell v. United States*, 369 U.S. 749 (1962).  In reliance on this fundamental principle, the Eleventh Circuit has reversed a district court's failure to dismiss an indictment lacking essential facts constituting a health care fraud offense:

> For an indictment to be valid, it must "contain[ ] the elements of the offense intended to be charged, and sufficiently apprise[ ] the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, *United States v. Sanchez*, 269 F.3d 1250, 1314 (11th Cir. 2001) (en banc) ... .  "An indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute." *Russell*, 369 U.S. at 765 ... Furthermore, if the indictment tracks the language of the statute, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.* at 765 ...; *see also Hamling v. United States*, 418 U.S. 87, 117–18 ... (1974).  When the indictment uses generic terms, it must state the offense with particularity. ... . Additionally, an indictment must enable the defendant to enter a plea that will bar any "future prosecutions for the same offense." *Hamling*, 418 U.S. at 117 ... .

*United States v. Bobo*, 344 F.3d at 1083 (emphasis added).

The SCO's charging strategy led to an Indictment that is too vague to set forth a false statement or obstruction offense. The Supreme Court long ago warned, in *Russell v. United States*, 369 U.S. 749, 768 (1962), that "ill-defined charges leave a prosecutor free to roam at large, to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *See Hamling v. United States*, 418 U.S. 87, 118 (1974) (recognizing that, where a specific identification of fact is necessary to establish guilt, "our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute").

Counts 40 and 41 allege obstruction of justice on the basis of the following factual allegation: that each of the defendants "requested" Employee 4 to "delete the server." Superseding Ind. at ¶¶ 114-15 (July 27, 2023) (ECF No. 85). The SCO's misguided allegation that it will prove, as a matter of fact, that each of the defendants made such a request to Employee 4 is itself an erroneous statement that warrants dismissal. The underlying facts for these counts, which are set forth in ¶ 84 and Count 42 of the Indictment, are that none of the defendants actually requested deletion of anything, that neither Trump nor Nauta ever spoke with Employee 4 regarding deleting anything, and that De Oliveira, who allegedly spoke with Employee 4, did not make any request of him. Instead, the allegation (contested) is that De Oliveira engaged in a conversation with Trump Employee 4, asking him "how many days the server retained footage" and expressing his belief that his employer wanted the server deleted, prompting Trump Employee 4 to state that he would not know how to delete and that if deletion was wanted, another employee would be the one to contact. *Id.* at ¶ 84. Despite such allegations, no effort was ever made to contact the person who controlled the server and no request to delete anything was actually made by anyone to anyone. And, on behalf of Trump some two days prior to the charged event, the individual in

charge of recordings had already been instructed to preserve all recordings. Apart from the impropriety (not to mention irony) of making misleading accusations in an obstruction count, the falsity of the SCO's deletion-request misstatements is crucial because the SCO contends that there was an attempt, yet upon dispelling the false "request" claim, the Indictment on its face fails to allege an attempt under governing Eleventh Circuit precedent.

The Indictment alleges that one defendant spoke to Employee 4 on the video subject, and asked what could be done because "the boss wanted the server deleted." *Id.* That, however, is not an attempt, nor is it a request, nor under Eleventh Circuit precedent is it a conspiracy (thus rendering the related object of the Count 33 conspiracy also deficient). *See United States v. Kelly*, 888 F.2d 732, 740–41 (11th Cir. 1989) (defendant's comments regarding a potential transfer of illicit drugs, which were unaccompanied by any other conduct, amounted to no more than a "vanishingly thin reed" that failed to go beyond speculation and conjecture, and thus was insufficient to establish conspiracy; reversing conviction). According to the scenario set forth in the indictment, there was never a request, demand, order, or solicitation of anyone to "delete the server." Giving the allegations maximum credence, there is an alleged inquiry regarding the server, without a request. Such an initial inquiry (which we strongly contest) does not reach the level of a substantial step toward the commission of a destruction-of-evidence crime. *See United States v. Gatlin*, 90 F.4th 1050, 1066 (11th Cir. 2024) (reversing conviction for witness tampering under 18 U.S.C. § 1512(b) where "the government's evidence established nothing more than a 'remote' or 'simply hypothetical' possibility that [the alleged victim's] recantation statements would have reached a federal officer,") (citing *Fowler v. United States*, 563 U.S. 668, 670 (2011) (§ 1512(a)(1) prosecution).

