```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                      WEST PALM BEACH DIVISION
                        CASE NO. 23-cr-80101-AMC
 3

 4   UNITED STATES OF AMERICA,            Fort Pierce, Florida

 5                  Plaintiff,            March 1, 2024

 6            vs.
                                          10:02 a.m. - 3:00 p.m.
 7
     DONALD J. TRUMP, WALTINE NAUTA, CARLOS
 8   DE OLIVEIRA,

 9                  Defendants.           Pages 1 to 201

10   _____

11          TRANSCRIPT OF SCHEDULING CONFERENCE AND MOTIONS
               BEFORE THE HONORABLE AILEEN M. CANNON
12                  UNITED STATES DISTRICT JUDGE

     APPEARANCES:
13
     FOR THE GOVERNMENT:
14
                                  U. S. DEPARTMENT OF JUSTICE
15                                JAY I. BRATT, ESQ.
                                  DAVID HARBACH, ESQ.
16                                National Security Division
                                  950 Pennsylvania Avenue, NW
17                                Washington, DC 20530

18   FOR THE DEFENDANTS:
     Donald J. Trump
19
                                  BLANCHE LAW
20                                EMIL BOVE, ESQ.
                                  TODD BLANCHE, ESQ.
21                                99 Wall Street
                                  Suite 4460
22                                New York, New York 10005

23                                CHRIS KISE & ASSOCIATES, P.A.
                                  CHRISTOPHER M. KISE, ESQ.
24                                201 East Park Avenue
                                  5th Floor
25                                Tallahassee, Florida 32301
```

```
 1   FOR THE DEFENDANTS:
     Waltin Nauta
 2                               DADAN LAW FIRM
                                 SASHA DADAN, ESQ.
 3                               201 S. 2nd Street
                                 Suite 202
 4                               Fort Pierce, Florida 34950

 5                               BRAND WOODWARD LAW, LP
                                 STANLEY WOODWARD, ESQ.
 6                               400 Fifth Street
                                 Northwest Suite 300
 7                               Washington, DC 20001
     Carlos De Oliveira
 8                               E&W LAW
                                 JOHN S. IRVING, ESQ.
 9                               1455 Pennsylvania Avenue, NW
                                 Suite 1400
10                               Washington, DC 20004

11                               L.D. MURRELL, PA
                                 LARRY DONALD MURRELL JR., ESQ.
12                               400 Executive Center Drive
                                 Suite 201
13                               West Palm Beach, Florida 33401

14
     STENOGRAPHICALLY REPORTED BY:
15
                                 LAURA E. MELTON, RMR, CRR, FPR
16                               Official Court Reporter to the
                                 Honorable Aileen M. Cannon
17                               United States District Court
                                 Fort Pierce, Florida
18

19

20

21

22

23

24

25
```

```
 1          (Call to the Order of the Court.)

 2          THE COURT:  Good morning.  You may all be seated.

 3          All right.  Let's call the case, please.

 4          COURTROOM DEPUTY:  United States of America vs. Donald

 5  J. Trump, Waltine Nauta, and Carlos De Oliveira, case number

 6  23-criminal-80101.

 7          THE COURT:  All right.  We will get appearances first,

 8  starting with counsel for the Office of the Special Counsel.

 9          MR. BRATT:  Good morning, Your Honor.  Jay Bratt and

10  David Harbach on behalf of the United States.

11          THE COURT:  Good morning to you both.

12          Who is here for the defendants?

13          MR. BLANCHE:  Good morning, Your Honor.  Todd Blanche,

14  and I'm joined at counsel table with President Trump and also

15  my co-counsel Emil Bove and Chris Kise.  Good morning.

16          THE COURT:  Good morning.

17          MR. WOODWARD:  Good morning, Your Honor.  Stanley

18  Woodward and Sasha Dadan, and with us is Mr. Nauta.

19          THE COURT:  Good morning to you as well.

20          MR. IRVING:  Good morning, Your Honor.  John Irving and

21  Donnie Murrell for Mr. De Oliveira who is here as well.

22          THE COURT:  Good morning.

23          All right.  We have a full house.  I'm going to start

24  off with some preliminary remarks.

25          As we have done in the past, there is an overflow room
```

1    set up in the courthouse with the live feed into the courtroom.

2    If at any point something goes wrong with the transmission, I

3    ask our IT team to please advise me as soon as possible so we

4    can rectify any issues.

5          Second, for those of you who have a seat in the

6    courtroom and to minimize disruption, I ask that you remain

7    seated while the court is in session, unless there is an

8    emergency.

9          And third, as I have indicated before, the use of any

10   electronic devices is strictly prohibited in the courthouse.

11   This is by administrative order and that includes, of course,

12   this courtroom, along with the overflow room.  So I expect

13   everybody's close adherence to that rule, understanding too the

14   penalties set forth in that order for knowing or willful

15   violations.

16         Now, for the purpose of today's hearing, as I noted in

17   a prehearing order, this is a combined scheduling conference

18   and hearing to discuss, first, the balance of the pretrial

19   deadlines and hearings in this case since entry of the Court's

20   partial scheduling order at docket entry 215.  As the parties

21   might recall, that order, entered in mid November of last year,

22   set forth the first batch of initial pretrial deadlines and set

23   this conference to discuss remaining deadlines and motions in a

24   reasoned manner.

25         To that end, and to best navigate the pretrial phase of

1    this complex proceeding, I ordered and received yesterday

2    competing proposals on matters of scheduling which I have

3    reviewed.  I expect the parties to be prepared to discuss those

4    proposals in light of the numerous pretrial motions that have

5    been filed to date, along with the associated requests for

6    hearings.  And by latest count, I think the pretrial motions

7    stand at 20, which includes a substantive CIPA Section 4 motion

8    as to the former president.

9         Now, as part of this scheduling discussion, I also ask

10   that counsel be prepared to discuss the scheduling of requested

11   hearings on the defense motions to compel discovery, which

12   consist of six motions to compel in one consolidated filing

13   plus attachments, and which present a contested and possibly

14   threshold question about the definition of the prosecution team

15   for purposes of discoverable information in the possession,

16   custody or control of the government.

17        I think the scheduling discussion will lead us probably

18   to lunch, maybe less, so I anticipate recessing for about an

19   hour around noon, and then resuming for an afternoon session to

20   hear legal argument from the parties and also from the

21   Press Coalition as Amicus on the various pending matters

22   related to sealing and redactions in the case.  Those issues

23   have now been raised in five pending motions on issues related

24   to sealing and redaction of voluminous exhibits appended to

25   pretrial motions in this case.  And they now implicate numerous

1    pretrial motions filed temporarily in camera.

2         So with that broad agenda in mind, let us begin.  I'm

3    going to ask that for each of the attorneys presenting

4    argument, that you do so from the podium.  I will have some

5    questions as we go along and we will do some back and forth as

6    necessary.

7         So with that, let me start with counsel for the Special

8    Counsel on issues related to scheduling.

9         MR. BRATT:  Thank you, Your Honor.

10        Like the Court, we also received the defense's proposed

11   scheduling order last night and have reviewed it.  There is a

12   lot going on in it with the shading and the color coding.  They

13   have primary and caucus dates, Mr. Woodward's other trial, the

14   apparent -- what appears to be a vacation by Mr. Woodward in

15   August that takes him out of the box for almost the entire

16   month; he can discuss that.

17        But looking at it, the one thing I think the parties do

18   agree on is that this case can be tried this summer.  We have

19   proposed the July 8th date.  We think that's the better date.

20   And we think it is doable.

21        THE COURT:  All right.  So let's, I guess, dig into the

22   details.  I see that you have allotted what appears to be one

23   day for a hearing on motions to compel and one day for a

24   hearing on pretrial motions, which, of course, at this point, I

25   believe consist of at least 13 substantive pretrial motions,

1    many of which involve lengthy exhibits and attachments.  And so

2    I'm just curious, Mr. Bratt, how that's going to work, and to

3    accommodate, of course, enough time for judicial resolution of

4    these motions.

5         MR. BRATT:  Sure.  And every Court is different.  We

6    think that some of these motions are ones that the Court can

7    decide without argument.  We understand that one day may not be

8    enough, but we think that a lot of those motions can be argued

9    in a day, or a day or two.  We disagree that with respect

10   to -- I will call them the Rule 12 motions, the most recently

11   filed motions.  We disagree that with respect to the Rule 12

12   motions, that any evidentiary hearing is necessary.  We will

13   respond to their request for a Franks hearing, but we don't

14   believe they have met that very high standard.  So for just

15   legal argument on these motions --

16        THE COURT:  The high standard that you're referring to

17   is the Franks standard?

18        MR. BRATT:  Yes, Your Honor, the Franks standard.

19   Correct.

20        So for the legal standard -- I mean, the -- just to do

21   oral argument on these motions, maybe a second day, but we

22   don't think it's going to take as many days or be as

23   complicated as the defense believes.

24        THE COURT:  All right.  Well, I think to try to do 13

25   substantive motions in one day, even two days is -- seems

1    unrealistic and would, I think, sacrifice the Court's

2    consideration and hearing on those matters.  So a more

3    realistic assessment of hearing time in your view would be

4    what?

5              MR. BRATT:  So, again, we want to be flexible.  We want

6    to be reasonable.  I would say three days at the -- at the

7    outer limit.

8              THE COURT:  All right.  Now, what is your view on the

9    evidentiary hearing with respect to the motion to compel?

10             MR. BRATT:  We, again, don't believe they've met the

11   high standard.  The way Mr. Harbach and I have divided things,

12   if you want more legal argument on that, I will turn it over to

13   Mr. Harbach.  I'm sort of more focused on the scheduling today.

14             THE COURT:  Okay.  Okay.  But just in terms of

15   scheduling for the hearing on the motion to compel, I guess,

16   first, do you view that as a Rule 12 motion seeking discovery

17   under Rule 16?

18             MR. BRATT:  So I don't know if you would call it a

19   Rule 12.  We believe it is a motion that can be handled through

20   oral argument.  Actually, I think that's one of the few dates

21   that we -- both sides agree upon, which is, I think,

22   March 20th.  Or maybe we're March 18th, they're March 20th.

23             I would add that we would likely have to do part of

24   that argument in a secure facility since they do have their

25   classified supplement to their motion to compel.  But we

1    believe, again, argument on that motion can --

2            THE COURT:  So you don't see any factual disputes as

3    presented based on the showing made thus far?

4            MR. BRATT:  We don't think there are any relevant

5    factual disputes.

6            THE COURT:  Okay.  And why is that?

7            MR. BRATT:  Well, the biggest factual dispute is in the

8    narrative of how this case came into being.  That is not

9    something that is relevant to any request for discovery.  It is

10   not an issue the Court has to resolve.  If -- they may be

11   competing versions at trial, they may cross-examine some

12   witnesses on that subject.  We may have some views in our

13   motions in limine about what is proper with respect to that.

14   But we don't have to have a mini trial on what happened between

15   January 20th, 2021, and February of 2022.

16           THE COURT:  Does that not have any implication, though,

17   to the definition of the prosecution team according to

18   11th Circuit standards on that issue?

19           MR. HARBACH:  Your Honor, I apologize for interrupting,

20   but as Mr. Bratt said, if Your Honor wants to entertain

21   argument on that portion now, I will request leave to argue

22   that.

23           THE COURT:  Well, it's an argument related to

24   scheduling.  If you want to stand in for Mr. Bratt on this, you

25   are welcome to.

1          MR. HARBACH:  Thank you, Your Honor.

2          MR. BRATT:  Thank you, Your Honor.  I will be back for

3     the others.

4          MR. HARBACH:  Good morning, Your Honor.  Sorry for any

5     confusion.  We divided duties based on the different items on

6     Your Honor's scheduling order, so that's why I'm doing this

7     one.

8          On the scope of the prosecution team, in their motion

9     to compel, the defendants, I think it's important to say, first

10    of all, they seek discovery on a single issue; and that is what

11    Your Honor has pointed out, the scope of the prosecution team.

12    But -- and equally important to remember at the outset, that in

13    the government's view, what's really going on here is that the

14    defense is trying to use the scope of the prosecution team in

15    the context of their motion to compel as a doctrinal hook to

16    suggest that a hearing is necessary on what Mr. Bratt just

17    alluded to.  There are baseless theories about the origin of

18    this prosecution.

19         Now, whether the Court credits what I just said or not,

20    in the government's view there are plenty of other reasons not

21    to permit a hearing of the sort that is requested here.

22         First, it's totally unnecessary.  As we have explained

23    in our papers, the Court can resolve many of the defendants'

24    requests without even reaching the question of the scope of the

25    prosecution team.  There is the threshold question, just as an

1    initial example, of whether any of what they seek is even

2    discoverable, which, as we pointed out in the papers --

3           THE COURT:  Right.  But why wouldn't that happen after

4    case file reviews, following a -- a defined prosecution team?

5    And then -- and then you would make determinations about

6    discoverability, assert whatever privileges you think might be

7    warranted.

8           MR. HARBACH:  Because in our view the requests that

9    they have put forth in their motion to compel are deniable on

10   their face as not seeking discoverable information irrespective

11   of what the scope of the prosecution team is.  And that's for

12   at least three reasons.  And these are all laid out in our

13   papers.  Many of the requests are not material to preparing the

14   defense.  If the Court decides that that is the case, it

15   doesn't matter what the scope of the prosecution team -- if the

16   request doesn't seek discoverable information under Rule 16,

17   that's the end of it.  That's --

18          THE COURT:  Okay.  So let's just, as an example, take

19   the folks that were involved in -- from the Intelligence

20   Community making decisions in consultation with the Special

21   Counsel about what to use, litigation strategy, and so on and

22   so forth.

23          MR. HARBACH:  Sure.

24          THE COURT:  So taking that as an example, why haven't

25   the defendants made a good faith colorable showing that they're

1    entitled to better understand the degree of interconnectedness,

2    given -- given that -- given that working relationship?  Which

3    I'm interested in hearing more about in terms of the degree of

4    collaboration.

5         MR. HARBACH:  Okay.  Your Honor just asked me why

6    haven't they made a good faith showing that they are entitled

7    to this.  And I'm going to answer that question.  But if

8    Your Honor will permit me to preface my answer just for a

9    moment.  Because this implicates not only the Intelligence

10   Community components that they've sought to allege are part of

11   the prosecution team, but others as well.

12        Let's just -- I think it's important to state, for the

13   record, what the defense's position is.  And this is the list

14   of entities that they say is part of the prosecution team.  And

15   I will try not to go too fast.

16        THE COURT:  And -- but, no -- and I understand that's a

17   very lengthy list.  But in a more functional sense, the people

18   within the Intelligence Community that actually worked with the

19   Special Counsel in making particular decisions about what to

20   charge, what could be used --

21        MR. HARBACH:  Oh, okay.

22        THE COURT:  -- what could be redacted, what could be

23   withheld --

24        MR. HARBACH:  Okay.

25        THE COURT:  -- those sorts of quite important

1    decisions, I think, arguably could say are very comfortably

2    within the prosecution team definition.

3         MR. HARBACH:  Yes.  Were that the case, we might agree

4    with you.  No member of the Intelligence Community, no single

5    person had any role whatsoever in consulting with the Special

6    Counsel about what should be charged here.  That did not

7    happen.  And that is the point we've tried to make over and

8    over in our papers.

9         THE COURT:  All right.  So, then, perhaps maybe some

10   sealed declarations to that effect or something that would shed

11   light on the degree of collaboration, either pre- or

12   post-indictment, whatever the facts indicate.

13        MR. HARBACH:  If Your Honor will allow me, I think that

14   to answer that question about why a -- a sealed declaration

15   from somebody at the National Geospatial Intelligence Agency

16   isn't necessary here, I just want to make a couple of points.

17        First, as we laid out in our papers, none of these

18   entities, the long list that Your Honor mentioned and --

19   because you don't want me to, I won't go through the list of --

20        THE COURT:  Well, it's there.  I don't think we need to

21   waste time reading them.

22        MR. HARBACH:  It's 20 -- it's 20.  It's 20.  20

23   different entities, including the White House, a whole bunch of

24   members of the Intelligence Community, the State Department,

25   the Department of Energy, and the United States Secret Service.

1    The list alone, we think, is -- carries some message about the

2    frivolousness of their argument.  But I will leave that.  I

3    will leave that.

4         More to the point, none of those agencies that

5    have -- that are on that list were involved in formulating

6    investigative strategy, collecting evidence, issuing subpoenas,

7    interviewing witnesses or doing anything remotely resembling

8    pooling investigative strategies with the Special Counsel's

9    office.  Now, all those things that I mentioned, as I know

10   Your Honor knows, are factors that appellate courts have

11   said -- well, sorry, courts have said should be taken into

12   account in assessing this question.

13        Now, I'm going to get to your question.  The defendants

14   claim that they are entitled to a hearing on the scope of the

15   prosecution team, but with no evidence at all to the contrary,

16   zero.  And more to the point, they cite no authority, no

17   authority at all, justifying an evidentiary hearing to rebut

18   the proffers that the government has made in its papers with,

19   again, not a single iota of countervailing evidence.  They

20   don't get to say we should have an evidentiary hearing on what

21   Your Honor just suggested a moment ago or demand a declaration

22   from some official at one of these intelligence agencies just

23   because they don't like -- they don't like it.  They don't like

24   the fact that they don't have any evidence to support their

25   theory.

1          Again, back to the case law.  There is no -- they have

2    cited no authority.  We think there is no authority for holding

3    that they get an evidentiary hearing to explore prosecutors'

4    interactions with other governmental agencies in a criminal

5    investigation.  I mean, that's Saab Moran.  There is no

6    entitlement to discovery on how the government collects and

7    prepares discovery.  And if -- I mean, they're going to get up

8    here and argue in a minute -- if the answer -- if the answer

9    is, well, all these agencies are effectively tools of President

10   Biden, that's what we understand them to be saying, well,

11   that's a selective prosecution claim.  That's not a Rule 16

12   discovery, motion to compel claim.  That's an Armstrong claim.

13   And granting relief under Armstrong requires a rigorous

14   showing.  That's all I will say about it now because that's the

15   subject of additional briefing.  But it's rigorous showing.

16          And as we point out in our surreply filed recently, a

17   hearing on that subject would be unprecedented in this

18   district.  So this is what I meant when I started, this reveals

19   what is really going on here.  This whole exercise -- I'm --

20   this whole exercise is an effort to try and wring out of this

21   Court an evidentiary hearing out of their motion to compel.

22   That is just an end run around Armstrong, which they know they

23   can't satisfy, and so they're trying this alternate means to

24   get it.  That's what this really is all about.

25          So I hope I have answered your question about why the

1   government should not be put to the burden of producing

2   declarations to substantiate all of the proffers that we made,

3   when they have produced not a single piece of evidence to

4   suggest that any of them is false.

5        THE COURT:  All right.  I mean, ordinarily parties'

6   entitlement to a hearing requires an examination of whether the

7   seeking party has alleged facts that, if true, would entitle

8   him or her to relief.  And so I will have these questions for

9   defense counsel, but it seems like you're almost requiring of

10  them a degree of -- a burden of proof at this stage merely to

11  obtain a hearing, which I'm not quite sure is consistent with

12  the general standards for allowing a party to obtain an

13  evidentiary hearing; and, in this case, an opportunity for both

14  sides to provide whatever evidence they deem relevant or

15  appropriate, including potentially folks on -- on the

16  government's side in the form of affidavits or other evidence.

17       MR. HARBACH:  Were that the case in the abstract, the

18  Court might well be right.  But this isn't that.  This

19  is -- this is a selective prosecution claim in effect.  It

20  requires a higher standard.  And even if you don't --

21       THE COURT:  Right.  But hold on one moment.  The

22  prosecution team issue is framed as "we need a definition of

23  the prosecution team."  We then need case file reviews, as far

24  as I can tell.  And then, depending on whatever discovery we

25  obtain, then we go one by one on the potential additional

1    requests for -- for compelled discovery.  And so why wouldn't

2    that be the logical step-by-step process here?

3         MR. HARBACH:  You're right.  That is the way they

4    framed it.  And the answer is what I have been trying to say

5    this morning.  The reason that they have set the allegedly

6    threshold question of what the prosecution team is, as being a

7    necessary predicate to resolve the rule -- sorry -- the motions

8    to compel, the reason that they're doing that, is what I have

9    said a couple of times already.  And what we're saying is,

10   Number 1, that's wrong.  You don't have to decide the scope of

11   the prosecution team, even as a theoretical matter, in order to

12   resolve their motions to compel.  And second, even as to the

13   tiny subset for which that -- that might -- it might actually

14   be relevant to the Court making the decision, they don't get an

15   evidentiary hearing on it for the reasons I said a moment ago.

16   That's the way -- that's the way we see it.  And that's why we

17   think that no evidentiary hearing is even remotely warranted

18   here.

19        This isn't just a regular run-of-the-mill motion on

20   which a party is seeking a hearing, like Your Honor was

21   describing a moment ago.  There is a -- there is a higher

22   standard here that is required, both by Saab Moran and by

23   Armstrong.

24        Now, the government recognizes, I think most criminal

25   lawyers realize, that in this situation, yeah, that's a high

```
 1   standard.  It's rare.  And it should be.  It should be.
 2          THE COURT:  All right.  Let me -- let me hear again
 3   from Mr. Bratt just circling back on some scheduling issues.
 4   I'm sure I will have more questions for you, Mr. Harbach --
 5          MR. HARBACH:  Very good, Your Honor.
 6          THE COURT:  -- later on.
 7          Thank you.
 8          Again, looking at the proposal here for scheduling, I
 9   think it's important to do things in a reasoned way and one
10   that doesn't jump ahead in a way that then becomes disorganized
11   for judicial resolution purposes.
12          And so in your view, Mr. Bratt, what are sort of the
13   immediate priority items to address, let's say, in the next
14   30 days?
15          MR. BRATT:  Yes, Your Honor.
16          And I think maybe --
17          THE COURT:  Oh, and I'm sorry to interrupt you, but
18   taking into account the redaction/sealing issues which have now
19   essentially put a hold on full briefing of the pretrial
20   motions.  To some extent, there have been, of course,
21   inabilities to file publicly certain documents, and sort of
22   before those issues are resolved, it's hard to see these
23   pretrial motions being fully briefed and then heard in open
24   court without doing some sort of constant courtroom closure
25   framework which seems a bit odd.
```

1           MR. BRATT:  So I think our hope, and especially the

2    proceedings that will occur this afternoon should help resolve

3    those issues.  We don't propose having the hearing or hearings

4    on the Rule 12 motions until April.  So we're still more

5    than -- I think April 3rd is the date that we proposed.  So we

6    are more than a month out from that.  While it is true that the

7    public is limited in what it can see, the Court has everything,

8    we have everything.  When we file our oppositions, they will

9    have everything from us.

10          So the parties can work on those and start working

11   toward a resolution and working toward whatever hearings and

12   arguments the Court wants to hear next month.

13          THE COURT:  All right.  It's just that what's been

14   generated by the -- by the competing arguments on sealing and

15   redaction is essentially a docket that is now becoming full or

16   fuller of seal requests in a way that I'm not sure is

17   consistent with the presumption of public access.  And so I'm

18   concerned that now we have all these pretrial motions; they

19   implicate references to discovery material which then prevents

20   the public filing of those motions.  It prevents the public

21   hearing on those motions to at least some extent.  And then it

22   might even impact the judicial orders on those motions.  And it

23   just becomes more complicated in that sense, given -- like, I

24   think, there are five pending motions on redaction alone.

25          MR. BRATT:  So I think, Your Honor, one important thing

1      to recognize, as we argued in our papers, is that many of the

2      attachments that are being appended to these motions, they cite

3      them for maybe one or two points.  I can think of one example

4      where they -- there is a 10-page FBI 302 of a government

5      witness.  They are essentially relying on one line in that 302,

6      yet they have put the entire 302 in.  They've put entire grand

7      jury transcripts in.  If the Court focuses on what these

8      materials are actually being cited for, it is fairly minimal in

9      contrast to the size of what they've appended to their briefs.

10           And, again, I think if the Court, hopefully through the

11     argument it hears this afternoon and the briefing and even the

12     contribution from the Press Coalition, the Court should be able

13     to come to a decision on, all right, this is what the public

14     facing part of this will look like.  And at the same time, this

15     is what the Court and all the parties have in front of them for

16     resolution of the motions.

17           THE COURT:  Okay.  Does any of what you just said

18     require the Court's ruling to be what the Special Counsel has

19     sought 100 percent?

20           MR. BRATT:  I always want to be careful about

21     "100 percent" because sometimes 98 percent will be

22     satisfactory.  But we do think there are important principles

23     at stake.  So that, again, for example, there may be some email

24     chains that they want to have, and they're using it for one

25     purpose, but elsewhere in the email chains, other witnesses,

1    what other witnesses may have said to an FBI agent are in that

2    same chain.  That does not have to be -- one, it's not anything

3    the Court needs to consider to decide the motion, but it is

4    also not something at this point in time before witnesses start

5    taking the stand that has to become public.

6           THE COURT:  All right.  Okay.  Thank you.  I may have

7    some additional scheduling related questions as we proceed, but

8    let me turn and hear argument from counsel for --

9           MR. BRATT:  May I just address one -- because I think

10   we will probably go back and forth on some of the unclassified

11   dates.  But our biggest problem with their scheduling order is

12   that from the end of this month through late May nothing

13   happens.  And we understand a lot of that is driven by the

14   trial that Mr. Blanche has with President Trump.  Just two

15   observations.  One, when the Court set the May 20th date, that

16   was a known fact that trial.  And two, and I made this point

17   before, and I know Mr. Blanche wasn't happy with it, but

18   Judge Merchan in New York about two weeks ago made the same

19   point, which is that he took this representation knowing he had

20   the other representation.  And --

21          THE COURT:  I'm sorry.  He took this representation --

22          MR. BRATT:  He, Mr. Blanche, took on this case after he

23   knew that he already had the New York case.  And, again, that

24   is his choice.  It's President Trump's choice of counsel.  We

25   respect that.  But that can't drive the dates here.

1          THE COURT:  Right.  But it's not just the choice of

2     counsel, it's -- it's the accused's right to be present and

3     participate.

4          MR. BRATT:  Yes, yes.

5          THE COURT:  And so that has to come into the equation

6     to some extent within reason.

7          MR. BRATT:  Right.  So that -- which leads to what I

8     was about to say next.  That if you look at our proposed

9     scheduling order, we have, I think, only one hearing scheduled

10    during that period of time on April 3rd, which, our

11    understanding is that is a day that the court New York is not

12    sitting.  And the remainder of the dates that we have during

13    that period are court filings, and very crucial court filings

14    to keep this case moving along.

15         THE COURT:  But I can assure you that in the background

16    there is a great deal of judicial work going on.  So while it

17    may not appear on the surface that anything is happening, there

18    is a ton of work being done in the background because, of

19    course, as I said at the beginning, we have about 20 pending

20    motions just sitting here right now.

21         MR. BRATT:  We would -- we can tell by the hour that

22    and the days, the weekend days, that we sometimes get notices

23    from the Court, we are well aware everybody here is working

24    very hard, and we are very grateful for that.  But the case

25    does need to move.  I guess the key deadlines that we really

1    have the most dispute about, if I may take a couple minutes to

2    go through those --

3              THE COURT:  Yes, please.

4              MR. BRATT:  -- are the CIPA deadlines.

5              So we begin that with our sort of duelling propositions

6    as to when the defense makes its CIPA 5 notification.  We say

7    it should be on the 18th of this month, and they want to wait

8    until June 17th.  They have had the classified discovery for

9    months now.  We know from their motions to compel that they are

10   well steeped in it.  They spent a lot of time ex-parte with

11   Your Honor talking about the classified discovery.  They have

12   it.  There is no reason that notice should not be filed.  And,

13   you know, the 11th Circuit in Collins called the CIPA Section 5

14   notice the central document in CIPA.  Because that is what

15   leads to how the case can be presented at trial.

16             So we think a -- and we understand there may be some

17   other orders from the Court, and there may be some additional

18   classified discovery, so there may have to be a supplemental

19   notice at some point, but we need to get moving on the CIPA

20   Section 5.

21             THE COURT:  And could you envision potentially to the

22   extent some additional evidence becomes -- or is triggered by

23   the Court's ruling on a motion to compel, for example, again

24   having not made any of those decisions, of course, then could

25   you envision a second CIPA Section 5 notice?

 1          MR. BRATT:  We could envision that.  And as we have --
 2     we have been up front with the Court.  That also may result in
 3     another round of CIPA Section 4 for us.  Obviously, we have to
 4     see what it is that the Court would be ordering and we have to
 5     see what the comfort level is of the equity holders and how
 6     that might be presented.  But --
 7          THE COURT:  On that point with the equity holders, how
 8     does it work, just in practice, when you sort of get permission
 9     to do things or at least you have a dialog?  Can you shed some
10     light on that?
11          MR. BRATT:  Sure.
12          In most of these agencies, and particularly NSA, CIA,
13     they have a litigation division within their general counsel's
14     office.  That is our point of contact with the agencies.
15     Attorneys in the litigation units or the litigation divisions,
16     whatever the agency calls it, they're the ones that receive our
17     requests.  They go to the components within the agencies,
18     advise them of what our requests are.  They come back to us
19     with the positions of the operators, for lack of a better word,
20     as to their comfort level with materials possibly being shown
21     in open court, even in a redacted or limited way.  And it's a
22     dialog that we have with them.
23          I know that the defense characterizes that in their
24     classified reply supplement -- and I'm not going to say
25     anything classified that, oh, they're the ones who make the

1    decisions; it's far from that.  And part of what we -- part of

2    our discussions and negotiations with them -- and it really is

3    a negotiation -- is also setting red lines.  That if we don't

4    get the types of rulings that we hope we can get or think we

5    can get, we may have to pull the plug on some cases.

6          In recent years there was the -- we cited the Rosen

7    case to you from Judge Ellis.  That eventually reached a point

8    where the pain level for the equity holders was too much; we

9    had to dismiss it.  There was a case involving --

10         THE COURT:  That was the case, I think, 3-1/2 years

11   into litigation ended?

12         MR. BRATT:  I don't know if it was quite that long.  I

13   mean, there was an appeal to the 4th Circuit that made it

14   longer.  Judge Ellis is incredibly efficient.  I would be a

15   little bit surprised if it was three years with him, but, yes,

16   there was a lot of litigation.

17         THE COURT:  I think I just mentioned that.  I think he

18   wrote a treatise on that and mentioned --

19         MR. BRATT:  Yes.

20         THE COURT:  -- mentioned the timeline.

21         MR. BRATT:  That -- that very well -- you probably know

22   more about that than me if you read his -- read an article he

23   wrote in the treatise.

24         There was the Drake case from the District of Maryland

25   that involved NSA computer information; that had to be

 1    dismissed.  Those are the types of discussions that we have

 2    with them.

 3          And to follow up on what Mr. Harbach was saying, and at

 4    least what we think the current state of the law is -- or as

 5    the law on the scope of the prosecution team has evolved from

 6    the earlier 5th Circuit cases, now to the 11th Circuit cases,

 7    authority is the lodestar, is the key criterion.  And we have

 8    very little authority over the CIA and the NSA.  They have a

 9    lot of discretion in what they will or will not let us use.

10          THE COURT:  I think if you go back to the 5th Circuit's

11    case, Antone, in 1979, there is a discussion of pooling

12    investigative resources.  What do you have to say about that?

13    I know there has been some mention in the papers about

14    statements made in the civil proceeding with respect to the

15    interrelationship.  Again, arguable between the Special

16    Counsel's office and the Intelligence Community.

17          MR. BRATT:  Well, certainly by the time the Special

18    Counsel's office was set up, what the Intelligence Community

19    was doing in looking at the documents and making certain

20    assessments, we were not part of at all.

21          In terms of -- you know, if you talk about, sort of,

22    again, in those cases -- and I know to -- in -- in -- you look

23    at those cases, and usually what they're talking about is the

24    investigative agency with whom the federal prosecutors are

25    working very closely.  And they're pooling resources.

1          Did we require the CIA and NSA, NGA, et cetera, to

2     expend resources to respond to our requests?  Yes, we did.  Did

3     we pool resources with them in the sense that, oh, you do these

4     interviews, we will do those interviews, we will all come

5     together?  No, nothing like that happened.

6          THE COURT:  Okay.  Okay.  All right.  And let me just

7     understand just as a factual point -- I know in one of the

8     letters drafted by the Special Counsel with respect to the

9     definition of the prosecution team -- and I'm going to get the

10    exact quote.  I just want to understand what it -- what it

11    means.

12         As I understand it, your review of the prosecution

13    consists of, quote, the prosecutors of the Special Counsel's

14    office and law enforcement officers of the Federal Bureau of

15    Investigation who are working on this case, including members

16    of the FBI's Washington field office and Miami field division.

17         So I would like to understand what do you mean by

18    "working on this case," as of when?  What's your timeline, so

19    to speak --

20         MR. BRATT:  Sure, sure.

21         THE COURT:  -- what you're working right now.  Starting

22    when?  Is it the whole Special Counsel's office?  It's -- it's

23    hard to -- it's hard to discern from that definition.

24         MR. BRATT:  Sure.

25         When this case first came in -- and I know they have

 1    their theory on the referral.  But I will say, when the

 2    referral came in, right around that time, in February, the

 3    case -- the matter within the FBI was assigned to the

 4    Washington field office, and a particular squad in the

 5    counterintelligence division of the Washington field office.

 6    Those were the agents.  And a couple of them are actually in

 7    the room today.  Those are the agents who began going out and

 8    doing the initial round of interviews.  And they have been on

 9    the case all the way through now.  They would take taskings for

10    us.  We would, even before, in the very early stages of the

11    case, talk to them about who were the likely people to be

12    interviewed, who should be interviewed next, et cetera.

13    Obviously, as the case developed and more evidence came in, we

14    began working much more closely with them.  And --

15            THE COURT:  These are still agents in the Washington

16    field office?

17            MR. BRATT:  In the Washington field office, right.

18            THE COURT:  Okay.

19            MR. BRATT:  There came a point in time around April of

20    2022, when the agents began doing interviews in the Southern

21    District of Florida.  And at that time, they began working with

22    some agents in the Miami field office, in particular the

23    resident agency in West Palm Beach.  And those agents, not as

24    many, but a handful of those agents have been pretty much

25    involved.  They have other responsibilities, but have been

1    involved throughout the investigation, including when the case

2    was transferred to the Special Counsel.

3           THE COURT:  Now, from the date of the referral until

4    the present, have any agents outside of either of those field

5    offices had any connection to this case?  And I know

6    that's -- that's broad.  But I say that for a reason.  Because

7    you're -- you're narrowing it to two field offices.  There is

8    some argument about folks at headquarters potentially being

9    involved, and I think it's important to get clarity.

10          MR. BRATT:  Sure.

11          So at headquarters, this was in a section of the

12   counterintelligence division, there was an assistant section

13   chief who was sort of the point of contact there.  There was a

14   unit chief who was the point of contact and was involved and

15   continued with the Special Counsel to be involved.  I mean,

16   again --

17          THE COURT:  So why wouldn't those people, at the very

18   least, be part of the prosecution team?

19          MR. BRATT:  And we were not denying that they are.

20          THE COURT:  Oh, okay.  That's the nature of my

21   question.

22          MR. BRATT:  Yeah.

23          THE COURT:  Because, as framed, it seems the folks who

24   are, quote, working on this case include -- and maybe there is

25   more to it, that's just not specified in that definition.

1    That's what I'm trying to probe, is who beyond the two field

2    offices, from the FBI at least, has, quote, worked on this

3    case?

4           MR. BRATT:  So on a sort of day-to-day level, it was

5    about two or three people in FBI Headquarters.  And we have

6    produced their materials in discovery.

7           THE COURT:  Okay.  Now, prior to the referral, were

8    there any FBI agents or members of the Department of Justice

9    who were working on the issue of missing boxes

10   or -- or information that was being requested from NARA?

11          MR. BRATT:  Not until close to the time that NARA

12   formally referred the case to us.

13          THE COURT:  Is there anything you wish to add?

14          MR. BRATT:  No.  I just think Mr. Harbach is correct in

15   advising me that it's very important to separate what any

16   connection to the case is from the people who actually were

17   responsible for carrying out tasks that we gave them.

18   Your Honor has used the term "working on the case."  That is

19   the definition --

20          THE COURT:  Well, that wasn't my term.  That was the

21   term provided by the Special Counsel.

22          MR. BRATT:  And that is what we mean by that, the

23   people that were working --

24          THE COURT:  I'm just trying to figure out, what does

25   that mean?  What does it mean to be working on a case versus

1    being consulted or being part of the discussion?  And so those

2    things are a little bit vague.  But in any case, I do want to

3    stay focused on the scheduling issues.  If you want to add any

4    more about that, then I want to hear from the defense

5    attorneys.

6         MR. BRATT:  Let me go through the CIPA issues that we

7    have.  So one, CIPA -- CIPA Section 5 notice in -- in June is

8    way too late.

9         Second, the defense has something that they call

10   a -- having the government file a response to their CIPA

11   Section 5 notice.  Well, a response to the CIPA Section 5

12   notice is a 6A motion.  There is no such thing as some general

13   response.  Because then they also, on July 9th, want to have a

14   hearing on the sufficiency of the CIPA 5 notice.  And that

15   also --

16        THE COURT:  All right.  I'm sorry.  I want to make sure

17   I know where you are.  So you're looking at page 5 of docket

18   357?

19        MR. BRATT:  I think so.  We kind of --

20        THE COURT:  The chart.

21        MR. BRATT:  Yes.

22        THE COURT:  The defense proposal.

23        So the deadline that you say is sort of a non- -- a

24   non-deadline is which one?

25        MR. BRATT:  There are two non-deadlines.  The first is

1    the June 24th, government filing a CIPA 5 notice.  That is

2    nowhere in CIPA.

3            THE COURT:  Okay.

4            MR. BRATT:  And then a July 9th hearing on the

5    sufficiency of the CIPA 5 notice.  And as a legal matter,

6    that -- their notice should be sufficient.  We shouldn't be

7    having to litigate it.  The 11th Circuit is actually clearer

8    than a lot of circuits in saying their descriptions of the

9    classified information they seek to reveal needs to be

10   particularized -- particularized.

11           THE COURT:  So you don't really know what that means?

12   I don't -- hearing evidentiary, as necessary, on sufficiency of

13   CIPA Section 5 notice.

14           MR. BRATT:  It's not a thing.  It doesn't exist in

15   CIPA.  The expectations should be -- is that they will comply

16   with CIPA 5's requirements.

17           THE COURT:  Okay.  So, Defense Counsel, please be

18   prepared to address these two issues, the June 24th proposed

19   government response to CIPA Section 5 notice and the July 9th

20   allotment for a hearing on the sufficiency of the CIPA 5

21   notice.

22           MR. BRATT:  All right.  Then under their schedule, they

23   give us just two weeks after getting the CIPA 5 notice to file

24   our CIPA 6A motion.

25           THE COURT:  How much time would you like?

1          MR. BRATT:  We -- in our proposal we ask for four

2    weeks.  Because we will likely -- well, we have to go to the

3    equity holders and we will likely be filing -- we can reassert

4    or assert anew the classified information privilege in 6A.  So

5    we're going to have to get declarations for that.

6          THE COURT:  So you are asking for four weeks between

7    the Section 5 notice --

8          MR. BRATT:  And our 6A motion.

9          THE COURT:  Okay.  Gotcha.

10         MR. BRATT:  And just also, when they described the 6A

11   motion, they say it deals with the silent witness rule and how

12   evidence is handled in the courtroom.  Silent witness rule

13   being a means of showing the jury and the Court the full

14   classified -- or a version of the classified, the public seeing

15   a more redacted version of the classified evidence.

16         But, yes, procedurally, the silent witness rule is

17   worked out throughout the Section 6 proceedings, but the key

18   thing for Section 6 is the Court ultimately ruling on the

19   admissibility of the classified information they seek to

20   disclose.  So it's more to it than as they describe in their

21   notice.

22         Then the other deficiency that we see with

23   their -- with their proposal is that they have a CIPA 6A

24   hearing from between June 23rd to the 26th.  I think we had it

25   for two days, but, again, it will take probably a couple of

1    days to do the 6A hearing.

2         THE COURT:  I'm sorry.  Say that one more time with the

3    dates.

4         MR. BRATT:  Yes.  July -- I'm sorry -- July 23rd

5    through July 26th.

6         THE COURT:  Okay.  So what would you like to alert me

7    about that?

8         MR. BRATT:  So what I want to alert you to is that they

9    then have our 6C motion due on July 31st, so possibly five days

10   later.  The reason that's an impossibility -- well, it puts

11   pressure not only on us, but also on the Court.  Because we

12   cannot file a CIPA 6C motion until the Court has made its

13   written rulings on -- on the admissibility of the classified

14   information.

15        In our -- in our -- what we submitted over the summer

16   on our motion to continue, we had it 14 days from when the

17   Court issued its order.  In our proposal here, we have about

18   three weeks between the CIPA 6A and our 6C motion --

19        THE COURT:  So it should be key to the Court's

20   ruling --

21        MR. BRATT:  Correct.

22        THE COURT:  Okay.

23        MR. BRATT:  And then last, they have the CIPA 6C

24   hearing actually occurring after voir dire.  And the CIPA 6C

25   hearing has to occur before the jury is -- is questioned and

1    before it's sworn in.  We need to know what the evidence is

2    actually going to look like.  That affects, again, the risk

3    tolerance of the equity holders and it also affects --

4         THE COURT:  Wait.  Can we back up for just a minute?

5         MR. BRATT:  Sure.

6         THE COURT:  You are saying that -- you're saying they

7    want to do a classified hearing after voir dire?

8         MR. BRATT:  Yes.

9         THE COURT:  I see August 5th as the proposed final

10   hearing on remaining CIPA issues, and then voir dire

11   commencing, at least according to the former president's

12   counsel, on August 12th.  I take their proposal to be an

13   alternative one to be considered, notwithstanding their

14   introductory point.  But, in any event, is there an

15   inconsistency there between the final CIPA hearing and the voir

16   dire?

17        MR. BRATT:  So a couple of things in their proposal

18   that weren't entirely clear to us.  But to the extent that it

19   seemed to suggest that there would be more hearings on CIPA 6C

20   after the jury was empanelled or before it was empanelled but

21   after voir dire, that cannot happen.

22        THE COURT:  All right.  That's a fair point.  Okay.

23        MR. BRATT:  That's all that I have on CIPA.  I'm sure

24   there is some other scheduling things that you will ask defense

25   about and I will come back on.

```
 1              THE COURT:  Okay.  Thank you, Mr. Bratt.

 2              MR. BLANCHE:  Good morning, Your Honor.

 3              If it's okay with the Court, we are also going to

 4    divide up argument.  Mr. Bove will address the motion to compel

 5    framework and be prepared to address and respond to questions

 6    that were just raised to the Special Counsel around the motion

 7    to compel, and also potentially some of the CIPA questions that

 8    came up at the end.  But I will address scheduling.

 9              Look, to be clear, and it's in our papers, we very much

10    continue to believe that a trial that takes place before the

11    election is a mistake and should not happen, and there is a lot

12    of reasons for that that may be obvious.  But as they relate to

13    Your Honor in this courtroom, we very much think that it is

14    completely wrong and unfair to the American people and to

15    President Trump that he is going to spend whatever six weeks

16    the Court decides to hold trial, whether it's closer to the

17    government's proposal or closer to our proposal, sitting in

18    this courtroom and not out campaigning for the presidency of

19    the United States.  And --

20              THE COURT:  What's your understanding right now about

21    the proposed length of a trial in this case?

22              MR. BLANCHE:  Pardon me.

23              THE COURT:  What is your understanding right now of how

24    long it would take to try this case?

25              MR. BLANCHE:  Our understanding is around -- and the
```

1    Special Counsel can correct -- we believe it will be four to

2    five weeks, and that's not including jury selection.  But it's

3    also not including the motions we're talking about and the

4    evidentiary hearings which we think are for sure more than just

5    a single day.

6          So you're talking about taking President Trump off the

7    campaign trail for huge blocks of time for really no reason.

8    The difference between -- we are going to get into the schedule

9    in a moment, Your Honor, but there is a lot of work to do under

10   any of these proposals, even -- even counsel for Mr. Nauta's

11   proposal starting in September, we are working full-time all

12   summer to get there.  And the reason why, as an alternative, we

13   offered August is because once you get to September, we're

14   literally -- the campaign is in full swing.  It really is in

15   full swing the whole summer, but it becomes more damaging and

16   more harmful to the American people and to President Trump

17   every day that gets closer.

18         Now, we're going to talk about -- in a minute about how

19   the July date is completely unworkable just from a case-related

20   standpoint.  But the easy solution here is the one that we

21   asked for in our papers, which is to start this trial after the

22   election.  I think if there were no election, the way

23   this -- the case -- this case would be -- we still wouldn't be

24   ready for trial until close to the November time frame.  If we

25   really -- if we really sit back and think about all the

1    decisions the Court will have to make based upon the pretrial

2    motions, the evidentiary hearings, and the CIPA litigation,

3    we're working ourselves into almost a frenzy, even under

4    President Trump's proposed schedule, with all of the things

5    that have to take place in advance of a trial, and a reason for

6    doing so, aside from what we have argued repeatedly, is this

7    administration's desire to get him on trial before the

8    election.  Beyond that, there is no reason.  There is no reason

9    this trial can't start late November, which gives us -- the

10   Court, the government, and the defense plenty of time to do all

11   the things we're talking about.

12          So without a doubt, that is our position.  It always

13   has been and it remains that way.  Granularly, the big issues

14   and the problems with the Special Counsel's July date is the

15   fact that President Trump -- that President Trump is going to

16   be on trial in New York between March 25th and, at some point,

17   early to mid May.  That's practically an impossibility for the

18   defendant, for President Trump, to be able to effectively

19   prepare for this trial while he's on trial there.

20          Now, the Special Counsel has repeatedly suggested that

21   it's kind of on him and on his counsel that we have these

22   conflicting trials.  That is not 11th Circuit law.

23   11th Circuit law, there is plenty of law that addresses this

24   issue and shouldn't need to be -- to be emphasized.  But there

25   is plenty of 11th Circuit law that talks about the -- a

1    defendant's Sixth Amendment right to counsel of his choosing,

2    including the fact that acting because of some sort of calendar

3    control shouldn't interfere unreasonably with a client's right

4    to be represented by the attorney he has selected.

5        President Trump and myself have been wide open and

6    honest with every court we're in front of about the schedules.

7    This is not a game where we're trying to put off schedules and

8    dates because of -- to play courts off of each other, like some

9    have said.  It's a reality.  We have a trial that starts

10   March 25th.  The people in New York in the beginning -- a year

11   ago, about, said that the trial would last approximately three

12   to four weeks, actually two to three weeks.  They have now said

13   it's recognized it's going to be longer.  So even when --

14       THE COURT:  What's the current estimate for that trial?

15       MR. BLANCHE:  Including jury selection, approximately

16   six weeks.  There is some speculation there because of jury

17   selection, of course.  But that's different than even what we

18   said to Your Honor last summer because it's just grown longer.

19   So, you know, when I read the government's --

20       THE COURT:  Understanding that constraint, and I

21   understand that, isn't there at least some work that can be

22   done within that six-week period?

23       MR. BLANCHE:  Oh, absolutely.  And our proposal has a

24   lot of work getting done, just not -- not the work that the

25   Special Counsel expects counsel for President Trump and

1    President Trump to do.

2         So they suggest a hearing on April 3rd, and they

3    obviously know that Wednesday is the calendar day in New York.

4    But just -- think about what that means.  That means that

5    President Trump is on -- in a jury trial all day Monday, all

6    day Tuesday in New York.  He has to end up at home on Tuesday

7    night, come to this courtroom, in Special Counsel's view, to

8    argue over a dozen motions, then get back to his home, fly back

9    to New York to have a jury trial the next day.

10        I don't -- that doesn't even -- I don't know how they

11   say it with a straight face.  That's completely unfair.  There

12   will be no precedent for that type of ask by a government

13   that's really just trying to do justice.  And it just

14   doesn't -- doesn't work.  We have a schedule that puts a lot of

15   work in before that March 25th date kicks in for President

16   Trump, including the motions to compel, which Mr. Bove will

17   address why that is so significant.  Depending on the Court's

18   rulings on the various motions to compel, especially the scope

19   of the prosecution team, there will be a tremendous amount of

20   work to be done in producing any discovery that's ordered to be

21   produced or in the Court's deciding motions that we believe can

22   be argued in advance of March 25th.  So that's --

23        THE COURT:  So let's just focus in on the immediate

24   future in the next 30 to 45 days.  In your view -- I think I

25   asked Mr. Bratt a similar question -- what are, sort of, the

1    key priority items to get through first sequentially and

2    logically?

3            MR. BLANCHE:  We believe that there could be fully

4    briefed motions on some of the 12(b) -- 12(b) issues, including

5    selective and vindictive prosecutions.  We think that is

6    extraordinarily important.  And we think there is a lot of

7    evidence that the Court will hear about in argument and in a

8    hearing, if ordered, that will -- that will cause a lot of -- a

9    lot of work will need to be done when the Court rules on that.

10   We think that can be -- can be done.

11           We think there can be an oral argument on the -- on the

12   Presidential Records Act and the vagueness challenges to --

13           THE COURT:  Can you explain to me a little bit -- I saw

14   that as a hearing to be held before your motion to compel

15   hearing.  I saw that and I was wondering if you could explain

16   the rationale behind selecting that sequence.

17           MR. BLANCHE:  Of course.  We believe that putting aside

18   the Supreme Court's immunity argument for a moment, which is

19   why we think that should be put off until the Supreme Court

20   rules.  The PRA issue and the vagueness challenges on the 793

21   will be fully briefed and may not require much of a hearing.

22   We haven't seen the response on the PRA argument.  So, for

23   example, if the government argues that President Trump was not

24   president when he took the boxes on the plane on the date that

25   they allege, we might need to have a hearing to prove that he

1    was.  I don't expect that would be a complicated hearing.  So

2    there might be some evidence the Court needs to take in, which

3    is why we said a hearing may be necessary.

4         But that's really, in our view, argument, and then a

5    decision -- a decision by the Court.  So we think that can get

6    done before -- that argument can get done before the March 25th

7    trial starts.  And then the motion to compel, which Mr. Bove

8    can address more weeds on that.

9         We can have a hearing.  We are prepared to have a

10   one- -- we built in two days of hearings, if necessary.

11   That -- that gets a lot of work on everybody while President

12   Trump is on trial in New York.  And so we're not suggesting we

13   sit by.

14        And, look, I think there is some built-in -- in the

15   government's proposed schedule, for example, requiring expert

16   disclosures by March 18th, when there is -- on the defense,

17   when the Court hasn't ruled on, we think, significant issues

18   that will counsel whether we have expert disclosure --

19        THE COURT:  Can you be a little more specific with

20   that?

21        MR. BLANCHE:  Sure.

22        So in this case the nature of the classified documents

23   and whether they're closely held, that -- that issue, and how

24   we might want to bring that to the jury's attention could

25   include expert testimony.  But whether we decide to do that

1    depends significantly on the rulings.

2          THE COURT:  That's what I'm trying to understand.  Why

3    do you need a court ruling to do a -- to do an expert notice?

4          MR. BLANCHE:  Well, because we don't know what the

5    Court is --

6          THE COURT:  So what do you need to know in order to

7    make that decision?  Because it's not the subject of the

8    pending motion; correct?

9          MR. BLANCHE:  Correct.

10         THE COURT:  Okay.

11         MR. BLANCHE:  That's correct.

12         Look, I think we need to understand -- if the Court

13   agrees with President Trump, and orders a disclosure of what we

14   think we're entitled to around all the background information

15   around the various charged documents and their sourcing and the

16   reason why they were classified at the level they were, and

17   the -- the reason why the government claims they are so closely

18   held in an NDI.  Until we know whether we're going to get all

19   the information, we -- we -- we're in a box about whether we

20   need to call an expert on that issue.  So that's the reason why

21   we don't think there is -- that that should be something that

22   we're just -- we're forced to decide now.

23         But more granularly on the CIPA side -- and Mr. Bove

24   can certainly elaborate here -- but they have us -- they have

25   6A litigation taking place while we're on trial in New York.

1   And I say myself and Mr. Bove, who is a CIPA expert, we have to

2   do all of that work in a secure facility in this district.  And

3   they know that.  And they know we're on trial.

4        So the idea that we would go through -- I will talk

5   about our Section 5 notice in a moment -- but that we would

6   provide Section 5 notice and then litigate the 6A while we're

7   on trial in New York, it's -- I'm not -- I mean, I hate to use

8   the word "unfair" because we're working hard and we're doing

9   what we have to do, but how can they even suggest that to the

10  Court?  President Trump has a right to be part of that.

11       So when are we in the secure facility in this district

12  when we're on trial four days a week?  It just -- I think

13  it's -- it borders on bad faith that they would suggest that.

14  And our schedule on the 6A litigation, it's true that --

15  Mr. Bratt is correct that there is -- we are really putting a

16  lot on the Court and on the parties to hit an August date, but

17  it still is much more realistic to give President Trump and

18  counsel an opportunity to get ready.

19       And, by the way, if the trial is scheduled when we

20  think it should be, there is plenty of time.  And we asked for

21  four days for 6A.  Your Honor, we went through Section 4

22  briefing the last several months.  Section 6A is, for sure,

23  going to be as much or even more complicated for the Court and

24  the parties.  So they -- the government suggests just two days?

25  That's also completely unrealistic, given the volume of

1    classified materials and what they already know we're going to

2    be objecting to.

3          So -- so there is a lot built into our schedule that

4    Mr. Bratt criticized, and I accept that, because it does really

5    put a lot of work on us in July, but the alternative that they

6    suggest is not only unworkable because of the physical presence

7    of counsel not being in the district, nor the defendant, but it

8    also isn't enough time to get done what we need to get done.

9          So -- and, by the way, the Section 5, the reason -- I

10   accept Mr. Bratt's position that there is no -- there is no

11   reply.  I mean, the Special Counsel filed a motion to strike

12   our Section 5 notice.  The same Special Counsel -- he is in

13   this courtroom -- is on the case in the D.C. case.  It's not in

14   your case, Your Honor, but in the case in D.C., we filed a

15   Section 5 notice.  They filed a motion to strike it.  So we --

16         THE COURT:  Oh, so that's what you mean by government

17   response to CIPA Section 4?

18         MR. BLANCHE:  We were just as shocked there as

19   Jay Bratt was here on why we put it in our calendar.  But

20   that's what they did.  So we were giving them an opportunity to

21   make a similar argument here, should they choose to do so.

22   That's the only reason why we included that.

23         THE COURT:  So just so I understand, that was a -- that

24   was a government motion to strike the CIPA --

25         MR. BLANCHE:  By the Special Counsel, correct.

1          THE COURT:  Okay.  What do you have to say, though,

2     about the other one?  The hearing, evidentiary as necessary, on

3     sufficiency of CIPA 5 notice?

4          MR. BLANCHE:  Well, because -- I don't want to get

5     into -- the reasoning that they gave that our notice in D.C.

6     should be struck had to be -- was based upon the sufficiency of

7     our notice.  So if they're going to engage in this argument --

8          THE COURT:  Oh, okay.  So that's tied together.

9          MR. BLANCHE:  Totally.  If there --

10         THE COURT:  I understand.

11         MR. BLANCHE:  We agree it was not the usual path.

12    And --

13         THE COURT:  Do you disagree with Mr. Bratt's

14    explanation that there needs to be at least four weeks between

15    the defense Section 5 and the 6A hearings?

16         MR. BLANCHE:  I leave that to Mr. -- that's work that

17    the Special Counsel has to do.  You know, I think he described

18    the work that that would -- I have no basis to challenge what

19    he is saying, but I certainly challenge the schedule that he

20    suggests, that we should do that in the middle of a trial in

21    New York when we can't be in this district.

22         THE COURT:  Do you also agree with Mr. Bratt that there

23    should be no CIPA hearings conducted after voir dire commences?

24         MR. BLANCHE:  I mean, absolutely not.  It just depends.

25    I mean, Mr. Bratt -- I think there might have been a

1    misunderstanding because some of the scheduled hearings were

2    because of different proposed dates with us and Mr. Nauta.  But

3    there are times when, even after voir dire, classified issues

4    come up and you have to deal with them, whether it's a late

5    production by the government.  And so -- or something like

6    that.

7         So to suggest there will be no further classified

8    litigation after voir dire, no, we do not agree with that.

9         THE COURT:  Okay.  As far as the schedule in New York,

10   do you have any sense for just whether the Court will be in

11   session every day?

12        MR. BLANCHE:  Yes.  So the Court will be in session

13   every day with the exception of Wednesday.  There are some

14   potential holidays, including the Jewish holidays in April,

15   where there is potential that the Court may be canceled, but

16   there is nothing set in stone.  I think it depends on the jury,

17   and it depends on factors that we don't know yet.  But --

18        THE COURT:  Is there any sense right now, any filing,

19   any argument, anything before the New York judge with respect

20   to a continuance of that March -- late March trial start date?

21        MR. BLANCHE:  I would be -- we are going to ask for

22   more time every time we're in front of that judge.  So we

23   are -- we are not aware of any -- we are not aware of anything

24   right now other than what has already publicly been argued by

25   us, that we need more time, given what the Court did in that

1   case with respect to the D.C. trial.  And, you know, well --

2   so, no, we don't have any reason to believe, but I don't want

3   to represent anything other than, to this Court, than we are

4   most certainly in a position where we want more time, and --

5   but to this point, Judge Merchan has denied our application.

6           THE COURT:  Okay.

7           MR. BLANCHE:  And I say that -- there is some meat on

8   that.  And we know that the -- the juror -- the jury pool and

9   whatnot have already -- they've already started the process of

10  planning on a jury coming in on the 25th.

11          THE COURT:  So as far as you're aware right now, that

12  is a firm date.

13          MR. BLANCHE:  Absolutely -- 100 percent, yes,

14  Your Honor.

15          THE COURT:  All right.  Anything else on, sort of, big

16  picture scheduling?

17          MR. BLANCHE:  No, Your Honor.  Just, I'm happy to

18  answer any questions that come up in response to what I have

19  said now.  I would just say again that I think maybe it was

20  lost in our submission because of all of the dates we put in

21  between now and mid August.  We did that to answer the Court's

22  direction.  We think the calendar is -- is much more

23  appropriate and easier to fill if the Court schedules this

24  trial after -- after the election, and certainly object to a

25  trial in -- I mean, at the risk of saying the obvious, any

1   later [sic] than what we proposed.  Because it just

2   comes -- it's just completely unfair to President Trump, to,

3   you know -- who, for all intents and purposes, is a -- the

4   Republican nominee for president of the United States.

5          THE COURT:  All right.  Thank you.

6          Let me hear now from any other defense attorney who

7   wishes to be heard on the issues of scheduling.  Then we will

8   shift to the motion to compel discussion.  I may need to hear

9   again from the government on that topic.  Then, hopefully, we

10  are still on track for our recess and then legal argument in

11  the afternoon.

12         MR. WOODWARD:  Thank you, Your Honor.

13         I want to touch upon a couple of issues that are unique

14  to Mr. Nauta with respect to scheduling.  I think probably the

15  best place to start is the status of discovery in this case

16  because from our perspective, we're not -- we're not finished

17  with discovery.  We are going to talk about motions to compel

18  separately.  We appreciate that the Special Counsel's position

19  is that we don't have any standing in discovery, but the

20  reality is that regardless of how the Court rules on those

21  motions to compel, discovery continues to come forward in this

22  case.  And as we indicated in our filing this morning, we

23  learned just yesterday that there is a search warrant that

24  hasn't been provided to us yet.  Now --

25         THE COURT:  That's a search warrant for what, as far as

1    you're aware?

2           MR. WOODWARD:  It's a search warrant, as I understand

3    it, for Mr. Nauta's iCloud account.  And so what happens, if

4    you use an iPhone with an iCloud backup feature, is that your

5    iPhone is constantly backing up to the cloud.  And so what the

6    FBI can do, even in the absence of having the physical device,

7    is they can get and execute a search warrant on Apple for the

8    backup of that phone that is stored in the cloud.

9           Now, there is some data that is only stored on your

10   phone, typically that's going to be pictures, but there is

11   quite a bit of data that is both stored on your phone and in

12   the cloud.  If you lose your phone, as many of us have done, I

13   have done multiple times, you get a new phone, you put in your

14   information and you download that backup and it looks exactly

15   as it did the day before.  And so that's not an uncommon means

16   that the FBI utilizes to collect data.

17          Now, to be sure, we have the data that they collected,

18   but we don't have the warrant.  Now, I don't suggest that

19   that --

20          THE COURT:  Do you have the application in support of

21   the warrant?

22          MR. WOODWARD:  We do not.  What the Special Counsel's

23   office made me aware of is that there is a public version of

24   the application in support of the warrant that is available.  I

25   was not previously aware that the Press Coalition had been

1    litigating the publication of Mr. Nauta's warrants.

2         THE COURT:  Could you have been aware?

3         MR. WOODWARD:  I suppose I could have been following

4    every matter that was docketed in this district to see which

5    ones involved Mr. Nauta.  But certainly nobody from the Special

6    Counsel's office nor the Press Coalition asked for our position

7    on what should be public and not public with respect to

8    his -- the applications for search warrants of his devices.

9         I don't know that there was any legal obligation for

10   them to do so.  It would seem, as a matter of courtesy, that

11   somebody in the Justice Department would let us know.  But, no,

12   we had no idea that there was all this litigation happening in

13   the Southern District about the applications that involved,

14   you know, specific details of Mr. Nauta's life that are being

15   published on the docket.

16        THE COURT:  And you just learned that yesterday.

17        MR. WOODWARD:  No.  The first time I learned that was

18   in a meet and confer -- I can't recall whether it was Monday or

19   Tuesday or last Friday -- in which the Special Counsel asked

20   our position -- as the Court is aware, one of the motions we

21   filed was a motion to suppress the result or the -- the

22   material that was obtained through the execution of warrants on

23   Mr. Nauta's devices.  We attached those motions to -- we

24   attached those warrants and the applications, therefore, to our

25   motion.  And the Special Counsel's ask of us was:  Would you

1      all be willing to simply refer to the public facing versions of

2      those applications?  And my response was I had no idea that

3      they existed.

4              So that was -- I can't recall when that meet and confer

5      was, Your Honor.  I think it was Monday afternoon.

6              THE COURT:  Within -- fairly recently.

7              MR. WOODWARD:  Yes, Your Honor.  Yes.

8              THE COURT:  Okay.  So I guess your point, though,

9      broadly speaking on discovery, because there was additional

10     time afforded in the scheduling order for defense counsel to

11     review both unclassified and classified discovery is what?

12             MR. WOODWARD:  We're not finished with discovery yet.

13     And so we're setting --

14             THE COURT:  Can you provide more specificity?  Because

15     I understand it's not out of the ordinary for the government to

16     provide additional discovery within reason in anticipation of a

17     trial date as it becomes available to them.  And so, in your

18     view, is what's happening now somehow out of the ordinary with

19     respect to these continuous transmissions of discovery?  How is

20     it that discovery in your mind is becoming, from what I am

21     hearing, not done?

22             MR. WOODWARD:  Oh, not at all out of the ordinary.  I

23     mean, I think in any normal case Your Honor certainly

24     appreciates that as the government becomes aware of additional

25     discovery, they make it available to defense counsel.  What is

1    out of the ordinary is the -- a truncated approach that the

2    Special Counsel is seeking in this case.

3         Let's transition to the CIPA 5 discussion that we have

4    had this morning.  In CIPA 5, we are tasked with advising

5    Your Honor of every classified document or classified

6    information that we intend to rely on at trial.  And the

7    Special Counsel, we know, wants to hold us to that disclosure.

8    And so in less than a month's time the Special Counsel would

9    like us to tell you exactly which classified information or

10   classified documents we intend to rely on in defense of

11   Mr. Nauta.

12        THE COURT:  Why is that untenable?

13        MR. WOODWARD:  The problem we have, Your Honor, is

14   threefold.  First, Your Honor ruled, I believe this week, that

15   Mr. Nauta himself would not have access to that classified

16   information.  So be it.  But the Special Counsel made two

17   concessions in their application which Your Honor unsealed

18   earlier this week; that would be ECF Number 349.  The first

19   concession they make is that Mr. Nauta will have access to any

20   classified markings that were in the boxes of documents.  Well,

21   we don't have that; right?  I suppose they propose to redact

22   the documents of all material or all content except the

23   classified markings?  We don't have that yet.  I mean, that is

24   discovery in this case.  Mr. Nauta cannot --

25        THE COURT:  So what are you talking about?  The face

1  sheet of the document where it says "top secret" or whatever it

2  says?

3       MR. WOODWARD:  Oh, I expect that what they're going to

4  do -- and they can correct me on this -- but if there is a

5  document bearing the classified marking, a document that he is

6  alleged to have conspired to conceal, then they're going to

7  redact the classified information from that document and

8  Mr. Nauta gets everything but the classified information.

9       So, to be sure, not every document that was in a box

10  has a classified face sheet.  In fact, I think the vast

11  majority of those documents do not.  What they have are

12  classification markings.  And what the Special Counsel advises

13  the Court is, that's all that Mr. Nauta is entitled to see,

14  that's all that is material to Mr. Nauta's defense.

15       Now, we disagree with that and we're not here to

16  litigate that or relitigate that, but he -- they can see he

17  gets access to that, and he doesn't have it yet; right?  Now

18  what they will probably tell you is that I am a sophisticated

19  counsel and I'm perfectly capable of describing to my client --

20  describing to my client what those classification markings look

21  like.

22       In their previously sealed and ex-parte submission,

23  they say that the documents in question are identified in the

24  indictment itself, that I can go and I can look at those 32

25  classification markings that are identified in the indictment

1    and I can discuss that with Mr. Nauta.  But that divorces what

2    is really happening here from a legal concept.  What is really

3    happening here is that we have boxes full of documents, some of

4    which allegedly bear classification markings and that

5    apparently Mr. Nauta was supposed to have been privy to because

6    he was hiding those boxes or concealing those boxes from either

7    President Trump's counsel or from the FBI or from the grand

8    jury.  And it doesn't matter, the Special Counsel would say,

9    what the content of the document was; all that matters is that

10   they had a classification marking.

11        THE COURT:  Okay.

12        MR. WOODWARD:  But I need to be able to review with

13   Mr. Nauta the contents of those boxes so that I can understand.

14        THE COURT:  Do you mean the contents of the markings?

15        MR. WOODWARD:  I need to know the content of the boxes.

16   So there is a box that --

17        THE COURT:  But those have been available for some

18   time, have they not?

19        MR. WOODWARD:  Except they don't have the documents

20   with the classification markings.

21        THE COURT:  So what is it that you at this point don't

22   have that you believe you are entitled to consistent with the

23   Court's Section 4 order?

24        MR. WOODWARD:  Consistent with the Court's Section 4

25   order, the government is going to -- is -- agrees that

1    Mr. Nauta may receive -- may review the classification

2    markings, so the documents with classification markings, but

3    not the classified material on those documents.

4            Now, I suspect --

5            THE COURT:  And how would this -- so I -- conceivably,

6    you would have an entirely redacted document with a marking on

7    the bottom right, let's say, and so -- help me understand why

8    it is that that is -- is important to your consultations,

9    without revealing any attorney-client privilege, of course.

10           MR. WOODWARD:  I will answer that in two ways.  First

11   of all, if it's discovery, it's important; right?  I don't

12   think that we're in the business of parsing out which discovery

13   is important to Mr. Nauta and which is not.  That's not what

14   Rule 16 or Brady contemplate.  And so they've said he is

15   entitled to it.  We don't have it.  And so that's problematic.

16           Second of all, what the government is going to have to

17   prove at trial, and there is a debate about this, but that

18   Mr. Nauta understood that the boxes he was moving contained

19   classified information which is why he was moving them.  And

20   the only way for him to have known that is, A, for the

21   government to prove that someone told him that, but there is no

22   allegation that that happened; or, B, that he was aware of the

23   classification markings.  In fact, the indictment makes hay of

24   the fact that there is a spill box with a document that bears a

25   classification marking.

1           Now, I've looked at that document as closely as I

2    possibly can.  It's -- it's going to be incredibly difficult

3    for them to convince anyone that Mr. Nauta or anyone else knew

4    that there was a classified document in that box.  But that's

5    the theory of their case; that there are all these documents,

6    bearing classification markings --

7           THE COURT:  Is that the photograph that I think is in

8    the indictment?

9           MR. WOODWARD:  It is.  A redacted version of that

10   photograph is in the indictment.  They redact -- I can't recall

11   whether they redacted a classification marking or information

12   that is classified, but that is the photograph that is in -- in

13   the indictment.  And that, in spilling that box and seeing that

14   document amongst the thousands of pages of papers in that box,

15   Mr. Nauta must have understood that the boxes contained

16   classified documents.  And then when he moved them, he must

17   have understood that what he was doing was hiding documents

18   bearing classification markings.

19          And so what I think I should be permitted to do is sit

20   with Mr. Nauta and review the contents of those boxes,

21   including the documents as they existed in the box with the

22   classification marking, albeit, at this moment in time, with

23   the classified information redacted from it, so that I can

24   speak to him about:  Mr. Nauta, what did you understand?  What

25   should our defense at trial be?  Should we be cross-examining

1    FBI agents on the contents of these boxes?  Should you testify

2    about your understanding of the contents of those boxes?

3         The second concession the Special Counsel makes in

4    their previously ex-parte submission is that Mr. Nauta will be

5    entitled to the evidence that is admissible against him at

6    trial.  But we don't know what that is.  And that sort of

7    is -- it sort of brings back to light all of this discussion

8    about what redactions are going to be necessary.  The Special

9    Counsel has not told us, through Section 6, what the evidence

10   at trial is going to be.  But once we have that information, we

11   will be in a much better posture to discuss with Mr. Nauta what

12   we need from the Court vis-á-vis his access to the documents.

13   If they're simply going to --

14        THE COURT:  Are you saying that you think Section 6A

15   should come before Section 5?  I'm a little bit confused.

16        MR. WOODWARD:  So one thing I will observe about

17   Section 5 is that what Section 5 provides -- I understand

18   Special Counsel wants us to get at Section 5 now.  But if you

19   read the plain language of Section 5, it contemplates a

20   submission 30 days before trial.  The literal language of the

21   statute says:  When the Court orders, or, at the latest,

22   30 days before trial.  There is nothing -- to answer your

23   question, Your Honor, yes, there is nothing in Section 5 or

24   Section 6 that specifies the timeline.  Now --

25        THE COURT:  Right.  But it would make logical sense to

1    proceed through CIPA in a sequential way, just like the statute

2    is organized.

3            MR. WOODWARD:  Absolutely.  And I'm sure the Special

4    Counsel will advise you that that is how it is always done.

5    But we have a unique case in the circumstances.  We have a case

6    in which Mr. Nauta is not permitted to understand the content

7    of the documents.  At this juncture, they're asking us to

8    identify which documents we want to use at trial now, but only

9    later are they going to tell us which documents they're going

10   to use at trial.

11           So I'm tasked with predicting which documents they're

12   going to use at trial so that I can identify the evidence that

13   we intend to use --

14           THE COURT:  Are you aware of any format that has

15   permitted, like, a follow-up Section 5, post-disclosure of

16   government's Section 6?  In other words, some mechanism that

17   would permit the defense to then maybe supplement the

18   Section 5, having received what they see in the Section 6, if

19   that makes any sense?

20           MR. WOODWARD:  No, not in those precise terms.

21   Although Section 5 does contemplate supplemental submissions.

22   My concern here is that the Special Counsel is going to jump

23   all over that and say they could have and should have

24   identified records in March that they intended to use at trial.

25   They've had 5,300 pages or 6,300 pages of discovery now for

```
 1    months and months and months.  Why didn't Mr. Woodward identify

 2    Document ABC in his March submission?  Now, only after we have

 3    given him our trial exhibits, he is identifying Document ABC;

 4    it's too late.

 5         THE COURT:  I think that does speak to a broader point

 6    which is, you know, this proceeding, as CIPA hearings I think

 7    broadly go, evolve, and they present issues as they do, and

 8    it's hard to predict with precision exactly what will be

 9    necessary at each of those stages because much depends on court

10    rulings and physical review of documents.  So there needs to be

11    some -- some space in the schedule to allow for that

12    flexibility and to allow the Court to have enough time to sort

13    through those issues.  So I do take your point as a fair one on

14    that basis.

15         Anything else that you want to tell me about discovery

16    specifically, because that's where you started.

17         MR. WOODWARD:  Not that is unrelated to the motions to

18    compel.

19         THE COURT:  Okay.

20         MR. WOODWARD:  So we have --

21         THE COURT:  And just so I understand, as far as the

22    proposal that was offered, I see you have a September 9th; is

23    that correct?

24         MR. WOODWARD:  That is -- so, yes.  That is, we think,

25    the soonest that we could possibly be prepared for trial.
```

 1               To be sure, I don't think that we will be ready for

 2     trial.  I mean, it is conceivable that Your Honor will deny all

 3     of the 20 motions that are pending as soon as briefing is

 4     complete.  But, you know, we -- we think that you will

 5     rightfully take the time to consider those.

 6               You know, we -- you know, Mr. Bratt made the offhanded

 7     comment about the fact that I have noted a vacation in the

 8     scheduling order.  I don't do that lightly.  This is a case of

 9     national importance, but the reality is, is that we are all

10     people too.  I have four young children, 8, 6, 4, and 2.  We

11     made our childcare arrangements this summer around when that

12     vacation would be.  I'm not going to -- I don't --

13               THE COURT:  I understand that.  And there is a human

14     element to scheduling always, and I'm well aware of that.

15     So --

16               MR. WOODWARD:  So that's why we did that, Your Honor.

17               We think that, you know, as we have collaborated with

18     our defense counsel in putting forth hearing dates, we

19     just -- here we are.  I mean, it's -- we have been at this for

20     82 minutes and we are just talking about scheduling.  There are

21     some really complicated legal questions, some of which

22     Your Honor will be deciding for the first time.  And if this

23     case is as important as the Special Counsel says, then it

24     deserves the time and attention for the Court to rule on it in

25     a reasoned manner.  And so even if we lose every motion that

1   we've brought, and in criminal cases you often do, it takes

2   time to do that.  And so we don't think that rushing to

3   judgment here is appropriate.

4          THE COURT:  All right.  Thank you.

5          Anything from counsel for Mr. De Oliveira?

6          MR. IRVING:  No, Your Honor.  Thank you.

7          THE COURT:  Okay.  Then let me hear from Mr. Bove on

8   the motion to compel issue, specifically I would like for you

9   to isolate the particular degree of fact-finding that you think

10  is necessary, focusing in on the prosecution team question and

11  helping me better understand sort of the logical sequence for

12  addressing that motion.

13         MR. BOVE:  Yes, Judge.  Thank you.  Good morning.

14         Just at the outset, the reason that this prosecution

15  team motion is important is that it has a cascading effect on

16  the government's discovery obligations for the rest of the

17  case.  And Your Honor referenced case file reviews when you

18  were talking to Mr. Blanche.  And that is the correct frame of

19  reference.  Because when this case started, I wasn't here, but

20  I have read about it last summer, and the government said we

21  are going to go above and beyond Jencks.  We are certainly

22  going to comply with Giglio.  Brady, no question, obviously

23  we're going to do that.  And we're going to do it promptly,

24  immediately, day 1.

25         The only reason that they could stand up in court and

1    say that out loud was by defining the prosecution team in a

2    completely untenable and unlawful way.

3         They -- they have stepped back from those

4    representations and, really, never defended them since they

5    said them.  But --

6         THE COURT:  What do you mean the representation?  About

7    who was working on this case, that definition?

8         MR. BOVE:  The representations about compliance with

9    Jencks on day 1.

10        THE COURT:  Oh, okay.

11        MR. BOVE:  Because now we understand that, at the very

12   least, there are outstanding emails from agents they concede

13   are a part of the prosecution team.  And so that -- that is the

14   reason that we're so focused on that motion.  Because

15   independently of all of the other parts of the motion to

16   compel -- and I would like to talk about those if we have time

17   today -- what the government is saying is when it's time for us

18   to represent that we're in compliance with Jencks, we are going

19   to say we're compliance with Jencks with respect to the three

20   FBI agents from the Washington field office.

21        When they call a witness from, for example, NARA,

22   they're going to say we don't have a Jencks obligation with

23   respect to that witness; maybe they will turn some things over

24   voluntarily, but it's not our problem.  When they put on a

25   witness with respect to the NDI element, they're going to say

1    we don't have an obligation to go to the CIA and collect

2    exculpatory information about whether the classified

3    information is closely held; they're not a part of the

4    prosecution team.

5         And so that's why I say this prosecution team motion is

6    queued up because it impacts the rest of the case.

7         THE COURT:  Well, they say you're not entitled to a

8    hearing on the prosecution team question, that there is no

9    fact-finding to be done.  What is your response to that

10   argument?

11        MR. BOVE:  We have set forth direct -- more than

12   plausible arguments about the composition of the prosecution

13   team in this case, ranging from DOJ leadership, to FBI

14   leadership, to the Intelligence Community, to NARA, and to the

15   White House.  But it's not all talk.  We have attached exhibits

16   to these motions that lay out the factual basis for our theory.

17   And I think any litigation, Judge, and especially in a criminal

18   case with the consequences that this one could have, it is

19   incumbent on the government to do more than submit an unsworn

20   brief and tell Your Honor to take our word for it.  And that's

21   all they've done.

22        And you have referenced today the litigation relating

23   to the search warrant in Trump vs. United States and the things

24   that were said about the Intelligence Community in that

25   setting.  That's one immediate and, I think, obvious part of

1    the factual dispute between the parties about what happened on

2    the ground that supports President Trump's argument and the

3    defendants' argument that the IC is a part of the Intelligence

4    Community.   The answer to that is because the government said

5    so.

6          And they -- they speak vaguely about their

7    representations in those briefs.   But one of those briefs

8    included a declaration from Assistant Director Kohler of the

9    FBI on this topic.   So it's not even as if this was all talk

10   from DOJ lawyers defending that search warrant in 2022.   This

11   is evidentiary support from the back table that they're on the

12   team.

13         THE COURT:   Okay.   You could appreciate that the

14   request that you make with respect to how broad, with the many,

15   many agencies.

16         Taking a functional approach to the prosecution team on

17   a case-by-case basis, what would be your view about -- about a

18   prosecution team analysis that is just more tailored to the

19   actual people that, arguably, again, not knowing the full scope

20   of evidence, worked on these decisions at -- or at least

21   extensively collaborated with the Special Counsel and when.

22         MR. BOVE:   I think that that is the approach that is

23   required by the 11th Circuit in the 5th Circuit law that we

24   have cited.   And when we say, for example, that we believe NARA

25   is a part of the prosecution team, we're not suggesting or

1    intending to suggest that the Special Counsel's office needs to

2    go search the emails of NARA personnel who did not participate

3    in the collection of the 15 boxes.  But there are some NARA

4    personnel, including their general counsel, including the

5    former archivist who absolutely participated.  And, yes,

6    they're a part of the prosecution team.  And the government --

7         THE COURT:  How do you define just temporally -- when

8    does the analysis of investigation begin?

9         MR. BOVE:  As soon as -- as soon as the agency that

10   drove the referral contemplated criminal prosecution.  And in

11   this case that is September of 2021 when NARA sent the internal

12   email that is attached to our unclassified brief at Exhibit 5

13   that said they had informally contacted DOJ.  We have a factual

14   dispute about the substance of that contact.  Our position is

15   that that contact was the initial outreach that initiated

16   contemplation of criminal charges, and that that was totally

17   inappropriate under the standards and practices and history of

18   that agency, and it was done so in a completely biased and

19   unlawful way.

20        THE COURT:  And you submit that took place in what time

21   frame?

22        MR. BOVE:  It's a September 1st, 2021, email referring

23   to informal contact with DOJ; that's Exhibit 5 to our

24   unclassified brief.  And so that's our position.  There is, at

25   minimum, a factual dispute.  And the government has not

1    explained it.  They certainly haven't put forth evidence that

2    could put different content than we have ascribed to that

3    email.

4         THE COURT:  So if you were to conceive of a hearing in

5    your view -- again, these are issues for me to assess more

6    carefully -- how would you envision an evidentiary hearing on

7    the prosecution team question developing?

8         MR. BOVE:  We would offer into evidence at that hearing

9    the exhibits that we have attached to our brief, and then we

10   would elicit -- we -- first and foremost, because -- we have

11   raised colorable issues on the scope of the prosecution team.

12   It's the government's obligation in this case, it's the

13   government's ethical obligation to establish that they are in

14   compliance with their discovery obligations.  So at that

15   hearing the burden is on them.  But I would expect that, in

16   order to meet that burden --

17        THE COURT:  At this point have you received any

18   information that would counter or rebut the allegations or

19   arguments you make in the motion?

20        MR. BOVE:  It's all talk, Judge.  It's their brief.  I

21   can write a brief.  They can write a brief.  Ours has exhibits.

22   It has exhibits that are contemporaneous with what happened.

23   And they're not just from the discovery.  And I think that's an

24   important point.  We shouldn't have had to, but we did, go to

25   FOIA releases to dig to find these details that they have

1   hidden from President Trump about how this initiated, and that

2   it would be a part of our showing at the hearing.  But it would

3   require witness testimony.

4        THE COURT:  Quick question on the FOIA stuff.

5        Do you -- I attempted to figure out whether any of the

6   material that is subject to redaction is coming from the FOIA

7   documents.  I think the answer is no, but do you -- can you

8   clarify whether -- whether the Special Counsel is seeking

9   redaction or sealing of any items in the FOIA as far as you can

10  tell.

11       MR. BOVE:  I do not believe that they are seeking

12  redaction of exhibits that are FOIA released, but they are

13  seeking redaction of information from other exhibits that is

14  duplicative of information in FOIA releases such as the names

15  of NARA personnel who participated in --

16       THE COURT:  Well, we will talk about that in the

17  afternoon session.  It does get very detailed.

18       MR. BOVE:  Right.

19       THE COURT:  Okay.  So sticking on the subject of

20  factual disputes on the prosecution team question, is that

21  just -- so I understand your request, it would be a hearing on

22  the prosecution team question, a decision on that issue, and

23  then, depending upon what you do or do not receive following

24  case file reviews in accordance with that judicially enforced

25  definition, then a motion to compel the various topics, if you

1    still have those requests live?

2         MR. BOVE:  Our proposal is slightly different, Judge.

3    We have proposed a two-day hearing on March 13th and 14th to

4    address the motion -- the motion to compel in its entirety, and

5    our request for discovery on the selective and vindictive

6    prosecution issue.  And as I'm sure Your Honor can appreciate,

7    that selective prosecution issue is so important to this case

8    and to the country, as we stand here with President Trump in

9    the room in a setting where there are public findings that the

10   sitting president of the United States engaged in the same

11   conduct and will not face charges.  And so that is why, in our

12   schedule, our proposed schedule, we front loaded that issue.

13   Because it's going to take a lot of work to get to the truth of

14   that and we want it to come out as quickly as possible.

15        And so we proposed a two-day hearing, like I said,

16   motion to compel and selective prosecution.  We think that the

17   motions to compel raise 22 discrete issues.  We are seeking an

18   evidentiary hearing with respect to five of them.  On that list

19   of five is the prosecution team scope, which I do think is a

20   threshold question.

21        With respect to the remainder, for which we're not

22   seeking an evidentiary hearing -- when I say hearing what I

23   mean is oral argument on legal questions.  I'm going to -- I

24   think it's probably the third time.

25        Our position is that the government has the burden in

1    that hearing of demonstrating that they are in compliance with

2    their discovery obligations because we made a plausible showing

3    that they are not.

4            THE COURT:  But that's rooted again on the definition

5    of the prosecution team; correct?

6            MR. BOVE:  No, Your Honor.  It's -- in part, but it's

7    also rooted on the material -- materiality standard of

8    Rule 16(a)(1)(E) and on the government's affirmative search

9    obligations under Brady.  All of those things lead the

10   government to have the burden of proof at a hearing like that.

11   And so -- if they don't want to call witnesses at that hearing,

12   they're not going to meet their burden.  We may still want to

13   call witnesses to get the truth out and to make our points.

14           Here, if I could list out what I think are some of the

15   key factual disputes --

16           THE COURT:  Yes, please, that would be helpful.

17           MR. BOVE:  -- about the prosecution team.

18           There is the submissions in Trump vs. United States

19   that we've talked about, and, from an evidentiary perspective,

20   the Kohler declaration.  There --

21           THE COURT:  But those are -- those are a matter of

22   public records.  So what more needs to be done on that?

23           MR. BOVE:  What did Mr. Kohler mean by that?  Because

24   what I heard this morning is he didn't mean what he said, so I

25   think he has got to come here and tell us.

1          What else?  What are the -- is the nature of the access

2    to classified email systems and databases by members of the

3    Special Counsel's office, which I think has just manifest

4    relevance to the scope of the prosecution team.  And I'm

5    referring here to Classified Exhibit 7 and Classified Exhibit 8

6    to our supplement.

7          THE COURT:  I think what I have heard today, which was

8    helpful, was that there is a liaison, I guess a litigation

9    liaison, and maybe that's really just the point of contact, and

10   no -- and no additional access.

11         MR. BOVE:  On that point, Judge, we have a factual

12   dispute about the meetings referenced in the classified

13   briefing that happened -- three meetings in March of 2023,

14   attached as Exhibits 39, 40, and 16 to our classified

15   supplement.  And if you look at the participants in those

16   meetings, you will see a cast of characters that sounds very

17   different than what Mr. Bratt said to you this morning.

18         And there are notes to those reports that they refuse

19   to provide, there are conversations about strategy for how to

20   bring these charges in a way that the Intelligence Community is

21   comfortable with, that bear on prosecution team's scope.  And

22   so we would expect that at that hearing, if they're going to

23   meet their burden, they're going to call some witnesses to

24   explain what those reports really mean and how it could

25   possibly be the case that when you sit down with those agencies

1    and you say, How does this document look?  Could we bring a

2    charge based on this?  What would it have to look like to get

3    you guys comfortable?

4         Mr. Bratt referred to a redline this morning.  When

5    they sit down in the meeting to draw the redlines about how

6    this case will look, how does that not make them a part of the

7    prosecution team?  We're way past the -- any kind of burden, I

8    think, of putting forth evidence that suggests fact-finding is

9    appropriate.  We've asked them -- before we filed the motions

10   we said:  Can we at least see the notes to these meetings that

11   says there is additional details?  We would like to better

12   understand them.  Nope, not discoverable.  Not happening.

13   Cannot.

14        Well, now this is where we are, Judge.  We're in a

15   place where the Trump vs. United States filings reflect

16   extensive coordinating -- coordination, the reports in

17   discovery reflect that.  I just -- I do not think you will get

18   a straight answer to the question of:  What is the significance

19   of a meeting where the prosecutor consults the Intelligence

20   Community about whether and to what extent a document can be

21   used in a criminal prosecution?

22        THE COURT:  I think they would say, well, they're

23   victims and they're -- they're equity holders, but that's it.

24   They don't conduct any investigation.  And they're not acting

25   as an agent of any kind.

1          MR. BOVE:  We've briefed the victims' issue and it

2     falls apart.  But in a meeting where prosecutors sit with

3     agency personnel and talk about litigation strategy -- and that

4     is what it is, litigation strategy, about how to use one of

5     these documents in a prosecution, the agency personnel are much

6     more than victims and they're much more than, respectfully, the

7     FBI agents in the room.

8          THE COURT:  Okay.

9          MR. BOVE:  They are closer to prosecutors, and they're

10    having prosecutorial input on what the presentation of this

11    case would look like to the jury.  And that makes them --

12         THE COURT:  All right.  I think because of -- in the

13    interest of time -- and some of this is sort of getting into

14    the potential topic for a hearing.  So let me just have you run

15    through the additional factual disputes.  I think you said you

16    had maybe a list.  And then I would like to hear from the

17    Special Counsel on any additional issues related to scheduling

18    for purposes of the motion to compel.

19         MR. BOVE:  So I have talked about the September 1st,

20    2021, email and -- that references informal contact, NARA's

21    informal contact to DOJ; their September 15th, 2021, email

22    correspondence between NARA and the White House counsel.

23         And based on the timing of that outreach and the

24    content of it, that also raises questions about what are now

25    the three components, NARA, DOJ, White House counsel,

1    coordinating in a very -- at a very early time, both with

2    respect to any president who has left office from a NARA

3    standpoint, and relative to what happened in this case, early

4    coordination between those three parts of the government.  That

5    email is Unclassified Exhibit 6 that I'm referring to.

6         Moving forward.  January 2022, February 2022.  We've

7    provided a number of exhibits, unclassified, the numbers of

8    Exhibits 14 through 18, about the sequencing of the referral

9    and the participants in that process.  I truly do not

10   understand how, even today, the government is telling you that

11   that began in February of 2022 when it is obvious from the face

12   of the documents that it happened a month before.

13        And the significance of that -- it's relevant to the

14   prosecution team argument because it's NARA -- as distinct from

15   NARA-OIG -- NARA coordinating with the prosecutors to drum up a

16   criminal -- a paper to file with a criminal referral so that

17   all of this could look nice and tidy when they decided to

18   publicize it, and they could try and hide behind the NARA-OIG

19   referral to not let us get at what actually happened in this

20   case.

21        But it's also relevant, as we've laid out in our

22   motions, to the Franks suppression issue.  It's relevant to the

23   due process violation under the Supreme Court cases in Cordell

24   and La Salle.  So the issue around this referral, it touches on

25   a number of motions --

1          THE COURT:  Okay.  That's okay.  Any other factual

2     disputes?

3          MR. BOVE:  Yes, Judge.

4          One of the government's responses to our discovery

5     letters refers to a classification review process that appears

6     to have been separate and distinct from the one they've

7     disclosed in discovery.  We've raised this in our classified

8     briefing.  I think that's at Classified Exhibit 21, page 6.

9     And so I raise that as a factual dispute because the nature of

10    the classification reviews is critical to the analysis of

11    whether the IC was a part of the prosecution team.  I really

12    don't think that's a close question, but if they want to

13    continue to contest it, then they've got to be clear about what

14    happened during these reviews.

15         What we see from the discovery is a process run through

16    FBI Headquarters, not the Washington field office, not the

17    Miami field division, run through FBI Headquarters with the

18    Office of the Director of National Intelligence tasking

19    agencies.

20         So they want to talk about authority as the lodestar of

21    what "prosecution team" means.  The FBI and ODNI are sending

22    out taskings to these agencies.  And each time that the

23    government has sort of fixated on that word "authority" in this

24    litigation with respect to prosecution team scope, I do wonder

25    a little bit about whether the FBI agents who are on the

1    prosecution team, whether the -- whether even the FBI director

2    feels like Jack Smith has authority over him.  That falls

3    apart, Judge.  It doesn't make any sense.  I'm pretty sure that

4    the FBI director would say that they collaborate.  And they

5    concede that the FBI is a part of the prosecution team.

6         There is evidence bearing on prosecution team scope

7    that NARA participated in the classification review process.

8    This is our classified supplement at page 2, and the exhibit is

9    Classified Exhibit 5.

10        And then there is a recent -- a more recent development

11   that we were very surprised by at the last classified hearing.

12   There is a White House component -- I'm going to speak at a

13   high level here.  There is a White House component that the

14   government has taken the position is not a part of the

15   prosecution team.  That component was the subject of a memo

16   that is a part of the classified discovery; that's Classified

17   Exhibit 31.  And the import of that memo is that the component

18   did not participate in the classified -- the classification

19   reviews.

20        And so we were very surprised to be sitting in the SCIF

21   with Your Honor at the second day of the hearing and hear the

22   Special Counsel's office talk about communicating with that

23   very same component about classification reviews.  And that is

24   at the -- I'm talking about the February 13th, 2024, hearing,

25   page 32, line 9 of the transcript, and page 40 at lines 14 and

1    15.  And so there is certain -- most certainly a factual

2    dispute about that component's role in the initial

3    classification reviews and then whatever they're telling

4    Your Honor about classification reviews and ex-parte

5    proceedings today under the Section 4.

6              THE COURT:  Okay.

7              MR. BOVE:  And so that's a rundown.  And it does sort

8    of break out between their factual disputes requiring evidence

9    on the unclassified side of this case and on the -- on the IC

10   side.

11             THE COURT:  In terms of the hearing potentially on the

12   motion to compel prosecution team issue, do you -- how would

13   you -- seeing as it's going to potentially involve classified

14   information, what are your thoughts on just scheduling and

15   format?

16             MR. BOVE:  First and foremost, it's their burden if

17   Your Honor orders a hearing.  I do assume, though, that with

18   respect to the Intelligence Community's role on the prosecution

19   team, if they were going to contest that in any serious way

20   with something more than the unsworn briefs and representations

21   from the podium, that they've brought so far, that that would

22   have to happen in the SCIF.

23             THE COURT:  Okay.  All right.  Thank you.

24             Let me hear from Special Counsel on the issues for

25   scheduling as connected to the motion to compel.  And then we

1    will, as promised, break for about an hour and shift gears to

2    hear argument on the sealing/redaction issues.

3           Mr. Harbach or Mr. Bratt.

4           MR. BRATT:  So I will address the remaining scheduling

5    issues, Your Honor.  Actually, I forgot one thing.

6           And then, if I may just respond briefly to a couple of

7    the points that Mr. Blanche and Mr. Woodward made.  On the

8    scheduling issues, just on the unclassified side, one other

9    thing about the expert notice.  They have us filing our

10   supplemental expert notice before they file their expert

11   notice?  That doesn't seem to make a lot of sense.  Because

12   oftentimes the supplemental notice is responding to something

13   that is in their notice.  They also --

14          THE COURT:  Wait.  Can you point me specifically to

15   docket 357 and identify the inconsistency or issue?

16          MR. BRATT:  Yes, one moment, Your Honor.

17          On July 8th, they have the government filing, its

18   Rule 16, supplemental expert disclosures.  And they have theirs

19   on July 15th, I believe.  Yes, expert disclosures on July 15th.

20          THE COURT:  So what is the issue?

21          MR. BRATT:  The issue is usually the supplemental

22   expert notices are how our expert is going to be responding to

23   something their expert might be saying.  So it is not logical

24   to have our supplemental come before they file their notice.

25          THE COURT:  What if there were another spot for a, kind

1    of, final supplemental expert disclosure on the part of the

2    government?

3              MR. BRATT:  I mean, I guess, you know, we will --

4              THE COURT:  Okay.

5              MR. BRATT:  I mean, it's possible something could come

6    up in one of the hearings where we would say, all right, we

7    need to expand something the experts are going to say.  I don't

8    think so, but --

9              THE COURT:  Okay.

10             MR. BRATT:  Sure.

11             THE COURT:  All right.  Any other specific scheduling

12   issues?

13             MR. BRATT:  Yes.  The only other one is that they

14   request that there be supplemental filings on the questionnaire

15   on July 1st.  And, even if we take their August 12th date,

16   that's within the 10 weeks that the clerk's office would

17   have -- would need to get questionnaires out.  So the

18   discussions and the -- finalizing the questionnaires is going

19   to have to come, I think, well before July 1st.

20             THE COURT:  I was curious about that.  So how did you

21   come up with that 10-week -- did a member of your staff call

22   the clerk's office to figure out what the timeline was?

23             MR. BRATT:  Your Honor, you may recall in the motion

24   that we filed to ask for the parties doing the questionnaire,

25   we cited some of the minute entries and also some orders that

1    other judges in this district had done.  And at least a couple

2    of them say that the judges themselves had checked with the

3    clerk's office, and the clerk's office had told -- I forget

4    which other judge it was or judges -- that they need about

5    10 weeks.  It's in our pleading, Your Honor.

6            THE COURT:  Okay.  All right.

7            Now, I did want to raise -- there has been some

8    emphasis in the papers on the Justice Department Manual,

9    Chapter 9, 85.500.  I did want to give you an opportunity to

10   state your view on that.  I didn't see it, really, memorialized

11   in the papers thus far from your end.

12           MR. BRATT:  So, Your Honor, we are in full compliance

13   with the Justice Manual.  And we actually did a consult with

14   the public integrity section which oversees that portion of the

15   Justice Manual.  And that provision does not apply to cases

16   that have already been charged, that are being litigated.  It

17   doesn't apply to setting a trial date.  We are fully in

18   compliance.  We have two former chiefs of the Public Integrity

19   Section as part of the -- part of Special Counsel's office, and

20   we are -- would not do something that violated the -- the

21   Justice Manual.

22           THE COURT:  Okay.  So just so I understand, that

23   provision, as you have explained it to me, does not affect

24   already-indicted matters --

25           MR. BRATT:  Correct.

1          THE COURT:  -- is that what you are saying?

2          MR. BRATT:  The Department can control what we do

3    before a case is filed and tell us -- they can tell prosecutors

4    don't file an indictment or don't seek a complaint.  It's

5    called the 60-day rule that really is --

6          THE COURT:  But you see that 60-day rule as key to the

7    date of indictment, not the date of trial?

8          MR. BRATT:  It is where we have control of something

9    and we can bring a new case within whatever period of time

10   before an election.  It does not apply to cases that have

11   already been charged.

12         THE COURT:  Okay.  Thank you for explaining that

13   position.

14         Okay.  Anything further on scheduling?

15         MR. BRATT:  Not on scheduling, Your Honor.

16         THE COURT:  Okay.  Then let me hear from Mr. Harbach if

17   he has any --

18         MR. BRATT:  Could I just -- just respond briefly to a

19   couple of points that --

20         THE COURT:  Oh, yes.  Sorry.  I thought you were taking

21   the scheduling piece and he was doing more motion to compel

22   hearing, sort of, argument.

23         MR. BRATT:  Right.  But there were some things that

24   both Mr. Blanche and Mr. Woodward said that I would like to

25   give a response to.

1          THE COURT:  Okay, okay.

2          MR. BRATT:  One, Mr. Blanche was expressing some shock

3     over the fact that we wouldn't think -- that we wouldn't know

4     that we might want to litigate the Section 5.  I will just tell

5     the Court that I saw their notice in the election case, and it

6     was woefully inadequate.  I mean, it sought things that had not

7     even been produced in discovery.  It was noticing things that

8     were in -- somewhere in the Intelligence Community's realm.

9     And that's why our colleagues in that case filed their motion

10    to strike.

11         We have every expectation, knowing, again, Mr. Bove and

12    his experience, that the Court -- that they would -- in this

13    case they will file a sufficient -- a sufficient notice.  So we

14    don't expect there to be litigation.  We certainly don't want

15    there to be.

16         With respect to the issue of the search warrant that

17    Mr. Woodward mentioned -- so there were two iCloud search

18    warrants.  They are virtually identical.  We did produce one of

19    the iCloud search warrants.  We -- turned out, there was some

20    lapse.  The second one didn't.  But it's now being produced to

21    him.  And he already had the returns from that iCloud warrant.

22    So it is not -- it's not something that is new information.

23    It's just -- it's just the affidavit.

24         THE COURT:  Oh, okay.  So you're saying there were two

25    warrants for iCloud accounts --

1                MR. BRATT:  Correct.

2                THE COURT:  -- associated with Mr. Nauta?

3                MR. BRATT:  Correct.

4                THE COURT:  And the substance of the return has already

5       been provided to him?

6                MR. BRATT:  That is correct, yes.

7                THE COURT:  So all that is left is the affidavit?

8                MR. BRATT:  Correct.

9                And I won't take any time responding to what we need or

10      not need to prove about what Mr. Nauta knew was in the boxes.

11      I think Mr. Harbach covered that very extensively in the last

12      hearing.  But with respect to the boxes -- first of all,

13      Your Honor's order is just a few days old, but we can work with

14      Mr. Woodward to -- and Mr. Irving for a way -- for their

15      clients to see the --

16                THE COURT:  The markings.

17                MR. BRATT:  -- the markings on the headers and footers

18      of the documents, yes, we can do that.

19                But the other thing I should also say is, the boxes

20      have always been available for defense review.  That was in our

21      first discovery letter to all defendants.  Now, as I think I

22      explained, the actual classified documents were pulled out and

23      are stored elsewhere, but there are markers as to where they're

24      found.  All they need to do is reach out to us and we can

25      arrange a time for them to view the boxes.

1          Last, Your Honor, you know, both Mr. Blanche and

2    Mr. Woodward made essentially the same argument, which is that:

3    Well, August 12th is what we're proposing.  September 9th is

4    what we're proposing.  But, really, Your Honor, we're not going

5    to make that.  We're going to be asking for continued

6    extensions of time, adjournments of the trial date.  And

7    then --

8          THE COURT:  Well, I think what he was talking about was

9    the New York case.

10          MR. BRATT:  Again, what I heard, Your Honor --

11    obviously, you know, I rely -- but they were saying they don't

12    think they can even get to trial on the dates that they have

13    proposed.

14          And that then leads to the question:  Why did they

15    propose those dates?  Because what it really seems to mean is

16    that those were fake dates.  They were really almost bad faith

17    dates.  That if a trial is set in this case in August or, even

18    more, in September, and if the mandate returns to the D.C.

19    case, this case would then stand in the way of it.  But their

20    intention is to try to adjourn this case again.  And we just

21    need to bring this case to trial this summer.

22          THE COURT:  All right.  There is a lot of business

23    before the Court; that is, I think, without a doubt

24    unquestionable based on a glance at the docket and not to

25    include the many in camera temporarily-filed pretrial motions.

1    So I think that is evident.  And a lot of work remains to be

2    done in the pretrial phase of this case, which, of course,

3    needs to be done properly and correctly, as I'm sure everybody

4    in this room would agree.

5         So with that, anything further from the Special Counsel

6    on issues relating to scheduling/logistics?

7         And, Mr. Blanche, if you have a particular thing you

8    need to say, then I will give you a chance --

9         MR. BLANCHE:  Thank you, Your Honor.

10        THE COURT:  -- at the end.  But I do want to try to

11   wrap up at least as close to noon as possible.

12        MR. BRATT:  I will turn it over to Mr. Harbach now.

13        THE COURT:  Okay.

14        MR. HARBACH:  Thank you, Your Honor.

15        I'm going to -- I will try and be brief.  I would like

16   to start where Mr. Bove started.  When Your Honor asked him

17   about the reason for their request for having a hearing on the

18   scope of the prosecution team, what he said was it would have

19   cascading implications for the government's discovery

20   obligations.  That was the first thing he said.  That would be

21   true in any case, in any case in which, theoretically, the

22   government -- the scope of the prosecution team could be

23   expanded at the outset, of course, it's going to have cascading

24   obligations.  That's not a real reason.

25        Second, he said that there were outstanding materials,

1    in their view, that they haven't received yet or that the

2    government hasn't produced.  That's why there is a motion to

3    compel pending.  And that's why Your Honor is going to have to

4    resolve those questions.  That's not a real reason.  I have

5    told you what we think the real reason is and I won't reiterate

6    it here.

7        One more thing.  Mr. Bove expressed his concern that

8    when it came time, as we got closer to trial, that the

9    government might take the position that we don't have to

10    produce Jencks materials for a certain witness because that

11    witness's employing agency isn't part of the prosecution team,

12    or that we don't have a Jencks obligation as to those things.

13        We know exactly what our Jencks obligations are, and we

14    have complied with them and we will continue to do so.  This is

15    the key point.  They don't get to go behind that.  They don't

16    get to.  They don't get to go behind those decisions.  They

17    characterize it as:  Well, we just have to take the

18    government's word for it for any representations when it comes

19    to discovery.

20        But show me the case.  They haven't given you one.  We

21    haven't seen one.  We have Saab Moran.  We have Armstrong.

22    Show me the case that says they get an evidentiary hearing in

23    any circumstance about what the scope of the prosecution team

24    is.  We don't think there is such a case.  We see no authority

25    for it, and they certainly haven't cited one.

1          And when you take into account what I have said earlier

2    today, and won't reiterate, about the real reasons for this,

3    that's why -- that's why Armstrong is implicated, and that's

4    why we think this is just an end run about that.

5          To Your Honor's question about -- that you put to

6    Mr. Bove about, why would a more tailored approach be

7    appropriate here?  Our respectful response to that is, that is

8    no answer.  That is no answer to there being no authority for

9    having such a hearing in the first place.  Even were it

10   hypothetically limited, as I think maybe Your Honor was

11   suggesting to, you know, only a couple of agencies or something

12   like that.  There is no authority for the hearing that they

13   want.

14         THE COURT:  So you don't think there are any factual

15   disputes that are pertinent to deciding the prosecution team

16   question?

17         MR. HARBACH:  I'm going to get to that in just a

18   second.  It may -- it may please you to know that I am -- I

19   don't have a response for every single one that Mr. Bove made,

20   but I do want to make a few observations about those.  But

21   before I do that, another thing that came out of Mr. Bove's

22   mouth was that they have quote -- I think I'm quoting

23   now -- raised colorable issues.  That is nowhere close to the

24   standard for getting a hearing under the authorities that we've

25   cited to Your Honor.  And they cite no case saying that's the

1    standard for this type of hearing in these circumstances on the

2    factual disputes.

3         Let's talk about a few of those.  Many of them -- give

4    me just a second, please.

5         Okay.  I think the first point I want to make is that

6    with respect to several of these alleged factual issues -- when

7    Your Honor asked Mr. Bove to recite them, what he really

8    recited to you were just exhibits to their motion.  Look at

9    this email.  Look at this email.  Look at this email.

10        First, we produced the vast majority of these emails

11   that they're pointing to, to them, in discovery.  And I will

12   remind you, this is in a context of a motion to compel.  So the

13   evidence that they're trying to use to extract a hearing, to

14   say that we haven't complied with our discovery obligations,

15   involves stuff that we've already given them.

16        THE COURT:  Right.  But they read those materials, and

17   they draw inferences that maybe you don't --

18        MR. HARBACH:  Bingo.

19        THE COURT:  -- of course, right?

20        And then they view those materials as supporting their

21   definition of a broader prosecution team than the one you've

22   offered which is -- it does appear to be narrower than

23   potentially warranted.

24        MR. HARBACH:  I hear you.  And I hope I'm going to

25   answer this concern that Your Honor has.

1          When they say -- when they're saying things like with

2    respect to the Kohler declaration, what did he mean?  That's

3    not a fact issue.  That's an inference.  That's an argument.

4    But saying "I don't know what somebody meant" or saying "I

5    think so-and-so is lying," that doesn't -- that doesn't create

6    a fact issue.  What creates a fact issue is -- in this context

7    I don't want to overstate it -- but what you would need is,

8    even in the best of circumstances, even were there a case

9    authorizing a hearing like this on such a showing, at a minimum

10   you would have to point to evidence that demonstrates that such

11   and such is a lie.  And -- and speculation -- we make this

12   point in our brief, so I won't belabor it.  But drawing

13   inferences and stitching together argument does not a -- does

14   not a factual issue make.

15         Let me -- let me give you a couple of examples, and

16   then I think I'm going to sit down.

17         Let's talk about the March 2023 meetings.  Mr. Bove

18   said we have questions about that hearing.  That's not -- that

19   doesn't make a fact issue.  That you have questions about what

20   happened at the hearing, that you want to know more about what

21   happened at the hearing beyond the generous discovery that the

22   government has already given you about what happened there.

23   That doesn't mean there is a fact issue there.  That they think

24   that there -- that they would like there to be a different

25   interpretation or explanation for what happened at that meeting

1    doesn't mean there is a fact issue.

2        He mentioned redlines.  Let's get concrete for a

3    second.  He mentioned that there were redlines.  And he

4    expressed some exasperation that the fact that an agency like

5    the CIA or any of these other intelligence agencies would draw

6    redlines, meaning:  No, government, you can't use this under

7    any circumstances, I don't care what the case is.  He -- he

8    said -- maybe I misinterpreted it -- but he said he didn't

9    understand how that didn't -- that didn't mean that they're a

10   part of the prosecution team.  It's just the opposite.  It's

11   just the opposite.

12       When an agency like that says, "Forget it.  No way.  No

13   how.  You ain't using that," that's just the opposite.  That

14   means they're not part of the prosecution team.

15       Second --

16       THE COURT:  Even if they're working in a

17   negotiation-type capacity?

18       MR. HARBACH:  Okay.  Your Honor just mentioned

19   negotiation.  There was --

20       THE COURT:  I think I have heard that descriptor used

21   which is why I raised it.

22       MR. HARBACH:  I wasn't suggesting it was a

23   mischaracterization.  I'm just pointing out that there is --

24   there is that word.  There has also been the word, I think,

25   "collaboration" thrown around or "connection."

1          And, of course, in cases in which the government

2    is -- has prosecution -- sorry -- is conducting an

3    investigation, they have occasion to coordinate with, have

4    connections with --

5          THE COURT:  Right.

6          MR. HARBACH:  -- have meetings with.

7          And if you want to talk about, like, negotiation, I

8    don't know whether that's a fairer -- a fairer descriptor or

9    not, but let's assume it is.  We're not -- that's not the

10   standard.  That's not the standard of whether something is --

11   is -- some entity is within the scope of the prosecution team.

12         Take the example they gave about access to databases by

13   members of the Special Counsel's office.  That -- that's

14   plainly just a stalking horse for the type of Armstrong hearing

15   that we have been talking about all morning.

16         Here is another one.  The -- when the FBI -- when FBI

17   agents make taskings or requests to other agencies.  That

18   happens all the time.  Of course, the FBI has occasion to

19   interact with, you know, a victim agency or some other -- some

20   other portion of government.  That happens all the time.  That

21   doesn't -- that does not mean that those -- all those other

22   agencies within the FBI interacts are automatically part of the

23   prosecution team.

24         And then the last example, happily; the FBI director

25   example.  Now, this is just a classic bootstrapping argument.

1    I think their argument is that because the government says that

2    agents from the FBI Washington field office, office in this

3    district, are part of the case -- sorry -- part of the

4    prosecution team, that that means that -- that that is a

5    concession that they're under our control.  Okay.  It may well

6    be.

7         But to say that because we don't control Christopher

8    Ray means that that is the wrong test?  Or that that's

9    not -- that that somehow means that our representation about

10   why the FBI is part of the prosecution team is wrong or

11   disingenuous.  It doesn't make any sense at all.  It's a

12   bootstrapping argument.

13        I think I'm finished, but I think that I'm going to

14   finish where I started, which is they need to show the Court

15   the case.  They need to show the Court the case that entitles

16   them to an evidentiary hearing on this subject, writ large,

17   period.  But arguably, even more pertinently, under these

18   circumstances.  Because we don't -- we don't -- they have no

19   authority.  They have no evidence.  There shouldn't be a

20   hearing.  And the Court shouldn't allow them to circumvent the

21   strictures of Armstrong that they apparently think they can't

22   meet, which is why we're here.

23        THE COURT:  All right.  Thank you very much,

24   Mr. Harbach.

25        Mr. Blanche, I will give you two minutes if there is a

1    quick point you want to make, but then I will be recessing so

2    that we can have lunch, give the court personnel a break, and

3    I'm sure everybody in the gallery probably wants a comfort

4    break too.

5           MR. BLANCHE:  Just briefly on scheduling.

6           Your Honor asked the question about the DOJ policies

7    around interfering with actions during an election year.  The

8    relevant policy or the relevant -- the relevant language is

9    pretty plain that federal prosecutors and agents may never

10   select the timing of any action, including investigative steps,

11   criminal charges, or statements for the purpose of affecting an

12   election or to give an advantage or disadvantage to any

13   candidate.  I think the appropriate question that the Special

14   Counsel has not answered is whether, given the scheduling we're

15   talking about right now and the compact nature, if the Court

16   determines, as we think makes sense, that a trial could not

17   take place before the fall, whether the Special Counsel objects

18   to putting it after the election.  Meaning, certainly it's the

19   Court's decision, and nobody disputes that.  But you're going

20   to lean on -- you're going to ask the parties their view.  And

21   the real question that the Special Counsel has not answered is

22   whether they agree that it would be complete election

23   interference to have a trial anywhere near the time of this

24   election.

25           I mean, we think it already is, for the reasons I have

1   already stated; I'm not going to restate them.  But the

2   question is whether, once we get to September, later August,

3   October, is the Special Counsel willing at that point to say we

4   consent to a trial happening after the election?  That's the

5   real question, Your Honor.

6          THE COURT:  Okay.  On that note, we will take a

7   one-hour recess until 1:10.  Thank you, all.

8          (A recess was taken from 12:09 p.m. to 1:16 p.m.).

9          THE COURT:  Good afternoon.  Please be seated.

10  Everybody is present.

11         We will resume, as promised, with legal argument on the

12  various motions related to redactions and sealing.  We have, of

13  course, a pending motion for reconsideration filed by the

14  Office of the Special Counsel, along with various spinoff

15  motions that raise similar issues.

16         For the benefit of the Court, I granted

17  Ms. Dana McElroy of the law firm of Thomas & LoCicero the

18  opportunity to present oral argument on these interesting and

19  important questions that involve, of course, numerous pretrial

20  motions, including a motion to compel discovery and associated

21  attachments, and various substantive 12(b) motions on various

22  topics that reference or attach material obtained in discovery.

23         As some background, for those in the gallery and

24  listening in through the live feed, the Court previously ruled

25  on these issues in the context of a motion to compel discovery,

1    concluding at that point that the Special Counsel had not made

2    a sufficient showing to overcome the presumption of public

3    access afforded to criminal cases.  That order considered all

4    of the filings that had been submitted to the Court at that

5    point by both the Special Counsel, the defendants, and the

6    Press Coalition.  And, ultimately, that order generated the

7    pending motion for reconsideration that is now pending, which

8    asserts that the Court committed clear error in applying the

9    First Amendment compelling government interest standard.

10          So that's a preliminary note.  I wish to state that, of

11   course, the Court takes matters involving openness quite

12   seriously from all angles and, therefore, scheduled this

13   hearing to hear additional argument on the various interests

14   involved.

15          So with that broad overview, let me first hear from

16   counsel for the Amicus.  I understand Ms. McElroy is in the

17   courtroom.

18          Thank you.  Please make your way to the podium, ma'am.

19   I have allotted about 15 minutes for your presentation, and

20   then I will hear argument from the Special Counsel followed by

21   defense counsel.

22          MS. MCELROY:  Thank you, Your Honor.  We appreciate the

23   opportunity to speak today.

24          THE COURT:  I want to make sure everybody can hear you

25   properly, so just speak up if you can.  You don't have to

1    actually touch that whatsoever.  I ask that you do not.  It's

2    facing outward on purpose.  But just position yourself so that

3    you're heard.

4             MS. MCELROY:  Okay.  Thank you.  Can you hear me now?

5             THE COURT:  Yes.

6             MS. MCELROY:  Again, we appreciate the opportunity.

7    I'm here representing a group of media organizations that we

8    can refer to as the Press Coalition.  We have had a chance to

9    review all of the filings.  And I think the argument this

10   morning was very instructive.  As -- as an initial matter, I

11   think it's important -- and the Court --

12            THE COURT:  Okay.  I guess I'm hearing that maybe the

13   hearing is not as strong as we had hoped.

14            Let's do this.  We have some portable microphones.  Why

15   don't we give Ms. McElroy one of those.  You can attach it to

16   your lapel or use the handheld.

17            MS. MCELROY:  How is this?

18            Sorry.

19            THE COURT:  Oh, that's okay.

20            Ms. Cassisi, do you want to help Ms. McElroy or --

21            MS. MCELROY:  Does that work?  Is that better now?

22   Better now?

23            THE COURT:  I think so.

24            Mr. Blanche, can you hear Ms. McElroy?

25            Let's do a test.  Let's do a test.

```
 1              MR. BLANCHE:  Let's do a test.  Thank you.
 2              THE COURT:  Happy Friday.
 3              THE WITNESS:  Happy Friday.  Happy Friday.
 4         I guess I will have to hold it.
 5              MR. BLANCHE:  Maybe if it's just a little louder with
 6    the voice, it would be okay.  I would appreciate it.
 7              MS. MCELROY:  Okay.  I will try to speak up.
 8              MR. BLANCHE:  Okay.  Thank you.
 9              THE COURT:  Okay.  Thank you.
10              MS. MCELROY:  First, I would like to start by
11    acknowledging that the order under reconsideration, it is our
12    position, the Press Coalition, that the Court applied precisely
13    the correct standards.
14              In that regard, looking at the Press Enterprise cases,
15    for example, the public's confidence in the integrity of a
16    prosecution is one of the most vital values that underlies the
17    right to a public criminal trial.  Transparency about the
18    actions of our government, including the judiciary, is one of
19    the cornerstones of democracy.  And against that backdrop, what
20    we have in this case, as Your Honor well knows, is a former
21    president, public official, accused of wrongdoing in connection
22    with classified documents.  And we also have now a filing in
23    which the former president and the other defendants essentially
24    are calling into question alleged discovery violations in
25    connection with the scope of the prosecution team.
```

1          And so, really, although styled as a motion to compel,

2   I think what's developed through the record filings and the

3   argument this morning makes clear that this is, in fact, a

4   substantive motion that goes to the very heart of the issues in

5   this case to be decided.  It's not simply a discovery motion in

6   the way, I think, that the government would like to

7   characterize it and apply what I would consider to be a rather

8   ordinary standard in an extraordinary case.  That is not the

9   law.

10          Whether you apply the First Amendment right of access

11   to the records that are at issue here or you apply the common

12   law, Magistrate Judge Reinhardt has recognized that, in fact,

13   the tests are similar.  And this Court, from what we can tell

14   in the public facing documents, carefully reviewed the motion,

15   the attachments, and the other matters that are under seal --

16   and we don't know what those are -- applied the correct test, a

17   heightened scrutiny test that under any circumstance would be

18   appropriate in a prosecution of this magnitude.

19          I think it's especially clear the more that we heard

20   today, that the questions by the defendant go more to bigger

21   issues than just "we need some discovery that we're not

22   getting."  And none of the cases cited by the government really

23   address that issue where you have, essentially, a substantive

24   motion.

25          THE COURT:  So let's talk about that a little bit.

1    What is your definition of a judicial document?  And how do you

2    view the motion to compel that was filed in this case?  Does it

3    fall within the, quote, discovery motion category?  Or does it

4    fall within the substantive pretrial motion category requiring

5    judicial resolution?

6           Again, this is bound up in the Chicago Tribune case

7    which is a civil case.  So I'm interested in your views on the

8    extent to which Chicago Tribune should or is extendible to the

9    criminal context.

10          MS. MCELROY:  I think Chicago Tribune is clear that

11   it's a -- you know, it concerned a civil case.  It has been,

12   the idea being, that it recognized a First Amendment right of

13   access to documents in a criminal case.  But carved out, the

14   situation there was post- -- you know, post-lawsuit, the press

15   came in and tried to intervene, tried to get to documents there

16   that were considered to be trade secrets.  And the Court was

17   especially, I thought, you know, elucidating that -- let me

18   just find the case.  I apologize.  It said -- it said there

19   that the constitutional right of access has a more limited

20   application in the civil context than it does in the criminal,

21   of course.  Materials gathered as a result of the civil

22   discovery process do not fall within that scope.

23          And that's really not what we're talking about here.

24   What I believe that we're talking about and what many of the

25   cases that we cite point to, is truly a judicial document.  And

1   judicial documents are defined in many, many ways, but one way

2   that it's defined in the Al -- Shahi case is used, if -- if the

3   issues are being used to determine a litigant's legal rights.

4   And I think that's what we heard this morning from defendants.

5   There -- they're alleging and pointing to facts, all of which

6   we cannot see, that this prosecution is vindictive, politically

7   motivated, and that there is some sense that the scope of the

8   prosecution hasn't been broadly enough defined.  Those -- those

9   issues go to the very heart of the case.  And they also, of

10  course, as I understand it, go to what discovery could possibly

11  be -- be due.  But they essentially go to how wide is the net

12  cast, and, also, then getting to motivation.  And that

13  unquestionably, I believe, is -- qualifies as a judicial

14  document; the motion itself, any filings that are associated

15  with it.  Because it's not simply, we need some more discovery.

16  It is -- it is actually raising allegations that are central to

17  the case in the end.

18          THE COURT:  Are you aware of any cases specifically in

19  the 11th Circuit that address this issue in the criminal

20  context specifically?

21          MS. MCELROY:  Judicial documents?

22          THE COURT:  Yes.  Or documents filed in the course of

23  pretrial proceedings.

24          MS. MCELROY:  There are many cases that talk about

25  documents filed in the course of pretrial proceedings.  Let me

1    see.  In the 11th Circuit --

2          Well, I first also wanted to point out that under

3    U.S. vs. Marivel cited by the defendants, it's up to the

4    Court's discretion, in any event.  And the Court has a right to

5    exercise that discretion.

6          In Newman vs. Graddick is one case in which there was

7    a -- a right attached to documents there that were -- that was

8    a civil case.  But a right attached to what was considered to

9    be a quasi criminal set of documents.

10         I can't, off the top of my head, come up with more

11   documents.  We have, of course, had portions in this case of

12   the search warrants that have been ruled to be by

13   Judge Reinhardt should be disclosed under a First Amendment

14   and/or common law analysis that's heightened from a good cause

15   standard.

16         So in this case in particular and cases that we cited

17   in our motion, Judge Reinhardt recognizes the right of the

18   press and public, and that's really what we're here to

19   understand.  And I think what this motion raises is, How does

20   this process work?  What is a scope of prosecution?

21   What -- what does that mean in the -- in the context of

22   prosecuting a former president for -- for allegedly withholding

23   or taking classified documents?

24         And so the educational function alone, in addition

25   to -- to the check and balance system of being able to see and

1    understand the workings, but the educational function, which is

2    a part of the actual good cause test under the common law

3    right.

4         THE COURT:  So just to clarify your position

5    for -- from what I understand, the Special Counsel's view is

6    that, because the motion to compel attaches materials obtained

7    in discovery, that it is a discovery motion; that it,

8    therefore, receives only the good cause standard, despite this

9    being a criminal case.  And I would like to hear from you what

10   is your view on the application of the good cause standard

11   alone in this case for purposes of the motions to compel?  And

12   then do you distinguish that at all for the pretrial motions

13   that are explicitly filed under Rule 12(b), such as the motion

14   to suppress, motion to dismiss indictment, et cetera?

15        MS. MCELROY:  I think that the -- the good cause

16   standard they have referenced, the government has referenced,

17   is sort of a watered-down version of what the courts have

18   defined good cause to mean in the context of access to judicial

19   records under the Nixon case, which is very much aligned with

20   the First Amendment.  So it's -- it's a little

21   bit -- it's -- it's like good cause, but not just when you're

22   in a civil case or, you know, this is good enough.  You have to

23   balance the public's rights of transparency against a

24   compelling or serious issue on the other side.

25        And I'm not saying that they couldn't do that.  But the

1    good cause, as they are reading it, is far too narrow when you

2    look at the constitutional framework and even the common law

3    framework of access to judicial records filed in criminal

4    cases.

5            And I do believe that those same standards are

6    definitely going to apply to any motions to suppress, any

7    pre -- any other pretrial motions.  And that's sort of -- I

8    think the parties today used the word "cascading."  Well, once

9    you start to cascade sealing, that you then have then closures

10   when you're talking about the records that -- that the public

11   is seeking access to.  So you end up with a situation where you

12   have so much secrecy that it's very, very difficult to -- for

13   the public to understand what's happening and to really judge

14   the process.

15           I think the allegations here are serious.  And whether

16   or not they're true, nobody knows just yet.  But the ideas

17   expressed in the filings by Former President Trump I think are

18   so critical to -- to the understanding of what ultimately is at

19   stake in the prosecution of a public official which, of course,

20   a former president, to my knowledge, is unprecedented.  And

21   that's why I believe strongly that, given the line, the

22   unbroken line of cases from the U.S. Supreme Court and the

23   cases in the 11th Circuit, I don't think there is any doubt

24   that the 11th Circuit would apply a First Amendment standard

25   or, at a minimum, the heightened standard of good cause under

1    the common law right.

2           THE COURT:  Why do you say that?

3           MS. MCELROY:  Well, you can read the cases that -- that

4    are even cited by the government.  The cases that are cited by

5    the government --

6           THE COURT:  Well, I think they would say the Chicago

7    Tribune, although a civil case, references discovery motions

8    and so we should apply that in the criminal context, even

9    though that decision expressly makes a point about

10   distinguishing the two contexts.

11          MS. MCELROY:  Right.  And in the -- it really does.

12   And it actually talks about the -- the Chicago Tribune case

13   does talk about and gives nod to the idea that, you know, there

14   is a common law right of access and you have to distinguish

15   between things that are properly considered public or judicial

16   records and those that are not.  That's the distinction that

17   I'm trying to make here.  Even in that case they recognized,

18   the Court did, that we're not talking about garden variety

19   discovery materials that are filed in connection with a motion.

20   We're talking about a motion, although styled a motion to

21   compel, and all of the offshoot responses that really, again,

22   get at central due process concerns that are really the type of

23   records.  And then, you know, concurrent after that, access to

24   proceedings, should the Court set hearings on these issues.

25          THE COURT:  Just to make sure, can everybody hear

1    Ms. McElroy or is the audio -- okay.  Please proceed.

2         MS. MCELROY:  In the Nixon case it's a good example of

3    where the 11th Circuit is cited by the government where the

4    11th Circuit basically did not find a common law right.  And

5    there it was a situation where the -- the government had asked

6    for an in camera inspection, much like you would see under, I

7    guess, it's Rule 16.  And -- and the Court had found that

8    the -- after doing an in camera inspection, that it did

9    not -- the transcript did not need to be turned over to the

10   defendant under Brady.  And when the defendant appealed his

11   conviction, the Court said that was not the type of record that

12   would fall within the First Amendment right of access.  And you

13   can see why.  They likened it more to a discovery -- a real

14   true discovery-type record, as in the Anderson case, which was

15   a Rule 12 bill of particulars.

16        We're really talking again, and I can't make the

17   distinction enough, while it's true -- and I would concede that

18   discovery materials are classically not covered or not within

19   the scope, particularly unfiled discovery materials, but this

20   is a different scenario.  This is a scenario where the

21   defendant has come to the Court, brought forth discovery

22   materials, alleging serious issues with the prosecution that I

23   believe the Court will need to decide to determine the scope of

24   discovery, and also the defendants' due process rights.

25        And in that scenario we're really looking at a true

1    substantive motion, a judicial document to which a

2    First Amendment and/or again common law right of access

3    applies.  And the Court, I think, has been mindful to review

4    the material and to review it with an eye towards what the

5    government is saying in terms of compelling or competing

6    interests.  And we would -- we would say that that is the

7    Court's function as a gatekeeper to continue to do that.

8           But in that regard, the government does have a burden

9    to show that what will -- what they fear will happen will

10   actually happen.  And it's more than speculation and it's more

11   than argument.  I think they argued this morning the exact

12   opposite in terms of what -- you know, you can't use argument

13   as facts.  And I think that that's -- that's the situation

14   we're in on a very important issue that will become -- it

15   appears, anyway, to the press -- become a bigger issue in the

16   case.

17          THE COURT:  Okay.  Does it make any difference to you

18   that the defendants are not seeking closure of these materials?

19   Because occasionally in the case law you have a defendant who

20   is arguing in favor of closure to protect his or her right to a

21   fair trial.  We don't have that here.  Does that impact your

22   inquiry at all?

23          MS. MCELROY:  I think it really does because you're

24   not -- you don't have competing constitutional interests where

25   you typically would.  There are lots of case law concerning a

1    defendant's Sixth Amendment right to a fair trial.  But there

2    is also case law, which I'm sure the parties will discuss,

3    where the defendant also has a right to a public trial.

4          And it definitely -- definitely the situation we are

5    normally in is where a defendant seeks to shield information

6    that that defendant believes will jeopardize its right to a

7    fair trial, or their -- his or her right to a fair trial.  We

8    don't have that same kind of competing constitutional interest

9    in the balancing that the Court must do.  Or, not that there

10   aren't serious concerns; there are.  But I think it's the

11   Court's function to review the materials that we can't see,

12   and -- and make judgments and determinations, and that's really

13   within your discretion to do so.

14         THE COURT:  All right.  I think this might be my last

15   question for you and then I will ask that you wrap up.

16         Of course, I'm going to hear from Mr. Harbach or

17   Mr. Bratt on these issues, but as far as I can tell, their

18   position is that if the document references material obtained

19   in discovery in a criminal case, it never gets the benefit of

20   First Amendment protection because the information at issue

21   derives from discovery.

22         Are you aware of any case that applies that view?

23         MS. MCELROY:  Well --

24         THE COURT:  In other words -- and perhaps I was

25   confusing in my articulation.  But I think the argument is that

1    the second it references discovery material, even if in a

2    criminal case and no matter what type of motion it is, could be

3    the most substantive motion in play, it will not get the

4    First Amendment protection because it implicates discovery

5    material.

6         MS. MCELROY:  Absolutely not.  And, in fact, the Court

7    in your order cited to the Time case, and we've cited to other

8    cases in our papers.  There is not such a case that says that

9    because it could never be the case that just because it's

10   discovery material when it's brought to the Court -- for

11   example, in a motion to suppress.  That -- that's a public

12   proceeding, typically, and a public filing.  So it's just at

13   what point in the process?

14        If you're just pouring discovery material into the

15   record in order for it to become public, that's a different

16   situation.  That's not the situation that we have here.  And no

17   case says ipso facto discovery in and of itself means that you

18   never get access to it.  It really is attached to:  What is the

19   bigger picture in what the Court is doing?  What is the

20   judicial labor all about in this case?

21        And the judicial labor by the Court, of course, is

22   going to be to decide, as much -- as much as I can understand

23   it, the scope of the prosecution, and also to what extent that

24   would impact the defendant's rights, both in terms of due

25   process rights, for any, also, motion to dismiss the

1    indictment, any motions to suppress, any Brady material, all of

2    the substantive things that will be discussed.  It's not simply

3    discovery material.

4         But, no, absolutely not.  Discovery does -- you do

5    factor in what type of a document it is, and you can see that

6    in the 11th Circuit cases.  But the discovery that they're

7    talking about in those cases can be easily distinguished from

8    what we're talking about here.  And so it's a red herring to

9    me.

10         THE COURT:  Again, the Anderson case, I think it was

11    a -- a 404(b) notice, or something along those lines, a notice

12    advising the defendant of the government's intent to use

13    evidence of a prior conviction, not a motion itself.

14         Am I correct in that understanding?

15         MS. MCELROY:  Yes.

16         THE COURT:  All right.  Well, thank you.  If you don't

17    have anything further, Ms. McElroy, I will then turn to hear

18    from Mr. Harbach or Mr. Bratt.

19         MS. MCELROY:  Thank you, Your Honor.

20         MR. HARBACH:  Just a second, Judge, please.

21         THE COURT:  Take your time.

22         MR. HARBACH:  Good afternoon, Your Honor.

23         THE COURT:  I do want to make a quick point.  Do you

24    plan on showing any exhibits or materials?

25         MR. HARBACH:  No, ma'am.

1          THE COURT:  Okay.  If you were, then, of course, you

2     would let me know in advance because that wouldn't transmit to

3     the overflow room.

4          MR. HARBACH:  Yes, Your Honor.

5          I hope it's helpful to outline for Your Honor at a high

6     level what my presentation is going to cover today.  First, I'm

7     going to -- I will make just two preliminary points.  Then I'm

8     going to turn to the substantive legal standards that are

9     applicable to various combinations of discovery and motion

10    types.  Then, the third thing is, I would like to revisit where

11    we are procedurally in terms of what the parties have done and

12    where we're -- where we are.  And then, finally, application of

13    those legal principles that I have articulated to -- at the

14    beginning the categories that the Court laid out in its agenda

15    order for today.  But at that point, if Your Honor wants to get

16    more specific, I will -- I will be guided by Your Honor.

17         And I will also say that I will ask for just a little

18    patience.  I assure the Court that I will get to and address

19    completely and in detail the question Your Honor was posing to

20    the Press Coalition about why a motion to compel in our view is

21    not a judicial document.  I promise I will address that, but I

22    just need a little time to get there.

23         Okay.  So the two preliminary points that I would like

24    to make are, first, why we're here.  Your Honor articulated

25    very clearly its interest in assuring the openness of these

1    proceedings in accordance with the Constitution and the law.

2    The government shares that -- shares that position, obviously.

3    Another position that we both share is having a dual

4    responsibility to protect witnesses and to ensure the integrity

5    of the criminal process.

6            Part of that responsibility in any criminal case is

7    maintaining the confidentiality of witnesses' identities for

8    both reasons, both safety and the integrity of the proceeding.

9    But in this criminal case, it is especially important because

10   of all that has already happened elsewhere.  There has been so

11   much harassment, intimidation, threats to witnesses, threats to

12   court staff, law enforcement, connected to any case in which

13   Mr. Trump is a defendant.  In the government's view, this is

14   not some hypothetical concern as they suggested in their filing

15   last night.  It is a real concern, and they know it.  That is

16   why we spend as much time as we have briefing this and doing

17   the tedious scrubbing of all of the exhibits and line by line

18   on all of the motions that they have filed.

19           THE COURT:  Well, of course, that was after -- after

20   not doing so initially --

21           MR. HARBACH:  Yes.

22           THE COURT:  -- to be frank.

23           MR. HARBACH:  And you've presaged my next preliminary

24   point.  Why didn't we make more of a showing initially?  Let's

25   just say it.

1          THE COURT:  And in order to challenge any of the legal

2     standards being put forth, so -- and that's to say nothing of

3     the local rule requirement that would have required a

4     particularized showing.  So even at the most basic level, the

5     showing was deficient.

6          MR. HARBACH:  Yes, Your Honor.  I understand that, that

7     message.  And I would just like to make a few observations

8     about that.  And it's not by way of -- not by way of fighting

9     you on that, but it is by way of explanation.

10          As -- as we explained in our papers, we relied, perhaps

11     overly so, in our understanding of the import of the protective

12     order in this case.  It's the entire purpose of a protective

13     order.  The defendants make no mention of a protective order

14     anywhere in their papers.  This is a protective order that was

15     entered by a judge of this court.  And, by the way, it was

16     unopposed.  And it was entered for the reason that all

17     protective orders are entered, to protect nonpublic information

18     relating to witnesses, other third parties, grand jury

19     exhibits, grand jury transcripts, and recordings of witness

20     interviews.  That litany of stuff is what was in our motion for

21     the protective order.

22          So please don't misunderstand the point here.

23     The -- had the government to do it over again, we -- we would

24     have done what we later understood to be Your Honor's

25     expectations and satisfied them in a more fulsome manner.

1          But the two observations on that are, one, we were, as

2     I say, fully cognizant of the protective order.  So it had

3     nothing to do with the importance of witness security being

4     anything other than the forefront of our minds.  And, Number 2,

5     despite whatever noise there may be out there, I know

6     Your Honor knows this, but I'm going to say it anyway, at no

7     point did we mean any disrespect to the Court, either in what

8     we filed initially or in filing our motion for reconsideration.

9          We -- we want to get this right, and we want to put the

10    Court in the best possible position to get this right.  We

11    recognize that we could have done a better job of that

12    initially, and so we are owning that.

13         So those are the two preliminary points I wanted to

14    make.

15         If we could turn to the substantive legal standards

16    now.  And I'm -- I'm going to walk through them.  I think

17    starting with what is probably non-controversial and then maybe

18    getting to some of the stickier ones.

19         I think we can all agree, and I believe I heard the

20    lawyer for the Press Coalition say, that for discovery

21    materials in general, putting aside their potential attachment

22    to a motion, that there is no First Amendment right of access

23    to those, and there is no common law right of access to those.

24    That's straight from Chicago Tribune and many other cases

25    citing in our briefing.

1          THE COURT:  I don't think anybody is disputing that,

2    nor did the Court's order insinuate as much.  I think we're all

3    on the same page there.

4          MR. HARBACH:  Okay.  But an important point to remember

5    that is part of the factual record here is, this isn't just

6    discovery, it's discovery that was produced under a protective

7    order.  A protective order that, again, was supported by good

8    cause and that the defendants did not oppose.

9          THE COURT:  Well, sir, I take that point.  But a

10   protective order, at the end of the day, is a contract between

11   parties.  It doesn't bind the Court.  It doesn't supplant

12   binding legal principles that have to be applied.  It doesn't,

13   for example, obviate the need to make the showing under the

14   local rule.  And so we're still in a position of -- and I get

15   your point on the reliance issue with the protective order, but

16   just looking at the legal principles now -- and let's get to

17   the heart of it -- understanding there is no freestanding right

18   to discovery just floating around, I completely agree with

19   that.

20         What happens when that material is made part of and is

21   relied upon by defendants in pretrial motions?  And pretrial

22   motions, of course, have different flavors.  On the one hand,

23   we have the motion to compel discovery, and then, on the other

24   hand, we have a number of other substantive motions.

25         MR. HARBACH:  Okay.  So I -- a couple of things in

1    response.

2         First, because Your Honor mentioned it a moment ago, I

3    think it might be helpful to discussing the civil/criminal

4    distinction.

5         THE COURT:  Yes, please, that would be helpful.

6         MR. HARBACH:  Okay.  So to that point, we pointed out

7    in our papers two cases, both of which have been mentioned this

8    morning; both Nickens and Anderson.  Anderson, which predated

9    Chicago Tribune, and Nickens with postdate -- which postdated

10   Chicago Tribune.

11        Now, bear with me one second.

12        THE COURT:  Are you going to talk about Nickens first?

13        MR. HARBACH:  Well, Nickens, I was going to

14   mention -- I mean, I recognize it as a possible limited utility

15   where we are, but it is a criminal case.

16        THE COURT:  Why?  Because it's unpublished?  Or --

17        MR. HARBACH:  No, no, no.  No, I just mean because it

18   doesn't get to the motion point.  It just says discovery.  So

19   on the issue of whether discovery in general is subject to

20   either a First Amendment or a common law right of access even

21   in a criminal case, we think Nickens answers that.

22        Furthermore, Anderson, which is also a criminal case --

23   this case was decided right after Press Enterprise.  And so --

24   and the conclusion of Anderson in this criminal case is that

25   discovery is not -- does not qualify for a First Amendment

1    right of access.  And they apply the same history and logic

2    test that the Supreme Court applied in Press Enterprise.  This

3    is on Anderson at page 1441.

4         THE COURT:  What specifically was the document at issue

5    in Anderson?

6         MR. HARBACH:  I think Your Honor may have been right

7    about it being a bill of particulars and its -- its notice.

8    That's right.

9         THE COURT:  So why isn't that --

10        MR. HARBACH:  Or a 404(b), excuse me.

11        THE COURT:  -- distinguishable?  That's very different.

12   That's a notice.  It's not a substantive motion.  It's not put

13   before the Court for judicial resolution of any substantive

14   legal claim unless it then is converted into a motion for

15   introduction of 404(b) evidence, perhaps.  But on its own, the

16   notice functions like that freestanding discovery principle

17   that I think we agree about.

18        MR. HARBACH:  If what Your Honor means to say is that,

19   in the Court's view, the distinction in Anderson

20   between -- whether -- whether what type of document it is isn't

21   really controlling, if it's -- if it's discovery -- again, I'm

22   not talking about what it's attached to yet.

23        THE COURT:  Uh-huh.

24        MR. HARBACH:  But if it's discovery, it's -- it is not

25   subject to a First Amendment right of -- right of access.

1          THE COURT:  I think -- I think the trouble that I have

2     with your view is that it seems to say that no matter what the

3     discovery is used in, if it's discovery, then in a criminal

4     case, the First Amendment qualified right of access wouldn't

5     apply.  That seems to be the logical import of your position,

6     as far as I can tell.  And I haven't seen any case law to

7     support that.

8          MR. HARBACH:  Right.  And our position is not that

9     because any motion that any discovery gets attached to

10    automatically means it's insulated from any disclosure.  It's

11    not our position.  It's not our position.

12         THE COURT:  Okay.

13         MR. HARBACH:  But I think it does -- it does matter

14    what type of motion it is.  In other words, whether it is a

15    judicial motion is the -- the terminology that we have been

16    using to this point.  If it is -- if it is a regular, mainline

17    discovery motion, like a motion to compel, and the government's

18    position is that by virtue of its function as part of the

19    discovery process and it being limited in that way, that it

20    also -- that that motion and its attachments are also not

21    subject to a First Amendment -- let's put it this way -- at

22    best, maybe a common law right of access.

23         And this -- this is the -- the source of the Court's

24    error, in the government's view.  For the reasons laid out in

25    our brief, the -- the Court applying the heightened

1    First Amendment -- Your Honor understands -- so that is why our

2    view is that when --

3            THE COURT:  I guess that's what I would like to

4    understand a bit more.  As far as I can tell, there is

5    no -- you rely heavily on Chicago Tribune.  It's a civil case.

6    Your position, essentially, requires extending that to the

7    criminal context.

8            MR. HARBACH:  Correct.

9            THE COURT:  Okay.

10           MR. HARBACH:  But we argue -- I'm sorry to interrupt,

11   Your Honor.

12           THE COURT:  No, please.

13           MR. HARBACH:  I was just going to say that it's the

14   reasons that I explained a moment ago, cases like Nickens and

15   Anderson that make it plain, in our view, that that same

16   principle applies in the criminal context.  Period.

17           THE COURT:  What do you make of the footnote in

18   Anderson that seems to sort of carve out Rule 12(b) motions?

19   And I can't find my copy of Anderson for some reason.

20           MR. HARBACH:  That's okay, Your Honor.  I know the

21   footnote you're talking about.

22           Well, first of all, I don't -- our reading of that is

23   that it is not -- it is not quite the same carve-out that the

24   defense reads it as.  It's footnote 2 on page 1440, Your Honor.

25           THE COURT:  So they're talking there, trying to

1    distinguish the notice.  Again, it's a 404(b) notice.

2         MR. HARBACH:  Uh-huh.

3         THE COURT:  And the Court says, quote, the defendant's

4    motion for notice of similar acts evidence cannot be regarded

5    properly as a Rule 12 motion requesting discovery under Rule 16

6    because similar acts evidence doesn't fall within the

7    categories of information such as documents and tangible

8    objects that the government must furnish upon the defendant's

9    request.

10        So --

11        MR. HARBACH:  I just -- I note the distinction.  I

12   just -- I think it is -- it is reading too much into that

13   footnote to -- to say the conclusion that the defendants draw

14   from it.  That, as a result, a First Amendment right of access

15   would apply.  We just don't read it that way.  And so --

16        THE COURT:  Would you acknowledge that other circuit

17   courts have applied the First Amendment in pretrial

18   proceedings, including at least one circuit, the 4th Circuit,

19   in the context of a motion to compel?  I know you --

20        MR. HARBACH:  You are talking about --

21        THE COURT:  -- you recognized that it's maybe not the

22   most fulsome explanation of what is going on in that opinion,

23   but I think we would all agree that it's at least involving a

24   motion to compel, among other motions.

25        MR. HARBACH:  You're talking about the 4th Circuit's

1    case in In Re: Time?

2              THE COURT:  Yes.

3              MR. HARBACH:  Yes, Your Honor.  It plainly says what it

4    says.  Our position on that is that because it is phrased in

5    that way and in that manner and in an undifferentiated manner,

6    that -- that the 4th -- that one should not extend the

7    4th Circuit's holding there to reach the documents that

8    underlie the discovery motion.

9              THE COURT:  So how do you -- in the criminal context,

10   how do you create a principled distinction?  It just seems

11   like -- so we would say on the one end, if it's -- if it's a

12   discovery motion, we treat it a certain way.  We apply only the

13   common law right of access which requires balancing of

14   interests, maybe even something lesser, according to the

15   Special Counsel.  But then when we shift over to pretrial

16   motions, we apply a different standard --

17             MR. HARBACH:  Uh-huh.

18             THE COURT:  -- in the First Amendment context because

19   it's a criminal case.  Of course, the 9th Circuit seems to

20   think there would be, really, no meaningful way of drawing

21   those distinctions, and we would just, sort of, treat these as

22   pretrial motions in pretrial proceedings which are, of course,

23   pivotal and essential to criminal cases.

24             So these are complicated issues.  But I think one thing

25   is clear.  There is no clear decision from the 11th Circuit

1   that would warrant an assessment that the Court's order was

2   clearly erroneous.

3          MR. HARBACH:  Okay.  Agree with you, it's a complicated

4   area of the law.  I will not purport to have surveyed the state

5   of the law in all of the circuits.  But where we part company

6   with the Court is the last point, obviously.

7          It is our view that Chicago Tribune, in saying what it

8   says, which is explicit not only about the discovery material,

9   but also -- even when -- even when it's filed with discovery

10  motions.  We all know the language that we're relying on.  And

11  what I have been trying to explain to Your Honor this morning

12  is that there is -- in light of the cases like Nickens and

13  Anderson, there is no reason to believe it shouldn't -- it

14  shouldn't -- there is no reason to believe that the situation

15  would be any different in a criminal case.

16         We acknowledge --

17         THE COURT:  I think that's debatable.  The Press

18  Coalition seems to think there is a much higher likelihood that

19  the 11th Circuit would apply a First Amendment standard.

20         But can we now get to the nuts and bolts?  So I would

21  like to talk about some of the categories of information that

22  you're concerned about.  Obviously, I'm open to reasonable

23  measures to protect witness safety.  Clearly, I think the

24  safety and well-being of witnesses has to be -- has to be

25  considered in top of mind.  But, of course, it has to be

1    accompanied by a sufficient showing.

2         And what I'm concerned about is the sort of blanket

3    request that you make in your papers that any witness name or

4    statement warrants redaction from public view.  Perhaps you

5    have an argument that is compelling on the name, and maybe

6    there is a way to do some kind of anonymization list.  But then

7    you start to get into substantive statements, and the case law

8    really starts to fall apart to suggest that substantive

9    statements of witnesses whose statements are made part of

10   substantive pretrial motions all of a sudden get off the table.

11        MR. HARBACH:  Yes.  I -- I'm going to hesitate right

12   now to make too many broad-brush pronouncements about the law,

13   but I think -- I think it is helpful to examine application of

14   these principles here.  And I think that I would like to make

15   one more comment about our position on the law.  It will be

16   brief.  I just wanted to make sure Your Honor understands.

17        Our position is that for discovery attached to

18   dispositive Rule 12 motions, for example, our position is a

19   little different.  Chicago Tribune makes quite clear that there

20   is a qualified common law right of access and that it attaches

21   to those materials.  So I --

22        THE COURT:  But you don't even agree that on that it's

23   First Amendment?

24        MR. HARBACH:  That's right.

25        THE COURT:  Okay.  Even though it's a criminal case?

1          MR. HARBACH:  Correct.

2          THE COURT:  And even though other circuits have applied

3     the First Amendment to substantive pretrial motions?

4          MR. HARBACH:  When you say "applied the

5     First Amendment," you mean --

6          THE COURT:  Yes.  Required a compelling government

7     interest showing narrowly tailored.

8          MR. HARBACH:  Okay.  So I think that the question about

9     whether the common law right of access attaches or the

10    First Amendment right of access attaches, I think Chicago

11    Tribune answers that question definitively in the 11th Circuit.

12         THE COURT:  Even for criminal cases?

13         MR. HARBACH:  Yes.  But please -- please recall what

14    the -- what the result of our position is.  We are agreeing

15    that a common law right of access applies --

16         THE COURT:  But what -- I guess I don't understand why

17    the resistance to applying the First Amendment?  This is, after

18    all, a criminal case.  You have Press Enterprises.  You have

19    other cases that emphasize the fact that criminal cases require

20    and warrant a more elevated showing.  I don't see that really

21    engaged with in your papers, and it's almost like we start at

22    that civil proposition and never get higher.

23         MR. HARBACH:  Well, it -- well, if by "that civil

24    proposition," you mean Chicago Tribune, that's what -- that's

25    what we're relying on.  That's right.  Because that's what

1    the -- that's what the opinion says.

2            THE COURT:  Right.  But it clearly draws a distinction

3    as between criminal and civil.  And I'm not sure that you're --

4            MR. HARBACH:  Well -- I'm sorry, Your Honor.  You're

5    not sure that we're -

6            THE COURT:  That you're quite acknowledging the fact

7    that the Chicago Tribune is a civil case.  So then it really

8    gets us to the Press Enterprises point, and then we talk about

9    logic and experience.  And then we ask ourselves, well, what

10   place, what process are we in?  And it can go on and on.  It's

11   very academic.

12           But what I want to understand is, why the

13   First Amendment, in your view, doesn't apply whatsoever as long

14   as the information cited in the substantive motion derives from

15   discovery, which I think is your position.

16           MR. HARBACH:  That is correct.  And -- and I -- I'm not

17   sure what else I can say other than we think that the holding

18   in Chicago Tribune controls, and that its being a civil case is

19   not enough to change that result.

20           THE COURT:  Okay.  I understand your point.

21           MR. HARBACH:  Now, as I said earlier, before we -- I do

22   want to talk about the Court's categories, but I also would

23   like to -- because there have been so many motions and exhibits

24   and whatnot flying around, I want to try and do a little

25   organizing, if that's okay with Your Honor.

1          So let's talk about what's happened to this point.

2     With respect to both types of motions, that is to say, the

3     motions to compel which we allege are discovery motions and the

4     Rule 12 motions which we agree are substantive in some sense.

5          With respect to both of those motions, the government

6     has proposed, requested, and requested from Your Honor, limited

7     redaction and sealing.  We have not taken the position

8     (indicating) it's all off limits, forget about it.  Even

9     for -- for straight discovery motions like their motions to

10    compel, in our view it would have been fully defensible for us

11    to have taken the position that none of those exhibits should

12    be public in any portion whatsoever.  But we did not do that.

13         For the Rule 12 motions, we think it would have been

14    fully defensible for us to have taken the position that because

15    the discovery was produced under a lawful protective order,

16    that good cause was necessarily found, justifying sealing all

17    of those exhibits, but we didn't do that.  We didn't take that

18    position either.  In both instances we have requested and tried

19    to talk to the defense about very -- in our view very limited

20    redactions.  And to the extent that the right of access applies

21    to the motions themselves, we have requested really limited

22    redactions in those that, in our view, are amply justified by

23    good cause.

24         THE COURT:  On the -- on the limited nature of your

25    redactions, is it the case that you're seeking the redaction of

1    any substantive statement made by a, quote, potential

2    government witness?  And I have a couple of questions here.

3            Number 1, I know there was a witness list of some kind

4    that was exchanged as part of the bond proceedings in this

5    case.  How many people are on the list of potential government

6    witnesses?

7            MR. HARBACH:  I want to make sure I understand

8    Your Honor's question.  Are you asking how many people were on

9    that list at the beginning of the case?

10           THE COURT:  Well, I hear a lot of potential government

11   witnesses, and I want to know are we talking about 200?  100?

12   What's the likelihood that these people even testify?  It's

13   hard to tell.

14           MR. HARBACH:  Can I have just two seconds on that.

15           THE COURT:  Yes.  Yes.

16           MR. HARBACH:  Your Honor, I think -- I can offer an

17   answer that might be somewhat helpful.  My colleague reminds me

18   that that initial list that we supplied in connection with

19   the --

20           THE COURT:  The no contact order.

21           MR. HARBACH:  Thank you, Your Honor.  Was about -- was

22   80-some people.

23           THE COURT:  Yes.  I recall the number 87.

24           MR. HARBACH:  Something like that.

25           THE COURT:  Okay.

1      MR. HARBACH:  Our -- our estimate at this point is that

2  the number of government witnesses at trial will be something

3  in the neighborhood of 40 or so.

4      THE COURT:  Okay.

5      MR. HARBACH:  But for these motions, the ones the

6  defendants are talking about, for the -- for the instances

7  where we have claimed or requested redactions because they're

8  witness statements, I mean, that number is probably more like

9  25, 20 -- 25 or so.

10     THE COURT:  So a majority of the likely witnesses are

11  the subject of these redaction issues, give or take some.

12     Okay.  I at least have a better sense of the numbers.

13     MR. HARBACH:  Yes.

14     THE COURT:  Now, as far as the redactions, if some

15  materials were obtained by defendants through FOIA requests and

16  then others from discovery, I tried to figure out if any of the

17  proposed redactions were being made on the FOIA materials, and

18  I wanted your answer on that.

19     MR. HARBACH:  Zero.

20     THE COURT:  Okay.  That's what I thought.

21     Okay.  Is there any crossover in terms of the names,

22  some of the names appearing in the FOIA versus the discovery?

23     MR. HARBACH:  There might be.  But -- but even if there

24  were, that wouldn't be a reason to unseal it in the discovery,

25  in our view.  In other words, something that's

1    public -- publicly accessible via FOIA and obtainable, one

2    might say, oh, well, that person's name is already out there.

3    Well, in some sense, yes, that person's name is out there, but

4    that person's name isn't out there as a government witness.

5    There is a big difference.  So that's why we don't -- that

6    crossover, we don't think --

7          THE COURT:  And that wouldn't, in fact, feature at all

8    in a potential balancing analysis, assuming you were doing

9    common law.  I mean, it just seems like maybe that would come

10   into play.

11         MR. HARBACH:  It might.  But I think that also might

12   depend on the category of stuff we're talking about.

13         THE COURT:  Okay.

14         MR. HARBACH:  So I would like to make -- I think it is

15   also reiterating the second half of where we are procedurally.

16   I have talked about what the government has done.  I want to

17   talk about -- a little bit about the position the defense has

18   taken.

19         They -- and Mr. Bratt alluded to this briefly.  They

20   have attached numerous gratuitous, irrelevant, and unnecessary

21   exhibits to both their motions to compel and their Rule 12

22   motions.

23         I will direct -- I will shorthand this by directing the

24   Court to pages 19 and 20 of our motion for reconsideration for

25   examples of what I'm talking about.  I'm not going to go

1    through them in detail here, but those are the examples.

2        To summarize, these are exhibits that are sensitive

3    information that is utterly irrelevant to what they cite the

4    exhibit for.  And to boot, part of -- the part --

5        THE COURT:  Well, I know that that's your view, and you

6    might be right, but I still need to decide is this a judicial

7    document or not?  Apply the correct standard.

8        And then these issues of, well, it's not really

9    important to their argument, or I think it's unrelated, or I

10   think it's frivolous, sort of gets you down a rabbit hole that

11   is -- is secondary to the first question which is, is this a

12   judicial document?

13       MR. HARBACH:  I -- I -- I suppose that's in the eye of

14   the beholder.  But in the government's view, it is an important

15   characteristic of the posture we're in that, Number 1, they

16   have done this and, Number 2, they have refused to entertain

17   anything short of wholesale production of every single exhibit

18   that they have except for PII.  That's the -- that's the second

19   thing.  And then the third thing is -- and this one is a little

20   puzzling to me -- but they have repeatedly purported to take no

21   position on any particular document.

22       They have -- they have said that as recently, I think,

23   as last night -- that they take no position on any particular

24   document.

25       THE COURT:  I don't know.  Perhaps, it has something to

1    do with the burden.  Who has the burden to make the showing?

2           MR. HARBACH:  To make what showing?

3           THE COURT:  That sealing is warranted and that we

4    should deviate from the presumption of openness.

5           MR. HARBACH:  Well, I think it depends whether a common

6    law right of access or a First Amendment right of access

7    attaches.

8           THE COURT:  Either way, whichever standard applies, the

9    party seeking the sealing or the redaction has to make the

10   showing.  You would agree with that; right?

11          MR. HARBACH:  Well, I actually think it depends.

12          THE COURT:  Okay.

13          MR. HARBACH:  But I'm going to put meat on those bones,

14   I promise.

15          The last point I want to reiterate is that I don't know

16   why they haven't taken any position on any particular motion.

17   Maybe they can't articulate one on any particular document that

18   is sufficiently tailored to why the document was put in there;

19   I don't know.  But I do know they've had the opportunity to.

20   Because we've had multiple rounds of conferrals.  We have been

21   careful.  We have been thorough.  We have made good faith

22   efforts.  We have sent them some of the same red box-type

23   documents that we have sent the Court.

24          And they -- like I said a minute ago, zero order [sic],

25   refuse to apply any redactions beyond PII.  So they've filed

1    exhibits that are gratuitously bloated.  They take no position

2    on any given document.  They refuse to agree to any redactions

3    at all besides social security numbers and email addresses.

4    And they know that publications of witness' names and

5    statements endanger them.  This is not about Donald Trump

6    vindicating the First Amendment.  It's just not.  And we have

7    to call it out for what it is.

8            So why do I say that?  Because that informs our

9    position in the degree of skepticism we have when they attach a

10   document that includes 17 pages, like, for example, the

11   document that -- that I think lists out all of the names of the

12   FBI agents who were at the Mar-a-Lago search and they cite that

13   for the proposition in their brief -- it's -- its proposition

14   in brief and then cite.  And the proposition in the brief is

15   agents were communicating on the day of the search.  And then

16   they cite this exhibit.  It's gratuitous.  And so I think when

17   Your Honor is rightly trying to --

18           THE COURT:  Let me ask you, let's say we did something

19   like a half measure which is, okay, let's use a legend of

20   anonymous names.  Let's say there is somebody from NARA in the

21   documents, "NARA official Number 1."  And then we have a little

22   chart and then we substitute all of the names.  And then we put

23   those in there as placeholders and then maybe we have a

24   hearing, we use those anonymous descriptors.  These are the

25   sorts of mechanical challenges that are presented by these

1    matters.  So I'm trying to manage this.

2         MR. HARBACH:  I know.  I know you are.  I know you are.

3         THE COURT:  So what do you have to say about

4    potentially that as an option?

5         MR. HARBACH:  I hate to sound like a broken record.

6    And I'm sorry, but it really depends.  And so if it would suit

7    Your Honor, I think one of the -- one of the categories that

8    you -- sorry -- the list of categories in the agenda that you

9    wanted us to address included names of witnesses, substances of

10   their statements, grand jury stuff, search warrant

11   applications, and then a miscellaneous category.

12        Would it be helpful for me to talk about those?

13        THE COURT:  Yes, it would be.

14        MR. HARBACH:  Okay.  So let's -- I mean, I don't think

15   I need to say a whole lot more about the names of potential

16   government witnesses.  So I'm going to move on to the

17   substantive statements, the -- what we -- what we have --

18        THE COURT:  Before you move on from that category, I

19   just want to understand it.  Again, absolutely no minimization

20   of potential threats, but -- is there any additional factual

21   information that you can provide the Court to substantiate

22   this -- this concern that publication of names will actually

23   lead to intimidation?  Of course, we have intimidation on the

24   one hand.  We have discomfort, perhaps, on the other end of the

25   spectrum.  Obviously, we live in an age of the internet.

1   And -- and at some point, you know, it may not be possible to

2   entirely shield everybody from some degree of public exposure

3   on the internet.

4        And so I think it's quite challenging to try to come up

5   with reasonable solutions.  Mindful, of course, things of

6   physical threats, concrete, reasonably specific intimidation

7   concerns, anything that is expressed.  I went through all the

8   cases that you cited, to talk about where courts have done

9   closure.  And all of those really came on the heels of

10  specific, express concerns by witnesses that had actually

11  received intimidation from either a co-defendant or something

12  along those lines.

13       And what I haven't really seen is this blanket request

14  that anybody on the list, their names, is off the table, and

15  then to even go further and say none of their statements, even

16  if substantively used in the motions.

17       So I think your position to some extent is somewhat

18  unprecedented.  And I have also gone through, trying to find

19  other high profile cases to see if measures like this, this

20  blanket request for no names, no statements, has ever really

21  happened, even in Mafia cases and -- and in other political

22  cases with those sorts of ramifications.  Again, it's been hard

23  to find those examples.  I have really tried to be as

24  comprehensive in the analysis here.  And I'm -- I'm happy to

25  hear more argument from your end on that, if you have any.

1           MR. HARBACH:  I do, Your Honor.

2           On the names, the -- in terms of the -- not only the

3     record that we have, but the record that is required by the

4     case law, and the cases that talk about the judges -- the

5     judicial branch's obligation to protect people and what -- and

6     what must be shown.

7           You mentioned that you've looked through our cases.

8     There -- in our brief there are cases cited at -- and by our

9     brief, I mean our motion for reconsideration.  There are cases

10    cited at pages 14 and 15 in our brief, essentially making the

11    point that courts imposing protections about witness names and

12    the like are -- are -- are and should be prophylactic.  It

13    shouldn't take somebody to get threatened or get injured in

14    order for a court to endeavor to protect identities of

15    witnesses.

16          THE COURT:  I think you're right about that; you don't

17    need -- you don't need a materialized threat, but you also need

18    a sufficient showing, and I think that's the challenge here, is

19    what is enough, what is -- what is -- in the Addison case, for

20    example, you had an individual who expressed concerns directly

21    to the Court in a two defendant case.  There are others that we

22    have gone through, Addison.

23          MR. HARBACH:  So there is Doe.

24          The fact that the government did not identify specific

25    threats on the record did not make the risk entirely

1    speculative.  And direct threats are not a strict condition

2    precedent to a District Court's granting of a closure motion.

3            THE COURT:  I agree with that.

4            MR. HARBACH:  So in terms of the -- the showing that we

5    have to make, I'm -- I'm not going to -- I'm not going to get

6    on a soapbox right here about all of the -- all that's in our

7    papers.  There is plenty in our papers about -- that

8    have -- that has happened in any case in which --

9            THE COURT:  In this proceeding, have there been any

10   allegations of intimidation by defendants?

11           MR. HARBACH:  No.

12           THE COURT:  Okay.

13           MR. HARBACH:  But that is far from the --

14           THE COURT:  Excuse me.  Are there any witnesses in this

15   case who are on the list who have come to the government with

16   expressed concerns about their personal safety?

17           MR. HARBACH:  We have made reference to them in our

18   filings, including the sealed one --

19           THE COURT:  Okay.  Okay.

20           MR. HARBACH:  -- that we tried to keep ex-parte.

21           THE COURT:  Right.  And, of course, I know you want to

22   do things ex-parte, and I acknowledge that, but that's also a

23   very high standard.  And, again, there really was no basis to

24   keep that ex-parte.  I know you take a different view.

25           MR. HARBACH:  We do.

1          THE COURT:  Okay.  Okay.

2          So -- all right.  So let's talk about the actual

3   categories of information.  I think we've talked about names.

4   I understand your view there.

5          MR. HARBACH:  Statements.  You have mentioned that a

6   few times.

7          THE COURT:  Yes.

8          MR. HARBACH:  And, you know, the defense has chided us

9   in their materials for arguing that -- or allegedly taking the

10  position that the materials subject to the Jencks Act,

11  you know, they use words like "automatically."  Should

12  automatically be protected or like it's some label that we can

13  slap on anything and it carries no meaning.  That's wrong.

14         As we say in our papers, the Jencks Act is frequently

15  talked about as requiring disclosure of witness statements

16  after they testify at trial.  But it is, in the first instance,

17  a prohibition.  No statement or report in the possession of the

18  United States, which was made by a government witness or

19  prospective government witness, shall be the subject of

20  subpoena, discovery, or inspection until said witness has

21  testified on direct examination.

22         Why?  As we sit -- one of the few things we did say in

23  our opening paper on this, was why that is.  And the Supreme

24  Court has answered that question.  It is to prevent defendants

25  from rummaging through confidential information containing

1   matters of public interest, safety, welfare, and national

2   security.  That's Goldberg vs. United States.

3        So the other thing that is important to remember about

4   the Jencks Act is that it prohibits compelled production of

5   these documents, these witness statements to the defense.  Not

6   the public.  The defense.  They're not even producible to the

7   defense until after a witness actually testifies at trial.

8   There is a reason for that.  They're important.  They're not

9   just -- they're just not any -- they're not just statements.

10  There is a reason the Jencks Act is in -- is in place.

11       In other words, once the witness is -- the witness

12  testifies at trial, and the witness's identity is unequivocally

13  out in the open, then the witness's testimony and prior

14  statements to the government are too.  So you're quite right in

15  what you said a few minutes ago, Your Honor, that there is

16  going to come a time.  There is going to come a time when

17  witness identities are going to be out there, but now is not

18  it.

19       THE COURT:  Do you have an idea when the government

20  would be willing to publish its government witness list?

21       MR. HARBACH:  Well -- excuse me.

22       THE COURT:  Ordinarily that happens, you know, within a

23  reasonable period of time prior to trial.

24       MR. HARBACH:  Yes, it happens within a reasonable

25  amount of time prior to trial.  I'm tempted to say depending on

1    when we were ordered to, we would have to assess that.

2           THE COURT:  Right.  Okay.

3           MR. HARBACH:  I mean it's -- I'm just being honest.

4           THE COURT:  No.  No.  No.  That's fair.

5           Okay.  So as far as the statements of the witnesses and

6    the Jencks Act argument, are you aware of any authority,

7    though, that says that if Jencks material is, again, implicated

8    in a substantive pretrial motion, that even though it qualifies

9    as Jencks, we redact it from public view?

10          MR. HARBACH:  It's -- it's not just Jencks.  It's

11   Jencks -- and all of the Jencks material was produced subject

12   to the protective order.

13          And give me one second.  There was a point I want to

14   make here.

15          THE COURT:  Of course, the protective order, though,

16   contained a provision that would allow the defendants to seek

17   court authorization, so there is a mechanism in there, and as I

18   said before, it doesn't supplant standard legal principles.

19          So I was unable to find any cases that say that by

20   virtue of being Jencks material -- even if made part of a

21   pretrial motion -- it then warrants redaction.

22          MR. HARBACH:  Well, you wouldn't.  It wouldn't be by

23   virtue of it just being -- just by virtue of --

24          THE COURT:  Or a witness statement, let's say, in a

25   pretrial substantive motion.

1         MR. HARBACH:  Well, the protective order intervenes,

2    first of all.  And if -- if -- this was part of what resulted

3    us being in this position in the first place.

4         Give me one second.

5         You know, a protective order entered for good cause, in

6    the government's view, means that there -- and we have made

7    this point in our papers, so I will be brief.  There has to be

8    some showing from them.  There has to be something.  The -- the

9    provision that Your Honor is talking about presupposes that.

10   It doesn't -- it shouldn't operate -- and many cases say

11   this -- that all -- if you're a defendant and you want to make

12   something public, all you have to do is attach it to a motion

13   and say, well, it's the government's burden now.  That

14   wouldn't -- that would gut the purpose -- that would gut the

15   protective order in the first instance, that would eviscerate

16   it.

17        So, again, the portion of the protective order that

18   contemplates the process that Your Honor is talking about

19   contemplates some showing.  We have conferred with them

20   repeatedly.  They say nothing.  They say nothing.  So all we

21   have to go on about why they are attaching something is what it

22   says in the brief.  And then all they say in any conferral is

23   PII.  We're trying.

24        THE COURT:  No, and I understand.  And I have

25   appreciated the red box; those are very helpful.  So I have

1    been able to go through those exhibits.

2            MR. HARBACH:  So if -- okay.  I -- I would like to move

3    on, if it's all right with Your Honor.

4            THE COURT:  Yes.  It is 2:23.  I want to make sure I

5    give the other side a chance to weigh in on these issues.

6            MR. HARBACH:  Understood.

7            Let's talk about grand jury materials just for a

8    minute.  Your Honor's order listed transcripts, exhibits,

9    subpoenas, and orders from expired grand jury investigations.

10   So I think it's useful to break that down.

11           The first three categories, grand jury transcripts,

12   exhibits, and subpoenas, all of which are in play here, all of

13   that has been produced as Jencks material or in discovery

14   subject to the protective order.

15           So best case scenario, if you're looking for a

16   disclosure, is that the standard that applies to discovery

17   under a protective order should apply.  In other words, one

18   could take the view that that's grand jury material subject to

19   Rule 6(e) and, therefore, that's the end of it.

20           My point is that, well, this is grand jury material

21   that has been produced because we have an obligation to produce

22   it.  We have an obligation to produce it because it's Jencks

23   material.

24           And so how should the Court treat that?  The Court

25   should treat that as material produced -- as discovery produced

1    in connection with the protective order.

2         THE COURT:  So the 6(e) concerns are no longer active

3    on that material; is that correct?

4         MR. HARBACH:  I didn't say they were no longer active.

5    What I mean to say is that the best argument for disclosure

6    still -- still runs up against the discovery attached -- excuse

7    me -- the discovery subject to a protective order to which

8    there is no common law or First Amendment right of access.

9    That's my point.  It's not that 6(e) doesn't apply.  It's that

10   we need -- we need not rely on 6(e) to keep it out of the

11   public eye because it's been produced pursuant to a protective

12   order.

13        The last category of stuff orders from an expired grand

14   jury investigation.  Now, the defense has requested some of

15   these from the government.  And we've produced them.  So they

16   have them.  We have produced them, again, subject to a

17   protective order.

18        THE COURT:  Uh-huh.

19        MR. HARBACH:  But there is an additional complication

20   with these; namely, that they're sealed.  In other words --

21        THE COURT:  So right now are there any proceedings

22   underway to petition the D.C. court for a release of these

23   materials?  Because I think -- what I have seen in the papers

24   thus far, there is anticipated challenges to some of those

25   orders, and so they're going to become part of this judicial

1    proceeding in some form.  And I'm trying to map out this -- any

2    lingering 6(e) issues.

3         MR. HARBACH:  Yes and yes.  Yes, we see the same things

4    you do about some of those materials being relevant to

5    litigation that the defense intends to launch down here.  And,

6    yes, we are in the process of trying to get those things

7    unsealed with redactions, so that they can be -- so that they

8    can be released, and released publicly.

9         THE COURT:  And that's on the bucket of orders, court

10   orders.

11        MR. HARBACH:  Well, orders or materials -- I will call

12   them ancillary grand jury proceedings up there in Washington.

13   There have been a few.  I just mean --

14        THE COURT:  Do you know how long it's going to take to

15   get answers on that stuff?

16        MR. HARBACH:  I -- less than a week, I would say.

17        THE COURT:  Mr. Bratt is --

18        MR. BRATT:  If I may speak from here, Your Honor.

19        THE COURT:  Yes.

20        MR. BRATT:  There is -- in conjunction, particularly

21   with one of the motions -- what they styled the motion -- what

22   the Trump defendant styled the motion for relief, we have begun

23   that process.  Because there are other parties with interests

24   in that, we have to get them apprised as well.  But once we get

25   something to Chief Judge Boasberg, he usually rules pretty

1    quickly.

2              THE COURT:  Okay.  Okay.

3              MR. HARBACH:  So it shouldn't take very long,

4    Your Honor.

5              So that covers the grand jury materials.

6              Would you like to talk briefly about search warrant

7    applications?

8              THE COURT:  Am I correct that the grand jury

9    investigations are, at this point, at least the D.C. one, has

10   that expired?

11             MR. HARBACH:  There is no current grand jury

12   investigation underway in Washington related to this case.

13             THE COURT:  Okay.

14             MR. HARBACH:  But I hasten to add that that doesn't

15   mean that 6(e)'s protections terminate either.

16             THE COURT:  What happens if the defendants want to use

17   that material in this judicial proceeding?  Then the proper

18   route would be to petition the Court in D.C. for use of those

19   materials.

20             MR. HARBACH:  The defense has already requested some of

21   those materials.  And the government has volunteered to

22   intervene to try and obtain them.

23             THE COURT:  Okay.

24             MR. HARBACH:  And further, to obtain versions from the

25   Court that could be publicly releasable.  We're working on

1    that.  That's where the redactions come in.

2         THE COURT:  Okay.  Any other categories in the

3    prehearing order that you would like to address?

4         MR. HARBACH:  Search warrant applications briefly.

5         THE COURT:  Okay.

6         MR. HARBACH:  I promise --

7         THE COURT:  No, there is a lot.

8         MR. HARBACH:  There is a lot.  It's true.

9         The search warrant applications we have produced to the

10   defendants in unredacted form.  The search warrant applications

11   have been produced to the defense in unredacted form.  They've

12   got all of them.  That's the first point.

13        On the question of public access to those --

14        THE COURT:  Uh-huh.

15        MR. HARBACH:  -- several of them have been attached to

16   their Rule 12 motions as exhibits.

17        THE COURT:  Uh-huh.

18        MR. HARBACH:  Unsurprisingly, since some of them are

19   motions to suppress.  And --

20        THE COURT:  And that's not uncommon.

21        MR. HARBACH:  That's right.  And all that we're

22   suggesting -- and this is what we have suggested to them -- is

23   that, time out, there is a judge in the Southern District of

24   Florida who has already entertained arguments about the

25   openness of these search warrant applications.  And in the case

1    of the search of Mar-a-Lago, progressively redacted more, I

2    think, on three -- three occasions?  Two or three occasions.

3         THE COURT:  Of course, that was pre-indictment;

4    correct?

5         MR. HARBACH:  That's -- well, one of the -- one of the

6    adjustments was post-indictment.  And then another adjustment

7    for the superseding indictment.  So --

8         THE COURT:  But you would agree that the analysis is a

9    bit different when it's an indicted case versus in a

10   pre-indictment posture?

11        MR. HARBACH:  Yes, yes.

12        THE COURT:  Okay.

13        MR. HARBACH:  All I'm saying is that -- and, again,

14   none of this concerns the defendants' access to it at all.

15        THE COURT:  Right.  But if they want to use these

16   materials, it's done not, you know, rarely in the course of

17   seeking suppression relief -- and I see this all of time.

18   Attachments are filed as exhibits and we rule upon them.  We

19   have hearings.  And there is really never any issue.  But here

20   there appears to be a serious issue.

21        MR. HARBACH:  Okay.  And I hope I have a proposal that

22   might make some sense.

23        THE COURT:  Okay.

24        MR. HARBACH:  What we have proposed at the moment is

25   that the -- the publicly facing versions of those search

1    warrant applications that Judge Reinhardt has already approved,

2    be substituted immediately for the exhibits attached to the

3    defendants' motions so that they can be released and be public

4    facing.  And, furthermore, that if, as we approach the hearing,

5    the defendants believe that -- that Judge Reinhardt's decisions

6    should be revisited about what should be redacted, they can

7    make a motion.

8         Our point is, don't just assume that you can shift the

9    burden to the government by attaching the unredacted motion to

10   a motion to compel.

11        And I just want --

12        THE COURT:  But that's a motion to suppress; correct?

13   It's not a motion to compel.

14        MR. HARBACH:  Sorry.

15        THE COURT:  So we're back in the 12(b) stage.  And why

16   is it their burden to justify the sealing of information that

17   they don't assert an interest in closure over?

18        MR. HARBACH:  Because of the -- the residual protection

19   that search warrant applications have.  It may well be that a

20   further unsealed version of that pleading is appropriate.

21        THE COURT:  Okay.

22        MR. HARBACH:  And that's why we've said fine, put the

23   one that's publicly already been approved out there.

24        So -- and the last point is to something Mr. Woodward

25   said this morning.  He said he would have expected to know

1    about the existence of these public facing search warrant

2    applications.  I mean, we produced the unredacted versions to

3    them.  We only realized that it might even be relevant for them

4    to know about redacted versions when they attempted to attach

5    them as exhibits, and that's when we told them about them.  So

6    that -- there is just nothing there on that.

7            I will make one last point before I sit down about the

8    Sixth Amendment, only because it's come up this morning.

9            I think Your Honor knows this.  It's been mentioned

10   nowhere in any of the defendants' briefing.  And that, coupled

11   with the fact that they have purported to take no position,

12   means they should not be heard to claim that the Sixth

13   Amendment right to a fair trial or a right to an open trial

14   allows the relief that they're seeking.  That's all I will say

15   on that for now.

16           THE COURT:  Okay.  Thank you, Mr. Harbach.

17           Who is going to be taking the lead for defense counsel

18   on this?

19           MR. BOVE:  I'm going to address most of it, if that's

20   okay with the judge.

21           THE COURT:  Okay.  Mr. Bove.

22           MR. BOVE:  And Mr. Woodward is going to address the

23   Rule 60 implication.

24           THE COURT:  Okay.  I'm ready.

25           MR. BOVE:  Thank you, Judge.

1       So procedurally this is an absolutely frivolous motion.

2   And that matters today because President Trump is here in this

3   courtroom listening to that presentation when he should be

4   preparing for super Tuesday and campaigning --

5       THE COURT:  All right.  I would like to talk about the

6   merits of the motion, Mr. Bove.

7       MR. BOVE:  And I would too, Judge.  But if the shoe

8   were on the other foot and we had filed a motion for

9   reconsideration like this, I can only imagine the things that

10  would be said about delay tactics.

11      THE COURT:  Okay, okay.  I take it -- that's fine.

12      Can we talk about the actual legal issues?

13      MR. BOVE:  Yes.

14      THE COURT:  I understand procedurally frivolous.  Is

15  your argument just related to time spent elsewhere, or does it

16  have something to do with the mechanism by which motion -- the

17  reconsideration was sought?

18      MR. BOVE:  With respect to the procedural point,

19  Your Honor has cited Chicago Tribune, the Press Coalition cited

20  it.  They didn't address it.  These things -- I mean, they all

21  but admitted it, standing here procedurally.  But there are

22  important interests at stake.  And I want to address the merits

23  head on.

24      President Trump is entitled to a public trial, and that

25  includes public motion practice.  There is nothing about the

1    protective order or any other aspects of these proceedings that

2    changes that.  And -- frankly, I had trouble following what was

3    said at the end of Mr. Harbach's argument.  But to the extent

4    there was any suggestion that we have an obligation to join in

5    their efforts to keep private materials that should be public

6    or we forfeit our Sixth Amendment right, that also is

7    completely frivolous.

8         THE COURT:  Well, I think their point is that you

9    haven't cited the Sixth Amendment in your papers, and that

10   because there is a protective order in place, there is some

11   degree of showing that you would need to make to get out from

12   under the protective order rule.

13        MR. BOVE:  We haven't cited the Sixth Amendment

14   directly because the standard overlaps completely with the

15   First Amendment standard we've been talking about; that's clear

16   from footnote 16 of Ochoa Vasquez.

17        In terms of the protective order, it expressly

18   contemplates in paragraph 7 that there would be some period of

19   sealing, absent the government's consent, when we file a

20   motion.  And so in order to abide by that -- and I think this

21   is important.  In order to be consistent with the local rules

22   requirement that you fix a time frame on the requested sealing,

23   we made a submission to the Court, and we said we are not in

24   the best position to assess the safety concerns that these guys

25   are talking about.

1          And so if they want to make a showing, please do.  We

2     are not here to try and harm people or cause harassment to

3     anyone.  On the other hand, we don't know what they know.

4          The one exhibit submitted in this case to try and

5     substantiate these positions, as Your Honor noted, another

6     instance of improper ex-parte practice, only supports the

7     proposition that when the government made gratuitous speaking

8     allegations in an indictment, that led to harassment of a

9     witness.

10         THE COURT:  Okay.  All right.  Let's move on.  I don't

11    know if that is fully, fully the case.

12         Moving past that example, though, what is your view on

13    the witness names as distinct from the substance of their

14    statements?

15         MR. BOVE:  I think it is the -- absolutely the

16    government's burden to justify the redaction of those names.  I

17    have not seen any showing whatsoever with respect to the names

18    at issue in any of the motions that have been filed.  And --

19         THE COURT:  I think their point is just more of like

20    a -- it's -- it's just obvious.  It's obvious that in a case of

21    intense public scrutiny -- and there is some -- a little bit of

22    arguable irony that where the First Amendment interests are at

23    their apex, we're going to actually do less access.  But I will

24    leave that aside for a minute.

25         I think their point is that it's just a common sense

1    point that anybody whose name is associated with any of these

2    high profile cases will just get online, you know, emails or

3    tweets or whatever it is, and that we should -- we should

4    accept that and then draw this, kind of, broad view that any

5    witness's name should be shielded at least for now.

6          MR. BOVE:  So I would just make a practical point,

7    Judge, because from sitting here this afternoon, the command of

8    the case law between the Court and the Press Coalition is

9    pretty intimidating.  But from a practical standpoint, we are

10   at a place in this case where the government is charting a

11   course that will make it virtually impossible to litigate.  And

12   just -- just the proposal that Your Honor referenced about

13   creating aliases for each witness, tracking them throughout the

14   case, that is fundamentally inconsistent with the

15   Sixth Amendment right that we're talking about and the First

16   Amendment right.  And that is going to be a recurring issue, I

17   think, when the silent witness rule comes up.  Because I would

18   expect there to be continued efforts to try and litigate this

19   case in the dark.  And that is something that we very much

20   oppose.

21          And so we think there needs to be case specific reasons

22   if there is going to be sealing, including with respect to

23   names.  We agree with the point about not needing to be

24   prophylactic that you made.  But at the same time, an exhibit

25   relating to a different witness not at issue in any of our

1    materials, we don't think meets the government's burden to

2    justify redacting names, substance of information, all of these

3    things, out of our briefs.

4         THE COURT:  What do you say to their point that

5    in -- in many respects you haven't taken an affirmative

6    position on sealing and certain filings?  And then secondly,

7    that some of your references to these individuals or their

8    statements are gratuitous and unnecessary?

9         MR. BOVE:  So with respect to our no position, that is

10   informed by our information deficit.  We don't have the access

11   to information that they have about the alleged risks and

12   harassment that people supposedly face.  That's particularly

13   problematic for us in terms of what position we would take when

14   we're trying to address the request to hide the names of

15   government participants.

16        And I think there is a basis in the case law and in

17   logic to differentiate between government actors referenced in

18   these materials as opposed to lay witnesses.  We don't know.

19   And so, no, we're not going to blindly do what they say.  We're

20   not going to blindly adopt their reasoning.  We're not going to

21   join in a submission to seal things from the Court that the

22   Press Coalition then comes in and says President Trump wants to

23   hide these things too.  Because that's just not the case.  If

24   they can justify it, great.  We're not here to cause harm, as I

25   said.  But it's on them.

1          And in terms of this word "gratuitous," they have a lot

2    more binders today than I have, Judge, but if they want to

3    bring up any exhibit that we've attached to these motions, I

4    will address it specifically.  There is nothing gratuitous in

5    our filings.  I think what they really mean is that they

6    wouldn't have attached as many pages as we attached, and to

7    that I must say, that's the only course for us.  Because if we

8    did something less than that, then we harm our position on the

9    merits and we open ourselves up to the argument that they would

10   inevitably make, and to some extent already have, that we are

11   cherry-picking quotes from the documents and not giving a fair

12   and complete treatment.

13         So that's -- that argument, I don't think it actually

14   bears at all on the sealing frameworks of any -- any of those

15   that we talked about.  What it really is, is an attack on our

16   integrity as litigators in suggesting that we, for some

17   improper purpose, are attaching documents to a submission.

18   That's false, outrageous.  And if they want to specifically

19   talk about any exhibit on here, let's get the binders out.

20         THE COURT:  All right.  Well, I don't know if time will

21   permit that degree of detail.

22         MR. BOVE:  I'm happy to not get into the binders also,

23   Judge.

24         THE COURT:  Okay.  But just as far as the legal

25   standards are concerned, let me just ensure that I haven't

1    overlooked anything.

2         Do you see any legal distinction in the applicable

3    standard to apply as between, quote, discovery motions, like

4    your motion to compel, versus the pretrial motions that are

5    filed explicitly pursuant to 12(b)?

6         MR. BOVE:  No.  I think other than this effort to

7    stretch Chicago Tribune, there is no basis for that.  Our

8    motions to compel are Rule 12(b) motions.  There is -- this is

9    a fabricated standard to try -- to -- in some position to be

10    able to say that this motion for reconsideration wasn't

11    frivolous, but there is no basis in the law for that.

12         THE COURT:  Okay.  All right.  Anything you want to say

13    on the category specifically?  There is some grand jury stuff

14    that I saw sprinkled in, and I just wanted to hear your views

15    if they differ at all from what Mr. Harbach said.

16         MR. BOVE:  They differ significantly, but I'm going to

17    defer to Mr. Woodward on the grand jury part.

18         THE COURT:  Okay.

19         MR. BOVE:  On the search warrant affidavits, the idea

20    that another judge's decisions applying a different framework

21    with different considerations, in a pre-charge environment,

22    should drive the Court's decision about sealing of those

23    materials.  It doesn't make any sense.

24         And, you know, again, from the practical perspective,

25    this idea of, oh, we will just substitute in that exhibit, we

1    will dump this one in here, we will slot that one here -- we

2    all have a lot of work to do.  And if that needs to happen to

3    protect someone, we're here for that.  But if it needs to

4    happen because it makes these guys feel better because they

5    should have said more in the first motion, we're not here for

6    that.

7            THE COURT:  All right.  Thank you.

8            Mr. Woodward.

9            MR. WOODWARD:  Thank you, Your Honor.

10           I want to focus on the grand jury proceedings.  I do

11   want to touch on a few issues that Mr. Harbach raised that got

12   us to the grand jury proceedings.  I want to start with the

13   protective order in this case and a few statements that

14   Mr. Harbach made about the protective order, and his reliance

15   on the fact that the protective order entered by another judge

16   in this case gives good cause to the sealing of this

17   information --

18           THE COURT:  Well, wait a minute.  It was a motion for a

19   protective order that was unopposed --

20           MR. WOODWARD:  Your Honor, if I may interrupt you right

21   there.

22           THE COURT:  Yes.

23           MR. WOODWARD:  Mr. Nauta didn't have counsel in this

24   case when that motion was filed.  He didn't have counsel in

25   that case when the motion was granted.  And you will recall, I

1    came to see Your Honor in August of 2023 ex-parte, and I

2    complained about the way that that protective order worked.

3    Now, you subsequently --

4         THE COURT:  There was no motion to lift it or to modify

5    it.

6         MR. WOODWARD:  No, Your Honor, there was not.  But to

7    say that I -- that we have not complained about the protective

8    order is not true because --

9         THE COURT:  But, if anything, that was lukewarm.  It

10   didn't result in a motion before the Court.  And so I'm still

11   left, at the end of the day, with a protective order that was

12   entered without any opposition, as far as I can tell.  And so

13   that is in place.

14        MR. WOODWARD:  That's correct, Your Honor.  Now, the

15   other thing that Mr. Harbach said about the protective order is

16   that it's to apply to things like grand jury materials.

17   However, in the million documents and millions of pages of

18   materials that have been produced in this case, every single

19   page has been designated subject to the protective order.

20   Every single piece of discovery in this case has been

21   designated subject to the protective order.

22        And the point that I made back in August is that, as a

23   result, before we reference any discovery in this case, we have

24   to come see Your Honor, assuming the government does not

25   consent.

1          And the problem that I had back in August is that that

2     means that I have to go to the government, disclose my defense

3     strategy in the motion that I'm about to bring.  They say, no,

4     you cannot disclose.

5          They talk about a desire to not disclose witness

6     information and witness identifications, and to keep that

7     secreted, whether in the grand jury or otherwise.  We're

8     fighting over the sealing of Mr. Nauta's own statements.

9     They've asked us to keep Mr. Nauta's own statements, his grand

10    jury testimony, his FD302 form, sealed under the protective

11    order.  So there is no question that Mr. Nauta is not going to

12    be a witness for the government in this case.

13         The second point that I will make is that we have

14    concerns about the way that the -- they've handled this

15    process.  And we think that when they reference skepticism, we

16    think Your Honor needs to look at this issue with a degree of

17    skepticism.  Take the grand jury issue, for example.  What they

18    were supposed to have done -- this is a sealing matter before

19    Your Honor.  It's not a case in the District of Columbia.  And

20    so what they were supposed to have done under Rule 6(e) is gone

21    to the judge in the District of Columbia, petitioned that judge

22    to transfer the material to Your Honor.  And that judge --

23         THE COURT:  But is that a mandatory procedure?  Can't

24    they just petition the judge for -- to make a finding that

25    maybe the secrecy elements are no longer as -- as heightened.

1    MR. WOODWARD:  That's -- that's right.  They can ask

2    the judge in D.C., and they have, to unseal the entire

3    proceeding.  But that's not what they're doing with respect to

4    the materials they just referenced.  They're not asking for the

5    total unsealing of those materials.  They're not going to

6    identify the Trump attorney and those materials.  And so

7    they're abusing even that process.  They're taking from

8    Your Honor the authority --

9    THE COURT:  So what relief can you seek then?  If -- if

10   you're not pleased with whatever mechanism they're using in the

11   D.C. proceeding, then is there any avenue for you to -- for you

12   to file a motion for such access, either there or here?

13   MR. WOODWARD:  That's why I raise it now.  I don't

14   know.

15   THE COURT:  Okay.  But I can't work with just amorphous

16   requests ore tenus.  Like, I either get a motion or I don't.

17   MR. WOODWARD:  What you can do, Your Honor, is you can

18   force them to follow the rules, which is what you did.  You can

19   force them --

20   THE COURT:  Which rule?

21   MR. WOODWARD:  The rule against -- the rule of a

22   presumption of disclosure.  You can force them to make an

23   articulate -- a particularized assertion for why materials need

24   to remain sealed.

25   THE COURT:  And that is clear.  And I have said that

1    from the outset of this case, in numerous orders, even before

2    the motion for reconsideration was filed.  And so that, I

3    think, is a baseline principle that I have voiced repeatedly.

4    And here we are now trying to sort out these issues.

5           So in your view, Mr. Woodward, what do you think would

6    be helpful for me to know as a matter of grand jury materials

7    as referenced in the pretrial motions?

8           MR. WOODWARD:  I think when they come to Your Honor

9    with a D.C. grand jury document that is redacted and they ask

10   you to honor those redactions, that's not the proper process.

11   The proper process is to petition the D.C. district court, the

12   chief judge there, to transfer that to you -- this is

13   Rule 6(e).  I mean, this is a Supreme Court case, 40 years ago

14   this was decided by the Supreme Court.  To transfer that to

15   you.  The judge can document, in this case, his concerns about

16   unsealing, assuming he doesn't unseal the entire record.  And

17   then you, Judge, get to decide.  They don't get to continue

18   shielding their investigation in D.C. now that they've brought

19   this case in Florida.

20          The Special Counsel references grand jury proceedings.

21   I have been asking them for weeks now to identify all of the

22   various grand jury proceedings that occurred in D.C. that have

23   not yet been disclosed in this case.  I know about several

24   because I represented the witnesses in those cases.  And I know

25   that there is a substantial amount of litigation that occurred

1    before that grand jury that the Court doesn't know about, that

2    my colleagues don't know about, that I can't talk to my client

3    about because I'm under a sealing order in D.C.

4          I have asked them to identify each proceeding in the

5    D.C. grand jury that involves this -- these -- this case.  They

6    haven't done it.  I followed up with them on Tuesday night.  I

7    said, Where are we on this?  No response.

8          THE COURT:  Well, I think what they said is that

9    they're in the process of petitioning the D.C. court for the

10   unsealing, at least partially, of materials.  I don't know if

11   that's a comprehensive set.  It's hard for me to know, but it

12   sounds like there is a process underway.

13         MR. WOODWARD:  I don't believe that they were referring

14   to what I'm talking about -- they can correct me.  I think

15   they're referring to the motion -- the motion that has been

16   submitted to the Court, not -- "under seal" is not the right

17   way to say it -- but I don't believe that they're putting

18   together -- Your Honor should have a list of -- it should be no

19   different than if the grand jury investigation had been

20   conducted in the Southern District of Florida.  But Your Honor

21   has no insight into what happened in D.C.  They shielded all of

22   that from this Court, and they're continuing to shield it from

23   the defendants now.

24         So what we -- you know, the -- they ridicule us for

25   taking no position, but you're right, Your Honor, it is not our

1    burden to justify sealing, which is why we filed the motions

2    the way we did.  We filed a motion to disclose discovery under

3    the protective order.  And in response, the Special Counsel's

4    office still doesn't justify sealing.

5           Your Honor, I will just make two quick points on the

6    identification of witnesses.  You know, it's shocking to me

7    that you suggest that we simply use monikers for all the

8    witnesses and yet they reject that solution.  I mean, what is

9    actually going on here that precludes us from -- we've

10   litigated a number of different proceedings here where we --

11   you know, "Trump Employee 1" or -- you know, why doesn't that

12   work?  Yet they don't defend or otherwise.  You know, "it

13   depends" is not an answer.  We are not in law school anymore.

14          Finally, I also don't understand the difference between

15   referencing material -- well, the reference to gratuitous

16   attachments.  Your Honor surely would not allow us to limit

17   your review of case law to only the sections quoted or to only

18   the page that is cited; right?  That's not the way we operate.

19   Context matters.  And context matters in this case.  It's not

20   our obligation to go and cherry-pick, as my colleague,

21   Mr. Bove, suggests, the sections of exhibits that matter to us.

22   We would be misleading the Court; right?

23          Now, if the Court, in its prerogative, doesn't want to

24   review the 37-page warrant affidavit, so be it.  But for us to

25   assume that the Court is uninterested in the -- in the portions

```
 1    of the exhibits -- we don't do that at trial and we don't need
 2    to do that pretrial either.
 3         And so unless the Court has any further questions for
 4    me, I will sit down.
 5         THE COURT:  All right.  Thank you.
 6         Any further defense argument on the sealing or
 7    redaction issues?
 8         MR. IRVING:  No, Your Honor.  Not from me.
 9         THE COURT:  Any rebuttal from the government?
10         MR. HARBACH:  Okay.  Just a couple observations based
11    on, I guess, Mr. Woodward's presentation, and I guess Mr. Bove
12    made mention of this also.
13         The notion that they -- they made these gratuitously
14    bloated exhibits attachments to their motions for the sake of
15    completeness for the Court, first of all, if Your Honor will go
16    back and look at the examples that I mentioned earlier in our
17    pleadings.
18         THE COURT:  Uh-huh.  I think you told me pages 19 and
19    20 maybe?
20         MR. HARBACH:  I think it may have been 14 and 15, but
21    at this point --
22         THE COURT:  I have it -- or I trust my -- one of my
23    good law clerks will have written that down.
24         MR. HARBACH:  Very well.  Those are in there.  And
25    I'm -- I could definitely bring out the binders and go through
```

1     them, but I don't think that is necessary.

2          Here is the point.  For something like that, the way

3     this should have gone, they want to attach, you know, the

4     entirety of something.  They say, hey, David, we're interested

5     in attaching this because we want to -- we want to be able to

6     say in our motion that FBI agents were in communication on the

7     day of the search warrant, and we think it's important that

8     Judge Cannon know that.  And that's all they would have to say.

9     We say, okay, that exhibit that you're showing there, there is

10    a lot of sensitive information in there.  We think that -- here

11    is a redaction that we propose that we think accomplishes your

12    objective.

13         It's not cross-examination about defense strategy.

14    It's not invading the defense camp about what their overall

15    strategy is.

16         THE COURT:  But it does require them to basically get

17    your permission every time they want to file something.  Isn't

18    there something sort of unusual about that?

19         MR. HARBACH:  It's not -- it's not -- it doesn't

20    require them to get our permission.  It does require them to

21    get permission.  And, unusual?  Perhaps.  But what's not

22    unusual is the protective order, like the one that's at issue

23    here.  It has meaning.  It's -- it's not just something we

24    always do, even though we always do it.  It's important, and

25    especially under these circumstances.

1          THE COURT:  Is there anything to make of Mr. Woodward's

2    point that in the unclassified discovery universe, which I

3    believe is over a million pages, that all of that is designated

4    confidential?

5          MR. HARBACH:  Well, all of that is subject to the

6    protective order.

7          THE COURT:  Okay.  Or -- or -- yes, yes.

8          MR. HARBACH:  Yes, it was all produced pursuant to the

9    protective order.  That is accurate.

10         THE COURT:  So for a defendant to use any of that

11   material, even if it really doesn't trigger sensitivity

12   concerns, nonetheless, would require -- and I get it.  This is

13   in the protective order, and I think there is a mechanism to

14   address it, and there have been motions to file discovery on

15   the docket which now represent, I think, five motions,

16   including the motion for reconsideration.

17         MR. HARBACH:  All I hope is clear to Your Honor is that

18   you shouldn't question our bona fides about being willing to

19   work with them on that.

20         THE COURT:  And I do not.  I do not.  To be clear, I

21   know -- I can tell that you have made good faith efforts to

22   work with them in terms of their redactions.  You have offered

23   the red box assistance which -- which isolates the issues.  But

24   I think what is clear is that these issues are complicated.

25   And that trying to navigate these redaction sealing issues is a

1    challenge.  So to try to find reasonable measures that are

2    mindful of witness safety is certainly paramount, but, of

3    course, the Court is obligated to respect the openness that is

4    presumed in criminal proceedings.  So I will endeavor to do

5    that, take your motion for reconsideration under advisement.

6            Are there any other issues you wish to present now?

7            MR. HARBACH:  No, Your Honor.  Thank you.

8            THE COURT:  Okay.  Well, it is almost 3:00.  We are on

9    schedule.  Thank you all for your time and attention today.

10           Thank you to all of the court personnel and the various

11   security members of the courthouse and the Marshals Service for

12   all they have done to make this hearing possible.

13           And that is all.  Thank you.

14       (These proceedings concluded at 3:00 p.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                   C E R T I F I C A T E

 2

 3

 4     I hereby certify that the foregoing is an accurate

 5     transcription of the proceedings in the above-entitled matter.

 6

 7
       DATE:  03-06-2024        /s/Laura Melton
 8                              LAURA E. MELTON, RMR, CRR, FPR
                                Official Court Reporter
 9                              United States District Court
                                Southern District of Florida
10                              Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## 1

**1** [7]– - 1:17:10–, 1:62:24–, 1:63:9–, 1:126:3–, 1:129:15 –, 1:131:21–, 1:161:11
**10** [2]– - 1:79:16–, 1:80:5
**10-page** [1]– - 1:20:4
**10-week** [1]– - 1:79:21
**100** [4]– - 1:20:19–, 1:20:21–, 1:48:13–, 1:126:11
**11th** [18]– - 1:9:18–, 1:23:13–, 1:26:6–, 1:32:7–, 1:38:22–, 1:38:23–, 1:38:25 –, 1:65:23–, 1:100:19–, 1:101:1–, 1:103:23–, 1:103:24–, 1:105:3–, 1:105:4 –, 1:109:6–, 1:120:25–, 1:121:19–, 1:123:11
**12** [12]– - 1:7:10–, 1:7:11–, 1:8:16–, 1:8:19–, 1:19:4–, 1:105:15–, 1:119:5–, 1:122:18–, 1:125:4–, 1:125:13–, 1:128:21–, 1:144:16
**12(b** [8]– - 1:41:4–, 1:94:21 –, 1:102:13–, 1:118:18–, 1:146:15–, 1:154:5–, 1:154:8
**12:09** [1]– - 1:94:8
**12th** [3]– - 1:35:12–, 1:79:15–, 1:84:3
**13** [2]– - 1:6:25–, 1:7:24
**13th** [2]– - 1:69:3–, 1:76:24
**14** [5]– - 1:34:16–, 1:74:8–, 1:76:25–, 1:134:10–, 1:162:20
**1440** [1]– - 1:118:24
**1441** [1]– - 1:116:3
**14th** [1]– - 1:69:3
**15** [5]– - 1:66:3–, 1:77:1–, 1:95:19–, 1:134:10–, 1:162:20
**15th** [3]– - 1:73:21–, 1:78:19
**16** [9]– - 1:8:17–, 1:11:16–, 1:15:11–, 1:56:14–, 1:71:14 –, 1:78:18–, 1:105:7–, 1:119:5–, 1:149:16
**16(a)(1)(E** [1]– - 1:70:8
**17** [1]– - 1:131:10
**17th** [1]– - 1:23:8
**18** [1]– - 1:74:8
**18th** [3]– - 1:8:22–, 1:23:7 –, 1:42:16
**19** [2]– - 1:128:24–,

1:162:18
**1979** [1]– - 1:26:11
**1:10** [1]– - 1:94:7
**1:16** [1]– - 1:94:8
**1st** [4]– - 1:66:22–, 1:73:19 –, 1:79:15–, 1:79:19

## 2

**2** [5]– - 1:61:10–, 1:76:8–, 1:113:4–, 1:118:24–, 1:129:16
**20** [10]– - 1:5:7–, 1:13:22–, 1:22:19–, 1:61:3–, 1:127:9–, 1:128:24–, 1:162:19
**200** [1]– - 1:126:11
**2021** [5]– - 1:9:15–, 1:66:11–, 1:66:22–, 1:73:20 –, 1:73:21
**2022** [6]– - 1:9:15–, 1:28:20–, 1:65:10–, 1:74:6–, 1:74:11
**2023** [3]– - 1:71:13–, 1:89:17–, 1:156:1
**2024** [1]– - 1:76:24
**20th** [4]– - 1:8:22–, 1:9:15 –, 1:21:15
**21** [1]– - 1:75:8
**215** [1]– - 1:4:20
**22** [1]– - 1:69:17
**23-criminal-80101** [1]– - 1:3:6
**23rd** [2]– - 1:33:24–, 1:34:4
**24th** [2]– - 1:32:1–, 1:32:18
**25** [2]– - 1:127:9
**25th** [6]– - 1:38:16–, 1:39:10–, 1:40:15–, 1:40:22 –, 1:42:6–, 1:48:10
**26th** [2]– - 1:33:24–, 1:34:5
**2:23** [1]– - 1:140:4

## 3

**3-1/2** [1]– - 1:25:10
**30** [4]– - 1:18:14–, 1:40:24 –, 1:58:20–, 1:58:22
**302** [3]– - 1:20:4–, 1:20:5–, 1:20:6
**31** [1]– - 1:76:17
**31st** [1]– - 1:34:9
**32** [2]– - 1:54:24–, 1:76:25
**349** [1]– - 1:53:18
**357** [2]– - 1:31:18–,

1:78:15
**37-page** [1]– - 1:161:24
**39** [1]– - 1:71:14
**3:00** [2]– - 1:165:8–, 1:165:14
**3rd** [3]– - 1:19:5–, 1:22:10–, 1:40:2

## 4

**4** [8]– - 1:5:7–, 1:24:3–, 1:44:21–, 1:45:17–, 1:55:23 –, 1:55:24–, 1:61:10–, 1:77:5 –, 1:127:3–, 1:159:13
**40** [4]– - 1:71:14–, 1:76:25 –, 1:127:3–, 1:159:13
**404(b** [4]– - 1:109:11–, 1:116:10–, 1:116:15–, 1:119:1
**45** [1]– - 1:40:24
**4th** [5]– - 1:25:13–, 1:119:18–, 1:119:25–, 1:120:6–, 1:120:7

## 5

**5** [38]– - 1:23:6–, 1:23:13–, 1:23:20–, 1:23:25–, 1:31:7–, 1:31:11–, 1:31:14–, 1:31:17 –, 1:32:1–, 1:32:5–, 1:32:13–, 1:32:19–, 1:32:20–, 1:32:23 –, 1:33:7–, 1:44:5–, 1:44:6–, 1:45:9–, 1:45:12–, 1:45:15–, 1:46:3–, 1:46:15–, 1:53:3–, 1:53:4–, 1:58:15–, 1:58:17–, 1:58:18–, 1:58:19–, 1:58:23 –, 1:59:15–, 1:59:18–, 1:59:21–, 1:66:12–, 1:66:23 –, 1:76:9–, 1:82:4
**5's** [1]– - 1:32:16
**5,300** [1]– - 1:59:25
**5th** [4]– - 1:26:6–, 1:26:10–, 1:35:9–, 1:65:23

## 6

**6** [9]– - 1:33:17–, 1:33:18–, 1:58:9–, 1:58:24–, 1:59:16–, 1:59:18–, 1:61:10–, 1:74:5–, 1:75:8
**6(e** [6]– - 1:140:19–, 1:141:2–, 1:141:9–, 1:141:10 –, 1:142:2–, 1:157:20
**6(e)** [1]– - 1:159:13
**6(e)'s** [1]– - 1:143:15
**6,300** [1]– - 1:59:25
**60** [1]– - 1:147:23

**60-day** [2]– - 1:81:5–, 1:81:6
**6A** [15]– - 1:31:12–, 1:32:24 –, 1:33:4–, 1:33:8–, 1:33:10–, 1:33:23–, 1:34:1–, 1:34:18–, 1:43:25–, 1:44:6–, 1:44:14–, 1:44:21–, 1:44:22–, 1:46:15 –, 1:58:14
**6C** [6]– - 1:34:9–, 1:34:12–, 1:34:18–, 1:34:23–, 1:34:24 –, 1:35:19

## 7

**7** [2]– - 1:71:5–, 1:149:18
**793** [1]– - 1:41:20

## 8

**8** [2]– - 1:61:10–, 1:71:5
**80-some** [1]– - 1:126:22
**82** [1]– - 1:61:20
**85.500** [1]– - 1:80:9
**87** [1]– - 1:126:23
**8th** [2]– - 1:6:19–, 1:78:17

## 9

**9** [2]– - 1:76:25–, 1:80:9
**98** [1]– - 1:20:21
**9th** [6]– - 1:31:13–, 1:32:4–, 1:32:19–, 1:60:22–, 1:84:3–, 1:120:19

## A

**ABC** [2]– - 1:60:2–, 1:60:3
**abide** [1]– - 1:149:20
**able** [7]– - 1:20:12–, 1:38:18–, 1:55:12–, 1:101:25 –, 1:140:1–, 1:154:10–, 1:163:5
**absence** [1]– - 1:50:6
**absent** [1]– - 1:149:19
**absolutely** [10]– - 1:39:23 –, 1:46:24–, 1:48:13–, 1:59:3 –, 1:66:5–, 1:108:6–, 1:109:4 –, 1:132:19–, 1:148:1–, 1:150:15
**abstract** [1]– - 1:16:17
**abusing** [1]– - 1:158:7
**academic** [3]– - 1:124:11
**accept** [3]– - 1:45:4–, 1:45:10–, 1:151:4
**access** [42]– - 1:19:17–,

1:53:15_, 1:53:19_, 1:54:17
_, 1:58:12_, 1:71:1_, 1:71:10
_, 1:91:12_, 1:95:3_, 1:98:10
_, 1:99:13_, 1:99:19_,
1:102:18_, 1:103:3_,
1:103:11_, 1:104:14_,
1:104:23_, 1:105:12_,
1:106:2_, 1:108:18_,
1:113:22_, 1:113:23_,
1:115:20_, 1:116:1_,
1:116:25_, 1:117:4_,
1:117:22_, 1:119:14_,
1:120:13_, 1:122:20_,
1:123:9_, 1:123:10_,
1:123:15_, 1:125:20_,
1:130:6_, 1:141:8_, 1:144:13
_, 1:145:14_, 1:150:23_,
1:152:10_, 1:158:12

accessible [1]_ - 1:128:1

accommodate [1]_ -
1:7:3

accompanied [1]_ -
1:122:1

accomplishes [1]_ -
1:163:11

accordance [2]_ -
1:68:24_, 1:111:1

according [3]_ - 1:9:17_,
1:35:11_, 1:120:14

account [4]_ - 1:14:12_,
1:18:18_, 1:50:3_, 1:87:1

accounts [1]_ - 1:82:25

accurate [1]_ - 1:164:9

accused [1]_ - 1:97:21

accused's [1]_ - 1:22:2

acknowledge [3]_ -
1:119:16_, 1:121:16_,
1:135:22

acknowledging [2]_ -
1:97:11_, 1:124:6

Act [6]_ - 1:41:12_,
1:136:10_, 1:136:14_,
1:137:4_, 1:137:10_, 1:138:6

acting [2]_ - 1:39:2_,
1:72:24

action [1]_ - 1:93:10

actions [2]_ - 1:93:7_,
1:97:18

active [2]_ - 1:141:2_,
1:141:4

actors [1]_ - 1:152:17

acts [2]_ - 1:119:4_,
1:119:6

actual [5]_ - 1:65:19_,
1:83:22_, 1:102:2_, 1:136:2

_, 1:148:12

add [4]_ - 1:8:23_, 1:30:13
_, 1:31:3_, 1:143:14

Addison [2]_ - 1:134:19_,
1:134:22

addition [1]_ - 1:101:24

additional [15]_ - 1:15:15
_, 1:16:25_, 1:21:7_, 1:23:17
_, 1:23:22_, 1:52:9_, 1:52:16
_, 1:52:24_, 1:71:10_,
1:72:11_, 1:73:15_, 1:73:17
_, 1:95:13_, 1:132:20_,
1:141:19

address [23]_ - 1:18:13_,
1:21:9_, 1:32:18_, 1:36:4_,
1:36:5_, 1:36:8_, 1:40:17_,
1:42:8_, 1:69:4_, 1:78:4_,
1:98:23_, 1:100:19_,
1:110:18_, 1:110:21_,
1:132:9_, 1:144:3_, 1:147:19
_, 1:147:22_, 1:148:20_,
1:148:22_, 1:152:14_,
1:153:4_, 1:164:14

addresses [2]_ - 1:38:23
_, 1:131:3

addressing [1]_ - 1:62:12

adherence [1]_ - 1:4:13

adjourn [1]_ - 1:84:20

adjournments [1]_ -
1:84:6

adjustment [1]_ - 1:145:6

adjustments [1]_ -
1:145:6

administration's [1]_ -
1:38:7

administrative [1]_ -
1:4:11

admissibility [2]_ -
1:33:19_, 1:34:13

admissible [1]_ - 1:58:5

admitted [1]_ - 1:148:21

adopt [1]_ - 1:152:20

advance [3]_ - 1:38:5_,
1:40:22_, 1:110:2

advantage [1]_ - 1:93:12

advise [3]_ - 1:4:3_,
1:24:18_, 1:59:4

advisement [1]_ - 1:165:5

advises [1]_ - 1:54:12

advising [3]_ - 1:30:15_,
1:53:4_, 1:109:12

affect [1]_ - 1:80:23

affecting [1]_ - 1:93:11

affects [2]_ - 1:35:2_,

1:35:3

affidavit [3]_ - 1:82:23_,
1:83:7_, 1:161:24

affidavits [2]_ - 1:16:16_,
1:154:19

afforded [1]_ - 1:52:10_,
1:95:3

afternoon [9]_ - 1:5:19_,
1:19:2_, 1:20:11_, 1:49:11_,
1:52:5_, 1:68:17_, 1:94:9_,
1:109:22_, 1:151:7

age [1]_ - 1:132:25

agencies [15]_ - 1:14:4_,
1:14:22_, 1:15:4_, 1:15:9_,
1:24:12_, 1:24:14_, 1:24:17
_, 1:65:15_, 1:71:25_,
1:75:19_, 1:75:22_, 1:87:11
_, 1:90:5_, 1:91:17_, 1:91:22

Agency [1]_ - 1:13:15

agency [11]_ - 1:24:16_,
1:26:24_, 1:28:23_, 1:66:9_,
1:66:18_, 1:73:3_, 1:73:5_,
1:86:11_, 1:90:4_, 1:90:12_,
1:91:19

agenda [3]_ - 1:6:2_,
1:110:14_, 1:132:8

agent [2]_ - 1:21:1_,
1:72:25

agents [20]_ - 1:28:6_,
1:28:7_, 1:28:15_, 1:28:20_,
1:28:22_, 1:28:23_, 1:28:24
_, 1:29:4_, 1:30:8_, 1:58:1_,
1:63:12_, 1:63:20_, 1:73:7_,
1:75:25_, 1:91:17_, 1:92:2_,
1:93:9_, 1:131:12_, 1:131:15
_, 1:163:6

ago [10]_ - 1:14:21_,
1:17:15_, 1:17:21_, 1:21:18
_, 1:39:11_, 1:115:2_,
1:118:14_, 1:130:24_,
1:137:15_, 1:159:13

agree [20]_ - 1:6:18_,
1:8:21_, 1:13:3_, 1:46:11_,
1:46:22_, 1:47:8_, 1:85:4_,
1:93:22_, 1:113:19_,
1:114:18_, 1:116:17_,
1:119:23_, 1:121:3_,
1:122:22_, 1:125:4_,
1:130:10_, 1:131:2_, 1:135:3
_, 1:145:8_, 1:151:23

agreeing [1]_ - 1:123:14

agrees [2]_ - 1:43:13_,
1:55:25

ahead [1]_ - 1:18:10

ain't [1]_ - 1:90:13

AI [1]_ - 1:100:2

albeit [1]_ - 1:57:22

alert [2]_ - 1:34:6_, 1:34:8

aliases [1]_ - 1:151:13

aligned [1]_ - 1:102:19

allegation [1]_ - 1:56:22

allegations [5]_ - 1:67:18
_, 1:100:16_, 1:103:15_,
1:135:10_, 1:150:8

allege [3]_ - 1:12:10_,
1:41:25_, 1:125:3

alleged [5]_ - 1:16:7_,
1:54:6_, 1:88:6_, 1:97:24_,
1:152:11

allegedly [4]_ - 1:17:5_,
1:55:4_, 1:101:22_, 1:136:9

alleging [2]_ - 1:100:5_,
1:105:22

allotment [1]_ - 1:32:20

allotted [2]_ - 1:6:22_,
1:95:19

allow [6]_ - 1:13:13_,
1:60:11_, 1:60:12_, 1:92:20
_, 1:138:16_, 1:161:16

allowing [1]_ - 1:16:12

allows [1]_ - 1:147:14

alluded [2]_ - 1:10:17_,
1:128:19

almost [6]_ - 1:6:15_,
1:16:9_, 1:38:3_, 1:84:16_,
1:123:21_, 1:165:8

alone [4]_ - 1:14:1_,
1:19:24_, 1:101:24_,
1:102:11

already-indicted [1]_ -
1:80:24

alternate [1]_ - 1:15:23

alternative [3]_ - 1:35:13
_, 1:37:12_, 1:45:5

Amendment [41]_ -
1:39:1_, 1:95:9_, 1:98:10_,
1:99:12_, 1:101:13_,
1:102:20_, 1:103:24_,
1:105:12_, 1:106:2_, 1:107:1
_, 1:107:20_, 1:108:4_,
1:113:22_, 1:115:20_,
1:115:25_, 1:116:25_,
1:117:4_, 1:117:21_, 1:118:1
_, 1:119:14_, 1:119:17_,
1:120:18_, 1:121:19_,
1:122:23_, 1:123:3_, 1:123:5
_, 1:123:10_, 1:123:17_,
1:124:13_, 1:130:6_, 1:131:6
_, 1:141:8_, 1:147:8_,
1:147:13_, 1:149:6_, 1:149:9
_, 1:149:13_, 1:149:15_,

1:150:22_, 1:151:15_,
1:151:16
America [1]_ - 1:3:4
American [2]_ - 1:36:14_,
1:37:16
Amicus [2]_ - 1:5:21_,
1:95:16
amorphous [1]_ -
1:158:15
amount [3]_ - 1:40:19_,
1:137:25_, 1:159:25
amply [1]_ - 1:125:22
analysis [7]_ - 1:65:18_,
1:66:8_, 1:75:10_, 1:101:14
_, 1:128:8_, 1:133:24_,
1:145:8
ancillary [1]_ - 1:142:12
Anderson [13]_ - 1:105:14
_, 1:109:10_, 1:115:8_,
1:115:22_, 1:115:24_,
1:116:3_, 1:116:5_, 1:116:19
_, 1:118:15_, 1:118:18_,
1:118:19_, 1:121:13
anew [1]_ - 1:33:4
angles [1]_ - 1:95:12
anonymization [1]_ -
1:122:6
anonymous [2]_ -
1:131:20_, 1:131:24
answer [19]_ - 1:12:7_,
1:12:8_, 1:13:14_, 1:15:8_,
1:17:4_, 1:48:18_, 1:48:21_,
1:56:10_, 1:58:22_, 1:65:4_,
1:68:7_, 1:72:18_, 1:87:8_,
1:88:25_, 1:116:7_,
1:127:18_, 1:161:13
answered [4]_ - 1:15:25_,
1:93:14_, 1:93:21_, 1:136:24
answers [3]_ - 1:115:21_,
1:123:11_, 1:142:15
anticipate [1]_ - 1:5:18
anticipated [1]_ -
1:141:24
anticipation [1]_ - 1:52:16
Antone [1]_ - 1:26:11
anyway [2]_ - 1:106:15_,
1:113:6
apart [3]_ - 1:73:2_, 1:76:3
_, 1:122:8
apex [1]_ - 1:150:23
apologize [2]_ - 1:9:19_,
1:99:18
apparent [1]_ - 1:6:14
appeal [1]_ - 1:25:13

appealed [1]_ - 1:105:10
appear [2]_ - 1:22:17_,
1:88:22
appearances [1]_ - 1:3:7
appearing [1]_ - 1:127:22
appellate [1]_ - 1:14:10
appended [3]_ - 1:5:24_,
1:20:2_, 1:20:9
Apple [1]_ - 1:50:7
applicable [2]_ - 1:110:9_,
1:154:2
application [8]_ - 1:48:5_,
1:50:20_, 1:50:24_, 1:53:17
_, 1:99:20_, 1:102:10_,
1:110:12_, 1:122:13
applications [13]_ - 1:51:8
_, 1:51:13_, 1:51:24_, 1:52:2
_, 1:132:11_, 1:143:7_,
1:144:4_, 1:144:9_, 1:144:10
_, 1:144:25_, 1:146:1_,
1:146:19_, 1:147:2
applied [7]_ - 1:97:12_,
1:98:16_, 1:114:12_, 1:116:2
_, 1:119:17_, 1:123:2_,
1:123:4
applies [7]_ - 1:106:3_,
1:107:22_, 1:118:16_,
1:123:15_, 1:125:20_,
1:130:8_, 1:140:16
apply [22]_ - 1:80:15_,
1:80:17_, 1:81:10_, 1:98:7_,
1:98:10_, 1:98:11_, 1:103:6
_, 1:103:24_, 1:104:8_,
1:116:1_, 1:117:5_, 1:119:15
_, 1:120:12_, 1:120:16_,
1:121:19_, 1:124:13_,
1:129:7_, 1:130:25_,
1:140:17_, 1:141:9_, 1:154:3
_, 1:156:16
applying [4]_ - 1:95:8_,
1:117:25_, 1:123:17_,
1:154:20
appreciate [6]_ - 1:49:18
_, 1:65:13_, 1:69:6_, 1:95:22
_, 1:96:6_, 1:97:6
appreciated [1]_ -
1:139:25
appreciates [1]_ -
1:52:24
apprised [1]_ - 1:142:24
approach [5]_ - 1:53:1_,
1:65:16_, 1:65:22_, 1:87:6_,
1:146:4
appropriate [8]_ - 1:16:15
_, 1:48:23_, 1:62:3_, 1:72:9_,

1:87:7_, 1:93:13_, 1:98:18_,
1:146:20
approved [2]_ - 1:146:1_,
1:146:23
April [6]_ - 1:19:4_, 1:19:5
_, 1:22:10_, 1:28:19_, 1:40:2
_, 1:47:14
archivist [1]_ - 1:66:5
area [1]_ - 1:121:4
arguable [2]_ - 1:26:15_,
1:150:22
arguably [3]_ - 1:13:1_,
1:65:19_, 1:92:17
argue [4]_ - 1:9:21_,
1:15:8_, 1:40:8_, 1:118:10
argued [6]_ - 1:7:8_,
1:20:1_, 1:38:6_, 1:40:22_,
1:47:24_, 1:106:11
argues [1]_ - 1:41:23
arguing [2]_ - 1:106:20_,
1:136:9
argument [58]_ - 1:5:20_,
1:6:4_, 1:7:7_, 1:7:15_,
1:7:21_, 1:8:12_, 1:8:20_,
1:8:24_, 1:9:1_, 1:9:21_,
1:9:23_, 1:14:2_, 1:20:11_,
1:21:8_, 1:29:8_, 1:36:4_,
1:41:7_, 1:41:11_, 1:41:18_,
1:41:22_, 1:42:4_, 1:42:6_,
1:45:21_, 1:46:7_, 1:47:19_,
1:49:10_, 1:64:10_, 1:65:2_,
1:65:3_, 1:69:23_, 1:74:14_,
1:78:2_, 1:81:22_, 1:84:2_,
1:89:3_, 1:89:13_, 1:91:25_,
1:92:1_, 1:92:12_, 1:94:11_,
1:94:18_, 1:95:13_, 1:95:20
_, 1:96:9_, 1:98:3_, 1:106:11
_, 1:106:12_, 1:107:25_,
1:122:5_, 1:129:9_, 1:133:25
_, 1:138:6_, 1:141:5_,
1:148:15_, 1:149:3_, 1:153:9
_, 1:153:13_, 1:162:6
arguments [5]_ - 1:19:12
_, 1:19:14_, 1:64:12_,
1:67:19_, 1:144:24
Armstrong [8]_ - 1:15:12
_, 1:15:13_, 1:15:22_,
1:17:23_, 1:86:21_, 1:87:3_,
1:91:14_, 1:92:21
arrange [1]_ - 1:83:25
arrangements [1]_ -
1:61:11
article [1]_ - 1:25:22
articulate [2]_ - 1:130:17_,
1:158:23
articulated [2]_ - 1:110:13

_, 1:110:24
articulation [1]_ -
1:107:25
ascribed [1]_ - 1:67:2
aside [4]_ - 1:38:6_,
1:41:17_, 1:113:21_,
1:150:24
aspects [1]_ - 1:149:1
assert [3]_ - 1:11:6_,
1:33:4_, 1:146:17
assertion [1]_ - 1:158:23
asserts [1]_ - 1:95:8
assess [3]_ - 1:67:5_,
1:138:1_, 1:149:24
assessing [1]_ - 1:14:12
assessment [2]_ - 1:8:3_,
1:121:1
assessments [1]_ -
1:26:20
assigned [1]_ - 1:28:3
assistance [1]_ -
1:164:23
Assistant [1]_ - 1:65:8
assistant [1]_ - 1:29:12
associated [5]_ - 1:5:5_,
1:83:2_, 1:94:20_, 1:100:14
_, 1:151:1
assume [4]_ - 1:77:17_,
1:91:9_, 1:146:8_, 1:161:25
assuming [3]_ - 1:128:8_,
1:156:24_, 1:159:16
assure [2]_ - 1:22:15_,
1:110:18
assuring [1]_ - 1:110:25
attach [6]_ - 1:94:22_,
1:96:15_, 1:131:9_, 1:139:12
_, 1:147:4_, 1:163:3
attached [19]_ - 1:51:23_,
1:51:24_, 1:64:15_, 1:66:12
_, 1:67:9_, 1:71:14_, 1:101:7
_, 1:101:8_, 1:108:18_,
1:116:22_, 1:117:9_,
1:122:17_, 1:128:20_,
1:141:6_, 1:144:15_, 1:146:2
_, 1:153:3_, 1:153:6
attaches [5]_ - 1:102:6_,
1:122:20_, 1:123:9_,
1:123:10_, 1:130:7
attaching [4]_ - 1:139:21_,
1:146:9_, 1:153:17_, 1:163:5
attachment [1]_ -
1:113:21
attachments [9]_ - 1:5:13
_, 1:7:1_, 1:20:2_, 1:94:21_,

1:98:15_, 1:117:20_,
1:145:18_, 1:161:16_,
1:162:14
  attack [1]_ - 1:153:15
  attempted [2]_ - 1:68:5_,
1:147:4
  attention [3]_ - 1:42:24_,
1:61:24_, 1:165:9
  attorney [4]_ - 1:39:4_,
1:49:6_, 1:56:9_, 1:158:6
  attorney-client [1]_ -
1:56:9
  attorneys [3]_ - 1:6:3_,
1:24:15_, 1:31:5
  audio [1]_ - 1:105:1
  August [13]_ - 1:6:15_,
1:35:9_, 1:35:12_, 1:37:13_,
1:44:16_, 1:48:21_, 1:79:15
_, 1:84:3_, 1:84:17_, 1:94:2_,
1:156:1_, 1:156:22_, 1:157:1
  authorities [1]_ - 1:87:24
  authority [15]_ - 1:14:16_,
1:14:17_, 1:15:2_, 1:26:7_,
1:26:8_, 1:75:20_, 1:75:23_,
1:76:2_, 1:86:24_, 1:87:8_,
1:87:12_, 1:92:19_, 1:138:6
_, 1:158:8
  authorization [1]_ -
1:138:17
  authorizing [1]_ - 1:89:9
  automatically [4]_ -
1:91:22_, 1:117:10_,
1:136:11_, 1:136:12
  available [5]_ - 1:50:24_,
1:52:17_, 1:52:25_, 1:55:17
_, 1:83:20
  avenue [1]_ - 1:158:11
  aware [16]_ - 1:22:23_,
1:47:23_, 1:48:11_, 1:50:1_,
1:50:23_, 1:50:25_, 1:51:2_,
1:51:20_, 1:52:24_, 1:56:22
_, 1:59:14_, 1:61:14_,
1:100:18_, 1:107:22_,
1:138:6

                B

  backdrop [1]_ - 1:97:19
  background [4]_ -
1:22:15_, 1:22:18_, 1:43:14
_, 1:94:23
  backing [1]_ - 1:50:5
  backup [3]_ - 1:50:4_,
1:50:8_, 1:50:14
  bad [2]_ - 1:44:13_,

1:84:16
  balance [3]_ - 1:4:18_,
1:101:25_, 1:102:23
  balancing [3]_ - 1:107:9_,
1:120:13_, 1:128:8
  based [8]_ - 1:9:3_, 1:10:5
_, 1:38:1_, 1:46:6_, 1:72:2_,
1:73:23_, 1:84:24_, 1:162:10
  baseless [1]_ - 1:10:17
  baseline [1]_ - 1:159:3
  basic [1]_ - 1:112:4
  basis [8]_ - 1:46:18_,
1:60:14_, 1:64:16_, 1:65:17
_, 1:135:23_, 1:152:16_,
1:154:7_, 1:154:11
  batch [1]_ - 1:4:22
  Beach [1]_ - 1:28:23
  bear [3]_ - 1:55:4_, 1:71:21
_, 1:115:11
  bearing [1]_ - 1:54:5_,
1:57:6_, 1:57:18_, 1:76:6
  bears [2]_ - 1:56:24_,
1:153:14
  become [5]_ - 1:21:5_,
1:106:14_, 1:106:15_,
1:108:15_, 1:141:25
  becomes [6]_ - 1:18:10_,
1:19:23_, 1:23:22_, 1:37:15
_, 1:52:17_, 1:52:24
  becoming [2]_ - 1:19:15_,
1:52:20
  began [5]_ - 1:28:7_,
1:28:14_, 1:28:20_, 1:28:21
_, 1:74:11
  begin [3]_ - 1:6:2_, 1:23:5
_, 1:66:8
  beginning [4]_ - 1:22:19_,
1:39:10_, 1:110:14_, 1:126:9
  begun [1]_ - 1:142:22
  behalf [1]_ - 1:3:10
  behind [4]_ - 1:41:16_,
1:74:18_, 1:86:15_, 1:86:16
  beholder [1]_ - 1:129:14
  belabor [1]_ - 1:89:12
  believes [2]_ - 1:7:23_,
1:107:6
  benefit [2]_ - 1:94:16_,
1:107:19
  best [8]_ - 1:4:25_, 1:49:15
_, 1:89:8_, 1:113:10_,
1:117:22_, 1:140:15_,
1:141:5_, 1:149:24
  better [11]_ - 1:6:19_,
1:12:1_, 1:24:19_, 1:58:11_,

1:62:11_, 1:72:11_, 1:96:21
_, 1:96:22_, 1:113:11_,
1:127:12_, 1:155:4
  between [22]_ - 1:9:14_,
1:26:15_, 1:33:6_, 1:33:24_,
1:34:18_, 1:35:15_, 1:37:8_,
1:38:16_, 1:46:14_, 1:48:21
_, 1:65:1_, 1:73:22_, 1:74:4_,
1:77:8_, 1:104:15_, 1:114:10
_, 1:116:20_, 1:124:3_,
1:151:8_, 1:152:17_, 1:154:3
_, 1:161:14
  beyond [5]_ - 1:30:1_,
1:38:8_, 1:62:21_, 1:89:21_,
1:130:25
  biased [1]_ - 1:66:18
  Biden [1]_ - 1:15:10
  big [3]_ - 1:38:13_, 1:48:15
_, 1:128:5
  bigger [3]_ - 1:98:20_,
1:106:15_, 1:108:19
  biggest [2]_ - 1:9:7_,
1:21:11
  bill [2]_ - 1:105:15_,
1:116:7
  bind [1]_ - 1:114:11
  binders [4]_ - 1:153:2_,
1:153:19_, 1:153:22_,
1:162:25
  binding [1]_ - 1:114:12
  bingo [1]_ - 1:88:18
  bit [13]_ - 1:18:25_, 1:25:15
_, 1:31:2_, 1:41:13_, 1:50:11
_, 1:58:15_, 1:75:25_,
1:98:25_, 1:102:21_, 1:118:4
_, 1:128:17_, 1:145:9_,
1:150:21
  BLANCHE [29]_ - 1:3:13
_, 1:36:2_, 1:36:22_, 1:36:25
_, 1:39:15_, 1:39:23_, 1:41:3
_, 1:41:17_, 1:42:21_, 1:43:4
_, 1:43:9_, 1:43:11_, 1:45:18
_, 1:45:25_, 1:46:4_, 1:46:9_,
1:46:11_, 1:46:16_, 1:46:24
_, 1:47:12_, 1:47:21_, 1:48:7
_, 1:48:13_, 1:48:17_, 1:85:9
_, 1:93:5, 1:97:1_, 1:97:5_,
1:97:8
  Blanche [12]_ - 1:3:13_,
1:21:14_, 1:21:17_, 1:21:22
_, 1:62:18_, 1:78:7_, 1:81:24
_, 1:82:2_, 1:84:1_, 1:85:7_,
1:92:25_, 1:96:24
  blanket [1]_ - 1:122:2_,
1:133:13_, 1:133:20
  blindly [2]_ - 1:152:19_,

1:152:20
  bloated [2]_ - 1:131:1_,
1:162:14
  blocks [1]_ - 1:37:7
  Boasberg [1]_ - 1:142:25
  bolts [1]_ - 1:121:20
  bona [1]_ - 1:164:18
  bond [1]_ - 1:126:4
  bones [1]_ - 1:130:13
  boot [1]_ - 1:129:4
  bootstrapping [2]_ -
1:91:25_, 1:92:12
  borders [1]_ - 1:44:13
  bottom [1]_ - 1:56:7
  bound [1]_ - 1:99:6
  BOVE [36]_ - 1:62:13_,
1:63:8_, 1:63:11_, 1:64:11_,
1:65:22_, 1:66:9_, 1:66:22_,
1:67:8_, 1:67:20_, 1:68:11_,
1:68:18_, 1:69:2_, 1:70:6_,
1:70:17_, 1:70:23_, 1:71:11
_, 1:73:1_, 1:73:9_, 1:73:19_,
1:75:3_, 1:77:7_, 1:77:16_,
1:147:19_, 1:147:22_,
1:147:25_, 1:148:7, 1:148:13
_, 1:148:18_, 1:149:13_,
1:150:15_, 1:151:6_, 1:152:9
_, 1:153:22_, 1:154:6_,
1:154:16_, 1:154:19
  Bove [18]_ - 1:3:15_,
1:36:4_, 1:40:16_, 1:42:7_,
1:43:23_, 1:44:1_, 1:62:7_,
1:82:11_, 1:85:16_, 1:86:7_,
1:87:6_, 1:87:19_, 1:88:7_,
1:89:17_, 1:147:21_, 1:148:6
_, 1:161:21_, 1:162:11
  Bove's [1]_ - 1:87:21
  box [12]_ - 1:6:15_, 1:43:19
_, 1:54:9_, 1:55:16_, 1:56:24
_, 1:57:4_, 1:57:13_, 1:57:14
_, 1:57:21_, 1:130:22_,
1:139:25_, 1:164:23
  box-type [1]_ - 1:130:22
  boxes [18]_ - 1:30:9_,
1:41:24_, 1:53:20_, 1:55:3_,
1:55:6_, 1:55:13_, 1:55:15_,
1:56:18_, 1:57:15_, 1:57:20
_, 1:58:1_, 1:58:2_, 1:66:3_,
1:83:10_, 1:83:12_, 1:83:19
_, 1:83:25
  Brady [5]_ - 1:56:14_,
1:62:22_, 1:70:9_, 1:105:10
_, 1:109:1
  branch's [1]_ - 1:134:5
  BRATT [80]_ - 1:3:9_,

1:6:9_, 1:7:5_, 1:7:18_, 1:8:5
_, 1:8:10_, 1:8:18_, 1:9:4_,
1:9:7_, 1:10:2_, 1:18:15_,
1:19:1_, 1:19:25_, 1:20:20_,
1:21:9_, 1:21:22_, 1:22:4_,
1:22:7_, 1:22:21_, 1:23:4_,
1:24:1_, 1:24:11_, 1:25:12_,
1:25:19_, 1:25:21_, 1:26:17
_, 1:27:20_, 1:27:24_,
1:28:17_, 1:28:19_, 1:29:10
_, 1:29:19, 1:29:22_, 1:30:4
_, 1:30:11_, 1:30:14_,
1:30:22_, 1:31:6_, 1:31:19_,
1:31:21_, 1:31:25_, 1:32:4_,
1:32:14_, 1:32:22_, 1:33:1_,
1:33:8_, 1:33:10_, 1:34:4_,
1:34:8_, 1:34:21_, 1:34:23_,
1:35:5_, 1:35:8_, 1:35:17_,
1:35:23_, 1:78:4_, 1:78:16_,
1:78:21_, 1:79:3_, 1:79:5_,
1:79:10_, 1:79:13_, 1:79:23
_, 1:80:12, 1:80:25_, 1:81:2
_, 1:81:8_, 1:81:15_, 1:81:18
_, 1:81:23_, 1:82:2, 1:83:1_,
1:83:3_, 1:83:6_, 1:83:8_,
1:83:17_, 1:84:10_, 1:85:12
_, 1:142:18_, 1:142:20

Bratt [22]_ - 1:3:9_, 1:7:2_,
1:9:20_, 1:9:24_, 1:10:16_,
1:18:3_, 1:18:12_, 1:36:1_,
1:40:25_, 1:44:15_, 1:45:4_,
1:45:19_, 1:46:22_, 1:46:25
_, 1:61:6_, 1:71:17_, 1:72:4_,
1:78:3_, 1:107:17_, 1:109:18
_, 1:128:19_, 1:142:17

Bratt's [2]_ - 1:45:10_,
1:46:13

break [5]_ - 1:77:8_, 1:78:1
_, 1:93:2_, 1:93:4_, 1:140:10

brief [19]_ - 1:64:20_,
1:66:12_, 1:66:24_, 1:67:9_,
1:67:20_, 1:67:21_, 1:85:15
_, 1:89:12_, 1:117:25_,
1:122:16_, 1:131:13_,
1:131:14_, 1:134:8_, 1:134:9
_, 1:134:10_, 1:139:7_,
1:139:22

briefed [4]_ - 1:18:23_,
1:41:4_, 1:41:21_, 1:73:1

briefing [10]_ - 1:15:15_,
1:18:19_, 1:20:11_, 1:44:22
_, 1:61:3_, 1:71:13_, 1:75:8_,
1:111:16_, 1:113:25_,
1:147:10

briefly [6]_ - 1:78:6_,
1:81:18_, 1:93:5_, 1:128:19
_, 1:143:6_, 1:144:4

briefs [5]_ - 1:20:9_, 1:65:7
_, 1:77:20_, 1:152:3

bring [8]_ - 1:42:24_,
1:71:20_, 1:72:1_, 1:81:9_,
1:84:21_, 1:153:3_, 1:157:3
_, 1:162:25

brings [1]_ - 1:58:7

broad [6]_ - 1:6:2_, 1:29:6
_, 1:65:14_, 1:95:15_,
1:122:12_, 1:151:4

broad-brush [1]_ -
1:122:12

broader [2]_ - 1:60:5_,
1:88:21

broadly [3]_ - 1:52:9_,
1:60:7_, 1:100:8

broken [1]_ - 1:132:5

brought [5]_ - 1:62:1_,
1:77:21_, 1:105:21_,
1:108:10_, 1:159:18

brush [1]_ - 1:122:12

bucket [1]_ - 1:142:9

built [3]_ - 1:42:10_,
1:42:14_, 1:45:3

built-in [1]_ - 1:42:14

bunch [1]_ - 1:13:23

burden [19]_ - 1:16:1_,
1:16:10_, 1:67:15_, 1:67:16
_, 1:69:25_, 1:70:10_,
1:70:12_, 1:71:23_, 1:72:7_,
1:77:16_, 1:106:8_, 1:130:1
_, 1:139:13_, 1:146:9_,
1:146:16_, 1:150:16_,
1:152:1_, 1:161:1

Bureau [1]_ - 1:27:14

business [2]_ - 1:56:12_,
1:84:22

# C

calendar [4]_ - 1:39:2_,
1:40:3_, 1:45:19_, 1:48:22

camera [4]_ - 1:6:1_,
1:84:25_, 1:105:6_, 1:105:8

camp [1]_ - 1:163:14

campaign [2]_ - 1:37:7_,
1:37:14

campaigning [2]_ -
1:36:18_, 1:148:4

canceled [1]_ - 1:47:15

candidate [1]_ - 1:93:13

Cannon [1]_ - 1:163:8

cannot [7]_ - 1:34:12_,
1:35:21_, 1:53:24_, 1:72:13
_, 1:100:6_, 1:119:4_,
1:157:4

capable [1]_ - 1:54:19

capacity [1]_ - 1:90:17

care [1]_ - 1:90:7

careful [2]_ - 1:20:20_,
1:130:21

carefully [2]_ - 1:67:6_,
1:98:14

Carlos [1]_ - 1:3:5

carries [2]_ - 1:14:1_,
1:136:13

carrying [1]_ - 1:30:17

carve [2]_ - 1:118:18_,
1:118:23

carve-out [1]_ - 1:118:23

carved [1]_ - 1:99:13

cascade [1]_ - 1:103:9

cascading [4]_ - 1:62:15_,
1:85:19_, 1:85:23_, 1:103:8

case [200]_ - 1:3:3_, 1:3:5_,
1:4:19_, 1:5:22_, 1:5:25_,
1:6:18_, 1:9:8_, 1:11:4_,
1:11:14_, 1:13:3_, 1:15:1_,
1:16:13_, 1:16:17_, 1:16:23
_, 1:21:22_, 1:21:23_,
1:22:14_, 1:22:24_, 1:23:15
_, 1:25:7_, 1:25:9_, 1:25:10_,
1:25:24_, 1:26:11_, 1:27:15
_, 1:27:18_, 1:27:25_, 1:28:3
_, 1:28:9_, 1:28:11_, 1:28:13
_, 1:29:1_, 1:29:5_, 1:29:24_,
1:30:3_, 1:30:12_, 1:30:16_,
1:30:18_, 1:30:25_, 1:31:2_,
1:36:21_, 1:36:24_, 1:37:19
_, 1:37:23_, 1:42:22_,
1:43:15_, 1:45:14_, 1:48:1_,
1:49:15_, 1:49:22_, 1:52:23
_, 1:53:2_, 1:53:24_, 1:57:5_,
1:59:5_, 1:61:8_, 1:61:23_,
1:62:17_, 1:62:19_, 1:63:7_,
1:64:6_, 1:64:13_, 1:64:18_,
1:65:17_, 1:66:11_, 1:67:12
_, 1:68:24_, 1:69:7_, 1:71:25
_, 1:72:6_, 1:73:11_, 1:74:3_,
1:74:20_, 1:77:9_, 1:81:3_,
1:81:9_, 1:82:5_, 1:82:9_,
1:82:13_, 1:84:9_, 1:84:17_,
1:84:19_, 1:84:20_, 1:84:21
_, 1:85:2_, 1:85:21_, 1:86:20
_, 1:86:22_, 1:86:24_,
1:87:25_, 1:89:8_, 1:90:7_,
1:92:3_, 1:92:15_, 1:97:20_,
1:98:5_, 1:98:8_, 1:99:2_,
1:99:6_, 1:99:7_, 1:99:11_,
1:99:13_, 1:99:18_, 1:100:2
_, 1:100:9_, 1:100:17_,
1:101:6_, 1:101:8_, 1:101:11
_, 1:101:16_, 1:102:9_,

1:102:11_, 1:102:19_,
1:102:22_, 1:104:7_,
1:104:12_, 1:104:17_,
1:105:2_, 1:105:14_,
1:106:16_, 1:106:19_,
1:106:25_, 1:107:2_,
1:107:19_, 1:107:22_,
1:108:2_, 1:108:7_, 1:108:8
_, 1:108:9_, 1:108:17_,
1:108:20_, 1:109:10_,
1:111:6_, 1:111:9_, 1:111:12
_, 1:112:12_, 1:115:15_,
1:115:21_, 1:115:22_,
1:115:23_, 1:115:24_,
1:117:4_, 1:117:6_, 1:118:5
_, 1:120:1_, 1:120:19_,
1:121:15_, 1:122:7_,
1:122:25_, 1:123:18_,
1:124:7_, 1:124:18_,
1:125:25_, 1:126:5_, 1:126:9
_, 1:134:4_, 1:134:19_,
1:134:21_, 1:135:8_,
1:135:15_, 1:140:15_,
1:143:12_, 1:144:25_,
1:145:9_, 1:150:4_, 1:150:11
_, 1:150:20_, 1:151:8_,
1:151:10_, 1:151:14_,
1:151:19_, 1:151:21_,
1:152:16_, 1:152:23_,
1:155:13_, 1:155:16_,
1:155:24_, 1:155:25_,
1:156:18_, 1:156:20_,
1:156:23_, 1:157:12_,
1:157:19_, 1:159:1_,
1:159:13_, 1:159:15_,
1:159:19_, 1:159:23_,
1:160:5_, 1:161:17_,
1:161:19

case-by-case [1]_ -
1:65:17

case-related [1]_ -
1:37:19

cases [45]_ - 1:25:5_,
1:26:6_, 1:26:22_, 1:26:23_,
1:62:1_, 1:74:23_, 1:80:15_,
1:81:10_, 1:91:1_, 1:95:3_,
1:97:14_, 1:98:22_, 1:99:25
_, 1:100:18_, 1:100:24_,
1:101:16_, 1:103:4_,
1:103:22_, 1:103:23_,
1:104:3_, 1:104:4_, 1:108:8
_, 1:109:6_, 1:109:7_,
1:113:24_, 1:115:7_,
1:118:14_, 1:120:23_,
1:121:12_, 1:123:12_,
1:123:19_, 1:133:8_,
1:133:19_, 1:133:21_,
1:133:22_, 1:134:4_, 1:134:7
_, 1:134:8_, 1:134:9_,
1:138:19_, 1:139:10_,

1:151:2_, 1:159:24

Cassisi [1]_ - 1:96:20

cast [2]_ - 1:71:16_, 1:100:12

categories [9]_ - 1:110:14 _, 1:119:7_, 1:121:21_, 1:124:22_, 1:132:7_, 1:132:8 _, 1:136:3_, 1:140:11_, 1:144:2

category [7]_ - 1:99:3_, 1:99:4_, 1:128:12_, 1:132:11 _, 1:132:18_, 1:141:13_, 1:154:13

caucus [1]_ - 1:6:13

central [3]_ - 1:23:14_, 1:100:16_, 1:104:22

certain [6]_ - 1:18:21_, 1:26:19_, 1:77:1_, 1:86:10_, 1:120:12_, 1:152:6

certainly [14]_ - 1:26:17_, 1:43:24_, 1:46:19_, 1:48:4_, 1:48:24_, 1:51:5_, 1:52:23_, 1:62:21_, 1:67:1_, 1:77:1_, 1:82:14_, 1:86:25_, 1:93:18 _, 1:165:2

cetera [3]_ - 1:27:1_, 1:28:12_, 1:102:14

chain [1]_ - 1:21:2

chains [2]_ - 1:20:24_, 1:20:25

challenge [5]_ - 1:46:18_, 1:46:19_, 1:112:1_, 1:134:18 _, 1:165:1

challenges [4]_ - 1:41:12 _, 1:41:20_, 1:131:25_, 1:141:24

challenging [1]_ - 1:133:4

chance [3]_ - 1:85:8_, 1:96:8_, 1:140:5

change [1]_ - 1:124:19

changes [1]_ - 1:149:2

Chapter [1]_ - 1:80:9

characteristic [1]_ - 1:129:15

characterize [2]_ - 1:86:17_, 1:98:7

characterizes [1]_ - 1:24:23

characters [1]_ - 1:71:16

charge [3]_ - 1:12:20_, 1:72:2_, 1:154:21

charged [4]_ - 1:13:6_, 1:43:15_, 1:80:16_, 1:81:11

charges [4]_ - 1:66:16_,

1:69:11_, 1:71:20_, 1:93:11

chart [2]_ - 1:31:20_, 1:131:22

charting [1]_ - 1:151:10

check [1]_ - 1:101:25

checked [1]_ - 1:80:2

cherry [1]_ - 1:153:11_, 1:161:20

cherry-pick [1]_ - 1:161:20

cherry-picking [1]_ - 1:153:11

Chicago [17]_ - 1:99:6_, 1:99:8_, 1:99:10_, 1:104:6_, 1:104:12_, 1:113:24_, 1:115:9_, 1:115:10_, 1:118:5 _, 1:121:7_, 1:122:19_, 1:123:10_, 1:123:24_, 1:124:7_, 1:124:18_, 1:148:19_, 1:154:7

chided [1]_ - 1:136:8

Chief [1]_ - 1:142:25

chief [3]_ - 1:29:13_, 1:29:14_, 1:159:12

chiefs [1]_ - 1:80:18

childcare [1]_ - 1:61:11

children [1]_ - 1:61:10

choice [3]_ - 1:21:24_, 1:22:1

choose [1]_ - 1:45:21

choosing [1]_ - 1:39:1

Chris [1]_ - 1:3:15

Christopher [1]_ - 1:92:7

CIA [5]_ - 1:24:12_, 1:26:8 _, 1:27:1_, 1:64:1_, 1:90:5

CIPA [45]_ - 1:5:7_, 1:23:4 _, 1:23:6_, 1:23:13_, 1:23:14 _, 1:23:19_, 1:23:25_, 1:24:3 _, 1:31:6_, 1:31:7_, 1:31:10_, 1:31:11_, 1:31:14_, 1:32:1_, 1:32:2_, 1:32:5_, 1:32:13_, 1:32:15_, 1:32:16_, 1:32:19 _, 1:32:20_, 1:32:23_, 1:32:24_, 1:33:23_, 1:34:12 _, 1:34:18_, 1:34:23_, 1:34:24_, 1:35:10_, 1:35:15 _, 1:35:19_, 1:35:23_, 1:36:7 _, 1:38:2_, 1:43:23_, 1:44:1_, 1:45:17_, 1:45:24_, 1:46:3_, 1:46:23_, 1:53:3_, 1:53:4_, 1:59:1_, 1:60:6

circling [1]_ - 1:18:3

circuit [2]_ - 1:119:16_, 1:119:18

Circuit [23]_ - 1:9:18_, 1:23:13_, 1:25:13_, 1:26:6_, 1:32:7_, 1:38:22_, 1:38:23_, 1:38:25_, 1:65:23_, 1:100:19 _, 1:101:1_, 1:103:23_, 1:103:24_, 1:105:3_, 1:105:4 _, 1:109:6_, 1:119:18_, 1:120:19_, 1:120:25_, 1:121:19_, 1:123:11

Circuit's [3]_ - 1:26:10_, 1:119:25_, 1:120:7

circuits [3]_ - 1:32:8_, 1:121:5_, 1:123:2

circumstance [2]_ - 1:86:23_, 1:98:17

circumstances [6]_ - 1:59:5_, 1:88:1_, 1:89:8_, 1:90:7_, 1:92:18_, 1:163:25

circumvent [1]_ - 1:92:20

cite [8]_ - 1:14:16_, 1:20:2 _, 1:87:25_, 1:99:25_, 1:129:3_, 1:131:12_, 1:131:14_, 1:131:16

cited [24]_ - 1:15:2_, 1:20:8 _, 1:25:6_, 1:65:24_, 1:79:25 _, 1:86:25_, 1:87:25_, 1:98:22_, 1:101:3_, 1:101:16 _, 1:104:4_, 1:105:3_, 1:108:7_, 1:124:14_, 1:133:8 _, 1:134:8_, 1:134:10_, 1:148:19_, 1:149:9_, 1:149:13_, 1:161:18

citing [1]_ - 1:113:25

civil [14]_ - 1:26:14_, 1:99:7 _, 1:99:11_, 1:99:20_, 1:99:21_, 1:101:8_, 1:102:22 _, 1:104:7_, 1:118:5_, 1:123:22_, 1:123:23_, 1:124:3_, 1:124:7_, 1:124:18

civil/criminal [1]_ - 1:115:3

claim [7]_ - 1:14:14_, 1:15:11_, 1:15:12_, 1:16:19 _, 1:116:14_, 1:147:12

claimed [1]_ - 1:127:7

claims [1]_ - 1:43:17

clarify [2]_ - 1:68:8_, 1:102:4

clarity [1]_ - 1:29:9

classic [1]_ - 1:91:25

classically [1]_ - 1:105:18

classification [1]_ - 1:54:12_, 1:54:20_, 1:54:25 _, 1:55:4_, 1:55:10_, 1:55:20 _, 1:56:1_, 1:56:2_, 1:56:23_, 1:56:25_, 1:57:6_, 1:57:11_,

1:57:18_, 1:57:22_, 1:75:5_, 1:75:10_, 1:76:7_, 1:76:18_, 1:76:23_, 1:77:3_, 1:77:4

classified [50]_ - 1:8:25_, 1:23:8_, 1:23:11_, 1:23:18_, 1:24:24_, 1:24:25_, 1:32:9_, 1:33:4_, 1:33:14_, 1:33:15_, 1:33:19_, 1:34:13_, 1:35:7_, 1:42:22_, 1:43:16_, 1:45:1_, 1:47:3_, 1:47:7_, 1:52:11_, 1:53:5_, 1:53:9_, 1:53:10_, 1:53:15_, 1:53:20_, 1:53:23 _, 1:54:5_, 1:54:7_, 1:54:8_, 1:54:10_, 1:56:3_, 1:56:19_, 1:57:4_, 1:57:12_, 1:57:16_, 1:57:23_, 1:64:2_, 1:71:2_, 1:71:12_, 1:71:14_, 1:75:7_, 1:76:8_, 1:76:11_, 1:76:16_, 1:76:18_, 1:77:13_, 1:83:22 _, 1:97:22_, 1:101:23

Classified [5]_ - 1:71:5_, 1:75:8_, 1:76:9_, 1:76:16

clear [15]_ - 1:35:18_, 1:36:9_, 1:75:13_, 1:95:8_, 1:98:3_, 1:98:19_, 1:99:10_, 1:120:25_, 1:122:19_, 1:149:15_, 1:158:25_, 1:164:17_, 1:164:20_, 1:164:24

clearer [1]_ - 1:32:7

clearly [4]_ - 1:110:25_, 1:121:2_, 1:121:23_, 1:124:2

clerk's [4]_ - 1:79:16_, 1:79:22_, 1:80:3

clerks [1]_ - 1:162:23

client [1]_ - 1:54:19_, 1:54:20_, 1:56:9_, 1:160:2

client's [1]_ - 1:39:3

clients [1]_ - 1:83:15

close [6]_ - 1:4:13_, 1:30:11_, 1:37:24_, 1:75:12 _, 1:85:11_, 1:87:23

closely [6]_ - 1:26:25_, 1:28:14_, 1:42:23_, 1:43:17 _, 1:57:1_, 1:64:3

closer [5]_ - 1:36:16_, 1:36:17_, 1:37:17_, 1:73:9_, 1:86:8

closure [6]_ - 1:18:24_, 1:106:18_, 1:106:20_, 1:133:9_, 1:135:2_, 1:146:17

closures [1]_ - 1:103:9

cloud [3]_ - 1:50:5_, 1:50:8 _, 1:50:12

co [2]_ - 1:3:15_, 1:133:11

co-counsel [1]_ - 1:3:15

co-defendant [1] - 1:133:11

Coalition [13] - 1:5:21..., 1:20:12..., 1:50:25..., 1:51:6..., 1:95:6..., 1:96:8..., 1:97:12..., 1:110:20..., 1:113:20..., 1:121:18..., 1:148:19..., 1:151:8..., 1:152:22

coding [1] - 1:6:12

cognizant [1] - 1:113:2

collaborate [1] - 1:76:4

collaborated [2] - 1:61:17..., 1:65:21

collaboration [3] - 1:12:4..., 1:13:11..., 1:90:25

colleague [1] - 1:126:17..., 1:161:20

colleagues [2] - 1:82:9..., 1:160:2

collect [2] - 1:50:16..., 1:64:1

collected [1] - 1:50:17

collecting [1] - 1:14:6

collection [1] - 1:66:3

collects [1] - 1:15:6

Collins [1] - 1:23:13

color [1] - 1:6:12

colorable [3] - 1:11:25..., 1:67:11..., 1:87:23

Columbia [2] - 1:157:19..., 1:157:21

combinations [1] - 1:110:9

combined [1] - 1:4:17

comfort [3] - 1:24:5..., 1:24:20..., 1:93:3

comfortable [2] - 1:71:21..., 1:72:3

comfortably [1] - 1:13:1

coming [2] - 1:48:10..., 1:68:6

command [1] - 1:151:7

commences [1] - 1:46:23

commencing [1] - 1:35:11

comment [2] - 1:61:7..., 1:122:15

committed [1] - 1:95:8

common [19] - 1:98:11..., 1:101:14..., 1:102:2..., 1:103:2..., 1:104:1..., 1:104:14..., 1:105:4..., 1:106:2..., 1:113:23

..., 1:115:20..., 1:117:22..., 1:120:13..., 1:122:20..., 1:123:9..., 1:123:15..., 1:128:9..., 1:130:5..., 1:141:8..., 1:150:25

communicating [2] - 1:76:22..., 1:131:15

communication [1] - 1:163:6

Community [12] - 1:11:20..., 1:12:10..., 1:12:18..., 1:13:4..., 1:13:24..., 1:26:16..., 1:26:18..., 1:64:14..., 1:64:24..., 1:65:4..., 1:71:20..., 1:72:20

Community's [2] - 1:77:18..., 1:82:8

compact [1] - 1:93:15

company [1] - 1:121:5

compel [56] - 1:5:11..., 1:5:12..., 1:6:23..., 1:8:9..., 1:8:15..., 1:8:25..., 1:10:9..., 1:10:15..., 1:11:9..., 1:15:12..., 1:15:21..., 1:17:8..., 1:17:12..., 1:23:9..., 1:23:23..., 1:36:4..., 1:36:7..., 1:40:16..., 1:40:18..., 1:41:14..., 1:42:7..., 1:49:8..., 1:49:17..., 1:49:21..., 1:60:18..., 1:62:8..., 1:63:16..., 1:68:25..., 1:69:4..., 1:69:16..., 1:69:17..., 1:73:18..., 1:77:12..., 1:77:25..., 1:81:21..., 1:86:3..., 1:88:12..., 1:94:20..., 1:94:25..., 1:98:1..., 1:99:2..., 1:102:6..., 1:102:11..., 1:104:21..., 1:110:20..., 1:114:23..., 1:117:17..., 1:119:19..., 1:119:24..., 1:125:3..., 1:125:10..., 1:128:21..., 1:146:10..., 1:146:13..., 1:154:4..., 1:154:8

compelled [2] - 1:17:1..., 1:137:4

compelling [5] - 1:95:9..., 1:102:24..., 1:106:5..., 1:122:5..., 1:123:6

competing [6] - 1:5:2..., 1:9:11..., 1:19:14..., 1:106:5..., 1:106:24..., 1:107:8

complained [2] - 1:156:2..., 1:156:7

complaint [1] - 1:81:4

complete [3] - 1:61:4..., 1:93:22..., 1:153:12

completely [11] - 1:36:14..., 1:37:19..., 1:40:11..., 1:44:25..., 1:49:2..., 1:63:2...,

..., 1:66:18..., 1:110:19..., 1:114:18..., 1:149:7..., 1:149:14

completeness [1] - 1:162:15

complex [1] - 1:5:1

compliance [7] - 1:63:8..., 1:63:18..., 1:63:19..., 1:67:14..., 1:70:1..., 1:80:12..., 1:80:18

complicated [8] - 1:7:23..., 1:19:23..., 1:42:1..., 1:44:23..., 1:61:21..., 1:120:24..., 1:121:3..., 1:164:24

complication [1] - 1:141:19

complied [1] - 1:86:14..., 1:88:14

comply [2] - 1:32:15..., 1:62:22

component [5] - 1:76:12..., 1:76:13..., 1:76:15..., 1:76:17..., 1:76:23

component's [1] - 1:77:2

components [3] - 1:12:10..., 1:24:17..., 1:73:25

composition [1] - 1:64:12

comprehensive [2] - 1:133:24..., 1:160:11

computer [1] - 1:25:25

conceal [1] - 1:54:6

concealing [1] - 1:55:6

concede [3] - 1:63:12..., 1:76:5..., 1:105:17

conceivable [1] - 1:61:2

conceivably [1] - 1:56:5

conceive [1] - 1:67:4

concept [1] - 1:55:2

concern [6] - 1:59:22..., 1:86:7..., 1:88:25..., 1:111:14..., 1:111:15..., 1:132:22

concerned [5] - 1:19:18..., 1:99:11..., 1:121:22..., 1:122:2..., 1:153:25

concerning [1] - 1:106:25

concerns [12] - 1:104:22..., 1:107:10..., 1:133:7..., 1:133:10..., 1:134:20..., 1:135:16..., 1:141:2..., 1:145:14..., 1:149:24..., 1:157:14..., 1:159:15...,

..., 1:164:12

concession [3] - 1:53:19..., 1:58:3..., 1:92:5

concessions [1] - 1:53:17

concluded [1] - 1:165:14

concluding [1] - 1:95:1

conclusion [2] - 1:115:24..., 1:119:13

concrete [2] - 1:90:2..., 1:133:6

concurrent [1] - 1:104:23

condition [1] - 1:135:1

conduct [2] - 1:69:11..., 1:72:24

conducted [2] - 1:46:23..., 1:160:20

conducting [1] - 1:91:2

confer [2] - 1:51:18..., 1:52:4

conference [2] - 1:4:17..., 1:4:23

conferral [1] - 1:139:22

conferrals [1] - 1:130:20

conferred [1] - 1:139:19

confidence [1] - 1:97:15

confidential [2] - 1:136:25..., 1:164:4

confidentiality [1] - 1:111:7

conflicting [1] - 1:38:22

confused [1] - 1:58:15

confusing [1] - 1:107:25

confusion [1] - 1:10:5

conjunction [1] - 1:142:20

connected [2] - 1:77:25..., 1:111:12

connection [8] - 1:29:5..., 1:30:16..., 1:90:25..., 1:97:21..., 1:97:25..., 1:104:19..., 1:126:18..., 1:141:1

connections [1] - 1:91:4

consent [3] - 1:94:4..., 1:149:19..., 1:156:25

consequences [1] - 1:64:18

consider [3] - 1:21:3..., 1:61:5..., 1:98:7

consideration [1] - 1:8:2

considerations [1] -

1:154:21

considered [6]... - 1:35:13..., 1:95:3..., 1:99:16..., 1:101:8..., 1:104:15..., 1:121:25

consist [2]... - 1:5:12..., 1:6:25

consistent [5]... - 1:16:11..., 1:19:17..., 1:55:22..., 1:55:24..., 1:149:21

consists [1]... - 1:27:13

consolidated [1]... - 1:5:12

conspired [1]... - 1:54:6

constant [1]... - 1:18:24

constantly [1]... - 1:50:5

Constitution [1]... - 1:111:1

constitutional [4]... - 1:99:19..., 1:103:2..., 1:106:24..., 1:107:8

constraint [1]... - 1:39:20

consult [1]... - 1:80:13

consultation [1]... - 1:11:20

consultations [1]... - 1:56:8

consulted [1]... - 1:31:1

consulting [1]... - 1:13:5

consults [1]... - 1:72:19

contact [10]... - 1:24:14..., 1:29:13..., 1:29:14..., 1:66:14..., 1:66:15..., 1:66:23..., 1:71:9..., 1:73:20..., 1:73:21..., 1:126:20

contacted [1]... - 1:66:13

contained [3]... - 1:56:18..., 1:57:15..., 1:138:16

containing [1]... - 1:136:25

contemplate [2]... - 1:56:14..., 1:59:21

contemplated [1]... - 1:66:10

contemplates [4]... - 1:58:19..., 1:139:18..., 1:139:19..., 1:149:18

contemplation [1]... - 1:66:16

contemporaneous [1]... - 1:67:22

content [6]... - 1:53:22..., 1:55:9..., 1:55:15..., 1:59:6..., 1:67:2..., 1:73:24

contents [5]... - 1:55:13...,

1:55:14..., 1:57:20..., 1:58:1..., 1:58:2

contest [2]... - 1:75:13..., 1:77:19

contested [1]... - 1:5:13

context [17]... - 1:10:15..., 1:88:12..., 1:89:6..., 1:94:25..., 1:99:9..., 1:99:20..., 1:100:20..., 1:101:21..., 1:102:18..., 1:104:8..., 1:118:7..., 1:118:16..., 1:119:19..., 1:120:9..., 1:120:18..., 1:161:19

contexts [1]... - 1:104:10

continuance [1]... - 1:47:20

continue [6]... - 1:34:16..., 1:36:10..., 1:75:13..., 1:86:14..., 1:106:7..., 1:159:17

continued [3]... - 1:29:15..., 1:84:5..., 1:151:18

continues [1]... - 1:49:21

continuing [1]... - 1:160:22

continuous [1]... - 1:52:19

contract [1]... - 1:114:10

contrary [1]... - 1:14:15

contrast [1]... - 1:20:9

contribution [1]... - 1:20:12

control [6]... - 1:5:16..., 1:39:3..., 1:81:2..., 1:81:8..., 1:92:5..., 1:92:7

controlling [1]... - 1:116:21

controls [1]... - 1:124:18

controversial [1]... - 1:113:17

conversations [1]... - 1:71:19

converted [1]... - 1:116:14

conviction [2]... - 1:105:11..., 1:109:13

convince [1]... - 1:57:3

coordinate [1]... - 1:91:3

coordinating [3]... - 1:72:16..., 1:74:1..., 1:74:15

coordination [2]... - 1:72:16..., 1:74:4

copy [1]... - 1:118:19

Cordell [1]... - 1:74:23

cornerstones [1]... - 1:97:19

correct [31]... - 1:7:19..., 1:30:14..., 1:34:21..., 1:37:1..., 1:43:8..., 1:43:9..., 1:43:11...,

1:44:15..., 1:45:25..., 1:54:4..., 1:60:23..., 1:62:18..., 1:70:5..., 1:80:25..., 1:83:1..., 1:83:3..., 1:83:6..., 1:83:8..., 1:97:13..., 1:98:16..., 1:109:14..., 1:118:8..., 1:123:1..., 1:124:16..., 1:129:7..., 1:141:3..., 1:143:8..., 1:145:4..., 1:146:12..., 1:156:14..., 1:160:14

correctly [1]... - 1:85:3

correspondence [1]... - 1:73:22

counsel [31]... - 1:3:8..., 1:3:14..., 1:3:15..., 1:5:10..., 1:6:7..., 1:16:9..., 1:21:8..., 1:21:24..., 1:22:2..., 1:35:12..., 1:37:10..., 1:38:21..., 1:39:1..., 1:39:25..., 1:42:18..., 1:44:18..., 1:45:7..., 1:52:10..., 1:52:25..., 1:54:19..., 1:55:7..., 1:61:18..., 1:62:5..., 1:66:4..., 1:73:22..., 1:73:25..., 1:95:16..., 1:95:21..., 1:147:17..., 1:155:23..., 1:155:24

Counsel [47]... - 1:3:8..., 1:6:8..., 1:11:21..., 1:12:19..., 1:13:6..., 1:20:18..., 1:27:8..., 1:29:2..., 1:29:15..., 1:30:21..., 1:32:17..., 1:36:6..., 1:37:1..., 1:38:20..., 1:39:25..., 1:45:11..., 1:45:12..., 1:45:25..., 1:46:17..., 1:51:19..., 1:53:2..., 1:53:7..., 1:53:8..., 1:53:16..., 1:54:12..., 1:55:8..., 1:58:3..., 1:58:9..., 1:58:18..., 1:59:4..., 1:59:22..., 1:61:23..., 1:65:21..., 1:68:8..., 1:73:17..., 1:77:24..., 1:85:5..., 1:93:14..., 1:93:17..., 1:93:21..., 1:94:3..., 1:94:14..., 1:95:1..., 1:95:5..., 1:95:20..., 1:120:15..., 1:159:20

counsel's [1]... - 1:24:13

Counsel's [18]... - 1:14:8..., 1:26:16..., 1:26:18..., 1:27:13..., 1:27:22..., 1:38:14..., 1:40:7..., 1:49:18..., 1:50:22..., 1:51:6..., 1:51:25..., 1:66:1..., 1:71:3..., 1:76:22..., 1:80:19..., 1:91:13..., 1:102:5..., 1:161:3

count [1]... - 1:5:6

counter [1]... - 1:67:18

counterintelligence [2]... - 1:28:5..., 1:29:12

countervailing [1]... - 1:14:19

country [1]... - 1:69:8

couple [15]... - 1:13:16..., 1:17:9..., 1:23:1..., 1:28:6...,

1:33:25..., 1:35:17..., 1:49:13..., 1:78:6..., 1:80:1..., 1:81:19..., 1:87:11..., 1:89:15..., 1:114:25..., 1:126:2..., 1:162:10

coupled [1]... - 1:147:10

course [40]... - 1:4:11..., 1:6:24..., 1:7:3..., 1:18:20..., 1:22:19..., 1:23:24..., 1:39:17..., 1:41:17..., 1:56:9..., 1:85:2..., 1:85:23..., 1:88:19..., 1:91:1..., 1:91:18..., 1:94:13..., 1:94:19..., 1:95:11..., 1:99:21..., 1:100:10..., 1:100:22..., 1:100:25..., 1:101:11..., 1:103:19..., 1:107:16..., 1:108:21..., 1:110:1..., 1:111:19..., 1:114:22..., 1:120:19..., 1:120:22..., 1:121:25..., 1:132:23..., 1:133:5..., 1:135:21..., 1:138:15..., 1:145:3..., 1:145:16..., 1:151:11..., 1:153:7..., 1:165:3

Court [121]... - 1:3:1..., 1:6:10..., 1:7:5..., 1:7:6..., 1:9:10..., 1:10:19..., 1:10:23..., 1:11:14..., 1:15:21..., 1:16:18..., 1:17:14..., 1:19:7..., 1:19:12..., 1:20:7..., 1:20:10..., 1:20:12..., 1:20:15..., 1:21:3..., 1:21:15..., 1:22:23..., 1:23:17..., 1:24:2..., 1:24:4..., 1:33:13..., 1:33:18..., 1:34:11..., 1:34:12..., 1:34:17..., 1:36:3..., 1:36:16..., 1:38:1..., 1:38:10..., 1:41:7..., 1:41:9..., 1:41:19..., 1:42:2..., 1:42:5..., 1:42:17..., 1:43:5..., 1:43:12..., 1:44:10..., 1:44:16..., 1:44:23..., 1:47:10..., 1:47:12..., 1:47:15..., 1:47:25..., 1:48:3..., 1:48:23..., 1:49:20..., 1:51:20..., 1:54:13..., 1:58:12..., 1:58:21..., 1:60:12..., 1:61:24..., 1:74:23..., 1:82:5..., 1:82:12..., 1:84:23..., 1:92:14..., 1:92:15..., 1:92:20..., 1:93:15..., 1:94:16..., 1:94:24..., 1:95:4..., 1:95:8..., 1:95:11..., 1:96:11..., 1:97:12..., 1:98:13..., 1:99:16..., 1:101:4..., 1:103:22..., 1:104:18..., 1:104:24..., 1:105:7..., 1:105:11..., 1:105:21..., 1:105:23..., 1:106:3..., 1:107:9..., 1:108:6..., 1:108:10..., 1:108:19..., 1:108:21..., 1:110:14..., 1:110:18..., 1:113:7..., 1:113:10..., 1:114:11..., 1:116:2..., 1:116:13...,

1:117:25_, 1:119:3_, 1:121:6
_, 1:128:24_, 1:130:23_,
1:132:21_, 1:134:21_,
1:136:24_, 1:140:24_,
1:143:18_, 1:143:25_,
1:149:23_, 1:151:8_,
1:152:21_, 1:156:10_,
1:159:13_, 1:159:14_,
1:160:1_, 1:160:16_,
1:160:22_, 1:161:22_,
1:161:23_, 1:161:25_,
1:162:3_, 1:162:15_, 1:165:3

court [20]_ - 1:4:7_,
1:18:24_, 1:22:11_, 1:22:13
_, 1:24:21_, 1:39:6_, 1:43:3_,
1:60:9_, 1:62:25_, 1:93:2_,
1:111:12_, 1:112:15_,
1:134:14_, 1:138:17_,
1:141:22_, 1:142:9_,
1:159:11_, 1:160:9_,
1:165:10

COURT [330]_ - 1:3:2_,
1:3:7_, 1:3:11_, 1:3:16_,
1:3:19_, 1:3:22_, 1:6:21_,
1:7:16_, 1:7:24_, 1:8:8_,
1:8:14_, 1:9:2_, 1:9:6_,
1:9:16_, 1:9:23_, 1:11:3_,
1:11:18_, 1:11:24_, 1:12:16
_, 1:12:22_, 1:12:25_, 1:13:9
_, 1:13:20_, 1:16:5_, 1:16:21
_, 1:18:2_, 1:18:6_, 1:18:17_,
1:19:13_, 1:20:17_, 1:21:6_,
1:21:21_, 1:22:1_, 1:22:5_,
1:22:15_, 1:23:3_, 1:23:21_,
1:24:7_, 1:25:10_, 1:25:17_,
1:25:20_, 1:26:10_, 1:27:6_,
1:27:21_, 1:28:15_, 1:28:18
_, 1:29:3_, 1:29:17_, 1:29:20
_, 1:29:23_, 1:30:7_, 1:30:13
_, 1:30:20_, 1:30:24_,
1:31:16_, 1:31:20_, 1:31:22
_, 1:32:3_, 1:32:11_, 1:32:17
_, 1:32:25_, 1:33:6_, 1:33:9_,
1:34:2_, 1:34:6_, 1:34:19_,
1:34:22_, 1:35:4_, 1:35:6_,
1:35:9_, 1:35:22_, 1:36:1_,
1:36:20_, 1:36:23_, 1:39:14
_, 1:39:20_, 1:40:23_,
1:41:13_, 1:42:19_, 1:43:2_,
1:43:6_, 1:43:10_, 1:45:16_,
1:45:23_, 1:46:1_, 1:46:8_,
1:46:10_, 1:46:13_, 1:46:22
_, 1:47:9_, 1:47:18_, 1:48:6_,
1:48:11_, 1:48:15_, 1:49:5_,
1:49:25_, 1:50:20_, 1:51:2_,
1:51:16_, 1:52:6_, 1:52:8_,
1:52:14_, 1:53:12_, 1:53:25,
1:55:11_, 1:55:14_, 1:55:17
_, 1:55:21_, 1:56:5_, 1:57:7_,
1:58:14_, 1:58:25_, 1:59:14

_, 1:60:5, 1:60:19_, 1:60:21
_, 1:61:13_, 1:62:4_, 1:62:7_,
1:63:6_, 1:63:10_, 1:64:7_,
1:65:13_, 1:66:7_, 1:66:20_,
1:67:4_, 1:67:17_, 1:68:4_,
1:68:16_, 1:68:19_, 1:70:4_,
1:70:16_, 1:70:21_, 1:71:7_,
1:72:22_, 1:73:8_, 1:73:12_,
1:75:1_, 1:77:6_, 1:77:11_,
1:77:23_, 1:78:14_, 1:78:20
_, 1:78:25_, 1:79:4_, 1:79:9_,
1:79:11_, 1:79:20_, 1:80:6_,
1:80:22_, 1:81:1_, 1:81:6_,
1:81:12_, 1:81:16_, 1:81:20
_, 1:82:1_, 1:82:24_, 1:83:2_,
1:83:4_, 1:83:7_, 1:83:16_,
1:84:8_, 1:84:22_, 1:85:10_,
1:85:13_, 1:87:14_, 1:88:16
_, 1:88:19_, 1:90:16_,
1:90:20_, 1:91:5_, 1:92:23_,
1:94:6_, 1:94:9_, 1:95:24_,
1:96:5_, 1:96:12_, 1:96:19_,
1:96:23_, 1:97:2_, 1:97:9_,
1:98:25_, 1:100:18_,
1:100:22_, 1:102:4_, 1:104:2
_, 1:104:6_, 1:104:25_,
1:106:17_, 1:107:14_,
1:107:24_, 1:109:10_,
1:109:16_, 1:109:21_,
1:109:23_, 1:110:1_,
1:111:19_, 1:111:22_,
1:112:1_, 1:114:1_, 1:114:9
_, 1:115:5_, 1:115:12_,
1:115:16_, 1:116:4_, 1:116:9
_, 1:116:11_, 1:116:23_,
1:117:1_, 1:117:12_, 1:118:3
_, 1:118:9_, 1:118:12_,
1:118:17_, 1:118:25_,
1:119:3_, 1:119:16_,
1:119:21_, 1:120:2_, 1:120:9
_, 1:120:18_, 1:121:17_,
1:122:22_, 1:122:25_,
1:123:2_, 1:123:6_, 1:123:12
_, 1:123:16_, 1:124:2_,
1:124:6_, 1:124:20_,
1:125:24_, 1:126:10_,
1:126:15_, 1:126:20_,
1:126:23_, 1:126:25_,
1:127:4_, 1:127:10_,
1:127:14_, 1:127:20_,
1:128:7_, 1:128:13_, 1:129:5
_, 1:129:25_, 1:130:3_,
1:130:8_, 1:130:12_,
1:131:18_, 1:132:3_,
1:132:13_, 1:132:18_,
1:134:16_, 1:135:3_, 1:135:9
_, 1:135:12_, 1:135:14_,
1:135:19_, 1:135:21_,
1:136:1_, 1:136:7_, 1:137:19
_, 1:137:22_, 1:138:2_,
1:138:4_, 1:138:15_,

1:138:24_, 1:139:24_,
1:140:4_, 1:141:2_, 1:141:18
_, 1:141:21_, 1:142:9_,
1:142:14_, 1:142:17_,
1:142:19_, 1:143:2_, 1:143:8
_, 1:143:13_, 1:143:16,
1:143:23_, 1:144:2_, 1:144:5
_, 1:144:7_, 1:144:14_,
1:144:17_, 1:144:20_,
1:145:3_, 1:145:8, 1:145:12
_, 1:145:15_, 1:145:23_,
1:146:12_, 1:146:15_,
1:146:21_, 1:147:16_,
1:147:21_, 1:147:24_,
1:148:5_, 1:148:11_,
1:148:14_, 1:149:8_,
1:150:10_, 1:150:19_,
1:152:4_, 1:153:20_,
1:153:24_, 1:154:12_,
1:154:18_, 1:155:7_,
1:155:18_, 1:155:22_,
1:156:4_, 1:156:9_, 1:157:23
_, 1:158:9_, 1:158:15_,
1:158:20_, 1:158:25_,
1:160:8_, 1:162:5_, 1:162:9
_, 1:162:18_, 1:162:22_,
1:163:16_, 1:164:1_, 1:164:7
_, 1:164:10_, 1:164:20_,
1:165:8

Court's [22]_ - 1:4:19_,
1:8:1_, 1:20:18_, 1:23:23_,
1:34:19_, 1:40:17_, 1:40:21
_, 1:41:18_, 1:48:21_,
1:55:23_, 1:55:24_, 1:93:19
_, 1:101:4_, 1:106:7_,
1:107:11_, 1:114:2_,
1:116:19_, 1:117:23_,
1:121:1_, 1:124:22_, 1:135:2
_, 1:154:22

courtesy [1]_ - 1:51:10

courthouse [3]_ - 1:4:1_,
1:4:10_, 1:165:11

COURTROOM [1]_ -
1:3:4

courtroom [11]_ - 1:4:1_,
1:4:6_, 1:4:12_, 1:18:24_,
1:33:12_, 1:36:13_, 1:36:18
_, 1:40:7_, 1:45:13_, 1:95:17
_, 1:148:3

courts [7]_ - 1:14:10_,
1:14:11_, 1:39:8_, 1:102:17
_, 1:119:17_, 1:133:8_,
1:134:11

cover [1]_ - 1:110:6

covered [3]_ - 1:83:11_,
1:105:18

covers [1]_ - 1:143:5

create [2]_ - 1:89:5_,

1:120:10

creates [1]_ - 1:89:6

creating [1]_ - 1:151:13

credits [1]_ - 1:10:19

criminal [42]_ - 1:15:4_,
1:17:24_, 1:62:1_, 1:64:17_,
1:66:10_, 1:66:16_, 1:72:21
_, 1:74:16_, 1:93:11_, 1:95:3
_, 1:97:17_, 1:99:9_, 1:99:13
_, 1:99:20_, 1:100:19_,
1:101:9_, 1:102:9_, 1:103:3
_, 1:104:8_, 1:107:19_,
1:108:2_, 1:111:5_, 1:111:6
_, 1:111:9_, 1:115:15_,
1:115:21_, 1:115:22_,
1:115:24_, 1:117:3_, 1:118:7
_, 1:118:16_, 1:120:9_,
1:120:19_, 1:120:23_,
1:121:15_, 1:122:25_,
1:123:12_, 1:123:18_,
1:123:19_, 1:124:3_, 1:165:4

criterion [1]_ - 1:26:7

critical [2]_ - 1:75:10_,
1:103:18

criticized [1]_ - 1:45:4

cross [3]_ - 1:9:11_,
1:57:25_, 1:163:13

cross-examination [1]_
- 1:163:13

cross-examine [1]_ -
1:9:11

cross-examining [1]_ -
1:57:25

crossover [2]_ - 1:127:21
_, 1:128:6

crucial [1]_ - 1:22:13

curious [2]_ - 1:7:2_,
1:79:20

current [3]_ - 1:26:4_,
1:39:14_, 1:143:11

custody [1]_ - 1:5:16

D

D.C [18]_ - 1:45:13_,
1:45:14_, 1:46:5_, 1:48:1_,
1:84:18_, 1:141:22_, 1:143:9
_, 1:143:18_, 1:158:2_,
1:158:11_, 1:159:9_,
1:159:11_, 1:159:18_,
1:159:22_, 1:160:3_, 1:160:5
_, 1:160:9_, 1:160:21

Dadan [1]_ - 1:3:18

damaging [1]_ - 1:37:15

Dana [1]_ - 1:94:17

dark [1]_ - 1:151:19

data [4]_ - 1:50:9_, 1:50:11 _, 1:50:16_, 1:50:17

databases [2]_ - 1:71:2_, 1:91:12

date [19]_ - 1:5:5_, 1:6:19_, 1:19:5_, 1:21:15_, 1:29:3_, 1:37:19_, 1:38:14_, 1:40:15 _, 1:41:24_, 1:44:16_, 1:47:20_, 1:48:12_, 1:52:17 _, 1:79:15_, 1:80:17_, 1:81:7 _, 1:84:6

dates [14]_ - 1:6:13_, 1:8:20_, 1:21:11_, 1:21:25_, 1:22:12_, 1:34:3_, 1:39:8_, 1:47:2_, 1:48:20_, 1:61:18_, 1:84:12_, 1:84:15_, 1:84:16 _, 1:84:17

David [2]_ - 1:3:10_, 1:63:4

day-to-day [1]_ - 1:30:4

days [18]_ - 1:7:22_, 1:7:25 _, 1:8:6_, 1:18:14_, 1:22:22_, 1:33:25_, 1:34:1_, 1:34:9_, 1:34:16_, 1:40:24_, 1:42:10 _, 1:44:12_, 1:44:21_, 1:44:24_, 1:58:20_, 1:58:22 _, 1:83:13

De [3]_ - 1:3:5_, 1:3:21_, 1:62:5

deadline [2]_ - 1:31:23_, 1:31:24

deadlines [6]_ - 1:4:19_, 1:4:22_, 1:4:23_, 1:22:25_, 1:23:4_, 1:31:25

deal [2]_ - 1:22:16_, 1:47:4

deals [1]_ - 1:33:11

debatable [1]_ - 1:121:17

debate [1]_ - 1:56:17

decide [9]_ - 1:7:7_, 1:17:10_, 1:21:3_, 1:42:25_, 1:43:22_, 1:105:23_, 1:108:22_, 1:129:6_, 1:159:17

decided [4]_ - 1:74:17_, 1:98:5_, 1:115:23_, 1:159:14

decides [1]_ - 1:11:14_, 1:36:16

deciding [3]_ - 1:40:21_, 1:61:22_, 1:87:15

decision [10]_ - 1:17:14_, 1:20:13_, 1:42:5_, 1:43:7_, 1:68:22_, 1:93:19_, 1:104:9 _, 1:120:25_, 1:154:22

decisions [10]_ - 1:11:20_,

1:12:19_, 1:13:1_, 1:23:24_, 1:25:1_, 1:38:1_, 1:65:20_, 1:86:16_, 1:146:5_, 1:154:20

declaration [5]_ - 1:13:14 _, 1:14:21_, 1:65:8_, 1:70:20 _, 1:89:2

declarations [3]_ - 1:13:10_, 1:16:2_, 1:33:5

deem [1]_ - 1:16:14

defend [1]_ - 1:161:12

defendant [17]_ - 1:38:18 _, 1:45:7_, 1:98:20_, 1:105:10_, 1:105:21_, 1:106:19_, 1:107:3_, 1:107:5 _, 1:107:6_, 1:109:12_, 1:111:13_, 1:133:11_, 1:134:21_, 1:139:11_, 1:142:22_, 1:164:10

defendant's [5]_ - 1:39:1 _, 1:107:1_, 1:108:24_, 1:119:3_, 1:119:8

defendants [23]_ - 1:3:12 _, 1:10:9_, 1:11:25_, 1:14:13 _, 1:83:21_, 1:95:5_, 1:97:23 _, 1:100:4_, 1:101:3_, 1:106:18_, 1:112:13_, 1:114:8_, 1:114:21_, 1:119:13_, 1:127:6_, 1:127:15_, 1:135:10_, 1:136:24_, 1:138:16_, 1:143:16_, 1:144:10_, 1:146:5_, 1:160:23

defendants' [6]_ - 1:10:23 _, 1:65:3_, 1:105:24_, 1:145:14_, 1:146:3_, 1:147:10

defended [1]_ - 1:63:4

defending [1]_ - 1:65:10

Defense [1]_ - 1:32:17

defense [40]_ - 1:5:11_, 1:7:23_, 1:10:14_, 1:11:14_, 1:16:9_, 1:23:6_, 1:24:23_, 1:31:4_, 1:31:9_, 1:31:22_, 1:35:24_, 1:38:10_, 1:42:16 _, 1:46:15_, 1:49:6_, 1:52:10 _, 1:52:25_, 1:53:10_, 1:54:14_, 1:57:25_, 1:59:17 _, 1:61:18_, 1:83:20_, 1:95:21_, 1:118:24_, 1:125:19_, 1:128:17_, 1:136:8_, 1:137:5_, 1:137:6 _, 1:137:7_, 1:141:14_, 1:142:5_, 1:143:20_, 1:144:11_, 1:147:17_, 1:157:2_, 1:162:6_, 1:163:13 _, 1:163:14

defense's [2]_ - 1:6:10_,

1:12:13

defensible [2]_ - 1:125:10 _, 1:125:14

defer [1]_ - 1:154:17

deficiency [1]_ - 1:33:22

deficient [1]_ - 1:112:5

deficit [1]_ - 1:152:10

define [1]_ - 1:66:7

defined [5]_ - 1:11:4_, 1:100:1_, 1:100:2_, 1:100:8 _, 1:102:18

defining [1]_ - 1:63:1

definitely [4]_ - 1:103:6_, 1:107:4_, 1:162:25

definition [13]_ - 1:5:14_, 1:9:17_, 1:13:2_, 1:16:22_, 1:27:9_, 1:27:23_, 1:29:25_, 1:30:19_, 1:63:7_, 1:68:25_, 1:70:4_, 1:88:21_, 1:99:1

definitively [1]_ - 1:123:11

degree [10]_ - 1:12:1_, 1:12:3_, 1:13:11_, 1:16:10_, 1:62:9_, 1:131:9_, 1:133:2_, 1:149:11_, 1:153:21_, 1:157:16

delay [1]_ - 1:148:10

demand [1]_ - 1:14:21

democracy [1]_ - 1:97:19

demonstrates [1]_ - 1:89:10

demonstrating [1]_ - 1:70:1

deniable [1]_ - 1:11:9

denied [1]_ - 1:48:5

deny [1]_ - 1:61:2

denying [1]_ - 1:29:19

Department [6]_ - 1:13:24_, 1:13:25_, 1:30:8_, 1:51:11_, 1:80:8_, 1:81:2

DEPUTY [1]_ - 1:3:4

derives [2]_ - 1:107:21_, 1:124:14

describe [1]_ - 1:33:20

described [2]_ - 1:33:10_, 1:46:17

describing [3]_ - 1:17:21 _, 1:54:19_, 1:54:20

descriptions [1]_ - 1:32:8

descriptor [2]_ - 1:90:20_, 1:91:8

descriptors [1]_ - 1:131:24

deserves [1]_ - 1:61:24

designated [3]_ - 1:156:19_, 1:156:21_, 1:164:3

desire [2]_ - 1:38:7_, 1:157:5

despite [2]_ - 1:102:8_, 1:113:5

detail [3]_ - 1:110:19_, 1:129:1_, 1:153:21

detailed [1]_ - 1:68:17

details [4]_ - 1:6:22_, 1:51:14_, 1:67:25_, 1:72:11

determinations [2]_ - 1:11:5_, 1:107:12

determine [2]_ - 1:100:3_, 1:105:23

determines [1]_ - 1:93:16

developed [2]_ - 1:28:13 _, 1:98:2

developing [1]_ - 1:67:7

development [1]_ - 1:76:10

deviate [1]_ - 1:130:4

device [1]_ - 1:50:6

devices [3]_ - 1:4:10_, 1:51:8_, 1:51:23

dialog [1]_ - 1:24:9_, 1:24:22

differ [2]_ - 1:154:15_, 1:154:16

difference [4]_ - 1:37:8_, 1:106:17_, 1:128:5_, 1:161:14

different [23]_ - 1:7:5_, 1:10:5_, 1:13:23_, 1:39:17_, 1:47:2_, 1:67:2_, 1:69:2_, 1:71:17_, 1:89:24_, 1:105:20 _, 1:108:15_, 1:114:22_, 1:116:11_, 1:120:16_, 1:121:15_, 1:122:19_, 1:135:24_, 1:145:9_, 1:151:25_, 1:154:20_, 1:154:21_, 1:160:19_, 1:161:10

differentiate [1]_ - 1:152:17

difficult [2]_ - 1:57:2_, 1:103:12

dig [2]_ - 1:6:21_, 1:67:25

dire [8]_ - 1:34:24_, 1:35:7 _, 1:35:10_, 1:35:16_, 1:35:21_, 1:46:23_, 1:47:3_, 1:47:8

direct [4]_ - 1:64:11_,

1:128:23_, 1:135:1_, 1:136:21

directing [1]_ - 1:128:23

direction [1]_ - 1:48:22

directly [2]_ - 1:134:20_, 1:149:14

director [3]_ - 1:76:1_, 1:76:4_, 1:91:24

Director [2]_ - 1:65:8_, 1:75:18

disadvantage [1]_ - 1:93:12

disagree [4]_ - 1:7:9_, 1:7:11_, 1:46:13_, 1:54:15

discern [1]_ - 1:27:23

disclose [5]_ - 1:33:20_, 1:157:2_, 1:157:4_, 1:157:5 _, 1:161:2

disclosed [3]_ - 1:75:7_, 1:101:13_, 1:159:23

disclosure [10]_ - 1:42:18 _, 1:43:13_, 1:53:7_, 1:59:15 _, 1:79:1_, 1:117:10_, 1:136:15_, 1:140:16_, 1:141:5_, 1:158:22

disclosures [3]_ - 1:42:16 _, 1:78:18_, 1:78:19

discomfort [1]_ - 1:132:24

discoverability [1]_ - 1:11:6

discoverable [5]_ - 1:5:15 _, 1:11:2_, 1:11:10_, 1:11:16 _, 1:72:12

discovery [120]_ - 1:5:11_, 1:8:16_, 1:9:9_, 1:10:10_, 1:15:6_, 1:15:7_, 1:15:12_, 1:16:24_, 1:17:1_, 1:19:19_, 1:23:8_, 1:23:11_, 1:23:18_, 1:30:6_, 1:40:20_, 1:49:15_, 1:49:17_, 1:49:19_, 1:49:21 _, 1:52:9_, 1:52:11_, 1:52:12 _, 1:52:16_, 1:52:19_, 1:52:20_, 1:52:25_, 1:53:24 _, 1:56:11_, 1:56:12_, 1:59:25_, 1:60:15_, 1:62:16 _, 1:67:14_, 1:67:23_, 1:69:5 _, 1:70:2_, 1:72:17_, 1:75:4_, 1:75:7_, 1:75:15_, 1:76:16_, 1:82:7_, 1:83:21_, 1:85:19_, 1:86:19_, 1:88:11_, 1:88:14 _, 1:89:21_, 1:94:20_, 1:94:22_, 1:94:25_, 1:97:24 _, 1:98:5_, 1:98:21_, 1:99:3_, 1:99:22_, 1:100:10_, 1:100:15_, 1:102:7_, 1:104:7 _, 1:104:19_, 1:105:13_,

1:105:14_, 1:105:18_, 1:105:19_, 1:105:21_, 1:105:24_, 1:107:19_, 1:107:21_, 1:108:1_, 1:108:4 _, 1:108:10_, 1:108:14_, 1:108:17_, 1:109:3_, 1:109:4 _, 1:109:6_, 1:110:9_, 1:113:20_, 1:114:6_, 1:114:18_, 1:114:23_, 1:115:18_, 1:115:19_, 1:115:25_, 1:116:16_, 1:116:21_, 1:116:24_, 1:117:3_, 1:117:9_, 1:117:17 _, 1:117:19_, 1:119:5_, 1:120:8_, 1:120:12_, 1:121:8 _, 1:121:9_, 1:122:17_, 1:124:15_, 1:125:3_, 1:125:9 _, 1:125:15_, 1:127:16_, 1:127:22_, 1:127:24_, 1:136:20_, 1:140:13_, 1:140:16_, 1:140:25_, 1:141:6_, 1:141:7_, 1:154:3 _, 1:156:20_, 1:156:23_, 1:161:2_, 1:164:2_, 1:164:14

discovery-type [1]_ - 1:105:14

discrete [1]_ - 1:69:17

discretion [4]_ - 1:26:9_, 1:101:4_, 1:101:5_, 1:107:13

discuss [8]_ - 1:4:18_, 1:4:23_, 1:5:3_, 1:5:10_, 1:6:16_, 1:55:1_, 1:58:11_, 1:107:2

discussed [1]_ - 1:109:2

discussing [1]_ - 1:115:3

discussion [7]_ - 1:5:9_, 1:5:17_, 1:26:11_, 1:31:1_, 1:49:8_, 1:53:3_, 1:58:7

discussions [3]_ - 1:25:2 _, 1:26:1_, 1:79:18

disingenuous [1]_ - 1:92:11

dismiss [3]_ - 1:25:9_, 1:102:14_, 1:108:25

dismissed [1]_ - 1:26:1

disorganized [1]_ - 1:18:10

dispositive [1]_ - 1:122:18

dispute [8]_ - 1:9:7_, 1:23:1_, 1:65:1_, 1:66:14_, 1:66:25_, 1:71:12_, 1:75:9_, 1:77:2

disputes [10]_ - 1:9:2_, 1:9:5_, 1:68:20_, 1:70:15_, 1:73:15_, 1:75:2_, 1:77:8_, 1:87:15_, 1:88:2_, 1:93:19

disputing [1]_ - 1:114:1

disrespect [1]_ - 1:113:7

disruption [1]_ - 1:4:6

distinct [3]_ - 1:74:14_, 1:75:6_, 1:150:13

distinction [8]_ - 1:104:16 _, 1:105:17_, 1:115:4_, 1:116:19_, 1:119:11_, 1:120:10_, 1:124:2_, 1:154:2

distinctions [1]_ - 1:120:21

distinguish [3]_ - 1:102:12 _, 1:104:14_, 1:119:1

distinguishable [1]_ - 1:116:11

distinguished [1]_ - 1:109:7

distinguishing [1]_ - 1:104:10

district [9]_ - 1:15:18_, 1:44:2_, 1:44:11_, 1:45:7_, 1:46:21_, 1:51:4_, 1:80:1_, 1:92:3_, 1:159:11

District [8]_ - 1:25:24_, 1:28:21_, 1:51:13_, 1:135:2 _, 1:144:23_, 1:157:19_, 1:157:21_, 1:160:20

divide [1]_ - 1:36:4

divided [2]_ - 1:8:11_, 1:10:5

division [5]_ - 1:24:13_, 1:27:16_, 1:28:5_, 1:29:12_, 1:75:17

divisions [1]_ - 1:24:15

divorces [1]_ - 1:55:1

doable [1]_ - 1:6:20

docket [7]_ - 1:4:20_, 1:19:15_, 1:31:17_, 1:51:15 _, 1:78:15_, 1:84:24_, 1:164:15

docketed [1]_ - 1:51:4

doctrinal [1]_ - 1:10:15

Document [2]_ - 1:60:2_, 1:60:3

document [35]_ - 1:23:14 _, 1:53:5_, 1:54:1_, 1:54:5_, 1:54:7_, 1:54:9_, 1:55:9_, 1:56:6_, 1:56:24_, 1:57:1_, 1:57:4_, 1:57:14_, 1:72:1_, 1:72:20_, 1:99:1_, 1:99:25_, 1:100:14_, 1:106:1_, 1:107:18_, 1:109:5_, 1:110:21_, 1:116:4_, 1:116:20_, 1:129:7_, 1:129:12_, 1:129:21_,

1:129:24_, 1:130:17_, 1:130:18_, 1:131:2_, 1:131:10_, 1:131:11_, 1:159:9_, 1:159:15

documents [48]_ - 1:18:21_, 1:26:19_, 1:42:22 _, 1:43:15_, 1:53:10_, 1:53:20_, 1:53:22_, 1:54:11 _, 1:54:23_, 1:55:3_, 1:55:19 _, 1:56:2_, 1:56:3_, 1:57:5_, 1:57:16_, 1:57:17_, 1:57:21 _, 1:58:12_, 1:59:7_, 1:59:8_, 1:59:9_, 1:59:11_, 1:60:10_, 1:68:7_, 1:73:5_, 1:74:12_, 1:83:18_, 1:83:22_, 1:97:22 _, 1:98:14_, 1:99:13_, 1:99:15_, 1:100:1_, 1:100:21 _, 1:100:22_, 1:100:25_, 1:101:7_, 1:101:9_, 1:101:11 _, 1:101:23_, 1:119:7_, 1:120:7_, 1:130:23_, 1:131:21_, 1:137:5_, 1:153:11_, 1:153:17_, 1:156:17

Doe [1]_ - 1:134:23

DOJ [7]_ - 1:64:13_, 1:65:10_, 1:66:13_, 1:66:23 _, 1:73:21_, 1:73:25_, 1:93:6

Donald [2]_ - 1:3:4_, 1:131:5

done [33]_ - 1:3:25_, 1:22:18_, 1:39:22_, 1:39:24 _, 1:40:20_, 1:41:9_, 1:41:10 _, 1:42:6_, 1:45:8_, 1:50:12_, 1:50:13_, 1:52:21_, 1:59:4_, 1:64:9_, 1:64:21_, 1:66:18_, 1:70:22_, 1:80:1_, 1:85:2_, 1:85:3_, 1:110:11_, 1:112:24 _, 1:113:11_, 1:128:16_, 1:129:16_, 1:133:8_, 1:145:16_, 1:157:18_, 1:157:20_, 1:160:6_, 1:165:12

Donnie [1]_ - 1:3:21

doubt [3]_ - 1:38:12_, 1:84:23_, 1:103:23

down [10]_ - 1:71:25_, 1:72:5_, 1:89:16_, 1:102:17 _, 1:129:10_, 1:140:10_, 1:142:5_, 1:147:7_, 1:162:4 _, 1:162:23

download [1]_ - 1:50:14

dozen [1]_ - 1:40:8

drafted [1]_ - 1:27:8

Drake [1]_ - 1:25:24

draw [5]_ - 1:72:5_, 1:88:17_, 1:90:5_, 1:119:13

_, 1:151:4

drawing [2]_ - 1:89:12_, 1:120:20

draws [1]_ - 1:124:2

drive [2]_ - 1:21:25_, 1:154:22

driven [1]_ - 1:21:13

drove [1]_ - 1:66:10

drum [1]_ - 1:74:15

dual [1]_ - 1:111:3

due [6]_ - 1:34:9_, 1:74:23_, 1:100:11_, 1:104:22_, 1:105:24_, 1:108:24

duelling [1]_ - 1:23:5

dump [1]_ - 1:155:1

duplicative [1]_ - 1:68:14

during [4]_ - 1:22:10_, 1:22:12_, 1:75:14_, 1:93:7

duties [1]_ - 1:10:5

### E

early [4]_ - 1:28:10_, 1:38:17_, 1:74:1_, 1:74:3

easier [1]_ - 1:48:23

easily [1]_ - 1:109:7

easy [1]_ - 1:37:20

ECF [1]_ - 1:53:18

educational [2]_ - 1:101:24_, 1:102:1

effect [3]_ - 1:13:10_, 1:16:19_, 1:62:15

effectively [2]_ - 1:15:9_, 1:38:18

efficient [1]_ - 1:25:14

effort [2]_ - 1:15:20_, 1:154:6

efforts [4]_ - 1:130:22_, 1:149:5_, 1:151:18_, 1:164:21

either [12]_ - 1:13:11_, 1:29:4_, 1:55:6_, 1:113:7_, 1:115:20_, 1:125:18_, 1:130:8_, 1:133:11_, 1:143:15_, 1:158:12_, 1:158:16_, 1:162:2

elaborate [1]_ - 1:43:24

election [13]_ - 1:36:11_, 1:37:22_, 1:38:8_, 1:48:24_, 1:81:10_, 1:82:5_, 1:93:7_, 1:93:12_, 1:93:18_, 1:93:22_, 1:93:24_, 1:94:4

electronic [1]_ - 1:4:10

element [2]_ - 1:61:14_, 1:63:25

elements [1]_ - 1:157:25

elevated [1]_ - 1:123:20

elicit [1]_ - 1:67:10

Ellis [2]_ - 1:25:7_, 1:25:14

elsewhere [4]_ - 1:20:25_, 1:83:23_, 1:111:10_, 1:148:15

elucidating [1]_ - 1:99:17

email [13]_ - 1:20:23_, 1:20:25_, 1:66:12_, 1:66:22_, 1:67:3_, 1:71:2_, 1:73:20_, 1:73:21_, 1:74:5_, 1:88:9_, 1:131:3

emails [4]_ - 1:63:12_, 1:66:2_, 1:88:10_, 1:151:2

emergency [1]_ - 1:4:8

Emil [1]_ - 1:3:15

empanelled [2]_ - 1:35:20

emphasis [1]_ - 1:80:8

emphasize [1]_ - 1:123:19

emphasized [1]_ - 1:38:24

Employee [1]_ - 1:161:11

employing [1]_ - 1:86:11

end [18]_ - 1:4:25_, 1:11:17_, 1:15:22_, 1:21:12_, 1:36:8_, 1:40:6_, 1:80:11_, 1:85:10_, 1:87:4_, 1:100:17_, 1:103:11_, 1:114:10_, 1:120:11_, 1:132:24_, 1:133:25_, 1:140:19_, 1:149:3_, 1:156:11

endanger [1]_ - 1:131:5

endeavor [2]_ - 1:134:14_, 1:165:4

ended [1]_ - 1:25:11

Energy [1]_ - 1:13:25

enforced [1]_ - 1:68:24

enforcement [2]_ - 1:27:14_, 1:111:12

engage [1]_ - 1:46:7

engaged [2]_ - 1:69:10_, 1:123:21

ensure [2]_ - 1:111:4_, 1:153:25

entered [7]_ - 1:4:21_, 1:112:15_, 1:112:16_, 1:112:17_, 1:139:5_, 1:155:15_, 1:156:12

Enterprise [3]_ - 1:97:14_, 1:115:23_, 1:116:2

Enterprises [2]_ - 1:123:18_, 1:124:8

entertain [1]_ - 1:9:20_, 1:129:16

entertained [1]_ - 1:144:24

entire [6]_ - 1:6:15_, 1:20:6_, 1:112:12_, 1:158:2_, 1:159:16

entirely [4]_ - 1:35:18_, 1:56:6_, 1:133:2_, 1:134:25

entirety [1]_ - 1:69:4_, 1:163:4

entities [3]_ - 1:12:14_, 1:13:18_, 1:13:23

entitle [1]_ - 1:16:7

entitled [10]_ - 1:12:1_, 1:12:6_, 1:14:14_, 1:43:14_, 1:54:13_, 1:55:22_, 1:56:15_, 1:58:5_, 1:64:7_, 1:148:24

entitlement [2]_ - 1:15:6_, 1:16:6

entitles [1]_ - 1:92:15

entity [1]_ - 1:91:11

entries [1]_ - 1:79:25

entry [2]_ - 1:4:19_, 1:4:20

environment [1]_ - 1:154:21

envision [4]_ - 1:23:21_, 1:23:25_, 1:24:1_, 1:67:6

equally [1]_ - 1:10:12

equation [1]_ - 1:22:5

equity [6]_ - 1:24:5_, 1:24:7_, 1:25:8_, 1:33:3_, 1:35:3_, 1:72:23

erroneous [1]_ - 1:121:2

error [2]_ - 1:95:8_, 1:117:24

especially [7]_ - 1:19:1_, 1:40:18_, 1:64:17_, 1:98:19_, 1:99:17_, 1:111:9_, 1:163:25

essential [1]_ - 1:120:23

essentially [9]_ - 1:18:19_, 1:19:15_, 1:20:5_, 1:84:2_, 1:97:23_, 1:98:23_, 1:100:11_, 1:118:6_, 1:134:10

establish [1]_ - 1:67:13

estimate [2]_ - 1:39:14_, 1:127:1

et [3]_ - 1:27:1_, 1:28:12_,

1:102:14

ethical [1]_ - 1:67:13

event [2]_ - 1:35:14_, 1:101:4

eventually [1]_ - 1:25:7

evidence [30]_ - 1:14:6_, 1:14:15_, 1:14:19_, 1:14:24_, 1:16:3_, 1:16:14_, 1:16:16_, 1:23:22_, 1:28:13_, 1:33:12_, 1:33:15_, 1:35:1_, 1:41:7_, 1:42:2_, 1:58:5_, 1:58:9_, 1:59:12_, 1:65:20_, 1:67:1_, 1:67:8_, 1:72:8_, 1:76:6_, 1:77:8_, 1:88:13_, 1:89:10_, 1:92:19_, 1:109:13_, 1:116:15_, 1:119:4_, 1:119:6

evident [1]_ - 1:85:1

evidentiary [20]_ - 1:7:12_, 1:8:9_, 1:14:17_, 1:14:20_, 1:15:3_, 1:15:21_, 1:16:13_, 1:17:15_, 1:17:17_, 1:32:12_, 1:37:4_, 1:38:2_, 1:64:2_, 1:65:11_, 1:67:6_, 1:69:18_, 1:69:22_, 1:70:19_, 1:86:22_, 1:92:16

eviscerate [1]_ - 1:139:15

evolve [1]_ - 1:60:7

evolved [1]_ - 1:26:5

ex [9]_ - 1:23:10_, 1:54:22_, 1:58:4_, 1:77:4_, 1:135:20_, 1:135:22_, 1:135:24_, 1:150:6_, 1:156:1

ex-parte [9]_ - 1:23:10_, 1:54:22_, 1:58:4_, 1:77:4_, 1:135:20_, 1:135:22_, 1:135:24_, 1:150:6_, 1:156:1

exact [2]_ - 1:27:10_, 1:106:11

exactly [4]_ - 1:50:14_, 1:53:9_, 1:60:8_, 1:86:13

examination [3]_ - 1:16:6_, 1:136:21_, 1:163:13

examine [2]_ - 1:9:11_, 1:122:13

examining [1]_ - 1:57:25

example [22]_ - 1:11:1_, 1:11:18_, 1:11:24_, 1:20:3_, 1:20:23_, 1:23:23_, 1:41:23_, 1:42:15_, 1:63:21_, 1:65:24_, 1:91:12_, 1:91:24_, 1:91:25_, 1:97:15_, 1:105:2_, 1:108:11_, 1:114:13_, 1:122:18_, 1:131:10_, 1:134:20_, 1:150:12_, 1:157:17

examples [5]_ - 1:89:15_, 1:128:25_, 1:129:1_, 1:133:23_, 1:162:16

exasperation [1]_ - 1:90:4

except [3]_ - 1:53:22_, 1:55:19_, 1:129:18

exception [1]_ - 1:47:13

exchanged [1]_ - 1:126:4

exculpatory [1]_ - 1:64:2

excuse [4]_ - 1:116:10_, 1:135:14_, 1:137:21_, 1:141:6

execute [1]_ - 1:50:7

execution [1]_ - 1:51:22

exercise [3]_ - 1:15:19_, 1:15:20_, 1:101:5

exhibit [10]_ - 1:76:8_, 1:129:4_, 1:129:17_, 1:131:16_, 1:150:4_, 1:151:24_, 1:153:3_, 1:153:19_, 1:154:25_, 1:163:9

Exhibit [8]_ - 1:66:12_, 1:66:23_, 1:71:5_, 1:74:5_, 1:75:8_, 1:76:9_, 1:76:17

exhibits [30]_ - 1:5:24_, 1:7:1_, 1:60:3_, 1:64:15_, 1:67:9_, 1:67:21_, 1:67:22_, 1:68:12_, 1:68:13_, 1:74:7_, 1:88:8_, 1:109:24_, 1:111:17 _, 1:112:19_, 1:124:23_, 1:125:11_, 1:125:17_, 1:128:21_, 1:129:2_, 1:131:1 _, 1:140:1_, 1:140:8_, 1:140:12_, 1:144:16_, 1:145:18_, 1:146:2_, 1:147:5 _, 1:161:21_, 1:162:1_, 1:162:14

Exhibits [2]_ - 1:71:14_, 1:74:8

exist [1]_ - 1:32:14

existed [2]_ - 1:52:3_, 1:57:21

existence [1]_ - 1:147:1

expand [1]_ - 1:79:7

expanded [1]_ - 1:85:23

expect [8]_ - 1:4:12_, 1:5:3 _, 1:42:1_, 1:54:3_, 1:67:15_, 1:71:22_, 1:82:14_, 1:151:18

expectation [1]_ - 1:82:11

expectations [2]_ - 1:32:15_, 1:112:25

expected [1]_ - 1:146:25

expects [1]_ - 1:39:25

expend [1]_ - 1:27:2

experience [2]_ - 1:82:12 _, 1:124:9

expert [15]_ - 1:42:15_, 1:42:18_, 1:42:25_, 1:43:3_, 1:43:20_, 1:44:1_, 1:78:9_, 1:78:10_, 1:78:18_, 1:78:19 _, 1:78:22_, 1:78:23_, 1:79:1

experts [1]_ - 1:79:7

expired [3]_ - 1:140:9_, 1:141:13_, 1:143:10

explain [4]_ - 1:41:13_, 1:41:15_, 1:71:24_, 1:121:11

explained [6]_ - 1:10:22_, 1:67:1_, 1:80:23_, 1:83:22_, 1:112:10_, 1:118:14

explaining [1]_ - 1:81:12

explanation [4]_ - 1:46:14 _, 1:89:25_, 1:112:9_, 1:119:22

explicit [1]_ - 1:121:8

explicitly [2]_ - 1:102:13_, 1:154:5

explore [1]_ - 1:15:3

exposure [1]_ - 1:133:2

express [1]_ - 1:133:10

expressed [6]_ - 1:86:7_, 1:90:4_, 1:103:17_, 1:133:7 _, 1:134:20_, 1:135:16

expressing [1]_ - 1:82:2

expressly [2]_ - 1:104:9_, 1:149:17

extend [1]_ - 1:120:6

extendible [1]_ - 1:99:8

extending [1]_ - 1:118:6

extensions [1]_ - 1:84:6

extensive [1]_ - 1:72:16

extensively [2]_ - 1:65:21 _, 1:83:11

extent [12]_ - 1:18:20_, 1:19:21_, 1:22:6_, 1:23:22_, 1:35:18_, 1:72:20_, 1:99:8_, 1:108:23_, 1:125:20_, 1:133:17_, 1:149:3_, 1:153:10

extract [1]_ - 1:88:13

extraordinarily [1]_ - 1:41:6

extraordinary [1]_ - 1:98:8

eye [3]_ - 1:106:4_, 1:129:13_, 1:141:11

F

fabricated [1]_ - 1:154:9

face [7]_ - 1:11:10_, 1:40:11_, 1:53:25_, 1:54:10 _, 1:69:11_, 1:74:11_, 1:152:12

facility [3]_ - 1:8:24_, 1:44:2_, 1:44:11

facing [7]_ - 1:20:14_, 1:52:1_, 1:96:2_, 1:98:14_, 1:145:25_, 1:146:4_, 1:147:1

fact [28]_ - 1:14:24_, 1:21:16_, 1:38:15_, 1:39:2_, 1:54:10_, 1:56:23_, 1:56:24 _, 1:61:7_, 1:62:9_, 1:64:9_, 1:72:8_, 1:82:3_, 1:89:3_, 1:89:6_, 1:89:19_, 1:89:23_, 1:90:1_, 1:90:4_, 1:98:3_, 1:98:12_, 1:108:6_, 1:123:19 _, 1:124:6_, 1:128:7_, 1:134:24_, 1:147:11_, 1:155:15

fact-finding [3]_ - 1:62:9_, 1:64:9_, 1:72:8

facto [1]_ - 1:108:17

factor [1]_ - 1:109:5

factors [2]_ - 1:14:10_, 1:47:17

facts [4]_ - 1:13:12_, 1:16:7_, 1:100:5_, 1:106:13

factual [22]_ - 1:9:2_, 1:9:5 _, 1:9:7_, 1:27:7_, 1:64:16_, 1:65:1_, 1:66:13_, 1:66:25_, 1:68:20_, 1:70:15_, 1:71:11 _, 1:73:15_, 1:75:1_, 1:75:9_, 1:77:1_, 1:77:8_, 1:87:14_, 1:88:2_, 1:88:6_, 1:89:14_, 1:114:5_, 1:132:20

fair [9]_ - 1:35:22_, 1:60:13 _, 1:106:21_, 1:107:1_, 1:107:7_, 1:138:4_, 1:147:13 _, 1:153:11

fairer [2]_ - 1:91:8

fairly [2]_ - 1:20:8_, 1:52:6

faith [6]_ - 1:11:25_, 1:12:6 _, 1:44:13_, 1:84:16_, 1:130:21_, 1:164:21

fake [1]_ - 1:84:16

fall [7]_ - 1:93:17_, 1:99:3_, 1:99:4_, 1:99:22_, 1:105:12 _, 1:119:6_, 1:122:8

falls [2]_ - 1:73:2_, 1:76:2

false [2]_ - 1:16:4_, 1:153:18

far [20]_ - 1:9:3_, 1:16:23_, 1:25:1_, 1:47:9_, 1:48:11_, 1:49:25_, 1:60:21_, 1:68:9_, 1:77:21_, 1:80:11_, 1:103:1 _, 1:107:17_, 1:117:6_, 1:118:4_, 1:127:14_, 1:135:13_, 1:138:5_, 1:141:24_, 1:153:24_, 1:156:12

fast [1]_ - 1:12:15

favor [1]_ - 1:106:20

FBI [30]_ - 1:20:4_, 1:21:1_, 1:28:3_, 1:30:2_, 1:30:5_, 1:30:8_, 1:50:6_, 1:50:16_, 1:55:7_, 1:58:1_, 1:63:20_, 1:64:13_, 1:65:9_, 1:73:7_, 1:75:16_, 1:75:17_, 1:75:21 _, 1:75:25_, 1:76:1_, 1:76:4_, 1:76:5_, 1:91:16_, 1:91:18_, 1:91:22_, 1:91:24_, 1:92:2_, 1:92:10_, 1:131:12_, 1:163:6

FBI's [1]_ - 1:27:16

FD302 [1]_ - 1:157:10

fear [1]_ - 1:106:9

feature [2]_ - 1:50:4_, 1:128:7

February [5]_ - 1:9:15_, 1:28:2_, 1:74:6_, 1:74:11_, 1:76:24

federal [2]_ - 1:26:24_, 1:93:9

Federal [1]_ - 1:27:14

feed [2]_ - 1:4:1_, 1:94:24

few [11]_ - 1:8:20_, 1:83:13 _, 1:87:20_, 1:88:3_, 1:112:7 _, 1:136:6_, 1:136:22_, 1:137:15_, 1:142:13_, 1:155:11_, 1:155:13

fides [1]_ - 1:164:18

field [14]_ - 1:27:16_, 1:28:4_, 1:28:5_, 1:28:16_, 1:28:17_, 1:28:22_, 1:29:4_, 1:29:7_, 1:30:1_, 1:63:20_, 1:75:16_, 1:75:17_, 1:92:2

fighting [2]_ - 1:112:8_, 1:157:8

figure [4]_ - 1:30:24_, 1:68:5_, 1:79:22_, 1:127:16

file [18]_ - 1:11:4_, 1:16:23 _, 1:18:21_, 1:19:8_, 1:31:10 _, 1:32:23_, 1:34:12_, 1:62:17_, 1:68:24_, 1:74:16 _, 1:78:10_, 1:78:24_, 1:81:4 _, 1:82:13_, 1:149:19_, 1:158:12_, 1:163:17_, 1:164:14

filed [33]_ - 1:5:5_, 1:6:1_, 1:7:11_, 1:15:16_, 1:23:12_, 1:45:11_, 1:45:14_, 1:45:15 _, 1:51:21_, 1:72:9_, 1:79:24 _, 1:81:3_, 1:82:9_, 1:84:25_, 1:94:13_, 1:99:2_, 1:100:22 _, 1:100:25_, 1:102:13_, 1:103:3_, 1:104:19_, 1:111:18_, 1:113:8_, 1:121:9 _, 1:130:25_, 1:145:18_, 1:148:8_, 1:150:18_, 1:154:5 _, 1:155:24_, 1:159:2_, 1:161:1_, 1:161:2

filing [12]_ - 1:5:12_, 1:19:20_, 1:32:1_, 1:33:3_, 1:47:18_, 1:49:22_, 1:78:9_, 1:78:17_, 1:97:22_, 1:108:12 _, 1:111:14_, 1:113:8

filings [12]_ - 1:22:13_, 1:72:15_, 1:79:14_, 1:95:4_, 1:96:9_, 1:98:2_, 1:100:14_, 1:103:17_, 1:135:18_, 1:152:6_, 1:153:5

fill [1]_ - 1:48:23

final [3]_ - 1:35:9_, 1:35:15 _, 1:79:1

finalizing [1]_ - 1:79:18

finally [2]_ - 1:110:12_, 1:161:14

findings [1]_ - 1:69:9

fine [2]_ - 1:146:22_, 1:148:11

finish [1]_ - 1:92:14

finished [3]_ - 1:49:16_, 1:52:12_, 1:92:13

firm [2]_ - 1:48:12_, 1:94:17

First [33]_ - 1:95:9_, 1:98:10_, 1:99:12_, 1:101:13 _, 1:102:20_, 1:103:24_, 1:105:12_, 1:106:2_, 1:107:20_, 1:108:4_, 1:113:22_, 1:115:20_, 1:115:25_, 1:116:25_, 1:117:4_, 1:117:21_, 1:118:1 _, 1:119:14_, 1:119:17_, 1:120:18_, 1:121:19_, 1:122:23_, 1:123:3_, 1:123:5 _, 1:123:10_, 1:123:17_, 1:124:13_, 1:130:6_, 1:131:6 _, 1:141:8_, 1:149:15_, 1:150:22_, 1:151:15

first [40]_ - 1:3:7_, 1:4:18_, 1:4:22_, 1:8:16_, 1:10:9_, 1:10:22_, 1:13:17_, 1:27:25 _, 1:31:25_, 1:41:1_, 1:51:17 _, 1:53:14_, 1:53:18_,

1:56:10_, 1:61:22_, 1:67:10 _, 1:77:16_, 1:83:12_, 1:83:21_, 1:85:20_, 1:87:9_, 1:88:5_, 1:88:10_, 1:95:15_, 1:97:10_, 1:101:2_, 1:110:6 _, 1:110:24_, 1:115:2_, 1:115:12_, 1:118:22_, 1:129:11_, 1:136:16_, 1:139:2_, 1:139:3_, 1:139:15 _, 1:140:11_, 1:144:12_, 1:155:5_, 1:162:15

five [7]_ - 1:5:23_, 1:19:24 _, 1:34:9_, 1:37:2_, 1:69:18_, 1:69:19_, 1:164:15

fix [1]_ - 1:149:22

fixated [1]_ - 1:75:23

flavors [1]_ - 1:114:22

flexibility [1]_ - 1:60:12

flexible [1]_ - 1:8:5

floating [1]_ - 1:114:18

Florida [4]_ - 1:28:21_, 1:144:24_, 1:159:19_, 1:160:20

fly [1]_ - 1:40:8

flying [1]_ - 1:124:24

focus [2]_ - 1:40:23_, 1:155:10

focused [3]_ - 1:8:13_, 1:31:3_, 1:63:14

focuses [1]_ - 1:20:7

focusing [1]_ - 1:62:10

FOIA [10]_ - 1:67:25_, 1:68:4_, 1:68:6_, 1:68:9_, 1:68:12_, 1:68:14_, 1:127:15 _, 1:127:17_, 1:127:22_, 1:128:1

folks [4]_ - 1:11:19_, 1:16:15_, 1:29:8_, 1:29:23

follow [3]_ - 1:26:3_, 1:59:15_, 1:158:18

follow-up [1]_ - 1:59:15

followed [2]_ - 1:95:20_, 1:160:6

following [4]_ - 1:11:4_, 1:51:3_, 1:68:23_, 1:149:2

foot [1]_ - 1:148:8

footers [1]_ - 1:83:17

footnote [5]_ - 1:118:17_, 1:118:21_, 1:118:24_, 1:119:13_, 1:149:16

force [3]_ - 1:158:18_, 1:158:19_, 1:158:22

forced [1]_ - 1:43:22

forefront [1]_ - 1:113:4

foremost [2]_ - 1:67:10_, 1:77:16

forfeit [1]_ - 1:149:6

forget [3]_ - 1:80:3_, 1:90:12_, 1:125:8

forgot [1]_ - 1:78:5

form [5]_ - 1:16:16_, 1:142:1_, 1:144:10_, 1:144:11_, 1:157:10

formally [1]_ - 1:30:12

format [2]_ - 1:59:14_, 1:77:15

former [8]_ - 1:5:8_, 1:35:11_, 1:66:5_, 1:80:18_, 1:97:20_, 1:97:23_, 1:101:22 _, 1:103:20

Former [1]_ - 1:103:17

formulating [1]_ - 1:14:5

forth [12]_ - 1:4:14_, 1:4:22 _, 1:6:5_, 1:11:9_, 1:11:22_, 1:21:10_, 1:61:18_, 1:64:11 _, 1:67:1_, 1:72:8_, 1:105:21 _, 1:112:2

forward [2]_ - 1:49:21_, 1:74:6

four [8]_ - 1:33:1_, 1:33:6_, 1:37:1_, 1:39:12_, 1:44:12_, 1:44:21_, 1:46:14_, 1:61:10

frame [4]_ - 1:37:24_, 1:62:18_, 1:66:21_, 1:149:22

framed [3]_ - 1:16:22_, 1:17:4_, 1:29:23

framework [5]_ - 1:18:25 _, 1:36:5_, 1:103:2_, 1:103:3 _, 1:154:20

frameworks [1]_ - 1:153:14

frank [1]_ - 1:111:22

frankly [1]_ - 1:149:2

Franks [4]_ - 1:7:13_, 1:7:17_, 1:7:18_, 1:74:22

freestanding [2]_ - 1:114:17_, 1:116:16

frenzy [1]_ - 1:38:3

frequently [1]_ - 1:136:14

Friday [4]_ - 1:51:19_, 1:97:2_, 1:97:3

frivolous [3]_ - 1:129:10_, 1:148:1_, 1:148:14_, 1:149:7 _, 1:154:11

frivolousness [1]_ - 1:14:2

front [5]_ - 1:20:15_, 1:24:2 _, 1:39:6_, 1:47:22_, 1:69:12

full [10]_ - 1:3:23_, 1:18:19 _, 1:19:15_, 1:33:13_, 1:37:11_, 1:37:14_, 1:37:15 _, 1:55:3_, 1:65:19_, 1:80:12

full-time [1]_ - 1:37:11

fuller [1]_ - 1:19:16

fully [9]_ - 1:18:23_, 1:41:3 _, 1:41:21_, 1:80:17_, 1:113:2_, 1:125:10_, 1:125:14_, 1:150:11

fulsome [2]_ - 1:112:25_, 1:119:22

function [5]_ - 1:101:24_, 1:102:1_, 1:106:7_, 1:107:11 _, 1:117:18

functional [2]_ - 1:12:17_, 1:65:16

functions [1]_ - 1:116:16

fundamentally [1]_ - 1:151:14

furnish [1]_ - 1:119:8

furthermore [2]_ - 1:115:22_, 1:146:4

future [1]_ - 1:40:24

G

gallery [2]_ - 1:93:3_, 1:94:23

game [1]_ - 1:39:7

garden [1]_ - 1:104:18

gatekeeper [1]_ - 1:106:7

gathered [1]_ - 1:99:21

gears [1]_ - 1:78:1

general [6]_ - 1:16:12_, 1:24:13_, 1:31:12_, 1:66:4_, 1:113:21_, 1:115:19

generated [2]_ - 1:19:14_, 1:95:6

generous [1]_ - 1:89:21

Geospatial [1]_ - 1:13:15

Giglio [1]_ - 1:62:22

given [13]_ - 1:12:2_, 1:19:23_, 1:44:25_, 1:47:25 _, 1:60:3_, 1:86:20_, 1:88:15 _, 1:89:22_, 1:93:14_, 1:103:21_, 1:131:2

glance [1]_ - 1:84:24

Goldberg [1]_ - 1:137:2

Gotcha [1]_ - 1:33:9

government [86]_ - 1:5:16_, 1:14:18_, 1:15:6_, 1:16:1_, 1:17:24_, 1:20:4_,

1:31:10_, 1:32:1_, 1:32:19_, 1:38:10_, 1:40:12_, 1:41:23 _, 1:43:17_, 1:44:24_, 1:45:16_, 1:45:24_, 1:47:5_, 1:49:9_, 1:52:15_, 1:52:24_, 1:55:25_, 1:56:16_, 1:56:21 _, 1:62:20_, 1:63:17_, 1:64:19_, 1:65:4_, 1:66:6_, 1:66:25_, 1:69:25_, 1:70:10 _, 1:74:4_, 1:74:10_, 1:75:23 _, 1:76:14_, 1:78:17_, 1:79:2 _, 1:85:22_, 1:86:2_, 1:86:9_, 1:89:22_, 1:90:6_, 1:91:1_, 1:91:20_, 1:92:1_, 1:95:9_, 1:97:18_, 1:98:6_, 1:98:22_, 1:102:16_, 1:104:4_, 1:104:5 _, 1:105:3_, 1:105:5_, 1:106:5_, 1:106:8_, 1:111:2 _, 1:112:23_, 1:119:8_, 1:123:6_, 1:125:5_, 1:126:2 _, 1:126:5_, 1:126:10_, 1:127:2_, 1:128:4_, 1:128:16 _, 1:132:16_, 1:134:24_, 1:135:15_, 1:136:18_, 1:136:19_, 1:137:14_, 1:137:19_, 1:137:20_, 1:141:15_, 1:143:21_, 1:146:9_, 1:150:7_, 1:151:10 _, 1:152:15_, 1:152:17_, 1:156:24_, 1:157:2_, 1:157:12_, 1:162:9

government's [24]_ - 1:10:13_, 1:10:20_, 1:16:16 _, 1:36:17_, 1:39:19_, 1:42:15_, 1:59:16_, 1:62:16 _, 1:67:12_, 1:67:13_, 1:70:8 _, 1:75:4_, 1:85:19_, 1:86:18 _, 1:109:12_, 1:111:13_, 1:117:17_, 1:117:24_, 1:129:14_, 1:139:6_, 1:139:13_, 1:149:19_, 1:150:16_, 1:152:1

governmental [1]_ - 1:15:4

Graddick [1]_ - 1:101:6

grand [30]_ - 1:20:6_, 1:55:7_, 1:112:18_, 1:112:19 _, 1:132:10_, 1:140:7_, 1:140:9_, 1:140:11_, 1:140:18_, 1:140:20_, 1:141:13_, 1:142:12_, 1:143:5_, 1:143:8_, 1:143:11 _, 1:154:13_, 1:154:17_, 1:155:10_, 1:155:12_, 1:156:16_, 1:157:7_, 1:157:9 _, 1:157:17_, 1:159:6_, 1:159:9_, 1:159:20_, 1:159:22_, 1:160:1_, 1:160:5 _, 1:160:19

granted [2]_ - 1:94:16_, 1:155:25

granting [2]_ - 1:15:13_, 1:135:2

granularly [2]_ - 1:38:13_, 1:43:23

grateful [1]_ - 1:22:24

gratuitous [7]_ - 1:128:20 _, 1:131:16_, 1:150:7_, 1:152:8_, 1:153:1_, 1:153:4 _, 1:161:15

gratuitously [2]_ - 1:131:1 _, 1:162:13

great [2]_ - 1:22:16_, 1:152:24

ground [1]_ - 1:65:2

group [1]_ - 1:96:7

grown [1]_ - 1:39:18

guess [13]_ - 1:6:21_, 1:8:15_, 1:22:25_, 1:52:8_, 1:71:8_, 1:79:3_, 1:96:12_, 1:97:4_, 1:105:7_, 1:118:3_, 1:123:16_, 1:162:11

guided [1]_ - 1:110:16

gut [2]_ - 1:139:14

guys [3]_ - 1:72:3_, 1:149:24_, 1:155:4

## H

half [2]_ - 1:128:15_, 1:131:19

hand [4]_ - 1:114:22_, 1:114:24_, 1:132:24_, 1:150:3

handful [1]_ - 1:28:24

handheld [1]_ - 1:96:16

handled [3]_ - 1:8:19_, 1:33:12_, 1:157:14

happily [1]_ - 1:91:24

happy [6]_ - 1:21:17_, 1:48:17_, 1:97:2_, 1:97:3_, 1:133:24_, 1:153:22

Happy [1]_ - 1:97:3

harassment [4]_ - 1:111:11_, 1:150:2_, 1:150:8 _, 1:152:12

Harbach [18]_ - 1:3:10_, 1:8:11_, 1:8:13_, 1:18:4_, 1:26:3_, 1:30:14_, 1:78:3_, 1:81:16_, 1:83:11_, 1:85:12 _, 1:92:24_, 1:107:16_, 1:109:18_, 1:147:16_, 1:154:15_, 1:155:11_, 1:155:14_, 1:156:15

HARBACH [130]_ - 1:9:19 _, 1:10:1_, 1:10:4_, 1:11:8_, 1:11:23_, 1:12:5_, 1:12:21, 1:12:24_, 1:13:3_, 1:13:13_, 1:13:22_, 1:16:17_, 1:17:3_, 1:18:5_, 1:85:14_, 1:87:17_, 1:88:18_, 1:88:24_, 1:90:18 _, 1:90:22_, 1:91:6_, 1:109:20_, 1:109:22_, 1:109:25_, 1:110:4_, 1:111:21_, 1:111:23_, 1:112:6_, 1:114:4_, 1:114:25 _, 1:115:6_, 1:115:13_, 1:115:17_, 1:116:6_, 1:116:10_, 1:116:18_, 1:116:24_, 1:117:8_, 1:117:13_, 1:118:8_, 1:118:10_, 1:118:13_, 1:118:20_, 1:119:2_, 1:119:11 _, 1:119:20_, 1:119:25_, 1:120:3_, 1:120:17_, 1:121:3 _, 1:122:11_, 1:122:24_, 1:123:1_, 1:123:4_, 1:123:8 _, 1:123:13_, 1:123:23_, 1:124:4_, 1:124:16_, 1:124:21_, 1:126:7_, 1:126:14_, 1:126:16_, 1:126:21_, 1:126:24_, 1:127:1_, 1:127:5_, 1:127:13 _, 1:127:19_, 1:127:23_, 1:128:11_, 1:128:14_, 1:129:13_, 1:130:2_, 1:130:5 _, 1:130:11_, 1:130:13_, 1:132:2_, 1:132:5_, 1:132:14 _, 1:134:1_, 1:134:23_, 1:135:4_, 1:135:11_, 1:135:13_, 1:135:17_, 1:135:20_, 1:135:25_, 1:136:5_, 1:136:8_, 1:137:21 _, 1:137:24_, 1:138:3_, 1:138:10_, 1:138:22_, 1:139:1_, 1:140:2_, 1:140:6 _, 1:141:4_, 1:141:19_, 1:142:3_, 1:142:11_, 1:142:16_, 1:143:3_, 1:143:11_, 1:143:14_, 1:143:20_, 1:143:24_, 1:144:4_, 1:144:6_, 1:144:8 _, 1:144:15_, 1:144:18_, 1:144:21_, 1:145:5_, 1:145:11_, 1:145:13_, 1:145:21_, 1:145:24_, 1:146:14_, 1:146:18_, 1:146:22_, 1:162:10_, 1:162:20_, 1:162:24_, 1:163:19_, 1:164:5_, 1:164:8 _, 1:164:17_, 1:165:7

Harbach's [1]_ - 1:149:3

hard [9]_ - 1:18:22_, 1:22:24_, 1:27:23_, 1:44:8_,

1:60:8_, 1:126:13_, 1:133:22 _, 1:160:11

harm [3]_ - 1:150:2_, 1:152:24_, 1:153:8

harmful [1]_ - 1:37:16

hasten [1]_ - 1:143:14

hate [2]_ - 1:44:7_, 1:132:5

hay [1]_ - 1:56:23

head [2]_ - 1:101:10_, 1:148:23

headers [1]_ - 1:83:17

Headquarters [3]_ - 1:30:5_, 1:75:16_, 1:75:17

headquarters [2]_ - 1:29:8_, 1:29:11

hear [28]_ - 1:5:20_, 1:18:2 _, 1:19:12_, 1:21:8_, 1:31:4_, 1:41:7_, 1:49:6_, 1:49:8_, 1:62:7_, 1:73:16_, 1:76:21_, 1:77:24_, 1:78:2_, 1:81:16_, 1:88:24_, 1:95:13_, 1:95:15 _, 1:95:20_, 1:95:24_, 1:96:4 _, 1:96:24_, 1:102:9_, 1:104:25_, 1:107:16_, 1:109:17_, 1:126:10_, 1:133:25_, 1:154:14

heard [11]_ - 1:18:23_, 1:49:7_, 1:70:24_, 1:71:7_, 1:84:10_, 1:90:20_, 1:96:3_, 1:98:19_, 1:100:4_, 1:113:19 _, 1:147:12

hearing [95]_ - 1:4:16_, 1:4:18_, 1:6:23_, 1:6:24_, 1:7:12_, 1:7:13_, 1:8:2_, 1:8:3_, 1:8:9_, 1:8:15_, 1:10:16_, 1:10:21_, 1:12:3_, 1:14:14_, 1:14:17_, 1:14:20 _, 1:15:3_, 1:15:17_, 1:15:21 _, 1:16:6_, 1:16:11_, 1:16:13 _, 1:17:15_, 1:17:17_, 1:17:20_, 1:19:3_, 1:19:21_, 1:22:9_, 1:31:14_, 1:32:4_, 1:32:12_, 1:32:20_, 1:33:24 _, 1:34:1_, 1:34:24_, 1:34:25 _, 1:35:7_, 1:35:10_, 1:35:15 _, 1:40:2_, 1:41:8_, 1:41:14_, 1:41:15_, 1:41:21_, 1:41:25 _, 1:42:1_, 1:42:3_, 1:42:9_, 1:46:2_, 1:52:21_, 1:61:18_, 1:64:8_, 1:67:4_, 1:67:6_, 1:67:8_, 1:67:15_, 1:68:2_, 1:68:21_, 1:69:3_, 1:69:15_, 1:69:18_, 1:69:22_, 1:70:1_, 1:70:10_, 1:70:11_, 1:71:22 _, 1:73:14_, 1:76:11_, 1:76:21_, 1:76:24_, 1:77:11 _, 1:77:17_, 1:81:22_, 1:83:12_, 1:85:17_, 1:86:22

_, 1:87:9_, 1:87:12_, 1:87:24
_, 1:88:1_, 1:88:13_, 1:89:9_,
1:89:18_, 1:89:20_, 1:89:21
_, 1:91:14_, 1:92:16_,
1:92:20_, 1:95:13_, 1:96:12
_, 1:96:13_, 1:131:24_,
1:146:4_, 1:165:12

hearings [16]_ - 1:4:19_,
1:5:6_, 1:5:11_, 1:19:3_,
1:19:11_, 1:35:19_, 1:37:4_,
1:38:2_, 1:42:10_, 1:46:15_,
1:46:23_, 1:47:1_, 1:60:6_,
1:79:6_, 1:104:24_, 1:145:19

hears [1]_ - 1:20:11

heart [3]_ - 1:98:4_,
1:100:9_, 1:114:17

heavily [1]_ - 1:118:5

heels [1]_ - 1:133:9

heightened [5]_ - 1:98:17
_, 1:101:14_, 1:103:25_,
1:117:25_, 1:157:25

held [4]_ - 1:41:14_,
1:42:23_, 1:43:18_, 1:64:3

help [3]_ - 1:19:2_, 1:56:7_,
1:96:20

helpful [10]_ - 1:70:16_,
1:71:8_, 1:110:5_, 1:115:3_,
1:115:5_, 1:122:13_,
1:126:17_, 1:132:12_,
1:139:25_, 1:159:6

helping [1]_ - 1:62:11

herring [1]_ - 1:109:8

hesitate [1]_ - 1:122:11

hidden [1]_ - 1:68:1

hide [3]_ - 1:74:18_,
1:152:14_, 1:152:23

hiding [2]_ - 1:55:6_,
1:57:17

high [9]_ - 1:7:14_, 1:7:16_,
1:8:11_, 1:17:25_, 1:76:13_,
1:110:5_, 1:133:19_,
1:135:23_, 1:151:2

higher [4]_ - 1:16:20_,
1:17:21_, 1:121:18_,
1:123:22

himself [1]_ - 1:53:15

history [2]_ - 1:66:17_,
1:116:1

hit [1]_ - 1:44:16

hold [5]_ - 1:16:21_,
1:18:19_, 1:36:16_, 1:53:7_,
1:97:4

holders [6]_ - 1:24:5_,
1:24:7_, 1:25:8_, 1:33:3_,
1:35:3_, 1:72:23

holding [3]_ - 1:15:2_,
1:120:7_, 1:124:17

hole [1]_ - 1:129:10

holidays [2]_ - 1:47:14

home [2]_ - 1:40:6_, 1:40:8

honest [2]_ - 1:39:6_,
1:138:3

Honor [133]_ - 1:3:9_,
1:3:13_, 1:3:17_, 1:3:20_,
1:6:9_, 1:7:18_, 1:9:19_,
1:9:20_, 1:10:1_, 1:10:2_,
1:10:4_, 1:10:11_, 1:12:5_,
1:12:8_, 1:13:13_, 1:13:18_,
1:14:10_, 1:14:21_, 1:17:20
_, 1:18:5_, 1:18:15_, 1:19:25
_, 1:23:11_, 1:30:18_, 1:36:2
_, 1:36:13_, 1:37:9_, 1:39:18
_, 1:44:21_, 1:45:14_,
1:48:14_, 1:48:17_, 1:49:12
_, 1:52:5_, 1:52:7_, 1:52:23_,
1:53:5_, 1:53:13_, 1:53:14_,
1:53:17_, 1:58:23_, 1:61:2_,
1:61:16_, 1:61:22_, 1:62:6_,
1:62:17_, 1:64:20_, 1:69:6_,
1:70:6_, 1:76:21_, 1:77:4_,
1:77:17_, 1:78:5_, 1:78:16_,
1:79:23_, 1:80:5_, 1:80:12_,
1:81:15_, 1:84:1_, 1:84:4_,
1:84:10_, 1:85:9_, 1:85:14_,
1:85:16_, 1:86:3_, 1:87:10_,
1:87:25_, 1:88:7_, 1:88:25_,
1:90:18_, 1:93:6_, 1:94:5_,
1:95:22_, 1:97:20_, 1:109:19
_, 1:109:22_, 1:110:4_,
1:110:5_, 1:110:15_,
1:110:16_, 1:110:19_,
1:110:24_, 1:112:6_, 1:113:6
_, 1:115:2_, 1:116:6_,
1:116:18_, 1:118:1_,
1:118:11_, 1:118:20_,
1:118:24_, 1:120:3_,
1:121:11_, 1:122:16_,
1:124:4_, 1:124:25_, 1:125:6
_, 1:126:16_, 1:126:21_,
1:131:17_, 1:132:7_, 1:134:1
_, 1:137:15_, 1:139:9_,
1:139:18_, 1:140:3_,
1:142:18_, 1:143:4_, 1:147:9
_, 1:148:19_, 1:150:5_,
1:151:12_, 1:155:9_,
1:155:20_, 1:156:1_, 1:156:6
_, 1:156:14_, 1:156:24_,
1:157:16_, 1:157:19_,
1:157:22_, 1:158:8_,
1:158:17_, 1:159:8_,
1:160:18_, 1:160:20_,
1:160:25_, 1:161:5_,
1:161:16_, 1:162:8_,
1:162:15_, 1:164:17_,

1:165:7

honor [1]_ - 1:159:10

Honor's [6]_ - 1:10:6_,
1:83:13_, 1:87:5_, 1:112:24
_, 1:126:8_, 1:140:8

hook [1]_ - 1:10:15

hope [7]_ - 1:15:25_,
1:19:1_, 1:25:4_, 1:88:24_,
1:110:5_, 1:145:21_,
1:164:17

hoped [1]_ - 1:96:13

hopefully [2]_ - 1:20:10_,
1:49:9

horse [1]_ - 1:91:14

hour [4]_ - 1:5:19_, 1:22:21
_, 1:78:1_, 1:94:7

house [1]_ - 1:3:23

House [6]_ - 1:13:23_,
1:64:15_, 1:73:22_, 1:73:25
_, 1:76:12_, 1:76:13

huge [1]_ - 1:37:7

human [1]_ - 1:61:13

hypothetical [1]_ -
1:111:14

hypothetically [1]_ -
1:87:10

I

IC [3]_ - 1:65:3_, 1:75:11_,
1:77:9

iCloud [6]_ - 1:50:3_,
1:50:4_, 1:82:17_, 1:82:19_,
1:82:21_, 1:82:25

idea [8]_ - 1:44:4_, 1:51:12
_, 1:52:2_, 1:99:12_,
1:104:13_, 1:137:19_,
1:154:19_, 1:154:25

ideas [1]_ - 1:103:16

identical [1]_ - 1:82:18

identification [1]_ -
1:161:6

identifications [1]_ -
1:157:6

identified [3]_ - 1:54:23_,
1:54:25_, 1:59:24

identify [8]_ - 1:59:8_,
1:59:12_, 1:60:1_, 1:78:15_,
1:134:24_, 1:158:6_,
1:159:21_, 1:160:4

identifying [1]_ - 1:60:3

identities [3]_ - 1:111:7_,
1:134:14_, 1:137:17

identity [1]_ - 1:137:12

imagine [1]_ - 1:148:9

immediate [3]_ - 1:18:13
_, 1:40:23_, 1:64:25

immediately [2]_ -
1:62:24_, 1:146:2

immunity [1]_ - 1:41:18

impact [3]_ - 1:19:22_,
1:106:21_, 1:108:24

impacts [1]_ - 1:64:6

implicate [2]_ - 1:5:25_,
1:19:19

implicated [2]_ - 1:87:3_,
1:138:7

implicates [1]_ - 1:12:9_,
1:108:4

implication [2]_ - 1:9:16_,
1:147:23

implications [1]_ -
1:85:19

import [3]_ - 1:76:17_,
1:112:11_, 1:117:5

importance [2]_ - 1:61:9_,
1:113:3

important [30]_ - 1:10:9_,
1:10:12_, 1:12:12_, 1:12:25
_, 1:18:9_, 1:19:25_, 1:20:22
_, 1:29:9_, 1:30:15_, 1:41:6_,
1:56:8_, 1:56:11_, 1:56:13_,
1:61:23_, 1:62:15_, 1:67:24
_, 1:69:7_, 1:94:19_, 1:96:11
_, 1:106:14_, 1:111:9_,
1:114:4_, 1:129:9_, 1:129:14
_, 1:137:3_, 1:137:8_,
1:148:22_, 1:149:21_,
1:163:7_, 1:163:24

imposing [1]_ - 1:134:11

impossibility [2]_ -
1:34:10_, 1:38:17

impossible [1]_ -
1:151:11

improper [2]_ - 1:150:6_,
1:153:17

inabilities [1]_ - 1:18:21

inadequate [1]_ - 1:82:6

inappropriate [1]_ -
1:66:17

include [3]_ - 1:29:24_,
1:42:25_, 1:84:25

included [3]_ - 1:45:22_,
1:65:8_, 1:132:9

includes [4]_ - 1:4:11_,
1:5:7_, 1:131:10_, 1:148:25

including [21]_ - 1:13:23_,
1:16:15_, 1:27:15_, 1:29:1_,

1:37:2..., 1:37:3..., 1:39:2...,
1:39:15..., 1:40:16..., 1:41:4...,
1:47:14..., 1:57:21..., 1:66:4...,
1:93:10..., 1:94:20..., 1:97:18
..., 1:119:18..., 1:135:18...,
1:151:22..., 1:164:16

inconsistency [2]... -
1:35:15..., 1:78:15

inconsistent [1]... -
1:151:14

incredibly [2]... - 1:25:14...,
1:57:2

incumbent [1]... - 1:64:19

independently [1]... -
1:63:15

indicate [1]... - 1:13:12

indicated [2]... - 1:4:9...,
1:49:22

indicating [1]... - 1:125:8

indicted [2]... - 1:80:24...,
1:145:9

indictment [16]... - 1:13:12
..., 1:54:24..., 1:54:25...,
1:56:23..., 1:57:8..., 1:57:10...,
1:57:13..., 1:81:4..., 1:81:7...,
1:102:14..., 1:109:1..., 1:145:3
..., 1:145:6..., 1:145:7...,
1:145:10..., 1:150:8

individual [1]... - 1:134:20

individuals [1]... - 1:152:7

inevitably [1]... - 1:153:10

inference [1]... - 1:89:3

inferences [2]... - 1:88:17
..., 1:89:13

informal [3]... - 1:66:23...,
1:73:20..., 1:73:21

informally [1]... - 1:66:13

information [45]... - 1:5:15
..., 1:11:10..., 1:11:16...,
1:25:25..., 1:30:10..., 1:32:9...,
1:33:4..., 1:33:19..., 1:34:14...,
1:43:14..., 1:43:19..., 1:50:14
..., 1:53:6..., 1:53:9..., 1:53:16...,
1:54:7..., 1:54:8..., 1:56:19...,
1:57:11..., 1:57:23..., 1:58:10
..., 1:64:2..., 1:64:3..., 1:67:18...,
1:68:13..., 1:68:14..., 1:77:14
..., 1:82:22..., 1:107:5...,
1:107:20..., 1:112:17...,
1:119:7..., 1:121:21...,
1:124:14..., 1:129:3...,
1:132:21..., 1:136:3...,
1:136:25..., 1:146:16...,
1:152:2..., 1:152:10...,
1:152:11..., 1:155:17...,
1:157:6..., 1:163:10

informed [1]... - 1:152:10

informs [1]... - 1:131:8

initial [7]... - 1:4:22..., 1:11:1
..., 1:28:8..., 1:66:15..., 1:77:2...,
1:96:10..., 1:126:18

initiated [2]... - 1:66:15...,
1:68:1

injured [1]... - 1:134:13

input [1]... - 1:73:10

inquiry [1]... - 1:106:22

insight [1]... - 1:160:21

insinuate [1]... - 1:114:2

inspection [3]... - 1:105:6...,
1:105:8..., 1:136:20

instance [3]... - 1:136:16...,
1:139:15..., 1:150:6

instances [2]... - 1:125:18
..., 1:127:6

instructive [1]... - 1:96:10

insulated [1]... - 1:117:10

integrity [5]... - 1:80:14...,
1:97:15..., 1:111:4..., 1:111:8
..., 1:153:16

Integrity [1]... - 1:80:18

Intelligence [16]... -
1:11:19..., 1:12:9..., 1:12:18...,
1:13:4..., 1:13:15..., 1:13:24...,
1:26:16..., 1:26:18..., 1:64:14
..., 1:64:24..., 1:65:3..., 1:71:20
..., 1:72:19..., 1:75:18...,
1:77:18..., 1:82:8

intelligence [2]... - 1:14:22
..., 1:90:5

intend [3]... - 1:53:6...,
1:53:10..., 1:59:13

intended [1]... - 1:59:24

intending [1]... - 1:66:1

intends [1]... - 1:142:5

intense [1]... - 1:150:21

intent [1]... - 1:109:12

intention [1]... - 1:84:20

intents [1]... - 1:49:3

interact [1]... - 1:91:19

interactions [1]... - 1:15:4

interacts [1]... - 1:91:22

interconnectedness [1]
... - 1:12:1

interest [7]... - 1:73:13...,
1:95:9..., 1:107:8..., 1:110:25
..., 1:123:7..., 1:137:1...,
1:146:17

interested [3]... - 1:12:3...,

1:99:7..., 1:163:4

interesting [1]... - 1:94:18

interests [7]... - 1:95:13...,
1:106:6..., 1:106:24...,
1:120:14..., 1:142:23...,
1:148:22..., 1:150:22

interfere [1]... - 1:39:3

interference [1]... -
1:93:23

interfering [1]... - 1:93:7

internal [1]... - 1:66:11

internet [2]... - 1:132:25...,
1:133:3

interpretation [1]... -
1:89:25

interrelationship [1]... -
1:26:15

interrupt [3]... - 1:18:17...,
1:118:10..., 1:155:20

interrupting [1]... - 1:9:19

intervene [2]... - 1:99:15...,
1:143:22

intervenes [1]... - 1:139:1

interviewed [2]... - 1:28:12

interviewing [1]... - 1:14:7

interviews [5]... - 1:27:4...,
1:28:8..., 1:28:20..., 1:112:20

intimidating [1]... - 1:151:9

intimidation [6]... -
1:111:11..., 1:132:23...,
1:133:6..., 1:133:11...,
1:135:10

introduction [1]... -
1:116:15

introductory [1]... -
1:35:14

invading [1]... - 1:163:14

Investigation [1]... -
1:27:15

investigation [9]... - 1:15:5
..., 1:29:1..., 1:66:8..., 1:72:24...,
1:91:3..., 1:141:14..., 1:143:12
..., 1:159:18..., 1:160:19

investigations [2]... -
1:140:9..., 1:143:9

investigative [5]... - 1:14:6
..., 1:14:8..., 1:26:12..., 1:26:24
..., 1:93:10

involve [3]... - 1:7:1...,
1:77:13..., 1:94:19

involved [11]... - 1:11:19...,
1:14:5..., 1:25:25..., 1:28:25...,
1:29:1..., 1:29:9..., 1:29:14...,
1:29:15..., 1:51:5..., 1:51:13...,

1:95:14

involves [2]... - 1:88:15...,
1:160:5

involving [3]... - 1:25:9...,
1:95:11..., 1:119:23

iota [1]... - 1:14:19

iPhone [2]... - 1:50:4...,
1:50:5

ipso [1]... - 1:108:17

irony [1]... - 1:150:22

irrelevant [2]... - 1:128:20...,
1:129:3

irrespective [1]... - 1:11:10

IRVING [3]... - 1:3:20...,
1:62:6..., 1:162:8

Irving [2]... - 1:3:20...,
1:83:14

isolate [1]... - 1:62:9

isolates [1]... - 1:164:23

issue [47]... - 1:9:10...,
1:9:18..., 1:10:10..., 1:16:22...,
1:30:9..., 1:38:24..., 1:41:20...,
1:42:23..., 1:43:20..., 1:62:8...,
1:68:22..., 1:69:6..., 1:69:7...,
1:69:12..., 1:73:1..., 1:74:22...,
1:74:24..., 1:77:12..., 1:78:15
..., 1:78:20..., 1:78:21...,
1:82:16..., 1:89:3..., 1:89:6...,
1:89:14..., 1:89:19..., 1:89:23
..., 1:90:1..., 1:98:11..., 1:98:23
..., 1:100:19..., 1:102:24...,
1:106:14..., 1:106:15...,
1:107:20..., 1:114:15...,
1:115:19..., 1:116:4...,
1:145:19..., 1:145:20...,
1:150:18..., 1:151:16...,
1:151:25..., 1:157:16...,
1:157:17..., 1:163:22

issued [1]... - 1:34:17

issues [54]... - 1:4:4...,
1:5:22..., 1:5:23..., 1:6:8...,
1:18:3..., 1:18:18..., 1:18:22...,
1:19:3..., 1:31:3..., 1:31:6...,
1:32:18..., 1:35:10..., 1:38:13
..., 1:41:4..., 1:42:17..., 1:47:3...,
1:49:7..., 1:49:13..., 1:60:7...,
1:60:13..., 1:67:5..., 1:67:11...,
1:69:17..., 1:73:17..., 1:77:24
..., 1:78:2..., 1:78:5..., 1:78:8...,
1:79:12..., 1:85:6..., 1:87:23...,
1:88:6..., 1:94:15..., 1:94:25...,
1:98:4..., 1:98:21..., 1:100:3...,
1:100:9..., 1:104:24...,
1:105:22..., 1:107:17...,
1:120:24..., 1:127:11...,
1:129:8..., 1:140:5..., 1:142:2
..., 1:148:12..., 1:155:11...,

1:159:4_, 1:162:7_, 1:164:23 _, 1:164:24_, 1:164:25_, 1:165:6

issuing [1]_ - 1:14:6

IT [1]_ - 1:4:3

items [4]_ - 1:10:5_, 1:18:13_, 1:41:1_, 1:68:9

itself [4]_ - 1:54:24_, 1:100:14_, 1:108:17_, 1:109:13

**J**

Jack [1]_ - 1:76:2

January [2]_ - 1:9:15_, 1:74:6

Jay [2]_ - 1:3:9_, 1:45:19

Jencks [21]_ - 1:52:21_, 1:63:9_, 1:63:18_, 1:63:19_, 1:63:22_, 1:86:10_, 1:86:12 _, 1:86:13_, 1:136:10_, 1:136:14_, 1:137:4_, 1:137:10_, 1:138:6_, 1:138:7 _, 1:138:9_, 1:138:10_, 1:138:11_, 1:138:20_, 1:140:13_, 1:140:22

jeopardize [1]_ - 1:107:6

Jewish [1]_ - 1:47:14

job [1]_ - 1:113:11

John [1]_ - 1:3:20

join [2]_ - 1:149:4_, 1:152:21

joined [1]_ - 1:3:14

Judge [25]_ - 1:21:18_, 1:25:7_, 1:48:5_, 1:62:13_, 1:64:17_, 1:67:20_, 1:69:2_, 1:71:11_, 1:72:14_, 1:75:3_, 1:76:3_, 1:98:12_, 1:101:13 _, 1:101:17_, 1:109:20_, 1:142:25_, 1:146:1_, 1:146:5 _, 1:147:25_, 1:148:7_, 1:151:7_, 1:153:2_, 1:153:23 _, 1:159:17_, 1:163:8

judge [16]_ - 1:25:14_, 1:47:19_, 1:47:22_, 1:80:4_, 1:103:13_, 1:112:15_, 1:144:23_, 1:147:20_, 1:155:15_, 1:157:21_, 1:157:22_, 1:157:24_, 1:158:2_, 1:159:12_, 1:159:15

judge's [1]_ - 1:154:20

judges [4]_ - 1:80:1_, 1:80:2_, 1:80:4_, 1:134:4

judgment [1]_ - 1:62:3

judgments [1]_ - 1:107:12

judicial [24]_ - 1:7:3_, 1:18:11_, 1:19:22_, 1:22:16 _, 1:99:1_, 1:99:5_, 1:99:25_, 1:100:1_, 1:100:13_, 1:100:21_, 1:102:18_, 1:103:3_, 1:104:15_, 1:106:1 _, 1:108:20_, 1:108:21_, 1:110:21_, 1:116:13_, 1:117:15_, 1:129:6_, 1:129:12_, 1:134:5_, 1:141:25_, 1:143:17

judicially [1]_ - 1:68:24

judiciary [1]_ - 1:97:18

July [16]_ - 1:6:19_, 1:31:13_, 1:32:4_, 1:32:19_, 1:34:4_, 1:34:5_, 1:34:9_, 1:37:19_, 1:38:14_, 1:45:5_, 1:78:17_, 1:78:19_, 1:79:15 _, 1:79:19

jump [2]_ - 1:18:10_, 1:59:22

juncture [1]_ - 1:59:7

June [5]_ - 1:23:8_, 1:31:7 _, 1:32:1_, 1:32:18_, 1:33:24

juror [1]_ - 1:48:8

jury [42]_ - 1:20:7_, 1:33:13 _, 1:34:25_, 1:35:20_, 1:37:2 _, 1:39:15_, 1:39:16_, 1:40:5 _, 1:40:9_, 1:47:16_, 1:48:8_, 1:48:10_, 1:55:8_, 1:73:11_, 1:112:18_, 1:112:19_, 1:132:10_, 1:140:7_, 1:140:9 _, 1:140:11_, 1:140:18_, 1:140:20_, 1:141:14_, 1:142:12_, 1:143:5_, 1:143:8 _, 1:143:11_, 1:154:13_, 1:154:17_, 1:155:10_, 1:155:12_, 1:156:16_, 1:157:7_, 1:157:10_, 1:157:17_, 1:159:6_, 1:159:9 _, 1:159:20_, 1:159:22_, 1:160:1_, 1:160:5_, 1:160:19

jury's [1]_ - 1:42:24

Justice [6]_ - 1:30:8_, 1:51:11_, 1:80:8_, 1:80:13_, 1:80:15_, 1:80:21

justice [1]_ - 1:40:13

justified [1]_ - 1:125:22

justify [6]_ - 1:146:16_, 1:150:16_, 1:152:2_, 1:152:24_, 1:161:1_, 1:161:4

justifying [2]_ - 1:14:17_, 1:125:16

**K**

keep [7]_ - 1:22:14_,

1:135:20_, 1:135:24_, 1:141:10_, 1:149:5_, 1:157:6 _, 1:157:9

key [8]_ - 1:22:25_, 1:26:7 _, 1:33:17_, 1:34:19_, 1:41:1 _, 1:70:15_, 1:81:6_, 1:86:15

kicks [1]_ - 1:40:15

kind [9]_ - 1:31:19_, 1:38:21_, 1:72:7_, 1:72:25_, 1:78:25_, 1:107:8_, 1:122:6 _, 1:126:3_, 1:151:4

Kise [1]_ - 1:3:15

knowing [4]_ - 1:4:14_, 1:21:19_, 1:65:19_, 1:82:11

knowledge [1]_ - 1:103:20

known [2]_ - 1:21:16_, 1:56:20

knows [5]_ - 1:14:10_, 1:97:20_, 1:103:16_, 1:113:6 _, 1:147:9

Kohler [4]_ - 1:65:8_, 1:70:20_, 1:70:23_, 1:89:2

**L**

label [1]_ - 1:136:12

labor [2]_ - 1:108:20_, 1:108:21

lack [1]_ - 1:24:19

Lago [2]_ - 1:131:12_, 1:145:1

laid [5]_ - 1:11:12_, 1:13:17 _, 1:74:21_, 1:110:14_, 1:117:24

language [4]_ - 1:58:19_, 1:58:20_, 1:93:8_, 1:121:10

lapel [1]_ - 1:96:16

lapse [1]_ - 1:82:20

large [1]_ - 1:92:16

last [20]_ - 1:4:21_, 1:6:11_, 1:34:23_, 1:39:11_, 1:39:18 _, 1:44:22_, 1:51:19_, 1:62:20_, 1:76:11_, 1:83:11 _, 1:84:1_, 1:91:24_, 1:107:14_, 1:111:15_, 1:121:6_, 1:129:23_, 1:130:15_, 1:141:13_, 1:146:24_, 1:147:7

late [6]_ - 1:21:12_, 1:31:8 _, 1:38:9_, 1:47:4_, 1:47:20_, 1:60:4

latest [2]_ - 1:5:6_, 1:58:21

launch [1]_ - 1:142:5

law [47]_ - 1:15:1_, 1:26:4_,

1:26:5_, 1:27:14_, 1:38:22_, 1:38:23_, 1:38:25_, 1:65:23 _, 1:94:17_, 1:98:9_, 1:98:12 _, 1:101:14_, 1:102:2_, 1:103:2_, 1:104:1_, 1:104:14 _, 1:105:4_, 1:106:2_, 1:106:19_, 1:106:25_, 1:107:2_, 1:111:1_, 1:111:12 _, 1:113:23_, 1:115:20_, 1:117:6_, 1:117:22_, 1:120:13_, 1:121:4_, 1:121:5 _, 1:122:7_, 1:122:12_, 1:122:15_, 1:122:20_, 1:123:9_, 1:123:15_, 1:128:9 _, 1:130:6_, 1:134:4_, 1:141:8_, 1:151:8_, 1:152:16 _, 1:154:11_, 1:161:13_, 1:161:17_, 1:162:23

lawful [1]_ - 1:125:15

lawsuit [1]_ - 1:99:14

lawyer [1]_ - 1:113:20

lawyers [2]_ - 1:17:25_, 1:65:10

lay [2]_ - 1:64:16_, 1:152:18

lead [4]_ - 1:5:17_, 1:70:9_, 1:132:23_, 1:147:17

leadership [2]_ - 1:64:13 _, 1:64:14

leads [3]_ - 1:22:7_, 1:23:15_, 1:84:14

lean [1]_ - 1:93:20

learned [3]_ - 1:49:23_, 1:51:16_, 1:51:17

least [21]_ - 1:6:25_, 1:11:12_, 1:19:21_, 1:24:9_, 1:26:4_, 1:29:18_, 1:30:2_, 1:35:11_, 1:39:21_, 1:46:14 _, 1:63:12_, 1:65:20_, 1:72:10_, 1:80:1_, 1:85:11_, 1:119:18_, 1:119:23_, 1:127:12_, 1:143:9_, 1:151:5 _, 1:160:10

leave [5]_ - 1:9:21_, 1:14:2 _, 1:14:3_, 1:46:16_, 1:150:24

led [1]_ - 1:150:8

left [3]_ - 1:74:2_, 1:83:7_, 1:156:11

legal [23]_ - 1:5:20_, 1:7:15 _, 1:7:20_, 1:8:12_, 1:32:5_, 1:49:10_, 1:51:9_, 1:55:2_, 1:61:21_, 1:69:23_, 1:94:11 _, 1:100:3_, 1:110:8_, 1:110:13_, 1:112:1_, 1:113:15_, 1:114:12_, 1:114:16_, 1:116:14_,

1:138:18_, 1:148:12_, 1:153:24_, 1:154:2
legend [1]_ - 1:131:19
length [1]_ - 1:36:21
lengthy [2]_ - 1:7:1_, 1:12:17
less [5]_ - 1:5:18_, 1:53:8_, 1:142:16_, 1:150:23_, 1:153:8
lesser [1]_ - 1:120:14
letter [1]_ - 1:83:21
letters [2]_ - 1:27:8_, 1:75:5
level [8]_ - 1:24:5_, 1:24:20_, 1:25:8_, 1:30:4_, 1:43:16_, 1:76:13_, 1:110:6_, 1:112:4
liaison [2]_ - 1:71:8_, 1:71:9
lie [1]_ - 1:89:11
life [1]_ - 1:51:14
lift [1]_ - 1:156:4
light [5]_ - 1:5:4_, 1:13:11_, 1:24:10_, 1:58:7_, 1:121:12
lightly [1]_ - 1:61:8
likelihood [2]_ - 1:121:18_, 1:126:12
likely [5]_ - 1:8:23_, 1:28:11_, 1:33:2_, 1:33:3_, 1:127:10
likened [1]_ - 1:105:13
limine [1]_ - 1:9:13
limit [2]_ - 1:8:7_, 1:161:16
limited [10]_ - 1:19:7_, 1:24:21_, 1:87:10_, 1:99:19_, 1:115:14_, 1:117:19_, 1:125:6_, 1:125:19_, 1:125:21_, 1:125:24
limits [1]_ - 1:125:8
line [6]_ - 1:20:5_, 1:76:25_, 1:103:21_, 1:103:22_, 1:111:17
lines [4]_ - 1:25:3_, 1:76:25_, 1:109:11_, 1:133:12
lingering [1]_ - 1:142:2
list [19]_ - 1:12:13_, 1:12:17_, 1:13:18_, 1:13:19_, 1:14:1_, 1:14:5_, 1:69:18_, 1:70:14_, 1:73:16_, 1:122:6_, 1:126:3_, 1:126:5_, 1:126:9_, 1:126:18_, 1:132:8_, 1:133:14_, 1:135:15_, 1:137:20_, 1:160:18
listed [1]_ - 1:140:8
listening [2]_ - 1:94:24_,

1:148:3
lists [1]_ - 1:131:11
litany [1]_ - 1:112:20
literal [1]_ - 1:58:20
literally [1]_ - 1:37:14
litigant's [1]_ - 1:100:3
litigate [6]_ - 1:32:7_, 1:44:6_, 1:54:16_, 1:82:4_, 1:151:11_, 1:151:18
litigated [2]_ - 1:80:16_, 1:161:10
litigating [1]_ - 1:51:1
litigation [20]_ - 1:11:21_, 1:24:13_, 1:24:15_, 1:25:11_, 1:25:16_, 1:38:2_, 1:43:25_, 1:44:14_, 1:47:8_, 1:51:12_, 1:64:17_, 1:64:22_, 1:71:8_, 1:73:3_, 1:73:4_, 1:75:24_, 1:82:14_, 1:142:5_, 1:159:25
litigators [1]_ - 1:153:16
live [4]_ - 1:4:1_, 1:69:1_, 1:94:24_, 1:132:25
loaded [1]_ - 1:69:12
local [3]_ - 1:112:3_, 1:114:14_, 1:149:21
LoCicero [1]_ - 1:94:17
lodestar [2]_ - 1:26:7_, 1:75:20
logic [3]_ - 1:116:1_, 1:124:9_, 1:152:17
logical [5]_ - 1:17:2_, 1:58:25_, 1:62:11_, 1:78:23_, 1:117:5
logically [1]_ - 1:41:2
look [2]_ - 1:20:14_, 1:22:8_, 1:26:22_, 1:35:2_, 1:36:9_, 1:42:14_, 1:43:12_, 1:54:20_, 1:54:24_, 1:71:15_, 1:72:1_, 1:72:2_, 1:72:6_, 1:73:11_, 1:74:17_, 1:88:8_, 1:88:9_, 1:103:2_, 1:157:16_, 1:162:16
looked [2]_ - 1:57:1_, 1:134:7
looking [8]_ - 1:6:17_, 1:18:8_, 1:26:19_, 1:31:17_, 1:97:14_, 1:105:25_, 1:114:16_, 1:140:15
looks [1]_ - 1:50:14
lose [2]_ - 1:50:12_, 1:61:25
lost [1]_ - 1:48:20
loud [1]_ - 1:63:1
louder [1]_ - 1:97:5

lukewarm [1]_ - 1:156:9
lunch [2]_ - 1:5:18_, 1:93:2
lying [1]_ - 1:89:5

## M

ma'am [2]_ - 1:95:18_, 1:109:25
Mafia [1]_ - 1:133:21
Magistrate [1]_ - 1:98:12
magnitude [1]_ - 1:98:18
mainline [1]_ - 1:117:16
maintaining [1]_ - 1:111:7
majority [3]_ - 1:54:11_, 1:88:10_, 1:127:10
manage [1]_ - 1:132:1
mandate [1]_ - 1:84:18
mandatory [1]_ - 1:157:23
manifest [1]_ - 1:71:3
manner [4]_ - 1:44:24_, 1:61:25_, 1:112:25_, 1:120:5
Manual [4]_ - 1:80:8_, 1:80:13_, 1:80:15_, 1:80:21
map [1]_ - 1:142:1
Mar [2]_ - 1:131:12_, 1:145:1
Mar-a-Lago [2]_ - 1:131:12_, 1:145:1
March [16]_ - 1:8:22_, 1:38:16_, 1:39:10_, 1:40:15_, 1:40:22_, 1:42:6_, 1:42:16_, 1:47:20_, 1:59:24_, 1:60:2_, 1:69:3_, 1:71:13_, 1:89:17
Marivel [1]_ - 1:101:3
markers [1]_ - 1:83:23
marking [6]_ - 1:54:5_, 1:55:10_, 1:56:6_, 1:56:25_, 1:57:11_, 1:57:22
markings [15]_ - 1:53:20_, 1:53:23_, 1:54:12_, 1:54:20_, 1:54:25_, 1:55:4_, 1:55:14_, 1:55:20_, 1:56:2_, 1:56:23_, 1:57:6_, 1:57:18_, 1:83:16_, 1:83:17
Marshals [1]_ - 1:165:11
Maryland [1]_ - 1:25:24
material [32]_ - 1:11:13_, 1:19:19_, 1:51:22_, 1:53:22_, 1:54:14_, 1:56:3_, 1:68:6_, 1:70:7_, 1:94:22_, 1:106:4_, 1:107:18_, 1:108:1_, 1:108:5_, 1:108:10_, 1:108:14_, 1:109:1_, 1:109:3_, 1:114:20

1:121:8_, 1:138:7_, 1:138:11_, 1:138:20_, 1:140:13_, 1:140:18_, 1:140:20_, 1:140:23_, 1:140:25_, 1:141:3_, 1:143:17_, 1:157:22_, 1:161:15_, 1:164:11
materiality [1]_ - 1:70:7
materialized [1]_ - 1:134:17
materials [43]_ - 1:20:8_, 1:24:20_, 1:30:6_, 1:45:1_, 1:85:25_, 1:86:10_, 1:88:16_, 1:88:20_, 1:99:21_, 1:102:6_, 1:104:19_, 1:105:18_, 1:105:19_, 1:105:22_, 1:106:18_, 1:107:11_, 1:109:24_, 1:113:21_, 1:122:21_, 1:127:15_, 1:127:17_, 1:136:9_, 1:136:10_, 1:140:7_, 1:141:23_, 1:142:4_, 1:142:11_, 1:143:5_, 1:143:19_, 1:143:21_, 1:145:16_, 1:149:5_, 1:152:1_, 1:152:18_, 1:154:23_, 1:156:16_, 1:156:18_, 1:158:4_, 1:158:5_, 1:158:6_, 1:158:23_, 1:159:6_, 1:160:10
matter [15]_ - 1:11:15_, 1:17:11_, 1:28:3_, 1:32:5_, 1:51:4_, 1:51:10_, 1:55:8_, 1:70:21_, 1:96:10_, 1:108:2_, 1:117:2_, 1:117:13_, 1:157:18_, 1:159:6_, 1:161:21
matters [12]_ - 1:5:2_, 1:5:21_, 1:8:2_, 1:55:9_, 1:80:24_, 1:95:11_, 1:98:15_, 1:132:1_, 1:137:1_, 1:148:2_, 1:161:19
McElroy [7]_ - 1:94:17_, 1:95:16_, 1:96:15_, 1:96:20_, 1:96:24_, 1:105:1_, 1:109:17
McELROY [19]_ - 1:95:22_, 1:96:4_, 1:96:6_, 1:96:17_, 1:96:21_, 1:97:7_, 1:97:10_, 1:99:10_, 1:100:21_, 1:100:24_, 1:102:15_, 1:104:3_, 1:104:11_, 1:105:2_, 1:106:23_, 1:107:23_, 1:108:6_, 1:109:15_, 1:109:19
mean [56]_ - 1:7:20_, 1:15:5_, 1:15:7_, 1:16:5_, 1:25:13_, 1:27:17_, 1:29:15_, 1:30:22_, 1:30:25_, 1:44:7

_, 1:45:11_, 1:45:16_, 1:46:24_, 1:46:25_, 1:48:25 _, 1:52:23_, 1:53:23_, 1:55:14_, 1:61:2_, 1:61:19_, 1:63:6_, 1:69:23_, 1:70:23_, 1:70:24_, 1:71:24_, 1:79:3_, 1:79:5_, 1:82:6_, 1:84:15_, 1:89:2_, 1:89:23_, 1:90:1_, 1:90:9_, 1:91:21_, 1:93:25_, 1:101:21_, 1:102:18_, 1:113:7_, 1:115:14_, 1:115:17_, 1:123:5_, 1:123:24_, 1:127:8_, 1:128:9 _, 1:132:14_, 1:134:9_, 1:138:3_, 1:141:5_, 1:142:13 _, 1:143:15_, 1:147:2_, 1:148:20_, 1:153:5_, 1:159:13_, 1:161:8

meaning [4]_ - 1:90:6_, 1:93:18_, 1:136:13_, 1:163:23

meaningful [1]_ - 1:120:20

means [18]_ - 1:15:23_, 1:27:11_, 1:32:11_, 1:33:13 _, 1:40:4_, 1:50:15_, 1:75:21 _, 1:90:14_, 1:92:4_, 1:92:8_, 1:92:9_, 1:108:17_, 1:116:18 _, 1:117:10_, 1:139:6_, 1:147:12_, 1:157:2

meant [2]_ - 1:15:18_, 1:89:4

measure [1]_ - 1:131:19

measures [3]_ - 1:121:23 _, 1:133:19_, 1:165:1

meat [2]_ - 1:48:7_, 1:130:13

mechanical [1]_ - 1:131:25

mechanism [5]_ - 1:59:16 _, 1:138:17_, 1:148:16_, 1:158:10_, 1:164:13

media [1]_ - 1:96:7

meet [6]_ - 1:51:18_, 1:52:4_, 1:67:16_, 1:70:12_, 1:71:23_, 1:92:22

meeting [4]_ - 1:72:5_, 1:72:19_, 1:73:2_, 1:89:25

meetings [6]_ - 1:71:12_, 1:71:13_, 1:71:16_, 1:72:10 _, 1:89:17_, 1:91:6

meets [1]_ - 1:152:1

member [2]_ - 1:13:4_, 1:79:21

members [6]_ - 1:13:24_, 1:27:15_, 1:30:8_, 1:71:2_,

memo [2]_ - 1:76:15_, 1:76:17

memorialized [1]_ - 1:80:10

mention [4]_ - 1:26:13_, 1:112:13_, 1:115:14_, 1:162:12

mentioned [15]_ - 1:13:18 _, 1:14:9_, 1:25:17_, 1:25:18 _, 1:25:20_, 1:82:17_, 1:90:2 _, 1:90:3_, 1:90:18_, 1:115:2 _, 1:115:7_, 1:134:7_, 1:136:5_, 1:147:9_, 1:162:16

Merchan [2]_ - 1:21:18_, 1:48:5

merely [1]_ - 1:16:10

merits [3]_ - 1:148:6_, 1:148:22_, 1:153:9

message [2]_ - 1:14:1_, 1:112:7

met [2]_ - 1:7:14_, 1:8:10

Miami [3]_ - 1:27:16_, 1:28:22_, 1:75:17

microphones [1]_ - 1:96:14

mid [3]_ - 1:4:21_, 1:38:17 _, 1:48:21

middle [1]_ - 1:46:20

might [25]_ - 1:4:21_, 1:11:6_, 1:13:3_, 1:16:18_, 1:17:13_, 1:19:22_, 1:24:6_, 1:41:25_, 1:42:2_, 1:42:24_, 1:46:25_, 1:78:23_, 1:82:4_, 1:86:9_, 1:107:14_, 1:115:3 _, 1:126:17_, 1:127:23_, 1:128:2_, 1:128:11_, 1:129:6 _, 1:145:22_, 1:147:3

mill [1]_ - 1:17:19

million [2]_ - 1:156:17_, 1:164:3

millions [1]_ - 1:156:17

mind [3]_ - 1:6:2_, 1:52:20 _, 1:121:25

mindful [3]_ - 1:106:3_, 1:133:5_, 1:165:2

minds [1]_ - 1:113:4

mini [1]_ - 1:9:14

minimal [1]_ - 1:20:8

minimization [1]_ - 1:132:19

minimize [1]_ - 1:4:6

minimum [3]_ - 1:66:25_, 1:89:9_, 1:103:25

minute [8]_ - 1:15:8_, 1:35:4_, 1:37:18_, 1:79:25_, 1:130:24_, 1:140:8_, 1:150:24_, 1:155:18

minutes [5]_ - 1:23:1_, 1:61:20_, 1:92:25_, 1:95:19 _, 1:137:15

miscellaneous [1]_ - 1:132:11

mischaracterization [1] _ - 1:90:23

misinterpreted [1]_ - 1:90:8

misleading [1]_ - 1:161:22

missing [1]_ - 1:30:9

mistake [1]_ - 1:36:11

misunderstand [1]_ - 1:112:22

misunderstanding [1]_ - 1:47:1

modify [1]_ - 1:156:4

moment [13]_ - 1:12:9_, 1:14:21_, 1:16:21_, 1:17:15 _, 1:17:21_, 1:37:9_, 1:41:18 _, 1:44:5_, 1:57:22_, 1:78:16 _, 1:115:2_, 1:118:14_, 1:145:24

Monday [3]_ - 1:40:5_, 1:51:18_, 1:52:5

monikers [1]_ - 1:161:7

month [6]_ - 1:6:16_, 1:19:6_, 1:19:12_, 1:21:12_, 1:23:7_, 1:74:12

month's [1]_ - 1:53:8

months [5]_ - 1:23:9_, 1:44:22_, 1:60:1

Moran [3]_ - 1:15:5_, 1:17:22_, 1:86:21

morning [28]_ - 1:3:2_, 1:3:9_, 1:3:11_, 1:3:13_, 1:3:15_, 1:3:16_, 1:3:17_, 1:3:19_, 1:3:20_, 1:3:22_, 1:10:4_, 1:17:5_, 1:36:2_, 1:49:22_, 1:53:4_, 1:62:13_, 1:70:24_, 1:71:17_, 1:72:4_, 1:91:15_, 1:96:10_, 1:98:3_, 1:100:4_, 1:106:11_, 1:115:8 _, 1:121:11_, 1:146:25_, 1:147:8

most [11]_ - 1:7:10_, 1:17:24_, 1:23:1_, 1:24:12_, 1:48:4_, 1:77:1_, 1:97:16_, 1:108:3_, 1:112:4_, 1:119:22 _, 1:147:19

motion [144]_ - 1:5:7_, 1:8:9_, 1:8:15_, 1:8:16_, 1:8:19_, 1:8:25_, 1:9:1_, 1:10:8_, 1:10:15_, 1:11:9_, 1:15:12_, 1:15:21_, 1:17:19 _, 1:21:3_, 1:23:23_, 1:31:12 _, 1:32:24_, 1:33:8_, 1:33:11 _, 1:34:9_, 1:34:12_, 1:34:16 _, 1:34:18_, 1:36:4_, 1:36:6_, 1:41:14_, 1:42:7_, 1:43:8_, 1:45:11_, 1:45:15_, 1:45:24 _, 1:49:8_, 1:51:21_, 1:51:25 _, 1:61:25_, 1:62:8_, 1:62:12 _, 1:62:15_, 1:63:14_, 1:63:15_, 1:64:5_, 1:67:19_, 1:68:25_, 1:69:4_, 1:69:16_, 1:73:18_, 1:77:12_, 1:77:25 _, 1:79:23_, 1:81:21_, 1:82:9 _, 1:86:2_, 1:88:8_, 1:88:12_, 1:94:13_, 1:94:20_, 1:94:25 _, 1:95:7_, 1:98:1_, 1:98:4_, 1:98:5_, 1:98:14_, 1:98:24_, 1:99:2_, 1:99:3_, 1:99:4_, 1:100:14_, 1:101:17_, 1:101:19_, 1:102:6_, 1:102:7 _, 1:102:13_, 1:102:14_, 1:104:19_, 1:104:20_, 1:106:1_, 1:108:2_, 1:108:3 _, 1:108:11_, 1:108:25_, 1:109:13_, 1:110:9_, 1:110:20_, 1:112:20_, 1:113:8_, 1:113:22_, 1:114:23_, 1:115:18_, 1:116:12_, 1:116:14_, 1:117:9_, 1:117:14_, 1:117:15_, 1:117:17_, 1:117:20_, 1:119:4_, 1:119:5 _, 1:119:19_, 1:119:24_, 1:120:8_, 1:120:12_, 1:124:14_, 1:128:24_, 1:130:16_, 1:134:9_, 1:135:2 _, 1:138:8_, 1:138:21_, 1:138:25_, 1:139:12_, 1:142:21_, 1:142:22_, 1:146:7_, 1:146:9_, 1:146:10 _, 1:146:12_, 1:146:13_, 1:148:1_, 1:148:6_, 1:148:8 _, 1:148:16_, 1:148:25_, 1:149:20_, 1:154:4_, 1:154:10_, 1:155:5_, 1:155:18_, 1:155:24_, 1:155:25_, 1:156:4_, 1:156:10_, 1:157:3_, 1:158:12_, 1:158:16_, 1:159:2_, 1:160:15_, 1:161:2 _, 1:163:6_, 1:164:16_, 1:165:5

motions [105]_ - 1:4:23_, 1:5:4_, 1:5:6_, 1:5:11_, 1:5:12_, 1:5:23_, 1:5:25_,

1:6:1_, 1:6:23_, 1:6:24_, 1:6:25_, 1:7:4_, 1:7:6_, 1:7:8_, 1:7:10_, 1:7:11_, 1:7:12_, 1:7:15_, 1:7:21_, 1:7:25_, 1:9:13_, 1:17:7_, 1:17:12_, 1:18:20_, 1:18:23_, 1:19:4_, 1:19:18_, 1:19:20_, 1:19:21_, 1:19:22_, 1:19:24_, 1:20:2_, 1:20:16_, 1:22:20_, 1:23:9_, 1:37:3_, 1:38:2_, 1:40:8_, 1:40:16_, 1:40:18_, 1:40:21_, 1:41:4_, 1:49:17_, 1:49:21_, 1:51:20_, 1:51:23_, 1:60:17_, 1:61:3_, 1:64:16_, 1:69:17_, 1:72:9_, 1:74:22_, 1:74:25_, 1:84:25_, 1:94:12_, 1:94:15_, 1:94:20_, 1:94:21_, 1:102:11_, 1:102:12_, 1:103:6_, 1:103:7_, 1:104:7_, 1:109:1_, 1:111:18_, 1:114:21_, 1:114:22_, 1:114:24_, 1:118:18_, 1:119:24_, 1:120:16_, 1:120:22_, 1:121:10_, 1:122:10_, 1:122:18_, 1:123:3_, 1:124:23_, 1:125:2_, 1:125:3_, 1:125:4_, 1:125:5_, 1:125:9_, 1:125:13_, 1:125:21_, 1:127:5_, 1:128:21_, 1:128:22_, 1:133:16_, 1:142:21_, 1:144:16_, 1:144:19_, 1:146:3_, 1:150:18_, 1:153:3_, 1:154:3_, 1:154:4_, 1:154:8_, 1:159:7_, 1:161:1_, 1:162:14_, 1:164:14_, 1:164:15

motivated [1]_ - 1:100:7
motivation [1]_ - 1:100:12
mouth [1]_ - 1:87:22
move [5]_ - 1:22:25_, 1:132:16_, 1:132:18_, 1:140:2_, 1:150:10
moved [1]_ - 1:57:16
moving [6]_ - 1:22:14_, 1:23:19_, 1:56:18_, 1:56:19_, 1:74:6_, 1:150:12
MR [313]_ - 1:3:9_, 1:3:13_, 1:3:17_, 1:3:20_, 1:6:9_, 1:7:5_, 1:7:18_, 1:8:5_, 1:8:10_, 1:8:18_, 1:9:4_, 1:9:7_, 1:9:19_, 1:10:1_, 1:10:2_, 1:10:4_, 1:11:8_, 1:11:23_, 1:12:5_, 1:12:21_, 1:12:24_, 1:13:3_, 1:13:13_, 1:13:22_, 1:16:17_, 1:17:3_, 1:18:5_, 1:18:15_, 1:19:1_, 1:19:25_, 1:20:20_, 1:21:9_,

1:21:22_, 1:22:4_, 1:22:7_, 1:22:21_, 1:23:4_, 1:24:1_, 1:24:11_, 1:25:12_, 1:25:19_, 1:25:21_, 1:26:17_, 1:27:20_, 1:27:24_, 1:28:17_, 1:28:19_, 1:29:10_, 1:29:19, 1:29:22_, 1:30:4_, 1:30:11_, 1:30:14_, 1:30:22_, 1:31:6_, 1:31:19_, 1:31:21_, 1:31:25_, 1:32:4_, 1:32:14_, 1:32:22_, 1:33:1_, 1:33:8_, 1:33:10_, 1:34:4_, 1:34:8_, 1:34:21_, 1:34:23_, 1:35:5_, 1:35:8_, 1:35:17_, 1:35:23_, 1:36:2_, 1:36:22_, 1:36:25_, 1:39:15_, 1:39:23_, 1:41:3_, 1:41:17_, 1:42:21_, 1:43:4_, 1:43:9_, 1:43:11_, 1:45:18_, 1:45:25_, 1:46:4_, 1:46:9_, 1:46:11_, 1:46:16_, 1:46:24_, 1:47:12_, 1:47:21_, 1:48:7_, 1:48:13_, 1:48:17_, 1:49:12_, 1:50:2_, 1:50:22_, 1:51:3_, 1:51:17_, 1:52:7_, 1:52:12_, 1:52:22_, 1:53:13_, 1:54:3_, 1:55:12_, 1:55:15_, 1:55:19_, 1:55:24_, 1:56:10_, 1:57:9_, 1:58:16_, 1:59:3_, 1:59:20_, 1:60:17_, 1:60:20_, 1:60:24_, 1:61:16_, 1:62:6_, 1:62:13_, 1:63:8_, 1:63:11_, 1:64:11_, 1:65:22_, 1:66:9_, 1:66:22_, 1:67:8_, 1:67:20_, 1:68:11_, 1:68:18_, 1:69:2_, 1:70:6_, 1:70:17_, 1:70:23_, 1:71:11_, 1:73:1_, 1:73:9_, 1:73:19_, 1:75:3_, 1:77:7_, 1:77:16_, 1:78:4_, 1:78:16_, 1:78:21_, 1:79:3_, 1:79:5_, 1:79:10_, 1:79:13_, 1:79:23_, 1:80:12, 1:80:25_, 1:81:2_, 1:81:8_, 1:81:15_, 1:81:18_, 1:81:23_, 1:82:2_, 1:83:1_, 1:83:3_, 1:83:6_, 1:83:8_, 1:83:17_, 1:84:10_, 1:85:9_, 1:85:12_, 1:85:14_, 1:87:17_, 1:88:18_, 1:88:24_, 1:90:18_, 1:90:22_, 1:91:6_, 1:93:5, 1:97:1_, 1:97:5_, 1:97:8_, 1:109:20_, 1:109:22_, 1:109:25_, 1:110:4_, 1:111:21_, 1:111:23_, 1:112:6_, 1:114:4_, 1:114:25_, 1:115:6_, 1:115:13_, 1:115:17_, 1:116:6_, 1:116:10_, 1:116:18_, 1:116:24_, 1:117:8_, 1:117:13_, 1:118:8_, 1:118:10_, 1:118:13_, 1:118:20, 1:119:2_, 1:119:11_, 1:119:20_, 1:119:25_,

1:120:3_, 1:120:17_, 1:121:3_, 1:122:11_, 1:122:24_, 1:123:1_, 1:123:4_, 1:123:8_, 1:123:13_, 1:123:23_, 1:124:4_, 1:124:16_, 1:124:21_, 1:126:7_, 1:126:14_, 1:126:16_, 1:126:21_, 1:126:24_, 1:127:1_, 1:127:5_, 1:127:13_, 1:127:19_, 1:127:23_, 1:128:11_, 1:128:14_, 1:129:13_, 1:130:2_, 1:130:5_, 1:130:11_, 1:130:13_, 1:132:2_, 1:132:5_, 1:132:14_, 1:134:1_, 1:134:23_, 1:135:4_, 1:135:11_, 1:135:13_, 1:135:17_, 1:135:20_, 1:135:25_, 1:136:5_, 1:136:8_, 1:137:21_, 1:137:24_, 1:138:3_, 1:138:10_, 1:138:22_, 1:139:1_, 1:140:2_, 1:140:6_, 1:141:4_, 1:141:19_, 1:142:3_, 1:142:11_, 1:142:16_, 1:142:18_, 1:142:20_, 1:143:3_, 1:143:11_, 1:143:14_, 1:143:20_, 1:143:24_, 1:144:4_, 1:144:6_, 1:144:8_, 1:144:15_, 1:144:18_, 1:144:21_, 1:145:5_, 1:145:11_, 1:145:13_, 1:145:21_, 1:145:24_, 1:146:14_, 1:146:18_, 1:146:22_, 1:147:19_, 1:147:22_, 1:147:25_, 1:148:7, 1:148:13_, 1:148:18_, 1:149:13_, 1:150:15_, 1:151:6_, 1:152:9_, 1:153:22_, 1:154:6_, 1:154:16_, 1:154:19_, 1:155:9_, 1:155:20_, 1:155:23_, 1:156:6_, 1:156:14_, 1:158:1_, 1:158:13_, 1:158:17_, 1:158:21_, 1:159:8_, 1:160:13_, 1:162:8_, 1:162:10_, 1:162:20_, 1:162:24_, 1:163:19_, 1:164:5_, 1:164:8_, 1:164:17_, 1:165:7
MS [19]_ - 1:95:22_, 1:96:4_, 1:96:6_, 1:96:17_, 1:96:21_, 1:97:7_, 1:97:10_, 1:99:10_, 1:100:21_, 1:100:24_, 1:102:15_, 1:104:3_, 1:104:11_, 1:105:2_, 1:106:23_, 1:107:23_, 1:108:6_, 1:109:15_, 1:109:19
multiple [2]_ - 1:50:13_,

1:130:20
Murrell [1]_ - 1:3:21
must [6]_ - 1:57:15_, 1:57:16_, 1:107:9_, 1:119:8_, 1:134:6_, 1:153:7

## N

name [7]_ - 1:122:3_, 1:122:5_, 1:128:2_, 1:128:3_, 1:128:4_, 1:151:1_, 1:151:5
namely [1]_ - 1:141:20
names [21]_ - 1:68:14_, 1:127:21_, 1:127:22_, 1:131:4_, 1:131:11_, 1:131:20_, 1:131:22_, 1:132:9_, 1:132:15_, 1:132:22_, 1:133:14_, 1:133:20_, 1:134:2_, 1:134:11_, 1:136:3_, 1:150:13_, 1:150:16_, 1:150:17_, 1:151:23_, 1:152:2_, 1:152:14
NARA [19]_ - 1:30:10_, 1:30:11_, 1:63:21_, 1:64:14_, 1:65:24_, 1:66:2_, 1:66:3_, 1:66:11_, 1:68:15_, 1:73:22_, 1:73:25_, 1:74:2_, 1:74:14_, 1:74:15_, 1:74:18_, 1:76:7_, 1:131:20_, 1:131:21
NARA's [1]_ - 1:73:20
NARA-OIG [2]_ - 1:74:15_, 1:74:18
narrative [1]_ - 1:9:8
narrow [1]_ - 1:103:1
narrower [1]_ - 1:88:22
narrowing [1]_ - 1:29:7
narrowly [1]_ - 1:123:7
national [2]_ - 1:61:9_, 1:137:1
National [2]_ - 1:13:15_, 1:75:18
nature [6]_ - 1:29:20_, 1:42:22_, 1:71:1_, 1:75:9_, 1:93:15_, 1:125:24
Nauta [28]_ - 1:3:5_, 1:3:18_, 1:47:2_, 1:49:14_, 1:51:5_, 1:53:11_, 1:53:15_, 1:53:19_, 1:53:24_, 1:54:8_, 1:54:13_, 1:55:1_, 1:55:5_, 1:55:13_, 1:56:1_, 1:56:13_, 1:56:18_, 1:57:3_, 1:57:15_, 1:57:20_, 1:57:24_, 1:58:4_, 1:58:11_, 1:59:6_, 1:83:2_, 1:83:10_, 1:155:23_,

1:157:11

Nauta's [8]_ - 1:37:10_, 1:50:3_, 1:51:1_, 1:51:14_, 1:51:23_, 1:54:14_, 1:157:8 _, 1:157:9

navigate [2]_ - 1:4:25_, 1:164:25

NDI [2]_ - 1:43:18_, 1:63:25

near [1]_ - 1:93:23

necessarily [1]_ - 1:125:16

necessary [13]_ - 1:6:6_, 1:7:12_, 1:10:16_, 1:13:16_, 1:17:7_, 1:32:12_, 1:42:3_, 1:42:10_, 1:46:2_, 1:58:8_, 1:60:9_, 1:62:10_, 1:163:1

need [46]_ - 1:13:20_, 1:16:22_, 1:16:23_, 1:22:25 _, 1:23:19_, 1:35:1_, 1:38:24 _, 1:41:9_, 1:41:25_, 1:43:3_, 1:43:6_, 1:43:12_, 1:43:20_, 1:45:8_, 1:47:25_, 1:49:8_, 1:55:12_, 1:55:15_, 1:58:12 _, 1:79:7_, 1:79:17_, 1:80:4_, 1:83:9_, 1:83:10_, 1:83:24_, 1:84:21_, 1:85:8_, 1:89:7_, 1:92:14_, 1:92:15_, 1:98:21 _, 1:100:15_, 1:105:9_, 1:105:23_, 1:110:22_, 1:114:13_, 1:129:6_, 1:132:15_, 1:134:17_, 1:141:10_, 1:149:11_, 1:158:23_, 1:162:1

needing [1]_ - 1:151:23

needs [12]_ - 1:21:3_, 1:32:9_, 1:42:2_, 1:46:14_, 1:60:10_, 1:66:1_, 1:70:22_, 1:85:3_, 1:151:21_, 1:155:2 _, 1:155:3_, 1:157:16

negotiation [4]_ - 1:25:3_, 1:90:17_, 1:90:19_, 1:91:7

negotiation-type [1]_ - 1:90:17

negotiations [1]_ - 1:25:2

neighborhood [1]_ - 1:127:3

net [1]_ - 1:100:11

never [7]_ - 1:63:4_, 1:93:9 _, 1:107:19_, 1:108:9_, 1:108:18_, 1:123:22_, 1:145:19

new [3]_ - 1:50:13_, 1:81:9 _, 1:82:22

New [15]_ - 1:21:18_, 1:21:23_, 1:22:11_, 1:38:16

1:39:10_, 1:40:3_, 1:40:6_, 1:40:9_, 1:42:12_, 1:43:25_, 1:44:7_, 1:46:21_, 1:47:9_, 1:47:19_, 1:84:9

Newman [1]_ - 1:101:6

next [7]_ - 1:18:13_, 1:19:12_, 1:22:8_, 1:28:12_, 1:40:9_, 1:40:24_, 1:111:23

NGA [1]_ - 1:27:1

nice [1]_ - 1:74:17

Nickens [7]_ - 1:115:8_, 1:115:9_, 1:115:12_, 1:115:13_, 1:115:21_, 1:118:14_, 1:121:12

night [5]_ - 1:6:11_, 1:40:7 _, 1:111:15_, 1:129:23_, 1:160:6

Nixon [2]_ - 1:102:19_, 1:105:2

nobody [3]_ - 1:51:5_, 1:93:19_, 1:103:16

noise [1]_ - 1:113:5

nominee [1]_ - 1:49:4

non [4]_ - 1:31:23_, 1:31:24_, 1:31:25_, 1:113:17

non-controversial [1]_ - 1:113:17

non-deadline [1]_ - 1:31:24

non-deadlines [1]_ - 1:31:25

none [6]_ - 1:13:17_, 1:14:4_, 1:98:22_, 1:125:11 _, 1:133:15_, 1:145:14

nonetheless [1]_ - 1:164:12

nonpublic [1]_ - 1:112:17

noon [2]_ - 1:5:19_, 1:85:11

normal [1]_ - 1:52:23

normally [1]_ - 1:107:5

note [3]_ - 1:94:6_, 1:95:10 _, 1:119:11

noted [3]_ - 1:4:16_, 1:61:7 _, 1:150:5

notes [2]_ - 1:71:18_, 1:72:10

nothing [12]_ - 1:21:12_, 1:27:5_, 1:47:16_, 1:58:22_, 1:58:23_, 1:112:2_, 1:113:3 _, 1:139:20_, 1:147:6_, 1:148:25_, 1:153:4

notice [41]_ - 1:23:12_, 1:23:14_, 1:23:19_, 1:23:25

1:31:7_, 1:31:11_, 1:31:12 _, 1:31:14_, 1:32:1_, 1:32:5_, 1:32:6_, 1:32:13_, 1:32:19_, 1:32:21_, 1:32:23_, 1:33:7_, 1:33:21_, 1:43:3_, 1:44:5_, 1:44:6_, 1:45:12_, 1:45:15_, 1:46:3_, 1:46:5_, 1:46:7_, 1:78:9_, 1:78:10_, 1:78:11_, 1:78:12_, 1:78:13_, 1:78:24 _, 1:82:5_, 1:82:13_, 1:109:11_, 1:116:7_, 1:116:12_, 1:116:16_, 1:119:1_, 1:119:4

notices [2]_ - 1:22:22_, 1:78:22

noticing [1]_ - 1:82:7

notification [1]_ - 1:23:6

notion [1]_ - 1:162:13

notwithstanding [1]_ - 1:35:13

November [3]_ - 1:4:21_, 1:37:24_, 1:38:9

nowhere [3]_ - 1:32:2_, 1:87:23_, 1:147:10

NSA [4]_ - 1:24:12_, 1:25:25_, 1:26:8_, 1:27:1

number [8]_ - 1:3:5_, 1:74:7_, 1:74:25_, 1:114:24 _, 1:126:23_, 1:127:2_, 1:127:8_, 1:161:10

Number [7]_ - 1:17:10_, 1:53:18_, 1:113:4_, 1:126:3 _, 1:129:15_, 1:129:16_, 1:131:21

numbers [3]_ - 1:74:7_, 1:127:12_, 1:131:3

numerous [5]_ - 1:5:4_, 1:5:25_, 1:94:19_, 1:128:20 _, 1:159:1

nuts [1]_ - 1:121:20

## O

object [1]_ - 1:48:24

objecting [1]_ - 1:45:2

objective [1]_ - 1:163:12

objects [2]_ - 1:93:17_, 1:119:8

obligated [1]_ - 1:165:3

obligation [11]_ - 1:51:9_, 1:63:22_, 1:64:1_, 1:67:12_, 1:67:13_, 1:86:12_, 1:134:5 _, 1:140:21_, 1:140:22_, 1:149:4_, 1:161:20

obligations [8]_ - 1:62:16 _, 1:67:14_, 1:70:2_, 1:70:9_,

1:85:20_, 1:85:24_, 1:86:13 _, 1:88:14

observations [5]_ - 1:21:15_, 1:87:20_, 1:112:7 _, 1:113:1_, 1:162:10

observe [1]_ - 1:58:16

obtain [5]_ - 1:16:11_, 1:16:12_, 1:16:25_, 1:143:22 _, 1:143:24

obtainable [1]_ - 1:128:1

obtained [5]_ - 1:51:22_, 1:94:22_, 1:102:6_, 1:107:18 _, 1:127:15

obviate [1]_ - 1:114:13

obvious [6]_ - 1:36:12_, 1:48:25_, 1:64:25_, 1:74:11 _, 1:150:20

obviously [9]_ - 1:24:3_, 1:28:13_, 1:40:3_, 1:62:22_, 1:84:11_, 1:111:2_, 1:121:6 _, 1:121:22_, 1:132:25

occasion [2]_ - 1:91:3_, 1:91:18

occasionally [1]_ - 1:106:19

occasions [2]_ - 1:145:2

occur [2]_ - 1:19:2_, 1:34:25

occurred [2]_ - 1:159:22_, 1:159:25

occurring [1]_ - 1:34:24

Ochoa [1]_ - 1:149:16

October [1]_ - 1:94:3

odd [1]_ - 1:18:25

ODNI [1]_ - 1:75:21

offer [2]_ - 1:67:8_, 1:126:16

offered [4]_ - 1:37:13_, 1:60:22_, 1:88:22_, 1:164:22

offhanded [1]_ - 1:61:6

Office [3]_ - 1:3:8_, 1:75:18_, 1:94:14

office [29]_ - 1:14:9_, 1:24:14_, 1:26:16_, 1:26:18 _, 1:27:14_, 1:27:16_, 1:27:22_, 1:28:4_, 1:28:5_, 1:28:16_, 1:28:17_, 1:28:22 _, 1:50:23_, 1:51:6_, 1:63:20 _, 1:66:1_, 1:71:3_, 1:74:2_, 1:75:16_, 1:76:22_, 1:79:16 _, 1:79:22_, 1:80:3_, 1:80:19 _, 1:91:13_, 1:92:2_, 1:161:4

officers [1]_ - 1:27:14

offices [3]_ - 1:29:5_,

1:29:7_, 1:30:2

official [4]_ - 1:14:22_, 1:97:21_, 1:103:19_, 1:131:21

offshoot [1]_ - 1:104:21

often [1]_ - 1:62:1

oftentimes [1]_ - 1:78:12

OIG [2]_ - 1:74:15_, 1:74:18

old [1]_ - 1:83:13

Oliveira [3]_ - 1:3:5_, 1:3:21_, 1:62:5

once [6]_ - 1:37:13_, 1:58:10_, 1:94:2_, 1:103:8_, 1:137:11_, 1:142:24

one [90]_ - 1:5:12_, 1:6:17 _, 1:6:22_, 1:6:23_, 1:7:7_, 1:7:25_, 1:8:20_, 1:10:7_, 1:14:22_, 1:16:21_, 1:16:25 _, 1:18:9_, 1:19:25_, 1:20:3_, 1:20:5_, 1:20:24_, 1:21:2_, 1:21:9_, 1:21:15_, 1:22:9_, 1:27:7_, 1:31:7_, 1:31:24_, 1:34:2_, 1:35:13_, 1:37:20_, 1:42:10_, 1:46:2_, 1:51:20_, 1:58:16_, 1:60:13_, 1:64:18 _, 1:64:25_, 1:65:7_, 1:73:4_, 1:75:4_, 1:75:6_, 1:78:5_, 1:78:8_, 1:78:16_, 1:79:6_, 1:79:13_, 1:82:2_, 1:82:18_, 1:82:20_, 1:86:7_, 1:86:20_, 1:86:21_, 1:86:25_, 1:87:19 _, 1:88:21_, 1:91:16_, 1:94:7 _, 1:96:15_, 1:97:16_, 1:97:18_, 1:100:1_, 1:101:6 _, 1:113:1_, 1:114:22_, 1:115:11_, 1:119:18_, 1:120:6_, 1:120:11_, 1:120:24_, 1:122:15_, 1:128:1_, 1:129:19_, 1:130:17_, 1:132:7_, 1:132:24_, 1:135:18_, 1:136:22_, 1:138:13_, 1:139:4_, 1:140:17_, 1:142:21_, 1:143:9_, 1:145:5 _, 1:146:23_, 1:147:7_, 1:150:4_, 1:155:1_, 1:162:22 _, 1:163:22

one-hour [1]_ - 1:94:7

ones [6]_ - 1:7:6_, 1:24:16 _, 1:24:25_, 1:51:5_, 1:113:18_, 1:127:5

online [1]_ - 1:151:2

open [7]_ - 1:18:23_, 1:24:21_, 1:39:5_, 1:121:22 _, 1:137:13_, 1:147:13_, 1:153:9

opening [1]_ - 1:136:23

openness [5]_ - 1:95:11_, 1:110:25_, 1:130:4_, 1:144:25_, 1:165:3

operate [2]_ - 1:139:10_, 1:161:18

operators [1]_ - 1:24:19

opinion [2]_ - 1:119:22_, 1:124:1

opportunity [8]_ - 1:16:13 _, 1:44:18_, 1:45:20_, 1:80:9 _, 1:94:18_, 1:95:23_, 1:96:6 _, 1:130:19

oppose [2]_ - 1:114:8_, 1:151:20

opposed [1]_ - 1:152:18

opposite [4]_ - 1:90:10_, 1:90:11_, 1:90:13_, 1:106:12

opposition [1]_ - 1:156:12

oppositions [1]_ - 1:19:8

option [1]_ - 1:132:4

oral [5]_ - 1:7:21_, 1:8:20_, 1:41:11_, 1:69:23_, 1:94:18

Order [1]_ - 1:3:1

order [78]_ - 1:4:11_, 1:4:14_, 1:4:17_, 1:4:20_, 1:4:21_, 1:6:11_, 1:10:6_, 1:17:11_, 1:21:11_, 1:22:9_, 1:34:17_, 1:43:6_, 1:52:10_, 1:55:23_, 1:55:25_, 1:61:8_, 1:67:16_, 1:83:13_, 1:95:3_, 1:95:6_, 1:97:11_, 1:108:7_, 1:108:15_, 1:110:15_, 1:112:1_, 1:112:12_, 1:112:13_, 1:112:14_, 1:112:21_, 1:113:2_, 1:114:2 _, 1:114:7_, 1:114:10_, 1:114:15_, 1:121:1_, 1:125:15_, 1:126:20_, 1:130:24_, 1:134:14_, 1:138:12_, 1:138:15_, 1:139:1_, 1:139:5_, 1:139:15 _, 1:139:17_, 1:140:8_, 1:140:14_, 1:140:17_, 1:141:1_, 1:141:7_, 1:141:12 _, 1:141:17_, 1:144:3_, 1:149:1_, 1:149:10_, 1:149:12_, 1:149:17_, 1:149:20_, 1:149:21_, 1:155:13_, 1:155:14_, 1:155:15_, 1:155:19_, 1:156:2_, 1:156:8_, 1:156:11 _, 1:156:15_, 1:156:19_, 1:156:21_, 1:157:11_, 1:160:3_, 1:161:3_, 1:163:22 _, 1:164:6_, 1:164:9_, 1:164:13

ordered [4]_ - 1:5:1_, 1:40:20_, 1:41:8_, 1:138:1

ordering [1]_ - 1:24:4

orders [14]_ - 1:19:22_, 1:23:17_, 1:43:13_, 1:58:21 _, 1:77:17_, 1:79:25_, 1:112:17_, 1:140:9_, 1:141:13_, 1:141:25_, 1:142:9_, 1:142:10_, 1:142:11_, 1:159:1

ordinarily [2]_ - 1:16:5_, 1:137:22

ordinary [5]_ - 1:52:15_, 1:52:18_, 1:52:22_, 1:53:1_, 1:98:8

ore [1]_ - 1:158:16

organizations [1]_ - 1:96:7

organized [1]_ - 1:59:2

organizing [1]_ - 1:124:25

origin [1]_ - 1:10:17

otherwise [2]_ - 1:157:7_, 1:161:12

ourselves [3]_ - 1:38:3_, 1:124:9_, 1:153:9

outer [1]_ - 1:8:7

outline [1]_ - 1:110:5

outrageous [1]_ - 1:153:18

outreach [2]_ - 1:66:15_, 1:73:23

outset [4]_ - 1:10:12_, 1:62:14_, 1:85:23_, 1:159:1

outside [1]_ - 1:29:4

outstanding [2]_ - 1:63:12_, 1:85:25

outward [1]_ - 1:96:2

overall [1]_ - 1:163:14

overcome [1]_ - 1:95:2

overflow [3]_ - 1:3:25_, 1:4:12_, 1:110:3

overlaps [1]_ - 1:149:14

overlooked [1]_ - 1:154:1

overly [1]_ - 1:112:11

oversees [1]_ - 1:80:14

overstate [1]_ - 1:89:7

overview [1]_ - 1:95:15

own [3]_ - 1:116:15_, 1:157:8_, 1:157:9

owning [1]_ - 1:113:12

P

p.m [2]_ - 1:94:8_, 1:165:14

p.m.) [1]_ - 1:94:8

page [10]_ - 1:31:17_, 1:75:8_, 1:76:8_, 1:76:25_, 1:114:3_, 1:116:3_, 1:118:24 _, 1:156:19_, 1:161:18

pages [10]_ - 1:57:14_, 1:59:25_, 1:128:24_, 1:131:10_, 1:134:10_, 1:153:6_, 1:156:17_, 1:162:18_, 1:164:3

pain [1]_ - 1:25:8

Palm [1]_ - 1:28:23

paper [2]_ - 1:74:16_, 1:136:23

papers [25]_ - 1:10:23_, 1:11:2_, 1:11:13_, 1:13:8_, 1:13:17_, 1:14:18_, 1:20:1_, 1:26:13_, 1:36:9_, 1:37:21_, 1:57:14_, 1:80:8_, 1:80:11_, 1:108:8_, 1:112:10_, 1:112:14_, 1:115:7_, 1:122:3 _, 1:123:21_, 1:135:7_, 1:136:14_, 1:139:7_, 1:141:23_, 1:149:9

paragraph [1]_ - 1:149:18

paramount [1]_ - 1:165:2

pardon [1]_ - 1:36:22

parsing [1]_ - 1:56:12

part [48]_ - 1:5:9_, 1:8:23_, 1:12:10_, 1:12:14_, 1:20:14 _, 1:25:1_, 1:26:20_, 1:29:18 _, 1:31:1_, 1:44:10_, 1:63:13 _, 1:64:3_, 1:64:25_, 1:65:3_, 1:65:25_, 1:66:6_, 1:68:2_, 1:70:6_, 1:72:6_, 1:75:11_, 1:76:5_, 1:76:14_, 1:76:16_, 1:79:1_, 1:80:19_, 1:86:11_, 1:90:10_, 1:90:14_, 1:91:22 _, 1:92:3_, 1:92:10_, 1:102:2 _, 1:111:6_, 1:114:5_, 1:114:20_, 1:117:18_, 1:121:5_, 1:122:9_, 1:126:4 _, 1:129:4_, 1:138:20_, 1:139:2_, 1:141:25_, 1:154:17

parte [9]_ - 1:23:10_, 1:54:22_, 1:58:4_, 1:77:4_, 1:135:20_, 1:135:22_, 1:135:24_, 1:150:6_, 1:156:1

partial [1]_ - 1:4:20

partially [1]_ - 1:160:10

participants [3]_ - 1:71:15

_, 1:74:9_, 1:152:15

participate [3]_ - 1:22:3_, 1:66:2_, 1:76:18

participated [3]_ - 1:66:5 _, 1:68:15_, 1:76:7

particular [10]_ - 1:12:19_, 1:28:4_, 1:28:22_, 1:62:9_, 1:85:7_, 1:101:16_, 1:129:21 _, 1:129:23_, 1:130:16_, 1:130:17

particularized [4]_ - 1:32:10_, 1:112:4_, 1:158:23

particularly [4]_ - 1:24:12 _, 1:105:19_, 1:142:20_, 1:152:12

particulars [2]_ - 1:105:15 _, 1:116:7

parties [17]_ - 1:4:20_, 1:5:3_, 1:5:20_, 1:6:17_, 1:19:10_, 1:20:15_, 1:44:16 _, 1:44:24_, 1:65:1_, 1:79:24 _, 1:93:20_, 1:103:8_, 1:107:2_, 1:110:11_, 1:112:18_, 1:114:11_, 1:142:23

parties' [1]_ - 1:16:5

parts [2]_ - 1:63:15_, 1:74:4

party [4]_ - 1:16:7_, 1:16:12_, 1:17:20_, 1:130:9

past [3]_ - 1:3:25_, 1:72:7_, 1:150:12

path [1]_ - 1:46:11

patience [1]_ - 1:110:18

penalties [1]_ - 1:4:14

pending [10]_ - 1:5:21_, 1:5:23_, 1:19:24_, 1:22:19_, 1:43:8_, 1:61:3_, 1:86:3_, 1:94:13_, 1:95:7

people [18]_ - 1:12:17_, 1:28:11_, 1:29:17_, 1:30:5_, 1:30:16_, 1:30:23_, 1:36:14 _, 1:37:16_, 1:39:10_, 1:61:10_, 1:65:19_, 1:126:5 _, 1:126:8_, 1:126:12_, 1:126:22_, 1:134:5_, 1:150:2 _, 1:152:12

percent [4]_ - 1:20:19_, 1:20:21_, 1:48:13

perfectly [1]_ - 1:54:19

perhaps [8]_ - 1:13:9_, 1:107:24_, 1:112:10_, 1:116:15_, 1:122:4_, 1:129:25_, 1:132:24_, 1:163:21

period [8]_ - 1:22:10_, 1:22:13_, 1:39:22_, 1:81:9_, 1:92:17_, 1:118:16_, 1:137:23_, 1:149:18

permission [4]_ - 1:24:8_, 1:163:17_, 1:163:20_, 1:163:21

permit [4]_ - 1:10:21_, 1:12:8_, 1:59:17_, 1:153:21

permitted [3]_ - 1:57:19_, 1:59:6_, 1:59:15

person [1]_ - 1:13:5

person's [3]_ - 1:128:2_, 1:128:3_, 1:128:4

personal [1]_ - 1:135:16

personnel [7]_ - 1:66:2_, 1:66:4_, 1:68:15_, 1:73:3_, 1:73:5_, 1:93:2_, 1:165:10

perspective [3]_ - 1:49:16 _, 1:70:19_, 1:154:24

pertinent [1]_ - 1:87:15

pertinently [1]_ - 1:92:17

petition [4]_ - 1:141:22_, 1:143:18_, 1:157:24_, 1:159:11

petitioned [1]_ - 1:157:21

petitioning [1]_ - 1:160:9

phase [2]_ - 1:4:25_, 1:85:2

phone [5]_ - 1:50:8_, 1:50:10_, 1:50:11_, 1:50:12 _, 1:50:13

photograph [3]_ - 1:57:7 _, 1:57:10_, 1:57:12

phrased [1]_ - 1:120:4

physical [4]_ - 1:45:6_, 1:50:6_, 1:60:10_, 1:133:6

pick [1]_ - 1:161:20

picking [1]_ - 1:153:11

picture [2]_ - 1:48:16_, 1:108:19

pictures [1]_ - 1:50:10

piece [3]_ - 1:16:3_, 1:81:21_, 1:156:20

PII [3]_ - 1:129:18_, 1:130:25_, 1:139:23

pivotal [1]_ - 1:120:23

place [14]_ - 1:36:10_, 1:38:5_, 1:43:25_, 1:49:15_, 1:66:20_, 1:72:15_, 1:87:9_, 1:93:17_, 1:124:10_, 1:137:10_, 1:139:3_, 1:149:10_, 1:151:10_, 1:156:13

placeholders [1]_ - 1:131:23

plain [3]_ - 1:58:19_, 1:93:9_, 1:118:15

plainly [2]_ - 1:91:14_, 1:120:3

plan [1]_ - 1:109:24

plane [1]_ - 1:41:24

planning [1]_ - 1:48:10

plausible [2]_ - 1:64:12_, 1:70:2

play [4]_ - 1:39:8_, 1:108:3 _, 1:128:10_, 1:140:12

pleading [2]_ - 1:80:5_, 1:146:20

pleadings [1]_ - 1:162:17

pleased [1]_ - 1:158:10

plenty [6]_ - 1:10:20_, 1:38:10_, 1:38:23_, 1:38:25 _, 1:44:20_, 1:135:7

plug [1]_ - 1:25:5

plus [1]_ - 1:5:13

podium [3]_ - 1:6:4_, 1:77:21_, 1:95:18

point [83]_ - 1:4:2_, 1:6:24 _, 1:13:7_, 1:14:4_, 1:14:16_, 1:15:16_, 1:21:4_, 1:21:16_, 1:21:19_, 1:23:19_, 1:24:7_, 1:24:14_, 1:25:7_, 1:27:7_, 1:28:19_, 1:29:13_, 1:29:14 _, 1:35:14_, 1:35:22_, 1:38:16_, 1:48:5_, 1:52:8_, 1:55:21_, 1:60:5_, 1:60:13_, 1:67:17_, 1:67:24_, 1:71:9_, 1:71:11_, 1:78:14_, 1:86:15 _, 1:88:5_, 1:89:10_, 1:89:12 _, 1:93:1_, 1:94:3_, 1:95:1_, 1:95:5_, 1:99:25_, 1:101:2_, 1:104:9_, 1:108:13_, 1:109:23_, 1:110:15_, 1:111:24_, 1:112:22_, 1:113:7_, 1:114:4_, 1:114:9 _, 1:114:15_, 1:115:6_, 1:115:18_, 1:117:16_, 1:121:6_, 1:124:8_, 1:124:20 _, 1:125:1_, 1:127:1_, 1:130:15_, 1:133:1_, 1:134:11_, 1:138:13_, 1:139:7_, 1:140:20_, 1:141:9 _, 1:143:9_, 1:144:12_, 1:146:8_, 1:146:24_, 1:147:7 _, 1:148:18_, 1:149:8_, 1:150:19_, 1:150:25_, 1:151:1_, 1:151:6_, 1:151:23 _, 1:152:4_, 1:156:22_, 1:157:13_, 1:162:21_,

1:163:2_, 1:164:2

pointed [3]_ - 1:10:11_, 1:11:2_, 1:115:6

pointing [3]_ - 1:88:11_, 1:90:23_, 1:100:5

points [9]_ - 1:13:16_, 1:20:3_, 1:70:13_, 1:78:7_, 1:81:19_, 1:110:7_, 1:110:23 _, 1:113:13_, 1:161:5

policies [1]_ - 1:93:6

policy [1]_ - 1:93:8

political [1]_ - 1:133:21

politically [1]_ - 1:100:6

pool [2]_ - 1:27:3_, 1:48:8

pooling [3]_ - 1:14:8_, 1:26:11_, 1:26:25

portable [1]_ - 1:96:14

portion [5]_ - 1:9:21_, 1:80:14_, 1:91:20_, 1:125:12 _, 1:139:17

portions [2]_ - 1:101:11_, 1:161:25

posing [1]_ - 1:110:19

position [54]_ - 1:12:13_, 1:38:12_, 1:45:10_, 1:48:4_, 1:49:18_, 1:51:6_, 1:51:20_, 1:66:14_, 1:66:24_, 1:69:25 _, 1:76:14_, 1:81:13_, 1:86:9 _, 1:96:2_, 1:97:12_, 1:102:4 _, 1:107:18_, 1:111:2_, 1:111:3_, 1:113:10_, 1:114:14_, 1:117:5_, 1:117:8 _, 1:117:11_, 1:117:18_, 1:118:6_, 1:120:4_, 1:122:15 _, 1:122:17_, 1:122:18_, 1:123:14_, 1:124:15_, 1:125:7_, 1:125:11_, 1:125:14_, 1:125:18_, 1:128:17_, 1:129:21_, 1:129:23_, 1:130:16_, 1:131:1_, 1:131:9_, 1:133:17 _, 1:136:10_, 1:139:3_, 1:147:11_, 1:149:24_, 1:152:6_, 1:152:9_, 1:152:13 _, 1:153:8_, 1:154:9_, 1:160:25

positions [2]_ - 1:24:19_, 1:150:5

possession [2]_ - 1:5:15 _, 1:136:17

possible [8]_ - 1:4:3_, 1:69:14_, 1:79:5_, 1:85:11_, 1:113:10_, 1:115:14_, 1:133:1_, 1:165:12

possibly [7]_ - 1:5:13_, 1:24:20_, 1:34:9_, 1:57:2_,

1:60:25_, 1:71:25_, 1:100:10

post [5]_ - 1:13:12_,
1:59:15_, 1:99:14_, 1:145:6

post-disclosure [1]_ -
1:59:15

post-indictment [2]_ -
1:13:12_, 1:145:6

post-lawsuit [1]_ -
1:99:14

postdate [1]_ - 1:115:9

postdated [1]_ - 1:115:9

posture [3]_ - 1:58:11_,
1:129:15_, 1:145:10

potential [11]_ - 1:16:25_,
1:47:14_, 1:47:15_, 1:73:14
_, 1:113:21_, 1:126:1_,
1:126:5_, 1:126:10_, 1:128:8
_, 1:132:15_, 1:132:20

potentially [8]_ - 1:16:15_,
1:23:21_, 1:29:8_, 1:36:7_,
1:77:11_, 1:77:13_, 1:88:23
_, 1:132:4

pouring [1]_ - 1:108:14

PRA [2]_ - 1:41:20_,
1:41:22

practical [3]_ - 1:151:6_,
1:151:9_, 1:154:24

practically [1]_ - 1:38:17

practice [3]_ - 1:24:8_,
1:148:25_, 1:150:6

practices [1]_ - 1:66:17

pre [5]_ - 1:13:11_, 1:103:7
_, 1:145:3_, 1:145:10_,
1:154:21

pre-charge [1]_ -
1:154:21

pre-indictment [2]_ -
1:145:3_, 1:145:10

precedent [2]_ - 1:40:12_,
1:135:2

precise [1]_ - 1:59:20

precisely [1]_ - 1:97:12

precision [1]_ - 1:60:8

precludes [1]_ - 1:161:9

predated [1]_ - 1:115:8

predicate [1]_ - 1:17:7

predict [1]_ - 1:60:8

predicting [1]_ - 1:59:11

preface [1]_ - 1:12:8

prehearing [2]_ - 1:4:17_,
1:144:3

preliminary [6]_ - 1:3:24_,
1:95:10_, 1:110:7_, 1:110:23

_, 1:111:23_, 1:113:13

prepare [1]_ - 1:38:19

prepared [6]_ - 1:5:3_,
1:5:10_, 1:32:18_, 1:36:5_,
1:42:9_, 1:60:25

prepares [1]_ - 1:15:7

preparing [2]_ - 1:11:13_,
1:148:4

prerogative [1]_ -
1:161:23

presaged [1]_ - 1:111:23

presence [1]_ - 1:45:6

present [7]_ - 1:5:13_,
1:22:2_, 1:29:4_, 1:60:7_,
1:94:10_, 1:94:18_, 1:165:6

presentation [5]_ -
1:73:10_, 1:95:19_, 1:110:6
_, 1:148:3_, 1:162:11

presented [4]_ - 1:9:3_,
1:23:15_, 1:24:6_, 1:131:25

presenting [1]_ - 1:6:3

presidency [1]_ - 1:36:18

president [9]_ - 1:5:8_,
1:41:24_, 1:49:4_, 1:69:10_,
1:74:2_, 1:97:21_, 1:97:23_,
1:101:22_, 1:103:20

President [30]_ - 1:3:14_,
1:5:9_, 1:21:14_, 1:21:24_,
1:36:15_, 1:37:6_, 1:37:16_,
1:38:4_, 1:38:15_, 1:38:18_,
1:39:5_, 1:39:25_, 1:40:1_,
1:40:5_, 1:40:15_, 1:41:23_,
1:42:11_, 1:43:13_, 1:44:10
_, 1:44:17_, 1:49:2_, 1:55:7_,
1:65:2_, 1:68:1_, 1:69:8_,
1:103:17_, 1:148:2_,
1:148:24_, 1:152:22

president's [1]_ - 1:35:11

Presidential [1]_ -
1:41:12

Press [18]_ - 1:5:21_,
1:20:12_, 1:50:25_, 1:51:6_,
1:95:6_, 1:96:8_, 1:97:12_,
1:97:14_, 1:110:20_,
1:113:20_, 1:115:23_,
1:116:2_, 1:121:17_,
1:123:18_, 1:124:8_,
1:148:19_, 1:151:8_,
1:152:22

press [3]_ - 1:99:14_,
1:101:18_, 1:106:15

pressure [1]_ - 1:34:11

presumed [1]_ - 1:165:4

presumption [4]_ -
1:19:17_, 1:95:2_, 1:130:4_,

1:158:22

presupposes [1]_ -
1:139:9

pretrial [35]_ - 1:4:18_,
1:4:22_, 1:4:25_, 1:5:4_,
1:5:6_, 1:5:25_, 1:6:1_,
1:6:24_, 1:6:25_, 1:18:19_,
1:18:23_, 1:19:18_, 1:38:1_,
1:84:25_, 1:85:2_, 1:94:19_,
1:99:4_, 1:100:23_, 1:100:25
_, 1:102:12_, 1:103:7_,
1:114:21_, 1:119:17_,
1:120:15_, 1:120:22_,
1:122:10_, 1:123:3_, 1:138:8
_, 1:138:21_, 1:138:25_,
1:154:4_, 1:159:7_, 1:162:2

pretty [5]_ - 1:28:24_,
1:76:3_, 1:93:9_, 1:142:25_,
1:151:9

prevent [1]_ - 1:136:24

prevents [2]_ - 1:19:19_,
1:19:20

previously [4]_ - 1:50:25_,
1:54:22_, 1:58:4_, 1:94:24

primary [1]_ - 1:6:13

principle [3]_ - 1:116:16_,
1:118:16_, 1:159:3

principled [1]_ - 1:120:10

principles [6]_ - 1:20:22_,
1:110:13_, 1:114:12_,
1:114:16_, 1:122:14_,
1:138:18

priority [2]_ - 1:18:13_,
1:41:1

private [1]_ - 1:149:5

privilege [2]_ - 1:33:4_,
1:56:9

privileges [1]_ - 1:11:6

privy [1]_ - 1:55:5

probe [1]_ - 1:30:1

problem [4]_ - 1:21:11_,
1:53:13_, 1:63:24_, 1:157:1

problematic [2]_ -
1:56:15_, 1:152:13

problems [1]_ - 1:38:14

procedural [1]_ - 1:148:18

procedurally [6]_ -
1:33:16_, 1:110:11_,
1:128:15_, 1:148:1_,
1:148:14_, 1:148:21

procedure [1]_ - 1:157:23

proceed [3]_ - 1:21:7_,
1:59:1_, 1:105:1

proceeding [11]_ - 1:5:1_,

1:26:14_, 1:60:6_, 1:108:12
_, 1:111:8_, 1:135:9_,
1:142:1_, 1:143:17_, 1:158:3
_, 1:158:11_, 1:160:4

proceedings [20]_ -
1:19:2_, 1:33:17_, 1:77:5_,
1:100:23_, 1:100:25_,
1:104:24_, 1:111:1_,
1:119:18_, 1:120:22_,
1:126:4_, 1:141:21_,
1:142:12_, 1:149:1_,
1:155:10_, 1:155:12_,
1:159:20_, 1:159:22_,
1:161:10_, 1:165:4_,
1:165:14

process [26]_ - 1:17:2_,
1:48:9_, 1:74:9_, 1:74:23_,
1:75:5_, 1:75:15_, 1:76:7_,
1:99:22_, 1:101:20_,
1:103:14_, 1:104:22_,
1:105:24_, 1:108:13_,
1:108:25_, 1:111:5_,
1:117:19_, 1:124:10_,
1:139:18_, 1:142:6_,
1:142:23_, 1:157:15_,
1:158:7_, 1:159:10_,
1:159:11_, 1:160:9_,
1:160:12

produce [4]_ - 1:82:18_,
1:86:10_, 1:140:21_,
1:140:22

produced [22]_ - 1:16:3_,
1:30:6_, 1:40:21_, 1:82:7_,
1:82:20_, 1:86:2_, 1:88:10_,
1:114:6_, 1:125:15_,
1:138:11_, 1:140:13_,
1:140:21_, 1:140:25_,
1:141:11_, 1:141:15_,
1:141:16_, 1:144:9_,
1:144:11_, 1:147:2_,
1:156:18_, 1:164:8

producible [1]_ - 1:137:6

producing [2]_ - 1:16:1_,
1:40:20

production [3]_ - 1:47:5_,
1:129:17_, 1:137:4

proffers [2]_ - 1:14:18_,
1:16:2

profile [2]_ - 1:133:19_,
1:151:2

progressively [1]_ -
1:145:1

prohibited [1]_ - 1:4:10

prohibition [1]_ - 1:136:17

prohibits [1]_ - 1:137:4

promise [3]_ - 1:110:21_,
1:130:14_, 1:144:6

promised [2]₋ - 1:78:1₋, 1:94:11

promptly [1]₋ - 1:62:23

pronouncements [1]₋ - 1:122:12

proof [2]₋ - 1:16:10₋, 1:70:10

proper [4]₋ - 1:9:13₋, 1:143:17₋, 1:159:10₋, 1:159:11

properly [4]₋ - 1:85:3₋, 1:95:25₋, 1:104:15₋, 1:119:5

prophylactic [2]₋ - 1:134:12₋, 1:151:24

proposal [15]₋ - 1:18:8₋, 1:31:22₋, 1:33:1₋, 1:33:23₋, 1:34:17₋, 1:35:12₋, 1:35:17₋, 1:36:17₋, 1:37:11₋, 1:39:23₋, 1:60:22₋, 1:69:2₋, 1:145:21₋, 1:151:12

proposals [3]₋ - 1:5:2₋, 1:5:4₋, 1:37:10

propose [4]₋ - 1:19:3₋, 1:53:21₋, 1:84:15₋, 1:163:11

proposed [18]₋ - 1:6:10₋, 1:6:19₋, 1:19:5₋, 1:22:8₋, 1:32:18₋, 1:35:9₋, 1:36:21₋, 1:38:4₋, 1:42:15₋, 1:47:2₋, 1:49:1₋, 1:69:3₋, 1:69:12₋, 1:69:15₋, 1:84:13₋, 1:125:6₋, 1:127:17₋, 1:145:24

proposing [2]₋ - 1:84:3₋, 1:84:4

proposition [6]₋ - 1:123:22₋, 1:123:24₋, 1:131:13₋, 1:131:14₋, 1:150:7

propositions [1]₋ - 1:23:5

prosecuting [1]₋ - 1:101:22

prosecution [85]₋ - 1:5:14₋, 1:9:17₋, 1:10:8₋, 1:10:11₋, 1:10:14₋, 1:10:18₋, 1:10:25₋, 1:11:4₋, 1:11:11₋, 1:11:15₋, 1:12:11₋, 1:12:14₋, 1:13:2₋, 1:14:15₋, 1:15:11₋, 1:16:19₋, 1:16:22₋, 1:16:23₋, 1:17:6₋, 1:17:11₋, 1:26:5₋, 1:27:9₋, 1:27:12₋, 1:29:18₋, 1:40:19₋, 1:62:10₋, 1:62:14₋, 1:63:1₋, 1:63:13₋, 1:64:4₋, 1:64:5₋, 1:64:8₋, 1:64:12₋, 1:65:16₋, 1:65:18₋, 1:65:25₋, 1:66:6₋, 1:66:10₋, 1:67:7₋, 1:67:11₋, 1:68:20₋, 1:68:22₋, 1:69:6₋, 1:69:7₋, 1:69:16₋,

1:69:19₋, 1:70:5₋, 1:70:17₋, 1:71:4₋, 1:71:21₋, 1:72:7₋, 1:72:21₋, 1:73:5₋, 1:74:14₋, 1:75:11₋, 1:75:21₋, 1:75:24₋, 1:76:1₋, 1:76:5₋, 1:76:6₋, 1:76:15₋, 1:77:12₋, 1:77:18₋, 1:85:18₋, 1:85:22₋, 1:86:11₋, 1:86:23₋, 1:87:15₋, 1:88:21₋, 1:90:10₋, 1:90:14₋, 1:91:2₋, 1:91:11₋, 1:91:23₋, 1:92:4₋, 1:92:10₋, 1:97:16₋, 1:97:25₋, 1:98:18₋, 1:100:6₋, 1:100:8₋, 1:101:20₋, 1:103:19₋, 1:105:22₋, 1:108:23

prosecutions [1]₋ - 1:41:5

prosecutor [1]₋ - 1:72:19

prosecutorial [1]₋ - 1:73:10

prosecutors [7]₋ - 1:26:24₋, 1:27:13₋, 1:73:2₋, 1:73:9₋, 1:74:15₋, 1:81:3₋, 1:93:9

prosecutors' [1]₋ - 1:15:3

prospective [1]₋ - 1:136:19

protect [7]₋ - 1:106:20₋, 1:111:4₋, 1:112:17₋, 1:121:23₋, 1:134:5₋, 1:134:14₋, 1:155:3

protected [1]₋ - 1:136:12

protection [3]₋ - 1:107:20₋, 1:108:4₋, 1:146:18

protections [2]₋ - 1:134:11₋, 1:143:15

protective [44]₋ - 1:112:11₋, 1:112:12₋, 1:112:13₋, 1:112:14₋, 1:112:17₋, 1:112:21₋, 1:113:2₋, 1:114:6₋, 1:114:7₋, 1:114:10₋, 1:114:15₋, 1:125:15₋, 1:138:12₋, 1:138:15₋, 1:139:1₋, 1:139:5₋, 1:139:15₋, 1:139:17₋, 1:140:14₋, 1:140:17₋, 1:141:1₋, 1:141:7₋, 1:141:11₋, 1:141:17₋, 1:149:1₋, 1:149:10₋, 1:149:12₋, 1:149:17₋, 1:155:13₋, 1:155:14₋, 1:155:15₋, 1:155:19₋, 1:156:2₋, 1:156:7₋, 1:156:11₋, 1:156:15₋, 1:156:19₋, 1:156:21₋, 1:157:10₋, 1:161:3₋, 1:163:22₋, 1:164:6₋, 1:164:9₋, 1:164:13

prove [4]₋ - 1:41:25₋, 1:56:17₋, 1:56:21₋, 1:83:10

provide [6]₋ - 1:16:14₋, 1:44:6₋, 1:52:14₋, 1:52:16₋, 1:71:19₋, 1:132:21

provided [4]₋ - 1:30:21₋, 1:49:24₋, 1:74:7₋, 1:83:5

provides [1]₋ - 1:58:17

provision [4]₋ - 1:80:15₋, 1:80:23₋, 1:138:16₋, 1:139:9

public [43]₋ - 1:19:7₋, 1:19:17₋, 1:19:20₋, 1:20:13₋, 1:21:5₋, 1:33:14₋, 1:50:23₋, 1:51:7₋, 1:52:1₋, 1:69:9₋, 1:70:22₋, 1:80:14₋, 1:95:2₋, 1:97:17₋, 1:97:21₋, 1:98:14₋, 1:101:18₋, 1:103:10₋, 1:103:13₋, 1:103:19₋, 1:104:15₋, 1:107:3₋, 1:108:11₋, 1:108:12₋, 1:108:15₋, 1:122:4₋, 1:125:12₋, 1:128:1₋, 1:133:2₋, 1:137:1₋, 1:137:6₋, 1:138:9₋, 1:139:12₋, 1:141:11₋, 1:144:13₋, 1:146:3₋, 1:147:1₋, 1:148:24₋, 1:148:25₋, 1:149:5₋, 1:150:21

Public [1]₋ - 1:80:18

public's [2]₋ - 1:97:15₋, 1:102:23

publication [2]₋ - 1:51:1₋, 1:132:22

publications [1]₋ - 1:131:4

publicize [1]₋ - 1:74:18

publicly [7]₋ - 1:18:21₋, 1:47:24₋, 1:128:1₋, 1:142:8₋, 1:143:25₋, 1:145:25₋, 1:146:23

publish [1]₋ - 1:137:20

published [1]₋ - 1:51:15

pull [1]₋ - 1:25:5

pulled [1]₋ - 1:83:22

purport [1]₋ - 1:121:4

purported [2]₋ - 1:129:20₋, 1:147:11

purpose [7]₋ - 1:4:16₋, 1:20:25₋, 1:93:11₋, 1:96:2₋, 1:112:12₋, 1:139:14₋, 1:153:17

purposes [5]₋ - 1:5:15₋, 1:18:11₋, 1:49:3₋, 1:73:18₋, 1:102:11

pursuant [3]₋ - 1:141:11₋, 1:154:5₋, 1:164:8

put [23]₋ - 1:11:9₋, 1:16:1₋,

1:18:19₋, 1:20:6₋, 1:39:7₋, 1:41:19₋, 1:45:5₋, 1:45:19₋, 1:48:20₋, 1:50:13₋, 1:63:24₋, 1:67:1₋, 1:67:2₋, 1:87:5₋, 1:112:2₋, 1:113:9₋, 1:116:12₋, 1:117:21₋, 1:130:13₋, 1:130:18₋, 1:131:22₋, 1:146:22

puts [2]₋ - 1:34:10₋, 1:40:14

putting [7]₋ - 1:41:17₋, 1:44:15₋, 1:61:18₋, 1:72:8₋, 1:93:18₋, 1:113:21₋, 1:160:17

puzzling [1]₋ - 1:129:20

Q

qualified [2]₋ - 1:117:4₋, 1:122:20

qualifies [2]₋ - 1:100:13₋, 1:138:8

qualify [1]₋ - 1:115:25

quasi [1]₋ - 1:101:9

questioned [1]₋ - 1:34:25

questionnaire [2]₋ - 1:79:14₋, 1:79:24

questionnaires [2]₋ - 1:79:17₋, 1:79:18

questions [17]₋ - 1:6:5₋, 1:16:8₋, 1:18:4₋, 1:21:7₋, 1:36:5₋, 1:36:7₋, 1:48:18₋, 1:61:21₋, 1:69:23₋, 1:73:24₋, 1:86:4₋, 1:89:18₋, 1:89:19₋, 1:94:19₋, 1:98:20₋, 1:126:2₋, 1:162:3

queued [1]₋ - 1:64:6

quick [4]₋ - 1:68:4₋, 1:93:1₋, 1:109:23₋, 1:161:5

quickly [2]₋ - 1:69:14₋, 1:143:1

quite [10]₋ - 1:12:25₋, 1:16:11₋, 1:25:12₋, 1:50:11₋, 1:95:11₋, 1:118:23₋, 1:122:19₋, 1:124:6₋, 1:133:4₋, 1:137:14

quote [9]₋ - 1:27:10₋, 1:27:13₋, 1:29:24₋, 1:30:2₋, 1:87:22₋, 1:99:3₋, 1:119:3₋, 1:126:1₋, 1:154:3

quoted [1]₋ - 1:161:17

quotes [1]₋ - 1:153:11

quoting [1]₋ - 1:87:22

## R

rabbit [1]- - 1:129:10

raise [5]- - 1:69:17_,
1:75:9_, 1:80:7_, 1:94:15_,
1:158:13

raised [7]- - 1:5:23_,
1:36:6_, 1:67:11_, 1:75:7_,
1:87:23_, 1:90:21_, 1:155:11

raises [2]- - 1:73:24_,
1:101:19

raising [1]- - 1:100:16

ramifications [1]- -
1:133:22

ranging [1]- - 1:64:13

rare [1]- - 1:18:1

rarely [1]- - 1:145:16

rather [1]- - 1:98:7

rationale [1]- - 1:41:16

Ray [1]- - 1:92:8

Re [1] - - 1:120:1

reach [2]- - 1:83:24_,
1:120:7

reached [1]- - 1:25:7

reaching [1]- - 1:10:24

read [8]- - 1:25:22_,
1:39:19_, 1:58:19_, 1:62:20
_, 1:88:16_, 1:104:3_,
1:119:15

reading [4]- - 1:13:21_,
1:103:1_, 1:118:22_,
1:119:12

reads [1]- - 1:118:24

ready [4]- - 1:37:24_,
1:44:18_, 1:61:1_, 1:147:24

real [8]- - 1:85:24_, 1:86:4
_, 1:86:5_, 1:87:2_, 1:93:21_,
1:94:5_, 1:105:13_, 1:111:15

realistic [1]- - 1:8:3_,
1:44:17

reality [3]- - 1:39:9_,
1:49:20_, 1:61:9

realize [1]- - 1:17:25

realized [1]- - 1:147:3

really [57]- - 1:10:13_,
1:15:19_, 1:15:24_, 1:22:25
_, 1:25:2_, 1:32:11_, 1:37:7_,
1:37:14_, 1:37:25_, 1:40:13
_, 1:42:4_, 1:44:15_, 1:45:4_,
1:55:2_, 1:61:21_, 1:63:4_,
1:71:9_, 1:71:24_, 1:75:11_,
1:80:10_, 1:81:5_, 1:84:4_,
1:84:15_, 1:84:16_, 1:88:7_,
1:98:1_, 1:98:22_, 1:99:23_,

1:101:18_, 1:103:13_,
1:104:11_, 1:104:21_,
1:104:22_, 1:105:16_,
1:105:25_, 1:106:23_,
1:107:12_, 1:108:18_,
1:116:21_, 1:120:20_,
1:122:8_, 1:123:20_, 1:124:7
_, 1:125:21_, 1:129:8_,
1:132:6_, 1:133:9_, 1:133:13
_, 1:133:20_, 1:133:23_,
1:135:23_, 1:145:19_,
1:153:5_, 1:153:15_,
1:164:11

realm [1]- - 1:82:8

reason [32]- - 1:17:5_,
1:17:8_, 1:22:6_, 1:23:12_,
1:29:6_, 1:34:10_, 1:37:7_,
1:37:12_, 1:38:5_, 1:38:8_,
1:43:16_, 1:43:17_, 1:43:20
_, 1:45:9_, 1:45:22_, 1:48:2_,
1:52:16_, 1:62:14_, 1:62:25
_, 1:63:14_, 1:85:17_,
1:85:24_, 1:86:4_, 1:86:5_,
1:112:16_, 1:118:19_,
1:121:13_, 1:121:14_,
1:127:24_, 1:137:8_,
1:137:10

reasonable [6]- - 1:8:6_,
1:121:22_, 1:133:5_,
1:137:23_, 1:137:24_,
1:165:1

reasonably [1]- - 1:133:6

reasoned [3]- - 1:4:24_,
1:18:9_, 1:61:25

reasoning [2]- - 1:46:5_,
1:152:20

reasons [10]- - 1:10:20_,
1:11:12_, 1:17:15_, 1:36:12
_, 1:87:2_, 1:93:25_, 1:111:8
_, 1:117:24_, 1:118:14_,
1:151:21

reassert [1]- - 1:33:3

rebut [2]- - 1:14:17_,
1:67:18

rebuttal [1]- - 1:162:9

receive [3]- - 1:24:16_,
1:56:1_, 1:68:23

received [6]- - 1:5:1_,
1:6:10_, 1:59:18_, 1:67:17_,
1:86:1_, 1:133:11

receives [1]- - 1:102:8

recent [3]- - 1:25:6_,
1:76:10

recently [4]- - 1:7:10_,
1:15:16_, 1:52:6_, 1:129:22

recess [3]- - 1:49:10_,

1:94:7_, 1:94:8

recessing [2]- - 1:5:18_,
1:93:1

recite [1]- - 1:88:7

recited [1]- - 1:88:8

recognize [3]- - 1:20:1_,
1:113:11_, 1:115:14

recognized [5]- - 1:39:13
_, 1:98:12_, 1:99:12_,
1:104:17_, 1:119:21

recognizes [2]- - 1:17:24
_, 1:101:17

reconsideration [12]- -
1:94:13_, 1:95:7_, 1:97:11_,
1:113:8_, 1:128:24_, 1:134:9
_, 1:148:9_, 1:148:17_,
1:154:10_, 1:159:2_,
1:164:16_, 1:165:5

record [11]- - 1:12:13_,
1:98:2_, 1:105:11_, 1:105:14
_, 1:108:15_, 1:114:5_,
1:132:5_, 1:134:3_, 1:134:25
_, 1:159:16

recordings [1]- - 1:112:19

records [8]- - 1:59:24_,
1:70:22_, 1:98:11_, 1:102:19
_, 1:103:3_, 1:103:10_,
1:104:16_, 1:104:23

Records [1]- - 1:41:12

rectify [1]- - 1:4:4

recurring [1]- - 1:151:16

red [5]- - 1:25:3_, 1:109:8_,
1:130:22_, 1:139:25_,
1:164:23

redact [4]- - 1:53:21_,
1:54:7_, 1:57:10_, 1:138:9

redacted [11]- - 1:12:22_,
1:24:21_, 1:33:15_, 1:56:6_,
1:57:9_, 1:57:11_, 1:57:23_,
1:145:1_, 1:146:6_, 1:147:4
_, 1:159:9

redacting [1]- - 1:152:2

redaction [17]- - 1:5:24_,
1:19:15_, 1:19:24_, 1:68:6_,
1:68:9_, 1:68:12_, 1:68:13_,
1:122:4_, 1:125:7_, 1:125:25
_, 1:127:11_, 1:130:9_,
1:138:21_, 1:150:16_,
1:162:7_, 1:163:11_,
1:164:25

redaction/sealing [1]- -
1:18:18

redactions [15]- - 1:5:22_,
1:58:8_, 1:94:12_, 1:125:20
_, 1:125:22_, 1:125:25_,

1:127:7_, 1:127:14_,
1:127:17_, 1:130:25_,
1:131:2_, 1:142:7_, 1:144:1
_, 1:159:10_, 1:164:22

redline [1]- - 1:72:4

redlines [4]- - 1:72:5_,
1:90:2_, 1:90:3_, 1:90:6

refer [2]- - 1:52:1_, 1:96:8

reference [6]- - 1:62:19_,
1:94:22_, 1:135:17_,
1:156:23_, 1:157:15_,
1:161:15

referenced [9]- - 1:62:17
_, 1:64:22_, 1:71:12_,
1:102:16_, 1:151:12_,
1:152:17_, 1:158:4_, 1:159:7
_, 1:159:20

references [7]- - 1:19:19
_, 1:73:20_, 1:104:7_,
1:107:18_, 1:108:1_, 1:152:7
_, 1:159:20

referencing [1]- -
1:161:15

referral [9]- - 1:28:1_,
1:28:2_, 1:29:3_, 1:30:7_,
1:66:10_, 1:74:8_, 1:74:16_,
1:74:19_, 1:74:24

referred [2]- - 1:30:12_,
1:72:4

referring [6]- - 1:7:16_,
1:66:22_, 1:71:5_, 1:74:5_,
1:160:13_, 1:160:15

refers [1]- - 1:75:5

reflect [2]- - 1:72:15_,
1:72:17

refuse [3]- - 1:71:18_,
1:130:25_, 1:131:2

refused [1]- - 1:129:16

regard [2]- - 1:97:14_,
1:106:8

regarded [1]- - 1:119:4

regardless [1]- - 1:49:20

regular [1]- - 1:17:19_,
1:117:16

Reinhardt [4]- - 1:98:12_,
1:101:13_, 1:101:17_,
1:146:1

Reinhardt's [1]- - 1:146:5

reiterate [3]- - 1:86:5_,
1:87:2_, 1:130:15

reiterating [1]- - 1:128:15

reject [1]- - 1:161:8

relate [1]- - 1:36:12

related [10]- - 1:5:22_,
1:5:23_, 1:6:8_, 1:9:23_,

1:21:7_, 1:37:19_, 1:73:17_, 1:94:12_, 1:143:12_, 1:148:15

relating [4]_ - 1:64:22_, 1:85:6_, 1:112:18_, 1:151:25

relationship [1]_ - 1:12:2

relative [1]_ - 1:74:3

releasable [1]_ - 1:143:25

release [1]_ - 1:141:22

released [4]_ - 1:68:12_, 1:142:8_, 1:146:3

releases [2]_ - 1:67:25_, 1:68:14

relevance [1]_ - 1:71:4

relevant [12]_ - 1:9:4_, 1:9:9_, 1:16:14_, 1:17:14_, 1:74:13_, 1:74:21_, 1:74:22_, 1:93:8_, 1:142:4_, 1:147:3

reliance [2]_ - 1:114:15_, 1:155:14

relied [2]_ - 1:112:10_, 1:114:21

relief [6]_ - 1:15:13_, 1:16:8_, 1:142:22_, 1:145:17_, 1:147:14_, 1:158:9

relitigate [1]_ - 1:54:16

rely [5]_ - 1:53:6_, 1:53:10_, 1:84:11_, 1:118:5_, 1:141:10

relying [3]_ - 1:20:5_, 1:121:10_, 1:123:25

remain [2]_ - 1:4:6_, 1:158:24

remainder [2]_ - 1:22:12_, 1:69:21

remaining [3]_ - 1:4:23_, 1:35:10_, 1:78:4

remains [2]_ - 1:38:13_, 1:85:1

remarks [1]_ - 1:3:24

remember [3]_ - 1:10:12_, 1:114:4_, 1:137:3

remind [1]_ - 1:88:12

reminds [1]_ - 1:126:17

remotely [2]_ - 1:14:7_, 1:17:17

repeatedly [5]_ - 1:38:6_, 1:38:20_, 1:129:20_, 1:139:20_, 1:159:3

reply [2]_ - 1:24:24_, 1:45:11

report [1]_ - 1:136:17

reports [3]_ - 1:71:18_,

1:71:24_, 1:72:16

represent [3]_ - 1:48:3_, 1:63:18_, 1:164:15

representation [5]_ - 1:21:19_, 1:21:20_, 1:21:21_, 1:63:6_, 1:92:9

representations [5]_ - 1:63:4_, 1:63:8_, 1:65:7_, 1:77:20_, 1:86:18

represented [2]_ - 1:39:4_, 1:159:24

representing [1]_ - 1:96:7

Republican [1]_ - 1:49:4

request [14]_ - 1:7:13_, 1:9:9_, 1:9:21_, 1:11:16_, 1:65:14_, 1:68:21_, 1:69:5_, 1:79:14_, 1:85:17_, 1:119:9_, 1:122:3_, 1:133:13_, 1:133:20_, 1:152:14

requested [11]_ - 1:5:10_, 1:10:21_, 1:30:10_, 1:125:6_, 1:125:18_, 1:125:21_, 1:127:7_, 1:141:14_, 1:143:20_, 1:149:22

requesting [1]_ - 1:119:5

requests [13]_ - 1:5:5_, 1:10:24_, 1:11:8_, 1:11:13_, 1:17:1_, 1:19:16_, 1:24:17_, 1:24:18_, 1:27:2_, 1:69:1_, 1:91:17_, 1:127:15_, 1:158:16

require [9]_ - 1:20:18_, 1:27:1_, 1:41:21_, 1:68:3_, 1:123:19_, 1:163:16_, 1:163:20_, 1:164:12

required [5]_ - 1:17:22_, 1:65:23_, 1:112:3_, 1:123:6_, 1:134:3

requirement [2]_ - 1:112:3_, 1:149:22

requirements [1]_ - 1:32:16

requires [5]_ - 1:15:13_, 1:16:6_, 1:16:20_, 1:118:6_, 1:120:13

requiring [5]_ - 1:16:9_, 1:42:15_, 1:77:8_, 1:99:4_, 1:136:15

resembling [1]_ - 1:14:7

resident [1]_ - 1:28:23

residual [1]_ - 1:146:18

resistance [1]_ - 1:123:17

resolution [6]_ - 1:7:3_, 1:18:11_, 1:19:11_, 1:20:16_, 1:99:5_, 1:116:13

resolve [6]_ - 1:9:10_, 1:10:23_, 1:17:7_, 1:17:12_, 1:19:2_, 1:86:4

resolved [1]_ - 1:18:22

resources [4]_ - 1:26:12_, 1:26:25_, 1:27:2_, 1:27:3

respect [33]_ - 1:7:9_, 1:7:11_, 1:8:9_, 1:9:13_, 1:21:25_, 1:26:14_, 1:27:8_, 1:47:19_, 1:48:1_, 1:49:14_, 1:51:7_, 1:52:19_, 1:63:19_, 1:63:23_, 1:63:25_, 1:65:14_, 1:69:18_, 1:69:21_, 1:74:2_, 1:75:24_, 1:77:18_, 1:82:16_, 1:83:12_, 1:88:6_, 1:89:2_, 1:125:2_, 1:125:5_, 1:148:18_, 1:150:17_, 1:151:22_, 1:152:9_, 1:158:3_, 1:165:3

respectful [1]_ - 1:87:7

respectfully [1]_ - 1:73:6

respects [1]_ - 1:152:5

respond [3]_ - 1:7:13_, 1:27:2_, 1:36:5_, 1:78:6_, 1:81:18

responding [3]_ - 1:78:12_, 1:78:22_, 1:83:9

response [15]_ - 1:31:10_, 1:31:11_, 1:31:13_, 1:32:19_, 1:41:22_, 1:45:17_, 1:48:18_, 1:52:2_, 1:64:9_, 1:81:25_, 1:87:7_, 1:87:19_, 1:115:1_, 1:160:7_, 1:161:3

responses [2]_ - 1:75:4_, 1:104:21

responsibilities [1]_ - 1:28:25

responsibility [2]_ - 1:111:4_, 1:111:6

responsible [1]_ - 1:30:17

rest [2]_ - 1:62:16_, 1:64:6

restate [1]_ - 1:94:1

result [8]_ - 1:24:2_, 1:51:21_, 1:99:21_, 1:119:14_, 1:123:14_, 1:124:19_, 1:156:10_, 1:156:23

resulted [1]_ - 1:139:2

resume [1]_ - 1:94:11

resuming [1]_ - 1:5:19

return [1]_ - 1:83:4

returns [2]_ - 1:82:21_, 1:84:18

reveal [1]_ - 1:32:9

revealing [1]_ - 1:56:9

reveals [1]_ - 1:15:18

review [15]_ - 1:27:12_, 1:52:11_, 1:55:12_, 1:56:1_, 1:57:20_, 1:60:10_, 1:75:5_, 1:76:7_, 1:83:20_, 1:96:9_, 1:106:3_, 1:106:4_, 1:107:11_, 1:161:17_, 1:161:24

reviewed [3]_ - 1:5:3_, 1:6:11_, 1:98:14

reviews [10]_ - 1:11:4_, 1:16:23_, 1:62:17_, 1:68:24_, 1:75:10_, 1:75:14_, 1:76:19_, 1:76:23_, 1:77:3_, 1:77:4

revisit [1]_ - 1:110:10

revisited [1]_ - 1:146:6

ridicule [1]_ - 1:160:24

rightfully [1]_ - 1:61:5

rightly [5]_ - 1:131:17

rights [1]_ - 1:100:3_, 1:102:23_, 1:105:24_, 1:108:24_, 1:108:25

rigorous [2]_ - 1:15:13_, 1:15:15

risk [3]_ - 1:35:2_, 1:48:25_, 1:134:25

risks [1]_ - 1:152:11

role [3]_ - 1:13:5_, 1:77:2_, 1:77:18

room [7]_ - 1:3:25_, 1:4:12_, 1:28:7_, 1:69:9_, 1:73:7_, 1:85:4_, 1:110:3

rooted [1]_ - 1:70:4_, 1:70:7

Rosen - 1:25:6

round [1]_ - 1:24:3_, 1:28:8

rounds [1]_ - 1:130:20

route [1]_ - 1:143:18

Rule [27]_ - 1:7:10_, 1:7:11_, 1:8:16_, 1:8:17_, 1:8:19_, 1:11:16_, 1:15:11_, 1:19:4_, 1:56:14_, 1:70:8_, 1:78:18_, 1:102:13_, 1:105:7_, 1:105:15_, 1:118:18_, 1:119:5_, 1:122:18_, 1:125:4_, 1:125:13_, 1:128:21_, 1:140:19_, 1:144:16_, 1:147:23_, 1:154:8_, 1:157:20_, 1:159:13

rule [16]_ - 1:4:13_, 1:17:7_, 1:33:11_, 1:33:12_, 1:33:16_, 1:61:24_, 1:81:5_, 1:81:6_, 1:112:3_, 1:114:14_, 1:145:18_, 1:149:12_,

1:151:17_, 1:158:20_,
1:158:21
 ruled [4]_ - 1:42:17_,
1:53:14_, 1:94:24_, 1:101:12
 rules [6]_ - 1:41:9_,
1:41:20_, 1:49:20_, 1:142:25
_, 1:149:21_, 1:158:18
 ruling [5]_ - 1:20:18_,
1:23:23_, 1:33:18_, 1:34:20
_, 1:43:3
 rulings [5]_ - 1:25:4_,
1:34:13_, 1:40:18_, 1:43:1_,
1:60:10
 rummaging [1]_ -
1:136:25
 run [6]_ - 1:15:22_, 1:17:19
_, 1:73:14_, 1:75:15_,
1:75:17_, 1:87:4
 run-of-the-mill [1]_ -
1:17:19
 rundown [1]_ - 1:77:7
 runs [1]_ - 1:141:6
 rushing [1]_ - 1:62:2

S

 Saab [3]_ - 1:15:5_,
1:17:22_, 1:86:21
 sacrifice [1]_ - 1:8:1
 safety [7]_ - 1:111:8_,
1:121:23_, 1:121:24_,
1:135:16_, 1:137:1_,
1:149:24_, 1:165:2
 sake [1]_ - 1:162:14
 Salle [1]_ - 1:74:24
 Sasha [1]_ - 1:3:18
 satisfactory [1]_ - 1:20:22
 satisfied [1]_ - 1:112:25
 satisfy [1]_ - 1:15:23
 saw [4]_ - 1:41:13_,
1:41:15_, 1:82:5_, 1:154:14
 scenario [4]_ - 1:105:20_,
1:105:25_, 1:140:15
 schedule [13]_ - 1:32:22_,
1:37:8_, 1:38:4_, 1:40:14_,
1:42:15_, 1:44:14_, 1:45:3_,
1:46:19_, 1:47:9_, 1:60:11_,
1:69:12_, 1:165:9
 scheduled [4]_ - 1:22:9_,
1:44:19_, 1:47:1_, 1:95:12
 schedules [3]_ - 1:39:6_,
1:39:7_, 1:48:23
 scheduling [38]_ - 1:4:17
_, 1:4:20_, 1:5:2_, 1:5:9_,

1:5:10_, 1:5:17_, 1:6:8_,
1:6:11_, 1:8:13_, 1:8:15_,
1:9:24_, 1:10:6_, 1:18:3_,
1:18:8_, 1:21:7_, 1:21:11_,
1:22:9_, 1:31:3_, 1:35:24_,
1:36:8_, 1:48:16_, 1:49:7_,
1:49:14_, 1:52:10_, 1:61:8_,
1:61:14_, 1:61:20_, 1:73:17
_, 1:77:14_, 1:77:25_, 1:78:4
_, 1:78:8_, 1:79:11_, 1:81:14
_, 1:81:15_, 1:81:21_, 1:93:5
_, 1:93:14
 scheduling/logistics [1]
- 1:85:6
 school [1]_ - 1:161:13
 SCIF [2]_ - 1:76:20_,
1:77:22
 scope [28]_ - 1:10:8_,
1:10:11_, 1:10:14_, 1:10:24
_, 1:11:11_, 1:11:15_,
1:14:14_, 1:17:10_, 1:26:5_,
1:40:18_, 1:65:19_, 1:67:11
_, 1:69:19_, 1:71:4_, 1:71:21
_, 1:75:24_, 1:76:6_, 1:85:18
_, 1:85:22_, 1:86:23_,
1:91:11_, 1:97:25_, 1:99:22
_, 1:100:7_, 1:101:20_,
1:105:19_, 1:105:23_,
1:108:23
 scrubbing [1]_ - 1:111:17
 scrutiny [2]_ - 1:98:17_,
1:150:21
 seal [4]_ - 1:19:16_,
1:98:15_, 1:152:21_,
1:160:16
 sealed [7]_ - 1:13:10_,
1:13:14_, 1:54:22_, 1:135:18
_, 1:141:20_, 1:157:10_,
1:158:24
 sealing [25]_ - 1:5:22_,
1:5:24_, 1:19:14_, 1:68:9_,
1:94:12_, 1:103:9_, 1:125:7
_, 1:125:16_, 1:130:3_,
1:130:9_, 1:146:16_,
1:149:19_, 1:149:22_,
1:151:22_, 1:152:6_,
1:153:14_, 1:154:22_,
1:155:16_, 1:157:8_,
1:157:18_, 1:160:3_, 1:161:1
_, 1:161:4_, 1:162:6_,
1:164:25
 sealing/redaction [1]_ -
1:78:2
 search [27]_ - 1:49:23_,
1:49:25_, 1:50:2_, 1:50:7_,
1:51:8_, 1:64:23_, 1:65:10_,
1:66:2_, 1:70:8_, 1:82:16_,
1:82:17_, 1:82:19_, 1:101:12

_, 1:131:12_, 1:131:15_,
1:132:10_, 1:143:6_, 1:144:4
_, 1:144:9_, 1:144:10_,
1:144:25_, 1:145:1_,
1:145:25_, 1:146:19_,
1:147:1_, 1:154:19_, 1:163:7
 seat [1]_ - 1:4:5
 seated [3]_ - 1:3:2_, 1:4:7
_, 1:94:9
 second [22]_ - 1:4:5_,
1:7:21_, 1:17:12_, 1:23:25_,
1:31:9_, 1:56:16_, 1:58:3_,
1:76:21_, 1:82:20_, 1:85:25
_, 1:87:18_, 1:88:4_, 1:90:3_,
1:90:15_, 1:108:1_, 1:109:20
_, 1:115:11_, 1:128:15_,
1:129:18_, 1:138:13_,
1:139:4_, 1:157:13
 secondary [1]_ - 1:129:11
 secondly [1]_ - 1:152:6
 seconds [1]_ - 1:126:14
 secrecy [1]_ - 1:103:12_,
1:157:25
 secret [1]_ - 1:54:1
 Secret [1]_ - 1:13:25
 secreted [1]_ - 1:157:7
 secrets [1]_ - 1:99:16
 Section [40]_ - 1:5:7_,
1:23:13_, 1:23:20_, 1:23:25
_, 1:24:3_, 1:31:7_, 1:31:11_,
1:32:13_, 1:32:19_, 1:33:7_,
1:33:17_, 1:33:18_, 1:44:5_,
1:44:6_, 1:44:21_, 1:45:9_,
1:45:12_, 1:45:15_, 1:45:17
_, 1:46:15_, 1:55:23_,
1:55:24_, 1:58:9_, 1:58:14_,
1:58:15_, 1:58:17_, 1:58:18
_, 1:58:19_, 1:58:23_,
1:58:24_, 1:59:15_, 1:59:16
_, 1:59:18_, 1:59:21_, 1:77:5
_, 1:80:19_, 1:82:4
 section [4]_ - 1:29:11_,
1:29:12_, 1:44:22_, 1:80:14
 sections [2]_ - 1:161:17_,
1:161:21
 secure [3]_ - 1:8:24_,
1:44:2_, 1:44:11
 security [4]_ - 1:113:3_,
1:131:3_, 1:137:2_, 1:165:11
 see [35]_ - 1:6:22_, 1:9:2_,
1:17:16_, 1:18:22_, 1:19:7_,
1:24:4_, 1:24:5_, 1:33:22_,
1:35:9_, 1:51:4_, 1:54:13_,
1:54:16_, 1:59:18_, 1:60:22
_, 1:71:16_, 1:72:10_,
1:75:15_, 1:80:10_, 1:81:6_,

1:83:15_, 1:86:24_, 1:100:6
_, 1:101:1_, 1:101:25_,
1:105:6_, 1:105:13_,
1:107:11_, 1:109:5_,
1:123:20_, 1:133:19_,
1:142:3_, 1:145:17_, 1:154:2
_, 1:156:1_, 1:156:24
 seeing [3]_ - 1:33:14_,
1:57:13_, 1:77:13
 seek [8]_ - 1:10:10_,
1:11:1_, 1:11:16_, 1:32:9_,
1:33:19_, 1:81:4_, 1:138:16
_, 1:158:9
 seeking [16]_ - 1:8:16_,
1:11:10_, 1:16:7_, 1:17:20_,
1:53:2_, 1:68:8_, 1:68:11_,
1:68:13_, 1:69:17_, 1:69:22
_, 1:103:11_, 1:106:18_,
1:125:25_, 1:130:9_,
1:145:17_, 1:147:14
 seeks [2]_ - 1:107:5
 seem [2]_ - 1:51:10_,
1:78:11
 select [1]_ - 1:93:10
 selected [1]_ - 1:39:4
 selecting [1]_ - 1:41:16
 selection [3]_ - 1:37:2_,
1:39:15_, 1:39:17
 selective [6]_ - 1:15:11_,
1:16:19_, 1:41:5_, 1:69:5_,
1:69:7_, 1:69:16
 sending [1]_ - 1:75:21
 sense [18]_ - 1:12:17_,
1:19:23_, 1:27:3_, 1:47:10_,
1:47:18_, 1:58:25_, 1:59:19
_, 1:76:3_, 1:78:11_, 1:92:11
_, 1:93:16_, 1:100:7_,
1:125:4_, 1:127:12_, 1:128:3
_, 1:145:22_, 1:150:25_,
1:154:23
 sensitive [2]_ - 1:129:2_,
1:163:10
 sensitivity [1]_ - 1:164:11
 sent [3]_ - 1:66:11_,
1:130:22_, 1:130:23
 separate [2]_ - 1:30:15_,
1:75:6
 separately [1]_ - 1:49:18
 September [10]_ -
1:37:11_, 1:37:13_, 1:60:22
_, 1:66:11_, 1:66:22_,
1:73:19_, 1:73:21_, 1:84:3_,
1:84:18_, 1:94:2
 sequence [2]_ - 1:41:16_,
1:62:11

sequencing [1]_ - 1:74:8
sequential [1]_ - 1:59:1
sequentially [1]_ - 1:41:1
serious [6]_ - 1:77:19_,
1:102:24_, 1:103:15_,
1:105:22_, 1:107:10_,
1:145:20
seriously [1]_ - 1:95:12
Service [2]_ - 1:13:25_,
1:165:11
session [5]_ - 1:4:7_,
1:5:19_, 1:47:11_, 1:47:12_,
1:68:17
set [13]_ - 1:4:1_, 1:4:14_,
1:4:22_, 1:17:5_, 1:21:15_,
1:26:18_, 1:47:16_, 1:64:11
_, 1:84:17_, 1:101:9_,
1:104:24_, 1:160:11
setting [5]_ - 1:25:3_,
1:52:13_, 1:64:25_, 1:69:9_,
1:80:17
several [4]_ - 1:44:22_,
1:88:6_, 1:144:15_, 1:159:23
shading [1]_ - 1:6:12
Shahi [1]_ - 1:100:2
shall [1]_ - 1:136:19
share [1]_ - 1:111:3
shares [2]_ - 1:111:2
shed [2]_ - 1:13:10_,
1:24:9
sheet [2]_ - 1:54:1_,
1:54:10
shield [3]_ - 1:107:5_,
1:133:2_, 1:160:22
shielded [1]_ - 1:151:5_,
1:160:21
shielding [1]_ - 1:159:18
shift [4]_ - 1:49:8_, 1:78:1_,
1:120:15_, 1:146:8
shock [1]_ - 1:82:2
shocked [1]_ - 1:45:18
shocking [1]_ - 1:161:6
shoe [1]_ - 1:148:7
short [1]_ - 1:129:17
shorthand [1]_ - 1:128:23
show [5]_ - 1:86:20_,
1:86:22_, 1:92:14_, 1:92:15
_, 1:106:9
showing [29]_ - 1:9:3_,
1:11:25_, 1:12:6_, 1:15:14_,
1:15:15_, 1:33:13_, 1:68:2_,
1:70:2_, 1:89:9_, 1:95:2_,
1:109:24_, 1:111:24_,

1:112:4_, 1:112:5_, 1:114:13
_, 1:122:1_, 1:123:7_,
1:123:20_, 1:130:1_, 1:130:2
_, 1:130:10_, 1:134:18_,
1:135:4_, 1:139:8_, 1:139:19
_, 1:149:11_, 1:150:1_,
1:150:17_, 1:163:9
shown [2]_ - 1:24:20_,
1:134:6
sic [2]_ - 1:49:1_, 1:130:24
side [7]_ - 1:16:16_,
1:43:23_, 1:77:9_, 1:77:10_,
1:78:8_, 1:102:24_, 1:140:5
sides [2]_ - 1:8:21_,
1:16:14
significance [2]_ -
1:72:18_, 1:74:13
significant [2]_ - 1:40:17_,
1:42:17
significantly [2]_ - 1:43:1
_, 1:154:16
silent [4]_ - 1:33:11_,
1:33:12_, 1:33:16_, 1:151:17
similar [6]_ - 1:40:25_,
1:45:21_, 1:94:15_, 1:98:13
_, 1:119:4_, 1:119:6
simply [6]_ - 1:52:1_,
1:58:13_, 1:98:5_, 1:100:15
_, 1:109:2_, 1:161:7
single [9]_ - 1:10:10_,
1:13:4_, 1:14:19_, 1:16:3_,
1:37:5_, 1:87:19_, 1:129:17
_, 1:156:18_, 1:156:20
sit [10]_ - 1:37:25_, 1:42:13
_, 1:57:19_, 1:71:25_, 1:72:5
_, 1:73:2_, 1:89:16_,
1:136:22_, 1:147:7_, 1:162:4
sitting [6]_ - 1:22:12_,
1:22:20_, 1:36:17_, 1:69:10
_, 1:76:20_, 1:151:7
situation [9]_ - 1:17:25_,
1:99:14_, 1:103:11_, 1:105:5
_, 1:106:13_, 1:107:4_,
1:108:16_, 1:121:14
six [4]_ - 1:5:12_, 1:36:15_,
1:39:16_, 1:39:22
six-week [1]_ - 1:39:22
Sixth [8]_ - 1:39:1_,
1:107:1_, 1:147:8_, 1:147:12
_, 1:149:6_, 1:149:9_,
1:149:13_, 1:151:15
size [1]_ - 1:20:9
skepticism [3]_ - 1:131:9
_, 1:157:15_, 1:157:17
slap [1]_ - 1:136:13

slightly [1]_ - 1:69:2
slot [1]_ - 1:155:1
Smith [1]_ - 1:76:2
so-and-so [1]_ - 1:89:5
soapbox [1]_ - 1:135:6
social [1]_ - 1:131:3
solution [2]_ - 1:37:20_,
1:161:8
solutions [1]_ - 1:133:5
someone [2]_ - 1:56:21_,
1:155:3
sometimes [2]_ - 1:20:21
_, 1:22:22
somewhat [2]_ - 1:126:17
_, 1:133:17
somewhere [1]_ - 1:82:8
soon [4]_ - 1:4:3_, 1:61:3_,
1:66:9
soonest [1]_ - 1:60:25
sophisticated [1]_ -
1:54:18
sorry [17]_ - 1:10:4_,
1:14:11_, 1:17:7_, 1:18:17_,
1:21:21_, 1:31:16_, 1:34:2_,
1:34:4_, 1:81:20_, 1:91:2_,
1:92:3_, 1:96:18_, 1:118:10
_, 1:124:4_, 1:132:6_,
1:132:8_, 1:146:14
sort [30]_ - 1:8:13_, 1:10:21
_, 1:18:12_, 1:18:21_,
1:18:24_, 1:23:5_, 1:24:8_,
1:26:21_, 1:29:13_, 1:30:4_,
1:31:23_, 1:39:2_, 1:40:25_,
1:48:15_, 1:58:6_, 1:58:7_,
1:60:12_, 1:62:11_, 1:73:13
_, 1:75:23_, 1:77:7_, 1:81:22
_, 1:102:17_, 1:103:7_,
1:118:18_, 1:120:21_,
1:122:2_, 1:129:10_, 1:159:4
_, 1:163:18
sorts [3]_ - 1:12:25_,
1:131:25_, 1:133:22
sought [4]_ - 1:12:10_,
1:20:19_, 1:82:6_, 1:148:17
sound [1]_ - 1:132:5
sounds [2]_ - 1:71:16_,
1:160:12
source [1]_ - 1:117:23
sourcing [1]_ - 1:43:15
Southern [4]_ - 1:28:20_,
1:51:13_, 1:144:23_,
1:160:20
space [1]_ - 1:60:11
speaking [2]_ - 1:52:9_,

1:150:7
Special [64]_ - 1:3:8_,
1:6:7_, 1:11:20_, 1:12:19_,
1:13:5_, 1:14:8_, 1:20:18_,
1:26:15_, 1:26:17_, 1:27:8_,
1:27:13_, 1:27:22_, 1:29:2_,
1:29:15_, 1:30:21_, 1:36:6_,
1:37:1_, 1:38:14_, 1:38:20_,
1:39:25_, 1:40:7_, 1:45:11_,
1:45:12_, 1:45:25_, 1:46:17
_, 1:49:18_, 1:50:22_, 1:51:5
_, 1:51:19_, 1:51:25_, 1:53:2
_, 1:53:7_, 1:53:8_, 1:53:16_,
1:54:12_, 1:55:8_, 1:58:3_,
1:58:8_, 1:58:18_, 1:59:3_,
1:59:22_, 1:61:23_, 1:65:21
_, 1:66:1_, 1:68:8_, 1:71:3_,
1:73:17_, 1:76:22_, 1:77:24
_, 1:80:19_, 1:85:5_, 1:91:13
_, 1:93:13_, 1:93:17_,
1:93:21_, 1:94:3_, 1:94:14_,
1:95:1_, 1:95:5_, 1:95:20_,
1:102:5_, 1:120:15_,
1:159:20_, 1:161:3
specific [8]_ - 1:42:19_,
1:51:14_, 1:79:11_, 1:110:16
_, 1:133:6_, 1:133:10_,
1:134:24_, 1:151:21
specifically [9]_ - 1:60:16
_, 1:62:8_, 1:78:14_,
1:100:18_, 1:100:20_,
1:116:4_, 1:153:4_, 1:153:18
_, 1:154:13
specificity [1]_ - 1:52:14
specified [1]_ - 1:29:25
specifies [1]_ - 1:58:24
spectrum [1]_ - 1:132:25
speculation [3]_ - 1:39:16
_, 1:89:11_, 1:106:10
speculative [1]_ - 1:135:1
spend [2]_ - 1:36:15_,
1:111:16
spent [2]_ - 1:23:10_,
1:48:15
spill [1]_ - 1:56:24
spilling [1]_ - 1:57:13
spinoff [1]_ - 1:94:14
spot [1]_ - 1:78:25
sprinkled [1]_ - 1:154:14
squad [1]_ - 1:28:4
staff [2]_ - 1:79:21_,
1:111:12
stage [2]_ - 1:16:10_,
1:146:15
stages [2]_ - 1:28:10_,

1:60:9

stake [3]₋ - 1:20:23₋, 1:103:19₋, 1:148:22

stalking [1]₋ - 1:91:14

stand [6]₋ - 1:5:7₋, 1:9:24 ₋, 1:21:5₋, 1:62:25₋, 1:69:8₋, 1:84:19

standard [33]₋ - 1:7:14₋, 1:7:16₋, 1:7:17₋, 1:7:18₋, 1:7:20₋, 1:8:11₋, 1:16:20₋, 1:17:22₋, 1:18:1₋, 1:70:7₋, 1:87:24₋, 1:88:1₋, 1:91:10₋, 1:95:9₋, 1:98:8₋, 1:101:15₋, 1:102:8₋, 1:102:10₋, 1:102:16₋, 1:103:24₋, 1:103:25₋, 1:120:16₋, 1:121:19₋, 1:129:7₋, 1:130:8 ₋, 1:135:23₋, 1:138:18₋, 1:140:16₋, 1:149:14₋, 1:149:15₋, 1:154:3₋, 1:154:9

standards [9]₋ - 1:9:18₋, 1:16:12₋, 1:66:17₋, 1:97:13 ₋, 1:103:5₋, 1:110:8₋, 1:112:2₋, 1:113:15₋, 1:153:25

standing [2]₋ - 1:49:19₋, 1:148:21

standpoint [3]₋ - 1:37:20 ₋, 1:74:3₋, 1:151:9

Stanley [1]₋ - 1:3:17

start [14]₋ - 1:3:23₋, 1:6:7₋, 1:19:10₋, 1:21:4₋, 1:37:21₋, 1:38:9₋, 1:47:20₋, 1:49:15₋, 1:85:16₋, 1:97:10₋, 1:103:9 ₋, 1:122:7₋, 1:123:21₋, 1:155:12

started [6]₋ - 1:15:18₋, 1:48:9₋, 1:60:16₋, 1:62:19₋, 1:85:16₋, 1:92:14

starting [4]₋ - 1:3:8₋, 1:27:21₋, 1:37:11₋, 1:113:17

starts [3]₋ - 1:39:9₋, 1:42:7 ₋, 1:122:8

state [5]₋ - 1:12:12₋, 1:26:4₋, 1:80:10₋, 1:95:10₋, 1:121:4

State [1]₋ - 1:13:24

statement [4]₋ - 1:122:4₋, 1:126:1₋, 1:136:17₋, 1:138:24

statements [22]₋ - 1:26:14₋, 1:93:11₋, 1:122:7 ₋, 1:122:9₋, 1:127:8₋, 1:131:5₋, 1:132:10₋, 1:132:17₋, 1:133:15₋, 1:133:20₋, 1:136:5₋,

1:136:15₋, 1:137:5₋, 1:137:9 ₋, 1:137:14₋, 1:138:5₋, 1:150:14₋, 1:152:8₋, 1:155:13₋, 1:157:8₋, 1:157:9

States [11]₋ - 1:3:4₋, 1:3:10₋, 1:13:25₋, 1:36:19₋, 1:49:4₋, 1:64:23₋, 1:69:10₋, 1:70:18₋, 1:72:15₋, 1:136:18 ₋, 1:137:2

status [1]₋ - 1:49:15

statute [2]₋ - 1:58:21₋, 1:59:1

stay [1]₋ - 1:31:3

steeped [1]₋ - 1:23:10

step [2]₋ - 1:17:2

step-by-step [1]₋ - 1:17:2

stepped [1]₋ - 1:63:3

steps [1]₋ - 1:93:10

stickier [1]₋ - 1:113:18

sticking [1]₋ - 1:68:19

still [13]₋ - 1:19:4₋, 1:28:15 ₋, 1:37:23₋, 1:44:17₋, 1:49:10₋, 1:69:1₋, 1:70:12₋, 1:114:14₋, 1:129:6₋, 1:141:6 ₋, 1:156:10₋, 1:161:4

stitching [1]₋ - 1:89:13

stone [1]₋ - 1:47:16

stored [4]₋ - 1:50:8₋, 1:50:9₋, 1:50:11₋, 1:83:23

straight [4]₋ - 1:40:11₋, 1:72:18₋, 1:113:24₋, 1:125:9

strategies [1]₋ - 1:14:8

strategy [8]₋ - 1:11:21₋, 1:14:6₋, 1:71:19₋, 1:73:3₋, 1:73:4₋, 1:157:3₋, 1:163:13 ₋, 1:163:15

stretch [1]₋ - 1:154:7

strict [1]₋ - 1:135:1

strictly [1]₋ - 1:4:10

strictures [1]₋ - 1:92:21

strike [4]₋ - 1:45:11₋, 1:45:15₋, 1:45:24₋, 1:82:10

strong [1]₋ - 1:96:13

strongly [1]₋ - 1:103:21

struck [1]₋ - 1:46:6

stuff [8]₋ - 1:68:4₋, 1:88:15 ₋, 1:112:20₋, 1:128:12₋, 1:132:10₋, 1:141:13₋, 1:142:15₋, 1:154:13

styled [1]₋ - 1:98:1₋, 1:104:20₋, 1:142:21₋, 1:142:22

subject [22]₋ - 1:9:12₋,

1:15:15₋, 1:15:17₋, 1:43:7₋, 1:68:6₋, 1:68:19₋, 1:76:15₋, 1:92:16₋, 1:115:19₋, 1:116:25₋, 1:117:21₋, 1:127:11₋, 1:136:10₋, 1:136:19₋, 1:138:11₋, 1:140:14₋, 1:140:18₋, 1:141:7₋, 1:141:16₋, 1:156:19₋, 1:156:21₋, 1:164:5

submission [8]₋ - 1:48:20 ₋, 1:54:22₋, 1:58:4₋, 1:58:20 ₋, 1:60:2₋, 1:149:23₋, 1:152:21₋, 1:153:17

submissions [2]₋ - 1:59:21₋, 1:70:18

submit [1]₋ - 1:64:19₋, 1:66:20

submitted [4]₋ - 1:34:15₋, 1:95:4₋, 1:150:4₋, 1:160:16

subpoena [1]₋ - 1:136:20

subpoenas [3]₋ - 1:14:6₋, 1:140:9₋, 1:140:12

subsequently [1]₋ - 1:156:3

subset [1]₋ - 1:17:13

substance [4]₋ - 1:66:14 ₋, 1:83:4₋, 1:150:13₋, 1:152:2

substances [1]₋ - 1:132:9

substantial [1]₋ - 1:159:25

substantiate [3]₋ - 1:16:2 ₋, 1:132:21₋, 1:150:5

substantive [25]₋ - 1:5:7₋, 1:6:25₋, 1:7:25₋, 1:94:21₋, 1:98:4₋, 1:98:23₋, 1:99:4₋, 1:106:1₋, 1:108:3₋, 1:109:2 ₋, 1:110:8₋, 1:113:15₋, 1:114:24₋, 1:116:12₋, 1:116:13₋, 1:122:7₋, 1:122:8 ₋, 1:122:10₋, 1:123:3₋, 1:124:14₋, 1:125:4₋, 1:126:1 ₋, 1:132:17₋, 1:138:8₋, 1:138:25

substantively [1]₋ - 1:133:16

substitute [2]₋ - 1:131:22 ₋, 1:154:25

substituted [1]₋ - 1:146:2

sudden [1]₋ - 1:122:10

sufficiency [6]₋ - 1:31:14 ₋, 1:32:5₋, 1:32:12₋, 1:32:20 ₋, 1:46:3₋, 1:46:6

sufficient [6]₋ - 1:32:6₋, 1:82:13₋, 1:95:2₋, 1:122:1₋,

1:134:18

sufficiently [1]₋ - 1:130:18

suggest [12]₋ - 1:10:16₋, 1:16:4₋, 1:35:19₋, 1:40:2₋, 1:44:9₋, 1:44:13₋, 1:45:6₋, 1:47:7₋, 1:50:18₋, 1:66:1₋, 1:122:8₋, 1:161:7

suggested [4]₋ - 1:14:21 ₋, 1:38:20₋, 1:111:14₋, 1:144:22

suggesting [6]₋ - 1:42:12 ₋, 1:65:25₋, 1:87:11₋, 1:90:22₋, 1:144:22₋, 1:153:16

suggestion [1]₋ - 1:149:4

suggests [4]₋ - 1:44:24₋, 1:46:20₋, 1:72:8₋, 1:161:21

suit [1]₋ - 1:132:6

summarize [1]₋ - 1:129:2

summer [8]₋ - 1:6:18₋, 1:34:15₋, 1:37:12₋, 1:37:15 ₋, 1:39:18₋, 1:61:11₋, 1:62:20₋, 1:84:21

super [1]₋ - 1:148:4

superseding [1]₋ - 1:145:7

supplant [2]₋ - 1:114:11₋, 1:138:18

supplement [6]₋ - 1:8:25 ₋, 1:24:24₋, 1:59:17₋, 1:71:6 ₋, 1:71:15₋, 1:76:8

supplemental [9]₋ - 1:23:18₋, 1:59:21₋, 1:78:10 ₋, 1:78:12₋, 1:78:18₋, 1:78:21₋, 1:78:24₋, 1:79:1₋, 1:79:14

supplied [1]₋ - 1:126:18

support [5]₋ - 1:14:24₋, 1:50:20₋, 1:50:24₋, 1:65:11 ₋, 1:117:7

supported [1]₋ - 1:114:7

supporting [1]₋ - 1:88:20

supports [2]₋ - 1:65:2₋, 1:150:6

suppose [3]₋ - 1:51:3₋, 1:53:21₋, 1:129:13

supposed [3]₋ - 1:55:5₋, 1:157:18₋, 1:157:20

supposedly [1]₋ - 1:152:12

suppress [7]₋ - 1:51:21₋, 1:102:14₋, 1:103:6₋, 1:108:11₋, 1:109:1₋, 1:144:19₋, 1:146:12

suppression [2] - 1:74:22_, 1:145:17

Supreme [8] - 1:41:18_, 1:41:19_, 1:74:23_, 1:103:22 _, 1:116:2_, 1:136:23_, 1:159:13_, 1:159:14

surely [1] - 1:161:16

surface [1] - 1:22:17

surprised [3] - 1:25:15_, 1:76:11_, 1:76:20

surreply [1] - 1:15:16

surveyed [1] - 1:121:4

suspect [1] - 1:56:4

swing [2] - 1:37:14_, 1:37:15

sworn [1] - 1:35:1

system [1] - 1:101:25

systems [1] - 1:71:2

**T**

table [4] - 1:3:14_, 1:65:11_, 1:122:10_, 1:133:14

tactics [1] - 1:148:10

tailored [4] - 1:65:18_, 1:87:6_, 1:123:7_, 1:130:18

talks [2] - 1:38:25_, 1:104:12

tangible [1] - 1:119:7

tasked [2] - 1:53:4_, 1:59:11

tasking [1] - 1:75:18

taskings [3] - 1:28:9_, 1:75:22_, 1:91:17

tasks [1] - 1:30:17

team [67] - 1:4:3_, 1:5:14 _, 1:9:17_, 1:10:8_, 1:10:11_, 1:10:14_, 1:10:25_, 1:11:4_, 1:11:11_, 1:11:15_, 1:12:11 _, 1:12:14_, 1:13:2_, 1:14:15 _, 1:16:22_, 1:16:23_, 1:17:6 _, 1:17:11_, 1:26:5_, 1:27:9_, 1:29:18_, 1:40:19_, 1:62:10 _, 1:62:15_, 1:63:1_, 1:63:13 _, 1:64:4_, 1:64:5_, 1:64:8_, 1:64:13_, 1:65:12_, 1:65:16 _, 1:65:18_, 1:65:25_, 1:66:6 _, 1:67:7_, 1:67:11_, 1:68:20 _, 1:68:22_, 1:69:19_, 1:70:5 _, 1:70:17_, 1:71:4_, 1:72:7_, 1:74:14_, 1:75:11_, 1:75:21 _, 1:75:24_, 1:76:1_, 1:76:5_, 1:76:6_, 1:76:15_, 1:77:12_, 1:77:19_, 1:85:18_, 1:85:22

1:86:11_, 1:86:23_, 1:87:15_, 1:88:21_, 1:90:10 _, 1:90:14_, 1:91:11_, 1:91:23_, 1:92:4_, 1:92:10_, 1:97:25

team's [1] - 1:71:21

tedious [1] - 1:111:17

temporally [1] - 1:66:7

temporarily [2] - 1:6:1_, 1:84:25

temporarily-filed [1] - 1:84:25

tempted [1] - 1:137:25

tenus [1] - 1:158:16

term [3] - 1:30:18_, 1:30:20_, 1:30:21

terminate [1] - 1:143:15

terminology [1] - 1:117:15

terms [16] - 1:8:14_, 1:12:3_, 1:26:21_, 1:59:20_, 1:77:11_, 1:106:5_, 1:106:12 _, 1:108:24_, 1:110:11_, 1:127:21_, 1:134:2_, 1:135:4 _, 1:149:17_, 1:152:13_, 1:153:1_, 1:164:22

test [8] - 1:92:8_, 1:96:25, 1:97:1_, 1:98:16_, 1:98:17_, 1:102:2_, 1:116:2

testified [1] - 1:136:21

testifies [2] - 1:137:7_, 1:137:12

testify [3] - 1:58:1_, 1:126:12_, 1:136:16

testimony [4] - 1:42:25_, 1:68:3_, 1:137:13_, 1:157:10

tests [1] - 1:98:13

THE [331] - 1:3:2_, 1:3:7_, 1:3:11_, 1:3:16_, 1:3:19_, 1:3:22_, 1:6:21_, 1:7:16_, 1:7:24_, 1:8:8_, 1:8:14_, 1:9:2_, 1:9:6_, 1:9:16_, 1:9:23_, 1:11:3_, 1:11:18_, 1:11:24_, 1:12:16_, 1:12:22 _, 1:12:25_, 1:13:9_, 1:13:20 _, 1:16:5_, 1:16:21_, 1:18:2_, 1:18:6_, 1:18:17_, 1:19:13_, 1:20:17_, 1:21:6_, 1:21:21_, 1:22:1_, 1:22:5_, 1:22:15_, 1:23:3_, 1:23:21_, 1:24:7_, 1:25:10_, 1:25:17_, 1:25:20 _, 1:26:10_, 1:27:6_, 1:27:21 _, 1:28:15_, 1:28:18_, 1:29:3 _, 1:29:17_, 1:29:20_, 1:29:23_, 1:30:7_, 1:30:13_, 1:30:20_, 1:30:24_, 1:31:16

_, 1:31:20_, 1:31:22_, 1:32:3 _, 1:32:11_, 1:32:17_, 1:32:25_, 1:33:6_, 1:33:9_, 1:34:2_, 1:34:6_, 1:34:19_, 1:34:22_, 1:35:4_, 1:35:6_, 1:35:9_, 1:35:22_, 1:36:1_, 1:36:20_, 1:36:23_, 1:39:14 _, 1:39:20_, 1:40:23_, 1:41:13_, 1:42:19_, 1:43:2_, 1:43:6_, 1:43:10_, 1:45:16_, 1:45:23_, 1:46:1_, 1:46:8_, 1:46:10_, 1:46:13_, 1:46:22 _, 1:47:9_, 1:47:18_, 1:48:6_, 1:48:11_, 1:48:15_, 1:49:5_, 1:49:25_, 1:50:20_, 1:51:2_, 1:51:16_, 1:52:6_, 1:52:8_, 1:52:14_, 1:53:12_, 1:53:25, 1:55:11_, 1:55:14_, 1:55:17 _, 1:55:21_, 1:56:5_, 1:57:7_, 1:58:14_, 1:58:25_, 1:59:14 _, 1:60:5_, 1:60:19_, 1:60:21 _, 1:61:13_, 1:62:4_, 1:62:7_, 1:63:6_, 1:63:10_, 1:64:7_, 1:65:13_, 1:66:7_, 1:66:20_, 1:67:4_, 1:67:17_, 1:68:4_, 1:68:16_, 1:68:19_, 1:70:4_, 1:70:16_, 1:70:21_, 1:71:7_, 1:72:22_, 1:73:8_, 1:73:12_, 1:75:1_, 1:77:6_, 1:77:11_, 1:77:23_, 1:78:14_, 1:78:20 _, 1:78:25_, 1:79:4_, 1:79:9_, 1:79:11_, 1:79:20_, 1:80:6_, 1:80:22_, 1:81:1_, 1:81:6_, 1:81:12_, 1:81:16_, 1:81:20 _, 1:82:1_, 1:82:24_, 1:83:2_, 1:83:4_, 1:83:7_, 1:83:16_, 1:84:8_, 1:84:22_, 1:85:10_, 1:85:13_, 1:87:14_, 1:88:16 _, 1:88:19_, 1:90:16_, 1:90:20_, 1:91:5_, 1:92:23_, 1:94:6_, 1:94:9_, 1:95:24_, 1:96:5_, 1:96:12_, 1:96:19_, 1:96:23_, 1:97:2_, 1:97:3_, 1:97:9_, 1:98:25_, 1:100:18 _, 1:100:22_, 1:102:4_, 1:104:2_, 1:104:6_, 1:104:25 _, 1:106:17_, 1:107:14_, 1:107:24_, 1:109:10_, 1:109:16_, 1:109:21_, 1:109:23_, 1:110:1_, 1:111:19_, 1:111:22_, 1:112:1_, 1:114:1_, 1:114:9 _, 1:115:5_, 1:115:12_, 1:115:16_, 1:116:4_, 1:116:9 _, 1:116:11_, 1:116:23_, 1:117:1_, 1:117:12_, 1:118:3 _, 1:118:9_, 1:118:12_, 1:118:17_, 1:118:25_, 1:119:3_, 1:119:16_, 1:119:21_, 1:120:2_, 1:120:9 _, 1:120:18_, 1:121:17_,

1:122:22_, 1:122:25_, 1:123:2_, 1:123:6_, 1:123:12 _, 1:123:16_, 1:124:2_, 1:124:6_, 1:124:20_, 1:125:24_, 1:126:10_, 1:126:15_, 1:126:20_, 1:126:23_, 1:126:25_, 1:127:4_, 1:127:10_, 1:127:14_, 1:127:20_, 1:128:7_, 1:128:13_, 1:129:5 _, 1:129:25_, 1:130:3_, 1:130:8_, 1:130:12_, 1:131:18_, 1:132:3_, 1:132:13_, 1:132:18_, 1:134:16_, 1:135:3_, 1:135:9 _, 1:135:12_, 1:135:14_, 1:135:19_, 1:135:21_, 1:136:1_, 1:136:7_, 1:137:19 _, 1:137:22_, 1:138:2_, 1:138:4_, 1:138:15_, 1:138:24_, 1:139:24_, 1:140:4_, 1:141:2_, 1:141:18 _, 1:141:21_, 1:142:9_, 1:142:14_, 1:142:17_, 1:142:19_, 1:143:2_, 1:143:8 _, 1:143:13_, 1:143:16, 1:143:23_, 1:144:2_, 1:144:5 _, 1:144:7_, 1:144:14_, 1:144:17_, 1:144:20_, 1:145:3_, 1:145:8, 1:145:12 _, 1:145:15_, 1:145:23_, 1:146:12_, 1:146:15_, 1:146:21_, 1:147:18_, 1:147:21_, 1:147:24_, 1:148:5_, 1:148:11_, 1:148:14_, 1:149:8_, 1:150:10_, 1:150:19_, 1:152:4_, 1:153:20_, 1:153:24_, 1:154:12_, 1:154:18_, 1:155:7_, 1:155:18_, 1:155:22_, 1:156:4_, 1:156:9_, 1:157:23 _, 1:158:9_, 1:158:15_, 1:158:20_, 1:158:25_, 1:160:8_, 1:162:5_, 1:162:9 _, 1:162:18_, 1:162:22_, 1:163:16_, 1:164:1_, 1:164:7 _, 1:164:10_, 1:164:20_, 1:165:8

theirs [1] - 1:78:18

themselves [2] - 1:80:2 _, 1:125:21

theoretical [1] - 1:17:11

theoretically [1] - 1:85:21

theories [1] - 1:10:17

theory [4] - 1:14:25_, 1:28:1_, 1:57:5_, 1:64:16

therefore [4] - 1:51:24_,

1:95:12..., 1:102:8..., 1:140:19

**they've** [17]... - 1:8:10...,
1:12:10..., 1:20:6..., 1:20:9...,
1:48:9..., 1:56:14..., 1:59:25...,
1:64:21..., 1:75:6..., 1:75:13...,
1:77:21..., 1:130:19...,
1:130:25..., 1:144:11...,
1:157:9..., 1:157:14...,
1:159:18

**third** [5]... - 1:4:9..., 1:69:24
..., 1:110:10..., 1:112:18...,
1:129:19

**Thomas** [1]... - 1:94:17

**thorough** [1]... - 1:130:21

**thoughts** [1]... - 1:77:14

**thousands** [1]... - 1:57:14

**threat** [1]... - 1:134:17

**threatened** [1]... -
1:134:13

**threats** [6]... - 1:111:11...,
1:132:20..., 1:133:6...,
1:134:25..., 1:135:1

**three** [15]... - 1:8:6...,
1:11:12..., 1:25:15..., 1:30:5...,
1:34:18..., 1:39:11..., 1:39:12
..., 1:63:19..., 1:71:13...,
1:73:25..., 1:74:4..., 1:140:11
..., 1:145:2

**threefold** [1]... - 1:53:14

**threshold** [4]... - 1:5:14...,
1:10:25..., 1:17:6..., 1:69:20

**throughout** [3]... - 1:29:1...,
1:33:17..., 1:151:13

**thrown** [1]... - 1:90:25

**tidy** [1]... - 1:74:17

**tied** [1]... - 1:46:8

**timeline** [4]... - 1:25:20...,
1:27:18..., 1:58:24..., 1:79:22

**timing** [2]... - 1:73:23...,
1:93:10

**tiny** [1]... - 1:17:13

**today** [16]... - 1:8:13...,
1:28:7..., 1:63:17..., 1:64:22...,
1:71:7..., 1:74:10..., 1:77:5...,
1:87:2..., 1:95:23..., 1:98:20...,
1:103:8..., 1:110:6..., 1:110:15
..., 1:148:2..., 1:153:2...,
1:165:9

**today's** [1]... - 1:4:16

**Todd** [1]... - 1:3:13

**together** [4]... - 1:27:5...,
1:46:8..., 1:89:13..., 1:160:18

**tolerance** [1]... - 1:35:3

**ton** [1]... - 1:22:18

**took** [5]... - 1:21:19...,
1:21:21..., 1:21:22..., 1:41:24
..., 1:66:20

**tools** [1]... - 1:15:9

**top** [3]... - 1:54:1..., 1:101:10
..., 1:121:25

**topic** [3]... - 1:49:9..., 1:65:9
..., 1:73:14

**topics** [2]... - 1:68:25...,
1:94:22

**total** [1]... - 1:158:5

**totally** [3]... - 1:10:22...,
1:46:9..., 1:66:16

**touch** [3]... - 1:49:13...,
1:96:1..., 1:155:11

**touches** [1]... - 1:74:24

**toward** [2]... - 1:19:11

**towards** [1]... - 1:106:4

**track** [1]... - 1:49:10

**tracking** [1]... - 1:151:13

**trade** [1]... - 1:99:16

**trail** [1]... - 1:37:7

**transcript** [2]... - 1:76:25...,
1:105:9

**transcripts** [4]... - 1:20:7...,
1:112:19..., 1:140:8...,
1:140:11

**transfer** [3]... - 1:157:22...,
1:159:12..., 1:159:14

**transferred** [1]... - 1:29:2

**transition** [1]... - 1:53:3

**transmission** [1]... - 1:4:2

**transmissions** [1]... -
1:52:19

**transmit** [1]... - 1:110:2

**transparency** [2]... -
1:97:17..., 1:102:23

**treat** [4]... - 1:120:12...,
1:120:21..., 1:140:24...,
1:140:25

**treatise** [2]... - 1:25:18,
1:25:23

**treatment** [1]... - 1:153:12

**tremendous** [1]... -
1:40:19

**trial** [75]... - 1:6:13..., 1:9:11
..., 1:9:14..., 1:21:14..., 1:21:16
..., 1:23:15..., 1:36:10...,
1:36:16..., 1:36:21..., 1:37:21
..., 1:37:24..., 1:38:5..., 1:38:7...,
1:38:9..., 1:38:16..., 1:38:19...,
1:39:9..., 1:39:11..., 1:39:14...,
1:40:5..., 1:40:9..., 1:42:7...,

1:42:12..., 1:43:25..., 1:44:3...,
1:44:7..., 1:44:12..., 1:44:19...,
1:46:20..., 1:47:20..., 1:48:1...,
1:48:24..., 1:48:25..., 1:52:17
..., 1:53:6..., 1:56:17..., 1:57:25
..., 1:58:6..., 1:58:10..., 1:58:20
..., 1:58:22..., 1:59:8..., 1:59:10
..., 1:59:12..., 1:59:24..., 1:60:3
..., 1:60:25..., 1:61:2..., 1:80:17
..., 1:81:7..., 1:84:6..., 1:84:12...,
1:84:17..., 1:84:21..., 1:86:8...,
1:93:16..., 1:93:23..., 1:94:4...,
1:97:17..., 1:106:21..., 1:107:1
..., 1:107:3..., 1:107:7...,
1:127:2..., 1:136:16..., 1:137:7
..., 1:137:12..., 1:137:23...,
1:137:25..., 1:147:13...,
1:148:24..., 1:162:1

**trials** [1]... - 1:38:22

**Tribune** [17]... - 1:99:6...,
1:99:8..., 1:99:10..., 1:104:7...,
1:104:12..., 1:113:24...,
1:115:9..., 1:115:10..., 1:118:5
..., 1:121:7..., 1:122:19...,
1:123:11..., 1:123:24...,
1:124:7..., 1:124:18...,
1:148:19..., 1:154:7

**tried** [8]... - 1:6:18..., 1:13:7
..., 1:99:15..., 1:125:18...,
1:127:16..., 1:133:23...,
1:135:20

**trigger** [1]... - 1:164:11

**triggered** [1]... - 1:23:22

**trouble** [2]... - 1:117:1...,
1:149:2

**true** [10]... - 1:16:7..., 1:19:6
..., 1:44:14..., 1:85:21...,
1:103:16..., 1:105:14...,
1:105:17..., 1:105:25...,
1:144:8..., 1:156:8

**truly** [2]... - 1:74:9..., 1:99:25

**Trump** [34]... - 1:3:5...,
1:3:14..., 1:21:14..., 1:36:15...,
1:37:6..., 1:37:16..., 1:38:15...,
1:38:18..., 1:39:5..., 1:39:25...,
1:40:1..., 1:40:5..., 1:40:16...,
1:41:23..., 1:42:12..., 1:43:13
..., 1:44:10..., 1:44:17..., 1:49:2
..., 1:64:23..., 1:68:1..., 1:69:8...,
1:70:18..., 1:72:15..., 1:103:17
..., 1:111:13..., 1:131:5...,
1:142:22..., 1:148:2...,
1:148:24..., 1:152:22...,
1:158:6..., 1:161:11

**Trump's** [4]... - 1:21:24...,
1:38:4..., 1:55:7..., 1:65:2

**truncated** [1]... - 1:53:1

**trust** [1]... - 1:162:22

**truth** [2]... - 1:69:13...,
1:70:13

**try** [17]... - 1:7:24..., 1:12:15...,
1:15:20..., 1:36:24..., 1:74:18
..., 1:84:20..., 1:85:10...,
1:85:15..., 1:97:7..., 1:124:24
..., 1:133:4..., 1:143:22...,
1:150:2..., 1:150:4..., 1:151:18
..., 1:154:9..., 1:165:1

**trying** [21]... - 1:10:14...,
1:15:23..., 1:17:4..., 1:30:1...,
1:30:24..., 1:39:7..., 1:40:13...,
1:43:2..., 1:88:13..., 1:104:17
..., 1:118:25..., 1:121:11...,
1:131:17..., 1:132:1...,
1:133:18..., 1:139:23...,
1:142:1..., 1:142:6..., 1:152:14
..., 1:159:4..., 1:164:25

**Tuesday** [5]... - 1:40:6...,
1:51:19..., 1:148:4..., 1:160:6

**turn** [7]... - 1:8:12..., 1:21:8...,
1:63:23..., 1:85:12..., 1:109:17
..., 1:110:8..., 1:113:15

**turned** [2]... - 1:82:19...,
1:105:9

**tweets** [1]... - 1:151:3

**two** [34]... - 1:7:9..., 1:7:25...,
1:20:3..., 1:21:14..., 1:21:16...,
1:21:18..., 1:29:7..., 1:30:1...,
1:30:5..., 1:31:25..., 1:32:18...,
1:32:23..., 1:33:25..., 1:39:12
..., 1:42:10..., 1:44:24...,
1:53:16..., 1:56:10..., 1:69:3...,
1:69:15..., 1:80:18..., 1:82:17
..., 1:82:24..., 1:92:25...,
1:104:10..., 1:110:7...,
1:110:23..., 1:113:1...,
1:113:13..., 1:115:7...,
1:126:14..., 1:134:21...,
1:145:2..., 1:161:5

**two-day** [2]... - 1:69:3...,
1:69:15

**type** [12]... - 1:40:12...,
1:88:1..., 1:90:17..., 1:91:14...,
1:104:22..., 1:105:11...,
1:105:14..., 1:108:2..., 1:109:5
..., 1:116:20..., 1:117:14...,
1:130:22

**types** [4]... - 1:25:4..., 1:26:1
..., 1:110:10..., 1:125:2

**typically** [3]... - 1:50:10...,
1:106:25..., 1:108:12

## U

**U.S** [2]... - 1:101:3...,
1:103:22

ultimately [3]_ - 1:33:18_, 1:95:6_, 1:103:18

unable [1]_ - 1:138:19

unbroken [1]_ - 1:103:22

Unclassified [1]_ - 1:74:5

unclassified [8]_ - 1:21:10_, 1:52:11_, 1:66:12 _, 1:66:24_, 1:74:7_, 1:77:9_, 1:78:8_, 1:164:2

uncommon [2]_ - 1:50:15 _, 1:144:20

under [38]_ - 1:8:17_, 1:11:16_, 1:15:13_, 1:32:22 _, 1:37:9_, 1:38:3_, 1:66:17_, 1:70:9_, 1:74:23_, 1:77:5_, 1:87:24_, 1:90:6_, 1:92:5_, 1:92:17_, 1:97:11_, 1:98:15 _, 1:98:17_, 1:101:2_, 1:101:13_, 1:102:2_, 1:102:13_, 1:102:19_, 1:103:25_, 1:105:6_, 1:105:10_, 1:114:6_, 1:114:13_, 1:119:5_, 1:125:15_, 1:140:17_, 1:149:12_, 1:157:10_, 1:157:20_, 1:160:3_, 1:160:16_, 1:161:2_, 1:163:25_, 1:165:5

underlie [1]_ - 1:120:8

underlies [1]_ - 1:97:16

understood [5]_ - 1:56:18 _, 1:57:15_, 1:57:17_, 1:112:24_, 1:140:6

underway [3]_ - 1:141:22 _, 1:143:12_, 1:160:12

undifferentiated [1]_ - 1:120:5

unequivocally [1]_ - 1:137:12

unfair [4]_ - 1:36:14_, 1:40:11_, 1:44:8_, 1:49:2

unfiled [1]_ - 1:105:19

uninterested [1]_ - 1:161:25

unique [2]_ - 1:49:13_, 1:59:5

unit [1]_ - 1:29:14

United [11]_ - 1:3:4_, 1:3:10_, 1:13:25_, 1:36:19_, 1:49:4_, 1:64:23_, 1:69:10_, 1:70:18_, 1:72:15_, 1:136:18 _, 1:137:2

units [1]_ - 1:24:15

universe [1]_ - 1:164:2

unlawful [2]_ - 1:63:2_,
1:66:19

unless [3]_ - 1:4:7_, 1:116:14_, 1:162:3

unnecessary [3]_ - 1:10:22_, 1:128:20_, 1:152:8

unopposed [2]_ - 1:112:16_, 1:155:19

unprecedented [3]_ - 1:15:17_, 1:103:20_, 1:133:18

unpublished [1]_ - 1:115:16

unquestionable [1]_ - 1:84:24

unquestionably [1]_ - 1:100:13

unrealistic [2]_ - 1:8:1_, 1:44:25

unreasonably [1]_ - 1:39:3

unredacted [4]_ - 1:144:10_, 1:144:11_, 1:146:9_, 1:147:2

unrelated [2]_ - 1:60:17_, 1:129:9

unseal [3]_ - 1:127:24_, 1:158:2_, 1:159:16

unsealed [3]_ - 1:53:17_, 1:142:7_, 1:146:20

unsealing [3]_ - 1:158:5_, 1:159:16_, 1:160:10

unsurprisingly [1]_ - 1:144:18

unsworn [1]_ - 1:64:19_, 1:77:20

untenable [2]_ - 1:53:12_, 1:63:2

unusual [3]_ - 1:163:18_, 1:163:21_, 1:163:22

unworkable [2]_ - 1:37:19 _, 1:45:6

up [34]_ - 1:4:1_, 1:15:7_, 1:24:2_, 1:26:3_, 1:26:18_, 1:35:4_, 1:36:4_, 1:36:8_, 1:40:6_, 1:47:4_, 1:48:18_, 1:50:5_, 1:59:15_, 1:62:25_, 1:64:6_, 1:74:15_, 1:79:6_, 1:79:21_, 1:85:11_, 1:95:25 _, 1:97:7_, 1:99:6_, 1:101:3_, 1:101:10_, 1:103:11_, 1:107:15_, 1:133:4_, 1:141:6 _, 1:142:12_, 1:147:8_, 1:151:17_, 1:153:3_, 1:153:9 _, 1:160:6

useful [1]_ - 1:140:10

usual [1]_ - 1:46:11

utility [1]_ - 1:115:14

utilizes [1]_ - 1:50:16

utterly [1]_ - 1:129:3

---

## V

vacation [3]_ - 1:6:14_, 1:61:7_, 1:61:12

vague [1]_ - 1:31:2

vaguely [1]_ - 1:65:6

vagueness [2]_ - 1:41:12 _, 1:41:20

values [1]_ - 1:97:16

variety [1]_ - 1:104:18

various [12]_ - 1:5:21_, 1:40:18_, 1:43:15_, 1:68:25 _, 1:94:12_, 1:94:14_, 1:94:21_, 1:95:13_, 1:110:9 _, 1:159:22_, 1:165:10

Vasquez [1]_ - 1:149:16

vast [2]_ - 1:54:10_, 1:88:10

version [6]_ - 1:33:14_, 1:33:15_, 1:50:23_, 1:57:9_, 1:102:17_, 1:146:20

versions [6]_ - 1:9:11_, 1:52:1_, 1:143:24_, 1:145:25 _, 1:147:2_, 1:147:4

versus [4]_ - 1:30:25_, 1:127:22_, 1:145:9_, 1:154:4

via [1]_ - 1:128:1

victim [1]_ - 1:91:19

victims [2]_ - 1:72:23_, 1:73:6

victims' [1]_ - 1:73:1

view [46]_ - 1:8:3_, 1:8:8_, 1:8:16_, 1:10:13_, 1:10:20_, 1:11:8_, 1:18:12_, 1:40:7_, 1:40:24_, 1:42:4_, 1:52:18_, 1:65:17_, 1:67:5_, 1:80:10_, 1:83:25_, 1:86:1_, 1:88:20_, 1:93:20_, 1:99:2_, 1:102:5_, 1:102:10_, 1:107:22_, 1:110:20_, 1:111:13_, 1:116:19_, 1:117:2_, 1:117:24_, 1:118:2_, 1:118:15_, 1:121:7_, 1:122:4 _, 1:124:13_, 1:125:10_, 1:125:19_, 1:125:22_, 1:127:25_, 1:129:5_, 1:129:14_, 1:135:24_, 1:136:4_, 1:138:9_, 1:139:6 _, 1:140:18_, 1:150:12_, 1:151:4_, 1:159:5

views [3]_ - 1:9:12_, 1:99:7 _, 1:154:14

vindicating [1]_ - 1:131:6

vindictive [3]_ - 1:41:5_, 1:69:5_, 1:100:6

violated [1]_ - 1:80:20

violation [1]_ - 1:74:23

violations [2]_ - 1:4:15_, 1:97:24

virtually [2]_ - 1:82:18_, 1:151:11

virtue [4]_ - 1:117:18_, 1:138:20_, 1:138:23

vis-á-vis [1]_ - 1:58:12

vital [1]_ - 1:97:16

voice [1]_ - 1:97:6

voiced [1]_ - 1:159:3

voir [8]_ - 1:34:24_, 1:35:7 _, 1:35:10_, 1:35:15_, 1:35:21_, 1:46:23_, 1:47:3_, 1:47:8

volume [1]_ - 1:44:25

voluminous [1]_ - 1:5:24

voluntarily [1]_ - 1:63:24

volunteered [1]_ - 1:143:21

vs [7]_ - 1:3:4_, 1:64:23_, 1:70:18_, 1:72:15_, 1:101:3 _, 1:101:6_, 1:137:2

---

## W

wait [4]_ - 1:23:7_, 1:35:4_, 1:78:14_, 1:155:18

walk [1]_ - 1:113:16

Waltine [1]_ - 1:3:5

wants [7]_ - 1:9:20_, 1:19:12_, 1:53:7_, 1:58:18_, 1:93:3_, 1:110:15_, 1:152:22

warrant [25]_ - 1:49:23_, 1:49:25_, 1:50:2_, 1:50:7_, 1:50:18_, 1:50:21_, 1:50:24 _, 1:64:23_, 1:65:10_, 1:82:16_, 1:82:21_, 1:121:1 _, 1:123:20_, 1:132:10_, 1:143:6_, 1:144:4_, 1:144:9 _, 1:144:10_, 1:144:25_, 1:146:1_, 1:146:19_, 1:147:1 _, 1:154:19_, 1:161:24_, 1:163:7

warranted [4]_ - 1:11:7_, 1:17:17_, 1:88:23_, 1:130:3

warrants [10]_ - 1:51:1_, 1:51:8_, 1:51:22_, 1:51:24_,

1:82:18_, 1:82:19_, 1:82:25
_, 1:101:12_, 1:122:4_,
1:138:21
Washington [10]_ -
1:27:16_, 1:28:4_, 1:28:5_,
1:28:15_, 1:28:17_, 1:63:20
_, 1:75:16_, 1:92:2_,
1:142:12_, 1:143:12
waste [1]_ - 1:13:21
watered [1]_ - 1:102:17
watered-down [1]_ -
1:102:17
ways [2]_ - 1:56:10_,
1:100:1
Wednesday [2]_ - 1:40:3
_, 1:47:13
weeds [1]_ - 1:42:8
week [5]_ - 1:39:22_,
1:44:12_, 1:53:14_, 1:53:18
_, 1:142:16
weekend [1]_ - 1:22:22
weeks [14]_ - 1:21:18_,
1:32:23_, 1:33:2_, 1:33:6_,
1:34:18_, 1:36:15_, 1:37:2_,
1:39:12_, 1:39:16_, 1:46:14
_, 1:79:16_, 1:80:5_,
1:159:21
weigh [1]_ - 1:140:5
welcome [1]_ - 1:9:25
welfare [1]_ - 1:137:1
well-being [1]_ - 1:121:24
West [1]_ - 1:28:23
whatnot [2]_ - 1:48:9_,
1:124:24
whatsoever [5]_ - 1:13:5
_, 1:96:1_, 1:124:13_,
1:125:12_, 1:150:17
whichever [1]_ - 1:130:8
White [6]_ - 1:13:23_,
1:64:15_, 1:73:22_, 1:73:25
_, 1:76:12_, 1:76:13
whole [6]_ - 1:13:23_,
1:15:19_, 1:15:20_, 1:27:22
_, 1:37:15_, 1:132:15
wholesale [1]_ - 1:129:17
wide [2]_ - 1:39:5_,
1:100:11
willful [1]_ - 1:4:14
willing [4]_ - 1:52:1_,
1:94:3_, 1:137:20_, 1:164:18
wish [3]_ - 1:30:13_,
1:95:10_, 1:165:6
wishes [1]_ - 1:49:7
withheld [1]_ - 1:12:23

withholding [1]_ -
1:101:22
WITNESS [1]_ - 1:97:3
witness [38]_ - 1:20:5_,
1:33:11_, 1:33:12_, 1:33:16
_, 1:63:21_, 1:63:23_,
1:63:25_, 1:68:3_, 1:86:10_,
1:112:19_, 1:113:3_,
1:121:23_, 1:122:3_, 1:126:2
_, 1:126:3_, 1:127:8_,
1:128:4_, 1:134:11_,
1:136:15_, 1:136:18_,
1:136:19_, 1:136:20_,
1:137:5_, 1:137:7_, 1:137:11
_, 1:137:17_, 1:137:20_,
1:138:24_, 1:150:9_,
1:150:13_, 1:151:13_,
1:151:17_, 1:151:25_,
1:157:5_, 1:157:6_, 1:157:12
_, 1:165:2
witness' [1]_ - 1:131:4
witness's [4]_ - 1:86:11_,
1:137:12_, 1:137:13_,
1:151:5
witnesses [27]_ - 1:9:12_,
1:14:7_, 1:20:25_, 1:21:1_,
1:21:4_, 1:70:11_, 1:70:13_,
1:71:23_, 1:111:4_, 1:111:11
_, 1:112:18_, 1:121:24_,
1:122:9_, 1:126:6_, 1:126:11
_, 1:127:2_, 1:127:10_,
1:132:9_, 1:132:16_,
1:133:10_, 1:134:15_,
1:135:14_, 1:138:5_,
1:152:18_, 1:159:24_,
1:161:6_, 1:161:8
witnesses' [1]_ - 1:111:7
woefully [1]_ - 1:82:6
wonder [1]_ - 1:75:24
wondering [1]_ - 1:41:15
WOODWARD [35]_ -
1:3:17_, 1:49:12_, 1:50:2_,
1:50:22_, 1:51:3_, 1:51:17_,
1:52:7_, 1:52:12_, 1:52:22_,
1:53:13_, 1:54:3_, 1:55:12_,
1:55:15_, 1:55:19_, 1:55:24
_, 1:56:10_, 1:57:9_, 1:58:16
_, 1:59:3_, 1:59:20_, 1:60:17
_, 1:60:20_, 1:60:24_,
1:61:16_, 1:155:9_, 1:155:20
_, 1:155:23_, 1:156:6_,
1:156:14_, 1:158:1_,
1:158:13_, 1:158:17_,
1:158:21_, 1:159:8_,
1:160:13
Woodward [13]_ - 1:3:18
_, 1:6:14_, 1:60:1_, 1:78:7_,
1:81:24_, 1:82:17_, 1:83:14

_, 1:84:2_, 1:146:24_,
1:147:22_, 1:154:17_,
1:155:8_, 1:159:5
Woodward's [3]_ - 1:6:13
_, 1:162:11_, 1:164:1
word [9]_ - 1:24:19_,
1:44:8_, 1:64:20_, 1:75:23_,
1:86:18_, 1:90:24_, 1:103:8
_, 1:153:1
words [8]_ - 1:59:16_,
1:107:24_, 1:117:14_,
1:127:25_, 1:136:11_,
1:137:11_, 1:140:17_,
1:141:20
workings [1]_ - 1:102:1
wrap [2]_ - 1:85:11_,
1:107:15
wring [1]_ - 1:15:20
writ [1]_ - 1:92:16
write [2]_ - 1:67:21
written [4]_ - 1:34:13_,
1:162:23
wrongdoing [1]_ - 1:97:21
wrote [2]_ - 1:25:18,
1:25:23

**Y**

year [3]_ - 1:4:21_, 1:39:10
_, 1:93:7
years [4]_ - 1:25:6_,
1:25:10_, 1:25:15_, 1:159:13
yesterday [3]_ - 1:5:1_,
1:49:23_, 1:51:16
York [15]_ - 1:21:18_,
1:21:23_, 1:22:11_, 1:38:16
_, 1:39:10_, 1:40:3_, 1:40:6_,
1:40:9_, 1:42:12_, 1:43:25_,
1:44:7_, 1:46:21_, 1:47:9_,
1:47:19_, 1:84:9
young [1]_ - 1:61:10
yourself [1]_ - 1:96:2

**Z**

zero [3]_ - 1:14:16_,
1:127:19_, 1:130:24