**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

       Defendants.

_____/

**GOVERNMENT'S OPPOSITION TO WALTINE NAUTA'S**
**MOTION TO DISMISS BASED ON**
**UNCONSTITUTIONAL VAGUENESS**

## TABLE OF CONTENTS

I.      Background ................................................................................................................. 2

II.     Argument ..................................................................................................................... 6

    A.      Nauta's As-Applied Constitutional Vagueness Challenge to Counts Charging a
        Violation of 18 U.S.C. § 1512 Is Meritless and Premature............................................ 6

    B.      The Rule of Lenity Does Not Apply ........................................................................ 13

III.    Conclusion ................................................................................................................. 14

Defendant Waltine Nauta moves to dismiss Counts 33, 34, 35, 40, and 41 of the Superseding Indictment on the basis that they "fail[] to state an offense," are unconstitutionally vague, or "pursuant to the rule of lenity." Mot. to Dismiss ("Mot.") at 1.[1]  None of these arguments has merit. Nauta's vagueness challenge relies principally on the D.C. Circuit's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), but that interlocutory appeal addressed a statutory provision (18 U.S.C. § 1512(c)(2)) not charged in this case, did not involve a vagueness challenge, was focused on the *actus reus* rather than the *mens rea*, and did not offer a definitive interpretation of the term "corruptly." In fact, the D.C. Circuit interpreted "corruptly" for purposes of Section 1512(c)(2) in a subsequent decision, without finding the term vague. *See United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023). Properly interpreted, the term "corruptly," as used in the statutes with which Nauta is charged, is neither "so vague that it fails to give ordinary people fair notice of the conduct it punishes" nor "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The Superseding Indictment's allegations—the only relevant facts at this juncture in the case—readily allege that Nauta corruptly conspired to obstruct and did obstruct justice, and any challenge based on facts not alleged in the Superseding Indictment, including the factual proffers Nauta advances in his motion, must await trial.

Nauta's invocation of the rule of lenity is equally meritless. Lenity comes into play "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (citation omitted). Nauta comes nowhere close to establishing an ambiguity in any of the statutes at issue in his case, let alone a grievous ambiguity.

---

[1] Nauta's Motion has not yet been docketed publicly or received an ECF number.

The Court should therefore reject Nauta's vagueness and lenity claims and deny his dismissal motion.

## I.     Background

Following an extensive investigation, the Government presented evidence to a grand jury, which returned a 38-count Indictment against Nauta and codefendant Donald J. Trump on June 8, 2023, ECF No. 3, followed by a 42-count Superseding Indictment against Nauta, Trump, and codefendant Carlos De Oliveira on July 27, 2023, ECF No. 85.  Nauta is alleged to have conspired to obstruct and obstructed a grand jury that was investigating the location of boxes containing classified records at the Mar-a-Lago Club ("Mar-a-Lago") and to have lied to FBI agents in an interview about his knowledge of the location and storage of those boxes at Mar-a-Lago.  The Superseding Indictment alleges at least three species of conduct by Nauta that violated the law: (1) making false statements to the FBI during an interview; (2) moving boxes so that Trump's attorney would not find them; and (3) attempting to destroy security camera footage showing the movement of boxes.

The Superseding Indictment alleges that Trump knew in the summer of 2021—more than six months after the end of term as President of the United States—that he possessed classified information.  *See* ECF No. 85 ¶¶ 33-37.  Despite multiple requests from the National Archives and Records Administration ("NARA"), Trump took nearly a year to provide just 15 boxes of his missing records, falsely suggesting that there were no others.  *Id.* ¶¶ 38-49.  Those 15 boxes of materials that NARA received from Trump on January 17, 2022, contained almost 200 documents with classification markings.  *Id.*  After NARA alerted the Department of Justice of its discovery of classified documents in February 2022, FBI and grand jury investigations opened on March 30 and April 26, 2022, respectively.  *Id.* ¶¶ 50-52.  As part of its investigation, the FBI interviewed

Nauta on May 26, 2022, an interview that was voluntary and recorded. *Id.* ¶ 110. Even though Nauta had been extensively involved with the movement and storage of Trump's boxes of documents in 2021 and early 2022, *see, e.g.*, *id.* ¶¶ 31-32, 42-47, Nauta made false and misleading statements about the boxes, feigning ignorance about how boxes had gotten to Trump's residence and where they had been stored at Mar-a-Lago, *id.* ¶¶ 48, 111.

