```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                       CASE NO. 23-cr-80101-AMC
 3

 4   UNITED STATES OF AMERICA,              Fort Pierce, Florida

 5                Plaintiff,                March 14, 2024

 6        vs.
                                           10:04 a.m. - 2:42 p.m.
 7
     DONALD J. TRUMP, WALTINE NAUTA, CARLOS
 8   DE OLIVEIRA,

 9                Defendants.              Pages 1 to 173
     _____.
10
                    TRANSCRIPT OF MOTIONS TO DISMISS
11              BEFORE THE HONORABLE AILEEN M. CANNON
                     UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     FOR THE GOVERNMENT:
14
                            U. S. DEPARTMENT OF JUSTICE
15                          JAY I. BRATT, ESQ.
                            DAVID HARBACH, ESQ.
16                          National Security Division
                            950 Pennsylvania Avenue, NW
17                          Washington, DC 20530

18   FOR THE DEFENDANTS:
     Donald J. Trump
19                          BLANCHE LAW
                            EMIL BOVE, ESQ.
20                          TODD BLANCHE, ESQ.
                            99 Wall Street
21                          Suite 4460
                            New York, New York 10005
22
                            CHRIS KISE & ASSOCIATES, P.A.
23                          CHRISTOPHER M. KISE, ESQ.
                            201 East Park Avenue
24                          5th Floor
                            Tallahassee, Florida 32301
25
```

```
 1   FOR THE DEFENDANTS:
     Waltine Nauta
 2                               DADAN LAW FIRM
                                 SASHA DADAN, ESQ.
 3                               201 S. 2nd Street
                                 Suite 202
 4                               Fort Pierce, Florida 34950

 5                               BRAND WOODWARD LAW, LP
                                 STANLEY WOODWARD, ESQ.
 6                               400 Fifth Street
                                 Northwest Suite 300
 7                               Washington, DC 20001
     Carlos De Oliveira
 8                               E&W LAW
                                 JOHN S. IRVING, ESQ.
 9                               1455 Pennsylvania Avenue, NW
                                 Suite 1400
10                               Washington, DC 20004

11                               L.D. MURRELL, PA
                                 LARRY DONALD MURRELL JR., ESQ.
12                               400 Executive Center Drive
                                 Suite 201
13                               West Palm Beach, Florida 33401

14
     STENOGRAPHICALLY REPORTED BY:
15
                                 LAURA E. MELTON, RMR, CRR, FPR
16                               Official Court Reporter to the
                                 Honorable Aileen M. Cannon
17                               United States District Court
                                 Fort Pierce, Florida
18

19

20

21

22

23

24

25
```

1          (Call to the Order of the Court.)

2          THE COURT:  All right.  Good morning.  You may be

3     seated unless you are addressing the Court.

4          Please call the case.

5          COURTROOM DEPUTY:  United States of America vs. Donald

6     J. Trump, Waltine Nauta, and Carlos De Oliveira.

7          Will the parties please make your appearance, starting

8     with Special Counsel.

9          MR. BRATT:  Good morning, Your Honor.  Jay Bratt and

10    David Harbach on behalf of the United States.

11         THE COURT:  Good morning.

12         MR. BLANCHE:  Good morning, Your Honor.  Todd Blanche,

13    and I'm joined at counsel table with my -- the client,

14    President Trump, Emil Bove, and Chris Kise.  Good morning.

15         THE COURT:  Good morning.

16         MR. WOODWARD:  Good morning, Your Honor.  Stanley

17    Woodward and Sasha Dadan on behalf of Mr. Nauta, who is also

18    present.

19         THE COURT:  Good morning.

20         MR. IRVING:  Good morning, Your Honor.  John Irving and

21    Donnie Murrell on behalf of Mr. De Oliveira.  Thank you.

22         THE COURT:  Good morning.

23         Good morning to all of you.  And welcome back to

24    Fort Pierce.  The same ground rules apply as I have indicated

25    in the past:  No use or possession of electronic devices.

1    Please stay seated in the courtroom until the court recesses,

2    until there -- unless there is an emergency.

3            For counsel presenting argument, please do so from the

4    lectern.  And if at any point anybody in the gallery or at

5    counsel table has trouble hearing, please also let me know.

6            As usual, we have set up our overflow room, which is

7    transmitting contemporaneously for the benefit of any

8    additional persons who wish to observe.

9            We have two motions on deck for today's hearing.  The

10   first is docket entry 325.  That is a motion to dismiss the

11   indictment based on unconstitutional vagueness, and it is filed

12   by Former President Trump.  And the second motion is docket

13   entry 327, which is a motion to dismiss based on the

14   Presidential Records Act, filed by Former President Trump.  And

15   that motion, I understand, is joined by Mr. De Oliveira.

16           Mr. Irving; is that correct?

17           MR. IRVING:  Your Honor, insofar as...

18           THE COURT:  I'm referring to docket entry 331, which I

19   believe is a notice of adoption.  I just want to be clear if

20   you -- if -- if you have also signed on to 327.

21           MR. IRVING:  Your Honor, I will have to look.  I

22   apologize, but I don't believe that we signed on to either one

23   of these.

24           THE COURT:  All right.  Well, you should check that and

25   let me know soon.

1          All right.  Mr. Woodward, on behalf of Mr. Nauta, have

2     you joined in either of the two motions?

3          MR. WOODWARD:  Yes, Your Honor.  We would -- we will

4     file a notice joining 327, but only insofar as should the Court

5     grant the relief that is sought by President Trump and conclude

6     that the official proceeding was, in fact, not an official

7     proceeding, then we would join in the relief sought in the

8     latter half of 327.

9          THE COURT:  All right.  Any notice of adoption must be

10    filed no later than tomorrow close of business.

11         MR. WOODWARD:  We -- yes, Your Honor.  We are waiting

12    to see the replies.  Of course we don't want to join in a

13    motion that does not apply to our client.  Now that this motion

14    has been fully briefed, we will put a notice in today.

15         THE COURT:  Okay.  All right.

16         So, Mr. Irving, in light of docket entry 331, which I

17    do believe generally purports to adopt the pretrial motions,

18    including 327, did you intend to present argument today on 327?

19         MR. IRVING:  No, Your Honor.

20         THE COURT:  No.  Okay.  All right then.

21         Well, I have reviewed both of the motions, the

22    respective oppositions filed by the office of the Special

23    Counsel, and the replies.  Those replies were ordered on an

24    accelerated basis to accommodate this hearing.  There was also

25    an amicus brief filed at docket entry 360-1, to which the

1    Special Counsel filed an opposition at docket entry 400, and I

2    reviewed those as well.

3           Some of the concepts in the motions overlap, so I will

4    understand if there is some crossover in the presentation, but

5    for purposes of organization and clarity, I would like to take

6    up the motions individually, starting with the vagueness

7    challenge at docket entry 327.

8           Because these are defense motions, I will hear from

9    defense counsel first as to both.

10          So with that, let me turn first to defense counsel with

11   respect to 327, which is -- excuse me -- the vagueness

12   challenge, which is 325 is the motion I would like to hear

13   first.

14          Who will be presenting argument on that motion?

15          MR. BOVE:  I will, Judge.  Thank you.

16          THE COURT:  Okay.

17          MR. BOVE:  Thank you, Judge.

18          So this is a motion to dismiss each of the 793 counts

19   on the basis of unconstitutional vagueness.  And it is a motion

20   that challenges three aspects of Section 793; the Authorization

21   Clause, the NDI Clause, and the Entitlement Clause.

22          This case stands alone with respect to each of those

23   three issues as applied to President Trump.  And when they're

24   considered collectively, these charges must be struck and

25   dismissed.  There are four aspects of this case, and the way

1    the statute is being applied or attempted to being applied to

2    President Trump, that require that result.

3            First is President Trump's exercise of the original

4    classification authority with respect to the documents at

5    issue.  Second, and this speaks to the overlap that Your Honor

6    mentioned, is that President Trump designated these records as

7    personal, pursuant to the Presidential Records Act.  Third is

8    President Trump's access to executive privilege.  And fourth is

9    the presidential immunity document.

10           THE COURT:  Let me ask you this.  Does your motion

11   depend on resolution of any facts that are not alleged in the

12   superseding indictment?

13           MR. BOVE:  It -- I don't believe so, Your Honor,

14   because -- the four distinct --

15           THE COURT:  Well, because one of the things you

16   mentioned right now was -- was the designation as personal.

17   That's, of course, an assertion that you have made in the

18   papers.  That's not an alleged fact in the superseding

19   indictment.

20           And so my question is:  Is this motion premature?

21   Because it would require the Court, essentially, to pass on a

22   motion in light of contested facts.  So should we be having

23   this discussion really in the context, perhaps, of a motion for

24   judgment of acquittal or in some other posture, perhaps also

25   maybe in crafting jury instructions?  But why are we having

1    this as-applied discussion now, given the potential for

2    disputed facts?

3         MR. BOVE:  For two reasons, Judge.  First of all, the

4    indictment alleges that President Trump caused these records to

5    be removed from the White House.  That's paragraph 4 of the

6    superseding indictment.  That allegation relates to a time

7    period when President Trump was the President of the

8    United States.

9         The inference from that allegation, from the language

10   that the Special Counsel chose, is that that removal of the

11   records constituted the designation as personal.  That is an

12   inference that was granted in Judicial Watch, and it's

13   appropriate here.  In addition --

14        THE COURT:  Okay.  So that's an inference that you wish

15   to draw based on paragraph 4 of the superseding indictment; is

16   that correct?

17        MR. BOVE:  Yes.  As well as concessions as to the

18   timing of the removal made in the Special Counsel's papers that

19   we've cited in our briefs.

20        THE COURT:  Okay.  But either way, the superseding

21   indictment at this point certainly doesn't take the position

22   that the documents are personal.  And so I take your point that

23   that's what you're asserting, but I'm still left with a

24   contested factual point, and that leads me to the same

25   question, which is, isn't this motion premature?

```
 1              MR. BOVE:  I don't think so.  And I want to stay on
 2   this point first.  What we're doing here is attributing legal
 3   significance to a factual allegation.  The legal significance
 4   is the designation as personal under the PRA.  The factual
 5   allegation is causation while President Trump was in office
 6   during his presidency.  So I don't think that there is a
 7   factual dispute.  There is a legal argument about the
 8   significance of when the Commander in Chief chooses to remove
 9   his own records from the White House and transport them to the
10   residence.
11              We take those facts as true, that that happened, that
12   that transportation happened, and we attribute the same legal
13   significance to that fact that President Clinton got the
14   benefit of in Judicial Watch.
15              THE COURT:  All right.  Please continue.
16              MR. BOVE:  There is a second point here, Judge, which
17   is that in as-applied challenges, I don't think the Court is
18   restricted to the allegations in the indictment.  You're
19   allowed to consider, in this constitutional challenge to the
20   statute, the factual circumstances surrounding the case.  And I
21   think -- obviously, and I think --
22              THE COURT:  I'm not sure that's correct.  If there are
23   disputes of fact, how am I to do that?  Receive proffers which
24   aren't evidence from attorneys?  That's the thing.
25   It's -- it's tricky in this posture to try to really adjudicate
```

1    contested facts.

2         MR. BOVE:  It is tricky.  I don't think they're

3    contested.  I think the legal significance is contested.  But I

4    think -- there is obviously a number of opinions considering

5    vagueness challenges that I think we're probably going to talk

6    about this morning, and in each of those opinions, the Court

7    resorts to facts that are outside the indictment.

8         THE COURT:  Would that have been postconviction mostly?

9         MR. BOVE:  No, Judge.  The Schulte opinion that the

10   Special Counsel's office relies on speaks to experience as

11   a -- that that defendant's experience as a former CIA officer,

12   Hitselberger in the District of Columbia speaks to the training

13   that that person had in their job.

14        So I think that courts do, in as-applied constitutional

15   challenges, look to facts outside the indictment that bear on

16   the fair notice issue.  But, again, our fundamental point, and

17   this is significant to both this motion and the PRA motion, is

18   that this causation allegation is the fact, and we are

19   attributing legal significance to that fact and that's

20   permissible.

21        THE COURT:  All right.  Let's get to the statutory text

22   of 793 as charged.

23        Am I correct that this is how it would read?  And I've,

24   of course, stricken the text that's not applicable to the

25   charge.

1          It would just say like this:  Whoever having

2    unauthorized possession of any document willfully retains the

3    same and fails to deliver it to the office or employee of the

4    United States entitled to receive it.

5          We have basic -- in other words, what is charged in

6    this count is a -- is a document-only retention count without

7    transmittal.  And so we -- we skip over the intermediate

8    language of the statute; is that correct?

9          MR. BOVE:  As a textual matter, yes.  And I think the

10   Court -- when you described documents, you left off, for the

11   sake of brevity, the NDI Clause.  But I understand that that

12   NDI Clause attaches to the type of document that's at issue in

13   these counts.  So it's unauthorized possession; that's the

14   Authorization Clause.  Document relating to the National

15   Defense; the NDI Clause.  And, you know, retained and not

16   returned to a person entitled to receive it.  When I say

17   "Entitlement Clause," that's the language I'm referring to.

18         THE COURT:  Right.  Okay.  So whoever having

19   unauthorized possession of any document relating to the

20   National Defense willfully retains the same and fails to

21   deliver it to the officer or employee of the U.S. entitled to

22   receive it.  That would be how Counts 1 through 32 are charged.

23         MR. BOVE:  Yes, Judge.

24         THE COURT:  Okay.  In your understanding, who, as

25   charged, is the officer or employee of the United States

1    entitled to receive it in this case?  In other words, who is

2    the individual that allegedly the defendant did not deliver the

3    documents to?

4         MR. BOVE:  I don't think that's alleged specifically in

5    the indictment.  And I think that that's one of the issues, not

6    the -- not necessarily the failure in the indictment to

7    identify a specific individual, but the concept more generally,

8    that, at minimum, it is ambiguous, provides no fair notice, and

9    allows for arbitrary enforcement in a situation where we have a

10   former president with his personal records at his residence,

11   who, in the United States Government, is entitled to retrieve

12   those records.  And our position is that at -- in this motion,

13   is that that language, "entitled to," is unconstitutionally

14   ambiguous.

15        THE COURT:  Why?

16        MR. BOVE:  Because the concept of entitlement -- and I

17   think even the courts that have addressed this issue -- Rosen,

18   for one, addresses it -- acknowledges that there is no

19   definition of who would be entitled under any circumstance.

20   There is -- there is nothing in the statute

21   setting that -- setting forth that concept.

22        And so what Rosen did was look to Executive Order

23   13526.  And there, the issue, Judge, is that that Executive

24   Order, to the extent it applies to records, does not apply to

25   the personal records of the President.  And that is explicit in

1    the definition of records in Section 6(hh).

2         And so to the -- to the extent that the Rosen court

3    looked at this, it obviously was not -- the Court was not

4    considering the circumstances we have here.  This is an

5    as-applied challenge, and in this setting where we're talking

6    about personally designated records under the PRA, no one is

7    entitled to receive those records from the President.  NARA can

8    ask --

9         THE COURT:  All right.  Again, that calls for a factual

10   designation and classification of the records as personal,

11   which is outside the superseding indictment.

12        MR. BOVE:  We respectfully disagree with that point

13   because the -- it's a legal concept applying the definitions of

14   personal and presidential under the PRA.  We further, on this

15   issue, believe that the DOJ should be estopped from arguing

16   anything different than they did in Judicial Watch with respect

17   to President Clinton.  We discussed that case at length in our

18   papers, but it bears mention here, Judge.  Nobody in that

19   proceeding contemplated, could conceive of, even thought about

20   taking President Clinton's tapes back from him.  And DOJ was

21   completely complicit and supportive of that outcome, as was

22   NARA, the agency administering the PRA, the agency who is

23   looking to these definitions that I'm talking about.

24        So how then --

25        THE COURT:  One question.  Is it uncontested that those

1    tapes contained classified information?

2         MR. BOVE:  I believe so.  And if it's not, it could not

3    be reasonably disputed based on the -- especially based on the

4    way the Special Counsel has spoken about classified information

5    and National Defense information in this case.  Those tapes

6    contained disclosures that are written up in Taylor Branch's

7    book about discussions with foreign dignitaries, discussions

8    about military operations, things that parallel in a very

9    direct way the documents in this case.

10        So to the extent that it is contested -- and maybe

11   that's a question for the folks behind me -- it could not be

12   done in a reasonable way, based on the text of that book in the

13   way that it summarizes those tapes.  They contain classified

14   information.  And no one in that courtroom, at the argument of

15   Judicial Watch, was saying, well, there is an Executive Order

16   here governing classified information, so we've really got to

17   go back to President Clinton's home and retrieve those.

18        It was unspeakable.  And it should have been here.  And

19   that's one of the reasons that this phrase, "entitled to

20   receive it," has no content as applied to President Trump.  And

21   to the extent that it has content, it's equally problematic in

22   the sense that it permits arbitrary enforcement.  And there is

23   some overlap here with our selective prosecution motion on that

24   concept.  But the 11th Circuit has said that the arbitrary

25   enforcement prong of the vagueness doctrine is the more

1    important consideration, the more salient concern.

2         And so when you have a situation here -- and we're just

3    talking about the -- one of the three clauses that collectively

4    make this statute unconstitutionally infirm with respect to

5    President Trump on this issue, pointing to an Executive Order

6    where there is no rulemaking authority, that's vague in its own

7    right, doesn't add any meaningful content to prevent arbitrary

8    enforcement.  And, in fact, that's exactly what happened here.

9         THE COURT:  So your concern is that the "entitled to

10   receive" clause doesn't explicitly incorporate or reference the

11   Executive Order or authorize regulations on the subject of

12   classification?

13        MR. BOVE:  That's one of the concerns, is that there

14   is -- and I think there is some confusion in the papers from

15   the Special Counsel's office about what our argument is here.

16   There is no delegation from Congress in 793(e) to promulgate

17   regulations or Executive Orders to add content to phrases that

18   Congress declined to define.

19        THE COURT:  And so the courts that have faced

20   challenges on the "entitled to receive" have -- have relied on

21   the Executive Order to provide that judicial gloss; is that

22   correct?

23        MR. BOVE:  Yes.  And I think, Judge, that that is

24   principally Rosen, and then circular cites to Rosen.  I think,

25   respectfully, that Rosen is incorrect on this point, and that

1   this point that we are pressing, which is a nondelegation

2   argument, was certainly not discussed and, I don't believe,

3   made in Rosen.

4          And there -- we have cited other statutes.  Congress

5   knows how to be explicit when they want to look to the

6   Executive Branch to -- to add content to their word choices.

7   But that's not what happened here.  And I think that is why

8   it's important and significant that the Special Counsel's

9   office didn't bother to address any of the legislative history

10   that we laid out in our motions.  Because in 1911, 1917, and in

11   1950, Congress thought about these issues, they had an

12   opportunity to define them with the necessary clarity, and they

13   did not do so.

14          And there is two points I want to make about

15   Congressional failures in this regard.  The first is that in

16   1917, President Wilson and his administration proposed, as part

17   of the Senate bill that was under consideration, a delegation

18   of rulemaking authority.  It's discussed in the Law Review

19   article that we cited; it's Section 6 of that bill.  And

20   Congress declined to put it into the law.  They explicitly

21   declined to provide that authority.  And they said, we will do

22   our work as elected officials here.  And it was insufficient.

23          And then in 1950, the Espionage Act that gives rise to

24   the 793 that we're talking about, that -- that Congressional

25   body has the benefit of the Supreme Court's analysis in Gorin,

1    and of the Heine case by Judge Hand in the 2nd Circuit.  They

2    are on notice of these issues.  And, again, there is no

3    rulemaking delegation.  They left the language as is.

4          And under the residual clause cases that we have

5    cited -- Davis most recently -- when Congress chooses to do

6    something like that, in an Article III court with a criminal

7    defendant facing the kind of consequences that President Trump

8    faces here, the Court's obligation is not to rewrite the

9    statute, not to follow nonbinding judicial gloss from other

10   circuits.  The Court's obligation is to strike the statute and

11   say, Congress, get it right.

12         And Congress is trying to get it right in part.

13         THE COURT:  So the 11th Circuit hasn't really addressed

14   the arguments you've made thus far, except for, perhaps, on the

15   NDI Clause; is that correct?

16         MR. BOVE:  With heavy emphasis on "perhaps," Judge,

17   because the Campa case is not a vagueness challenge; it's a

18   sufficiency of the evidence challenge.  And in that setting,

19   Campa refers -- the 11th Circuit in Campa refers to Gorin.  But

20   that's not affirming a vagueness challenge to this statute.

21         THE COURT:  All right.  Well, let's say you get to the

22   Executive Order and the Subsection (dd), would that language

23   not narrow the scope of the statute as opposed to broaden it?

24         MR. BOVE:  Subsection (dd)?  I'm sorry, Judge.

25         THE COURT:  Which defines the need to know, I think it

1    is, of the Executive Order.

2         MR. BOVE:  No, Judge, not at all.  And I think that

3    that is really -- that's the -- one of the nubs to our argument

4    that is different and has not been analyzed, I don't think, by

5    any court, which is the complete lack of standards governing

6    what is need to know.  And I am confident that that is apparent

7    to Your Honor, based on the way that that phrase has been

8    bandied about in the CIPA litigation.

9         If we say they need to know, they need to know; if we

10   say they don't need to know, they don't need to know.  No court

11   has interpreted that.  The definition is -- there are some

12   words there, but they are of limited content.  And what's

13   really happening is the Executive Order is saying the Executive

14   Branch can make a decision about what that means in every case.

15   And that is extremely problematic under the Supreme Court's

16   holding in City of Chicago vs. Morales.  Morales considered a

17   situation where, quote, "The police have adopted internal rules

18   limiting their enforcement to certain designated areas in the

19   city."

20        And the Court said those internal rules by the police

21   were not adequate to address the vagueness issue that the

22   statute presented.  And I think it's a very similar issue here.

23   There is no delegation to the President to make this Executive

24   Order.

25        The National Security Act cited by the Special

1    Counsel's office at 3161(a) expressly does not include the

2    authority to promulgate regulations and Executive Orders

3    relating to presidents.  And even if you get to the Executive

4    Order, it excludes personal records under the PRA.

5         And finally, where we are here, if you ignored all of

6    that -- and each of those is dispositive.  If you ignored all

7    of them and just got right to the "need to know" point, it adds

8    no content to the phrase "entitled to receive it" or

9    "unauthorized access."

10        So this -- this "need to know" concept, to the extent

11   it's being invoked here as something that adds clarity or

12   governs a statute that never asked to be governed, the "need to

13   know" phrase is problematic for both the Authorization Clause

14   and the Entitlement Clause.

15        THE COURT:  So let's shift to the Authorization Clause

16   for a moment, and just looking at the superseding indictment.

17   The date of the offense begins January 20th of 2021.  So I

18   guess my question is:  Hypothetically, on January 21 of 2021,

19   is the alleged crime of unlawful retention complete, according

20   to the theory as charged in the indictment?

21        So one day later, at that point, you would have all

22   three elements, allegedly.  You would have the willful removal;

23   that decision allegedly would be purposeful.  The documents

24   have the markings, so allegedly they would relate to the

25   National Defense.  And there would be no authorization because

1    the presidency ended.

2          Is that how you read it?  Because if the crime is

3    complete, let's say, one day later, then my question is:  Any

4    other former official who would have in his or her possession

5    classified materials that they willfully removed, at that

6    point, they would be running afoul of this criminal

7    prohibition; is that correct?

8          MR. BOVE:  So in Your Honor's description, there

9    was -- there was some -- some facts about classification

10   markings, another thing that I think -- the way I understood it

11   was that they were offered to support some legal allegations --

12         THE COURT:  Let's assume the documents have

13   classification markings, and let's assume the documents relate

14   to the National Defense.  Then anybody, a former official who

15   had authority prior to the expiration of the position, would

16   then -- would then lose that authority and, therefore, one day

17   later the crime of unlawful retention is arguably complete;

18   correct?  One day later, day one of the crime -- or day two of

19   the crime.

20         MR. BOVE:  So if you assume as -- in that -- I just

21   want to emphasize one part of the hypothetical -- that the

22   possession and retention was unauthorized -- because we dispute

23   that legally.

24         THE COURT:  Well, I think the theory that is in the

25   indictment is that --

1           MR. BOVE:  Right.

2           THE COURT:  -- it was authorized prior to the

3      changeover.  It became unauthorized the moment the presidency

4      ended.  The documents were willfully taken, hence, crime

5      complete.

6           MR. BOVE:  I -- I agree that that appears to be the

7      theory of the indictment.  I do not -- that's not our theory,

8      but I agree that's the --

9           THE COURT:  Okay.  So if that's the theory of the

10     indictment, then -- then there would be other officials who

11     clearly would have run afoul of this prohibition as charged.

12          MR. BOVE:  Unquestionably.  And we don't -- and in some

13     respects, we don't want to make this a day about selective

14     prosecution, because we think that's an independent basis.  But

15     the point that Your Honor just made, backed by history, backed

16     by Judicial Watch, The Clinton Tapes, backed by The Reagan

17     Diaries, and it has to be said, backed by the Hur report,

18     completely supports that theory.

19          And that is why the statute permits arbitrary

20     enforcement as written because they -- the government gets to

21     make decisions based on subjective criteria, here political

22     bias, that permit them to go out and bring charges like this.

23          THE COURT:  Well, I guess my question is -- is in terms

24     of when does it become unauthorized?  I think, according to the

25     theory of the indictment, it becomes unauthorized the moment

1    the presidency ends.  And it really has nothing to do with any

2    demand for the documents that would have been triggered

3    following the issuance of the grand jury subpoena, given the

4    timing of the date of the offense in the superseding

5    indictment.

6              MR. BOVE:  Again, I do -- I think that that's the

7    Special Counsel's theory of the case.  I think that that is

8    wrong because President Trump designated the records as

9    personal when he took them out of the White House.  And so in

10   terms of the authorization that we're talking about, our

11   position is that the reason -- this is more the PRA argument.

12   The reason that the 793 counts should be dismissed, based on

13   the clash between the PRA and 793, is that the government, as a

14   matter of law, cannot establish lack of authorization because

15   President Trump, like President Clinton, like President Reagan,

16   like President Biden as vice president, removed records from

17   the White House that were -- that constituted a personal

18   designation, and that was a completely viable and credited

19   legal theory in a completely credited manner doing business

20   with NARA.

21            To such an extent that in early 2023, as publicity

22   around this case and the situation with President Biden and

23   Vice President Pence started to get more scrutiny, NARA reached

24   out to past presidents and vice presidents.  And then this is

25   written up in the New York Times article that we cited in our

1    reply.

2          And they said, hey, could you please take another look

3    to see if you have anything that might constitute a

4    presidential record?

5          And President Bush's team's response is quoted in the

6    article, and the response is basically, yeah, we're done here,

7    you have nothing to say to us.

8          THE COURT:  So, okay, what is your definition of

9    "unauthorized"?

10          MR. BOVE:  Judge, I don't have one, and that's why the

11    statute is unconstitutionally vague as applied to President

12    Trump.

13          THE COURT:  So we would just -- it's not defined in the

14    statute, so we can resort to ordinary meaning, which then

15    permits use of dictionaries.  So why wouldn't it just be the

16    standard meaning that the Special Counsel has offered, which is

17    without permission?

18          MR. BOVE:  Well, respectfully, I don't think that's the

19    definition they offered.  The definition they offered was

20    without official permission.  And that word "official" is

21    critical to allow them to then argue that to -- invoke the

22    National Security Act.

23          But even the dictionaries they cite don't include the

24    requirement that the permission be official.  And the

25    9th Circuit case that they cite, Nosal, speaks to private

1   authorization, which is a basic concept of property rights.

2        So what the government is trying to do here, to add

3   content that does not exist to that phrase, is to impute some

4   official requirement in order to allow the Court or themselves

5   to go look at another statute, not 793, as a hook back to the

6   Executive Order.

7        THE COURT:  But the way -- the way it would be built

8   would be without official permission, and then the official

9   permission comes from the Executive Order if there is a waiver

10  provided by the sitting president?

11       MR. BOVE:  Well, that's -- I mean, it would -- and,

12  again, we're just talking about my understanding of the

13  government's theory of -- of this piece.  My understanding is

14  that, from their opposition brief, they cobbled together some

15  dictionary definitions that spoke --

16       THE COURT:  Well, that's not inappropriate.  I mean,

17  it's -- dictionary definitions can be used.

18       MR. BOVE:  I agree with that.  And I think that's

19  important because the dictionary definitions that they used did

20  not include the word "official" in terms of the permissions.

21  They -- the dictionary definitions, quite appropriately, and

22  consistent with the plain meaning of the term, include private

23  permissions.

24       And that is -- because that is the case, there is no

25  reasonable basis to then have the Court look from the

1    dictionary definition to the National Security Act to the

2    Executive Order.  They need that word in their made-up

3    definition to allow those steps.

4         Without that word, where private permissions are part

5    of what is authorized or not, we're back to a contentless

6    phrase in a statute, words chosen by Congress, that Article III

7    courts are not in a position to remedy or correct.

8         THE COURT:  All right.  Well, in terms of precedent on

9    the authorized portion, you would agree that no court has

10   deemed that phrase unconstitutionally vague; correct?

11        MR. BOVE:  Yes.  That's correct; no court has deemed it

12   unconstitutionally vague.  Multiple courts have deemed it

13   problematic, and multiple courts have then looked to the

14   mens rea element of the statute, and I would like to talk about

15   that, if I could.

16        THE COURT:  Yes, please.

17        MR. BOVE:  The -- the string of authorities that are

18   793 specific -- well, that are relied on for 793 vagueness

19   challenges start with the Supreme Court's ruling in Gorin.  And

20   then there are four -- four circuit rulings.  Dedeyan, Hung,

21   Morison, and Ford.

22        And if you trace the reasoning in those decisions, what

23   emerges is that what was significant to the Supreme Court in

24   Gorin, and significant to the earlier 4th Circuit cases, was

25   not just a willfulness requirement.  They considered the

1 additional requirement, at issue in those cases or not, and in

2 Morison that is a debate, but the additional requirement that

3 the government established injury to the United States,

4 or -- or potential benefit to a foreign adversary.

5       THE COURT:  That is not required here in terms of the

6 elements?

7       MR. BOVE:  Well, yes, the -- the reason I'm pausing,

8 Judge, is because there is contrary case law, Morison, the

9 Kiriakou case that we cite, which I think is EDVA.  There --

10 some courts have read the statute in a way that requires that

11 additional -- I'm going to refer to it as the injury

12 element -- that require that additional injury piece, plus

13 willfulness.

14       THE COURT:  But for a 793(e) documents-only charge

15 without transmittal, it appears the statutory text would not

16 require that, in contrast to the text addressed by the Supreme

17 Court in Gorin.

18       MR. BOVE:  I agree.

19       THE COURT:  Okay.

20       MR. BOVE:  And so my -- but my point is, Gorin should

21 not have been persuasive to any court considering this type of

22 vagueness challenge and the willfulness element because Gorin

23 had both pieces, willfulness plus injury.  The 4th Circuit in

24 Dedeyan, both pieces, willfulness plus injury.  Hung, two.

25 Same.  Morison, both.  Same.

1          And so then you have a series of string cites, maybe

2     the most recent is Schulte, relying on those cases.  But

3     without meaningful discussion, I mean -- like, none of the fact

4     that Gorin was looking at a different statute.  And when you're

5     talking about can a mens rea element sufficiently clarify and

6     narrow something, the fact that those earlier decisions are

7     looking at both parts is extremely significant.

8          THE COURT:  I have a question on the willfulness.  So,

9     of course, we have our pattern instructions in the

10    11th Circuit, and there are two that define the word

11    "willfully."

12         There is one that says:  "The word willfully means that

13    the act was done voluntarily and purposefully" -- excuse me --

14    "purposely with the specific intent to violate a known legal

15    duty, that is, with the intent to do something the law forbids.

16    That is Pattern B9."

17         So in terms of the "doing something the law forbids,"

18    what is your understanding of what law is being breached there?

19         MR. BOVE:  I think that's exactly the problem, Judge,

20    and that is why a willfulness on that B9 instruction does not

21    resolve the vagueness challenge is because, at most, that

22    instruction refers the jury back to the ambiguous terms and

23    says do your best.  And that can't be enough on the facts that

24    we've described here, and it can't be enough when compared to

25    authorities that require both willfulness plus the injury

1   element.

2        I don't think it's sufficient when there are -- even

3   the courts that have rejected the vagueness challenges have

4   said -- these are -- these are serious issues, this is

5   problematic.  The -- meaning the language chosen --

6        THE COURT:  So has -- has there been a judicial gloss,

7   perhaps, in those contexts where a bad-faith component has been

8   injected to add a little more strictness to the willfulness,

9   otherwise, it's the simple willfulness?

10       MR. BOVE:  It's possible.  I can't -- I'm not going to

11   pretend that I have surveyed every set of jury instructions in

12   a 793(e) trial.  But even -- even a general bad-faith

13   instruction would not address the vagueness problems.  And I

14   think it's important here to -- to keep in mind the two prongs

15   of the vagueness doctrine.  There is the fair notice piece --

16   and when we're talking about mens rea, that is really

17   what -- what we're focused on.

18       THE COURT:  On the fair notice, just explain to me

19   something.  In the case of a former president, is -- there

20   is -- the clearance status is inherent in the position itself;

21   is that correct?

22       MR. BOVE:  As I understand it, yes.  I think -- as

23   president --

24       THE COURT:  After the presidency ends, is there any

25   sort of transaction or mechanism by which the clearance is

1   removed, suspended, or terminated?

2          MR. BOVE:  I think -- I think that that has -- the

3   record reflects that that -- to the extent there is a process,

4   it is inconsistent and not -- not applied in a formal way, and

5   I'm referring to the Q clearance issue.

6          THE COURT:  So in this case, setting aside Count 19,

7   was there a suspension of a clearance in a formal sense?

8          MR. BOVE:  I think that it's -- it's -- there is a

9   statute that governs a president's clearance, and it's possible

10  that there is an argument from the government that, by

11  operation of law, that that no longer -- that the formal

12  clearance authorized by that statute doesn't --

13         THE COURT:  What statute is that, do you know?

14         MR. BOVE:  I don't have it at the ready, but I'm sure

15  Mr. Bratt will.

16         THE COURT:  Okay.

17         MR. BOVE:  But, Judge, I want to point out that the

18  superseding indictment, once -- one of the passages that the

19  government relies on as part of its argument that President

20  Trump had actual notice, is President Trump's statement

21  regarding the revocation of John Brennan's security clearance.

22         And in that statement, he -- President Trump -- and

23  this is in the indictment.  So we're talking about what we're

24  stuck with on the four corners of the document -- refers to

25  "the practice of former officials maintaining access to our

1    nation's most sensitive secrets long after their time in

2    government has ended."  That's their -- they chose to put that

3    in the indictment.  They think that it has significance.  I do,

4    too, probably for different reasons.

5         Here, what that reflects is that the authorization

6    concept, as understood, doesn't provide fair notice to

7    President Trump.  And as applied here, reflects the type of

8    arbitrary enforcement that the Davis court was concerned about.

9         THE COURT:  All right.  I have another factual

10   question.  In terms of the criminal referral referenced in the

11   indictment, was that criminal referral transmitted to the

12   former president?  In other words, was he aware of the criminal

13   referral when it was made?

14        MR. BOVE:  I would need -- I would need a moment to

15   answer that.

16        THE COURT:  Okay.  Okay.  I think this is uncontested,

17   but I will ask the Special Counsel.  Has NARA ever issued a

18   criminal referral outside of the context of -- of these

19   documents?

20        MR. BOVE:  To my understanding, based on NARA OIG's

21   website, there may have been criminal referrals in other

22   settings, but I think that this is the first of its kind in

23   terms of -- you know, there is really three referrals in that

24   document that -- those referrals relating to -- I will just

25   speak to the ones that apply to my client -- efforts to recover

1    records from a former president are one of a kind.

2         And the reason that that's important -- and Mr. Blanche

3    will speak to that when we get to the PRA, but I want to

4    preview it -- is that in order to make the referral, NARA OIG

5    is acting pursuant to the OIG Act, which requires a reasonable

6    basis to believe that there is a criminal violation.

7         And in light of NARA's history and customs and

8    practice, reflected in Judicial Watch with President Clinton,

9    The Reagan Diaries, President Biden, all of the examples we

10   have cited, they had no reasonable basis to believe that there

11   was -- that there needed to be a referral or could be.

12        So our position is that that referral was unlawful

13   agency action because it violated the language of the statute.

14        THE COURT:  Okay.  Well, okay.  Anything further on the

15   three clauses that you have taken issue with in 793(e)?

16        MR. BOVE:  There is two points that I would like to

17   make, Judge.

18        One relates to the relevance of the executive privilege

19   and what it means to -- to or not to -- to be or not to be

20   unauthorized in this setting.  These documents allegedly relate

21   to briefings that were provided to the President.  They relate

22   to the types of sensitive, confidential communications over

23   which typically there would be a -- it's qualified, we

24   understand -- but a basis to invoke the executive privilege.

25        Courts in the D.C. Circuit, when they've looked at that

1    privilege, have spoken to, in the first instance, an obligation

2    for the Executive Branch and Congress to put their heads

3    together in the political sphere to resolve disputes over the

4    executive privilege.

5         One example of that is United States vs. AT&T, which is

6    a D.C. Circuit case from 1977, 567 F.2d 121.  And in that case,

7    the D.C. Circuit rejected the idea that the Constitution

8    confers on the executive absolute discretion in the area of

9    national security.  And so the significance of that is:  AT&T

10   limits, and AT&T speaks to why the government's Egan case can't

11   support what they're trying to do here.  Egan is about

12   appellate review of security clearances.  AT&T goes through, in

13   a persuasive way, the limits on the executive's discretion in a

14   way that the Congress also has national security authority.

15        The examples in AT&T include:  The power to declare

16   war.  The power to fund the Army.  The power to consent to

17   treaties.  The power to appoint ambassadors.

18        So Congress has the authority under the Constitution to

19   speak in the area of national security.  They spoke in the

20   Espionage Act of 1950.  We are stuck with the words that they

21   chose.  So it's no answer, I submit, to rely on Egan and say,

22   well, the President has the ability to promulgate an Executive

23   Order that can be applied in any situation where we feel there

24   is national security issue in a criminal prosecution to define

25   a statute in the way we want.

1          THE COURT:  Okay.  Let me ask you.  Let's say I deny

2     your motion.  Then how would you put forward jury instructions

3     on the definition of "unauthorized"?  What would be the

4     definition?

5          MR. BOVE:  Well, it will -- it would -- assuming we

6     were to get there, it would absolutely include language about

7     the significance of the Presidential Records Act, the

8     definition of personal records, and the impact of a designation

9     by a former president of those records as personal.  It would

10    be -- it would have additional legal content based on the PRA

11    which we're -- we would be entitled to to support our defense

12    theory.  We would be -- but what we would be doing there --

13         THE COURT:  The Special Counsel would say all it needs

14    to say is that you lacked a security clearance and you lacked a

15    need to know because you were no longer president.

16         MR. BOVE:  And so what is that, other than to say:  We,

17    the Executive Branch, we, the Special Counsel, feel that you

18    didn't have a need to know.  We're going to say that to the

19    jury.  There is no standard to govern "need to know," and so

20    you're guilty.

21         THE COURT:  Well, it's in the Executive Order.  It's in

22    the Executive Order, and that would be applicable to former

23    presidents unless withdrawn.

24         MR. BOVE:  It's -- the phrase "need to know" is in the

25    Executive Order.  But the Court can't save an

1    unconstitutionally vague statute by looking to an impermissibly

2    vague and standardless term like "need to know."  And there is

3    no authority defining that term in a meaningful way that

4    prevents arbitrary enforcement.

5         I know I have hit that a few times this morning, but I

6    think it's really important, and I don't think it's discussed

7    in any of the -- the decisions that we're talking about, is

8    that when a court -- when a court sort of drags into the

9    analysis Executive Order 13526, you are incorporating that

10   "need to know" concept.  And if it had standards, if there was

11   a mechanism to truly define it, then that is -- it's possible

12   it could help.  You would still have the nondelegation issue

13   that we have raised, but it's possible it could help.  But the

14   definition is not sufficiently specific to ward off arbitrary

15   enforcement or to allow somebody in President Trump's position

16   to understand which way, for example, the CIA is going to come

17   out on "need to know" on a particular document.

18        THE COURT:  Do you know if the Executive Order speaks

19   to termination of clearances and suspensions of existing

20   clearances?

21        MR. BOVE:  Not off the top of my head.

22        THE COURT:  Okay.  All right.  Well, then, unless you

23   have anything further -- and I may come back to you -- I would

24   like to hear from the Special Counsel.

25        MR. BOVE:  The only other point that I want to raise is

1    on the NDI element.  The point here, Judge, is that the

2    classified discovery discussed in our -- the -- our filings,

3    the classified filing, reflects that there is confusion within

4    the agencies about what constitutes NDI and whether a

5    particular document contains NDI.  It's more than confusion.

6    There is dissent.  And that further supports our argument when

7    you have -- the government authorities responsible for applying

8    these concepts can't agree on it.

9         THE COURT:  But there has been a fair amount of

10   litigation, I think, on the defense information prong.  And

11   that one of the three really has, I think, the most case law

12   support.  So it would be hard to say, based on the current

13   state of decisional authority, that that prong, in and of

14   itself, is unconstitutionally vague.

15        MR. BOVE:  I can't fight with the way that Your Honor

16   phrased that.  I think that that's right for whatever that is

17   worth.  I think it's right.  But all of that case law turns on

18   this invented concept of closely held.  And in this case --

19        THE COURT:  Well, that comes from Gorin, which really

20   rests on secrecy.  So it's not really invented.

21        MR. BOVE:  What I'm saying is that -- I should have

22   said it better, Judge, thank you.  There is no basis for that

23   in the statutory text.  There is -- that is completely

24   invented, relative to what the statute says.

25        And our argument here on vagueness grounds with respect

1    to the NDI element is not limited to the fact that some of

2    these materials appear to have been sourced from public

3    information.  That's more of a factual issue that's tied up in

4    the motions to compel, and if we made it to a trial, that would

5    be a part of our presentation.

6         But on the NDI element, I don't think that the "closely

7    held" component mitigates the concern that we have.  This is

8    our concern on -- on the NDI element.  Courts have taken this

9    phrase "National Defense" -- and this is foreshadowed in Gorin

10   and by Judge Hand in Heine -- and broadened it out into

11   basically anything.  And that's evident from the government's

12   papers, where I -- I think the position is, essentially, if it

13   was presented to the President at some point, then it's

14   National Defense information.  I -- I think --

15        THE COURT:  Well, I think -- I think they're relying on

16   multiple categories, specified in the Section 10, not just the

17   presentation of the documents to the President.

18        But let me ask you:  On the Count 19 issue, you sought

19   discovery specifically on what?  And have you obtained any of

20   it?

21        MR. BOVE:  We -- we sought discovery on the

22   communications that led to the memoranda that is -- memorandum

23   that is discussed in our papers, the process that led the

24   Energy Department to suddenly, post-indictment, write up this

25   document that says we retroactively terminate the clearance.

1   We sought those communications.  We have sought any records of

2   data --

3         THE COURT:  I guess that's my question.  Why in the

4   case of the Q clearance is there official documentation

5   retroactively suspending it post-indictment?  But just gets to

6   my earlier question:  With the other counts, does the

7   clearance, just by operation of law, disappear?

8         MR. BOVE:  The answer is they have not disclosed these

9   things in discovery, so I don't know.

10         The Q clearance, the reason that it is discoverable and

11   favorable to the defense is that, to Your Honor's point,

12   relative to the other documents and the other clearances at

13   issue, this type of thing didn't happen.  And it's also to

14   the -- to the extent that count is going to survive our motion,

15   and we -- to the extent we were going to have a trial that

16   involved the document in Count 19, we would be permitted to

17   cross-examine people about the -- the decision that was made to

18   retroactively delete this clearance off the books, especially

19   relative to the John Brennan statement that I talked about from

20   the indictment, where former government officials are permitted

21   to retain clearances.  And that's why part of our discovery

22   request is for the Energy Department's treatment of other

23   presidents and officials with Q clearances.  And so I think,

24   first --

25         THE COURT:  So, so far you have made that request.  And

1    the answer was:  You're not entitled -- it's not discoverable

2    because?

3          MR. BOVE:  I'm not sure that sentence was completed.  I

4    think that there was also --

5          THE COURT:  Well, I'm sure that it was.  But I will ask

6    the Special Counsel exactly what the position is on discovery

7    with respect to the Q -- to the Q clearance.

8          MR. BOVE:  Part of it, part of the response in the

9    motion papers was an indication of privilege

10   without providing --

11         THE COURT:  Deliberative process on the internal

12   communications.

13         MR. BOVE:  Without providing a privilege log.  And it's

14   a privilege that cannot stand when it's up against Brady and

15   Giglio.

16         THE COURT:  Assuming those internal communications

17   contained such information.  And the Special Counsel has

18   indicated, I think, multiple times that it's in compliance with

19   Brady and Giglio obligations.  But I will cover that with the

20   Special Counsel in my discussion with him.

21         MR. BOVE:  Judge --

22         THE COURT:  What about the facilities?  Because I

23   understand the Executive Order also speaks to protected

24   facilities, and that there has been a -- there is an

25   outstanding request for discovery on that topic.

1          Can you bring me back to the request that is on the

2     table, and what is the status of -- of your -- of your request?

3          MR. BOVE:  So the request touches, I think, on two

4     issues -- one is secure facilities at President Trump's

5     residences, and the other is facilities used to provide

6     briefings to President Trump as candidate, as President-elect,

7     and then as President post-inauguration.

8          So there is two related requests, and what we're asking

9     for there is information about the -- the documented details

10    that made people comfortable that these briefings could be

11    provided under the conditions that they were provided, because

12    we are permitted, if this case goes forward, at trial, to argue

13    that all -- President Trump's training with respect to

14    classified information handling happened on the job.  And if

15    what happened in front of him was that he was repeatedly shown

16    documents in these -- in, for example, at Mar-a-Lago, or at

17    Bedminster under circumstances that the government approved,

18    then that is evidence that is admissible to show that President

19    Trump did not have -- willfully violate anything, because he

20    was handling --

21         THE COURT:  Do you know who would have custody of any

22    documentary evidence related to the secure facilities at

23    residences or in secure locations?

24         MR. BOVE:  There is a White House component that is

25    discussed in our motion to compel papers.  And then there is a

1    witness who is also discussed in our motion to compel papers

2    who provided -- there is two, really, who provided these

3    briefings.  And both that agency and those witnesses can speak

4    to, and I submit, have emails relating to:  Is it permissible

5    to give these briefings under these circumstances?

6              THE COURT:  Would that be relevant, the secure nature

7    of the facilities?  Would that be relevant to the three

8    elements under -- for Counts 1 through 32?

9              There are references in the indictment to the -- to the

10   lack of secure facility where the boxes were allegedly kept.

11   But is it strictly relevant to the three elements that are

12   necessary for proof of Counts 1 through 32?

13             MR. BOVE:  I think that this evidence could potentially

14   bear on the Authorization Clause.  But our theory in the motion

15   to compel papers is that it would be most directly relevant to

16   President Trump's state of mind, because the circumstances

17   under which briefings were conducted prior to him leaving

18   office informed his view about how the appropriateness and

19   the -- of how to handle classified information after his

20   presidency.

21             THE COURT:  But you're not sure whether the Executive

22   Order itself speaks to protected or secure facilities?

23             MR. BOVE:  I think that there is language right around

24   Section 4 that touches on that issue, Judge.

25             THE COURT:  And your understanding of the superseding

1    indictment is that it does require resort to the Executive

2    Order in order to fill in content for the "entitled to receive"

3    clause and the "unauthorized" clause.

4        MR. BOVE:  And the NDI Clause, because I think a big

5    part of their argument is that the classification status of the

6    documents, the alleged sensitivity of the documents -- this is

7    them talking, not me -- makes it more likely that the defendant

8    understood that these things constituted NDI.  And I think, on

9    that issue, in the -- the use of the Executive Order to define

10   the NDI element, you have to look at Section 1.4 of the

11   Executive Order, which defines the categories of classified

12   information that are subject to the order.  And it's much

13   broader than the concept of National Defense.

14       THE COURT:  Okay.  All right.  Thank you.  It's been

15   some time now that we have been discussing.  So let me turn to

16   hear argument from either Mr. Harbach or Mr. Bratt, whoever

17   will be taking the lead on this particular opposition.

18       MR. BRATT:  Thank you, Your Honor.  Good morning.

19       THE COURT:  Good morning.

20       MR. BRATT:  So I will just start with an overview of

21   our position, and then I will turn to some of the specific

22   issues, both that Mr. Bove raised, and answer some of the

23   Court's questions.

24       The former president's as-applied challenge to 793 here

25   is really no different from the many others that have come

1    before other courts, that have been unsuccessful, and this

2    challenge should fail for the same reasons.

3         THE COURT:  Do you believe it's premature because it

4    relies on facts outside of the indictment?

5         MR. BRATT:  So with respect to their PRA argument --

6    and I can address that right now -- I would say as to that, not

7    only is it premature as to that aspect, I do think that the

8    Court can rule as a legal matter with respect to the three

9    prongs or the three statements that are -- elements that are in

10   793 that they allege are -- that they allege are vague, that

11   the Court can, as a legal matter, rule on those.

12        But with respect to their PRA claim, and their claim

13   that the former president designated these records as personal,

14   not only is it premature, but for Rule 12 purposes, it never

15   happened.  And, actually, what is in the indictment as to how

16   the former president viewed these documents is to the contrary.

17        And I would direct the Court's attention to

18   paragraph 35 of the superseding indictment, ECF Number 85,

19   particularly on page 16.  And just toward, sort of, the middle

20   of that page, the former president -- and this is at

21   Bedminster, in the summer of 2021, July of 2021.  And he is

22   speaking to a publisher of his former chief of staff's memoir

23   and the ghost writer, and he has a couple of aides present.

24        And just starting where it says:

25        "TRUMP:  This was done by the military and given to me.

1    I think we probably -- we can probably, right?

2         "STAFFER:  I don't know.  Well, we will have to see.

3    Yeah, we will have to try.

4         "TRUMP:  Declassify it:

5         "STAFFER:  Figure out -- figure out a -- yeah.

6         "TRUMP:  See, as president, I could have declassified

7    it.

8         "THE STAFFER:  Yeah.

9         "Now I can't, you know, but this is still secret."

10        He doesn't say there, I can show you this because I

11   designated it as personal.  In fact, he is saying the exact

12   opposite, that these are presidential records, core

13   presidential records that he has custody of, and that they

14   remain classified.

15        Mr. Harbach will be handling most of the PRA argument,

16   but I will touch on a couple of things as it relates to the

17   vagueness claim.  It is our position -- and I think actually if

18   you look at the PRA, the PRA reinforces the notice to the

19   former president that what he was doing is illegal.

20        The clarity of the definitions in the PRA of what is

21   personal and what is presidential, they undermine the claim he

22   is making that he was not on notice, that he could keep these

23   documents.

24        They have some very black-and-white definition of what

25   is a presidential record and a personal record.  And I would

1    just like to take a moment, Your Honor, to read to you what is

2    in 44 U.S.C. Section 2201(2), which is the definition of a

3    presidential record.

4          The term "presidential record" means

5    any document -- all documentary materials or any reasonably

6    segregable portion thereof, created or received by the

7    president, the president's immediate staff, or a unit or

8    individual of the Executive Office of the president, whose

9    function is to advise or assist the president in the course in

10   conducting activities which relate to or have a -- or have an

11   effect upon the carrying out of the constitutional, statutory,

12   or other official or ceremonial duties of the president.

13         And then by contrast, personal records, in 2201(3), the

14   term "personal records" means all documentary materials or any

15   reasonably segregable portion thereof, of a purely private or

16   nonpublic character which do not relate to or have an effect

17   upon the carrying out of the constitutional statutory or other

18   official ceremonial duties of the president.

19         It would do violence to the text of these provisions to

20   say that a president can simply, by fiat, make what the law

21   requires to be a presidential record a personal record.

22         These are all documents that he did not create, they --

23   as we say and as they admit, they were provided to him in the

24   course of sensitive briefings.  I would -- there is nothing in

25   the PRA that says a personal record by definition cannot

1    contain classified information or cannot be subject to

2    18 U.S.C. 793.

3           And, in fact, the PRA does anticipate that even a

4    personal record can contain information in it that is

5    presidential or even classified.  That's the importance of the

6    use of the term "segregable."

7           THE COURT:  And I very much appreciate these arguments.

8    I do want to consider them, certainly, but -- in the context of

9    the vagueness challenge, and then we can turn to the PRA.  I

10   just -- I'm trying to keep the analysis a little more organized

11   here with respect to the challenge clauses.

12          So if you could just root your argument in the

13   vagueness challenge, that would be helpful.

14          MR. BRATT:  Yes.  And the way I'm trying to root it,

15   Your Honor, and probably maybe not as well as I could, is that

16   on the whole issue of fair notice, that you have to look at

17   everything that is alleged in the indictment, everything that

18   is on the books and the law, and that the PRA, rather than

19   undermine -- or supporting his claim, that he could take these

20   documents without any consequences, actually reinforces the

21   notice to him that he could not do so.

22          THE COURT:  Okay.  But it is uncontested, of course,

23   that no former executive or former vice president had ever

24   been -- had ever been -- been faced with or exposed to criminal

25   liability for retaining personal or presidential records.

1           MR. BRATT:  None has been charged.

2           Just in answer to the Court's question about criminal

3    referrals, there was a criminal referral from NARA with respect

4    to President Biden.  There also was a criminal referral from

5    NARA to the Department of Justice with respect to Former Vice

6    President Pence.  So there were other referrals.

7           THE COURT:  Those postdated --

8           MR. BRATT:  Postdated this; right.

9           THE COURT:  Okay.  So there wouldn't have been, I

10   guess, a historical example for the former president, at least

11   to say, well, there is a -- there is a realistic likelihood

12   here that I could be looking at a 793(e) indictment?

13          MR. BRATT:  There hasn't.  But I would add that there

14   was never -- even with other former presidents, there was never

15   a situation remotely similar to this one.

16          THE COURT:  So then I guess that gets me to the whole

17   "when was the crime complete?"  Because the way the time period

18   is alleged in the indictment is, starts on January 20th of

19   2021 -- correct me if I'm wrong -- and it runs through the date

20   of the search; is that correct?

21          MR. BRATT:  Well, it -- there -- so there are three

22   different stop points.  And one, I think as a legal matter,

23   retention is an ongoing offense, it continues -- it's a

24   continuing offense until it stops.

25          THE COURT:  But, conceivably, you could have charged it

1    on January 30th, and you would have had a week of unlawful

2    retention under the theory charged in the indictment; correct?

3           MR. BRATT:  That's correct.

4           THE COURT:  Okay.  So then that's my question, is that,

5    if that's the theory and you -- and the crime is complete, then

6    wouldn't that have been applicable to other officials who, I

7    think, it's undisputed have possessed classified information

8    post-presidency, and done so through willful actions?

9           MR. BRATT:  So I think it's the willful part that

10   becomes harder.  And that really goes to, what is the proof

11   that the government would have to prosecute a former president

12   or former official who retained documents?

13          And the Court may have read the Hur report, but that

14   certainly is a big part of the Hur report's discussion as to

15   whether or not President Biden's conduct was willful or whether

16   they could prove beyond a reasonable doubt that it was willful.

17          I don't have insights into what my former colleagues

18   decided with respect to Former Vice President Pence.  But those

19   are all, certainly, facts that bear upon whether or not there

20   was a charge -- there would be a charge.

21          THE COURT:  But based on the simple willfulness that --

22   that is permitted, you could have willfulness on January 21 of

23   2021; correct?  Because at that point, your position has

24   ceased.  You -- a lack of clearance and -- you lack a

25   clearance, and you lack a need to know, correct, and,

1   therefore, it's unauthorized, and you took them willfully, and

2   they contain National Defense information?

3        So all of the elements are satisfied and the crime is

4   complete as of January 21, 2021?

5        MR. BRATT:  That as a -- as the Court states it,

6   correct, that is correct.

7        THE COURT:  And then there is no tension with that

8   position and the absence of any criminal prosecutions for

9   possession of classified information post- -- postposition?

10        MR. BRATT:  So I think the Court -- the Court's

11   question would be an important one if the indictment was

12   returned on January 30th, 2021, but it wasn't.  It was

13   returned -- with the history of everything that happened

14   beginning in May of 2021, the return of only 15 boxes, the

15   failure to comply with -- fully comply with the grand jury

16   subpoena, the false declaration that was submitted, the

17   evidence of obstruction, all of that is what brings --

18        THE COURT:  And I think all of that is -- is -- is

19   adequately pled in the obstruction counts, but for the

20   retention counts, it just struck me as interesting that the

21   period of time starts when it does.  Because at that point,

22   there is -- there is no demand for the documents.

23        MR. BRATT:  And, again, that's partly why

24   the -- the -- there is no charge as of January 21st,

25   January 30th, 2021.

1          You have to look at the entire conduct.  And, yes, what

2     you're saying is what we are alleging relates to the

3     obstruction charges, but that's also key proof of willfulness.

4          And to return to the Court's question, the Court's

5     comment, the -- B9 is the -- what appears to be the

6     11th Circuit's distillation of the Bryan standard, which is

7     what the courts have routinely used in 793 prosecutions.

8          And I would say the Bryan standard is -- I know

9     sometimes the term "simple willfulness" is -- is applied to it,

10    and I think that's to differentiate it from the Ratzlafv/Cheek,

11    sort of --

12         THE COURT:  Correct.

13         MR. BRATT:  -- sort of willfulness.  But there is also

14    another, sometimes, definition of willfulness, which is just

15    doing something advertently, or not by mistake.

16         And the Bryan standard does require us to prove that

17    when the former president took the documents, he did so with

18    the knowledge that it was illegal to do that.

19         THE COURT:  Illegal.  So -- just so we get to that

20    definition, where it says "with the intent to do something, the

21    law forbids..."

22         And my question is:  Which law is captured there?

23         MR. BRATT:  So under Bryan -- and, again, we're not --

24    obviously, we're very far from the charging stage, and so we

25    would certainly give the Court language that would be more

1    refined than what I'm about to say now.  But what we usually

2    have in our instructions to flesh out the meaning of Bryan is

3    that a defendant does not need to know the specific law that he

4    is charged with violating, but he has to know in a general

5    sense, general knowledge that what he is doing is illegal.  He

6    doesn't have to --

7            THE COURT:  But illegal because it's -- because it's a

8    violation of 793(e) or it's illegal because it's in violation

9    of the Executive Order?

10           MR. BRATT:  793(e), the prohibitions in 793(e), which

11   aren't formed, though, by the Executive Order.

12           THE COURT:  Okay.  So then do you see any issue with

13   the fact that 793(e) does not incorporate or otherwise

14   reference the Executive Order; it just says "entitled to

15   receive it"?

16           MR. BRATT:  So let me spend a moment on the "entitled

17   to receive" prong, because -- and I think the Court was getting

18   to some of the issues with that.  But the cases that we go back

19   and forth on, and particularly the Rosen case, those all dealt

20   with the transmission prong of 793(e).

21           So there, it's really -- it is part of the actus reus

22   that the person to whom you transmit the information, be it a

23   reporter, be it a friend -- we have a subset of cases where

24   people are giving it to boyfriends or girlfriends to advance

25   their careers.  Part of the actus reus is that the person to

1    whom you give it is not entitled to receive it.

2          The point that we were making in footnote 6 of our

3    brief, and which I can amplify upon, is that in this case, the

4    entitled-to-receive language is not part of the actus reus.

5    The offense here is that he failed to return it.

6          So in many ways, you don't even have to focus anymore

7    on the "entitled to receive."

8          THE COURT:  Failed to return it to who?

9          MR. BRATT:  To the official entitled to receive it.

10         THE COURT:  Which would have been?

11         MR. BRATT:  NARA would have been one.

12         THE COURT:  But that's -- so as of January 21, the

13   crime at that point is, you would have returned it to NARA at

14   that point, day -- day after presidency ends?

15         MR. BRATT:  As the PRA is written by -- as a matter of

16   law, the ownership of those documents transfer to NARA.

17         THE COURT:  Okay.  So NARA is the official contemplated

18   to whom the former president would have returned the documents?

19         MR. BRATT:  Under the facts of this case.  There is

20   also returning them to the FBI via the grand jury.

21         THE COURT:  Post grand jury.

22         MR. BRATT:  Correct.

23         THE COURT:  Okay.

24         MR. BRATT:  But, you know, where -- that's not this

25   case, and it would be almost an absurd situation.

1          But let's say that things had turned out differently,

2     that the former president realized that he had these documents

3     in a storage room and decided, oh, I've got to give these back,

4     and rather than calling NARA or calling the Department of

5     Justice, he called, say, the then leader of the Republicans in

6     the House and say, hey, I've got these documents.  I want to

7     return them to you.  And somebody is arguing that was not the

8     official entitled to receive them.

9          Again, that's not a case I think anybody would charge,

10     but that's how the "entitled to receive" language would play

11     out in a prosecution if there were an incorrect return.  But in

12     our case, the element really gets satisfied through the proof

13     of the failure.

14          THE COURT:  But it does -- it does require or resort to

15     the Executive Order, you would agree?

16          MR. BRATT:  Yes.  And in -- to just address a couple of

17     questions that the Court had for Mr. Bove.  First of all, a

18     president never receives a clearance, just as Your Honor does

19     not receive a clearance.  So there is not a situation where a

20     clearance is suspended.  The DOE situation, which I can talk

21     about a bit more, is different.  They do something on their

22     books.  But with respect to all of the other classified

23     information, classified documents that a president sees during

24     his term, there is no clearance.  So there is no clearance to

25     suspend at the end of one's term.

1          THE COURT:  Is there a statute that, kind of as a legal

2    matter, nullifies or negates the preexisting clearance?

3          MR. BRATT:  So, again, there -- there never was a

4    preexisting clearance.  And I -- I don't want to talk past

5    Your Honor.  But it's not that -- so, really, the part of the

6    Executive Order that comes into play -- and we've mentioned

7    this -- is Section 4.4.  It addresses what a former president

8    can do vis-á-vis classified information post-presidency.  And

9    that -- and I will just add that the fact that there was 4.4 in

10   terms of notice, fair notice of what one can and cannot do, it

11   actually makes a former president unique among the people whom

12   we otherwise end up prosecuting for 793(e) -- government

13   contractors or government employees.  Because there is in the

14   Executive Order express language limiting what he can and

15   cannot do.

16         THE COURT:  Do you see a problem with the fact that the

17   statute really doesn't reference any Executive Order, and it

18   doesn't -- it doesn't authorize rulemaking?

19         MR. BRATT:  Well, so, two things.  One, the Executive

20   Order itself is law, and so it is -- it's law.  It's on the --

21         THE COURT:  Correct.  But it's not referenced in the

22   charge in 793(e).

23         MR. BRATT:  And --

24         THE COURT:  So if you're just a regular person trying

25   to figure out if you are going to run afoul of 793(e), how

1   would you know that you have to go look up the Executive Order,

2   and which one?

3        MR. BRATT:  So, you know, as a matter of -- again, sort

4   of the Bryan line of cases, one cannot -- if something is on

5   the books, that awareness of it is imputed to you.  That is not

6   the type of willfulness that -- that we have to -- have to

7   apply.  So there is a law that makes it illegal, that law is

8   informed in parts by the Executive Order, which is out there

9   for anybody to see.  In Rosen and in other cases, the Courts

10  have upheld limiting or narrowing the statute or clarifying it

11  by reference to the Executive Order.  So all of that, that

12  entire mixture is entirely consistent with Fifth Amendment due

13  process jurisdiction in vagueness cases.

14       THE COURT:  Does it reach a point where you say that

15  it's just too much, it's just too much addition?  It's okay if

16  you are adding the closely held, because that's -- goes hand to

17  hand with the secrecy language in Gorin.  But beyond that,

18  courts bring in the Executive Order to add content to what is

19  otherwise not referenced.  Does it reach a point, really, in

20  the -- in the explication of the statute, where it becomes

21  just -- just too much judicial gloss?

22       MR. BRATT:  So as long as the glosses are narrowing the

23  reach of the statute, no.  And that actually -- and we cite

24  Skilling for that proposition.  But even, you know, they --

25  they spent a lot of time talking about, you know, the Davis,

1    Johnson, Dimaya line of cases.  And just to quote from

2    Justice Gorsuch in -- in Davis.  This is at 139 Supreme

3    Court 233:  "Applying the constitutional avoidance to narrow a

4    criminal statute, as this Court has historically done, accords

5    with the rule of lenity."

6         THE COURT:  So what do you say to the contrary view,

7    which is that the Executive Order is standardless and,

8    therefore, doesn't limit?

9         MR. BRATT:  If you look at 4.4, that language is very

10   clear.  There is nothing standardless in that.

11        THE COURT:  Could you walk me through the standards

12   that you see in 4.4?

13        MR. BRATT:  Yes.

14        Excuse me, Your Honor, I thought I brought everything I

15   needed up here.

16        So 4.4, beginning at -- which is titled, Access by

17   Historical Researchers and Certain Former Government Personnel.

18        THE COURT:  Okay.

19        MR. BRATT:  4.4(a):  The requirement in

20   Section 4.1(a)(3) of this order that access to classified

21   information may be granted only to individuals who have a need

22   to know the information may be waived for persons who -- in

23   Sub 3 -- served as president or vice president.

24        And then it continues in (b):  Waivers under this

25   section may be granted only if the agency head or senior agency

1    official of the originating agency, (1) Determines in writing

2    that access is consistent with the interests of national

3    security; (2) Takes appropriate steps to protect classified

4    information from unauthorized disclosure or compromise, and

5    ensures that the information is safeguarded in a manner

6    consistent with this order; and then (3) Limits the access

7    granted to former presidential appointees.

8           And actually, (3) really does not apply here.

9           So 4.4 is quite clear about how a former president has

10   access to and, essentially, where the former president would

11   have access to classified information post-presidency.

12          THE COURT:  And then the "need to know" definition

13   comes from?

14          MR. BRATT:  So "need to know" comes from 4.1.  But as

15   it says here, the "need to know" is waived under these

16   circumstances.

17          THE COURT:  So you would never have to go look up the

18   definition of "need to know" under the Executive Order, which I

19   think is Subsection (dd), if I'm not mistaken?

20          MR. BRATT:  You're correct, Your Honor.

21          So using the as-applied analysis as applied to the

22   former president, that's correct.

23          THE COURT:  Okay.  So no -- no need to resort to (dd)

24   under -- under this argument.  Okay.

25          Let's say you did resort to (dd), what are the

1    standards in (dd) to know?  If you're really trying to plan

2    your conduct and foresee the potential for criminal liability,

3    then how would you know?

4         MR. BRATT:  So contrary to how Mr. Bove describes it,

5    those words are susceptible to ordinary dictionary definitions,

6    and, particularly, the word "need."

7         THE COURT:  Uh-huh.

8         MR. BRATT:  So there has to be some demonstrated reason

9    for having it, some demonstrated justification for having it.

10   And so I would not concede at all that those terms are vague.

11   I think some of the arguments we've made in the motion to

12   compel arise in a different context, and we are using that term

13   in a different context.  But that does not affect the vagueness

14   analysis as to 793, as applied to the former president.

15        THE COURT:  Okay.  So what -- in the jury instructions,

16   hypothetically, in this case, how would you define

17   "unauthorized," and how would you define "entitled to receive"?

18        MR. BRATT:  So I'm going to have to say, Your Honor, I

19   really don't want to cobble something together as I'm just

20   standing here.

21        THE COURT:  Okay.  Okay.

22        MR. BRATT:  We can provide briefing for you on that,

23   and I'm sure that we would have opportunities in the future to

24   do that.  So I would, I guess, ask the Court's --

25        THE COURT:  Well, it -- the analysis of the vagueness

1  challenges kind of invariably leads me to wonder, well, okay,

2  how will these terms be defined for the jury who will be having

3  to apply these terms?  And then, are we going to be looking at

4  such diametrically opposed definitions of these terms that it

5  will -- it will be hard to reach a consensus?

6       MR. BRATT:  So we certainly will be looking at other

7  793(e) charges that have been given.  We will look at the facts

8  of this case.  And we will brief it for the Court and come up

9  with an instruction that we believe is legally sufficient and

10  appropriate for the facts of this case.

11       THE COURT:  Okay.  All right.  So let's make sure we

12  haven't overlooked any of the clauses.  I think we've talked

13  about "unauthorized" and how it, on the government's view,

14  tracks the Executive Order.  Same with the "entitled" clause;

15  is that correct?

16       MR. BRATT:  Right.  And, again, under the unique

17  circumstances of a failure to deliver, a lot of that language,

18  in many ways, drops out of the case.

19       THE COURT:  But from the statutory text, why does it

20  drop out?  Because if we look at the original language that I

21  started this hearing off with Mr. Bove, it does -- it does

22  contain the charge, and I believe the indictment does as well.

23       MR. BRATT:  Yes, it does.  But our proof is there was a

24  failure to return.  So we don't have to postulate to whom it

25  would have been returned to satisfy the statute.

             1             He never did it.  So we don't really get into the

             2    question of who was entitled to receive it.

             3             THE COURT:  Okay.  All right.  Let's see, then.

             4             All right.  So you would agree, of course, during the

             5    presidency, the access is authorized?

             6             MR. BRATT:  Yes.

             7             THE COURT:  Okay.  So then it became unauthorized --

             8    just correct me if I'm wrong -- the moment the presidency

             9    ended?

            10             MR. BRATT:  And he had removed the documents, correct.

            11             THE COURT:  Okay.

            12             MR. BRATT:  Yes.

            13             THE COURT:  So in terms of the indictment, the lack of

            14    authority, does it stem from the absence of a clearance alone,

            15    or is there some other source for the lack of authority?

            16             MR. BRATT:  So, certainly, he doesn't have a clearance.

            17    So that -- that's part of it.

            18             THE COURT:  And that's because the clearance vanishes,

            19    effectively, when the presidency ends?  Is that how it works?

            20    I'm just not familiar.

            21             MR. BRATT:  I would say that -- the way I would say it

            22    is that the lawful access ends at the end of the presidency,

            23    because there is not a clearance that is granted during the

            24    course of the presidency.

            25             THE COURT:  And there is no requirement that there be a

1   demand for the documents in order for the retention to be

2   unlawful; is that correct?

3        MR. BRATT:  Unlike (d), where the unlawful activity is

4   predicated on there being a failure to return on demand; under

5   (e), that's correct.

6        THE COURT:  Okay.  Are you familiar with any cases

7   where you have this, sort of, there was authority, and "then

8   the authority was lost" type scenario?

9        MR. BRATT:  So we have cases where individuals have

10  taken classified with them after their employment ends, and in

11  many instances, they no longer have a clearance.  The retention

12  is unlawful for other reasons.  Keeping it in one's home -- in

13  one's home is not a -- a lawful means of having possession of

14  the -- of the documents in that sort of setting.

15       But, yes, we do prosecute people who no longer have

16  their -- no longer have active clearances.

17       THE COURT:  So, government employees, for example, that

18  would have had authority but then exceeded the authority, for

19  lack of a better term.

20       MR. BRATT:  Right.  But even when they were government

21  employees -- and this is part of our response, the factual

22  response to the Q clearance issue -- is that, even if you have

23  lawful access to it under the appropriate circumstances of your

24  job, it doesn't mean you can remove it and keep it at home.

25  I've had an active Q clearance for about 15 years.  I can view

1   Q-classified materials in a SCIF.  I can't take them home and

2   put them in my basement.

3          THE COURT:  Certainly.  Certainly.  Okay.

4          Now, just again drilling down on the authority piece,

5   are you familiar with any cases where courts have had to define

6   the term "lack of authority" or "unauthorized" without a

7   statutory definition?

8          MR. BRATT:  For 793, or for any other statute --

9          THE COURT:  Just any other case.  Yes, I'm wondering --

10  I know, for example, in the Van Buren case, it's a CAFA

11  decision with respect to exceeding authorized access.  And I

12  was just curious if there is any broadening beyond the 793(e)

13  context, is there any helpful case law to address this issue of

14  "unauthorized" when there is no statutory definition?  Because

15  I know your position is we looked at the Executive Order.

16  That's not, of course, in the statute.

17         So I'm wondering what courts have done, for example, in

18  that scenario, faced without a -- faced with no statutory

19  definition of the term "unauthorized."

20         MR. BRATT:  Based on the briefing that was in front of

21  us, we didn't look for those cases.  We could do an analysis

22  for the Court, if that's what the Court would want.  I'm not

23  aware of how -- I can't draw an analogy to a similar type of

24  statute that has "unauthorized" as part of the -- part of the

25  element for the offense.

1          THE COURT:  Okay.  So then I guess tell me a little bit

2     about the count -- the Count 19.  What happened with that

3     count?  And why -- why was there a formal clearance on the

4     books that had to be deactivated retroactively?

5          MR. BRATT:  Right.  So first, with respect to Count 19,

6     we have provided them discovery on it.  There are some things,

7     as is clear from our papers that the Court has, that we have

8     withheld.  But they have the original memorandum and the

9     original back-and-forth from, I believe it was February of

10    2017, when the -- when the former president was put on the

11    database of individuals who have -- who are authorized to

12    access Q-level material.

13         I believe that memorandum cites to a regulation that

14    gives the secretary the authority to do that, wholly apart from

15    the ordinary vetting that somebody would go through to get a Q

16    clearance.  We provided that.  We provided the memoranda and

17    some other materials related to what occurred over the last

18    summer.  That's -- that's what we have given them.

19         THE COURT:  Uh-huh.

20         MR. BRATT:  And that -- and based on what we have

21    been -- has been represented to us by the Department of Energy,

22    that is essentially the world universe of materials they have

23    on that subject.

24         THE COURT:  At some point, though, it was -- it was

25    discovered, correct, that this clearance still existed

1   post-indictment?  So walk me through factually what happened

2   there.

3          MR. BRATT:  So factually, somebody from the Department

4   of Energy notified us of this fact and of what they were going

5   to do.  And, again, we produced in discovery the 302s, I

6   believe there are two 302s, of the interview with this official

7   from the Department of Energy -- of these two interviews with

8   the official.

9          THE COURT:  Are there any other documents that -- that

10  would speak to the -- to the -- to the chronology here that

11  there was a clearance, technically, in the Department of Energy

12  database, but that after indictment, it was removed?

13         MR. BRATT:  So, again, never say never because I can

14  get a phone call from the Department of Energy, having heard

15  about proceedings today, and said, oh, we found a few other

16  things.  But putting that aside, we have produced, other than

17  the things that we have withheld, what the Department of Energy

18  has represented to us is what they have on this subject.

19         THE COURT:  And what you have withheld, just so I

20  understand, are -- are what?

21         MR. BRATT:  Some internal emails.  There is some drafts

22  of a memorandum that were circulated within the Department of

23  Energy.  Those are essentially it.  It's really more of some

24  communications about a draft of at least one of the memos.

25         THE COURT:  Okay.  Let's see.  Let's turn to the intent

1    element, willfully.  Is it your position that it's the standard

2    simple willfulness that we were talking about a moment ago with

3    no extra layer of bad faith?

4         MR. BRATT:  So I like to refer to it as the "Bryan

5    standard of willfulness."  And that you do have to have a bad

6    purpose; that is a common Bryan instruction.  But you do not

7    have to have the heightened mens rea of, say, a tax

8    structuring -- or a money structuring case.  That is the

9    subject of -- it's either Ratzlafv or Cheek.

10        THE COURT:  So in 11th Circuit pattern, is the word

11   "bad purpose" included?

12        MR. BRATT:  So I don't have the instruction in front of

13   me.  I know we have used that term, I think, in -- in the

14   discussions.  I think Rosen talks about Morison -- the Morison

15   instruction.  And I think at least one of the other cases

16   references an instruction that was a 793 instruction that was

17   given, that the bad purpose language was used.

18        THE COURT:  Okay.  No, I'm aware of B91A and 1B.  One

19   contains a bad purpose reference and the other one doesn't.

20        So, okay.  All right.  Let's see.  Anything further on

21   willfulness, in your view, as it informs the vagueness

22   challenge?

23        MR. BRATT:  No.  I -- I think, again, when you stack

24   everything up, the notice that the former president had, the

25   admissions that are in the indictment, the -- and I know --

1          THE COURT:  And the notice that you're referring to is?

2          MR. BRATT:  Is his awareness that it was illegal to

3    mishandle classified information.  He made public comments

4    about that several times during the course of the -- of the

5    campaign.

6          THE COURT:  But were those comments geared towards

7    a -- a president's decision or a vice president's decision

8    from -- to -- to retain documents?

9          MR. BRATT:  They dealt with his opponent, Former

10   Secretary of State Clinton, who was herself an original

11   classification authority, and her having had classified

12   information on a personal server.  That was the context.

13         THE COURT:  Okay.  So you're saying there was notice

14   based on the public comments.

15         MR. BRATT:  Right.  That's paragraphs 23 and 24 of the

16   superseding indictment.  In their reply brief --

17         THE COURT:  But just to -- just to turn back to that

18   point.  So going through the notice, if you're a former

19   executive, again, trying to foresee reasonably whether you

20   would be facing criminal liability, you would see, okay, no

21   criminal liability to date, correct, for officials that had

22   classified information postposition?

23         MR. BRATT:  Are you saying no prosecutions?

24         THE COURT:  Correct.

25         MR. BRATT:  Well, so putting aside presidents and vice

1    presidents, there have been prosecutions of other high-ranking

2    officials for their mishandling of classified information.

3    That has occurred.

4          THE COURT:  Okay.  But no prosecutions of executives or

5    vice presidents?

6          MR. BRATT:  That is not part of the notice for purposes

7    of Fifth Amendment due process.

8          THE COURT:  Well, the Ford case, for example, talks

9    about reasonable foreseeability.  And so that's why I'm kind of

10   asking, you know, putting yourself in the -- in the position of

11   a former executive, trying to map out your conduct, and you see

12   sort of the constellation of what has happened historically,

13   does that factor in at all?

14         MR. BRATT:  I don't think that factors in.  That may be

15   relevant to willfulness, and that's certainly something that

16   the former president could testify to, should he choose to do

17   so.  But as a legal matter, as to whether or not, as applied to

18   him, this statute is void for vagueness, no.

19         THE COURT:  And that's because the clauses that exist

20   already coupled with the judicial glosses, you think, provides

21   adequate notice in the context that we have here under the

22   circumstances?

23         MR. BRATT:  Correct.  Provides adequate notice and also

24   protects against arbitrary enforcement.

25         THE COURT:  How so?  Can you speak to that arbitrary

1   enforcement?

2          MR. BRATT:  Yes.  And that's really a corollary to fair

3   notice, that if the criteria are clear, a prosecutor cannot

4   charge a case that go -- that would go beyond those criteria.

5          THE COURT:  Uh-huh.

6          MR. BRATT:  And that's the -- the limitation on

7   arbitrary enforcement as, you know, described in Kolender.

8          THE COURT:  Well, there is a suggestion in the -- in

9   the motion and in the reply that there -- that this -- that

10  this arbitrary enforcement is featuring in this case.

11         MR. BRATT:  They make the argument repeatedly that

12  decisions were made for political reasons.  They have their

13  vindictive selective prosecution motion.  That is wholly

14  separate from whether or not, consistent with the Fifth

15  Amendment, this indictment, these charges, provided the former

16  president fair notice.

17         THE COURT:  So you don't see any relationship to the

18  arbitrary enforcement component of due process?

19         MR. BRATT:  If there are knowable and clear criteria to

20  guide the decision of what the elements are to charge, that is

21  both adequate notice and that guards against arbitrary and

22  capricious enforcement.

23         THE COURT:  Okay.

24         MR. BRATT:  And I would add one other important

25  as-applied factor in this case, which is -- which is in the

1   indictment, which is that they make -- they sort of brush it

2   off in the -- in their reply brief, but the nature of these

3   documents, as alleged in the superseding indictment, did

4   put -- and this is very important for an as-applied

5   challenge -- and both Hitselberger and Kim talk about the

6   nature of the -- of the documents, what the defendants in those

7   cases would have seen, the top secret, and many cases here, the

8   SCI compartments, the special access programs, all of that in

9   an as-applied case, those are important factors in whether or

10  not these charges are vague as to him.

11          THE COURT:  Given the sensitivity?

12          MR. BRATT:  Correct.  Correct.

13          THE COURT:  Okay.  Does it matter, for purposes of

14  assessing this foreseeability concept I have mentioned, that

15  there is no criminal enforcement mechanism in the PRA itself?

16          MR. BRATT:  No.  No.  Not at all.  Because those are,

17  again, entirely separate statutes.  And, if anything, the PRA

18  puts them on greater notice that what he was doing was not

19  lawful.

20          THE COURT:  Does it matter that there is case law --

21  and I know this is subject for our next motion -- but that

22  presidential decisions with respect to designating documents as

23  presidential or personal, in some references in case law, have

24  been characterized as effectively unreviewable?

25          MR. BRATT:  So we're not in a judicial review situation

1    here.  These are charges in an indictment.  And it will be for

2    the jury to decide, based on the facts that come out and the

3    testimony of witnesses, as to whether or not there was a

4    violation.  This is not --

5              THE COURT:  I guess what I'm saying, though, is if --

6    again, if you're putting yourself in the mind of an executive

7    trying to foresee the criminality, potentially, of conduct, and

8    you say, okay, there has been no president or vice president

9    ever charged with possessing classified information

10   post-presidency, and there is no criminal enforcement mechanism

11   in the PRA, and there is some case law that says that it is

12   unfettered discretion, and I was the original classification

13   authority for the documents, is there not a point at which one

14   would say it would not have been reasonably foreseeable, given

15   that landscape, to expect criminal liability?

16             MR. BRATT:  So I don't think that sort of analysis --

17   that goes beyond the Fifth Amendment due process.

18             THE COURT:  That's a willfulness argument?

19             MR. BRATT:  That's a willfulness argument; correct.

20             THE COURT:  Okay.

21             All right.  Now, just to be clear, there is no NDA that

22   was signed, of course, by a former president, so you wouldn't

23   have that sort of fact in a case?

24             MR. BRATT:  That's correct.

25             THE COURT:  Okay.  And then -- okay, so just -- my last

1    question really is just walk me through the set of judicial

2    glosses that you have to -- you have to cobble together.  And I

3    know this -- there is at least a closely held component.  I

4    want to make sure I understand the full set of extras that

5    we're talking about.

6         MR. BRATT:  And I guess I would not agree -- I would

7    respectfully take issue with the term "cobbled together."  But

8    what --

9         THE COURT:  Well, beyond the text, let's say.

10        MR. BRATT:  Sure.  There is the gloss that Gorin and

11   Heine put on, that the -- the definition of relating to the

12   National Defense, what National Defense information is.  There

13   is the closely held narrowing that also comes from these two

14   cases that Campa defines as what the government endeavors to

15   keep from the public.

16        And I just want to pause for one second because just

17   because Campa arose in a context of sufficiency of the

18   evidence, that evidence was sufficient because Campa adopted

19   the Gorin definition.

20        THE COURT:  I think you're correct about that.

21        MR. BRATT:  There is also the use of the Executive

22   Order to define entitled to receive, and it also bears on

23   unauthorized -- unauthorized possession.  There is also -- and

24   we can discuss --

25        THE COURT:  So without the Executive Order, would you

1    have a vagueness problem?

2         MR. BRATT:  I -- I -- I don't think so.  Because I

3    think, with respect to unauthorized possession, as the Court

4    correctly said, the starting point is the plain language of the

5    text, and the ordinary dictionary definitions that a -- of

6    those terms, so I don't think so.

7         THE COURT:  So let's talk about the definitions.  There

8    is some dispute here that you've added the word "official," and

9    that it doesn't really come from the definitions.

10        What is your response?

11        MR. BRATT:  We quoted -- and I can double-check.  We

12   did cite-check our briefs.  We cited from Black's Law

13   Dictionary; I think, Random House; maybe -- I forget what the

14   third one is.  So those are -- the terms that we used, I

15   believe, came from dictionaries.

16        THE COURT:  I would have to go back and see whether the

17   word "official" was there.

18        MR. BRATT:  I think that's the Black's Law definition

19   that we used.

20        THE COURT:  Okay.  Well, I don't want to delay things.

21   So, okay.

22        All right.  Going through the list.  So we've talked

23   about "closely held."  There is a great bit of law on that

24   prong.

25        The "entitled to receive" and the "authorized," you say

```
1    comes from the Executive Order and then, the ordinary

2    definition --

3              MR. BRATT:  Correct.

4              THE COURT:  -- of lack of official permission?

5              MR. BRATT:  Well, but also, here -- I'm looking

6    at -- I'm looking now at our brief.  So the -- we do not -- I

7    don't -- we're not quoting.  We don't have quotation marks

8    around the Black's Law dictionary.  But from Random House, we

9    say defining "authorization" as, quote, "permission or power

10   granted by an authority."  And then from Webster's Third

11   International, defining "authorized" -- quotes -- to quote,

12   "endorse, empower, justify, permit by, or as if by some

13   recognized or proper authority."

14             THE COURT:  Permission granted by authority.  Okay.

15             MR. BRATT:  Yes.

16             THE COURT:  All right.  And then any other glosses that

17   one would need?

18             MR. BRATT:  There is also -- and we can put to another

19   day and brief whether or not the Court should apply it.  But

20   there is the Morison clause, the potential for harm, which the

21   4th Circuit has adopted.

22             THE COURT:  What's your view on that?

23             MR. BRATT:  My view on that is we will -- we will give

24   you something at a -- at a -- at a later date as to how that

25   may or may not apply to this case.
```

```
 1              THE COURT:  How do you not have a view about that?
 2              MR. BRATT:  So some of it has to deal with a --
 3   National Security Division policy of how we look at these
 4   cases.  We have -- not -- we have advocated the courts not to
 5   use it, but there were certain circumstances about those cases
 6   where it made sense to do so.  So I -- I am reluctant to commit
 7   to a position standing in front of you today, Your Honor.
 8              THE COURT:  But there is a potential for adding what
 9   language?
10              MR. BRATT:  Potential for harm.
11              THE COURT:  Potential for harm.  And so how would that
12   fit into the three elements?
13              MR. BRATT:  So it would be -- it really fits into -- to
14   all of them.  It fits into the charge writ large.  And it would
15   be something else that the jury would be asked to find, that
16   whether or not --
17              THE COURT:  But that the -- that the release of the
18   documents would cause potential harm or that you knew that
19   release of the documents could cause potential harm?
20              How exactly is it formulated?
21              MR. BRATT:  The former, that the documents -- the
22   unauthorized -- the mishandling of the documents has the
23   potential for harm.
24              THE COURT:  And in this case, it would be the
25   retention?
```

1          MR. BRATT:  Well, retention is the crime.  But the

2    consequences of the retention has the potential for harm.

3          THE COURT:  Okay.  All right.  Anything further,

4    Mr. Bratt, on the vagueness?

5          MR. BRATT:  I don't think so.  I think Mr. Harbach will

6    respond to some of the points that Mr. Bove made about the

7    Presidential Records Act and the Judicial Watch and Clinton

8    situation.

9          I would say, Your Honor, that we do not concede that

10   there was classified information in The Clinton Tapes.  And I

11   actually think it's not a good example to point to the book,

12   because those books, like any other former official's books,

13   will go through a classification review.  So if there were

14   classified that was in the Taylor Branch book, it would have

15   been taken out.

16         THE COURT:  What about in the case of Former President

17   Reagan?  I think there is no dispute that his materials

18   contained classified information.

19         MR. BRATT:  That's correct.  Yes.

20         THE COURT:  And -- and his conduct would have been post

21   enactment of the PRA?

22         MR. BRATT:  He was the first president who was subject

23   to the PRA.

24         THE COURT:  Okay.  All right.

25         Okay.  Then let me hear any rebuttal from Mr. Bove, and

1    then we will, as usual, break for lunch around 12:00 or 12:15,

2    and then resume with Motion Number 2.

3          MR. BOVE:   Thank you, Judge.

4          There is just a few discrete points that I would like

5    to make in response.  One relates to the Entitlement Clause.

6    It seemed that -- that the position from the government was

7    that you can ignore that on these facts because they allege

8    that President Trump did not timely return the documents.  And

9    I think that flips the standard on its head because the

10   question is fair notice in arbitrary enforcement and what it

11   looks like to someone in President Trump's situation on a

12   prospective basis when you look at the terms of the statute,

13   what's required.

14         And so to say that, after the fact, he never returned

15   them, so the Court doesn't have to analyze "entitled to

16   receive" in our vagueness challenge, that doesn't work.

17         With respect to the Authorization Clause, it -- the

18   discussions seem to turn on:  If there is a clearance, then

19   authorized; if no clearance, not authorized.

20         That, of course, is -- is inconsistent with President

21   Trump's statement in the indictment regarding Brennan, where he

22   speaks to a long-term practice of former officials being

23   permitted to have access to classified information.  So that's

24   one source of ambiguity.

25         And another relates to one of the witnesses that I

1    referenced when I was up here earlier, and the fact that prior

2    to President Trump's taking office as a candidate, he was

3    treated as if he had a clearance and had authorization and

4    everything that's required by the Executive Order to have

5    access to classified information.

6          And so, yes, that bears on his intent if we were ever

7    to get to a trial, but it also bears on -- what could

8    authorization mean if -- if an incoming president is still

9    being offered access to classified information without a

10   clearance?

11         THE COURT:  And is that what you allege was going on

12   here?

13         MR. BOVE:  That's what the -- the government's witness

14   makes clear happened here, that the -- that President Trump

15   received briefings as a candidate at Trump Tower.

16         THE COURT:  What about after the presidency ended?

17         MR. BOVE:  We have -- we have -- I'm not aware of

18   briefings.  But what I am pointing to in the post-presidential

19   period is the statement in the indictment that President Trump

20   believes and understands that there is a long-standing practice

21   of former officials having access to classified information.

22         So all of these things, sort of -- I call into question

23   the scope of the term "authorization" under the statute; and, I

24   think, strongly support our position that it can't be limited

25   to the Executive Order.

1     THE COURT:  You would agree, of course, that declaring

2     a statute unconstitutionally vague is a quite extraordinary

3     step, and that before you do that, you would -- you would have

4     to and be obliged to consider the judicial glosses one by one.

5     So why wouldn't that just be the appropriate course to do in

6     this case?

7     MR. BOVE:  Well, Judge, that's not what Davis says.

8     Davis says that if Congress didn't get it right, the Court's

9     job is to strike the statute.  I certainly respect that this

10    would be a significant motion to grant in the history of the

11    case law on these issues.  Most, if not all of that case law,

12    predates the retrenchment that we've talked about in Davis.  So

13    I understand that it's significant, but it's warranted here.

14    And unlike -- many of these cases, when we talk about

15    Schulte in SDNY, there -- that judge is bound by a

16    2nd Circuit's holding in Heine.  When we talk about all of the

17    EDVA cases, Rosen and the following, they are bound by that

18    chain of authority I discussed from the 4th Circuit.

19    At most -- and I heard what Your Honor said about

20    Campa.  At most, there is 11th Circuit law about the

21    closely-held component of the NDI Clause.  There is nothing

22    else in this circuit, and the Court must balance that against

23    the language in Davis, emphasizing the separation of powers

24    issue and also emphasizing the fact that constitutional

25    avoidance, to the extent it's going to come up, can't be used

1    to broaden a statute.  It can be -- that would be

2    inconsistent --

3         THE COURT:  Their point is that you don't even have to

4    get to the arguably standardless (dd) because you just look at

5    the waiver, which speaks directly to the presidency.

6         MR. BOVE:  Thank you.  That was one of the points that

7    I wanted to cover.

8         If the Executive Order -- if the Court is going to

9    treat that as another clause -- and we have discussed that, you

10   understand our position -- and that analysis would have to

11   start at 4.1, the general requirement about -- about

12   restrictions on access.  So there is three of those.  Favorable

13   determination of eligibility; that happened here, that's why

14   President Trump has the documents.  The person signed an

15   approved nondisclosure agreement.

16        The government hasn't disclosed a single NDA signed by

17   President Trump.  That never happened because --

18        THE COURT:  Well, I think they just explained that,

19   that no such NDA would exist in the case of an executive.

20        MR. BOVE:  I think I -- I understood what was said was

21   that the clearance records would not exist, not that an NDA

22   would not exist.  But to the extent there is a distinction,

23   either way, they -- the government itself did not abide by the

24   Executive Order with respect to President Trump.

25        And so I'm still talking about 4.1 here.  The third

1    part, I think, is --

2         THE COURT:  Wait.  What's the lack of compliance with

3    the Executive Order?

4         MR. BOVE:  That access was granted to President Trump.

5         THE COURT:  And that happened just simply by virtue of

6    the position, without any formal documentation?

7         MR. BOVE:  As far as I understand it, yes, none has

8    been disclosed.

9         THE COURT:  Okay.

10        MR. BOVE:  And that is inconsistent with 4.1(a)(2).

11        So the -- the -- in terms of what went on here and what

12   President Trump is on notice of, what he is on notice of is

13   that the government doesn't really mean what it says in 4.1.

14        But in 4.1, the third prong is "need to know."  And I

15   think the government didn't discuss the definition of "need to

16   know" in any great detail, which is that Section 6.1(dd).  And

17   I just want to make a brief point about that.

18        That definition requires consideration of whether the

19   recipient -- I'm quoting -- "requires access to specific

20   classified information in order to perform or assist in a

21   lawful and authorized government function."

22        And in terms of what type of notice in any narrowing

23   that that definition adds to the statute, what we have here is

24   completely circular logic.  The definition uses the word

25   "authorized."  It's the same word.  All that's happened here is

1   the government -- the prosecutors here are telling Your Honor

2   that they should get to just decide internally

3   what "authorized" --

4        THE COURT:  But isn't it just, okay, you no longer are

5   serving in a government function, so you don't have a need to

6   know?

7        MR. BOVE:  No, Your Honor.  And that's refuted by the

8   indictment itself, the allegation they chose to include where

9   President Trump recites the long-standing practice of former

10  government officials having access to classified information.

11  So the -- and not just presidents.  Mr. Brennan is the -- is

12  who he is talking about there.  And so this 4 point -- the

13  other section relating to former presidents is not the only way

14  in which this Executive Order applies.

15       Our point is that this definition simply incorporates

16  the same word, "authorized," and just says:  Don't worry.

17  We'll decide it at DOJ.

18       That is not consistent with the vagueness doctrine.

19  It's absolutely inconsistent with Davis.

20       The next point that I wanted to make is that the other,

21  sort of, actual notice argument that the government presented

22  here this morning is that President Trump was aware of the

23  situation with Former Secretary of State Hillary Clinton.  How

24  did that bear on his actual notice?  She wasn't prosecuted.  So

25  to the extent that that informed his view of how 793 applies --

1    and we've discussed this at length in our selective prosecution

2    motion -- it only bears favorably on this motion.

3          THE COURT:  Well, I think they're saying that, if

4    anything, that just goes to willfulness, and it really

5    wouldn't -- would not factor into the vagueness component.

6          MR. BOVE:  Then -- and I don't understand how that

7    could be the case.  If these are part of the sequence of events

8    leading up to his understanding of the statute, whether he is

9    on fair notice with respect to the application of the statute,

10   is that DOJ historically has not applied it in this way, then

11   that -- that is relevant to:  Was he on fair notice?  And

12   whether in this case, this case here today (indicating), the

13   DOJ is applying that in an arbitrary fashion.

14         THE COURT:  On the -- just the 793(e) cases, document

15   alone, no transmittal, what are the most helpful cases?

16   Because a lot of the cases describe the other components of the

17   Espionage Act, and there is a lot of reliance on elements

18   that don't factor into this charge.

19         MR. BOVE:  I think that every case -- so Gorin, Heine,

20   Morison, every case that, in order to resolve a vagueness

21   challenge, speaks to not only willfulness but also the injury

22   requirement that we've been talking about are favorable to us,

23   because they demonstrate that the text of the statute alone in

24   a documents case is not enough to pass constitutional muster on

25   a vagueness theory.

1          Every one of those cases, where the Court needed to

2     resort to that extra step -- I think it's been conceded,

3     Morison in that way is an outlier.  That's the 4th Circuit,

4     from our view, saying there is not enough here on its face; we

5     are going to add this to clean this up.

6          And I think that that is something that if a court was

7     inclined to -- to view all of these glosses in order to save

8     this thing and make it applicable in this case -- and we don't

9     think that's possible, but if there is any hope of that, it

10    would be to require the -- the injury and potential harm

11    aspects that have been applied in other cases.

12         THE COURT:  So is that your position, that that should

13    be added?  And, if so, how would you add it?

14         MR. BOVE:  No.  Our position is that this must be

15    struck under Davis in the way that the Court most recently

16    imposed all of the judicial glosses we are talking about, has

17    discussed vagueness analysis, which is that Article III courts

18    cannot rewrite statutes to save them.

19         My point is --

20         THE COURT:  Well, there is a pattern of doing that to

21    some extent in the Espionage Act, and I think the question that

22    you have raised is whether the combination of the features

23    under the current circumstances warrants a deviation from that

24    practice of using judicial glosses.

25         MR. BOVE:  Well -- well, I think that we have also

 1    raised a threshold question, which is whether the judicial

 2    gloss practice is viable post-Davis, and I think that Davis is

 3    pretty clear that it's not.  Davis says a vague law is not a

 4    law at all.  It is void on the day it is passed.  No gloss

 5    saves that.

 6           THE COURT:  I don't know if that's a fair understanding

 7    that Davis establishes a categorical rule of forever

 8    prohibiting courts from adding necessary language to save a

 9    statute from an otherwise unconstitutional presentation.

10           MR. BOVE:  I'm quoting from page 2323.  "The role of

11    courts under our constitution is not to fashion a new, clearer

12    law to take its place, but to treat the law as a nullity and

13    invite Congress to try again."

14           So I -- respectfully, I think that is the message of

15    Davis.  And I do not think that pre-Davis judicial loss cases,

16    especially when they're based on Gorin, which relates to a

17    different statute and apply the injury prong, can be

18    incorporated in this circuit --

19           THE COURT:  But you still have the canon of

20    constitutional avoidance.  I mean, it can't be that Davis just

21    eliminates the possibility to make reasonable interpretations.

22           MR. BOVE:  But this -- this line of cases that I'm

23    talking about, all three of them address this constitutional

24    avoidance concept and the potential for tension with the rule

25    of lenity.  In the Skilling case that Mr. Bratt brought up, the

1   Court narrowed the statute to bring it within constitutional

2   limits.

3        What we're talking about here is a one-of-a-kind,

4   first-ever prosecution.  They're not asking you to narrow

5   anything.  They're asking you to look at dictionary definitions

6   that don't say what they're telling you they say, and define

7   the statute so it fits this case.  And under Davis, our

8   position is that that -- that doesn't survive.

9        I would like to make one point about Count 19 and then

10  I'm done, except to the extent the Court has a question.

11       Mr. Bratt's responses about, you know, factually what

12  happened there, and are there any documents related to this,

13  they tie right into the pending prosecution team motion.

14  Because the only reason that he can stand up here and say, I'm

15  not sure, maybe they will read the news about the argument and

16  send me some things, is that they have declined their

17  obligation under the Justice Manual and all the cases that

18  we've cited to treat the Energy Department and the other cases

19  cited in the indictment as part of the prosecution team, and do

20  the case file search that the Justice Manual requires.

21       And they've now said in their briefing multiple times,

22  I think, we are complying with the Justice Manual; that is not

23  true.  And it allows them to stand at a podium like this and

24  say, gee, Judge, I'm not sure, but maybe they will send me the

25  inculpatory information.  And that can't stand.

1          THE COURT:  Okay.  All right.  Thank you.  It is 12:00.

2     We will be recessing for one hour and 15 minutes, and then we

3     will resume argument on the other motion set for today.

4          Thank you.  Enjoy your lunch.

5     (A recess was taken from 12:05 p.m. to 1:19 p.m.)

6          THE COURT:  All right.  Please be seated.  Good

7     afternoon.

8          We are back in session.  This is Case Number 23-80101.

9     I will now hear argument on the motion docketed at 327, which

10    is a motion to dismiss based on the Presidential Records Act.

11    This is filed by the former president.

12         Let me just circle back with Mr. Irving.  Were you able

13    to determine whether you joined in this motion?

14         MR. IRVING:  Yes, Your Honor.  And I apologize for my

15    earlier confusion.  Yes, we did, and that is set forth in

16    docket number 331.

17         THE COURT:  Okay.

18         MR. IRVING:  We did not join the vagueness motion,

19    number 325.

20         THE COURT:  All right.  You need to speak with a

21    microphone because you're not getting picked up.

22         MR. IRVING:  Apologies, Your Honor.

23         So just to restate, for the record, apologies for my

24    earlier confusion.  We said in docket number 331 that we did

25    not join in the vagueness motion, 325, because Mr. De Oliveira

1    is not charged in any of the Counts 1 through 32, the charge

2    793(e), but we did join 327, the PRA motion, which is about to

3    be argued now.

4         THE COURT:  Do you wish to present argument on that

5    motion today?

6         MR. IRVING:  I do not.

7         THE COURT:  Okay.

8         MR. IRVING:  Thank you.

9         THE COURT:  All right.  Well, then, who will be taking

10   the lead on this motion?

11        MR. BLANCHE:  Good afternoon, Your Honor.  So we're

12   jumping around and maybe going to repeat ourselves a little bit

13   from this morning's arguments because there is certainly some

14   overlap.  But to start, it's important to understand why the

15   PRA is relevant to a pretrial motion to dismiss.

16        The statute that President Trump is charged requires

17   that -- that there be an unauthorized retention.  If the

18   Presidential Records Act authorizes President Trump to retain

19   the records, then it's fatal and the indictment can be

20   dismissed.

21        The Court asked early on this morning about whether

22   there were any fact development that was necessary for

23   the -- the vagueness, for the reasons that we said earlier,

24   that there is not any -- for that motion, similarly for this

25   one, there is not either.

1          THE COURT:  But how can that be right?  Your position

2     depends upon a conclusion that there was, in fact, a

3     designation of the records as personal.  And that is not

4     alleged in the indictment.  So it would necessarily require or

5     resort to materials outside the indictment.

6          MR. BLANCHE:  Judge, not materials.  Law outside of the

7     indictment.  And there is nothing wrong with the Court looking

8     at law outside of the indictment.  An easy example is the

9     context of, for example, a 922(g), felon in possession charge.

10    On a -- on a charge to dismiss the indictment in that case, the

11    Court does and often will look to, for example, state law and

12    whether -- and whether the indictment, as a matter of law,

13    fails because of state law.  And so he --

14         THE COURT:  But this is not just a matter of

15    referencing law.  It's drawing a conclusion, applying that law

16    to the factual designations and documents here.  It's not

17    merely a -- a legal analysis in the abstract.

18         MR. BLANCHE:  It's not just applying -- it's not just

19    applying the law, of which there is plenty, upon President

20    Trump's side.  It's also looking at the face of the statute.

21    The indictment and -- and the Special Counsel's opposition

22    brief just state as a matter of fact that the materials at

23    Mar-a-Lago were presidential records.

24         THE COURT:  And there is a dispute about that.  So

25    wouldn't that -- wouldn't that be something to raise in the

1  form of a trial defense and not in the form of a motion to

2  dismiss the indictment?

3      MR. BLANCHE:  We do not believe there is a dispute

4  about that.  I mean, we believe that the law is -- is crystal

5  clear, going back from when the law was passed in -- in the

6  '70s.  I mean, if you step back for a moment, presidents since

7  George Washington, right, have taken materials out of the

8  White House, and -- and it was solely their discretion with

9  what they chose, what a U.S. president or vice president chose

10 to take out of the White House, when they left office.

11     The Presidential Records Act, passed in the late '70s,

12 didn't touch that except to say -- except to say that a

13 president, during his administration, during his administration

14 could keep records as he saw fit.  And those records, which he

15 determined were presidential records, should be delivered to

16 the Archives and to NARA and the other records should not.

17 Period.  They're personal.

18     So there is no -- there is nothing in the text of the

19 statute that makes exceptions, like the Special Counsel wants,

20 for documents that are affixed with any kind of classified

21 markings.  There is nothing in the statute that gives any power

22 to the National Archives to question a president's

23 determination of whether a particular document is personal or

24 presidential.

25     And there is case law -- I mean, if you think about the

1    case law that talks about Congressional reasons for this,

2    Congress knew -- Congress knew about the classification,

3    Congress knew about the executive orders when they passed this

4    law, and they passed the law silent on that.

5         And I think it's instructive when you think about what

6    the Court said in Judicial Watch, which was that they're --

7    that Congress really wanted to limit the scope of any review,

8    and that there is very little oversight authority for the

9    president and vice president's document preservation decisions.

10   So --

11        THE COURT:  All of that might be right.  But, again,

12   why does it warrant dismissal of this 793(e) indictment?

13   Doesn't your position necessarily require me to conclude that

14   the PRA implicitly repealed the Espionage Act, at least as

15   applied in this context?

16        MR. BLANCHE:  Absolutely not.  It doesn't require a

17   repeal.  The Espionage Act talks about unauthorized.  And the

18   bottom line is -- and this is from paragraph 4 of the

19   indictment -- President Trump caused boxes to be transported to

20   Mar-a-Lago when he was still president.  This isn't after the

21   fact.  It's not a former president making a decision about --

22   about what to do with records or what to do with documents.

23        He had original classification authority.  He had the

24   authority to do whatever he thought appropriate with his

25   records.  He was still president when he made that decision,

1    and as such, they are presidential records.  It doesn't require

2    anything outside of the indictment or the case law.

3            I mean -- and by the way, that's the way that NARA has

4    handled every single presidency since the PRA was passed.

5    We're not asking the Court to do anything to -- to stretch the

6    rules or stretch the law.

7            The only time, the only time that the government is

8    taking a different position with respect to presidential

9    records being presidential or personal -- I'm sorry, records

10   being presidential or personal, is with President Trump.

11   Period.

12           If you think about the Judicial Watch case, which

13   involved Clinton's socks, President Clinton didn't even have to

14   go to court in that case.  I mean, so -- so think about that.

15   There is a lawsuit that says, hey --

16           THE COURT:  Well, he wasn't a named party.

17           MR. BLANCHE:  Correct.  Because NARA, NARA, the

18   government, the government stood up and said there is no

19   way -- there is no way that we, NARA, should ever ask that --

20   then President Clinton about what he decided in his -- in his

21   own -- his own decision-making as president were personal

22   records.

23           And, you know, again, it's instructive -- and this is

24   in our brief, but it's instructive to say to the Court now,

25   when considering -- when NARA was thinking about, well, how

1  could we possibly get these tapes back, the idea came up with

2  how they would seize them.

3       And the defendant said -- and I'm citing from the --

4  302 and 303 of Judicial Watch -- that the seizure would be an

5  extraordinary request, unfounded, contrary to the PRA's express

6  terms and contrary to traditional principles of administrative

7  law.  And that's 845 F.Supp 2d 302-03.

8       And if you think about that position that NARA took

9  then, the idea that we would have any thought to go and seize

10  President Clinton's tapes, and why did they think there was no

11  basis to it?  Because President Clinton, while president,

12  didn't send -- send them to the National Archives.  So by

13  definition, he must have sent them to his house because he

14  deemed them personal.  Congress -- that's the way Congress

15  wants it.  And so what happened here --

16       THE COURT:  Again, all that might be right, and I think

17  you have some -- some -- some forceful arguments referencing

18  Judicial Watch.  But, again, I'm not seeing how any of that

19  leads to dismissal of the indictment.  Perhaps it features in

20  the form of a defense and arguments about authority or lack of

21  authority and unfettered discretion in the context of

22  willfulness and -- and perhaps the unauthorized element and the

23  jury instructions on that point.  But to get the relief you're

24  seeking now on this motion, it seems like it would essentially

25  require a ruling, as I said, that -- that the PRA, as applied

1    to this case, eliminates -- eliminates the Espionage Act

2    possibility altogether and, therefore, requires dismissal.  And

3    that's where I think your position ultimately falters.

4         MR. BLANCHE:  Well, when you -- when the Court talks

5    about whether we are eliminating another statute, remember that

6    when the PRA was passed some 30-plus years after -- after the

7    National Defense Act, Congress was well aware of the rules and

8    the statute that existed with respect to the NDA and the

9    president and the vice president's exclusion from that, while

10   president, passed the Presidential Records Act, said nothing

11   about -- said nothing about classified documents or the

12   executive orders which have been in existence also for decades,

13   and passed the law that made plain exactly what the president

14   in his authority could do with respect to -- to records that he

15   accumulated during the White House.  And, made plain, they

16   either go to NARA -- and if they're not presidential records,

17   that means they're either copies of records, potentially

18   administrative records, or they're personal records.  There is

19   no discretionary function.

20        So it isn't -- it is proper for a motion to dismiss,

21   Your Honor, because -- because the -- to prove Counts 1

22   through 32, the government has to prove that the possession was

23   unauthorized.  There is no basis in law for that.  There is

24   simply no basis in law.  The opposition brief just states as a

25   matter of fact.

1          THE COURT:  Well, they say there is a basis in law

2    because the statute says unauthorized.  And you can -- you can

3    borrow from the Executive Order, and you can borrow from

4    dictionary definitions, and that's that.  You don't need to

5    resort to the Presidential Records Act at all, because we're

6    just focused on the elements of the criminal charge.

7          MR. BLANCHE:  That's exactly what they say, because if

8    they were to say, Judge, let's focus on the Presidential

9    Records Act, and the case law, and NARA's position since its

10   passage about what constitutes personal records and, thus,

11   lawfully -- lawfully unauthorized to obtain and to keep, if

12   they engaged in that discussion with the Court, then the

13   indictment is dismissed.  And --

14         THE COURT:  Your arguments might have some -- some

15   force, perhaps in the context of, like I said, a trial defense

16   or maybe any other motions that you have raised, but, again,

17   it's difficult to see how this gets you to a dismissal of the

18   indictment.

19         What case law can you -- can you offer that would

20   support the notion that there is really this inherent

21   incompatibility between the PRA and in a 793(e) charge as

22   against a former president?

23         MR. BLANCHE:  Well, when there is -- when there is

24   tension, which there certainly is here, because the PRA doesn't

25   mention anything having to do with any documents that would be

1   potentially classified under the National Defense Act, it -- it

2   is -- what the -- what the Court should do is look to what the

3   agency has done and what the Department of Justice has done for

4   the -- since its passage.  And that's instructive.

5       You know, we put in our brief the -- plenty of case law

6   that talks about the absence, the absence of precedent is

7   instructive to the Court.  And that's very applicable here.

8       If you think about going back to the first president

9   that -- that was bound by the PRA, President Reagan, I mean,

10  you have a situation that directly -- directly clashes with the

11  PRA and the National Defense Act.  He had classified

12  information in his diaries.  No dispute.

13      I really don't think there is a dispute about the

14  Clinton socks tape case either.  But certainly, with President

15  Reagan, there is no dispute.  So when the Court asks for any

16  kind of precedent, let's look at that case.

17      NARA never even considered -- considered saying, well,

18  there might be personal records, but we have this National

19  Defense Act, and so we are going to either -- even investigate,

20  putting aside charge -- even investigate Former President

21  Reagan for possession of -- of something that should be a

22  violation of the Espionage Act.  That's instructive.  That's

23  very instructive.

24      You can also take what Mr. Bratt and what Your -- what

25  Your Honor asked --

1        THE COURT:  It's -- it might be instructive, but is it

2   worthy of dismissing an indictment?

3        MR. BLANCHE:  Absolutely.

4        THE COURT:  Well, why exactly?  That's the --

5        MR. BLANCHE:  Sorry.

6        THE COURT:  It's okay.

7        MR. BLANCHE:  And you're right.  This also -- we're

8   bleeding into vindictive and selective prosecution here, in a

9   place that maybe the same arguments are going to apply with

10  equal force.  But -- but even short of selective and vindictive

11  prosecution, it is helpful to look at what NARA -- what NARA

12  did here.  And you asked the government whether this crime was

13  completed the day after President Trump left office.

14  It -- it -- in their -- in their view, it was.  And when you

15  consider the fact that not only has the Department of Justice

16  never even opened a criminal investigation prior

17  to President -- or this -- the one against President Trump, and

18  now they have opened two more and closed them both -- but they

19  could have charged -- I mean, if you -- if you accept what

20  they're saying as true, that the Espionage Act trumps that the

21  materials were absolutely not personal, just by definition,

22  then why did they wait until last summer to indict?

23        And Mr. Bratt, you know, prosecutors have discretion

24  and all of that, and sure, there is a place for that at times.

25  But the reason why is -- in our view, aside from the fact that

1    it was completely politically motivated, and that goes to

2    another motion that we have pending before Your Honor -- is

3    because there is no precedent for doing what -- doing what they

4    did here.

5          And it's -- it's challenging to say, well,

6    President Trump, you have to go to trial, or maybe there is

7    another place where you can raise this defense -- when the

8    Department of Justice itself has taken the position repeatedly

9    that discretion -- that discretion around records lies with the

10   President of the United States.

11         It doesn't lie with the Special Counsel.  The Special

12   Counsel should not have been authorized to just announce to

13   themselves and announce to a magistrate judge:  They're

14   presidential records.  We're going to get them.

15         Because under the PRA, under the PRA, by

16   President Trump not transferring records to NARA, to the

17   National Archives, they are personal.  And, you know,

18   it's -- it's --  you continue to see the process of Congress

19   being played out with what President Trump did.

20         The reason why Congress put all that discretion into

21   the president is because the hope was that a president, even

22   after leaving office, would donate and send even materials he's

23   marked as personal back to the Archives, which is exactly what

24   we saw happen here when several boxes were transferred back to

25   the Archives.  And I -- I --

 1          THE COURT:  Well, wouldn't your position -- I mean, the

 2     Special Counsel cites case law that -- essentially, the

 3     position you're taking with respect to this unreviewable

 4     personal designation -- would effectively gut the PRA

 5     altogether, and it would just -- it would just permit

 6     unfettered classification of, clearly, presidential records as

 7     personal without any possibility for judicial review.  And then

 8     there is some indication in the cases cited that, at least with

 9     respect to the review of guidelines, that that sort of question

10     is reviewable.

11          MR. BLANCHE:  Well, with respect to the -- the cases

12     that have to do with reviewing guidelines and maybe the FOIA

13     application of PRA, or whether a document that's presidential

14     is really an agency document, there is a whole different body

15     of administrative law that allows that to be reviewed by the

16     Court; but the Presidential Records Act doesn't.

17          And when you say, well, what's my answer to that?

18     Congress has the ability to change the law.  I mean, there is a

19     pending bill in Congress right now that was -- was offered last

20     March, March of 2023, to make changes to the PRA.  And -- and

21     that's pending.  And that's what -- that's what's supposed to

22     happen.  It's not supposed to be that the Department of Justice

23     can just announce that, notwithstanding what the statute says,

24     that they could investigate because in their inherent -- I

25     mean, think about this, Your Honor.  The cases talk about the

1    limited judicial review, if any -- but we will say limited --

2    of whether a record is personal or presidential.  Think

3    about -- let's assume that that's true for a moment.  Here,

4    it's -- the Court isn't even getting the opportunity to review.

5    The Department of Justice, again, for the first time ever, has

6    decided:  We don't even need the Court to review this.  We're

7    going to decide on our own that the records that President

8    Trump took from the White House while authorized and while

9    president are presidential records and not personal.

10          There is no case law that supports that, and there is a

11   lot of -- well, not a lot -- there's case law that cuts against

12   that.  And it does matter the way that other

13   presidents have --

14          THE COURT:  But I think their argument is also, that

15   even if you -- you conceived of these records as personal, it

16   still wouldn't -- it still wouldn't brush aside the 793(e)

17   charge which does not hinge or depend upon that particular

18   designation.

19          MR. BLANCHE:  Well, there might be some tension.  But

20   my colleague raised it this morning, and it's cited in our

21   papers, that's -- that's the way NARA has handled this.  NARA

22   has handled -- has handled the interplay between personal

23   material, personal material from the presidency, and

24   potentially classified material like The Clinton Tapes, like

25   The Reagan Diaries -- basically was saying, hey, former

1    president, can you take a look and please return them?

2        That's -- and that's -- I'm not -- that's exactly what

3    The -- The New York Times editorial talks about.  And it's

4    not -- and it's not -- and the answer back, by the way, from --

5    from President Bush -- I have a copy if Your Honor would like a

6    copy of it.

7        THE COURT:  Of which case?

8        MR. BLANCHE:  This is -- it's not a case.  It's The

9    New York Times.

10        THE COURT:  Oh, okay.

11        MR. BLANCHE:  I can give it to the Court if you'd like.

12        THE COURT:  Okay.

13        MR. BLANCHE:  But it's -- (tendering document.)

14        It completely confirms and makes plain our entire

15    argument, our entire argument being, look --

16        THE COURT:  Just one moment.

17        Just for the record, this is a January 27, 2023,

18    New York Times article, entitled:  "As Archives Leans on

19    Ex-Presidents, Its Only Weapon Is 'Please.'"

20        All right.  Please continue.

21        MR. BLANCHE:  And yes, thank you.

22        And so what we're saying to the Court and what we said

23    in our motion is NARA has no authority to question or

24    investigate personal records from a former president of the

25    United States.  What NARA said, as relates to every single

1    president except for President Trump, is -- very much agrees

2    with us.  They said exactly the same thing.  They sent a letter

3    out to all of the ex-president's libraries and asked them to

4    look at their personal records to see if maybe there was

5    anything that classified.

6           There is no -- they didn't call Mr. Bratt.  They

7    didn't -- they did no criminal referral.  And, by the way,

8    President Bush, a spokesman for President Bush just basically

9    replied back and said, okay, we're sure we're fine.

10          And so -- and so, by the way, and this is in our reply

11   papers -- the current administration very much agrees with us

12   as well.  So in the course of the Hur investigation --

13          THE COURT:  Right, right.  But that argument doesn't

14   seem to have gone over that well as far as the Hur Report.

15          MR. BLANCHE:  Well, Vice President Biden -- I'm sorry.

16   President Biden wasn't charged.  So we don't know what would

17   have happened with that argument had he been charged.  But Hur

18   was not -- didn't accept it in determining that no charge would

19   be brought anyway.

20          But, again, Your Honor is asking President Trump to

21   give you a reason why, short of trial or short some other

22   proceeding, the Court can grant this motion, given its -- we're

23   at the motion to dismiss stage.  All those factors are -- are

24   something the Court should take into consideration.

25          We don't have a lot of case law, because as Mr. Bratt

 1   conceded this morning, this has never happened before.  NARA

 2   has never given a criminal referral to the Department of

 3   Justice under any circumstances similar to this.

 4       And, by the way, I should say -- Your Honor asked

 5   whether the criminal referral was -- whether President Trump

 6   was told about that.  He was not.  At some point very close to

 7   indictment, I believe, he received a -- a target letter, but he

 8   was not informed at the time.  A year and a half later, he was

 9   informed.

10       So we're -- we're counting up the ways.  And this is

11   maybe not as much of a legal argument as we had this morning,

12   for better or for worse.  But the reason why it's not is

13   because you have a couple of cases involving former presidents,

14   Reagan and Clinton.  And you have NARA and the Department of

15   Justice taking a very firm position that they can have no role,

16   that is, no say in what constitutes a personal record.

17       THE COURT:  What about the American Historical

18   Association case?

19       MR. BLANCHE:  Well, I mean, that case is -- is slightly

20   different but dealt with -- with different facts than whether a

21   personal record of a president could be reviewed by -- in the

22   context of whether it had to be produced and reviewed.  That

23   was -- that was having to do with something slightly different.

24       And, look, that's why we say limited review, and I

25   think that's the same thing that Judicial Watch speaks to as

1   well.

2        THE COURT:  So what is the limited review that you

3   think is allowable?

4        MR. BLANCHE:  Nothing that applies here.  There

5   is -- within the -- within the -- the PRA, there -- there are

6   different definitions, Mr. Bratt addressed some of them, of a

7   presidential record and then others types of records.  There is

8   potentially review about whether a document is actually an

9   agency record, potentially, whether a document is subject to

10  the rules of FOIA that's been marked something different.  So

11  there is another -- there is other areas of law where it

12  potentially could apply.

13       But here, the facts are quite simple.  While president,

14  President Trump took records to his home, like every president

15  before him.  NARA never questioned -- and, matter of fact, not

16  only didn't question, but affirmatively stated in court,

17  repeatedly, that it did not have the authority to question the

18  president's determination of such.  And for the first time

19  ever, NARA took a different view and said, no, here we're going

20  to make a criminal -- a criminal referral.

21       THE COURT:  All right.  NARA, though, isn't the entity

22  initiating the charges.  They made the referral.  And

23  then -- and then -- and then the Department of Justice pursued

24  charges in the investigation.  And so I'm not sure how those

25  cases involving NARA's authority necessarily foreclosed DOJ

1    from bringing a criminal charge with -- at least viewing this

2    under the lens of, is dismissal of an indictment warranted?

3           MR. BLANCHE:  Fair with the following caveat, that

4    if -- if the referral was completely wrong and unlawful under

5    the law, then the Court absolutely --

6           THE COURT:  But walk me through that argument because

7    I'm not sure -- but what exactly is your argument?  That

8    because NARA had never done this before, it creates an

9    impermissible taint in the original referral, but then just

10   shuts everything else down?  What exactly is the argument?

11          MR. BLANCHE:  No.  No.  Our argument is not that simply

12   because they had never done it before, it tainted it.  Nor is

13   our argument that NARA could never refer anything to the

14   Department of Justice.  The examples cited last night in the

15   response by the Special Counsel, if somebody is, you know,

16   caught using drugs in NARA or there is a fight in NARA, that

17   that's -- that's completely separate from what we're talking

18   about.

19          It's not about whether NARA had ever done it before.

20   It's about that NARA knew at the time, based upon a whole body

21   of law and the statute itself, that they had no authority to

22   question President Trump's determination that the records were

23   personal.

24          So the fact that they had not done it before is not

25   surprising because they're not allowed to, but that isn't where

1  the argument should end.  It should also be that they knew,

2  NARA knew, we're not allowed to question this, President Trump

3  took it while he was president?

4          And then in those circumstances, the -- the referral is

5  invalid that, the likes of which, that also case law suggests

6  you can dismiss in those circumstances.

7          THE COURT:  Which case would be most appropriate?

8          MR. BLANCHE:  So there is the -- the cases that are

9  cited involving, for example, SORNA -- the SORNA laws where

10  afterwards there is a determination that the underlying agency

11  determination -- interagency determination about -- a decision

12  about suggesting a charge or referring was so flawed and so --

13         THE COURT:  But aren't those -- aren't those cases

14  predicated upon -- like, the indictment -- the indictment

15  itself in those cases was rooted in the agency rule, which is

16  not what we have here?

17         MR. BLANCHE:  I very much agree that it's not, that

18  there is a slightly nuanced difference.  But the principle

19  remains exactly the same.  So NARA knows we cannot refer this

20  to the Department of Justice because President Trump -- we

21  don't have the authority to question President Trump's

22  determination of personal versus presidential.  And then they

23  refer it anyway, sure.

24         THE COURT:  But is that what they're referring?  In

25  other words, I think what the Special Counsel has said,

 1   pointing to the Inspector General Act, which is that this

 2   agency, just like any other agency's IG, can refer suspected

 3   violations of criminal law to the Department of Justice.

 4        So why wouldn't it just be that; they're

 5   referring -- referring under that standard IG power, at which

 6   point then, the Department of Justice takes the lead and

 7   moves -- moves forward, assessing whether any criminal laws are

 8   implicated?

 9        MR. BLANCHE:  Well, I mean, built into the hypo,

10   Your Honor, was something that's -- that isn't true in this

11   case, which is that they had -- under our argument, that they

12   had a suspicion there was a violation of federal law.  That's

13   not -- NARA didn't have that suspicion.  That's why we're

14   saying it's a sham referral.  Because NARA had occasion over

15   the years to deal with presidential records -- excuse me --

16   with records that were personal that contained classified

17   information, and took the position, very strongly, that there

18   was nothing that could be done about that, certainly not a

19   seizure, as was discussed in Judicial Watch.

20        THE COURT:  Well, certainly, I think you're correct

21   that the notion of a personal seizure from a former president,

22   at that time at least as characterized, was deemed to be an

23   extraordinary act, that, I think, is borne out in the opinion

24   and in the oral argument.

25        So, okay.

1           MR. BLANCHE:  So --

2           THE COURT:  But aren't there other decisions, American

3    Historical Association and then Armstrong, too, that seem to

4    cut back a bit on Judicial Watch's more broad view that that --

5    that classification determination is unreviewable?

6           MR. BLANCHE:  There are.  I very much agree with that,

7    that they suggest and they cut back.  But -- but "Armstrong I"

8    and Judicial Watch and CREW, their reasoning and -- as applied

9    to President Trump and what we have here, so not talking about

10   whether there is a discussion between the president and NARA

11   about what -- how to designate the records or not -- talking

12   about whether a particular record is an agency record as

13   opposed to a personal record, those cases, they do suggest a

14   different analysis by the Court, but we don't have

15   those -- those facts.

16          When you compare our facts, which is President Trump

17   making a decision to take records with him as personal,

18   you -- the only -- I mean, the -- the only law that exists says

19   that NARA has no right to -- to question that.

20          And I appreciate what Your Honor is saying, that there

21   may be a better forum, notably a selective prosecution and

22   vindictive prosecution, where this becomes very relevant to the

23   Court's decision with what to do with this case.  And we agree

24   with that.  But it still -- it's still a perfectly appropriate

25   basis for a motion to dismiss, and here is why -- and here is

1   why.

2           President Trump -- everybody knew about the Clinton

3   socks case.  Folks knew about what had happened with even

4   nonexecutives, vice presidents or presidents, the

5   secretary -- Secretary Clinton, President Reagan, and that -- a

6   lot of press, a lot of litigation around those cases.

7           And the decision is unequivocal that unless you're

8   President Trump -- unless you're President Trump, NARA is not

9   going to -- not only -- not only going to refer, but disclaim

10  any responsibility for even doing anything but asking you to

11  take a look.  And so we're leaking back into a different --

12          THE COURT:  Are you reaching a little bit, though?  I

13  mean, the Judicial Watch decision reserves ruling on the

14  judicial review question and then ultimately pivots to

15  redressability.  In the context of redressability, there is

16  then that necessary discussion about, well, there is no relief

17  that a court can grant because NARA can't intrude in that

18  determination.

19          And so I guess my question is, are you reading more

20  into Judicial Watch than is warranted?

21          MR. BLANCHE:  We are leaping a little bit, Judge, yes,

22  because it's, in our view, outrageous what is going on.  And

23  I'm not trying to overread Judicial Watch.  Its holding is what

24  it is.  But the facts of that case -- Mr. Bratt talked about

25  willfulness, for example.

1          President Clinton hid tapes in his socks.  And NARA

2     said "nothing we can do about that."  And the -- and Mr. Bove

3     talked about this earlier, but the types of communications on

4     those recordings were very similar to a lot of the materials

5     that are at issue in this case, involving world leaders,

6     one-sided communications with world leaders, Afghanistan, the

7     war going on --

8          THE COURT:  Do you know if any of the briefing in

9     Judicial Watch or the oral argument or the record filed on the

10    docket would shed light on whether the tapes contained

11    classified information?

12         MR. BLANCHE:  I don't, but nobody ever got the tapes.

13    So but for the -- that's the whole point here, is they were

14    personal.  And so President Clinton didn't have to do it -- he

15    could keep them in his sock drawer.

16         THE COURT:  Okay.

17         MR. BLANCHE:  And so I -- we will check the record on

18    that.  But I believe there were representations made along the

19    way that they included recordings of one side of a conversation

20    with foreign leaders, obviously, you know, President Clinton.

21    And extensive discussions about the war in Afghanistan.  Hard

22    to imagine that talking to a current president of the

23    United States about an ongoing war wouldn't be classified.

24         THE COURT:  Do you know if there was any follow-up to

25    the Judicial Watch litigation, any next steps, any -- any

1    provision of tapes or anything like that?

2             MR. BLANCHE:  I don't know --

3             THE COURT:  Okay.

4             MR. BLANCHE:  -- Your Honor.  I'm not aware of anything

5    that was done.  And, by the way, The Reagan Diaries are of

6    exactly the same sort, confirmed classified information kept by

7    a president.

8             THE COURT:  But I think the Special Counsel says, yes,

9    but it was in the form of a diary.  And so it's more fair to

10   characterize that, at least in terms of format or initial

11   review, as a personal record, not a presidential, as compared

12   with what is charged here.

13            MR. BLANCHE:  Judge, the way this conversation started

14   is how the interplay of the Espionage Act plays with the PRA.

15   The Special Counsel can't say that and say, well, so it's okay

16   that there is Espionage Act violations because it's a diary;

17   we're okay with that.  So the statute allows for that, but not

18   under the PRA.

19            I mean, if there is -- if there is a personal record,

20   which President Reagan's diary apparently was, that has

21   classified information, it doesn't make -- there is no logic to

22   how the Special Counsel can say, well, for President Trump,

23   personal records, because there's classified, there is an

24   interplay with -- with the national Espionage Act, so we're

25   allowed to go search, but with President Reagan, it's a diary,

1     so it doesn't matter if there is classified information there.

2            I mean, there is inconsistencies -- they can't have it

3     both ways, right, I guess is at the end of the day the point.

4     They can't say, with respect to the Clinton -- Clinton with

5     Judicial Watch, that it's okay that we never made any effort to

6     investigate -- open a criminal investigation about whether

7     there was national security information in President Clinton's

8     socks.  We don't have to do that.

9            And, you know, again, it's worth noting that presidents

10    and vice presidents, including Vice President Biden, are given

11    a lot of autonomy under the PRA to make decisions about how to

12    manage their recordkeeping practices.  And that was intentional

13    by Congress, and that was intentional in -- in the lead-up to

14    the PRA, and for every year thereafter, where the PRA has

15    remained completely untouched, even after The Reagan Diaries,

16    even after Judicial Watch, and the Clinton socks, and more

17    recently, like I said, there is a -- a draft bill in front of

18    Congress.

19            THE COURT:  Does that draft bill -- this is just for my

20    curiosity -- does that actually purport to amend the PRA or do

21    something else?

22            MR. BLANCHE:  I have a -- would you like a copy,

23    Your Honor?

24            THE COURT:  No.  No.  Okay.

25            MR. BLANCHE:  Okay.  Both.  I mean, it -- it's in

 1   addition to the -- to the PRA.  It's called the Classified

 2   Documents Accountability Act.  And it just --

 3          THE COURT:  But it amends the PRA or it just --

 4          MR. BLANCHE:  I don't know if it would technically

 5   amend the PRA, Your Honor.

 6          THE COURT:  Okay.  All right.  Then my last question

 7   is:  In some of the FOIA documents that have been filed in this

 8   action and then cited in the amicus brief, there were FOIA

 9   assertions under Subsection (b)7, which I understand to be a

10   law enforcement purpose shield.

11          Do you know sort of how it is that NARA would be

12   asserting law enforcement privileges in the FOIA documents?

13          MR. BLANCHE:  No.  The short answer is that's -- that's

14   not -- I wouldn't -- I don't have any idea how they would or

15   could.  Given their past practices before this investigation,

16   that wouldn't ring true to me.  But I -- but -- so I don't

17   know, Your Honor.

18          THE COURT:  Okay.  All right.  I don't have anything

19   further for you at the moment.

20          So let me hear from Mr. Harbach.

21          MR. HARBACH:  Good afternoon, Your Honor.

22          THE COURT:  Good afternoon, Your Honor.

23          MR. HARBACH:  It's a little difficult to know where to

24   start, but I will make a suggestion.  There are three points

25   that I would like to make up front, and then if there are any

1    of them that Your Honor has follow-ups on, maybe we can -- I

2    will go wherever you would like to lead me.

3         The -- the threshold -- before the three points,

4    there's a threshold observation about what Mr. Trump is asking

5    the Court to do here.  It's asking Your Honor to find, as a

6    matter of law, at the Rule 12 stage, that because he took these

7    highly classified, sensitive materials relating to things like

8    nuclear capabilities of foreign countries and American military

9    contingency planning, stuff like that -- that because he took

10   them, they are necessarily personal, and that because they're

11   necessarily personal, he could retain them, he was authorized

12   to retain them, and that, therefore, the indictment must be

13   dismissed.  And there are all sorts of reasons that's wrong,

14   and here are the three points.

15        First -- and I think this is worth saying because it's

16   a bit of an elephant in the room today.

17        The documents charged in the indictment are not

18   personal records.  Period.  They are not.  They are nowhere

19   close to that under the definition in the Presidential Records

20   Act.  Mr. Bratt read the definition this morning.  I'm not

21   going to read it again.

22        More to the point for this Rule 12 proceeding, is that

23   the only possible inference from the allegations in the

24   superseding indictment, the descriptions in the superseding

25   indictment of what these documents are, which must be taken as

1    true at this stage, the only possible inference from those

2    allegations is that they were presidential and not personal.

3            Now, Your Honor questioned my friends on the other

4    side, this morning, both of them, about whether there is a -- a

5    fact issue baked into this question.  And both Mr. -- Mr. Bove

6    and Mr. Blanche said that the facts are uncontested.

7            So what we heard that to mean, what we, the government,

8    heard that to mean, is that President Trump took the documents,

9    he knowingly took the documents, and that he never, in fact,

10   designated them as personal, which is to say, he never uttered

11   the words, he never wrote on anything of them that these are

12   personal.  He never told anyone before he left the White House

13   that these things were personal records.  And that -- that --

14   if those are the facts that are uncontested, then we might well

15   agree with that.

16           THE COURT:  Well, I don't -- I don't know if that's

17   fair.  I don't believe there was an admission of guilt,

18   certainly, if that's what you're suggesting.  I think it was

19   more that the inference to be drawn from causing the documents

20   to go to Mar-a-Lago is that there was baked into that, as the

21   Counselor in the Judicial Watch said -- case stated, presumably

22   a designation of something as personal.

23           MR. HARBACH:  Okay.  And I understand Your Honor's

24   point.  I think that's -- that may be a fair characterization

25   of their argument, and I'm going to address that very soon.

1          And -- and the fact that that is their contention

2    should tell you something.  They -- they put -- they don't even

3    allege -- they don't even allege in their papers that the

4    documents are, in fact, personal.  They don't put any evidence

5    forward that they are, because that would be fatal to their

6    Rule 12 claim at this stage.

7          So instead, they rely on this presumption that you have

8    just articulated.  That presumption is premised on a single

9    line from a transcript in a totally unrelated case, and I want

10   to talk more about that.  But I'm just flagging that that is an

11   issue that should not -- that the Court should not treat that

12   as anything remotely presidential, much less a binding

13   admission by the Department of Justice.

14         And as Your Honor has already observed and plainly

15   understands, our view is that President Trump's interpretation

16   would entirely gut the PRA.  So I don't need to explain that

17   because I think you understand it.

18         Suffice it to say that --

19         THE COURT:  Do you think that is what the Judicial

20   Watch opinion essentially authorizes, though, that because

21   there is no way to evaluate or second-guess the archivist's

22   decision to designate something as personal or presidential --

23         MR. HARBACH:  You mean the -- the president's decision?

24         THE COURT:  Yes.  Excuse me.  That essentially, that

25   that does -- that that is the natural consequence and logic of

1    the Judicial Watch decision, which is, essentially, to set up

2    an honor system that -- that we -- we expect will be followed

3    in good faith, but which lacks any real enforcement mechanism.

4         MR. HARBACH:  I would like to talk about Judicial

5    Watch.  And I'm happy to pivot that right now and come back to

6    the other two points in a little bit.

7         THE COURT:  Okay.

8         MR. HARBACH:  The -- I will be honest, the -- the cases

9    that both sides cite in duelling fashion in our briefs:

10   Armstrong I; Armstrong II; Judicial Watch; Peterson, which

11   Your Honor raised; CREW vs. Cheney, you know, they -- and I

12   think one of the courts even observes this, that, you know,

13   there is language in those opinions that's -- that is favorable

14   to both sides.

15        What was helpful to me in understanding them was

16   actually reading them in sequence, in chronological sequence,

17   and a few things stood out to me when I did that.  First,

18   Armstrong I, which is the originating case, was a case about

19   disposal of presidential records.  It had to do with President

20   Bush 41, and others' materials being erased from a computer

21   system, and some parties -- during the last two weeks of the

22   Reagan administration -- and some parties sued to try and stop

23   that.

24        And in Armstrong I the Court said that allowing

25   judicial -- this is at 924 F.2d at 291 -- that allowing

1    judicial review of the president's general compliance with the

2    PRA at the behest of private litigants would substantially

3    upset Congress's carefully crafted balance of presidential

4    control of records' creation, management, and disposal during

5    the president's term of office, and so on.

6              So we think that that trio of terms --

7              THE COURT:  What does "management" mean?

8              MR. HARBACH:  Well, I will tell you what Armstrong II

9    says it doesn't mean, and that is the initial classification

10   decision in the first place.

11             Some of the other cases -- I think there is a pair of

12   CREW vs. Trump cases.  One is a circuit court decision; one is

13   a district court decision.  These are the ones that are most

14   recent.  One of them, if memory serves, concerned an outfit

15   being worried that staffers in the Trump administration were

16   using text messaging platforms that themselves, like,

17   automatically deleted text messages or something.  So that

18   might be an example of management that the Court says, look,

19   you know, that's not for courts to horn in on, the day-to-day

20   operations of the White House.  That might be an example.

21             But the reason that that trio of names is -- the trio

22   of things is important is because what comes next in

23   Armstrong II.  This, as Your Honor has already observed,

24   concerned the reviewability of guidelines for what counts as a

25   presidential record in the first place.

1       And the quotation there that I direct Your Honor to,

2   this is at 1 F.3d at 1294, says:  The Armstrong I Court was not

3   addressing the initial classification of existing materials.

4   The Armstrong I Court discusses only the creation, management,

5   and disposal -- disposal decisions, described in the provisions

6   of the PRA.  None of these decisions encompasses the initial

7   classification of materials as presidential records.

8       Again, that was in the context of guidelines about what

9   counts as presidential.

10       THE COURT:  So does that mean that courts can, say,

11   take a record and say, this is presidential or this is

12   personal?  Is that what it means to, quote, "review a

13   guideline"; in other words, apply the guideline?

14       MR. HARBACH:  In -- in -- maybe.  But for present

15   purposes, our argument is that it -- maybe not in binding

16   fashion -- but suggests very strongly that if the -- that if a

17   court can review the guidelines set down by the executive to

18   govern his White House about what counts as presidential and

19   what counts as personal -- that if that power exists in the

20   judiciary, that it suggests strongly, if it doesn't bindingly

21   hold, that review of presidential decisions about specific

22   documents is authorized.

23       But -- but I want to add something to that, and it

24   concerns the district court decisions that follow.  So

25   after -- after those two, the two Armstrongs, then we've got a

1  series of district court decisions, of which Peterson is one,

2  Judicial Watch is one.

3            THE COURT:  Wait.  So I just want to understand.

4            MR. HARBACH:  Yeah.

5            THE COURT:  So you're saying courts could take a

6  document that was deemed personal by a former president, and

7  then challenge that and say:  I'm looking at the guidelines.  I

8  have reviewed the guidelines.  And I disagree; I think this is

9  squarely a presidential record?

10           MR. HARBACH:  I think it might depend on the procedural

11  context in which the question is put to the Court.  But, for

12  example -- I think this gets to your question -- even the

13  defense has acknowledged that the PRA's -- that the PRA has a

14  self-contained apparatus, whereby the archivist can deploy the

15  Attorney General to attempt to recover presidential records in

16  replevin actions, okay?  So --

17           THE COURT:  Never, though, so far, at least from a

18  former president?

19           MR. HARBACH:  Well, is -- is your question whether that

20  has been -- whether it's been deployed in that fashion?

21           THE COURT:  The answer is no, but you're saying it is

22  possible.

23           MR. HARBACH:  My -- my precise point is that the

24  existence of that apparatus necessarily contemplates judicial

25  review of what is presidential versus personal.  It can't be

1    that the PRA says, you, NARA, can -- can ask the AG to

2    institute a civil action to recover presidential records.  And

3    in the same -- in the same instance be true that a court is

4    powerless to opine on what is a presidential record in the

5    first place.

6           THE COURT:  But wouldn't it be the powerless component

7    comes into play when the person whose documents are being

8    seized says, no, I declared them personal, and I don't have to

9    tell you anything more?

10          MR. HARBACH:  Well, it -- it -- it's even -- but it's

11   even more than that with -- with the defendant, because the

12   defendant here has said, just by virtue of my taking them, they

13   must be deemed personal.

14          If that were true, then it would be impossible for NARA

15   ever to recover any records, presidential or personal, from a

16   former president, because a fortiori, he's got them, which

17   means he took them.  And if that means that that -- that

18   can't -- all we're saying is that it can't mean that there is

19   no judicial review of that decision in the right circumstance.

20   And none of -- none of any of the district court opinions

21   afterwards, certainly not Judicial Watch, holds otherwise.

22          Now, we grant you completely, that the Judge in

23   Judicial Watch was skeptical, but as you know, she didn't rule

24   on that basis.

25          THE COURT:  But I take she didn't rule on the judicial

1    review portion.  But then, when she gets to redressability,

2    it's almost like there is -- the same exact logic applies to

3    the redressability holding.

4         MR. HARBACH:  To a degree.  I think I understand what

5    you're saying.  But that's where you have to remember that what

6    we're in court here for today is not NARA versus Trump in some

7    civil action; it isn't.  And the -- whatever power NARA has or

8    the archivist has or -- or more to the point, in a case like

9    Judicial Watch, whatever power a private citizen has to try and

10   force NARA to deploy its limited authorities says nothing about

11   what the Department of Justice can do in a criminal case,

12   surely not under circumstances like this one.

13        THE COURT:  Do you see any constitutional concerns with

14   the Court delving into the -- nope, former president says it's

15   personal, but judicial review is going to conclude otherwise?

16        MR. HARBACH:  And understandably, as I said at the

17   outset, there is language underpinning some of these opinions

18   we're talking about, making that very point.  But as I said

19   earlier, one of those opinions, though, is the pair of

20   Armstrong opinions.  In other words, part of the reason that

21   the Court in Armstrong II said we're not going to get into

22   judges regulating the creation, disposal, or management of

23   these documents, is just because of the separation of powers

24   concerns that you're talking about.

25        But when you're talking about a case like this one,

1   where the -- the constitutional interests aren't, you know,

2   a -- a private litigant seeking to write a book, but you've got

3   the PRA on the one hand, which is executed by Congress, and on

4   the other hand, the Executive Branch itself -- itself, in this

5   incarnation in the -- in the Department of Justice, seeking to

6   carry out its own important executive function, namely,

7   collecting, preserving, and protecting the nation's most

8   closely guarded secrets.  So that's the first thing.

9        The second thing is that -- and this is a point we --

10  we make in our papers -- that the logic -- the logic of

11  Armstrong II, Peterson, and CREW vs. Cheney -- this is a --

12  this is our interpretation.  But the logic of that is that

13  whatever deference Congress gave to the executive in the PRA --

14  and there plainly is some, of course -- whatever deference

15  Congress gave to the executive via the PRA should not be read

16  to be carte blanche for the president to improperly designate

17  records and thereby thwart Congress's purpose, in enacting the

18  PRA in the first place.

19       And a couple of the opinions -- I think CREW vs. Cheney

20  at one part of the opinion postulates a hypothetical where

21  we -- the vice president were to put forward a guideline that

22  would have effectively rendered all of his legislative records

23  personal; I think that's what it was.  And the Court says

24  we -- that -- whatever deference we owe the executive, it can't

25  be used for that.

1           And I think this is the Court that uses the phrase it

2    would be -- it would be -- border on the absurd to effectively

3    gut the PRA.  And we think the same is true here, that it would

4    be absurd to do that.

5           THE COURT:  Do you view the position in the motion to

6    rest on this implied repeal notion, that you can't have -- that

7    the existence of the civil mechanism in the PRA displaces the

8    executive's ability to bring criminal charges?

9           MR. HARBACH:  Unsurprisingly, absolutely not.  We think

10   there is no -- there is no displacement there.

11          Give me one second.

12          The -- as I said a moment ago, the idea that -- that

13   NARA's power to recover documents is limited to civil

14   enforcement, doesn't at all even suggest, much less imply, that

15   the agency or anybody at the agency is powerless to call up DOJ

16   and say, I think a crime is being committed.  Of course not.

17          And -- and another key point to remember here is NARA

18   didn't refer the matter to the Department of Justice to recover

19   records.  NARA referred the matter to the Department of Justice

20   for criminal investigation when it found a boatload of

21   classified documents in what President Trump sent back to them.

22   That was the trigger for the referral.

23          It wasn't that they were saying, hey, Mr. Attorney

24   General, we really need your help getting these boxes back.

25   Can you -- can you, you know, file a -- can you just go file a

1    criminal action?  Uh-uh.  It was, hey, we found a bunch of

2    classified documents in here, and we need to let you guys know.

3            And one of the things -- on this point, one of the

4    things we point out is in our -- our reply to the amicus that

5    we filed last night is this regulation that suggests not only

6    that NARA is authorized to make a referral in circumstances

7    like that, but they're -- but that they're obliged to.

8            This is -- the citation, Your Honor, is at 32 CFR

9    Section 2001.48.  And as I say, this is in what -- I think we

10   mentioned it in what we filed at, whatever, 5:30 or 6:00 last

11   night.  Sorry about that.

12           Do you have it or would you like me --

13           THE COURT:  I don't have it but -- but I do remember

14   reading that.  So...

15           MR. HARBACH:  Okay.  So I will read a small portion of

16   it into the record.  Suffice it to say, it's clear that this is

17   from the body of regulations that govern -- that governs NARA.

18           And it says:  Any person who has knowledge that

19   classified information has been or may have been lost, possibly

20   compromised or disclosed to an unauthorized person shall

21   immediately report the circumstances to an official designated

22   for this purpose.

23           That's Section A.

24           And the other part that matters is in Section E, where

25   it says in part:  Whenever a criminal violation appears to have

1    occurred and a criminal prosecution is contemplated, agency

2    heads shall use established procedures to ensure coordination

3    with, among other things, the Department of Justice.

4         Why do I mention all of that?  Just -- just to say

5    that, of course, NARA could refer this to the DOJ for criminal

6    prosecution.  And -- and there is even a decent argument that

7    the regulation obliges them to.

8         THE COURT:  So then, I know there is a footnote in your

9    opposition that explains that -- that a defense rooted in -- in

10   the mens rea component could be appropriate, and I was curious

11   if you could shed light on that.  I could see this issue very

12   much rearing its head in the form of jury instructions where

13   the defense argument is defining the term "unauthorized"

14   necessarily will require resort to our view on the PRA.

15        And so perhaps you might be right that -- that this is

16   not worthy of dismissal.  But wouldn't it, at the very least,

17   be permissible in the form of a trial defense?

18        MR. HARBACH:  Maybe.  I don't disagree for one second

19   that we will have a lengthy discussion at a charge conference,

20   or maybe at the -- arguing the motions in limine before we get

21   there.  The point we were making in the footnote, and the

22   reason I said maybe -- I'm not trying to be glib -- is that we

23   think, at best, it is conceivable -- I'm being sincere -- it is

24   conceivable that if Mr. Trump's defense is I, in fact,

25   thought --

1          THE COURT:  But what if it's not even in the form of

2     willfulness?  It's just as a matter of law, these things

3     are personal according to our designation and, therefore, not

4     unauthorized, then what is your position on that?

5          MR. HARBACH:  Okay.  That implicates the second part of

6     the argument, or the second of the three points I was

7     mentioning earlier, which is even if they are personal, does

8     that have anything to do with whether they are authorized under

9     793?  And we say no.

10         THE COURT:  Hold on.  I think you're talking a little

11    fast.

12         MR. HARBACH:  Okay.

13         THE COURT:  Okay.  Please continue.

14         MR. HARBACH:  Sorry.  I will repeat that last sentence.

15    That goes to the second point that I put a pin in earlier,

16    which is whether -- even assuming that they're personal,

17    whether that has any impact or import at all into whether the

18    possession of those documents was authorized under 793.  And

19    that -- I mean, I'm happy to talk about that, if you would

20    like.

21         THE COURT:  Yes.

22         MR. HARBACH:  Okay.  There are several reasons why we

23    think that equivalency can't be true.

24         THE COURT:  Everything is fine.

25         MR. HARBACH:  Okay.  The first is that, as we have

1    said, and as my colleague said earlier today, the authorization

2    to possess classified information that matters for 793 is the

3    one that comes from the Executive Order, not the PRA.  So a

4    fair -- well, how do you know that?  How do you know that,

5    Mr. Harbach?  Well, here is the answer.

6         The Presidential Records Act says zero, zip about

7    classified information, who is permitted to access it, retain

8    it, and so forth.  Both sides agree on that.  The question is:

9    What is the inference to be drawn from Congressional silence on

10   the subject?

11        I'm not totally clear what the -- what the other side

12   says it means, but I will tell you what we say it means.  We

13   say it means that the Court should not infer from silence on

14   Congress's part an intention to disturb the framework governing

15   the handling of classified information that was in place at the

16   time the PRA was passed.

17        In other words, you should not infer any intention on

18   Congress's part by passing the PRA to imbue all personal

19   records of a former president with a permanent exemption for

20   all time from the classification rules.

21        And another point I want to make here.  There was a lot

22   of discussion between Your Honor and Mr. Blanche about -- about

23   tension and overriding and trumping, lowercase T, you know,

24   which -- which wins, the Executive Order or the -- or the PRA

25   or the Espionage Act or the PRA?

1          We think that that -- that is not -- that's not a

2    question that needs to be asked here.  We don't think there is

3    any tension between the two.  And the question, which is in

4    line with a canon Your Honor actually mentioned earlier, the

5    canon of constitutional avoidance says that when a court can,

6    it should harmonize the provisions, it should read them, to the

7    extent possible, to exist side by side.

8          So why do I say they can be read in harmony?  Here is

9    why.  There is -- there is no need to read the PRA, to intrude

10   on the Executive Branch's function or interests in protecting

11   classified information, there is no read [sic] to read that as

12   implicit in their decision to exclude personal records from the

13   coverage of the PRA.

14         In other words, just because something is personal

15   under the PRA -- it definitely means that it's excluded from

16   the PRA's coverage; that's what the statute says; agreed.  But

17   that doesn't guarantee that there -- there can be no other

18   legal constraint.

19         THE COURT:  So, like, in the Reagan case, you had

20   personal records that had classified information, no 793(e)

21   charge.

22         MR. HARBACH:  Well, yes, but there is an important

23   point buried in there, which Your Honor sort of alluded to

24   earlier, and this is where the notion of segregability matters,

25   it's where it comes in.  Because the fact that the definition

1    of personal record or even -- or presidential record includes

2    the idea that it's not just the whole document or none of it,

3    that there could be a segregable part of it.  In other words, a

4    segregable part of an otherwise personal record that might be

5    presidential.

6           For that language to mean anything, it has to mean that

7    much.  It has to contemplate that in the case of a diary, for

8    example, like President Reagan's diaries, you know, that there

9    were little pieces and parts of that that might be presidential

10   records, or in his case, presidential records that -- that were

11   classified.

12          Now, on the question of, well, why wasn't he

13   prosecuted?  That's something else I would like to talk about,

14   the import of all of these other cases, whether it's Clinton or

15   Reagan or Biden.

16          THE COURT:  Do you have a view on whether The Clinton

17   Tapes had classified information based on the descriptions one

18   can draw from the -- from the case itself?

19          MR. HARBACH:  The view is we do not know.  And I don't

20   know if anybody knows.  But it certainly cannot be said, as

21   they said in their reply brief, that it's clear and that -- and

22   that -- I think maybe it even said the department doesn't

23   contest that -- that The Clinton Tapes had classified

24   information on them.  We don't know.  We don't know.

25          THE COURT:  But looking at the descriptions of

1      the -- of the -- of the tapes, and the fact that, as far as the

2      record indicates, they were contemporaneous descriptions of

3      ongoing world affairs, including military exercises,

4      and I'm -- I'm just summarizing -- that why -- why wouldn't

5      that quite clearly verge into the very sensitive territory?

6               MR. HARBACH:  I suppose it -- it might, but that is

7      one -- only one piece of the puzzle in an assessment of whether

8      to launch a criminal investigation.

9               And -- but the point I would like to make, hopefully

10     quickly, about those other cases, is there is -- there has been

11     a lot of -- a lot of mention of these other cases, under all

12     sorts of rubrics, and I'm going to suggest maybe a helpful way

13     to think about it, hopefully.

14               As we see it, there are three places that this idea

15     could hit the ground in the doctrine.  One is in the vagueness

16     and notice context, which is what -- which is why we were

17     talking about it this morning.  We've already talked about

18     that.

19               The second is in the notion of judicial estoppel.  They

20     have mentioned that.  There are lots of reasons why that

21     doctrine has utterly no application here.  And I am happy to go

22     into that in just a moment.

23               And then the third potential place that it hits the

24     ground is in the -- and Mr. Blanche alluded to this, too,

25     quite -- quite correctly and fairly -- in the selective and

1  vindictive prosecution domain, potential -- some potential

2  relevance to that discussion.  But that, again, is not the

3  motion that is on the table today.

4       So I would like to briefly address the estoppel point,

5  if you would like me to.

6       THE COURT:  Yes.

7       MR. HARBACH:  Okay.

8       The -- in their reply brief, the defendants kind of

9  took us to task a little bit for not addressing estoppel in our

10  response.  In their opening brief, they -- they alluded to it,

11  judicial estoppel -- and you know that, but just so the record

12  is clear.  They alluded to it in one sentence followed by a

13  single case without any exposition in their opening brief.  And

14  I'm going to address it here, and I am going to address it

15  to -- with resort to no case other than the one they cited, the

16  Slater opinion.

17       And I think it will illustrate the reason that we

18  didn't see fit to spend any of our precious space on it in our

19  response.  Because all you have to do is read the opinion to

20  see that it plainly --

21       THE COURT:  Can you just explain why it doesn't apply,

22  judicial estoppel?

23       MR. HARBACH:  Sure, sure.

24       The Slater case makes clear -- is Your Honor familiar

25  with the facts?

1          THE COURT:  Yes.

2          MR. HARBACH:  Okay.

3          THE COURT:  I would just like to hear the substance.

4          MR. HARBACH:  Sure.

5          THE COURT:  Okay.

6          MR. HARBACH:  There are two -- there is a two-part test

7    for judicial estoppel that was announced in that case.  This is

8    an 11th Circuit en banc decision.  And what I'm about to say is

9    at page 1181 of the opinion, so it's 871 F.3d 1181.

10         And it says:  Our circuit employs a two-part test to

11   guide district courts in applying judicial estoppel.  Whether,

12   one, the party took an inconsistent position under oath in a

13   separate proceeding; and two, these inconsistent positions were

14   calculated to make a mockery of the judicial system.

15         So when I read that, I confess that I hadn't seen that

16   standard before.  And it's interesting to read the opinion,

17   because among the things that Slater makes clear is that the

18   mental state in part 2 is crucial.  In fact, part of what

19   they were -- what they were doing in the en banc opinion in

20   Slater, is they were reversing prior decisions that had equated

21   the simple failure to disclose an asset on a bankruptcy

22   schedule.  They had reversed opinions where courts had said the

23   failure -- the failure to disclose a loan is enough to impute

24   the mental state.  And the Court here said, no, no, you need

25   more than that.

1          And they elaborated on it a little bit and said that:

2     The Court must take account of all facts and circumstances

3     to -- quoting now -- ensure that judicial estoppel is applied

4     only when a party acted with a sufficiently culpable mental

5     state, and the inquiry includes assessing, quote, whether the

6     party purposely intended to mislead the Court.

7          So what a -- a DOJ attorney said in an offhand remark

8     at oral argument in an entirely different civil case is nothing

9     like what they're talking about in Slater.  And so I'm not

10    going to elaborate on it too much.  Suffice it to say that

11    reading the factors alone makes it quite clear that that's not

12    what was going on here.

13         And, by the way, they -- they mentioned the fact that

14    the Biden Administration, in connection with the Hur

15    investigation, took the -- a similar position to the one

16    they've taken here.  And they suggest that we should somehow be

17    estopped from taking the position we've taken here, because the

18    Biden Administration took that same position on behalf of

19    President Biden in that other investigation.

20         Well, that is just Exhibit 110 for why we are not

21    puppets or appendages of the Biden Administration.  We're not.

22    We're a Special Counsel's office of the Department of Justice.

23    We have our view.  We have explained our view.

24         It happens that the Hur Special Counsel had the exact

25    same view about the interplay of -- of "personal" and

1    "unauthorized."

2        But the last thing I want to mention is that here

3    is -- here is another example that really proves the point.  In

4    his very first appearance before Your Honor, one of the lawyers

5    for President Trump, Mr. Kise -- he is here today -- said to

6    Your Honor -- quoting from the transcript now -- this was in

7    the special master litigation -- said:  What we are talking

8    about here in the main are presidential records in the hands of

9    the 45th President of the United States, at a location that was

10   used frequently during his term as president to conduct

11   official business.  This is not a case about some Department of

12   Defense staffer stuffing military secrets into a paper bag and

13   sneaking out in the middle of the night.  This is, as I say,

14   presidential records in the hands of the 45th President of the

15   United States.

16       Now, am I mentioning that to suggest to Your Honor that

17   they should be estopped from claiming that their records are

18   personal?  Of course not.  We're not saying that.  But I think

19   it does reveal a little bit of the silliness of their argument.

20       THE COURT:  Well, I don't know.  I can't recall here,

21   sitting here, exactly whether there was a final position there,

22   taken on presidential versus personal, or whether it was still

23   to be determined, given the uncertainty of the designations at

24   that point.

25       But in any case, I think your judicial estoppel point

1   is -- is received, and I think the Slater decision is relevant.

2   So thank you for that.

3          MR. HARBACH:  Okay.

4          THE COURT:  Any other points you wish to make on the

5   Presidential Records Act?

6          MR. HARBACH:  Can I just have a moment, please?

7          I don't think so, Your Honor, unless you have any other

8   questions.

9          THE COURT:  No, I am all set for now.  Thank you.

10         All right.  I will hear final argument on this motion,

11  which is 327.  Then I would like to wrap up, hopefully, before

12  3:00.  And if there are any pressing other items that need to

13  be raised before we recess, you may do so as well.

14         MR. BLANCHE:  Very briefly, Your Honor.  With respect

15  to the way that just ended, quoting Mr. Kise from the special

16  master's proceeding, if the Court reviews that transcript,

17  Mr. Kise was taking the government's position at face value and

18  assuming it to be true for purposes of the argument that

19  was -- he was making now.  It certainty wasn't President Trump

20  or Mr. Kise even committing to what we're talking about now,

21  that the records were, in fact, personal.

22         The one important part that I -- needs addressing has

23  to do with the -- again, with the interplay between the PRA and

24  the Espionage Act.  And it's -- it's not -- it cannot be, as

25  the Special Counsel just suggested, using the Reagan example,

1    that you can have a personal record with classified information

2    on it, and that under the PRA, the way that you deal with that

3    is you -- you possibly divide it up.  Maybe you redact

4    something or something like this.

5         If that's -- if that's the case, play that out.  How

6    does that happen in the context of a grand jury investigation?

7    We're not talking -- we're not talking about anything like what

8    happened here, right?  There was no effort here to -- to use

9    the PRA and to use the structure of the PRA as it's been used

10   every other time with every other president to try to collect

11   information that -- that NARA believed that they were entitled

12   to.  This was completely separate, unique, has never been done

13   before, and hopefully will never be done again, the way that

14   this happened.

15        And now the Special Counsel, again, like they did in

16   their papers, just justifies every step they -- that they have

17   taken without honestly representing to the Court that NARA has

18   taken exactly the opposite position repeatedly since the

19   passing of the PRA and --

20        THE COURT:  Okay.  But their position, and it's -- it's

21   correct that NARA is not the one sitting on that table bringing

22   this case, and that -- so, really, that's a red herring.

23        MR. BLANCHE:  Your Honor, respectfully, I don't think

24   it's a red herring, because the reason why we're making this

25   argument is about -- is about a single word in -- in the

1    indictment, which is "unauthorized."  And as a matter of law,

2    we very much believe that under NARA -- and I do think it's

3    appropriate to look at the case law and to the NARA regs and to

4    the PRA -- President Trump, as president, had the authority to

5    designate records as personal.  Now --

6              THE COURT:  Can you tell me what your definition of

7    "unauthorized" would be, jumping forward to jury instruction

8    charge conference and weaving in these PRA concepts?

9              MR. BLANCHE:  Your Honor asked a very good question of

10   the Special Counsel.  Our definition would be consistent with

11   what we're saying now, which is that the Presidential Records

12   Act gives a president or vice president complete autonomy to

13   manage records while president in a way that he or she sees

14   fit, and that there is no Special Counsel and NARA -- no -- no

15   way the judiciary, the legislature -- the legislative session

16   should not in any way touch the president's decision in order

17   to do that.  And in this case, by not sending the records to

18   NARA, President Trump was necessarily classifying them as

19   personal.  And --

20             THE COURT:  That -- that last thing you said, that's

21   not actually memorialized in the Judicial Watch decision,

22   correct, that the -- the failure to send documents to NARA

23   equals personal designation?

24             MR. BLANCHE:  The -- the -- it's referenced but not

25   memorialized.  And the PRA doesn't describe anything else.  The

1    PRA simply says that at the conclusion of an administration,

2    presidential records shall be sent to NARA.  It doesn't say,

3    oh, and, by the way, personal records have to be reviewed by a

4    NARA representative, or personal records have to be --

5    you know, you cannot have classified information in personal

6    records.  The PRA doesn't speak to that.

7           And that's intentional.  I mean, if you look at the --

8    at the reasons for -- for enacting it, they wanted to

9    try -- Congress wanted to try to fine-line between giving a

10   president the authority to -- to do -- to do what he needs to

11   do while president, but also try to maintain presidential

12   records.  So that's why the statute doesn't speak to anything

13   else.  The statute doesn't say we'll decide about personal

14   records later.  It says -- no -- it says, if it's presidential,

15   send it -- send it to NARA.

16          And I do think on -- on how the PRA and the Espionage

17   Act ultimately have an interface, we -- we don't know -- we

18   never got that far in this case, but certainly, there

19   is -- there is the potential that there could be discussion,

20   potentially, between NARA and a former president or vice

21   president about records that are deemed personal.  But, again,

22   under the PRA, that's President Trump or President Biden now,

23   or President Reagan, President Clinton, it's their decision.

24   And NARA has the ability to engage.  And there is case law that

25   talks about discussions that take place.  But that's -- but

1    that's it.

2         And there isn't tension.  If you read the statutes that

3    way, the Espionage Act and the PRA, there is no tension there.

4    I mean, it's not as if -- and, again, if "personal" under the

5    PRA, then under the definition of what a record is under the

6    applicable Executive Order, Section 61(hh), it -- if it's

7    personal, it's not a record.  So the fact that --

8         THE COURT:  So your argument hinges on the "it is

9    personal" designation, which is not in the indictment.  I know

10   you draw the inference from paragraph 4.  But it can't

11   reasonably be stated that the indictment endorses the view that

12   the documents are personal.

13        You would have to agree with that, correct?

14        MR. BLANCHE:  It doesn't endorse the fact, of course

15   not.  But, Judge, there is no way to endorse it.  That's

16   the -- the PRA doesn't say, here is what a president has to do

17   to endorse it.  Here is a check that has to be -- a checkmark

18   that has to be checked on a particular filing.  No.  It just

19   says, if it's presidential, send it over here.

20        And so how -- how is one to prove, a former president

21   to prove that the records are personal, but for the fact they

22   were not sent to NARA?  There is no -- no court has held

23   otherwise.

24        THE COURT:  Is there anything to make of the fact that

25   some items are returned in January, and so -- and there was

1    no -- no procedure to quash that subpoena?  What do you make of

2    that?  There is some discussion in the filings.

3              MR. BLANCHE:  No, absolutely, it's a good question, and

4    I think there is a lot to be made of it.  In the -- when the

5    PRA was developed, this was the hope of Congress, that by

6    giving a president the autonomy to designate records as he see

7    fit -- sees fit, when a president leaves office, they may

8    choose to return -- return certain materials that had

9    previously been marked "personal" and give them to the National

10   Archives.

11             I mean, you talk about -- you know, this is again from

12   a brief.  It's -- it's written by the Department of Justice.

13             By giving each president complete control over his

14   personal papers, Congress hoped that it would encourage

15   presidents to create and preserve such papers and that

16   presidents would later voluntarily donate those papers to the

17   National Archives.

18             THE COURT:  Where are you reading from?

19             MR. BLANCHE:  I'm reading from -- well, footnote 1 in

20   our -- in our brief on page 2, Your Honor.

21             THE COURT:  Okay.

22             MR. BLANCHE:  But it's -- it's ECF Number 32 -- 327-1,

23   at page 63; so it's from our -- our filing.  It's a DOJ brief

24   in -- in Judicial Watch.

25             THE COURT:  Okay.

1          MR. BLANCHE:  So it's -- it happened the way it's

2     supposed to happen, which is that President

3     Trump -- President -- President Trump made the decision to

4     return and donate items he, in his sole discretion, determined

5     were personal back to the -- back to the National Archives.

6          THE COURT:  Okay.

7          MR. BLANCHE:  It's also the footnote 1 on our -- in our

8     reply brief, Document Number 399, Your Honor.

9          THE COURT:  Okay.  Anything else on Presidential

10    Records Act?

11         MR. BLANCHE:  No, Your Honor.

12         THE COURT:  Okay.  All right.  Anything very pressing

13    that would need to be addressed now?

14         MR. BLANCHE:  No.

15         THE COURT:  Okay.

16         MR. BLANCHE:  Not from our side.

17         THE COURT:  Okay.  Thank you then.

18         Let me ask the same question of the Special Counsel.

19    Mr. Bratt or Mr. Harbach?

20         MR. BRATT:  No, Your Honor.

21         THE COURT:  Okay.  Well, then, thank you all for your

22    time and attention.  I know we have talked a lot about the law,

23    and it's all very worthwhile, and I appreciate the assistance.

24         The Court is now in recess.  I take the motions under

25    advisement and will be ruling on them promptly.  Thank you.

1              (These proceedings concluded at 2:42 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4    I hereby certify that the foregoing is an accurate

5    transcription of the proceedings in the above-entitled matter.

6

7

     DATE:  03-14-2024         /s/Laura Melton
8                              LAURA E. MELTON, RMR, CRR, FPR
                               Official Court Reporter
9                              United States District Court
                               Southern District of Florida
10                             Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

'

'70s [2]_ - 1:88:6_, 1:88:11
'Please [1]_ - 1:99:19

---

1

1 [9]_ - 1:11:22_, 1:40:8_,
1:40:12_, 1:56:1_, 1:86:1_,
1:92:21_, 1:117:2_, 1:139:19
_, 1:140:7
1.4 [1]_ - 1:41:10
10 [1]_ - 1:36:16
110 [1]_ - 1:132:20
1181 [2]_ - 1:131:9
11th [8]_ - 1:14:24_,
1:17:13_, 1:17:19_, 1:27:10
_, 1:49:6_, 1:64:10_, 1:77:20
_, 1:131:8
12 [4]_ - 1:42:14_, 1:112:6
_, 1:112:22_, 1:114:6
121 [1]_ - 1:32:6
1294 [1]_ - 1:117:2
12:00 [2]_ - 1:75:1_, 1:85:1
12:05 [1]_ - 1:85:5
12:15 [1]_ - 1:75:1
13526 [2]_ - 1:12:23_,
1:34:9
139 [1]_ - 1:55:2
15 [3]_ - 1:48:14_, 1:60:25
_, 1:85:2
16 [1]_ - 1:42:19
18 [1]_ - 1:45:2
19 [6]_ - 1:29:6_, 1:36:18_,
1:37:16_, 1:62:2_, 1:62:5_,
1:84:9
1911 [1]_ - 1:16:10
1917 [2]_ - 1:16:10_,
1:16:16
1950 [3]_ - 1:16:11_,
1:16:23_, 1:32:20
1977 [1]_ - 1:32:6
1:19 [1]_ - 1:85:5
1B [1]_ - 1:64:18

---

2

2 [4]_ - 1:56:3_, 1:75:2_,
1:131:18_, 1:139:20
2001.48 [1]_ - 1:123:9
2017 [1]_ - 1:62:10
2021 [10]_ - 1:19:17_,
1:19:18_, 1:42:21_, 1:46:19

_, 1:47:23_, 1:48:4_, 1:48:12
_, 1:48:14_, 1:48:25
2023 [3]_ - 1:22:21_,
1:97:20_, 1:99:17
20th [2]_ - 1:19:17_,
1:46:18
21 [4]_ - 1:19:18_, 1:47:22
_, 1:48:4_, 1:51:12
21st [1]_ - 1:48:24
2201(2 [1]_ - 1:44:2
2201(3 [1]_ - 1:44:13
23 [1]_ - 1:65:15
23-80101 [1]_ - 1:85:8
2323 [1]_ - 1:83:10
233 [1]_ - 1:55:3
24 [1]_ - 1:65:15
27 [1]_ - 1:99:17
291 [1]_ - 1:115:25
2:42 [1]_ - 1:141:1
2d [1]_ - 1:91:7
2nd [2]_ - 1:17:1_, 1:77:16

---

3

3 [3]_ - 1:55:23_, 1:56:6_,
1:56:8
30-plus [1]_ - 1:92:6
302 [1]_ - 1:91:4
302-03 [1]_ - 1:91:7
302s [2]_ - 1:63:5_, 1:63:6
303 [1]_ - 1:91:4
30th [3]_ - 1:47:1_, 1:48:12
_, 1:48:25
3161(a [1]_ - 1:19:1
32 [7]_ - 1:11:22_, 1:40:8_,
1:40:12_, 1:86:1_, 1:92:22_,
1:123:8_, 1:139:22
325 [4]_ - 1:4:10_, 1:6:12_,
1:85:19_, 1:85:25
327 [1]_ - 1:4:13_, 1:4:20
_, 1:5:4_, 1:5:8_, 1:5:18_,
1:6:7_, 1:6:11_, 1:85:9_,
1:86:2_, 1:134:11
327-1 [1]_ - 1:139:22
331 [4]_ - 1:4:18_, 1:5:16_,
1:85:16_, 1:85:24
35 [1]_ - 1:42:18
360-1 [1]_ - 1:5:25
399 [1]_ - 1:140:8
3:00 [1]_ - 1:134:12

---

4

4 [6]_ - 1:8:5_, 1:8:15_,
1:40:24_, 1:80:12_, 1:89:18
_, 1:138:10
4.1 [5]_ - 1:56:14_, 1:78:11
_, 1:78:25_, 1:79:13_,
1:79:14
4.1(a)(2) [1]_ - 1:79:10
4.1(a)(3 [1]_ - 1:55:20
4.4 [6]_ - 1:53:7_, 1:53:9_,
1:55:9_, 1:55:12_, 1:55:16_,
1:56:9
4.4(a [1]_ - 1:55:19
400 [1]_ - 1:6:1
41 [1]_ - 1:115:20
44 [1]_ - 1:44:2
45th [2]_ - 1:133:9_,
1:133:14
4th [1]_ - 1:25:24_, 1:26:23
_, 1:72:21_, 1:77:18_, 1:82:3

---

5

567 [1]_ - 1:32:6
5:30 [1]_ - 1:123:10

---

6

6 [2]_ - 1:16:19_, 1:51:2
6(hh) [1]_ - 1:13:1
6.1(dd) [1]_ - 1:79:16
61(hh [1]_ - 1:138:6
63 [1]_ - 1:139:23
6:00 [1]_ - 1:123:10

---

7

793 [20]_ - 1:6:18_, 1:6:20
_, 1:10:22_, 1:16:24_,
1:22:12_, 1:22:13_, 1:24:5_,
1:25:18_, 1:41:24_, 1:42:10
_, 1:45:2_, 1:49:7_, 1:57:14_,
1:61:8_, 1:64:16_, 1:80:25_,
1:125:9_, 1:125:18_, 1:126:2
793(e [19]_ - 1:15:16_,
1:26:14_, 1:28:12_, 1:31:15
_, 1:46:12_, 1:50:8_, 1:50:10
_, 1:50:13_, 1:53:12_,
1:53:25_, 1:58:7_, 1:61:12_,
1:81:14_, 1:86:2_, 1:89:12_,
1:93:21_, 1:98:16_, 1:127:20
793(e) [2]_ - 1:50:20_,
1:53:22

---

8

845 [1]_ - 1:91:7
85 [1]_ - 1:42:18
871 [1]_ - 1:131:9

---

9

922(g [1]_ - 1:87:9
924 [1]_ - 1:115:25
9th [1]_ - 1:23:25

---

A

abide [1]_ - 1:78:23
ability [4]_ - 1:32:22_,
1:97:18_, 1:122:8_, 1:137:24
able [1]_ - 1:85:12
absence [4]_ - 1:48:8_,
1:59:14_, 1:94:6
absolute [1]_ - 1:32:8
absolutely [8]_ - 1:33:6_,
1:80:19_, 1:89:16_, 1:95:3_,
1:95:21_, 1:103:5_, 1:122:9
_, 1:139:3
abstract [1]_ - 1:87:17
absurd [3]_ - 1:51:25_,
1:122:2_, 1:122:4
accelerated [1]_ - 1:5:24
accept [2]_ - 1:95:19_,
1:100:18
access [23]_ - 1:7:8_,
1:19:9_, 1:29:25_, 1:55:20_,
1:56:2_, 1:56:6_, 1:56:10_,
1:56:11_, 1:59:5_, 1:59:22_,
1:60:23_, 1:61:11_, 1:62:12
_, 1:68:8_, 1:75:23_, 1:76:5_,
1:76:9_, 1:76:21_, 1:78:12_,
1:79:4_, 1:79:19_, 1:80:10_,
1:126:7
Access [1]_ - 1:55:16
accommodate [1]_ -
1:5:24
according [3]_ - 1:19:19_,
1:21:24_, 1:125:3
accords [1]_ - 1:55:4
account [1]_ - 1:132:2
Accountability [1]_ -
1:111:2
accumulated [1]_ -
1:92:15
acknowledged [1]_ -
1:118:13
acknowledges [1]_ -

1:12:18

acquittal [1]₋ - 1:7:24

Act [42]₋ - 1:4:14₋, 1:7:7₋, 1:16:23₋, 1:18:25₋, 1:23:22 ₋, 1:25:1₋, 1:31:5₋, 1:32:20₋, 1:33:7₋, 1:74:7₋, 1:81:17₋, 1:82:21₋, 1:85:10₋, 1:86:18 ₋, 1:88:11₋, 1:89:14₋, 1:89:17₋, 1:92:1₋, 1:92:7₋, 1:92:10₋, 1:93:5₋, 1:93:9₋, 1:94:1₋, 1:94:11₋, 1:94:19₋, 1:94:22₋, 1:95:20₋, 1:97:16 ₋, 1:105:1₋, 1:109:14₋, 1:109:16₋, 1:109:24₋, 1:111:2₋, 1:112:20₋, 1:126:6 ₋, 1:126:25₋, 1:134:5₋, 1:134:24₋, 1:136:12₋, 1:137:17₋, 1:138:3₋, 1:140:10

act [2]₋ - 1:27:13₋, 1:105:23

acted [1]₋ - 1:132:4

acting [1]₋ - 1:31:5

action [5]₋ - 1:31:13₋, 1:111:8₋, 1:119:2₋, 1:120:7 ₋, 1:123:1

actions [2]₋ - 1:47:8₋, 1:118:16

active [2]₋ - 1:60:16₋, 1:60:25

activities [1]₋ - 1:44:10

activity [1]₋ - 1:60:3

actual [3]₋ - 1:29:20₋, 1:80:21₋, 1:80:24

actus [3]₋ - 1:50:21₋, 1:50:25₋, 1:51:4

add [12]₋ - 1:15:7₋, 1:15:17 ₋, 1:16:6₋, 1:24:2₋, 1:28:8₋, 1:46:13₋, 1:53:9₋, 1:54:18₋, 1:67:24₋, 1:82:5₋, 1:82:13₋, 1:117:23

added [2]₋ - 1:71:8₋, 1:82:13

adding [3]₋ - 1:54:16₋, 1:73:8₋, 1:83:8

addition [3]₋ - 1:8:13₋, 1:54:15₋, 1:111:1

additional [6]₋ - 1:4:8₋, 1:26:1₋, 1:26:2₋, 1:26:11₋, 1:26:12₋, 1:33:10

address [11]₋ - 1:16:9₋, 1:18:21₋, 1:28:13₋, 1:42:6₋, 1:52:16₋, 1:61:13₋, 1:83:23 ₋, 1:113:25₋, 1:130:4₋, 1:130:14

addressed [5]₋ - 1:12:17

1:17:13₋, 1:26:16₋, 1:102:6₋, 1:140:13

addresses [2]₋ - 1:12:18 ₋, 1:53:7

addressing [4]₋ - 1:3:3₋, 1:117:3₋, 1:130:9₋, 1:134:22

adds [3]₋ - 1:19:7₋, 1:19:11₋, 1:79:23

adequate [4]₋ - 1:18:21₋, 1:66:21₋, 1:66:23₋, 1:67:21

adequately [1]₋ - 1:48:19

adjudicate [1]₋ - 1:9:25

administering [1]₋ - 1:13:22

administration [7]₋ - 1:16:16₋, 1:88:13₋, 1:100:11 ₋, 1:115:22₋, 1:116:15₋, 1:137:1

Administration [3]₋ - 1:132:14₋, 1:132:18₋, 1:132:21

administrative [3]₋ - 1:91:6₋, 1:92:18₋, 1:97:15

admissible [1]₋ - 1:39:18

admission [2]₋ - 1:113:17 ₋, 1:114:13

admissions [1]₋ - 1:64:25

admit [1]₋ - 1:44:23

adopt [1]₋ - 1:5:17

adopted [3]₋ - 1:18:17₋, 1:70:18₋, 1:72:21

adoption [2]₋ - 1:4:19₋, 1:5:9

advance [1]₋ - 1:50:24

adversary [1]₋ - 1:26:4

advertently [1]₋ - 1:49:15

advise [1]₋ - 1:44:9

advisement [1]₋ - 1:140:25

advocated [1]₋ - 1:73:4

affairs [1]₋ - 1:129:3

affect [1]₋ - 1:57:13

affirmatively [1]₋ - 1:102:16

affirming [1]₋ - 1:17:20

affixed [1]₋ - 1:88:20

Afghanistan [2]₋ - 1:108:6₋, 1:108:21

afoul [3]₋ - 1:20:6₋, 1:21:11₋, 1:53:25

afternoon [4]₋ - 1:85:7₋, 1:86:11₋, 1:111:21₋, 1:111:22

afterwards [2]₋ - 1:104:10 ₋, 1:119:21

AG [1]₋ - 1:119:1

agencies [1]₋ - 1:35:4

agency [17]₋ - 1:13:22₋, 1:31:13₋, 1:40:3₋, 1:55:25₋, 1:56:1₋, 1:94:3₋, 1:97:14₋, 1:102:9₋, 1:104:10₋, 1:104:15₋, 1:105:2₋, 1:106:12₋, 1:122:15₋, 1:124:1

agency's [1]₋ - 1:105:2

ago [2]₋ - 1:64:2₋, 1:122:12

agree [16]₋ - 1:21:6₋, 1:21:8₋, 1:24:18₋, 1:25:9₋, 1:26:18₋, 1:35:8₋, 1:52:15₋, 1:59:4₋, 1:70:6₋, 1:77:1₋, 1:104:17₋, 1:106:6₋, 1:106:23₋, 1:113:15₋, 1:126:8₋, 1:138:13

agreed [1]₋ - 1:127:16

agreement [1]₋ - 1:78:15

agrees [2]₋ - 1:100:1₋, 1:100:11

aides [1]₋ - 1:42:23

allegation [6]₋ - 1:8:6₋, 1:8:9₋, 1:9:3₋, 1:9:5₋, 1:10:18₋, 1:80:8

allegations [4]₋ - 1:9:18₋, 1:20:11₋, 1:112:23₋, 1:113:2

allege [6]₋ - 1:42:10₋, 1:75:7₋, 1:76:11₋, 1:114:3

alleged [9]₋ - 1:7:11₋, 1:7:18₋, 1:12:4₋, 1:19:19₋, 1:41:6₋, 1:45:17₋, 1:46:18₋, 1:68:3₋, 1:87:4

allegedly [6]₋ - 1:12:2₋, 1:19:22₋, 1:19:23₋, 1:19:24 ₋, 1:31:20₋, 1:40:10

alleges [1]₋ - 1:8:4

alleging [1]₋ - 1:49:2

allow [4]₋ - 1:23:21₋, 1:24:4₋, 1:25:3₋, 1:34:15

allowable [1]₋ - 1:102:3

allowed [4]₋ - 1:9:19₋, 1:103:25₋, 1:104:2₋, 1:109:25

allowing [2]₋ - 1:115:24₋, 1:115:25

allows [4]₋ - 1:12:9₋, 1:84:23₋, 1:97:15₋, 1:109:17

alluded [4]₋ - 1:127:23₋, 1:129:24₋, 1:130:10₋,

1:130:12

almost [2]₋ - 1:51:25₋, 1:120:2

alone [5]₋ - 1:6:22₋, 1:59:14₋, 1:81:15₋, 1:81:23 ₋, 1:132:11

altogether [1]₋ - 1:92:2₋, 1:97:5

ambassadors [1]₋ - 1:32:17

ambiguity [1]₋ - 1:75:24

ambiguous [3]₋ - 1:12:8₋, 1:12:14₋, 1:27:22

amend [2]₋ - 1:110:20₋, 1:111:5

Amendment [4]₋ - 1:54:12₋, 1:66:7₋, 1:67:15₋, 1:69:17

amends [1]₋ - 1:111:3

America [1]₋ - 1:3:5

American [3]₋ - 1:101:17 ₋, 1:106:2₋, 1:112:8

amicus [3]₋ - 1:5:25₋, 1:111:8₋, 1:123:4

amount [1]₋ - 1:35:9

amplify [1]₋ - 1:51:3

analogy [1]₋ - 1:61:23

analysis [12]₋ - 1:16:25₋, 1:34:9₋, 1:45:10₋, 1:56:21₋, 1:57:14₋, 1:57:25₋, 1:61:21 ₋, 1:69:16₋, 1:78:10₋, 1:82:17₋, 1:87:17₋, 1:106:14

analyze [1]₋ - 1:75:15

analyzed [1]₋ - 1:18:4

announce [3]₋ - 1:96:12₋, 1:96:13₋, 1:97:23

announced [1]₋ - 1:131:7

answer [11]₋ - 1:30:15₋, 1:32:21₋, 1:37:8₋, 1:38:1₋, 1:41:22₋, 1:46:2₋, 1:97:17₋, 1:99:4₋, 1:111:13₋, 1:118:21 ₋, 1:126:5

anticipate [1]₋ - 1:45:3

anyway [2]₋ - 1:100:19₋, 1:104:23

apart [1]₋ - 1:62:14

apologies [1]₋ - 1:85:22₋, 1:85:23

apologize [2]₋ - 1:4:22₋, 1:85:14

apparatus [2]₋ - 1:118:14 ₋, 1:118:24

apparent [1]₋ - 1:18:6

appear [1]‑ - 1:36:2

appearance [2]‑ - 1:3:7‑, 1:133:4

appellate [1]‑ - 1:32:12

appendages [1]‑ - 1:132:21

applicable [6]‑ - 1:10:24‑, 1:33:22‑, 1:47:6‑, 1:82:8‑, 1:94:7‑, 1:138:6

application [3]‑ - 1:81:9‑, 1:97:13‑, 1:129:21

applied [27]‑ - 1:6:23‑, 1:7:1‑, 1:8:1‑, 1:9:17‑, 1:10:14‑, 1:13:5‑, 1:14:20‑, 1:23:11‑, 1:29:4‑, 1:30:7‑, 1:32:23‑, 1:41:24‑, 1:49:9‑, 1:56:21‑, 1:57:14‑, 1:66:17‑, 1:67:25‑, 1:68:4‑, 1:68:9‑, 1:81:10‑, 1:82:11‑, 1:89:15‑, 1:91:25‑, 1:106:8‑, 1:132:3

applies [5]‑ - 1:12:24‑, 1:80:14‑, 1:80:25‑, 1:102:4‑, 1:120:2

apply [14]‑ - 1:3:24‑, 1:5:13‑, 1:12:24‑, 1:30:25‑, 1:54:7‑, 1:56:8‑, 1:58:3‑, 1:72:19‑, 1:72:25‑, 1:83:17‑, 1:95:9‑, 1:102:12‑, 1:117:13‑, 1:130:21

applying [8]‑ - 1:13:13‑, 1:35:7‑, 1:55:3‑, 1:81:13‑, 1:87:15‑, 1:87:18‑, 1:87:19‑, 1:131:11

appoint [1]‑ - 1:32:17

appointees [1]‑ - 1:56:7

appreciate [3]‑ - 1:45:7‑, 1:106:20‑, 1:140:23

appropriate [10]‑ - 1:8:13‑, 1:56:3‑, 1:58:10‑, 1:60:23‑, 1:77:5‑, 1:89:24‑, 1:104:7‑, 1:106:24‑, 1:124:10‑, 1:136:3

appropriately [1]‑ - 1:24:21

appropriateness [1]‑ - 1:40:18

approved [2]‑ - 1:39:17‑, 1:78:15

arbitrary [16]‑ - 1:12:9‑, 1:14:22‑, 1:14:24‑, 1:15:7‑, 1:21:19‑, 1:30:8‑, 1:34:4‑, 1:34:14‑, 1:66:24‑, 1:66:25‑, 1:67:7‑, 1:67:10‑, 1:67:18‑, 1:67:21‑, 1:75:10‑, 1:81:13

Archives [10]‑ - 1:88:16‑, 1:88:22‑, 1:91:12‑, 1:96:17‑, 1:96:23‑, 1:96:25‑, 1:99:18, 1:139:10‑, 1:139:17‑, 1:140:5

archivist [2]‑ - 1:118:14‑, 1:120:8

archivist's [1]‑ - 1:114:21

area [2]‑ - 1:32:8‑, 1:32:19

areas [2]‑ - 1:18:18‑, 1:102:11

arguably [2]‑ - 1:20:17‑, 1:78:4

argue [1]‑ - 1:23:21‑, 1:39:12

argued [1]‑ - 1:86:3

arguing [3]‑ - 1:13:15‑, 1:52:7‑, 1:124:20

argument [53]‑ - 1:4:3‑, 1:5:18‑, 1:6:14‑, 1:9:7‑, 1:14:14‑, 1:15:15‑, 1:16:2‑, 1:18:3‑, 1:22:11‑, 1:29:10‑, 1:29:19‑, 1:35:6‑, 1:35:25‑, 1:41:5‑, 1:41:16‑, 1:42:5‑, 1:43:15‑, 1:45:12‑, 1:56:24‑, 1:67:11‑, 1:69:18‑, 1:69:19‑, 1:80:21‑, 1:84:15‑, 1:85:3‑, 1:85:9‑, 1:86:4‑, 1:98:14‑, 1:99:15‑, 1:100:13‑, 1:100:17‑, 1:101:11‑, 1:103:6‑, 1:103:7‑, 1:103:10‑, 1:103:11‑, 1:103:13‑, 1:104:1‑, 1:105:11‑, 1:105:24‑, 1:108:9‑, 1:113:25‑, 1:117:15‑, 1:124:6‑, 1:124:13‑, 1:125:6‑, 1:132:8‑, 1:133:19‑, 1:134:10‑, 1:134:18‑, 1:135:25‑, 1:138:8

arguments [8]‑ - 1:17:14‑, 1:45:7‑, 1:57:11‑, 1:86:13‑, 1:91:17‑, 1:91:20‑, 1:93:14‑, 1:95:9

arise [1]‑ - 1:57:12

Armstrong [13]‑ - 1:106:3‑, 1:106:7‑, 1:115:10‑, 1:115:18‑, 1:115:24‑, 1:116:8‑, 1:116:23‑, 1:117:2‑, 1:117:4‑, 1:120:20‑, 1:120:21‑, 1:121:11

Armstrongs [1]‑ - 1:117:25

Army [1]‑ - 1:32:16

arose [1]‑ - 1:70:17

article [4]‑ - 1:16:19‑, 1:22:25‑, 1:23:6‑, 1:99:18

Article [3]‑ - 1:17:6‑, 1:25:6‑, 1:82:17

articulated [1]‑ - 1:114:8

as-applied [9]‑ - 1:8:1‑, 1:9:17‑, 1:10:14‑, 1:13:5‑, 1:41:24‑, 1:56:21‑, 1:67:25‑, 1:68:4‑, 1:68:9

as.. [1]‑ - 1:4:17

aside [6]‑ - 1:29:6‑, 1:63:16‑, 1:65:25‑, 1:94:20‑, 1:95:25‑, 1:98:16

aspect [1]‑ - 1:42:7

aspects [3]‑ - 1:6:20‑, 1:6:25‑, 1:82:11

asserting [2]‑ - 1:8:23‑, 1:111:12

assertion [1]‑ - 1:7:17

assertions [1]‑ - 1:111:9

assessing [3]‑ - 1:68:14‑, 1:105:7‑, 1:132:5

assessment [1]‑ - 1:129:7

asset [1]‑ - 1:131:21

assist [2]‑ - 1:44:9‑, 1:79:20

assistance [1]‑ - 1:140:23

Association [2]‑ - 1:101:18‑, 1:106:3

assume [4]‑ - 1:20:12‑, 1:20:13‑, 1:20:20‑, 1:98:3

assuming [4]‑ - 1:33:5‑, 1:38:16‑, 1:125:16‑, 1:134:18

AT&T [5]‑ - 1:32:5‑, 1:32:9‑, 1:32:10‑, 1:32:12‑, 1:32:15

attaches [1]‑ - 1:11:12

attempt [1]‑ - 1:118:15

attempted [1]‑ - 1:7:1

attention [2]‑ - 1:42:17‑, 1:140:22

Attorney [2]‑ - 1:118:15‑, 1:122:23

attorney [1]‑ - 1:132:7

attorneys [1]‑ - 1:9:24

attribute [1]‑ - 1:9:12

attributing [2]‑ - 1:9:2‑, 1:10:19

authorities [4]‑ - 1:25:17‑, 1:27:25‑, 1:35:7‑, 1:120:10

authority [39]‑ - 1:7:4‑, 1:15:6‑, 1:16:18‑, 1:16:21‑, 1:19:2‑, 1:20:15‑, 1:20:16‑, 1:32:14‑, 1:32:18‑, 1:34:3‑, 1:35:13‑, 1:59:14‑, 1:59:15‑, 1:60:7‑, 1:60:8‑, 1:60:18‑, 1:61:4‑, 1:61:6‑, 1:62:14‑, 1:65:11‑, 1:69:13‑, 1:72:10‑, 1:72:13‑, 1:72:14‑, 1:77:18‑, 1:89:8‑, 1:89:23‑, 1:89:24‑, 1:91:20‑, 1:91:21‑, 1:92:14‑, 1:99:23‑, 1:102:17‑, 1:102:25‑, 1:103:21‑, 1:104:21‑, 1:136:4‑, 1:137:10

authorization [10]‑ - 1:19:25‑, 1:22:10‑, 1:22:14‑, 1:24:1‑, 1:30:5‑, 1:72:9‑, 1:76:3‑, 1:76:8‑, 1:76:23‑, 1:126:1

Authorization [6]‑ - 1:6:20‑, 1:11:14‑, 1:19:13‑, 1:19:15‑, 1:40:14‑, 1:75:17

authorize [2]‑ - 1:15:11‑, 1:53:18

authorized [22]‑ - 1:21:2‑, 1:25:5‑, 1:25:9‑, 1:29:12‑, 1:59:5‑, 1:61:11‑, 1:62:11‑, 1:71:25‑, 1:72:11‑, 1:75:19‑, 1:79:21‑, 1:79:25‑, 1:80:3‑, 1:80:16‑, 1:96:12‑, 1:98:8‑, 1:112:11‑, 1:117:22‑, 1:123:6‑, 1:125:8‑, 1:125:18

authorizes [2]‑ - 1:86:18‑, 1:114:20

automatically [1]‑ - 1:116:17

autonomy [3]‑ - 1:110:11‑, 1:136:12‑, 1:139:6

avoidance [5]‑ - 1:55:3‑, 1:77:25‑, 1:83:20‑, 1:83:24‑, 1:127:5

aware [7]‑ - 1:30:12‑, 1:61:23‑, 1:64:18‑, 1:76:17‑, 1:80:22‑, 1:92:7‑, 1:109:4

awareness [2]‑ - 1:54:5‑, 1:65:2

**B**

b)7 [1]‑ - 1:111:9

B9 [3]‑ - 1:27:16‑, 1:27:20‑, 1:49:5

B91A [1]‑ - 1:64:18

back-and-forth [1]‑ - 1:62:9

backed [4]‑ - 1:21:15‑, 1:21:16‑, 1:21:17

bad [7]₋ - 1:28:7₋, 1:28:12 ₋, 1:64:3₋, 1:64:5₋, 1:64:11₋, 1:64:17₋, 1:64:19

bad-faith [2]₋ - 1:28:7₋, 1:28:12

bag [1]₋ - 1:133:12

baked [2]₋ - 1:113:5₋, 1:113:20

balance [2]₋ - 1:77:22₋, 1:116:3

banc [2]₋ - 1:131:8₋, 1:131:19

bandied [1]₋ - 1:18:8

bankruptcy [1]₋ - 1:131:21

based [21]₋ - 1:4:11₋, 1:4:13₋, 1:8:15₋, 1:14:3₋, 1:14:12₋, 1:18:7₋, 1:21:21₋, 1:22:12₋, 1:30:20₋, 1:33:10 ₋, 1:35:12₋, 1:47:21₋, 1:61:20₋, 1:62:20₋, 1:65:14 ₋, 1:69:2₋, 1:83:16₋, 1:85:10 ₋, 1:103:20₋, 1:128:17

basement [1]₋ - 1:61:2

basic [2]₋ - 1:11:5₋, 1:24:1

basis [15]₋ - 1:5:24₋, 1:6:19₋, 1:21:14₋, 1:24:25₋, 1:31:6₋, 1:31:10₋, 1:31:24₋, 1:35:22₋, 1:75:12₋, 1:91:11 ₋, 1:92:23₋, 1:92:24₋, 1:93:1 ₋, 1:106:25₋, 1:119:24

bear [4]₋ - 1:10:15₋, 1:40:14₋, 1:47:19₋, 1:80:24

bears [5]₋ - 1:13:18₋, 1:70:22₋, 1:76:6₋, 1:76:7₋, 1:81:2

became [2]₋ - 1:21:3₋, 1:59:7

become [1]₋ - 1:21:24

becomes [4]₋ - 1:21:25₋, 1:47:10₋, 1:54:20₋, 1:106:22

Bedminster [2]₋ - 1:39:17 ₋, 1:42:21

beginning [2]₋ - 1:48:14₋, 1:55:16

begins [1]₋ - 1:19:17

behalf [5]₋ - 1:3:10₋, 1:3:17₋, 1:3:21₋, 1:5:1₋, 1:132:18

behest [1]₋ - 1:116:2

behind [1]₋ - 1:14:11

believes [1]₋ - 1:76:20

benefit [4]₋ - 1:4:7₋, 1:9:14₋, 1:16:25₋, 1:26:4

best [2]₋ - 1:27:23₋, 1:124:23

better [4]₋ - 1:35:22₋, 1:60:19₋, 1:101:12₋, 1:106:21

between [9]₋ - 1:22:13₋, 1:93:21₋, 1:98:22₋, 1:106:10 ₋, 1:126:22₋, 1:127:3₋, 1:134:23₋, 1:137:9₋, 1:137:20

beyond [6]₋ - 1:47:16₋, 1:54:17₋, 1:61:12₋, 1:67:4₋, 1:69:17₋, 1:70:9

bias [1]₋ - 1:21:22

Biden [13]₋ - 1:22:16₋, 1:22:22₋, 1:31:9₋, 1:46:4₋, 1:100:15₋, 1:100:16₋, 1:110:10₋, 1:128:15₋, 1:132:14₋, 1:132:18₋, 1:132:19₋, 1:132:21₋, 1:137:22

Biden's [1]₋ - 1:47:15

big [2]₋ - 1:41:4₋, 1:47:14

bill [5]₋ - 1:16:17₋, 1:16:19 ₋, 1:97:19₋, 1:110:17₋, 1:110:19

binding [2]₋ - 1:114:12₋, 1:117:15

bindingly [1]₋ - 1:117:20

bit [12]₋ - 1:52:21₋, 1:62:1₋, 1:71:23₋, 1:86:12₋, 1:106:4 ₋, 1:107:12₋, 1:107:21₋, 1:112:16₋, 1:115:6₋, 1:130:9 ₋, 1:132:1₋, 1:133:19

black [1]₋ - 1:43:24

Black's [3]₋ - 1:71:12₋, 1:71:18₋, 1:72:8

black-and-white [1]₋ - 1:43:24

blanche [1]₋ - 1:121:16

BLANCHE [52]₋ - 1:3:12 ₋, 1:86:11₋, 1:87:6₋, 1:87:18 ₋, 1:88:3₋, 1:89:16₋, 1:90:17 ₋, 1:92:4₋, 1:93:7₋, 1:93:23₋, 1:95:3₋, 1:95:5₋, 1:95:7₋, 1:97:11₋, 1:98:19₋, 1:99:8₋, 1:99:11₋, 1:99:13₋, 1:99:21 ₋, 1:100:15₋, 1:101:19₋, 1:102:4₋, 1:103:3₋, 1:103:11 ₋, 1:104:8₋, 1:104:17₋, 1:105:9₋, 1:106:1₋, 1:106:6 ₋, 1:107:21₋, 1:108:12₋, 1:108:17₋, 1:109:2₋, 1:109:4 ₋, 1:109:13₋, 1:110:22₋, 1:110:25₋, 1:111:4₋, 1:111:13₋, 1:134:14₋,

1:135:23₋, 1:136:9₋, 1:136:24₋, 1:138:14₋, 1:139:3₋, 1:139:19₋, 1:139:22₋, 1:140:1₋, 1:140:7 ₋, 1:140:11₋, 1:140:14₋, 1:140:16

Blanche [5]₋ - 1:3:12₋, 1:31:2₋, 1:113:6₋, 1:126:22 ₋, 1:129:24

bleeding [1]₋ - 1:95:8

boatload [1]₋ - 1:122:20

body [4]₋ - 1:16:25₋, 1:97:14₋, 1:103:20₋, 1:123:17

book [5]₋ - 1:14:7₋, 1:14:12₋, 1:74:11₋, 1:74:14 ₋, 1:121:2

books [7]₋ - 1:37:18₋, 1:45:18₋, 1:52:22₋, 1:54:5₋, 1:62:4₋, 1:74:12

border [1]₋ - 1:122:2

borne [1]₋ - 1:105:23

borrow [2]₋ - 1:93:3

bother [1]₋ - 1:16:9

bottom [1]₋ - 1:89:18

bound [3]₋ - 1:77:15₋, 1:77:17₋, 1:94:9

Bove [1]₋ - 1:3:14₋, 1:41:22₋, 1:52:17₋, 1:57:4₋, 1:58:21₋, 1:74:6₋, 1:74:25₋, 1:108:2₋, 1:113:5

BOVE [79]₋ - 1:6:15₋, 1:6:17₋, 1:7:13₋, 1:8:3₋, 1:8:17₋, 1:9:1₋, 1:9:16₋, 1:10:2₋, 1:10:9₋, 1:11:9₋, 1:11:23₋, 1:12:4₋, 1:12:16₋, 1:13:12₋, 1:14:2₋, 1:15:13₋, 1:15:23₋, 1:17:16₋, 1:17:24 ₋, 1:18:2₋, 1:20:8₋, 1:20:20₋, 1:21:1₋, 1:21:6₋, 1:21:12₋, 1:22:6₋, 1:23:10₋, 1:23:18₋, 1:24:11₋, 1:24:18₋, 1:25:11 ₋, 1:25:17₋, 1:26:7₋, 1:26:18 ₋, 1:26:20₋, 1:27:19₋, 1:28:10₋, 1:28:22₋, 1:29:2₋, 1:29:8₋, 1:29:14₋, 1:29:17₋, 1:30:14₋, 1:30:20₋, 1:31:16 ₋, 1:33:5₋, 1:33:16₋, 1:33:24 ₋, 1:34:21₋, 1:34:25₋, 1:35:15₋, 1:35:21₋, 1:36:21 ₋, 1:37:8₋, 1:38:3₋, 1:38:8₋, 1:38:13₋, 1:38:21₋, 1:39:3₋, 1:39:24₋, 1:40:13₋, 1:40:23 ₋, 1:41:4₋, 1:75:3₋, 1:76:13₋, 1:76:17₋, 1:77:7₋, 1:78:6₋, 1:78:20₋, 1:79:4₋, 1:79:7₋, 1:79:10₋, 1:80:7₋, 1:81:6₋,

1:81:19₋, 1:82:14₋, 1:82:25 ₋, 1:83:10₋, 1:83:22

boxes [5]₋ - 1:40:10₋, 1:48:14₋, 1:89:19₋, 1:96:24 ₋, 1:122:24

boyfriends [1]₋ - 1:50:24

Brady [2]₋ - 1:38:14₋, 1:38:19

Branch [6]₋ - 1:16:6₋, 1:18:14₋, 1:32:2₋, 1:33:17₋, 1:74:14₋, 1:121:4

Branch's [2]₋ - 1:14:6₋, 1:127:10

BRATT [99]₋ - 1:3:9₋, 1:41:18₋, 1:41:20₋, 1:42:5₋, 1:45:14₋, 1:46:1₋, 1:46:8₋, 1:46:13₋, 1:46:21₋, 1:47:3₋, 1:47:9₋, 1:48:5₋, 1:48:10₋, 1:48:23₋, 1:49:13₋, 1:49:23 ₋, 1:50:10₋, 1:50:16₋, 1:51:9 ₋, 1:51:11₋, 1:51:15₋, 1:51:19, 1:51:22₋, 1:51:24₋, 1:52:16₋, 1:53:3₋, 1:53:19₋, 1:53:23₋, 1:54:3₋, 1:54:22₋, 1:55:9₋, 1:55:13₋, 1:55:19₋, 1:56:14₋, 1:56:20₋, 1:57:4₋, 1:57:8₋, 1:57:18₋, 1:57:22₋, 1:58:6₋, 1:58:16₋, 1:58:23₋, 1:59:6₋, 1:59:10, 1:59:12₋, 1:59:16₋, 1:59:21₋, 1:60:3₋, 1:60:9₋, 1:60:20₋, 1:61:8₋, 1:61:20₋, 1:62:5₋, 1:62:20₋, 1:63:3₋, 1:63:13₋, 1:63:21₋, 1:64:4₋, 1:64:12₋, 1:64:23₋, 1:65:2₋, 1:65:9₋, 1:65:15₋, 1:65:23₋, 1:65:25₋, 1:66:6₋, 1:66:14₋, 1:66:23₋, 1:67:2₋, 1:67:6₋, 1:67:11₋, 1:67:19₋, 1:67:24₋, 1:68:12₋, 1:68:16 ₋, 1:68:25₋, 1:69:16₋, 1:69:19₋, 1:69:24₋, 1:70:6₋, 1:70:10₋, 1:70:21₋, 1:71:2₋, 1:71:11₋, 1:71:18₋, 1:72:3₋, 1:72:5₋, 1:72:15₋, 1:72:18₋, 1:72:23₋, 1:73:2₋, 1:73:10₋, 1:73:13₋, 1:73:21₋, 1:74:1₋, 1:74:5₋, 1:74:19₋, 1:74:22₋, 1:140:20

Bratt [13]₋ - 1:3:9₋, 1:29:15 ₋, 1:41:16₋, 1:74:4₋, 1:83:25 ₋, 1:94:24₋, 1:95:23₋, 1:100:6₋, 1:100:25₋, 1:102:6 ₋, 1:107:24₋, 1:112:20₋, 1:140:19

Bratt's [1]₋ - 1:84:11

breached [1]₋ - 1:27:18

break [1]₋ - 1:75:1

Brennan [3]₋ - 1:37:19₋,

1:75:21_, 1:80:11

Brennan's [1]_ - 1:29:21

brevity [1]_ - 1:11:11

brief [22]_ - 1:5:25_,
1:24:14_, 1:51:3_, 1:58:8_,
1:65:16_, 1:68:2_, 1:72:6_,
1:72:19_, 1:79:17_, 1:87:22
_, 1:90:24_, 1:92:24_, 1:94:5
_, 1:111:8_, 1:128:21_,
1:130:8_, 1:130:10_,
1:130:13_, 1:139:12_,
1:139:20_, 1:139:23_,
1:140:8

briefed [1]_ - 1:5:14

briefing [4]_ - 1:57:22_,
1:61:20_, 1:84:21_, 1:108:8

briefings [9]_ - 1:31:21_,
1:39:6_, 1:39:10_, 1:40:3_,
1:40:5_, 1:40:17_, 1:44:24_,
1:76:15_, 1:76:18

briefly [2]_ - 1:130:4_,
1:134:14

briefs [3]_ - 1:8:19_,
1:71:12_, 1:115:9

bring [5]_ - 1:21:22_,
1:39:1_, 1:54:18_, 1:84:1_,
1:122:8

bringing [2]_ - 1:103:1_,
1:135:21

brings [1]_ - 1:48:17

broad [1]_ - 1:106:4

broaden [2]_ - 1:17:23_,
1:78:1

broadened [1]_ - 1:36:10

broadening [1]_ - 1:61:12

broader [1]_ - 1:41:13

brought [3]_ - 1:55:14_,
1:83:25_, 1:100:19

brush [2]_ - 1:68:1_,
1:98:16

Bryan [8]_ - 1:49:6_,
1:49:8_, 1:49:16_, 1:49:23_,
1:50:2_, 1:54:4_, 1:64:4_,
1:64:6

built [2]_ - 1:24:7_, 1:105:9

bunch [1]_ - 1:123:1

Buren [1]_ - 1:61:10

buried [1]_ - 1:127:23

Bush [4]_ - 1:99:5_,
1:100:8_, 1:115:20

Bush's [1]_ - 1:23:5

business [3]_ - 1:5:10_,
1:22:19_, 1:133:11

C

calculated [1]_ - 1:131:14

Campa [7]_ - 1:17:17_,
1:17:19_, 1:70:14_, 1:70:17
_, 1:70:18_, 1:77:20

campaign [1]_ - 1:65:5

candidate [3]_ - 1:39:6_,
1:76:2_, 1:76:15

cannot [13]_ - 1:22:14_,
1:38:14_, 1:44:25_, 1:45:1_,
1:53:10_, 1:53:15_, 1:54:4_,
1:67:3_, 1:82:18_, 1:104:19
_, 1:128:20_, 1:134:24_,
1:137:5

canon [3]_ - 1:83:19_,
1:127:4_, 1:127:5

capabilities [1]_ - 1:112:8

capricious [1]_ - 1:67:22

captured [1]_ - 1:49:22

careers [1]_ - 1:50:25

carefully [1]_ - 1:116:3

Carlos [1]_ - 1:3:6

carry [1]_ - 1:121:6

carrying [2]_ - 1:44:11_,
1:44:17

carte [1]_ - 1:121:16

Case [1]_ - 1:85:8

case [118]_ - 1:3:4_, 1:6:22
_, 1:6:25_, 1:9:20_, 1:12:1_,
1:13:17_, 1:14:5_, 1:14:9_,
1:17:1_, 1:17:17_, 1:18:14_,
1:22:7_, 1:22:22_, 1:23:25_,
1:24:24_, 1:26:8_, 1:26:9_,
1:28:19_, 1:29:6_, 1:32:6_,
1:32:10_, 1:35:11_, 1:35:17
_, 1:35:18_, 1:37:4_, 1:39:12
_, 1:50:19_, 1:51:3_, 1:51:19
_, 1:51:25_, 1:52:9_, 1:52:12
_, 1:57:16_, 1:58:8_, 1:58:10
_, 1:58:18_, 1:61:9_, 1:61:10
_, 1:61:13_, 1:64:8_, 1:66:8_,
1:67:4_, 1:67:10_, 1:67:25_,
1:68:9_, 1:68:20_, 1:68:23_,
1:69:11_, 1:69:23_, 1:72:25
_, 1:73:24_, 1:74:16_, 1:77:6
_, 1:77:11_, 1:78:19_, 1:81:7
_, 1:81:12_, 1:81:19_,
1:81:20_, 1:81:24_, 1:82:8_,
1:83:25_, 1:84:7_, 1:84:20_,
1:87:10_, 1:88:25_, 1:89:1_,
1:90:2_, 1:90:12_, 1:90:14_,
1:92:1_, 1:93:9_, 1:93:19_,
1:94:5_, 1:94:14_, 1:94:16_,
1:97:2_, 1:98:10_, 1:98:11_,
1:99:7_, 1:99:8_, 1:100:25_,

1:101:18_, 1:101:19_,
1:104:5_, 1:104:7_, 1:105:11
_, 1:106:23_, 1:107:3_,
1:107:24_, 1:108:5_,
1:113:21_, 1:114:9_,
1:115:18_, 1:120:8_,
1:120:11_, 1:120:25_,
1:127:19_, 1:128:7_,
1:128:10_, 1:128:18_,
1:130:13_, 1:130:15_,
1:130:24_, 1:131:7_, 1:132:8
_, 1:133:11_, 1:133:25_,
1:135:5_, 1:135:22_, 1:136:3
_, 1:136:17_, 1:137:18_,
1:137:24

cases [47]_ - 1:17:4_,
1:25:24_, 1:26:1_, 1:27:2_,
1:50:18_, 1:50:23_, 1:54:4_,
1:54:9_, 1:54:13_, 1:55:1_,
1:60:6_, 1:60:9_, 1:61:5_,
1:61:21_, 1:64:15_, 1:68:7_,
1:70:14_, 1:73:4_, 1:73:5_,
1:77:14_, 1:77:17_, 1:81:14
_, 1:81:15_, 1:81:16_, 1:82:1
_, 1:82:11_, 1:83:15_,
1:83:22_, 1:84:17_, 1:84:18
_, 1:97:8_, 1:97:11_, 1:97:25
_, 1:101:13_, 1:102:25_,
1:104:8_, 1:104:13_,
1:104:15_, 1:106:13_,
1:107:6_, 1:115:8_, 1:116:11
_, 1:116:12_, 1:128:14_,
1:129:10_, 1:129:11

categorical [1]_ - 1:83:7

categories [2]_ - 1:36:16
_, 1:41:11

caught [1]_ - 1:103:16

causation [2]_ - 1:9:5_,
1:10:18

caused [1]_ - 1:8:4_,
1:89:19

causing [1]_ - 1:113:19

caveat [1]_ - 1:103:3

ceased [1]_ - 1:47:24

ceremonial [2]_ - 1:44:12
_, 1:44:18

certain [3]_ - 1:18:18_,
1:73:5_, 1:139:8

Certain [1]_ - 1:55:17

certainly [21]_ - 1:8:21_,
1:16:2_, 1:45:8_, 1:47:14_,
1:47:19_, 1:49:25_, 1:58:6_,
1:59:16_, 1:61:3_, 1:66:15_,
1:77:9_, 1:86:13_, 1:93:24_,
1:94:14_, 1:105:18_,
1:105:20_, 1:113:18_,
1:119:21_, 1:128:20_,

1:137:18

certainty [1]_ - 1:134:19

CFAA [1]_ - 1:61:10

CFR [1]_ - 1:123:8

chain [1]_ - 1:77:18

challenge [19]_ - 1:6:7_,
1:6:12_, 1:9:19_, 1:13:5_,
1:17:17_, 1:17:18_, 1:17:20
_, 1:26:22_, 1:27:21_,
1:41:24_, 1:42:2_, 1:45:9_,
1:45:11_, 1:45:13_, 1:64:22
_, 1:68:5_, 1:75:16_, 1:81:21
_, 1:118:7

challenges [8]_ - 1:6:20_,
1:9:17_, 1:10:5_, 1:10:15_,
1:15:20_, 1:25:19_, 1:28:3_,
1:58:1

challenging [1]_ - 1:96:5

change [1]_ - 1:97:18

changeover [1]_ - 1:21:3

changes [1]_ - 1:97:20

character [1]_ - 1:44:16

characterization [1]_ -
1:113:24

characterize [1]_ -
1:109:10

characterized [2]_ -
1:68:24_, 1:105:22

charge [25]_ - 1:10:25_,
1:26:14_, 1:47:20_, 1:48:24
_, 1:52:9_, 1:53:22_, 1:58:22
_, 1:67:4_, 1:67:20_, 1:73:14
_, 1:81:18_, 1:86:1_, 1:87:9_,
1:87:10_, 1:93:6_, 1:93:21_,
1:94:20_, 1:98:17_, 1:100:18
_, 1:103:1_, 1:104:12_,
1:124:19_, 1:127:21_,
1:136:8

charged [18]_ - 1:10:22_,
1:11:5_, 1:11:22_, 1:11:25_,
1:19:20_, 1:21:11_, 1:46:1_,
1:46:25_, 1:47:2_, 1:50:4_,
1:69:9_, 1:86:1_, 1:86:16_,
1:95:19_, 1:100:16_,
1:100:17_, 1:109:12_,
1:112:17

charges [10]_ - 1:6:24_,
1:21:22_, 1:49:3_, 1:58:7_,
1:67:15_, 1:68:10_, 1:69:1_,
1:102:22_, 1:102:24_,
1:122:8

charging [1]_ - 1:49:24

check [5]_ - 1:4:24_,
1:71:11_, 1:71:12_, 1:108:17
_, 1:138:17

checked [1]– - 1:138:18

checkmark [1]– - 1:138:17

Cheek [1]– - 1:64:9

Cheney [3]– - 1:115:11–, 1:121:11–, 1:121:19

Chicago [1]– - 1:18:16

chief [1]– - 1:42:22

Chief [1]– - 1:9:8

choices [1]– - 1:16:6

choose [2]– - 1:66:16–, 1:139:8

chooses [2]– - 1:9:8–, 1:17:5

chose [6]– - 1:8:10–, 1:30:2–, 1:32:21–, 1:80:8–, 1:88:9

chosen [2]– - 1:25:6–, 1:28:5

Chris [1]– - 1:3:14

chronological [1]– - 1:115:16

chronology [1]– - 1:63:10

CIA [2]– - 1:10:11–, 1:34:16

CIPA [1]– - 1:18:8

circle [1]– - 1:85:12

Circuit [17]– - 1:14:24–, 1:17:1–, 1:17:13–, 1:17:19–, 1:23:25–, 1:25:24–, 1:26:23–, 1:27:10–, 1:31:25–, 1:32:6–, 1:32:7–, 1:64:10–, 1:72:21–, 1:77:18–, 1:77:20–, 1:82:3–, 1:131:8

circuit [5]– - 1:25:20–, 1:77:22–, 1:83:18–, 1:116:12–, 1:131:10

Circuit's [2]– - 1:49:6–, 1:77:16

circuits [1]– - 1:17:10

circular [2]– - 1:15:24–, 1:79:24

circulated [1]– - 1:63:22

circumstance [2]– - 1:12:19–, 1:119:19

circumstances [18]– - 1:9:20–, 1:13:4–, 1:39:17–, 1:40:5–, 1:40:16–, 1:56:16–, 1:58:17–, 1:60:23–, 1:66:22–, 1:73:5–, 1:82:23–, 1:101:3–, 1:104:4–, 1:104:6–, 1:120:12–, 1:123:6–, 1:123:21–, 1:132:2

citation [1]– - 1:123:8

cite [6]– - 1:23:23–, 1:23:25–, 1:26:9–, 1:54:23–, 1:71:12–, 1:115:9

cite-check [1]– - 1:71:12

cited [16]– - 1:8:19–, 1:16:4–, 1:16:19–, 1:17:5–, 1:18:25–, 1:22:25–, 1:31:10–, 1:71:12–, 1:84:18–, 1:84:19–, 1:97:8–, 1:98:20–, 1:103:14–, 1:104:9–, 1:111:8–, 1:130:15

cites [4]– - 1:15:24–, 1:27:1–, 1:62:13–, 1:97:2

citing [1]– - 1:91:3

citizen [1]– - 1:120:9

city [1]– - 1:18:19

City [1]– - 1:18:16

civil [5]– - 1:119:2–, 1:120:7–, 1:122:7–, 1:122:13–, 1:132:8

claim [6]– - 1:42:12–, 1:43:17–, 1:43:21–, 1:45:19–, 1:114:6

claiming [1]– - 1:133:17

clarify [1]– - 1:27:5

clarifying [1]– - 1:54:10

clarity [4]– - 1:6:5–, 1:16:12–, 1:19:11–, 1:43:20

clash [1]– - 1:22:13

clashes [1]– - 1:94:10

classification [17]– - 1:7:4–, 1:13:10–, 1:15:12–, 1:20:9–, 1:20:13–, 1:41:5–, 1:65:11–, 1:69:12–, 1:74:13–, 1:89:2–, 1:89:23–, 1:97:6–, 1:106:5–, 1:116:9–, 1:117:3–, 1:117:7–, 1:126:20

Classified [1]– - 1:111:1

classified [64]– - 1:14:1–, 1:14:4–, 1:14:13–, 1:14:16–, 1:20:5–, 1:35:2–, 1:35:3–, 1:39:14–, 1:40:19–, 1:41:11–, 1:43:14–, 1:45:1–, 1:45:5–, 1:47:7–, 1:48:9–, 1:52:22–, 1:52:23–, 1:53:8–, 1:55:20–, 1:56:3–, 1:56:11–, 1:60:10–, 1:61:1–, 1:65:3–, 1:65:11–, 1:65:22–, 1:66:2–, 1:69:9–, 1:74:10–, 1:74:14–, 1:74:18–, 1:75:23–, 1:76:5–, 1:76:9–, 1:76:21–, 1:79:20–, 1:80:10–, 1:88:20–, 1:92:11–, 1:94:1–, 1:94:11–, 1:98:24–, 1:100:5–, 1:105:16–, 1:108:11–, 1:108:23–, 1:109:6–, 1:109:21–,

1:109:23–, 1:110:1–, 1:112:7–, 1:122:21–, 1:123:2–, 1:123:19–, 1:126:2–, 1:126:7–, 1:126:15–, 1:127:11–, 1:127:20–, 1:128:11–, 1:128:17–, 1:128:23–, 1:135:1–, 1:137:5

classifying [1]– - 1:136:18

clause [2]– - 1:15:10–, 1:17:4–, 1:41:3–, 1:58:14–, 1:72:20–, 1:78:9

Clause [17]– - 1:6:21–, 1:11:11–, 1:11:12–, 1:11:14–, 1:11:15–, 1:11:17–, 1:17:15–, 1:19:13–, 1:19:14–, 1:19:15–, 1:40:14–, 1:41:4–, 1:75:5–, 1:75:17–, 1:77:21

clauses [5]– - 1:15:3–, 1:31:15–, 1:45:11–, 1:58:12–, 1:66:19

clean [1]– - 1:82:5

clear [17]– - 1:4:19–, 1:55:10–, 1:56:9–, 1:62:7–, 1:67:3–, 1:67:19–, 1:69:21–, 1:76:14–, 1:83:3–, 1:88:5–, 1:123:16–, 1:126:11–, 1:128:21–, 1:130:12–, 1:130:24–, 1:131:17–, 1:132:11

clearance [39]– - 1:28:20–, 1:28:25–, 1:29:5–, 1:29:7–, 1:29:9–, 1:29:12–, 1:29:21–, 1:33:14–, 1:36:25–, 1:37:4–, 1:37:7–, 1:37:10–, 1:37:18–, 1:38:7–, 1:47:24–, 1:47:25–, 1:52:18–, 1:52:19–, 1:52:20–, 1:52:24–, 1:53:2–, 1:53:4–, 1:59:14–, 1:59:16–, 1:59:18–, 1:59:23–, 1:60:11–, 1:60:22–, 1:60:25–, 1:62:3–, 1:62:16–, 1:62:25–, 1:63:11–, 1:75:18–, 1:75:19–, 1:76:3–, 1:76:10–, 1:78:21

clearances [7]– - 1:32:12–, 1:34:19–, 1:34:20–, 1:37:12–, 1:37:21–, 1:37:23–, 1:60:16

clearer [1]– - 1:83:11

clearly [3]– - 1:21:11–, 1:97:6–, 1:129:5

client [3]– - 1:3:13–, 1:5:13–, 1:30:25

Clinton [27]– - 1:9:13–, 1:13:17–, 1:21:16–, 1:22:15–, 1:31:8–, 1:65:10–, 1:74:7–, 1:74:10–, 1:80:23–, 1:90:13–, 1:90:20–, 1:91:11–, 1:94:14–, 1:98:24–, 1:101:14

, 1:107:2–, 1:107:5–, 1:108:1–, 1:108:14–, 1:108:20–, 1:110:4–, 1:110:16–, 1:128:14–, 1:128:16–, 1:128:23–, 1:137:23

Clinton's [5]– - 1:13:20–, 1:14:17–, 1:90:13–, 1:91:10–, 1:110:7

close [3]– - 1:5:10–, 1:101:6–, 1:112:19

closed [1]– - 1:95:18

closely [8]– - 1:35:18–, 1:36:6–, 1:54:16–, 1:70:3–, 1:70:13–, 1:71:23–, 1:77:21–, 1:121:8

closely-held [1]– - 1:77:21

cobble [2]– - 1:57:19–, 1:70:2

cobbled [2]– - 1:24:14–, 1:70:7

colleague [1]– - 1:98:20–, 1:126:1

colleagues [1]– - 1:47:17

collect [1]– - 1:135:10

collecting [1]– - 1:121:7

collectively [2]– - 1:6:24–, 1:15:3

Columbia [1]– - 1:10:12

combination [1]– - 1:82:22

comfortable [1]– - 1:39:10

Commander [1]– - 1:9:8

comment [1]– - 1:49:5

comments [3]– - 1:65:3–, 1:65:6–, 1:65:14

commit [1]– - 1:73:6

committed [1]– - 1:122:16

committing [1]– - 1:134:20

common [1]– - 1:64:6

communications [8]– - 1:31:22–, 1:36:22–, 1:37:1–, 1:38:12–, 1:38:16–, 1:63:24–, 1:108:3–, 1:108:6

compare [1]– - 1:106:16

compared [2]– - 1:27:24–, 1:109:11

compartments [1]– - 1:68:8

compel [5]– - 1:36:4–, 1:39:25–, 1:40:1–, 1:40:15–,

1:57:12

complete [10]– - 1:18:5–, 1:19:19–, 1:20:3–, 1:20:17–, 1:21:5–, 1:46:17–, 1:47:5–, 1:48:4–, 1:136:12–, 1:139:13

completed [2]– - 1:38:3–, 1:95:13

completely [13]– - 1:13:21 –, 1:21:18–, 1:22:18–, 1:22:19–, 1:35:23–, 1:79:24 –, 1:96:1–, 1:99:14–, 1:103:4 –, 1:103:17–, 1:110:15–, 1:119:22–, 1:135:12

compliance [3]– - 1:38:18 –, 1:79:2–, 1:116:1

complicit [1]– - 1:13:21

comply [2]– - 1:48:15

complying [1]– - 1:84:22

component [9]– - 1:28:7–, 1:36:7–, 1:39:24–, 1:67:18–, 1:70:3–, 1:77:21–, 1:81:5–, 1:119:6–, 1:124:10

components [1]– - 1:81:16

compromise [1]– - 1:56:4

compromised [1]– - 1:123:20

computer [1]– - 1:115:20

concede [2]– - 1:57:10–, 1:74:9

conceded [2]– - 1:82:2–, 1:101:1

conceivable [2]– - 1:124:23–, 1:124:24

conceivably [1]– - 1:46:25

conceive [1]– - 1:13:19

conceived [1]– - 1:98:15

concept [13]– - 1:12:7–, 1:12:16–, 1:12:21–, 1:13:13 –, 1:14:24–, 1:19:10–, 1:24:1 –, 1:30:6–, 1:34:10–, 1:35:18 –, 1:41:13–, 1:68:14–, 1:83:24

concepts [3]– - 1:6:3–, 1:35:8–, 1:136:8

concern [4]– - 1:15:1–, 1:15:9–, 1:36:7–, 1:36:8

concerned [3]– - 1:30:8–, 1:116:14–, 1:116:24

concerns [1]– - 1:15:13–, 1:117:24–, 1:120:13–, 1:120:24

concessions [1]– - 1:8:17

conclude [3]– - 1:5:5–, 1:89:13–, 1:120:15

concluded [1]– - 1:141:1

conclusion [3]– - 1:87:2–, 1:87:15–, 1:137:1

conditions [1]– - 1:39:11

conduct [7]– - 1:47:15–, 1:49:1–, 1:57:2–, 1:66:11–, 1:69:7–, 1:74:20–, 1:133:10

conducted [1]– - 1:40:17

conducting [1]– - 1:44:10

conference [2]– - 1:124:19–, 1:136:8

confers [1]– - 1:32:8

confess [1]– - 1:131:15

confident [1]– - 1:18:6

confidential [1]– - 1:31:22

confirmed [1]– - 1:109:6

confirms [1]– - 1:99:14

confusion [5]– - 1:15:14–, 1:35:3–, 1:35:5–, 1:85:15–, 1:85:24

Congress [33]– - 1:15:16 –, 1:15:18–, 1:16:4–, 1:16:11 –, 1:16:20–, 1:17:5–, 1:17:11 –, 1:17:12–, 1:25:6–, 1:32:2–, 1:32:14–, 1:32:18–, 1:77:8–, 1:83:13–, 1:89:2–, 1:89:3–, 1:89:7–, 1:91:14–, 1:92:7–, 1:96:18–, 1:96:20–, 1:97:18 –, 1:97:19–, 1:110:13–, 1:110:18–, 1:121:3–, 1:121:13–, 1:121:15–, 1:137:9–, 1:139:5–, 1:139:14

Congress's [4]– - 1:116:3 –, 1:121:17–, 1:126:14–, 1:126:18

Congressional [4]– - 1:16:15–, 1:16:24–, 1:89:1–, 1:126:9

connection [1]– - 1:132:14

consensus [1]– - 1:58:5

consent [1]– - 1:32:16

consequence [1]– - 1:114:25

consequences [3]– - 1:17:7–, 1:45:20–, 1:74:2

consider [4]– - 1:9:19–, 1:45:8–, 1:77:4–, 1:95:15

consideration [4]– - 1:15:1–, 1:16:17–, 1:79:18–, 1:100:24

considered [5]– - 1:6:24–,

1:18:16–, 1:25:25–, 1:94:17

considering [4]– - 1:10:4 –, 1:13:4–, 1:26:21–, 1:90:25

consistent [7]– - 1:24:22–, 1:54:12–, 1:56:2–, 1:56:6–, 1:67:14–, 1:80:18–, 1:136:10

constellation [1]– - 1:66:12

constitute [1]– - 1:23:3

constituted [3]– - 1:8:11–, 1:22:17–, 1:41:8

constitutes [3]– - 1:35:4–, 1:93:10–, 1:101:16

constitution [1]– - 1:83:11

Constitution [2]– - 1:32:7 –, 1:32:18

constitutional [13]– - 1:9:19–, 1:10:14–, 1:44:11–, 1:44:17–, 1:55:3–, 1:77:24–, 1:81:24–, 1:83:20–, 1:83:23 –, 1:84:1–, 1:120:13–, 1:121:1–, 1:127:5

constraint [1]– - 1:127:18

contain [5]– - 1:14:13–, 1:45:1–, 1:45:4–, 1:48:2–, 1:58:22

contained [7]– - 1:14:1–, 1:14:6–, 1:38:17–, 1:74:18–, 1:105:16–, 1:108:10–, 1:118:14

contains [2]– - 1:35:5–, 1:64:19

contemplate [1]– - 1:128:7

contemplated [3]– - 1:13:19–, 1:51:17–, 1:124:1

contemplates [1]– - 1:118:24

contemporaneous [1]– - 1:129:2

contemporaneously [1] – - 1:4:7

content [11]– - 1:14:20–, 1:14:21–, 1:15:7–, 1:15:17–, 1:16:6–, 1:18:12–, 1:19:8–, 1:24:3–, 1:33:10–, 1:41:2–, 1:54:18

contention [1]– - 1:114:1

contentless [1]– - 1:25:5

contest [1]– - 1:128:23

contested [6]– - 1:7:22–, 1:8:24–, 1:10:1–, 1:10:3–, 1:14:10

context [19]– - 1:7:23–,

1:30:18–, 1:45:8–, 1:57:12–, 1:57:13–, 1:61:13–, 1:65:12 –, 1:66:21–, 1:70:17–, 1:87:9 –, 1:89:15–, 1:91:21–, 1:93:15–, 1:101:22–, 1:107:15–, 1:117:8–, 1:118:11–, 1:129:16–, 1:135:6

contexts [1]– - 1:28:7

contingency [1]– - 1:112:9

continue [4]– - 1:9:15–, 1:96:18–, 1:99:20–, 1:125:13

continues [2]– - 1:46:23–, 1:55:24

continuing [1]– - 1:46:24

contractors [1]– - 1:53:13

contrary [6]– - 1:26:8–, 1:42:16–, 1:55:6–, 1:57:4–, 1:91:5–, 1:91:6

contrast [2]– - 1:26:16–, 1:44:13

control [1]– - 1:116:4–, 1:139:13

conversation [2]– - 1:108:19–, 1:109:13

coordination [1]– - 1:124:2

copies [1]– - 1:92:17

copy [3]– - 1:99:5–, 1:99:6 –, 1:110:22

core [1]– - 1:43:12

corners [1]– - 1:29:24

corollary [1]– - 1:67:2

correct [47]– - 1:4:16–, 1:8:16–, 1:9:22–, 1:10:23–, 1:11:8–, 1:15:22–, 1:17:15–, 1:20:7–, 1:20:18–, 1:25:7–, 1:25:10–, 1:25:11–, 1:28:21 –, 1:46:19–, 1:46:20–, 1:47:2 –, 1:47:3–, 1:47:23–, 1:47:25 –, 1:48:6–, 1:49:12, 1:51:22 –, 1:53:21–, 1:56:20–, 1:56:22–, 1:58:15–, 1:59:8–, 1:59:10–, 1:60:2–, 1:60:5–, 1:62:25–, 1:65:21–, 1:65:24 –, 1:66:23–, 1:68:12–, 1:69:19–, 1:69:24–, 1:70:20 –, 1:72:3–, 1:74:19–, 1:90:17 –, 1:105:20–, 1:135:21–, 1:136:22–, 1:138:13

correctly [2]– - 1:71:4–, 1:129:25

Counsel [28]– - 1:3:8–, 1:5:23–, 1:6:1–, 1:8:10–, 1:14:4–, 1:23:16–, 1:30:17–,

1:33:13₋, 1:33:17₋, 1:34:24
₋, 1:38:6₋, 1:38:17₋, 1:38:20
₋, 1:88:19₋, 1:96:11₋,
1:96:12₋, 1:97:2₋, 1:103:15
₋, 1:104:25₋, 1:109:8₋,
1:109:15₋, 1:109:22₋,
1:132:24₋, 1:134:25₋,
1:135:15₋, 1:136:10₋,
1:136:14₋, 1:140:18

counsel [5]₋ - 1:3:13₋,
1:4:3₋, 1:4:5₋, 1:6:9₋, 1:6:10

Counsel's [8]₋ - 1:8:18₋,
1:10:10₋, 1:15:15₋, 1:16:8₋,
1:19:1₋, 1:22:7₋, 1:87:21₋,
1:132:22

Counselor [1]₋ - 1:113:21

count [5]₋ - 1:11:6₋,
1:37:14₋, 1:62:2₋, 1:62:3

Count [6]₋ - 1:29:6₋,
1:36:18₋, 1:37:16₋, 1:62:2₋,
1:62:5₋, 1:84:9

counting [1]₋ - 1:101:10

countries [1]₋ - 1:112:8

counts [10]₋ - 1:6:18₋,
1:11:13₋, 1:22:12₋, 1:37:6₋,
1:48:19₋, 1:48:20₋, 1:116:24
₋, 1:117:9₋, 1:117:18₋,
1:117:19

Counts [5]₋ - 1:11:22₋,
1:40:8₋, 1:40:12₋, 1:86:1₋,
1:92:21

couple [5]₋ - 1:42:23₋,
1:43:16₋, 1:52:16₋, 1:101:13
₋, 1:121:19

coupled [1]₋ - 1:66:20

course [21]₋ - 1:5:12₋,
1:7:17₋, 1:10:24₋, 1:27:9₋,
1:44:9₋, 1:44:24₋, 1:45:22₋,
1:59:4₋, 1:59:24₋, 1:61:16₋,
1:65:4₋, 1:69:22₋, 1:75:20₋,
1:77:1₋, 1:77:5₋, 1:100:12₋,
1:121:14₋, 1:122:16₋,
1:124:5₋, 1:133:18₋,
1:138:14

Court [75]₋ - 1:3:1₋, 1:3:3₋,
1:5:4₋, 1:7:21₋, 1:9:17₋,
1:10:6₋, 1:11:10₋, 1:13:3₋,
1:18:20₋, 1:24:4₋, 1:24:25₋,
1:25:23₋, 1:26:17₋, 1:33:25
₋, 1:42:8₋, 1:42:11₋, 1:47:13
₋, 1:48:5₋, 1:48:10₋, 1:49:25
₋, 1:50:17₋, 1:52:17₋, 1:55:3
₋, 1:55:4₋, 1:58:8₋, 1:61:22₋,
1:62:7₋, 1:71:3₋, 1:72:19₋,
1:75:15₋, 1:77:22₋, 1:78:8₋,
1:82:1₋, 1:82:15₋, 1:84:1₋,
1:84:10₋, 1:86:21₋, 1:87:7₋,

1:87:11₋, 1:89:6₋, 1:90:5₋,
1:90:24₋, 1:92:4₋, 1:93:12₋,
1:94:2₋, 1:94:7₋, 1:94:15₋,
1:97:16₋, 1:98:4₋, 1:98:6₋,
1:99:11₋, 1:99:22₋, 1:100:22
₋, 1:100:24₋, 1:103:5₋,
1:106:14₋, 1:112:5₋,
1:114:11₋, 1:115:24₋,
1:116:18₋, 1:117:2₋, 1:117:4
₋, 1:118:11₋, 1:120:14₋,
1:120:21₋, 1:121:23₋,
1:122:1₋, 1:126:13₋,
1:131:24₋, 1:132:2₋, 1:132:6
₋, 1:134:16₋, 1:135:17₋,
1:140:24

court [25]₋ - 1:4:1₋, 1:13:2
₋, 1:17:6₋, 1:18:5₋, 1:18:10₋,
1:25:9₋, 1:25:11₋, 1:26:21₋,
1:30:8₋, 1:34:8₋, 1:82:6₋,
1:90:14₋, 1:102:16₋,
1:107:17₋, 1:116:12₋,
1:116:13₋, 1:117:17₋,
1:117:24₋, 1:118:1₋, 1:119:3
₋, 1:119:20₋, 1:120:6₋,
1:127:5₋, 1:138:22

COURT [277]₋ - 1:3:2₋,
1:3:11₋, 1:3:15₋, 1:3:19₋,
1:3:22₋, 1:4:18₋, 1:4:24₋,
1:5:9₋, 1:5:15₋, 1:5:20₋,
1:6:16₋, 1:7:10₋, 1:7:15₋,
1:8:14₋, 1:8:20₋, 1:9:15₋,
1:9:22₋, 1:10:8₋, 1:10:21₋,
1:11:18₋, 1:11:24₋, 1:12:15
₋, 1:13:9₋, 1:13:25₋, 1:15:9₋,
1:15:19₋, 1:17:13₋, 1:17:21
₋, 1:17:25₋, 1:19:15₋,
1:20:12₋, 1:20:24₋, 1:21:2₋,
1:21:9₋, 1:21:23₋, 1:23:8₋,
1:23:13₋, 1:24:7₋, 1:24:16₋,
1:25:8₋, 1:25:16₋, 1:26:5₋,
1:26:14₋, 1:26:19₋, 1:27:8₋,
1:28:6₋, 1:28:18₋, 1:28:24₋,
1:29:6₋, 1:29:13, 1:29:16₋,
1:30:9₋, 1:30:16₋, 1:31:14₋,
1:33:1₋, 1:33:13₋, 1:33:21₋,
1:34:18₋, 1:34:22₋, 1:35:9₋,
1:35:19₋, 1:36:15₋, 1:37:3₋,
1:37:25₋, 1:38:5₋, 1:38:11₋,
1:38:16₋, 1:38:22₋, 1:39:21
₋, 1:40:6₋, 1:40:21₋, 1:40:25
₋, 1:41:14₋, 1:41:19₋, 1:42:3
₋, 1:45:7₋, 1:45:22₋, 1:46:7₋,
1:46:9₋, 1:46:16₋, 1:46:25₋,
1:47:4₋, 1:47:21₋, 1:48:7₋,
1:48:18₋, 1:49:12₋, 1:49:19
₋, 1:50:7₋, 1:50:12₋, 1:51:8₋,
1:51:10₋, 1:51:12₋, 1:51:17
₋, 1:51:21₋, 1:51:23₋,
1:52:14₋, 1:53:1₋, 1:53:16₋,
1:53:21₋, 1:53:24₋, 1:54:14

1:55:6₋, 1:55:11₋, 1:55:18
₋, 1:56:12₋, 1:56:17₋,
1:56:23, 1:57:7₋, 1:57:15,
1:57:21₋, 1:57:25₋, 1:58:11
₋, 1:58:19₋, 1:59:3₋, 1:59:7₋,
1:59:11₋, 1:59:13₋, 1:59:18
₋, 1:59:25₋, 1:60:6₋, 1:60:17
₋, 1:61:3₋, 1:61:9₋, 1:62:1₋,
1:62:19₋, 1:62:24₋, 1:63:9₋,
1:63:19₋, 1:63:25₋, 1:64:10
₋, 1:64:18₋, 1:65:1₋, 1:65:6₋,
1:65:13₋, 1:65:17₋, 1:65:24
₋, 1:66:4₋, 1:66:8₋, 1:66:19₋,
1:66:25₋, 1:67:5₋, 1:67:8₋,
1:67:17₋, 1:67:23₋, 1:68:11
₋, 1:68:13₋, 1:68:20₋, 1:69:5
₋, 1:69:18₋, 1:69:20₋,
1:69:25₋, 1:70:9₋, 1:70:20₋,
1:70:25₋, 1:71:7₋, 1:71:16₋,
1:71:20₋, 1:72:4₋, 1:72:14₋,
1:72:16₋, 1:72:22₋, 1:73:1₋,
1:73:8₋, 1:73:11₋, 1:73:17₋,
1:73:24₋, 1:74:3₋, 1:74:16₋,
1:74:20₋, 1:74:24₋, 1:76:11
₋, 1:76:16₋, 1:77:1₋, 1:78:3₋,
1:78:18₋, 1:79:2₋, 1:79:5,
1:79:9₋, 1:80:4₋, 1:81:3₋,
1:81:14₋, 1:82:12₋, 1:82:20
₋, 1:83:6₋, 1:83:19₋, 1:85:1₋,
1:85:6, 1:85:17₋, 1:85:20₋,
1:86:4₋, 1:86:7₋, 1:86:9₋,
1:87:1₋, 1:87:14₋, 1:87:24₋,
1:89:11₋, 1:90:16₋, 1:91:16
₋, 1:93:1₋, 1:93:14₋, 1:95:1₋,
1:95:4₋, 1:95:6₋, 1:97:1₋,
1:98:14₋, 1:99:7₋, 1:99:10₋,
1:99:12₋, 1:99:16₋, 1:100:13
₋, 1:101:17₋, 1:102:2₋,
1:102:21₋, 1:103:6₋, 1:104:7
₋, 1:104:13₋, 1:104:24₋,
1:105:20₋, 1:106:2₋,
1:107:12₋, 1:108:8₋,
1:108:16₋, 1:108:24₋,
1:109:3₋, 1:109:8₋, 1:110:19
₋, 1:110:24₋, 1:111:3₋,
1:111:6₋, 1:111:18₋,
1:111:22₋, 1:113:16₋,
1:114:19₋, 1:114:24₋,
1:115:7₋, 1:116:7₋, 1:117:10
₋, 1:118:3₋, 1:118:5₋,
1:118:17₋, 1:118:21₋,
1:119:6₋, 1:119:25₋,
1:120:13₋, 1:122:5₋,
1:123:13₋, 1:124:8₋, 1:125:1
₋, 1:125:10₋, 1:125:13₋,
1:125:21₋, 1:125:24₋,
1:127:19₋, 1:128:16₋,
1:128:25₋, 1:130:6₋,
1:130:21₋, 1:131:1₋, 1:131:3
₋, 1:131:5₋, 1:133:20₋,
1:134:4₋, 1:134:9₋, 1:135:20

1:136:6₋, 1:136:20₋,
1:138:8₋, 1:138:24₋,
1:139:18₋, 1:139:21₋,
1:139:25₋, 1:140:6₋, 1:140:9
₋, 1:140:12₋, 1:140:15₋,
1:140:17₋, 1:140:21

Court's [14]₋ - 1:16:25₋,
1:17:8₋, 1:17:10₋, 1:18:15₋,
1:25:19₋, 1:41:23₋, 1:42:17
₋, 1:46:2₋, 1:48:10₋, 1:49:4₋,
1:57:24₋, 1:77:8₋, 1:106:23

COURTROOM [1]₋ -
1:3:5

courtroom [2]₋ - 1:4:1₋,
1:14:14

Courts [1]₋ - 1:54:9

courts [25]₋ - 1:10:14₋,
1:12:17₋, 1:15:19₋, 1:25:7₋,
1:25:12₋, 1:25:13₋, 1:26:10
₋, 1:28:3₋, 1:31:25₋, 1:36:8₋,
1:42:1₋, 1:49:7₋, 1:54:18₋,
1:61:5₋, 1:61:17₋, 1:73:4₋,
1:82:17₋, 1:83:8₋, 1:83:11₋,
1:115:12₋, 1:116:19₋,
1:117:10₋, 1:118:5₋,
1:131:11₋, 1:131:22

cover [2]₋ - 1:38:19₋,
1:78:7

coverage [2]₋ - 1:127:13₋,
1:127:16

crafted [1]₋ - 1:116:3

crafting [1]₋ - 1:7:25

create [2]₋ - 1:44:22₋,
1:139:15

created [1]₋ - 1:44:6

creates [1]₋ - 1:103:8

creation [3]₋ - 1:116:4₋,
1:117:4₋, 1:120:22

credited [2]₋ - 1:22:18₋,
1:22:19

CREW [5]₋ - 1:106:8₋,
1:115:11₋, 1:116:12₋,
1:121:11₋, 1:121:19

crime [13]₋ - 1:19:19₋,
1:20:2₋, 1:20:17₋, 1:20:18₋,
1:20:19₋, 1:21:4₋, 1:46:17₋,
1:47:5₋, 1:48:3₋, 1:51:13₋,
1:74:1₋, 1:95:12₋, 1:122:16

criminal [40]₋ - 1:17:6₋,
1:20:6₋, 1:30:10₋, 1:30:11₋,
1:30:12₋, 1:30:18₋, 1:30:21
₋, 1:31:6₋, 1:32:24₋, 1:45:24
₋, 1:46:2₋, 1:46:3₋, 1:46:4₋,
1:48:8₋, 1:55:4₋, 1:57:2₋,
1:65:20₋, 1:65:21₋, 1:68:15
₋, 1:69:10₋, 1:69:15₋, 1:93:6

_, 1:95:16_, 1:100:7_,
1:101:2_, 1:101:5_, 1:102:20
_, 1:103:1_, 1:105:3_,
1:105:7_, 1:110:6_, 1:120:11
_, 1:122:8_, 1:122:20_,
1:123:1_, 1:123:25_, 1:124:1
_, 1:124:5_, 1:129:8

criminality [1]_ - 1:69:7

criteria [4]_ - 1:21:21_,
1:67:3_, 1:67:4_, 1:67:19

critical [1]_ - 1:23:21

cross [1]_ - 1:37:17

cross-examine [1]_ -
1:37:17

crossover [1]_ - 1:6:4

crucial [1]_ - 1:131:18

crystal [1]_ - 1:88:4

culpable [1]_ - 1:132:4

curiosity [1]_ - 1:110:20

curious [2]_ - 1:61:12_,
1:124:10

current [4]_ - 1:35:12_,
1:82:23_, 1:100:11_,
1:108:22

custody [2]_ - 1:39:21_,
1:43:13

customs [1]_ - 1:31:7

cut [2]_ - 1:106:4_, 1:106:7

cuts [1]_ - 1:98:11

### D

D.C [3]_ - 1:31:25_, 1:32:6
_, 1:32:7

Dadan [1]_ - 1:3:17

data [1]_ - 1:37:2

database [2]_ - 1:62:11_,
1:63:12

date [5]_ - 1:19:17_, 1:22:4
_, 1:46:19_, 1:65:21_,
1:72:24

David [1]_ - 1:3:10

Davis [18]_ - 1:17:5_,
1:30:8_, 1:54:25_, 1:55:2_,
1:77:7_, 1:77:8_, 1:77:12_,
1:77:23_, 1:80:19_, 1:82:15
_, 1:83:2_, 1:83:3_, 1:83:7_,
1:83:15_, 1:83:20_, 1:84:7

day-to-day [1]_ - 1:116:19

dd [7]_ - 1:17:22_, 1:17:24
_, 1:56:19_, 1:56:23_,
1:56:25_, 1:57:1_, 1:78:4

De [4]_ - 1:3:6_, 1:3:21_,
1:4:15_, 1:85:25

deactivated [1]_ - 1:62:4

deal [3]_ - 1:73:2_,
1:105:15_, 1:135:2

dealt [3]_ - 1:50:19_,
1:65:9_, 1:101:20

debate [1]_ - 1:26:2

decades [1]_ - 1:92:12

decent [1]_ - 1:124:6

decide [5]_ - 1:69:2_,
1:80:2_, 1:80:17_, 1:98:7_,
1:137:13

decided [4]_ - 1:47:18_,
1:52:3_, 1:90:20_, 1:98:6

decision [29]_ - 1:18:14_,
1:19:23_, 1:37:17_, 1:61:11
_, 1:65:7_, 1:67:20_, 1:89:21
_, 1:89:25_, 1:90:21_,
1:104:11_, 1:106:17_,
1:106:23_, 1:107:7_,
1:107:13_, 1:114:22_,
1:114:23_, 1:115:1_,
1:116:10_, 1:116:12_,
1:116:13_, 1:119:19_,
1:127:12_, 1:131:8_, 1:134:1
_, 1:136:16_, 1:136:21_,
1:137:23_, 1:140:3

decision-making [1]_ -
1:90:21

decisional [1]_ - 1:35:13

decisions [15]_ - 1:21:21_,
1:25:22_, 1:27:6_, 1:34:7_,
1:67:12_, 1:68:22_, 1:89:9_,
1:106:2_, 1:110:11_, 1:117:5
_, 1:117:6_, 1:117:21_,
1:117:24_, 1:118:1_,
1:131:20

deck [1]_ - 1:4:9

declaration [1]_ - 1:48:16

declare [1]_ - 1:32:15

declared [1]_ - 1:119:8

declaring [1]_ - 1:77:1

declassified [1]_ - 1:43:6

Declassify [1]_ - 1:43:4

declined [4]_ - 1:15:18_,
1:16:20_, 1:16:21_, 1:84:16

Dedeyan [2]_ - 1:25:20_,
1:26:24

deemed [8]_ - 1:25:10_,
1:25:11_, 1:25:12_, 1:91:14
_, 1:105:22_, 1:118:6_,
1:119:13_, 1:137:21

defendant [7]_ - 1:12:2_,
1:17:7_, 1:41:7_, 1:50:3_,
1:91:3_, 1:119:11_, 1:119:12

defendant's [1]_ - 1:10:11

defendants [2]_ - 1:68:6_,
1:130:8

defense [15]_ - 1:6:8_,
1:6:9_, 1:6:10_, 1:33:11_,
1:35:10_, 1:37:11_, 1:88:1_,
1:91:20_, 1:93:15_, 1:96:7_,
1:118:13_, 1:124:9_,
1:124:13_, 1:124:17_,
1:124:24

Defense [16]_ - 1:11:15_,
1:11:20_, 1:14:5_, 1:19:25_,
1:20:14_, 1:36:9_, 1:36:14_,
1:41:13_, 1:48:2_, 1:70:12_,
1:92:7_, 1:94:1_, 1:94:11_,
1:94:19_, 1:133:12

deference [3]_ - 1:121:13
_, 1:121:14_, 1:121:24

define [11]_ - 1:15:18_,
1:16:12_, 1:27:10_, 1:32:24
_, 1:34:11_, 1:41:9_, 1:57:16
_, 1:57:17_, 1:61:5_, 1:70:22
_, 1:84:6

defined [2]_ - 1:23:13_,
1:58:2

defines [3]_ - 1:17:25_,
1:41:11_, 1:70:14

defining [4]_ - 1:34:3_,
1:72:9_, 1:72:11_, 1:124:13

definitely [1]_ - 1:127:15

definition [39]_ - 1:12:19_,
1:13:1_, 1:18:11_, 1:23:8_,
1:23:19_, 1:25:1_, 1:25:3_,
1:33:3_, 1:33:4_, 1:33:8_,
1:34:14_, 1:43:24_, 1:44:2_,
1:44:25_, 1:49:14_, 1:49:20
_, 1:56:12_, 1:56:18_, 1:61:7
_, 1:61:14_, 1:61:19_,
1:70:11_, 1:70:19_, 1:71:18
_, 1:72:2_, 1:79:15_, 1:79:18
_, 1:79:23_, 1:79:24_,
1:80:15_, 1:91:13_, 1:95:21
_, 1:112:19_, 1:112:20_,
1:122:25_, 1:136:6_,
1:136:10_, 1:138:5

definitions [15]_ - 1:13:13
_, 1:13:23_, 1:24:15_,
1:24:17_, 1:24:19_, 1:24:21
_, 1:43:20_, 1:57:5_, 1:58:4_,
1:71:5_, 1:71:7_, 1:71:9_,
1:84:5_, 1:93:4_, 1:102:6

degree [1]_ - 1:120:4

delay [1]_ - 1:71:20

delegation [4]_ - 1:15:16
_, 1:16:17_, 1:17:3_, 1:18:23

delete [1]_ - 1:37:18

deleted [1]_ - 1:116:17

deliberative [1]_ - 1:38:11

deliver [4]_ - 1:11:3_,
1:11:21_, 1:12:2_, 1:58:17

delivered [1]_ - 1:88:15

delving [1]_ - 1:120:14

demand [4]_ - 1:22:2_,
1:48:22_, 1:60:1_, 1:60:4

demonstrate [1]_ -
1:81:23

demonstrated [2]_ -
1:57:8_, 1:57:9

deny [1]_ - 1:33:1

department [1]_ -
1:128:22

Department [32]_ -
1:36:24_, 1:46:5_, 1:52:4_,
1:62:21_, 1:63:3_, 1:63:7_,
1:63:11_, 1:63:14_, 1:63:17
_, 1:63:22_, 1:84:18_, 1:94:3
_, 1:95:15_, 1:96:8_, 1:97:22
_, 1:98:5_, 1:101:2_,
1:101:14_, 1:102:23_,
1:103:14_, 1:104:20_,
1:105:3_, 1:105:6_, 1:114:13
_, 1:120:11_, 1:121:5_,
1:122:18_, 1:122:19_,
1:124:3_, 1:132:22_,
1:133:11_, 1:139:12

Department's [1]_ -
1:37:22

deploy [2]_ - 1:118:14_,
1:120:10

deployed [1]_ - 1:118:20

DEPUTY [1]_ - 1:3:5

describe [2]_ - 1:81:16_,
1:136:25

described [4]_ - 1:11:10_,
1:27:24_, 1:67:7_, 1:117:5

describes [1]_ - 1:57:4

description [1]_ - 1:20:8

descriptions [4]_ -
1:112:24_, 1:128:17_,
1:128:25_, 1:129:2

designate [5]_ - 1:106:11
_, 1:114:22_, 1:121:16_,
1:136:5_, 1:139:6

designated [8]_ - 1:7:6_,
1:13:6_, 1:18:18_, 1:22:8_,
1:42:13_, 1:43:11_, 1:113:10
_, 1:123:21

designating [1]_ - 1:68:22

designation [13]_ - 1:7:16
_, 1:8:11_, 1:9:4_, 1:13:10_,

1:22:18_, 1:33:8_, 1:87:3_, 1:97:4_, 1:98:18_, 1:113:22 _, 1:125:3_, 1:136:23_, 1:138:9

designations [2]_ - 1:87:16_, 1:133:23

detail [1]_ - 1:79:16

details [1]_ - 1:39:9

determination [10]_ - 1:78:13_, 1:88:23_, 1:102:18 _, 1:103:22_, 1:104:10_, 1:104:11_, 1:104:22_, 1:106:5_, 1:107:18

determine [1]_ - 1:85:13

determined [3]_ - 1:88:15 _, 1:133:23_, 1:140:4

Determines [1]_ - 1:56:1

determining [1]_ - 1:100:18

developed [1]_ - 1:139:5

development [1]_ - 1:86:22

deviation [1]_ - 1:82:23

devices [1]_ - 1:3:25

diametrically [1]_ - 1:58:4

diaries [2]_ - 1:94:12_, 1:128:8

Diaries [5]_ - 1:21:17_, 1:31:9_, 1:98:25_, 1:109:5_, 1:110:15

diary [5]_ - 1:109:9_, 1:109:16_, 1:109:20_, 1:109:25_, 1:128:7

dictionaries [3]_ - 1:23:15 _, 1:23:23_, 1:71:15

Dictionary [1]_ - 1:71:13

dictionary [10]_ - 1:24:15 _, 1:24:17_, 1:24:19_, 1:24:21_, 1:25:1_, 1:57:5_, 1:71:5_, 1:72:8_, 1:84:5_, 1:93:4

difference [1]_ - 1:104:18

different [21]_ - 1:13:16_, 1:18:4_, 1:27:4_, 1:30:4_, 1:41:25_, 1:46:22_, 1:52:21 _, 1:57:12_, 1:57:13_, 1:83:17_, 1:90:8_, 1:97:14_, 1:101:20_, 1:101:23_, 1:102:6_, 1:102:10_, 1:102:19_, 1:106:14_, 1:107:11_, 1:132:8

differentiate [1]_ - 1:49:10

differently [1]_ - 1:52:1

difficult [2]_ - 1:93:17_, 1:111:23

dignitaries [1]_ - 1:14:7

Dimaya [1]_ - 1:55:1

direct [3]_ - 1:14:9_, 1:42:17_, 1:117:1

directly [4]_ - 1:40:15_, 1:78:5_, 1:94:10

disagree [3]_ - 1:13:12_, 1:118:8_, 1:124:18

disappear [1]_ - 1:37:7

disclaim [1]_ - 1:107:9

disclose [2]_ - 1:131:21_, 1:131:23

disclosed [4]_ - 1:37:8_, 1:78:16_, 1:79:8_, 1:123:20

disclosure [1]_ - 1:56:4

disclosures [1]_ - 1:14:6

discoverable [2]_ - 1:37:10_, 1:38:1

discovered [1]_ - 1:62:25

discovery [9]_ - 1:35:2_, 1:36:19_, 1:36:21_, 1:37:9_, 1:37:21_, 1:38:6_, 1:38:25_, 1:62:6_, 1:63:5

discrete [1]_ - 1:75:4

discretion [10]_ - 1:32:8_, 1:32:13_, 1:69:12_, 1:88:8_, 1:91:21_, 1:95:23_, 1:96:9_, 1:96:20_, 1:140:4

discretionary [1]_ - 1:92:19

discuss [2]_ - 1:70:24_, 1:79:15

discussed [13]_ - 1:13:17 _, 1:16:2_, 1:16:18_, 1:34:6_, 1:35:2_, 1:36:23_, 1:39:25_, 1:40:1_, 1:77:18_, 1:78:9_, 1:81:1_, 1:82:17_, 1:105:19

discusses [1]_ - 1:117:4

discussing [1]_ - 1:41:15

discussion [13]_ - 1:7:23 _, 1:8:1_, 1:27:3_, 1:38:20_, 1:47:14_, 1:93:12_, 1:106:10 _, 1:107:16_, 1:124:19_, 1:126:22_, 1:130:2_, 1:137:19_, 1:139:2

discussions [6]_ - 1:14:7 _, 1:64:14_, 1:75:18_, 1:108:21_, 1:137:25

dismiss [11]_ - 1:4:10_, 1:4:13_, 1:6:18_, 1:85:10_, 1:86:15_, 1:87:10_, 1:88:2_, 1:92:20_, 1:100:23_, 1:104:6

_, 1:106:25

dismissal [6]_ - 1:89:12_, 1:91:19_, 1:92:2_, 1:93:17_, 1:103:2_, 1:124:16

dismissed [5]_ - 1:6:25_, 1:22:12_, 1:86:20_, 1:93:13 _, 1:112:13

dismissing [1]_ - 1:95:2

displacement [1]_ - 1:122:10

displaces [1]_ - 1:122:7

disposal [5]_ - 1:115:19_, 1:116:4_, 1:117:5_, 1:120:22

dispositive [1]_ - 1:19:6

dispute [9]_ - 1:9:7_, 1:20:22_, 1:71:8_, 1:74:17_, 1:87:24_, 1:88:3_, 1:94:12_, 1:94:13_, 1:94:15

disputed [2]_ - 1:8:2_, 1:14:3

disputes [2]_ - 1:9:23_, 1:32:3

dissent [1]_ - 1:35:6

distillation [1]_ - 1:49:6

distinct [1]_ - 1:7:14

distinction [1]_ - 1:78:22

District [1]_ - 1:10:12

district [5]_ - 1:116:13_, 1:117:24_, 1:118:1_, 1:119:20_, 1:131:11

disturb [1]_ - 1:126:14

divide [1]_ - 1:135:3

Division [1]_ - 1:73:3

docket [10]_ - 1:4:10_, 1:4:12_, 1:4:18_, 1:5:16_, 1:5:25_, 1:6:1_, 1:6:7_, 1:85:16_, 1:85:24_, 1:108:10

docketed [1]_ - 1:85:9

doctrine [5]_ - 1:14:25_, 1:28:15_, 1:80:18_, 1:129:15 _, 1:129:21

document [23]_ - 1:7:9_, 1:11:2_, 1:11:6_, 1:11:12_, 1:11:14_, 1:11:19_, 1:29:24 _, 1:30:24_, 1:34:17_, 1:35:5 _, 1:36:25_, 1:37:16_, 1:44:5 _, 1:81:14_, 1:88:23_, 1:89:9 _, 1:97:13_, 1:97:14_, 1:99:13_, 1:102:8_, 1:102:9 _, 1:118:6_, 1:128:2

Document [1]_ - 1:140:8

document-only [1]_ - 1:11:6

documentary [3]_ -

1:39:22_, 1:44:5_, 1:44:14

documentation [2]_ - 1:37:4_, 1:79:6

documented [1]_ - 1:39:9

Documents [1]_ - 1:111:2

documents [69]_ - 1:7:4_, 1:8:22_, 1:11:10_, 1:12:3_, 1:14:9_, 1:19:23_, 1:20:12_, 1:20:13_, 1:21:4_, 1:22:2_, 1:26:14_, 1:30:19_, 1:31:20 _, 1:36:17_, 1:37:12_, 1:39:16_, 1:41:6_, 1:42:16_, 1:43:23_, 1:44:22_, 1:45:20 _, 1:47:12_, 1:48:22_, 1:49:17_, 1:51:16_, 1:51:18 _, 1:52:2_, 1:52:6_, 1:52:23_, 1:59:10_, 1:60:1_, 1:60:14_, 1:63:9_, 1:65:8_, 1:68:3_, 1:68:6_, 1:68:22_, 1:69:13_, 1:73:18_, 1:73:19_, 1:73:21 _, 1:73:22_, 1:75:8_, 1:78:14 _, 1:81:24_, 1:84:12_, 1:87:16_, 1:88:20_, 1:89:22 _, 1:92:11_, 1:93:25_, 1:111:7_, 1:111:12_, 1:112:17_, 1:112:25_, 1:113:8_, 1:113:9_, 1:113:19 _, 1:114:4_, 1:117:22_, 1:119:7_, 1:120:23_, 1:122:13_, 1:122:21_, 1:123:2_, 1:125:18_, 1:136:22_, 1:138:12

documents-only [1]_ - 1:26:14

DOE [1]_ - 1:52:20

DOJ [10]_ - 1:13:15_, 1:13:20_, 1:80:17_, 1:81:10 _, 1:81:13_, 1:102:25_, 1:122:15_, 1:124:5_, 1:132:7 _, 1:139:23

domain [1]_ - 1:130:1

Donald [1]_ - 1:3:5

donate [3]_ - 1:96:22_, 1:139:16_, 1:140:4

done [18]_ - 1:14:12_, 1:23:6_, 1:27:13_, 1:42:25_, 1:47:8_, 1:55:4_, 1:61:17_, 1:84:10_, 1:94:3_, 1:103:8_, 1:103:12_, 1:103:19_, 1:103:24_, 1:105:18_, 1:109:5_, 1:135:12_, 1:135:13

Donnie [1]_ - 1:3:21

double [1]_ - 1:71:11

double-check [1]_ - 1:71:11

doubt [1]_ - 1:47:16

down [3]_ - 1:61:4_, 1:103:10_, 1:117:17

draft [3]_ - 1:63:24_, 1:110:17_, 1:110:19

drafts [1]_ - 1:63:21

drags [1]_ - 1:34:8

draw [4]_ - 1:8:15_, 1:61:23_, 1:128:18_, 1:138:10

drawer [1]_ - 1:108:15

drawing [1]_ - 1:87:15

drawn [2]_ - 1:113:19_, 1:126:9

drilling [1]_ - 1:61:4

drop [1]_ - 1:58:20

drops [1]_ - 1:58:18

drugs [1]_ - 1:103:16

due [4]_ - 1:54:12_, 1:66:7 _, 1:67:18_, 1:69:17

duelling [1]_ - 1:115:9

during [11]_ - 1:9:6_, 1:52:23_, 1:59:4_, 1:59:23_, 1:65:4_, 1:88:13_, 1:92:15_, 1:115:21_, 1:116:4_, 1:133:10

duties [2]_ - 1:44:12_, 1:44:18

duty [1]_ - 1:27:15

1:94:19

elaborate [1]_ - 1:132:10

elaborated [1]_ - 1:132:1

elect [1]_ - 1:39:6

elected [1]_ - 1:16:22

electronic [1]_ - 1:3:25

element [14]_ - 1:25:14_, 1:26:12_, 1:26:22_, 1:27:5_, 1:28:1_, 1:35:1_, 1:36:1_, 1:36:6_, 1:36:8_, 1:41:10_, 1:52:12_, 1:61:25_, 1:64:1_, 1:91:22

elements [10]_ - 1:19:22_, 1:26:6_, 1:40:8_, 1:40:11_, 1:42:9_, 1:48:3_, 1:67:20_, 1:73:12_, 1:81:17_, 1:93:6

elephant [1]_ - 1:112:16

eligibility [1]_ - 1:78:13

eliminates [3]_ - 1:83:21_, 1:92:1

eliminating [1]_ - 1:92:5

emails [2]_ - 1:40:4_, 1:63:21

emergency [1]_ - 1:4:2

emerges [1]_ - 1:25:23

Emil [1]_ - 1:3:14

emphasis [1]_ - 1:17:16

emphasize [1]_ - 1:20:21

emphasizing [2]_ - 1:77:23_, 1:77:24

employee [3]_ - 1:11:3_, 1:11:21_, 1:11:25

employees [3]_ - 1:53:13 _, 1:60:17_, 1:60:21

employment [1]_ - 1:60:10

employs [1]_ - 1:131:10

empower [1]_ - 1:72:12

en [2]_ - 1:131:8_, 1:131:19

enacting [2]_ - 1:121:17_, 1:137:8

enactment [1]_ - 1:74:21

encompasses [1]_ - 1:117:6

encourage [1]_ - 1:139:14

end [5]_ - 1:52:25_, 1:53:12_, 1:59:22_, 1:104:1 _, 1:110:3

endeavors [1]_ - 1:70:14

ended [6]_ - 1:20:1_, 1:21:4_, 1:30:2_, 1:59:9_, 1:76:16_, 1:134:15

endorse [4]_ - 1:72:12_, 1:138:14_, 1:138:15_, 1:138:17

endorses [1]_ - 1:138:11

ends [6]_ - 1:22:1_, 1:28:24_, 1:51:14_, 1:59:19 _, 1:59:22_, 1:60:10

Energy [10]_ - 1:36:24_, 1:37:22_, 1:62:21_, 1:63:4_, 1:63:7_, 1:63:11_, 1:63:14_, 1:63:17_, 1:63:23_, 1:84:18

enforcement [22]_ - 1:12:9_, 1:14:22_, 1:14:25_, 1:15:8_, 1:18:18_, 1:21:20_, 1:30:8_, 1:34:4_, 1:34:15_, 1:66:24_, 1:67:1_, 1:67:7_, 1:67:10_, 1:67:18_, 1:67:22 _, 1:68:15_, 1:69:10_, 1:75:10_, 1:111:10_, 1:111:12_, 1:115:3_, 1:122:14

engage [1]_ - 1:137:24

engaged [1]_ - 1:93:12

enjoy [1]_ - 1:85:4

ensure [2]_ - 1:124:2_, 1:132:3

ensures [1]_ - 1:56:5

entire [4]_ - 1:49:1_, 1:54:12_, 1:99:14_, 1:99:15

entirely [4]_ - 1:54:12_, 1:68:17_, 1:114:16_, 1:132:8

entitled [31]_ - 1:11:4_, 1:11:16_, 1:11:21_, 1:12:1_, 1:12:11_, 1:12:13_, 1:12:19 _, 1:13:7_, 1:14:19_, 1:15:9_, 1:15:20_, 1:19:8_, 1:33:11_, 1:38:1_, 1:41:2_, 1:50:14_, 1:50:16_, 1:51:1_, 1:51:4_, 1:51:7_, 1:51:9_, 1:52:8_, 1:52:10_, 1:57:17_, 1:58:14 _, 1:59:2_, 1:70:22_, 1:71:25 _, 1:75:15_, 1:99:18_, 1:135:11

entitled-to-receive [1]_ - 1:51:4

entitlement [1]_ - 1:12:16

Entitlement [4]_ - 1:6:21 _, 1:11:17_, 1:19:14_, 1:75:5

entity [1]_ - 1:102:21

entry [7]_ - 1:4:10_, 1:4:13 _, 1:4:18_, 1:5:16_, 1:5:25_, 1:6:1_, 1:6:7

equal [1]_ - 1:95:10

equally [1]_ - 1:14:21

equals [1]_ - 1:136:23

equated [1]_ - 1:131:20

equivalency [1]_ - 1:125:23

erased [1]_ - 1:115:20

especially [3]_ - 1:14:3_, 1:37:18_, 1:83:16

Espionage [16]_ - 1:16:23 _, 1:32:20_, 1:81:17_, 1:82:21_, 1:89:14_, 1:89:17 _, 1:92:1_, 1:94:22_, 1:95:20 _, 1:109:14_, 1:109:16_, 1:109:24_, 1:126:25_, 1:134:24_, 1:137:16_, 1:138:3

essentially [10]_ - 1:7:21_, 1:36:12_, 1:56:10_, 1:62:22 _, 1:63:23_, 1:91:24_, 1:97:2 _, 1:114:20_, 1:114:24_, 1:115:1

establish [1]_ - 1:22:14

established [2]_ - 1:26:3 _, 1:124:2

establishes [1]_ - 1:83:7

estopped [3]_ - 1:13:15_, 1:132:17_, 1:133:17

estoppel [9]_ - 1:129:19_, 1:130:4_, 1:130:9_, 1:130:11 _, 1:130:22_, 1:131:7_, 1:131:11_, 1:132:3_, 1:133:25

evaluate [1]_ - 1:114:21

events [1]_ - 1:81:7

evidence [9]_ - 1:9:24_, 1:17:18_, 1:39:18_, 1:39:22 _, 1:40:13_, 1:48:17_, 1:70:18_, 1:114:4

evident [1]_ - 1:36:11

Ex [1]_ - 1:99:19

ex [1]_ - 1:100:3

ex-president's [1]_ - 1:100:3

Ex-Presidents [1]_ - 1:99:19

exact [3]_ - 1:43:11_, 1:120:2_, 1:132:24

exactly [16]_ - 1:15:8_, 1:27:19_, 1:38:6_, 1:73:20_, 1:92:13_, 1:93:7_, 1:95:4_, 1:96:23_, 1:99:2_, 1:100:2_, 1:103:7_, 1:103:10_, 1:104:19_, 1:109:6_, 1:133:21_, 1:135:18

examine [1]_ - 1:37:17

example [20]_ - 1:32:5_, 1:34:16_, 1:39:16_, 1:46:10

E

early [2]_ - 1:22:21_, 1:86:21

easy [1]_ - 1:87:8

ECF [2]_ - 1:42:18_, 1:139:22

editorial [1]_ - 1:99:3

EDVA [2]_ - 1:26:9_, 1:77:17

effect [2]_ - 1:44:11_, 1:44:16

effectively [5]_ - 1:59:19_, 1:68:24_, 1:97:4_, 1:121:22 _, 1:122:2

effort [2]_ - 1:110:5_, 1:135:8

efforts [1]_ - 1:30:25

Egan [3]_ - 1:32:10_, 1:32:11_, 1:32:21

either [11]_ - 1:4:22_, 1:5:2 _, 1:8:20_, 1:41:16_, 1:64:9_, 1:78:23_, 1:86:25_, 1:92:16 _, 1:92:17_, 1:94:14_,

_, 1:60:17_, 1:61:10_,
1:61:17_, 1:66:8_, 1:74:11_,
1:87:8_, 1:87:9_, 1:87:11_,
1:104:9_, 1:107:25_,
1:116:18_, 1:116:20_,
1:118:12_, 1:128:8_, 1:133:3
_, 1:134:25

examples [3]_ - 1:31:9_,
1:32:15_, 1:103:14

exceeded [1]_ - 1:60:18

exceeding [1]_ - 1:61:11

except [5]_ - 1:17:14_,
1:84:10_, 1:88:12_, 1:100:1

exceptions [1]_ - 1:88:19

exclude [1]_ - 1:127:12

excluded [1]_ - 1:127:15

excludes [1]_ - 1:19:4

exclusion [1]_ - 1:92:9

excuse [5]_ - 1:6:11_,
1:27:13_, 1:55:14_, 1:105:15
_, 1:114:24

executed [1]_ - 1:121:3

Executive [63]_ - 1:12:22
_, 1:12:23_, 1:14:15_, 1:15:5
_, 1:15:11_, 1:15:17_,
1:15:21_, 1:16:6_, 1:17:22_,
1:18:1_, 1:18:13_, 1:18:23_,
1:19:2_, 1:19:3_, 1:24:6_,
1:24:9_, 1:25:2_, 1:32:2_,
1:32:22_, 1:33:17_, 1:33:21
_, 1:33:22_, 1:33:25_, 1:34:9
_, 1:34:18_, 1:38:23_,
1:40:21_, 1:41:1_, 1:41:9_,
1:41:11_, 1:44:8_, 1:50:9_,
1:50:11_, 1:50:14_, 1:52:15
_, 1:53:6_, 1:53:14_, 1:53:17
_, 1:53:19_, 1:54:1_, 1:54:8_,
1:54:11_, 1:54:18_, 1:55:7_,
1:56:18_, 1:58:14_, 1:61:15
_, 1:70:21_, 1:70:25_, 1:72:1
_, 1:76:4_, 1:76:25_, 1:78:8_,
1:78:24_, 1:79:3_, 1:80:14_,
1:93:3_, 1:121:4_, 1:126:3_,
1:126:24_, 1:127:10_,
1:138:6

executive [17]_ - 1:7:8_,
1:31:18_, 1:31:24_, 1:32:4_,
1:32:8_, 1:45:23_, 1:65:19_,
1:66:11_, 1:69:6_, 1:78:19_,
1:89:3_, 1:92:12_, 1:117:17
_, 1:121:6_, 1:121:13_,
1:121:15_, 1:121:24

executive's [2]_ - 1:32:13
_, 1:122:8

executives [1]_ - 1:66:4

exemption [1]_ - 1:126:19

exercise [1]_ - 1:7:3

exercises [1]_ - 1:129:3

Exhibit [1]_ - 1:132:20

exist [6]_ - 1:24:3_, 1:66:19
_, 1:78:19_, 1:78:21_,
1:78:22_, 1:127:7

existed [2]_ - 1:62:25_,
1:92:8

existence [3]_ - 1:92:12_,
1:118:24_, 1:122:7

existing [2]_ - 1:34:19_,
1:117:3

exists [2]_ - 1:106:18_,
1:117:19

expect [2]_ - 1:69:15_,
1:115:2

experience [2]_ - 1:10:10
_, 1:10:11

expiration [1]_ - 1:20:15

explain [3]_ - 1:28:18_,
1:114:16_, 1:130:21

explained [2]_ - 1:78:18_,
1:132:23

explains [1]_ - 1:124:9

explication [1]_ - 1:54:20

explicit [2]_ - 1:12:25_,
1:16:5

explicitly [2]_ - 1:15:10_,
1:16:20

exposed [1]_ - 1:45:24

exposition [1]_ - 1:130:13

express [2]_ - 1:53:14_,
1:91:5

expressly [1]_ - 1:19:1

extensive [1]_ - 1:108:21

extent [15]_ - 1:12:24_,
1:13:2_, 1:14:10_, 1:14:21_,
1:19:10_, 1:22:21_, 1:29:3_,
1:37:14_, 1:37:15_, 1:77:25
_, 1:78:22_, 1:80:25_,
1:82:21_, 1:84:10_, 1:127:7

extra [2]_ - 1:64:3_, 1:82:2

extraordinary [3]_ -
1:77:2_, 1:91:5_, 1:105:23

extras [1]_ - 1:70:4

extremely [2]_ - 1:18:15_,
1:27:7

F

F.2d [2]_ - 1:32:6_,
1:115:25

F.3d [2]_ - 1:117:2_,

1:131:9

F.Supp [1]_ - 1:91:7

face [3]_ - 1:82:4_, 1:87:20
_, 1:134:17

faced [4]_ - 1:15:19_,
1:45:24_, 1:61:18

faces [1]_ - 1:17:8

facilities [7]_ - 1:38:22_,
1:38:24_, 1:39:4_, 1:39:5_,
1:39:22_, 1:40:7_, 1:40:22

facility [1]_ - 1:40:10

facing [2]_ - 1:17:7_,
1:65:20

fact [43]_ - 1:5:6_, 1:7:18_,
1:9:13_, 1:19:23_, 1:10:18_,
1:10:19_, 1:15:8_, 1:27:3_,
1:27:6_, 1:36:1_, 1:43:11_,
1:45:3_, 1:50:13_, 1:53:9_,
1:53:16_, 1:63:4_, 1:69:23_,
1:75:14_, 1:76:1_, 1:77:24_,
1:86:22_, 1:87:2_, 1:89:2_,
1:89:21_, 1:92:25_, 1:95:15
_, 1:95:25_, 1:102:15_,
1:103:24_, 1:113:5_, 1:113:9
_, 1:114:1_, 1:114:4_,
1:124:24_, 1:127:25_,
1:129:1_, 1:131:18_,
1:132:13_, 1:134:21_,
1:138:7_, 1:138:14_,
1:138:21_, 1:138:24

factor [4]_ - 1:66:13_,
1:67:25_, 1:81:5_, 1:81:18

factors [4]_ - 1:66:14_,
1:68:9_, 1:100:23_, 1:132:11

facts [25]_ - 1:7:11_, 1:7:22
_, 1:8:2_, 1:9:11_, 1:10:1_,
1:10:7_, 1:10:15_, 1:20:9_,
1:27:23_, 1:42:4_, 1:47:19_,
1:51:19_, 1:58:7_, 1:58:10_,
1:69:2_, 1:75:7_, 1:101:20_,
1:102:13_, 1:106:15_,
1:106:16_, 1:107:24_,
1:113:6_, 1:113:14_,
1:130:25_, 1:132:2

factual [10]_ - 1:8:24_,
1:9:3_, 1:9:4_, 1:9:7_, 1:9:20
_, 1:13:9_, 1:30:9_, 1:36:3_,
1:60:21_, 1:87:16

factually [3]_ - 1:63:1_,
1:63:3_, 1:84:11

fail [1]_ - 1:42:2

failed [2]_ - 1:51:5_, 1:51:8

fails [3]_ - 1:11:3_, 1:11:20
_, 1:87:13

failure [10]_ - 1:12:6_,
1:48:15_, 1:52:13_, 1:58:17

_, 1:58:24_, 1:60:4_,
1:131:21_, 1:131:23_,
1:136:22

failures [1]_ - 1:16:15

fair [19]_ - 1:10:16_, 1:12:8
_, 1:28:15_, 1:28:18_, 1:30:6
_, 1:35:9_, 1:45:16_, 1:53:10
_, 1:67:2_, 1:67:16_, 1:75:10
_, 1:81:9_, 1:81:11_, 1:83:6_,
1:103:3_, 1:109:9_, 1:113:17
_, 1:113:24_, 1:126:4

fairly [1]_ - 1:129:25

faith [4]_ - 1:28:7_, 1:28:12
_, 1:64:3_, 1:115:3

false [1]_ - 1:48:16

falters [1]_ - 1:92:3

familiar [4]_ - 1:59:20_,
1:60:6_, 1:61:5_, 1:130:24

far [8]_ - 1:17:14_, 1:37:25
_, 1:49:24_, 1:79:7_,
1:100:14_, 1:118:17_,
1:129:1_, 1:137:18

fashion [5]_ - 1:81:13_,
1:83:11_, 1:115:9_, 1:117:16
_, 1:118:20

fast [1]_ - 1:125:11

fatal [2]_ - 1:86:19_,
1:114:5

favorable [4]_ - 1:37:11_,
1:78:12_, 1:81:22_, 1:115:13

favorably [1]_ - 1:81:2

FBI [1]_ - 1:51:20

features [2]_ - 1:82:22_,
1:91:19

featuring [1]_ - 1:67:10

February [1]_ - 1:62:9

federal [1]_ - 1:105:12

felon [1]_ - 1:87:9

few [4]_ - 1:34:5_, 1:63:15
_, 1:75:4_, 1:115:17

fiat [1]_ - 1:44:20

Fifth [4]_ - 1:54:12_, 1:66:7
_, 1:67:14_, 1:69:17

fight [2]_ - 1:35:15_,
1:103:16

Figure [1]_ - 1:43:5

figure [2]_ - 1:43:5_,
1:53:25

file [4]_ - 1:5:4_, 1:84:20_,
1:122:25

filed [11]_ - 1:4:11_, 1:4:14
_, 1:5:10_, 1:5:22_, 1:5:25_,
1:6:1_, 1:85:11_, 1:108:9_,
1:111:7_, 1:123:5_, 1:123:10

filing [3]– - 1:35:3–, 1:138:18–, 1:139:23

filings [2]– - 1:35:2–, 1:139:2

fill [1]– - 1:41:2

final [2]– - 1:133:21–, 1:34:10

finally [1]– - 1:19:5

fine [3]– - 1:100:9–, 1:125:24–, 1:137:9

fine-line [1]– - 1:137:9

firm [1]– - 1:101:15

first [27]– - 1:4:10–, 1:6:9–, 1:6:10–, 1:6:13–, 1:7:3–, 1:8:3–, 1:9:2–, 1:16:15–, 1:30:22–, 1:32:1–, 1:37:24–, 1:52:17–, 1:62:5–, 1:74:22–, 1:84:4–, 1:94:8–, 1:98:5–, 1:102:18–, 1:112:15–, 1:115:17–, 1:116:10–, 1:116:25–, 1:119:5–, 1:121:8 –, 1:121:18–, 1:125:25–, 1:133:4

first-ever [1]– - 1:84:4

fit [6]– - 1:73:12–, 1:88:14–, 1:130:18–, 1:136:14–, 1:139:7

fits [3]– - 1:73:13–, 1:73:14 –, 1:84:7

flagging [1]– - 1:114:10

flawed [1]– - 1:104:12

flesh [1]– - 1:50:2

flips [1]– - 1:75:9

focus [2]– - 1:51:6–, 1:93:8

focused [2]– - 1:28:17–, 1:93:6

FOIA [5]– - 1:97:12–, 1:102:10–, 1:111:7–, 1:111:8 –, 1:111:12

folks [2]– - 1:14:11–, 1:107:3

follow [4]– - 1:17:9–, 1:108:24–, 1:112:1–, 1:117:24

follow-up [1]– - 1:108:24

follow-ups [1]– - 1:112:1

followed [2]– - 1:115:2–, 1:130:12

following [3]– - 1:22:3–, 1:77:17–, 1:103:3

footnote [5]– - 1:51:2–, 1:124:8–, 1:124:21–, 1:139:19–, 1:140:7

forbids [2]– - 1:27:15–,

1:27:17

forbids.. [1]– - 1:49:21

force [3]– - 1:93:15–, 1:95:10–, 1:120:10

forceful [1]– - 1:91:17

Ford [2]– - 1:25:21–, 1:66:8

foreclosed [1]– - 1:102:25

foreign [4]– - 1:14:7–, 1:26:4–, 1:108:20–, 1:112:8

foresee [3]– - 1:57:2–, 1:65:19–, 1:69:7

foreseeability [2]– - 1:66:9–, 1:68:14

foreseeable [1]– - 1:69:14

foreshadowed [1]– - 1:36:9

forever [1]– - 1:83:7

forget [1]– - 1:71:13

form [7]– - 1:88:1–, 1:91:20 –, 1:109:9–, 1:124:12–, 1:124:17–, 1:125:1

formal [5]– - 1:29:4–, 1:29:7–, 1:29:11–, 1:62:3–, 1:79:6

format [1]– - 1:109:10

formed [1]– - 1:50:11

former [61]– - 1:10:11–, 1:12:10–, 1:20:4–, 1:20:14–, 1:28:19–, 1:29:25–, 1:30:12 –, 1:31:1–, 1:33:9–, 1:33:22–, 1:37:20–, 1:41:24–, 1:42:13 –, 1:42:16–, 1:42:20–, 1:42:22–, 1:43:19–, 1:45:23 –, 1:46:10–, 1:46:14–, 1:47:11–, 1:47:12–, 1:47:17 –, 1:49:17–, 1:51:18–, 1:52:2 –, 1:53:7–, 1:53:11–, 1:56:7–, 1:56:9–, 1:56:10–, 1:56:22–, 1:57:14–, 1:62:10–, 1:64:24 –, 1:65:18–, 1:66:11–, 1:66:16–, 1:67:15–, 1:69:22 –, 1:73:21–, 1:74:12–, 1:75:22–, 1:76:21–, 1:80:9–, 1:80:13–, 1:85:11–, 1:89:21 –, 1:93:22–, 1:98:25–, 1:99:24–, 1:101:13–, 1:105:21–, 1:118:6–, 1:118:18–, 1:119:16–, 1:120:14–, 1:126:19–, 1:137:20–, 1:138:20

Former [9]– - 1:4:12–, 1:4:14–, 1:46:5–, 1:47:18–, 1:55:17–, 1:65:9–, 1:74:16–, 1:80:23–, 1:94:20

formulated [1]– - 1:73:20

Fort [1]– - 1:3:24

forth [5]– - 1:12:21–, 1:50:19–, 1:62:9–, 1:85:15–, 1:126:8

fortiori [1]– - 1:119:16

forum [1]– - 1:106:21

forward [6]– - 1:33:2–, 1:39:12–, 1:105:7–, 1:114:5 –, 1:121:21–, 1:136:7

four [5]– - 1:6:25–, 1:7:14–, 1:25:20–, 1:29:24

fourth [1]– - 1:7:8

framework [1]– - 1:126:14

frequently [1]– - 1:133:10

friend [1]– - 1:50:23

friends [1]– - 1:113:3

front [6]– - 1:39:15–, 1:61:20–, 1:64:12–, 1:73:7–, 1:110:17–, 1:111:25

full [1]– - 1:70:4

fully [2]– - 1:5:14–, 1:48:15

function [6]– - 1:44:9–, 1:79:21–, 1:80:5–, 1:92:19–, 1:121:6–, 1:127:10

fund [1]– - 1:32:16

fundamental [1]– - 1:10:16

future [1]– - 1:57:23

G

gallery [1]– - 1:4:4

geared [1]– - 1:65:6

gee [1]– - 1:84:24

General [3]– - 1:105:1–, 1:118:15–, 1:122:24

general [5]– - 1:28:12–, 1:50:4–, 1:50:5–, 1:78:11–, 1:116:1

generally [2]– - 1:5:17–, 1:12:7

George [1]– - 1:88:7

ghost [1]– - 1:42:23

Giglio [2]– - 1:38:15–, 1:38:19

girlfriends [1]– - 1:50:24

given [13]– - 1:8:1–, 1:22:3 –, 1:42:25–, 1:58:7–, 1:62:18 –, 1:64:17–, 1:68:11–, 1:69:14–, 1:100:22–, 1:101:2 –, 1:110:10–, 1:111:15–, 1:133:23

glib [1]– - 1:124:22

gloss [7]– - 1:15:21–, 1:17:9–, 1:28:6–, 1:54:21–, 1:70:10–, 1:83:2–, 1:83:4

glosses [8]– - 1:54:22–, 1:66:20–, 1:70:2–, 1:72:16–, 1:77:4–, 1:82:7–, 1:82:16–, 1:82:24

Gorin [15]– - 1:16:25–, 1:17:19–, 1:25:19–, 1:25:24 –, 1:26:17–, 1:26:20–, 1:26:22–, 1:27:4–, 1:35:19–, 1:36:9–, 1:54:17–, 1:70:10–, 1:70:19–, 1:81:19–, 1:83:16

Gorsuch [1]– - 1:55:2

govern [3]– - 1:33:19–, 1:117:18–, 1:123:17

governed [1]– - 1:19:12

governing [3]– - 1:14:16–, 1:18:5–, 1:126:14

Government [2]– - 1:12:11–, 1:55:17

government [32]– - 1:21:20–, 1:22:13–, 1:24:2–, 1:26:3–, 1:29:10–, 1:29:19–, 1:30:2–, 1:35:7–, 1:37:20–, 1:39:17–, 1:47:11–, 1:53:12 –, 1:53:13–, 1:60:17–, 1:60:20–, 1:70:14–, 1:75:6–, 1:78:16–, 1:78:23–, 1:79:13 –, 1:79:15–, 1:79:21–, 1:80:1 –, 1:80:5–, 1:80:10–, 1:80:21 –, 1:90:7–, 1:90:18–, 1:92:22 –, 1:95:12–, 1:113:7

government's [6]– - 1:24:13–, 1:32:10–, 1:36:11 –, 1:58:13–, 1:76:13–, 1:134:17

governs [3]– - 1:19:12–, 1:29:9–, 1:123:17

grand [5]– - 1:22:3–, 1:48:15–, 1:51:20–, 1:51:21 –, 1:135:6

grant [5]– - 1:5:5–, 1:77:10 –, 1:100:22–, 1:107:17–, 1:119:22

granted [8]– - 1:8:12–, 1:55:21–, 1:55:25–, 1:56:7–, 1:59:23–, 1:72:10–, 1:72:14 –, 1:79:4

great [2]– - 1:71:23–, 1:79:16

greater [1]– - 1:68:18

ground [3]– - 1:3:24–, 1:129:15–, 1:129:24

grounds [1]– - 1:35:25

guarantee [1]– - 1:127:17

guarded [1]_ - 1:121:8

guards [1]_ - 1:67:21

guess [12]_ - 1:19:18_, 1:21:23_, 1:37:3_, 1:46:10_, 1:46:16_, 1:57:24_, 1:62:1_, 1:69:5_, 1:70:6_, 1:107:19_, 1:110:3_, 1:114:21

guide [2]_ - 1:67:20_, 1:131:11

guideline [3]_ - 1:117:13_, 1:121:21

guidelines [7]_ - 1:97:9_, 1:97:12_, 1:116:24_, 1:117:8 _, 1:117:17_, 1:118:7_, 1:118:8

guilt [1]_ - 1:113:17

guilty [1]_ - 1:33:20

gut [3]_ - 1:97:4_, 1:114:16 _, 1:122:3

guys [1]_ - 1:123:2

**H**

half [2]_ - 1:5:8_, 1:101:8

Hand [2]_ - 1:17:1_, 1:36:10

hand [4]_ - 1:54:16_, 1:54:17_, 1:121:3_, 1:121:4

handle [1]_ - 1:40:19

handled [4]_ - 1:90:4_, 1:98:21_, 1:98:22

handling [4]_ - 1:39:14_, 1:39:20_, 1:43:15_, 1:126:15

hands [2]_ - 1:133:8_, 1:133:14

happy [3]_ - 1:115:5_, 1:125:19_, 1:129:21

HARBACH [33]_ - 1:111:21_, 1:111:23_, 1:113:23_, 1:114:23_, 1:115:4_, 1:115:8_, 1:116:8 _, 1:117:14, 1:118:4_, 1:118:10_, 1:118:19_, 1:118:23_, 1:119:10_, 1:120:4_, 1:120:16_, 1:122:9 _, 1:123:15_, 1:124:18_, 1:125:5_, 1:125:12_, 1:125:14_, 1:125:22_, 1:125:25_, 1:127:22_, 1:128:19_, 1:129:6_, 1:130:7 _, 1:130:23_, 1:131:2_, 1:131:4_, 1:131:6_, 1:134:3 _, 1:134:6

Harbach [7]_ - 1:3:10_, 1:41:16_, 1:43:15_, 1:74:5_, 1:111:20_, 1:126:5_,

1:140:19

hard [3]_ - 1:35:12_, 1:58:5 _, 1:108:21

harder [1]_ - 1:47:10

harm [8]_ - 1:72:20_, 1:73:10_, 1:73:11_, 1:73:18 _, 1:73:19_, 1:73:23_, 1:74:2 _, 1:82:10

harmonize [1]_ - 1:127:6

harmony [1]_ - 1:127:8

head [4]_ - 1:34:21_, 1:55:25_, 1:75:9_, 1:124:12

heads [2]_ - 1:32:2_, 1:124:2

hear [9]_ - 1:6:8_, 1:6:12_, 1:34:24_, 1:41:16_, 1:74:25 _, 1:85:9_, 1:111:20_, 1:131:3_, 1:134:10

heard [4]_ - 1:63:14_, 1:77:19_, 1:113:7_, 1:113:8

hearing [4]_ - 1:4:5_, 1:4:9 _, 1:5:24_, 1:58:21

heavy [1]_ - 1:17:16

heightened [1]_ - 1:64:7

Heine [5]_ - 1:17:1_, 1:36:10_, 1:70:11_, 1:77:16 _, 1:81:19

held [8]_ - 1:35:18_, 1:36:7 _, 1:54:16_, 1:70:3_, 1:70:13 _, 1:71:23_, 1:77:21_, 1:138:22

help [3]_ - 1:34:12_, 1:34:13_, 1:122:24

helpful [6]_ - 1:45:13_, 1:61:13_, 1:81:15_, 1:95:11 _, 1:115:15_, 1:129:12

hence [1]_ - 1:21:4

herring [2]_ - 1:135:22_, 1:135:24

herself [1]_ - 1:65:10

hid [1]_ - 1:108:1

high [1]_ - 1:66:1

high-ranking [1]_ - 1:66:1

highly [1]_ - 1:112:7

Hillary [1]_ - 1:80:23

hinge [1]_ - 1:98:17

hinges [1]_ - 1:138:8

Historical [3]_ - 1:55:17_, 1:101:17_, 1:106:3

historical [1]_ - 1:46:10

historically [3]_ - 1:55:4_, 1:66:12_, 1:81:10

history [5]_ - 1:16:9_,

1:21:15_, 1:31:7_, 1:48:13_, 1:77:10

hit [2]_ - 1:34:5_, 1:129:15

hits [1]_ - 1:129:23

Hitselberger [2]_ - 1:10:12_, 1:68:5

hold [2]_ - 1:117:21_, 1:125:10

holding [4]_ - 1:18:16_, 1:77:16_, 1:107:23_, 1:120:3

holds [1]_ - 1:119:21

home [6]_ - 1:14:17_, 1:60:12_, 1:60:13_, 1:60:24 _, 1:61:1_, 1:102:14

honest [1]_ - 1:115:8

honestly [1]_ - 1:135:17

Honor [68]_ - 1:3:9_, 1:3:12_, 1:3:16_, 1:3:20_, 1:4:17_, 1:4:21_, 1:5:3_, 1:5:11_, 1:5:19_, 1:7:5_, 1:7:13_, 1:18:7_, 1:21:15_, 1:35:15_, 1:41:18_, 1:44:1_, 1:45:15_, 1:52:18_, 1:53:5_, 1:55:14_, 1:56:20_, 1:57:18 _, 1:73:7_, 1:74:9_, 1:77:19_, 1:80:1_, 1:80:7_, 1:85:14_, 1:85:22_, 1:86:11_, 1:92:21 _, 1:94:25_, 1:96:2_, 1:97:25 _, 1:99:5_, 1:100:20_, 1:101:4_, 1:105:10_, 1:106:20_, 1:109:4_, 1:110:23_, 1:111:5_, 1:111:17_, 1:111:21_, 1:111:22_, 1:112:1_, 1:112:5 _, 1:113:3_, 1:114:14_, 1:115:11_, 1:116:23_, 1:117:1_, 1:123:8_, 1:126:22 _, 1:127:4_, 1:127:23_, 1:130:24_, 1:133:4_, 1:133:6 _, 1:133:16_, 1:134:7_, 1:134:14_, 1:135:23_, 1:136:9_, 1:139:20_, 1:140:8 _, 1:140:11_, 1:140:20

honor [1]_ - 1:115:2

Honor's [3]_ - 1:20:8_, 1:37:11_, 1:113:23

hook [1]_ - 1:24:5

hope [3]_ - 1:82:9_, 1:96:21_, 1:139:5

hoped [1]_ - 1:139:14

hopefully [4]_ - 1:129:9_, 1:129:13_, 1:134:11_, 1:135:13

horn [1]_ - 1:116:19

hour [1]_ - 1:85:2

House [15]_ - 1:8:5_, 1:9:9

_, 1:22:9_, 1:22:17_, 1:39:24 _, 1:52:6_, 1:71:13_, 1:72:8_, 1:88:8_, 1:88:10_, 1:92:15_, 1:98:8_, 1:113:12_, 1:116:20 _, 1:117:18

house [1]_ - 1:91:13

hung [1]_ - 1:26:24

Hung [1]_ - 1:25:20

Hur [8]_ - 1:21:17_, 1:47:13 _, 1:47:14_, 1:100:12_, 1:100:14_, 1:100:17_, 1:132:14_, 1:132:24

hypo [1]_ - 1:105:9

hypothetical [2]_ - 1:20:21_, 1:121:20

hypothetically [2]_ - 1:19:18_, 1:57:16

**I**

idea [7]_ - 1:32:7_, 1:91:1_, 1:91:9_, 1:111:14_, 1:122:12 _, 1:128:2_, 1:129:14

identify [1]_ - 1:12:7

IG [2]_ - 1:105:2_, 1:105:5

ignore [1]_ - 1:75:7

ignored [2]_ - 1:19:5_, 1:19:6

II [5]_ - 1:115:10_, 1:116:8_, 1:116:23_, 1:120:21_, 1:121:11

III [3]_ - 1:17:6_, 1:25:6_, 1:82:17

illegal [8]_ - 1:43:19_, 1:49:18_, 1:49:19_, 1:50:5_, 1:50:7_, 1:50:8_, 1:54:7_, 1:65:2

illustrate [1]_ - 1:130:17

imagine [1]_ - 1:108:22

imbue [1]_ - 1:126:18

immediate [1]_ - 1:44:7

immediately [1]_ - 1:123:21

immunity [1]_ - 1:7:9

impact [2]_ - 1:33:8_, 1:125:17

impermissible [1]_ - 1:103:9

impermissibly [1]_ - 1:34:1

implicated [1]_ - 1:105:8

implicates [1]_ - 1:125:5

implicit [1]_ - 1:127:12

implicitly [1]_ - 1:89:14

implied [1]_ - 1:122:6

imply [1]_ - 1:122:14

import [2]_ - 1:125:17_, 1:128:14

importance [1]_ - 1:45:5

important [15]_ - 1:15:1_, 1:16:8_, 1:24:19_, 1:28:14_, 1:31:2_, 1:34:6_, 1:48:11_, 1:67:24_, 1:68:4_, 1:68:9_, 1:86:14_, 1:116:22_, 1:121:6 _, 1:127:22_, 1:134:22

imposed [1]_ - 1:82:16

impossible [1]_ - 1:119:14

improperly [1]_ - 1:121:16

impute [2]_ - 1:24:3_, 1:131:23

imputed [1]_ - 1:54:5

inappropriate [1]_ - 1:24:16

inauguration [1]_ - 1:39:7

incarnation [1]_ - 1:121:5

inclined [1]_ - 1:82:7

include [7]_ - 1:19:1_, 1:23:23_, 1:24:20_, 1:24:22 _, 1:32:15_, 1:33:6_, 1:80:8

included [2]_ - 1:64:11_, 1:108:19

includes [2]_ - 1:128:1_, 1:132:5

including [3]_ - 1:5:18_, 1:110:10_, 1:129:3

incoming [1]_ - 1:76:8

incompatibility [1]_ - 1:93:21

inconsistencies [1]_ - 1:110:2

inconsistent [7]_ - 1:29:4 _, 1:75:20_, 1:78:2_, 1:79:10 _, 1:80:19_, 1:131:12_, 1:131:13

incorporate [2]_ - 1:15:10 _, 1:50:13

incorporated [1]_ - 1:83:18

incorporates [1]_ - 1:80:15

incorporating [1]_ - 1:34:9

incorrect [2]_ - 1:15:25_, 1:52:11

inculpatory [1]_ - 1:84:25

independent [1]_ - 1:21:14

indicated [2]_ - 1:3:24_, 1:38:18

indicates [1]_ - 1:129:2

indicating [1]_ - 1:81:12

indication [2]_ - 1:38:9_, 1:97:8

indict [1]_ - 1:95:22

indictment [78]_ - 1:4:11_, 1:7:12, 1:7:19_, 1:8:4_, 1:8:6 _, 1:8:15_, 1:8:21_, 1:9:18_, 1:10:7_, 1:10:15_, 1:12:5_, 1:12:6_, 1:13:11_, 1:19:16_, 1:19:20_, 1:20:25_, 1:21:7_, 1:21:10_, 1:21:25_, 1:22:5_, 1:29:18_, 1:29:23_, 1:30:3_, 1:30:11_, 1:36:24_, 1:37:5_, 1:37:20_, 1:40:9_, 1:41:1_, 1:42:4_, 1:42:15_, 1:42:18_, 1:45:17_, 1:46:12_, 1:46:18 _, 1:47:2_, 1:48:11_, 1:58:22 _, 1:59:13_, 1:63:1_, 1:63:12 _, 1:64:25_, 1:65:16_, 1:67:15_, 1:68:1_, 1:68:3_, 1:69:1_, 1:75:21_, 1:76:19_, 1:80:8_, 1:84:19_, 1:86:19_, 1:87:4_, 1:87:5_, 1:87:7_, 1:87:8_, 1:87:10_, 1:87:12_, 1:87:21_, 1:88:2_, 1:89:12_, 1:89:19_, 1:90:2_, 1:91:19_, 1:93:13_, 1:93:18_, 1:95:2_, 1:101:7_, 1:103:2_, 1:104:14 _, 1:112:12_, 1:112:17_, 1:112:24_, 1:112:25_, 1:136:1_, 1:138:9_, 1:138:11

individual [3]_ - 1:12:2_, 1:12:7_, 1:44:8

individually [1]_ - 1:6:6

individuals [3]_ - 1:55:21 _, 1:60:9_, 1:62:11

infer [2]_ - 1:126:13_, 1:126:17

inference [8]_ - 1:8:9_, 1:8:12_, 1:8:14_, 1:112:23_, 1:113:1_, 1:113:19_, 1:126:9 _, 1:138:10

infirm [1]_ - 1:15:4

information [59]_ - 1:14:1 _, 1:14:4_, 1:14:5_, 1:14:14_, 1:14:16_, 1:35:10_, 1:36:3_, 1:36:14_, 1:38:17_, 1:39:9_, 1:39:14_, 1:40:19_, 1:41:12 _, 1:45:1_, 1:45:4_, 1:47:7_, 1:48:2_, 1:48:9_, 1:50:22_, 1:52:23_, 1:53:8_, 1:55:21_, 1:55:22_, 1:56:4_, 1:56:5_,

1:56:11_, 1:65:3_, 1:65:12_, 1:65:22_, 1:66:2_, 1:69:9_, 1:70:12_, 1:74:10_, 1:74:18 _, 1:75:23_, 1:76:5_, 1:76:9_, 1:76:21_, 1:79:20_, 1:80:10 _, 1:84:25_, 1:94:12_, 1:105:17_, 1:108:11_, 1:109:6_, 1:109:21_, 1:110:1 _, 1:110:7_, 1:123:19_, 1:126:2_, 1:126:7_, 1:126:15 _, 1:127:11_, 1:127:20_, 1:128:17_, 1:128:24_, 1:135:1_, 1:135:11_, 1:137:5

informed [5]_ - 1:40:18_, 1:54:8_, 1:80:25_, 1:101:8_, 1:101:9

informs [1]_ - 1:64:21

inherent [3]_ - 1:28:20_, 1:93:20_, 1:97:24

initial [4]_ - 1:109:10_, 1:116:9_, 1:117:3_, 1:117:6

initiating [1]_ - 1:102:22

injected [1]_ - 1:28:8

injury [9]_ - 1:26:3_, 1:26:11_, 1:26:12_, 1:26:23 _, 1:26:24_, 1:27:25_, 1:81:21_, 1:82:10_, 1:83:17

inquiry [1]_ - 1:132:5

insights [1]_ - 1:47:17

insofar [2]_ - 1:4:17_, 1:5:4

Inspector [1]_ - 1:105:1

instance [2]_ - 1:32:1_, 1:119:3

instances [1]_ - 1:60:11

instead [1]_ - 1:114:7

institute [1]_ - 1:119:2

instruction [10]_ - 1:27:20 _, 1:27:22_, 1:28:13_, 1:58:9 _, 1:64:6_, 1:64:12_, 1:64:15 _, 1:64:16_, 1:136:7

instructions [8]_ - 1:7:25 _, 1:27:9_, 1:28:11_, 1:33:2_, 1:50:2_, 1:57:15_, 1:91:23_, 1:124:12

instructive [8]_ - 1:89:5_, 1:90:23_, 1:90:24_, 1:94:4_, 1:94:7_, 1:94:22_, 1:94:23_, 1:95:1

insufficient [1]_ - 1:16:22

intend [1]_ - 1:5:18

intended [1]_ - 1:132:6

intent [5]_ - 1:27:14_, 1:27:15_, 1:49:20_, 1:63:25 _, 1:76:6

intention [2]_ - 1:126:14_, 1:126:17

intentional [3]_ - 1:110:12 _, 1:110:13_, 1:137:7

interagency [1]_ - 1:104:11

interesting [2]_ - 1:48:20 _, 1:131:16

interests [3]_ - 1:56:2_, 1:121:1_, 1:127:10

interface [1]_ - 1:137:17

intermediate [1]_ - 1:11:7

internal [5]_ - 1:18:17_, 1:18:20_, 1:38:11_, 1:38:16 _, 1:63:21

internally [1]_ - 1:80:2

International [1]_ - 1:72:11

interplay [5]_ - 1:98:22_, 1:109:14_, 1:109:24_, 1:132:25_, 1:134:23

interpretation [2]_ - 1:114:15_, 1:121:12

interpretations [1]_ - 1:83:21

interpreted [1]_ - 1:18:11

interview [1]_ - 1:63:6

interviews [1]_ - 1:63:7

intrude [2]_ - 1:107:17_, 1:127:9

invalid [1]_ - 1:104:5

invariably [1]_ - 1:58:1

invented [3]_ - 1:35:18_, 1:35:20_, 1:35:24

investigate [5]_ - 1:94:19 _, 1:94:20_, 1:97:24_, 1:99:24_, 1:110:6

investigation [1]_ - 1:95:16_, 1:100:12_, 1:102:24_, 1:110:6_, 1:111:15_, 1:122:20_, 1:129:8_, 1:132:15_, 1:132:19_, 1:135:6

invite [1]_ - 1:83:13

invoke [2]_ - 1:23:21_, 1:31:24

invoked [1]_ - 1:19:11

involved [2]_ - 1:37:16_, 1:90:13

involving [4]_ - 1:101:13_, 1:102:25_, 1:104:9_, 1:108:5

IRVING [9]_ - 1:3:20_, 1:4:17_, 1:4:21_, 1:5:19_,

1:85:14_-, 1:85:18_-, 1:85:22
_-, 1:86:6_-, 1:86:8

Irving [4]_- 1:3:20_-, 1:4:16
_-, 1:5:16_-, 1:85:12

issuance [1]_- 1:22:3

issue [29]_- 1:7:5_-,
1:10:16_-, 1:11:12_-, 1:12:17
_-, 1:12:23_-, 1:13:15_-, 1:15:5
_-, 1:18:21_-, 1:18:22_-, 1:26:1
_-, 1:29:5_-, 1:31:15_-, 1:32:24
_-, 1:34:12_-, 1:36:3_-, 1:36:18
_-, 1:37:13_-, 1:40:24_-, 1:41:9
_-, 1:45:16_-, 1:50:12_-,
1:60:22_-, 1:61:13_-, 1:70:7_-,
1:77:24_-, 1:108:5_-, 1:113:5
_-, 1:114:11_-, 1:124:11

issued [1]_- 1:30:17

issues [9]_- 1:6:23_-,
1:12:5_-, 1:16:11_-, 1:17:2_-,
1:28:4_-, 1:39:4_-, 1:41:22_-,
1:50:18_-, 1:77:11

items [3]_- 1:134:12_-,
1:138:25_-, 1:140:4

itself [13]_- 1:28:20_-,
1:35:14_-, 1:40:22_-, 1:53:20
_-, 1:68:15_-, 1:78:23_-, 1:80:8
_-, 1:96:8_-, 1:103:21_-,
1:104:15_-, 1:121:4_-,
1:128:18

J

January [12]_- 1:19:17_-,
1:19:18_-, 1:46:18_-, 1:47:1_-,
1:47:22_-, 1:48:4_-, 1:48:12_-,
1:48:24_-, 1:48:25_-, 1:51:12
_-, 1:99:17_-, 1:138:25

Jay [1]_- 1:3:9

job [4]_- 1:10:13_-, 1:39:14
_-, 1:60:24_-, 1:77:9

John [3]_- 1:3:20_-,
1:29:21_-, 1:37:19

Johnson [1]_- 1:55:1

join [5]_- 1:5:7_-, 1:5:12_-,
1:85:18_-, 1:85:25_-, 1:86:2

joined [4]_- 1:3:13_-,
1:4:15_-, 1:5:2_-, 1:85:13

joining [1]_- 1:5:4

judge [2]_- 1:77:15_-,
1:96:13

Judge [32]_- 1:6:15_-,
1:6:17_-, 1:8:3_-, 1:9:16_-,
1:10:9_-, 1:11:23_-, 1:12:23_-,
1:13:18_-, 1:15:23_-, 1:17:1_-,
1:17:16_-, 1:17:24_-, 1:18:2_-,
1:23:10_-, 1:26:8_-, 1:27:19_-,

1:29:17_-, 1:31:17_-, 1:35:1_-,
1:35:22_-, 1:36:10_-, 1:38:21
_-, 1:40:24_-, 1:75:3_-, 1:77:7_-,
1:84:24_-, 1:87:6_-, 1:93:8_-,
1:107:21_-, 1:109:13_-,
1:119:22_-, 1:138:15

judges [1]_- 1:120:22

judgment [1]_- 1:7:24

Judicial [33]_- 1:8:12_-,
1:9:14_-, 1:13:16_-, 1:14:15_-,
1:21:16_-, 1:31:8_-, 1:74:7_-,
1:89:6_-, 1:90:12_-, 1:91:4_-,
1:91:18_-, 1:101:25_-,
1:105:19_-, 1:106:4_-, 1:106:8
_-, 1:107:13_-, 1:107:20_-,
1:107:23_-, 1:108:9_-,
1:108:25_-, 1:110:5_-,
1:110:16_-, 1:113:21_-,
1:114:19_-, 1:115:1_-, 1:115:4
_-, 1:115:10_-, 1:118:2_-,
1:119:21_-, 1:119:23_-,
1:120:9_-, 1:136:21_-,
1:139:24

judicial [29]_- 1:15:21_-,
1:17:9_-, 1:28:6_-, 1:54:21_-,
1:66:20_-, 1:68:25_-, 1:70:1_-,
1:77:4_-, 1:82:16_-, 1:82:24_-,
1:83:1_-, 1:83:15_-, 1:97:7_-,
1:98:1_-, 1:107:14_-, 1:115:25
_-, 1:116:1_-, 1:118:24_-,
1:119:19_-, 1:119:25_-,
1:120:15_-, 1:129:19_-,
1:130:11_-, 1:130:22_-,
1:131:7_-, 1:131:11_-,
1:131:14_-, 1:132:3_-,
1:133:25

judiciary [2]_- 1:117:20_-,
1:136:15

July [1]_- 1:42:21

jumping [2]_- 1:86:12_-,
1:136:7

jurisdiction [1]_- 1:54:13

jury [17]_- 1:7:25_-, 1:22:3
_-, 1:27:22_-, 1:28:11_-, 1:33:2
_-, 1:33:19_-, 1:48:15_-,
1:51:20_-, 1:51:21_-, 1:57:15
_-, 1:58:2_-, 1:69:2_-, 1:73:15_-,
1:91:23_-, 1:124:12_-, 1:135:6
_-, 1:136:7

Justice [26]_- 1:46:5_-,
1:52:5_-, 1:55:2_-, 1:84:17_-,
1:84:20_-, 1:84:22_-, 1:94:3_-,
1:95:15_-, 1:96:8_-, 1:97:22_-,
1:98:5_-, 1:101:3_-, 1:101:15
_-, 1:102:23_-, 1:103:14_-,
1:104:20_-, 1:105:3_-, 1:105:6
_-, 1:114:13_-, 1:120:11_-,
1:121:5_-, 1:122:18_-,

1:122:19_-, 1:124:3_-,
1:132:22_-, 1:139:12

justification [1]_- 1:57:9

justifies [1]_- 1:135:16

justify [1]_- 1:72:12

K

keep [8]_- 1:28:14_-,
1:43:22_-, 1:45:10_-, 1:60:24
_-, 1:70:15_-, 1:88:14_-,
1:93:11_-, 1:108:15

keeping [1]_- 1:60:12

kept [2]_- 1:40:10_-,
1:109:6

key [1]_- 1:49:3_-, 1:122:17

Kim [1]_- 1:68:5

kind [10]_- 1:17:7_-,
1:30:22_-, 1:31:1_-, 1:53:1_-,
1:58:1_-, 1:66:9_-, 1:84:3_-,
1:88:20_-, 1:94:16_-, 1:130:8

Kiriakou [1]_- 1:26:9

Kise [5]_- 1:3:14_-, 1:133:5
_-, 1:134:15_-, 1:134:17_-,
1:134:20

knowable [1]_- 1:67:19

knowingly [1]_- 1:113:9

knowledge [3]_- 1:49:18
_-, 1:50:5_-, 1:123:18

known [1]_- 1:27:14

knows [3]_- 1:16:5_-,
1:104:19_-, 1:128:20

Kolender [1]_- 1:67:7

L

lack [13]_- 1:18:5_-,
1:22:14_-, 1:40:10_-, 1:47:24
_-, 1:47:25_-, 1:59:13_-,
1:59:15_-, 1:60:19_-, 1:61:6_-,
1:72:4_-, 1:79:2_-, 1:91:20

lacked [2]_- 1:33:14

lacks [1]_- 1:115:3

Lago [4]_- 1:39:16_-,
1:87:23_-, 1:89:20_-, 1:113:20

laid [1]_- 1:16:10

landscape [1]_- 1:69:15

language [26]_- 1:8:9_-,
1:11:8_-, 1:11:17_-, 1:12:13_-,
1:17:3_-, 1:17:22_-, 1:28:5_-,
1:31:13_-, 1:33:6_-, 1:40:23_-,
1:49:25_-, 1:51:4_-, 1:52:10_-,
1:53:14_-, 1:54:17_-, 1:55:9_-,
1:58:17_-, 1:58:20_-, 1:64:17
_-, 1:71:4_-, 1:73:9_-, 1:77:23_-,

1:83:8_-, 1:115:13_-, 1:120:17
_-, 1:128:6

large [1]_- 1:73:14

last [12]_- 1:62:17_-,
1:69:25_-, 1:95:22_-, 1:97:19
_-, 1:103:14_-, 1:111:6_-,
1:115:21_-, 1:123:5_-,
1:123:10_-, 1:125:14_-,
1:133:2_-, 1:136:20

late [1]_- 1:88:11

latter [1]_- 1:5:8

launch [1]_- 1:129:8

Law [4]_- 1:16:18_-,
1:71:12_-, 1:71:18_-, 1:72:8

law [77]_- 1:16:20_-,
1:22:14_-, 1:26:8_-, 1:27:15_-,
1:27:17_-, 1:27:18_-, 1:29:11
_-, 1:35:11_-, 1:35:17_-, 1:37:7
_-, 1:44:20_-, 1:45:18_-,
1:49:21_-, 1:49:22_-, 1:50:3_-,
1:51:16_-, 1:53:20_-, 1:54:7_-,
1:61:13_-, 1:68:20_-, 1:68:23
_-, 1:69:11_-, 1:71:23_-,
1:77:11_-, 1:77:20_-, 1:83:3_-,
1:83:4_-, 1:83:12_-, 1:87:6_-,
1:87:8_-, 1:87:11_-, 1:87:12_-,
1:87:13_-, 1:87:15_-, 1:87:19
_-, 1:88:4_-, 1:88:5_-, 1:88:25_-,
1:89:1_-, 1:89:4_-, 1:90:2_-,
1:90:6_-, 1:91:7_-, 1:92:13_-,
1:92:23_-, 1:92:24_-, 1:93:1_-,
1:93:9_-, 1:93:19_-, 1:94:5_-,
1:97:2_-, 1:97:15_-, 1:97:18_-,
1:98:10_-, 1:98:11_-, 1:100:25
_-, 1:102:11_-, 1:103:5_-,
1:103:21_-, 1:104:5_-, 1:105:3
_-, 1:105:12_-, 1:106:18_-,
1:111:10_-, 1:111:12_-,
1:112:6_-, 1:125:2_-, 1:136:1
_-, 1:136:3_-, 1:137:24_-,
1:140:22

lawful [5]_- 1:59:22_-,
1:60:13_-, 1:60:23_-, 1:68:19
_-, 1:79:21

lawfully [2]_- 1:93:11

laws [2]_- 1:104:9_-,
1:105:7

lawsuit [1]_- 1:90:15

lawyers [1]_- 1:133:4

layer [1]_- 1:64:3

lead [5]_- 1:41:17_-,
1:86:10_-, 1:105:6_-, 1:110:13
_-, 1:112:2

lead-up [1]_- 1:110:13

leader [1]_- 1:52:5

leaders [3]_- 1:108:5_-,

1:108:6.., 1:108:20
leading [1].. - 1:81:8
leads [3].. - 1:8:24.., 1:58:1
.., 1:91:19
leaking [1].. - 1:107:11
Leans [1].. - 1:99:18
leaping [1].. - 1:107:21
least [11].. - 1:46:10..,
1:63:24.., 1:64:15.., 1:70:3..,
1:89:14.., 1:97:8.., 1:103:1..,
1:105:22.., 1:109:10..,
1:118:17.., 1:124:16
leaves [1].. - 1:139:7
leaving [2].. - 1:40:17..,
1:96:22
lectern [1].. - 1:4:4
led [2].. - 1:36:22.., 1:36:23
left [6].. - 1:8:23.., 1:11:10..,
1:17:3.., 1:88:10.., 1:95:13..,
1:113:12
legal [19].. - 1:9:2.., 1:9:3..,
1:9:7.., 1:9:12.., 1:10:3..,
1:10:19.., 1:13:13.., 1:20:11
.., 1:22:19.., 1:27:14..,
1:33:10.., 1:42:8.., 1:42:11..,
1:46:22.., 1:53:1.., 1:66:17..,
1:87:17.., 1:101:11..,
1:127:18
legally [2].. - 1:20:23..,
1:58:9
legislative [3].. - 1:16:9..,
1:121:22.., 1:136:15
legislature [1].. - 1:136:15
length [2].. - 1:13:17..,
1:81:1
lengthy [1].. - 1:124:19
lenity [2].. - 1:55:5..,
1:83:25
lens [1].. - 1:103:2
less [2].. - 1:114:12..,
1:122:14
letter [2].. - 1:100:2..,
1:101:7
level [1].. - 1:62:12
liability [5].. - 1:45:25..,
1:57:2.., 1:65:20.., 1:65:21..,
1:69:15
libraries [1].. - 1:100:3
lie [1].. - 1:96:11
lies [1].. - 1:96:9
light [5].. - 1:5:16.., 1:7:22..,
1:31:7.., 1:108:10.., 1:124:11
likelihood [1].. - 1:46:11

likely [1].. - 1:41:7
limine [1].. - 1:124:20
limit [2].. - 1:55:8.., 1:89:7
limitation [1].. - 1:67:6
limited [9].. - 1:18:12..,
1:36:1.., 1:76:24.., 1:98:1..,
1:101:24.., 1:102:2..,
1:120:10.., 1:122:13
limiting [3].. - 1:18:18..,
1:53:14.., 1:54:10
Limits [1].. - 1:56:6
limits [3].. - 1:32:10..,
1:32:13.., 1:84:2
line [7].. - 1:54:4.., 1:55:1..,
1:83:22.., 1:89:18.., 1:114:9
.., 1:127:4.., 1:137:9
list [1].. - 1:71:22
litigant [1].. - 1:121:2
litigants [1].. - 1:116:2
litigation [1].. - 1:18:8..,
1:35:10.., 1:107:6.., 1:108:25
.., 1:133:7
loan [1].. - 1:131:23
location [1].. - 1:133:9
locations [1].. - 1:39:23
log [1].. - 1:38:13
logic [7].. - 1:79:24..,
1:109:21.., 1:114:25..,
1:120:2.., 1:121:10..,
1:121:12
long-standing [2].. -
1:76:20.., 1:80:9
long-term [1].. - 1:75:22
look [33].. - 1:4:21..,
1:10:15.., 1:12:22.., 1:16:5..,
1:23:2.., 1:24:5.., 1:24:25..,
1:41:10.., 1:43:18.., 1:45:16
.., 1:49:1.., 1:54:1.., 1:55:9..,
1:56:17.., 1:58:7.., 1:58:20..,
1:61:21.., 1:73:3.., 1:75:12..,
1:78:4.., 1:84:5.., 1:87:11..,
1:94:2.., 1:94:16.., 1:95:11..,
1:99:1.., 1:99:15.., 1:100:4..,
1:101:24.., 1:107:11..,
1:116:18.., 1:136:3.., 1:137:7
looked [4].. - 1:13:3..,
1:25:13.., 1:31:25.., 1:61:15
looking [14].. - 1:13:23..,
1:19:16.., 1:27:4.., 1:27:7..,
1:34:1.., 1:46:12.., 1:58:3..,
1:58:6.., 1:72:5.., 1:72:6..,
1:87:7.., 1:87:20.., 1:118:7..,
1:128:25
looks [1].. - 1:75:11

lose [1].. - 1:20:16
loss [1].. - 1:83:15
lost [2].. - 1:60:8.., 1:123:19
lowercase [1].. - 1:126:23
lunch [2].. - 1:75:1.., 1:85:4

## M

made-up [1].. - 1:25:2
magistrate [1].. - 1:96:13
main [1].. - 1:133:8
maintain [1].. - 1:137:11
maintaining [1].. - 1:29:25
manage [2].. - 1:110:12..,
1:136:13
management [5].. -
1:116:4.., 1:116:7.., 1:116:18
.., 1:117:4.., 1:120:22
manner [2].. - 1:22:19..,
1:56:5
Manual [3].. - 1:84:17..,
1:84:20.., 1:84:22
map [1].. - 1:66:11
Mar [1].. - 1:39:16..,
1:87:23.., 1:89:20.., 1:113:20
Mar-a-Lago [4].. - 1:39:16
.., 1:87:23.., 1:89:20..,
1:113:20
March [2].. - 1:97:20
marked [3].. - 1:96:23..,
1:102:10.., 1:139:9
markings [4].. - 1:19:24..,
1:20:10.., 1:20:13.., 1:88:21
marks [1].. - 1:72:7
master [1].. - 1:133:7
master's [1].. - 1:134:16
material [4].. - 1:62:12..,
1:98:23.., 1:98:24
materials [20].. - 1:20:5..,
1:36:2.., 1:44:5.., 1:44:14..,
1:61:1.., 1:62:17.., 1:62:22..,
1:74:17.., 1:87:5.., 1:87:6..,
1:87:22.., 1:88:7.., 1:95:21..,
1:96:22.., 1:108:4.., 1:112:7
.., 1:115:20.., 1:117:3..,
1:117:7.., 1:139:8
matter [23].. - 1:11:9..,
1:22:14.., 1:42:8.., 1:42:11..,
1:46:22.., 1:51:15.., 1:53:2..,
1:54:3.., 1:66:17.., 1:68:13..,
1:68:20.., 1:87:12.., 1:87:14
.., 1:87:22.., 1:92:25..,
1:98:12.., 1:102:15.., 1:110:1
.., 1:112:6.., 1:122:18..,

1:122:19.., 1:125:2.., 1:136:1
matters [3].. - 1:123:24..,
1:126:2.., 1:127:24
mean [37].. - 1:24:11..,
1:24:16.., 1:27:3.., 1:60:24..,
1:76:8.., 1:79:13.., 1:83:20..,
1:88:4.., 1:88:6.., 1:88:25..,
1:90:3.., 1:90:14.., 1:94:9..,
1:95:19.., 1:97:1.., 1:97:18..,
1:97:25.., 1:101:19.., 1:105:9
.., 1:106:18.., 1:107:13..,
1:109:19.., 1:110:2..,
1:110:25.., 1:113:7.., 1:113:8
.., 1:114:23.., 1:116:7..,
1:116:9.., 1:117:10..,
1:119:18.., 1:125:19..,
1:128:6.., 1:137:7.., 1:138:4
.., 1:139:11
meaning [5].. - 1:23:14..,
1:23:16.., 1:24:22.., 1:28:5..,
1:50:2
meaningful [3].. - 1:15:7..,
1:27:3.., 1:34:3
means [14].. - 1:18:14..,
1:27:12.., 1:31:19.., 1:44:4..,
1:44:14.., 1:60:13.., 1:92:17
.., 1:117:12.., 1:119:17..,
1:126:12.., 1:126:13..,
1:127:15
mechanism [6].. - 1:28:25
.., 1:34:11.., 1:68:15..,
1:69:10.., 1:115:3.., 1:122:7
memoir [1].. - 1:42:22
memoranda [2].. -
1:36:22.., 1:62:16
memorandum [4].. -
1:36:22.., 1:62:8.., 1:62:13..,
1:63:22
memorialized [2].. -
1:136:21.., 1:136:25
memory [1].. - 1:116:14
memos [1].. - 1:63:24
mens [5].. - 1:25:14..,
1:27:5.., 1:28:16.., 1:64:7..,
1:124:10
mental [3].. - 1:131:18..,
1:131:24.., 1:132:4
mention [5].. - 1:13:18..,
1:93:25.., 1:124:4.., 1:129:11
.., 1:133:2
mentioned [8].. - 1:7:6..,
1:7:16.., 1:53:6.., 1:68:14..,
1:123:10.., 1:127:4..,
1:129:20.., 1:132:13
mentioning [2].. - 1:125:7
.., 1:133:16

merely [1]– - 1:87:17

message [1]– - 1:83:14

messages [1]– - 1:116:17

messaging [1]– - 1:116:16

microphone [1]– - 1:85:21

middle [2]– - 1:42:19–, 1:133:13

might [15]– - 1:23:3–, 1:89:11–, 1:91:16–, 1:93:14 –, 1:94:18–, 1:95:1–, 1:98:19 –, 1:113:14–, 1:116:18–, 1:116:20–, 1:118:10–, 1:124:15–, 1:128:4–, 1:128:9 –, 1:129:6

military [5]– - 1:14:8–, 1:42:25–, 1:112:8–, 1:129:3 –, 1:133:12

mind [3]– - 1:28:14–, 1:40:16–, 1:69:6

minimum [1]– - 1:12:8

minutes [1]– - 1:85:2

mishandle [1]– - 1:65:3

mishandling [2]– - 1:66:2 –, 1:73:22

mislead [1]– - 1:132:6

mistake [1]– - 1:49:15

mistaken [1]– - 1:56:19

mitigates [1]– - 1:36:7

mixture [1]– - 1:54:12

mockery [1]– - 1:131:14

moment [15]– - 1:19:16–, 1:21:3–, 1:21:25–, 1:30:14–, 1:44:1–, 1:50:16–, 1:59:8–, 1:64:2–, 1:88:6–, 1:98:3–, 1:99:16–, 1:111:19–, 1:122:12–, 1:129:22–, 1:134:6

money [1]– - 1:64:8

Morales [2]– - 1:18:16

Morison [9]– - 1:25:21–, 1:26:2–, 1:26:8–, 1:26:25–, 1:64:14–, 1:72:20–, 1:81:20 –, 1:82:3

morning [23]– - 1:3:2–, 1:3:9–, 1:3:11–, 1:3:12–, 1:3:14–, 1:3:15–, 1:3:16–, 1:3:19–, 1:3:20–, 1:3:22–, 1:3:23–, 1:10:6–, 1:34:5–, 1:41:18–, 1:41:19–, 1:80:22 –, 1:86:21–, 1:98:20–, 1:101:1–, 1:101:11–, 1:112:20–, 1:113:4–,

1:129:17

morning's [1]– - 1:86:13

most [15]– - 1:17:5–, 1:27:2 –, 1:27:21–, 1:30:1–, 1:35:11 –, 1:40:15–, 1:43:15–, 1:77:11–, 1:77:19–, 1:77:20 –, 1:81:15–, 1:82:15–, 1:104:7–, 1:116:13–, 1:121:7

mostly [1]– - 1:10:8

motion [55]– - 1:4:10–, 1:4:12–, 1:4:13–, 1:4:15–, 1:5:13–, 1:6:12–, 1:6:14–, 1:6:18–, 1:6:19–, 1:7:10–, 1:7:20–, 1:7:22–, 1:7:23–, 1:8:25–, 1:10:17–, 1:12:12–, 1:14:23–, 1:33:2–, 1:37:14–, 1:38:9–, 1:39:25–, 1:40:1–, 1:40:14–, 1:57:11–, 1:67:9–, 1:67:13–, 1:68:21–, 1:77:10 –, 1:81:2–, 1:84:13–, 1:85:3–, 1:85:9–, 1:85:10–, 1:85:13–, 1:85:18–, 1:85:25–, 1:86:2–, 1:86:5–, 1:86:10–, 1:86:15–, 1:86:24–, 1:88:1–, 1:91:24–, 1:92:20–, 1:96:2–, 1:99:23–, 1:100:22–, 1:100:23–, 1:106:25–, 1:122:5–, 1:130:3 –, 1:134:10

Motion [1]– - 1:75:2

motions [12]– - 1:4:9–, 1:5:2–, 1:5:17–, 1:5:21–, 1:6:3–, 1:6:6–, 1:6:8–, 1:16:10–, 1:36:4–, 1:93:16–, 1:124:20–, 1:140:24

motivated [1]– - 1:96:1

moves [2]– - 1:105:7

MR [275]– - 1:3:9–, 1:3:12–, 1:3:16–, 1:3:20–, 1:4:17–, 1:4:21–, 1:5:3–, 1:5:11–, 1:5:19–, 1:6:15–, 1:6:17–, 1:7:13–, 1:8:3–, 1:8:17–, 1:9:1–, 1:9:16–, 1:10:2–, 1:10:9–, 1:11:9–, 1:11:23–, 1:12:4–, 1:12:16–, 1:13:12–, 1:14:2–, 1:15:13–, 1:15:23–, 1:17:16–, 1:17:24–, 1:18:2–, 1:20:8–, 1:20:20–, 1:21:1–, 1:21:6–, 1:21:12–, 1:22:6–, 1:23:10–, 1:23:18–, 1:24:11 –, 1:24:18–, 1:25:11–, 1:25:17–, 1:26:7–, 1:26:18–, 1:26:20–, 1:27:19–, 1:28:10 –, 1:28:22–, 1:29:2–, 1:29:8–, 1:29:14–, 1:29:17–, 1:30:14 –, 1:30:20–, 1:31:16–, 1:33:5 –, 1:33:16–, 1:33:24–, 1:34:21–, 1:34:25–, 1:35:15 –, 1:35:21–, 1:36:21–, 1:37:8

–, 1:38:3–, 1:38:8–, 1:38:13–, 1:38:21–, 1:39:3–, 1:39:24–, 1:40:13–, 1:40:23–, 1:41:4–, 1:41:18–, 1:41:20–, 1:42:5–, 1:45:14–, 1:46:1–, 1:46:8–, 1:46:13–, 1:46:21–, 1:47:3–, 1:47:9–, 1:48:5–, 1:48:10–, 1:48:23–, 1:49:13–, 1:49:23 –, 1:50:10–, 1:50:16–, 1:51:9 –, 1:51:11–, 1:51:15–, 1:51:19, 1:51:22–, 1:51:24–, 1:52:16–, 1:53:3–, 1:53:19–, 1:53:23–, 1:54:3–, 1:54:22–, 1:55:9–, 1:55:13–, 1:55:19–, 1:56:14–, 1:56:20–, 1:57:4–, 1:57:8–, 1:57:18–, 1:57:22–, 1:58:6–, 1:58:16–, 1:58:23–, 1:59:6–, 1:59:10–, 1:59:12–, 1:59:16–, 1:59:21–, 1:60:3–, 1:60:9–, 1:60:20–, 1:61:8–, 1:61:20–, 1:62:5–, 1:62:20–, 1:63:3–, 1:63:13–, 1:63:21–, 1:64:4–, 1:64:12–, 1:64:23–, 1:65:2–, 1:65:9–, 1:65:15–, 1:65:23–, 1:65:25–, 1:66:6–, 1:66:14–, 1:66:23–, 1:67:2–, 1:67:6–, 1:67:11–, 1:67:19–, 1:67:24–, 1:68:12–, 1:68:16 –, 1:68:25–, 1:69:16–, 1:69:19–, 1:69:24–, 1:70:6–, 1:70:10–, 1:70:21–, 1:71:2–, 1:71:11–, 1:71:18–, 1:72:3–, 1:72:5–, 1:72:15–, 1:72:18–, 1:72:23–, 1:73:2–, 1:73:10–, 1:73:13–, 1:73:21–, 1:74:1–, 1:74:5–, 1:74:19–, 1:74:22–, 1:75:3–, 1:76:13–, 1:76:17–, 1:77:7–, 1:78:6–, 1:78:20–, 1:79:4–, 1:79:7–, 1:79:10–, 1:80:7–, 1:81:6–, 1:81:19–, 1:82:14–, 1:82:25–, 1:83:10 –, 1:83:22–, 1:85:14–, 1:85:18–, 1:85:22–, 1:86:6–, 1:86:8–, 1:86:11–, 1:87:6–, 1:87:18–, 1:88:3–, 1:89:16–, 1:90:17–, 1:92:4–, 1:93:7–, 1:93:23–, 1:95:3–, 1:95:5–, 1:95:7–, 1:97:11–, 1:98:19–, 1:99:8–, 1:99:11–, 1:99:13–, 1:99:21–, 1:100:15–, 1:101:19–, 1:102:4–, 1:103:3 –, 1:103:11–, 1:104:8–, 1:104:17–, 1:105:9–, 1:106:1 –, 1:106:6–, 1:107:21–, 1:108:12–, 1:108:17–, 1:109:2–, 1:109:4–, 1:109:13 –, 1:110:22–, 1:110:25–, 1:111:4–, 1:111:13–, 1:111:21–, 1:111:23–, 1:113:23–, 1:114:23–, 1:115:4–, 1:115:8–, 1:116:8

–, 1:117:14, 1:118:4–, 1:118:10–, 1:118:19–, 1:118:23–, 1:119:10–, 1:120:4–, 1:120:16–, 1:122:9 –, 1:123:15–, 1:124:18–, 1:125:5–, 1:125:12–, 1:125:14–, 1:125:22–, 1:125:25–, 1:127:22–, 1:128:19–, 1:129:6–, 1:130:7 –, 1:130:23–, 1:131:2–, 1:131:4–, 1:131:6–, 1:134:3 –, 1:134:6–, 1:134:14–, 1:135:23–, 1:136:9–, 1:136:24–, 1:138:14–, 1:139:3–, 1:139:19–, 1:139:22–, 1:140:1–, 1:140:7 –, 1:140:11–, 1:140:14–, 1:140:16–, 1:140:20

multiple [5]– - 1:25:12–, 1:25:13–, 1:36:16–, 1:38:18 –, 1:84:21

Murrell [1]– - 1:3:21

must [9]– - 1:5:9–, 1:6:24–, 1:77:22–, 1:82:14–, 1:91:13 –, 1:112:12–, 1:112:25–, 1:119:13–, 1:132:2

muster [1]– - 1:81:24

N

named [1]– - 1:90:16

namely [1]– - 1:121:6

names [1]– - 1:116:21

NARA [75]– - 1:13:7–, 1:13:22–, 1:22:20–, 1:22:23 –, 1:30:17–, 1:30:20–, 1:31:4 –, 1:46:3–, 1:46:5–, 1:51:11–, 1:51:13–, 1:51:16–, 1:51:17 –, 1:52:4–, 1:88:16–, 1:90:3–, 1:90:17–, 1:90:19–, 1:90:25 –, 1:91:8–, 1:92:16–, 1:94:17 –, 1:95:11–, 1:96:16–, 1:98:21–, 1:99:23–, 1:99:25 –, 1:101:1–, 1:101:14–, 1:102:15–, 1:102:19–, 1:102:21–, 1:103:8–, 1:103:13–, 1:103:16–, 1:103:19–, 1:103:20–, 1:104:2–, 1:104:19–, 1:105:13–, 1:105:14–, 1:106:10–, 1:106:19–, 1:107:8–, 1:107:17–, 1:108:1 –, 1:111:11–, 1:119:1–, 1:119:14–, 1:120:6–, 1:120:7 –, 1:120:10–, 1:122:17–, 1:122:19–, 1:123:6–, 1:123:17–, 1:124:5–, 1:135:11–, 1:135:17–, 1:135:21–, 1:136:2–, 1:136:3

161

_, 1:136:14_, 1:136:18_, 1:136:22_, 1:137:2_, 1:137:4 _, 1:137:15_, 1:137:20_, 1:137:24_, 1:138:22

NARA's [4]_ - 1:31:7_, 1:93:9_, 1:102:25_, 1:122:13

narrow [4]_ - 1:17:23_, 1:27:6_, 1:55:3_, 1:84:4

narrowed [1]_ - 1:84:1

narrowing [4]_ - 1:54:10_, 1:54:22_, 1:70:13_, 1:79:22

nation's [2]_ - 1:30:1_, 1:121:7

national [7]_ - 1:32:9_, 1:32:14_, 1:32:19_, 1:32:24 _, 1:56:2_, 1:109:24_, 1:110:7

National [25]_ - 1:11:14_, 1:11:20_, 1:14:5_, 1:18:25_, 1:19:25_, 1:20:14_, 1:23:22 _, 1:25:1_, 1:36:9_, 1:36:14_, 1:41:13_, 1:48:2_, 1:70:12_, 1:73:3_, 1:88:22_, 1:91:12_, 1:92:7_, 1:94:1_, 1:94:11_, 1:94:18_, 1:96:17_, 1:139:9 _, 1:139:17_, 1:140:5

natural [1]_ - 1:114:25

nature [3]_ - 1:40:6_, 1:68:2_, 1:68:6

Nauta [3]_ - 1:3:6_, 1:3:17 _, 1:5:1

NDA [5]_ - 1:69:21_, 1:78:16_, 1:78:19_, 1:78:21 _, 1:92:8

NDI [15]_ - 1:6:21_, 1:11:11 _, 1:11:12_, 1:11:15_, 1:17:15_, 1:35:1_, 1:35:4_, 1:35:5_, 1:36:1_, 1:36:6_, 1:36:8_, 1:41:4_, 1:41:8_, 1:41:10_, 1:77:21

necessarily [9]_ - 1:12:6_, 1:87:4_, 1:89:13_, 1:102:25 _, 1:112:10_, 1:112:11_, 1:118:24_, 1:124:14_, 1:136:18

necessary [5]_ - 1:16:12 _, 1:40:12_, 1:83:8_, 1:86:22 _, 1:107:16

need [42]_ - 1:17:25_, 1:18:6_, 1:18:9_, 1:18:10_, 1:19:7_, 1:19:10_, 1:19:12_, 1:25:2_, 1:30:14_, 1:33:15_, 1:33:18_, 1:33:19_, 1:33:24 _, 1:34:2_, 1:34:10_, 1:34:17 _, 1:47:25_, 1:50:3_, 1:55:21 _, 1:56:12_, 1:56:14_, 1:56:15_, 1:56:18_, 1:56:23

_, 1:57:6_, 1:72:17_, 1:79:14 _, 1:79:15_, 1:80:5_, 1:85:20 _, 1:93:4_, 1:98:6_, 1:114:16 _, 1:122:24_, 1:123:2_, 1:127:9_, 1:131:24_, 1:134:12_, 1:140:13

needed [3]_ - 1:31:11_, 1:55:15_, 1:82:1

needs [4]_ - 1:33:13_, 1:127:2_, 1:134:22_, 1:137:10

negates [1]_ - 1:53:2

never [29]_ - 1:19:12_, 1:42:14_, 1:46:14_, 1:52:18 _, 1:53:3_, 1:56:17_, 1:59:1_, 1:63:13_, 1:75:14_, 1:78:17 _, 1:94:17_, 1:95:16_, 1:101:1_, 1:101:2_, 1:102:15 _, 1:103:8_, 1:103:12_, 1:103:13_, 1:110:5_, 1:113:9 _, 1:113:10_, 1:113:11_, 1:113:12_, 1:118:17_, 1:135:12_, 1:135:13_, 1:137:18

new [1]_ - 1:83:11

New [4]_ - 1:22:25_, 1:99:3 _, 1:99:9_, 1:99:18

news [1]_ - 1:84:15

next [4]_ - 1:68:21_, 1:80:20_, 1:108:25_, 1:116:22

night [4]_ - 1:103:14_, 1:123:5_, 1:123:11_, 1:133:13

nobody [2]_ - 1:13:18_, 1:108:12

nonbinding [1]_ - 1:17:9

nondelegation [2]_ - 1:16:1_, 1:34:12

nondisclosure [1]_ - 1:78:15

none [7]_ - 1:27:3_, 1:46:1 _, 1:79:7_, 1:117:6_, 1:119:20_, 1:128:2

nonexecutives [1]_ - 1:107:4

nonpublic [1]_ - 1:44:16

Nosal [1]_ - 1:23:25

notably [1]_ - 1:106:21

nothing [16]_ - 1:12:20_, 1:22:1_, 1:23:7_, 1:44:24_, 1:55:10_, 1:77:21_, 1:87:7_, 1:88:18_, 1:88:21_, 1:92:10 _, 1:92:11_, 1:102:4_, 1:105:18_, 1:108:2_, 1:120:10_, 1:132:8

notice [37]_ - 1:4:19_, 1:5:4_, 1:5:9_, 1:5:14_, 1:10:16_, 1:12:8_, 1:17:2_, 1:28:15_, 1:28:18_, 1:29:20 _, 1:30:6_, 1:43:18_, 1:43:22 _, 1:45:16_, 1:45:21_, 1:53:10_, 1:64:24_, 1:65:1_, 1:65:13_, 1:65:18_, 1:66:6_, 1:66:21_, 1:66:23_, 1:67:3_, 1:67:16_, 1:67:21_, 1:68:18 _, 1:75:10_, 1:79:12_, 1:79:22_, 1:80:21_, 1:80:24 _, 1:81:9_, 1:81:11_, 1:129:16

notified [1]_ - 1:63:4

noting [1]_ - 1:110:9

notion [5]_ - 1:93:20_, 1:105:21_, 1:122:6_, 1:127:24_, 1:129:19

notwithstanding [1]_ - 1:97:23

nowhere [1]_ - 1:112:18

nuanced [1]_ - 1:104:18

nubs [1]_ - 1:18:3

nuclear [1]_ - 1:112:8

nullifies [1]_ - 1:53:2

nullity [1]_ - 1:83:12

number [4]_ - 1:10:4_, 1:85:16_, 1:85:19_, 1:85:24

Number [5]_ - 1:42:18_, 1:75:2_, 1:85:8_, 1:139:22_, 1:140:8

## O

oath [1]_ - 1:131:12

obligation [4]_ - 1:17:8_, 1:17:10_, 1:32:1_, 1:84:17

obligations [1]_ - 1:38:19

obliged [2]_ - 1:77:4_, 1:123:7

obliges [1]_ - 1:124:7

observation [1]_ - 1:112:4

observe [1]_ - 1:4:8

observed [2]_ - 1:114:14_, 1:116:23

observes [1]_ - 1:115:12

obstruction [3]_ - 1:48:17 _, 1:48:19_, 1:49:3

obtain [1]_ - 1:93:11

obtained [1]_ - 1:36:19

obviously [5]_ - 1:9:21_, 1:10:4_, 1:13:3_, 1:49:24_, 1:108:20

occasion [1]_ - 1:105:14

occurred [3]_ - 1:62:17_, 1:66:3_, 1:124:1

offense [6]_ - 1:19:17_, 1:22:4_, 1:46:23_, 1:46:24_, 1:51:5_, 1:61:25

offer [1]_ - 1:93:19

offered [6]_ - 1:20:11_, 1:23:16_, 1:23:19_, 1:76:9_, 1:97:19

offhand [1]_ - 1:132:7

office [15]_ - 1:5:22_, 1:9:5 _, 1:10:10_, 1:11:3_, 1:15:15 _, 1:16:9_, 1:19:1_, 1:40:18_, 1:76:2_, 1:88:10_, 1:95:13_, 1:96:22_, 1:116:5_, 1:132:22 _, 1:139:7

Office [1]_ - 1:44:8

officer [3]_ - 1:10:11_, 1:11:21_, 1:11:25

official [26]_ - 1:5:6_, 1:20:4_, 1:20:14_, 1:23:20_, 1:23:24_, 1:24:4_, 1:24:8_, 1:24:20_, 1:37:4_, 1:44:12_, 1:44:18_, 1:47:12_, 1:51:9_, 1:51:17_, 1:52:8_, 1:56:1_, 1:63:6_, 1:63:8_, 1:71:8_, 1:71:17_, 1:72:4_, 1:123:21 _, 1:133:11

official's [1]_ - 1:74:12

officials [11]_ - 1:16:22_, 1:21:10_, 1:29:25_, 1:37:20 _, 1:37:23_, 1:47:6_, 1:65:21 _, 1:66:2_, 1:75:22_, 1:76:21 _, 1:80:10

often [1]_ - 1:87:11

OIG [2]_ - 1:31:4_, 1:31:5

OIG's [1]_ - 1:30:20

Oliveira [4]_ - 1:3:6_, 1:3:21_, 1:14:15_, 1:85:25

once [1]_ - 1:29:18

one [86]_ - 1:4:22_, 1:7:15 _, 1:12:5_, 1:12:18_, 1:13:6_, 1:13:25_, 1:14:14_, 1:14:19 _, 1:15:3_, 1:15:13_, 1:18:3_, 1:19:21_, 1:20:3_, 1:20:16_, 1:20:18_, 1:20:21_, 1:23:10 _, 1:27:12_, 1:29:18_, 1:31:1 _, 1:31:18_, 1:32:5_, 1:35:11 _, 1:39:4_, 1:46:15_, 1:46:22 _, 1:48:11_, 1:51:11_, 1:53:10_, 1:53:19_, 1:54:2_, 1:54:4_, 1:60:12_, 1:63:24_, 1:64:15_, 1:64:18_, 1:64:19 _, 1:67:24_, 1:69:13_, 1:70:16_, 1:71:14_, 1:72:17

_, 1:75:5_, 1:75:24_, 1:75:25
_, 1:77:4_, 1:78:6_, 1:82:1_,
1:84:3_, 1:84:9_, 1:85:2_,
1:86:25_, 1:95:17_, 1:99:16
_, 1:108:6_, 1:108:19_,
1:115:12_, 1:116:12_,
1:116:14_, 1:118:1_, 1:118:2
_, 1:120:12_, 1:120:19_,
1:120:25_, 1:121:3_,
1:121:20_, 1:122:11_,
1:123:3_, 1:124:18_, 1:126:3
_, 1:128:17_, 1:129:7_,
1:129:15_, 1:130:12_,
1:130:15_, 1:131:12_,
1:132:15_, 1:133:4_,
1:134:22_, 1:135:21_,
1:138:20

one's [2]_ - 1:52:25_,
1:60:13

one-of-a-kind [1]_ -
1:84:3

one-sided [1]_ - 1:108:6

ones [1]_ - 1:30:25_,
1:116:13

ongoing [3]_ - 1:46:23_,
1:108:23_, 1:129:3

open [1]_ - 1:110:6

opened [2]_ - 1:95:16_,
1:95:18

opening [1]_ - 1:130:10_,
1:130:13

operation [2]_ - 1:29:11_,
1:37:7

operations [2]_ - 1:14:8_,
1:116:20

opine [1]_ - 1:119:4

opinion [9]_ - 1:10:9_,
1:105:23_, 1:114:20_,
1:121:20_, 1:130:16_,
1:130:19_, 1:131:9_,
1:131:16_, 1:131:19

opinions [9]_ - 1:10:4_,
1:10:6_, 1:115:13_, 1:119:20
_, 1:120:17_, 1:120:19_,
1:120:20_, 1:121:19_,
1:131:22

opponent [1]_ - 1:65:9

opportunities [1]_ -
1:57:23

opportunity [2]_ - 1:16:12
_, 1:98:4

opposed [3]_ - 1:17:23_,
1:58:4_, 1:106:13

opposite [2]_ - 1:43:12_,
1:135:18

opposition [6]_ - 1:6:1_,

1:24:14_, 1:41:17_, 1:87:21
_, 1:92:24_, 1:124:9

oppositions [1]_ - 1:5:22

oral [3]_ - 1:105:24_,
1:108:9_, 1:132:8

Order [55]_ - 1:3:1_,
1:12:22_, 1:12:24_, 1:14:15
_, 1:15:5_, 1:15:11_, 1:15:21
_, 1:17:22_, 1:18:1_, 1:18:13
_, 1:18:24_, 1:19:4_, 1:24:6_,
1:24:9_, 1:25:2_, 1:32:23_,
1:33:21_, 1:33:22_, 1:33:25
_, 1:34:9_, 1:34:18_, 1:38:23
_, 1:40:22_, 1:41:2_, 1:41:9_,
1:41:11_, 1:50:9_, 1:50:11_,
1:50:14_, 1:52:15_, 1:53:6_,
1:53:14_, 1:53:17_, 1:53:20
_, 1:54:1_, 1:54:8_, 1:54:11_,
1:54:18_, 1:55:7_, 1:56:18_,
1:58:14_, 1:61:15_, 1:70:22
_, 1:70:25_, 1:72:1_, 1:76:4_,
1:76:25_, 1:78:8_, 1:78:24_,
1:79:3_, 1:80:14_, 1:93:3_,
1:126:3_, 1:126:24_, 1:138:6

order [11]_ - 1:24:4_,
1:31:4_, 1:41:2_, 1:41:12_,
1:55:20_, 1:56:6_, 1:60:1_,
1:79:20_, 1:81:20_, 1:82:7_,
1:136:16

ordered [1]_ - 1:5:23

Orders [2]_ - 1:15:17_,
1:19:2

orders [2]_ - 1:89:3_,
1:92:12

ordinary [5]_ - 1:23:14_,
1:57:5_, 1:62:15_, 1:71:5_,
1:72:1

organization [1]_ - 1:6:5

organized [1]_ - 1:45:10

original [8]_ - 1:7:3_,
1:58:20_, 1:62:8_, 1:62:9_,
1:65:10_, 1:69:12_, 1:89:23
_, 1:103:9

originating [1]_ - 1:56:1_,
1:115:18

others' [1]_ - 1:115:20

otherwise [9]_ - 1:28:9_,
1:50:13_, 1:53:12_, 1:54:19
_, 1:83:9_, 1:119:21_,
1:120:15_, 1:128:4_,
1:138:23

ourselves [1]_ - 1:86:12

outcome [1]_ - 1:13:21

outfit [1]_ - 1:116:14

outlier [1]_ - 1:82:3

outrageous [1]_ -

1:107:22

outset [1]_ - 1:120:17

outside [9]_ - 1:10:7_,
1:10:15_, 1:13:11_, 1:30:18
_, 1:42:4_, 1:87:5_, 1:87:6_,
1:87:8_, 1:90:2

outstanding [1]_ -
1:38:25

overflow [1]_ - 1:4:6

overlap [4]_ - 1:6:3_, 1:7:5
_, 1:14:23_, 1:86:14

overlooked [1]_ - 1:58:12

overread [1]_ - 1:107:23

overriding [1]_ - 1:126:23

oversight [1]_ - 1:89:8

overview [1]_ - 1:41:20

owe [1]_ - 1:121:24

own [6]_ - 1:9:9_, 1:15:6_,
1:90:21_, 1:98:7_, 1:121:6

ownership [1]_ - 1:51:16

P

p.m [3]_ - 1:85:5_, 1:141:1

page [6]_ - 1:42:19_,
1:42:20_, 1:83:10_, 1:131:9
_, 1:139:20_, 1:139:23

pair [2]_ - 1:116:11_,
1:120:19

paper [1]_ - 1:133:12

papers [19]_ - 1:7:18_,
1:8:18_, 1:13:18_, 1:15:14_,
1:36:12_, 1:36:23_, 1:38:9_,
1:39:25_, 1:40:1_, 1:40:15_,
1:62:7_, 1:98:21_, 1:100:11
_, 1:114:3_, 1:121:10_,
1:135:16_, 1:139:14_,
1:139:15_, 1:139:16

paragraph [5]_ - 1:8:5_,
1:8:15_, 1:42:18_, 1:89:18_,
1:138:10

paragraphs [1]_ - 1:65:15

parallel [1]_ - 1:14:8

part [38]_ - 1:16:16_,
1:17:12_, 1:20:21_, 1:25:4_,
1:29:19_, 1:36:5_, 1:37:21_,
1:38:8_, 1:41:5_, 1:47:9_,
1:47:14_, 1:50:21_, 1:50:25
_, 1:51:4_, 1:53:5_, 1:59:17_,
1:60:21_, 1:61:24_, 1:66:6_,
1:79:1_, 1:81:7_, 1:84:19_,
1:120:20_, 1:121:20_,
1:123:24_, 1:123:25_,
1:125:5_, 1:126:14_,
1:126:18_, 1:128:3_, 1:128:4

_, 1:131:6_, 1:131:10_,
1:131:18_, 1:134:22

particular [7]_ - 1:34:17_,
1:35:5_, 1:41:17_, 1:88:23_,
1:98:17_, 1:106:12_,
1:138:18

particularly [3]_ - 1:42:19
_, 1:50:19_, 1:57:6

parties [3]_ - 1:3:7_,
1:115:21_, 1:115:22

partly [1]_ - 1:48:23

parts [3]_ - 1:27:7_, 1:54:8
_, 1:128:9

party [4]_ - 1:90:16_,
1:131:12_, 1:132:4_, 1:132:6

pass [2]_ - 1:7:21_,
1:81:24

passage [2]_ - 1:93:10_,
1:94:4

passages [1]_ - 1:29:18

passed [10]_ - 1:83:4_,
1:88:5_, 1:88:11_, 1:89:3_,
1:89:4_, 1:90:4_, 1:92:6_,
1:92:10_, 1:92:13_, 1:126:16

passing [2]_ - 1:126:18_,
1:135:19

past [4]_ - 1:3:25_, 1:22:24
_, 1:53:4_, 1:111:15

pattern [3]_ - 1:27:9_,
1:64:10_, 1:82:20

Pattern [1]_ - 1:27:16

pause [1]_ - 1:70:16

pausing [1]_ - 1:26:7

Pence [3]_ - 1:22:23_,
1:46:6_, 1:47:18

pending [4]_ - 1:84:13_,
1:96:2_, 1:97:19_, 1:97:21

people [5]_ - 1:37:17_,
1:39:10_, 1:50:24_, 1:53:11
_, 1:60:15

perfectly [1]_ - 1:106:24

perform [1]_ - 1:79:20

perhaps [9]_ - 1:7:23_,
1:7:24_, 1:17:14_, 1:17:16_,
1:28:7_, 1:91:19_, 1:91:22_,
1:93:15_, 1:124:15

period [7]_ - 1:8:7_,
1:46:17_, 1:48:21_, 1:76:19
_, 1:88:17_, 1:90:11_,
1:112:18

permanent [1]_ -
1:126:19

permissible [3]_ - 1:10:20
_, 1:40:4_, 1:124:17

permission [8]₋ - 1:23:17 ₋, 1:23:20₋, 1:23:24₋, 1:24:8 ₋, 1:24:9₋, 1:72:4₋, 1:72:9₋, 1:72:14

permissions [3]₋ - 1:24:20₋, 1:24:23₋, 1:25:4

permit [3]₋ - 1:21:22₋, 1:72:12₋, 1:97:5

permits [3]₋ - 1:14:22₋, 1:21:19₋, 1:23:15

permitted [6]₋ - 1:37:16₋, 1:37:20₋, 1:39:12₋, 1:47:22 ₋, 1:75:23₋, 1:126:7

person [9]₋ - 1:10:13₋, 1:11:16₋, 1:50:22₋, 1:50:25 ₋, 1:53:24₋, 1:78:14₋, 1:119:7₋, 1:123:18₋, 1:123:20

personal [109]₋ - 1:7:7₋, 1:7:16₋, 1:8:11₋, 1:8:22₋, 1:9:4₋, 1:12:10₋, 1:12:25₋, 1:13:10₋, 1:13:14₋, 1:19:4₋, 1:22:9₋, 1:22:17₋, 1:33:8₋, 1:33:9₋, 1:42:13₋, 1:43:11₋, 1:43:21₋, 1:43:25₋, 1:44:13 ₋, 1:44:14₋, 1:44:21₋, 1:44:25₋, 1:45:4₋, 1:45:25₋, 1:65:12₋, 1:68:23₋, 1:87:3₋, 1:88:17₋, 1:88:23₋, 1:90:9₋, 1:90:10₋, 1:90:21₋, 1:91:14 ₋, 1:92:18₋, 1:93:10₋, 1:94:18₋, 1:95:21₋, 1:96:17 ₋, 1:96:23₋, 1:97:4₋, 1:97:7₋, 1:98:2₋, 1:98:9₋, 1:98:15₋, 1:98:22₋, 1:98:23₋, 1:99:24 ₋, 1:100:4₋, 1:101:16₋, 1:101:21₋, 1:103:23₋, 1:104:22₋, 1:105:16₋, 1:105:21₋, 1:106:13₋, 1:106:17₋, 1:108:14₋, 1:109:11₋, 1:109:19₋, 1:109:23₋, 1:112:10₋, 1:112:11₋, 1:112:18₋, 1:113:2₋, 1:113:10₋, 1:113:12₋, 1:113:13₋, 1:113:22₋, 1:114:4₋, 1:114:22₋, 1:117:12₋, 1:117:19₋, 1:118:6₋, 1:118:25₋, 1:119:8₋, 1:119:13₋, 1:119:15₋, 1:120:15₋, 1:121:23₋, 1:125:3₋, 1:125:7₋, 1:125:16 ₋, 1:126:18₋, 1:127:12₋, 1:127:14₋, 1:127:20₋, 1:128:1₋, 1:128:4₋, 1:132:25 ₋, 1:133:18₋, 1:133:22₋, 1:134:21₋, 1:135:1₋, 1:136:5 ₋, 1:136:19₋, 1:136:23₋, 1:137:3₋, 1:137:4₋, 1:137:5

₋, 1:137:13₋, 1:137:21₋, 1:138:4₋, 1:138:7₋, 1:138:9 ₋, 1:138:12₋, 1:138:21₋, 1:139:9₋, 1:139:14₋, 1:140:5

personally [1]₋ - 1:13:6

Personnel [1]₋ - 1:55:17

persons [2]₋ - 1:4:8₋, 1:55:22

persuasive [2]₋ - 1:26:21 ₋, 1:32:13

Peterson [3]₋ - 1:115:10₋, 1:118:1₋, 1:121:11

phone [1]₋ - 1:63:14

phrase [10]₋ - 1:14:19₋, 1:18:7₋, 1:19:8₋, 1:19:13₋, 1:24:3₋, 1:25:6₋, 1:25:10₋, 1:33:24₋, 1:36:9₋, 1:122:1

phrased [1]₋ - 1:35:16

phrases [1]₋ - 1:15:17

picked [1]₋ - 1:85:21

piece [5]₋ - 1:24:13₋, 1:26:12₋, 1:28:15₋, 1:61:4₋, 1:129:7

pieces [3]₋ - 1:26:23₋, 1:26:24₋, 1:128:9

Pierce [1]₋ - 1:3:24

pin [1]₋ - 1:125:15

pivot [1]₋ - 1:115:5

pivots [1]₋ - 1:107:14

place [11]₋ - 1:83:12₋, 1:95:9₋, 1:95:24₋, 1:96:7₋, 1:116:10₋, 1:116:25₋, 1:119:5₋, 1:121:18₋, 1:126:15₋, 1:129:23₋, 1:137:25

places [1]₋ - 1:129:14

plain [5]₋ - 1:24:22₋, 1:71:4₋, 1:92:13₋, 1:92:15₋, 1:99:14

plainly [3]₋ - 1:114:14₋, 1:121:14₋, 1:130:20

plan [1]₋ - 1:57:1

planning [1]₋ - 1:112:9

platforms [1]₋ - 1:116:16

play [4]₋ - 1:52:10₋, 1:53:6 ₋, 1:119:7₋, 1:135:5

played [1]₋ - 1:96:19

plays [1]₋ - 1:109:14

pled [1]₋ - 1:48:19

plenty [2]₋ - 1:87:19₋, 1:94:5

plus [4]₋ - 1:26:12₋, 1:26:23₋, 1:26:24₋, 1:27:25

podium [1]₋ - 1:84:23

point [62]₋ - 1:4:4₋, 1:8:21 ₋, 1:8:22₋, 1:8:24₋, 1:9:2₋, 1:9:16₋, 1:10:16₋, 1:13:12₋, 1:15:25₋, 1:16:1₋, 1:19:7₋, 1:19:21₋, 1:20:6₋, 1:21:15₋, 1:26:20₋, 1:29:17₋, 1:34:25 ₋, 1:35:1₋, 1:36:13₋, 1:37:11 ₋, 1:47:23₋, 1:48:21₋, 1:51:2 ₋, 1:51:13₋, 1:51:14₋, 1:54:14₋, 1:54:19₋, 1:62:24 ₋, 1:65:18₋, 1:69:13₋, 1:71:4 ₋, 1:74:11₋, 1:78:3₋, 1:79:17 ₋, 1:80:12₋, 1:80:15₋, 1:80:20₋, 1:82:19₋, 1:84:9₋, 1:91:23₋, 1:101:6₋, 1:105:6 ₋, 1:108:13₋, 1:110:3₋, 1:112:22₋, 1:113:24₋, 1:118:23₋, 1:120:8₋, 1:120:18₋, 1:121:9₋, 1:122:17₋, 1:123:3₋, 1:123:4 ₋, 1:124:21₋, 1:125:15₋, 1:126:21₋, 1:127:23₋, 1:129:9₋, 1:130:4₋, 1:133:3 ₋, 1:133:24₋, 1:133:25

pointing [3]₋ - 1:15:5₋, 1:76:18₋, 1:105:1

points [12]₋ - 1:16:14₋, 1:31:16₋, 1:46:22₋, 1:74:6₋, 1:75:4₋, 1:78:6₋, 1:111:24₋, 1:112:3₋, 1:112:14₋, 1:115:6 ₋, 1:125:6₋, 1:134:4

police [2]₋ - 1:18:17₋, 1:18:20

policy [1]₋ - 1:73:3

political [3]₋ - 1:21:21₋, 1:32:3₋, 1:67:12

politically [1]₋ - 1:96:1

portion [5]₋ - 1:25:9₋, 1:44:6₋, 1:44:15₋, 1:120:1₋, 1:123:15

position [46]₋ - 1:8:21₋, 1:12:12₋, 1:20:15₋, 1:22:11 ₋, 1:25:7₋, 1:28:20₋, 1:31:12 ₋, 1:34:15₋, 1:36:12₋, 1:38:6 ₋, 1:41:21₋, 1:43:17₋, 1:47:23₋, 1:48:8₋, 1:61:15₋, 1:64:1₋, 1:66:10₋, 1:73:7₋, 1:76:24₋, 1:78:10₋, 1:79:6₋, 1:82:12₋, 1:82:14₋, 1:84:8₋, 1:87:1₋, 1:89:13₋, 1:90:8₋, 1:91:8₋, 1:92:3₋, 1:93:9₋, 1:96:8₋, 1:97:1₋, 1:97:3₋, 1:101:15₋, 1:105:17 ₋, 1:122:5₋, 1:125:4₋, 1:131:12₋, 1:132:15₋, 1:132:17₋, 1:132:18₋, 1:133:21₋, 1:134:17₋,

positions [1]₋ - 1:131:13

possess [1]₋ - 1:126:2

possessed [1]₋ - 1:47:7

possessing [1]₋ - 1:69:9

possession [14]₋ - 1:3:25 ₋, 1:11:2₋, 1:11:13₋, 1:11:19 ₋, 1:20:4₋, 1:20:22₋, 1:48:9₋, 1:60:13₋, 1:70:23₋, 1:71:3₋, 1:87:9₋, 1:92:22₋, 1:94:21₋, 1:125:18

possibility [3]₋ - 1:83:21₋, 1:92:2₋, 1:97:7

possible [9]₋ - 1:28:10₋, 1:29:9₋, 1:34:11₋, 1:34:13₋, 1:82:9₋, 1:112:23₋, 1:113:1 ₋, 1:118:22₋, 1:127:7

possibly [3]₋ - 1:91:1₋, 1:123:19₋, 1:135:3

post [13]₋ - 1:36:24₋, 1:37:5₋, 1:39:7₋, 1:47:8₋, 1:48:9₋, 1:51:21₋, 1:53:8₋, 1:56:11₋, 1:63:1₋, 1:69:10₋, 1:74:20₋, 1:76:18₋, 1:83:2

post-Davis [1]₋ - 1:83:2

post-inauguration [1]₋ - 1:39:7

post-indictment [3]₋ - 1:36:24₋, 1:37:5₋, 1:63:1

post-presidency [4]₋ - 1:47:8₋, 1:53:8₋, 1:56:11₋, 1:69:10

post-presidential [1]₋ - 1:76:18

postconviction [1]₋ - 1:10:8

postdated [2]₋ - 1:46:7₋, 1:46:8

postposition [2]₋ - 1:48:9 ₋, 1:65:22

postulate [1]₋ - 1:58:24

postulates [1]₋ - 1:121:20

posture [2]₋ - 1:7:24₋, 1:9:25

potential [17]₋ - 1:8:1₋, 1:26:4₋, 1:57:2₋, 1:72:20₋, 1:73:8₋, 1:73:10₋, 1:73:11₋, 1:73:18₋, 1:73:19₋, 1:73:23 ₋, 1:74:2₋, 1:82:10₋, 1:83:24 ₋, 1:129:23₋, 1:130:1₋, 1:137:19

potentially [9]₋ - 1:40:13₋, 1:69:7₋, 1:92:17₋, 1:94:1₋, 1:98:24₋, 1:102:8₋, 1:102:9 ₋, 1:102:12₋, 1:137:20

power [11]‗ - 1:32:15‗, 1:32:16‗, 1:32:17‗, 1:72:9‗, 1:88:21‗, 1:105:5‗, 1:117:19 ‗, 1:120:7‗, 1:120:9‗, 1:122:13

powerless [3]‗ - 1:119:4‗, 1:119:6‗, 1:122:15

powers [2]‗ - 1:77:23‗, 1:120:23

PRA [87]‗ - 1:9:4‗, 1:10:17 ‗, 1:13:6‗, 1:13:14‗, 1:13:22 ‗, 1:19:4‗, 1:22:11‗, 1:22:13 ‗, 1:31:3‗, 1:33:10‗, 1:42:5‗, 1:42:12‗, 1:43:15‗, 1:43:18 ‗, 1:43:20‗, 1:44:25‗, 1:45:3 ‗, 1:45:9‗, 1:45:18‗, 1:51:15 ‗, 1:68:15‗, 1:68:17‗, 1:69:11‗, 1:74:21‗, 1:74:23 ‗, 1:86:2‗, 1:86:15‗, 1:89:14 ‗, 1:90:4‗, 1:91:25‗, 1:92:6‗, 1:93:21‗, 1:93:24‗, 1:94:9‗, 1:94:11‗, 1:96:15‗, 1:97:4‗, 1:97:13‗, 1:97:20‗, 1:102:5 ‗, 1:109:14‗, 1:109:18‗, 1:110:11‗, 1:110:14‗, 1:110:20‗, 1:111:1‗, 1:111:3 ‗, 1:111:5‗, 1:114:16‗, 1:116:2‗, 1:117:6‗, 1:118:13 ‗, 1:119:1‗, 1:121:3‗, 1:121:13‗, 1:121:15‗, 1:121:18‗, 1:122:3‗, 1:122:7 ‗, 1:124:14‗, 1:126:3‗, 1:126:16‗, 1:126:18‗, 1:126:24‗, 1:126:25‗, 1:127:9‗, 1:127:13‗, 1:127:15‗, 1:134:23‗, 1:135:2‗, 1:135:9‗, 1:135:19 ‗, 1:136:4‗, 1:136:8‗, 1:136:25‗, 1:137:1‗, 1:137:6 ‗, 1:137:16‗, 1:137:22‗, 1:138:3‗, 1:138:5‗, 1:138:16 ‗, 1:139:5

PRA's [3]‗ - 1:91:5‗, 1:118:13‗, 1:127:16

practice [7]‗ - 1:29:25‗, 1:31:8‗, 1:75:22‗, 1:76:20‗, 1:80:9‗, 1:82:24‗, 1:83:2

practices [2]‗ - 1:110:12‗, 1:111:15

pre [1]‗ - 1:83:15

pre-Davis [1]‗ - 1:83:15

precedent [4]‗ - 1:25:8‗, 1:94:6‗, 1:94:16‗, 1:96:3

precious [1]‗ - 1:130:18

precise [1]‗ - 1:118:23

predates [1]‗ - 1:77:12

predicated [2]‗ - 1:60:4‗,

preexisting [2]‗ - 1:53:2‗, 1:53:4

premature [5]‗ - 1:7:20‗, 1:8:25‗, 1:42:3‗, 1:42:7‗, 1:42:14

premised [1]‗ - 1:114:8

present [5]‗ - 1:3:18‗, 1:5:18‗, 1:42:23‗, 1:86:4‗, 1:117:14

presentation [4]‗ - 1:6:4 ‗, 1:36:5‗, 1:36:17‗, 1:83:9

presented [3]‗ - 1:18:22‗, 1:36:13‗, 1:80:21

presenting [2]‗ - 1:4:3‗, 1:6:14

preservation [1]‗ - 1:89:9

preserve [1]‗ - 1:139:15

preserving [1]‗ - 1:121:7

presidency [20]‗ - 1:9:6‗, 1:20:1‗, 1:21:3‗, 1:22:1‗, 1:28:24‗, 1:40:20‗, 1:47:8‗, 1:51:14‗, 1:53:8‗, 1:56:11‗, 1:59:5‗, 1:59:8‗, 1:59:19‗, 1:59:22‗, 1:59:24‗, 1:69:10 ‗, 1:76:16‗, 1:78:5‗, 1:90:4‗, 1:98:23

President [134]‗ - 1:3:14‗, 1:4:12‗, 1:4:14‗, 1:5:5‗, 1:6:23‗, 1:7:2‗, 1:7:3‗, 1:7:6 ‗, 1:7:8‗, 1:8:4‗, 1:8:7‗, 1:9:5‗, 1:9:13‗, 1:12:25‗, 1:13:7‗, 1:13:17‗, 1:13:20‗, 1:14:17‗, 1:14:20‗, 1:15:5‗, 1:16:16‗, 1:17:7‗, 1:18:23‗, 1:22:8‗, 1:22:15‗, 1:22:16‗, 1:22:22‗, 1:22:23‗, 1:23:5‗, 1:23:11‗, 1:29:19‗, 1:29:20 ‗, 1:29:22‗, 1:30:7‗, 1:31:8‗, 1:34:15‗, 1:36:13‗, 1:36:17 ‗, 1:39:4‗, 1:39:6‗, 1:39:7‗, 1:39:13‗, 1:39:18‗, 1:40:16 ‗, 1:46:4‗, 1:46:6‗, 1:47:15‗, 1:47:18‗, 1:74:16‗, 1:75:8‗, 1:75:11‗, 1:75:20‗, 1:76:2‗, 1:76:14‗, 1:76:19‗, 1:78:14 ‗, 1:78:17‗, 1:78:24‗, 1:79:4 ‗, 1:79:12‗, 1:80:9‗, 1:80:22 ‗, 1:86:16‗, 1:86:18‗, 1:87:19‗, 1:89:19‗, 1:90:10 ‗, 1:90:13‗, 1:90:20‗, 1:91:10‗, 1:91:11‗, 1:94:9‗, 1:94:14‗, 1:94:20‗, 1:95:13 ‗, 1:95:17‗, 1:96:6‗, 1:96:10 ‗, 1:96:16‗, 1:96:19‗, 1:98:7 ‗, 1:99:5‗, 1:100:1‗, 1:100:8 ‗, 1:100:15‗, 1:100:20‗,

1:101:5‗, 1:102:14‗, 1:103:22‗, 1:104:2‗, 1:104:20‗, 1:104:21‗, 1:106:9‗, 1:106:16‗, 1:107:2 ‗, 1:107:5‗, 1:107:8‗, 1:108:1‗, 1:108:14‗, 1:108:20‗, 1:109:20‗, 1:109:22‗, 1:109:25‗, 1:110:7‗, 1:110:10‗, 1:113:8 ‗, 1:114:15‗, 1:115:19‗, 1:122:21‗, 1:128:8‗, 1:132:19‗, 1:133:5‗, 1:133:9 ‗, 1:133:14‗, 1:134:19‗, 1:136:4‗, 1:136:18‗, 1:137:22‗, 1:137:23‗, 1:140:2‗, 1:140:3

president [97]‗ - 1:12:10‗, 1:22:16‗, 1:24:10‗, 1:28:19 ‗, 1:28:23‗, 1:30:12‗, 1:31:1 ‗, 1:33:9‗, 1:33:15‗, 1:42:13 ‗, 1:42:16‗, 1:42:20‗, 1:43:6 ‗, 1:43:19‗, 1:44:7‗, 1:44:8‗, 1:44:9‗, 1:44:12‗, 1:44:18‗, 1:44:20‗, 1:45:23‗, 1:46:10 ‗, 1:47:11‗, 1:49:17‗, 1:51:18‗, 1:52:2‗, 1:52:18‗, 1:52:23‗, 1:53:7‗, 1:53:11‗, 1:55:23‗, 1:56:9‗, 1:56:10‗, 1:56:22‗, 1:57:14‗, 1:62:10 ‗, 1:64:24‗, 1:66:16‗, 1:67:16‗, 1:69:8‗, 1:69:22‗, 1:74:22‗, 1:76:8‗, 1:85:11‗, 1:88:9‗, 1:88:13‗, 1:89:9‗, 1:89:20‗, 1:89:21‗, 1:89:25 ‗, 1:90:21‗, 1:91:11‗, 1:92:9 ‗, 1:92:10‗, 1:92:13‗, 1:93:22‗, 1:94:8‗, 1:96:21‗, 1:98:9‗, 1:99:1‗, 1:99:24‗, 1:100:1‗, 1:100:16‗, 1:101:21‗, 1:102:13‗, 1:102:14‗, 1:104:3‗, 1:105:21‗, 1:106:10‗, 1:108:22‗, 1:109:7‗, 1:118:6 ‗, 1:118:18‗, 1:119:16‗, 1:120:14‗, 1:121:16‗, 1:121:21‗, 1:126:19‗, 1:133:10‗, 1:135:10‗, 1:136:4‗, 1:136:12‗, 1:136:13‗, 1:137:10‗, 1:137:11‗, 1:137:20‗, 1:137:21‗, 1:138:16‗, 1:138:20‗, 1:139:6‗, 1:139:7 ‗, 1:139:13

president's [14]‗ - 1:29:9 ‗, 1:41:24‗, 1:44:7‗, 1:65:7‗, 1:88:22‗, 1:89:9‗, 1:92:9‗, 1:100:3‗, 1:102:18‗, 1:114:23‗, 1:116:1‗, 1:116:5 ‗, 1:136:16

President-elect [1]‗ -

1:39:6

presidential [61]‗ - 1:7:9‗, 1:13:14‗, 1:23:4‗, 1:43:12‗, 1:43:13‗, 1:43:21‗, 1:43:25 ‗, 1:44:3‗, 1:44:4‗, 1:44:21‗, 1:45:5‗, 1:45:25‗, 1:56:7‗, 1:68:22‗, 1:68:23‗, 1:76:18 ‗, 1:87:23‗, 1:88:15‗, 1:88:24‗, 1:90:1‗, 1:90:8‗, 1:90:9‗, 1:90:10‗, 1:92:16‗, 1:96:14‗, 1:97:6‗, 1:97:13‗, 1:98:2‗, 1:98:9‗, 1:102:7‗, 1:104:22‗, 1:105:15‗, 1:109:11‗, 1:113:2‗, 1:114:12‗, 1:114:22‗, 1:115:19‗, 1:116:3‗, 1:116:25‗, 1:117:7‗, 1:117:9 ‗, 1:117:11‗, 1:117:18‗, 1:117:21‗, 1:118:9‗, 1:118:15‗, 1:118:25‗, 1:119:2‗, 1:119:4‗, 1:119:15 ‗, 1:128:1‗, 1:128:5‗, 1:128:9‗, 1:128:10‗, 1:133:8 ‗, 1:133:14‗, 1:133:22‗, 1:137:2‗, 1:137:11‗, 1:137:14‗, 1:138:19

Presidential [16]‗ - 1:4:14 ‗, 1:7:7‗, 1:33:7‗, 1:74:7‗, 1:85:10‗, 1:86:18‗, 1:88:11 ‗, 1:92:10‗, 1:93:5‗, 1:93:8‗, 1:97:16‗, 1:112:19‗, 1:126:6 ‗, 1:134:5‗, 1:136:11‗, 1:140:9

Presidents [1]‗ - 1:99:19

presidents [20]‗ - 1:19:3‗, 1:22:24‗, 1:33:23‗, 1:37:23 ‗, 1:46:14‗, 1:65:25‗, 1:66:1 ‗, 1:66:5‗, 1:80:11‗, 1:80:13 ‗, 1:88:6‗, 1:98:13‗, 1:101:13‗, 1:107:4‗, 1:110:9 ‗, 1:110:10‗, 1:139:15‗, 1:139:16

press [1]‗ - 1:107:6

pressing [3]‗ - 1:16:1‗, 1:134:12‗, 1:140:12

presumably [1]‗ - 1:113:21

presumption [2]‗ - 1:114:7‗, 1:114:8

pretend [1]‗ - 1:28:11

pretrial [2]‗ - 1:5:17‗, 1:86:15

pretty [1]‗ - 1:83:3

prevent [1]‗ - 1:15:7

prevents [1]‗ - 1:34:4

preview [1]‗ - 1:31:4

previously [1]‗ - 1:139:9

principally [1]_ - 1:15:24

principle [1]_ - 1:104:18

principles [1]_ - 1:91:6

private [7]_ - 1:23:25_, 1:24:22_, 1:25:4_, 1:44:15_, 1:116:2_, 1:120:9_, 1:121:2

privilege [8]_ - 1:7:8_, 1:31:18_, 1:31:24_, 1:32:1_, 1:32:4_, 1:38:9_, 1:38:13_, 1:38:14

privileges [1]_ - 1:111:12

problem [3]_ - 1:27:19_, 1:53:16_, 1:71:1

problematic [5]_ - 1:14:21_, 1:18:15_, 1:19:13 _, 1:25:13_, 1:28:5

problems [1]_ - 1:28:13

procedural [1]_ - 1:118:10

procedure [1]_ - 1:139:1

procedures [1]_ - 1:124:2

proceeding [7]_ - 1:5:6_, 1:5:7_, 1:13:19_, 1:100:22_, 1:112:22_, 1:131:13_, 1:134:16

proceedings [2]_ - 1:63:15_, 1:141:1

process [8]_ - 1:29:3_, 1:36:23_, 1:38:11_, 1:54:13 _, 1:66:7_, 1:67:18_, 1:69:17 _, 1:96:18

produced [3]_ - 1:63:5_, 1:63:16_, 1:101:22

proffers [1]_ - 1:9:23

programs [1]_ - 1:68:8

prohibiting [1]_ - 1:83:8

prohibition [2]_ - 1:20:7_, 1:21:11

prohibitions [1]_ - 1:50:10

promptly [1]_ - 1:140:25

promulgate [3]_ - 1:15:16 _, 1:19:2_, 1:32:22

prong [8]_ - 1:14:25_, 1:35:10_, 1:35:13_, 1:50:17 _, 1:50:20_, 1:71:24_, 1:79:14_, 1:83:17

prongs [2]_ - 1:28:14_, 1:42:9

proof [5]_ - 1:40:12_, 1:47:10_, 1:49:3_, 1:52:12_, 1:58:23

proper [2]_ - 1:72:13_, 1:92:20

property [1]_ - 1:24:1

proposed [1]_ - 1:16:16

proposition [1]_ - 1:54:24

prosecute [2]_ - 1:47:11_, 1:60:15

prosecuted [2]_ - 1:80:24 _, 1:128:13

prosecuting [1]_ - 1:53:12

prosecution [16]_ - 1:14:23_, 1:21:14_, 1:32:24 _, 1:52:11_, 1:67:13_, 1:81:1 _, 1:84:4_, 1:84:13_, 1:84:19 _, 1:95:8_, 1:95:11_, 1:106:21_, 1:106:22_, 1:124:1_, 1:124:6_, 1:130:1

prosecutions [5]_ - 1:48:8_, 1:49:7_, 1:65:23_, 1:66:1_, 1:66:4

prosecutor [1]_ - 1:67:3

prosecutors [2]_ - 1:80:1 _, 1:95:23

prospective [1]_ - 1:75:12

protect [1]_ - 1:56:3

protected [2]_ - 1:38:23_, 1:40:22

protecting [2]_ - 1:121:7_, 1:127:10

protects [1]_ - 1:66:24

prove [6]_ - 1:47:16_, 1:49:16_, 1:92:21_, 1:92:22 _, 1:138:20_, 1:138:21

proves [1]_ - 1:133:3

provide [5]_ - 1:15:21_, 1:16:21_, 1:30:6_, 1:39:5_, 1:57:22

provided [11]_ - 1:24:10_, 1:31:21_, 1:39:11_, 1:40:2_, 1:44:23_, 1:62:6_, 1:62:16_, 1:67:15

provides [3]_ - 1:12:8_, 1:66:20_, 1:66:23

providing [2]_ - 1:38:10_, 1:38:13

provision [1]_ - 1:109:1

provisions [3]_ - 1:44:19_, 1:117:5_, 1:127:6

public [4]_ - 1:36:2_, 1:65:3_, 1:65:14_, 1:70:15

publicity [1]_ - 1:22:21

publisher [1]_ - 1:42:22

puppets [1]_ - 1:132:21

purely [1]_ - 1:44:15

purport [1]_ - 1:110:20

purports [1]_ - 1:5:17

purpose [7]_ - 1:64:6_, 1:64:11_, 1:64:17_, 1:64:19 _, 1:111:10_, 1:121:17_, 1:123:22

purposeful [1]_ - 1:19:23

purposefully [1]_ - 1:27:13

purposely [2]_ - 1:27:14_, 1:132:6

purposes [6]_ - 1:6:5_, 1:42:14_, 1:66:6_, 1:68:13_, 1:117:15_, 1:134:18

pursuant [2]_ - 1:7:7_, 1:31:5

pursued [1]_ - 1:102:23

put [17]_ - 1:5:14_, 1:16:20 _, 1:30:2_, 1:32:2_, 1:33:2_, 1:61:2_, 1:62:10_, 1:68:4_, 1:70:11_, 1:72:18_, 1:94:5_, 1:96:20_, 1:114:2_, 1:114:4 _, 1:118:11_, 1:121:21_, 1:125:15

puts [1]_ - 1:68:18

putting [5]_ - 1:63:16_, 1:65:25_, 1:66:10_, 1:69:6_, 1:94:20

puzzle [1]_ - 1:129:7

## Q

Q-classified [1]_ - 1:61:1

Q-level [1]_ - 1:62:12

qualified [1]_ - 1:31:23

quash [1]_ - 1:139:1

questioned [2]_ - 1:102:15_, 1:113:3

questions [3]_ - 1:41:23_, 1:52:17_, 1:134:8

quickly [1]_ - 1:129:10

quite [8]_ - 1:24:21_, 1:56:9_, 1:77:2_, 1:102:13_, 1:129:5_, 1:129:25_, 1:132:11

quotation [2]_ - 1:72:7_, 1:117:1

quote [6]_ - 1:18:17_, 1:55:1_, 1:72:9_, 1:72:11_, 1:117:12_, 1:132:5

quoted [2]_ - 1:23:5_, 1:71:11

quotes [1]_ - 1:72:11

quoting [6]_ - 1:72:7_, 1:79:19_, 1:83:10_, 1:132:3

_, 1:133:6_, 1:134:15

## R

raise [3]_ - 1:34:25_, 1:87:25_, 1:96:7

raised [8]_ - 1:34:13_, 1:41:22_, 1:82:22_, 1:83:1_, 1:93:16_, 1:98:20_, 1:115:11 _, 1:134:13

Random [2]_ - 1:71:13_, 1:72:8

ranking [1]_ - 1:66:1

rather [2]_ - 1:45:18_, 1:52:4

Ratzlafv [1]_ - 1:64:9

Ratzlafv/Cheek [1]_ - 1:49:10

rea [5]_ - 1:25:14_, 1:27:5_, 1:28:16_, 1:64:7_, 1:124:10

reach [4]_ - 1:54:14_, 1:54:19_, 1:54:23_, 1:58:5

reached [1]_ - 1:22:23

reaching [1]_ - 1:107:12

read [19]_ - 1:10:23_, 1:20:2_, 1:26:10_, 1:44:1_, 1:47:13_, 1:84:15_, 1:112:20 _, 1:112:21_, 1:121:15_, 1:123:15_, 1:127:6_, 1:127:8 _, 1:127:9_, 1:127:11_, 1:130:19_, 1:131:15_, 1:131:16_, 1:138:2

reading [6]_ - 1:107:19_, 1:115:16_, 1:123:14_, 1:132:11_, 1:139:18_, 1:139:19

ready [1]_ - 1:29:14

Reagan [18]_ - 1:21:16_, 1:22:15_, 1:31:9_, 1:74:17_, 1:94:9_, 1:94:15_, 1:94:21_, 1:98:25_, 1:101:14_, 1:107:5 _, 1:109:5_, 1:109:25_, 1:110:15_, 1:115:22_, 1:127:19_, 1:128:15_, 1:134:25_, 1:137:23

Reagan's [1]_ - 1:109:20 _, 1:128:8

real [1]_ - 1:115:3

realistic [1]_ - 1:46:11

realized [1]_ - 1:52:2

really [39]_ - 1:7:23_, 1:9:25_, 1:14:16_, 1:17:13_, 1:18:3_, 1:18:13_, 1:22:1_, 1:28:16_, 1:30:23_, 1:34:6_, 1:35:11_, 1:35:19_, 1:35:20 _, 1:40:2_, 1:41:25_, 1:47:10

..., 1:50:21_, 1:52:12_, 1:53:5_, 1:53:17_, 1:54:19_, 1:56:8_, 1:57:1_, 1:57:19_, 1:59:1_, 1:63:23_, 1:67:2_, 1:70:1_, 1:71:9_, 1:73:13_, 1:79:13_, 1:81:4_, 1:89:7_, 1:93:20_, 1:94:13_, 1:97:14_, 1:122:24_, 1:133:3_, 1:135:22

rearing [1]_ - 1:124:12

reason [16]_ - 1:22:11_, 1:22:12_, 1:26:7_, 1:31:2_, 1:37:10_, 1:57:8_, 1:84:14_, 1:95:25_, 1:96:20_, 1:100:21_, 1:101:12_, 1:116:21_, 1:120:20_, 1:124:22_, 1:130:17_, 1:135:24

reasonable [7]_ - 1:14:12_, 1:24:25_, 1:31:5_, 1:31:10_, 1:47:16_, 1:66:9_, 1:83:21

reasonably [6]_ - 1:14:3_, 1:44:5_, 1:44:15_, 1:65:19_, 1:69:14_, 1:138:11

reasoning [2]_ - 1:25:22_, 1:106:8

reasons [12]_ - 1:8:3_, 1:14:19_, 1:30:4_, 1:42:2_, 1:60:12_, 1:67:12_, 1:86:23_, 1:89:1_, 1:112:13_, 1:125:22_, 1:129:20_, 1:137:8

rebuttal [1]_ - 1:74:25

receive [25]_ - 1:9:23_, 1:11:4_, 1:11:16_, 1:11:22_, 1:12:1_, 1:13:7_, 1:14:20_, 1:15:10_, 1:15:20_, 1:19:8_, 1:41:2_, 1:50:15_, 1:50:17_, 1:51:1_, 1:51:4_, 1:51:7_, 1:51:9_, 1:52:8_, 1:52:10_, 1:52:19_, 1:57:17_, 1:59:2_, 1:70:22_, 1:71:25_, 1:75:16

received [4]_ - 1:44:6_, 1:76:15_, 1:101:7_, 1:134:1

receives [1]_ - 1:52:18

recent [2]_ - 1:27:2_, 1:116:14

recently [3]_ - 1:17:5_, 1:82:15_, 1:110:17

recess [3]_ - 1:85:5_, 1:134:13_, 1:140:24

recesses [1]_ - 1:4:1

recessing [1]_ - 1:85:2

recipient [1]_ - 1:79:19

recites [1]_ - 1:80:9

recognized [1]_ - 1:72:13

record [37]_ - 1:23:4_, 1:29:3_, 1:43:25_, 1:44:3_,

1:44:4_, 1:44:21_, 1:44:25_, 1:45:4_, 1:85:23_, 1:98:2_, 1:99:17_, 1:101:16_, 1:101:21_, 1:102:7_, 1:102:9_, 1:106:12_, 1:106:13_, 1:108:9_, 1:108:17_, 1:109:11_, 1:109:19_, 1:116:25_, 1:117:11_, 1:118:9_, 1:119:4_, 1:123:16_, 1:128:1_, 1:128:4_, 1:129:2_, 1:130:11_, 1:135:1_, 1:138:5_, 1:138:7

recordings [2]_ - 1:108:4_, 1:108:19

recordkeeping [1]_ - 1:110:12

Records [16]_ - 1:4:14_, 1:7:7_, 1:33:7_, 1:74:7_, 1:85:10_, 1:86:18_, 1:88:11_, 1:92:10_, 1:93:5_, 1:93:9_, 1:97:16_, 1:112:19_, 1:126:6_, 1:134:5_, 1:136:11_, 1:140:10

records [94]_ - 1:7:6_, 1:8:4_, 1:8:11_, 1:9:9_, 1:12:10_, 1:12:12_, 1:12:24_, 1:12:25_, 1:13:1_, 1:13:6_, 1:13:7_, 1:13:10_, 1:19:4_, 1:22:8_, 1:22:16_, 1:31:1_, 1:33:8_, 1:33:9_, 1:37:1_, 1:42:13_, 1:43:12_, 1:43:13_, 1:44:13_, 1:44:14_, 1:45:25_, 1:78:21_, 1:86:19_, 1:87:3_, 1:87:23_, 1:88:14_, 1:88:15_, 1:88:16_, 1:89:22_, 1:89:25_, 1:90:1_, 1:90:9_, 1:90:22_, 1:92:14_, 1:92:16_, 1:92:17_, 1:92:18_, 1:93:10_, 1:94:18_, 1:96:9_, 1:96:14_, 1:96:16_, 1:97:6_, 1:98:7_, 1:98:9_, 1:98:15_, 1:99:24_, 1:100:4_, 1:102:7_, 1:102:14_, 1:103:22_, 1:105:15_, 1:105:16_, 1:106:11_, 1:106:17_, 1:109:23_, 1:112:18_, 1:113:13_, 1:115:19_, 1:117:7_, 1:118:15_, 1:119:2_, 1:119:15_, 1:121:17_, 1:121:22_, 1:122:19_, 1:126:19_, 1:127:12_, 1:127:20_, 1:128:10_, 1:133:8_, 1:133:14_, 1:133:17_, 1:134:21_, 1:136:5_, 1:136:13_, 1:136:17_, 1:137:2_, 1:137:3_, 1:137:4_, 1:137:6_, 1:137:12_, 1:137:14_, 1:137:21_, 1:138:21_, 1:139:6

records' [1]_ - 1:116:4

recover [6]_ - 1:30:25_, 1:118:15_, 1:119:2_, 1:119:15_, 1:122:13_, 1:122:18

red [2]_ - 1:135:22_, 1:135:24

redact [1]_ - 1:135:3

redressability [4]_ - 1:107:15_, 1:120:1_, 1:120:3

refer [9]_ - 1:26:11_, 1:64:4_, 1:103:13_, 1:104:19_, 1:104:23_, 1:105:2_, 1:107:9_, 1:122:18_, 1:124:5

reference [5]_ - 1:15:10_, 1:50:14_, 1:53:17_, 1:54:11_, 1:64:19

referenced [2]_ - 1:30:10_, 1:53:21_, 1:54:19_, 1:76:1_, 1:136:24

references [3]_ - 1:40:9_, 1:64:16_, 1:68:23

referencing [2]_ - 1:87:15_, 1:91:17

referral [20]_ - 1:30:10_, 1:30:11_, 1:30:13_, 1:30:18_, 1:31:4_, 1:31:11_, 1:31:12_, 1:46:3_, 1:46:4_, 1:100:7_, 1:101:2_, 1:101:5_, 1:102:20_, 1:102:22_, 1:103:4_, 1:103:9_, 1:104:4_, 1:105:14_, 1:122:22_, 1:123:6

referrals [5]_ - 1:30:21_, 1:30:23_, 1:30:24_, 1:46:3_, 1:46:6

referred [1]_ - 1:122:19

referring [8]_ - 1:4:18_, 1:11:17_, 1:29:5_, 1:65:1_, 1:104:12_, 1:104:24_, 1:105:5

refers [4]_ - 1:17:19_, 1:27:22_, 1:29:24

refined [1]_ - 1:50:1

reflected [1]_ - 1:31:8

reflects [4]_ - 1:29:3_, 1:30:5_, 1:30:7_, 1:35:3

refuted [1]_ - 1:80:7

regard [1]_ - 1:16:15

regarding [2]_ - 1:29:21_, 1:75:21

regs [1]_ - 1:136:3

regular [1]_ - 1:53:24

regulating [1]_ - 1:120:22

regulation [3]_ - 1:62:13_,

1:123:5_, 1:124:7

regulations [4]_ - 1:15:11_, 1:15:17_, 1:19:2_, 1:123:17

reinforces [2]_ - 1:43:18_, 1:45:20

rejected [2]_ - 1:28:3_, 1:32:7

relate [6]_ - 1:19:24_, 1:20:13_, 1:31:20_, 1:31:21_, 1:44:10_, 1:44:16

related [4]_ - 1:39:8_, 1:39:22_, 1:62:17_, 1:84:12

relates [8]_ - 1:8:6_, 1:31:18_, 1:43:16_, 1:49:2_, 1:75:5_, 1:75:25_, 1:83:16_, 1:99:25

relating [8]_ - 1:11:14_, 1:11:19_, 1:19:3_, 1:30:24_, 1:40:4_, 1:70:11_, 1:80:13_, 1:112:7

relationship [1]_ - 1:67:17

relative [3]_ - 1:35:24_, 1:37:12_, 1:37:19

release [2]_ - 1:73:17_, 1:73:19

relevance [2]_ - 1:31:18_, 1:130:2

relevant [9]_ - 1:40:6_, 1:40:7_, 1:40:11_, 1:40:15_, 1:66:15_, 1:81:11_, 1:86:15_, 1:106:22_, 1:119:15

reliance [1]_ - 1:81:17

relied [2]_ - 1:15:20_, 1:25:18

relief [4]_ - 1:5:5_, 1:5:7_, 1:91:23_, 1:107:16

relies [3]_ - 1:10:10_, 1:29:19_, 1:42:4

reluctant [1]_ - 1:73:6

rely [2]_ - 1:32:21_, 1:114:7

relying [2]_ - 1:27:2_, 1:36:15

remain [1]_ - 1:43:14

remained [1]_ - 1:110:15

remains [1]_ - 1:104:19

remark [1]_ - 1:132:7

remedy [1]_ - 1:25:7

remember [4]_ - 1:92:5_, 1:120:5_, 1:122:17_, 1:123:13

remotely [2]_ - 1:46:15_, 1:114:12

removal [3]_ - 1:8:10_,

1:8:18_, 1:19:22

remove [2]_ - 1:9:8_, 1:60:24

removed [6]_ - 1:8:5_, 1:20:5_, 1:22:16_, 1:29:1_, 1:59:10_, 1:63:12

rendered [1]_ - 1:121:22

repeal [2]_ - 1:89:17_, 1:122:6

repealed [1]_ - 1:89:14

repeat [2]_ - 1:86:12_, 1:125:14

repeatedly [5]_ - 1:39:15 _, 1:67:11_, 1:96:8_, 1:102:17_, 1:135:18

replevin [1]_ - 1:118:16

replied [1]_ - 1:100:9

replies [3]_ - 1:5:12_, 1:5:23

reply [9]_ - 1:23:1_, 1:65:16_, 1:67:9_, 1:68:2_, 1:100:10_, 1:123:4_, 1:128:21_, 1:130:8_, 1:140:8

Report [1]_ - 1:100:14

report [3]_ - 1:21:17_, 1:47:13_, 1:123:21

report's [1]_ - 1:47:14

reporter [1]_ - 1:50:23

representations [1]_ - 1:108:18

representative [1]_ - 1:137:4

represented [2]_ - 1:62:21_, 1:63:18

representing [1]_ - 1:135:17

Republicans [1]_ - 1:52:5

request [7]_ - 1:37:22_, 1:37:25_, 1:38:25_, 1:39:1_, 1:39:2_, 1:39:3_, 1:91:5

requests [1]_ - 1:39:8

require [15]_ - 1:7:2_, 1:7:21_, 1:26:12_, 1:26:16_, 1:27:25_, 1:41:1_, 1:49:16_, 1:52:14_, 1:82:10_, 1:87:4_, 1:89:13_, 1:89:16_, 1:90:1_, 1:91:25_, 1:124:14

required [3]_ - 1:26:5_, 1:75:13_, 1:76:4

requirement [9]_ - 1:23:24_, 1:24:4_, 1:25:25_, 1:26:1_, 1:26:2_, 1:55:19_, 1:59:25_, 1:78:11_, 1:81:22

requires [8]_ - 1:26:10_,

1:31:5_, 1:44:21_, 1:79:18_, 1:79:19_, 1:84:20_, 1:86:16 _, 1:92:2

Researchers [1]_ - 1:55:17

reserves [1]_ - 1:107:13

residence [2]_ - 1:9:10_, 1:12:10

residences [2]_ - 1:39:5_, 1:39:23

residual [1]_ - 1:17:4

resolution [1]_ - 1:7:11

resolve [3]_ - 1:27:21_, 1:32:3_, 1:81:20

resort [10]_ - 1:23:14_, 1:41:1_, 1:52:14_, 1:56:23_, 1:56:25_, 1:82:2_, 1:87:5_, 1:93:5_, 1:124:14_, 1:130:15

resorts [1]_ - 1:10:7

respect [32]_ - 1:6:11_, 1:6:22_, 1:7:4_, 1:13:16_, 1:15:4_, 1:35:25_, 1:38:7_, 1:39:13_, 1:42:5_, 1:42:8_, 1:42:12_, 1:45:11_, 1:46:3_, 1:46:5_, 1:47:18_, 1:52:22_, 1:61:11_, 1:62:5_, 1:68:22_, 1:71:3_, 1:75:17_, 1:77:9_, 1:78:24_, 1:81:9_, 1:90:8_, 1:92:8_, 1:92:14_, 1:97:3_, 1:97:9_, 1:97:11_, 1:110:4_, 1:134:14

respectfully [6]_ - 1:13:12 _, 1:15:25_, 1:23:18_, 1:70:7 _, 1:83:14_, 1:135:23

respective [1]_ - 1:5:22

respects [1]_ - 1:21:13

respond [1]_ - 1:74:6

response [10]_ - 1:23:5_, 1:23:6_, 1:38:8_, 1:60:21_, 1:60:22_, 1:71:10_, 1:75:5_, 1:103:15_, 1:130:10_, 1:130:19

responses [1]_ - 1:84:11

responsibility [1]_ - 1:107:10

responsible [1]_ - 1:35:7

rest [1]_ - 1:122:6

restate [1]_ - 1:85:23

restricted [1]_ - 1:9:18

restrictions [1]_ - 1:78:12

rests [1]_ - 1:35:20

result [1]_ - 1:7:2

resume [2]_ - 1:75:2_, 1:85:3

retain [6]_ - 1:37:21_, 1:65:8_, 1:86:18_, 1:112:11 _, 1:112:12_, 1:126:7

retained [1]_ - 1:11:15_, 1:47:12

retaining [1]_ - 1:45:25

retains [2]_ - 1:11:2_, 1:11:20

retention [13]_ - 1:11:6_, 1:19:19_, 1:20:17_, 1:20:22 _, 1:46:23_, 1:47:2_, 1:48:20 _, 1:60:1_, 1:60:11_, 1:73:25 _, 1:74:1_, 1:74:2_, 1:86:17

retrenchment [1]_ - 1:77:12

retrieve [1]_ - 1:12:11_, 1:14:17

retroactively [4]_ - 1:36:25_, 1:37:5_, 1:37:18_, 1:62:4

return [13]_ - 1:48:14_, 1:49:4_, 1:51:5_, 1:51:8_, 1:52:7_, 1:52:11_, 1:58:24_, 1:60:4_, 1:75:8_, 1:99:1_, 1:139:8_, 1:140:4

returned [8]_ - 1:11:16_, 1:48:12_, 1:48:13_, 1:51:13 _, 1:51:18_, 1:58:25_, 1:75:14_, 1:138:25

returning [1]_ - 1:51:20

reus [3]_ - 1:50:21_, 1:50:25_, 1:51:4

reveal [1]_ - 1:133:19

reversed [1]_ - 1:131:22

reversing [1]_ - 1:131:20

Review [1]_ - 1:16:18

review [22]_ - 1:32:12_, 1:68:25_, 1:74:13_, 1:89:7_, 1:97:7_, 1:97:9_, 1:98:1_, 1:98:4_, 1:98:6_, 1:101:24_, 1:102:2_, 1:102:8_, 1:107:14 _, 1:109:11_, 1:116:1_, 1:117:12_, 1:117:17_, 1:117:21_, 1:118:25_, 1:119:19_, 1:120:1_, 1:120:15

reviewability [1]_ - 1:116:24

reviewable [1]_ - 1:97:10

reviewed [7]_ - 1:5:21_, 1:6:2_, 1:97:15_, 1:101:21_, 1:101:22_, 1:118:8_, 1:137:3

reviewing [1]_ - 1:97:12

reviews [1]_ - 1:134:16

revocation [1]_ - 1:29:21

rewrite [2]_ - 1:17:8_, 1:82:18

rights [1]_ - 1:24:1

ring [1]_ - 1:111:16

rise [1]_ - 1:16:23

role [2]_ - 1:83:10_, 1:101:15

room [3]_ - 1:4:6_, 1:52:3_, 1:112:16

root [2]_ - 1:45:12_, 1:45:14

rooted [2]_ - 1:104:15_, 1:124:9

Rosen [11]_ - 1:12:17_, 1:12:22_, 1:13:2_, 1:15:24_, 1:15:25_, 1:16:3_, 1:50:19_, 1:54:9_, 1:64:14_, 1:77:17

routinely [1]_ - 1:49:7

rubrics [1]_ - 1:129:12

rule [8]_ - 1:42:8_, 1:42:11 _, 1:55:5_, 1:83:7_, 1:83:24_, 1:104:15_, 1:119:23_, 1:119:25

Rule [4]_ - 1:42:14_, 1:112:6_, 1:112:22_, 1:114:6

rulemaking [4]_ - 1:15:6_, 1:16:18_, 1:17:3_, 1:53:18

rules [7]_ - 1:3:24_, 1:18:17_, 1:18:20_, 1:90:6_, 1:92:7_, 1:102:10_, 1:126:20

ruling [4]_ - 1:25:19_, 1:91:25_, 1:107:13_, 1:140:25

rulings [1]_ - 1:25:20

run [2]_ - 1:21:11_, 1:53:25

running [1]_ - 1:20:6

runs [1]_ - 1:46:19

## S

safeguarded [1]_ - 1:56:5

sake [1]_ - 1:11:11

salient [1]_ - 1:15:1

Sasha [1]_ - 1:3:17

satisfied [2]_ - 1:48:3_, 1:52:12

satisfy [1]_ - 1:58:25

save [4]_ - 1:33:25_, 1:82:7_, 1:82:18_, 1:83:8

saves [1]_ - 1:83:5

saw [2]_ - 1:88:14_, 1:96:24

scenario [2]_ - 1:60:8_,

1:61:18

schedule [1]₋ - 1:131:22

Schulte [3]₋ - 1:10:9₋, 1:27:2₋, 1:77:15

SCI [1]₋ - 1:68:8

SCIF [1]₋ - 1:61:1

scope [3]₋ - 1:17:23₋, 1:76:23₋, 1:89:7

scrutiny [1]₋ - 1:22:23

SDNY [1]₋ - 1:77:15

search [3]₋ - 1:46:20₋, 1:84:20₋, 1:109:25

seated [3]₋ - 1:3:3₋, 1:4:1₋, 1:85:6

second [12]₋ - 1:4:12₋, 1:7:5₋, 1:9:16₋, 1:70:16₋, 1:114:21₋, 1:121:9₋, 1:122:11₋, 1:124:18₋, 1:125:5₋, 1:125:6₋, 1:125:15₋, 1:129:19

second-guess [1]₋ - 1:114:21

secrecy [2]₋ - 1:35:20₋, 1:54:17

secret [2]₋ - 1:43:9₋, 1:68:7

secretary [2]₋ - 1:62:14₋, 1:107:5

Secretary [3]₋ - 1:65:10₋, 1:80:23₋, 1:107:5

secrets [3]₋ - 1:30:1₋, 1:121:8₋, 1:133:12

section [2]₋ - 1:55:25₋, 1:80:13

Section [14]₋ - 1:6:20₋, 1:13:1₋, 1:16:19₋, 1:36:16₋, 1:40:24₋, 1:41:10₋, 1:44:2₋, 1:53:7₋, 1:55:20₋, 1:79:16₋, 1:123:9₋, 1:123:23₋, 1:123:24₋, 1:138:6

secure [6]₋ - 1:39:4₋, 1:39:22₋, 1:39:23₋, 1:40:6₋, 1:40:10₋, 1:40:22

security [9]₋ - 1:29:21₋, 1:32:9₋, 1:32:12₋, 1:32:14₋, 1:32:19₋, 1:32:24₋, 1:33:14₋, 1:56:3₋, 1:110:7

Security [4]₋ - 1:18:25₋, 1:23:22₋, 1:25:1₋, 1:73:3

See [1]₋ - 1:43:6

see [23]₋ - 1:5:12₋, 1:23:3₋, 1:43:2₋, 1:50:12₋, 1:53:16₋, 1:54:9₋, 1:55:12₋, 1:59:3₋, 1:63:25₋, 1:64:20₋, 1:65:20₋, 1:66:11₋, 1:67:17₋,

1:71:16₋, 1:93:17₋, 1:96:18₋, 1:100:4₋, 1:120:13₋, 1:124:11₋, 1:129:14₋, 1:130:18₋, 1:130:20₋, 1:139:6

seeing [1]₋ - 1:91:18

seeking [3]₋ - 1:91:24₋, 1:121:2₋, 1:121:5

seem [3]₋ - 1:75:18₋, 1:100:14₋, 1:106:3

sees [3]₋ - 1:52:23₋, 1:136:13₋, 1:139:7

segregability [1]₋ - 1:127:24

segregable [5]₋ - 1:44:6₋, 1:44:15₋, 1:45:6₋, 1:128:3₋, 1:128:4

seize [2]₋ - 1:91:2₋, 1:91:9

seized [1]₋ - 1:119:8

seizure [3]₋ - 1:91:4₋, 1:105:19₋, 1:105:21

selective [8]₋ - 1:14:23₋, 1:21:13₋, 1:67:13₋, 1:81:1₋, 1:95:8₋, 1:95:10₋, 1:106:21₋, 1:129:25

self [1]₋ - 1:118:14

self-contained [1]₋ - 1:118:14

Senate [1]₋ - 1:16:17

send [9]₋ - 1:84:16₋, 1:84:24₋, 1:91:12₋, 1:96:22₋, 1:136:22₋, 1:137:15₋, 1:138:19

sending [1]₋ - 1:136:17

senior [1]₋ - 1:55:25

sense [4]₋ - 1:14:22₋, 1:29:7₋, 1:50:5₋, 1:73:6

sensitive [5]₋ - 1:30:1₋, 1:31:22₋, 1:44:24₋, 1:112:7₋, 1:129:5

sensitivity [2]₋ - 1:41:6₋, 1:68:11

sent [5]₋ - 1:91:13₋, 1:100:2₋, 1:122:21₋, 1:137:2₋, 1:138:22

sentence [3]₋ - 1:38:3₋, 1:125:14₋, 1:130:12

separate [5]₋ - 1:67:14₋, 1:68:17₋, 1:103:17₋, 1:131:13₋, 1:135:12

separation [2]₋ - 1:77:23₋, 1:120:23

sequence [3]₋ - 1:81:7₋, 1:115:16

series [2]₋ - 1:27:1₋, 1:118:1

serious [1]₋ - 1:28:4

served [1]₋ - 1:55:23

server [1]₋ - 1:65:12

serves [1]₋ - 1:116:14

serving [1]₋ - 1:80:5

session [2]₋ - 1:85:8₋, 1:136:15

set [9]₋ - 1:4:6₋, 1:28:11₋, 1:70:1₋, 1:70:4₋, 1:85:3₋, 1:85:15₋, 1:115:1₋, 1:117:17₋, 1:134:9

setting [7]₋ - 1:12:21₋, 1:13:5₋, 1:17:18₋, 1:29:6₋, 1:31:20₋, 1:60:14

settings [1]₋ - 1:30:22

several [3]₋ - 1:65:4₋, 1:96:24₋, 1:125:22

shall [3]₋ - 1:123:20₋, 1:124:2₋, 1:137:2

sham [1]₋ - 1:105:14

shed [2]₋ - 1:108:10₋, 1:124:11

shield [1]₋ - 1:111:10

shift [1]₋ - 1:19:15

short [4]₋ - 1:95:10₋, 1:100:21₋, 1:111:13

show [2]₋ - 1:39:18₋, 1:43:10

shown [1]₋ - 1:39:15

shuts [1]₋ - 1:103:10

sic [1]₋ - 1:127:11

side [7]₋ - 1:87:20₋, 1:108:19₋, 1:113:4₋, 1:126:11₋, 1:127:7₋, 1:140:16

sided [1]₋ - 1:108:6

sides [3]₋ - 1:115:9₋, 1:115:14₋, 1:126:8

signed [5]₋ - 1:4:20₋, 1:4:22₋, 1:69:22₋, 1:78:14₋, 1:78:16

significance [9]₋ - 1:9:3₋, 1:9:8₋, 1:9:13₋, 1:10:3₋, 1:10:19₋, 1:30:3₋, 1:32:9₋, 1:33:7

significant [7]₋ - 1:10:17₋, 1:16:8₋, 1:25:23₋, 1:25:24₋, 1:27:7₋, 1:77:10₋, 1:77:13

silence [2]₋ - 1:126:9₋, 1:126:13

silent [1]₋ - 1:89:4

silliness [1]₋ - 1:133:19

similar [6]₋ - 1:18:22₋, 1:46:15₋, 1:61:23₋, 1:101:3₋, 1:108:4₋, 1:132:15

similarly [1]₋ - 1:86:24

simple [6]₋ - 1:28:9₋, 1:47:21₋, 1:49:9₋, 1:64:2₋, 1:102:13₋, 1:131:21

simply [6]₋ - 1:44:20₋, 1:79:5₋, 1:80:15₋, 1:92:24₋, 1:103:11₋, 1:137:1

sincere [1]₋ - 1:124:23

single [6]₋ - 1:78:16₋, 1:90:4₋, 1:99:25₋, 1:114:8₋, 1:130:13₋, 1:135:25

sitting [3]₋ - 1:24:10₋, 1:133:21₋, 1:135:21

situation [14]₋ - 1:12:9₋, 1:15:2₋, 1:18:17₋, 1:22:22₋, 1:32:23₋, 1:46:15₋, 1:51:25₋, 1:52:19₋, 1:52:20₋, 1:68:25₋, 1:74:8₋, 1:75:11₋, 1:80:23₋, 1:94:10

skeptical [1]₋ - 1:119:23

Skilling [2]₋ - 1:54:24₋, 1:83:25

skip [1]₋ - 1:11:7

Slater [6]₋ - 1:130:16₋, 1:130:24₋, 1:131:17₋, 1:131:20₋, 1:132:9₋, 1:134:1

slightly [3]₋ - 1:101:19₋, 1:101:23₋, 1:104:18

small [1]₋ - 1:123:15

sneaking [1]₋ - 1:133:13

so.. [1]₋ - 1:123:14

sock [1]₋ - 1:108:15

socks [6]₋ - 1:90:13₋, 1:94:14₋, 1:107:3₋, 1:108:1₋, 1:110:8₋, 1:110:16

sole [1]₋ - 1:140:4

solely [1]₋ - 1:88:8

someone [1]₋ - 1:75:11

sometimes [2]₋ - 1:49:9₋, 1:49:14

soon [2]₋ - 1:4:25₋, 1:113:25

SORNA [2]₋ - 1:104:9

sorry [6]₋ - 1:17:24₋, 1:90:9₋, 1:95:5₋, 1:100:15₋, 1:123:11₋, 1:125:14

sort [18]₋ - 1:28:25₋, 1:34:8₋, 1:42:19₋, 1:49:11₋, 1:49:13₋, 1:54:3₋, 1:60:7₋, 1:60:14₋, 1:66:12₋, 1:68:1₋,

1:69:16_, 1:69:23_, 1:76:22_, 1:80:21_, 1:97:9_, 1:109:6_, 1:111:11_, 1:127:23

**sorts** [2]_ - 1:112:13_, 1:129:12

**sought** [6]_ - 1:5:5_, 1:5:7_, 1:36:18_, 1:36:21_, 1:37:1

**source** [2]_ - 1:59:15_, 1:75:24

**sourced** [1]_ - 1:36:2

**space** [1]_ - 1:130:18

**speaking** [1]_ - 1:42:22

**speaks** [12]_ - 1:7:5_, 1:10:10_, 1:10:12_, 1:23:25_, 1:32:10_, 1:34:18_, 1:38:23_, 1:40:22_, 1:75:22_, 1:78:5_, 1:81:21_, 1:101:25

**special** [3]_ - 1:68:8_, 1:133:7_, 1:134:15

**Special** [36]_ - 1:3:8_, 1:5:22_, 1:6:1_, 1:8:10_, 1:8:18_, 1:10:10_, 1:14:4_, 1:15:15_, 1:16:8_, 1:18:25_, 1:22:7_, 1:23:16_, 1:30:17_, 1:33:13_, 1:33:17_, 1:34:24_, 1:38:6_, 1:38:17_, 1:38:20_, 1:96:11_, 1:97:2_, 1:103:15_, 1:104:25_, 1:109:8_, 1:109:15_, 1:109:22_, 1:132:22_, 1:132:24_, 1:134:25_, 1:135:15_, 1:136:10_, 1:136:14_, 1:140:18

**specific** [8]_ - 1:12:7_, 1:25:18_, 1:27:14_, 1:34:14_, 1:41:21_, 1:50:3_, 1:79:19_, 1:117:21

**specifically** [2]_ - 1:12:4_, 1:36:19

**specified** [1]_ - 1:36:16

**spend** [2]_ - 1:50:16_, 1:130:18

**spent** [1]_ - 1:54:25

**sphere** [1]_ - 1:32:3

**spoken** [2]_ - 1:14:4_, 1:32:1

**spokesman** [1]_ - 1:100:8

**squarely** [1]_ - 1:118:9

**stack** [1]_ - 1:64:23

**staff** [1]_ - 1:44:7

**staff's** [1]_ - 1:42:22

**staffer** [1]_ - 1:133:12

**STAFFER** [3]_ - 1:43:2_,

1:43:5_, 1:43:8

**staffers** [1]_ - 1:116:15

**stage** [5]_ - 1:49:24_, 1:100:23_, 1:112:6_, 1:113:1_, 1:114:6

**stand** [4]_ - 1:38:14_, 1:84:14_, 1:84:23_, 1:84:25

**standard** [10]_ - 1:23:16_, 1:33:19_, 1:49:6_, 1:49:8_, 1:49:16_, 1:64:1_, 1:64:5_, 1:75:9_, 1:105:5_, 1:131:16

**standardless** [4]_ - 1:34:2_, 1:55:7_, 1:55:10_, 1:78:4

**standards** [4]_ - 1:18:5_, 1:34:10_, 1:55:11_, 1:57:1

**standing** [4]_ - 1:57:20_, 1:73:7_, 1:76:20_, 1:80:9

**stands** [1]_ - 1:6:22

**Stanley** [1]_ - 1:3:16

**start** [5]_ - 1:25:19_, 1:41:20_, 1:78:11_, 1:86:14_, 1:111:24

**started** [3]_ - 1:22:23_, 1:58:21_, 1:109:13

**starting** [4]_ - 1:3:7_, 1:6:6_, 1:42:24_, 1:71:4

**starts** [2]_ - 1:46:18_, 1:48:21

**State** [2]_ - 1:65:10_, 1:80:23

**state** [8]_ - 1:35:13_, 1:40:16_, 1:87:11_, 1:87:13_, 1:87:22_, 1:131:18_, 1:131:24_, 1:132:5

**statement** [5]_ - 1:29:20_, 1:29:22_, 1:37:19_, 1:75:21_, 1:76:19

**statements** [1]_ - 1:42:9

**States** [13]_ - 1:3:5_, 1:3:10_, 1:8:8_, 1:11:4_, 1:11:25_, 1:12:11_, 1:26:3_, 1:32:5_, 1:96:10_, 1:99:25_, 1:108:23_, 1:133:9_, 1:133:15

**states** [2]_ - 1:48:5_, 1:92:24

**status** [3]_ - 1:28:20_, 1:39:2_, 1:41:5

**statute** [63]_ - 1:7:1_, 1:9:20_, 1:11:8_, 1:12:20_, 1:15:4_, 1:17:9_, 1:17:10_, 1:17:20_, 1:17:23_, 1:18:22_, 1:19:12_, 1:21:19_, 1:23:11_, 1:23:14_, 1:24:5_,

1:25:6_, 1:25:14_, 1:26:10_, 1:27:4_, 1:29:9_, 1:29:12_, 1:29:13_, 1:31:13_, 1:32:25_, 1:34:1_, 1:35:24_, 1:53:1_, 1:53:17_, 1:54:10_, 1:54:20_, 1:54:23_, 1:55:4_, 1:58:25_, 1:61:8_, 1:61:16_, 1:61:24_, 1:66:18_, 1:75:12_, 1:76:23_, 1:77:2_, 1:77:9_, 1:78:1_, 1:79:23_, 1:81:8_, 1:81:9_, 1:81:23_, 1:83:9_, 1:83:17_, 1:84:1_, 1:84:7_, 1:86:16_, 1:87:20_, 1:88:19_, 1:88:21_, 1:92:5_, 1:92:8_, 1:93:2_, 1:97:23_, 1:103:21_, 1:109:17_, 1:127:16_, 1:137:12_, 1:137:13

**statutes** [4]_ - 1:16:4_, 1:68:17_, 1:82:18_, 1:138:2

**statutory** [9]_ - 1:10:21_, 1:26:15_, 1:35:23_, 1:44:11_, 1:44:17_, 1:58:19_, 1:61:7_, 1:61:14_, 1:61:18

**stay** [2]_ - 1:4:1_, 1:9:1

**stem** [1]_ - 1:59:14

**step** [4]_ - 1:77:3_, 1:82:2_, 1:88:6_, 1:135:16

**steps** [3]_ - 1:25:3_, 1:56:3_, 1:108:25

**still** [14]_ - 1:8:23_, 1:34:12_, 1:43:9_, 1:62:25_, 1:76:8_, 1:78:25_, 1:83:19_, 1:89:20_, 1:89:25_, 1:98:16_, 1:106:24_, 1:133:22

**stood** [2]_ - 1:90:18_, 1:115:17

**stop** [2]_ - 1:46:22_, 1:115:22

**stops** [1]_ - 1:46:24

**storage** [1]_ - 1:52:3

**stretch** [1]_ - 1:90:5_, 1:90:6

**stricken** [1]_ - 1:10:24

**strictly** [1]_ - 1:40:11

**strictness** [1]_ - 1:28:8

**strike** [2]_ - 1:17:10_, 1:77:9

**string** [2]_ - 1:25:17_, 1:27:1

**strongly** [4]_ - 1:76:24_, 1:105:17_, 1:117:16_, 1:117:20

**struck** [3]_ - 1:6:24_, 1:48:20_, 1:82:15

**structure** [1]_ - 1:135:9

**structuring** [2]_ - 1:64:8

**stuck** [2]_ - 1:29:24_, 1:32:20

**stuff** [1]_ - 1:112:9

**stuffing** [1]_ - 1:133:12

**Sub** [1]_ - 1:55:23

**subject** [10]_ - 1:15:11_, 1:41:12_, 1:45:1_, 1:62:23_, 1:63:18_, 1:64:9_, 1:68:21_, 1:74:22_, 1:102:9_, 1:126:10

**subjective** [1]_ - 1:21:21

**submit** [2]_ - 1:32:21_, 1:40:4

**submitted** [1]_ - 1:48:16

**subpoena** [3]_ - 1:22:3_, 1:48:16_, 1:139:1

**Subsection** [3]_ - 1:17:22_, 1:56:19_, 1:111:9

**subsection** [1]_ - 1:17:24

**subset** [1]_ - 1:50:23

**substance** [1]_ - 1:131:3

**substantially** [1]_ - 1:116:2

**suddenly** [1]_ - 1:36:24

**sued** [1]_ - 1:115:22

**suffice** [3]_ - 1:114:18_, 1:123:16_, 1:132:10

**sufficiency** [2]_ - 1:17:18_, 1:70:17

**sufficient** [3]_ - 1:28:2_, 1:58:9_, 1:70:18

**sufficiently** [3]_ - 1:27:5_, 1:34:14_, 1:132:4

**suggest** [6]_ - 1:106:7_, 1:106:13_, 1:122:14_, 1:129:12_, 1:132:16_, 1:133:16

**suggested** [1]_ - 1:134:25

**suggesting** [2]_ - 1:104:12_, 1:113:18

**suggestion** [2]_ - 1:67:8_, 1:111:24

**suggests** [4]_ - 1:104:5_, 1:117:16_, 1:117:20_, 1:123:5

**summarizes** [1]_ - 1:14:13

**summarizing** [1]_ - 1:129:4

**summer** [3]_ - 1:42:21_, 1:62:18_, 1:95:22

**superseding** [15]_ - 1:7:12_, 1:7:18_, 1:8:6_,

1:8:15_, 1:8:20_, 1:13:11_, 1:19:16_, 1:22:4_, 1:29:18_, 1:40:25_, 1:42:18_, 1:65:16 _, 1:68:3_, 1:112:24

support [6]_ - 1:20:11_, 1:32:11_, 1:33:11_, 1:35:12 _, 1:76:24_, 1:93:20

supporting [1]_ - 1:45:19

supportive [1]_ - 1:13:21

supports [3]_ - 1:21:18_, 1:35:6_, 1:98:10

suppose [1]_ - 1:129:6

supposed [3]_ - 1:97:21_, 1:97:22_, 1:140:2

Supreme [6]_ - 1:16:25_, 1:18:15_, 1:25:19_, 1:25:23 _, 1:26:16_, 1:55:2

surely [1]_ - 1:120:12

surprising [1]_ - 1:103:25

surrounding [1]_ - 1:9:20

surveyed [1]_ - 1:28:11

survive [2]_ - 1:37:14_, 1:84:8

susceptible [1]_ - 1:57:5

suspected [1]_ - 1:105:2

suspend [1]_ - 1:52:25

suspended [2]_ - 1:29:1_, 1:52:20

suspending [1]_ - 1:37:5

suspension [1]_ - 1:29:7

suspensions [1]_ - 1:34:19

suspicion [2]_ - 1:105:12 _, 1:105:13

system [3]_ - 1:115:2_, 1:115:21_, 1:131:14

---

**T**

table [5]_ - 1:3:13_, 1:4:5_, 1:39:2_, 1:130:3_, 1:135:21

taint [1]_ - 1:103:9

tainted [1]_ - 1:103:12

talks [8]_ - 1:64:14_, 1:66:8 _, 1:89:1_, 1:89:17_, 1:92:4_, 1:94:6_, 1:99:3_, 1:137:25

tape [1]_ - 1:94:14

Tapes [5]_ - 1:21:16_, 1:74:10_, 1:98:24_, 1:128:17 _, 1:128:23

tapes [11]_ - 1:13:20_, 1:14:1_, 1:14:5_, 1:14:13_, 1:91:1_, 1:91:10_, 1:108:1_,

1:108:10_, 1:108:12_, 1:109:1_, 1:129:1

target [1]_ - 1:101:7

task [1]_ - 1:130:9

tax [1]_ - 1:64:7

Taylor [2]_ - 1:14:6_, 1:74:14

team [2]_ - 1:84:13_, 1:84:19

team's [1]_ - 1:23:5

technically [2]_ - 1:63:11 _, 1:111:4

tendering [1]_ - 1:99:13

tension [8]_ - 1:48:7_, 1:83:24_, 1:93:24_, 1:98:19 _, 1:126:23_, 1:127:3_, 1:138:2_, 1:138:3

term [20]_ - 1:24:22_, 1:34:2_, 1:34:3_, 1:44:4_, 1:44:14_, 1:45:6_, 1:49:9_, 1:52:24_, 1:52:25_, 1:57:12 _, 1:60:19_, 1:61:6_, 1:61:19 _, 1:64:13_, 1:70:7_, 1:75:22 _, 1:76:23_, 1:116:5_, 1:124:13_, 1:133:10

terminate [1]_ - 1:36:25

terminated [1]_ - 1:29:1

termination [1]_ - 1:34:19

terms [23]_ - 1:21:23_, 1:22:10_, 1:24:20_, 1:25:8_, 1:26:5_, 1:27:17_, 1:27:22_, 1:30:10_, 1:30:23_, 1:53:10 _, 1:57:10_, 1:58:2_, 1:58:3_, 1:58:4_, 1:59:13_, 1:71:6_, 1:71:14_, 1:75:12_, 1:79:11 _, 1:79:22_, 1:91:6_, 1:109:10_, 1:116:6

territory [1]_ - 1:129:5

test [2]_ - 1:131:6_, 1:131:10

testify [1]_ - 1:66:16

testimony [1]_ - 1:69:3

text [14]_ - 1:10:21_, 1:10:24_, 1:14:12_, 1:26:15 _, 1:26:16_, 1:35:23_, 1:44:19_, 1:58:19_, 1:70:9_, 1:71:5_, 1:81:23_, 1:88:18_, 1:116:16_, 1:116:17

textual [1]_ - 1:11:9

THE [278]_ - 1:3:2_, 1:3:11 _, 1:3:15_, 1:3:19_, 1:3:22_, 1:4:18_, 1:4:24_, 1:5:9_, 1:5:15_, 1:5:20_, 1:6:16_, 1:7:10_, 1:7:15_, 1:8:14_, 1:8:20_, 1:9:15_, 1:9:22_,

1:10:8_, 1:10:21_, 1:11:18_, 1:11:24_, 1:12:15_, 1:13:9_, 1:13:25_, 1:15:9_, 1:15:19_, 1:17:13_, 1:17:21_, 1:17:25 _, 1:19:15_, 1:20:12_, 1:20:24_, 1:21:2_, 1:21:9_, 1:21:23_, 1:23:8_, 1:23:13_, 1:24:7_, 1:24:16_, 1:25:8_, 1:25:16_, 1:26:5_, 1:26:14_, 1:26:19_, 1:27:8_, 1:28:6_, 1:28:18_, 1:28:24_, 1:29:6_, 1:29:13_, 1:29:16_, 1:30:9_, 1:30:16_, 1:31:14_, 1:33:1_, 1:33:13_, 1:33:21_, 1:34:18 _, 1:34:22_, 1:35:9_, 1:35:19 _, 1:36:15_, 1:37:3_, 1:37:25 _, 1:38:5_, 1:38:11_, 1:38:16 _, 1:38:22_, 1:39:21_, 1:40:6 _, 1:40:21_, 1:40:25_, 1:41:14_, 1:41:19_, 1:42:3_, 1:43:8_, 1:45:7_, 1:45:22_, 1:46:7_, 1:46:9_, 1:46:16_, 1:46:25_, 1:47:4_, 1:47:21_, 1:48:7_, 1:48:18_, 1:49:12_, 1:49:19_, 1:50:7_, 1:50:12_, 1:51:8_, 1:51:10_, 1:51:12_, 1:51:17_, 1:51:21_, 1:51:23 _, 1:52:14_, 1:53:1_, 1:53:16 _, 1:53:21_, 1:53:24_, 1:55:14_, 1:55:6_, 1:55:11_, 1:55:18_, 1:56:12_, 1:56:17 _, 1:56:23, 1:57:7_, 1:57:15, 1:57:21_, 1:57:25_, 1:58:11 _, 1:58:19_, 1:59:3_, 1:59:7_, 1:59:11_, 1:59:13_, 1:59:18 _, 1:59:25_, 1:60:6_, 1:60:17 _, 1:61:3_, 1:61:9_, 1:62:1_, 1:62:19_, 1:62:24_, 1:63:9_, 1:63:19_, 1:63:25_, 1:64:10 _, 1:64:18_, 1:65:1_, 1:65:6_, 1:65:13_, 1:65:17_, 1:65:24 _, 1:66:4_, 1:66:8_, 1:66:19_, 1:66:25_, 1:67:5_, 1:67:8_, 1:67:17_, 1:67:23_, 1:68:11 _, 1:68:13_, 1:68:20_, 1:69:5 _, 1:69:18_, 1:69:20_, 1:69:25_, 1:70:9_, 1:70:20_, 1:70:25_, 1:71:7_, 1:71:16_, 1:71:20_, 1:72:4_, 1:72:14_, 1:72:16_, 1:72:22_, 1:73:1_, 1:73:8_, 1:73:11_, 1:73:17_, 1:73:24_, 1:74:3_, 1:74:16_, 1:74:20_, 1:74:24_, 1:76:11 _, 1:76:16_, 1:77:1_, 1:78:3_, 1:78:18_, 1:79:2_, 1:79:5_, 1:79:9_, 1:80:4_, 1:81:3_, 1:81:14_, 1:82:12_, 1:82:20 _, 1:83:6_, 1:83:19_, 1:85:1_, 1:85:6, 1:85:17_, 1:85:20_, 1:86:4_, 1:86:7_, 1:86:9_, 1:87:1_, 1:87:14_, 1:87:24_,

1:89:11_, 1:90:16_, 1:91:16 _, 1:93:1_, 1:93:14_, 1:95:1_, 1:95:4_, 1:95:6_, 1:97:1_, 1:98:14_, 1:99:7_, 1:99:10_, 1:99:12_, 1:99:16_, 1:100:13 _, 1:101:17_, 1:102:2_, 1:102:21_, 1:103:6_, 1:104:7 _, 1:104:13_, 1:104:24_, 1:105:20_, 1:106:2_, 1:107:12_, 1:108:8_, 1:108:16_, 1:108:24_, 1:109:3_, 1:109:8_, 1:110:19 _, 1:110:24_, 1:111:3_, 1:111:6_, 1:111:18_, 1:111:22_, 1:113:16_, 1:114:19_, 1:114:24_, 1:115:7_, 1:116:7_, 1:117:10 _, 1:118:3_, 1:118:5_, 1:118:17_, 1:118:21_, 1:119:6_, 1:119:25_, 1:120:13_, 1:122:5_, 1:123:13_, 1:124:8_, 1:125:1 _, 1:125:10_, 1:125:13_, 1:125:21_, 1:125:24_, 1:127:19_, 1:128:16_, 1:128:25_, 1:130:6_, 1:130:21_, 1:131:1_, 1:131:3 _, 1:131:5_, 1:133:20_, 1:134:4_, 1:134:9_, 1:135:20 _, 1:136:6_, 1:136:20_, 1:138:8_, 1:138:24_, 1:139:18_, 1:139:21_, 1:139:25_, 1:140:6_, 1:140:9 _, 1:140:12_, 1:140:15_, 1:140:17_, 1:140:21

themselves [3]_ - 1:24:4 _, 1:96:13_, 1:116:16

theory [15]_ - 1:19:20_, 1:20:24_, 1:21:7_, 1:21:9_, 1:21:18_, 1:21:25_, 1:22:7_, 1:22:19_, 1:24:13_, 1:33:12 _, 1:40:14_, 1:47:2_, 1:47:5_, 1:81:25

thereafter [1]_ - 1:110:14

thereby [1]_ - 1:121:17

therefore [6]_ - 1:20:16_, 1:48:1_, 1:55:8_, 1:92:2_, 1:112:12_, 1:125:3

thereof [2]_ - 1:44:6_, 1:44:15

they've [3]_ - 1:31:25_, 1:84:21_, 1:132:16

thinking [1]_ - 1:90:25

Third [1]_ - 1:72:10

third [5]_ - 1:7:7_, 1:71:14 _, 1:78:25_, 1:79:14_, 1:129:23

three [20]_ - 1:6:20_,

1:6:23_, 1:15:3_, 1:19:22_,
1:30:23_, 1:31:15_, 1:35:11
_, 1:40:7_, 1:40:11_, 1:42:8_,
1:42:9_, 1:46:21_, 1:73:12_,
1:78:12_, 1:83:23_, 1:111:24
_, 1:112:3_, 1:112:14_,
1:125:6_, 1:129:14

threshold [3]_ - 1:83:1_,
1:112:3_, 1:112:4

thwart [1]_ - 1:121:17

tie [1]_ - 1:84:13

tied [1]_ - 1:36:3

timely [1]_ - 1:75:8

timing [2]_ - 1:8:18_,
1:22:4

titled [1]_ - 1:55:16

today [12]_ - 1:5:14_,
1:5:18_, 1:63:15_, 1:73:7_,
1:81:12_, 1:85:3_, 1:86:5_,
1:112:16_, 1:120:6_, 1:126:1
_, 1:130:3_, 1:133:5

today's [1]_ - 1:4:9

Todd [1]_ - 1:3:12

together [5]_ - 1:24:14_,
1:32:3_, 1:57:19_, 1:70:2_,
1:70:7

tomorrow [1]_ - 1:5:10

took [18]_ - 1:22:9_, 1:48:1
_, 1:49:17_, 1:91:8_, 1:98:8_,
1:102:14_, 1:102:19_,
1:104:3_, 1:105:17_, 1:112:6
_, 1:112:9_, 1:113:8_,
1:113:9_, 1:119:17_, 1:130:9
_, 1:131:12_, 1:132:15_,
1:132:18

top [2]_ - 1:34:21_, 1:68:7

topic [1]_ - 1:38:25

totally [2]_ - 1:114:9_,
1:126:11

touch [3]_ - 1:43:16_,
1:88:12_, 1:136:16

touches [2]_ - 1:39:3_,
1:40:24

toward [1]_ - 1:42:19

towards [1]_ - 1:65:6

Tower [1]_ - 1:76:15

trace [1]_ - 1:25:22

tracks [1]_ - 1:58:14

traditional [1]_ - 1:91:6

training [2]_ - 1:10:12_,
1:39:13

transaction [1]_ - 1:28:25

transcript [3]_ - 1:114:9_,
1:133:6_, 1:134:16

transfer [1]_ - 1:51:16

transferred [1]_ - 1:96:24

transferring [1]_ - 1:96:16

transmission [1]_ -
1:50:20

transmit [1]_ - 1:50:22

transmittal [3]_ - 1:11:7_,
1:26:15_, 1:81:15

transmitted [1]_ - 1:30:11

transmitting [1]_ - 1:4:7

transport [1]_ - 1:9:9

transportation [1]_ -
1:9:12

transported [1]_ - 1:89:19

treat [4]_ - 1:78:9_, 1:83:12
_, 1:84:18_, 1:114:11

treated [1]_ - 1:76:3

treaties [1]_ - 1:32:17

treatment [1]_ - 1:37:22

trial [10]_ - 1:28:12_, 1:36:4
_, 1:37:15_, 1:39:12_, 1:76:7
_, 1:88:1_, 1:93:15_, 1:96:6_,
1:100:21_, 1:124:17

tricky [2]_ - 1:9:25_, 1:10:2

trigger [1]_ - 1:122:22

triggered [1]_ - 1:22:2

trio [3]_ - 1:116:6_,
1:116:21

trouble [1]_ - 1:4:5

true [12]_ - 1:9:11_, 1:84:23
_, 1:95:20_, 1:98:3_,
1:105:10_, 1:111:16_,
1:113:1_, 1:119:3_, 1:119:14
_, 1:122:3_, 1:125:23_,
1:134:18

truly [1]_ - 1:34:11

Trump [68]_ - 1:3:6_,
1:3:14_, 1:4:12_, 1:4:14_,
1:5:5_, 1:6:23_, 1:7:2_, 1:7:6
_, 1:8:4_, 1:8:7_, 1:9:5_,
1:14:20_, 1:15:5_, 1:17:7_,
1:22:8_, 1:22:15_, 1:23:12_,
1:29:20_, 1:29:22_, 1:30:7_,
1:39:6_, 1:39:19_, 1:75:8_,
1:76:14_, 1:76:15_, 1:76:19
_, 1:78:14_, 1:78:17_,
1:78:24_, 1:79:4_, 1:79:12_,
1:80:9_, 1:80:22_, 1:86:16_,
1:86:18_, 1:89:19_, 1:90:10
_, 1:95:13_, 1:95:17_, 1:96:6
_, 1:96:16_, 1:96:19_, 1:98:8
_, 1:100:1_, 1:100:20_,
1:101:5_, 1:102:14_, 1:104:2
_, 1:104:20_, 1:106:9_,

1:106:16_, 1:107:2_, 1:107:8
_, 1:109:22_, 1:112:4_,
1:113:8_, 1:116:12_,
1:116:15_, 1:120:6_,
1:122:21_, 1:133:5_,
1:134:19_, 1:136:4_,
1:136:18_, 1:137:22_,
1:140:3

TRUMP [3]_ - 1:42:25_,
1:43:4_, 1:43:6

Trump's [15]_ - 1:7:3_,
1:7:8_, 1:29:20_, 1:34:15_,
1:39:4_, 1:39:13_, 1:40:16_,
1:75:11_, 1:75:21_, 1:76:2_,
1:87:20_, 1:103:22_,
1:104:21_, 1:114:15_,
1:124:24

trumping [1]_ - 1:126:23

trumps [1]_ - 1:95:20

try [9]_ - 1:9:25_, 1:43:3_,
1:83:13_, 1:115:22_, 1:120:9
_, 1:135:10_, 1:137:9_,
1:137:11

trying [12]_ - 1:17:12_,
1:24:2_, 1:32:11_, 1:45:10_,
1:45:14_, 1:53:24_, 1:57:1_,
1:65:19_, 1:66:11_, 1:69:7_,
1:107:23_, 1:124:22

turn [7]_ - 1:6:10_, 1:41:15
_, 1:41:21_, 1:45:9_, 1:63:25
_, 1:65:17_, 1:75:18

turned [1]_ - 1:52:1

turns [1]_ - 1:35:17

two [26]_ - 1:4:9_, 1:5:2_,
1:8:3_, 1:16:14_, 1:20:18_,
1:26:24_, 1:27:10_, 1:28:14
_, 1:31:16_, 1:39:3_, 1:39:8_,
1:40:2_, 1:53:19_, 1:63:6_,
1:63:7_, 1:70:13_, 1:95:18_,
1:115:6_, 1:115:21_,
1:117:25_, 1:127:3_, 1:131:6
_, 1:131:10_, 1:131:13

two-part [2]_ - 1:131:6_,
1:131:10

type [8]_ - 1:11:12_,
1:26:21_, 1:30:7_, 1:37:13_,
1:54:6_, 1:60:8_, 1:61:23_,
1:79:22

types [3]_ - 1:31:22_,
1:102:7_, 1:108:3

typically [1]_ - 1:31:23

U

U.S [2]_ - 1:11:21_, 1:88:9

U.S.C [2]_ - 1:44:2_,
1:45:2

ultimately [3]_ - 1:92:3_,
1:107:14_, 1:137:17

unauthorized [37]_ -
1:11:2_, 1:11:13_, 1:11:19_,
1:19:9_, 1:20:22_, 1:21:3_,
1:21:24_, 1:21:25_, 1:23:9_,
1:31:20_, 1:33:3_, 1:41:3_,
1:48:1_, 1:56:4_, 1:57:17_,
1:58:13_, 1:59:7_, 1:61:6_,
1:61:14_, 1:61:19_, 1:61:24
_, 1:70:23_, 1:71:3_, 1:73:22
_, 1:86:17_, 1:89:17_,
1:91:22_, 1:92:23_, 1:93:2_,
1:93:11_, 1:123:20_,
1:124:13_, 1:125:4_, 1:133:1
_, 1:136:1_, 1:136:7

uncertainty [1]_ -
1:133:23

unconstitutional [3]_ -
1:4:11_, 1:6:19_, 1:83:9

unconstitutionally [8]_ -
1:12:13_, 1:15:4_, 1:23:11_,
1:25:10_, 1:25:12_, 1:34:1_,
1:35:14_, 1:77:2

uncontested [5]_ -
1:13:25_, 1:30:16_, 1:45:22
_, 1:113:6_, 1:113:14

under [57]_ - 1:9:4_,
1:12:19_, 1:13:6_, 1:13:14_,
1:16:17_, 1:17:4_, 1:18:15_,
1:19:4_, 1:32:18_, 1:39:11_,
1:39:17_, 1:40:5_, 1:40:8_,
1:40:17_, 1:47:2_, 1:49:23_,
1:51:19_, 1:55:24_, 1:56:15
_, 1:56:18_, 1:56:24_,
1:58:16_, 1:60:4_, 1:60:23_,
1:66:21_, 1:76:23_, 1:82:15
_, 1:82:23_, 1:83:11_, 1:84:7
_, 1:84:17_, 1:94:1_, 1:96:15
_, 1:101:3_, 1:103:2_,
1:103:4_, 1:105:5_, 1:105:11
_, 1:109:18_, 1:110:11_,
1:111:9_, 1:112:19_,
1:120:12_, 1:125:8_,
1:125:18_, 1:127:15_,
1:129:11_, 1:131:12_,
1:135:2_, 1:136:2_, 1:137:22
_, 1:138:4_, 1:138:5_,
1:140:24

underlying [1]_ - 1:104:10

undermine [2]_ - 1:43:21
_, 1:45:19

underpinning [1]_ -
1:120:17

understandably [1]_ -
1:120:16

understood [4]_ - 1:20:10
_, 1:30:6_, 1:41:8_, 1:78:20

undisputed [1]– - 1:47:7

unequivocal [1]– - 1:107:7

unfettered [3]– - 1:69:12 –, 1:91:21–, 1:97:6

unfounded [1]– - 1:91:5

unique [3]– - 1:53:11–, 1:58:16–, 1:135:12

unit [1]– - 1:44:7

United [13]– - 1:3:5–, 1:3:10–, 1:8:8–, 1:11:4–, 1:11:25–, 1:12:11–, 1:26:3–, 1:32:5–, 1:96:10–, 1:99:25–, 1:108:23–, 1:133:9–, 1:133:15

universe [1]– - 1:62:22

unlawful [8]– - 1:19:19–, 1:20:17–, 1:31:12–, 1:47:1–, 1:60:2–, 1:60:3–, 1:60:12–, 1:103:4

unless [7]– - 1:3:3–, 1:4:2 –, 1:33:23–, 1:34:22–, 1:107:7–, 1:107:8–, 1:134:7

unlike [2]– - 1:60:3–, 1:77:14

unquestionably [1]– - 1:21:12

unrelated [1]– - 1:114:9

unreviewable [3]– - 1:68:24–, 1:97:3–, 1:106:5

unspeakable [1]– - 1:14:18

unsuccessful [1]– - 1:42:1

unsurprisingly [1]– - 1:122:9

untouched [1]– - 1:110:15

up [31]– - 1:4:6–, 1:6:6–, 1:14:6–, 1:22:25–, 1:25:2–, 1:36:3–, 1:36:24–, 1:38:14–, 1:53:12–, 1:54:1–, 1:55:15–, 1:56:17–, 1:58:8–, 1:64:24–, 1:76:1–, 1:77:25–, 1:81:8–, 1:82:5–, 1:83:25–, 1:84:14–, 1:85:21–, 1:90:18–, 1:91:1–, 1:101:10–, 1:108:24–, 1:110:13–, 1:111:25–, 1:115:1–, 1:122:15–, 1:134:11–, 1:135:3

upheld [1]– - 1:54:10

ups [1]– - 1:112:1

upset [1]– - 1:116:3

uses [2]– - 1:79:24–, 1:122:1

usual [2]– - 1:4:6–, 1:75:1

uttered [1]– - 1:113:10

utterly [1]– - 1:129:21

V

vague [12]– - 1:15:6–, 1:23:11–, 1:25:10–, 1:25:12 –, 1:34:1–, 1:34:2–, 1:35:14 –, 1:42:10–, 1:57:10–, 1:68:10 –, 1:77:2–, 1:83:3

vagueness [36]– - 1:4:11 –, 1:6:6–, 1:6:11–, 1:6:19–, 1:10:5–, 1:14:25–, 1:17:17–, 1:17:20–, 1:18:21–, 1:25:18 –, 1:26:22–, 1:27:21–, 1:28:3 –, 1:28:13–, 1:28:15–, 1:35:25–, 1:43:17–, 1:45:9–, 1:45:13–, 1:54:13–, 1:57:13 –, 1:57:25–, 1:64:21–, 1:66:18–, 1:71:1–, 1:74:4–, 1:75:16–, 1:80:18–, 1:81:5–, 1:81:20–, 1:81:25–, 1:82:17 –, 1:85:18–, 1:85:25–, 1:86:23–, 1:129:15

value [1]– - 1:134:17

Van [1]– - 1:61:10

vanishes [1]– - 1:59:18

verge [1]– - 1:129:5

versus [4]– - 1:104:22–, 1:118:25–, 1:120:6–, 1:133:22

vetting [1]– - 1:62:15

via [2]– - 1:51:20–, 1:121:15

viable [2]– - 1:22:18–, 1:83:2

vice [16]– - 1:22:16–, 1:22:24–, 1:45:23–, 1:55:23 –, 1:65:7–, 1:65:25–, 1:66:5–, 1:69:8–, 1:88:9–, 1:89:9–, 1:92:9–, 1:107:4–, 1:110:10 –, 1:121:21–, 1:136:12–, 1:137:20

Vice [5]– - 1:22:23–, 1:46:5 –, 1:47:18–, 1:100:15–, 1:110:10

view [25]– - 1:40:18–, 1:55:6–, 1:58:13–, 1:60:25–, 1:64:21–, 1:72:22–, 1:72:23 –, 1:73:1–, 1:80:25–, 1:82:4–, 1:82:7–, 1:95:14–, 1:95:25–, 1:102:19–, 1:106:4–, 1:107:22–, 1:114:15–, 1:122:5–, 1:124:14–, 1:128:16–, 1:128:19–, 1:132:23–, 1:132:25–,

1:138:11

viewed [1]– - 1:42:16

viewing [1]– - 1:103:1

vindictive [5]– - 1:67:13–, 1:95:8–, 1:95:10–, 1:106:22 –, 1:130:1

violate [2]– - 1:27:14–, 1:39:19

violated [1]– - 1:31:13

violating [1]– - 1:50:4

violation [7]– - 1:31:6–, 1:50:8–, 1:69:4–, 1:94:22–, 1:105:12–, 1:123:25

violations [2]– - 1:105:3–, 1:109:16

violence [1]– - 1:44:19

virtue [2]– - 1:79:5–, 1:119:12

vis-á-vis [1]– - 1:53:8

void [2]– - 1:66:18–, 1:83:4

voluntarily [1]– - 1:27:13–, 1:139:16

vs [7]– - 1:3:5–, 1:18:16–, 1:32:5–, 1:115:11–, 1:116:12 –, 1:121:11–, 1:121:19

W

wait [3]– - 1:79:2–, 1:95:22 –, 1:118:3

waiting [1]– - 1:5:11

waived [2]– - 1:55:22–, 1:56:15

waiver [2]– - 1:24:9–, 1:78:5

waivers [1]– - 1:55:24

walk [4]– - 1:55:11–, 1:63:1 –, 1:70:1–, 1:103:6

Waltine [1]– - 1:3:6

wants [2]– - 1:88:19–, 1:91:15

war [4]– - 1:32:16–, 1:108:7 –, 1:108:21–, 1:108:23

ward [1]– - 1:34:14

warrant [1]– - 1:89:12

warranted [3]– - 1:77:13–, 1:103:2–, 1:107:20

warrants [1]– - 1:82:23

Washington [1]– - 1:88:7

Watch [32]– - 1:8:12–, 1:9:14–, 1:13:16–, 1:14:15–, 1:21:16–, 1:31:8–, 1:74:7–, 1:89:6–, 1:90:12–, 1:91:4–,

1:91:18–, 1:101:25–, 1:105:19–, 1:106:8–, 1:107:13–, 1:107:20–, 1:107:23–, 1:108:9–, 1:108:25–, 1:110:5–, 1:110:16–, 1:113:21–, 1:114:20–, 1:115:1–, 1:115:5 –, 1:115:10–, 1:118:2–, 1:119:21–, 1:119:23–, 1:120:9–, 1:136:21–, 1:139:24

Watch's [1]– - 1:106:4

ways [4]– - 1:51:6–, 1:58:18–, 1:101:10–, 1:110:3

Weapon [1]– - 1:99:19

weaving [1]– - 1:136:8

website [1]– - 1:30:21

Webster's [1]– - 1:72:10

week [1]– - 1:47:1

weeks [1]– - 1:115:21

welcome [1]– - 1:3:23

whereby [1]– - 1:118:14

White [12]– - 1:8:5–, 1:9:9 –, 1:22:9–, 1:22:17–, 1:39:24 –, 1:88:8–, 1:88:10–, 1:92:15 –, 1:98:8–, 1:113:12–, 1:116:20–, 1:117:18

white [1]– - 1:43:24

whole [6]– - 1:45:16–, 1:46:16–, 1:97:14–, 1:103:20 –, 1:108:13–, 1:128:2

wholly [5]– - 1:62:14–, 1:67:13

willful [5]– - 1:19:22–, 1:47:8–, 1:47:9–, 1:47:15–, 1:47:16

willfully [9]– - 1:11:2–, 1:11:20–, 1:20:5–, 1:21:4–, 1:27:11–, 1:27:12–, 1:39:19 –, 1:48:1–, 1:64:1

willfulness [28]– - 1:25:25 –, 1:26:13–, 1:26:22–, 1:26:23–, 1:26:24–, 1:27:8–, 1:27:20–, 1:27:25–, 1:28:8–, 1:28:9–, 1:47:21–, 1:47:22–, 1:49:3–, 1:49:9–, 1:49:13–, 1:49:14–, 1:54:6–, 1:64:2–, 1:64:5–, 1:64:21–, 1:66:15–, 1:69:18–, 1:69:19–, 1:81:4–, 1:81:21–, 1:91:22–, 1:107:25 –, 1:125:2

Wilson [1]– - 1:16:16

wins [1]– - 1:126:24

wish [4]– - 1:4:8–, 1:8:14–, 1:86:4–, 1:134:4

withdrawn [1] - 1:33:23
withheld [3] - 1:62:8,
1:63:17, 1:63:19
witness [2] - 1:40:1,
1:76:13
witnesses [3] - 1:40:3,
1:69:3, 1:75:25
wonder [1] - 1:58:1
wondering [2] - 1:61:9,
1:61:17
WOODWARD [3] -
1:3:16, 1:5:3, 1:5:11
Woodward [2] - 1:3:17,
1:5:1
word [15] - 1:16:6,
1:23:20, 1:24:20, 1:25:2,
1:25:4, 1:27:10, 1:27:12,
1:57:6, 1:64:10, 1:71:8,
1:71:17, 1:79:24, 1:79:25
, 1:80:16, 1:135:25
words [14] - 1:11:5,
1:12:1, 1:18:12, 1:25:6,
1:30:12, 1:32:20, 1:57:5,
1:104:25, 1:113:11,
1:117:13, 1:120:20,
1:126:17, 1:127:14,
1:128:3
works [1] - 1:59:19
world [4] - 1:62:22,
1:108:5, 1:108:6, 1:129:3
worried [1] - 1:116:15
worry [1] - 1:80:16
worse [1] - 1:101:12
worth [3] - 1:35:17,
1:110:9, 1:112:15
worthwhile [1] - 1:140:23
worthy [2] - 1:95:2,
1:124:16
wrap [1] - 1:134:11
writ [1] - 1:73:14
write [2] - 1:36:24,
1:121:2
writer [1] - 1:42:23
writing [1] - 1:56:1
written [5] - 1:14:6,
1:21:20, 1:22:25, 1:51:15
, 1:139:12
wrote [1] - 1:113:11

Y

year [2] - 1:101:8,
1:110:14
years [3] - 1:60:25,

1:92:6, 1:105:15
York [4] - 1:22:25, 1:99:3
, 1:99:9, 1:99:18
yourself [2] - 1:66:10,
1:69:6

Z

zero [1] - 1:126:6
zip [1] - 1:126:6