**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-801010-CR-CANNON/REINHART**

**UNITED STATES OF AMERICA,**

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA, and**
**CARLOS DE OLIVIERA,**

        **Defendants.**
_____/

**MOTION TO DISMISS**

Defendant Waltine Nauta, by and through the undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, respectfully request this Court dismiss Counts 33, 34, 35, 40, and 41 of the Superseding Indictment (July 27, 2023) (ECF No. 85), for failure to state an offense, or because as applied to Mr. Nauta the offenses charged are unconstitutionally vague in violation of the Due Process Clause of the Constitution, or, in the alternative, pursuant to the rule of lenity.

**I.     PROCEDURAL BACKGROUND**

Defendant Waltine Nauta is charged in eight counts of the July 27, 2023, Superseding Indictment, (ECF No. 85), to include: conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k) (Count 33); withholding a document or record in violation of 18 U.S.C. § 1512(b)(2)(A) (Count 34); corruptly concealing a document or record in violation of 18 U.S.C. § 1512(c)(1) (Count 35); concealing a document in a federal investigation in violation of 18 U.S.C. § 1519 (Count 36); engaging in a scheme to conceal in violation of 18 U.S.C. § 1001(a)(1) (Count 37); making false statements and representations in violation of 18 U.S.C. § 1001(a)(2) (Count

1

39); altering, destroying mutilating, or concealing an object in violation of 18 U.S.C. § 1512(b)(2)(B) (Count 40); and corruptly altering, destroying, mutilating, or concealing a document, record or other object in violation of 18 U.S.C. § 1512(c)(1) (Count 41).

A bottom, the charges stem from an alleged conspiracy to conceal boxes stored at former President Trump's Mar-a-Lago club and residence from the government. In January 2021, at the end of President Trump's Administration, hundreds of boxes containing a mixture of personal items and papers were moved from the White House to the Mar-a-Lago Club, President Trump's residence. Mr. Nauta, who served as a valet to President Trump during his administration, explained that while he helped pack some boxes during his employment at the White House, the boxes he personally packed only contained personal and household items, including but not limited to, shoes, hats, shampoo and undergarments. Interview Tr. at 8:21-25, 40:23-25 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 6:23 – 7:7-10, 19:19-14 (June 21, 2022) (USA-00809047). The boxes he packed were an extended version of the Bankers boxes. Grand Jury Tr. at 20:22-25 (June 21, 2022) (USA-00809047). He did not personally pack any boxes with documents, *Id.* at 21:20-23, nor did he observe boxes of documents being packed during the packing process in January 2021. *Id.* at 21: 24 – 22:1. Mr. Nauta further explained that he did not return to Mar-a-Lago until October of 2021. *Id.* at 29:23-25, 30:1-4. Some of the boxes during the packing process at the White House were labeled and some of them were just taken away by the movers. *Id.* at 23:14-17.

Once the boxes arrived at Mal-a-Lago they were stored in various location including, the White and Gold Ballroom, business center, bathroom shower, and storage room. Superseding Indictment at 10-12 (July 27, 2023) (ECF No. 85). As described by Mr. Nauta, the boxes located outside of Pine Hall were white, brown, Xerox, and bankers' boxes. Interview Tr. at 22:20-25

(May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:9-15 (June 21, 2022) (USA-00809047). These similar bankers' boxes were utilized at the White House by President Trump, Grand Jury Tr. at 13:1-18 (June 21, 2022) (USA-00809047), but Mr. Nauta only saw newspapers, ties, and personal effects in the bankers' boxes at the White House. *Id.* at 13: 21-23, 14:4-9. Mr. Nauta believed those boxes were going to Mar-a-Lago, *id.* at 20:14-16, although he advised he did not help move boxes that were sent to Mal-a-Lago. *Id.* at 40:1-9. Mr. Nauta confirmed upon his arrival to Mal-a-Lago in October 2021, he observed some of the boxes that were previously packed at the White House in a storage room. *Id.* at 36: 4-10. However, he did not know who physically placed them there. *Id.* at 38:4-6. Mr. Nauta required permission to enter the storage room, which required a key. *Id.* at 38:18-19.

Mr. Nauta first began working for President Trump as a valet in January 2017, *id.* at 7:7-10, until the first week of March 2021. Interview Tr. at 41:15-24 (May 26, 2022) (USA-0082793). Upon his return to DC, Mr. Nauta continued to work for the White House, Interview Tr. at 26:11-19 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 26:11-19 (June 21, 2022) (USA-00809047), until his retirement from the Navy, after which he permanently joined President Trump's staff beginning in August of 2021. Grand Jury Tr. at 28:17-21 (June 21, 2022) (USA-00809047). At that time, however, former President Trump was residing at his club in Bedminster, New Jersey, and President Trump and Mr. Nauta did not return to Mar-a-Lago again until October of 2021. *Id.* at 29:11-13.

