```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                       CASE NO. 23-cr-80101-AMC
 3

 4    UNITED STATES OF AMERICA,              Fort Pierce, Florida

 5                 Plaintiff,                April 12, 2024

 6          vs.
                                             2:03 p.m. - 4:06 p.m.
 7
      DONALD J. TRUMP, WALTINE NAUTA, CARLOS
 8    DE OLIVEIRA,

 9                 Defendants.               Pages 1 to 108
      _____.
10
                      TRANSCRIPT OF MOTION HEARING
11            BEFORE THE HONORABLE AILEEN M. CANNON
                     UNITED STATES DISTRICT JUDGE
12
      APPEARANCES:
13
      FOR THE GOVERNMENT:
14
                                 U. S. DEPARTMENT OF JUSTICE
15                               JAY I. BRATT, ESQ.
                                 DAVID HARBACH, ESQ.
16                               National Security Division
                                 950 Pennsylvania Avenue, NW
17                               Washington, DC 20530

18

19

20

21

22

23

24

25
```

```
 1   FOR THE DEFENDANTS:

 2   Donald J. Trump
                             CONTINENTAL PLLC
 3                           LAZARO P. FIELDS, ESQ.
                             255 Alhambra Circle
 4                           Suite 640
                             Coral Gables, Florida 33134
 5
     Waltine Nauta
 6                           DADAN LAW FIRM
                             SASHA DADAN, ESQ.
 7                           201 S. 2nd Street
                             Suite 202
 8                           Fort Pierce, Florida 34950

 9                           BRAND WOODWARD LAW, LP
                             STANLEY WOODWARD, ESQ.
10                           400 Fifth Street
                             Northwest Suite 300
11                           Washington, DC 20001
     Carlos De Oliveira
12                           E&W LAW
                             JOHN S. IRVING, ESQ.
13                           1455 Pennsylvania Avenue, NW
                             Suite 1400
14                           Washington, DC 20004

15                           L.D. MURRELL, PA
                             LARRY DONALD MURRELL JR., ESQ.
16                           400 Executive Center Drive
                             Suite 201
17                           West Palm Beach, Florida 33401

18
     STENOGRAPHICALLY REPORTED BY:
19
                             LAURA E. MELTON, RMR, CRR, FPR
20                           Official Court Reporter to the
                             Honorable Aileen M. Cannon
21                           United States District Court
                             Fort Pierce, Florida
22

23

24

25
```

1          (Call to the Order of the Court.)

2          THE COURT:  Good afternoon.  Please call the case.  And

3  you may all be seated unless you're addressing the Court.

4          COURTROOM DEPUTY:  United States of

5  America vs. Donald J. Trump, Waltine Nauta, and

6  Carlos De Oliveira.  Case Number 23-cr-80101.

7          Will parties please make your appearance, starting with

8  the government.

9          MR. BRATT:  Good afternoon, Your Honor.  Jay Bratt and

10  David Harbach on behalf of the United States.

11          THE COURT:  Good afternoon.

12          MR. FIELDS:  Good afternoon, Your Honor.  Lazaro Fields

13  on behalf of President Trump.

14          THE COURT:  Who is here for Mr. Nauta?

15          MR. WOODWARD:  Good morning, Your Honor -- good

16  afternoon, Your Honor.  Stanley Woodard and Sasha Dadan for

17  Mr. Nauta.

18          THE COURT:  Good afternoon to you.  And good afternoon

19  to you, Mr. Nauta.

20          Who is here for Mr. De Oliveira?

21          MR. IRVING:  Good afternoon, Your Honor.  John Irving

22  and Donnie Murrell for Mr. De Oliveira.

23          THE COURT:  Good afternoon to you both.  And good

24  afternoon to you, Mr. De Oliveira.

25          MR. DE OLIVEIRA:  Thank you.

1          THE COURT:  All right.  Before we get started, as

2    usual, I will remind the parties that possession or use of

3    electronic equipment in the courtroom, except as authorized for

4    counsel -- and Mr. Woodward, I'm going to ask that you stop

5    fiddling with your phone -- is strictly prohibited; that

6    includes any broadcasting, photographing, recording, or filming

7    of any kind.  Obviously, we have, as usual, set up our

8    second-floor overflow room, and there should be no attempt to

9    circumvent any of these rules in that overflow room either.

10          Also, I would ask that everybody remain seated

11    throughout the duration of the hearing so as to avoid

12    interruption.

13          With that, we have set for hearing this afternoon,

14    three motions.  In the following order:  First, Defendant

15    De Oliveira's motion to dismiss the superseding indictment, or

16    alternatively, for a bill of particulars.  That motion is

17    docketed at entry 323.  There is a response in opposition filed

18    by the Special Counsel at docket entry 372, and there is a

19    reply in support of a motion at docket entry 413.

20          I'm going to start off with that motion today, just so

21    you all can prepare in terms of sequence.

22          Then next up, we have Defendant Nauta's motion for a

23    bill of particulars; that has now been docketed at entry 446,

24    with the reply filed at 447.  And there is an opposition at

25    380.

 1          And finally, Defendant Nauta's motion to dismiss

 2     Counts 33, 34, 35, 40, and 41, in the superseding indictment,

 3     based on the meaning of the term "corruptly" in

 4     Section 1512(c); that has now been docketed at entry 448, with

 5     the reply at 449, and an opposition at 379.

 6          All of these filings are now publicly filed with the

 7     exception of one exhibit which is the full transcript of

 8     Mr. Nauta's grand jury testimony.  And I asked the parties to

 9     be prepared to discuss what to do about continued sealing of

10     that transcript.

11          So with that, I will add that I have reviewed all of

12     the motions and the related papers.  I'm prepared to hear

13     argument.  And because these are all defense-brought motions, I

14     will start, of course, with defense counsel and, as indicated,

15     with Mr. De Oliveira's motion.

16          Who will be taking the lead on that motion?

17          MR. IRVING:  I will go ahead and do that, Your Honor.

18          THE COURT:  Okay.  And if you could present argument

19     from the lectern, please.

20          MR. IRVING:  Of course.

21          Good afternoon, Your Honor.

22          So I have been scratching my head about this indictment

23     for quite some time.  And it's -- it's a welcome opportunity to

24     finally be able to discuss some of this.

25          But it -- this -- in -- the superseding indictment is

1    53 pages of square peg in a round hole that fails to allege

2    even on its face -- and I understand that we have to deal with

3    the four corners of the indictment.  I'm not suggesting that

4    this is an evidence suppression motion or a Rule 29 motion or

5    anything like that further down the road.  I get it.  But even

6    taken on its face, it fails to allege that Mr. De Oliveira

7    committed any crime.  It fails to allege that he had any idea

8    that any of these boxes in question contained classified

9    documents; I think the government's conceded that, if I'm -- if

10   my reading of their prior filings is correct.

11          It accuses him of conspiring to prevent

12   Trump Attorney 1 from seeing precisely the documents that he

13   and Mr. Nauta allegedly moved into the storage room, which

14   makes no sense, why he would -- I mean, that's a funny way to

15   hide something from Trump Attorney 1, is to move a bunch of

16   boxes into a storage room that he then immediately reviews.

17          It fails to allege that Mr. De Oliveira had any idea

18   that there were subpoenas issued for the -- for classified

19   documents at first, or then for CCTV -- security footage of

20   Mar-a-Lago --

21          THE COURT:  What is your understanding of the level of

22   specificity that is required in the case law to allege

23   knowledge of an official proceeding?

24          MR. IRVING:  I think, Your Honor, that it needs

25   to -- obviously, tracking the statutory language, and I

1    don't -- I'm not arguing that it doesn't do that.  But

2    when -- but the case law discussed in the -- in the pleadings

3    indicates that there has to be some factual predicate for that

4    in -- in the indictment itself.  And here I would argue,

5    frankly, that it's almost worse than an indictment that simply

6    tracks the factual pleadings -- or the statutory language.

7         It would be like having an indictment of a -- people

8    like to talk about the -- you know, a get-away driver being,

9    you know, criminally liable for the acts of his bank-robbing

10   co-conspirators.  Fine.  You know?

11        But this would be like having an indictment where the

12   get-away driver is charged as a co-conspirator.  And then the

13   language talks about how he was an Uber driver, had never met

14   the people who robbed the bank before, and had no idea what

15   they had just done.  I mean, that couldn't possibly make any

16   sense in the indictment.  And although this one is quite

17   verbose, at 53 pages, it doesn't -- it's quantity over quality,

18   and it doesn't -- it says nowhere anything about informing the

19   corrupt criminal intent, or the knowing agreement that he is

20   required to -- to have to conspire.

21        THE COURT:  Well, it alleges in Count 33 that he

22   engaged in a conspiracy and that he acted with corrupt intent;

23   does it not?

24        MR. IRVING:  It says that.  And that's the tracking of

25   the statutory language, but then when -- it incorporates all of

1   the facts that are, you know, alleged in the earlier

2   paragraphs, pages.  And nowhere in there does it explain

3   that -- does it offer any evidence or -- or even argument

4   or -- on its face that he was aware of a subpoena.

5        So it's like conspiring to go to the grocery store.  I

6   mean, if he doesn't -- if he is not aware of any kind of

7   criminal intent, even assuming on the four corners of the

8   indictment, obviously, that, you know -- obviously, these are

9   all contested facts, but this isn't the time and place for

10  that; I get that.  But, you know, although it tracks the

11  statutory language, like I said before, it's almost worse than

12  simply tracking the statutory language.  It tracks the

13  statutory language and then provides facts that don't support

14  what it then says in the tracking of the statutory language.

15       THE COURT:  Well, so I'm looking at Count 33.  It has a

16  series of phrases citing provisions in 1512, of course, with

17  that corrupt language.  And then it has paragraph 96, which

18  states that the purpose of the conspiracy was for Trump to keep

19  classified documents he had taken with him from the White House

20  and to hide and conceal them from a federal grand jury.

21       It then sets forth the means and manner of the

22  conspiracy, offering A through G, all with a final citation to

23  Section 1512(k).  So I guess, what exactly, if you could

24  pinpoint, is missing, in your view?

25       MR. IRVING:  Well, in my view, for starters, the manner

1    and means of the conspiracy that you point out, Your Honor, in

2    paragraph 97 has a, you know, fairly long list of items.

3    It's -- it's unclear to us, and I think ought to be, at a

4    minimum, the subject of a bill of particulars as to which of

5    these the government is alleging Mr. De Oliveira engaged in.

6         Obviously, the last one, G, you know, is reflected in

7    Counts 40 and 41.  But the making of false statements -- I

8    don't want to get surprised at trial that somehow the making of

9    the false statements, in a time period that's well beyond the

10   time period of the conspiracy, is somehow an act in furtherance

11   of the conspiracy; I think the government needs to explain

12   that.

13        You know, I want to make sure that, you know, that

14   they're not arguing and don't intend to argue that the moving

15   of the boxes as referenced in, you know, item (b) at least,

16   you know, had anything to do with Mr. De Oliveira.

17        THE COURT:  So, to your understanding at this point,

18   although I know you have indicated you're seeking more clarity,

19   it appears that only Subsection (g) of the manner and means of

20   Count 33, at least, implicates Mr. De Oliveira?

21        MR. IRVING:  Well, it reflects -- no, I wouldn't say

22   that, Your Honor.  I -- I -- I don't want to play games either,

23   right?  I mean, it's obviously what -- what's reflected in

24   Counts 40 and 41.  But those counts, and this language here,

25   also totally fails to suggest even, that Mr. De Oliveira had

1    any idea that there was an investigation, had any idea that

2    there was a subpoena.  And Counts 40 and 41 discuss more -- in

3    more detail what was actually happening, and being -- and what

4    the colloquy was between Mr. De Oliveira and witness number

5    whatever -- I can't remember at this point -- where he

6    allegedly asked how the video system worked, how long video was

7    stored for, and then stated that the boss wants it deleted

8    (indicating).  Right?

9         So, first of all, none of those are requests or

10   demands.  And it wouldn't be criminal in any event, absent some

11   sort of knowledge that there was a subpoena or that

12   this -- that -- it's impossible to obstruct an investigation

13   you know nothing about.  So --

14        THE COURT:  Okay.  So I think what I have heard is that

15   it's missing, in your view, an allegation that Mr. De Oliveira

16   knew of an official proceeding?

17        MR. IRVING:  Counts 40 and -- 40 and 41 are missing

18   that.  And then by -- if that's all getting wrapped up into

19   Count 33, it suffers the same infirmity.  There are no facts

20   alleged that would -- that could possibly support the required

21   corrupt and knowing -- corrupt mens rea and knowing agreement.

22   It's just simply not there.

23        THE COURT:  But, again, just looking through the list

24   of (a) through (g), what is your understanding of which of

25   those letters applies to Mr. De Oliveira, understanding, of

1    course, that conspirators don't need to be involved in each and

2    every component of the conspiracy?

3              MR. IRVING:  No, they don't, Your Honor.  But they do

4    need to have the proper mens rea, and they need to knowingly

5    agree with the object of the conspiracy, which also makes no

6    sense.

7              But to answer the Court's question, I -- I mean,

8    probably a better question for the government, but I am

9    assuming that the government believes that subparagraph (g),

10   attempting to delete security camera footage from the

11   Mar-a-Lago Club to conceal the footage from the FBI and the

12   grand jury, would -- would apply to Mr. De Oliveira.

13             But, again, you know, it's the -- it's the -- "to

14   conceal the footage from the FBI and the grand jury"

15   that -- none of the factual discussion in this 53 pages of

16   rambling superseding indictment says anything about

17   Mr. De Oliveira's understanding that anything was ever going to

18   be submitted to either the FBI or the grand jury, or had been

19   subpoenaed or that there was an investigation at all.

20             And I think if they had those facts, they certainly

21   would have put them in here.

22             THE COURT:  So just with respect to your request for a

23   bill of particulars, if the Court were to entertain that

24   request -- and, again, it's still up for discussion --

25             MR. IRVING:  Sure.

1      THE COURT:  -- what specific allegation with respect to

2  mens rea do you think would be necessary for you to have

3  sufficient information to prepare a defense?

4      MR. IRVING:  I would like to know, what is

5  their -- what are they alleging Mr. De Oliveira did or said

6  that reflects any knowledge on his -- or anybody else that

7  reflects any knowledge on his part that there was anything to

8  obstruct in the first place?

9      THE COURT:  Okay.  Anything further you wish to add on

10  Count 33?

11      MR. IRVING:  No, Your Honor.  I'm happy to proceed

12  to -- I think we've already talked about 40 and 41, but I would

13  be happy to answer any questions on those.  I was going to move

14  to the false statements.

15      THE COURT:  What's your understanding of the difference

16  between Count 40 and Count 41, factually?

17      MR. IRVING:  I'm not sure -- I'm not sure I -- I --

18      THE COURT:  So just looking at the language in

19  Count 40 --

20      MR. IRVING:  Right.

21      THE COURT:  -- versus the language in Count 41, one

22  refers to knowing -- knowingly corruptly persuading another

23  person to conceal an object with intent to impair the object's

24  integrity and availability for use in an official proceeding.

25  And then it refers to a request by all three individuals made

1    to Trump Employee 4 to delete security camera footage.

2          And then Count 41 refers to those same three

3    individuals requesting that the same employee delete security

4    camera footage.  I'm just trying to understand -- and I will

5    ask the Special Counsel if they can just clarify the coverage

6    for each of these counts as they overlap potentially.

7          MR. IRVING:  Yeah, I -- I mean, I -- again, that's

8    probably a better question for them.  But I -- as a practical

9    matter, I don't see much difference between the two.  I realize

10   that, obviously, one is pleading the language of (b)(2)(B) and

11   the other is pleading the language of (c)(1).

12         You know, one talks about persuading and attempting to

13   persuade.  The other talks about actually doing, altering,

14   destroying, blah-blah-blah, concealing.  So --

15         THE COURT:  Okay.  All right.

16         Now, then, getting to the 1001.

17         MR. IRVING:  Right.

18         THE COURT:  You have indicated that you don't have

19   enough specificity to understand what the alleged false

20   statement is.  Can you elaborate on your argument?

21         Because the indictment does contain a substantial

22   excerpt from the recorded interview with -- underlined in bold,

23   and then a subsequent paragraph 120.

24         MR. IRVING:  Yes, Your Honor.

25         So, first of all, the indictment leaves out a section

1    of that colloquy that includes some explanation as -- in the

2    public setting.  I'm not going to get into it, but --

3              THE COURT:  You have the full recorded transcript?

4              MR. IRVING:  I have that excerpt here.

5              THE COURT:  No.  But in discovery, have you been

6    provided with a copy -- a full copy of the recorded interview?

7              MR. IRVING:  Oh, yes.

8              THE COURT:  Okay.  Please continue.

9              MR. IRVING:  So it -- it leaves that out.  It doesn't

10   address Mr. De Oliveira's direct answers to questions about the

11   actual boxes and things that they were asking him about that

12   are the subject of all of this.

13             And then it -- you know, there is this rambling,

14   you know -- I -- I quoted in the -- you know, in the pleading

15   it essentially says -- these are questions about boxes that

16   arrived at Mar-a-Lago.  "Do you -- were you -- do you

17   even -- like, or were you even there or aware of boxes that,

18   like, all the stuff was moved in?  Even, like, his personal

19   stuff, his clothes, furniture, nothing" -- I mean, it doesn't

20   make any -- and regardless of what his answers to those

21   questions were, it's hard to imagine what possible relevance

22   that might have had to an investigation two years later about

23   boxes that the government has explained have been moved

24   repeatedly, which brings us to the magic box problem, but I'm

25   not sure if the Court wants me to get into that, where you have

1    64 boxes being moved out and 30 being moved back in, and 75

2    being, you know, identified later during the search warrant.

3            I mean, there is plenty of weird going on here, but --

4            THE COURT:  Well, I'm not familiar with the magic box

5    problem.  I don't know if it's been briefed that way.

6            But in any case, let's just take this in an organized

7    fashion.  Number 1 --

8            MR. IRVING:  Sure.

9            THE COURT:  -- why do you believe there is insufficient

10   specificity as to what particular alleged false statements are

11   the subject of Count 42?

12           MR. IRVING:  Well, I'm taking the position, Your Honor,

13   that nothing in here is a lie.  So if there's --

14           THE COURT:  So why wouldn't that just be a trial

15   argument?

16           MR. IRVING:  Because on its face, the indictment is not

17   alleging that he -- that he, A, said anything that was false,

18   and B, how -- how that could have possibly been material.

19           I mean, this is -- this is broken, you know, babbling

20   question and answer about -- and it's -- again, Your Honor,

21   it's the government's obligation.  It's the FBI's obligation to

22   nail him down and make sure that we all understand what boxes

23   we're talking about; right?  We understand what we're talking

24   about.

25           We're not talking about, you know, "personal stuff and,

1   like, clothes and, like, you know, furniture."  You know, I

2   mean -- if that was going to be the basis for a 1001 charge,

3   they had the obligation to nail him down.  It's not

4   Mr. De Oliveira's obligation to figure out what they're trying

5   to ask him.

6          So I would take the position, Your Honor, that the

7   count simply fails to state a 1001 violation.  And if there is

8   something I'm missing, that, I guess -- some other language

9   that's not in the transcript or elsewhere about this, that

10  would add up to a false statement that is material, I would be

11  happy to answer.

12         THE COURT:  Okay.  So I think we've talked about

13  the -- the specificity of the statements.  But what is your

14  argument on materiality?  Because the government indicates in

15  its opposition that it would have been material to their

16  investigation for purposes of, I think, understanding where the

17  boxes were stored, for what period of time, and that sort of

18  thing.

19         MR. IRVING:  Understood, Your Honor.

20         But, first of all, it's almost impossible to tell what

21  they're talking about in this colloquy.  So which boxes are we

22  talking about is -- you know, is it furniture?  Personal

23  clothes?  Who cares?

24         I mean, the questions -- the moving of the boxes that

25  we're talking about in Count 42 are the movements from right

1    after the president left the White House and went to

2    Mar-a-Lago.  So I'm sure that there was lots of stuff that went

3    into Mar-a-Lago.  I'm sure there is lots of clothing and

4    furniture that went into Mar-a-Lago.

5            How could that possibly be relevant to anything?  And

6    the indictment itself explains, and so does all the discovery,

7    you know, all of the different types of stuff that went into

8    Mar-a-Lago, and, you know, the fact that -- the actual boxes

9    that the government cares about were moved several times before

10   Mr. De Oliveira was interviewed in January of 2023, two years

11   later.

12           So it -- I'm having a tough time trying to figure out

13   how whatever Mr. De Oliveira said, even assuming it's the boxes

14   that matter, how that could possibly have been relevant or

15   material two years later.

16           THE COURT:  Okay.  All right.

17           Anything further on your motion?

18           MR. IRVING:  No, Your Honor.  Thank you.

19           THE COURT:  All right.  Mr. Harbach?  Mr. Bratt?  Which

20   of you will be tackling this opposition?

21           MR. BRATT:  I will, Your Honor.

22           THE COURT:  Okay.  Thank you.  And I will hear from the

23   Special Counsel, please.

24           MR. BRATT:  Just at the outset, I think it's important

25   to recognize that the superseding indictment goes well beyond

1    the requirements of Rule 7(c) with respect to the obstruction

2    counts, aside from tracking the statutory language.  Over the

3    course of more than 30 paragraphs, it details the conduct that

4    the government alleges underlies those accounts -- those

5    counts, the obstruction count and -- the conspiracy count and

6    the obstruction count.

7            As to -- excuse me -- the false statement count, yes, I

8    could also chop it up as they do in the brief, and as

9    Mr. Irving just did here, and make it sound nonsensical, but I

10   think the Court has caught on and recognized that the -- as

11   it's pled in the indictment, that the questions are laid out,

12   it is alleged that the bolded answers are false.  It is alleged

13   that they are material, and that is sufficient on the face of

14   the indictment.

15           As I think the Court was indicating, a lot of the

16   arguments that Mr. Irving is making are jury arguments.

17   They're arguments he may make to the Court as part of a Rule 29

18   motion, but it does nothing to undermine the sufficiency of the

19   charged -- the charged false statement.

20           THE COURT:  Okay.  If we could start with 33, Count 33.

21           MR. BRATT:  Yes.

22           THE COURT:  And then we will get to the false statement

23   count.

24           MR. BRATT:  Sure.

25           So with respect to Count 33.  One -- again, I think the

1    Court acknowledged or steered Mr. Irving toward the fact that

2    his argument, as to Mr. -- whether or not Mr. De Oliveira was a

3    participant in all aspects of it is inconsistent with

4    conspiracy law.  We --

5         THE COURT:  Well, I don't think he is taking the

6    position that his client needs to have done every single thing

7    listed in the manner and means.  I think he is just indicating

8    which of the options goes to him.  More specifically, is it F

9    and G, or just G?

10        And -- or maybe it's A, B, C, D, or E, which it doesn't

11   appear to be the case.

12        MR. BRATT:  Well, he has some involvement in the

13   movement of the boxes.  So that part of that also -- also

14   refers to him.

15        But, again, I think the key question, both for the

16   sufficiency of the indictment, and for the argument for a bill

17   of particulars, is:  What is in the indictment itself?  What is

18   alleged in the indictment?

19        You know, paragraphs 74 through 87 detail

20   Mr. De Oliveira's conduct with respect to the obstruction that

21   occurred as to the video footage.  That is all out there for

22   him.  He has extensive discovery --

23        THE COURT:  So can you just specify, looking at A

24   through G, with any corresponding allegations in the remainder

25   of the superseding indictment?

1          MR. BRATT:  So I -- if the Court is asking me to give a

2     bill of particulars now, I just want to be bound by what I say.

3     So certainly G -- G -- G refers to him.  He is -- or I should

4     say he is encompassed by the allegation in G.

5          THE COURT:  The false statement, could it be included

6     in Count 33, given the time frame?

7          MR. BRATT:  No, it cannot.

8          THE COURT:  Okay.  And then -- but you said "moving

9     boxes."  So that would be --

10         MR. BRATT:  B.

11         THE COURT:  -- B?

12         MR. BRATT:  Correct.  And G.

13         But, again, I -- I'm a little uncomfortable being in a

14    position where --

15         THE COURT:  Why would you be uncomfortable just simply

16    identifying paragraphs in a public superseding indictment that

17    tied in Mr. De Oliveira --

18         MR. BRATT:  So I have, and what I just want to make

19    sure is, you know, as we go forward, we don't know what other

20    evidence may come about, what other witnesses may come about.

21    So --

22         THE COURT:  That's fair.

23         But standing here, looking at the four corners of the

24    superseding indictment, I just wanted to get some clarity that

25    it is -- that it is, in fact, G, it's not F, and that

1   it's -- and then it's B.

2          Which paragraphs would you say connect Mr. De Oliveira

3   to the movement of boxes?

4          MR. BRATT:  So that portion is what immediately

5   precedes paragraph 74 to 87.  I believe that begins -- part of

6   that begins at paragraph 53.  And --

7          THE COURT:  53.  Okay.

8          MR. BRATT:  -- he is involved in some of the -- not

9   each of the paragraphs that follow between 53 and 74, but he is

10  involved in those paragraphs.

11         THE COURT:  Because I've gone through them, and I've

12  just tried to focus in, given that this is a motion brought by

13  Mr. De Oliveira to see which allegations are specific to him.

14  So can you assist me with that?

15         MR. BRATT:  So for now, or for these purposes,

16  Your Honor, I would focus on the paragraphs in which he is

17  named.

18         THE COURT:  So 62, concerns the movement of

19  approximately 30 boxes?

20         MR. BRATT:  That's correct.

21         THE COURT:  Okay.

22         MR. BRATT:  And he is also involved in 63.

23         THE COURT:  Okay.  All right.  Now, what is your

24  argument on this allegation or absence of an allegation that

25  Mr. De Oliveira knew of an official proceeding?

1          MR. BRATT:  Well, I don't see how there is an absence

2     of that.  If you look at the statutory language, what he is

3     being charged with having corruptly persuaded or corruptly

4     interfered with the various formulations that are in 1512, what

5     he is being charged with having -- having acted

6     toward -- toward obstructing is an official proceeding.

7          And we cited in our opposition brief the Friske case

8     from the Eleventh Circuit, and certainly, we have to prove that

9     he was aware of an official proceeding.  We do not have to

10    prove, and he cites no case saying that we have to prove that

11    he knew the details of the subpoena, that he knew what the

12    parties' obligations are with respect to a subpoena, that he

13    had to knew -- know what the recipient's preservation

14    obligations were with respect to a subpoena.

15         What we have to show is that he had knowledge of an

16    official proceeding, and that is encompassed in the mens rea in

17    the obstruction counts.

18         THE COURT:  Okay.  So you agree that you have to prove

19    per Friske or "Friske" -- I'm not sure how to say that -- that

20    he had knowledge of a -- of an official proceeding?

21         MR. BRATT:  That's correct.

22         THE COURT:  Okay.  But you would agree that the

23    indictment doesn't expressly indicate that he had that

24    knowledge, except to the extent it generally refers to the

25    statutory language in 1512?

1          MR. BRATT:  So it doesn't, but I also think it's

2    important to compare this superseding indictment with the

3    superseding indictment in the lead case that they cite in their

4    motion, which is the Eleventh Circuit's decision in McGarity.

5    And I'm sure the Court's familiar with McGarity.

6          Just to quickly summarize it.  That was a wide-ranging

7    prosecution against over a dozen people for being involved in a

8    ring that shared hundreds of thousands of child pornographic

9    images, and the defendants were principally convicted of

10   engaging in a -- in a CEE.

11         And there was a single, one-paragraph-long count

12   charging obstruction, and it just said that they engaged in

13   some form of 1512 and in CEE being a continuing exploitation

14   enterprise.  And the Eleventh Circuit found that that was

15   inadequate because under the facts of that case, there -- the

16   case began with an Australian investigation.  Then the

17   Australians began working jointly with the FBI.  And then the

18   United Kingdom began to be involved.

19         And the Eleventh Circuit found that there was not

20   sufficient notice in that indictment as to the -- as to the --

21   the proceeding itself that was the foundation for the

22   obstruction counts.

23         By contrast here, you have paragraph 50 that talks

24   about the narrow referral.  Immediately after that, paragraphs

25   51 and 52 of the superseding indictment.  It gives the dates,

 1    after receipt of the referral, when the FBI began its

 2    investigation and when the grand jury began its investigation.

 3         There is then the paragraphs that we have been

 4    referring to, as to all of the -- all of the activity that he

 5    and others engaged in in support of this conspiracy and the

 6    obstructive acts.

 7         It cannot be any clearer what the investigation and the

 8    official proceedings were that Mr. De Oliveira is charged with

 9    having -- having obstructed.  And lest there be any question

10    remaining as to what that proceeding -- what those proceedings

11    were, he has, through discovery, all of the information that

12    the government's provided.

13         He has the two subpoenas -- and those subpoenas have

14    been made public -- that are the foundation of the obstruction

15    counts:  The May 11th subpoena for documents with class- --

16    May 11, 2022, subpoena for documents bearing classification

17    markings; and the June 24th, 2022, subpoena for video footage.

18         All the grand jury transcripts that he has received

19    that span this -- this period of time, they're all from the

20    District of Columbia grand jury.

21         THE COURT:  So if -- if you were looking through the

22    indictment for an allegation that Mr. De Oliveira had knowledge

23    of the official proceeding, the grand jury that we're referring

24    to, where would you find that?

25         MR. BRATT:  You would find that in what I -- what I

1    just described, Your Honor.  You would define it -- find it in,

2    really, paragraphs 50 through 87.  You would find it in the

3    discovery that he has.

4        THE COURT:  You are giving me broad range paragraphs.

5        Which allegation in this superseding indictment

6    actually says that Mr. De Oliveira had knowledge of the

7    official proceeding?

8        MR. BRATT:  That is in the language in Counts 33 and

9    the other obstruction counts.  You cannot have the mens rea to

10   obstruct an official proceeding if you don't know that there is

11   an official proceeding.

12       THE COURT:  So, okay, I still haven't heard where in

13   this indictment -- I'm happy to go to whichever paragraph you

14   direct me to.

15       MR. BRATT:  It's paragraph 95, where we lay out the

16   statutory language.

17       THE COURT:  Okay.  So it's the recitation of the

18   statutory language.

19       MR. BRATT:  Yes, yes.

20       THE COURT:  That's it?  Okay.

21       MR. BRATT:  And you cannot read that language

22   that -- without -- and satisfy the mens rea without having

23   knowledge of the -- of an official proceeding.

24       THE COURT:  Okay.  Now, with respect to the term

25   "corruptly," and this will probably come up in the other

1  motions set for argument today, but what is your definition of

2  "corruptly"?

3          MR. BRATT:  So I am going to refer to Mr. Harbach, but

4  it's the Eleventh Circuit definition that we have previously

5  given the Court.

6          THE COURT:  Okay.  Which is?

7          MR. BRATT:  Which is --

8          THE COURT:  Or I'm happy to -- if Mr. Harbach is going

9  to cover this, then --

10          MR. BRATT:  I don't want to mangle it.  So --

11          THE COURT:  Okay.  All right.  That's fine then.

12          Now let's turn away from Count 33 and discuss my

13  questions earlier regarding the distinction between Counts 40

14  and 41.  Can you -- can you answer the same question that I

15  posed of Mr. Irving?

16          MR. BRATT:  Well, I -- I think I can give the same

17  answer that Mr. Irving gave.  This may be a rare area where we

18  are in agreement.  It charges different prongs of 1512.

19          THE COURT:  Factually, what's different?

20          MR. BRATT:  Factually, it's the -- essentially, the

21  same context --  both --

22          THE COURT:  Okay.  That's what I was curious.

23          MR. BRATT:  -- both allegations, yes.

24          THE COURT:  Factually, the same conduct, but just

25  invoking different provisions of 1512.

1          MR. BRATT:  Different ways of violating the statute.

2          THE COURT:  Okay.

3          Okay.  So then getting to the false statement, the

4     final count, 42.  Looking at the excerpt of the interview

5     provided and then looking at paragraph 120, what exactly, if

6     you had to pinpoint, is the false statement or false

7     statements, plural?

8          MR. BRATT:  So --

9          THE COURT:  In other words, he said "blank," but he

10    knew "blank" was false because why?

11         MR. BRATT:  So it is alleged that he was asked a

12    question -- and I should add, he knows from discovery, as he

13    said -- they have the full transcript -- that the agents told

14    them why they were asking these questions.  That they were

15    interested in the location movement of boxes at -- at

16    Mar-a-Lago.

17         So he is first asked a question:  At the end of the

18    presidency, was he part of any group that helped move boxes or

19    unload them when they arrived?  That's the -- sort of the

20    first, at the bottom of page 51, to the top of page 52, before

21    the three asterisks.

22         THE COURT:  So, just stopping there for a minute, the

23    statement is:  "I was not involved.  I was not part of any

24    group" --

25         MR. BRATT:  "That unloaded and moved boxes" --

1          THE COURT:  Okay.

2          MR. BRATT:  -- "at the end of the presidency."

3          THE COURT:  "I was not part of any group that unloaded

4    or moved boxes."

5          You said, "at the end of the presidency," is that --

6          MR. BRATT:  The question begins --

7          THE COURT:  I don't have the full interview; so I'm

8    just looking at the superseding indictment.

9          MR. BRATT:  Right, right.  And for purposes of the

10   motion, that's all we -- we -- we can be looking at.

11         THE COURT:  Right.

12         MR. BRATT:  But, again, the question is:  "When, after

13   the end of the presidency, boxes arrived to Mar-a-Lago, were

14   you part of any group to help" --

15         He interrupts, "No."

16         -- "and unload and move them?"

17         THE COURT:  Okay.  So stopping there.

18         He says:  "I was not part of any group" -- allegedly.

19   Again, these are all allegations; I should make that clear.

20   But "that unloaded or moved boxes after the end of the

21   presidency."

22         And the answer is "no."

23         MR. BRATT:  Correct.

24         THE COURT:  Okay.  And so the falsity there is that he

25   was, in fact, according to the Special Counsel, involved or

1   part of a group that moved boxes at the end of the presidency?

2            MR. BRATT:  That's correct.

3            THE COURT:  Okay.

4            MR. BRATT:  And as they know from discovery, there are

5   photographs reflecting that.

6            THE COURT:  Of the movement?

7            MR. BRATT:  Of him being part of the people moving the

8   boxes, correct --

9            THE COURT:  Okay.

10           MR. BRATT:  -- with the boxes.

11           THE COURT:  Now when you say "the boxes," is there any

12  understanding of which set of boxes?  I know that there is a

13  lot of briefing about which boxes.  We start with X number.  It

14  then whittles down to another number.  I know in the special

15  master litigation there was an inventory of, I believe, 33

16  items/boxes or containers.

17           In this Q and A, is there any reference to which boxes?

18           MR. BRATT:  No.  It is part of the efforts to

19  understand the movement of the boxes.  So the main resting

20  place of the boxes that arrived from the White House at the end

21  of Former President Trump's administration, particularly boxes

22  that were transported on Air Force One on January 20, 2021, but

23  other boxes --

24           THE COURT:  Can you stop there for just one moment --

25           MR. BRATT:  Yeah.

1          THE COURT:  -- in the terms of the chronology?  Because

2     the indictment references that -- I just had a question about

3     the timing.  One moment.  Yes.  It's paragraph 4:  "That as he

4     departed the White House" --

5          MR. BRATT:  Correct.

6          THE COURT:  -- "caused scores of boxes" -- was -- is it

7     alleged in this indictment that all of the boxes that are the

8     subject of the indictment were delivered on January 20th?  Or

9     were there other delivery dates associated with the boxes?

