UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80-1010-CR-CANNON

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

        **Defendants.**
_____/

## SUPPLEMENT TO REPLY IN SUPPORT OF MOTION TO COMPEL

    Defendants President Donald J. Trump, and Messrs. Waltine Nauta and Carlos De Oliveira hereby submit this supplement to their reply in support of their motion to compel. (Feb. 9, 2024) (ECF No. 300).

### I. RECORDS RELATED TO THE SEARCH OF MAR-A-LAGO

    The Special Counsel's Office ("SCO") blithely asserts that it has, "already provided considerable materials relating to the August 8, 2022 execution of the search warrant," and proceeds to delineate the same. Sealed Opp'n at 53 (Feb. 2, 2024) (ECF No. 279). A considerable production, however, does not satisfy their obligation to produce all *discoverable* materials. *See* Fed. R. Crim. P. 16(a); *see also Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). Here, President Trump and Messrs. Nauta and De Oliveira seek records concerning the FBI's apparent failure to search several areas of President Trump's residence during their execution of a search warrant on Mar-a-Lago. That such information would be discoverable is beyond dispute.

1

Generally, the Superseding Indictment charges President Trump and Mr. Nauta with five (5) counts (and Mr. De Oliveira in one of those counts) implicated by the alleged movement of boxes to President Trump's residence. Count 33 alleges President Trump as well as Messrs. Nauta and De Oliveira, "moving boxes of documents to conceal them from Trump Attorney 1, the FBI, and the grand jury," Superseding Indictment at 38-39, ¶ 97(b) (July 27, 2023) (ECF No. 85); Count 34 alleges President Trump and Mr. Nauta, "misled Trump Attorney 1 by moving boxes that contained documents with classification markings so that Trump Attorney 1 would not find the documents and produce them to the grand jury," *Id.* at 40, ¶ 99; Count 35 alleges that President Trump and Mr. Nauta, "hid and concealed boxes that contained documents with classification markings from Trump Attorney 1 so that Trump Attorney 1 would not find the documents and produce them to a federal grand jury," *Id.* at 41, ¶ 101; Count 36 alleges that President Trump and Mr. Nauta, "hid, concealed, and covered up from the FBI [President Trump's] continued possession of documents with classification markings at The Mar-a-Lago Club," *Id.* at 42, ¶ 103; and Count 37 alleges that President Trump and Mr. Nauta, "hid and concealed from the grand jury and the FBI [President Trump's] continued possession of documents with classification markings." *Id.* at 43, ¶ 105.

Specifically, the Superseding Indictment summarizes the movement of the boxes is summarized as follows:

> between May 23, 2022, and June 2, 2022, before Trump Attorney 1's review of [President Trump's] boxes in the Storage Room, [Mr. Nauta]—at [President Trump's] direction—moved approximately 64 boxes from the Storage Room to [President Trump's] residence, and [Messrs. Nauta and De Oliveira] brought to the Storage Room only approximately 30 boxes.

*Id.* at 24 ¶ 63. Thus, the crux of the SCO's conspiracy theory is that Messrs. Nauta and De Oliveira, at President Trump's direction, hid and/or concealed approximately 30 boxes both from Trump Attorney 1 and the FBI (and therefore, the grand jury). They did this, the Superseding Indictment

alleges, by not returning approximately 30 boxes that had been moved to President Trump's residence to the Storage Room where Trump Attorney 1 was to search the boxes for documents with classification markings. *Id.* at 24 ¶ 64. Put differently, the Superseding Indictment alleges there were boxes in President Trump's residence that should have been searched by Trump Attorney 1 because they contained documents with classification markings.

Thereafter, although the Superseding Indictment does not specifically allege what happened to the boxes in President Trump's residence, we know the FBI continued to believe there were documents with classification markings there based on the affidavit in support of the warrant it sought to search the same. FBI 21A Aff. at 29 (Aug. 5, 2022) (USA-00043180) ("It cannot be seen on the video footage where the boxes were moved when they were taken from the STORAGE ROOM area, and accordingly, the current location of the boxes that were removed from the STORAGE ROOM area but not returned is unknown. . . . Accordingly, this affidavit seeks authorization to search the '45 Office' and all storage rooms and any other rooms or locations where boxes or records may be stored within the PREMISES . . .)." In addition, the affidavit quotes several Mar-a-Lago employees has having specifically seen boxes in President Trump's residence in the past and at the time of the search, the FBI would have known that President Trump's bedroom was under construction, meaning that any boxes left in the bedroom would have been moved elsewhere in the residence. *See generally* FBI 21A Aff. (Aug. 5, 2022) (USA-00043152).

