UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 23-801010-CR-CANNON

UNITED STATES OF AMERICA,

        v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

        Defendants.
_____/

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS INDICTMENT UNDER FED. R. CRIM. P. 12(b)(3)(B)**

The Special Counsel's Office ("SCO) offers an inadequate response to the showing made in Nauta's motion to dismiss that the Indictment employs duplicitous, misjoined charges; alleges falsity where there was only confusing, ambiguous questioning with literally-true responses; and otherwise rests on chronologically-disconnected, speculative aspersions. The SCO suggests that a conviction might somehow cure the violations of Fed. R. Crim. P. 7 and 8 and render Fed. R. Crim. P. 12(b)(3)(B) motion practice ineffective. Opp'n. at 13 (Mar. 7, 2024) (ECF No. 378) (noting non-precedential, post-verdict decisions involving far lesser rule violations). The SCO's advocacy of a prosecutorial gamble with injustice confirms that its use of the rule-violative mud-toss of an Indictment was the very point of its filing. Rather than alleging clear, definable single-charge-per-count offenses, SCO casts a disconnected web of prejudice serving only vindictive political interests. Dismissal, without prejudice to filing of a rule-compliant, constitutionally-valid indictment, would address the SCO's abuse of criminal process.

The Indictment's deficiencies are not mere technical errors, but change the nature of the accusations, deprive defendants of certainty of what they must defend against, transpose allegations among defendants without explanation, and cause "'the substantial safeguards to those charged with serious crimes [to] be eradicated under the guise of technical departures from the rules.'" *Russell v. United States*, 369 U.S. 749, 763 (1962) (quoting *Smith v. United States*, 360 U.S. 1, 9 (1959)). The SCO's suggestion that jury instructions can fix all the Indictment's defects is mere wishful thinking.

**Count 33:** The 18 U.S.C. § 1512(k) conspiracy theory of Count 33 is duplicitous. Count 33 combines one alleged multi-prong conspiracy (to fail to comply with a subpoena) with allegations of a subsequent conspiracy (to conceal a later investigation of the first alleged conspiracy). The prejudice to Nauta is palpable. There are no allegations in the Indictment that

1

meaningfully state a factual claim against Nauta as to the first "conspiracy"—indeed that first conspiracy turns principally on allegations that President Trump, in attorney-client-privileged meetings to which Nauta was not a party, sought to determine limits to a unique and unprecedented grand jury subpoena issued to a post-Presidential organization (not to President Trump). The SCO does not deny this, yet offers no basis to evade the holding in *Grunewald v. United States*, 353 U.S. 391, 404 (1957), that the prosecution may not "attempt[] to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions" by alleging that the defendants committed, after the main objectives of the initial conspiracy were completed, acts of concealment in furtherance of that conspiracy. The SCO claims Count 33's "purpose" section is surplusage, relating to only one defendant, and not a window into the duplicitous nature of the count. That is incorrect. Notably, if a defendant lacked any intent to hide *subpoenaed* items, then the first alleged obstruction conspiracy object fails, even if the second object could proceed based on inconclusive actions taken after the response to the video recordings subpoena was assured by President Trump's counsel and representative.[1]

**Count 34:** The SCO's response fails to provide even an anecdotal example of a prior prosecution using Count 34's duplicity-and-misjoinder design of charging *in a single count* two crimes against one defendant and one crime against two defendants. Revealing the multi-offense nature of Count 34, one of its two alleged offenses—moving boxes to hide them from an attorney—is alleged as a stand-alone concealment offense in Count 35 (under § 1512(c)(1)).[2]

---

[1] *See Ingram v. United States*, 360 U.S. 672, 678 (1959) ("conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself"); *accord United States v. Beil*, 577 F.2d 1313, 1314–15 (5th Cir. 1978).

