# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 23-cr-80101- CANNON |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| WALTINE NAUTA, and ) | |
| CARLOS DE OLIVEIRA, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR FURTHER STAY IN LIGHT OF ONGOING APPELLATE PROCEEDINGS

Stanley E. Woodward, Jr.　　　　John S. Irving, IV
BRAND WOODWARD LAW, LP　　E&W LAW, LLC

Richard C. Klugh　　　　　　　　Larry Donald Murrell, Jr.
KLUGH WILSON, LLC　　　　　　L.D. MURRELL, P.A.

*Counsel for Defendant*　　　　　*Counsel for Defendant*
*Waltine Nauta*　　　　　　　　*Carlos De Oliveira*

This Court should extend its stay as to both volumes of disqualified Special Counsel Smith's Final Report from the current expiration set for the end of the day on Monday, January 13, 2025. This matter is well within this Court's jurisdiction, and the Government unduly minimizes this Court's important role in overseeing its own trials and in maintaining the status quo with respect to an issue that has severe and irreversible implications for a criminal case. The relief requested is not contrary to law but rather consistent with longstanding common-law principles governing criminal trial practice. It is also consistent with general principles of equity and due process. The Government, driven by political priorities that have no place in a criminal trial setting, seeks to strong-arm its way through this orderly process and has repeatedly failed to abide by established rules and procedure. *Cf. United States v. Trump*, No. 23-257 (TSC), 2024 WL 4458449, at *1 (D.C.D.C. Oct. 10, 2024) (ruling that "'concern with the political consequences of these proceedings' is not a cognizable legal prejudice"). This Court can and should enforce its order and the status quo that the Government is desperate to remove, apparently viewing such policies as a political inconvenience. Political preference must yield to due process of law.

I.   **This Court Has Jurisdiction to Grant the Requested Relief**

This Court has jurisdiction to maintain the status quo and to hold a hearing on the request for protective relief and enforcement of this Court's prohibition of conduct likely to taint the trial. The Government's position is that the mere filing of a notice of appeal divests this Court of jurisdiction to enforce its own orders. This is particularly problematic here for several reasons. First, the January 7 Order entered by this Court is an extension of the existing protective order in this case—a protective order that was entered at the *Government's* request and that continues to bind the defense and thus should continue to bind the Government. The Government attempts to treat this as a civil injunction, but the order entered by this Court last week functions primarily to enforce the protective order entered long ago in the criminal case. The Government engages in

1

political gamesmanship in both its attempt to persuade this Court that it does not have jurisdiction to enforce its own order, and in its suggestion that by filing an appeal, it can simply run down the clock on the existing order, leaving this Court with nothing it can do about it.

Temporary orders like this one are not even subject to direct appeal. *See, e.g., Office of Personnel Management v. American Federation of Government Employees, AFL-CIO*, 473 U.S. 1301 (1985) (temporary restraining orders are not appealable when the function of such orders is to preserve the status quo).[1] The Order appealed from in this case was not entered after a hearing, nor on the *merits* of the request for relief but rather was entered solely to preserve the status quo. The Government recognizes this rule and asked the Circuit—via an improper notice filing in the original Appeal, No. 24-12311—to construe its appeal of the temporary order instead as a *petition for mandamus*. App. No. 24-12311, Doc. 101 at 2 n.1. The Government did not, however, file a petition for writ of mandamus. The Government appears to be doing everything it can to skip steps in the required process, in the name of a feigned emergency. The only purported urgency for the Government is advancing political aims. Haste to inject prejudicial information about a criminal trial into public discussion for political gain is not an "emergency."

The Government misstates and misrepresents the law in suggesting that this Court lacks jurisdiction to grant the requested relief. The Government first cites *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023), for the proposition that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Id*. This is a misleading citation. If the Government's argument were correct, the temporary injunction

---

[1] *See also Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 943 (7th Cir. 2006) ("[a] temporary restraining order is not appealable, despite its close resemblance to a preliminary injunction, which is appealable") (Posner, J.); *San Francisco Real Estate Investors v. Real Estate Invest. Trust of America*, 692 F.2d 814, 816 (1st Cir. 1982) ("temporary restraining orders are ordinarily not appealable on an interlocutory basis," but finding the order entered there appealable in part because both sides "were given the opportunity to make oral presentations" and thus the proceeding came close to that ordinarily associated with an appealable preliminary injunction") (Breyer, J.)

