UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WALTINE NAUTA and
CARLOS DE OLIVEIRA,

    Defendants.
_____/

**THE UNITED STATES' OPPOSITION
TO MOTION FOR LEAVE TO INTERVENE**

The United States respectfully submits this Opposition to President-elect Trump's Motion for Leave to Intervene, ECF No. 681. President-elect Trump seeks to intervene in this dismissed criminal prosecution in order to join the emergency motion of Defendants Waltine Nauta and Carlos de Oliveira, in which they seek to restrict access to the Final Report that Special Counsel Jack Smith recently submitted to the Attorney General pursuant to Justice Department regulations. See 28 C.F.R. § 600.8(c).[1]

As this Court is aware, the Final Report addressed in the Motion for Leave to Intervene comprises two volumes. Volume One of the Final Report concerns the Special Counsel's investigation and prosecution relating to the 2020 presidential election in Washington, D.C. (Election Case), and Volume Two concerns the Special Counsel's investigation and prosecution of

---

[1] The Eleventh Circuit denied Defendants' requests for the same relief. Order 2, *United States v. Nauta*, No. 24-12311 (11th Cir. Jan. 9, 2025) (Order Denying Emergency Inj.).

Defendants Nauta and Oliveira, as well as President-elect Trump, relating to the mishandling of classified documents (Classified Documents Case).

Since President-elect Trump submitted his Motion for Leave to Intervene, this Court has denied Defendants' motion for emergency relief as to Volume One.  *See* Order, ECF No. 697.  Additionally, as the Court has noted, the Department of Justice has agreed that the Attorney General should not release Volume Two to the public while Defendants' criminal cases remain pending.  *See id.*  Accordingly, the sole issue still pending before this Court—and therefore the sole issue on which any intervention must focus—is the question of whether the Court should enjoin the Attorney General from allowing the Chairmen and Ranking Members of the Senate and House Judiciary Committees to review Volume Two *in camera*, under conditions designed to protect against any material risk of prejudice to the remaining criminal defendants.  *See* ECF No. 703 at 4 (describing those conditions).

The case law provides for intervention in criminal cases only in limited circumstances.  Some cases limit intervention to situations in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion raised in the case, while others look to whether a would-be intervenor has a legitimate interest that he cannot protect without becoming a party.  Neither standard can be satisfied here—the Motion for Leave to Intervene identifies no constitutional or other federal right that could justify intervention in this case.  Nor can the President-elect establish that he cannot protect his rights without becoming a party to this action.

Accordingly, this Court should deny the Motion for Leave to Intervene.

## ARGUMENT

"Various courts have observed that the Federal Rules of Criminal Procedure do not provide for third-party intervention in criminal cases." *United States v. Atesiano*, 2018 WL 5831092, at *2

(S.D. Fla. Nov. 7, 2018) (citing *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007)); *see also United States v. Chin*, 913 F.3d 251, 255 (1st Cir. 2019) ("[T]he right of a non-party to intervene in a criminal proceeding is doubtful.") (quoting *In re Globe Newspaper Co.*, 920 F.2d 88, 90 (1st Cir. 1990)).[2]

"Intervention in criminal cases is generally limited to those instances in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *Atesiano*, 2018 WL 5831092, at *2 (quoting *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004)). The Motion for Leave to Intervene acknowledges this standard, *see* Mot. at 2, and quotes a second standard articulated by the Seventh Circuit in *United States v. Blagojevich*, 612 F.3d 558 (7th Cir. 2010), *i.e.* that "courts have permitted intervention when the potential intervenor has a legitimate interest in the outcome and cannot protect that interest without becoming a party." Mot. at 3 (quoting same). This case presents neither circumstance.

### A. The Motion as to Which President-Elect Trump Seeks to Intervene Does Not Implicate His Constitutional or Other Federal Rights.

To begin, this is not a case in which the President-elect's "constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *Atesiano*, 2018 WL 5831092, at *2 (quoting *Carmichael*, 342 F. Supp. 2d at 1072). Typically, intervention under this standard is permitted where the granting of a motion in a criminal case would infringe on a third party's constitutional rights:

> For example, courts sometimes permit the press to intervene in a criminal case where a decision to close criminal proceedings to the public may affect its First

---

[2] Federal Rule of Civil Procedure 24 does not apply, by its own terms, to criminal cases. Accordingly, the reliance, in the Motion for Leave to Intervene, on *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242 (11th Cir. 2002), is misplaced. That case addressed "intervention as a matter of right" in a civil suit, *id.* at 1249; it has no application here.

