UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.
    _____/

**ORDER GRANTING DEFENDANTS' EMERGENCY MOTION TO PRECLUDE RELEASE OF VOLUME II OF SPECIAL COUNSEL'S REPORT AND DENYING WITHOUT PREJUDICE PRESIDENT-ELECT TRUMP'S MOTION TO INTERVENE**

**THIS CAUSE** comes before the Court upon the Emergency Motion to Preclude Release of Volume II of Special Counsel's Report ("Emergency Motion"), filed by Defendants Nauta and De Oliveira [ECF No. 679], as well as President-Elect Trump's Motion to Intervene or Alternative Request to Participate as Amicus [ECF No. 681].[1]  As narrowed by the Court's prior Order on Volume I, which has since been publicly released [ECF Nos. 697, 702], the Emergency Motion seeks to preclude the Department of Justice ("Department")—prior to the conclusion of proceedings in this criminal action—from releasing a redacted version of Volume II of Special Counsel Smith's Report for *in camera* review by the Chairmen and Ranking Members of the House and Senate Judiciary Committees [ECF No. 712].  Volume II contains voluminous and detailed Rule

---

[1] The motions addressed in this Order were filed prior to President-Elect Trump becoming President on January 20, 2025.

16 discovery about the allegations in this criminal case, which remains pending on appeal as to Defendants Nauta and De Oliveira [ECF Nos. 672, 673]. *See* 11th Cir. Appeal No. 24-12311.[2]

Following a hearing and review of all relevant filings, including an *in camera* review of Volume II itself, Defendants' Emergency Motion is **GRANTED** as to Volume II [ECF No. 679], and President-Elect Trump's Motion to Intervene is **DENIED WITHOUT PREJUDICE** as to Volume II but granted as to the alternative, unopposed request to participate as amicus to challenge release of Volume II [ECF No. 681; ECF No. 710 p. 9; ECF No. 702 (denying motion to intervene as to Volume I)].

## PROCEDURAL AND FACTUAL BACKGROUND

1. In July 2023, now-President Trump and Defendants Nauta and De Oliveira were charged by Superseding Indictment with various charges related to the alleged retention of national defense information [ECF No. 85].

2. In July 2024, after extensive briefing and a hearing, the Court dismissed the Superseding Indictment as to all Defendants, concluding that Special Counsel Smith's appointment violated the Appointments Clause of the United States Constitution [ECF No. 672].[3]

---

[2] Nothing in this Order should be construed as a comment on, or intrusion into, the Eleventh Circuit's pending review of this Court's Order Granting Defendants' Motion to Dismiss Superseding Indictment [ECF No. 672]. 11th Cir. Appeal No. 24-12311. The parties have raised arguments concerning the authority of Special Counsel Smith to prepare or issue Volume II, but the Court has not considered those arguments in deciding the Emergency Motion, which concerns a discovery disclosure matter collateral to the appeal.

[3] The Court also determined that Special Counsel Smith's use of a permanent indefinite appropriation violated the Appropriations Clause of the Constitution but did not address the proper remedy for that funding violation [ECF No. 672].

3. Special Counsel Smith appealed the Court's dismissal Order to the United States Court of Appeals for the Eleventh Circuit [ECF No. 673]. That appeal remains pending as to Defendants Nauta and De Oliveira. *See* 11th Cir. Appeal No. 24-12311.

4. In November 2024, following the 2024 Presidential Election, the Special Counsel sought leave from the Eleventh Circuit to dismiss its appeal against President-Elect Trump. *Id.* (D.E. 79). The motion stated that dismissal as to President-Elect Trump would "leave in place the district court's order dismissing the indictment without prejudice as to him." *Id.* The Eleventh Circuit granted the motion. *Id.* (D.E. 81-2).[4]

5. On December 30, 2024, attorneys associated with the Special Counsel Office, "which initiated the criminal prosecution from which this appeal arose," moved to withdraw as counsel in the appeal. *Id.* (D.E. 84). The motion to withdraw noted that "the Special Counsel has now referred this case to the United States Attorney's Office for the Southern District of Florida, which has separately entered an appearance." *Id.*[5]

6. On January 6, 2025, Defendants Nauta and De Oliveira filed the instant Emergency Motion seeking to preclude release of both volumes of Special Counsel's Final Report [ECF No. 679]. Volume I concerns the "Election Interference Case" in the District Court for the District of Columbia, and Volume II concerns this case, the so-called "Classified Documents Case," which is the subject of the pending appeal referenced above.

