IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,               ) | |
|          *Plaintiff,*              ) | |
|           ) | **Case No. 23-cr-80101- CANNON** |
| v.              ) | |
|           ) | |
|           ) | |
| WALTINE NAUTA, and              ) | |
| CARLOS DE OLIVEIRA,              ) | |
|           ) | |
|          *Defendants.*              ) | |

**OPPOSITION BY DEFENDANTS WALTINE NAUTA AND CARLOS DE OLIVEIRA TO MOTIONS TO INTERVENE BY AMERICAN OVERSIGHT AND THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY**

Defendants Waltine Nauta and Carlos De Oliveira respectfully submit the following opposition to (a) American Oversight's February 14, 2025 Expedited Motion to Intervene and for Clarification or, Alternatively, Dissolution of January 21, 2025 Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's Report (ECF No. 717); and (b) the February 24, 2025 Motion by The Knight First Amendment Institute at Columbia University ["Knight Institute"] to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report (ECF No. 721).

On February 18, 2025, the Court declined expedited or emergency treatment of American Oversight's Motion (ECF No. 718), noting that this Court's January 21, 2025 Order (ECF No. 714) directed the parties to file "a joint status report advising of their position on this Order no later than thirty days after full conclusion of all appellate proceedings in this action and/or any continued proceedings in this Court, whichever comes later." The United States Court of Appeals for the Eleventh Circuit dismissed the Government's appeal in appellate case number 24-12311

1

as to President Trump on November 26, 2024 (11th Cir. ECF No. 81), and it granted the Government's motion to dismiss the appeal as to remaining defendants Waltine Nauta and Carlos De Oliveira on February 11, 2025. The parties' joint status report and this opposition to prospective intervenors' motions are being filed concurrently on March 14, 2025, pursuant to the Court's February 28, 2025 Order (ECF No. 726).

American Oversight and the Knight Institute should not be permitted to intervene. Intervention is a privilege that this Court recently denied even as to President Donald J. Trump as a former codefendant in this case, opting instead to grant him *amicus* status (*see* ECF No. 714 at 14). The Court similarly declined to grant intervenor status to a long list of press organizations seeking access to sealed filings and proceedings in this case, instead granting them *amicus* status (*see* ECF Nos. 353, 355, 370). American Oversight and the Knight Institute should fare no better, and neither asks to be granted *amicus* status in the alternative.

I. **Prospective Intervenors' Motions Should Be Denied on Procedural Grounds.**

   A. **American Oversight's Motion Warrants Dismissal on the Ground of Mootness.**

   As a threshold jurisdictional matter, American Oversight's motion to intervene is moot, and thus nonjusticiable under Article III of the Constitution, because there remains no meaningful relief that can be granted to American Oversight. *See, e.g., Everglades v. South Florida Water Management Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) ("An issue is moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.' ... To decide a moot issue is to issue an advisory opinion, one unnecessary to the judicial business at hand and outside the authority of Article III courts.") (internal citations omitted).

American Oversight sought intervention on the limited and expedited basis that Volume II was needed to enable full evaluation by Congress and the public of the nomination of Kash Patel as Director of the FBI during Mr. Patel's Senate confirmation proceedings "before that vote happens." DE:717:2 ("Volume II contains information of critical and urgent importance to the public *regarding Kash Patel*, President Trump's nominee for Director of the Federal Bureau of Investigation ("FBI").  In a matter of days, the U.S. Senate is expected to vote on Patel's confirmation.  *The American people and their Senators, who have repeatedly demanded the release of the report—have a right to know the non-exempt information relating to Patel's involvement in the classified documents investigation before that vote happens.*") (emphasis added).  *See also* DE:717:7 ("[I]nformation relating to Patel's reported testimony before the grand jury relating to President Trump's potential mishandling of highly classified documents *is of significant interest to the public and the senators who are charged with providing 'advice and consent' on federal nominees in the confirmation process*.") (emphasis added).

Given the confirmation, on February 20, 2025, of Mr. Patel as FBI Director, and in light of American Oversight's failure to articulate in its motion any other meaningful reason for its request for relief, this Court should deny American Oversight's motion to intervene as moot. *See Everglades v. South Florida Water Management Dist.*, 570 F.3d at 1216*; see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) (recognizing that a case becomes non-justiciable and must be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (a case becomes moot if, while a case is pending, an event occurs precluding the grant of effectual relief). *See also Miccosukee Tribe of Indians v. United States*, Case No.

