**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

**UNITED STATES OF AMERICA,**

Plaintiff,

vs.

**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA,**

Defendants.
_______________________________________/

FILED BY MCO D.C.
OCT 07 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**SECOND MOTION TO INTERVENE AND SEEK CLARIFICATION OF COURT'S ORDER AT DOCKET ENTRY 779**

1. The following motion is identical in substance to the motion submitted on September 24, 2026, at Docket Entry ("DE") 806. In light of the Court's Order at DE 808, this filing includes a complete Certificate of Conference, in accordance with Southern District of Florida Local Rule 88.9(a).

2. Undersigned counsel represent multiple current and former Federal Bureau of Investigation ("FBI") agents and analysts (collectively, "Clients") who participated in the investigation and prosecution of the unlawful retention of classified documents and national defense information by then-citizen and former President Donald J. Trump at his South Florida resort, club, and residence known as "Mar-a-Lago" ("the classified documents case"). Clients include persons who participated in the search warrant drafting, planning, and execution at Mar-a-Lago on August 8, 2022.

3. The government recently requested—and now, in some cases, subpoenaed—specific Clients to provide non-public information about the classified documents case to

individuals outside the Department of Justice ("DOJ"). On behalf of all Clients, counsel submit this motion to seek clarification of this Court's February 23, 2026 Order in *United States v. Trump, et al.*, 9:23-cr-80101-AMC (S.D.F.L.), at DE 779 (the "Order").[1] Specifically, Clients seek to confirm that they can freely discuss non-public information related to their work on the investigation with individuals outside of the DOJ, including but not limited to a federal grand jury and Client's own counsel, without running afoul of the terms of the Order.

4. Undersigned counsel have diligently engaged in a good faith effort to resolve this issue without court intervention. In response to concerns raised by undersigned counsel, DOJ indicated it would not proactively seek clarification and instead asserted that its work "does not disturb" the Order. DOJ failed to provide any factual explanation or legal authority to support this assertion. Nor did DOJ provide an explanation for how this position could be reconciled with its prior position, described below, that testimony by a former government employee in response to a subpoena about non-public information would violate the Order. DOJ instead advised undersigned counsel to "simply file [for] whatever relief you [] deem appropriate," adding that it "will answer accordingly." Upon a separate request for clarification of its position as to the relief sought by this motion, DOJ indicated it "take[s] no position" on the relief sought "and will respond accordingly."

## LEGAL BASIS FOR INTERVENTION

5. Clients have a compelling personal interest in clarifying the terms of the Order and accordingly intervene for the limited purpose of seeking such clarification.[2] While courts

[1] Undersigned counsel can confirm that other individuals will be similarly situated and intend for any relief granted here to be broadly applicable to any other person to whom the Order applies.

[2] This Court previously held that it maintains jurisdiction over issues related to the entry of the Order. *See* Order, p. 7, n.4 ("The Court notes that there is no pending notice of appeal that divests this Court of jurisdiction to enter this Order."). There appears to be no recorded objection by any party as to the Court's interpretation of its jurisdiction.

generally exercise caution before allowing non-party intervention in criminal cases given the absence of a directly applicable Federal Rule of Criminal Procedure, courts in the Eleventh Circuit have allowed non-party intervention to protect concrete interests. *See, e.g.*, *United States v. Couch*, 906 F.3d 1223, 1227 (11th Cir. 2018) (allowing intervention in criminal forfeiture proceedings to claim statutory property interest); *United States v. Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) (noting that "as a general proposition," a party adversely affected by disclosure of grand jury material in alleged violation of Fed. R. of Crim. Pro. 6(e) should be allowed to intervene in pending criminal case to bar release of grand jury material and remanding for further analysis). Here, Clients have a concrete interest in clarifying the application of the Order to their upcoming grand jury testimony. Indeed, since the Order applies to them, they are not in the typical position of "non-parties."

