**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

**UNITED STATES OF AMERICA,**

Plaintiff,

vs.

**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA,**

Defendants.
_______________________________________/

FILED BY [signature] D.C.
OCT 23 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**REPLY IN SUPPORT OF SECOND MOTION TO INTERVENE AND SEEK CLARIFICATION OF COURT'S ORDER AT DOCKET ENTRY 779**

1. Undersigned counsel respectfully submit this Reply brief to the government's response in opposition (Docket Entry ("DE") 810, "DOJ Opp.") and in support of Clients' Second Motion to Intervene and Seek Clarification of Court's Order at Docket Entry 779 ("Motion").

2. The government raises two chief objections to the relief sought by Clients. First, it claims Clients lack standing because they have not yet suffered an injury. In doing so, it mischaracterizes Clients' request and ignores the proper legal standard for standing. Second, it claims that Clients wish to improperly "preview, and even to veto" what the grand jury might ask them. DOJ Opp. at 18. But by the plain language of the Motion, that is *not* the relief sought, and the government argues against a strawman. As explained below, Clients are seeking *the exact relief the government has recommended they seek.*

3. Further, far from harboring "an apparent motive to delay," DOJ Opp. at 12, Clients tried for weeks to engage the government on this issue, precisely to avoid this scenario. *See* Motion at 2, 18; DOJ Opp. at 8.

4. More fundamentally, this is entirely an issue of the government's own making. The government—which is already a party to this case—could and should have sought its own clarification before embarking on an investigation that by its very nature necessitates the release of Volume II in substance and, eventually, in form. *See Brady v. Maryland*, 373 U.S. 83(1963). It chose not to. The government wants to, but cannot be permitted to, have it both ways: if it intends to try to establish that the search here was improper, it cannot at the same time try to prevent Clients from being able to make use of the evidence that Clients relied upon then—and must rely upon now—to show why their actions and the actions of their DOJ colleagues, and the search itself, were lawful. Such a result would offend the most basic principles of justice.

5. As a result, Clients must turn to the Court. If the government were truly worried about prolonging its investigation, surely it would have sought clarification *before* attempting to investigate the classified documents case using non-DOJ entities—the grand jury, civilian witnesses, and their counsel—while the gag order it supported at DE 779 ("Order") remains in place. Alternatively, if this conundrum had simply not occurred to the government before opening its investigation, then it could easily move to expedite the Court's decision on Clients' Motion. Such a motion would be unopposed by Clients.

6. Upon review of the government's filing, it is clear now that the Court could solve this issue with one straightforward ruling: clarify that when individuals leave DOJ, they are no longer covered by the Order. This would require no modification of the Order and would comport with a plain reading of its language. As it stands, the prohibition of sharing information or conclusions of Volume II applies to "Attorney General Bondi or her successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals." Order at 14-15. An interpretation that Clients are no longer

members of any of the categories of personnel covered is as simple as it is obvious. It would also untangle DOJ's own tortured interpretation that the Order broadly prohibits disclosure by individuals who are no longer in any category of personnel addressed by the Order. The Court does not have to reinvent the language of its prior Order here just to extract DOJ from a problem of its own making.

## I. Clients Have Standing to Request Clarification of the Order.

### A. DOJ's objection to Clients' Motion conflicts with its own advice.

7. As an initial matter, Clients note that their request is exactly in line with the government's own advice on this issue. Since the filing of their opening motion, undersigned counsel successfully obtained the legal opinions issued by DOJ's Office of Legislative Affairs (the "OLA Opinion") after they were made part of the public record during former Special Counsel Jack Smith's testimony in front of the Senate Judiciary Committee on September 29, 2026. That opinion is attached hereto as Exhibit 1.[1]

8. In the September 14, 2026 opinion, DOJ advises Smith that it interprets the order to "broadly prohibit disclosure of all non-public information contained in Volume II of the Special Counsel's report." However, it cautions that the opinion simply represents "the Department's own understanding of Judge Cannon's order." Then, DOJ expressly advises that "for an authoritative interpretation of the order or its application to specific information, **we again recommend [Smith] seek clarification with the district court itself.**" Exhibit 1 (emphasis added).