Because Counts 40 and 41 are misleading and because they otherwise fail to achieve the requisite allegation of even a substantial step by Nauta towards destruction of evidence or persuading another person to destroy evidence, beyond what can most charitably described as an allegation that one or more defendants sought information regarding a subject of a subpoena that was not directed to any of them, Counts 40 and 41 must be dismissed.  Even granting the SCO all that its implicit-meaning hypothesis suggests, the remaining defects in these counts warrant dismissal.

## V.    <u>Allegations of False Statements</u>

Count 39 alleges a false statement was made by Nauta during what he was advised was an informal, relaxed interview designed to find out if he had sufficient knowledge of the handling of classified documents by President Trump to give comfort to the USIC that no harm resulted from any such possession—and of course from the Indictment we know that absolutely no harm at all came from any such possession.  The FBI interview, in its informality, thus included broken-up questions, short-hand answers, a lack of specificity by the agents in addressing locations where boxes were taken, and no real focus on what is the subject of the charge: whether Nauta lied to the agents about having taken some boxes to Pine Hall, a room outside the living quarters of President Trump at Mar-a-Lago.

False statement counts require precise questioning, pinning down a witness, and actually identifying false answers.  *See Bronston v. United States*, 409 U.S. 352, 362 (1973) ("Precise questioning is imperative as a predicate for the offense of perjury."); *United States v. Landau*, 737 F. Supp. 778, 781 (S.D.N.Y. 1990).  The Supreme Court has held that in a false statement prosecution, it is the government's duty to ensure that its questions are sufficiently precise, because the Court could "perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single

additional question by counsel alert – as every examiner ought to be . . . ." *Bronston*, 409 U.S. at 358. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360. (internal citations omitted).

If asked whether he had taken boxes in various trips to Pine Hall long prior to any subpoena, Nauta would readily have acknowledged the same, as he had done with other members of President Trump's staff who were cooperating with the FBI.  But he was not so asked.  Instead, in a roundabout fashion, the agents wanted to know whether Nauta could verify that the specific boxes returned to NARA as of January 2022 could be identified by Nauta as being ones he had seen before.  He truthfully said he could not make that verification and that for his purposes, he lacked personal knowledge of the provenance information the agents sought.

To create the Indictment's bogus false statement charge against Nauta, the SCO has made improper editorial use of punctuation to affect the meaning of questions and answers in the interview, *see* Superseding Ind. at ¶ 111 (July 27, 2023) (ECF No. 85), and seeks to maintain in the face of vague and ambiguous questions a claim of falsity that will not stand in this or any other Circuit.  The allegations of a false statement by Nauta are defective on their face, with ambiguities created by ad hoc punctuation and incomplete and vague questions.  First, the supposed Pine Hall focus of the falsity was not part of the questions.  Instead, the agents focused on asking about Nauta's knowledge of "boxes being brought to [President Trump's] home – his suite." *Id.*  Nauta clarified that the boxes he moved were found all together "in Pine Hall," a room that the agents had denominated as being outside the residential suite, not in the suite. *Id.* And the agents again reverted to a different focus of the questions as seeking to learn if Nauta knew "[s]omething that makes the intelligence community feel better," to which Nauta correctly responded that he did not. *Id.* (emphasis added).  The remainder of the questioning, which never asked Nauta if he ever, much

less recently, moved even a single box to Pine Hall, is riddled with ambiguity, such as the incomplete question about "just the day of when [Trump Employee 2] needed you to ... take them." *Id.*

The literal truth defense applies to an interrogation such as this, where the questions failed to pinpoint the objects of inquiry with sufficient clarity to exclude the literal truth of the responses. *See United States v. Castro*, 704 F.3d, 125, 140 (3d Cir. 2013) (government cannot rely on the premise that the interrogated witness should have known what the agents meant with their questions); *United States v. Manapat*, 928 F.2d 1097, 1101 (11th Cir. 1991) (dismissing false statement indictment where questions were ambiguous as a matter of law); *United States v. Schotts*, 145 F.3d 1289, 1299 (11th Cir. 1998) (reversing perjury conviction where prosecutor did not ask more precise questions after receiving a vague or evasive answer that was literally true).