Nauta is also alleged to have played a critical role in the surreptitious movement of boxes with classified documents that was designed to hide the records from the FBI and the grand jury. *See* ECF No. 85 ¶¶ 51-63. On May 11, 2022, an attorney for Trump ("Trump Attorney 1") accepted service of a grand jury subpoena requiring production of classified documents in Trump's possession, *id.* ¶¶ 53, 55. After meeting with Trump on May 23 at Mar-a-Lago, Trump Attorney 1 returned there on June 2 to review the contents of boxes in a storage room for materials responsive to the grand jury subpoena. *Id.* ¶¶ 55-57, 64-65. In the interim, however, and unbeknownst to Trump Attorney 1, Nauta removed a total of approximately 64 boxes from the storage room: three boxes on May 24, 2022; 50 boxes on May 30, 2022; and 11 boxes on June 1, 2022. *Id.* ¶ 59. And hours before Trump Attorney 1 returned to Mar-a-Lago on June 2 to search for documents responsive to the subpoena, Nauta and De Oliveira moved approximately only 30 boxes into the storage room. *Id.* ¶ 62. When Nauta escorted Trump Attorney 1 to and from that storage room for the attorney's search on June 2, Nauta did not inform him that boxes had been taken out of the storage room before he searched there. *Id.* ¶¶ 63-64, 66. On June 3, 2022, Trump Attorney 1 provided to the FBI 38 documents with classification markings as well as a certification that all boxes moved from the White House to Mar-a-Lago had been subjected to a "diligent search" and that "[a]ny and all responsive documents accompan[ied]" the certification. *Id.* ¶¶ 65-71. In fact, a court-authorized search of Mar-a-Lago on August 8, 2022, recovered over 100 additional

documents with classification markings, including approximately 75 from the storage room from which Nauta had removed boxes before Trump Attorney 1's review. *Id.* ¶¶ 89-90.

The Superseding Indictment also alleges that Nauta played a role in attempting to destroy security camera footage showing the movement of the boxes. *Id.* ¶¶ 74-87, 91. When FBI agents came to Mar-a-Lago on June 3, 2022, to collect the documents with classification markings that Trump Attorney 1 had found, they noticed surveillance cameras near the storage room where the attorney had conducted his review. *Id.* at ¶ 74. On June 22, 2022, the Department of Justice informed an attorney for Trump (not Trump Attorney 1) that it would be seeking security camera footage from Mar-a-Lago and sent the attorney a draft grand jury subpoena. *Id.* ¶ 75. The next day, Trump called De Oliveira and spoke with him for 24 minutes. *Id.* ¶ 76. On June 24, the Department of Justice served the grand jury subpoena for surveillance video footage on Trump's business organization, and the same day, one of Nauta's co-workers texted Nauta to tell him that Trump wanted to see him. *Id.* ¶¶ 77-78. Nauta then changed travel plans to go to Palm Beach, Florida, rather than (as he had previously planned) to accompany Trump to Illinois, and he provided inconsistent explanations to colleagues about why his plans had changed. *Id.* ¶¶ 78-79. Nauta contacted both De Oliveira and the Director of Information Technology ("IT") at Mar-a-Lago ("Trump Employee 4"), *id.* ¶¶ 79-80, and De Oliveira, in turn, told another Trump employee both that Nauta wanted to keep his trip secret and that Nauta wanted De Oliveira to find out from Trump Employee 4 how long the security camera footage was stored, *id.* ¶ 81. Nauta arrived in Florida on June 25, and that evening he and De Oliveira went to a security booth where security camera footage is displayed and to an area outside the storage room where the cameras were located. *Id.* ¶ 82.

4

The following Monday morning, June 27, De Oliveira went to the IT office and asked Trump Employee 4 to step away from the office with him so they could talk. *Id.* ¶ 83. The two of them walked to a small room known as an "audio closet" and De Oliveira asked Trump Employee 4 to keep their conversation between the two of them. *Id.* ¶ 84. After asking how long the server retained security camera footage, De Oliveira told Trump Employee 4 that "the boss" wanted the server deleted. *Id.* ¶ 84(a-c). When Trump Employee 4 responded that he would not have the authority to do that, De Oliveira insisted that "the boss" wanted the server deleted, and asked "what are we going to do?" *Id.* ¶ 84(c). Shortly after that conversation ended, De Oliveira texted Nauta, and the two met a few hours later in the bushes of a property adjacent to a Mar-a-Lago; they spoke, De Oliveira returned to the IT office, and then De Oliveira returned to the neighboring property to speak with Nauta again. *Id.* ¶¶ 85-86. Later the same afternoon, De Oliveira spoke by phone with Trump. *Id.* ¶ 87.