At various times, Mr. Nauta has acknowledged moving boxes. For example, on January 17, 2022, Mr. Nauta told the FBI he and another employee moved approximately 15-17 boxes placed outside of Pine Hall, Interview Tr. at 19:2-3, 20:20-22 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:16-18 (June 21, 2022) (USA-00809047), so they could be loaded onto a

vehicle stationed outside of the Mar-a-Lago Club and placed on a truck in route to the National Archives and Records Administration (NARA). Interview Tr. at 17:23-25, 18:12-15 (May 26, 2022) (USA-0082793); Grand Jury Tr. at 45:4-8 (June 21, 2022) (USA-00809047). Mr. Nauta never opened the boxes collected from Pine Hall and was unaware of what documents, if any, each box contained. Interview Tr. at 21:19-21 (May 26, 2022) (USA-0082793). Mr. Nauta further explained that he never saw documents with classification markings at the Mal-a-Lago residence. *Id.* at 30:13-15.

In pertinent part, the Superseding Indictment alleges that following of a grand jury subpoena for documents with classified markings, Trump Attorney 1 made arrangements to search boxes stored in a Storage Room at Mar-a-Lago on June 2, 2022. Superseding Indictment at 22 ¶57 (July 27, 2023) (ECF No. 85). Thereafter, the indictment alleges, Mr. Nauta, at President Trump's direction, moved "approximately 64 boxes from the Storage Room and brought them to [President Trump's] residence." *Id.* at 22-23 ¶59. Then, on June 2, 2022, prior to Trump Attorney 1's arrival, the indictment alleges that Messrs. Nauta and De Oliveira moved approximately 30 boxes back from President Trump's residence to the Storage Room. *Id.* at 24 ¶63. Thus, the indictment insinuates, when Trump Attorney 1 performed the June 2 search of the boxes for documents with classification markings, there were approximately 34 boxes missing from the Storage Room. Several months later, on August 8, 2022, the indictment alleges, "the FBI executed a court-authorized search warrant at the Mar-a-Lago Club" in which it seized 75 documents purportedly with classification markings from the Storage Room. *Id.* at 30 ¶90.

## II.   LEGAL STANDARD

An indictment must be written as a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is insufficient unless it: "(1) presents the essential elements of the charged offense, (2) notifies the

accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal quotation marks and citations omitted). *See also United States v. Adkinson*, 135 F.3d 1363, 1375 n.37 (stating that a valid indictment, "need do little more than track the language of the statute."). Where an indictment fails to adequately apprise the defendant fully of the charged offense or offenses, such an indictment is defective for vagueness. *See, e.g.*, *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).

A statute is unconstitutional under the Fifth Amendment if the government uses it to, "tak[e] away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes [] or so standardless that it invites arbitrary enforcement." *United States v. Tia Deyon Pugh*, 2024 U.S. App. LEXIS 1193, at * 24 (11th Cir. Jan. 18, 2024) (quoting *Johnson v. United States*, 576 U.S. 135 S. Ct. 2551 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender*, 461 U.S. at 358).

### III.   ANALYSIS

Five of the counts charged as against Mr. Nauta require the government to prove that he acted, "corruptly." The relevant portions of 1512(b) require the government to prove that the defendant, "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d] another person, or attempt[ed] to do so, or engage[d] in misleading conduct toward another person, with intent to. . . (2) cause or induce any person to. . . (A) withhold testimony, or withhold a record, document,

or other object, from an official proceeding; [or] (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding[.]" 18 U.S.C. § 1512(b)(2)(A), (B). The relevant portions of 1512(c) required the government to prove the defendant, "corruptly. . . alter[ed], destroy[ed], mutilate[d], or conceal[ed] a record, or attempt[ed] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so[.]" 18 U.S.C. § 1512(c)(1), (2). Notably, all relevant counts require proof that the actions occurred, "corruptly." And the charged 1512(k) conspiracy alleges as objects of the conspiracy violations of 1512(b)(2)(a), (b)(2)(b), and (c)(1).