10         MR. BRATT:  So as a factual matter, there were other

11    delivery dates.  There were some boxes that arrived on -- in

12    moving vans.

13         THE COURT:  Prior to the 20th?

14         MR. BRATT:  I'm not -- I forget exactly which day they

15    arrived.  They're all right around the 20th.

16         THE COURT:  Okay.

17         Okay.  So getting back to what you were mentioning

18    earlier, we're talking now about the Q and A for Count 42 and

19    trying to understand which boxes are the subject of that

20    recorded interview.

21         MR. BRATT:  Correct.

22         So there were boxes that arrived on January 20th, 2021.

23    They were on Air Force One.  They were unloaded at Palm Beach

24    International Airport.  They were loaded into SUVs that came

25    from Mar-a-Lago, and they were transported to Mar-a-Lago.  And

1    the bulk of them ended up on the stage in the White & Gold

2    Ballroom -- of those boxes that arrived.  And we allege that

3    his answers and unawareness of those boxes were false.

4         THE COURT:  Okay.  All right.  Now can you address the

5    materiality argument?

6         MR. BRATT:  Yes.  Well, again, it is alleged that they

7    were material.  And they know from -- and part of our proof

8    would be that when he was interviewed, he was advised as to the

9    interest that the agents had in the subject matter about which

10   they were questioning him.

11        And we can either -- the Court will give an instruction

12   on -- on materiality, and we will either be able to meet that

13   burden, or we won't meet that burden.  Or maybe he will be able

14   to convince you at the Rule 29 stage that we haven't met that

15   burden.  But for purposes of a motion to dismiss the

16   indictment, what we have alleged is more than sufficient.

17        THE COURT:  But it's correct that the arguments on

18   materiality are reflected in your opposition at 372, page 14?

19        MR. BRATT:  Yes.

20        THE COURT:  Okay.  Are you aware of any case law that

21   would discuss the need to further specify why a false statement

22   is material other than just saying it's material?

23        MR. BRATT:  No.  And, in fact -- I know you did not

24   engage with Mr. Irving about his arguments on bill of

25   particulars, but that is the -- the exact type of question that

1  the Eleventh Circuit said is not appropriate for a bill of

2  particulars.  For us to --

3       THE COURT:  I ask only because, for example, in white

4  collar cases, oftentimes the indictments say, "Well, it's

5  material because if we had known about the lie, we wouldn't

6  have paid out the money," or something along those lines.

7       And I'm just curious whether something comparable would

8  be included in this type of charge.

9       MR. BRATT:  I'm not aware of any Eleventh Circuit

10  authority, and I haven't seen any in their briefing.

11       THE COURT:  Okay.  All right.

12       Anything further, Mr. Bratt?

13       MR. BRATT:  Not unless you have questions about his

14  specific bill of particulars request.  But I think a lot of the

15  same principles are going to come up in Mr. Nauta's argument.

16       THE COURT:  All right.  Well, then, let's

17  just -- turning to the bill of particulars, I understand your

18  position to be that none of the requested information is

19  something the government would be in a position to provide in

20  the form of a bill of particulars; is that right?

21       MR. BRATT:  Right.  And I think there are three

22  overarching points, and this way it applies to both motions.

23  The first is that the bill of particulars is not appropriate

24  when an indictment, one, is very detailed, as this one is, and

25  two, where discovery has been extensive, as it has been here.

1    That's really black letter --

2         THE COURT:  But, for example, on the official

3    proceeding, it's clear that the indictment doesn't -- other

4    than tracking the statutory language, doesn't allege that he

5    knew of the existence of an official proceeding.  I think we've

6    talked about how paragraph 95 is -- I would appreciate no

7    sarcasm.

8         So --

9         MR. BRATT:  I didn't --

10        THE COURT:  Given that -- given that, what I'm trying

11   to understand is:  Because the indictment doesn't contain a

12   specific allegation about his knowledge of the official

13   proceeding, then why would the Special Counsel be opposed to

14   providing a bill of particulars, at least with respect to that

15   one discrete point, which is just governing the official

16   proceeding?

17        MR. BRATT:  So two things.  One -- and I wasn't going

18   to say something sarcastic; I would never do that, Your Honor.

19        But our argument is, if you look at the plain language,

20   both in the statute and what we allege, "with intent to impair

21   the object's integrity and availability for use in an official

22   proceeding," that is alleging that he has to be aware of an

23   official proceeding.  And -- so that's the first part, that we

24   have alleged it and we have properly alleged it.

25        The second part of my answer is that -- what he is

1   asking us to do in the bill of particulars.  And when a

2   particular -- a bill of particulars begins with why or how, he

3   is asking us to give our theory of the case.  He is asking us

4   to set out the facts and -- both direct and circumstantial --

5   that support the element that we have alleged, and that is not

6   what the law requires.

7          And so to answer that question, essentially would be

8   requiring us -- and this -- this holds true for many of the

9   questions that -- that are in Defendant Nauta's motion that

10  Mr. Woodward has argued.  For us to do that would essentially

11  be to give, at this stage, our closing summation.  It would

12  all -- be all of our arguments, marshalling all the proof, and

13  saying this is --

14         THE COURT:  But would it be just focusing on the

15  knowledge piece on the official proceeding?

16         MR. BRATT:  Yes.  There are any number of facts that we

17  can point to that show that Mr. De Oliveira and Mr. Nauta were

18  aware of the official proceeding.  We understand that's our

19  burden, and they have -- they have all of the -- the -- the

20  same evidence that we have.  And we look at that evidence, and

21  we plan to make particular arguments to the jury and, at the

22  proper stage, to the Court.

23         But we do not have to give those arguments now in

24  response to a bill of particulars.  That runs directly squarely

25  in the face of what the Eleventh Circuit has held.

1          THE COURT:  Okay.  All right.  Thank you.

2          Anything further, Mr. De Oliveira, on your particular

3     motion?

4          MR. IRVING:  If I may just briefly.

5          Your Honor, just on that -- on that last point, I

6     understand that the law doesn't, you know -- the government

7     quoted cases that discuss how they don't have to, you know,

8     give up all their theories of the case and whatnot at this

9     stage, but we are getting kind of late in the game here.  If

10    the government doesn't understand and -- and can't explain what

11    facts there are to suggest that Mr. De Oliveira had any

12    knowledge of an official proceeding anywhere or investigation

13    or --

14         THE COURT:  Well, I think they said that that they do

15    have all of that, that it's in the discovery, and that it's

16    part of their case.  So it's in the facts; it's just not more

17    specifically alleged beyond tracking the statutory language.

18         MR. IRVING:  Understood, Your Honor.  I -- I just -- I

19    don't think it's too much to ask that they -- that they

20    articulate that in a -- in a situation where -- as I said

21    before, yes, they tracked the statutory language, but then they

22    have this -- you know, pages and pages of rambling superseding

23    indictment that say nowhere anything about the fact.

24         So I will leave that at that.

25         THE COURT:  Do you have any authority that would

1    suggest that a more specific allegation of materiality is

2    necessary, other than what's been achieved here, which is a

3    reference to the statutory term?

4         MR. IRVING:  Are we talking about the false statement

5    or the --

6         THE COURT:  The false statement, yes.

7         MR. IRVING:  I don't know -- I don't have a case to

8    give you at the moment.

9         THE COURT:  Okay.  All right.  Then, thank you.

10        MR. IRVING:  Thank you.

11        THE COURT:  I think that concludes the Court's

12   argument -- hearing of argument on your motion, Mr. Irving.

13        MR. IRVING:  Thank you.

14        THE COURT:  So with that, let me turn to Mr. Woodward

15   or whoever will be addressing the two remaining motions.

16        MR. WOODWARD:  Thank you, Your Honor.

17        I also just wanted to thank the Court for setting the

18   hearing today.  I didn't put in the -- in the public filing,

19   but I don't mind saying here that we're headed home tonight and

20   back down to Disney World tomorrow with the family.  So I

21   really appreciate both the Court and the Special Counsel's

22   office not objecting to that request.

23        So two motions.  But as the Court, I think, has

24   observed, they're somewhat -- they're somewhat related, both to

25   each other and to Mr. De Oliveira's motion.  And so I will

1    start first with the vagueness argument because that will tie

2    into the significance.  Whether the Court grants that or

3    whether the Court concludes -- you know, we can read the

4    writing on the wall that this is a jury instruction issue, it

5    will then tie into the significance of the second request.

6           And the vagueness argument focuses on the use of the

7    phrase "corruptly."  "Corruptly" is found in 1512 and its

8    sister statutes.  It's found throughout each of the charges

9    that are alleged as against Mr. Nauta with respect to

10   obstruction.

11          And while we appreciate -- we appreciate the Special

12   Counsel's position that the Eleventh Circuit has at least

13   accepted one definition of "corruptly," we take issue with the

14   fact that this Court would be bound by Friske -- or Friske and

15   its holding.

16          Frankly, vagueness wasn't the issue before the Court.

17   And so what we have here is a term that the Special Counsel's

18   office and this Court has required to conclude Mr. Nauta is on

19   notice of; otherwise, we have a due process concern.  And as

20   the Court just went through in some detail, it's not clear how

21   Mr. Nauta knew about the official proceeding that was -- that

22   was going on, and certainly the indictment doesn't make that

23   clear.  And as a result, the use of these statutes and the use

24   the phrase "corruptly" as applied to Mr. Nauta is

25   unconstitutional insofar as he's not put on notice of what

1    "corruptly" means.

2         And, you know, really --

3         THE COURT:  So, I guess, what definition do you think

4    applies to the term "corruptly"?

5         MR. WOODWARD:  Well, we would argue that Justice Scalia

6    presciently addressed this issue when he opined, albeit in a

7    concurring opinion, that -- excuse me -- in -- concurring in

8    part and dissenting in part -- that for one to act corruptly,

9    there must have been -- there must be proof that they had a

10   pecuniary benefit in their actions.

11        And I'm citing, of course, to United States vs.

12   Aguilar, 515US539.

13        THE COURT:  I guess my question is:  Even if you

14   adopted, not a pecuniary test, but a benefit, you procure a

15   benefit for yourself or someone else, wouldn't that still be

16   alleged in this indictment because the purpose of the

17   conspiracy, as stated in 96, alleges a purpose to help the

18   former president keep classified documents he wanted to

19   conceal?

20        MR. WOODWARD:  No, because just as -- I'm going to

21   respond to that in two ways, actually.

22        First, as the Special Counsel reminded me not long ago,

23   there is only one conspiracy charge.  And so all of the other

24   uses of "corruptly" apply only to Mr. Nauta.  And so what

25   benefit did Mr. Nauta himself seek to obtain?

1      They've conceded that the only person benefitting from

2   these acts was Former President Trump.  Now, with respect to

3   the conspiracy, what Justice Scalia explained is that there has

4   to be a financial benefit.  And there is no allegation in the

5   indictment, nor is there any proof otherwise, but we're working

6   with the indictment here, that Former President Trump stood to

7   benefit financially from obstructing the proceeding --

8      THE COURT:  But even the Fischer case that you cited,

9   even that decision, assuming you agreed with the concurrence,

10  even that concurrence, as it explains the "corruptly" element,

11  does not require financial benefit, does it?

12     MR. WOODWARD:  That's correct.  It does not.  In fact,

13  it is the dissenting opinion in which a financial benefit is

14  required, and it's the dissent that is referring back to

15  Aguilar in Justice Scalia's discussion of -- and so when

16  Your Honor says "any benefit at all," that is the concurring

17  view.

18     And so what the -- I think it was Judge Walker wrote in

19  his concurring opinion is that the benefit does not have to be

20  financial; there just has to be a benefit.  There has to be a

21  specific benefit --

22     THE COURT:  For yourself or for someone else?

23     And so that's my question, is:  Why wouldn't

24  paragraph 96 sufficiently address the "corruptly," even

25  assuming your view of the definition is correct?

1          MR. WOODWARD:  So paragraph 96 would

2   address -- would -- might address "corruptly" with respect to

3   the conspiracy charge, but it would not address it with respect

4   to the charges as against -- no.  I'm sorry, Your Honor.

5          "For yourself or someone else," that's not how the

6   individual 1512 charges are laid out.  It is for Mr. Nauta's

7   benefit.  And I think the Special Counsel's office

8   recognizes -- I think they've conceded that they do not allege

9   that Mr. Nauta stood to benefit from moving the boxes.

10          And so, as pleaded in the indictment, taking, again,

11   apart -- taking -- setting aside the conspiracy charge, all of

12   the other counts must fall because there is no benefit to

13   Mr. Nauta under the Walker definition of "corruptly" in the

14   Fischer decision.

15          And, in fact, that's why we think the Special Counsel

16   is going to rely on the -- do you have a preference between

17   "Friske" or "Friske"?

18          THE COURT:  No.

19          MR. WOODWARD:  Okay.  I will go with "Friske" then.

20          I think that's why they're relying on that definition

21   of "corruptly" in Friske, because it doesn't require any

22   benefit to anyone at all.  It just requires an improper motive.

23          And so if -- if the Court were to adopt the Walker

24   concurrence in Fischer, then -- then the indictment has to

25   fall.  But let's take a step back --

1     THE COURT:  It would be odd, right, to go beyond -- I

2  mean, Friske, perhaps, didn't grapple with the definition in

3  specific terms, but, nevertheless, laid out the elements of the

4  cause of action and clearly states the "improper purpose"

5  language, which is fairly customary, and then, I think, is

6  picked up in other Eleventh Circuit cases.  So it would be odd

7  to stray from the improper purpose.  And then, of course, you

8  just pick up paragraph 96 as the alleged improper purpose.

9     MR. WOODWARD:  Well, Your Honor, I think, respectfully,

10  to my colleagues that defended clients in Friske and other

11  cases, that the issue wasn't argued, doesn't mean that it

12  wasn't an issue to be argued in those cases.  I think

13  Your Honor every day sees new arguments.  That is sort of the

14  nature of what we do.

15     And so, importantly, Friske does not preclude the Court

16  from requiring more.  And, again, we're getting into -- I can

17  hear my colleague behind me saying "charging conference."

18  We're getting into a discussion that might be more apt for a

19  charging conference, when, really, the purpose of this motion

20  is to make the point that there are multiple definitions of

21  "corruptly," and as a result of the -- of multiple definitions

22  of "corruptly," Mr. Nauta is not on notice of how his actions

23  violated the statute.  And that is why we have found ourselves

24  in a situation where the -- those charges that require corrupt

25  acts have to be dismissed as against Mr. Nauta.  After all --

1          THE COURT:  You're not aware, though, of any case that

2     has actually dismissed a 1512 charge at the motion-to-dismiss

3     stage because there are -- there is development in the law in

4     the particular definition of the adverb "corruptly"?

5          MR. WOODWARD:  Well, Fischer itself.  Fischer itself is

6     a dismissal of an indictment --

7          THE COURT:  Right.

8          MR. WOODWARD:  -- but it was appealed by the

9     U.S. Attorney's Office.

10          THE COURT:  Yes, but that concerned a different

11     subsection of C, which is not involved here.  Here we are

12     dealing with an evidence impairment act, are we not?  And so,

13     although the mens rea was relevant to the D.C. Circuit in

14     trying to understand whether that charge survived dismissal,

15     how does that play out here where we're not dealing with

16     anything other than an evidence impairment charge?

17          Does that -- in other words, we're not dealing

18     with -- with an expansion of the actus reus, which is what is,

19     you know, being heard by the Supreme Court in Fischer.

20          MR. WOODWARD:  So that -- I agree that that is the --

21     what the Supreme Court has said that they are focused on.  I

22     disagree with the Special Counsel's office that that is what

23     Judge Nichols, the trial judge in Fischer, was considering.

24          And I will also observe that Fischer is a -- is a

25     three -- there are three defendants, three separate cases:

1    Fischer, Miller, and Lang.  And Judge Nichols was presented

2    with a very robust argument about the flaws in 1512.  And so,

3    while the Court is correct that 1512(c)(2), which uses the also

4    intriguing phrase, "otherwise," and that has been the focus of

5    significant dispute, the "corruptly" actually applies both to

6    1512(b) and 15 -- 1512(c)(1) and 1512(c)(2).  That "corruptly"

7    word is at -- is at the outset.

8           So the logic -- of course, none of this is binding on

9    this Court.  This is all, as I like to say, a far away

10   district.  But the logic is applicable here too.

11          And so Your Honor's question was:  Am I aware of a

12   Court granting a motion to dismiss because there is -- because

13   there is varying interpretation of a statutory phrase?

14          And I want to make clear -- I said Fischer.  That's not

15   what happened in Fischer.  It wasn't that the defendants in

16   Fischer came to Judge Nichols and said, we now have this

17   circuit split, for example.

18          So, no, I'm not aware of that.  Candidly, I had not

19   considered the question in that way, but I don't know that that

20   precludes dismissal here.  Because the reality is, what we have

21   now, as we pointed out in our briefs, three different

22   interpretations of "corruptly."  And what the circuit said

23   in -- in the -- Judge Pan said in her leading opinion is, it

24   doesn't matter because any of these three definitions would

25   apply to Mr. Fischer himself.

1          That's not true with respect to Mr. Nauta.  And so,

2     under the due -- under Mr. Nauta's due process rights, he is

3     entitled to know which of those three definitions applies when

4     he is indicted with these charges.  And because we now cannot

5     know that, the statute becomes vague.

6          THE COURT:  But this confusion that you have indicated

7     exists, doesn't really exist in the Eleventh Circuit.  I mean,

8     Friske and at least one other case pretty clearly adopts the

9     improper purpose language, and it's fairly understood to be the

10    definition.  So why could -- why would that create such

11    grievous ambiguity for purposes of someone trying to conform

12    their conduct to the law?

13         MR. WOODWARD:  Of course, we don't know why, again,

14    defense counsel didn't -- didn't argue.  Now, Friske is itself

15    decided -- if the Court will forgive me -- in 2011; so some

16    13 years ago.  And none of these issues had bubbled up.

17         And, in fact, Justice Scalia's opinion is concurring in

18    part and dissenting in part.  And so we didn't have a scenario

19    where -- where the definition of "corruptly" was -- was

20    varying, but that's why we have these arguments, and that's why

21    we bring these issues to trial courts' attention because the

22    law does change.

23         And Mr. Nauta is now serving as a victim to that change

24    because he doesn't know what the definition of "corruptly" will

25    be when the Supreme Court is finished with it.

1          THE COURT:  Do you think there is some dispute about

2     whether the Supreme Court will even address the mens rea

3     component in that case?  It was included in the -- in the cert

4     petition and in the merits briefing, but it's more of a

5     secondary, subsidiary argument.  So what's your position on

6     whether guidance is really going to come from the -- from the

7     Court on the term "corruptly"?

8          MR. WOODWARD:  They certainly have indicated that --

9     that it's not going to come.  At the same token, the Supreme

10    Court does what it wants.  And it -- and it seems unlikely to

11    me that they will ignore this "corruptly" issue.  It has

12    come -- it has presented itself in a number of ways now.

13         And I think, whether it's in the Fischer case -- or now

14    that the Robertson decision has come down and called into

15    question what the actual definition of "corruptly" is,

16    this -- this law -- this litigation is going to continue for

17    some time.  I don't think the time --

18         THE COURT:  But Robertson is at the end of the road,

19    right?  There is -- there is no pending litigation in that

20    case?

21         MR. WOODWARD:  I was going to say I don't know that the

22    time has been exhausted for the Robertson Court -- for the

23    Robertson defendant to seek en banc review.  I don't think it

24    has.  I think that -- I think they can still seek en banc

25    review, but I -- I won't ask the Court to quote me on that.

1          THE COURT:  Okay.

2          MR. WOODWARD:  And so -- and Robertson, you know, just

3    further confuses -- again, we're not in D.C.; I appreciate

4    that.  And in the Eleventh Circuit -- the sort of plain-meaning

5    definition of "corruptly" has been accepted, but I don't

6    read -- we don't read Friske as requiring this Court to adopt

7    the definition used in Friske; whereas, here, a defendant is

8    arguing that it -- it should not, given the trend in the law

9    with respect to "corruptly" and what a defendant need have been

10   thinking when the alleged crimes were committed.

11         THE COURT:  Okay.  Anything further on your motion to

12   dismiss beyond the "corruptly" definition?

13         MR. WOODWARD:  No, Your Honor.  I'm happy to transition

14   to the boxes.

15         So we -- we hear the Special Counsel's office with

16   respect to their obligation in an indictment.  It is minimal.

17   Rule 7 does not require a speaking indictment, but I do think

18   that that's a fact of consequence in this particular case.

19         We have a speaking indictment.  And although

20   the -- their choice of bringing a speaking indictment does not,

21   at this stage, change their -- their constitutional

22   obligations, it is telling in what it does not say.  Had they

23   brought a nonspeaking indictment, had they simply alleged the

24   elements of the offenses, we'd still be here, to be sure; we

25   would still be here talking about a bill of particulars.

1          Why?  Because a bill of particulars is a -- not a tool

2     that -- that allows the Court to force the government to

3     supersede the indictment.  That's not what a bill of

4     particulars is.  Rather, a bill of particulars is a tool that

5     allows a defendant to request, and for the Court to order the

6     government to explain to a defendant how these charges operate.

7          Now, yes, the Special Counsel's office focuses on why a

8     bill of particulars cannot serve as a discovery tool.  I

9     understand that as well.  But I take issue with the way that

10    they've characterized what is being requested here.  We're not

11    asking for closing argument in this case.  We're asking for the

12    facts that are necessary for the elements of the offenses to be

13    proven.  Nor do we think it is sufficient for the government to

14    point us to -- I think, we're up to 1.3 million-plus pages of

15    discovery -- and say it's in there somewhere.

16         So stepping back, what is the standard for a bill of

17    particulars and what is required?  It is -- the Court asked

18    Mr. Irving early on in your colloquy:  What is the pleading

19    standard?  Again, I think that's sort of a separate issue.

20    Whether they have met the bare pleading requirements is not

21    what we're pointing out here.

22         As the Eleventh Circuit observed in Anderson, quote, "a

23    bill of particulars, properly viewed, supplements an indictment

24    by providing the defendant with information necessary for

25    preparation."

1          THE COURT:  Okay.  So let's get to that.  What

2     information do you think is necessary for your preparation that

3     you don't otherwise have in the superseding indictment?

4          MR. WOODWARD:  How did the boxes with classification

5     markings get to the storage room?

6          The narrative, as told by the superseding indictment,

7     is that we have some 60 boxes in a storage room that are

8     reviewed by Trump Attorney 1.  We also know from evidence,

9     although not in the -- we also know from the discovery in this

10    case, that Trump Attorney 1 says he reviewed all of the

11    documents that were in the storage room.

12         We then have in the indictment a set number of

13    boxes -- actually, now I'm going to get the numbers wrong

14    already.  Here I thought I would at least get through -- we

15    have 60 boxes that are moved, roughly 60 boxes that are moved

16    from the storage room to the residential area.  And then we

17    have half of that, 35 or so boxes, that are moved from -- as

18    alleged, from the residential area to the storage room.

19         And so, when Trump Attorney 1 conducts the search, the

20    allegation is not all of the boxes were available to

21    Trump Attorney 1 when that search was conducted; those boxes

22    were somewhere else.

23         We don't know if the government's -- believes that they

24    were in the residence.  We don't know if they believe they were

25    in the office.  We don't know if they believe they were in some

1    other location.

2        But what we do know is that what Mr. Nauta is charged

3    with is concealing documents with classified -- classification

4    markings that were not present for Trump Attorney 1's review.

5        What we then know is that when the FBI conducted its

6    search of the storage room and the residence, we -- they

7    discovered additional documents with classification markings in

8    one of those two places; only the storage room.  And so, the

9    indictment insinuates -- and I'm ignoring the office because,

10   to my understanding, Mr. Nauta is not alleged to have moved

11   boxes in or around the office area, but we can -- we can come

12   back to that.

13       So they're not -- no classification markings are

14   discovered in the residence.  And now, classification markings

15   are discovered in the storage room; the insinuation being, is

16   that they were not there when Trump Attorney 1 conducted the

17   search of the storage room.

18       THE COURT:  Okay.  So what is missing in terms of the

19   allegations there?  It's a fairly specific, I would say, very

20   lengthy 60-page indictment.  What exactly is missing in terms

21   of the movement of boxes?  Which boxes went where at what time?

22   Whether such boxes were the ones that contain the classified

23   documents or not?  What is missing?

24       MR. WOODWARD:  The crime that Mr. Nauta is charged with

25   is moving boxes that contained classification markings.  And

1    so, the only way for Mr. Nauta to -- to be guilty of that crime

2    is if the boxes with documents that had classification markings

3    got put back into the storage room by Mr. Nauta.  And that's

4    not alleged.  We don't know how the boxes that contained

5    classification markings, that were in the storage room, got

6    there so that the FBI found them when they conducted their

7    search of Mar-a-Lago.

8           Because if Mr. Nauta didn't put them there, if

9    Mr. Nauta didn't move any boxes with classification markings,

10   he is not participating in any effort to conceal the documents

11   with classification markings from Trump Attorney 1, the FBI --

12          THE COURT:  But doesn't the indictment clearly allege

13   that he did move boxes containing classified materials?

14          MR. WOODWARD:  The indictment alleges that he moved

15   boxes containing classified materials.  We are asking

16   how the -- what evidence there is of that fact.  And a bill of

17   particulars allows the Court to order the Special Counsel's

18   office to tell us necessary facts to prepare our defense,

19   and -- and we don't have those facts.  They may claim that

20   those facts are in discovery, but I don't know them; and so, I

21   can't prepare my defense of Mr. Nauta without knowing those

22   facts.

23          THE COURT:  It seems like you're expanding the bill of

24   particulars device.  But just so that I understand, the

25   specific piece of information that you're looking for, say it

1    one more time.

2           MR. WOODWARD:  How did the boxes containing

3    classification markings get to the Mar-a-Lago storage room

4    prior to the FBI's search on August, I think, 8th -- it might

5    be 4th, though -- in early August.

6           Because if Mr. Nauta did not move those boxes, then the

7    government cannot prove that Mr. Nauta moved boxes with

8    classification markings in an effort to conceal them from the

9    grand jury.

10          THE COURT:  All right.  But you have a ton of

11   discovery, presumably many witness interviews, and other

12   statements to pore over.  Wouldn't it just be the normal

13   practice for you to look through the discovery and figure out

14   what evidence exists to support how the boxes got to the

15   storage room?

16          MR. WOODWARD:  Of course.  And we've done that.

17          THE COURT:  Well, then what's the issue?

18          MR. WOODWARD:  We don't know.  There is

19   no -- we're -- we're unaware of what evidence there is that the

20   government is going to use to prove up this theory.

21          And, again, I'm -- there is, I think, a very important

22   distinction between asking the government to give its closing

23   argument, which we're not doing, and asking the government to

24   identify the evidence in discovery that reveals how the boxes

25   moved from one place to the other.

1        The indictment makes clear there were more boxes when

2    the FBI conducted its search than there were when

3    Mr. XXXXXXXX -- I'm so sorry, Judge -- when the --

4    Trump Attorney 1 conducted that search.  That, the indictment

5    makes clear.

6        What we don't understand is why.  And the discovery, we

7    submit, does not reveal that answer.  And I will take that one

8    step farther.  It seems to us that the Special Counsel's

9    office's theory on that question, and the way that they present

10   it to the -- the District Court in D.C., and the way that they

11   present it in their various affidavits in support of either --

12   search warrants, et cetera, changes.

13       And so when we -- when we go to the evidence that we

14   have been provided, their theory on -- on how all of this

15   played out is inconsistent.  And it cannot be, Your Honor, that

16   the first time Mr. Nauta and his defense counsel learn about

17   what evidence there is to show that he moved boxes with

18   classification markings in them is when the Special Counsel

19   gives its opening statement.  And that -- that puts on its head

20   our ability to prepare an adequate defense for Mr. Nauta.

21       THE COURT:  Okay.  Thank you.

22       I've -- unless you have something further on your bill

23   of particulars request, then I will turn it over to

24   Mr. Harbach.

25       MR. WOODWARD:  I don't know if Your Honor wants to

1    table to last this question of the grand jury disclosure or

2    not, or if you want me to respond to the government --

3          THE COURT:  Well, we will -- it's going to become too

4    lengthy if we try to inject that now.  So for now, we're going

5    to stay focused on the arguments made in the motion.

6          Mr. Harbach.

7          MR. HARBACH:  Good afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          MR. HARBACH:  I'm here to discuss the meaning of the

10   word "corruptly."  And I think my remarks may be -- may be a

11   little more abbreviated than they otherwise would have, in

12   light of some of Your Honor's questions to Mr. Nauta.  But if I

13   get to a point where I'm being redundant or it's something you

14   already know, feel free to just move me along.

15         I think Your Honor hit on a couple of very important

16   points that should be focused on at the outset.

17         Number 1, the Eleventh Circuit has defined the term

18   "corruptly" as its used in 1512(c).  That's in Friske.  And the

19   language, for the record is:  "With an improper purpose and to

20   engage in conduct, knowingly and dishonestly, with the specific

21   intent to subvert, impede, or obstruct the proceeding."

22   Period.  "The Eleventh Circuit has ruled on what it means in

23   the context of this statute."

24         I will go one step further, alluding to a question

25   Your Honor asked earlier.  The government is not aware of any

1    Court finding the word -- the definition of the word

2    "corruptly" in the context of 1512 to be vague.  And Mr. Nauta

3    certainly cites no such case in the Eleventh Circuit or

4    otherwise.

5         What he says is, "Well, the Friske court wasn't

6    specifically entertaining whether "corruptly" was vague.  And,

7    therefore, this Court should give it limited -- limited weight

8    in deciding what the correct standard should be here."  But

9    note the conflation there.

10        Mr. Nauta's brief opens with:  "The correct definition

11   of 'corruptly' is for the benefit of one's self or another" --

12   and he's tried to chop off that -- that last part here today.

13   That's his first argument.

14        We say no.  Friske says clearly what the standard is in

15   the Eleventh Circuit.  And he says, okay, well, fine, but it's

16   vague.

17        What authority does he point to, to say that

18   "corruptly" is vague?  Again, certainly none in the

19   Eleventh Circuit.  He points to Fischer, but neither Fischer

20   nor Robertson, a case he only cites in a footnote for its

21   dissent, concluded that "corruptly" was vague.

22        Fischer, as Your Honor plainly understands, concerned

23   the actus reus part of the crime and deciding whether,

24   otherwise, as it appears between (c)(1) and (c)(2), means more

25   stuff like documents or more stuff not like documents.  That

1    was the issue there.

2          Now, it is true that Judge Pan in the lead opinion in

3    Fischer mentions "corruptly" for the proposition that it has to

4    do some work in the statute so that the residual clause or the

5    omnibus clause in (c)(2), isn't in danger of being

6    unconstitutionally overbroad.

7          But a couple of things to note there.  One, she

8    specifically said We're not deciding what corruptly means in

9    this case for two reasons.  One, the conduct of all of the

10   defendants -- that the conduct of the defendants there was

11   independently illegal and, therefore, it would have satisfied

12   any -- any definition of corruptly.  And two, she said,

13   you know, there is this other case in the pipeline, Robertson,

14   that is about to come down the pike in a couple of months, and

15   the question of what corruptly means is squarely presented

16   there, unlike here.  So we're not going to entertain it.

17         THE COURT:  In -- ultimately, in Robertson, what is the

18   definition chosen?  It's a little bit hard to find exactly what

19   the definition ultimately adopted is.

20         MR. HARBACH:  I had the same reaction, but I think it

21   ultimately is not too far from what the Eleventh Circuit's

22   definition is.  Give me one second.

23         THE COURT:  I kept looking for a sentence in the

24   opinion like, "'Corruptly' means" -- and then I wasn't quite

25   finding that.

1        MR. HARBACH:  Right, right.

2        So one place it appears is at 367 of the opinion.  And

3    this is -- this is toward the end of where they've -- they've

4    gone through some other cases.  But in 367 it says:  "Those

5    cases confirm, moreover, that the requirement that a defendant

6    act 'corruptly' is met by establishing that the defendant acted

7    with a corrupt purpose or via independently corrupt means."

8    And then quoting another case, "To say that someone corruptly

9    endeavors to obstruct an inquiry might mean, one, that he does

10   so with a corrupt purpose, or, two, that he does so by

11   independently corrupt means, or both."

12       Give me one second.

13       And there is a little bit further elaboration

14   saying --

15       THE COURT:  So, basically, "corruptly" means acting

16   with a corrupt purpose.

17       MR. HARBACH:  Well, this is -- I anticipated the

18   Court's question.  There is a citation to another case that

19   says:  "Whenever the means used are not independently criminal,

20   the jury cannot avoid considering the defendant's purpose, if

21   it is to meaningfully determine whether the endeavor was

22   corrupt or evil or depraved."

23       Again, it is definitely with reference to purpose, to

24   be sure, which, as I said a moment ago, isn't far from the

25   Eleventh Circuit's definition.

1          So what's the point?  We don't believe that this

2     course -- this Court has to fully dissect what the D.C. circuit

3     was trying to say in Robertson.  It should be enough that, A,

4     the Eleventh Circuit has articulated a standard, and B, to the

5     extent the Court is interested in what another circuit might

6     have said about it, it's enough to say two things.  One, that

7     the D.C. circuit opinion is pretty close to the

8     Eleventh Circuit in terms of what it's trying to get at, and

9     two, it's not vague.

10          The Robertson court didn't determine that it was vague.

11     The parties didn't even argue that it was vague in the

12     appellate court, even though they had argued that below in the

13     district court.

14          So, again, not trying to -- not get conflated here.

15     Remember, we're only talking about Fischer and Robertson and

16     that stuff because of the predicate argument that Mr. Nauta

17     makes that the definition -- that the word "corruptly" is

18     somehow vague.  And so that's our second point with respect to

19     those opinions.  They're not -- they shouldn't be read as being

20     inconsistent with the Eleventh Circuit.  And second, neither

21     they nor any court we have found that is concluded that

22     "corruptly" is vague.

23          THE COURT:  Although I think you would acknowledge,

24     right, that -- that it's susceptible to different formulations

25     and that there are sort of different options and that even

1    courts trying to define the term, frankly, have sort of

2    struggled in articulating exactly what it means.

3          And so that's what we're left with.  Maybe the Supreme

4    Court provides a little bit of guidance on "corruptly," maybe

5    it doesn't, but at the end of the day, we have Friske.

6          MR. HARBACH:  It's -- it -- I will add one additional

7    observation there, and it is, I think, in the very last line of

8    our response brief where we make the point, I think, in

9    answering the rule of lenity argument, that there are a couple

10   Supreme Court cases that made clear that just because judges

11   may disagree at the margins about what a certain term of art

12   means in the law, that does not necessarily make for ambiguity,

13   much less unconstitutional ambiguity or grievous ambiguity so

14   that the rule of lenity is necessary.

15         So, you know, it's not that different from the word

16   willfully.  There is -- that's kind of a messy one too.  But,

17   again, for present purposes on this indictment, with the

18   guiding case law from the Eleventh Circuit, there is no reason

19   to conclude that that definition wouldn't work just fine.

20   There is no reason to think that the cases out of D.C. that the

21   defendant cites suggests that there is any vagueness in the

22   term, nor is there any reason to think, for the -- the reasons

23   Your Honor already expressed, that the Supreme Court in

24   deciding Fischer will -- will weigh on -- in on this in a

25   meaningful way, such that the Court can't rule on this Rule 12

1    motion.