That the FBI failed to search several areas of President Trump's residence on August 8, 2022, where the boxes are alleged to have been hidden is thus unequivocally material to President Trump as well as Messrs. Nauta and De Oliveira's defense. To that end, it is inconceivable that no communications exist concerning the FBI's failure to search an area of President Trump's

3

residence on August 8. As FBI 39 testified, the FBI was advised the area, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" FBI 39 further testified:



FBI 39 Grand Jury Tr. at 71:14-21 (May 25, 2023) (USA-00812430). Of note, on June 3, 2022, prior to the FBI's search, SSA 1 described the area as a storage room: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" SSA Grand Jury Ex. 12 at 1 (USA-00809857). In his testimony before the grand jury, SSA 1 explained, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" SSA 1 Grand Jury Tr. at 52:08-10 (Apr. 6, 2023) (USA-00809759).

The failure to search this area of President Trump's residence was so remarkable that, during the SCO's summary presentation to the grand jury, a grand juror asked, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" FBI 39 Grand Jury Tr. at 93:14-16 (May 25, 2023) (USA-00812430). A SCO attorney instructed FBI 39 "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Id. at 93:17-18. The grand juror persisted: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Id. at 93:19-20. Nevertheless, at that point the SCO attorney dismissed FBI 39 from the grand jury. Id. at 94:23-24.

Moreover, we now know this was not the only area the FBI failed to search on August 8. In addition to the locked closet, there is an area the Secret Service has for years described as a "hidden room" behind a bureau in President Trump's bedroom. The room is mapped in a diagram of President Trump's residence included in an April 2021 Secret Service Residential Security Survey of Mar-a-Lago. Yet, inexplicably, there is no evidence this area was searched on August

4

8, 2022. Despite its knowledge that the area existed – a number of witnesses were asked about it before the grand jury – and the fact that at the time of their search, President Trump's bedroom was under construction and thus any boxes that had been left there would necessarily have been moved to permit the construction.

Yet, there is no evidence that any effort was made by the SCO to have this area searched at any point in time. Given the allegation that boxes of documents with classification markings were hidden and/or concealed in President Trump's residence during Trump Attorney 1's search, it is inexplicable that areas of former President Trump's residence were not searched. Indeed, the only explanation for this failure is that the SCO intends to rely on its ignorance of what was in former President Trump's residence as part of its pitch to the jury that boxes were moved for the purpose of concealing their contents from the investigation.

## II. CCTV VIDEO

Defendants requested in their Motion that the Court compel the SCO to produce the roughly 80 terabytes of CCTV footage in a manner that is readily accessible to the defense (ECF No. 262 56-63). Defendants explained the technical difficulties they have encountered in attempting to review the video footage, including exceptionally slow file decompression, complications attempting to use the proprietary player that is needed to view the video, and files that fail to play after decompression. In its Opposition, the SCO dismisses Defendants' request as moot because it, "has met and exceeded its discovery obligations …, and [Defendants'] request is currently based on easily rectifiable user error, which has now been addressed. Sealed Opp'n at 54 (Feb. 2, 2024) (ECF No. 279). That is not the current state of affairs.

Defendants do not argue that the SCO has failed to acknowledge or attempt to resolve the difficulties involving the CCTV video. Defendants appreciate that the SCO has provided data on physical hard drive arrays and loaned laptops to defense counsel in the hope that would address

5

the issues. Defendants also acknowledge that the video is a patchwork of footage from various cameras and dates because the SCO sought video piecemeal through seven subpoenas from June 2022 through March 2023. Defendants have had constructive communications with SCO counsel since October in an effort to resolve technical issues, and those have been successful to some extent.