[2] *See Sanabria v. United States*, 437 U.S. 54, 69–75 (1978) ("allowable unit of prosecution" is a "congressional choice" on whether conduct involves one or more distinct "offenses"). The SCO misreads *United States v. Dalton*, 465 F.2d 32, 34 (5th Cir. 1972), which notes Rule 8 permits

2

Separate counts for separate offenses against separate defendants is *required* under Fed. R. Crim. P. 8(a), which provides: "the indictment or information may charge a defendant in separate counts with 2 or more offenses." There is no situation in which it is appropriate to allege in a single count that two defendants committed obstruction by moving boxes around *and* that one of the two also committed obstruction by conferring privately with an attorney.[3]

**Count 35:** Premised on 18 U.S.C. § 1512(c)(1), and alleging concealment to impair use of a document in an official proceeding, Count 35 should be dismissed because the failure of an individual to provide a document in response to a subpoena directed to a separate entity does not amount to concealment; because the factual allegations fail to show any knowing concealment by Nauta, and because a proceeding undertaken to evade the Presidential Records Act's procedures does not qualify as "official" within the meaning of the statute. *Cf. United States v. Blankenship*, 382 F.3d 1110, 1136–40 (11th Cir. 2004) (holding that "jurisdiction" for purposes of 18 U.S.C. § 1001 is limited to situations where the agency "has power to exercise authority"). Further, the SCO's use of separate counts for the alternative liability theories of Counts 34 and 35 for the same conduct implicates double jeopardy; if otherwise valid, the alternatives should be charged in one

---

"indictment of multiple defendants in the same indictment if they are alleged to have participated in the same act or transaction." *Dalton* offer no support for the SCO's novel mixed-bag charges in Counts 34 and 36, and confirms that distinct prosecutable units must be set forth in separate counts.

[3] Eleventh Circuit pattern instructions show the SCO's gambit is improper. *See* Basic Instr. 8 (describing "separate crimes, called 'counts,' against the Defendant"); Basic Instr. 8.1 (providing for conviction "[i]f only one of the alternative[]" statutory means of committing the offense, alleged conjunctively, "is proved beyond a reasonable doubt"). Where alternative means—such as "possessed or carried—are conjunctively alleged, a finding as to either is sufficient. That theorem does not apply to a same-count charge that alleges Trump and Nauta violated the statute by moving boxes *and* that Trump alone violated the statute by talking to his lawyer. Those are not alternative means by which *Nauta* could have committed the offense. The SCO misjoined allegations and defendants in one count, disregarding constitutional and rule limits. *See United States v. Huff*, 512 F.2d 66, 69 (5th Cir.1975)(indictment may be substantively amended only by resubmission to a grand jury) (citing *Russell*, 369 U.S. at 770–71).

3

count rather than two, in order to avoid the multiplicity of charges for the same conduct. *See generally Yates v. United States,* 574 U.S. 528, 546–48 (2015) (rejecting "aggressive interpretation" of statutory term beyond fair understanding of Congress's intent; rule of lenity applies in that contest under established canons of statutory construction). The SCO should elect between Counts 34 and 35.[4]

**Count 36:** As with Count 34, the misjoinder and duplicity of Count 36—which charges *for a third time* that Trump and Nauta hid boxes and also charges that Trump made a false certification—warrant dismissal. The charge is incomprehensible if it is not read to duplicitously misjoin two defendants for two distinct offenses. Count 36 appears to allege that moving boxes at a prior time occurred *and* that unspecified separate conduct by one defendant (Trump) caused a false entry to be made within federal jurisdiction. The factual background that distinguishes these two misjoined offenses is unclear, making effective defense of the charge by the defendants infeasible. And as noted above, the charges are defective in failing to identify a false entry or false document, thus failing to properly state either of the would-be offense charges.[5]

---

[4] The SCO's citation of *Reno v. United States*, 317 F.2d 499, 502 (5th Cir. 1963), for the proposition that duplicity does not always require dismissal of the *entire* indictment ignores that the alternative remedy is *striking* the component of the indictment that makes it duplicitous—if that can be done without substantively amending the charge contemplated by the grand jury. *See id.* ("As said in *United States v. Goodman*, 5 Cir., 1960, 285 F.2d 378, 380: 'This error would, however, be harmless *if the United States were required to elect upon which charge it would proceed*.'" (emphasis added). Thus, if a partial dismissal/striking of the indictment can be effected—without invading the grand jury's province—then, at least on post-verdict review, the *corrected* duplicity defect might be deemed harmless. The SCO fails to fully address *Reno*'s holding and has not offered election or striking as a duplicity remedy. The remedy in this case is not election, but instead dismissal, permitting the SCO to seek a superseding indictment.