2

remedy would not exist because the party against whom it was issued could defeat it by the mere filing of a notice of appeal. Consider, for example, that Congress enacts a law providing that "any political speech deemed offensive to the Attorney General is punishable for a term of years or up to life in prison." An inevitable lawsuit is filed, and the district court enters a temporary, 30-day injunction to enjoin enforcement of the law, amid anticipation that Congress will amend it. Under the Government's reading of the "clear background principle prescribed by [Supreme] Court[ ] precedents," DE:690 at 1-2, the Government could defeat that injunction by the mere filing of a notice of appeal. Under the Government's interpretation, the filing of the notice of appeal would leave the district court without power to extend that injunction if Congress did *not*, as the district court originally anticipated, rewrite the obviously unconstitutional statute.

In *Coinbase*, the case relied upon by the Government, the question presented was "whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing." 599 U.S. at 740. The Supreme Court found, "[t]he answer is yes." *Id*. To the extent Coinbase is instructive here, it counsels in *favor* of extending a stay. Similarly, the Government's citation to *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), in fact favors relief requested by the Defendants, because, as the Supreme Court noted in *Coinbase*, the decision in *Griggs* "dictates that the district court must stay its proceedings while the interlocutory appeal is ongoing." *Coinbase*, 599 U.S. at 741. The district court may, however, "still proceed with matters that are not involved in the appeal, such as the awarding of costs and attorney's fees." *Id*. at 741 n.2.

The merits of Defendants' request for emergency relief are not at issue in the appeal. The only question at issue on appeal is whether the temporary injunction was properly entered. This Court did not enter a temporary injunction on the *merits* of Defendants' request for emergency relief; rather, it entered a temporary injunction pending action by the Eleventh Circuit. The Eleventh Circuit has since acted—and has signaled that jurisdiction is properly before this Court

3

in the first instance. The Government is late on the beat. Because this Court has not yet ruled on the *merits* of Defendants' request for emergency relief, that question thus *cannot* be at issue on appeal. The only question on appeal is whether this Court properly enjoined release of the Final Report pending action from the Circuit. The Eleventh Circuit then bounced back to this Court the merits question, as to which intervention has been sought by the President-elect.

The Government gives significance to the fact that the Eleventh Circuit did not issue an order remanding, but that suggests the Circuit viewed the motion for emergency relief as being properly before the district court. In *United States v. Ellsworth*, 814 F.2d 613, 614 (11th Cir. 1987), the court determined that the motion should be addressed to the "sound discretion of the district court," and did not issue an order of remand, but rather found it had no jurisdiction to rule on the merits and simply denied the motion without prejudice to seek relief in the district court. Here, Defendants did not need to *refile* in the district court because they filed there initially—leading to the temporary injunction until the Circuit decided whether it wanted to pass on the question.

This Court can and should extend the stay and hold a hearing on the merits of Defendants' request for emergency relief. Paradoxically, this will serve the Government's aims as well; a hearing on the emergency motion, even if it yields a preliminary injunction over the Government's opposition, will result in an appealable ruling. The Government's attempts to skip steps in the process are inconsistent with the constitutional protections afforded to criminal defendants.

## II.     The Relief Requested Is Required by Law, Not Contrary to It

The Government in its response makes the unfounded and erroneous assertion that Justice Department regulations regarding public release should override the Defendants' constitutional rights. The Government thus attempts to litigate the merits of this dispute, rather than the purported question presented here—whether a stay is necessary to preserve the status quo. If the Government wants to litigate the issue of whether any volume or part of the Final Report may be released to

4

the public or to Congress, then that highlights the need for this Court to schedule a hearing to address the myriad factual questions regarding the Report's release; the extent of permissible release; and particularly given the admitted interrelatedness of at least some aspects of Volumes 1 and 2, the extent to which Volume 1 of the Report bears on this pending criminal matter.