> Amendment rights. *See, e.g., United States v. Hernandez*, 124 F. Supp. 2d 698, 701 (S.D. Fla. 2000); *United States v. Baez–Alcaino*, 718 F. Supp. 1503 (M.D. Fla. 1989); *United States v. Torres*, 602 F.Supp. 1458, 1462 (N.D. Ill. 1985). In addition, third parties are occasionally allowed to intervene in a criminal trial to challenge a request for the production of documents on the ground of privilege, *see, e.g., United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003); *In Re Grand Jury Investigation No. 83–30557*, 575 F. Supp. 777 (N.D. Ga. 1983), or to protect other rights implicated by a particular proceeding. *See, e.g., Gravel v. United States*, 408 U.S. 606, (1972) (noting that district court allowed Senator's motion to intervene to quash grand jury subpoenas of witnesses whose testimony implicated his privilege under the Speech or Debate Clause of the Constitution).

*Atesiano*, 2018 WL 5831092, at *2 (*Carmichael*, 342 F. Supp. 2d at 1072). But that is not the situation here. The action the President-elect seeks to block is not part of this case. Neither further proceedings in this case nor the relief sought by Defendants threatens the President-elect's interests. To the contrary, the President-elect *supports* the relief sought by Defendants. Indeed, intervention is unnecessary here, as the Defendants in the case are seeking the identical relief on which the intervention is predicated. If the President-elect seeks to prevent the Chairmen and Ranking Members of the House and Senate Judiciary Committees from being permitted limited access to Volume Two of the Final Report, he could file his own civil action requesting that relief.

In fact, the *Carmichael* case relied on by President-elect Trump rejected intervention in an analogous situation to that presented here. In that case, a DEA agent hoped to prevent the criminal defendant from displaying the agent's picture on a website. The prosecution had itself (unsuccessfully) sought an order requiring the defendant to take down the site. Thus, like here, a third party sought to benefit from a motion filed in a criminal case. The Court rejected intervention, explaining that:

> Any interest [Agent] DeJohn has in the website's removal is not based on a legal entitlement specifically belonging to him in Carmichael's criminal case. Rather, his motion to intervene is an effort to resolve what is essentially a private dispute based, if anything, on state law. DeJohn's allegation, that the website is not only interfering with his ability to pursue his profession as an undercover agent, it is putting him danger, may very well be actionable under Alabama law. However, intervening in

4

> Carmichael's federal criminal case is not an appropriate manner in which to seek redress for his perceived wrong; DeJohn's appropriate forum is, if anywhere, in state court.

*Carmichael*, 342 F. Supp. 2d at 1072–73.  The Court noted further that "[a] criminal case is not the proper channel for a nonparty to resolve a collateral civil dispute with a criminal defendant.  *Id.* at 1073.  The same is true of a third party's attempt to resolve a collateral civil dispute with the government.

In any event, the actions by the government that the Defendants seek to enjoin do not implicate any constitutional or other federal right of the President-elect.  The Motion for Leave to Intervene relies wholly on the Presidential Transition Act's "promise[]" of "a smooth Presidential transition" as the basis for the proposed intervention.  Mot. at 3.  But the Motion fails to establish any infringement of any right set forth in the Act.

The Presidential Transition Act of 1963 "authorizes funding for the General Services Administration (GSA) to provide suitable office space, staff compensation, and other services associated with the presidential transition process."  Congressional Research Service, *Presidential Transition Act: Provisions and Funding*, updated May 22, 2024, *available at* https://crsreports.congress.gov/product/pdf/R/R46602; *see generally* Pub. L. No. 88–277, 78 Stat. 153 (1964) (codified as amended at 3 U.S.C. § 102 note).  The Act contains no private right of action.  Indeed, the portion of the Act invoked in the letter from counsel for the President-elect (*see* ECF No. 679, Ex. A at 4)—which the Motion for Leave to Intervene incorporates by reference, Mot. at 1—does not even impose binding restrictions.  Section 2 provides merely that "*it is the intent of the Congress* that" federal officers "promote orderly transitions in the office of President."  3 U.S.C. § 102 note (emphasis added) (Section 2 of the Presidential Transition Act).

Moreover, the President-elect could not show that release of the Final Report would be contrary to the Act even if it were enforceable. The Motion for Leave to Intervene asserts that "[i]ssuance and public release of the Report" would have the effect of "disrupting and interfering with President Trump's transition efforts and harming the institution of the Presidency," Mot. at 5, but the Motion does not specify what the disruption and interference might be. The letter from counsel for President-elect Trump to the Attorney General asserts that releasing the Special Counsel's report to the public would "giv[e] rise to a media storm of false and unfair criticism that President Trump would be required to address while preparing to assume his Article II responsibilities," ECF No. 679, Ex. A at 4, and further characterizes the Final Report as "an obvious effort to interfere with upcoming confirmation hearings." *Id.* at 5. But the Attorney General has already decided not to release Volume Two publicly while Defendants' case remains pending. Thus, predictions of harm resulting from a release to the general public are beside the point. The Motion provides no reason to believe that a provision of the Presidential Transition Act could not be carried out—or would be rendered more difficult to implement—due to the proposed *in camera* review of Volume Two of the Final Report by the Chairmen and Ranking Members of the House and Senate Judiciary Committees.