---

[4] Department of Justice counsel at the January 17, 2025, hearing could not speak to the possibility of renewed charges against President-Elect Trump [Tr. 55–56].

[5] On December 30, 2024, U.S. Attorney Markenzy Lapointe of the U.S. Attorney's Office, Southern District of Florida, entered an appearance in the appeal. *Id.* (D.E. 83). U.S. Attorney Lapointe has since resigned from his position, and it appears that no attorney from the Southern District of Florida is noticed in this case or in the pending appeal. *See* https://www.justice.gov/usao-sdfl/pr/us-attorney-markenzy-lapointe-announces-resignation.

7. On January 13, 2025, after a temporary reprieve pending resolution by the Eleventh Circuit of a similar motion docketed in the pending appeal—and after additional filings by the Department affirming the severability of Volumes I and II—the Court denied Defendants' Emergency Motion as to Volume I and also denied President-Elect Trump's Motion to Intervene as to Volume I [ECF Nos. 697, 702]. The Court reserved ruling, however, on the Emergency Motion as to Volume II pending an expedited hearing [ECF No. 697]. That Order, which remains in effect pending expedited consideration and resolution of the instant Emergency Motion, temporarily enjoins Attorney General Garland, the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof [ECF No. 697].

8. A hearing on the Emergency Motion and Motion to Intervene (as narrowed to Volume II) was held on January 17, 2025 [ECF No. 713].[6] The parties, along with prospective-intervenor President-Elect Trump, presented argument on whether to grant Defendants' emergency request to preclude the Department from releasing Volume II to the Chairmen and Ranking Members of the House and Senate Judiciary Committees for *in camera* review, under proposed conditions of confidentiality [ECF No. 703 (noting that "Chair and Ranking members . . . would be required to agree to specified conditions of confidentiality," "would not be permitted to retain a copy of Volume Two, to take notes, or to bring in any devices that could

---

[6] The hearing was held publicly except for a brief session to discuss specified contents of Volume II with designated counsel.

be used to photograph or communicate about the Volume," and "would have to agree not to share information in Volume Two publicly")]. Beyond the representations of counsel, these conditions of confidentiality are not memorialized in any official documentation and are crafted in prospective terms.

9. All parties agree that Volume II (even in its redacted form[7]) expressly and directly concerns this criminal proceeding and should not be released publicly. The Court's independent *in camera* review of Volume II confirms this assessment.[8] Volume II includes detailed and voluminous discovery information protected by the Rule 16(d)(1) Protective Order entered in this case [ECF No. 27]. Much of this information has not been made public in Court filings. It includes myriad references to bates-stamped information provided by the Special Counsel in discovery and subject to the protective order, including interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand

---

[7] The Department represents that the version of Volume II it wishes to present to the Chairmen and Ranking Members of the House and Senate Judiciary Committees, absent a Court order precluding such release, "protects the secrecy of matters occurring before the grand jury subject to Federal Rule of Criminal Procedure 6(e), as well as information sealed by court order" [ECF No. 708]. As noted *infra*, Defendants maintain challenges to disclosure of Volume II on Rule 6(e) grounds.

[8] In its papers, the Department defends its position that immediate review of Volume II by members of Congress is warranted, despite the obvious risks of prejudice to Defendants from that disclosure (addressed below). Yet the Department simultaneously protests even this Court's own *in camera* review of Volume II for purposes of adjudicating the Emergency Motion as to Volume II [ECF No. 708 p. 1 (claiming *in camera* review of Volume II is "not necessary" to evaluate the prejudice to Defendants from release of Volume II to Congress)]. This objection is startling. The Court is tasked with determining whether review of substantive case information by Congress, during the pendency of a criminal proceeding, accords with Defendants' constitutional rights, applicable law, and this Court's rules. Independent judicial review of the information in question is important to make a considered determination on those matters. It is regrettable that the Department would deem it appropriate to resist this Court's *in camera* review of information directly relevant to a pending motion. The Department expressed no similar hesitation when offering to transmit Volume I for *in camera* review [ECF No. 693 p. 4 (sealed)].

jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding [ECF No. 571 (sealed); ECF Nos. 641, 656], potential Rule 404(b) evidence, and other non-public information.