3

04–21448–civ–Gold, 2010 WL 11442638, at **2, 3 (S.D. Fla. 2010) (ruling that motion to intervene was moot as a matter of law where no meaningful relief could be afforded to movant).

> B. **Prospective Intervenors Are Not Entitled to the Work Product of an Unconstitutional Prosecutor.**

This Court has ruled that the purported Special Counsel, Jack Smith, was improperly appointed and funded in violation of the United States Constitution. As a consequence, Smith lacked authority to investigate and prosecute the defendants in the underlying, now-dismissed criminal proceedings. This ruling, having been resolved pursuant to a dismissal of the appeal proceedings, is now the law of the case. *See, e.g.*, *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (pursuant to the law of the case doctrine, "[a]n appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal."). As to Nauta and De Oliveira and their assertion of rights in this matter, therefore, it is the law of this case that the individual who prepared Volume II was unconstitutionally appointed and the appropriations used to prepare Volume II were expended in violation of the Constitution. Movants' claimed right of intervention is thus premised on a supposed Congressional and public right to information gathered and prepared by an unauthorized individual pursuant to a wholly illegitimate investigation. There is no entitlement to the disclosure of a one-sided report prepared in derogation of the law and the Constitution. The proposed intervenors have cited no authority in support of such a proposition and have, instead, effectively ignored the constitutional violations that have led to the creation of the Report in the first instance.

There is no entitlement to the disclosure of a one-sided report, containing grand jury and privileged material, that was prepared in derogation of the law and the Constitution, and the proposed intervenors have cited no authority in support of such a proposition, which is devoid of

historical or structural precedent. *Cf. PG Pub. Co. v. Aichele*, 705 F.3d 91, 107(3d Cir. 2013) (ruling publisher lacked right of access to voting process, based on consideration of lack of historical and structural support, under "experience and logic" test of *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555 (1980); "Where both historical and structural considerations militate against a presumption of openness, the press and public enjoy no constitutionally protected right of access. In such cases, the words of Justice Stewart ring true: The press and public 'must rely, as so often in our system we must, on the tug and pull of the political forces in American society.'") (internal citation omitted). *See also Delaware Coalition for Open Government, Inc. v. Strine*, 733 F.3d 510, 514 (3d Cir. 2013) ("[W]e have declined ... to extend the right of [public] access to the proceedings of judicial disciplinary boards, the records of state environmental agencies, deportation hearings, or the voting process").

    C.    **Intervention Should be Denied as Untimely.**

The Knight Institute's motion is untimely, having been made two months after Nauta and De Oliveira's filing of their motion to enjoin release of Volume II and this Court's consideration of that motion, including at a public hearing, and ensuing ruling on the motion. Having chosen not to seek intervention in those proceedings (much less the original or appellate proceedings on the impropriety of the prosecutorial pursuit by Jack Smith), the proposed intervenors have waived any basis to do so at this late date. *See, e.g., Miccosukee Tribe*, 2010 WL 11442638, at 2 & n.6 (denying motion to intervene as untimely in circumstances where movants—who bear the burden to establish the right to intervene—were "aware of their interests" earlier in the proceedings yet chose not to seek intervention at that earlier time). The prejudice to Nauta and De Oliveira, were movant permitted to intervene as this belated stage, would be significant.

Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timelines. *Commissioner, Ala. Dep't of Corrections v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) ("*Advance Loc. Media*").

These factors counsel against intervention here. Proposed intervenors have long been aware of their interest in the case and should have intervened back in January; indeed, the Attorney General's office then did not represent proposed intervenors' interests as it was seeking only release to Congress and not to the public. Existing parties will suffer substantial prejudice as a result of the delay that will require *criminal defendants whose case has been dismissed* to spend additional time and money litigating this issue to block release of a highly prejudicial, defamatory, and illegally prepared special counsel report. There is no public right of access to privileged, evidentiary material in an illegally prepared special counsel report, so there is no prejudice to proposed intervenors that will result. The unusual circumstances here, where the Special Counsel was unconstitutionally appointed, weigh against a determination of timeliness.