6. As described below, without clarification, Clients will be forced to testify unsure of whether the Order allows them to answer questions with information contained in Volume II of the Final Report of Special Counsel Jack Smith ("Volume II"). They are likely to be asked questions pertaining to information in Volume II of the report, which may or may not fall within the scope of the Order, forcing them to make the difficult choice between: (1) possible contempt of the Order; (2) not providing full, unconstrained testimony to the grand jury in order to comply with the terms of the Order; or (3) invoking their Fifth Amendment right not to incriminate themselves. The first two options bear possible punitive consequences, while the third creates unnecessary negative optics for innocent former federal civil servants who are said to be witnesses yet may be perceived as withholding information simply due to the need to protect themselves from being held in contempt. The fact that the subpoenas for Clients' testimony also place them in imminent risk of being forced to testify with less than full access to the advice of counsel

compounds the potential exposure. Additional explanation of the coverage of the Order would allow Clients to consult counsel in advance of their testimony and to better understand their rights and obligations to this Court and to the grand jury. Clients thus possess "an injury in fact that is concrete, particularized, and . . . imminent," that imminent injury is "likely caused by" DOJ, which has pursued issuing the subpoenas while simultaneously refusing to provide factual or legal support for their interpretation of the Order, and Clients' "injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

## FACTUAL BACKGROUND

7. Between July and August 2026, undersigned counsel were contacted by representatives of the FBI's Miami Field Office in order to schedule "voluntary interviews" of five specific Clients in support of what was described as an ongoing criminal investigation in this district related to purported violations of 18 U.S.C. §§ 241 and 242, Conspiracy Against Rights and Deprivation of Rights Under Color of Law, respectively. After brief email correspondence, several of the undersigned counsel held a video call with the assigned prosecutor for the government, Assistant United States Attorney ("AUSA") for the Southern District of Florida Michael Nieman, and one of the investigating case agents, who is also the Assistant Special Agent in Charge ("ASAC") at the FBI's Miami Field Office. Relevant to this motion, the parties discussed the expected timing of the voluntary interviews and the scope of the information to be conveyed in these interviews. AUSA Nieman also explained that he categorized at least one of those Clients as a "witness," though it is unclear what status the balance of undersigned counsel's Clients hold with the government.

8. Broadly, the government indicated during the call that Clients would be expected to testify about their work on the classified documents investigation beginning from the date the matter was referred to the FBI, up through and including the execution of the search warrant. In initial conversations, the government indicated that it intended to first request a voluntary interview with Clients in Fort Pierce, Florida. The day after the voluntary interview, each respective Client would testify before a federal grand jury empaneled in Fort Pierce in connection with an investigation into an alleged "grand conspiracy" against President Donald Trump, within which the FBI's investigation of his retention of classified documents purportedly fits.[3]

9. On Friday, September 18, 2026, counsel received an email from the FBI ASAC indicating that grand jury subpoenas would be served imminently. On Monday, September 21, 2026, two specific Clients received grand jury subpoenas for testimony in front of the Fort Pierce grand jury.[4] One individual was subpoenaed for testimony during the week of September 28, 2026; two others (including an individual represented by separate counsel) have been scheduled for the following week.

10. Undersigned counsel had previously, on multiple occasions, communicated to the government their belief that the disclosure of information requested from Clients would likely implicate this Court's February 23, 2026 Order. The Order enjoins "the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals . . . from (a) releasing, sharing, or transmitting Volume II of the Final Report

[3] If the Court wishes to speak about these matters in greater detail, counsel defers to the government as to whether a closed hearing pursuant to Federal Rule of Criminal Procedure 6(e)(5) is necessary.

[4] The subpoenas issued on September 21, 2026—served on and accepted via e-mail by undersigned counsel on behalf of their clients—contained an error and were reissued, identical in substance, on September 22, 2026.

[of Special Counsel Jack Smith related to the classified documents investigation] or any drafts of Volume II outside the Department of Justice, or (b) **otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II** or in drafts thereof." Order pp. 14-15, ¶ 3 (emphasis added).

11. Volume II, according to the Order, contains "myriad references to bates-stamped information provided by the Special Counsel in discovery and subject to the protective order, including interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding[,] potential Rule 404(b) evidence, and other non-public information." Order p. 4, ¶ 5 (citing DE 714, pp. 5-6)).

12. Absent clarification, Clients cannot testify before the grand jury without risking violating terms of the Order. As further explained below, DOJ has reportedly taken the position that any disclosure of nonpublic information that may be contained in Volume Two would violate the Order, even if such disclosure was made in response to congressional inquiry, in response to requests made under the Freedom of Information Act, or during privileged communications with counsel. *See infra* ¶ 18.