9. Like Smith, Clients have been subpoenaed and will be asked to disclose information or conclusions of Volume II. In their Motion, Clients are doing exactly what DOJ advised similarly

[1] Letter from Assistant Attorney General Patrick Davis, Department of Justice, Office of Legislative Affairs, to Lanny A. Breuer, Esq., and Peter Koski, Esq., dated September 14, 2026. Undersigned counsel applied yellow highlighting to Exhibit 1 for emphasis.

situated individuals should do. Incredibly, DOJ now shifts the goal posts and opposes this course of action by claiming Clients lack standing.

**B. Clients have sufficiently alleged standing to intervene as recognized by the Eleventh Circuit.**

10. Even if DOJ's October position did not fly in the face of its September position, its argument against Clients' standing is unavailing.

11. First, as a matter of agreed-upon facts, the government's objection is more remarkable for what it does not say than for what it does. It does not dispute that disclosure of information or conclusions contained in Volume II to the grand jury would violate the Order. It does not dispute that Clients' ability to consult with their own lawyers could be constrained by the Order. And it does not dispute that Clients are under subpoena to testify about a matter that necessarily implicates non-public information or conclusions contained in Volume II.[2] Instead, the Government argues only that no one has been injured *yet*. That is wrong. Clients are injured now, including by their inability to fully consult with counsel, and further harm is certainly impending if they go before the grand jury. Standing was created the moment that Clients were subpoenaed. Because the Order binds clients and governs their subpoenaed testimony, Clients have standing to intervene to protect their rights, as courts in this Circuit have long permitted.

12. Moreover, DOJ omits key language when quoting the Motion in its argument that Clients have not alleged an actual injury. It is not the case that Clients only describe an event that "may or may not happen." DOJ Opp. at 3. Instead, the full context of Clients' use of that phrase is the following: "[Clients] are likely to be asked questions pertaining to information in Volume II

---

[2] The government asserts without support that the testimony would "concern[] certain matters that are separate and distinct from the preparation of Volume II and any improper information or conclusions that may be contained in that Report." DOJ Opp. at 9. But DOJ does not clarify which information or conclusions it has deemed "improper." Of course, if it did, this would indicate it has reached predetermined conclusions before any investigation has taken place.

of the report, which may or may not fall within the scope of the Order." Motion at 3. In other words, what "may or may not" happen is that the DOJ and this Court decide that Clients' have violated the Order by disclosing information outside of DOJ. The "may or may not" question is not about whether the events will occur, but whether this Court will interpret them as being in violation of its Order. In other words, it is precisely the clarification sought by the Motion.

13. In any event, Clients satisfy each element of Article III standing. They face an "injury in fact that is concrete, particularized, and **actual or imminent**," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)) (emphasis added). A threatened injury is imminent when it "is certainly impending[] or has substantial risk of occurring," *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Clients' injury meets both the "actual" and "imminent" test. A subpoena leaves no doubt as to certainty: Clients are actually required to testify, and they cannot do so while restricted by DOJ's interpretation of the Order. Clarification from this Court would redress that injury.

14. The Eleventh Circuit allows intervention where a non-party asserts a legal interest of its own. *See, e.g.*, *United States v. Couch*, 906 F.3d 1223, 1226-27 (11th Cir. 2018) (holding that where qui tam relator's had statutory property interest, "the general principle that private parties lack standing to intervene in criminal proceedings ha[d] no application"); *In re Freeman*, 708 F.2d 1571, 1574-75 (11th Cir. 1983) (holding that where an attorney faced contempt proceeding for refusing to answer grand jury questions, clients could intervene in criminal contempt proceeding to assert their attorney-client privilege interest); *see also United States v. Carmichael*, 342 F.Supp.2d 1070 (M.D. Ala. 2004) (citing *Gravel v. United States*, 408 U.S. 606,

608-09 (1972), where district court granted Senator's motion to intervene to quash grand jury subpoenas of witnesses whose testimony implicated his Speech and Debate Clause privilege).