The extreme impropriety of the charge in this case is seen in that, during Nauta's appearance before the grand jury, he was asked to clarify—and did clarify without dispute from the lead prosecutor who was questioning him—why he could not say that the (cardboard) boxes Nauta had, weeks earlier, helped take to Pine Hall were the very same boxes he later saw in Pine Hall.  As the prosecutor appeared to confirm, Nauta was not asked in the FBI interview whether he personally moved or observed movement of boxes from the storage room in the basement up to Pine Hall.  He had no hesitation in the grand jury answering such a question with an unequivocal "yes."  But as Nauta explained, and the SCO has failed to allege anything to dispute it, Nauta did not, and could not, know whether "those boxes in Pine Hall" that were transferred to NARA's possession as of 2022 were even partially related to boxes he had moved weeks earlier in November 2022.  Nauta, consistent with all the facts alleged, explained that the boxes he later saw in Pine Hall "could have been the boxes that I brought up, or they could have been boxes from

wherever they were inside his room."  To date, the government does not propose to refute that testimony, but rather speculates about alternative possibilities, falling far short of Rule 7's pleading requirements.

The pattern set in Count 39 of using ambiguous half-questions, half-statements that yielded answers that are literally true, continued in Count 42 as to defendant De Oliveira.  In doing so, the SCO has linked together a series of literally true answers to confusingly and inadequately state a violation of 18 U.S.C. § 1001.  Count 42 claims that De Oliveira falsely denied that he "had personally observed [President Trump's cardboard boxes] and helped move [those] boxes when they arrived at The Mar-a-Lago Club in January 2021."  Superseding Ind. at ¶ 120 (July 27, 2023) (ECF No. 85).  But De Oliveira the text of the allegation relates to a denial of seeing the "stuff" inside the boxes, such as "personal stuff, like, his clothes."  *Id.* at ¶ 119 (alleging that De Oliveira denied knowing where such "items would have been stored") (emphasis added).

The Indictment's pattern of using ambiguous questioning to charge literally true statements as false renders it insufficient as a matter of law.  In Count 42, the first quoted answer is in the middle of a question that was altered after the answer, the next answer related to a vague new question about being a member of a "group" and as to unloading and moving (when the SCO does not make any factual contention about or explanation of what agents meant by unloading and moving), and the remaining questions and answers are ambiguous as to what is being discussed regarding specific items and timing.  Finally, and perhaps most crucially, as with Count 39, the entire line of questioning by the FBI agents was off the mark and immaterial.  In Count 42, it related specifically to property that "arrived to Mar-a-Lago" only "after the end of the presidency." *Id.* (emphasis added).  As the SCO has alleged in the Indictment, the boxes of concern in this case arrived just before the end of President Trump's first term.  Consequently, for multiple reasons,

based on the SCO's own allegations, phraseology, and ambiguities, the literal truth defense bars prosecution of Counts 39 and 42.

Although it would not cure the Indictment's pleading deficiencies that compel dismissal under Rule 12(b)(3)(B), the Court should, to the extent any count is ultimately not dismissed or the Indictment superseded, nevertheless strike under Fed. R. Crim. P. 7(d) the abundant surplusage of prejudicial, immaterial allegations in paragraphs 1 through 91. Pursuant to Rule 7(d), irrelevant, inflammatory, and prejudicial language, including photographs, campaign speeches, anti-Trump campaign talking points, hearsay, legal opinions, false statements, repetition of allegations, lectures, adverbial argument, and disparaging references to President Trump should be stricken.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court dismiss the Superseding Indictment.

[SIGNATURE BLOCK NEXT PAGE]

Dated: February 28, 2024

Respectfully submitted,

*s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I electronically submitted the foregoing, via

CM/ECF, to counsel of record.

Respectfully submitted,

*s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*