Based on that alleged conduct, the Superseding Indictment charges that Nauta conspired with Trump and De Oliveira to obstruct justice by hiding and concealing classified documents taken from the White House, in violation of 18 U.S.C. § 1512(k) (Count 33); knowingly engaged in misleading conduct or corrupt persuasion toward Trump Attorney 1, with the intent to cause that attorney to withhold a document or record from the grand jury, in violation of 18 U.S.C. §1512(b)(2)(A) (Count 34); corruptly concealed boxes of documents from Trump Attorney 1 in order to render them unavailable to the grand jury, in violation of 18 U.S.C. §§ 1512(c)(1) (Count 35); knowingly concealed documents from an FBI investigation and caused a false certification to be submitted to the FBI, in violation of 18 U.S.C. § 1519 (Count 36); engaged in a scheme to conceal Trump's continued possession of documents with classification marking, in violation of 18 U.S.C. § 1001(a)(1) (Count 37); made false statements to the FBI, in violation of 18 U.S.C.

§ 1001(a)(2) (Count 39); engaged in knowing corrupt persuasion of Trump Employee 4 to delete security camera footage at Mar-a-Lago, in violation of 18 U.S.C. § 1512(b)(2)(B) (Count 40); and corruptly attempted to alter or destroy security camera footage, in violation of 18 U.S.C. §§ 1512(c)(1) (Count 41).

## II.     Argument

### A.     Nauta's As-Applied Constitutional Vagueness Challenge to Counts Charging a Violation of 18 U.S.C. § 1512 Is Meritless and Premature

Nauta presses (Mot. at 4-7) a vagueness challenge to the obstruction statutes with which he is charged, but entirely fails to explain how those specific provisions—paired with the detailed allegations in the Superseding Indictment—violate the Due Process Clause though either a lack of fair notice or by inviting arbitrary enforcement.  He instead focuses on *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), claiming that *Fischer* supports his contention that the "corruptly" *mens rea* requirement is unconstitutionally vague.  That is incorrect.  *Fischer* involved a statutory provision not charged in this case, did not address a vagueness challenge, focused on the *actus reas* rather than the *mens rea*, and did not definitively interpret "corruptly."  And the D.C. Circuit's subsequent decision in *United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023), construing the term "corruptly," undermines Nauta's claim.  In any event, any vagueness challenge is premature given the clarity of the relevant statutory provisions and the extensive allegations in the Superseding Indictment detailing the criminal conduct that Nauta is alleged to have undertaken.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v.*

*United States*, 576 U.S. 591, 595 (2015).  To ensure fair notice, "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).  The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore not unconstitutionally vague because it "do[es] not mean the same thing to all people, all the time, everywhere." *Roth v. United States*, 354 U.S. 476, 491 (1957).  A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).  "As a general matter," however, a law is not unconstitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'"  *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Although Nauta largely appears to agree that a defendant advancing a due process vagueness challenge must establish that a statute "fails to give ordinary people fair notice of the conduct it punishes or [is] so standardless that it invites arbitrary enforcement," Mot. at 4 (citation omitted), he makes no meaningful effort to satisfy that standard. Nor would any such effort succeed. The five counts that Nauta challenges (*see* Mot. at 4-5) consist of conspiracy or substantive violations of three statutory provisions within 18 U.S.C. § 1512. *See* ECF No. 85 ¶¶ 94-101, 113-16. Two of those statutory provisions are subsections of Section 1512(b)(2). The first makes it crime to "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to" cause a person to "withhold testimony, a record, document, or other object, from an official proceeding." § 1512(b)(2)(A). The second makes it crime to "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to" cause a person to "alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding." § 1512(b)(2)(B). The third statutory provision with which Nauta is charged makes it a crime to "corruptly alter[], destroy[], mutilate[], or conceal[] a record, document, or other object, or attempt[] to do so, with the intent to impair that object's integrity or availability for use in an official proceeding." § 1512(c)(1). As the Superseding Indictment makes clear, Counts 34 and 35 charge Nauta with violations of those obstruction provisions in connection with his effort to conceal records and documents from Trump Attorney 1 and the grand jury, *see* ECF No. 85 ¶¶ 98-101; Counts 40 and 41 charge Nauta with violations of those provisions in connection with his efforts to induce Trump Employee 4 to delete security camera footage, *see id.* ¶¶ 113-16; and Count 33 charges a conspiracy that encompasses both, *see id.* ¶¶ 94-97. Nauta entirely fails to

explain how the detailed statutory provisions paired with the Superseding Indictment's extensive allegations are so vague that he lacks fair notice of the conduct with which he is charged or so standardless as to invite arbitrary enforcement.