Because the indictment fails to allege that Mr. Nauta acted corruptly in any of the conduct as alleged in the indictment, Counts 33, 34, 35, 40, and 41 must be dismissed. Otherwise, "corruptly" as required under the applicable statutes and as applied to Mr. Nauta is void for vagueness. In the alternative, any charges requiring proof that Mr. Nauta acted "corruptly" should be dismissed under the rule of lenity.

    a. *The Indictment Fails to Allege a Corrupt Actus Reus*

When applying "corruptly" pursuant to 18 U.S.C. § 1512 the D.C. Circuit has observed: "[prior case law] show that the type of proceeding and the nature of a defendant's conduct matter. In contexts where obstructive actions are not inherently corrupt, the requirement to act 'corruptly' separates innocent from illegal behavior. . . The 'corruptly' element protects non-culpable conduct - such as a corporation following a document retention policy for routine reasons. . . or lobbyists and protestors exercising their rights to influence a congressional committee hearing. . . from being swept up by the statute's broad prohibition on 'obstructing, influencing or impeding an official proceeding.' Those cases confirm, moreover, that the requirement that a defendant act 'corruptly' is met by establishing that the defendant acted with a corrupt purpose or via independently corrupt

6

means[.]" *United States v. Robertson*, 86 F.4th 355, 366-67 (D.C. Cir. 2023) (internal citations omitted), (rehearing *en banc* pending).

The D.C. Circuit considered the definition of "corruptly" for charges under 18 U.S.C. § 1512 in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). The D.C. Circuit determined that "corruptly" is a term which can have one of three meanings.

(1) "First, the Supreme Court noted that the 'natural meaning' of 'corruptly' is 'clear' and that the word is 'normally associated with wrongful, immoral, depraved, or evil' conduct." *United States v. Fischer*, 64 F.4th 329, 339-40 (D.C. Cir. 2023) (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005))."

(2) "Second, the government here asserts that the element of a 'corrupt' state of mind is satisfied when a defendant acts 'with a corrupt purpose,' through 'independently corrupt means,' or both." *Fischer*, 64 F.4th at 340 (internal citations omitted) (citing *United States v. North*, 910 F.2d 843, 942-43 (D.C. Cir. 1990) (Silberman, J., concurring and dissenting in part).

(3) "A third definition of the term 'corruptly' was endorsed by Justice Scalia in his partial concurrence in *United States v. Aguilar*, which examined the phrase 'corruptly . . . endeavors to influence, obstruct or impede the due administration of justice' under § 1503." *Fischer*, 64 F.4th at 340 (citing *United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., concurring and dissenting in part).

After considering these possible constructions, the majority opinion refused to adopt any one particular possible meaning because, according to the court, no matter which definition is applied, "'corrupt' intent exists at least when an obstructive action is independently unlawful — i.e., an independently unlawful act is necessarily 'wrongful' and encompasses a perpetrator's use of 'independently corrupt means' or 'an unlawful method.'" *Fischer*, 64 F.4th at 340. (citing *Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., concurring and dissenting in part)) (also citing *North*, 910 F.2d at 942-43 (Silberman, J., concurring and dissenting in part)) (also citing *United States v. Sandlin*, 575 F. Supp. 3d 16, 33-34 (D.D.C. 2021)).

In a concurrence, however, Judge Walker, insisted that defining corruptly was necessary. Judge Walker decided it required a defendant to "act with an intent to procure an unlawful benefit

either for himself or for some other person." *Fischer*, 64 F.4th at 351-52 (Walker, J., concurring) (internal quotation marks omitted) (quoting *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting). Judge Walker went on to note that such an adoption was necessary in order to avoid an overly expansive application of the 1512, as applying such term would require a defendant to, "not only kn[ow] he was obtaining an unlawful benefit, it must also be his objective or purpose." *Fischer*, 64 F.4th at 352 (Walker, J., concurring) (internal quotation marks omitted) (quoting *Marinello*, 138 S. Ct. at 1114 (Thomas, J., dissenting).[1]

Judge Katsas goes even further in seeking to narrow the scope of 1512 his dissent and makes another important observation about 1512: it traditionally required the defendant receive some tangible unlawful benefit, such as, "an unlawful financial, professional, or exculpatory advantage." *Fischer*, 64 F.4th at 380-81 (Katsas, J., dissenting) (quoting *Marinello*, 138 S. Ct. at 1105 (avoiding taxes); *Aguilar*, 515 U.S. at 595 (disclosing wiretap); *North*, 910 F.2d at 851 (fabricating false testimony and destroying documents)). Ultimately, Judge Katsas noted that the defendants in Fischer should not have been found guilty under 1512 because they sought an intangible benefit through their actions, "having a preferred candidate remain President." *Fischer*, 64 F.4th at 381 (Katsas, J., dissenting).