2            THE COURT:  That all makes sense.

3            Let me just ask you, though, hypothetically, assuming

4    the test were that you have to procure a benefit for yourself

5    or someone else, then do you think the allegations in the

6    indictment still would satisfy --

7            MR. HARBACH:  You already said it.  Yes, ma'am.

8            THE COURT:  And that's because of paragraph 96?

9            MR. HARBACH:  That is the -- that is -- well, it's

10   not -- paragraph 96 is the most explicit place that it's

11   mentioned, for sure.

12           But the notion that these documents were attempted

13   to -- being protected so that President Trump could keep them,

14   I mean, that's pregnant throughout the entire indictment.  So,

15   yes, 96 is explicit about that, but we would share your

16   skepticism of deleting, or another, or insisting that the

17   benefit be pecuniary.  There is no -- there is no basis for any

18   of that, even if we went with this quid pro quo theory of

19   "corruptly."

20           THE COURT:  Is it clear to you whether the Supreme

21   Court will or will not take up the mens rea component, if it's

22   hard to tell?

23           MR. HARBACH:  I will tell you what -- I will tell you

24   what we do know.  It's plainly not within the question

25   presented to the Court.  The only question --

1          THE COURT:  Unless you view the question presented to

2     say, well, in addressing the act as we pull and we draw from

3     the mens rea, and in that context, you would get there; and

4     there is a nexus, so we have to kind of address it one way or

5     the other.

6          MR. HARBACH:  All right.  So I think this is

7     exceedingly unlikely.  The best case I could -- if I'm playing

8     the other side, the best case I could make is the Court says,

9     (c)(2) should be read in the broad way the government wants,

10    but "corruptly" -- in other words, take Judge Walker's

11    position.  If the Supreme Court took Judge Walker's position,

12    even then, the answer would be, well, that -- that might

13    sure -- sure as heck inform the jury instruction that's given

14    in this case, but it wouldn't mean that there is a pleading

15    deficiency.  The indictment would still be amply pled as it

16    is --

17          THE COURT:  The benefit being, in that case, procuring

18    the benefit for himself or someone else.  What would be the

19    closest allegation for that in the indictment?

20          MR. HARBACH:  It was what we just talked about a moment

21    ago.

22          THE COURT:  96.

23          MR. HARBACH:  If it's the benefit for someone else,

24    absolutely.

25          And that -- again, explicit in 96, but we would argue

1    it's all over the indictment in terms of what was going on

2    here, what they were trying to do.

3            THE COURT:  Okay.  All right.  Let's see.  So we've

4    talked about "corruptly."  Anything more on that term?

5            MR. HARBACH:  Nothing more on "corruptly."

6            I will turn it over to my colleague for the -- if

7    Your Honor has any questions for us on Mr. Nauta's bill of

8    particulars arguments.

9            THE COURT:  Oh, Mr. Bratt is going to handle that?

10           MR. HARBACH:  Yes, ma'am.

11           THE COURT:  Okay.  Then we will go hear from Mr. Bratt

12   on that, and then we will, at the end of all of this, turn back

13   to the grand jury issue.

14           MR. BRATT:  Thank you, Your Honor.

15           I will be brief because I know I have touched on some

16   of this already.  But I mentioned one overarching point with

17   respect to bills of particular, that being that when you have a

18   detailed indictment and extensive discovery, that a bill of

19   particulars is generally not warranted.

20           The second point I want to make is that in criminal

21   discovery, there are no interrogatories, there are no requests

22   for admissions.  And, really, what the -- the manner in which

23   Mr. Woodward is phrasing what he wants -- and similarly, for

24   Mr. Irving -- a question that begins with "what" or "how" is a

25   type of interrogatory that is not in the Federal Rules of

1    Criminal Procedure.

2          And then, the third point I want to make is -- and I'm

3    now turning to the Maurya -- or Maurya case, M-A-U-R-Y-A, which

4    is the Eleventh Circuit's most recent discussion of bills of

5    particular.  I just want to quote from it, that they, quote,

6    "cannot be used as a weapon to force the government into

7    divulging its prosecution strategy.  We do not allow defendants

8    to" -- and it's now quoting from another case, Bergen --

9    "compel the government to" -- and I think there is a typo in

10   the opinion -- "to a detailed exposition of its evidence or to

11   explain the legal theories upon which it tends -- it intends to

12   rely at trial."

13         And to -- to look at what Mr. Woodward and Mr. Nauta

14   put forth as the things they want answered -- actually, on

15   pages 4 and 5 of, now, the revised reply, ECF Number 447, it

16   states that they, quote, "seek only particulars regarding three

17   aspects of the case," and they then list them.

18         The first one is, quote, his alleged -- his,

19   Mr. Nauta's -- alleged knowledge and participation in the

20   charged conspiracy and his alleged participations therein.

21         Or put differently, he is seeking a bill of

22   particulars -- I'm again going to quote Maurya -- or "Maurya":

23   "That compels the government to provide the essential facts

24   regarding the existence and formation of the conspiracy, a

25   practice we have is explicitly forbidden."

1          The second thing that he asks or clarifies in the reply

2    is Mr. Nauta's alleged knowledge that the charged conduct of

3    moving a box to a common-access hall at Mar-a-Lago was

4    undertaken to prevent, rather than comply with a grand jury

5    subpoena for documents.  And that really is the heart of our

6    theory as to why, as to that aspect of the obstruction

7    conspiracy, Mr. Nauta is -- is guilty.

8          And then, the third is:  What, if any, alleged conduct

9    by Mr. Nauta would make him liable for attempted obstruction or

10   violation of any federal criminal law where he is alleged to

11   have traveled or inspected any items that would have violated

12   the statute charged?

13         And that is really seeking some sort of legal opinion

14   from the government as to, again, a basic legal theory

15   underlying the case.

16         With respect to his claim for:  How did the classified

17   documents get back to -- or get back to the storage room?  To

18   merely state how he is phrasing it is why it is an improper

19   question or inappropriate question for a bill of particulars.

20         We're not conceding that we have to prove that

21   Mr. Nauta was involved in classified documents or

22   classification markings getting back to the storage room.

23   Really, the gravamen of the offense with respect to the

24   movement of the boxes is what occurred on June -- June 2, 2022,

25   where boxes were moved, and Trump Attorney 1 did his review and

1    only found 38 documents.  And then later, there was 70-some in

2    the storage room --

3          THE COURT:  So in your view, it's not material how the

4    boxes containing classified material got to the storage room

5    prior to August 8th?

6          MR. BRATT:  I'm not saying it's not material.  What I'm

7    saying is that it is -- it is not an essential part of the

8    charge against Mr. Nauta and his participation in that

9    conspiracy.

10          THE COURT:  Because the essential part, in your view,

11    is?

12          MR. BRATT:  Is the movement of boxes on June 2nd.

13          THE COURT:  June.  June 2.

14          MR. BRATT:  And also, I would add that we're not

15    conceding that all of the documents with classification

16    markings made it back to the storage room.  We expect there to

17    be evidence at trial that the plane that took the former

18    president and his family up to New York on June 3, 2022, had

19    many boxes in it, including boxes in the restroom.  And so, in

20    many ways, we don't know all the boxes that -- that -- where

21    were all the boxes that may have been removed of the -- of

22    the -- the delta between the approximately 64 and the

23    approximately 30, whether all of those actually ever made it

24    back to the -- to the storage room.

25          I would also add, just on terms of the discovery --

1          THE COURT:  And there is a lot of discovery,

2     1.3 million of unclassified discovery alone.  So in that huge

3     amount, is it possible to direct defense counsel a little bit

4     more since it is so much?

5          MR. BRATT:  Yes.  So we already did that, Your Honor.

6     In our first production to each set of defense attorneys, we

7     had within our production -- and it was redundant of stuff that

8     was elsewhere -- we had what we considered to be the key

9     documents; I guess about 5,000 documents that -- that are

10    identified as what we view as the key documents.

11         We also had what we viewed as the key video

12    surveillance clips.  So we have put that stuff -- we identified

13    that for the defense attorneys with our initial productions of

14    discovery.

15         Recently Mr. Woodward, Mr. Murrell, Mr. Irving, went to

16    the FBI's Washington field office in D.C. and reviewed the

17    boxes that were seized by the FBI --

18         THE COURT:  Are the boxes in their original, intact

19    form as seized?

20         MR. BRATT:  They are, with one exception; and that is

21    that the classified documents have been removed and

22    placeholders have been put in the documents.

23         But in conjunction with their visit a couple of weeks

24    ago, we prepared for them a chart that lists all the boxes that

25    had classified documents in them, and which classified

1    documents were in which boxes.

2         THE COURT:  So looking, for example, at that detailed

3    property inventory in the civil case, it's unsealed at docket

4    entry 116-1 in that proceeding, which is 22-cv-81294.  This has

5    33 items.  They're all either listed as a box/container or just

6    documents.

7         I'm wondering if this list of 33 is the same 33 or 34

8    that are charged in the indictment.  In other words, would this

9    inventory be at all helpful to the defendants in trying to

10   understand which boxes are alleged to be the problematic ones

11   that were moved?

12        MR. BRATT:  So we've already -- we've already -- again,

13   in the summary chart that we gave them recently, we have

14   identified, you know, the boxes that had classified documents

15   in -- or documents with classification markings.  We have

16   identified, all right, if it's box -- and they have

17   different -- like, triple A, or Box AA.  While there were seven

18   classified documents in there, here are the Bates -- classified

19   Bates ranges for them.  These are the markings that were on

20   there.  We have given that to them.

21        THE COURT:  Okay.  The boxes themselves are unmarked or

22   were unmarked.  And so, trying to number them and keep track of

23   them, 1 through 33 --

24        MR. BRATT:  The FBI --

25        THE COURT:  -- that's a -- that's a numbering

1  convention that was put on after the fact, I assume?

2          MR. BRATT:  No.  There was a numbering convention that

3  was put on, on the day of the search.

4          THE COURT:  That's what I mean.

5          MR. BRATT:  Yes.

6          THE COURT:  On the day of the search.

7          MR. BRATT:  Correct.

8          THE COURT:  Okay.  All right.  Okay.

9          MR. BRATT:  In some cases, they're letters.  But there

10  was an identification system that was put on the boxes on the

11  day of the search.

12          THE COURT:  All right.  Okay.

13          MR. BRATT:  So they have those.  We have tried to

14  direct them to what we believe are the key documents, key video

15  surveillance.  We have identified for them and made the boxes

16  available to them.

17          We also provide a -- we provided a similar summary for

18  the boxes at NARA.  We do not have -- we have the classified

19  documents from NARA, but we did not take custody of the boxes

20  themselves, but they have them in discovery in digital form.

21          THE COURT:  And is it correct that the superseding

22  indictment does not allege that Mr. Nauta knew what was in the

23  boxes?

24          MR. BRATT:  I want to be careful with that because

25  there is -- at least there -- I think it's paragraph 38.

1    You know, there was a time when he was in the storage room and
2    a box spilled, and there were classified --
3              THE COURT:  With the exception of that one.
4              MR. BRATT:  So the indictment does not allege, other
5    than that, that he was -- the indictment has no language in it
6    indicating, other than that, that he saw what was in the -- saw
7    classified documents in the boxes.
8              THE COURT:  Okay.  And that's, of course, correct for
9    Mr. De Oliveira as well?
10             MR. BRATT:  Correct.
11             THE COURT:  Okay.  All right.  Anything further with
12   respect to legal argument from either side before we jump into
13   the grand jury issues, Mr. Woodward?
14             MR. WOODWARD:  I would certainly like to be heard in
15   response, Your Honor.
16             THE COURT:  Okay.
17             MR. WOODWARD:  So the -- to state the obvious, the
18   indictment alleges that boxes with documents bearing
19   classification markings were moved to avoid their discovery.
20   If that's not true, if boxes bearing classification markings
21   were not moved, then every count after 33 falls, with the
22   exception of the false statement counts.
23             And so what -- what the Special Counsel's office has
24   just explained is that we don't need to know whether the boxes
25   that were moved on June 3rd contained documents bearing

1    classification markings.  I just -- I can't follow that because

2    if those boxes that were moved -- and specifically, if those

3    boxes that were allegedly not returned don't have documents

4    bearing classification markings, then there is no case here.

5    There is no crime.  They weren't moving boxes for the purpose

6    of concealing the contents from anybody, because the only

7    documents that the defendants are alleged to have concealed are

8    those bearing classification markings.

9         The Special Counsel's office in the indictment makes

10   the assumption that the classification markings that were

11   discovered by the FBI in its search must have been among the

12   boxes that were moved on June 3rd; but we don't know why that

13   is.

14        And so I hear the Special Counsel to be making the

15   argument that a "why" question is an interrogatory.  Fine.

16   Don't -- don't answer that question for us.  Show us the

17   evidence that, when we view, will help us understand how anyone

18   could know that there were documents bearing classification

19   markings that were moved on June 3rd -- or, I guess, that were

20   not moved.

21        When -- taking a step back.  The boxes -- the boxes are

22   not in their original form, to be clear.  I mean, that -- that

23   is -- that is an unknown, because as the Court is well aware,

24   there was a process involving a special master in which all of

25   the boxes were taken and the contents were -- were at least

1    partially reviewed.

2            And so, we don't know, in looking at the evidence --

3    and we did go, and we looked at -- I personally didn't look at

4    all of the boxes, but I looked at several of the boxes -- we

5    don't know if that is the way that the boxes were kept when

6    they were taken from the storage room.  All we know is the way

7    the boxes were kept when they were provided to the FBI,

8    following the conclusion of the special master process.

9            So we don't know whether there were documents bearing

10   classification markings in the bathroom on the plane on

11   June 3rd.  We only know that there were documents bearing

12   classification markings in a storage room on August 8th when it

13   was searched by the FBI.

14           And to our knowledge, there is isn't any evidence that

15   shows how Mr. Nauta, Mr. De Oliveira, or anyone else would have

16   known that this delta of boxes, this 15 boxes that is -- that

17   is -- that are not returned to the storage room on June 2nd or

18   June 3rd contain documents bearing classified information.

19           THE COURT:  Well, it sounds like, you -- you know, jury

20   arguments.  But, again, I'm having a hard time seeing how this

21   indictment doesn't give you the detail that you need.  And

22   then, I -- I take your point that the discovery is exceedingly

23   voluminous, which I think is obvious, but the Special Counsel

24   says that it has narrowed it and given you the more relevant

25   documents in their mind.  So I think we've sort of strayed

1    beyond the bill of particulars discussion, and it's really more

2    of -- just a review of the discovery discussion.

3          MR. WOODWARD:  Well, you know, we cite a case from

4    the -- from D.C., granted.  But United States vs. Tree

5    (phonetic), footnote 12 on page 21, makes clear that simply

6    pointing us to a volume of discovery isn't -- isn't sufficient.

7          And so, you know, the Special Counsel claims that we

8    have given you the key "5,000 documents."  I'm representing to

9    the Court that that doesn't tell us the answer.  I wouldn't be

10   here wasting everybody's time --

11         THE COURT:  But the answer that you're looking for --

12   again, I'm really trying to understand.  The answer that you're

13   looking for is the how the boxes -- and by "the boxes," do you

14   know how many?

15         MR. WOODWARD:  Well, when the FBI conducts its search,

16   there are 74 boxes, I think.

17         THE COURT:  So your ultimate question that you're

18   looking for an answer to is, again, how did --

19         MR. WOODWARD:  How did the boxes get in the storage

20   room.

21         THE COURT:  And that is so essential why?

22         MR. WOODWARD:  Because if the -- if Mr. Nauta did not

23   move boxes that contained classified markings, then he didn't

24   commit the offense as alleged.

25         THE COURT:  Okay.

1          MR. WOODWARD:  If he is moving boxes that contain shoes

2     and ties and -- or documents that don't contain classification

3     markings, then he is not concealing anything from anyone.

4          THE COURT:  All right.  Okay.  Anything more on

5     "corruptly"?

6          MR. WOODWARD:  With respect to "corruptly," I just -- I

7     just disagree, respectfully, that the Eleventh Circuit tells us

8     what the definition is.  The Eleventh Circuit in Friske accepts

9     what the trial court used as a definition, but nowhere in that

10    opinion does it says [sic], "Here's how we are going to define

11    'corruptly' for this circuit."

12         And, you know, turning, then, to persuasive

13    precedent -- precedent that we do have, you know, I think

14    it's -- it's noteworthy to start where we always should, which

15    is at the statute.  And the statute does not define "corruptly"

16    in the way that the Special Counsel's office is asking this

17    Court to do it, nor does Friske.  The statute simply says

18    "whoever corruptly."

19         And so we are adding all these -- these meanings.  When

20    you look at Robertson, Robertson says, "Whoever acts -- one

21    acts corruptly when they act with corrupt purpose."

22         THE COURT:  Right, I know.  But it's not unusual to

23    have a mens rea adverb that just -- just is what it is and it's

24    not further defined, and so jury instructions do the work and

25    it has a little bit of a circular quality, but that's what the

1    law tolerates.

2            MR. WOODWARD:  I appreciate that, Your Honor.  But

3    here, unfortunately, we don't have a corrupt purpose.  We don't

4    have an independently criminal act being committed as part of

5    these offenses.

6            And so, now, the Court is left to consider what

7    "corruptly" means in the absence of an independently corrupt

8    act.  Robertson sheds some light on that and says --

9            THE COURT:  Well, that's okay.  I think we can all

10   review Robertson, and there is some interesting arguments to be

11   made there.  And we will see if the Supreme Court sheds any

12   light, it's not clear, on the definition of that term.

13           But I think I have enough with respect to the arguments

14   on "corruptly."

15           Anything further you wish to add before we turn to the

16   final topic for today?

17           MR. WOODWARD:  No, Your Honor.  I can take a hint.

18           THE COURT:  Okay.

19           MR. WOODWARD:  Do you want to hear from me or from the

20   government first on grand jury secrecy.

21           THE COURT:  How long do the parties think this

22   conversation will last?

23           MR. BRATT:  I don't think it will be very long,

24   Your Honor.

25           THE COURT:  Okay.

1          MR. BRATT:  May I just correct one factual thing?

2          THE COURT:  Sure.

3          MR. BRATT:  I think the Court is aware of this, but in

4    the special master proceeding, the FBI did not give up custody

5    of the boxes.  Judge Dearie ordered that we copy them and

6    provide -- copy the unclassified documents and provide them to

7    the former counsel for Former President Trump, but the boxes

8    have always been maintained by the FBI as they were seized.

9          THE COURT:  Okay.  Thank you.  All right.

10         Then -- then let me hear first from -- Mr. Bratt, are

11   you going to handle the grand jury piece?

12         MR. BRATT:  Yes.

13         THE COURT:  Before we get started, there is this issue

14   about the transcript of Mr. Nauta.  It was attached as an

15   exhibit to both of the motions set for argument today.  It's

16   still sealed, per the Court's order, but I have some questions

17   about whether it should continue to be sealed because it was

18   quoted, at least in part, in a public opposition at 319.  And

19   there appears to be at least some agreement as to public use of

20   certain portions.

21         And so I could benefit from some guidance on what it is

22   that the parties view with respect to publication of

23   Mr. Nauta's own grand jury transcript.

24         MR. BRATT:  So I think, Your Honor, that Mr. Nauta

25   stands differently from other people who testified in the grand

1   jury.  And, in particular, as to the application of --

2   continuing application of Rule 6(e) to their transcripts.

3        Mr. Nauta has now been charged.  He has his transcript,

4   as he -- he is entitled to under Rule 16.  And putting aside

5   the restrictions in the protective order, he otherwise -- and

6   he could have, from the day that he finished testifying, told

7   anybody what he said on that day.  So I think that he does

8   stand apart from all of the other witnesses.

9        THE COURT:  So it's your view that the entire

10  transcript can be unsealed at this point as an attachment to a

11  substantive motion?

12       MR. BRATT:  With the same types of redactions that have

13  been applied to his interview with the FBI.  In other words,

14  you know, to the extent --

15       THE COURT:  Witness names?

16       MR. BRATT:  Witness names, correct.

17       THE COURT:  Okay.  Now, in terms of -- just to

18  understand, this -- the -- footnotes 6 and 7, I think, of the

19  government's opposition quoted fairly heavily from one portion

20  of that transcript.

21       Was there any permission needed in order to cite grand

22  jury material?

23       MR. BRATT:  We've received, with respect to Mr. Nauta,

24  the necessary permission that we -- that's required.

25       THE COURT:  Okay.  So I'm unclear about what -- what's

1    going on in the background, because all of a sudden, I see

2    quotations from grand jury transcripts in public filings, and

3    there is really no context provided for how it is that the

4    Special Counsel is just at liberty to do that.

5              MR. BRATT:  We believe what we did was consistent with

6    what our continuing obligations are in D.C. and the authorities

7    we have been given by the Court in D.C. to make things

8    available.  And --

9              THE COURT:  I have seen one petition.

10             MR. BRATT:  Right.

11             THE COURT:  And, of course, we will speak in general

12   terms.  But that one does not cover Mr. Nauta's grand jury

13   transcript.  And so, again, it's just very ambiguous what it is

14   that's going on in the background and how it is that these

15   permissions are being granted.  And, of course, there is no

16   visibility from this District Court's perspective.

17             MR. BRATT:  So our view is that Mr. Nauta's transcript,

18   again, with the appropriate redactions, can now be made public.

19             THE COURT:  And that is because there is an order that

20   exists authorizing, or because it's -- for the reasons you said

21   earlier?

22             MR. BRATT:  It's more for the reasons I said earlier.

23             THE COURT:  But is there an order authorizing the use

24   of that transcript in a -- in connection with the judicial

25   proceeding, let's say?

1        MR. BRATT:  So I would have to go back and check with

2    respect to that particular transcript, but there may not be an

3    order directly addressing it.

4        THE COURT:  Okay.  So, then, let's step back for a

5    minute and just, to the extent you're able in open court, to

6    describe for me what is going on with respect to the grand jury

7    proceedings.  There has been a request recently made by

8    Mr. Woodward to transfer any outstanding grand jury proceedings

9    relevant to this particular investigation to this Court; and,

10   again, it's very opaque.

11       MR. BRATT:  So, one, we provided in discovery

12   everything that we think is discoverable that arose out of any

13   proceedings that were in the District of Columbia.  And we've

14   received authorization to do that.

15       There are certain aspects, and I will just speak in

16   very broad terms, as to what Mr. Woodward is now seeking be

17   disclosed.  The Court entered an order, I think, yesterday,

18   that responses to Mr. Woodward's petition are due on the 22nd,

19   and we will file our response then.

20       We have had to get permission for a couple of

21   proceedings before this Court to transfer -- or to disclose

22   things.  One was related to the Garcia hearings.  One was

23   related to a sealed matter that the Court has.  That is pretty

24   much the universe of --

25       THE COURT:  But it seems like we're at the juncture now

1   where it would be incumbent upon Special Counsel to, at least

2   in a sealed capacity, inform this Court of, okay, what are the

3   grand jury proceedings that are relevant to this case, and what

4   petitions for use have been filed.  What orders are authorizing

5   the use?

6        It's just -- it's just -- it's impossible to really

7   know.  And that's -- that's what I'm struggling with.

8   Obviously, the only issue now is -- for today's hearing was the

9   transcript of Mr. Nauta; I think that one is easier to handle.

10  But there are other items that may be implicated with

11  these continuing grand jury secrecy, and I just want to get to

12  the bottom of it.

13       MR. BRATT:  So we don't think there's anything else

14  that remains in the District of Columbia that is discoverable

15  or needs to be brought to any Court's attention.

16       THE COURT:  Is there any pending grand jury matter

17  related to this particular investigation?

18       MR. BRATT:  No.

19       THE COURT:  So what's the Special Counsel's view on

20  continued secrecy for any of those items, given the closure of

21  that investigation?

22       MR. BRATT:  So under both -- well, particularly Fifth

23  Circuit law, which now -- which predates 1980 -- there was a

24  case that we cited in one of our pleadings -- I don't have the

25  name of it at the top of my head.  But the Fifth Circuit has

1    ruled that -- or previously ruled that grand jury material

2    remains subject to Rule 6(e).  If it -- materials, obviously,

3    that come out at trial no longer have the 6(e) protection.  But

4    if there are other 6(e) materials that are never used at trial,

5    they're never made public, they remain subject to 6(e).

6           THE COURT:  So what if a defendant wants to rely on

7    grand jury materials in support of a substantive 12(b) motion?

8    Then what standard -- what legal standard applies to that in

9    the context of a closed grand jury, like we have here?

10          MR. BRATT:  So, again, a closed grand jury remains

11   secret.  I know there was a decision in the last couple of

12   years from the D.C. circuit, and I think it's consistent with

13   the decision in the Eleventh Circuit, that even for a closed

14   grand jury proceeding, a Court -- and that was where a District

15   Court -- one of the District Court judges wanted to release

16   grand jury material, and that was appealed to the D.C. circuit,

17   and said, no, even if it's a closed proceeding, Rule 6(e) still

18   governs.

19          So our position is if the --

20          THE COURT:  But if a defendant wants to rely on that

21   material in support of a substantive 12(b) motion in a judicial

22   proceeding, then how does the analysis change, if it does, in

23   the context of a closed grand jury?

24          MR. BRATT:  So I think that can be at -- a sealed

25   exhibit to the substantive Rule 12(b) motion.  But, again, I

1    don't think the courts differentiate between an open and a

2    closed grand jury.  There are -- there is more sensitivity in

3    an open grand -- in an open grand jury, and certainly -- and

4    certainly that has to be protected because that can interfere

5    with the investigation.  But the other reasons that 6(e)

6    material remains nonpublic, which is privacy of the witnesses,

7    reputational damage to people who are in charge, those -- those

8    concerns continue whether it's an open grand jury or a closed

9    the grand jury.

10            THE COURT:  But if the materials that are wanting to be

11   used in support of a 12(b) motion don't have the privacy

12   implications, and we're not dealing with an ongoing

13   investigation or jeopardizing informants or any of those other

14   things that would traditionally be thought of as continued

15   secrecy, then what are we left with?

16            MR. BRATT:  So I go to the line of cases that if

17   it -- certainly, right, if a witness is up on the stand,

18   defense has the witness's grand jury transcripts, the witness

19   has said something different, full ability to cross-examine and

20   impeach the witness on the stand with the grand jury material.

21   That material is now in the public realm and is not protected

22   by 6(e).

23            Other materials -- and similarly, you know, any witness

24   who appears before the grand jury could stand on the courthouse

25   steps and say, "I was just in the grand jury.  This is what I

 1    said."  So that, obviously, you know, is also a way in which

 2    grand jury material can come out.

 3           But at least my understanding of the law of 6(e) is

 4    that unless it comes out in that sort of fashion, or unless it

 5    comes out at trial, it remains subject to the 6(e) protections.

 6           THE COURT:  So if you were to apply, let's say, the

 7    First Amendment standard to these documents, you would then

 8    say, presumably, the compelling government interest is just,

 9    generally, Rule 6(e) secrecy, and that permits the full-blown

10    sealing of any grand jury transcript or quotation; is that

11    right?

12           MR. BRATT:  That's correct.

13           THE COURT:  Now, as far as the other pretrial motions,

14    just trying to sort through, what grand jury material exists in

15    this case that would be attached in support of these motions?

16           I know we have Mr. Nauta's grand jury transcript.  We

17    have some judicial orders, correct me if I'm wrong, with

18    respect to an attorney-client privilege issue.

19           MR. BRATT:  Correct.  And there is -- there

20    are -- there are the exhibits that were produced in conjunction

21    with that order.

22           THE COURT:  So there still needs to be a hearing now,

23    in this district, with respect to use or reference to those

24    particular exhibits for that one motion, yes?

25           MR. BRATT:  Right.  And that has now been transferred

1    to Your Honor for the disclosure of that.

2             THE COURT:  For that one motion.

3             MR. BRATT:  Yes.

4             THE COURT:  Any other grand jury things that are

5    floating around, as far as attachments to substantive motions?

6             MR. BRATT:  May I have a moment, Your Honor?

7             THE COURT:  Yes.

8             MR. BRATT:  I don't think so, but we will verify that.

9             THE COURT:  Okay.  Yes, I think it would help the Court

10   to have, like, a status report under seal of exactly, sort of,

11   what is the lay of the land on grand jury materials as used in

12   this proceeding and any pending grand jury petitions for use of

13   that material in this proceeding.  Because all I have been

14   presented with is that one single petition for one motion

15   containing exhibits that, of course, were not Mr. Nauta's

16   deposition and may not cover any other items to be used in this

17   case.

18            MR. BRATT:  Correct.

19            THE COURT:  So -- okay.

20            MR. BRATT:  I think that's the -- the primary thing

21   that remains.

22            THE COURT:  But net-net, you don't have an objection to

23   full-blown unsealing of Mr. Nauta's transcript, with the

24   exception of the witness names other than his own; right?

25            MR. BRATT:  That's correct.  Yes.

1          THE COURT:  Okay.  All right.  Then I think I have

2     covered that.

3          Mr. Woodward, anything on grand jury issues?

4          MR. WOODWARD:  So, briefly, Your Honor.  Because I

5     think we're as confused as the Court is on how these

6     proceedings have played out.  You know, Rule 6 does not

7     authorize the government, writ large, here in the Special

8     Counsel's office to disclose grand jury materials, yet we have

9     a significant amount of grand jury materials in discovery in

10    this case.

11         And so, I think the Court really asked a prescient

12    question:  How is it that the government was authorized to

13    disclose to the defendants in this case, the grand jury

14    materials?

15         I will tell you that in the -- in the District, the

16    practice is, concomitantly, with the entry of a protective

17    order, there is also a Rule 6(e) order in which the District

18    Court presiding over a matter authorizes the government to

19    disclose Rule 6 materials.

20         My understanding is that the practice in this Court is

21    that, you know, defendants actually don't get the grand jury

22    materials as early on as we did, and that they're often

23    treated, instead, as Jencks, and produced much closer to trial.

24         The protective order in this case does not specifically

25    address grand jury materials.  So instead, what we have are

1    materials covered by Rule 6, which on its face precludes the

2    government from disclosing those materials, and no order

3    explaining why all of these materials have been produced to us.

4         Now, as the Court mentioned, as I have noted in our

5    filing this week, we have petitioned the District Court in D.C.

6    to transfer -- well, first, to disclose to Your Honor all of

7    the proceedings with which we're aware.  We had -- we had made

8    a broader request for our -- our motion to be -- and I'm going

9    to -- I'll go back to the court today.  I'm sorry.  It's just

10   been a week.  But I'm going to ask the Court for leave to share

11   the motion with Your Honor so you can see what specifically we

12   have asked to do.

13        We asked the District Court in D.C. to docket that

14   motion in every grand jury matter that pertained to the

15   investigation of Former President Trump; and they respectfully

16   declined to do that.  I'm not terribly surprised, as Your Honor

17   will appreciate.

18        But, you know, we don't know what we don't know.  And

19   so if what we're hearing from the Special Counsel's office

20   today is that there was some proceeding authorizing them to

21   disclose Mr. Nauta's grand jury transcript, why don't we know

22   about that?

23        I mean, Rule -- Rule 6(e) also very specifically gives

24   the party whom the transcripts relate to, or the party to the

25   proceeding, an opportunity to weigh in.  And -- and we weren't

1    asked to weigh in on the disclosure of Mr. Nauta's transcript.

2         Now, with respect to the question at hand on whether,

3    under Eleventh Circuit precedent, there is a reason for the

4    Court to continue the sealing of Mr. Nauta's transcript -- we

5    don't think so.  I mean, frankly, candidly, I'm not thrilled

6    about the idea of Mr. Nauta's transcript being on the public

7    docket.  There was all sorts of press this morning about

8    the -- about his FBI interview transcript.  But that is what it

9    is.  I mean, the First Amendment is the First Amendment, and we

10   don't feel -- you know, I don't have a case to cite for you

11   that says, here is the imperative for keeping Mr. Nauta's

12   transcript sealed.

13        And the only other thing we will observe -- and we

14   appreciate the Court's time and attention on this -- is that

15   it's a -- filing has become complicated because of the way that

16   the discovery was handled.  And so, you know, the idea that we

17   have to seek the Special Counsel's permission or leave of court

18   in order to reference any of this stuff, it's a huge burden on

19   us.  And so, for that reason, I'm not disappointed that -- that

20   Mr. Nauta's transcript will be unsealed.

21        THE COURT:  Okay.  So just to summarize and simplify,

22   we all are on the same page, as far as I can tell, that the

23   transcript should be made public in accordance with the witness

24   name redaction rule, with any appropriate substitutions.

25        I will order, though, a status update to be filed by

1    the government under seal in a non-ex-parte fashion, just

2    explaining to the Court what, if anything, is outstanding in

3    the nature of grand jury materials in this case.

4            And then, Mr. Woodward, you should also file under seal

5    the petition that you filed on April 10th, and you don't have

6    to file a separate motion for leave to do so under seal; I will

7    just authorize that now.

8            MR. WOODWARD:  Thank you.

9            Your Honor, I do think one more request we would make

10   is that under Rule 6 -- under -- under Rule 6, Mr. Nauta's

11   grand jury transcript -- well, no, I think we're good.  I'm

12   sorry.

13           THE COURT:  If you think of it in the next 30 seconds,

14   let me know.  Okay.

15           MR. WOODWARD:  Thank you, Your Honor.

16           MR. HARBACH:  Your Honor?

17           THE COURT:  Yes.

18           MR. HARBACH:  May I ask a question about what you just

19   said?

20           THE COURT:  Yes.

21           MR. HARBACH:  In Your Honor's order directing us to

22   provide a status report to Your Honor, you said:  What is

23   outstanding in the nature of grand jury materials?

24           I have in my notes from what you said a few minutes

25   ago, two parts to that:  1, Grand jury materials that are

1   already in this proceeding; and then, 2 --

2        THE COURT:  That have been submitted in discovery in

3   this proceeding --

4        MR. HARBACH:  Yes, Your Honor.

5        THE COURT:  -- or attached to a substantive motion in

6   this proceeding.

7        Okay.

8        MR. HARBACH:  Okay.  And then, I --  please forgive me

9   if I misheard you, but I thought you also said you wanted to be

10  advised about any pending petitions for materials to be used in

11  this proceeding.  Is that right?

12       THE COURT:  Yes.  Is there an issue with that?

13       MR. HARBACH:  No.  No.  I just wanted to make sure I

14  understood Your Honor.

15       THE COURT:  And then I should add also, just in terms

16  of the question about any order that might have existed

17  previously that would have authorized the use of Mr. Nauta's

18  grand jury transcript in this case, because, again, that came

19  as somewhat of a surprise.

20       MR. HARBACH:  Understood.

21       THE COURT:  Okay.

22       MR. HARBACH:  And, I -- you know, it also occurs to me

23  that to the extent Mr. Woodward has any heartburn about

24  Mr. Nauta's grand jury transcript, he is free to withdraw it.

25  We didn't -- we didn't seek to put it on the public record,

1    they did.  So if there is issue with it, he can withdraw it,

2    and we won't object.

3            THE COURT:  That's -- that's a fair point.

4            Mr. Woodward, do you wish to withdraw the transcript?

5            MR. WOODWARD:  No, Your Honor.

6            THE COURT:  Okay.  Then the motion will stay as it has

7    been filed.

8            I do want to make just one broad formatting point for

9    all filing parties, to please ensure that everything is

10   double-spaced and 12 point font.

11           Mr. Woodward, you have not been very strict with that.

12   So let's just make sure that all future filings are in that

13   double-spaced format.