All of that said, the fact remains that the SCO failed to provide a comprehensive set of functional video that defense counsel need in order to properly investigate critical facts in this case, and it is evident from the SCO's many "key clips" that it was able to effectively use the video it obtained. Defense counsel explained in their Motion, for example, that a full set of functional video is necessary to understand how the SCO allegedly located additional classified documents in the Mar-a-Lago storage room during the August 8, 2022, search warrant execution after counsel for President Trump searched the same room in early June and directed that an additional lock be installed in mid-June. Video would show whether, or not, additional materials were brought to the storage room in the meantime. Similarly, the SCO apparently intends to argue that Mr. Nauta drove a number of boxes to the airport on June 3, 2022, but the SCO's "key clips" of footage fail to show how, when, where, and by whom any such boxes were loaded into the vehicle Mr. Nauta drove that day. The SCO's "key clips" also include video from one camera in the Accounting Office allegedly showing Mr. De Oliveira speaking with a witness, but defense counsel do not have video from another camera in that space that should have an angle showing who was in that room. There is also an allegation in the discovery materials that Defendant Nauta "snuck" onto Mar-a-Lago grounds at "Post 4" on the night of June 27, 2022. As odd as that might sound for someone with unfettered access to Mar-a-Lago, there are several cameras in that location that should be able to confirm whether that is the case. There are but examples of why defense counsel

needs access to workable video beyond what the SCO deems relevant in order to properly investigate the facts and represent their clients.

The SCO argues in its Opposition that defendants' request is moot because the SCO "worked with counsel to identify his misstep in attempting to launch the player." Sealed Opp'n at 56 (Feb. 2, 2024) (ECF No. 279). The SCO fails to address, however, the current status of its communications with counsel for Mr. De Oliveira, who emailed SCO counsel on January 12, 2024, noting his understanding that the Government's hard drive array only contains video from the Government's "Production 1" and not "Production 2" and requesting that the SCO provide a full set of workable video.[1]

The SCO is not alone in its efforts to resolve the issues with the video. At SCO counsel's suggestion, counsel for Mr. De Oliveira spent a considerable amount of time on November 28, 2023, speaking with a technical support representative for the company that operates the software used to view the video. During that conversation, defense counsel learned that many of the files provided by the SCO did not include operational files needed to view the video. After bringing that to the SCO's attention, SCO counsel acknowledged the following day that, "[t]he FBI also initially had difficulty viewing some videos," and that the Trump Organization then provided the operational files that the SCO used to view those videos. While defense counsel appreciates that the SCO provided those files on November 29, 2023, with instruction that defense counsel insert them into unworkable files, it remains unclear why the SCO provided video files that lacked those operation files in the first place, having clearly been aware of the issue, and why it should fall on

---

[1] Earlier this month, the SCO provided counsel for Messrs. Nauta and De Oliveira a second "array" of CCTV video. Said video was delivered while counsel was in Southern Florida for a hearing in this matter, prior to vacations defense counsel were taking, as this Court is aware. Although such CCTV video should have been provided to defense counsel long ago, its provision does not change the fact that *one* complete copy of video must be produced to satisfy the SCO's discovery obligations.

defense counsel to essentially alter the SCO's evidence by inserting computer files in order to view the video.

Unfortunately, the insertion of additional files into the video has not resolved all the technical problems at issue. While it worked for some files, it did not for others. In addition, the SCO's hard drive array contains only the first production of video and not the subsequent production.[2] Defense counsel are left with an inconsistent, unreliable, and partial production of an amount of video that would take a substantial amount of time to view under the best of circumstances. Defendants request that the Court require the Government to provide a complete set of operational and unzipped and/or not compressed video files.

[SIGNATURE BLOCK NEXT PAGE]

---

[2] The SCO notes that it sent links to Production 1 and Production 2 to counsel for Mr. Nauta on July 6, 2023 and July 31, 2023, respectively, and that it provided those same links to counsel for Mr. De Oliveira on August 11, 2023. Sealed Opp'n at 54, n.26 (Feb. 2, 2024) (ECF No. 279). The SCO also notes that it offered hard drive arrays to counsel for Mr. Nauta on July 6, 2023, and to counsel for Mr. Nauta on August 11, 2023. *Id.* That might explain why the hard drive arrays that were initially offered to counsel for Mr. Nauta on July 6, 2023 (and to counsel for President Trump even earlier, on June 21, 2023) did not contain the second production from July 31, 2023. In any event, because of the massive volume of data involved, defense counsel understood that the SCO would provide all of the video on the hard drive arrays.

Dated: April 23, 2024                                   Respectfully submitted,

                                                    *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20001
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

                                                    *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2024, I electronically submitted the foregoing, via CM/ECF, to counsel of record.

Respectfully submitted,

 *s/ Sasha Dadan*
Sasha Dadan (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*