[5] The SCO cites no case holding that mere election is a sufficient remedy where a count fails on *both* duplicity and joinder-of-defendants grounds as is the case here. *See* Opp'n. at 13 (Mar. 7, 2024) (ECF No. 378) (citing *United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002) (single defendant/alternative theories of liability for single instance of 18 U.S.C. § 924(c) conduct); *United States v. Marshall*, 75 F.3d 1097, 1111–12 (7th Cir. 1996) (single defendant/single RICO

**Count 37:** For the fourth time in the Indictment, in this Count the SCO again charges the defendants "hid and concealed from the grand jury" documents, this time in violation of 18 U.S.C. § 1001.  The Indictment fails to allege Nauta had knowledge that documents with classified markings were hidden or concealed.  Nauta was not subpoenaed (and neither was Trump, for that matter).  If the allegation relates to the movement of boxes, there is no allegation of what Nauta knew when he did so.  The indictment is defective where it leaves the SCO free to conceal such a knowledge accusation to impede defense preparation and to add vagueness to the charge. The charge is also defective in failing to specify the time of the offense, the investigation at issue, and the false statement at issue to determine materiality and jurisdictional questions.  Nauta is not informed of what he must defend against by Count 37's mischarged cloud of speculative inferences of wrongdoing.  *See United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004) (false statement indictment under § 1001(c) dismissed for failing to specify "matter" at issue).

**Count 38:** Another § 1001 charge, Count 38 is mischarged, apparently in a misguided effort to multiply the charges.  Count 38 identifies no false statement made by the designated custodian of records of the Office of Donald J. Trump. Nor is there any suggestion elsewhere in the Indictment that the representations made by custodian were false representations—much less that she intended to make a false statement.  (For the Court's reference, the certification is attached as Appendix A.)  The certification was, according to the allegations of the Indictment, literally true because it disclaimed personal knowledge, relied on information actually received, and expressly

---

charge/alternative theories of criminality of single RICO predicate act); *United States v. Pungitore*, 910 F.2d 1084, 1136 (3d Cir. 1990) (single RICO charge/unanimous verdict required as to qualifying predicate acts for that offense)).  These cases relate to a single offense (not two chronologically distinct offenses as in Counts 33, 34 & 36), and involve no misjoinder of defendants (unlike Counts 33, 34 & 36).  After hundreds of thousands of federal prosecutions, the SCO has selected this one, where its selective prosecution of defendants is in bold relief, to try out its new charging strategy.

5

qualified that it was true to the best of the custodian's knowledge. The custodian did not lie; the certification is literally true. What the government alleges in Count 38 really is that the custodian (an attorney) was misled in some way, not that the certification to the best of her knowledge was false. But that is not a false statement charge, and is instead a repeat of charges duplicitously made in other counts. Count 38 must be dismissed because the custodian made no false statement. Nor could the defendant aid and abet a crime where no crime was committed by the person who made the statement. *See Hendrix v. United States*, 327 F.2d 971, 975 (5th Cir. 1964) (jury must still find the "offense to have been committed by a principal and that the principal was aided or abetted by the accused"). Count 38 misapplies aiding-and-abetting law and misses the mark for an actionable § 1001 violation.[6]

**Count 39:** The practical, common sense reading of Count 39 is that its crucible of falsity-versus-truth is, at best for the SCO, fundamentally ambiguous, if not resolved on its face by Nauta's literally true statements that: he did not move boxes into the residence suite (nor is he actually accused of that, where the Indictment *concedes* that he moved boxes instead into Pine Hall); and he did not know whether the boxes (or their contents) delivered to NARA were the very same as cardboard boxes (but not contents) he saw—*as much as two months earlier*—in Pine Hall. (Notably, in a discovery update within the past two weeks, the SCO explained to the defense that it has no access to the original NARA boxes (or to more than a fraction of the original documentary contents) nor any plan to obtain them, thus showing the disconnect between SCO speculation about something it has not even tried to learn about "the boxes," and Nauta's failure to engage in such speculation).

---

[6] Fed. R. Crim. P. 7 provides an exception to the requirement of dismissal for violation of its requirements, where the violation is insubstantial, but that exception does not apply here.