Defendants offer several cognizable bases to restrict the Attorney General's discretion in this case-related dissemination matter. The most significant of them is that Defendants' constitutional right to a fair trial justifies restricting any exercise of discretion by the Executive Branch that will infringe on those fair trial rights. An extension of the stay is warranted here pending resolution of the protective order enforcement sought here. But even considered within the context of the statutes and regulations cited by the Government, release of the Final Report is not appropriate. First, the Government suggests that 28 U.S.C. § 509—which addresses the functions of the Attorney General—governs this dispute. But the Special Counsel was not a "subordinate official"; he was an unconstitutional appointment, and the Government cannot now characterize him as a subordinate official to evade this Court's finding regarding the appointment. Nor can the Government find support in 28 C.F.R. § 600.9(c), which authorizes the Attorney General to "determine that public release" of a Special Counsel Report "would be in the public interest," and to make a Report to Congress "[u]*pon the conclusion of a Special Counsel's investigation*." § 600.9(a)(3) (emphasis added). The Government is pursuing prosecution of the remaining Defendants indicted as a result of the Special Counsel's investigation; it cannot be deemed "concluded" simply because this Court disqualified the Special Counsel from the case. Nor, although the Special Counsel resigned, the matter has not concluded, the appeal filed and briefed *by the Special Counsel* continues, and the extent to which the former/disqualified Special Counsel engages in advocacy speech affecting the trial rights of these Defendants is still under the

5

protective order authority, and subject to the relevant rules of this Court.[2] Another reason that the Government cannot rely on 28 C.F.R. § 600.9 is that the Final Report is a result of an unlawful appointment, as found by this Court in a prior order. The Final Report was prepared unlawfully—*following* this Court's finding of unconstitutionality as to the appointment—and is thus a legal nullity under the binding order of dismissal issued by this Court. As a result, the Final Report unlawfully prepared by disqualified Special Counsel is not subject to § 600.9. There is no obligation to release the Report, and nor is the Attorney General authorized to do so given the legal problems with the appointment (and the fact that preparation of the Report, particularly as to Volume II, necessarily involved a misuse of appropriated funds).

The DOJ seeks to ignore this Court's order regarding the constitutionality of the appointment and ensuing prosecution; and, worse yet, is trying to exploit a loophole by claiming that because the Special Counsel was disqualified from the case, his investigation has "concluded" even though it was, just two weeks ago, referred to a local office. This case presents the unprecedented scenario of attempted release to Congress while the investigation is still ongoing— there is much litigation yet to conclude were this case to be remanded by the Eleventh Circuit, as the Special Counsel alone has argued to that Court. Such a scenario is not contemplated in the regulations and thus demands court oversight. The Government asserts that whether the criminal case "will ever proceed is presently uncertain." DE:690 at 5. While it is refreshing to see the Government take such a candid and considered approach to the strength of its appeal, and while Defendants view this Court's order of dismissal as the correct reading of the law, the mere fact of

---

[2] To that effect, it is unclear why the United States Attorney for the Southern District of Florida is likewise on the briefs urging release of the Report—his role in this case is entirely limited to the prosecution and perhaps ultimate trial of the remaining Defendants, and his efforts to engage in this political gamesmanship risking grave harm to the Defendants' constitutional rights is directly contradictory to that role.

6

an appeal creates a probability of a ruling either way by the Court of Appeals. And in this instance that means a probability of irreversible prejudice to a criminal trial if this Report is released.

The Government also overstates the effectiveness of its proposed "middle ground" approach to insulate against irreparable harm via prejudicial publicity. The Government's proposal removes from judicial oversight the flow of publicity and risks that privileged material finds its way into public debate. The DOJ seeks to pillory these criminal defendants using the Special Counsel's supposedly non-public advocacy. And the proposed parameters of the Government's approach are unclear. What, for example, are the restrictions on members of Congress who view the Report? Where is the Government's proposed "in camera" review going to occur—in the Special Counsel's office, or in a setting controlled by Congress? Are Members permitted to publicly share their opinions on the Report? Are they permitted to discuss the case *at all* publicly, now that they have had access to confidential material that will inevitably shape how they view the case? Are they permitted to disclose their reactions to their own staff? Are they permitted to war against the Defendants' efforts to fundraise for their defense? Does public discussion of the Report by the DOJ and members of Congress relieve the defense of its requirement to abide by the protective order? If the case is going to be tried in the court of public opinion, is the defense not at least entitled to an adversary process in that forum? All of these questions warrant consideration at a hearing. A hearing will ensure Defendants' due process rights are properly considered.