The letter from counsel for the President also invokes the Appointments Clause and the Appropriations Clause, as well as the Special Counsel Regulations. *See* ECF No. 679, Ex. A at 3-4. But as the government explained in its opposition to Defendants' motion to extend the temporary injunction (ECF No. 690), these arguments are no longer even relevant now that the Special Counsel has completed his report and transmitted it to the Attorney General. All that is left is for the Attorney General to determine how to handle that report, and his authority in this respect is clear. ECF No. 690 at 8-10.

Finally, the letter from counsel for the President-elect asserts that release of the Final Report would violate "Presidential immunity principles." ECF No. 679, Ex. A at 5. Any argument that Trump's status as President-elect immunizes him against release of the report cannot be squared with the United States Supreme Court's recent rejection of an even less expansive argument from the President-elect—that immunity principles precluded him from being sentenced in a state court criminal matter. *See Trump v. New York*, No. 24A666, 2025 WL 52691, at *1 (Jan. 9, 2025) (noting that "the burden that sentencing will impose on the President-Elect's responsibilities is relatively insubstantial"). The President-elect cites no authority for the proposition that immunity shields the President-elect from the mere review, by the Chairmen and Ranking Members of the Department's committees of jurisdiction, of a report regarding his conduct.

Indeed, concluding that principles of presidential immunity prohibit the investigation of presidential conduct or reporting on that conduct would be a significant and unprecedented extension of the doctrine. Prior special counsels have investigated the conduct of sitting Presidents and released reports setting forth their findings. *See* Robert S. Mueller, III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election* (Mar. 2019); Robert K. Hur, *Report on the Investigation into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* (Feb. 2024); *see also Trump v. Vance*, 591 U.S. 786, 803 (2020) (noting that then-President Trump had "concede[d]—consistent with the position of the Department of Justice—that state grand juries are free to investigate a sitting President with an eye toward charging him after the completion of his term"). Just as a sitting President can be required to defend a civil suit while in office, despite the burdens on his time, *see Clinton v. Jones*,

7

520 U.S. 681 (1997), so too can a president-elect be the subject of a report despite any conceivable distraction the report might cause. In this situation, "trial, judgment, and imprisonment" are not on the line. *Trump v. United States*, 603 U.S. 593, 613 (2024).

For similar reasons, President Trump cannot claim immunity based on his status as a former President. As the established history of investigations of sitting Presidents confirms, there is no constitutional principle that would bar the compilation or release of a report detailing the conduct of a past or current President.

### B. The President-elect Does Not Need to Become a Party to this Case to Protect the Interests Asserted in the Motion for Leave to Intervene.

The Motion for Leave to Intervene also relies on the standard stated by the Seventh Circuit Court of Appeals in *United States v. Blagojevich*, 612 F.3d 558 (7th Cir. 2010), *i.e.* that "courts have permitted intervention when the potential intervenor has a legitimate interest in the outcome and cannot protect that interest without becoming a party." *See* Mot. at 3 (quoting same). The Motion for Leave to Intervene asserts that President-elect Trump has such an unprotectable interest here, but that is not so.

As an initial matter, as explained above, even if the President-elect has some interest in limiting disclosure of Volume Two of the Special Counsel's Report, he need not intervene in this criminal case against Defendants Nauta and De Oliveira to vindicate that interest. Any disclosure of Volume Two will be the result of action by the Department of Justice separate from the prosecution of Defendants. No one is asking this Court to *compel* release of the Report. If the President-elect seeks to enjoin actions by the Department of Justice, to be taken outside of the prosecution of this case, he has a remedy—a civil lawsuit against the Department seeking relief. Because the President-elect has an alternative remedy to seek to protect his interests, intervention here is not permissible.

8

Indeed, as reflected in this Court's January 13, 2025 Order, this Court does not have authority to provide the relief the President-elect seeks. *See* ECF No. 697 at 2–3. The President-elect has no criminal case pending against him. The United States moved to dismiss the appeal of this Court's dismissal of the indictment as to him, and the Eleventh Circuit granted that motion. The present case is thus closed as to the President-elect. This Court therefore has no basis to provide him with relief. There is therefore no basis to grant intervention.

## CONCLUSION

For all these reasons, this Court should deny the Motion for Leave to Intervene. The government does not object to the alternate relief sought by the President-elect, to have the Court accept his filing as amicus submission.

Respectfully submitted,

MARKENZY LAPOINTE
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

By:     /s/ *Elizabeth J. Shapiro*
ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
Special Bar ID #A5502352
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

January 16, 2025

## CERTIFICATE OF SERVICE

   I hereby certify that on January 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

               _/s/ Elizabeth J. Shapiro_
               Elizabeth J. Shapiro