10. Prior to his separation from the Department on January 10, 2025, Special Counsel Smith provided defense counsel with a limited and accelerated opportunity to review Volume II [ECF No. 690 p. 10 n.3; ECF No. 679 pp. 6–7; ECF No. 681 p. 10].[9] Among the Department's conditions for such review, defense attorneys were required to delete prior discovery productions of material protected by the protective order in this case—and thus were unable to cross-reference the report with the underlying discovery for purposes of lodging specific and meaningful objections to the Report under Fed. R. Crim. P. 6(e). Defendants maintain general objections under Rule 6(e) and request a hearing to adjudicate any contested Rule 6(e) questions [ECF No. 679 pp. 14–15].

11. Current Department counsel has secondhand information about the process by which Special Counsel Smith made redactions for Rule 6(e), but current counsel was not involved in the Special Counsel's investigation and would need additional time to access discovery databases to engage in a specific discussion of Rule 6(e) as applied to Volume II. Additionally, the Special Counsel has "referred" the criminal case to the United States Attorney's Office for the Southern District of Florida. But there appears to be no counsel of record from this District in a position, in this emergency posture, to engage in a detailed discussion of remaining Rule 6(e) material in Volume II (redacted) given new counsel's unfamiliarity with the substantial and complex factual record in this case [Tr. 36–37; 60–63 (sealed)].

---

[9] The Court also directed the Department to give defense counsel an additional opportunity to review Volume II prior to the January 17, 2025, hearing [ECF No. 705].

12. With respect to the Department's assertion of congressional interest in Volume II, there has been no subpoena by Congress for review or release of Volume II. There is no record of an official request by members of Congress for *in camera* review of Volume II as proposed by the Department in this case. There is, however, a recent letter by some of those same members urging Attorney General Garland to release Volume II *to the public* immediately, even if doing so requires dismissal of the charges as to Defendants Nauta and De Oliveira.[10] Finally, although the Department refers generally to "legislative interest" concerning special counsels as a basis to deny Defendants' Emergency Motion as to Volume II [ECF No. 703 p. 3 n.2], the Department has identified no pending legislation on the subject or any legislative activity that could be aided, even indirectly, by dissemination of Volume II to the four specified members whom the Department believes should review Volume II now.

## LEGAL STANDARDS

As a broad proposition whose force depends on the circumstances presented, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985). This authority extends to a court's enforcement of the Federal Rules of Criminal Procedure and its own local rules and orders, *see generally Degen v. United States*, 517 U.S. 820, 827 (1996), subject to any divestiture of jurisdiction over matters before a court of appeals, *see, e.g.*, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). To the extent a court in a criminal case, in the exercise of proper authority, grants relief with injunctive effect, such an order is not treated as a traditional civil injunction, *see*

---

[10] Letter from Ranking Member of House Committee on the Judiciary (Jan. 15, 2025), *available at* https://democrats-judiciary.house.gov/uploadedfiles/2025-01-15_hjc_dems_to_garland_doj.pdf.

7

Fed. R. Civ. P. 65, but rather as an order rooted in the substantive protections served by the law, rule, or order implicated in the requested relief.

In opposing Defendants' Emergency Motion as to Volume II, the Department does not challenge the Court's threshold authority to adjudicate the instant Emergency Motion. The Department also does not disagree that the harms and interests to be balanced in considering the Emergency Motion are materially the same, whether measured by the traditional civil injunction factors as framed in the Department's Opposition [ECF No. 703], or viewed more generally as an exercise of supervisory authority in a criminal case [Tr. 37].

A court has an affirmative duty, triggered at the inception of a criminal proceeding, to safeguard the due process rights of the accused. U.S. Const. amend. V; *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966)). This duty includes taking protective measures to ensure a fair trial and to minimize the effects of prejudicial pretrial publicity, even when such measures are not "strictly and inescapably necessary." *Gannett Co.*, 443 U.S. at 378. It also includes, as further rooted in the Sixth Amendment, the right to a fair trial by a panel of impartial, indifferent jurors. U.S. Const. amend. VI, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 551, 553 (1976) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

The Local Rules of this District aid in a court's fulfillment of its affirmative duty to safeguard defendants' rights. As relevant here, Southern District of Florida Local Rule 77.2 governs the release of information in criminal and civil proceedings. S.D. Fla. L.R. 77.2. It provides, in part, that lawyers involved in any criminal matter shall not:

> release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

*Id.* This principle is also embodied in the Department's Confidentiality and Media Contacts Policy as written in the Justice Manual, which among other things, directs Department personnel to "refrain from disclosing" substantive case information, including "[s]tatements concerning anticipated evidence or argument in the case," "except as appropriate in the proceeding or in an announcement after a finding of guilt." Justice Manual § 1-7.610; *see* Justice Manual § 1-7.600 ("DOJ personnel shall not make any statement or disclose any information that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding.").