**II.     Prospective Intervenors Lack Standing and Should Not be Permitted to Litigate Their FOIA Actions Before This Court.**

The Federal Rules of Criminal Procedure do not provide for third-party intervention in criminal cases. *United States v. Atesiano*, Case No.18-20479-CR, 2018 WL 5831092, at *5 (S.D. Fla. 2018). "Intervention is generally limited to those instances in which a third party's

constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *Id*. Examples include intervention by the press where a court seals criminal proceedings, and intervention to prevent the disclosure of privileged information. *Id*. (citing cases). The *Atesiano* court distinguished "offensive" intervenors, who should not be permitted to intervene, from "defensive" intervenors who perhaps should. Offensive intervenors include civil litigants improperly seeking discovery to support their civil actions. Defensive intervenors include members of the press seeking access to court records and parties seeking to protect lawful privileges. *Id*. at 8-9.

Movants argue, essentially, that they deserve Intervenor status because their access rights to government documents under the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552, *et seq*., are federal rights implicated by this Court's standing Order precluding release of Volume II of the Special Counsel's Report. However, prospective intervenors fail to cite a single case in support of the proposition that an unrelated third party has standing to intervene in a closed criminal case in order to facilitate their FOIA litigation in another district. Indeed, many of their cited cases involve courts denying, not granting, motions to intervene in criminal cases. *See, e.g.*, *Atesiano*, 2018 WL 5831092, at *4 (denying intervention in a criminal case by a civil litigant seeking discovery in a related civil lawsuit); *United States v. Cox*, Case No.8:14-cr-0140, 2015 WL 13741738 (M.D. Fla. 2015) (Magistrate Judge recommendation to deny intervention by a defunct company owned by a criminal defendant to assert attorney-client privilege over witness statements in the owner's criminal case); *United States v. Hamdan*, 2021 U.S. Dist. LEXIS 39599 (E.D. La. 2021) (denying intervention by the court's own clerk's office to defend its jury selection process); *United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) (denying intervention by the New York Civil Liberties Union seeking classified pleadings in a CIPA terrorism case). Even *In*

*re Petition of the Trib.Co.*,784 F.2d 1518 (11th Cir.1986), which the Knight Institute describes as "permitting a newspaper publisher to intervene post-trial in criminal proceeding in order to obtain transcripts of bench conferences" (ECF No. 721 at 9) focused instead on affirming a district court's refusal to release sealed transcripts. Nor are bench conferences during a public trial remotely comparable to the pretrial, investigatory materials encompassing protected grand jury and privileged matters (and matters arising from seizures defendants challenged as unconstitutional), and particularly not where such material was selected and prepared by an unauthorized, unconstitutionally-appointed and unconstitutionally-funded individual as here.

American Oversight and the Knight Institute are not media organizations, and they deserve less, not more, privilege than the legitimate press entities to which this Court already declined to grant intervenor status. They are more akin to the "offensive" intervenors discussed in *Atesiano* and are undeserving of the limited exception that might allow press organizations to intervene. American Oversight describes itself as "a non-partisan nonprofit committed to promoting transparency and ensuring accountability of government officials" (ECF No. 717 at 1). On its website, however, it states, "We were founded in 2017 in response to the unprecedented challenges that the Trump administration posed to our nation's democratic ideals and institutions."[1] Its "Investigations & Topics" webpage describes a long list of anti-Trump efforts, including "Donald Trump and Elon Musk's Illegal Dismantling of USAID," "Trump's Hostile Takeover of the National Archives – and our Nations's History," "Anti-Immigrant Rhetoric and Election Denialism," and the like. To its credit, the Knight Institute, at least at first glance, appears to take its "non-partisan" descriptor more seriously and actually lists its Board and staff members on its website (unlike American Oversight).[2] Nonetheless, neither

---

[1] American Oversight, "About", available at https://americanoversight.org/about/.
[2] Knight First Amendment Institute at Columbia University, available at https://knightcolumbia.org/.

organization is or claims to be a media organization, and neither should be permitted to intervene in this closed criminal case to obtain access to a record that, as discussed below, is very different from the typical sealed motion or hearing transcript that is the subject of a press intervention motion.