13. When counsel requested clarification of DOJ's interpretation of how its investigation interacts with the Order, the government responded that its "work does not disturb [the] Order." However, it did not elaborate nor provide any factual or legal basis from which it came to that conclusion. As described below, the investigation does appear to implicate the Order on its face.

14. Undersigned counsel made clear to the government that Clients are willing to voluntarily testify before the grand jury. However, as described below, it is also apparent that the requested interviews and testimony, whether voluntary or compelled by subpoena, risk violating the Order. During preliminary conversations, counsel inquired as to whether DOJ—who is already a named party to the Order—would first clarify with this Court that the interviews and testimony would not violate the terms of this Court's Order. DOJ declined to do so. Counsel for Clients also requested that DOJ provide a statement as to why the relief sought by this motion was or was not necessary. DOJ declined to do so. Counsel also requested that DOJ provide its own previously issued opinion which articulates DOJ's position that disclosure of any non-public information contained in Volume II constitutes a violation of the Order, even when that information is provided in response to a subpoena. DOJ has declined to do so. Counsel has attempted to locate the original emailed opinion in publicly available sources to provide a transparent, public citation for this motion, but that search has been unsuccessful.

15. Generously, DOJ's position on this issue is inconsistent. Clients thus seek clarification of the Order to help understand their obligations to this Court, as well as to the grand jury, and to facilitate preparation for their testimony with counsel and any subsequent events related to that testimony. Although most were unlawfully fired and are no longer federal employees, Clients are deeply respectful of all court orders and do not wish to violate—or be accused of violating—the Order here. Not knowing what will be asked of them or the scope of any potential answers, and considering that their involvement in the Mar-a-Lago search was to retrieve wrongfully retained classified information, Clients—current and former federal law enforcement officers who are each experts in the handling of classified information—are particularly sensitive to the risks of unlawful disclosures.

## ANALYSIS

**A. The scope of the expected interviews and testimony appears to, and inevitably must, implicate "non-public information" as well as "information and conclusions" in Volume II.**

16. If the government's investigation proceeds as outlined by DOJ to undersigned counsel, there is every reason to believe that the information Clients are being subpoenaed to provide overlaps with the content intended to be protected by the Order.

17. As the primary investigative team for what ultimately led to the above-captioned case, Clients are among the handful of individuals in the country with actual, detailed knowledge of the "interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding[,] potential Rule 404(b) evidence, and other non-public information" contained in Volume II. Order at ¶ 5 (quoting DE 714, pp. 5-6). For example, Clients authored, obtained, worked on, analyzed, or wrote reports about the "bates-stamped information" listed by example in this Court's description of the Order. Indeed, one Client currently subpoenaed to appear for testimony reviewed the entirety of Volume II to confirm its factual accuracy. Another Client is the Mar-a-Lago search warrant affiant. Volume II almost certainly contains versions of Clients' work product, even if they did not author the actual report themselves, and thus necessarily contains "information and conclusions" reached by the investigative team, with their work being summarized and marshalled by the Special Counsel.

18. Moreover, the concerns addressed by the Order would not be ameliorated if Clients simply orally recited the contents of Volume II without denoting whether it appeared in Volume II. And while a significant amount of Clients' work is already in the public sphere—like the search

warrant affidavit[5] and superseding indictment[6]—this only underscores a conclusion that the government believes it needs Clients' discussion of *non*-public information to advance its investigation.[7] Presumably, the government would not subpoena out-of-state witnesses to testify in person before the Fort Pierce grand jury if it planned to limit such testimony to the words that appear in the four corners of those publicly available documents; the assigned FBI case agent could easily accomplish this more efficiently, and indeed remains employed by the FBI to do just that. *See* U.S. Dep't of Just., Just. Manual, § 9-11.232, Use of Hearsay in a Grand Jury Proceeding (citing *United States v. Calandra*, 414 U.S. 338 (1974)).