15. There can be no doubt that Clients have asserted a legal interest of their own. DOJ concedes that Clients may consult with counsel in relation to their subpoenaed testimony. DOJ Opp. at 18. Thus, their interest in consulting with counsel is implicated, and the Order *already* burdens Clients' right to consult in advance of their grand jury testimony. Especially given that the government has publicly called the prior prosecution "unlawful," the conclusions in Volume II "improper," and the entire investigation at the Mar-a-Lago residence "illegal," DOJ Opp. at 1, 9, 12, Clients must be able to consult with counsel now, prior to appearing before the grand jury. The government's position—that disclosure to counsel would violate the Order, *see* DOJ Opp. at 19, n.1 *and* DE 802, p. 2, ¶ 3—directly supports the relief sought.

16. Moreover, the grand jury is "outside" the DOJ, a point the government does not contest. The government also does not contest that Clients will be asked about "their work on the classified documents investigation beginning from the date the matter was referred to the FBI, up through and including the execution of the search warrant." Motion at 5. Volume II covers the investigative record Clients built: "interview transcripts, search warrant materials, business records, toll records, video footage" and "other non-public information." Order at ¶ 5; (quoting DE 714, pp. 506). Thus, any testimony that discloses information in Volume II implicates the Clients' interest in avoiding sanctions for violating the Order.

17. Nor do any of the government's proposed alternatives present any reasonable outcome. At this juncture, Clients do not wish to "quash the grand jury subpoena." DOJ Opp. at 16. As stated in their opening motion, they plan on testifying truthfully about the evidence surrounding the unlawful retention and storage of classified documents at a beach resort, the

national security risks arising from that conduct, and the obstruction of the ensuing and properly predicated investigation. Motion at 13. Clients do not wish to "invoke the Fifth Amendment," as it implies they may have information that would implicate themselves in criminal activity, which, of course, they do not. DOJ Opp. at 16. Nor would it make any sense to continuously go back to the Court each time Clients encounter "an unconstitutional question or procedural defect during those proceedings," DOJ Opp at. 16. Rather than repeatedly "raise it with this Court" after each and every question, *id.*, Clients "raise it with this Court" *now*. A question-by-question review would make little sense, result in unnecessary travel and costs to both Clients and the government, and result in an even longer delay to the proceedings than the government now laments.

18. In sum, nothing about Clients' injury is "conjecture." DOJ Opp. at 9. The government claims the Order binds Clients, the government has issued the subpoenas, and the government has described what the subpoenas cover. On these facts, "the risk of harm is sufficiently imminent and substantial," *TransUnion*, 594 U.S. at 435-36 (citing *Clapper*, 568 U.S., at 414, n.5; *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); and *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017)). During their grand jury testimony, clients will be forced to make technical legal determinations on the spot, without advice of counsel, at the risk of court sanctions. Motion at 11. These are concrete, imminent harms.[3]

## II. Clients Are Not Improperly Injecting Themselves Into the Grand Jury Secrecy.

19. The government's opposition appears to forget that Clients no longer work for DOJ and thus are not bound by Fed. R. Crim. P. 6(e)'s secrecy obligations. Rule 6(e)(2)(B) does not

---

[3] Nor are Clients' harms self-imposed. *See* DOJ Opp. at 14. Nearly all the circuit cases the government cites deny standing based on plaintiffs' precautionary expenses against possible identity theft. *See id.* Unlike the data breach plaintiffs, Clients rest standing on the harms imposed by their impending testimony and inability to prepare for the same, not on "self-imposed" precautions taken to avoid a "speculative threat." DOJ Opp at 14.

impose a secrecy requirement on grand jury witnesses. See *Lockheed Martin Corp. v. Boeing Co.*, 393 F. Supp. 2d 1276, 1279 (M.D. Fla. 2005) (citing *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559, 1564 (11th Cir.1989)). Far from trying to "[i]mpose [t]hemselves" into the proceedings, their involvement is entirely at the government's direction. DOJ Opp. at 16. They have absolutely no interest in "thrust[ing] themselves" into the grand jury, or to "veto" questions. *Id.* at 18. Now private citizens, Clients readily accept that they are governed by Rule 6(e)(2)(A), which states that "[n]o obligation of secrecy may be imposed on any person except" grand jurors, court staff present for grand jury proceedings, government lawyers, and government personnel described in Rule 6(e)(3)(A)(ii) or (iii). *See also Smith v. Butterworth*, 866 F.2d 1318, 1320 (11th Cir. 1989) ("Fed. R. Crim. P. 6(e) . . . does not impose an unqualified obligation of secrecy on witnesses."), *aff'd* 494 U.S. 624 (1990). As a result, Clients have "no obligation" to keep grand jury questions or strategy to themselves. Thus, applying DOJ's current interpretation of the Order would conflict with Rule 6(e).