Instead, Nauta suggests (Mot. at 5-7) that the D.C. Circuit's decision in *Fischer*, *supra*, supports his claim that the "corruptly" *mens rea* is not susceptible to a nonvague construction.  In *Fischer*, the district court dismissed a count charging a violation of 18 U.S.C. § 1512(c)(2), which makes it a crime for a defendant to "corruptly . . . obstruct[], influence[], or impede[] any official proceeding," in three separate cases involving defendants who were alleged to have participated in the riot attacking the United States Capitol on January 6, 2021.  64 F.4th at 332-33.  Interpreting Section 1512(c)(2) as "limited" by Section 1512(c)(1), the district court concluded that a violation of Section 1512(c)(2) required the government, in order to satisfy the statute's *actus reus*, to prove that a defendant had "taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id.* at 334.  The D.C. Circuit reversed, holding that Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335.  Nauta does not challenge the *actus reus* component of the pertinent obstruction provisions, nor could he, given that the charged conduct involves the concealment and destruction of evidence.

The panel members in *Fischer* also each wrote individual opinions that in part addressed the term "corruptly."  In a portion of the lead opinion that Judge Walker declined to join, Judge Pan emphasized that Section 1512(c)(2)'s *mens rea* element—"corruptly"—imposes an "important limitation[]" on the statute's scope. *Id.* at 339 (opinion of Pan, J.).  She found it unnecessary, however, to settle on any "particular definition" in *Fischer* because all of the potential interpretations were satisfied where the defendant obstructed an official proceeding using

"'independently corrupt means'" such as "assaulting [a] law enforcement officer[]," *id.* at 339-40 (citation omitted), as was alleged in that case. Judge Walker wrote separately to note that his agreement with the court's interpretation of Section 1512(c)(2)'s *actus reus* was premised on a specific construction of the "corruptly" element—rejected by both of the other panel members— as requiring proof that the defendant acted "with an intent to procure an unlawful benefit either for himself or for some other person." *Id.* at 352 (Walker, J., concurring) (citation omitted); *see id.* at 340-41 (opinion of Pan, J.); *id.* at 380-81 (Katsas, J., dissenting). Judge Katsas dissented, taking the view that Section 1512(c)(2) applies "only to acts that affect the integrity or availability of evidence" at an official proceeding, while criticizing Judge Walker's definition of "corruptly" because it "require[d] transplanting" into Section 1512(c)(2) an interpretation "that appears to have been used so far only in tax law." *Id.* at 363, 380-82 (Katsas, J., dissenting); *see also id.* at 381 (explaining that Judge Walker's contrary view was based on "three dissents," two of which "reject [his] proposed standard").[2]

Nauta's reliance on *Fischer* to support his constitutional vagueness claim in this case is flawed in several respects. First, *Fischer* itself is doubly inapposite: it did not address a statutory provision that is charged in this case, and none of the judges found "corruptly" to be unconstitutionally vague. The statute at issue in *Fischer* was Section 1512(c)(2), a catchall obstruction provision that is separate and distinct from Section 1512(c)(1), *see* 64 F.4th at 345, an evidence-tampering provision that Nauta is charged with violating. Moreover, the issue in *Fischer* concerned the scope of Section 1512(c)(2)'s *actus reus*, namely, whether the statute's verbs—

---

[2] In December 2023, the Supreme Court granted a writ of certiorari on one of the three *Fischer* defendants' petitions, and will consider whether Section 1512(c)(2), "which prohibits corruptly obstructing an official proceeding, is limited to acts that impair the integrity of availability of evidence for use in that proceeding." *Fischer v. United States*, No. 23-5572. The interpretation of the "corruptly" *mens rea* is not fairly encompassed in the question presented.

"obstructs, influences, or impedes"—contained an atextual limitation to conduct akin to document tampering (as the district court had concluded)[3] or instead (as the court of appeals ultimately held) "applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336. Whichever construction is correct, the dispute over the scope of Section 1512(c)(2)'s *actus reus* has no impact on this case and sheds no light on the "corruptly" *mens rea*.