Here, the issue is simple: if either the concurrence of Judge Walker or the dissent of Judge Katsas from *Fischer* are persuasive to this Court, then the indictment's allegations that Mr. Nauta

---

[1] It has been posited that Judge Walker's concurrence and his adoption of the specific definition of "corruptly" binds the D.C. Circuit. *See United States v. Robertson*, 86 F.4th 355, 387 (D.C. Cir. 2023) (Henderson, J., dissenting) ("The definition of 'corruptly' endorsed by Judge Walker binds us because that definition was necessary to create a holding. *See Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring in part) . . . We must follow 'those portions of the opinion necessary to that result by which we are bound.' *Util. Air Regul. Grp. v. EPA*, 885 F.3d 714, 720 (D.C. Cir. 2018) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67(1996)); *see also* Holding, Black's Law Dictionary (11th ed. 2019) (defining 'holding' as '[the] court's determination of a matter of law pivotal to its decision').

acted, "corruptly," must be dismissed. The government has not alleged that Mr. Nauta has acted in any way which would corruptly, tangibly benefit either Mr. Nauta or another. As noted herein, each count of the indictment merely vaguely and briefly describes the alleged actions taken by Mr. Nauta, and none of the Counts allege with specificity that his actions were taken in a way that provided him or anyone else a tangible benefit.

      b. *The 1512 Counts in the Indictment Must Be Dismissed for Vagueness*

Even if not dismissed for failure to state a claim, the counts against Mr. Nauta alleging he acted, "corruptly" should be dismissed because as applied to him they are void for vagueness. Three judges on the D.C. Circuit failed to agree on the meaning of "corruptly" under 18 U.S.C. § 1512, and so it can hardly be expected, "it [would be] reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. Ultimately, the charges as alleged against Mr. Nauta amount to claims that he moved boxes whose contents he was not aware of. He was not on notice that his actions could amount to a criminal prosecution, and the use of 1512 in this way is arbitrary.

      c. *In the Alternative, The Rule of Lenity Precludes Mr. Nauta's Prosecution*

The rule of lenity, "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). The rule of lenity, "applies only when, after consulting traditional canons of statutory interpretation, the court is left with an ambiguous statute." *Dawson*, 64 F.4th at 1239. "To invoke the rule of lenity, the court must conclude that there is a grievous ambiguity or uncertainty in the statute." *United States v. Baldwin*, 774 F.3d 711, 733 (11th Cir. 2014) (internal quotation marks omitted) (quoting *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998)). The rule of lenity applies, "only when, after seizing everything the court can from which aid can be derived to determine the meaning of a statute, the court can no more

9

than guess as to what Congress intended." *Dawson*, 64 F.4th at1239 (internal quotation marks omitted) (quoting *Muscarello*, 524 U.S. at 138-39 (quoting *United States v. Wells*, 519 U.S. 482, 499 (1997))).

As this an issue regarding the scope of a criminal statute, the Court should also consider the rule of lenity when applying the statute to Mr. Nauta. Federal courts "traditionally [have] exercised restraint in assessing the reach of a federal criminal statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995). "Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant," *United States v. Miller*, 589 F. Supp. 3d 60, 66 (D.D.C. 2022) (quoting *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring)), as long as such an application would not, "conflict with the implied or expressed intent of Congress[.]" *Liparota v. United States*, 471 U.S. 419, 427 (1985).

Recently, the rule of lenity has been used by Judge Carl Nichols in the District of Columbia to determine that a defendant's conduct did not fall within the scope of 1512(c)(2) because of the very vagueness of definitions in 1512 discussed in this filing, as well as the historical interpretation of the statute implying a significantly narrower scope intended by the legislature than how it was then being applied. *See United States v. Miller*, 589 F. Supp. 3d 60, 67 (D.D.C. 2022).

Given that no matter how this Court determines to apply the term "corruptly" in the 1512 Counts some level of ambiguity will exist, this Court should use the rule of lenity to resolve the ambiguity in Mr. Nauta's favor and rule that he cannot be indicted using an ambiguous statute.

## CONCLUSION

For the foregoing reasons, Mr. Nauta respectfully requests this Court dismiss Counts 33, 34, 35, 40, and 41 of the Superseding Indictment (July 27, 2023) (ECF No. 85), for failure to state an offense, or because as applied to Mr. Nauta the offenses charged are unconstitutionally

vague in violation of the Due Process Clause of the Constitution, or, in the alternative, pursuant to the rule of lenity.

[SIGNATURE BLOCK NEXT PAGE]

Dated: April 11, 2024                                  Respectfully submitted,

  *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

  *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2024, I electronically submitted the foregoing, via CM/ECF, to counsel of record.

                                                      Respectfully submitted,

                                                     *s/ Sasha Dadan*
                                                   Sasha Dadan (Fla. Bar No. 109069)
                                                   Dadan Law Firm, PLLC
                                                   201 S. 2nd Street, Suite 202
                                                   Fort Pierce, Florida 34950
                                                   772.579.2771 (telephone)
                                                   772.264.5766 (facsimile)
                                                   sasha@dadanlawfirm.com

                                                   *Counsel for Defendant Waltine Nauta*