14           MR. WOODWARD:  Your Honor, I have -- I saw that, and so

15   I corrected the font when I filed the motion.

16           THE COURT:  Yes, I noticed that.

17           MR. WOODWARD:  Yeah.  I'm sorry about that.

18           THE COURT:  All right.  Okay.  Thank you.  That's all

19   we have.  That was the agenda for today, and we've gotten

20   through it in about two hours.  So thank you all for being

21   here.  I have nothing further.  Have a nice weekend.  The Court

22   is in recess.

23           (These proceedings concluded at 4:06 p.m.)

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4    I hereby certify that the foregoing is an accurate

 5    transcription of the proceedings in the above-entitled matter.

 6

 7
      DATE:  04-15-2024        /s/Laura Melton
 8                             LAURA E. MELTON, RMR, CRR, FPR
                               Official Court Reporter
 9                             United States District Court
                               Southern District of Florida
10                             Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

'

'corruptly' [4]- - 1:54:11-, 1:55:24-, 1:56:6-, 1:72:11

## 1

1 [14]- - 1:6:12-, 1:6:15-, 1:15:7-, 1:48:8-, 1:48:10-, 1:48:19-, 1:48:21-, 1:49:16 -, 1:50:11-, 1:52:4-, 1:53:17 -, 1:63:25-, 1:66:23-, 1:86:25
1's [1]- - 1:49:4
1.3 [2]- - 1:47:14-, 1:65:2
1001 [3]- - 1:13:16-, 1:16:2-, 1:16:7
10th [1]- - 1:86:5
11 [1]- - 1:24:16
116-1 [1]- - 1:66:4
11th [1]- - 1:24:15
12 [3]- - 1:58:25-, 1:71:5-, 1:88:10
12(b [4]- - 1:79:7-, 1:79:21 -, 1:79:25-, 1:80:11
120 [2]- - 1:13:23-, 1:27:5
13 [1]- - 1:44:16
14 [1]- - 1:31:18
15 [2]- - 1:43:6-, 1:70:16
1512 [11]- - 1:8:16-, 1:22:4-, 1:22:25-, 1:23:13-, 1:26:18-, 1:26:25-, 1:37:7-, 1:40:6-, 1:42:2-, 1:43:2-, 1:54:2
1512(b [1]- - 1:43:6
1512(c [1]- - 1:5:4
1512(c) [1]- - 1:53:18
1512(c)(1 [1]- - 1:43:6
1512(c)(2 [1]- - 1:43:3
1512(c)(2) [1]- - 1:43:6
1512(k) [1]- - 1:8:23
16 [1]- - 1:75:4
1980 [1]- - 1:78:23

## 2

2 [3]- - 1:63:24-, 1:64:13-, 1:87:1
20 [1]- - 1:29:22
2011 [1]- - 1:44:15
2021 [2]- - 1:29:22-, 1:30:22
2022 [4]- - 1:24:16-,

1:24:17-, 1:63:24-, 1:64:18
2023 [1]- - 1:17:10
20th [4]- - 1:30:8-, 1:30:13 -, 1:30:15-, 1:30:22
21 [1]- - 1:71:5
22-cv-81294 [1]- - 1:66:4
22nd [1]- - 1:77:18
23-cr-80101 [1]- - 1:3:6
24th [1]- - 1:24:17
29 [3]- - 1:6:4-, 1:18:17-, 1:31:14
2nd [2]- - 1:64:12-, 1:70:17

## 3

3 [1]- - 1:64:18
30 [5]- - 1:15:1-, 1:18:3-, 1:21:19-, 1:64:23-, 1:86:13
319 [1]- - 1:74:18
323 [1]- - 1:4:17
33 [18]- - 1:5:2-, 1:7:21-, 1:8:15-, 1:9:20-, 1:10:19-, 1:12:10-, 1:18:20-, 1:18:25 -, 1:20:6-, 1:25:8-, 1:26:12-, 1:29:15-, 1:66:5-, 1:66:7-, 1:66:23-, 1:68:21
34 [2]- - 1:5:2-, 1:66:7
35 [2]- - 1:5:2-, 1:48:17
367 [2]- - 1:56:2-, 1:56:4
372 [2]- - 1:4:18-, 1:31:18
379 [1]- - 1:5:5
38 [2]- - 1:64:1-, 1:67:25
380 [1]- - 1:4:25
3rd [5]- - 1:68:25-, 1:69:12 -, 1:69:19-, 1:70:11-, 1:70:18

## 4

4 [3]- - 1:13:1-, 1:30:3-, 1:62:15
40 [10]- - 1:5:2-, 1:9:7-, 1:9:24-, 1:10:2-, 1:10:17-, 1:12:12-, 1:12:16-, 1:12:19 -, 1:26:13
41 [10]- - 1:5:2-, 1:9:7-, 1:9:24-, 1:10:2-, 1:10:17-, 1:12:12-, 1:12:16-, 1:12:21 -, 1:13:2-, 1:26:14
413 [1]- - 1:4:19
42 [4]- - 1:15:11-, 1:16:25 -, 1:27:4-, 1:30:18
446 [1]- - 1:4:23

447 [2]- - 1:4:24-, 1:62:15
448 [1]- - 1:5:4
449 [1]- - 1:5:5
4:06 [1]- - 1:88:23
4th [1]- - 1:51:5

## 5

5 [1]- - 1:62:15
5,000 [2]- - 1:65:9-, 1:71:8
50 [2]- - 1:23:23-, 1:25:2
51 [2]- - 1:23:25-, 1:27:20
515US539 [1]- - 1:38:12
52 [2]- - 1:23:25-, 1:27:20
53 [6]- - 1:6:1-, 1:7:17-, 1:11:15-, 1:21:6-, 1:21:7-, 1:21:9

## 6

6 [6]- - 1:75:18-, 1:83:6-, 1:83:19-, 1:84:1-, 1:86:10
6(e [10]- - 1:75:2-, 1:79:3-, 1:79:4-, 1:79:17-, 1:80:5-, 1:81:3-, 1:81:5-, 1:81:9-, 1:83:17-, 1:84:23
6(e) [3]- - 1:79:2-, 1:79:5-, 1:80:22
60 [3]- - 1:48:7-, 1:48:15
60-page [1]- - 1:49:20
62 [1]- - 1:21:18
63 [1]- - 1:21:22
64 [2]- - 1:15:1-, 1:64:22

## 7

7 [2]- - 1:46:17-, 1:75:18
7(c [1]- - 1:18:1
70-some [1]- - 1:64:1
74 [4]- - 1:19:19-, 1:21:5-, 1:21:9-, 1:71:16
75 [1]- - 1:15:1

## 8

87 [3]- - 1:19:19-, 1:21:5-, 1:25:2
8th [3]- - 1:51:4-, 1:64:5-, 1:70:12

## 9

95 [2]- - 1:25:15-, 1:33:6
96 [10]- - 1:8:17-, 1:38:17-,

1:39:24-, 1:40:1-, 1:41:8-, 1:59:8-, 1:59:10-, 1:59:15-, 1:60:22-, 1:60:25
97 [1]- - 1:9:2

## A

AA [1]- - 1:66:17
abbreviated [1]- - 1:53:11
ability [2]- - 1:52:20-, 1:80:19
able [4]- - 1:5:24-, 1:31:12 -, 1:31:13-, 1:77:5
absence [3]- - 1:21:24-, 1:22:1-, 1:73:7
absent [1]- - 1:10:10
absolutely [1]- - 1:60:24
accepted [2]- - 1:37:13-, 1:46:5
accepts [1]- - 1:72:8
access [1]- - 1:63:3
accordance [1]- - 1:85:23
according [1]- - 1:28:25
accounts [1]- - 1:18:4
accuses [1]- - 1:6:11
achieved [1]- - 1:36:2
acknowledge [1]- - 1:57:23
acknowledged [1]- - 1:19:1
act [8]- - 1:9:10-, 1:38:8-, 1:42:12-, 1:56:6-, 1:60:2-, 1:72:21-, 1:73:4-, 1:73:8
acted [3]- - 1:7:22-, 1:22:5 -, 1:56:6
acting [1]- - 1:56:15
action [1]- - 1:41:4
actions [2]- - 1:38:10-, 1:41:22
activity [1]- - 1:24:4
acts [6]- - 1:7:9-, 1:24:6-, 1:39:2-, 1:41:25-, 1:72:20-, 1:72:21
actual [3]- - 1:14:11-, 1:17:8-, 1:45:15
actus [2]- - 1:42:18-, 1:54:23
add [9]- - 1:5:11-, 1:12:9-, 1:16:10-, 1:27:12-, 1:58:6-, 1:64:14-, 1:64:25-, 1:73:15 -, 1:87:15

adding [1] – 1:72:19

additional [2] – 1:49:7.., 1:58:6

address [9] – 1:14:10.., 1:31:4.., 1:39:24.., 1:40:2.., 1:40:3.., 1:45:2.., 1:60:4.., 1:83:25

addressed [1] – 1:38:6

addressing [4] – 1:3:3.., 1:36:15.., 1:60:2.., 1:77:3

adequate [1] – 1:52:20

administration [1] – 1:29:21

admissions [1] – 1:61:22

adopt [2] – 1:40:23.., 1:46:6

adopted [2] – 1:38:14.., 1:55:19

adopts [1] – 1:44:8

adverb [2] – 1:42:4.., 1:72:23

advised [2] – 1:31:8.., 1:87:10

affidavits [1] – 1:52:11

afternoon [14] – 1:3:2.., 1:3:9.., 1:3:11.., 1:3:12.., 1:3:16.., 1:3:18.., 1:3:21.., 1:3:23.., 1:3:24.., 1:4:13.., 1:5:21.., 1:53:7.., 1:53:8

agenda [1] – 1:88:19

agents [2] – 1:27:13.., 1:31:9

ago [6] – 1:38:22.., 1:44:16.., 1:56:24.., 1:60:21 .., 1:65:24.., 1:86:25

agree [4] – 1:11:5.., 1:22:18.., 1:22:22.., 1:42:20

agreed [1] – 1:39:9

agreement [4] – 1:7:19.., 1:10:21.., 1:26:18.., 1:74:19

Aguilar [2] – 1:38:12.., 1:39:15

ahead [1] – 1:5:17

Air [2] – 1:29:22.., 1:30:23

Airport [1] – 1:30:24

albeit [1] – 1:38:6

allegation [12] – 1:10:15 .., 1:12:1.., 1:20:4.., 1:21:24.., 1:24:22.., 1:25:5.., 1:33:12.., 1:36:1.., 1:39:4.., 1:48:20.., 1:60:19

allegations [6] – 1:19:24 .., 1:21:13.., 1:26:23.., 

1:28:19.., 1:49:19.., 1:59:5

allege [12] – 1:6:1.., 1:6:6 .., 1:6:7.., 1:6:17.., 1:6:22.., 1:31:2.., 1:33:4.., 1:33:20.., 1:40:8.., 1:50:12.., 1:67:22.., 1:68:4

alleged [32] – 1:8:1.., 1:10:20.., 1:13:19.., 1:15:10 .., 1:18:12.., 1:19:18.., 1:27:11.., 1:30:7.., 1:31:6.., 1:31:16.., 1:33:24.., 1:34:5.., 1:35:17.., 1:37:9.., 1:38:16.., 1:41:8.., 1:46:10.., 1:46:23.., 1:48:18.., 1:49:10.., 1:50:4.., 1:62:18.., 1:62:19.., 1:62:20 .., 1:63:2.., 1:63:8.., 1:63:10.., 1:66:10.., 1:69:7.., 1:71:24

allegedly [4] – 1:6:13.., 1:10:6.., 1:28:18.., 1:69:3

alleges [5] – 1:7:21.., 1:18:4.., 1:38:17.., 1:50:14.., 1:68:18

alleging [4] – 1:9:5.., 1:12:5.., 1:15:17.., 1:33:22

allow [1] – 1:62:7

allows [3] – 1:47:2.., 1:47:5.., 1:50:17

alluding [1] – 1:53:24

almost [3] – 1:7:5.., 1:8:11 .., 1:16:20

alone [1] – 1:65:2

altering [1] – 1:13:13

alternatively [1] – 1:4:16

ambiguity [4] – 1:44:11.., 1:58:12.., 1:58:13

ambiguous [1] – 1:76:13

Amendment [3] – 1:81:7 .., 1:85:9

America [1] – 1:3:5

amount [2] – 1:65:3.., 1:83:9

amply [1] – 1:60:15

analysis [1] – 1:79:22

Anderson [1] – 1:47:22

answer [16] – 1:11:7.., 1:12:13.., 1:15:20.., 1:16:11 .., 1:26:14.., 1:26:17.., 1:28:22.., 1:33:25.., 1:34:7.., 1:52:7.., 1:60:12.., 1:69:16.., 1:71:9.., 1:71:11.., 1:71:12.., 1:71:18

answered [1] – 1:62:14

answering [1] – 1:58:9

answers [4] – 1:14:10.., 

1:14:20.., 1:18:12.., 1:31:3

anticipated [1] – 1:56:17

apart [2] – 1:40:11.., 1:75:8

appealed [2] – 1:42:8.., 1:79:16

appear [1] – 1:19:11

appearance [1] – 1:3:7

appellate [1] – 1:57:12

applicable [1] – 1:43:10

application [2] – 1:75:1.., 1:75:2

applied [2] – 1:37:24.., 1:75:13

applies [6] – 1:10:25.., 1:32:22.., 1:38:4.., 1:43:5.., 1:44:3.., 1:79:8

apply [4] – 1:11:12.., 1:38:24.., 1:43:25.., 1:81:6

appreciate [8] – 1:33:6.., 1:36:21.., 1:37:11.., 1:46:3.., 1:73:2.., 1:84:17.., 1:85:14

appropriate [4] – 1:32:1 .., 1:32:23.., 1:76:18.., 1:85:24

April [1] – 1:86:5

apt [1] – 1:41:18

area [4] – 1:26:17.., 1:48:16.., 1:48:18.., 1:49:11

argue [6] – 1:7:4.., 1:9:14 .., 1:38:5.., 1:44:14.., 1:57:11 .., 1:60:25

argued [4] – 1:34:10.., 1:41:11.., 1:41:12.., 1:57:12

arguing [3] – 1:7:1.., 1:9:14.., 1:46:8

argument [27] – 1:5:13.., 1:5:18.., 1:8:3.., 1:13:20.., 1:15:15.., 1:16:14.., 1:19:2.., 1:19:16.., 1:21:24.., 1:26:1.., 1:31:5.., 1:32:15.., 1:33:19.., 1:36:12.., 1:37:1.., 1:37:6.., 1:43:2.., 1:45:5.., 1:47:11.., 1:51:23.., 1:54:13.., 1:57:16 .., 1:58:9.., 1:68:12.., 1:69:15 .., 1:74:15

arguments [15] – 1:18:16 .., 1:18:17.., 1:31:17.., 1:31:24.., 1:34:12.., 1:34:21 .., 1:34:23.., 1:41:13.., 1:44:20.., 1:53:5.., 1:61:8.., 1:70:20.., 1:73:10.., 1:73:13

arose [1] – 1:77:12

arrived [8] – 1:14:16.., 1:27:19.., 1:28:13.., 1:29:20

1:30:11.., 1:30:15.., 1:30:22.., 1:31:2

art [1] – 1:58:11

articulate [1] – 1:35:20

articulated [1] – 1:57:4

articulating [1] – 1:58:2

aside [3] – 1:18:2.., 1:40:11.., 1:75:4

aspect [1] – 1:63:6

aspects [3] – 1:19:3.., 1:62:17.., 1:77:15

assist [1] – 1:21:14

associated [1] – 1:30:9

assume [1] – 1:67:1

assuming [6] – 1:8:7.., 1:11:9.., 1:17:13.., 1:39:9.., 1:39:25.., 1:59:3

assumption [1] – 1:69:10

asterisks [1] – 1:27:21

attached [3] – 1:74:14.., 1:81:15.., 1:87:5

attachment [1] – 1:75:10

attachments [1] – 1:82:5

attempt [1] – 1:4:8

attempted [2] – 1:59:12.., 1:63:9

attempting [2] – 1:11:10 .., 1:13:12

attention [3] – 1:44:21.., 1:78:15.., 1:85:14

Attorney [11] – 1:6:12.., 1:6:15.., 1:48:8.., 1:48:10.., 1:48:19.., 1:48:21.., 1:49:4.., 1:49:16.., 1:50:11.., 1:52:4.., 1:63:25

attorney [1] – 1:81:18

Attorney's [1] – 1:42:9

attorney-client [1] – 1:81:18

attorneys [1] – 1:65:6.., 1:65:13

August [4] – 1:51:4.., 1:51:5.., 1:64:5.., 1:70:12

Australian [1] – 1:23:16

Australians [1] – 1:23:17

authorities [1] – 1:76:6

authority [3] – 1:32:10.., 1:35:25.., 1:54:17

authorization [1] – 1:77:14

authorize [2] – 1:83:7.., 1:86:7

authorized [3]₋ - 1:4:3₋,
1:83:12₋, 1:87:17
authorizes [1]₋ - 1:83:18
authorizing [4]₋ - 1:76:20
₋, 1:76:23₋, 1:78:4₋, 1:84:20
availability [2]₋ - 1:12:24
₋, 1:33:21
available [3]₋ - 1:48:20₋,
1:67:16₋, 1:76:8
avoid [3]₋ - 1:4:11₋,
1:56:20₋, 1:68:19
aware [15]₋ - 1:8:4₋, 1:8:6
₋, 1:14:17₋, 1:22:9₋, 1:31:20
₋, 1:32:9₋, 1:33:22₋, 1:34:18
₋, 1:42:1₋, 1:43:11₋, 1:43:18
₋, 1:53:25₋, 1:69:23₋, 1:74:3
₋, 1:84:7

B

b)(2)(B [1]₋ - 1:13:10
babbling [1]₋ - 1:15:19
background [2]₋ - 1:76:1
₋, 1:76:14
Ballroom [1]₋ - 1:31:2
banc [2]₋ - 1:45:23₋,
1:45:24
bank [2]₋ - 1:7:9₋, 1:7:14
bank-robbing [1]₋ - 1:7:9
bare [1]₋ - 1:47:20
based [1]₋ - 1:5:3
basic [1]₋ - 1:63:14
basis [2]₋ - 1:16:2₋,
1:59:17
Bates [2]₋ - 1:66:18₋,
1:66:19
bathroom [1]₋ - 1:70:10
Beach [1]₋ - 1:30:23
bearing [10]₋ - 1:24:16₋,
1:68:18₋, 1:68:20₋, 1:68:25
₋, 1:69:4₋, 1:69:8₋, 1:69:18₋,
1:70:9₋, 1:70:11₋, 1:70:18
become [2]₋ - 1:53:3₋,
1:85:15
becomes [1]₋ - 1:44:5
began [5]₋ - 1:23:16₋,
1:23:17₋, 1:23:18₋, 1:24:1₋,
1:24:2
begins [5]₋ - 1:21:5₋,
1:21:6₋, 1:28:6₋, 1:34:2₋,
1:61:24
behalf [2]₋ - 1:3:10₋,
1:3:13

behind [1]₋ - 1:41:17
believes [2]₋ - 1:11:9₋,
1:48:23
below [1]₋ - 1:57:12
benefit [23]₋ - 1:38:10₋,
1:38:14₋, 1:38:15₋, 1:38:25
₋, 1:39:4₋, 1:39:7₋, 1:39:11₋,
1:39:13₋, 1:39:16₋, 1:39:19
₋, 1:39:20₋, 1:39:21₋, 1:40:7
₋, 1:40:9₋, 1:40:12₋, 1:40:22
₋, 1:54:11₋, 1:59:4₋, 1:59:17
₋, 1:60:17₋, 1:60:18₋,
1:60:23₋, 1:74:21
benefitting [1]₋ - 1:39:1
Bergen [1]₋ - 1:62:8
best [2]₋ - 1:60:7₋, 1:60:8
better [2]₋ - 1:11:8₋,
1:13:8
between [10]₋ - 1:10:4₋,
1:12:16₋, 1:13:9₋, 1:21:9₋,
1:26:13₋, 1:40:16₋, 1:52:2
₋, 1:54:24₋, 1:64:22₋, 1:80:1
beyond [6]₋ - 1:9:9₋,
1:17:25₋, 1:35:17₋, 1:41:1₋,
1:46:12₋, 1:71:1
bill [31]₋ - 1:4:16₋, 1:4:23₋,
1:9:4₋, 1:11:23₋, 1:19:16₋,
1:20:2₋, 1:31:24₋, 1:32:1₋,
1:32:14₋, 1:32:17₋, 1:32:20
₋, 1:32:23₋, 1:33:14₋, 1:34:1
₋, 1:34:2₋, 1:34:24₋, 1:46:25
₋, 1:47:1₋, 1:47:3₋, 1:47:4₋,
1:47:8₋, 1:47:16₋, 1:47:23₋,
1:50:16₋, 1:50:23₋, 1:52:22
₋, 1:61:7₋, 1:61:18₋, 1:62:21
₋, 1:63:19₋, 1:71:1
bills [2]₋ - 1:61:17₋, 1:62:4
binding [1]₋ - 1:43:8
bit [5]₋ - 1:55:18₋, 1:56:13
₋, 1:58:4₋, 1:65:3₋, 1:72:25
black [1]₋ - 1:33:1
blah [3]₋ - 1:13:14
blah-blah-blah [1]₋ -
1:13:14
blank [2]₋ - 1:27:9₋,
1:27:10
blown [2]₋ - 1:81:9₋,
1:82:23
bold [1]₋ - 1:13:22
bolded [1]₋ - 1:18:12
boss [1]₋ - 1:10:7
bottom [2]₋ - 1:27:20₋,
1:78:12
bound [2]₋ - 1:20:2₋,

1:37:14
Box [1]₋ - 1:66:17
box [5]₋ - 1:14:24₋, 1:15:4
₋, 1:63:3₋, 1:66:16₋, 1:68:2
box/container [1]₋ -
1:66:5
boxes [115]₋ - 1:6:8₋,
1:6:16₋, 1:9:15₋, 1:14:11₋,
1:14:15₋, 1:14:17₋, 1:14:23
₋, 1:15:1₋, 1:15:22₋, 1:16:17
₋, 1:16:21₋, 1:16:24₋, 1:17:8
₋, 1:17:13₋, 1:19:13₋, 1:20:9
₋, 1:21:3₋, 1:21:19₋, 1:27:15
₋, 1:27:18₋, 1:27:25₋, 1:28:4
₋, 1:28:13₋, 1:28:20₋, 1:29:1
₋, 1:29:8₋, 1:29:10₋, 1:29:11
₋, 1:29:12₋, 1:29:13₋,
1:29:17₋, 1:29:19₋, 1:29:20
₋, 1:29:21₋, 1:29:23₋, 1:30:6
₋, 1:30:7₋, 1:30:9₋, 1:30:11₋,
1:30:19₋, 1:30:22₋, 1:31:2₋,
1:31:3₋, 1:40:9₋, 1:46:14₋,
1:48:4₋, 1:48:7₋, 1:48:13₋,
1:48:15₋, 1:48:17₋, 1:48:20
₋, 1:48:21₋, 1:49:11₋,
1:49:21₋, 1:49:22₋, 1:49:25
₋, 1:50:2₋, 1:50:4₋, 1:50:9₋,
1:50:13₋, 1:50:15₋, 1:51:2₋,
1:51:6₋, 1:51:7₋, 1:51:14₋,
1:51:24₋, 1:52:1₋, 1:52:17₋,
1:63:24₋, 1:63:25₋, 1:64:4₋,
1:64:12₋, 1:64:19₋, 1:64:20
₋, 1:64:21₋, 1:65:17₋,
1:65:18₋, 1:65:24₋, 1:66:1₋,
1:66:10₋, 1:66:14₋, 1:66:21
₋, 1:67:10₋, 1:67:15₋,
1:67:18₋, 1:67:19₋, 1:67:23
₋, 1:68:7₋, 1:68:18₋, 1:68:20
₋, 1:68:24₋, 1:69:2₋, 1:69:3₋,
1:69:5₋, 1:69:12₋, 1:69:21₋,
1:69:25₋, 1:70:4₋, 1:70:5₋,
1:70:7₋, 1:70:16₋, 1:71:13₋,
1:71:16₋, 1:71:19₋, 1:71:23
₋, 1:72:1₋, 1:74:5₋, 1:74:7
BRATT [103]₋ - 1:3:9₋,
1:17:21₋, 1:17:24, 1:18:21₋,
1:18:24₋, 1:19:12₋, 1:20:1₋,
1:20:7₋, 1:20:10₋, 1:20:12₋,
1:20:18₋, 1:21:4₋, 1:21:8₋,
1:21:15₋, 1:21:20₋, 1:21:22
₋, 1:22:1₋, 1:22:21₋, 1:23:1₋,
1:24:25₋, 1:25:8₋, 1:25:15₋,
1:25:19₋, 1:25:21₋, 1:26:3₋,
1:26:7₋, 1:26:10₋, 1:26:16₋,
1:26:20₋, 1:26:23₋, 1:27:1₋,
1:27:8₋, 1:27:11₋, 1:27:25₋,
1:28:2₋, 1:28:6₋, 1:28:9₋,
1:28:12₋, 1:28:23₋, 1:29:2₋,
1:29:4₋, 1:29:7₋, 1:29:10₋,

1:29:18, 1:29:25₋, 1:30:5₋,
1:30:10₋, 1:30:14₋, 1:30:21
₋, 1:31:6₋, 1:31:19₋, 1:31:23
₋, 1:32:9₋, 1:32:13₋, 1:32:21
₋, 1:33:9₋, 1:33:17₋, 1:34:16
₋, 1:61:14₋, 1:64:6₋, 1:64:12
₋, 1:64:14₋, 1:65:5₋, 1:65:20
₋, 1:66:12, 1:66:24₋, 1:67:2,
1:67:5, 1:67:7₋, 1:67:9₋,
1:67:13₋, 1:67:24₋, 1:68:4₋,
1:68:10₋, 1:73:23₋, 1:74:1₋,
1:74:3₋, 1:74:12₋, 1:74:24₋,
1:75:12₋, 1:75:16₋, 1:75:23
₋, 1:76:5₋, 1:76:10₋, 1:76:17
₋, 1:76:22₋, 1:77:1₋, 1:77:11
₋, 1:78:13₋, 1:78:18₋,
1:78:22₋, 1:79:10₋, 1:79:24
₋, 1:80:16₋, 1:81:12₋,
1:81:19₋, 1:81:25₋, 1:82:3₋,
1:82:6₋, 1:82:8₋, 1:82:18₋,
1:82:20₋, 1:82:25
Bratt [6]₋ - 1:3:9₋, 1:17:19
₋, 1:32:12₋, 1:61:9₋, 1:61:11
₋, 1:74:10
brief [5]₋ - 1:18:8₋, 1:22:7
₋, 1:54:10₋, 1:58:8₋, 1:61:15
briefed [1]₋ - 1:15:5
briefing [3]₋ - 1:29:13₋,
1:32:10₋, 1:45:4
briefly [2]₋ - 1:35:4₋,
1:83:4
briefs [1]₋ - 1:43:21
bring [1]₋ - 1:44:21
bringing [1]₋ - 1:46:20
brings [1]₋ - 1:14:24
broad [4]₋ - 1:25:4₋,
1:60:9₋, 1:77:16₋, 1:88:8
broadcasting [1]₋ - 1:4:6
broader [1]₋ - 1:84:8
broken [1]₋ - 1:15:19
brought [4]₋ - 1:5:13₋,
1:21:12₋, 1:46:23₋, 1:78:15
bubbled [1]₋ - 1:44:16
bulk [1]₋ - 1:31:1
bunch [1]₋ - 1:6:15
burden [5]₋ - 1:31:13₋,
1:31:15₋, 1:34:19₋, 1:85:18

C

c)(1 [1]₋ - 1:54:24
c)(1) [1]₋ - 1:13:11
c)(2 [3]₋ - 1:54:24₋, 1:55:5
₋, 1:60:9
camera [3]₋ - 1:11:10₋,

1:13:1_, 1:13:4

candidly [2]_ - 1:43:18_, 1:85:5

cannot [10]_ - 1:20:7_, 1:24:7_, 1:25:9_, 1:25:21_, 1:44:4_, 1:47:8_, 1:51:7_, 1:52:15_, 1:56:20_, 1:62:6

capacity [1]_ - 1:78:2

careful [1]_ - 1:67:24

cares [2]_ - 1:16:23_, 1:17:9

Carlos [1]_ - 1:3:6

case [53]_ - 1:3:2_, 1:3:6_, 1:6:22_, 1:7:2_, 1:15:6_, 1:19:11_, 1:22:7_, 1:22:10_, 1:23:3_, 1:23:15_, 1:23:16_, 1:31:20_, 1:34:3_, 1:35:8_, 1:35:16_, 1:36:7_, 1:39:8_, 1:42:1_, 1:44:8_, 1:45:3_, 1:45:13_, 1:45:20_, 1:46:18 _, 1:47:11_, 1:48:10_, 1:54:3 _, 1:54:20_, 1:55:9_, 1:55:13 _, 1:56:8_, 1:56:18_, 1:58:18 _, 1:60:7_, 1:60:8_, 1:60:14_, 1:60:17_, 1:62:3_, 1:62:8_, 1:62:17_, 1:63:15_, 1:66:3_, 1:69:4_, 1:71:3_, 1:78:3_, 1:78:24_, 1:81:15_, 1:82:17 _, 1:83:10_, 1:83:13_, 1:83:24_, 1:85:10_, 1:86:3_, 1:87:18

cases [12]_ - 1:32:4_, 1:35:7_, 1:41:6_, 1:41:11_, 1:41:12_, 1:42:25_, 1:56:4_, 1:56:5_, 1:58:10_, 1:58:20_, 1:67:9_, 1:80:16

caught [1]_ - 1:18:10

caused [1]_ - 1:30:6

CCTV [1]_ - 1:6:19

CEE [2]_ - 1:23:10_, 1:23:13

cert [1]_ - 1:45:3

certain [3]_ - 1:58:11_, 1:74:20_, 1:77:15

certainly [11]_ - 1:11:20_, 1:20:3_, 1:22:8_, 1:37:22_, 1:45:8_, 1:54:3_, 1:54:18_, 1:68:14_, 1:80:3_, 1:80:4_, 1:80:17

cetera [1]_ - 1:52:12

change [4]_ - 1:44:22_, 1:44:23_, 1:46:21_, 1:79:22

changes [1]_ - 1:52:12

characterized [1]_ - 1:47:10

charge [10]_ - 1:16:2_, 1:32:8_, 1:38:23_, 1:40:3_, 1:40:11_, 1:42:2_, 1:42:14_, 1:42:16_, 1:64:8_, 1:80:7

charged [13]_ - 1:7:12_, 1:18:19_, 1:22:3_, 1:22:5_, 1:24:8_, 1:49:2_, 1:49:24_, 1:62:20_, 1:63:2_, 1:63:12_, 1:66:8_, 1:75:3

charges [1]- 1:26:18_, 1:37:8_, 1:40:4_, 1:40:6_, 1:41:24_, 1:44:4_, 1:47:6

charging [3]_ - 1:23:12_, 1:41:17_, 1:41:19

chart [2]_ - 1:65:24_, 1:66:13

check [1]_ - 1:77:1

child [1]_ - 1:23:8

choice [1]_ - 1:46:20

chop [2]_ - 1:18:8_, 1:54:12

chosen [1]_ - 1:55:18

chronology [1]_ - 1:30:1

circuit [8]_ - 1:43:17_, 1:43:22_, 1:57:2_, 1:57:5_, 1:57:7_, 1:72:11_, 1:79:12_, 1:79:16

Circuit [28]_ - 1:22:8_, 1:23:14_, 1:23:19_, 1:26:4_, 1:32:1_, 1:32:9_, 1:34:25_, 1:37:12_, 1:41:6_, 1:42:13_, 1:44:7_, 1:46:4_, 1:47:22_, 1:53:17_, 1:53:22_, 1:54:3_, 1:54:15_, 1:54:19_, 1:57:4_, 1:57:8_, 1:57:20_, 1:58:18_, 1:72:7_, 1:72:8_, 1:78:23_, 1:78:25_, 1:79:13_, 1:85:3

Circuit's [4]_ - 1:23:4_, 1:55:21_, 1:56:25_, 1:62:4

circular [1]_ - 1:72:25

circumstantial [1]_ - 1:34:4

circumvent [1]_ - 1:4:9

citation [2]_ - 1:8:22_, 1:56:18

cite [4]_ - 1:23:3_, 1:71:3_, 1:75:21_, 1:85:10

cited [3]_ - 1:22:7_, 1:39:8 _, 1:78:24

cites [4]_ - 1:22:10_, 1:54:3 _, 1:54:20_, 1:58:21

citing [2]_ - 1:8:16_, 1:38:11

civil [1]_ - 1:66:3

claim [2]_ - 1:50:19_, 1:63:16

claims [1]_ - 1:71:7

clarifies [1]_ - 1:63:1

clarify [1]_ - 1:13:5

clarity [2]_ - 1:9:18_, 1:20:24

class [1]_ - 1:24:15

classification [27]_ - 1:24:16_, 1:48:4_, 1:49:3_, 1:49:7_, 1:49:13_, 1:49:14_, 1:49:25_, 1:50:2_, 1:50:5_, 1:50:9_, 1:50:11_, 1:51:3_, 1:51:8_, 1:52:18_, 1:63:22_, 1:64:15_, 1:66:15_, 1:68:19 _, 1:68:20_, 1:69:1_, 1:69:4_, 1:69:8_, 1:69:10_, 1:69:18_, 1:70:10_, 1:70:12_, 1:72:2

classified [22]_ - 1:6:8_, 1:6:18_, 1:8:19_, 1:38:18_, 1:49:3_, 1:49:22_, 1:50:13_, 1:50:15_, 1:63:16_, 1:63:21 _, 1:64:4_, 1:65:21_, 1:65:25 _, 1:66:14_, 1:66:18_, 1:67:18_, 1:68:2_, 1:68:7_, 1:70:18_, 1:71:23

clause [2]_ - 1:55:4_, 1:55:5

clear [12]_ - 1:28:19_, 1:33:3_, 1:37:20_, 1:37:23_, 1:43:14_, 1:52:1_, 1:52:5_, 1:58:10_, 1:59:20_, 1:69:22 _, 1:71:5_, 1:73:12

clearer [1]_ - 1:24:7

clearly [4]_ - 1:41:4_, 1:44:8_, 1:50:12_, 1:54:14

client [2]_ - 1:19:6_, 1:81:18

clients [1]_ - 1:41:10

clips [1]_ - 1:65:12

close [1]_ - 1:57:7

closed [7]_ - 1:79:9_, 1:79:10_, 1:79:13_, 1:79:17 _, 1:79:23_, 1:80:2_, 1:80:8

closer [1]_ - 1:83:23

closest [1]_ - 1:60:19

closing [3]_ - 1:34:11_, 1:47:11_, 1:51:22

closure [1]_ - 1:78:20

clothes [3]_ - 1:14:19_, 1:16:1_, 1:16:23

clothing [1]_ - 1:17:3

Club [1]_ - 1:11:11

co [2]_ - 1:7:10_, 1:7:12

co-conspirator [1]_ - 1:7:12

co-conspirators [1]_ - 1:7:10

collar [1]_ - 1:32:4

colleague [2]_ - 1:41:17_, 1:61:6

colleagues [1]_ - 1:41:10

colloquy [4]_ - 1:10:4_, 1:14:1_, 1:16:21_, 1:47:18

Columbia [3]_ - 1:24:20_, 1:77:13_, 1:78:14

commit [1]_ - 1:71:24

committed [3]_ - 1:6:7_, 1:46:10_, 1:73:4

common [1]_ - 1:63:3

common-access [1]_ - 1:63:3

comparable [1]_ - 1:32:7

compare [1]_ - 1:23:2

compel [1]_ - 1:62:9

compelling [1]_ - 1:81:8

compels [1]_ - 1:62:23

complicated [1]_ - 1:85:15

comply [1]_ - 1:63:4

component [3]_ - 1:11:2_, 1:45:3_, 1:59:21

conceal [7]_ - 1:8:20_, 1:11:11_, 1:11:14_, 1:12:23 _, 1:38:19_, 1:50:10_, 1:51:8

concealed [1]_ - 1:69:7

concealing [4]_ - 1:13:14 _, 1:49:3_, 1:69:6_, 1:72:3

conceded [3]_ - 1:6:9_, 1:39:1_, 1:40:8

conceding [2]_ - 1:63:20 _, 1:64:15

concern [1]_ - 1:37:19

concerned [2]_ - 1:42:10 _, 1:54:22

concerns [2]_ - 1:21:18_, 1:80:8

conclude [2]_ - 1:37:18_, 1:58:19

concluded [3]_ - 1:54:21 _, 1:57:21_, 1:88:23

concludes [1]_ - 1:36:11_, 1:37:3

conclusion [1]_ - 1:70:8

concomitantly [1]_ - 1:83:16

concurrence [3]₋ - 1:39:9 ₋, 1:39:10₋, 1:40:24

concurring [5]₋ - 1:38:7₋, 1:39:16₋, 1:39:19₋, 1:44:17

conduct [9]₋ - 1:18:3₋, 1:19:20₋, 1:26:24₋, 1:44:12 ₋, 1:53:20₋, 1:55:9₋, 1:55:10 ₋, 1:63:2₋, 1:63:8

conducted [6]₋ - 1:48:21 ₋, 1:49:5₋, 1:49:16₋, 1:50:6₋, 1:52:2₋, 1:52:4

conducts [1]₋ - 1:48:19₋, 1:71:15

conference [2]₋ - 1:41:17 ₋, 1:41:19

confirm [1]₋ - 1:56:5

conflated [1]₋ - 1:57:14

conflation [1]₋ - 1:54:9

conform [1]₋ - 1:44:11

confused [1]₋ - 1:83:5

confuses [1]₋ - 1:46:3

confusion [1]₋ - 1:44:6

conjunction [2]₋ - 1:65:23 ₋, 1:81:20

connect [1]₋ - 1:21:2

connection [1]₋ - 1:76:24

consequence [1]₋ - 1:46:18

consider [1]₋ - 1:73:6

considered [2]₋ - 1:43:19 ₋, 1:65:8

considering [2]₋ - 1:42:23 ₋, 1:56:20

consistent [2]₋ - 1:76:5₋, 1:79:12

conspiracy [20]₋ - 1:7:22 ₋, 1:8:18₋, 1:8:22₋, 1:9:1₋, 1:9:10₋, 1:9:11₋, 1:11:2₋, 1:11:5₋, 1:18:5₋, 1:19:4₋, 1:24:5₋, 1:38:17₋, 1:38:23₋, 1:39:3₋, 1:40:3₋, 1:40:11₋, 1:62:20₋, 1:62:24₋, 1:63:7₋, 1:64:9

conspirator [1]₋ - 1:7:12

conspirators [2]₋ - 1:7:10 ₋, 1:11:1

conspire [1]₋ - 1:7:20

conspiring [2]₋ - 1:6:11₋, 1:8:5

constitutional [1]₋ - 1:46:21

contain [6]₋ - 1:13:21₋, 1:33:11₋, 1:49:22₋, 1:70:18

₋, 1:72:1₋, 1:72:2

contained [5]₋ - 1:6:8₋, 1:49:25₋, 1:50:4₋, 1:68:25₋, 1:71:23

containers [1]₋ - 1:29:16

containing [5]₋ - 1:50:13 ₋, 1:50:15₋, 1:51:2₋, 1:64:4₋, 1:82:15

contents [2]₋ - 1:69:6₋, 1:69:25

contested [1]₋ - 1:8:9

context [7]₋ - 1:26:21₋, 1:53:23₋, 1:54:2₋, 1:60:3₋, 1:76:3₋, 1:79:9₋, 1:79:23

continue [5]₋ - 1:14:8₋, 1:45:16₋, 1:74:17₋, 1:80:8₋, 1:85:4

continued [3]₋ - 1:5:9₋, 1:78:20₋, 1:80:14

continuing [4]₋ - 1:23:13 ₋, 1:75:2₋, 1:76:6₋, 1:78:11

contrast [1]₋ - 1:23:23

convention [2]₋ - 1:67:1₋, 1:67:2

conversation [1]₋ - 1:73:22

convicted [1]₋ - 1:23:9

convince [1]₋ - 1:31:14

copy [4]₋ - 1:14:6₋, 1:74:5 ₋, 1:74:6

corners [3]₋ - 1:6:3₋, 1:8:7 ₋, 1:20:23

correct [26]₋ - 1:6:10₋, 1:20:12₋, 1:21:20₋, 1:22:21 ₋, 1:28:23₋, 1:29:2₋, 1:29:8₋, 1:30:5₋, 1:30:21₋, 1:31:17₋, 1:39:12₋, 1:39:25₋, 1:43:3₋, 1:54:8₋, 1:54:10, 1:67:7₋, 1:67:21₋, 1:68:8₋, 1:68:10₋, 1:74:1₋, 1:75:16₋, 1:81:12₋, 1:81:17₋, 1:81:19₋, 1:82:18 ₋, 1:82:25

corrected [1]₋ - 1:88:15

corresponding [1]₋ - 1:19:24

corrupt [15]₋ - 1:7:19₋, 1:7:22₋, 1:8:17₋, 1:10:21₋, 1:41:24₋, 1:56:7₋, 1:56:10₋, 1:56:11₋, 1:56:16₋, 1:56:22 ₋, 1:72:21₋, 1:73:3₋, 1:73:7

corruptly [59]₋ - 1:5:3₋, 1:12:22₋, 1:22:3₋, 1:25:25₋, 1:26:2₋, 1:37:7₋, 1:37:13₋, 1:37:24₋, 1:38:1₋, 1:38:4₋, 1:38:8₋, 1:38:24₋, 1:39:10₋,

1:39:24₋, 1:40:2₋, 1:40:13₋, 1:40:21₋, 1:41:21₋, 1:41:22 ₋, 1:42:4₋, 1:43:5₋, 1:43:6₋, 1:43:22₋, 1:44:19₋, 1:44:24 ₋, 1:45:7₋, 1:45:11₋, 1:45:15 ₋, 1:46:5₋, 1:46:9₋, 1:46:12₋, 1:53:10₋, 1:53:18₋, 1:54:2₋, 1:54:6₋, 1:54:18₋, 1:54:21₋, 1:55:3₋, 1:55:8₋, 1:55:12₋, 1:55:15₋, 1:56:8₋, 1:56:15₋, 1:57:17₋, 1:57:22₋, 1:58:4₋, 1:59:19₋, 1:60:10₋, 1:61:4₋, 1:61:5₋, 1:72:5₋, 1:72:6₋, 1:72:15₋, 1:72:18₋, 1:72:21 ₋, 1:73:7₋, 1:73:14

Counsel [13]₋ - 1:4:18₋, 1:13:5₋, 1:17:23₋, 1:28:25₋, 1:33:13₋, 1:38:22₋, 1:40:15 ₋, 1:52:18₋, 1:69:14₋, 1:70:23₋, 1:71:7₋, 1:76:4₋, 1:78:1

counsel [6]₋ - 1:4:4₋, 1:5:14₋, 1:44:14₋, 1:52:16₋, 1:65:3₋, 1:74:7

Counsel's [16]₋ - 1:36:21 ₋, 1:37:12₋, 1:37:17₋, 1:40:7 ₋, 1:42:22₋, 1:46:15₋, 1:47:7 ₋, 1:50:17₋, 1:52:8₋, 1:68:23 ₋, 1:69:9₋, 1:72:16₋, 1:78:19 ₋, 1:83:8₋, 1:84:19₋, 1:85:17

count [9]₋ - 1:16:7₋, 1:18:5 ₋, 1:18:6₋, 1:18:7₋, 1:18:23₋, 1:23:11₋, 1:27:4₋, 1:68:21

Count [17]₋ - 1:7:21₋, 1:8:15₋, 1:9:20₋, 1:10:19₋, 1:12:10₋, 1:12:16₋, 1:12:19 ₋, 1:12:21₋, 1:13:2₋, 1:15:11 ₋, 1:16:25₋, 1:18:20₋, 1:18:25₋, 1:20:6₋, 1:26:12₋, 1:30:18

Counts [7]₋ - 1:5:2₋, 1:9:7 ₋, 1:9:24₋, 1:10:2₋, 1:10:17₋, 1:25:8₋, 1:26:13

counts [10]₋ - 1:9:24₋, 1:13:6₋, 1:18:2₋, 1:18:5₋, 1:22:17₋, 1:23:22₋, 1:24:15 ₋, 1:25:9₋, 1:40:12₋, 1:68:22

couple [7]₋ - 1:53:15₋, 1:55:7₋, 1:55:14₋, 1:58:9₋, 1:65:23₋, 1:77:20₋, 1:79:11

course [15]₋ - 1:5:14₋, 1:5:20₋, 1:8:16₋, 1:11:1₋, 1:18:3₋, 1:38:11₋, 1:41:7₋, 1:43:8₋, 1:44:13₋, 1:51:16₋, 1:57:2₋, 1:68:8₋, 1:76:11₋, 1:76:15₋, 1:82:15

Court [80]₋ - 1:3:1₋, 1:3:3₋, 1:11:23₋, 1:14:25₋, 1:18:10

₋, 1:18:15₋, 1:18:17₋, 1:19:1 ₋, 1:20:1₋, 1:26:5₋, 1:31:11₋, 1:34:22₋, 1:36:17₋, 1:36:21 ₋, 1:36:23₋, 1:37:2₋, 1:37:3₋, 1:37:14₋, 1:37:16₋, 1:37:18 ₋, 1:37:20₋, 1:40:23₋, 1:41:15₋, 1:42:19₋, 1:42:21 ₋, 1:43:3₋, 1:43:9₋, 1:43:12₋, 1:44:15₋, 1:44:25₋, 1:45:2₋, 1:45:7₋, 1:45:10₋, 1:45:22₋, 1:45:25₋, 1:46:6₋, 1:47:2₋, 1:47:5₋, 1:47:17₋, 1:50:17₋, 1:52:10₋, 1:54:1₋, 1:54:7₋, 1:57:2₋, 1:57:5₋, 1:58:4₋, 1:58:10₋, 1:58:23₋, 1:58:25 ₋, 1:59:21₋, 1:59:25₋, 1:60:8 ₋, 1:60:11₋, 1:69:23₋, 1:71:9 ₋, 1:72:17₋, 1:73:6₋, 1:73:11 ₋, 1:74:3₋, 1:76:7₋, 1:77:9₋, 1:77:17₋, 1:77:21₋, 1:77:23 ₋, 1:78:2₋, 1:79:14₋, 1:79:15 ₋, 1:82:9₋, 1:83:5₋, 1:83:11₋, 1:83:18₋, 1:83:20₋, 1:84:4₋, 1:84:5₋, 1:84:10₋, 1:84:13₋, 1:85:4₋, 1:86:2₋, 1:88:21

court [9]₋ - 1:54:5₋, 1:57:10₋, 1:57:12₋, 1:57:13 ₋, 1:57:21₋, 1:72:9₋, 1:77:5₋, 1:84:9₋, 1:85:17

COURT [198]₋ - 1:3:2₋, 1:3:11₋, 1:3:14₋, 1:3:18₋, 1:3:23₋, 1:4:1₋, 1:5:18₋, 1:6:21₋, 1:7:21₋, 1:8:15₋, 1:9:17₋, 1:10:14₋, 1:10:23₋, 1:11:22₋, 1:12:1₋, 1:12:9₋, 1:12:15₋, 1:12:18₋, 1:12:21 ₋, 1:13:15₋, 1:13:18₋, 1:14:3 ₋, 1:14:5₋, 1:14:8₋, 1:15:4₋, 1:15:9₋, 1:15:14₋, 1:16:12₋, 1:17:16₋, 1:17:19₋, 1:17:22 ₋, 1:18:20₋, 1:18:22₋, 1:19:5 ₋, 1:19:23₋, 1:20:5₋, 1:20:8₋, 1:20:11₋, 1:20:15₋, 1:20:22 ₋, 1:21:7₋, 1:21:11₋, 1:21:18 ₋, 1:21:21₋, 1:21:23₋, 1:22:18₋, 1:22:22₋, 1:24:21 ₋, 1:25:4₋, 1:25:12₋, 1:25:17 ₋, 1:25:20₋, 1:25:24₋, 1:26:6 ₋, 1:26:8₋, 1:26:11₋, 1:26:19 ₋, 1:26:22₋, 1:26:24₋, 1:27:2 ₋, 1:27:9₋, 1:27:22₋, 1:28:1₋, 1:28:3₋, 1:28:7₋, 1:28:11₋, 1:28:17₋, 1:28:24, 1:29:3₋, 1:29:6₋, 1:29:9₋, 1:29:11₋, 1:29:24₋, 1:30:1₋, 1:30:6₋, 1:30:13₋, 1:30:16₋, 1:31:4₋, 1:31:17₋, 1:31:20₋, 1:32:3₋, 1:32:11₋, 1:32:16₋, 1:33:2₋, 1:33:10₋, 1:34:14₋, 1:35:1₋, 1:35:14₋, 1:35:25₋, 1:36:6₋,

1:36:9﹍, 1:36:11﹍, 1:36:14﹍, 1:38:3﹍, 1:38:13﹍, 1:39:8﹍, 1:39:22﹍, 1:40:18﹍, 1:41:1﹍, 1:42:1﹍, 1:42:7﹍, 1:42:10﹍, 1:44:6﹍, 1:45:1﹍, 1:45:18﹍, 1:46:1﹍, 1:46:11﹍, 1:48:1﹍, 1:49:18﹍, 1:50:12﹍, 1:50:23 ﹍, 1:51:10﹍, 1:51:17﹍, 1:52:21﹍, 1:53:3﹍, 1:53:8﹍, 1:55:17﹍, 1:55:23﹍, 1:56:15 ﹍, 1:57:23﹍, 1:59:2﹍, 1:59:8﹍, 1:59:20﹍, 1:60:1﹍, 1:60:17﹍, 1:60:22﹍, 1:61:3﹍, 1:61:9﹍, 1:61:11﹍, 1:64:3﹍, 1:64:10﹍, 1:64:13﹍, 1:65:1﹍, 1:65:18﹍, 1:66:2﹍, 1:66:21﹍, 1:66:25﹍, 1:67:4﹍, 1:67:6﹍, 1:67:8﹍, 1:67:12﹍, 1:67:21﹍, 1:68:3﹍, 1:68:8﹍, 1:68:11﹍, 1:68:16﹍, 1:70:19﹍, 1:71:11﹍, 1:71:17 ﹍, 1:71:21﹍, 1:71:25﹍, 1:72:4 ﹍, 1:72:22﹍, 1:73:9﹍, 1:73:18 ﹍, 1:73:21﹍, 1:73:25﹍, 1:74:2 ﹍, 1:74:9﹍, 1:74:13﹍, 1:75:9﹍, 1:75:15﹍, 1:75:17﹍, 1:75:25 ﹍, 1:76:9﹍, 1:76:11﹍, 1:76:19 ﹍, 1:76:23﹍, 1:77:4﹍, 1:77:25 ﹍, 1:78:16﹍, 1:78:19﹍, 1:79:6 ﹍, 1:79:20﹍, 1:80:10﹍, 1:81:6 ﹍, 1:81:13﹍, 1:81:22﹍, 1:82:2 ﹍, 1:82:4﹍, 1:82:7﹍, 1:82:9﹍, 1:82:19﹍, 1:82:22﹍, 1:83:1﹍, 1:85:21﹍, 1:86:13﹍, 1:86:17 ﹍, 1:86:20﹍, 1:87:2﹍, 1:87:5﹍, 1:87:12﹍, 1:87:15﹍, 1:87:21 ﹍, 1:88:3﹍, 1:88:6﹍, 1:88:16﹍, 1:88:18

Court's [8]﹍ - 1:11:7﹍, 1:23:5﹍, 1:36:11﹍, 1:56:18﹍, 1:74:16﹍, 1:76:16﹍, 1:78:15 ﹍, 1:85:14

courthouse [1]﹍ - 1:80:24

COURTROOM [1]﹍ - 1:3:4

courtroom [1]﹍ - 1:4:3

courts [2]﹍ - 1:58:1﹍, 1:80:1

courts' [1]﹍ - 1:44:21

cover [3]﹍ - 1:26:9﹍, 1:76:12﹍, 1:82:16

coverage [1]﹍ - 1:13:5

covered [2]﹍ - 1:83:2﹍, 1:84:1

create [1]﹍ - 1:44:10

crime [5]﹍ - 1:6:7﹍, 1:49:24 ﹍, 1:50:1﹍, 1:54:23﹍, 1:69:5

crimes [1]﹍ - 1:46:10

criminal [7]﹍ - 1:7:19﹍, 1:8:7﹍, 1:10:10﹍, 1:56:19﹍, 1:61:20﹍, 1:63:10﹍, 1:73:4

Criminal [1]﹍ - 1:62:1

criminally [1]﹍ - 1:7:9

cross [1]﹍ - 1:80:19

cross-examine [1]﹍ - 1:80:19

curious [2]﹍ - 1:26:22﹍, 1:32:7

custody [2]﹍ - 1:67:19﹍, 1:74:4

customary [1]﹍ - 1:41:5

## D

D.C [14]﹍ - 1:42:13﹍, 1:46:3 ﹍, 1:52:10﹍, 1:57:2﹍, 1:57:7﹍, 1:58:20﹍, 1:65:16﹍, 1:71:4﹍, 1:76:6﹍, 1:76:7﹍, 1:79:12﹍, 1:79:16﹍, 1:84:5﹍, 1:84:13

Dadan [1]﹍ - 1:3:16

damage [1]﹍ - 1:80:7

danger [1]﹍ - 1:55:5

dates [3]﹍ - 1:23:25﹍, 1:30:9﹍, 1:30:11

David [1]﹍ - 1:3:10

De [37]﹍ - 1:3:6﹍, 1:3:20﹍, 1:3:22﹍, 1:3:24﹍, 1:4:15﹍, 1:5:15﹍, 1:6:6﹍, 1:6:17﹍, 1:9:5﹍, 1:9:16﹍, 1:9:20﹍, 1:9:25﹍, 1:10:4﹍, 1:10:15﹍, 1:10:25﹍, 1:11:12﹍, 1:11:17 ﹍, 1:12:5﹍, 1:14:10﹍, 1:16:4﹍, 1:17:10﹍, 1:17:13﹍, 1:19:2﹍, 1:19:20﹍, 1:20:17﹍, 1:21:2﹍, 1:21:13﹍, 1:21:25﹍, 1:24:8﹍, 1:24:22﹍, 1:25:6﹍, 1:34:17﹍, 1:35:2﹍, 1:35:11﹍, 1:36:25﹍, 1:68:9﹍, 1:70:15

DE [1]﹍ - 1:3:25

deal [1]﹍ - 1:6:2

dealing [4]﹍ - 1:42:12﹍, 1:42:15﹍, 1:42:17﹍, 1:80:12

Dearie [1]﹍ - 1:74:5

decided [1]﹍ - 1:44:15

deciding [4]﹍ - 1:54:8﹍, 1:54:23﹍, 1:55:8﹍, 1:58:24

decision [6]﹍ - 1:23:4﹍, 1:39:9﹍, 1:40:14﹍, 1:45:14﹍, 1:79:11﹍, 1:79:13

declined [1]﹍ - 1:84:16

Defendant [4]﹍ - 1:4:14﹍, 1:4:22﹍, 1:5:1﹍, 1:34:9

defendant [11]﹍ - 1:45:23 ﹍, 1:46:7﹍, 1:46:9﹍, 1:47:5﹍, 1:47:6﹍, 1:47:24﹍, 1:56:5﹍, 1:56:6﹍, 1:58:21﹍, 1:79:6﹍, 1:79:20

defendant's [1]﹍ - 1:56:20

defendants [10]﹍ - 1:23:9 ﹍, 1:42:25﹍, 1:43:15﹍, 1:55:10﹍, 1:62:7﹍, 1:66:9﹍, 1:69:7﹍, 1:83:13﹍, 1:83:21

defended [1]﹍ - 1:41:10

defense [2]﹍ - 1:5:13﹍, 1:5:14﹍, 1:12:3﹍, 1:44:14﹍, 1:50:18﹍, 1:50:21﹍, 1:52:16 ﹍, 1:52:20﹍, 1:65:3﹍, 1:65:6﹍, 1:65:13﹍, 1:80:18

defense-brought [1]﹍ - 1:5:13

deficiency [1]﹍ - 1:60:15

define [4]﹍ - 1:25:1﹍, 1:58:1﹍, 1:72:10﹍, 1:72:15

defined [2]﹍ - 1:53:17﹍, 1:72:24

definitely [1]﹍ - 1:56:23

definition [28]﹍ - 1:26:1﹍, 1:26:4﹍, 1:37:13﹍, 1:38:3﹍, 1:39:25﹍, 1:40:13﹍, 1:40:20 ﹍, 1:41:2﹍, 1:42:4﹍, 1:44:10﹍, 1:44:19﹍, 1:44:24﹍, 1:45:15 ﹍, 1:46:5﹍, 1:46:7﹍, 1:46:12﹍, 1:54:1﹍, 1:54:10﹍, 1:55:12﹍, 1:55:18﹍, 1:55:19﹍, 1:55:22 ﹍, 1:56:25﹍, 1:57:17﹍, 1:58:19﹍, 1:72:8﹍, 1:72:9﹍, 1:73:12

definitions [4]﹍ - 1:41:20﹍, 1:41:21﹍, 1:43:24﹍, 1:44:3

delete [3]﹍ - 1:11:10﹍, 1:13:1﹍, 1:13:3

deleted [1]﹍ - 1:10:7

deleting [1]﹍ - 1:59:16

delivered [1]﹍ - 1:30:8

delivery [2]﹍ - 1:30:9﹍, 1:30:11

delta [2]﹍ - 1:64:22﹍, 1:70:16

demands [1]﹍ - 1:10:10

departed [1]﹍ - 1:30:4

deposition [1]﹍ - 1:82:16

depraved [1]﹍ - 1:56:22

DEPUTY [1]﹍ - 1:3:4

describe [1]﹍ - 1:77:6

described [1]﹍ - 1:25:1

destroying [1]﹍ - 1:13:14

detail [4]﹍ - 1:10:3﹍, 1:19:19﹍, 1:37:20﹍, 1:70:21

detailed [4]﹍ - 1:32:24﹍, 1:61:18﹍, 1:62:10﹍, 1:66:2

details [2]﹍ - 1:18:3﹍, 1:22:11

determine [2]﹍ - 1:56:21﹍, 1:57:10

development [1]﹍ - 1:42:3

device [1]﹍ - 1:50:24

difference [2]﹍ - 1:12:15﹍, 1:13:9

different [12]﹍ - 1:17:7﹍, 1:26:18﹍, 1:26:19﹍, 1:26:25 ﹍, 1:27:1﹍, 1:42:10﹍, 1:43:21 ﹍, 1:57:24﹍, 1:57:25﹍, 1:58:15﹍, 1:66:17﹍, 1:80:19

differentiate [1]﹍ - 1:80:1

differently [1]﹍ - 1:62:21﹍, 1:74:25

digital [5]﹍ - 1:67:20

direct [5]﹍ - 1:14:10﹍, 1:25:14﹍, 1:34:4﹍, 1:65:3﹍, 1:67:14

directing [1]﹍ - 1:86:21

directly [2]﹍ - 1:34:24﹍, 1:77:3

disagree [3]﹍ - 1:42:22﹍, 1:58:11﹍, 1:72:7

disappointed [1]﹍ - 1:85:19

disclose [6]﹍ - 1:77:21﹍, 1:83:8﹍, 1:83:13﹍, 1:83:19﹍, 1:84:6﹍, 1:84:21

disclosed [1]﹍ - 1:77:17

disclosing [1]﹍ - 1:84:2

disclosure [3]﹍ - 1:53:1﹍, 1:82:1﹍, 1:85:1

discoverable [1]﹍ - 1:77:12﹍, 1:78:14

discovered [4]﹍ - 1:49:7﹍, 1:49:14﹍, 1:49:15﹍, 1:69:11

discovery [32]﹍ - 1:14:5﹍, 1:17:6﹍, 1:19:22﹍, 1:24:11﹍, 1:25:3﹍, 1:27:12﹍, 1:29:4﹍, 1:32:25﹍, 1:35:15﹍, 1:47:8﹍, 1:47:15﹍, 1:48:9﹍, 1:50:20﹍, 1:51:11﹍, 1:51:13﹍, 1:51:24 ﹍, 1:52:6﹍, 1:61:18﹍, 1:61:21 ﹍, 1:64:25﹍, 1:65:1﹍, 1:65:2﹍, 1:65:14﹍, 1:67:20﹍, 1:68:19 ﹍, 1:70:22﹍, 1:71:2﹍, 1:71:6﹍, 1:77:11﹍, 1:83:9﹍, 1:85:16﹍, 1:87:2

discrete [1]‒ - 1:33:15
discuss [7]‒ - 1:5:9‒,
1:5:24‒, 1:10:2‒, 1:26:12‒,
1:31:21‒, 1:35:7‒, 1:53:9
discussed [1]‒ - 1:7:2
discussion [7]‒ - 1:11:15
‒, 1:11:24‒, 1:39:15‒,
1:41:18‒, 1:62:4‒, 1:71:1‒,
1:71:2
dishonestly [1]‒ - 1:53:20
dismiss [6]‒ - 1:4:15‒,
1:5:1‒, 1:31:15‒, 1:42:2‒,
1:43:12‒, 1:46:12
dismissal [3]‒ - 1:42:6‒,
1:42:14‒, 1:43:20
dismissed [2]‒ - 1:41:25‒,
1:42:2
Disney [1]‒ - 1:36:20
dispute [2]‒ - 1:43:5‒,
1:45:1
dissect [1]‒ - 1:57:2
dissent [2]‒ - 1:39:14‒,
1:54:21
dissenting [3]‒ - 1:38:8‒,
1:39:13‒, 1:44:18
distinction [2]‒ - 1:26:13‒,
1:51:22
district [3]‒ - 1:43:10‒,
1:57:13‒, 1:81:23
District [11]‒ - 1:24:20‒,
1:52:10‒, 1:76:16‒, 1:77:13
‒, 1:78:14‒, 1:79:14‒,
1:79:15‒, 1:83:15‒, 1:83:17
‒, 1:84:5‒, 1:84:13
divulging [1]‒ - 1:62:7
docket [5]‒ - 1:4:18‒,
1:4:19‒, 1:66:3‒, 1:84:13‒,
1:85:7
docketed [3]‒ - 1:4:17‒,
1:4:23‒, 1:5:4
documents [48]‒ - 1:6:9‒,
1:6:12‒, 1:6:19‒, 1:8:19‒,
1:24:15‒, 1:24:16‒, 1:38:18
‒, 1:48:11‒, 1:49:3‒, 1:49:7‒,
1:49:23‒, 1:50:2‒, 1:50:10‒,
1:54:25‒, 1:59:12‒, 1:63:5‒,
1:63:17‒, 1:63:21‒, 1:64:1‒,
1:64:15‒, 1:65:9‒, 1:65:10‒,
1:65:21‒, 1:65:22‒, 1:65:25
‒, 1:66:1‒, 1:66:6‒, 1:66:14‒,
1:66:15‒, 1:66:18‒, 1:67:14
‒, 1:67:19‒, 1:68:7‒, 1:68:18
‒, 1:68:25‒, 1:69:3‒, 1:69:7‒,
1:69:18‒, 1:70:9‒, 1:70:11‒,
1:70:18‒, 1:70:25‒, 1:71:8‒,

1:72:2‒, 1:74:6‒, 1:81:7
Donald [1]‒ - 1:3:5
done [3]‒ - 1:7:15‒, 1:19:6
‒, 1:51:16
Donnie [1]‒ - 1:3:22
double [2]‒ - 1:88:10‒,
1:88:13
double-spaced [2]‒ -
1:88:10‒, 1:88:13
down [7]‒ - 1:6:5‒, 1:15:22
‒, 1:16:3‒, 1:29:14‒, 1:36:20
‒, 1:45:14‒, 1:55:14
dozen [1]‒ - 1:23:7
draw [1]‒ - 1:60:2
driver [3]‒ - 1:7:8‒, 1:7:12
‒, 1:7:13
due [4]‒ - 1:37:19‒, 1:44:2
‒, 1:77:18
duration [1]‒ - 1:4:11
during [1]‒ - 1:15:2

E

early [3]‒ - 1:47:18‒,
1:51:5‒, 1:83:22
easier [1]‒ - 1:78:9
ECF [1]‒ - 1:62:15
effort [2]‒ - 1:50:10‒,
1:51:8
efforts [1]‒ - 1:29:18
either [8]‒ - 1:4:9‒, 1:9:22
‒, 1:11:18‒, 1:31:11‒,
1:31:12‒, 1:52:11‒, 1:66:5‒,
1:68:12
elaborate [1]‒ - 1:13:20
elaboration [1]‒ - 1:56:13
electronic [1]‒ - 1:4:3
element [2]‒ - 1:34:5‒,
1:39:10
elements [3]‒ - 1:41:3‒,
1:46:24‒, 1:47:12
Eleventh [29]‒ - 1:22:8‒,
1:23:4‒, 1:23:14‒, 1:23:19‒,
1:26:4‒, 1:32:1‒, 1:32:9‒,
1:34:25‒, 1:37:12‒, 1:41:6‒,
1:44:7‒, 1:46:4‒, 1:47:22‒,
1:53:17‒, 1:53:22‒, 1:54:3‒,
1:54:15‒, 1:54:19‒, 1:55:21
‒, 1:55:25‒, 1:57:4‒, 1:57:8‒,
1:57:20‒, 1:58:18‒, 1:62:4‒,
1:72:7‒, 1:72:8‒, 1:79:13‒,
1:85:3
elsewhere [2]‒ - 1:16:9‒,
1:65:8

Employee [1]‒ - 1:13:1
employee [1]‒ - 1:13:3
en [2]‒ - 1:45:23‒, 1:45:24
encompassed [2]‒ -
1:20:4‒, 1:22:16
end [11]‒ - 1:27:17‒, 1:28:2
‒, 1:28:5‒, 1:28:13‒, 1:28:20
‒, 1:29:1‒, 1:29:20‒, 1:45:18
‒, 1:56:3‒, 1:58:5‒, 1:61:12
endeavor [1]‒ - 1:56:21
endeavors [1]‒ - 1:56:9
ended [1]‒ - 1:31:1
engage [2]‒ - 1:31:24‒,
1:53:20
engaged [4]‒ - 1:7:22‒,
1:9:5‒, 1:23:12‒, 1:24:5
engaging [1]‒ - 1:23:10
ensure [1]‒ - 1:88:9
entered [1]‒ - 1:77:17
enterprise [1]‒ - 1:23:14
entertain [2]‒ - 1:11:23‒,
1:55:16
entertaining [1]‒ - 1:54:6
entire [2]‒ - 1:59:14‒,
1:75:9
entitled [2]‒ - 1:44:3‒,
1:75:4
entry [7]‒ - 1:4:17‒, 1:4:18
‒, 1:4:19‒, 1:4:23‒, 1:5:4‒,
1:66:4‒, 1:83:16
equipment [1]‒ - 1:4:3
essential [4]‒ - 1:62:23‒,
1:64:7‒, 1:64:10‒, 1:71:21
essentially [4]‒ - 1:14:15
‒, 1:26:20‒, 1:34:7‒, 1:34:10
establishing [1]‒ - 1:56:6
et [1]‒ - 1:52:12
event [1]‒ - 1:10:10
evidence [19]‒ - 1:6:4‒,
1:8:3‒, 1:20:20‒, 1:34:20‒,
1:42:12‒, 1:42:16‒, 1:48:8‒,
1:50:16‒, 1:51:14‒, 1:51:19
‒, 1:51:24‒, 1:52:13‒,
1:52:17‒, 1:62:10‒, 1:64:17
‒, 1:69:17‒, 1:70:2‒, 1:70:14
evil [1]‒ - 1:56:22
ex [1]‒ - 1:86:1
exact [1]‒ - 1:31:25
exactly [7]‒ - 1:8:23‒,
1:27:5‒, 1:30:14‒, 1:49:20‒,
1:55:18‒, 1:58:2‒, 1:82:10
examine [1]‒ - 1:80:19

example [4]‒ - 1:32:3‒,
1:33:2‒, 1:43:17‒, 1:66:2
exceedingly [2]‒ - 1:60:7
‒, 1:70:22
except [2]‒ - 1:4:3‒,
1:22:24
exception [5]‒ - 1:5:7‒,
1:65:20‒, 1:68:3‒, 1:68:22‒,
1:82:24
excerpt [3]‒ - 1:13:22‒,
1:14:4‒, 1:27:4
excuse [2]‒ - 1:18:7‒,
1:38:7
exhausted [1]‒ - 1:45:22
exhibit [3]‒ - 1:5:7‒,
1:74:15‒, 1:79:25
exhibits [3]‒ - 1:81:20‒,
1:81:24‒, 1:82:15
exist [1]‒ - 1:44:7
existed [1]‒ - 1:87:16
existence [2]‒ - 1:33:5‒,
1:62:24
exists [4]‒ - 1:44:7‒,
1:51:14‒, 1:76:20‒, 1:81:14
expanding [1]‒ - 1:50:23
expansion [1]‒ - 1:42:18
expect [1]‒ - 1:64:16
explain [5]‒ - 1:8:2‒,
1:9:11‒, 1:35:10‒, 1:47:6‒,
1:62:11
explained [3]‒ - 1:14:23‒,
1:39:3‒, 1:68:24
explaining [2]‒ - 1:84:3‒,
1:86:2
explains [2]‒ - 1:17:6‒,
1:39:10
explanation [1]‒ - 1:14:1
explicit [3]‒ - 1:59:10‒,
1:59:15‒, 1:60:25
explicitly [1]‒ - 1:62:25
exploitation [1]‒ - 1:23:13
exposition [1]‒ - 1:62:10
expressed [1]‒ - 1:58:23
expressly [1]‒ - 1:22:23
extensive [3]‒ - 1:19:22‒,
1:32:25‒, 1:61:18
extent [5]‒ - 1:22:24‒,
1:57:5‒, 1:75:14‒, 1:77:5‒,
1:87:23

F

face [7]‒ - 1:6:2‒, 1:6:6‒,

1:8:4_, 1:15:16_, 1:18:13_, 1:34:25_, 1:84:1

fact [13]_ - 1:17:8_, 1:19:1 _, 1:20:25_, 1:28:25_, 1:31:23_, 1:35:23_, 1:37:14 _, 1:39:12_, 1:40:15_, 1:44:17_, 1:46:18_, 1:50:16 _, 1:67:1

facts [16]_ - 1:8:1_, 1:8:9_, 1:8:13_, 1:10:19_, 1:11:20_, 1:23:15_, 1:34:4_, 1:34:16_, 1:35:11_, 1:35:16_, 1:47:12 _, 1:50:18_, 1:50:19_, 1:50:20_, 1:50:22_, 1:62:23

factual [5]_ - 1:7:3_, 1:7:6 _, 1:11:15_, 1:30:10_, 1:74:1

factually [4]_ - 1:12:16_, 1:26:19_, 1:26:20_, 1:26:24

fails [6]_ - 1:6:1_, 1:6:6_, 1:6:7_, 1:6:17_, 1:9:25_, 1:16:7

fair [2]_ - 1:20:22_, 1:88:3

fairly [5]_ - 1:9:2_, 1:41:5_, 1:44:9_, 1:49:19_, 1:75:19

fall [2]_ - 1:40:12_, 1:40:25

falls [1]_ - 1:68:21

false [21]_ - 1:9:7_, 1:9:9_, 1:12:14_, 1:13:19_, 1:15:10 _, 1:15:17_, 1:16:10_, 1:18:7 _, 1:18:12_, 1:18:19_, 1:18:22_, 1:20:5_, 1:27:3_, 1:27:6_, 1:27:10_, 1:31:3_, 1:31:21_, 1:36:4_, 1:36:6_, 1:68:22

falsity [1]_ - 1:28:24

familiar [2]_ - 1:15:4_, 1:23:5

family [2]_ - 1:36:20_, 1:64:18

far [6]_ - 1:43:9_, 1:55:21_, 1:56:24_, 1:81:13_, 1:82:5_, 1:85:22

fashion [3]_ - 1:15:7_, 1:81:4_, 1:86:1

FBI [19]_ - 1:11:11_, 1:11:14_, 1:11:18_, 1:23:17 _, 1:24:1_, 1:49:5_, 1:50:6_, 1:50:11_, 1:52:2_, 1:65:17, 1:66:24_, 1:69:11_, 1:70:7_, 1:70:13_, 1:71:15_, 1:74:4_, 1:74:8_, 1:75:13_, 1:85:8

FBI's [3]_ - 1:15:21_, 1:51:4_, 1:65:16

Federal [1]_ - 1:61:25

federal [2]_ - 1:8:20_, 1:63:10

few [1]_ - 1:86:24

fiddling [1]_ - 1:4:5

field [1]_ - 1:65:16

FIELDS [1]_ - 1:3:12

Fields [1]_ - 1:3:12

Fifth [2]_ - 1:78:22_, 1:78:25

figure [3]_ - 1:16:4_, 1:17:12_, 1:51:13

file [3]_ - 1:77:19_, 1:86:4_, 1:86:6

filed [8]_ - 1:4:17_, 1:4:24_, 1:5:6_, 1:78:4_, 1:85:25_, 1:86:5_, 1:88:7_, 1:88:15

filing [4]_ - 1:36:18_, 1:84:5 _, 1:85:15_, 1:88:9

filings [4]_ - 1:5:6_, 1:6:10 _, 1:76:2_, 1:88:12

filming [1]_ - 1:4:6

final [3]_ - 1:8:22_, 1:27:4_, 1:73:16

finally [2]_ - 1:5:1_, 1:5:24

financial [4]_ - 1:39:4_, 1:39:11_, 1:39:13_, 1:39:20

financially [1]_ - 1:39:7

fine [5]_ - 1:7:10_, 1:26:11 _, 1:54:15_, 1:58:19_, 1:69:15

finished [2]_ - 1:44:25_, 1:75:6

first [19]_ - 1:4:14_, 1:6:19 _, 1:10:9_, 1:12:8_, 1:13:25_, 1:16:20_, 1:27:17_, 1:27:20 _, 1:32:23_, 1:33:23_, 1:37:1 _, 1:38:22_, 1:52:16_, 1:54:13_, 1:62:18_, 1:65:6_, 1:73:20_, 1:74:10_, 1:84:6

First [3]_ - 1:81:7_, 1:85:9

Fischer [20]_ - 1:39:8_, 1:40:14_, 1:40:24_, 1:42:5_, 1:42:19_, 1:42:23_, 1:42:24 _, 1:43:1_, 1:43:14_, 1:43:15 _, 1:43:16_, 1:43:25_, 1:45:13_, 1:54:19_, 1:54:22 _, 1:55:3_, 1:57:15_, 1:58:24

flaws [1]_ - 1:43:2

floating [1]_ - 1:82:5

floor [1]_ - 1:4:8

focus [3]_ - 1:21:12_, 1:21:16_, 1:43:4

focused [3]_ - 1:42:21_, 1:53:5_, 1:53:16

focuses [2]_ - 1:37:6_, 1:47:7

focusing [1]_ - 1:34:14

follow [2]_ - 1:21:9_, 1:69:1

following [2]_ - 1:4:14_, 1:70:8

font [2]_ - 1:88:10_, 1:88:15

footage [8]_ - 1:6:19_, 1:11:10_, 1:11:11_, 1:11:14 _, 1:13:1_, 1:13:4_, 1:19:21_, 1:24:17

footnote [1]_ - 1:54:20_, 1:71:5

footnotes [1]_ - 1:75:18

forbidden [1]_ - 1:62:25

Force [2]_ - 1:29:22_, 1:30:23

force [2]_ - 1:47:2_, 1:62:6

forget [1]_ - 1:30:14

forgive [2]_ - 1:44:15_, 1:87:8

form [5]_ - 1:23:13_, 1:32:20_, 1:65:19_, 1:67:20 _, 1:69:22

format [1]_ - 1:88:13

formation [1]_ - 1:62:24

formatting [1]_ - 1:88:8

Former [5]_ - 1:29:21_, 1:39:2_, 1:39:6_, 1:74:7_, 1:84:15

former [3]_ - 1:38:18_, 1:64:17_, 1:74:7

formulations [2]_ - 1:22:4 _, 1:57:24

forth [2]_ - 1:8:21_, 1:62:14

forward [1]_ - 1:20:19

foundation [2]_ - 1:23:21 _, 1:24:14

four [3]_ - 1:6:3_, 1:8:7_, 1:20:23

frame [1]_ - 1:20:6

frankly [4]_ - 1:7:5_, 1:37:16_, 1:58:1_, 1:85:5

free [2]_ - 1:53:14_, 1:87:24

Friske [22]_ - 1:22:7_, 1:22:19_, 1:37:14_, 1:40:17 _, 1:40:19_, 1:40:21_, 1:41:2 _, 1:41:10_, 1:41:15_, 1:44:8 _, 1:44:14_, 1:46:6_, 1:46:7_, 1:53:18_, 1:54:5_, 1:54:14_, 1:58:5_, 1:72:8_, 1:72:17

full [8]_ - 1:5:7_, 1:14:3_,

1:14:6_, 1:27:13_, 1:28:7_, 1:80:19_, 1:81:9_, 1:82:23

full-blown [2]_ - 1:81:9_, 1:82:23

fully [1]_ - 1:57:2

funny [1]_ - 1:6:14

furniture [4]_ - 1:14:19_, 1:16:1_, 1:16:22_, 1:17:4

furtherance [1]_ - 1:9:10

future [1]_ - 1:88:12

_____

G

game [1]_ - 1:35:9

games [1]_ - 1:9:22

Garcia [1]_ - 1:77:22

general [1]_ - 1:76:11

generally [3]_ - 1:22:24_, 1:61:19_, 1:81:9

get-away [2]_ - 1:7:8_, 1:7:12

given [12]_ - 1:20:6_, 1:21:12_, 1:26:5_, 1:33:10_, 1:46:8_, 1:60:13_, 1:66:20_, 1:70:24_, 1:71:8_, 1:76:7_, 1:78:20

Gold [1]_ - 1:31:1

governing [1]_ - 1:33:15

government [33]_ - 1:3:8 _, 1:9:5_, 1:9:11_, 1:11:8_, 1:11:9_, 1:14:23_, 1:16:14_, 1:17:9_, 1:18:4_, 1:32:19_, 1:35:6_, 1:35:10_, 1:47:2_, 1:47:6_, 1:47:13_, 1:51:7_, 1:51:20_, 1:51:22_, 1:51:23 _, 1:53:2_, 1:53:25_, 1:60:9_, 1:62:6_, 1:62:9_, 1:62:23_, 1:63:14_, 1:73:20_, 1:81:8_, 1:83:7_, 1:83:12_, 1:83:18_, 1:84:2_, 1:86:1

government's [5]_ - 1:6:9 _, 1:15:21_, 1:24:12_, 1:48:23_, 1:75:19

governs [1]_ - 1:79:18

Grand [1]_ - 1:86:25

grand [62]_ - 1:5:8_, 1:8:20 _, 1:11:12_, 1:11:14_, 1:11:18_, 1:24:2_, 1:24:18_, 1:24:20_, 1:24:23_, 1:51:9_, 1:53:1_, 1:61:13_, 1:63:4_, 1:68:13_, 1:73:20_, 1:74:11 _, 1:74:23_, 1:74:25_, 1:75:21_, 1:76:2_, 1:76:12_, 1:77:6_, 1:77:8_, 1:78:3_, 1:78:11_, 1:78:16_, 1:79:1_, 1:79:7_, 1:79:9_, 1:79:10_,

1:79:14 _, 1:79:16 _, 1:79:23
_, 1:80:2 _, 1:80:3 _, 1:80:8 _,
1:80:9 _, 1:80:18 _, 1:80:20 _,
1:80:24 _, 1:80:25 _, 1:81:2 _,
1:81:10 _, 1:81:14 _, 1:81:16
_, 1:82:4 _, 1:82:11 _, 1:82:12
_, 1:83:3 _, 1:83:8 _, 1:83:9 _,
1:83:13 _, 1:83:21 _, 1:83:25
_, 1:84:14 _, 1:84:21 _, 1:86:3
_, 1:86:11 _, 1:86:23 _,
1:87:18 _, 1:87:24

granted [2] _ - 1:71:4 _,
1:76:15

granting [1] _ - 1:43:12

grants [1] _ - 1:37:2

grapple [1] _ - 1:41:2

gravamen [1] _ - 1:63:23

grievous [2] _ - 1:44:11 _,
1:58:13

grocery [1] _ - 1:8:5

group [6] _ - 1:27:18 _,
1:27:24 _, 1:28:3 _, 1:28:14 _,
1:28:18 _, 1:29:1

guess [6] _ - 1:8:23 _,
1:16:8 _, 1:38:3 _, 1:38:13 _,
1:65:9 _, 1:69:19

guidance [3] _ - 1:45:6 _,
1:58:4 _, 1:74:21

guiding [1] _ - 1:58:18

guilty [2] _ - 1:50:1 _, 1:63:7

### H

half [1] _ - 1:48:17

hall [1] _ - 1:63:3

hand [1] _ - 1:85:2

handle [3] _ - 1:61:9 _,
1:74:11 _, 1:78:9

handled [1] _ - 1:85:16

happy [6] _ - 1:12:11 _,
1:12:13 _, 1:16:11 _, 1:25:13
_, 1:26:8 _, 1:46:13

Harbach [6] _ - 1:3:10 _,
1:17:19 _, 1:26:3 _, 1:26:8 _,
1:52:24 _, 1:53:6

HARBACH [22] _ - 1:53:7
_, 1:53:9 _, 1:55:20 _, 1:56:1 _,
1:56:17 _, 1:58:6 _, 1:59:7 _,
1:59:9 _, 1:59:23 _, 1:60:6 _,
1:60:20 _, 1:60:23 _, 1:61:5 _,
1:61:10 _, 1:86:16 _, 1:86:18
_, 1:86:21 _, 1:87:4 _, 1:87:8 _,
1:87:13 _, 1:87:20 _, 1:87:22

hard [4] _ - 1:14:21 _,
1:55:18 _, 1:59:22 _, 1:70:20

head [3] _ - 1:5:22 _,
1:52:19 _, 1:78:25

headed [1] _ - 1:36:19

hear [8] _ - 1:5:12 _, 1:17:22
_, 1:41:17 _, 1:46:15 _,
1:61:11 _, 1:69:14 _, 1:73:19
_, 1:74:10

heard [4] _ - 1:10:14 _,
1:25:12 _, 1:42:19 _, 1:68:14

hearing [7] _ - 1:4:11 _,
1:4:13 _, 1:36:12 _, 1:36:18 _,
1:78:8 _, 1:81:22 _, 1:84:19

hearings [1] _ - 1:77:22

heart [1] _ - 1:63:5

heartburn [1] _ - 1:87:23

heavily [1] _ - 1:75:19

heck [1] _ - 1:60:13

held [1] _ - 1:34:25

help [4] _ - 1:28:14 _,
1:38:17 _, 1:69:17 _, 1:82:9

helped [1] _ - 1:27:18

helpful [1] _ - 1:66:9

hide [2] _ - 1:6:15 _, 1:8:20

himself [3] _ - 1:38:25 _,
1:43:25 _, 1:60:18

hint [1] _ - 1:73:17

hit [1] _ - 1:53:15

holding [1] _ - 1:37:15

holds [1] _ - 1:34:8

hole [1] _ - 1:6:1

home [1] _ - 1:36:19

Honor [59] _ - 1:3:9 _,
1:3:12 _, 1:3:15 _, 1:3:16 _,
1:3:21 _, 1:5:17 _, 1:5:21 _,
1:6:24 _, 1:9:1 _, 1:9:22 _,
1:11:3 _, 1:12:11 _, 1:13:24 _,
1:15:12 _, 1:15:20 _, 1:16:6 _,
1:16:19 _, 1:17:18 _, 1:17:21
_, 1:21:16 _, 1:25:1 _, 1:33:18
_, 1:35:5 _, 1:35:18 _, 1:36:16
_, 1:39:16 _, 1:40:4 _, 1:41:9 _,
1:41:13 _, 1:46:13 _, 1:52:15
_, 1:52:25 _, 1:53:7 _, 1:53:15
_, 1:53:25 _, 1:54:22 _,
1:58:23 _, 1:61:7 _, 1:61:14 _,
1:65:5 _, 1:68:15 _, 1:73:2 _,
1:73:17 _, 1:73:24 _, 1:74:24
_, 1:82:1 _, 1:82:6 _, 1:83:4 _,
1:84:6 _, 1:84:11 _, 1:84:16 _,
1:86:9 _, 1:86:15 _, 1:86:16 _,
1:86:22 _, 1:87:4 _, 1:87:14 _,
1:88:5 _, 1:88:14

Honor's [3] _ - 1:43:11 _,
1:53:12 _, 1:86:21

hours [1] _ - 1:88:20

House [4] _ - 1:8:19 _,
1:17:1 _, 1:29:20 _, 1:30:4

huge [2] _ - 1:65:2 _,
1:85:18

hundreds [1] _ - 1:23:8

hypothetically [1] _ -
1:59:3

### I

idea [7] _ - 1:6:7 _, 1:6:17 _,
1:7:14 _, 1:10:1 _, 1:85:6 _,
1:85:16

identification [1] -
1:67:10

identified [6] _ - 1:15:2 _,
1:65:10 _, 1:65:12 _, 1:66:14
_, 1:66:16 _, 1:67:15

identify [1] _ - 1:51:24

identifying [1] _ - 1:20:16

ignore [1] _ - 1:45:11

ignoring [1] _ - 1:49:9

illegal [1] _ - 1:55:11

images [1] _ - 1:23:9

imagine [1] _ - 1:14:21

immediately [3] _ - 1:6:16
_, 1:21:4 _, 1:23:24

impair [2] _ - 1:12:23 _,
1:33:20

impairment [2] _ - 1:42:12
_, 1:42:16

impeach [1] _ - 1:80:20

impede [1] _ - 1:53:21

imperative [1] _ - 1:85:11

implicated [1] _ - 1:78:10

implicates [1] _ - 1:9:20

implications [1] _ -
1:80:12

important [4] _ - 1:17:24 _,
1:23:2 _, 1:51:21 _, 1:53:15

importantly [1] _ - 1:41:15

impossible [3] _ - 1:10:12
_, 1:16:20 _, 1:78:6

improper [7] _ - 1:40:22 _,
1:41:4 _, 1:41:7 _, 1:41:8 _,
1:44:9 _, 1:53:19 _, 1:63:18

inadequate [1] _ - 1:23:15

inappropriate [1] _ -
1:63:19

included [3] _ - 1:20:5 _,
1:32:8 _, 1:45:3

includes [2] _ - 1:4:6 _,
1:14:1

including [1] _ - 1:64:19

inconsistent [3] _ - 1:19:3
_, 1:52:15 _, 1:57:20

incorporates [1] _ - 1:7:25

incumbent [1] _ - 1:78:1

independently [6] _ -
1:55:11 _, 1:56:7 _, 1:56:11 _,
1:56:19 _, 1:73:4 _, 1:73:7

indicate [1] _ - 1:22:23

indicated [5] _ - 1:5:14 _,
1:9:18 _, 1:13:18 _, 1:44:6 _,
1:45:8

indicates [2] _ - 1:7:3 _,
1:16:14

indicating [3] _ - 1:18:15 _,
1:19:7 _, 1:68:6

indicating) [1] _ - 1:10:8

indicted [1] _ - 1:44:4

indictment [79] _ - 1:4:15 _,
1:5:2 _, 1:5:22 _, 1:5:25 _,
1:6:3 _, 1:7:4 _, 1:7:5 _, 1:7:7 _,
1:7:11 _, 1:7:16 _, 1:8:8 _,
1:11:16 _, 1:13:21 _, 1:13:25
_, 1:15:16 _, 1:17:6 _, 1:17:25
_, 1:18:11 _, 1:18:14 _,
1:19:16 _, 1:19:17 _, 1:19:18
_, 1:19:25 _, 1:20:16 _,
1:20:24 _, 1:22:23 _, 1:23:2 _,
1:23:3 _, 1:23:20 _, 1:23:25 _,
1:24:22 _, 1:25:5 _, 1:25:13 _,
1:28:8 _, 1:30:2 _, 1:30:7 _,
1:30:8 _, 1:31:16 _, 1:32:24 _,
1:33:3 _, 1:33:11 _, 1:35:23 _,
1:37:22 _, 1:38:16 _, 1:39:5 _,
1:39:6 _, 1:40:10 _, 1:40:24 _,
1:42:6 _, 1:46:16 _, 1:46:17 _,
1:46:19 _, 1:46:20 _, 1:46:23
_, 1:47:3 _, 1:47:23 _, 1:48:3 _,
1:48:6 _, 1:48:12 _, 1:49:9 _,
1:49:20 _, 1:50:12 _, 1:50:14
_, 1:52:1 _, 1:52:4 _, 1:58:17 _,
1:59:6 _, 1:59:14 _, 1:60:15 _,
1:60:19 _, 1:61:1 _, 1:61:18 _,
1:66:8 _, 1:67:22 _, 1:68:4 _,
1:68:5 _, 1:68:18 _, 1:69:9 _,
1:70:21

indictments [1] _ - 1:32:4

individual [1] _ - 1:40:6

individuals [2] _ - 1:12:25
_, 1:13:3

infirmity [1] _ - 1:10:19

inform [2] _ - 1:60:13 _,
1:78:2

informants [1] _ - 1:80:13

information [7] – 1:12:3...,
1:24:11..., 1:32:18..., 1:47:24
..., 1:48:2..., 1:50:25..., 1:70:18
informing [1] – 1:7:18
initial [1] – 1:65:13
inject [1] – 1:53:4
inquiry [1] – 1:56:9
insinuates [1] – 1:49:8
insinuation [1] – 1:49:15
insisting [1] – 1:59:16
insofar [1] – 1:37:25
inspected [1] – 1:63:11
instead [2] – 1:83:23...,
1:83:25
instruction [3] – 1:31:11
..., 1:37:4..., 1:60:13
instructions [1] – 1:72:24
insufficient [1] – 1:15:9
intact [1] – 1:65:18
integrity [2] – 1:12:24...,
1:33:21
intend [1] – 1:9:14
intends [1] – 1:62:11
intent [6] – 1:7:19..., 1:7:22
..., 1:8:7..., 1:12:23..., 1:33:20...,
1:53:21
interest [2] – 1:31:9...,
1:81:8
interested [2] – 1:27:15...,
1:57:5
interesting [1] – 1:73:10
interfere [1] – 1:80:4
interfered [1] – 1:22:4
International [1] –
1:30:24
interpretation [1] –
1:43:13
interpretations [1] –
1:43:22
interrogatories [1] –
1:61:21
interrogatory [2] –
1:61:25..., 1:69:15
interruption [1] – 1:4:12
interrupts [1] – 1:28:15
interview [7] – 1:13:22...,
1:14:6..., 1:27:4..., 1:28:7...,
1:30:20..., 1:75:13..., 1:85:8
interviewed [2] – 1:17:10
..., 1:31:8
interviews [1] – 1:51:11
intriguing [1] – 1:43:4

inventory [3] – 1:29:15...,
1:66:3..., 1:66:9
investigation [16] –
1:10:1..., 1:10:12..., 1:11:19...,
1:14:22..., 1:16:16..., 1:23:16
..., 1:24:2..., 1:24:7..., 1:35:12...,
1:77:9..., 1:78:17..., 1:78:21...,
1:80:5..., 1:80:13..., 1:84:15
invoking [1] – 1:26:25
involved [10] – 1:11:1...,
1:21:8..., 1:21:10..., 1:21:22...,
1:23:7..., 1:23:18..., 1:27:23...,
1:28:25..., 1:42:11..., 1:63:21
involvement [1] –
1:19:12
involving [1] – 1:69:24
IRVING [31] – 1:3:21...,
1:5:17..., 1:5:20..., 1:6:24...,
1:7:24..., 1:8:25..., 1:9:21...,
1:10:17..., 1:11:3..., 1:11:25...,
1:12:4..., 1:12:11..., 1:12:17...,
1:12:20..., 1:13:7..., 1:13:17...,
1:13:24..., 1:14:4..., 1:14:7...,
1:14:9, 1:15:8..., 1:15:12...,
1:15:16..., 1:16:19..., 1:17:18
..., 1:35:4..., 1:35:18..., 1:36:4...,
1:36:7..., 1:36:10..., 1:36:13
Irving [11] – 1:3:21...,
1:18:9..., 1:18:16..., 1:19:1...,
1:26:15..., 1:26:17..., 1:31:24
..., 1:36:12..., 1:47:18...,
1:61:24..., 1:65:15
issue [17] – 1:37:4...,
1:37:13..., 1:37:16..., 1:38:6...,
1:41:11..., 1:41:12..., 1:45:11
..., 1:47:9..., 1:47:19..., 1:51:17
..., 1:55:1..., 1:61:13..., 1:74:13
..., 1:78:8..., 1:81:18..., 1:87:12
..., 1:88:1
issued [1] – 1:6:18
issues [4] – 1:44:16...,
1:44:21..., 1:68:13..., 1:83:3
item [1] – 1:9:15
items [6] – 1:9:2..., 1:63:11
..., 1:66:5..., 1:78:10..., 1:78:20
..., 1:82:16
items/boxes [1] –
1:29:16
itself [8] – 1:7:4..., 1:17:6...,
1:19:17..., 1:23:21..., 1:42:5...,
1:44:14..., 1:45:12

### J

January [4] – 1:17:10...,
1:29:22..., 1:30:8..., 1:30:22

Jay [1] – 1:3:9
Jencks [1] – 1:83:23
jeopardizing [1] –
1:80:13
John [1] – 1:3:21
jointly [1] – 1:23:17
Judge [9] – 1:39:18...,
1:42:23..., 1:43:1..., 1:43:16...,
1:43:23..., 1:52:3..., 1:55:2...,
1:60:10..., 1:60:11
judge [2] – 1:42:23...,
1:74:5
judges [2] – 1:58:10...,
1:79:15
judicial [3] – 1:76:24...,
1:79:21..., 1:81:17
jump [1] – 1:68:12
juncture [1] – 1:77:25
June [13] – 1:24:17...,
1:63:24..., 1:64:12..., 1:64:13
..., 1:64:18..., 1:68:25...,
1:69:12..., 1:69:19..., 1:70:11
..., 1:70:17..., 1:70:18
jury [69] – 1:5:8..., 1:8:20...,
1:11:12..., 1:11:14..., 1:11:18
..., 1:18:16..., 1:24:2..., 1:24:18
..., 1:24:20..., 1:24:23...,
1:34:21..., 1:37:4..., 1:51:9...,
1:53:1..., 1:56:20..., 1:60:13...,
1:61:13..., 1:63:4..., 1:68:13...,
1:70:19..., 1:72:24..., 1:73:20
..., 1:74:11..., 1:74:23..., 1:75:1
..., 1:75:22..., 1:76:2..., 1:76:12
..., 1:77:6..., 1:77:8..., 1:78:3...,
1:78:17..., 1:78:16..., 1:79:1...,
1:79:7..., 1:79:9..., 1:79:10...,
1:79:14..., 1:79:16..., 1:79:23
..., 1:80:2..., 1:80:3..., 1:80:8...,
1:80:9..., 1:80:18..., 1:80:20...,
1:80:24..., 1:80:25..., 1:81:2...,
1:81:10..., 1:81:14..., 1:81:16
..., 1:82:4..., 1:82:11..., 1:82:12
..., 1:83:3..., 1:83:8..., 1:83:9...,
1:83:13..., 1:83:21..., 1:83:25
..., 1:84:14..., 1:84:21..., 1:86:3
..., 1:86:11..., 1:86:23...,
1:86:25..., 1:87:18..., 1:87:24
Justice [4] – 1:38:5...,
1:39:3..., 1:39:15..., 1:44:17

### K

keep [4] – 1:8:18...,
1:38:18..., 1:59:13..., 1:66:22
keeping [1] – 1:85:11
kept [3] – 1:55:23..., 1:70:5

..., 1:70:7
key [7] – 1:19:15..., 1:65:8
..., 1:65:10..., 1:65:11...,
1:67:14..., 1:71:8
kind [5] – 1:4:7..., 1:8:6...,
1:35:9..., 1:58:16..., 1:60:4
Kingdom [1] – 1:23:18
knowing [5] – 1:7:19...,
1:10:21..., 1:12:22..., 1:50:21
knowingly [3] – 1:11:4...,
1:12:22..., 1:53:20
knowledge [16] – 1:6:23
..., 1:10:11..., 1:12:6..., 1:12:7...,
1:22:15..., 1:22:20..., 1:22:24
..., 1:24:22..., 1:25:6..., 1:25:23
..., 1:33:12..., 1:34:15...,
1:35:12..., 1:62:19..., 1:63:2...,
1:70:14
known [2] – 1:32:5...,
1:70:16
knows [1] – 1:27:12

### L

Lago [14] – 1:6:20...,
1:11:11..., 1:14:16..., 1:17:2...,
1:17:3..., 1:17:4..., 1:17:8...,
1:27:16..., 1:28:13..., 1:30:25
..., 1:50:7..., 1:51:3..., 1:63:3
laid [3] – 1:18:11..., 1:40:6
..., 1:41:3
land [1] – 1:82:11
Lang [1] – 1:43:1
language [30] – 1:6:25...,
1:7:6..., 1:7:13..., 1:7:25...,
1:8:11..., 1:8:12..., 1:8:13...,
1:8:14..., 1:8:17..., 1:9:24...,
1:12:18..., 1:12:21..., 1:13:10
..., 1:13:11..., 1:16:8..., 1:18:2...,
1:22:2..., 1:22:25..., 1:25:8...,
1:25:16..., 1:25:18..., 1:25:21
..., 1:33:4..., 1:33:19..., 1:35:17
..., 1:35:21..., 1:41:5..., 1:44:9...,
1:53:19..., 1:68:5
large [1] – 1:83:7
last [7] – 1:9:6..., 1:35:5...,
1:53:1..., 1:54:12..., 1:58:7...,
1:73:22..., 1:79:11
late [1] – 1:35:9
law [17] – 1:6:22..., 1:7:2...,
1:19:4..., 1:31:20..., 1:34:6...,
1:35:6..., 1:42:3..., 1:44:12...,
1:44:22..., 1:45:16..., 1:46:8...,
1:58:12..., 1:58:18..., 1:63:10
..., 1:73:1..., 1:78:23..., 1:81:3
lay [2] – 1:25:15..., 1:82:11

Lazaro [1]_ - 1:3:12

lead [3]_ - 1:5:16_, 1:23:3_, 1:55:2

leading [1]_ - 1:43:23

learn [1]_ - 1:52:16

least [12]_ - 1:9:15_, 1:9:20_, 1:33:14_, 1:37:12_, 1:44:8_, 1:48:14_, 1:67:25_, 1:69:25_, 1:74:18_, 1:74:19_, 1:78:1_, 1:81:3

leave [4]_ - 1:35:24_, 1:84:10_, 1:85:17_, 1:86:6

leaves [2]_ - 1:13:25_, 1:14:9

lectern [1]_ - 1:5:19

left [4]_ - 1:17:1_, 1:58:3_, 1:73:6_, 1:80:15

legal [5]_ - 1:62:11_, 1:63:13_, 1:63:14_, 1:68:12_, 1:79:8

lengthy [2]_ - 1:49:20_, 1:53:4

lenity [2]_ - 1:58:9_, 1:58:14

less [1]_ - 1:58:13

lest [1]_ - 1:24:9

letter [1]_ - 1:33:1

letters [2]_ - 1:10:25_, 1:67:9

level [1]_ - 1:6:21

liable [2]_ - 1:7:9_, 1:63:9

liberty [1]_ - 1:76:4

lie [2]_ - 1:15:13_, 1:32:5

light [3]_ - 1:53:12_, 1:73:8_, 1:73:12

limited [2]_ - 1:54:7

line [2]_ - 1:58:7_, 1:80:16

lines [1]_ - 1:32:6

list [4]_ - 1:9:2_, 1:10:23_, 1:62:17_, 1:66:7

listed [2]_ - 1:19:7_, 1:66:5

lists [1]_ - 1:65:24

litigation [3]_ - 1:29:15_, 1:45:16_, 1:45:19

loaded [1]_ - 1:30:24

location [2]_ - 1:27:15_, 1:49:1

logic [2]_ - 1:43:8_, 1:43:10

look [7]_ - 1:22:2_, 1:33:19_, 1:34:20_, 1:51:13_, 1:62:13_, 1:70:3_, 1:72:20

looked [2]_ - 1:70:3_,

1:70:4

looking [17]_ - 1:8:15_, 1:10:23_, 1:12:18_, 1:19:23_, 1:20:23_, 1:24:21_, 1:27:4_, 1:27:5_, 1:28:8_, 1:28:10_, 1:50:25_, 1:55:23_, 1:66:2_, 1:70:2_, 1:71:11_, 1:71:13_, 1:71:18

---

# M

ma'am [2]_ - 1:59:7_, 1:61:10

magic [2]_ - 1:14:24_, 1:15:4

main [1]_ - 1:29:19

maintained [1]_ - 1:74:8

mangle [1]_ - 1:26:10

manner [5]_ - 1:8:21_, 1:8:25_, 1:9:19_, 1:19:7_, 1:61:22

Mar [14]_ - 1:6:20_, 1:11:11_, 1:14:16_, 1:17:2_, 1:17:3_, 1:17:4_, 1:17:8_, 1:27:16_, 1:28:13_, 1:30:25_, 1:50:7_, 1:51:3_, 1:63:3

Mar-a-Lago [14]_ - 1:6:20_, 1:11:11_, 1:14:16_, 1:17:2_, 1:17:3_, 1:17:4_, 1:17:8_, 1:27:16_, 1:28:13_, 1:30:25_, 1:50:7_, 1:51:3_, 1:63:3

margins [1]_ - 1:58:11

markings [29]_ - 1:24:17_, 1:48:5_, 1:49:4_, 1:49:7_, 1:49:13_, 1:49:14_, 1:49:25_, 1:50:2_, 1:50:5_, 1:50:9_, 1:50:11_, 1:51:3_, 1:51:8_, 1:52:18_, 1:63:22_, 1:64:16_, 1:66:15_, 1:66:19_, 1:68:19_, 1:68:20_, 1:69:1_, 1:69:4_, 1:69:8_, 1:69:10_, 1:69:19_, 1:70:10_, 1:70:12_, 1:71:23_, 1:72:3

marshalling [1]_ - 1:34:12

master [4]_ - 1:29:15_, 1:69:24_, 1:70:8_, 1:74:4

material [22]_ - 1:15:18_, 1:16:10_, 1:16:15_, 1:17:15_, 1:18:13_, 1:31:7_, 1:31:22_, 1:32:5_, 1:64:3_, 1:64:4_, 1:64:6_, 1:75:22_, 1:79:1_, 1:79:16_, 1:79:21_, 1:80:6_, 1:80:20_, 1:80:21_, 1:81:2_, 1:81:14_, 1:82:13

materiality [5]_ - 1:16:14_, 1:31:5_, 1:31:12_, 1:31:18_, 1:36:1

materials [21]_ - 1:50:13_, 1:50:15_, 1:79:2_, 1:79:4_, 1:79:7_, 1:80:10_, 1:80:23_, 1:82:11_, 1:83:8_, 1:83:9_, 1:83:14_, 1:83:19_, 1:83:22_, 1:83:25_, 1:84:1_, 1:84:2_, 1:84:3_, 1:86:3_, 1:86:23_, 1:86:25_, 1:87:10

matter [9]_ - 1:13:9_, 1:17:14_, 1:30:10_, 1:31:9_, 1:43:24_, 1:77:23_, 1:78:16_, 1:83:18_, 1:84:14

Maurya [4]_ - 1:62:3_, 1:62:22

MAURYA [1]_ - 1:62:3

McGarity [2]_ - 1:23:4_, 1:23:5

mean [22]_ - 1:6:14_, 1:7:15_, 1:8:6_, 1:9:23_, 1:11:7_, 1:13:7_, 1:14:19_, 1:15:3_, 1:15:19_, 1:16:2_, 1:16:24_, 1:41:2_, 1:41:11_, 1:44:7_, 1:56:9_, 1:59:14_, 1:60:14_, 1:67:4_, 1:69:22_, 1:84:23_, 1:85:5_, 1:85:9

meaning [3]_ - 1:5:3_, 1:46:4_, 1:53:9

meaningful [1]_ - 1:58:25

meaningfully [1]_ - 1:56:21

meanings [1]_ - 1:72:19

means [17]_ - 1:8:21_, 1:9:1_, 1:9:19_, 1:19:7_, 1:38:1_, 1:53:22_, 1:54:24_, 1:55:8_, 1:55:15_, 1:55:24_, 1:56:7_, 1:56:11_, 1:56:15_, 1:56:19_, 1:58:2_, 1:58:12_, 1:73:7

meet [2]_ - 1:31:12_, 1:31:13

mens [11]_ - 1:10:21_, 1:11:4_, 1:12:2_, 1:22:16_, 1:25:9_, 1:25:22_, 1:42:13_, 1:45:2_, 1:59:21_, 1:60:3_, 1:72:23

mentioned [3]_ - 1:59:11_, 1:61:16_, 1:84:4

mentioning [1]_ - 1:30:17

mentions [1]_ - 1:55:3

merely [1]_ - 1:63:18

merits [1]_ - 1:45:4

messy [1]_ - 1:58:16

met [4]_ - 1:7:13_, 1:31:14_, 1:47:20_, 1:56:6

might [8]_ - 1:14:22_,

1:40:2_, 1:41:18_, 1:51:4_, 1:56:9_, 1:57:5_, 1:60:12_, 1:87:16

Miller [1]_ - 1:43:1

million [2]_ - 1:47:14_, 1:65:2

million-plus [1]_ - 1:47:14

mind [2]_ - 1:36:19_, 1:70:25

minimal [1]_ - 1:46:16

minimum [1]_ - 1:9:4

minute [2]_ - 1:27:22_, 1:77:5

minutes [1]_ - 1:86:24

misheard [1]_ - 1:87:9

missing [7]_ - 1:8:24_, 1:10:15_, 1:10:17_, 1:16:8_, 1:49:18_, 1:49:20_, 1:49:23

moment [6]_ - 1:29:24_, 1:30:3_, 1:36:8_, 1:56:24_, 1:60:20_, 1:82:6

money [1]_ - 1:32:6

months [1]_ - 1:55:14

moreover [1]_ - 1:56:5

morning [2]_ - 1:3:15_, 1:85:7

most [2]_ - 1:59:10_, 1:62:4

motion [41]_ - 1:4:15_, 1:4:16_, 1:4:19_, 1:4:20_, 1:4:22_, 1:5:1_, 1:5:15_, 1:5:16_, 1:6:4_, 1:17:17_, 1:18:18_, 1:21:12_, 1:23:4_, 1:28:10_, 1:31:15_, 1:34:9_, 1:35:3_, 1:36:12_, 1:36:25_, 1:41:19_, 1:42:2_, 1:43:12_, 1:46:11_, 1:53:5_, 1:59:1_, 1:75:11_, 1:79:7_, 1:79:21_, 1:79:25_, 1:80:11_, 1:81:24_, 1:82:2_, 1:82:14_, 1:84:8_, 1:84:11_, 1:84:14_, 1:86:6_, 1:87:5_, 1:88:6_, 1:88:15

motion-to-dismiss [1]_ - 1:42:2

motions [11]_ - 1:4:14_, 1:5:12_, 1:5:13_, 1:26:1_, 1:32:22_, 1:36:15_, 1:36:23_, 1:74:15_, 1:81:13_, 1:81:15_, 1:82:5

motive [1]_ - 1:40:22

move [9]_ - 1:6:15_, 1:12:13_, 1:27:18_, 1:28:16_, 1:50:9_, 1:50:13_, 1:51:6_, 1:53:14_, 1:71:23

moved [27]_ - 1:6:13_,

1:14:18.., 1:14:23.., 1:15:1..,
1:17:9.., 1:27:25.., 1:28:4..,
1:28:20.., 1:29:1.., 1:48:15..,
1:48:17.., 1:49:10.., 1:50:14
.., 1:51:7.., 1:51:25.., 1:52:17
.., 1:63:25.., 1:66:11..,
1:68:19.., 1:68:21.., 1:68:25
.., 1:69:2.., 1:69:12.., 1:69:19
.., 1:69:20
  movement [9].. - 1:19:13
.., 1:21:3.., 1:21:18.., 1:27:15
.., 1:29:6.., 1:29:19.., 1:49:21
.., 1:63:24.., 1:64:12
  movements [1].. -
1:16:25
  moving [10].. - 1:9:14..,
1:16:24.., 1:20:8.., 1:29:7..,
1:30:12.., 1:40:9.., 1:49:25..,
1:63:3.., 1:69:5.., 1:72:1
  MR [198].. - 1:3:9.., 1:3:12..,
1:3:15.., 1:3:21.., 1:3:25..,
1:5:17.., 1:5:20.., 1:6:24..,
1:7:24.., 1:8:25.., 1:9:21..,
1:10:17.., 1:11:3.., 1:11:25..,
1:12:4.., 1:12:11.., 1:12:17..,
1:12:20.., 1:13:7.., 1:13:17..,
1:13:24.., 1:14:4.., 1:14:7..,
1:14:9, 1:15:8.., 1:15:12..,
1:15:16.., 1:16:19.., 1:17:18
.., 1:17:21.., 1:17:24, 1:18:21
.., 1:18:24.., 1:19:12.., 1:20:1
.., 1:20:7.., 1:20:10.., 1:20:12
.., 1:20:18.., 1:21:4.., 1:21:8..,
1:21:15.., 1:21:20.., 1:21:22
.., 1:22:1.., 1:22:21.., 1:23:1..,
1:24:25.., 1:25:8.., 1:25:15..,
1:25:19.., 1:25:21.., 1:26:3..,
1:26:7.., 1:26:10.., 1:26:16..,
1:26:20.., 1:26:23.., 1:27:1..,
1:27:8.., 1:27:11.., 1:27:25..,
1:28:2.., 1:28:6.., 1:28:9..,
1:28:12.., 1:28:23.., 1:29:2..,
1:29:4.., 1:29:7.., 1:29:10..,
1:29:18, 1:29:25.., 1:30:5..,
1:30:10.., 1:30:14.., 1:30:21
.., 1:31:6.., 1:31:19.., 1:31:23
.., 1:32:9.., 1:32:13.., 1:32:21
.., 1:33:9.., 1:33:17.., 1:34:16
.., 1:35:4.., 1:35:18.., 1:36:4..,
1:36:7.., 1:36:10.., 1:36:13..,
1:36:16.., 1:38:5.., 1:38:20..,
1:39:12.., 1:40:1.., 1:40:19..,
1:41:9.., 1:42:5.., 1:42:8..,
1:42:20.., 1:44:13.., 1:45:8..,
1:45:21.., 1:46:2.., 1:46:13..,
1:48:4.., 1:49:24.., 1:50:14..,
1:51:2.., 1:51:16.., 1:51:18..,
1:52:25.., 1:53:7.., 1:53:9..,
1:55:20.., 1:56:1.., 1:56:17..,
1:58:6.., 1:59:7.., 1:59:9..,

1:59:23.., 1:60:6.., 1:60:20..,
1:60:23.., 1:61:5.., 1:61:10..,
1:61:14.., 1:64:6.., 1:64:12..,
1:64:14.., 1:65:5.., 1:65:20..,
1:66:12, 1:66:24.., 1:67:2,
1:67:5, 1:67:7.., 1:67:9..,
1:67:13.., 1:67:24.., 1:68:4..,
1:68:10.., 1:68:14.., 1:68:17
.., 1:71:3.., 1:71:15.., 1:71:19
.., 1:71:22.., 1:72:1.., 1:72:6..,
1:73:2.., 1:73:17.., 1:73:19..,
1:73:23.., 1:74:1.., 1:74:3..,
1:74:12.., 1:74:24.., 1:75:12
.., 1:75:16.., 1:75:23.., 1:76:5
.., 1:76:10.., 1:76:17..,
1:76:22.., 1:77:1.., 1:77:11..,
1:78:13.., 1:78:18.., 1:78:22
.., 1:79:10.., 1:79:24..,
1:80:16.., 1:81:12.., 1:81:19
.., 1:81:25.., 1:82:3.., 1:82:6..,
1:82:8.., 1:82:18.., 1:82:20..,
1:82:25.., 1:83:4.., 1:86:8..,
1:86:15.., 1:86:16.., 1:86:18
.., 1:86:21.., 1:87:4.., 1:87:8..,
1:87:13.., 1:87:20.., 1:87:22
.., 1:88:5.., 1:88:14.., 1:88:17
  multiple [2].. - 1:41:20..,
1:41:21
  Murrell [2].. - 1:3:22..,
1:65:15
  must [4].. - 1:38:9..,
1:40:12.., 1:69:11

N

  nail [2].. - 1:15:22.., 1:16:3
  name [2].. - 1:78:25..,
1:85:24
  named [1].. - 1:21:17
  names [3].. - 1:75:15..,
1:75:16.., 1:82:24
  NARA [2].. - 1:67:18..,
1:67:19
  narrative [1].. - 1:48:6
  narrow [1].. - 1:23:24
  narrowed [1].. - 1:70:24
  nature [3].. - 1:41:14..,
1:86:3.., 1:86:23
  Nauta [46].. - 1:3:5..,
1:3:14.., 1:3:17.., 1:3:19..,
1:6:13.., 1:34:17.., 1:37:9..,
1:37:18.., 1:37:21.., 1:37:24
.., 1:38:24.., 1:38:25.., 1:40:9
.., 1:40:13.., 1:41:22..,
1:41:25.., 1:44:1.., 1:44:23..,
1:49:2.., 1:49:10.., 1:49:24..,
1:50:1.., 1:50:3.., 1:50:8..,

1:50:9.., 1:50:21.., 1:51:6..,
1:51:7.., 1:52:16.., 1:52:20..,
1:53:12.., 1:54:2.., 1:57:16..,
1:62:13.., 1:63:7.., 1:63:9..,
1:63:21.., 1:64:8.., 1:67:22..,
1:70:15.., 1:71:22.., 1:74:14
.., 1:74:24.., 1:75:3.., 1:75:23
.., 1:78:9
  Nauta's [26].. - 1:4:22..,
1:5:1.., 1:5:8.., 1:32:15..,
1:34:9.., 1:40:6.., 1:44:2..,
1:54:10.., 1:61:7.., 1:62:19..,
1:63:2.., 1:74:23.., 1:76:12..,
1:76:17.., 1:81:16.., 1:82:15
.., 1:82:23.., 1:84:21.., 1:85:1
.., 1:85:4.., 1:85:6.., 1:85:11..,
1:85:20.., 1:86:10.., 1:87:17
.., 1:87:24
  necessarily [1].. - 1:58:12
  necessary [8].. - 1:12:2..,
1:36:2.., 1:47:12.., 1:47:24..,
1:48:2.., 1:50:18.., 1:58:14..,
1:75:24
  need [7].. - 1:11:1.., 1:11:4
.., 1:31:21.., 1:46:9.., 1:68:24
.., 1:70:21
  needed [1].. - 1:75:21
  needs [5].. - 1:6:24..,
1:9:11.., 1:19:6.., 1:78:15..,
1:81:22
  net [2].. - 1:82:22
  net-net [1].. - 1:82:22
  never [4].. - 1:7:13..,
1:33:18.., 1:79:4.., 1:79:5
  nevertheless [1].. -
1:41:3
  New [1].. - 1:64:18
  new [1].. - 1:41:13
  next [2].. - 1:4:22.., 1:86:13
  nexus [1].. - 1:60:4
  nice [1].. - 1:88:21
  Nichols [3].. - 1:42:23..,
1:43:1.., 1:43:16
  non [1].. - 1:86:1
  non-ex-parte [1].. -
1:86:1
  none [6].. - 1:10:9..,
1:11:15.., 1:32:18.., 1:43:8..,
1:44:16.., 1:54:18
  nonpublic [1].. - 1:80:6
  nonsensical [1].. - 1:18:9
  nonspeaking [1].. -
1:46:23
  normal [1].. - 1:51:12

  note [2].. - 1:54:9.., 1:55:7
  noted [1].. - 1:84:4
  notes [1].. - 1:86:24
  noteworthy [1].. - 1:72:14
  nothing [6].. - 1:10:13..,
1:14:19.., 1:15:13.., 1:18:18
.., 1:61:5.., 1:88:21
  notice [4].. - 1:23:20..,
1:37:19.., 1:37:25.., 1:41:22
  noticed [1].. - 1:88:16
  notion [1].. - 1:59:12
  nowhere [4].. - 1:7:18..,
1:8:2.., 1:35:23.., 1:72:9
  Number [4].. - 1:3:6..,
1:15:7.., 1:53:17.., 1:62:15
  number [7].. - 1:10:4..,
1:29:13.., 1:29:14.., 1:34:16
.., 1:45:12.., 1:48:12..,
1:66:22
  numbering [2].. - 1:66:25
.., 1:67:2
  numbers [1].. - 1:48:13

O

  object [3].. - 1:11:5..,
1:12:23.., 1:88:2
  object's [2].. - 1:12:23..,
1:33:21
  objecting [1].. - 1:36:22
  objection [1].. - 1:82:22
  obligation [5].. - 1:15:21..,
1:16:3.., 1:16:4.., 1:46:16
  obligations [4].. - 1:22:12
.., 1:22:14.., 1:46:22.., 1:76:6
  observation [1].. - 1:58:7
  observe [2].. - 1:42:24..,
1:85:13
  observed [2].. - 1:36:24..,
1:47:22
  obstruct [5].. - 1:10:12..,
1:12:8.., 1:25:10.., 1:53:21..,
1:56:9
  obstructed [1].. - 1:24:9
  obstructing [2].. - 1:22:6..,
1:39:7
  obstruction [12].. - 1:18:1
.., 1:18:5.., 1:18:6.., 1:19:20..,
1:22:17.., 1:23:12.., 1:23:22
.., 1:24:14.., 1:25:9.., 1:37:10
.., 1:63:6.., 1:63:9
  obstructive [1].. - 1:24:6
  obtain [1].. - 1:38:25

obvious [2]– - 1:68:17–, 1:70:23

obviously [10]– - 1:4:7–, 1:6:25–, 1:8:8–, 1:9:6–, 1:9:23–, 1:13:10–, 1:78:8–, 1:79:2–, 1:81:1

occurred [2]– - 1:19:21–, 1:63:24

occurs [1]– - 1:87:22

odd [2]– - 1:41:1–, 1:41:6

offense [2]– - 1:63:23–, 1:71:24

offenses [3]– - 1:46:24–, 1:47:12–, 1:73:5

offer [1]– - 1:8:3

offering [1]– - 1:8:22

office [16]– - 1:36:22–, 1:37:18–, 1:40:7–, 1:42:22–, 1:46:15–, 1:47:7–, 1:48:25–, 1:49:9–, 1:49:11–, 1:50:18–, 1:65:16–, 1:68:23–, 1:69:9–, 1:72:16–, 1:83:8–, 1:84:19

Office [1]– - 1:42:9

office's [1]– - 1:52:9

official [24]– - 1:6:23–, 1:10:16–, 1:12:24–, 1:21:25 –, 1:22:6–, 1:22:9–, 1:22:16–, 1:22:20–, 1:24:8–, 1:24:23–, 1:25:7–, 1:25:10–, 1:25:11–, 1:25:23–, 1:33:2–, 1:33:5–, 1:33:12–, 1:33:15–, 1:33:21 –, 1:33:23–, 1:34:15–, 1:34:18–, 1:35:12–, 1:37:21

often [1]– - 1:83:22

oftentimes [1]– - 1:32:4

Oliveira [30]– - 1:3:6–, 1:3:20–, 1:3:22–, 1:3:24–, 1:6:6–, 1:6:17–, 1:9:5–, 1:9:16–, 1:9:20–, 1:9:25–, 1:10:4–, 1:10:15–, 1:10:25–, 1:11:12–, 1:12:5–, 1:17:10–, 1:17:13–, 1:19:2–, 1:20:17–, 1:21:2–, 1:21:13–, 1:21:25–, 1:24:8–, 1:24:22–, 1:25:6–, 1:34:17–, 1:35:2–, 1:35:11–, 1:68:9–, 1:70:15

OLIVEIRA [1]– - 1:3:25

Oliveira's [7]– - 1:4:15–, 1:5:15–, 1:11:17–, 1:14:10–, 1:16:4–, 1:19:20–, 1:36:25

omnibus [1]– - 1:55:5

One [2]– - 1:29:22–, 1:30:23

one [54]– - 1:5:7–, 1:7:16–, 1:9:6–, 1:12:21–, 1:13:10–,

1:13:12–, 1:18:25–, 1:23:11 –, 1:29:24–, 1:30:3–, 1:32:24 –, 1:33:15–, 1:33:17–, 1:37:13–, 1:38:8–, 1:38:23–, 1:44:8–, 1:49:8–, 1:51:1–, 1:51:25–, 1:52:7–, 1:53:24–, 1:55:7–, 1:55:9–, 1:55:22–, 1:56:2–, 1:56:9–, 1:56:12–, 1:57:6–, 1:58:6–, 1:58:16–, 1:60:4–, 1:61:16–, 1:62:18–, 1:65:20–, 1:68:3–, 1:72:20–, 1:74:1–, 1:75:19–, 1:76:9–, 1:76:12–, 1:77:11–, 1:77:22 –, 1:78:9–, 1:78:24–, 1:79:15 –, 1:81:24–, 1:82:2–, 1:82:14 –, 1:86:9–, 1:88:8

one's [1]– - 1:54:11

one-paragraph-long [1] – - 1:23:11

ones [2]– - 1:49:22–, 1:66:10

ongoing [1]– - 1:80:12

opaque [1]– - 1:77:10

open [5]– - 1:77:5–, 1:80:1 –, 1:80:3–, 1:80:8

opening [1]– - 1:52:19

opens [1]– - 1:54:10

operate [1]– - 1:47:6

opined [1]– - 1:38:6

opinion [12]– - 1:38:7–, 1:39:13–, 1:39:19–, 1:43:23 –, 1:44:17–, 1:55:2–, 1:55:24 –, 1:56:2–, 1:57:7–, 1:62:10–, 1:63:13–, 1:72:10

opinions [1]– - 1:57:19

opportunity [2]– - 1:5:23–, 1:84:25

opposed [1]– - 1:33:13

opposition [9]– - 1:4:17–, 1:4:24–, 1:5:5–, 1:16:15–, 1:17:20–, 1:22:7–, 1:31:18–, 1:74:18–, 1:75:19

options [2]– - 1:19:8–, 1:57:25

Order [1]– - 1:3:1

order [19]– - 1:4:14–, 1:47:5–, 1:50:17–, 1:74:16–, 1:75:5–, 1:75:21–, 1:76:19–, 1:76:23–, 1:77:3–, 1:77:17–, 1:81:21–, 1:83:17–, 1:83:24 –, 1:84:2–, 1:85:18–, 1:85:25 –, 1:86:21–, 1:87:16

ordered [1]– - 1:74:5

orders [2]– - 1:78:4–, 1:81:17

organized [1]– - 1:15:6

original [2]– - 1:65:18–, 1:69:22

otherwise [8]– - 1:37:19–, 1:39:5–, 1:43:4–, 1:48:3–, 1:53:11–, 1:54:4–, 1:54:24–, 1:75:5

ought [1]– - 1:9:3

ourselves [1]– - 1:41:23

outset [3]– - 1:17:24–, 1:43:7–, 1:53:16

outstanding [3]– - 1:77:8 –, 1:86:2–, 1:86:23

overarching [1]– - 1:32:22–, 1:61:16

overbroad [1]– - 1:55:6

overflow [1]– - 1:4:8–, 1:4:9

overlap [1]– - 1:13:6

own [2]– - 1:74:23–, 1:82:24

## P

p.m [1]– - 1:88:23

page [5]– - 1:27:20–, 1:31:18–, 1:71:5–, 1:85:22

pages [8]– - 1:6:1–, 1:7:17 –, 1:8:2–, 1:11:15–, 1:35:22–, 1:47:14–, 1:62:15

paid [1]– - 1:32:6

Palm [1]– - 1:30:23

Pan [2]– - 1:43:23–, 1:55:2

papers [1]– - 1:5:12

paragraph [18]– - 1:8:17–, 1:9:2–, 1:13:23–, 1:21:5–, 1:21:6–, 1:23:11–, 1:23:23–, 1:25:13–, 1:25:15–, 1:27:5–, 1:30:3–, 1:33:6–, 1:39:24–, 1:40:1–, 1:41:8–, 1:59:8–, 1:59:10–, 1:67:25

paragraphs [12]– - 1:8:2–, 1:18:3–, 1:19:19–, 1:20:16–, 1:21:2–, 1:21:9–, 1:21:10–, 1:21:16–, 1:23:24–, 1:24:3–, 1:25:2–, 1:25:4

part [26]– - 1:12:7–, 1:18:17 –, 1:19:13–, 1:21:5–, 1:27:18 –, 1:27:23–, 1:28:3–, 1:28:14 –, 1:28:18–, 1:29:1–, 1:29:7–, 1:29:18–, 1:31:7–, 1:33:23–, 1:33:25–, 1:35:16–, 1:38:8–, 1:44:18–, 1:54:12–, 1:54:23 –, 1:64:7–, 1:64:10–, 1:73:4–, 1:74:18

parte [1]– - 1:86:1

partially [1]– - 1:70:1

participant [1]– - 1:19:3

participating [1]– - 1:50:10

participation [2]– - 1:62:19–, 1:64:8

participations [1]– - 1:62:20

particular [13]– - 1:15:10–, 1:34:2–, 1:34:21–, 1:35:2–, 1:42:4–, 1:46:18–, 1:61:17–, 1:62:5–, 1:75:1–, 1:77:2–, 1:77:9–, 1:78:17–, 1:81:24

particularly [2]– - 1:29:21 –, 1:78:22

particulars [32]– - 1:4:16–, 1:4:23–, 1:9:4–, 1:11:23–, 1:19:17–, 1:20:2–, 1:31:25–, 1:32:2–, 1:32:14–, 1:32:17–, 1:32:20–, 1:32:23–, 1:33:14 –, 1:34:1–, 1:34:2–, 1:34:24–, 1:46:25–, 1:47:1–, 1:47:4–, 1:47:8–, 1:47:17–, 1:47:23–, 1:50:17–, 1:50:24–, 1:52:23 –, 1:61:8–, 1:61:19–, 1:62:16 –, 1:62:22–, 1:63:19–, 1:71:1

parties [7]– - 1:3:7–, 1:4:2 –, 1:5:8–, 1:57:11–, 1:73:21–, 1:74:22–, 1:88:9

parties' [1]– - 1:22:12

parts [1]– - 1:86:25

party [2]– - 1:84:24

pecuniary [3]– - 1:38:10–, 1:38:14–, 1:59:17

peg [1]– - 1:6:1

pending [4]– - 1:45:19–, 1:78:16–, 1:82:12–, 1:87:10

people [6]– - 1:7:7–, 1:7:14–, 1:23:7–, 1:29:7–, 1:74:25–, 1:80:7

per [2]– - 1:22:19–, 1:74:16

perhaps [1]– - 1:41:2

Period [1]– - 1:53:22

period [4]– - 1:9:9–, 1:9:10 –, 1:16:17–, 1:24:19

permission [4]– - 1:75:21 –, 1:75:24–, 1:77:20–, 1:85:17

permissions [1]– - 1:76:15

permits [1]– - 1:81:9

person [2]– - 1:12:23–, 1:39:1

personal [3] - 1:14:18_, 1:15:25_, 1:16:22
personally [1] - 1:70:3
perspective [1] - 1:76:16
persuade [1] - 1:13:13
persuaded [1] - 1:22:3
persuading [2] - 1:12:22 _, 1:13:12
persuasive [1] - 1:72:12
pertained [1] - 1:84:14
petition [5] - 1:45:4_, 1:76:9_, 1:77:18_, 1:82:14_, 1:86:5
petitioned [1] - 1:84:5
petitions [3] - 1:78:4_, 1:82:12_, 1:87:10
phone [1] - 1:4:5
phonetic [1] - 1:71:5
photographing [1] - 1:4:6
photographs [1] - 1:29:5
phrase [4] - 1:37:7_, 1:37:24_, 1:43:4_, 1:43:13
phrases [1] - 1:8:16
phrasing [2] - 1:61:23_, 1:63:18
pick [1] - 1:41:8
picked [1] - 1:41:6
piece [3] - 1:34:15_, 1:50:25_, 1:74:11
pike [1] - 1:55:14
pinpoint [2] - 1:8:24_, 1:27:6
pipeline [1] - 1:55:13
place [6] - 1:8:9_, 1:12:8 _, 1:29:20_, 1:51:25_, 1:56:2 _, 1:59:10
placeholders [1] - 1:65:22
places [1] - 1:49:8
plain [2] - 1:33:19_, 1:46:4
plain-meaning [1] - 1:46:4
plainly [2] - 1:54:22_, 1:59:24
plan [1] - 1:34:21
plane [2] - 1:64:17_, 1:70:10
play [2] - 1:9:22_, 1:42:15
played [2] - 1:52:15_, 1:83:6

playing [1] - 1:60:7
pleaded [1] - 1:40:10
pleading [6] - 1:13:10_, 1:13:11_, 1:14:14_, 1:47:18 _, 1:47:20_, 1:60:14
pleadings [3] - 1:7:2_, 1:7:6_, 1:78:24
pled [2] - 1:18:11_, 1:60:15
plenty [1] - 1:15:3
plural [1] - 1:27:7
plus [1] - 1:47:14
point [21] - 1:9:1_, 1:9:17 _, 1:10:5_, 1:33:15_, 1:34:17 _, 1:35:5_, 1:41:20_, 1:47:14 _, 1:53:13_, 1:54:17_, 1:57:1 _, 1:57:18_, 1:58:8_, 1:61:16 _, 1:61:20_, 1:62:2_, 1:70:22 _, 1:75:10_, 1:88:3_, 1:88:8_, 1:88:10
pointed [1] - 1:43:21
pointing [2] - 1:47:21_, 1:71:6
points [3] - 1:32:22_, 1:53:16_, 1:54:19
pore [1] - 1:51:12
pornographic [1] - 1:23:8
portion [2] - 1:21:4_, 1:75:19
portions [1] - 1:74:20
posed [1] - 1:26:15
position [11] - 1:15:12_, 1:16:6_, 1:19:6_, 1:20:14_, 1:32:18_, 1:32:19_, 1:37:12 _, 1:45:5_, 1:60:11_, 1:79:19
possession [1] - 1:4:2
possible [2] - 1:14:21_, 1:65:3
possibly [5] - 1:7:15_, 1:10:20_, 1:15:18_, 1:17:5_, 1:17:14
potentially [1] - 1:13:6
practical [1] - 1:13:8
practice [4] - 1:51:13_, 1:62:25_, 1:83:16_, 1:83:20
precedent [3] - 1:72:13_, 1:85:3
precedes [1] - 1:21:5
precisely [1] - 1:6:12
preclude [1] - 1:41:15
precludes [2] - 1:43:20_, 1:84:1

predates [1] - 1:78:23
predicate [2] - 1:7:3_, 1:57:16
preference [1] - 1:40:16
pregnant [1] - 1:59:14
preparation [2] - 1:47:25 _, 1:48:2
prepare [5] - 1:4:21_, 1:12:3_, 1:50:18_, 1:50:21_, 1:52:20
prepared [3] - 1:5:9_, 1:5:12_, 1:65:24
prescient [1] - 1:83:11
presciently [1] - 1:38:6
present [5] - 1:5:18_, 1:49:4_, 1:52:9_, 1:52:11_, 1:58:17
presented [6] - 1:43:1_, 1:45:12_, 1:55:15_, 1:59:25 _, 1:60:1_, 1:82:14
preservation [1] - 1:22:13
presidency [6] - 1:27:18 _, 1:28:2_, 1:28:5_, 1:28:13_, 1:28:21_, 1:29:1
President [7] - 1:3:13_, 1:29:21_, 1:39:2_, 1:39:6_, 1:59:13_, 1:74:7_, 1:84:15
president [3] - 1:17:1_, 1:38:18_, 1:64:18
presiding [1] - 1:83:18
press [1] - 1:85:7
presumably [2] - 1:51:11_, 1:81:8
pretrial [1] - 1:81:13
pretty [3] - 1:44:8_, 1:57:7 _, 1:77:23
prevent [2] - 1:6:11_, 1:63:4
previously [3] - 1:26:4_, 1:79:1_, 1:87:17
primary [1] - 1:82:20
principally [1] - 1:23:9
principles [1] - 1:32:15
privacy [2] - 1:80:6_, 1:80:11
privilege [1] - 1:81:18
pro [1] - 1:59:18
problem [2] - 1:14:24_, 1:15:5
problematic [1] - 1:66:10
Procedure [1] - 1:62:1

proceed [1] - 1:12:11
proceeding [41] - 1:6:23 _, 1:10:16_, 1:12:24_, 1:21:25_, 1:22:6_, 1:22:9_, 1:22:16_, 1:22:20_, 1:23:21 _, 1:24:10_, 1:24:23_, 1:25:7 _, 1:25:10_, 1:25:11_, 1:25:23_, 1:33:3_, 1:33:5_, 1:33:13_, 1:33:16_, 1:33:22 _, 1:33:23_, 1:34:15_, 1:34:18_, 1:35:12_, 1:37:21 _, 1:39:7_, 1:53:21_, 1:66:4_, 1:74:4_, 1:76:25_, 1:79:14_, 1:79:17_, 1:79:22_, 1:82:12 _, 1:82:13_, 1:84:20_, 1:84:25_, 1:87:1_, 1:87:3_, 1:87:6_, 1:87:11
proceedings [10] - 1:24:8_, 1:24:10_, 1:77:7_, 1:77:8_, 1:77:13_, 1:77:21_, 1:78:3_, 1:83:6_, 1:84:7_, 1:88:23
process [4] - 1:37:19_, 1:44:2_, 1:69:24_, 1:70:8
procure [2] - 1:38:14_, 1:59:4
procuring [1] - 1:60:17
produced [3] - 1:81:20_, 1:83:23_, 1:84:3
production [1] - 1:65:6_, 1:65:7
productions [1] - 1:65:13
prohibited [1] - 1:4:5
prongs [1] - 1:26:18
proof [4] - 1:31:7_, 1:34:12_, 1:38:9_, 1:39:5
proper [1] - 1:11:4_, 1:34:22
properly [2] - 1:33:24_, 1:47:23
property [1] - 1:66:3
proposition [1] - 1:55:3
prosecution [2] - 1:23:7 _, 1:62:7
protected [3] - 1:59:13_, 1:80:4_, 1:80:21
protection [1] - 1:79:3
protections [1] - 1:81:5
protective [3] - 1:75:5_, 1:83:16_, 1:83:24
prove [7] - 1:22:8_, 1:22:10_, 1:22:18_, 1:51:7_, 1:51:20_, 1:63:20
proven [1] - 1:47:13

provide [6]_ - 1:32:19_, 1:62:23_, 1:67:17_, 1:74:6_, 1:86:22

provided [8]_ - 1:14:6_, 1:24:12_, 1:27:5_, 1:52:14_, 1:67:17_, 1:70:7_, 1:76:3_, 1:77:11

provides [2]_ - 1:8:13_, 1:58:4

providing [2]_ - 1:33:14_, 1:47:24

provisions [2]_ - 1:8:16_, 1:26:25

public [13]_ - 1:14:2_, 1:20:16_, 1:24:14_, 1:36:18_, 1:74:18_, 1:74:19_, 1:76:2_, 1:76:18_, 1:79:5_, 1:80:21_, 1:85:6_, 1:85:23_, 1:87:25

publication [1]_ - 1:74:22

publicly [1]_ - 1:5:6

pull [1]_ - 1:60:2

purpose [17]_ - 1:8:18_, 1:38:16_, 1:38:17_, 1:41:4_, 1:41:7_, 1:41:8_, 1:41:19_, 1:44:9_, 1:53:19_, 1:56:7_, 1:56:10_, 1:56:16_, 1:56:20_, 1:56:23_, 1:69:5_, 1:72:21_, 1:73:3

purposes [6]_ - 1:16:16_, 1:21:15_, 1:28:9_, 1:31:15_, 1:44:11_, 1:58:17

put [13]_ - 1:11:21_, 1:36:18_, 1:37:25_, 1:50:3_, 1:50:8_, 1:62:14_, 1:62:21_, 1:65:12_, 1:65:22_, 1:67:1_, 1:67:3_, 1:67:10_, 1:87:25

puts [1]_ - 1:52:19

putting [1]_ - 1:75:4

## Q

quality [2]_ - 1:7:17_, 1:72:25

quantity [1]_ - 1:7:17

questioning [1]_ - 1:31:10

questions [13]_ - 1:12:13_, 1:14:10_, 1:14:15_, 1:14:21_, 1:16:24_, 1:18:11_, 1:26:13_, 1:27:14_, 1:32:13_, 1:34:9_, 1:53:12_, 1:61:7_, 1:74:16

quickly [1]_ - 1:23:6

quid [1]_ - 1:59:18

quite [3]_ - 1:5:23_, 1:7:16_, 1:55:24

quo [1]_ - 1:59:18

quotation [1]_ - 1:81:10

quotations [1]_ - 1:76:2

quote [7]_ - 1:45:25_, 1:47:22_, 1:62:5_, 1:62:16_, 1:62:18_, 1:62:22

quoted [4]_ - 1:14:14_, 1:35:7_, 1:74:18_, 1:75:19

quoting [1]_ - 1:56:8_, 1:62:8

## R

rambling [3]_ - 1:11:16_, 1:14:13_, 1:35:22

range [1]_ - 1:25:4

ranges [1]_ - 1:66:19

ranging [1]_ - 1:23:6

rare [1]_ - 1:26:17

rather [2]_ - 1:47:4_, 1:63:4

rea [11]_ - 1:10:21_, 1:11:4_, 1:12:2_, 1:22:16_, 1:25:9_, 1:25:22_, 1:42:13_, 1:45:2_, 1:59:21_, 1:60:3_, 1:72:23

reaction [1]_ - 1:55:20

read [6]_ - 1:25:21_, 1:37:3_, 1:46:6_, 1:57:19_, 1:60:9

reading [1]_ - 1:6:10

reality [1]_ - 1:43:20

realize [1]_ - 1:13:9

really [16]_ - 1:25:2_, 1:33:1_, 1:36:21_, 1:38:2_, 1:41:19_, 1:44:7_, 1:45:6_, 1:61:22_, 1:63:5_, 1:63:13_, 1:63:23_, 1:71:1_, 1:71:12_, 1:76:3_, 1:78:6_, 1:83:11

realm [1]_ - 1:80:21

reason [5]_ - 1:58:18_, 1:58:20_, 1:58:22_, 1:85:3_, 1:85:19

reasons [5]_ - 1:55:9_, 1:58:22_, 1:76:20_, 1:76:22_, 1:80:5

receipt [1]_ - 1:24:1

received [3]_ - 1:24:18_, 1:75:23_, 1:77:14

recent [1]_ - 1:62:4

recently [3]_ - 1:65:15_, 1:66:13_, 1:77:7

recess [1]_ - 1:88:22

recipient's [1]_ - 1:22:13

recitation [1]_ - 1:25:17

recognize [1]_ - 1:17:25

recognized [1]_ - 1:18:10

recognizes [1]_ - 1:40:8

record [2]_ - 1:53:19_, 1:87:25

recorded [4]_ - 1:13:22_, 1:14:3_, 1:14:6_, 1:30:20

recording [1]_ - 1:4:6

redaction [1]_ - 1:85:24

redactions [2]_ - 1:75:12_, 1:76:18

redundant [2]_ - 1:53:13_, 1:65:7

refer [1]_ - 1:26:3

reference [5]_ - 1:29:17_, 1:36:3_, 1:56:23_, 1:81:23_, 1:85:18

referenced [1]_ - 1:9:15

references [1]_ - 1:30:2

referral [2]_ - 1:23:24_, 1:24:1

referring [3]_ - 1:24:4_, 1:24:23_, 1:39:14

refers [6]_ - 1:12:22_, 1:12:25_, 1:13:2_, 1:19:14_, 1:20:3_, 1:22:24

reflected [3]_ - 1:9:6_, 1:9:23_, 1:31:18

reflecting [1]_ - 1:29:5

reflects [3]_ - 1:9:21_, 1:12:6_, 1:12:7

regarding [3]_ - 1:26:13_, 1:62:16_, 1:62:24

regardless [1]_ - 1:14:20

relate [1]_ - 1:84:24

related [5]_ - 1:5:12_, 1:36:24_, 1:77:22_, 1:77:23_, 1:78:17

release [1]_ - 1:79:15

relevance [1]_ - 1:14:21

relevant [6]_ - 1:17:5_, 1:17:14_, 1:42:13_, 1:70:24_, 1:77:9_, 1:78:3

rely [4]_ - 1:40:16_, 1:62:12_, 1:79:6_, 1:79:20

relying [1]_ - 1:40:20

remain [2]_ - 1:4:10_, 1:79:5

remainder [1]_ - 1:19:24

remaining [2]_ - 1:24:10_, 1:36:15

remains [6]_ - 1:78:14_,

1:79:2_, 1:79:10_, 1:80:6_, 1:81:5_, 1:82:21

remarks [1]_ - 1:53:10

remember [2]_ - 1:10:5_, 1:57:15

remind [1]_ - 1:4:2

reminded [1]_ - 1:38:22

removed [2]_ - 1:64:21_, 1:65:21

repeatedly [1]_ - 1:14:24

reply [5]_ - 1:4:19_, 1:4:24_, 1:5:5_, 1:62:15_, 1:63:1

report [2]_ - 1:82:10_, 1:86:22

representing [1]_ - 1:71:8

reputational [1]_ - 1:80:7

request [11]_ - 1:11:22_, 1:11:24_, 1:12:25_, 1:32:14_, 1:36:22_, 1:37:5_, 1:47:5_, 1:52:23_, 1:77:7_, 1:84:8_, 1:86:9

requested [2]_ - 1:32:18_, 1:47:10

requesting [1]_ - 1:13:3

requests [2]_ - 1:10:9_, 1:61:21

require [4]_ - 1:39:11_, 1:40:21_, 1:41:24_, 1:46:17

required [7]_ - 1:6:22_, 1:7:20_, 1:10:20_, 1:37:18_, 1:39:14_, 1:47:17_, 1:75:24

requirement [1]_ - 1:56:5

requirements [2]_ - 1:18:1_, 1:47:20

requires [2]_ - 1:34:6_, 1:40:22

requiring [3]_ - 1:34:8_, 1:41:16_, 1:46:6

residence [3]_ - 1:48:24_, 1:49:6_, 1:49:14

residential [2]_ - 1:48:16_, 1:48:18

residual [1]_ - 1:55:4

respect [30]_ - 1:11:22_, 1:12:1_, 1:18:1_, 1:18:25_, 1:19:20_, 1:22:12_, 1:22:14_, 1:25:24_, 1:33:14_, 1:37:9_, 1:39:2_, 1:40:2_, 1:40:3_, 1:44:1_, 1:46:9_, 1:46:16_, 1:57:18_, 1:61:17_, 1:63:16_, 1:63:23_, 1:68:12_, 1:72:6_, 1:73:13_, 1:74:22_, 1:75:23_, 1:77:2_, 1:77:6_, 1:81:18_, 1:81:23_, 1:85:2

respectfully [3] - 1:41:9 .., 1:72:7.., 1:84:15

respond [2] - 1:38:21.., 1:53:2

response [5] - 1:4:17.., 1:34:24.., 1:58:8.., 1:68:15.., 1:77:19

responses [1] - 1:77:18

resting [1] - 1:29:19

restrictions [1] - 1:75:5

restroom [1] - 1:64:19

result [2] - 1:37:23.., 1:41:21

returned [2] - 1:69:3.., 1:70:17

reus [2] - 1:42:18.., 1:54:23

reveal [1] - 1:52:7

reveals [1] - 1:51:24

review [6] - 1:45:23.., 1:45:25.., 1:49:4.., 1:63:25.., 1:71:2.., 1:73:10

reviewed [5] - 1:5:11.., 1:48:8.., 1:48:10.., 1:65:16.., 1:70:1

reviews [1] - 1:6:16

revised [1] - 1:62:15

rights [1] - 1:44:2

ring [1] - 1:23:8

road [2] - 1:6:5.., 1:45:18

robbed [1] - 1:7:14

robbing [1] - 1:7:9

Robertson [15] - 1:45:14 .., 1:45:18.., 1:45:22.., 1:45:23.., 1:46:2.., 1:54:20.., 1:55:13.., 1:55:17.., 1:57:3.., 1:57:10.., 1:57:15.., 1:72:20 .., 1:73:8.., 1:73:10

robust [1] - 1:43:2

room [28] - 1:4:8.., 1:4:9.., 1:6:13.., 1:6:16.., 1:48:5.., 1:48:7.., 1:48:11.., 1:48:16.., 1:48:18.., 1:49:6.., 1:49:8.., 1:49:15.., 1:49:17.., 1:50:3.., 1:50:5.., 1:51:3.., 1:51:15.., 1:63:17.., 1:63:22.., 1:64:2.., 1:64:4.., 1:64:16.., 1:64:24.., 1:68:1.., 1:70:6.., 1:70:12.., 1:70:17.., 1:71:20

roughly [1] - 1:48:15

round [1] - 1:6:1

Rule [20] - 1:6:4.., 1:18:1 .., 1:18:17.., 1:31:14.., 1:46:17.., 1:58:25.., 1:75:2..,

1:75:4.., 1:79:2.., 1:79:17.., 1:79:25.., 1:81:9.., 1:83:6.., 1:83:17.., 1:83:19.., 1:84:1.., 1:84:23.., 1:86:10

rule [4] - 1:58:9.., 1:58:14 .., 1:58:25.., 1:85:24

ruled [1] - 1:53:22.., 1:79:1

Rules [1] - 1:61:25

rules [1] - 1:4:9

runs [1] - 1:34:24

---

## S

sarcasm [1] - 1:33:7

sarcastic [1] - 1:33:18

Sasha [1] - 1:3:16

satisfied [1] - 1:55:11

satisfy [2] - 1:25:22.., 1:59:6

saw [3] - 1:68:6.., 1:88:14

Scalia [2] - 1:38:5.., 1:39:3

Scalia's [2] - 1:39:15.., 1:44:17

scenario [1] - 1:44:18

scores [1] - 1:30:6

scratching [1] - 1:5:22

seal [4] - 1:82:10.., 1:86:1 .., 1:86:4.., 1:86:6

sealed [6] - 1:74:16.., 1:74:17.., 1:77:23.., 1:78:2.., 1:79:24.., 1:85:12

sealing [3] - 1:5:9.., 1:81:10.., 1:85:4

search [15] - 1:15:2.., 1:48:19.., 1:48:21.., 1:49:6.., 1:49:17.., 1:50:7.., 1:51:4.., 1:52:2.., 1:52:4.., 1:52:12.., 1:67:3.., 1:67:6.., 1:67:11.., 1:69:11.., 1:71:15

searched [1] - 1:70:13

seated [2] - 1:3:3.., 1:4:10

second [9] - 1:4:8.., 1:33:25.., 1:37:5.., 1:55:22.., 1:56:12.., 1:57:18.., 1:57:20 .., 1:61:20.., 1:63:1

second-floor [1] - 1:4:8

secondary [1] - 1:45:5

seconds [1] - 1:86:13

secrecy [5] - 1:73:20.., 1:78:11.., 1:78:20.., 1:80:15 .., 1:81:9

secret [1] - 1:79:11

section [1] - 1:13:25

Section [2] - 1:5:4.., 1:8:23

security [4] - 1:6:19.., 1:11:10.., 1:13:1.., 1:13:3

see [7] - 1:13:9.., 1:21:13 .., 1:22:1.., 1:61:3.., 1:73:11.., 1:76:1.., 1:84:11

seeing [2] - 1:6:12.., 1:70:20

seek [6] - 1:38:25.., 1:45:23.., 1:45:24.., 1:62:16 .., 1:85:17.., 1:87:25

seeking [4] - 1:9:18.., 1:62:21.., 1:63:13.., 1:77:16

sees [1] - 1:41:13

seized [3] - 1:65:17.., 1:65:19.., 1:74:8

self [1] - 1:54:11

sense [4] - 1:6:14.., 1:7:16.., 1:11:6.., 1:59:2

sensitivity [1] - 1:80:2

sentence [1] - 1:55:23

separate [3] - 1:42:25.., 1:47:19.., 1:86:6

sequence [1] - 1:4:21

series [1] - 1:8:16

serve [1] - 1:47:8

serving [1] - 1:44:23

set [8] - 1:4:7.., 1:4:13.., 1:26:1.., 1:29:12.., 1:34:4.., 1:48:12.., 1:65:6.., 1:74:15

sets [1] - 1:8:21

setting [3] - 1:14:2.., 1:36:17.., 1:40:11

seven [1] - 1:66:17

several [1] - 1:17:9.., 1:70:4

share [2] - 1:59:15.., 1:84:10

shared [1] - 1:23:8

sheds [2] - 1:73:8.., 1:73:11

shoes [1] - 1:72:1

show [4] - 1:22:15.., 1:34:17.., 1:52:17.., 1:69:16

shows [1] - 1:70:15

sic [1] - 1:72:10

side [2] - 1:60:8.., 1:68:12

significance [2] - 1:37:2 .., 1:37:5

significant [2] - 1:43:5.., 1:83:9

similar [1] - 1:67:17

similarly [2] - 1:61:23.., 1:80:23

simplify [1] - 1:85:21

simply [8] - 1:7:5.., 1:8:12 .., 1:10:22.., 1:16:7.., 1:20:15 .., 1:46:23.., 1:71:5.., 1:72:17

single [2] - 1:19:6.., 1:23:11.., 1:82:14

sister [1] - 1:37:8

situation [2] - 1:35:20.., 1:41:24

skepticism [1] - 1:59:16

someone [8] - 1:38:15.., 1:39:22.., 1:40:5.., 1:44:11.., 1:56:8.., 1:59:5.., 1:60:18.., 1:60:23

somewhat [3] - 1:36:24 .., 1:87:19

somewhere [2] - 1:47:15.., 1:48:22

sorry [5] - 1:40:4.., 1:52:3 .., 1:84:9.., 1:86:12.., 1:88:17

sort [13] - 1:10:11.., 1:16:17.., 1:27:19.., 1:41:13 .., 1:46:4.., 1:47:19.., 1:57:25 .., 1:58:1.., 1:63:13.., 1:70:25 .., 1:81:4.., 1:81:14.., 1:82:10

sorts [1] - 1:85:7

sound [1] - 1:18:9

sounds [1] - 1:70:19

spaced [2] - 1:88:10.., 1:88:13

span [1] - 1:24:19

speaking [3] - 1:46:17.., 1:46:19.., 1:46:20

Special [29] - 1:4:18.., 1:13:5.., 1:17:23.., 1:28:25.., 1:33:13.., 1:36:21.., 1:37:11 .., 1:37:17.., 1:38:22.., 1:40:7 .., 1:40:15.., 1:42:22.., 1:46:15.., 1:47:7.., 1:50:17.., 1:52:8.., 1:52:18.., 1:68:23.., 1:69:9.., 1:69:14.., 1:70:23.., 1:71:7.., 1:72:16.., 1:76:4.., 1:78:1.., 1:78:19.., 1:83:7.., 1:84:19.., 1:85:17

special [4] - 1:29:14.., 1:69:24.., 1:70:8.., 1:74:4

specific [10] - 1:12:1.., 1:21:13.., 1:32:14.., 1:33:12 .., 1:36:1.., 1:39:21.., 1:41:3.., 1:49:19.., 1:50:25.., 1:53:20

106

specifically [8]– 1:19:8…, 1:35:17…, 1:54:6…, 1:55:8…, 1:69:2…, 1:83:24…, 1:84:11…, 1:84:23

specificity [4]– 1:6:22…, 1:13:19…, 1:15:10…, 1:16:13

specify [2]– 1:19:23…, 1:31:21

spilled [1]– 1:68:2

split [1]– 1:43:17

square [1]– 1:6:1

squarely [2]– 1:34:24…, 1:55:15

stage [7]– 1:31:1…, 1:31:14…, 1:34:11…, 1:34:22 …, 1:35:9…, 1:42:3…, 1:46:21

stand [4]– 1:75:8…, 1:80:17…, 1:80:20…, 1:80:24

standard [1]– 1:47:16…, 1:47:19…, 1:54:8…, 1:54:14…, 1:57:4…, 1:79:8…, 1:81:7

standing [1]– 1:20:23

stands [1]– 1:74:25

Stanley [1]– 1:3:16

start [6]– 1:4:20…, 1:5:14 …, 1:18:20…, 1:29:13…, 1:37:1 …, 1:72:14

started [2]– 1:4:1…, 1:74:13

starters [1]– 1:8:25

starting [1]– 1:3:7

state [3]– 1:16:7…, 1:63:18…, 1:68:17

statement [14]– 1:13:20 …, 1:16:10…, 1:18:7…, 1:18:19 …, 1:18:22…, 1:20:5…, 1:27:3…, 1:27:6…, 1:27:23…, 1:31:21…, 1:36:4…, 1:36:6…, 1:52:19…, 1:68:22

statements [7]– 1:9:7…, 1:9:9…, 1:12:14…, 1:15:10…, 1:16:13…, 1:27:7…, 1:51:12

States [4]– 1:3:4…, 1:3:10 …, 1:38:11…, 1:71:4

states [3]– 1:8:18…, 1:41:4…, 1:62:16

status [3]– 1:82:10…, 1:85:25…, 1:86:22

statute [10]– 1:27:1…, 1:33:20…, 1:41:23…, 1:44:5…, 1:53:23…, 1:55:4…, 1:63:12…, 1:72:15…, 1:72:17

statutes [2]– 1:37:8…, 1:37:23

statutory [17]– 1:6:25…, 1:7:6…, 1:7:25…, 1:8:11…, 1:8:12…, 1:8:13…, 1:8:14…, 1:18:2…, 1:22:2…, 1:22:25…, 1:25:16…, 1:25:18…, 1:33:4…, 1:35:17…, 1:35:21…, 1:36:3…, 1:43:13

stay [2]– 1:53:5…, 1:88:6

steered [1]– 1:19:1

step [5]– 1:40:25…, 1:52:8 …, 1:53:24…, 1:69:21…, 1:77:4

stepping [1]– 1:47:16

steps [1]– 1:80:25

still [11]– 1:11:24…, 1:25:12…, 1:38:15…, 1:45:24 …, 1:46:24…, 1:46:25…, 1:59:6 …, 1:60:15…, 1:74:16…, 1:79:17…, 1:81:22

stood [2]– 1:39:6…, 1:40:9

stop [2]– 1:4:4…, 1:29:24

stopping [2]– 1:27:22…, 1:28:17

storage [26]– 1:6:13…, 1:6:16…, 1:48:5…, 1:48:7…, 1:48:11…, 1:48:16…, 1:48:18 …, 1:49:6…, 1:49:8…, 1:49:15…, 1:49:17…, 1:50:3…, 1:50:5…, 1:51:3…, 1:51:15…, 1:63:17…, 1:63:22…, 1:64:2…, 1:64:4…, 1:64:16…, 1:64:24…, 1:68:1…, 1:70:6…, 1:70:12…, 1:70:17…, 1:71:19

store [1]– 1:8:5

stored [2]– 1:10:7…, 1:16:17

strategy [1]– 1:62:7

stray [1]– 1:41:7

strayed [1]– 1:70:25

strict [1]– 1:88:11

strictly [1]– 1:4:5

struggled [1]– 1:58:2

struggling [1]– 1:78:7

stuff [11]– 1:14:18…, 1:14:19…, 1:15:25…, 1:17:2…, 1:17:7…, 1:54:25…, 1:57:16…, 1:65:7…, 1:65:12…, 1:85:18

subject [9]– 1:9:4…, 1:14:12…, 1:15:11…, 1:30:8…, 1:30:19…, 1:31:9…, 1:79:2…, 1:79:5…, 1:81:5

submit [1]– 1:52:7

submitted [2]– 1:11:18…, 1:87:2

subparagraph [1]–

1:11:9

subpoena [10]– 1:8:4…, 1:10:2…, 1:10:11…, 1:22:11…, 1:22:12…, 1:22:14…, 1:24:15 …, 1:24:16…, 1:24:17…, 1:63:5

subpoenaed [1]– 1:11:19

subpoenas [3]– 1:6:18…, 1:24:13

subsection [1]– 1:42:11

Subsection [1]– 1:9:19

subsequent [1]– 1:13:23

subsidiary [1]– 1:45:5

substantial [1]– 1:13:21

substantive [6]– 1:75:11 …, 1:79:7…, 1:79:21…, 1:79:25 …, 1:82:5…, 1:87:5

substitutions [1]– 1:85:24

subvert [1]– 1:53:21

sudden [1]– 1:76:1

suffers [1]– 1:10:19

sufficiency [2]– 1:18:18 …, 1:19:16

sufficient [6]– 1:12:3…, 1:18:13…, 1:23:20…, 1:31:16 …, 1:47:13…, 1:71:6

sufficiently [1]– 1:39:24

suggest [3]– 1:9:25…, 1:35:11…, 1:36:1

suggesting [1]– 1:6:3

suggests [1]– 1:58:21

summarize [2]– 1:23:6…, 1:85:21

summary [2]– 1:66:13…, 1:67:17

summation [1]– 1:34:11

supersede [1]– 1:47:3

superseding [17]– 1:4:15…, 1:5:2…, 1:5:25…, 1:11:16…, 1:17:25…, 1:19:25 …, 1:20:16…, 1:20:24…, 1:23:2 …, 1:23:3…, 1:23:5…, 1:25:5…, 1:28:8…, 1:35:22…, 1:48:3…, 1:48:6…, 1:67:21

supplements [1]– 1:47:23

support [11]– 1:4:19…, 1:8:13…, 1:10:20…, 1:24:5…, 1:34:5…, 1:51:14…, 1:52:11…, 1:79:7…, 1:79:21…, 1:80:11…, 1:81:15

suppression [1]– 1:6:4

Supreme [11]– 1:42:19…, 1:42:21…, 1:44:25…, 1:45:2…, 1:45:9…, 1:58:3…, 1:58:10…, 1:58:23…, 1:59:20…, 1:60:11 …, 1:73:11

surprise [1]– 1:87:19

surprised [2]– 1:9:8…, 1:84:16

surveillance [2]– 1:65:12…, 1:67:15

survived [1]– 1:42:14

susceptible [1]– 1:57:24

SUVs [1]– 1:30:24

system [2]– 1:10:6…, 1:67:10

T

table [1]– 1:53:1

tackling [1]– 1:17:20

talks [4]– 1:7:13…, 1:13:12 …, 1:13:13…, 1:23:23

tends [1]– 1:62:11

term [12]– 1:5:3…, 1:25:24 …, 1:36:3…, 1:37:17…, 1:38:4…, 1:45:7…, 1:53:17…, 1:58:1…, 1:58:11…, 1:58:22…, 1:61:4…, 1:73:12

terms [12]– 1:4:21…, 1:30:1…, 1:41:3…, 1:49:18…, 1:49:20…, 1:57:8…, 1:61:1…, 1:64:25…, 1:75:17…, 1:76:12 …, 1:77:16…, 1:87:15

terribly [1]– 1:84:16

test [2]– 1:38:14…, 1:59:4

testified [1]– 1:74:25

testifying [1]– 1:75:6

testimony [1]– 1:5:8

THE [198]– 1:3:2…, 1:3:11 …, 1:3:14…, 1:3:18…, 1:3:23…, 1:4:1…, 1:5:18…, 1:6:21…, 1:7:21…, 1:8:15…, 1:9:17…, 1:10:14…, 1:10:23…, 1:11:22 …, 1:12:1…, 1:12:9…, 1:12:15…, 1:12:18…, 1:12:21…, 1:13:15 …, 1:13:18…, 1:14:3…, 1:14:5…, 1:14:8…, 1:15:4…, 1:15:9…, 1:15:14…, 1:16:12…, 1:17:16 …, 1:17:19…, 1:17:22…, 1:18:20…, 1:18:22…, 1:19:5…, 1:19:23…, 1:20:5…, 1:20:8…, 1:20:11…, 1:20:15…, 1:20:22 …, 1:21:7…, 1:21:11…, 1:21:18 …, 1:21:21…, 1:21:23…, 1:22:18…, 1:22:22…, 1:24:21 …, 1:25:4…, 1:25:12…, 1:25:17

..., 1:25:20..., 1:25:24..., 1:26:6
..., 1:26:8..., 1:26:11..., 1:26:19
..., 1:26:22..., 1:26:24..., 1:27:2
..., 1:27:9..., 1:27:22..., 1:28:1
..., 1:28:3..., 1:28:7..., 1:28:11
..., 1:28:17..., 1:28:24, 1:29:3
..., 1:29:6..., 1:29:9..., 1:29:11
..., 1:29:24..., 1:30:1..., 1:30:6
..., 1:30:13..., 1:30:16..., 1:31:4
..., 1:31:17..., 1:31:20..., 1:32:3
..., 1:32:11..., 1:32:16..., 1:33:2
..., 1:33:10..., 1:34:14..., 1:35:1
..., 1:35:14..., 1:35:25..., 1:36:6
..., 1:36:9..., 1:36:11..., 1:36:14
..., 1:38:3..., 1:38:13..., 1:39:8
..., 1:39:22..., 1:40:18..., 1:41:1
..., 1:42:1..., 1:42:7..., 1:42:10
..., 1:44:6..., 1:45:1..., 1:45:18
..., 1:46:1..., 1:46:11..., 1:48:1
..., 1:49:18..., 1:50:12..., 1:50:23
..., 1:51:10..., 1:51:17
..., 1:52:21..., 1:53:3..., 1:53:8
..., 1:55:17..., 1:55:23..., 1:56:15
..., 1:57:23..., 1:59:2..., 1:59:8
..., 1:59:20..., 1:60:1..., 1:60:17
..., 1:60:22..., 1:61:3..., 1:61:9
..., 1:61:11..., 1:64:3..., 1:64:10
..., 1:64:13..., 1:65:1..., 1:65:18
..., 1:66:2..., 1:66:21..., 1:66:25
..., 1:67:4..., 1:67:6..., 1:67:8
..., 1:67:12..., 1:67:21..., 1:68:3
..., 1:68:8..., 1:68:11..., 1:68:16
..., 1:70:19..., 1:71:11..., 1:71:17
..., 1:71:21..., 1:71:25..., 1:72:4
..., 1:72:22..., 1:73:9..., 1:73:18
..., 1:73:21..., 1:73:25..., 1:74:2
..., 1:74:9..., 1:74:13..., 1:75:9
..., 1:75:15..., 1:75:17..., 1:75:25
..., 1:76:9..., 1:76:11..., 1:76:19
..., 1:76:23..., 1:77:4..., 1:77:25
..., 1:78:16..., 1:78:19..., 1:79:6
..., 1:79:20..., 1:80:10..., 1:81:6
..., 1:81:13..., 1:81:22..., 1:82:2
..., 1:82:4..., 1:82:7..., 1:82:9...,
1:82:19..., 1:82:22..., 1:83:1...,
1:85:21..., 1:86:13..., 1:86:17
..., 1:86:20..., 1:87:2..., 1:87:5...,
1:87:12..., 1:87:15..., 1:87:21
..., 1:88:3..., 1:88:6..., 1:88:16...,
1:88:18

themselves [2]_ - 1:66:21
_, 1:67:20

theories [2]_ - 1:35:8..,
1:62:11

theory [7]_ - 1:34:3...,
1:51:20..., 1:52:9.., 1:52:14...,
1:59:18.., 1:63:6.., 1:63:14

therefore [2]_ - 1:54:7...,
1:55:11

therein [1]_ - 1:62:20

they've [5]_ - 1:39:1...,
1:40:8.., 1:47:10.., 1:56:3

thinking [1]_ - 1:46:10

third [2]_ - 1:62:2.., 1:63:8

thousands [1]_ - 1:23:8

three [12]_ - 1:4:14...,
1:12:25.., 1:13:2.., 1:27:21...,
1:32:21.., 1:42:25.., 1:43:21
_, 1:43:24.., 1:44:3.., 1:62:16

thrilled [1]_ - 1:85:5

throughout [3]_ - 1:4:11...,
1:37:8.., 1:59:14

tie [2]_ - 1:37:1.., 1:37:5

tied [1]_ - 1:20:17

ties [1]_ - 1:72:2

timing [1]_ - 1:30:3

today [9]_ - 1:4:20.., 1:26:1
_, 1:36:18.., 1:54:12...,
1:73:16.., 1:74:15.., 1:84:9...,
1:84:20.., 1:88:19

today's [1]_ - 1:78:8

token [3]_ - 1:45:9

tolerates [1]_ - 1:73:1

tomorrow [1]_ - 1:36:20

ton [1]_ - 1:51:10

tonight [1]_ - 1:36:19

took [2]_ - 1:60:11...,
1:64:17

tool [3]_ - 1:47:1.., 1:47:4...,
1:47:8

top [2]_ - 1:27:20.., 1:78:25

topic [1]_ - 1:73:16

totally [1]_ - 1:9:25

touched [1]_ - 1:61:15

tough [1]_ - 1:17:12

toward [4]_ - 1:19:1...,
1:22:6.., 1:56:3

track [1]_ - 1:66:22

tracked [1]_ - 1:35:21

tracking [7]_ - 1:6:25...,
1:7:24.., 1:8:12.., 1:8:14...,
1:18:2.., 1:33:4.., 1:35:17

tracks [3]_ - 1:7:6.., 1:8:10
_, 1:8:12

traditionally [1]_ - 1:80:14

transcript [30]_ - 1:5:7...,
1:5:10.., 1:14:3.., 1:16:9...,
1:27:13.., 1:74:14.., 1:74:23
_, 1:75:3.., 1:75:10.., 1:75:20
_, 1:76:13.., 1:76:17...,
1:76:24.., 1:77:2.., 1:78:9...,

1:81:10.., 1:81:16.., 1:82:23
_, 1:84:21.., 1:85:1.., 1:85:4...,
1:85:6.., 1:85:8.., 1:85:12...,
1:85:20.., 1:85:23.., 1:86:11
_, 1:87:18.., 1:87:24.., 1:88:4

transcripts [5]_ - 1:24:18
_, 1:75:2.., 1:76:2.., 1:80:18...,
1:84:24

transfer [3]_ - 1:77:8...,
1:77:21.., 1:84:6

transferred [1]_ - 1:81:25

transition [1]_ - 1:46:13

transported [2]_ - 1:29:22
_, 1:30:25

traveled [1]_ - 1:63:11

treated [1]_ - 1:83:23

Tree [1]_ - 1:71:4

trend [1]_ - 1:46:8

trial [11]_ - 1:9:8.., 1:15:14
_, 1:42:23.., 1:44:21...,
1:62:12.., 1:64:17.., 1:72:9...,
1:79:3.., 1:79:4.., 1:81:5...,
1:83:23

tried [3]_ - 1:21:12...,
1:54:12.., 1:67:13

triple [1]_ - 1:66:17

true [4]_ - 1:34:8.., 1:44:1...,
1:55:2.., 1:68:20

Trump [20]_ - 1:3:5...,
1:3:13.., 1:6:12.., 1:6:15...,
1:8:18.., 1:13:1.., 1:39:2...,
1:39:6.., 1:48:8.., 1:48:10...,
1:48:19.., 1:48:21.., 1:49:4...,
1:49:16.., 1:50:11.., 1:52:4...,
1:59:13.., 1:63:25.., 1:74:7...,
1:84:15

Trump's [1]_ - 1:29:21

try [1]_ - 1:53:4

trying [16]_ - 1:13:4..,
1:16:4.., 1:17:12.., 1:30:19...,
1:33:10.., 1:42:14.., 1:44:11
_, 1:57:3.., 1:57:8.., 1:57:14...,
1:58:1.., 1:61:2.., 1:66:9...,
1:66:22.., 1:71:12.., 1:81:14

turn [6]_ - 1:26:12...,
1:36:14.., 1:52:23.., 1:61:6...,
1:61:12.., 1:73:15

turning [3]_ - 1:32:17...,
1:62:3.., 1:72:12

two [18]_ - 1:13:9.., 1:14:22
_, 1:17:10.., 1:17:15...,
1:24:13.., 1:32:25.., 1:33:17
_, 1:36:15.., 1:36:23...,
1:38:21.., 1:49:8.., 1:55:9...,
1:55:12.., 1:56:10.., 1:57:6...,

1:57:9.., 1:86:25.., 1:88:20

type [3]_ - 1:31:25.., 1:32:8
_, 1:61:25

types [1]_ - 1:17:7...,
1:75:12

typo [1]_ - 1:62:9

U

U.S [1]_ - 1:42:9

Uber [1]_ - 1:7:13

ultimate [1]_ - 1:71:17

ultimately [3]_ - 1:55:17...,
1:55:19.., 1:55:21

unaware [1]_ - 1:51:19

unawareness [1]_ -
1:31:3

unclassified [2]_ - 1:65:2
_, 1:74:6

unclear [2]_ - 1:9:3..,
1:75:25

uncomfortable [2]_ -
1:20:13.., 1:20:15

unconstitutional [2]_ -
1:37:25.., 1:58:13

unconstitutionally [1]_ -
1:55:6

under [14]_ - 1:23:15...,
1:40:13.., 1:44:2.., 1:75:4...,
1:78:22.., 1:82:10.., 1:85:3...,
1:86:1.., 1:86:4.., 1:86:6...,
1:86:10

underlies [1]_ - 1:18:4

underlined [1]_ - 1:13:22

underlying [1]_ - 1:63:15

undermine [1]_ - 1:18:18

understood [5]_ - 1:16:19
_, 1:35:18.., 1:44:9.., 1:87:14
_, 1:87:20

undertaken [1]_ - 1:63:4

unfortunately [1]_ -
1:73:3

United [5]_ - 1:3:4.., 1:3:10
_, 1:23:18.., 1:38:11.., 1:71:4

universe [1]_ - 1:77:24

unknown [1]_ - 1:69:23

unless [6]_ - 1:3:3...,
1:32:13.., 1:52:22.., 1:60:1...,
1:81:4

unlike [1]_ - 1:55:16

unlikely [2]_ - 1:45:10..,
1:60:7

unload [2]_ - 1:27:19...,

1:28:16
unloaded [4]- - 1:27:25..,
1:28:3.., 1:28:20.., 1:30:23
unmarked [2]- - 1:66:21..,
1:66:22
unsealed [3]- - 1:66:3..,
1:75:10.., 1:85:20
unsealing [1]- - 1:82:23
unusual [1]- - 1:72:22
up [19]- - 1:4:7.., 1:4:22..,
1:10:18.., 1:11:24.., 1:16:10
.., 1:18:8.., 1:25:25.., 1:31:1..,
1:32:15.., 1:35:8.., 1:41:6..,
1:41:8.., 1:44:16.., 1:47:14..,
1:51:20.., 1:59:21.., 1:64:18
.., 1:74:4.., 1:80:17
update [1]- - 1:85:25
uses [2]- - 1:38:24..,
1:43:3
usual [2]- - 1:4:2.., 1:4:7

V

vague [11]- - 1:44:5..,
1:54:2.., 1:54:6.., 1:54:16..,
1:54:18.., 1:54:21.., 1:57:9..,
1:57:10.., 1:57:11.., 1:57:18
.., 1:57:22
vagueness [4]- - 1:37:1..,
1:37:6.., 1:37:16.., 1:58:21
vans [1]- - 1:30:12
various [2]- - 1:22:4..,
1:52:11
varying [2]- - 1:43:13..,
1:44:20
verbose [1]- - 1:7:17
verify [1]- - 1:82:8
versus [1]- - 1:12:21
via [1]- - 1:56:7
victim [1]- - 1:44:23
video [6]- - 1:10:6..,
1:19:21.., 1:24:17.., 1:65:11
.., 1:67:14
view [14]- - 1:8:24.., 1:8:25
.., 1:10:15.., 1:39:17..,
1:39:25.., 1:60:1.., 1:64:3..,
1:64:10.., 1:65:10.., 1:69:17
.., 1:74:22.., 1:75:9.., 1:76:17
.., 1:78:19
viewed [2]- - 1:47:23..,
1:65:11
violated [2]- - 1:41:23..,
1:63:11
violating [1]- - 1:27:1

violation [2]- - 1:16:7..,
1:63:10
visibility [1]- - 1:76:16
visit [1]- - 1:65:23
volume [1]- - 1:71:6
voluminous [1]- - 1:70:23
vs [3]- - 1:3:5.., 1:38:11..,
1:71:4

W

Walker [3]- - 1:39:18..,
1:40:13.., 1:40:23
Walker's [2]- - 1:60:10..,
1:60:11
wall [1]- - 1:37:4
Waltine [1]- - 1:3:5
wants [8]- - 1:10:7..,
1:14:25.., 1:45:10.., 1:52:25
.., 1:60:9.., 1:61:23.., 1:79:6..,
1:79:20
warrant [1]- - 1:15:2
warranted [1]- - 1:61:19
warrants [1]- - 1:52:12
Washington [1]- -
1:65:16
wasting [1]- - 1:71:10
ways [4]- - 1:27:1..,
1:38:21.., 1:45:12.., 1:64:20
weapon [1]- - 1:62:6
week [2]- - 1:84:5..,
1:84:10
weekend [1]- - 1:88:21
weeks [1]- - 1:65:23
weigh [3]- - 1:58:24..,
1:84:25.., 1:85:1
weight [1]- - 1:54:7
weird [1]- - 1:15:3
welcome [1]- - 1:5:23
whatnot [1]- - 1:35:8
whereas [1]- - 1:46:7
whichever [1]- - 1:25:13
White [5]- - 1:8:19..,
1:17:1.., 1:29:20.., 1:30:4..,
1:31:1
white [1]- - 1:32:3
whittles [1]- - 1:29:14
wide [1]- - 1:23:6
wide-ranging [1]- -
1:23:6
willfully [1]- - 1:58:16
wish [3]- - 1:12:9.., 1:73:15

.., 1:88:4
withdraw [3]- - 1:87:24..,
1:88:1.., 1:88:4
witness [10]- - 1:10:4..,
1:51:11.., 1:75:15.., 1:75:16
.., 1:80:17.., 1:80:18..,
1:80:20.., 1:80:23.., 1:82:24
.., 1:85:23
witness's [1]- - 1:80:18
witnesses [3]- - 1:20:20..,
1:75:8.., 1:80:6
wondering [1]- - 1:66:7
Woodard [1]- - 1:3:16
WOODWARD [40]- -
1:3:15.., 1:36:16.., 1:38:5..,
1:38:20.., 1:39:12.., 1:40:1..,
1:40:19.., 1:41:9.., 1:42:5..,
1:42:8.., 1:42:20.., 1:44:13..,
1:45:8.., 1:45:21.., 1:46:2..,
1:46:13.., 1:48:4.., 1:49:24..,
1:50:14.., 1:51:2.., 1:51:6..,
1:51:18.., 1:52:25.., 1:68:14
.., 1:68:17.., 1:71:3.., 1:71:15
.., 1:71:19.., 1:71:22.., 1:72:1
.., 1:72:6.., 1:73:2.., 1:73:17..,
1:73:19.., 1:83:4.., 1:86:8..,
1:86:15.., 1:88:5.., 1:88:14..,
1:88:17
Woodward [14]- - 1:4:4..,
1:34:10.., 1:36:14.., 1:61:23
.., 1:62:13.., 1:65:15..,
1:68:13.., 1:77:8.., 1:77:16..,
1:83:3.., 1:86:4.., 1:87:23..,
1:88:4.., 1:88:11
Woodward's [1]- -
1:77:18
word [6]- - 1:43:7..,
1:53:10.., 1:54:1.., 1:57:17..,
1:58:15
words [5]- - 1:27:9..,
1:42:17.., 1:60:10.., 1:66:8..,
1:75:13
World [1]- - 1:36:20
worse [2]- - 1:7:5.., 1:8:11
wrapped [1]- - 1:10:18
writ [1]- - 1:83:7
writing [1]- - 1:37:4
wrote [1]- - 1:39:18

X

XXXXXXXX [1]- - 1:52:3

Y

years [5]- - 1:14:22..,

1:17:10.., 1:17:15.., 1:44:16
.., 1:79:12
yesterday [1]- - 1:77:17
York [1]- - 1:64:18
yourself [4]- - 1:38:15..,
1:39:22.., 1:40:5.., 1:59:4