The SCO's claim that the questions asked of Nauta were not at least fundamentally ambiguous ignores the text of the Indictment. As the Eleventh Circuit explained in *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003), a common sense reading of an indictment is one that looks to its factual allegations to resolve ambiguity or uncertainty in the charge. And where the indictment exacerbates the ambiguity inherent in the charge—such as here, where the Indictment: states that *Pine Hall* boxes, not *residence* boxes, were what Nauta turned over to NARA; does not allege Nauta ever took boxes into the *residence* (or entered the residence suite);[7] does not allege the boxes (or their contents) sent to NARA were shown to be the same as those transported to Pine Hall at various times weeks earlier (much less that Nauta was told that or could confirm the contents of boxes he did not examine); and reveals that the agents *never asked Nauta if he moved boxes to Pine Hall* (a failure the SCO cannot use the Indictment to correct)—common sense compels there is no fairly charged basis for the false statement charge. *See United States v. Manapat*, 928 F.2d 1097 (11th Cir. 1991) (inherent ambiguities in the formal questions barred conviction in § 1001 prosecution; recognizing "the unfairness of convicting a defendant for giving a *possibly false answer to a vague question*") (emphasis added)'; *see id.* ("'Precise questioning is imperative as a predicate for the offense of perjury.'") (quoting *Bronston v. United States*, 409 U.S. 352, 362 (1973)).[8]

Apart from fundamental ambiguity, the "literal truth" defense applies to false statement

---

[7] The SCO wrongly asserts Nauta was "involved in moving [an unspecified number of] boxes from the storage room to Trump's residence." Opp'n. at 6 (Mar. 7, 2024) (ECF No. 378). No matter how often the SCO says this, it is not true. Pine Hall is not in the residence, as the FBI interview confirmed.

[8] Contrary to the SCO, the Eleventh Circuit did not hold that a twisted garble of a question is sufficient to avoid review for ambiguity, but rather that a multi-part question, the elements of which are unambiguous, despite awkward structuring, can in some instances lack fundamental ambiguity. *United States v. Burnette*, 65 F.4th 591, 610–11 (11th Cir. 2023) (focus is on whether the meaning of the words used is or is not requiring of more specific explanation).

prosecutions. *See United States v. Cannon*, 41 F.3d 1462, 1468-69 (11th Cir. 1995) (false statement conviction reversed where statement, on its face, was not false; evidence showed the request on the form did not necessarily include the matter asserted by the government); *United States v. Rendon-Marquez*, 79 F.Supp. 2d 1361, 1363 (N.D. Ga. 1999), *aff'd*, 228 F.3d 416 (11th Cir. 2000) (judgment of acquittal in § 1001 case where alleged false statement was true on its face). Here, the questions Nauta was asked about the "residence" were truthfully answered, and Nauta's statement that he did not have information to offer that would give the USIC comfort was either true or incapable of being characterized as false. Finally, Nauta did not know that the boxes turned over to NARA, much less their contents that he never saw, were the same as those he and others helped bring to Pine Hall two months earlier. Nor could the Indictment viably allege that he knew that. Knowledge of one among many possibilities is not knowledge of a fact.

The SCO claims that the doubly double-negative assertion made by one agent—"you didn't know, had no idea how they [the materials that went to NARA] got there [Pine Hall] before"—required Nauta to say, not just "Yes" or "No," but also "I would be guessing, and I don't want to presume." Permitting a defendant to be prosecuted for failing to guess or speculate about the derivation of the classified contents of common cardboard boxes he never opened and could not possibly distinguish from other boxes is beyond the pale of § 1001, where the SCO is still guessing and speculating about the same matter in the Indictment itself.

**Counts 40 & 41:** The SCO's response fails to address defense arguments as to these substantive charges, and instead makes reference to the allegations only as part of the conspiracy count (Count 33). As noted in the motion to dismiss, Eleventh Circuit precedent indicates that conversations about or preliminary planning to commit an offense do not violate conspiracy statutes. *See United States v. Kelly*, 888 F.2d 732, 740–41 (11th Cir. 1989). But even if the SCO

8

were correct that a valid (albeit duplicitous) *conspiracy* were alleged in Count 33, there still was no substantive offense of deletion or attempted deletion of anything, under well understood attempt law that excludes objectively *equivocal* statements such as the Indictment's 'what are we going to do?' language. *See United States v. Carothers*, 121 F.3d 659, 662 (11th Cir. 1997) (substantial step analysis required to distinguish mere preparation includes whether objective acts, viewed separately from, and without inquiry into, mens rea or state of mind, "unequivocally mark" the conduct as a violation); *Braxton v. United States*, 500 U.S. 344, 351 (1991) (reversing where evidence of substantial step was ambiguous). There also is no dispute that counsel for President Trump had already taken the necessary measures to secure the subpoenaed recordings.

**Count 42:** The SCO fails to address a factual error in its charge where the questions to which the challenged responses were given related to items brought to Mar-a-Lago *after* President Trump's presidency, while the boxes in this case were brought prior to the end of the term. This undermines both the falsity and materiality claims of the charge, showing that it was immaterial that the defendant did not recall dealing with boxes brought after the term concluded. Further, the allegation relates to a denial of seeing the "stuff" inside the boxes, such as "personal stuff, like, his clothes," and the denial of knowledge of where it was stored. Superseding Indictment at 52, ¶ 119 (July 27, 2024) (ECF No. 85). But there is no allegation that Nauta knew of the personal stuff itself or where it was taken.

**Shotgun Pleading Defect:** The SCO suggests (without citation of authority) that the rule against shotgun pleading does not apply in criminal cases. Opp'n. at 9–10 (Mar. 7, 2024) (ECF No. 378). The SCO argues that because Fed. R. Crim. P. 7 permits adoption of allegations made in a prior count of the indictment, the criminal rules must approve of shotgun pleadings. *Id.* at 10. But this ignores that the *civil rules provide for exactly the same adoption of prior allegations*. Fed.

R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading ... ."). The SCO's supposed civil distinction in shotgun pleadings is illusory. The shotgun pleading doctrine protects the defense from unnecessarily preparing to defend ultimately meaningless accusations. The shotgun-pled Indictment incorporating 91 paragraphs of allegations into each of the 42 counts, for nearly 4,000 paragraphs (i.e., 91 x 42) of largely surplusage content that the SCO is free to interpret variously in prosecuting each charge, warrants dismissal or striking.

Regarding its PowerPoint use of the shotgun pleading, the SCO miscites *United States v. Pendas-Martinez,* 845 F.2d 938, 941–42 (11th Cir. 1988), as dealing just with evidentiary rulings at trial. While the Eleventh Circuit ruled in *Pendas-Martinez* that an agent's hearsay summary of the government's case is inadmissible, that was not the basis for the holding that what transpired at trial categorically required reversal. Instead, it was the submission to the jury for their deliberations of a neat documentary condensation of the government's arguments and evidence. The government's storybook Indictment in this case simply skips the evidentiary step employed by the government in *Pendas-Martinez*, offering commentary on exhibits, mischaracterizations of governmental regulations and orders, dismissive understandings of the Article II authority vested in the President of the United States, and other matters as an argumentative evidentiary summary contrary to due process. The Indictment in this case, which the SCO proposes to provide to the jury through readings, rehashings, and submission in paper form, is far more harmful than the agent's fact summary in *Pendas-Martinez*.

**Motion to Strike Surplusage under Fed. R. Crim. P. 7(d):**  Defendants also seek the striking of "irrelevant, inflammatory, and prejudicial language, including photographs, campaign speeches, anti-Trump campaign talking points, hearsay, legal opinions, false statements, repetition

10

of allegations, lectures, adverbial argument, and disparaging references to President Trump." Motion at 19.  The SCO denies it knows what is referenced, despite the motion's inclusion of a 29-paragraph table of those items along with specific reference to argumentative headings in the Indictment.  The SCO's claimed ignorance of the surplusage is inconsistent with the record.

## CONCLUSION

WHEREFORE, Defendants pray that the Court grant a hearing on the instant motion and grant the motion to dismiss the Indictment.

[SIGNATURE NEXT PAGE]

Date: March 24, 2024                                Respectfully submitted,

  *s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, D.C. 20010
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

  *s/ Sasha Dadan*
Sasha Dadan, Esq. (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2024, I electronically submitted the foregoing via electronic mail, to counsel of record.

*s/ Sasha Dadan*