As the defense previously noted, there is no way for this Court to bind members of Congress. Nor does the Government's proposal provide any assurances to insulate against the inevitable possibility of leaks. Congress is a political body; its individual members have political aims; and this is a political case. The Government's assertion that disclosure to Congress is

7

sufficient to safeguard the Defendants' rights falls short.[3]  This is an era in which even a draft of a Supreme Court decision on a highly divisive political issue has been leaked.  The functioning of the political press depends on leaks, and if such leaks occur here, there will be no recourse for the Defendants whose due process rights are at stake.  Members of the House and Senate Judiciary Committees are *not* entitled to access evidence in a pending criminal case, especially not privileged and grand jury materials, and there is no reason to provide such access here.  Any access must only be provided after a court process and a hearing—not unilaterally by the DOJ in disregard of all the rules, policies, and procedures in place to protect against unwarranted and improper pretrial prejudicial publicity that threatens due process.[4]  The Government's response illustrates the need for this Court to extend a stay and to hold a hearing to resolve these disputed questions of fact.  The question of whether relief is appropriate cannot be answered without that fact-finding process.

### III.  This Court should enjoin public release of Volume 1, as well as Volume 2

In response to this Court's order requiring a supplement, the Government asserts that "the United States believes" that Volume 1 does not concern this prosecution.  That is non-responsive: the question was whether Volume 1 "directly or indirectly refers, relies, or bears **in any respect** upon any evidence or argument relevant to any of the charges alleged," and whether "**understood liberally**" it contains any of the foregoing.  DE:691 (emphasis added).  The government has set

---

[3] For instance, comments to a recent *New York Times* article predict an inevitable leak of the Report and urge such leaking.  *See* Comments, "Justice Dept. to Hold Off Releasing Report on Trump Documents Case," by Alan Feuer and Charlie Savage, *New York Times*, Jan. 8, 2025, https://www.nytimes.com/2025/01/08/us/politics/trump-documents-report-jack-smith.html

[4] A hearing is also essential because the Government has conceded redaction of some materials is necessary and has asserted it will redact some grand jury information. Undersigned counsel has reviewed the proposed redactions and deems them insufficient to protect information that was obtained only via grand jury subpoenas and that generally falls under Fed. R. Crim. P. 6, as well as the common-law rules governing grand jury secrecy. This dispute over the appropriate scope of redactions creates an issue of fact to be resolved by this Court after a hearing. It is not for the DOJ to decide what grand jury information must be protected from disclosure to Congress. That discretionary responsibility lies solely with the Court under well-established principles of grand jury secrecy, *especially* during a pending criminal case.  If *any* grand jury material is to be released to *anyone* not tasked with enforcing criminal laws, there must be an adversarial hearing where this Court determines if release is appropriate and what is appropriately released.

forth only what appear to be the most formal articulations of Volume 1's reference to Volume 2. Those references were deemed significant to the Special Counsel and a review of the entirety of Volume 1 is expected to reveal the full interrelatedness of grand jury testimony, witness attacks by the government, and conspiracy and other criminal theories for which the Special Counsel apparently sought to vouch for in the Report. The protective order principle applies fully where the government seeks to "try" in a court of public opinion a figure it identified as a co-conspirator in this case. The government has sought more far-reaching gag orders than anything sought here.

The Government does not disclose, either in its public filing or in its sealed supplement, who reviewed Volume 1; what the person who reviewed Volume 1 knows about the sealed (or even unsealed) proceedings in this case; and what standards of evaluation were used to support this purported "belief" of the United States. This is amplified by the fact that the three attorneys, two of them civil lawyers, who signed the Government's brief are brand new to the case and not sufficiently familiar with the facts or nuances of the criminal case to be qualified to make this assertion. The attorneys asserting no connection do not know the significance of certain matters addressed in the Report; they do not adequately understand the connections between the two cases and their respective investigations; they do not have a well-versed understanding of the evidence and the potential witnesses. There is anticipated to be overlap between the witnesses used in the respective cases. The facts and circumstances of the respective cases are inextricably intertwined insofar as the conduct targeted in both investigations was occurring around the same time. Such evidence, under Rule 404(b) or otherwise, would likely not be admissible in Mr. Nauta's trial. The dissemination of this evidence to the public writ large would impermissibly taint the jury pool.

The significant overlap between the two cases—both temporally and with respect to potential witnesses and evidence—combined with the Government's acknowledged references to the Southern District of Florida case in Volume 1, warrants independent review of Volume 1 by

9

this Court. Importantly, counsel can proffer that Volume 2 references Volume 1 as well. The Report has a coordinated message and intent to the best of counsel's understanding. The Government invites this Court to review Volume 1 in an *ex parte* fashion, but that request is inconsistent with due process and with our adversarial system. The defense, too, should be permitted to examine Volume 1 and to lodge sealed objections, to be dealt with at a sealed hearing. Ex Parte applications are disfavored because "they conflict with a fundamental precept of our system of justice: a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them." *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938).[5]

The Government has not offered *any* argument to support its request for *ex parte* review of Volume 1; again, it is attempting to avoid an adversarial process in the interest of politics. Indeed, there is no prejudice that could result by permitting the defense to review Volume 1, subject to the existing protective order, and to raise with the Court, in a sealed proceeding or via sealed litigation, any portions of Volume 1 that could bear on this pending criminal matter. There is no reason to block the defense from this process; indeed, the Government wishes to *publicly* release Volume 1; it will suffer no prejudice from permitting the defense to review that portion of the Report.

IV.     **CONCLUSION**

Defendants request that this Court extend the stay from its current expiration at the end of the day on January 13, 2025 to (1) allow for review of Volume 1, including the filing and resolution of any defense objections; and (2) hold a hearing on the Defendants' request for emergency relief.

---

[5] *See also id*. ("Although *ex parte* conferences are not *per se* unconstitutional, they 'should occur but rarely, especially in criminal cases.'") (quoting *United States v. Adams*, 785 F.2d 917, 920 (11th Cir. 1986); *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018) ("In our adversary system, *ex parte* motions are disfavored . . . .") (citing examples of appropriate *ex parte* applications). A defendant's right to a "fair trial," involves the intersection of the Constitutional prohibition against, "withhold[ing] [from a defendant] evidence that is favorable to the defense and material to the defendant's guilt or punishment," *Smith v. Cain*, 565 U.S. 73 (2012) (citing *United States v. Brady*, 373 U.S. 83 (1963)), and the right of a defendant to "meaningfully assist in [a] defense." *Castro v. United States*, 2022 U.S. App. LEXIS 29765, at *2 (11th Cir. Oct. 25, 2022) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

10

Dated: January 12, 2025	Respectfully submitted:

/s/ Stanley E. Woodward, Jr.
Stanley E. Woodward, Jr. (pro hac vice)
BRAND WOODWARD LAW, LP
400 Fifth Street NW, Ste 350
Washington, DC 20001
(202) 996-7447 (telephone)
stanley@brandwoodwardlaw.com

/s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
klughlaw@gmail.com

*Counsel for Defendant Waltine Nauta*

john.irving@earthandwatergroup.com

/s/ Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
L.D. MURRELL, P.A.
400 Executive Center Drive, Ste 201
West Palm Beach, FL 33401
(561) 686-2700 (telephone)
ldmpa@bellsouth.net

*Counsel for Defendant Carlos De Oliveira*

/s/ John S. Irving, IV
John S. Irving, IV (pro hac vice)
E&W LAW, LLC
1455 Pennsylvania Ave NW, Ste 400
Washington, DC 20004
(301) 807-5670 (telephone)