Rule 16 of the Federal Rules of Criminal Procedure gives district courts authority, for good cause, to grant appropriate relief concerning discovery materials in a criminal case. Fed. R. Crim. P. 16(d)(1). As noted, Volume II contains extensive, non-public discovery materials governed by Rule 16, including large quantities of "[s]tatements concerning anticipated evidence or argument in the case." Justice Manual § 1-7.610(E).

## DISCUSSION

Never before has the Department of Justice, prior to the conclusion of criminal proceedings against a defendant—and absent a litigation-specific reason as appropriate in the case itself—sought to disclose outside the Department a report prepared by a Special Counsel containing substantive and voluminous case information. Until now. According to the Department, this *in camera* disclosure to four members of Congress is necessary right now—before the conclusion of criminal proceedings—because Attorney General Garland has "limited time" left in his tenure as the head of the Department and wishes "to comply with the historical practice of all Special Counsel," and also because there is "legislative interest in information about Special Counsel investigations, in order to consider possible legislative reforms regarding the use of special counsels"

[ECF No. 703 p. 3 n.2].[11] These statements do not reflect well on the Department. There is no "historical practice" of providing Special Counsel reports to Congress, even on a limited basis, pending conclusion of criminal proceedings. In fact, there is not one instance of this happening until now [*see* Tr. 21, 26]. During argument before this Court, counsel misleadingly referenced Congressional testimony by Special Counsel Weiss in 2023 as a purported example of such "historical practice" [Tr. 26]. But Special Counsel Weiss—after opposition by the Department—ultimately agreed to testify on limited matters, repeatedly refusing to answer questions regarding ongoing litigation in order to prevent prejudice to "the rights of defendants or other individuals involved in these matters."[12] [13] [Tr. 40–41]. Here, there has been no subpoena from Congress to the Department for Volume II. There is no indication of pending legislative activity that could be aided by the proposed disclosure of Volume II to the specified members of Congress. There is no memorialization of any conditions of confidentiality as referenced by the Department. Indeed, there has been no record provided of an official request by members of Congress for review of

---

[11] [Tr. 28 ("I think simply because it is the desire of this Attorney General to comply with the historical practice that there has always been, and his time is limited. And he appointed these Special Counsels, and he would like to see that the -- the historical practice of all Special Counsel, and his commitment to what he said that he would share with Congress is satisfied during his tenure."); Tr. 28 ("[I]t's just the Department's determination that it would like to see this through to conclusion and comply with historical practice.")].

[12] *See* Interview of: David Weiss, Committee on the Judiciary, U.S. House of Representatives, 118th Cong. p. 9 (2023), available at https://judiciary.house.gov/media/press-releases/judiciary-committee-releases-david-weiss-and-other-transcripts-relating-dojs.

[13] In connection with Special Counsel Weiss's testimony, the Department itself explained that "the most appropriate time for providing information about any individual ongoing criminal investigation is after the matter is closed, especially where the matter is pending before a court and subject to judicial supervision, and legal and ethical bars limit what the Department can say." Letter from Carlos Felipe Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 22, 2023).

Volume II in the manner proposed by the Department.[14] To the contrary, some of the same members to whom the Department wishes to present Volume II have urged Attorney General Garland to release Volume II *to the public* immediately, even if doing so requires dismissal of the charges as to Defendants Nauta and De Oliveira. *Supra* n.10. In short, the Department offers no valid justification for the purportedly urgent desire to release to members of Congress case information in an ongoing criminal proceeding.

Meanwhile, on the other side of the balance, there are two individuals in this action, each with constitutional rights to a fair trial, who remain subject to a live criminal appeal of this Court's Order Dismissing the Superseding Indictment. 11th Cir. Appeal No. 24-1231. The Department has not sought leave to dismiss that appeal, initiated by the Special Counsel, and there has been no indication by any government official in this case that the Department will not proceed on the Superseding Indictment should it prevail in the Eleventh Circuit or in subsequent proceedings.[15] These Defendants thus retain—as all parties agree—due process rights to a fair trial that would be imperiled by public dissemination of Volume II. Yet the Department nevertheless insists upon disclosure of Volume II to members of Congress now, promising that conditions of confidentiality, "contingent on their good faith commitment," will protect against the potential for prejudice [ECF No. 703 p.5]. And if Volume II gets released in whole or in part to the public in contravention of those promises, the Department assures, then Defendants need not worry because this Court

---

[14] Special Counsel Smith left no indication in his report or in his transmittal letter to Attorney General Garland that he favored congressional release or review of his report prior to conclusion of criminal proceedings [ECF No. 693-1 p. 5].

[15] The only motion for leave the Special Counsel did file, as to President-Elect Trump, referenced "leav[ing] in place the district court's order dismissing the indictment without prejudice as to him." Counsel during the hearing was unable to answer whether the Department has foreclosed reinitiating criminal charges against President-Elect Trump after he leaves office.

can "cure" any damage caused by crafting jury instructions in the future and/or dismissing the charges [ECF No. 703 pp. 5–6]. These assertions flounder on multiple levels and do nothing to detract from the obvious. Given the very strong public interest in this criminal proceeding and the absence of any enforceable limits on the proposed disclosure, there is certainly a reasonable likelihood that review by members of Congress as proposed will result in public dissemination of all or part of Volume II. *See* S.D. Fla. L.R. 77.2(a). That reasonable likelihood risks substantial prejudice to the due process rights of Defendants, who remain subject to the protective order in this case [ECF No. 27]. This Court lacks any means to enforce any proffered conditions of confidentiality, to the extent they even exist in memorialized form. And most fundamentally, the Department has offered no valid reason to engage in this gamble with the Defendants' rights. The bare wishes of one Attorney General with "limited time" in office to comply with a non-existent "historical practice" of releasing Special Counsel reports in the pendency of criminal proceedings is not a valid reason. And surely it does not override the obvious constitutional interests of Defendants in this action and this Court's duty to protect the integrity of this proceeding. Even less clear is why the Department would defend this position notwithstanding its own Justice Manual, which expressly directs against disclosing substantive case information in a criminal case "except as appropriate in the proceeding or in an announcement after a finding of guilt." Justice Manual § 1-7.610; *see also* Model Rules of Pro. Conduct, r. 3.8 (Am. Bar Ass'n 2024) ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate . . . .").

Accordingly, under any balancing of relative harms and interests, Defendants' Emergency Request to Preclude Dissemination of Volume II must be granted. Whether measured against the traditional factors pertinent to a civil injunction as framed incorrectly by the Department or treated properly as an exercise of supervisory control over the flow of substantive, nonpublic information

to protect Defendants' rights in a criminal case, the balancing of harms and interests yields a clear and decisive answer in the present posture. Release of Volume II to Congress under the proposed conditions—without any enforcement mechanism to prevent public dissemination, and without any valid countervailing reason justifying a break from traditional norms—presents a substantial and unacceptable risk of prejudice to Defendants.

***

Prosecutors play a special role in our criminal justice system and are entrusted and expected to do justice. *Berger v. United States*, 295 U.S. 78, 88 (1935); *Banks v. Dretke*, 540 U.S. 668, 696 (2004); Robert H. Jackson, Attorney General of the United States, Speech to the U.S. Department of Justice, The Federal Prosecutor (Apr. 1, 1940), available at https://www.justice.gov/ag/speeches-attorney-general-robert-houghwout-jackson. The Department of Justice's position on Defendants' Emergency Motion as to Volume II has not been faithful to that obligation.

**CONCLUSION**

1. Defendants' Emergency Motion [ECF No. 679] is **GRANTED** as to Volume II, consistent with this Order.

2. Attorney General Garland or his successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, are enjoined from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof.

3. This Order remains in effect pending further Court order, limited as follows. No later than **thirty days** after full conclusion of all appellate proceedings in this action and/or any continued

proceedings in this Court, whichever comes later, the parties shall submit a joint status report advising of their position on this Order, consistent with any remaining Rule 6(e) challenges or other claims or rights concerning Volume II, as permitted by law. Any disagreements between the parties can be denoted separately.

4. President-Elect Trump's Motion to Intervene as to Volume II [ECF No. 681] is **DENIED WITHOUT PREJUDICE**, to be reasserted if warranted as permitted by law. The Court **GRANTS** President-Elect Trump's alternative unopposed request for amicus participation on the Motion as to Volume II.

**ORDERED** in Chambers at Fort Pierce, Florida, this 21st day of January 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record