The issue properly before this Court is whether it should rescind its January 21, 2025, Order in light of the Eleventh Circuit's dismissal of the Government's appeal. For the reasons stated by Mr. Nauta and Mr. De Oliveira in the concurrently filed joint status report, the answer to that question is no. The Government might later argue that the case was dismissed without prejudice, and that Jeopardy therefore remains for all three defendants. Volume II of the Special Counsel's Report (which should not have been created by an unconstitutional official in the first place) is a lengthy, one-sided diatribe about a complex investigation that includes confidential information protected by Fed. R. Crim. P. 6(e), Local Rule 77.2, and other protections against further unjust damage to defendants' reputations. As this Court has recognized, Volume II contains "extensive, non-public discovery materials governed by Rule 16, "including large quantities of '[s]tatements concerning anticipated evidence or argument in the case.'" DE:714:5. To allow the public airing of such confidential discovery, which also includes large amounts of grand jury and privileged matter, would improperly further a one-sided, biased narrative prepared by an unauthorized and illegitimate individual as to which fundamental fair trial rights, including the rights of confrontation and of due process, would be wholly absent and unavailable, to the overwhelming and irreparable prejudice of Nauta and De Oliveira. Any opportunity to respond would thus be constricted unfairly and without the benefit of normal constitutional protections afforded to criminal defendants. Moreover, the reliability of the

information is deeply questionable, where Volume II was prepared by an unauthorized individual.

Defendants remain bound by the Court's Rule 16 Protective Order prohibiting them from publicly defending themselves. From what defense counsel can discern, none of the individuals involved in the Report's creation, and who have the historical understanding necessary to even litigate confidentiality issues, even remain at the Justice Department, leaving the U.S. Attorney's Office for the Southern District of Florida to address the disarray left by the unauthorized Special Counsel. For all of these reasons, the Court should retain control over the Report's ultimate disposition.

Conversely, the merits of FOIA demands by American Oversight and the Knight Institute are not properly before this Court, and those non-parties should not be permitted to intervene in order to bootstrap their FOIA litigation into this closed criminal case. Both entities submitted FOIA demands to DOJ, which denied the demands because this Court's Order precluded them from releasing the Report. American Oversight sought an order from the United States District Court for the District of Columbia compelling the Justice Department to release non-exempt portions of the Report pursuant to American Oversight's FOIA demand. *See American Oversight v. U.S. Dept. of Justice*, D.D.C. Case No. 1:25-cv-00383 at ECF Nos. 1-2. That Court denied American Oversight's request because this Court's Order prohibited the Justice Department from releasing the Report "in no uncertain terms" (D.D.C. ECF No. 11 at 13).[3] American Oversight and the Knight Institute may resubmit their FOIA requests for the Justice Department, or seek

---

[3] Unlike American Oversight, the Knight Institute apparently did not even bother appealing DOJ's denial of its FOIA demand to the United States District Court for the District of Columbia, as provided for by FOIA at 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant….").

reconsideration of their earlier demands depending on what this Court decides with respect to its January 21, 2025 Order. They may appeal to the U.S. District Court for the District of Columbia whatever position the Justice Department takes with respect to releasing all or part of the Report. They do not, however, deserve intervenor status in this case—which the Court declined to extend to President Trump and to several media organizations—and they are not equipped to opine, given their lack of familiarity with this case and with the Report itself.

### III. Intervention is Inappropriate Because the Special Counsel's Report is Not a Judicial Record.

While members of the public generally are allowed to intervene to seek access to judicial records, proposed intervenors here seek to broaden that general rule to seek access to an illegally prepared executive branch document that does not fall under the right of access to judicial records. The "right of access is not absolute" and "does not apply to discovery." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Relatedly, judicial "[d]ecisions less central to merits resolutions implicate lesser right-to-access considerations." *Id*. (citation omitted). The Special Counsel's Report here is *wholly* unrelated to the merits of the case, and the public already has access to this Court's *decision* on why the release of the Report was inappropriate. The Report itself, however, is not a judicial record to which members of the public may intervene in order to seek access. The Special Counsel's Report was never filed as part of the public record, and it was only submitted to this Court on an *ex parte*, *in camera* basis for the sole purpose of this Court's enjoining its improper release. It is absurd to suggest that by invoking a Court's powers to keep a document private, a document must become public. *See Pepsico Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) (Easterbrook, J.) (discussing right of access in context of trade secret cases, and observing that "legitimate trade secrets should be protected from disclosure" because "[d]isclosing the secrets to the world is not an appropriate

11

price for enjoining one person's use of them"). But that is the extent of proposed intervenors' arguments here: if a party invokes a court's powers to keep a document private that should be private, then in so doing, the party effectuates public release of the document. Intervenors here seek to function as private prosecutors, continuing to prosecute in the court of public opinion the case that has been dismissed in this Court due to the unconstitutional appointment of Jack Smith.

## IV. The Dismissal of the Appeal Does Not Divest the Court of Its Supervisory Authority.

In granting defendants' motion to preclude the release of the Report, the Court exercised its supervisory authority "to protect the integrity of the federal courts, and to deter illegal conduct by government officials" (ECF No 714 at 7 (*quoting United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985))). The Court explained its affirmative duty to safeguard the Fifth Amendment due process rights of the accused, and their Sixth Amendment right to a fair trial in a criminal case then pending appeal. *Id*. at 8. It also noted its obligation under S.D. Fla. L.R. 77.2 not to allow the release of information where "there is a reasonable likelihood that such dissemination will interfere with a fair trial *or otherwise prejudice the due administration of Justice*." *Id*. at 8 (emphasis added). The Court also noted its authority to grant appropriate relief concerning discovery materials in a criminal case under Fed. R. Crim. P. 16, and that the Report "contains extensive, non-public discovery materials governed by Rule 16, including large quantities of '[s]tatements concerning anticipated evidence or argument in the case.'" *Id.* at 9 (quoting Justice Manual § 1-7.610(E)).

While the Eleventh Circuit has dismissed the appeals, nothing has changed for the reasons articulated in the Joint Status Report with respect to the nature of the Special Counsel's Report, its extensive inclusion of information protected by Rules 6(e) and 16, attorney-client privilege, or the Court's interest in preventing disclosures that would severely prejudice

defendants and interfere with the due administration of justice. The Court retains supervisory authority over the discovery materials in this case, and it has the same obligation to protect Mr. Nauta and Mr. De Oliveira from the release of a report containing information they are prohibited from effectively responding to.

**V. The Report is Not Subject to First Amendment or Common Law Right to Access.**

Unlike the common situation, including in this case, where members of the public seek access to sealed court proceedings, unredacted transcripts, and similar "judicial records," the movants in this case seek access to an unprecedented one-sided report by an unconstitutional prosecutor and his unauthorized staff that contains, as the Court stated in its January 21, 2025 Order (ECF No. 714):

> … detailed and voluminous discovery information protected by the Rule 16(d)(1) Protective Order entered in this case [ECF No. 27]. Much of this information has not been made public in Court filings. It includes myriad references to bates-stamped information provided by the Special Counsel in discovery and subject to the protective order, including interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding [ECF No. 571 (sealed); ECF Nos. 641, 656], potential Rule 404(b) evidence, and other non-public information.

Courts, including the Eleventh Circuit, have held that discovery materials not admitted at trial are not subject to public disclosure. *See Atesiano* at 10-11 (citing cases). It is inconceivable, then, that proposed intervenors or the public have a right to see the biased ramblings of an unconstitutional prosecutor who had at least one federal grand jury at his disposal to coerce evidence and witness testimony to the severe reputational prejudice of Mr. Nauta and Mr. De Oliveira, who have been convicted of nothing, and who are precluded from publicly defending themselves. The fact that the Report was the subject of a hearing on January 17, 2025 leaves proposed intervenors in no better position. The Report was never intended to be evidence in the

case and was never introduced at a hearing or at trial. Even assuming that the Court retained the copy of the Report that it reviewed *in camera* (and there is no evidence that is the case), the Court's mere review—for the sole purpose of determining whether to allow its public release—does not magically render the document a public record that must be released. To argue otherwise would be absurd. For example, discovery materials are often submitted to a court in litigation over the scope of a protective order. If a court finds that the discovery materials warrant a broad protective order, then the protective order becomes part of the public record but the discovery materials stay private unless and until they are used at trial or attached to a motion to suppress. The public's right of access "attaches only to 'items which may properly be considered public or judicial records'—not to any and all materials produced during discovery—and it can be outweighed by competing interests." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021). Even when the public's right of access attaches, it is 'not absolute." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Courts must balance "the asserted right of access against the other party's interest in keeping the information confidential." *Romero*, 480 F.3d at 246.

A court weighing these competing interests will consider a "number of important questions, including 'whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." Courts likewise should consider "whether the records are sought for such illegitimate purposes as to promote public scandal." *Advance Loc. Media*, 918 F. 3d at 1169.

These factors clearly weigh against access. First, release of the Special Counsel Report would impair court functions and harm privacy interests. This is a Report that was prepared *following* this Court's dismissal of the Special Counsel as unconstitutionally appointed. If notwithstanding the Court's clear ruling, a disqualified Special Counsel may continue to access classified materials and to abuse the grand jury process to improperly release a host of prejudicial and confidential information to the public, then the Court's functions are clearly impaired. This Report was prepared by an unconstitutional prosecutor who had no business being in the grand jury room due to his unconstitutional appointment. The entire case is the result of illegal investigation; for Smith, post-disqualification, to be able to publicly release his version of the facts would cause significant harm to Nauta and De Oliveira.

Release would also harm legitimate privacy interests of Mr. Nauta and Mr. De Oliveira, by sharing with the public at large a one-sided Report of confidential and prejudicial information that may never have been admissible at trial. The degree and likelihood of the injury to Nauta and De Oliveira is substantial if this Report is released to the public. The Report will be shared widely; it contains confidential discovery material and evidence that was unconstitutionally obtained. Nauta and De Oliveira moved to suppress such evidence at trial and it would be improper for this Court to release it now. The Report carries the imprimatur of government authority but in fact was prepared by an unconstitutional prosecutor, further contributing the harm that would be suffered.

Third, the information in the Report is highly unreliable. It presents an entirely one-sided view of the circumstances and facts surrounding the charges in this case. The facts in the Report are presented out of context and the allegations in the Report have not been tested in court. Introducing these unproven and unreliable allegations into the public domain would be improper.

Fourth, Mr. Nauta and Mr. De Oliveira are limited in their ability to respond. Responding to each and every allegation in the Report would essentially be akin to defending the case at trial. Moreover, the Report, as this Court recognized, includes myriad reference to discovery. In addition to the issue already mentioned, that discovery materials are ordinarily private, Nauta and De Oliveira would be required to continue accessing discovery to adequately respond to the unfounded and untrue allegations in the Report. The discovery in this case was massive and is stored on a database; it will cost Mr. Nauta and Mr. De Oliveira money to continue to access it, and it is unreasonable to ask them to now expend funds to defend against an unconstitutional and dismissed prosecution. Additionally, it is likely that counsel would need security clearances to access portions of the discovery, further illustrating the hurdles posed in responding. As a result of these hurdles, immediate response will be difficult if not impossible—and it is unlikely that a response could ever mitigate the harm created by release of the Report.

The Special Counsel's Report was prepared by a disqualified public official; it was illegally prepared and thus cannot be deemed a matter of public concerns. Mr. Nauta and Mr. De Oliveira are civilian casualties of this unconstitutional prosecution. There is no less restrictive alternative to keeping the document private; this Court has already identified the reasons that redaction is inappropriate.

Proposed intervenors seek to act as private prosecutors, and to generate public scandal and bad press against President Trump. This is an improper reason to seek access to a Report that never became part of the record in this case and that was only submitted to this Court so that this Court could review the highly confidential grand jury and discovery materials it references to determine that closure was appropriate. Closure was appropriate in January, and it remains appropriate now. The requests for intervention and access should be denied.

## CONCLUSION

The Court should decline to grant American Oversight and the Knight Institute intervenor status in this case to opine about the release of a lengthy and unauthorized Report that they have not read in a case where they could not possibly understand the details of the Government's investigation or the scope of the information in the Report that is protected by Federal Rules and privileges and directly implicates defendants' due process rights. Even if the Court decides to grant intervenor status, it should exercise its supervisory authority to maintain its January 25, 2025, Order and prevent the disclosure of the Report.

Dated: March 14, 2025            Respectfully submitted:

/s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
klughlaw@gmail.com

s/ Jenny Wilson
Jenny Wilson
Fla. Bar No. 1031758
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
jw.klughlaw@gmail.com

*Counsel for Defendant Waltine Nauta*

/s/ John S. Irving, IV
John S. Irving, IV (pro hac vice)
E&W LAW, LLC
1455 Pennsylvania Ave NW, Ste 400
Washington, DC 20004
(301) 807-5670 (telephone)
john.irving@earthandwatergroup.com

/s/ Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
L.D. MURRELL, P.A.
400 Executive Center Drive, Ste 201
West Palm Beach, FL 33401
(561) 686-2700 (telephone)
ldmpa@bellsouth.net

*Counsel for Defendant Carlos De Oliveira*