19. Significantly, DOJ *itself* has already taken the position that testimony which implicates the substance of Volume II, even when provided in response to a subpoena or other legal requirement, would violate the Order. Specifically, when Congress subpoenaed former Special Counsel Jack Smith, DOJ reportedly emailed Smith's lawyer to notify him of its opinion that any disclosure of "nonpublic information that may be contained in Volume Two" in response to questions from Congress would violate the Order, "including but not limited to" discussion of "interview transcripts, search warrant materials, business records, toll records, video footage, records obtained by grand jury subpoenas, attorney-client communications, and potential . . . Rule 404(b) evidence." *See* Deposition Testimony of Jack Smith, Committee on the Judiciary, U.S. House of Representatives, Dec. 17, 2025, at 13:12-20 (available at

---

[5] *See* 9:22-mj-08332-BER, DE 102-1, Search Warrant Affidavit, also available at https://www.flsd.uscourts.gov/sites/flsd/files/DE-102.pdf.

[6] *See* DE 85, Superseding Indictment, also available at https://www.justice.gov/storage/US-v-Trump-Nauta-De-Oliveira-23-80101.pdf.

[7] *See, e.g.*, Search Warrant Affidavit, *supra* note 4, at ¶ 7 ("Because this affidavit is submitted for the limited purposes of establishing probable cause . . . it does not set forth each and every fact that I, or others, have learned during the course of this investigation.").

https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf). Similarly, DOJ has cited the Order as a constraint on its ability to respond to requests for the release of reportedly de-classified documents under the Freedom of Information Act. *See, e.g.*, *The James Madison Project, et al. v. DOJ*, 1:25-cv-666-LLA (D.D.C.), DE 22, ¶ 3(g). DOJ has also previously implied that the Order extends to confidential disclosures to defense counsel. *See* DE 802, Joint Notice of Inadvertent Discovery Disclosure, DE 802, p. 2, ¶ 3. Undersigned counsel has requested a copy of DOJ's written opinion referenced in the Smith deposition testimony to better understand the contours of DOJ's interpretation of the Order. DOJ has refused to provide its previously issued opinion, and copies do not appear to be available online.

20. In short, when it suits its purposes, DOJ has taken an expansive view of the prohibitions of the Order. It cannot now be heard to argue that Clients should be unconcerned about possibly violating the Order.

**B. Grand jury testimony will immediately trigger both direct and indirect disclosures of the protected information.**

21. Clients' grand jury testimony will immediately create a disclosure issue without further clarification on the boundaries of the Order's terms on "releasing, distributing, conveying, or sharing with *anyone* outside the Department of Justice" the "information or conclusions " contained "in Volume II or drafts thereof." Order at pp. 14-15, ¶ 3 (emphasis added).

22. *First*, the Fort Pierce grand jury is not within the category of persons privy to the information in Volume II, as defined by the plain terms of the Order. The grand jurors themselves are not members of the Department of Justice. *United States v. Eisenberg*, 711 F.2d 959, 964 (11th Cir. 1983) ("The grand jury is a unique body and is not a part of either the executive or judicial branch."); *see also United States v. Williams*, 504 U.S. 36, 47 (1992) ("[The grand jury] has not

been textually assigned, therefore, to any of the branches described in the first three Articles."). Thus, the grand jurors are "outside the Department of Justice." Without modification or clarification of the Order, Clients—most of whom are not attorneys—will be forced to make on-the-spot decisions about how to provide complete and good faith testimony to the grand jury in response to questions from either the government or the grand jurors themselves that may implicate information protected by the Order.

23. *Second*, the Order's express prohibition of disclosure to "*anyone* outside the Department of Justice" (emphasis added) can be reasonably read to apply to disclosures made in the course of confidential communications between Clients and counsel, as well as statements made during voluntary interviews at which undersigned counsel are present. It would also significantly impair the ability of Clients to the advice of counsel for testimony or interviews. Of course, while counsel may not be present in grand jury proceedings, Fed. R. Crim. P. 6(d), it is standard practice for witnesses to consult with attorneys prior to and during grand jury testimony. *See, e.g.*, U.S. Dep't of Just., Just. Manual § 9-11.151. Because DOJ has implied that the Order covers even privileged attorney-client communications and standard Rule 16 disclosures, *see* DE 802, p. 2, ¶ 3, Clients have understood that they should refrain from speaking with their attorneys ("anyone") about matters that might be covered by the Order. Without clarification, Clients will be unable to sufficiently consult their counsel on the complex issues posed by this testimony without fear of violating the Order.

24. Clients' inability to consult with counsel further complicates the issue regarding disclosure to the grand jury: Without clarification of how the Order applies to their expected testimony, Clients will have to walk a thin and dangerous line, without the advice of counsel, that could expose them to court sanctions whether they choose to answer questions or decline to do so.

For example, if Clients testify in front of the grand jury and the Court later finds the testimony to have violated the Order, Clients risk being held in contempt. Yet if they refuse to testify, they may also be held in contempt. Absent a clarifying order from this Court, Clients will be placed between the horns of a dilemma—where either answering questions or declining to do so could put them in legal peril. Clients therefore seek clarification of the Order to ensure they can consult freely with counsel, respond to the Government's interview requests and subpoenas, and faithfully and completely testify in front of the grand jury without violating the Order.

25. *Third*, should the government attempt to pursue criminal charges as a result of its investigation, the contents of Volume II—and Clients' oral testimony replicating those contents—will almost certainly become subject to mandatory, prompt disclosure through the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), as evidence favorable to an accused and material to an accused's defense. *See* U.S. Dep't of Just., Just. Manual, § 9-5.001(D)(1) ("Exculpatory information must be disclosed reasonably promptly after it is discovered."); *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("*Brady* announced a constitutional requirement addressed first and foremost to the prosecution's conduct pretrial."). Clients have not broken any laws, nor did they observe any member of the investigative teams break any laws. The crimes their testimony will purportedly be "evidence" of—18 U.S.C. §§ 241 and 242—require a specific intent to deprive someone of rights. *See Screws v. United States*, 325 U.S. 91, 101-04 (1945). Yet here, not only did both this Court and the Eleventh Circuit agree there was no "callous disregard" of citizen-Trump's constitutional rights, but *Trump himself* conceded this. *See Trump v. United States*, 54 F.4th 689, 698 (11th Cir. 2022) (noting that not even the plaintiff claimed there had been a callous disregard for his constitutional rights in the execution of the search warrant).

26. If allowed by the Court to testify unconstrained by the Order, Clients will readily provide to the grand jury a detailed account of the investigation, reasoning, decision-making, and other "non-public information" spanning from the time the classified documents matter was first referred to the FBI, up through and including the execution of the warrant. Clients will each detail their firsthand memories of investigating a properly predicated allegation that then-citizen Trump had unlawfully retained hundreds of highly classified documents at his Mar-a-Lago residence. This recollection would also include Clients' factually supported opinions on why and how such retention put the country's national security at risk. Further, as detailed in the Superseding Indictment, Trump and his co-defendants then obstructed the FBI's efforts to retrieve those documents. *See* DE 85, ¶¶ 53-87. Thus, the detailed findings of the classified documents investigation—whether those findings are contained in Volume II or recited into the record at the grand jury—will no doubt prove material to any would-be defendant in the current DOJ's purported 18 U.S.C. §§ 241 or 242 theory. *See Pierson v. Ray*, 386 U.S. 547, 557 (1967) (holding that a defense of good faith and probable cause is available to defendants facing civil rights charges). In other words, the most *inculpatory* evidence against the original defendants in *United States v. Trump et al.*—Trump, Nauta, and De Oliveira—will become the most *exculpatory* evidence for a law enforcement officer accused of violating their constitutional rights. *See* DE 48, at 18 ("Although the former President may have a property interest in his personal effects, he cannot demonstrate callous disregard of the Fourth Amendment considering the patient exhaustion of less-intrusive methods to obtain return of documents with classification markings from the Premises and FBI Special Agents' scrupulous adherence to the terms of the search warrant[.]").

27. Thus, Clients' expected testimony about their work collecting evidence supporting the judicially-authorized search warrant is destined to be released outside of DOJ, consistent with

the government's *Brady* obligations, if the government seeks to indict current or former government officials in this case.[8] Clarifying that Clients can freely testify about their work on the classified documents case will ensure the grand jury hears the relevant facts and—even assuming the grand jury thereafter returns a true bill—would facilitate this constitutionally required disclosure.

**C. Immunity would not ameliorate these concerns.**

28. In initial discussions, government counsel indicated DOJ is considering offering Clients immunity for their testimony. As of the date of this filing, such immunity has not been formally offered. However, immunity would not solve the problems raised in this motion. First, as discussed above, Clients do not believe they or anyone who contributed to the information contained in Volume II broke any laws. Moreover, while immunity would protect Clients from future prosecution, it would not alleviate the risk that their compelled testimony could place them in contempt of court or expose them to public allegations of wrongdoing.

29. Generally, grants of immunity can be used to compel grand jury testimony. *See Brown v. United States*, 359 U.S. 41, 45-46 (1959) ("For more than half a century it has been settled that this statute confers immunity from prosecution coextensive with the constitutional privilege against self-incrimination, and that the witness may not therefore lawfully refuse to

[8] Many of undersigned counsel's Clients were abruptly and unlawfully fired by FBI Director Kash Patel in February 2026, following his return from a widely-publicized trip to Italy that reportedly placed his status with President Trump in jeopardy. *See* Ryan J. Reilly, Gordon Lubold & Katherine Doyle, *Trump Told FBI Director Kash Patel He Didn't Like His Olympics Hijinks*, Feb. 27, 2026, available at https://www.nbcnews.com/politics/trump-administration/trump-fbi-director-kash-patel-olympics-hijinks-rcna260835. As a result, if any of Clients are ultimately identified as a subject or target in this investigation, it is likely that person will be "outside" of DOJ. Further, having been summarily fired by Director Patel, Clients testifying as witnesses in this investigation would not be government witnesses bound by Fed. R. Crim. P. 6(e)'s confidentiality requirements.

testify."), *overruled on other grounds by Harris v. United States*, 382 U.S. 162, 166-67 (1965). However, immunity does not protect witnesses from court-imposed sanctions. If Clients are granted immunity and still decline to speak for fear of violating the Order, they could be held in contempt. *Cf. Harris*, 382 U.S. at 167 (directing a Rule 42(b) contempt hearing where an immune witness refused to testify to a grand jury). A grant of immunity does nothing to resolve this dilemma.[9]

30. Given this, any forthcoming immunity offer provides no comfort, particularly in the face of the House Judiciary Committee's recent referral of Special Counsel Jack Smith to DOJ based on the claim that he provided false testimony to that Committee.[10] Like the risk here, this public allegation is based not on false statements made by Mr. Smith, but rather on an allegation that he did not *proactively* disclose all information responsive to a question posed by the Committee. DOJ has declined to dispute these allegations. If Clients feel constrained from answering questions, they risk facing the same public accusations here, unfounded or not.

## CONCLUSION AND REQUESTED RELIEF

31. Relief from this Court is necessary. DOJ's bare assertion that its work "does not disturb" the Order is simply insufficient. DOJ has not only provided an apparently contradictory opinion on this issue as it relates to the Special Counsel's testimony, but it has refused to simply provide a copy of that opinion to Clients prior to *their* testimony. Suffice it to say, this inconsistency is part of a continued trajectory of contradiction within the current DOJ. Four years

[9] Nor would the government be able to grant immunity to itself for violating the Order by disclosing information through questioning during a witness interview or grand jury testimony.

[10] *See* Letter from Jim Jordan, Chairman of H. Comm. on the Judiciary, to Todd Blanche, Att'y Gen., U.S. Dep't of Just. (July 22, 2026), available at https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2026-07-22-jdj-to-doj-blanche-re-smith-referral.pdf.

ago, DOJ argued that then-citizen Trump "cannot demonstrate callous disregard of the Fourth Amendment considering the patient exhaustion of less-intrusive methods to obtain return of documents with classification markings from the Premises," hailing "FBI Special Agents' scrupulous adherence to the terms of the search warrant." DE 48 at 18. This Court, the Eleventh Circuit, *and Trump himself* agreed. DE 64 at 9; *Trump*, 54 F.4th 689, 698 (11th Cir. 2022). Yet in 2026, now-President Trump's DOJ—led by one of his former criminal defense attorneys who previously objected to even an interagency transmittal of Volume II, *see generally* DE 685—claims justification to criminally investigate a violation of Trump's constitutional rights.

32. In other words, Clients cannot rely on DOJ's assertions about its own interpretation of the facts and this case, let alone the Order. Moreover, DOJ, as a party subject to the Order, cannot unilaterally amend or supersede the terms of that Order. Despite their unlawful, summary firings, Clients maintain a deep respect for DOJ's mission and for court orders. In order to fully comply with DOJ's investigation, consult freely with counsel, cooperate with government requests, and provide testimony without constraint, Clients respectfully request that this Court clarify or modify the terms of the Order so that it is clear that:

a. Clients may testify about the non-public information covered by the Order to the grand jury;

b. Clients may provide voluntary interviews to the government with counsel present about the same;

c. Clients may speak publicly about what they discussed with the government in interviews or testified about before the grand jury, in the same manner as any other grand jury witness not covered by Rule 6(e); and

d. Clients may consult with counsel about the non-public information covered by the Order and about their grand jury testimony before, during, and after grand jury proceedings, as well as before, during, and after any voluntary interviews that Clients provide to the government.

## CERTIFICATE OF CONFERENCE

In accordance with S.D. Fla. L. R. 88.9(a), counsel for Plaintiffs certify that they have conferred with all parties relevant to this motion in a good faith effort to resolve the issues identified in the motion without court intervention. To the extent Local Rule 88.9 addresses parties against which the underlying criminal case has been dismissed, the positions of the three original defendants in the above-captioned case are included here.

**The United States Government.** As described in the foregoing motion, undersigned counsel attempted on multiple occasions to seek resolution short of court intervention. On August 28, 2026, counsel relayed general concerns related to Volume II disclosures to the government via video conference. Later that same day, the government responded via email to those concerns by asserting that its "work does not disturb [the] Order." On September 4, 2026, undersigned counsel sent detailed concerns to government counsel via letter correspondence. On September 11, 2026, having received no substantive response to the concerns raised in the letter correspondence, undersigned counsel requested "the government's position for why the relief sought is/is not needed" to include in this filing. On September 17, 2026, the government responded that "[p]erhaps the best course of action is to simply file whatever relief you and your team deem appropriate. We will answer accordingly." On September 21, upon a request for clarification as to whether the government opposes, objects, or does not object to the relief sought, the government responded that it "take[s] no position on your filing and will respond accordingly."

**Donald J. Trump.** On October 1, 2026, counsel for former defendant Donald J. Trump stated that she "can confirm on behalf of President Trump that we oppose the motion."

**Carlos DeOliveira.** On October 2, 2026, counsel for former defendant Carlos DeOliveira asked that undersigned "note my opposition on behalf of Mr. DeOliveira."

**Waltine Nauta**. On October 5, 2026, counsel for Mr. Nauta indicated through counsel for Mr. DeOliveira that he opposes the motion. Specifically, counsel for Mr. DeOliveira provided a response on behalf of all three defendants related to the filing of a response. Upon a request for clarification, counsel for Mr. DeOliveira confirmed this meant Mr. Nauta joined the other two defendants in their objection.

On October 5, 2026, counsel for Mr. DeOliveira indicated on behalf of all three defendants—in an email on which counsel for all three defendants were copied—that they wish to "reserve our right to file a response."

Dated: October 7, 2026

Respectfully,

Margaret M. Donovan (*pro hac vice* forthcoming)
Christopher M. Mattei (*pro hac vice* forthcoming)
Koskoff Koskoff & Bieder, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com
cmattei@koskoff.com

*/s/ Abbe David Lowell*
Abbe David Lowell (*pro hac vice* forthcoming)
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Tel: (202) 964-6110
Fax: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com

*/s/ Mark S. Zaid*
Mark S. Zaid (*pro hac vice* forthcoming)
Law Offices of Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, DC 20036
Tel: (202) 498-0011
Mark@MarkZaid.com

*/s/ Steve Bunnell*
Steve Bunnell (*pro hac vice* forthcoming)
Raj Ferber PLLC
1629 K Street NW
Washington, D.C. 20006
Tel: (202) 351-9698
steve@rajferber.com

*/s/ Allison Duffie*
Allison Duffie, Esq.
Fla. Bar Number: 649902
DUFFIE LAW, PLLC
2234 N. Federal Highway, #1196
Boca Raton, FL 33431
Tel: (561) 440-8150
Allison@duffie.law; legalassistant@duffie.law