20. Notably, none of the cases the government cites on grand jury secrecy applies to Clients' Motion. *In re Oliver*, 333 U.S. 257, 259 (1948), and *Press-Enterprise Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 9 (1986), merely establish that grand jury themselves proceedings are traditionally held in secret. Likewise, *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 217-31 (1979), and *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-84 (1958), each dealt with disclosure of grand jury transcripts to subsequent civil litigants—not witnesses' subsequent public discussion of their testimony.

## III. Conclusion

21. One final point merits discussion. DOJ's objection to any clarification of the Court's Order is highly troubling. Clients have asserted that they want to testify, and that they

wish to do so without constraint. Motion at 13. But by objecting, DOJ appears to intentionally keep the waters muddied, even when the government itself has cited the Order as reason to not comply with legal obligations. *Id.* at 10.

22. DOJ's position is particularly concerning when the government, while rejecting Client's efforts to clarify the scope of the Order, continues to selectively release materials presumably contained or addressed by Volume II.[4] These efforts have accelerated in recent weeks, as the government publicly shared and provided press briefings on investigatory files,[5] including internal FBI communications on warrant and search timing,[6] investigatory call logs and PR/TT information,[7] and internal investigatory approvals.[8] Had Clients shared any of that information with the public, or provided the context that properly framed that information, there is little doubt DOJ would have considered it a violation of the Order.

23. Importantly, there does not appear to be any adversity remaining on the criminal docket in this case as to this issue, as between DOJ and the original defendants. DOJ is part of the Executive Branch, led by now-President Trump. DOJ is controlled by President Trump's former criminal defense attorney for the classified documents case. He now supervises all of the government's federal litigation. 28 U.S.C. § 519. Thus, when the government's disclosures of

---

[4] White House, Government Transparency & Election Integrity (accessed Oct. 22, 2026), https://www.whitehouse.gov/transparency/.

[5] John Solomon (@jsolomonReports), X (Oct. 5, 2026, at 7:41 ET), https://x.com/jsolomonReports/status/2107073789078974851?s=20; Charlie Savage, *How the White House Manufactured a Narrative About a Trump Aide's Call Logs*, N.Y. Times (Oct. 11, 2026), https://www.nytimes.com/2026/10/11/us/politics/white-house-manufactured-narrative-solomon.html.

[6] White House, Government Transparency & Election Integrity, *Subject- FW- Plasmic Echo - Summary - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

[7] White House, Government Transparency & Election Integrity, *PR.TT Live Monitoring 6 to 8 April 2023 – FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip; White House, Government Transparency & Election Integrity, *PR.TT Live Monitoring 19 to 22 May 2023 - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip; White House, Government Transparency & Election Integrity, *Subect- Wiles Contacts 3.7 - 3.10 - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

[8] White House, Government Transparency & Election Integrity, *Memorandum for the AG - FINAL* (accessed Oct. 22, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/10/Plasmic-Echo.zip.

Volume II push a narrative favorable to the remaining parties on this docket—President Trump in his official capacity, President Trump in his personal capacity, and President Trump's co-defendants—those parties have no incentive to report violations of the Order to this Court. *See Trump v. Internal Revenue Serv.*, 836 F. Supp. 3d 1225, 1240–41 (S.D. Fla. 2026). In this way, the government has been able to use the Order as both a sword and a shield, seeking to slander Clients' work while also preventing them from ever defending it. Clarification here will halt this non-adverse dynamic at the most crucial of moments: where DOJ seeks to bring criminal charges against presumed innocent citizens.

24. The relief sought by Clients' Motion would allow them to testify fully, truthfully, and accurately, without fear of being in violation of the Court's Order, and without the need for question-by-question review by this Court. Motion at 16-17. It is odd, to say the least, that DOJ objects to this outcome. Ideally, the Court could provide an unequivocal green light that confirms Clients are not bound by the plain text of the Order, since they are no longer part of the category of DOJ employees bound by the Order. This would allow the Court to solve this issue without modifying its Order. This would not mean, of course, that Clients could speak openly about the sensitive nature of their prior work. Like all former DOJ employees, they would be bound by the normal architecture of non-disclosure rules and policies related to their work, not to mention laws prohibiting unauthorized disclosure of classified information.

25. The proposed textual interpretation of the Order would meet all forms of relief requested by Clients, Motion at 16-17. But perhaps more important, it would mean that DOJ will have to solve its own self-created problems. Not Clients, and not the Court.

Dated: October 23, 2026

Respectfully,


*/s/ Margaret M. Donovan*
Margaret M. Donovan (*pro hac vice* forthcoming)
Christopher M. Mattei (*pro hac vice* forthcoming)
Koskoff Koskoff & Bieder, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com
cmattei@koskoff.com

*/s/ Abbe David Lowell*
Abbe David Lowell (*pro hac vice* forthcoming)
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Tel: (202) 964-6110
Fax: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com

*/s/ Mark S. Zaid*
Mark S. Zaid (*pro hac vice* forthcoming)
Law Offices of Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, DC 20036
Tel: (202) 498-0011
Mark@MarkZaid.com

*/s/ Steve Bunnell*
Steve Bunnell (*pro hac vice* forthcoming)
Raj Ferber PLLC
1629 K Street NW
Washington, D.C. 20006
Tel: (202) 351-9698
steve@rajferber.com

*/s/ Allison Duffie*
Allison Duffie, Esq.
Fla. Bar Number: 649902
DUFFIE LAW, PLLC
2234 N. Federal Highway, #1196
Boca Raton, FL 33431
Tel: (561) 440-8150
Allison@duffie.law; legalassistant@duffie.law

# EXHIBIT 1

U.S. Department of Justice

Office of Legislative Affairs

*Office of the Assistant Attorney General* *Washington, DC 20530*

Lanny A. Breuer, Esq.
Peter Koski, Esq.
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001-4956

Dear Messrs. Breuer and Koski:

I write on behalf of the Department of Justice (Department) in response to your letter dated August 31, 2026. Consistent with the parameters of our prior authorizations regarding Mr. Smith's testimony before Congress, to the greatest extent allowable by law, the Department authorizes Mr. Smith to provide unrestricted testimony during his hearing before the Senate Judiciary Committee on September 29, 2026, regarding the topics listed in our letter of November 12, 2025.

The Department again reiterates the analyses included in our letters of November 12, 2025, December 11, 2025, and January 20, 2026, as well as in our email of December 17, 2025, emphasizing that the caveat "to the greatest extent allowable by law" means that Mr. Smith is not authorized to divulge information that is prohibited by law or court, including information subject to Federal Rule of Criminal Procedure 6(e). The Department also reaffirms the analysis of the scope of Rule 6(e) included in our letter dated December 11, 2015.

Consistent with the Department's email of December 17, 2025, and our letter of January 20, 2026, the Department interprets Judge Cannon's January 21, 2025, order in *United States v. Nauta and De Oliveira* to broadly prohibit disclosure of all non-public information contained in Volume II of the Special Counsel's report. However, we do not understand the order to prohibit discussion of information that the Department has made publicly available through authorized means, such as information contained in public filings in the case. To be clear, this view represents the Department's own understanding of Judge Cannon's order. To the extent Mr. Smith wishes for an authoritative interpretation of the order or its application to specific information, we again recommend he seek clarification with the district court itself.

Lastly, regarding your request concerning the presence of Department counsel, the Department respectfully declines to have counsel present during Mr. Smith's appearance before the Committee. In light of the scope of the authorization in this letter, the Department has determined that the presence of agency counsel at the hearing is not required.

We hope this analysis will help facilitate Mr. Smith's cooperation during the Senate Judiciary Committee's hearing.

Sincerely,

PATRICK DAVIS

Digitally signed by PATRICK DAVIS
Date: 2026.09.14 14:02:42 -04'00'

Patrick D. Davis
Assistant Attorney General
Office of Legislative Affairs

cc: The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
U.S. Senate

The Honorable Richard Durbin
Ranking Member
Committee on the Judiciary
U.S. Senate