Nauta makes the additional error (Mot. at 6-7) of proceeding as though the separate opinions in *Fischer* represent the D.C. Circuit's last word on the interpretation of "corruptly" in Section 1512(c)(2). In fact, in the D.C. Circuit's subsequent opinion in *United States v. Robertson*, *supra*, the court upheld a Section 1512(c)(2) conviction for a different January 6 defendant where the jury was instructed that, to conclude the defendant acted corruptly, it had to find the defendant "use[d] unlawful means, or act[ed] with an unlawful purpose, or both," and also had "consciousness of wrongdoing," meaning "an understanding or awareness that what [he] [wa]s doing [wa]s wrong." 86 F.4th at 362 (quoting jury instructions); *see also United States v. Brock*, No. 23-3045, 2024 WL 875795, at *5-7 (D.C. Cir. Mar. 1, 2024) (finding evidence that defendant acted "corruptly" for purposes of Section 1512(c)(2) under the reasoning of *Robertson*). Drawing from *United States v. North*, 910 F.2d 843 (D.C. Cir.) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam), and *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), the D.C. Circuit in *Robertson* reasoned that the "type of proceeding and the nature of a defendant's conduct matter" and confirmed that "the requirement that a defendant act 'corruptly' is met by establishing that the defendant acted with a corrupt

---

[3] Nauta twice relies (*see* Mot. at 8) on *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022). The court of appeals in *Fischer* reversed the district court's decision in *Miller*, which was consolidated with the (same) district court's decision in *Fischer*. 64 F.4th at 350.

purpose or via independently corrupt means." 86 F.4th at 366-67. Where a defendant's conduct is not "inherently malign," *Arthur Andersen*, 544 U.S. at 703-04, and does not involve independently criminal means, the government can establish a corrupt purpose where the defendant attempts to obtain an improper benefit or advantage, acts dishonestly, or commits "obstructive acts with 'consciousness of wrongdoing.'" *Robertson*, 86 F.4th at 366 (quoting *Arthur Andersen*, 544 U.S. at 706-07); *see id.* at 374 (noting that "dishonesty" and "seeking a benefit for oneself or another" "may be sufficient to prove corrupt intent" but are not "necessary"). In short, *Fischer* lends no support to Nauta's claim that "corruptly" as used in Section 1512(c)(2)—an offense with which Nauta is not charged—is unconstitutionally vague, particularly given the D.C. Circuit's later decision in *Robertson*.

Nauta also makes no effort to tie his arguments about "corruptly" in Section 1512(c)(2) to controlling precedent. The Eleventh Circuit has construed "corruptly" in 18 U.S.C. § 1512(c)(2) without finding the term vague. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the" official proceeding) (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)). Nauta fails to cite or address *Friske*.

Nauta also offers (Mot. at 1-3) a recitation of factual claims that he suggests support his vagueness argument, but none of those assertions are properly before the Court on Nauta's vagueness claim. "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Awan*, 966 F.2d 1415, 1424 (11th Cir. 1992). Nauta's vagueness claim must be resolved based on the Superseding Indictment's allegations, not extrinsic factual proffers

of what might develop at trial.  *See United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir.

1987).  "If contested facts surrounding the commission of the offense would be of *any* assistance

in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."

*United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.); *accord United States v.*

*Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam).  In short, "[b]ecause [Nauta's] vagueness

challenge must proceed on an as-applied basis, his motion to dismiss is procedurally premature

and should be denied without prejudice."  *United States v. Van Jackson*, No. 18-cr-15, 2018 WL

6421882, at *2 (N.D. Ga. Sept. 5, 2018).

    **B.**    **The Rule of Lenity Does Not Apply**

    Nauta advances as an alternative argument (Mot. at 7-8) that the rule of lenity compels

dismissal of the obstruction counts with which he is charged.  That is incorrect.  The rule of lenity

"only applies if, after considering text, structure, history, and purpose, there remains a grievous

ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress

intended."  *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks

omitted); *see Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *accord United States v.*

*Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023).  In short, some ambiguity is insufficient to trigger

the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel

guesswork.  *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks

omitted).  "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in

other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be

solved.'"  *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring)

(quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).  Nauta points to no authority suggesting

that the any of the statutes with which he is charged or the term "corruptly" is ambiguous, let alone

grievously so.  And to the extent he purports to draw support (*see* Mot. at 7) from the fact that

different judges have reached different conclusions about the term "corruptly" in another statute, the Supreme Court has rejected the suggestion that the mere existence of disagreement among judges demonstrates ambiguity.  *See Reno v. Koray*, 515 U.S. 50, 64-65 (1995); *see also*, *e.g.*, *United States v. Hayes*, 555 U.S. 415, 429-30 (2009).

## III.    Conclusion

The Court should deny Nauta's motion to dismiss in its entirety.


Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:   /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

James I. Pearce
Assistant Special Counsel
Special Bar ID #A5503077

March 7, 2024

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt